Russian Bankruptcy Law

33. As part of the reform of its economy to provide a legal basis for private transactions, Russian has enacted a series of measures creating a bankruptcy system. The major enactments include the Federal Law on Insolvency, enacted on January 8, 1998, and superseded by a new Federal Law on Insolvency of October 26, 2002, as well as provisions of the Arbitrazh Procedure Code. The system created (and illustrated by the GOK bankruptcy that is the subject of this litigation) embraces equal treatment of creditors of the same class in the distribution of assets; the imposition of fiduciary obligations on the temporary and external managers responsible for administering the bankrupt estate; judicial review of the claims of creditors; full notice to potential creditors of the bankruptcy proceedings; creditor meetings; nondiscrimination with respect to foreign creditors; centralized distribution; and, through the powers of the temporary and external managers, the power automatically to stay creditor claims and centrally to administer all claims. Differences between Russian and U.S. bankruptcy law favor creditors as often as not. For example, any creditor's claim not recognized in a bankruptcy proceeding remains in full legal force, entitling the creditor to bring suit in the relevant court.

Russian Law of Corporate Governance and Securities Transactions

34. In the early years after the collapse of the Soviet Union, Russian law permitted private economic activity but did not have a well developed set of rules regarding corporate governance and investor protection. Enactments in the latter half of the 1990s addressed this concern. The paramount legislation is the Law on Joint Stock Companies, enacted on December 26, 1995 and amended June 13, 1996, May 24, 1999, August 7, 2001, March 31 and October 31, 2002, February 27, 2003, and February 24, April 6, December 2 and December 29, 2004. Also relevant is the Law on Securities Markets, enacted on April 22, 1996 and amended November

26, 1998, July 8, 1999, August 7, 2001, December 28, 2002, and June 29 and July 28, 2004, and the Law on Protection of Rights and Legitimate Interests of Securities Market Investors, enacted March 5, 1999 and amended December 27, 2000, December 30, 2001, December 9 and December 24, 2002, and December 23, 2003. The Civil Code also applies to transactions in securities. Of particular relevance is Article 302 of the Civil Code, which provides some protection for the ownership rights of the "acquirer in good faith," depending on the nature of the property in dispute and the basis of the prior owner's claim. Article 2 of the Law on Securities Markets supplements this provision:

> The acquirer in good faith is a person who has bought securities and paid for them, who at the time of acquisition did not and could not know about the rights of third persons to these securities, unless the contrary is proved.

35. The Law on Joint Stock Companies provides the basic framework for corporate governance. It establishes the rights and obligations of the officers, board of directors, and shareholders and specifies the scope of permissible choices that organizers of a company may make through its charter. It also determines the role of the independent registrar of shareholders as protector of shareholder rights. Under Article 45 of this Law, persons who claim to own shares have the right to demand that the registrar recognize their interest and to obtain judicial review of the registrar's refusal to accept their claim of ownership. Under Article 44 of this Law, the registrar's duty is independent of, and does not derogate from, the company's obligation to maintain accurate records of its shareholders.

GOK Bankruptcy Proceedings

36. Plaintiffs' complaint asserts that the outcome of the GOK bankruptcy proceedings violated their rights under Russian law. The Russian arbitrazh courts still are open to hear

objections to the outcome of the bankruptcy proceeding. Those proceedings that have occurred to date appear to have complied with basic norms of procedural fairness and substantive rationality.

37.     I have inspected, in the Russian original and in translation, many of the documents and judicial orders produced by the Sverdlovsk bankruptcy proceedings. Based on these documents, the following appears to have occurred: On March 24, 2000, Kranouralskmezhraygaz, the supplier of natural gas to GOK, instituted a bankruptcy proceeding in the Sverdlovsk arbitrazh court. (A-1112) On March 30, 2000, the court appointed O.S. Kozyrev as temporary manager of GOK. (A-1075) In a later opinion, the court stated that the Federal Agency on Insolvency and Financial Bankruptcy for the Sverdlovsk region had nominated Kozyrev for this post, based on his position as Deputy Head of the regional body of that Agency. (A-1080) An auditor's report dated April 21, 2000, determined GOK's creditors as of the date of the filing of bankruptcy. (A-1191) This report included in this list Nexis OOO,[4] Polyprom OOO, and Lebaut OOO. Under Russian bankruptcy law, these creditors were required to receive notice of the proceedings and to present their claims to the temporary manager for verification and registration. The registered creditors held their first meeting on August 11, 2000, and voted to subject the enterprise to a year of bankruptcy supervision. (A-1245) In response, on August 22, 2000, the court made Kozyrev the external manager of GOK. (A-1080) In that order the court noted, but did not accept, arguments made by Khaidarov attacking the validity of his ouster and the powers of GOK's officers and board of directors. Nexis OOO and Lenex OOO, challenged the August 22, 2000, decision in the appellate branch of the Sverdlovsk arbitrazh court, but on January 15, 2001, the court determined that because neither had presented their claims to Kozyrev, they did

---

[4] "OOO" is the Russian acronym for the terms translated as limited liability company. I use this acronym when referring to Russian entities.

not qualify as registered creditors with standing to challenge the court ruling. (A-1306) The Urals Circuit Federal Arbitrazh Court in turn upheld the decision of the appellate branch on June 7, 2001. (A-1318)

38.  This bankruptcy proceeding, under the supervision of the arbitrazh court system, was subject to a collateral attack in the courts of general jurisdiction. In particular, two persons sued the Federal Agency in the Izmailovo local court in Moscow to overturn the appointment of Kozyrev. In a decision dated August 2, 2000, the Izmailovo court ruled that it lacked jurisdiction to stay the bankruptcy proceedings but that it would order Kozyrev not to hold a creditors' meeting until it could rule on the merits of the complaint. (A-1266) That court appears not to have taken into account that the March 30, 2000, order of the Sverdlovsk arbitrazh court required Kozyrev to hold this meeting no later than August 22, 2000. It further appears that the Izmailovo court never issued a proper order to Kozyrev. On November 30, 2000, the Moscow city court, while reversing the decision of the Izmailovo court, noted that the court had not issued this order in proper form. (A-1269) The Izmailovo court subsequently dismissed the lawsuit on March 13, 2001, because the petitioners had failed to appear at hearings. (A-1871)

39.  During the course of the bankruptcy administration Kozyrev recognized as a valid a debt owed by GOK to Lebaut OOO. Nexis Products LLC (a plaintiff in the <u>Base Metal Trading</u> litigation) petitioned the Sverdlovsk arbitrazh court overseeing the bankruptcy to overturn this decision. The court determined that the Lebaut claim was a valid debt in an order dated February 19, 2001. (A- 1591) The appellate branch of that court upheld this decision on April 19, 2001. (A-1598) It ruled that Nexis Products had not presented any evidence to indicate that the Lebaut claim was anything other than a bona fide commercial obligation of GOK. It appears

that Nexis Products sought further review of this decision in the Urals Circuit federal arbitrazh court, but that at some point an irregularity in the documents purporting to authorize Nexis Products' legal representative emerged. Because of this irregularity, the Urals Circuit on July 12, 2001, determined that it could not consider the appeal. (A-1607)

40. After conclusion of the settlement between GOK and its creditors, dated March 11, 2001 (A-1323), Nexis Products again brought a challenge to GOK notes given to Lebaut, in this instance those later transferred to Syrius OOO. The Sverdlovsk arbitrazh court rejected this claim on April 18, 2001. (A-1613) As in the February 19 decision cited in the above paragraph of this declaration, the court ruled that Nexis Products had failed to present evidence impeaching the validity of the Lebaut claim.

41. On April 19, 2001, the court approved the settlement. (A-1092) Nexis Products sought appellate review of this decision. On June 27, 2001, the appellate branch of the Sverdlovsk arbitrazh court determined that the documents purporting to authorize Nexis Products' legal representative were not in order. (A-1357) As a result, the person purporting to represent Nexis Products was unable to prosecute the appeal and the court had no authority to consider the case. The Urals Circuit Federal Arbitrazh Court affirmed this determination on Aug. 21, 2001. (A-1365) The same court rejected a motion to reopen this appeal on October 29, 2001. (A-2053)

42. Foston also challenged the decision of Kozyrev to recognize debts owed to various Russian firms. On September 18, 2001, the Sverdlovsk arbitrazh court rejected Foston's argument that the making of these debts required a vote of GOK's board of directors. (A-2224) The Urals Circuit affirmed this decision on December 20, 2001. (A-2238)

43. Portions of plaintiff's complaint amount to an allegation that the bankruptcy proceedings were conducted improperly. As stated above, the Russian arbitrazh courts, including the

21

Supreme Arbitrazh Court in Moscow, remain open to such claims. Plaintiffs have several avenues for attacking the results of the bankruptcy proceedings. First, the plaintiffs can seek supervisory review of the decisions of the Sverdlovsk court in the Supreme Arbitrazh Court. Second, the plaintiffs can attack the proceedings at any level of the arbitrazh court system by presenting new evidence, such as proof of a corrupt conspiracy of the sort alleged in their complaint or by establishing that the external manager failed to recognize valid claims that they, or their predecessors in interest, had against GOK.

Current Status of the Contest for Control of GOK and Ownership of GOK Stock

44.     Aside from the bankruptcy proceedings discussed above, the records and judicial decisions I have reviewed indicate that disputes over the governance and ownership of GOK occurred in five phases, each of which entailed substantial litigation in Russian arbitrazh courts and courts of general jurisdiction. Russian courts have reviewed (1) the outcome of the January 28, 2000, changes in the board of directors and officers of GOK; (2) the March 4, 2000, attempt by the ousted management to reverse the decisions of the board of directors through a shareholders meeting; (3) the September 5, 2000, decision by GOK to change registrars; (4) claims by GOK and its shareholders made both before and after the change in registrars that various entities wrongfully claimed ownership of GOK shares, and (5) the November 19, 2002, decision of the GOK general shareholders to increase its chartered capital and amend its charter. I will discuss each series of lawsuits in turn.

January 28, 2000 Board of Directors Meeting

45.     Based on the judicial opinions I have reviewed, it appears that on January 28, 2000, the board of directors of GOK convened and, among other actions, replaced the enterprise's general director and the board's chair. The ousted management complained to the Kachkanar authorities

22

that this event constituted a forcible seizure of GOK, but a report of the Senior Assistant *Prokuror* (Prosecutor), dated February 2, 2000, rejected the charge. (A-1628) Multiple civil suits attacking the January 28 meeting ensued. I am aware of seven lawsuits filed in five different local courts of general jurisdiction in Moscow, two in a local court in the Sverdlovsk region of Russian, one filed in a Moscow arbitrazh court, and two in the Sverdlovsk arbitrazh court. Some of these suits were brought by individuals or firms who were GOK shareholders, and some by D.A. Khaidarov, the ousted general director. The claims included alleged violations of GOK's charter, alleged violations of the Law on Joint Stock Companies, and infringements of Khaidarov's rights under Russian labor law.

46.    In three of the Moscow suits and in the lawsuits brought in both the courts of general jurisdiction and arbitrazh courts of Sverdlovsk, the claims were rejected, some on substantive grounds and others on the basis of improper venue or failure to prosecute. In particular, the Sverdlovsk regional court, in an order issued February 15, 2000 (A-1649), upheld the February 1, 2000, decision of the Kachkanar court determining that the complaining stockholder had failed to present any legal reason for negating the actions of the meeting. (A-1635) In a decision on April 30, 2002, the Kachkanar court rejected a suit brought by Khaidarov to negate the results of the meeting. (A-2108) The Kachkanar court dismissed an appeal of that decision on September 24, 2002, citing procedural deficiencies in the appeal. (A-2121) The Sverdlovsk regional court affirmed this decision on November 19, 2002. (A-2126) The Sverdlovsk arbitrazh court reached the same conclusion in a different suit on January 22, 2003. (A-2133) On May 22, 2003, the appellate level of that court ruled that the first instance court should not have issued a ruling on the merits without taking into account the April 30, 2002, decision of the Kachkanar court. (A-2277)

47.     In the other suits the ousted management initially enjoyed some success in the lower courts, but in no case did it ultimately prevail. In two of the Moscow shareholder suits, in two of Khaidarov's Moscow suits, and in the shareholder suit brought in the Moscow arbitrazh court, the first-instance court ruled that the January 28 meeting violated Russian law and that its decisions therefore were invalid. Each of these decisions was reversed either by the first-instance court itself or on appeal. The April 10, 2000, order of the Perovsky court in Moscow declaring the board meeting invalid, in the lawsuit brought by shareholder A.V. Anikeev (A-1737), was withdrawn by that court on September 25, 2000, due to the superseding bankruptcy proceedings. (A-1747) The Moscow city court upheld the latter decision on October 26, 2000. (A-1752) After holding additional hearings and gathering new evidence, the Perovsky court on December 13, 2000, determined that the January 28 board meeting had complied with Russian law. (A-1712) The September 19, 2000, order of the Meshchansky court in Moscow in the lawsuit brought by shareholder V.V. Volnov, which invalidated the January 28 meeting (A-1667), was reversed on substantive grounds by the Moscow appellate court on March 8, 2001. (A-1657) The first lawsuit brought in Moscow by Khaidarov led to an order by the Tverskoy local court on February 7 forbidding implementation of the board decisions. (A-1765) That court withdrew its order and dismissed Khaidarov's suit on May 30, 2000, on the ground that the proper venue was Kachkanar and not Moscow. (A-1761) Khaidarov then refiled a new suit that added at least one defendant resident in Moscow. On November 21, 2000, the Tverskoy court invalidated the January 28 meeting. (A-1683) On appeal, the Moscow city court on March 26, 2001, determined that all the persons sued were alleged to have acted in the capacity as directors and officials of GOK, and that the suit therefore should have been brought in Kachkanar. (A-1676) It therefore reversed the Tverskoy court's decision. On remand, the

Tverskoy court on June 22, 2001, implemented the decision of the appellate court and dismissed Khaidarov's suit on venue grounds. (A-1827) The November 16, 2000, order of the Moscow arbitrazh court in the lawsuit brought by Rendex, a Russian enterprise owning stock in GOK, which also invalidated the January 28, 2000, meeting (A-1698), was reversed by the appellate branch of the Moscow arbitrazh court on February 22, 2001 (A-1691), and the Moscow Circuit Federal Arbitrazh Court in turn upheld the decision of the appellate branch on April 26, 2001. (A-1706)

48.  In three different suits brought in Moscow by Khaidarov to overturn the January 28, 2000, board meeting, the courts determined that venue was improper. In one instance, the second suit brought in the Tverskoy court, the court determined that Khaidarov had improperly characterized the status of newly added respondents in an attempt to obtain a Moscow forum. These decisions indicate how the Russian legal system operates in practice to suppress duplicative lawsuits and improper forum shopping.

49.  The judicial opinions I have reviewed indicated that the core legal issue in all of these lawsuits involved the effect of a provision of the GOK charter that gave the incumbent managing director what amounted to a veto over decisions to convene meetings of the board of directors. The appellate courts of general jurisdiction in Moscow and Sverdlovsk and the Moscow arbitrazh court appellate branch and the Moscow Circuit Federal Arbitrazh Court all agreed that this provision violated the requirements of the Law on Joint Stock Companies by giving the managing director the power to thwart actions of the corporate body responsible for supervising his actions. In my opinion, these courts correctly interpreted Article 68 of that Law, which specifies the persons who have a right to convene a meeting of the board of directors and does not authorize any impairments of this right. Moreover, whether this determination

represents a correct interpretation of the Law on Joint Stock Companies is a question that the Russian courts are uniquely qualified to answer.

50.     Additional issues resolved by the Russian courts on the merits were the presence of a valid quorum at the January 28, 2000, meeting and the permissibility of absentee voting at the meeting. Resolution of these issues turns on questions of fact, as well as the interpretation of the Law on Joint Stock Companies and GOK's charter. Russian courts would be able to address these questions. Indeed, the Russian courts that already have done so appear to have acted in accordance with norms of due process and fundamental fairness.

<u>March 4, 2000 General Shareholders Meeting</u>

51.     Shortly after the January 28, 2000, meeting of the board of directors, GOK shareholders brought lawsuits in both the Kachkanar court of general jurisdiction (in the case of an individual shareholder) and the Sverdlovsk arbitrazh court (in the case of a legal-person shareholder) to enjoin the then-registrar of GOK shareholders from changing any entries in the registry and to require GOK not to hold any shareholder meetings until the court had resolved all disputes over the proper constitution of the shareholder list. The court of general jurisdiction forbade the holding of any shareholder meetings in an order dated February 15, 2000 (A-1797), and arbitrazh court followed suit on February 29 (A-1801). Later court decisions indicate that, in apparent defiance of those orders, shareholders supporting the ousted management convened an extraordinary meeting on March 4, 2000. Shareholders opposed to the ousted management filed suit in both Moscow and Kachkanar to challenge the validity of this shareholder meeting. The Moscow suit resulted in a court order on April 5, 2000, upholding the meeting (A-1814), but the Moscow Appellate Court on March 6, 2001, determined that the nominal plaintiffs had not sought to institute the suit and that the lawyer purporting to represent their interests in that case

26

had no authority to do so (A-1806). Accordingly, the appellate court ordered dismissal of the complaint on procedural grounds. In the interim, the Kachkanar court on August 14, 2000, determined that the meeting was illegal, both because the shareholder seeking to convene the meeting had failed to comply with the requirements of the Law on Joint Stock Companies and GOK's charter, and because the meeting violated the injunctions issued by the Kachanar court and the Sverdlovsk arbitrazh court (A-1790). I am not aware of any subsequent appeals of these decisions.

### Substitution of Share Registrars

52. On September 5, 2000, the GOK board of directors entered into a contract with Bookkeeping Registry Company (referred to in the complaint as VRK) to maintain the registry of shareholders, replacing the contract that GOK had had with Panorama Registry Company. Both a shareholder and Khaidarov filed suits in courts of general jurisdiction in St. Petersburg attacking this decision, and Rendex challenged the decision in the Moscow arbitrazh court. The St. Petersburg courts upheld the VRK contract as lawful in decisions dated December 20, 2000, and January 12, 2001. (A-1859, 1864) In a suit brought by, among others, plaintiffs Davis International, LLC, Foston Management Ltd., Holdex LLC, and Omni Trusthouse, Ltd., the Moscow arbitrazh court on March 20, 2001, also upheld as lawful the decision of GOK to replace its registrar. (A-1839) The court found in particular that the petitioners had received proper notice of the change in registrars. The appellate branch of the Moscow arbitrazh court affirmed on June 26, 2001 (A-1846), and the Moscow Circuit Federal Arbitrazh Court in turn affirmed on September 5, 2001 (A-1852).

### Shareholder Disputes

53. Subsequent to the commencement of the bankruptcy proceedings involving GOK, five separate disputes have been litigated in Russian courts involving persons claiming to own shares in GOK that were allegedly misrecorded by GOK's registry. These include suits in a Moscow court of general jurisdiction involving shares claimed by plaintiff Foston and Nexis Products LLC (a plaintiff in the <u>Base Metal Trading</u> litigation), a case in the Chelyabinsk arbitrazh court involving shares allegedly owned by plaintiff Omni Trusthouse, a case in another Moscow court of general jurisdiction involving shares claimed by plaintiffs Davis, Holdex and Omni Trusthouse as well as Nexis Products LLC, a case in the Kalmykia arbitrazh courts involving plaintiff Holdex, and a case in the Sverdlovsk arbitrazh courts involving plaintiff Foston.

54. Two separate lawsuits in Moscow's courts of general jurisdiction have involved stock acquired by persons apparently associated with some of the plaintiffs in this litigation. Both suits have left their holdings intact, in part due to courts' recognition of the good-faith-acquirer defense. On July 13, 2000, the Meshchansky local court, a Moscow court of general jurisdiction, determined that Nexis Products, LLC, as well as two other persons, had acquired shares of GOK stock from Ural Start OOO, a Russian entity, at a time when Ural Start was the recognized owner of the shares, and that no evidence had been presented that Nexis Products or the other parties knew of any impairment to Ural Start's right to dispose of those shares. (A-2027) The court therefore ruled that Nexis Products had no obligation to return the stock, regardless of whether Ural Start in fact did not own those shares.

55. On August 1, 2000, the Chelyabinsk arbitrazh court determined that GOK's then registrar, Panorama, wrongfully transferred GOK shares belonging to NPRO Ural pursuant to an order of the Russian Tax Service, even though a reviewing court had overturned the Tax

Service's order. (A-1924) According to the complaint, these shares eventually had been transferred to Omni Trusthouse, Ltd. (Omni). The Chelyabinsk court ordered the reversal of the transfer on GOK's registry. On October 16, 2000, the appellate branch of that court ordered the dismissal of the lawsuit as to two respondents–Amber Star OOO and Gidromashservis OOO–on the ground that they had not received proper notice of the suit and had not entered an appearance. (A-1942) As to all other respondents, including Panorama and VRK, the appellate branch upheld the order reversing the transfer and in particular rejected the claim of Profit House, one of the respondents, that it was an acquirer in good faith. On January 4, 2001, the Urals Circuit Federal Arbitrazh Court upheld the decision of the appellate branch. (A-1952) The court noted that its ruling did not extend to persons not party to the case who might currently hold the shares in question. As this observation indicates, Omni Trusthouse, Ltd., which had not been a party to the Chelyabinsk litigation, remained free to assert its status as an acquirer in good faith of the shares at issue, and in particular continued to have the right to demand that GOK and VRK recognize its ownership. A refusal to accede to Omni's demand would be subject to review by the Sverdlovsk arbitrazh court.

56.   On September 29, 2000, the Solntsevsky local court, a Moscow court of general jurisdiction, determined that the former registrar, Panorama, had wrongfully transferred shares belonging to three Russian entities to Ural Start pursuant to a forged order to execute a judgment that in fact had been reversed on appeal. (A-1960) The court's opinion states that Foston and the other respondents covered by the suit, including Davis International, LLC, Holdex, LLC, Omni Trusthouse, Ltd., and Nexis Products LLC, were represented and asserted an acquirer-in-good-faith defense. The court determined Foston Management, Ltd. had not proved its status as an acquirer in good faith and required the transfer of Foston's stock back to

the Russian entities that claimed it. The Moscow City Court on March 30, 2001, reversed the decision of the Solntsevsky court on the ground that that court had not given Foston Management adequate notice of the dispute. (A-1970) Subsequently, in a decision dated November 30, 2001, the Solntsevsky court withdrew its judgment on the ground that E.N. Ivanov, the one individual defendant in the case, had established his status as a good faith acquirer within the meaning of Article 302 of the Civil Code. (A-1980) With only firms remaining in the dispute, the court determined that it lacked jurisdiction and directed the petitioners to pursue their claim in the arbitrazh court system. In a decision rendered May 22, 2002, an appellate body of the Moscow city court upheld this decision, (A-2246) but on August 22, 2002, the Presidium of the Moscow City Court ruled that the trial court did have jurisdiction and ordered a new hearing before different judges. (A-2256) The Solntsevsky court on November 4, 2002, ordered VNK to restore the claimed shares to Foston. On August 13, 2003, that court granted further relief to Foston, (A-2283), and the Moscow city court affirmed on October 30, 2003. (A-2170) On July 2, 2004, the Moscow City Court rejected the exercise of supervisory jurisdiction over the 2003 decision. (A-2205) The chairwoman of that court confirmed this decision on December 7, 2004. (A-2221)

57.   On November 22, 2000, the Kalmykia arbitrazh court issued an order invalidating the prior conveyance of a large block of GOK stock from Vanadium Trading House OOO, a limited liability company that conducted financial operations on behalf of GOK, to Polyprom OOO (a plaintiff in the Base Metal Trading litigation). (A-1884) The court ruled that the person signing the sales contract lacked the authority to do so, and that, in addition, under the Russian law governing limited liability companies Vanadium Trading House OOO could not sell such a large block without the approval of GOK's board of directors. On April 17, 2001, the North

30

Caucasus Circuit Federal Arbitrazh Court reversed that decision on the ground that the lower court had not considered sufficient evidence to justify the order. (A-1895) That court, however, did reject Polyprom's claim that it had not received sufficient notice of the suit. On remand, the Kalmykia arbitrazh court considered additional evidence and on July 5, 2001, ordered the invalidation of the earlier sale of GOK stock to Polyprom. (A-1904) On September 10, 2001, that court ordered that Holdex LLC be brought into the case as party. (A-1919) The appellate branch of that court upheld these decisions on November 9, 2001. (A-1910) On January 21, 2002, North Caucasus Circuit Court reversed these decisions, holding that the first instance court had failed to consider Holdex's possible status as a purchaser in good faith. (A-2084) On March 12, 2002, the Kalmykia court again upheld GOK's claim to that the transfer was invalid. (A-2094) The North Caucasus court reversed on July 2, 2002, as to the shares that Holdex claimed as purchaser from Polyprom, on the ground that Holdex had not been allowed fully to participate in the proceeding and to defend its rights as a subsequent purchaser of the stock. (A-2344) On September 10, 2002, the Kalmykia court again invalidated the transfer to Polyprom. (A-2269) The appellate instance of the Kalmykia court rejected Polyprom's appeal on February 4, 2003. (A-2143) The North Caucasus circuit on May 20, 2003, again reversed, ruling that Holdex had received inadequate notice of the Kalmykia proceeding. (A-2150) After a proceeding in which Holdex did not appear, the Kalmykia court on April 27, 2004, again determined that Holdex had no right to the stock. (A-2197)

58.     Litigation brought by Foston Management, Ltd. against VRK, and by three Russian firms against Foston, among other companies, over the ownership of large blocks of GOK stock remains pending in the Sverdlovsk arbitrazh courts. In particular, that court on March 3, 2004,

ordered a delay in the suit brought by the three Russian firms to allow proper notification of Foston and the other foreign defendants. (A-2289)

59.    Finally, on April 24, 2001, Russian prosecutors initiated an investigation into the sale in October 2000 of a large block of GOK stock belonging to plaintiff Davis by Eugen Aschenbrenner to Newstart Group Corp. Aschenbrenner undertook this transaction pursuant to a power of attorney given to him by Davis. After investigation, the Russian Ministry of Internal Affairs issued a report on March 31, 2004, determining that Aschenbrenner had acted properly and within his authority. (A-2294) I have reviewed this power of attorney and the contract signed by Aschenbrenner on behalf of Davis selling GOK shares to Newstart Group Corp. (A-2002) The power of attorney states that it is to remain in effect until December 3, 2000, and the contract of sale is dated October 6, 2000. The contract of sale contains a governing law clause that specifies that "any dispute or disagreement arising between the Purchaser and the Seller under, or in connection with, this Agreement" shall be subject to arbitration in the London Court of Arbitration. Under the Russian Code of Civil Procedure and the Arbitrazh Procedure Code, as well as the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, to which Russia is a party, a Russian court would entertain a motion to defer judicial proceedings relating to the ownership of the stock pending referral of the dispute to the designated arbitration forum. A Russian court then would determine whether to enforce the arbitration award, based on the criteria contained in the New York Convention. In particular, the Russian courts would consider the arbitration contemplated in the sales contract as a "foreign arbitration" within the meaning of the New York Convention.

General Shareholders Meeting of November 19, 2002

60.     At a general shareholders meeting on November 19, 2002, GOK received an increase in its chartered capital and amended its charter. Plaintiffs filed suit in the Sverdlovsk arbitrazh court challenging the validity of these decisions. On August 27, 2003, that court ruled that the meeting complied with the Law on Joint Stock Companies and upheld the results of the meeting. (A-2165) The Urals Circuit court reversed this decision on January 14, 2004, because the trial court had not fully considered the claim that the official list of registered shareholders did not comply with the actual ownership rights of plaintiffs. (A-2176) After taking further evidence, the Sverdlovsk arbitrazh court on April 20, 2004, ruled that plaintiffs have failed to prove that they owned the GOK stock that they claimed. (A-2187) The Urals Circuit court allowed an appeal of this decision, but after a hearing affirmed the trial court on July 29, 2004. (A-2212)

61.     Two common threads through all of these lawsuits are the correct interpretation of the Russian law of corporate governance and the existence of particular facts, such as whether particular documents were forged or otherwise altered. Both of these questions are matters for which a Russian court has unique expertise. In particular, determining whether particular contracts, powers of attorney, and other legal documents, all prepared in Russian for Russian legal purposes, complied with the requirements of Russian law would best be resolved by a Russian court.

62.     In the course of the Russian litigation, the courts demonstrated sensitivity to the basic requirements of due process. The Russian Civil Procedure Code and Arbitrazh Procedure Code condition all judicial orders on the provision of notice and an opportunity to be heard to the respondent. Where violations of these norms occur, the appellate courts have demonstrated their

capacity to reverse any unlawful judicial action. In the course of the case instituted in the Tverskoy court, for example, the Moscow appellate court of general jurisdiction on March 26, 2001, overturned the November 21, 2000, order of the first-instance court on the ground that the members of the GOK board, respondents in that case, had not received notice of the suit. In the dispute over the shares alleged to have been transferred improperly to Ural Start, the Moscow court reversed the September 29, 2000, decision of the Solntsevsky court on the ground that it had not given adequate notice of the suit to several of the persons who are plaintiffs in this litigation. And in the Kalmykia litigation, an appellate court fully considered the issue of whether Holdex had received proper notice of the suit.

<u>The Legitimacy of the Russian Court Proceedings Concerning GOK</u>

63.  The arbitrazh courts in Moscow, Sverdlovsk, Kalmykia, and Chelyabinsk and manifold courts of general jurisdiction in Moscow, Sverdlovsk and St. Petersburg have addressed claims that the ousting of GOK's incumbent management in January 2000 and the subsequent disputes over governance and ownership, including the Sverdlovsk bankruptcy proceedings, entailed violations of Russian law. Some of these courts also have addressed claims that various judicial determinations lacked validity because of improper notice given to the subject of the litigation. The Russian courts have considered these claims conscientiously and demonstrated a capacity both to uncover procedural violations in lower court proceedings, including lack of notice, and to apply a body of substantive law that conforms to acceptable standards of commercial practice. Based on my review of the judicial decisions discussed in this declaration, I am unaware of any reason for a U.S. court not to give comity to their determinations.

Conclusion

64.  For all these reasons, I believe that Russia would provide an adequate alternative forum for litigation of the sort that has been brought against defendants in this action. I also believe that the various decisions reached by the Russian courts involving the interests at stake in this litigation appear to have complied with basic standards of fairness and do not violate any public policy of the United States.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct. Executed on March 23, 2005, at Charlottesville, Virginia.

　　　　　　　　　　　　　　　　　　　　　　　　　／s／ Paul B. Stephan III
　　　　　　　　　　　　　　　　　　　　　　　　　Paul B. Stephan III