# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------x
DAVIS INTERNATIONAL, LLC, HOLDEX,          :
LLC, FOSTON MANAGEMENT, LTD, and           :
OMNI TRUSTHOUSE, LTD,                       :
                                            :
                     Plaintiffs,            :
          v.                                :      Case No. 04-1482-GMS
                                            :
NEW START GROUP CORP., VENITOM             :
CORP., PAN-AMERICAN CORP., MDM              :      Declaration of Professor
BANK, URAL-GORNO METALURAGICAL             :      Sergei Nikolaevich Lebedev
COMPANY, EVRAZ HOLDING, MIKHAIL            :
CHERNOI, OLEG DERIPASKA, ARNOLD            :
KISLIN, MIKHAIL NEKRICH, and               :
ISKANDER MAKMUDOV,                          :
                                            :
                     Defendants.            :
------------------------------------------------------------x
```

I, Sergei Nikolaevich Lebedev, of Staroalekseevskaya st., 16 app. 49, Moscow, 129626, Russia, declare:

## I.    Personal details

1.    I am a citizen of the Russian Federation.

2.    I have the following qualifications and experience: I graduated from the Law School of the Institute of Foreign Trade in Moscow in 1957. In 1961/62, I studied at the University of Michigan School of Law. I received the degree of Candidate of Legal Sciences (Ph.D. equivalent) in 1963 at the Moscow Institute for International Relations ("MGIMO"), where I currently work as a Professor of Law. In 1985, I received the degree of Law Professor. In 1994, I was awarded the title of the "Distinguished Jurist of the Russian Federation."

3.    For thirty years, until December of last year, I was the Head of the Private International and Civil Law Department at the Law School of MGIMO. In Russia, as in the United States, the

{00018651}

subject matter of civil law encompasses, inter alia, the areas of contracts, delicts (torts), and, more generally, remedies for violation of civil-law rights, including economic harm. Among other things, I have translated many foreign laws into Russian, including the *Uniform Commercial Code*. I have taught these subjects for many years as part of courses on private international law.

4.      I have also been qualified and served as an "arbitrazh juror" in court proceedings on civil disputes in Russia. In the Russian commercial courts , known as "Arbitrazh Courts" (described below), each party to the dispute may nominate one arbitrazh juror, who serves alongside the presiding judge. These jurors perform a function more akin to a judge in a bench trial in the United States than to that of an American juror. Indeed, the procedural rules for the Arbitrazh Courts provide that the two arbitrazh jurors have essentially the same powers and duties as the presiding judge. (*See The Arbitrazh Procedural Code*, adopted in 2002 ("APC"), Article 19). Therefore, like the presiding judge, the jurors are entitled to ask questions of the parties and witnesses, examine presented evidence, and the verdict is reached unanimously or by two out of three majority of the jurors and the judge. (*See* APC, Article 20.) I have acted in the capacity of arbitrazh juror in more than 10 civil commercial cases.

5.      I have been a member of the President's Council for Development of Justice since 1996. This council is comprised of members of the various segments of the legal community in Russia, including members of the judiciary, academicians and practicing attorneys. It is charged with advising with respect to the functioning and reformation of the courts, improvement of procedural rules and commenting upon draft legislation relating to the judiciary.

6.      I have also acted as an arbitrator in over 600 international arbitration cases in Russia and abroad, including Paris, Stockholm, London, Kiev, Beijing, Geneva, and Warsaw.  Since 1972, I have been the President of the Maritime Arbitration Commission, as well as a member of the Presidium and an arbitrator of the International Commercial Arbitration Court of the Chamber of Commerce and Industry of the Russian Federation, Moscow.  I serve as an expert for many international organizations including UNCITRAL, UN Compensation Commission, International Council for Commercial Arbitration, and participated in a number of diplomatic conferences for the adoption of conventions, including international sale of goods, sea carriage, arbitration.  I am one of two Vice Presidents in two Russian law associations:  the Association of International Law and the Association of Maritime Law.  I have authored several books and more than 150 other publications on the legal issues of international commerce and arbitration.  (A concise list of these publications is attached hereto as Exhibit A.)

7.      In connection with my work in the fields of International and Civil Law, I have -- for the last 40 years -- monitored and reviewed the decisions of Russian courts concerning disputes involving foreign litigants.  For the most part, of course, such cases involve at least one Russian party and one or more foreign parties.

## II.      Russian Law Issues Relevant to the Present Case

8.      I have reviewed the Complaint, which plaintiffs Davis International, LLC, Holdex, LLC, Foston Management, LTD, Omni Trusthouse Ltd. (hereinafter referred to as "Plaintiffs") filed against the defendants New Start Group Corp., Venitom Corp., Pan-American Corp., MDM-Bank, Evraz Holding, Mikhail Chernoi, Oleg Deripaska, Arnold Kislin, Mikhail Nekrich and Iskander Makhmudov to this court (hereinafter referred to as "Defendants").

Also I was provided with several other documents in connection with forming my opinion. (A list of these documents is attached hereto as Exhibit B.)

9.    I understand from the Complaint that Plaintiffs assert the following claims: (1) claims alleging conversion of their shares in Kachkanarsky GOK (hereinafter referred to as "GOK") by Defendants' acts of fraud, bribery, and extortion, including their claims for equitable relief; and (2) claims alleging the violations by Defendants of the US RICO Act, including, among other things, acts of extortion, fraud and bribery.

10.    On behalf of Defendants, I have been asked to provide an expert opinion addressing whether courts of the Russian Federation (sometimes referred to herein as "RF") would be an adequate alternate forum for examination of Plaintiffs' claims, in particular:

- Whether Russian law provides adequate remedies for the types of claims asserted by Plaintiffs?

- Whether Russian procedural law contains adequate provisions, regulating matters of court procedure and collecting of evidence?

- Whether the Russian judiciary is independent and can be expected to decide cases fairly based on the facts and the law?

- Whether Russia has a significant interest in having this dispute resolved by Russian courts?

11.    I have read the Declarations of Professor Igor Petrukhin submitted in connection with the lawsuit that Plaintiffs filed in the US Federal Court for the Southern District of New York against many of the same Defendants, titled *Base Metal Trading v. Russian Aluminum*. My opinion does not differ in substance from Prof. Petrukhin's opinion with regard to the subjects he covered.

III.    **Russian Law Provides Adequate Remedies for The Types of Claims Asserted By Plaintiffs**

*Brief Description of Russian Court System*

12.    The judicial system of the Russian Federation is made up of several types of courts: these are the Constitutional Court, Courts of General Jurisdiction (dealing with both civil and criminal matters), *"Arbitrazh"* courts, justices of the peace, and military tribunals.

13.    If Plaintiffs were to bring claims in Russia for the types of harm they allege in the Complaint, they, depending on the nature of particular claim and persons involved, may choose to pursue those claims in Courts of General Jurisdiction (in civil or in criminal proceedings, if such were initiated) or Arbitrazh Courts. The matter of civil proceedings in Courts of General Jurisdiction is regulated by the Civil Procedural Code (hereinafter "CPC" or "CPC RF"), the proceedings in the Arbitrazh Courts are regulated by the Arbitrazh Procedural Code (hereinafter "APC" or "APC RF"), and criminal proceedings in Russia are governed by the Criminal Procedural Code of the Russian Federation (hereinafter "CrC" or "CrC RF"). I will briefly outline the types of disputes that fall within the jurisdiction of the Courts of General Jurisdiction and the Arbitrazh Courts.

14.    Article 22.1 of the CPC provides that the Courts of General Jurisdiction shall consider and resolve:

*"...contentious cases with the participation of citizens and organizations, of state power bodies and of local self-government bodies on the protection of the violated or the disputed rights, freedoms and lawful interests, in the disputes arising from civil, family, labour, housing, land, ecological and other legal relations..."*

{00018651}                                    - 5 -

15.    Article 22.2 of the CPC provides that:

*'The courts shall consider and resolve the cases with the participation of foreign citizens, of stateless persons, of foreign organizations and of organizations with foreign investments, as well as of international organizations.'*

16.    Article 22.3 of the CPC provides that the Courts of General Jurisdiction shall determine cases falling within Articles 22.1 and 22.2:

*"...with the exception of economic disputes and of the other cases, referred by the federal constitutional law and by the federal law to the jurisdiction of the arbitration [Arbitrazh] courts."*

17.    The word *"arbitrazh"* translates into English as *"arbitration."* Despite being so named for historical reasons dating back to the Soviet Union, Arbitrazh Courts are civil courts having nothing to do with arbitration. They are courts that hear commercial disputes between companies and individual entrepreneurs, both Russian and foreign.

18.    The Arbitrazh Courts were recently re-structured as a four-tiered system. The activity of Arbitrazh Courts is currently regulated by the 1995 Federal Constitutional Law *"On Arbitrazh Courts in the Russian Federation"* (with latest amendments of March 25, 2004) and the APC.

19.    According to the above-mentioned law the first tier of Arbitrazh Courts are 81 Arbitrazh Courts of regions of RF. These are the courts of first instance. The second tier are the 20 appellate Arbitrazh Courts, which review both the factual and legal bases of decisions made by courts in the first tier (which have not yet come into legal force). A second appeal of legal issues, called "cassation review," may be had to one of 10  Federal Circuit Arbitrazh

Courts, and the Supreme Arbitrazh Court, heading the system of Arbitrazh Courts in the Russian Federation, may, among other things, review acts of the other Arbitrazh Courts as well (in the course of so-called "supervisory review"). All courts may reconsider its previous decisions on the basis of newly discovered circumstances (provided the requirements for such reconsideration are met).

20.    Jurisdiction of Arbitrazh Courts is set forth in Articles 27 and 28 of the APC:

*"Article 27. Cases within the Scope of Jurisdiction of Arbitrazh Courts*

*1. The scope of jurisdiction of an arbitrazh court shall extend to cases on economic disputes and to other cases connected with the exercise of business and other economic activities.*

*2. Arbitrazh courts shall settle economic disputes and shall try other cases with the participation of organizations which are legal entities, of citizens engaged in business activities without forming a legal entity and having the status of an individual businessman obtained in the procedure established by laws (hereinafter referred to as "individual businessmen"), and in the instances provided for by this Code and other federal laws, with the participation of the Russian Federation, the subjects of the Russian Federation, municipal formations, state bodies, bodies of local self-government, other bodies, officials, and formations which do not have the status of a legal entity, and citizens which do not have the status of an individual businessman (hereinafter referred to as "organizations and citizens").*

*3. Other cases may be likewise referred by federal law to the scope of jurisdiction of arbitrazh courts.*

*4. An application taken over by an arbitrazh court subject to the jurisdiction rules has to be considered by it on its merits, even though in future there will be drawn to the participation in the case a citizen without the status of an individual businessman as a third person who does not put in individual claims concerning the subject matter of the dispute.*

*5. Arbitrazh courts shall try cases within the scope of their jurisdiction with the participation of Russian organizations, citizens of the Russian Federation, as well as of foreign organizations, international organizations, foreign citizens and stateless persons engaged in business activities, or organizations with foreign investments, if not otherwise provided for by an international treaty of the Russian Federation.*

*Article 28. Jurisdiction of Economic Disputes and Other Cases Arising from Civil Legal Relations*

*Arbitrazh courts shall try in action ("based on statement of claim" – translator's note) proceedings economic disputes and other cases arising from civil legal relations which are connected with the exercise of business and other economic activities by legal entities and individual businessmen, and in the instances provided for by this Code and other federal laws by other organizations and citizens."*

21.     Article 22.4 of the CPC provides that when the Courts of General Jurisdiction receive applications, some parts of which fall within the jurisdiction the court and others within the jurisdiction of the Arbitrazh Court, and it is not possible to separate the claims, then the Courts of General Jurisdiction shall take jurisdiction over all of the claims. Where it is possible to separate the claims, then the Courts of General Jurisdiction shall decline jurisdiction in respect of those claims which fall within the jurisdiction of the Arbitrazh Courts.

### General Description of Russian Civil and Procedural Law

22.     The basis of the current system of laws in the Russian Federation is the Constitution of 1993 (hereinafter "Constitution RF"). The civil law legislation consists of the Civil Code RF (hereinafter "CC" or "CC RF") and federal laws enacted in accordance with it. Civil-law relationships may also be regulated by the under-law acts (which may not contradict the Constitution, Civil Code or federal laws), such as Presidential edicts, Governmental resolutions, acts of ministries and other federal executive bodies. All the references in the

present Declaration to the Russian law provisions shall be references to the provisions currently in force.

23.     Article 15 of the Constitution RF also provides that generally recognized principles of international law and international treaties of the Russian Federation are an integral part of the Russian legal system, and if the international treaty of the Russian Federation prescribes other rules than the ones set by law, the rules of the international treaty prevails.

24.     Article 1 of the Civil Code RF provides that the basic principles of Russian civil law are based on the recognition of the equality of the participants, the inviolability of ownership, freedom of contract, the impermissibility of arbitrary interference by anyone in private affairs, necessity of unhindered exercise of civil law rights, the restoration of violated rights and their judicial protection.

25.     The civil and arbitrazh procedural legislation contains detailed provisions guaranteeing the rights of the parties involved in any litigation.  Those rights, inter alia, include:

- the principle that all parties are equal before the law and the court; the existence of an adversarial system and the equality of the parties (Article 19 and 123 of the Constitution of the Russian Federation, Article 7 of the Federal Constitutional Law "On the Judicial System of the Russian Federation," Article 7 of the APC RF and Article 6 of the CPC RF);

- the court's obligation to notify the parties about the time and place of the hearing (Article 121 of the APC RF and Article 113 of the CPC RF), and the prohibition for any court to resolve a dispute in the absence of the party that was not duly notified about the time and  place of the hearing (par. 1 Article 153, par. 1 of Article 158, par 4 (2) of Article 270 of the APC RF; Article 167, par. 2(2) of Article 364 of the CPC RF);

- the obligation of the parties to prove all allegations they make and the right of the parties to provide evidence to the court (Articles 41, 65, 66 of the APC RF and Articles 35, 56, 57 of the CPC RF);

- the obligation of the witnesses and experts to appear in court upon request and to testify or to provide expert opinions (Articles 55 and 56 of the APC RF and Articles 70 and 85 of the CPC RF);

- criminal liability of witnesses (including those summoned at the court's own initiative) for refusal to testify, evasion of testimony, and perjury (Par. 4 of Article 56 of the APC RF, Par. 2 of Article 70 of the CPC RF, and Articles 307 and 308 of the Criminal Code of the RF); and

- availability of several instances of appellate review of cases by higher courts and the possibility to review cases due to newly discovered circumstances.

26.    The Russian CPC and APC also have provisions concerning deadlines for completing judicial proceedings. In general, the law requires that the case in arbitrazh court to be tried within 3 months after filing (Articles 134, 152 APC), (or 4 months, if court issues resolution on stay of proceedings, according to Article 158 APC) and in court of general jurisdiction – within 2 months (Article 154 CPC). If a case is reviewed by the appellate or cassation or supervisory instance (i.e. court), the period for completing the proceedings shall be longer.

27.    The Russian Federation courts' decisions, which entered into legal force, are binding on all federal and local governmental agencies, as well as on other agencies, non-governmental organizations, civil servants, all legal entities and persons, and are to be rigorously complied with everywhere in the Russian Federation (Article 6 of the Federal Constitutional Law "On the Judicial System of the Russian Federation"). Russian laws provide for enforcement of court decisions, and liability for non-compliance with Russian court decisions (Article 182,

Chapter VII of the APC RF, Articles 210, Chapter VII CPC RF, and the Federal Law "On Enforcement Process" No. 119-ФЗ of July 27, 1997).

### *The Remedial Powers of Russian Courts*

28.     Russian legislation in article 12 CC RF provides for a wide range of protections of civil-law rights (remedies). These remedies include: (1) recognition of right; (2) reinstating the situation that existed before the violation of the right and stopping the activities that violated the right or created a threat of its violation; (3) declaration of an avoidable transaction as invalid and applying the consequences of its invalidity or applying the consequences of the invalidity of a void transaction; (4) declaration of invalidity of state agency or municipality acts; (5) self-protection of a right; (6) judgment for specific performance of an obligation; (7) compensation for damages; (8) recovery of penalties, and compensation of moral harm; (9) termination or alteration of a legal relation; (10) non-application by court of state agency or municipality act which contradicts law; (11) other means prescribed by law.

29.     Russian Courts have broad powers in connection with such remedies.  For example, with respect to damages, according to article 15 CC RF, a person whose right is violated is entitled to claim full compensation for the damages caused to it, unless an applicable law or contract between the parties provides for compensation of damages in a lesser amount. It is important to note that, according to the same article of the CC, damages are regarded as expenses that a person whose right has been violated made or shall have to make in order to restore the violated right, loss or damage to the property (actual losses), as well as the lost income that would have been received in ordinary course of business if the right had not been violated (lost profit).

30.    The general rules of articles 12 and 15 of the CC RF are particularized by special provisions, dedicated to the liability for the breaches of particular types of contractual obligations (located in conforming section of the Civil Code), liability for causing harm and provisions on unjust enrichment.  For example, there are remedies for wrongfully taking the property of a person, whether directly or indirectly, for injuries due to fraud, and for causing damage to company by culpable acts.

31.    Taking into consideration principles of jurisdiction of courts of General Jurisdiction and Arbitrazh Courts described in par. 14-21 hereto over particular types of disputes, and very broad provisions of the CC regarding the available means of protection, it is clear that Russian legislation provides broad and adequate opportunities for the plaintiffs (including the Plaintiffs in the present case) to protect their rights and legitimate interests by applying to Russian courts.   The remedies afforded by Russian law for the specific claims asserted by Plaintiffs are addressed in the following sections.

### *Claims Related to Alleged Conversion of Plaintiffs' Assets*

32.    According to the Complaint, one of Plaintiffs' claims is for the "conversion" of their shares of GOK by the Defendants through acts of fraud, bribery, and extortion, and, accordingly, the loss of Plaintiffs' control over GOK.

33.    Russian civil law adheres to the doctrine of general delict (without separation on particular types of torts, as in common law). The CC RF provisions on non-contractual (delict) liability may be applied to this claim.  According to article 1064 CC RF of the Code, damage caused to the property of a legal entity should be compensated in full by the person who caused such damage, whether directly or indirectly. A law or an agreement may place an obligation on a person who caused damage to pay the compensation to the aggrieved person above compensation of damages.

34. When claiming damages for the loss caused, a plaintiff must prove (art. 1064 CC): (1) the illegitimacy of activity of the person who caused the losses (acts or inaction); (2) the existence of plaintiff's losses; (3) causation between the illegitimate activity of the person causing the harm and the plaintiff's losses. The last, fourth element of general delict – the fault of the person causing harm – is presumed, but a person who allegedly caused losses would be released from paying the damages if he proves that the losses were not caused by him (par. 2 art. 1064 CC).

35. Unjust enrichment, as stated in article 1102 CC RF, provides another important category of non-contractual obligations. According to this article, a person who acquired or maintained property at the expense of another person and without proper grounds must return to the latter all property unduly acquired or maintained (unjust enrichment) or pay its price if returning the property is impossible.

36. In addition, according to article 1103 of the CC RF provisions on unjust enrichment are also applied to the claims for damages out of causing harm, including *inter alia*, by the bad faith activity of a person enriched.

37. The claims of the Plaintiffs arising out of so-called "conversion" of property by fraudulent and other illegitimate acts of legal entities and natural persons is covered by Russian doctrine of general delict, provided the Plaintiffs would prove all the necessary elements of delict described above. The Defendants would be obliged to compensate the proprietary and other types of damages (including moral or business reputational damages) caused to the Plaintiffs. If unjust enrichment of the Defendants at the Plaintiffs' expense also took place then they would have to return to the Plaintiffs unduly acquired property or compensate its price.

38.     According to the Complaint the cause of proprietary damage to the Plaintiffs, inter alia, was the acts of fraud, bribery and extortion done by the Defendants. According to the Criminal Code of the Russian Federation the said acts are criminally punishable crimes under Russian law and conform with the following felonies under Criminal Code RF: fraud (art. 159 CrC RF); extortion (art. 163 CrC RF); giving a bribe (art. 291 CrC RF).

39.     As a result, from the procedural viewpoint, Plaintiffs would be entitled to either file their claims in court in accordance with civil or Arbitrazh Court procedure, or employ alternative mechanism of filing a civil claim in the context of criminal case. For this matter they would need to refer to Russian law enforcement agencies with complaint concerning a crime and, if the criminal case would be initiated, to file a civil claim in the criminal case.

40.     Finally, based upon their "conversion" claim, Plaintiffs seek the "equitable relief" of either having the shares returned to them or having the "corporate veil" of some companies pierced in order to hold individuals personally liable for any judgment of those companies. As stated above, it is possible for Russian courts to grant a remedy of returning shares to a party that proves the elements of a delict or unjust enrichment claim. In addition, several articles in the CC RF provide that one or more persons may be secondarily liable for the debts of a legal person (corporation) where that legal person does not have sufficient funds itself. For example, par. 3 article 56 provides, in relevant part, as follows:

*If the insolvency (bankruptcy) of a legal person is caused by the founders (or participants), by the owner of the property of the legal person, or by other persons that have the right to give instructions obligatory for this legal person or otherwise have the possibility to determine its actions, then subsidiary liability for its obligations may be placed upon such persons in case of insufficiency of the property of the legal person.*

Articles 65 and 105 of the CC RF likewise provide for third person liability where a legal person is unable to satisfy its creditors. And, to the extent that Delaware law applies to the question of piercing the corporate veil of companies incorporated in Delaware, Russian courts pursuant to Russian conflict of law rules, will apply that law. Accordingly, to the extent that Plaintiffs can prove the elements of their claims, Russian courts could permit the type of equitable relief that the Plaintiffs are seeking in the Complaint.

### Claims Based on the Violation of RICO Act

41.    The Complaint indicates that one of Plaintiffs' principal claims is for the violation by Defendants of the US RICO statute (predicated on alleged acts of extortion, fraud, bribery etc.), which allegedly caused substantial damage to the Plaintiffs.

42.    While Russia has no single legislative act analogous to RICO, but the acts that Plaintiffs complain of (bribery, fraud, extortion etc.) are criminally penalized on the basis of other Russian legislation.

43.    As described above, Russian law is based on the doctrine of general delict (see par. 33 above). Moreover, Russian criminal code provides criminal liability for all above-mentioned acts (see par. 38 above). As a result, Plaintiffs are entitled either to file a claim on compensation of damage caused to them directly to the Courts of General Jurisdiction or to the Arbitrazh Court or to file a civil claim in the criminal proceedings (in case of initiation of the criminal case).

44.    Therefore, Plaintiffs seeking relief from a competent Russian court would have procedural law and material law provisions for compensation of damages in the same proven amount as

before the present Court. The only exception, of course, would be RICO Act provision on

triple damages which has no analogue in Russian law.

### *Available Methods of Challenging Adverse Judicial Acts*

45.    Although Plaintiffs generally claim that their shares in GOK were transferred from them as

a result of fraud or corrupted court proceedings or other type of misjudgment, it is unclear

from Plaintiffs' Complaint what steps they have taken to contest that fraud, corruption or

misjudgment. Russian legislation provides many avenues for plaintiffs (and, therefore, the

Plaintiffs in the current case) and other participants of proceedings to challenge the judicial

acts of Russian courts. There are numerous procedures at Plaintiffs' disposal. The

paragraphs below will highlight the most important avenues of redress which are relevant to

the situation described in the Complaint.

46.    If plaintiffs or any other participant of arbirtazh proceedings are not satisfied with Arbitrazh

Court decision they (before the court decision entered into legal force, that is one month

after the decision is issued) may appeal it to the appellate Arbitrazh Court (art. 257 APC).

47.    The Resolutions of the appellate court and the first instance Arbitrazh Court decisions,

which entered into legal force may be appealed to the Circuit Arbitrazh Courts for the

cassation review (Article 273 APC). Both appellate review and cassation review are ordinary

reviews and are available for all participants of Arbitrazh Court proceedings as of right, do

not require any approval of authorities.

48.    Supreme Arbitrazh Court RF is empowered to conduct supervisory review of all acts of

Arbitrazh Courts which entered into legal force. Persons participating in the proceedings

are entitled to challenge an Arbitrazh Court act in the course of supervisory review if they

believe that the act has considerably violated their rights and legitimate interests in the sphere of commercial and other economic activity as a result of violation or misapplication by Arbitrazh Court of material law and procedural law provisions (Article 292 APC). The redress to the Supreme Arbitrazh Court is possible when all other means of appeal are exhausted.

49.    Another important avenue of redress is review due to newly discovered circumstances (Article 309 APC RF). The motion of this type is to be filed to the arbitrazh court which issued the original decision. Article 311 lists grounds for review on the basis of newly discovered circumstances:

*The following shall be seen as grounds for revising judicial acts in accordance with the newly revealed ("newly discovered" – translator note) circumstances:*

*1) circumstances, essential for the case, which have not been and could not have been known to the applicant;*

*2) falsification of proof or a deliberately wrong conclusion of the expert, or a deliberately falsified testimony of the witness, or a deliberately incorrect translation, which has entailed the adoption of an illegal or unsubstantiated judicial act in the given case, established by the court sentence that has come into legal force;*

*3) criminal actions of the person taking part in the case, or of his representative, or the criminal actions of the judge committed in considering the given case, established by the court sentence that has come into legal force;*

*4) the repeal of the judicial act of the arbitrazh court or of the court of general jurisdiction, or of the resolution of another body, which has served as a ground for the adoption of the judicial act on the given case;*

*5) a transaction, recognized as invalid by the judicial act of the arbitrazh court or of the court of general jurisdiction, which has come into legal force, and which has entailed the adoption of an illegal or of an unsubstantiated judicial act on the given case;*

6) recognition by the Constitutional Court of the Russian Federation as not corresponding to the Constitution of the Russian Federation the law applied by the arbitrazh court in the particular case, in connection with the adoption of the decision on which the applicant has applied to the Constitutional Court of the Russian Federation;

7) a violation, established by the European Court for Human Rights, of the provisions of the Convention on the Protection of Human Rights and of Basic Freedoms when considering a concrete case by the arbitration court, in connection with the adoption of the decision on which the applicant has applied to the European Court for Human Rights.

50.    As seen from above, one of the grounds for reopening the case on the basis of newly discovered circumstances is that a judge committed a crime when hearing the case and has been sentenced for it. If the aggrieved party (the Plaintiffs in the case) believes a certain judge committed a crime while deciding their case (accepted bribes, intentionally misapplied the law etc.), the party has a full right to refer to law enforcement body asking for a criminal liability of the judge, which, in turn, if the judge is found guilty by court, might result in ultimate reexamination of the original case in the course of newly-discovered circumstances review.

51.    Further in this respect, article 1070 of the CC RF permits damages if a person has been harmed due to the illegal conduct of a judge (the damages in such case shall be paid by the Treasury of the RF).

52.    Another additional and subsidiary means of opposing the improper actions of a judge is through the provisions on disciplinary liability of judges. Apart from a criminal sentence against a judge (which serves as a basis for termination of his status as a judge), the judge may be subjected to disciplinary liability, *inter alia*, in the form of termination of his status as a judge for the violation of the Law "On the Status of Judges in RF" and of the "Ethical

Code of Judiciary". The aggrieved party may apply to chairman of the court at question or the chairman of the higher court or judicial community official body. If the application proves to be justified, then the said persons would file a motion on termination of judge's status to the competent judges' qualification committee, which is empowered to take such decision.

53.   There is nothing in Plaintiffs' Complaint to suggest that Plaintiffs used any of these or other avenues of judicial redress in Russia.

**IV.   Parties May Expect To Have Their Cases Fairly Adjudicated In the Russian Courts**

*By Law, The Russian Court System is Independent*

54.   According to article 10 of the Constitution RF, the State power of the Russian Federation is divided onto legislative, executive and judicial branches. The bodies of legislative, executive and judicial branches are independent.

55.   The Constitution of the RF states the principal guarantees of court system independence: judges are independent (art. 120); judges are irremovable (art. 121); judges are immune (art. 122); proceedings in all courts are open for public (art. 123).

56.   These Constitutional provisions are particularized in the Russian Federation Law "On the Status of Judges in the Russian Federation" of June 26, 1992 with further amendments and by the Federal Constitutional Law "On the Judicial System of the Russian Federation" of December 31, 1996 with further amendments.  In particular:

   •   it is prohibited under the penalty of law to obstruct justice in any way (Articles 9 and 10 of the Law "On the Status of Judges in the Russian Federation");

- judges are appointed for life (Article 14 of the Federal Constitutional Law "On the Judicial System of the Russian Federation"); and

- judges' powers may only be terminated on grounds specified by law and only by the judiciary, but not by governmental agencies (Articles 9, 12.1, 13, 14 of the Law "On the Status of Judges in the Russian Federation").

57.    According to Art. 123 of the Constitution RF the adjudication is effectuated on the principles of competitiveness and equality of the parties. The above-mentioned Laws "On the Status of Judges in the Russian Federation" and APC, CPC contain detailed provisions guaranteeing the procedural rights of the parties. Some of the most important and relevant guarantees are described in brief in par. 25 above.

### *In Practice, the Russian Court System Functions Fairly*

58.    Not only does the law provide that the judiciary is to be independent, free from obstruction of justice and the parties equal, these principles are generally true in practice as well. While no court system of which I am aware functions perfectly and without any corruption, it is my opinion that parties may reasonably expect their cases to be decided fairly on the basis of the law and facts and not due to corruption or improper influence.

59.    More specifically, I disagree with assertions by plaintiffs' experts in similar cases that small, foreign plaintiffs cannot receive impartial treatment from the Russian courts in cases against companies owned or controlled by wealthy Russian business magnates. I know about publications, inter alia, in mass media, containing criticism against Russian judges. However, I am aware of no persuasive evidence that leads me to believe that to be the case. On the contrary, based on my interactions with attorneys, judges, academicians and others involved in the Russian legal system, as well as review of very substantial number of court decisions

involving foreign parties, I believe that, as a whole, the Russian legal system provides a fair forum, regardless of the identity of the parties.

60.   Finally, although I have not reviewed the court decisions in Russia related to plaintiffs' allegations concerning GOK (which I understand to be the province of a different Defendants' expert), I have been informed that there were approximately 87 such decisions, rendered by numerous different judges, in several different courts, throughout the Russian judicial system. I have been further informed that of these 87 decisions, approximately 17 were favorable to the Plaintiffs. First, the fact that a substantial number of courts ruled in Plaintiffs' favor belies the notion that an unknown foreign plaintiff can not get a fair hearing in a Russian court. Second, and more importantly, it is my opinion, based on my many years of experience, that it is simply not credible that all, most, or even a substantial number of, the 70 separate court decisions that Plaintiffs lost concerning GOK were procured through corruption or undue influence.

## V.    Russia Has A Substantial Interest In Having This Dispute Decided By Russian Courts

61.   In the Complaint, the Plaintiffs directly and indirectly raise number of allegations of fraud, corruption, bribery not only in relation to the Defendants, but also certain Russian judges, state authority representatives (including high rank state officials, for example, Governor of Sverdlovsk region). Also they raise general allegations that Russian judiciary is corrupt and inefficient.

62.   Plaintiffs' complaint contains sweeping allegations concerning litigation and bankruptcy proceedings in Russia. These allegations include the claims that:

- the takeover of GOK was initiated by a "sham" bankruptcy petition by a Russian company (Compl. par. 79-87) and such petition was approved by a Russian court (*Id.*);

- a Russian individual was appointed external manager of GOK and his appointment was approved by another Russian court allegedly under the influence of governor of Sverdlovsk region (*Id.*); and

- the defendants were then allegedly able to transfer the shares to defendant-controlled companies, which according the Complaint, "is a relatively common method <u>in Russia</u> by which organized crime groups seize control of economic enterprises." (Compl. par. 88) (emphasis added).

63.    Ensuring rule of law and public order are among the most important functions of state bodies of the Russian Federation, and therefore, Russian state is directly interested that all persons, guilty of illegal activities described in the Complaint (provided it is true), inter alia, judges, state officials, arbitrazh managers, were brought to liability (civil-law liability, administrative, disciplinary and criminal liability).

64.    Russia has substantial interest to have the present case adjudicated in Russia also due to the fact that Kachkanarsky GOK is a very important link of mining industry which is of strategic importance for Russian economy.

65.    If the Plaintiffs filed their claims to Russian judicial and enforcement authorities, they would not only obtain a possibility to remedy the damages inflicted upon them, but also assisted the elimination of instances violation of law and bringing those at fault to liability.

66.    In this regard it is important to note important power of Russian courts, stated in art. 226 CPC, according to which in the instances of violation law rules, the court has the right to issue a special ruling and to forward it to the corresponding organizations or to the corresponding official persons, which (who) are obliged to inform it of the measures they have taken in the course of one month. If no information about the taken measures comes

in, upon the guilty official persons may be imposed a fine in the amount of up to ten minimum monthly wages established by federal law. The imposition of a fine does not relieve the corresponding official persons of their duty to report on the measures taken in accordance with the special ruling of the court.

67.    Part 3 of the said article is of the most importance, according to which if the court reveals the signs of a crime in the actions of a party of the other participants in the case, of the official or another person, while considering the case, it shall inform the public prosecutor to this effect. In this manner Russian court when deciding private dispute may assist fighting crime and ensuring public order in the Russian Federation.

68.    Accordingly, Russia has a significant interest in having this case resolved by Russian courts.

**Conclusion**

On the basis of the above in response to the question posed to me in par. 10, it is my opinion that state courts of the Russian Federation (either courts of general jurisdictions or arbitrazh courts) provide an adequate alternative forum for Plaintiffs' claims.

Moscow, Russian Federation

25 March 2005                    Lebedev S.N.  _____/S_____

# EXHIBIT A

CONCISE LIST OF PROF. S.N. LEBEDEV'S PUBLICATIONS

1. *Международный торговый арбитраж*, М. 1965 (219 с.) [International trade arbitration, Moscow 1965 (p.219)].  (Russian)

2. *Гражданское и торговое право капиталистических государств.*[Civil and trade law of capitalist states], Chapters on work and labor contracts (p. 298-307); and insurance (p. 336-349). Textbook. Moscow 1966.  (Russian)

3. *Review of English Court's Decisions on the Application of the "Doctrine of Frustration" in Connection with Closure of the Suez Canal in 1956.* CMEA, Bureau for Coordination of Chartering Vessels, Annex to "Information Bulletin", Moscow August 1967 (80 p.).  (Russian and English)

4. *Экспортно-импортные операции. Правовое регулирование.* [Export-import operations. Legal regulation.] Chapters on insurance (p. 236-252) and settlement of disputes involving Soviet foreign trade organizations (p. 297-317). Manual. Moscow 1970.  (Russian)

5. *The Law of the Union of Soviet Socialist Republics (as applied to relations in foreign trade).* (co-author). In the Digest of Commercial Laws of the World. Oceana Publications, New York 1970 (63 p.).

6. *The Law of the Union of Soviet Socialist Republics (as applied to Civil Law and Procedure Relations in Foreign Trade).* (co-author). In the Digest of Commercial Laws of the World. Oceana Publications, New York 1980 (78 p.).

7. *Maritime Arbitration Commission (Organizations and Procedure).* Moscow 1972 (43 p.).  (Russian and English)

8. *Международное сотрудничество в области коммерческого арбитража (Международные конвенции, соглашения и другие документы по вопросам арбитража).* М. 1980 (215 с.) [International cooperation in area of commercial arbitration (International conventions, agreements and other documents concerning arbitration). Moscow 1980 (p. 215)].  (Russian)

9. *International Commercial Arbitration in the Socialist Countries-Members of the CMEA,* in Extract from "Recueil des cours". The Hague Academy of International Law, v. 158, 1981 (90 p.).

10. *International Commercial Arbitration: Competence of Arbitrators and Agreement of the Parties.* Moscow 1988 (124 p.).

11. *Guide on Foreign Trade Arbitration in the CMEA Member Countries* (editor and co-author). Moscow 1983 (115 p.).  (Russian, English and Spanish)

12. *Uniform Commercial Code in the USA.* Translation into Russian (co-author), Moscow 1969.

13. *Uniform Commercial Code in the USA.* Translation into Russian (editorship, introduction, co-author). Moscow 1996.

14. *1980 Vienna Convention on the Contracts of International Sale of Goods: 10 Years of its Application in Russia,* (Turning over the Pages of History (p. 4-8)). Moscow 2001.

***

1. Contemporary Jurisprudence in Capitalist Countries Concerning Immunity of State-owned Ships, *"Maritime Law and Practice"*, ZNIIMF, 1958, No.3 (p. 59-65).

2. О применении главы IX Кодекса торгового мореплавания СССР "О вознаграждении за оказание помощи", *"Морское право и практика"*, 1959 (с. 6-14). [On application of the chapter IX of the Merchant Marine Code of USSR " On salvage money", *"Maritime Law and Practice"*, 1959 (p. 6-14)]. (Russian)

3. Расчет сталийного времени, *"Морское право и практика"*, №10, 1960 (с. 14-22). [Calculation of lay time, *"Maritime Law and Practice"*, №10, 1960 (p. 14-22)].  (Russian)

4. Вопросы признания и приведения в исполнение арбитражных решений в соглашениях СССР с иностранными государствами, *"Ученые записки"*, серия юридическая, вып.3, МГИМО, М. 1961 (с. 229-246). [Issues of

recognition and enforcement of arbitral awards in agreements of USSR with foreign states, "*Scholarly notes*", juridical series, issue 3, MGIMO, Moscow 1961 (p. 229-246)]. (Russian)

5. Contemporary Jurisprudence in Capitalist Countries Regarding Immunity of States from Foreign Jurisdiction, *"Soviet Yearbook of International Law, 1960"*, Moscow 1961 (p. 290-307).

6. Пророгационные условия сделок в международной торговле, *"Советский ежегодник международного права, 1963 г."*, М. 1965 (с. 420-440). [Prorogation terms of bargains in international trade, "*Soviet annual digest of international law, 1960*"]. Moscow 1965 (p. 420-440). (Russian)

7. Некоторые вопросы канцеллирования договора фрахтования, [Some items about cancellation of contract of affreightment, CMEA, Bureau for Coordination of Chartering Vessels, *"Information Bulletin"*, No. 9/27, М. 1966 (p. 31-45)]. (Russian and English)

8. Из советской судебной практики по морским делам, *"Торговое мореплавание и морское право"*, М. 1972, вып.6 (с. 31-38). [From soviet admiralty judicial practice, "*Merchant shipping and Maritime law*", Moscow 1972, issue 6 (p. 31-38)]. (Russian)

9. Developing Effective International Commercial Arbitration, Fifth International Arbitration Congress, *"Proceedings"*, New-Delhi 1975 (В II, p. 1-12). Reprint in *"The Arbitration Journal"* (American Arbitration Association N.Y.) vol. 30, No. I, 1975 (p. 59-73).

10. Arbitration in Soviet-American Trade Relations, *"Denver Journal of International Law and Policy"*, vol. 5, Special Issue, 1975 (p. 337-356).

11. Application of Law by the Maritime Arbitration Commission, *"Georgia Journal of International and Comparative Law"*, 1976, vol. 6, Issue 2 (p. 519-528). Reprint in *"Arbitration"* (The Journal of the Institute of Arbitrators, London), 1977, vol. 44, No. I (p. 18-24).

12. Know-how and Arbitration (co-author), Schiedsgerichtsbarkeit und geverblicher Rechtsschutz, Wien, 1977 (s. 87-92). (English and German)

13. The Foreign Trade Arbitration Commission at the USSR Chamber of Commerce and Industry, *Handbook of Institutional Arbitration in International Trade*, North-Holland Publishing Company, Amsterdam-New-York-Oxford 1977 (p. 273-296).

14. The 1977 Optional Clause for Soviet-American Contracts, *"The American Journal of Comparative Law"*, v. XXVII, Nos. 2-3, 1979 (p. 469-478).

15. Унификация правового регулирования международных хозяйственных отношений, *Юридические аспекты осуществления внешнеэкономических связей*. МГИМО, М. 1979 (с. 15-43). [Unification of legal regulation of international economic relations, *Juridical aspects of exercise of foreign economic relations*. MGIMO, Moscow 1979 (p. 15-43)]. (Russian)

16. Unification des norms juridiques dans les rapports economiques internationaux (Quelques observations générales), in "Revue de droit uniforme", t.1981 (II), UNIDROIT, Rome (pp. 1-36).

17. Некоторые "пограничные" вопросы договоров купли-продажи и морской перевозки грузов в практике Внешнеторговой арбитражной комиссии, *"Торговое мореплавание и морское право"*, 1980, вып.9 (с. 21-25) [Some frontier issues of purchase-sale agreements and maritime freight shipment in practice of Foreign trade arbitration commission, "*Merchant shipping and Maritime law*", 1980, issue 9, (p. 21-25)]. (Russian)

18. О природе международного частного права, *"Советский ежегодник международного права 1979 г."*, М. 1980 (с. 61-79). [On nature of international private law, *"Soviet Yearbook of International Law 1979"*, Moscow 1980 (p. 61-79)]. (Russian)

19. How Long Does a Foreign Award Stay Enforceable?, in *The Art of Arbitration*, Kluwer, Antwerp-Boston-London-Frankfurt 1982 (p. 213-221).

20. Вопросы заключения договоров в Конвенции ООН о договорах международной купли-продажи товаров 1980 г., *Материалы семинара по Конвенции об исковой давности и Конвенции о договорах международной купли-продажи, разработанных в рамках ЮНСИТРАЛ*, Секретариат СМЕА, М. 1983 (с. 54-69). [Issues of execution of the contracts in UN Convention on the International sale of goods 1980, *Materials of the seminar on the Convention of Limitation of Actions and Convention on the International Sale-Purchase Agreements, prepared under UNCITRAL*, Secretariat SMEA, Moscow 1983 (p. 54-69). (Russian)

21. Towards Revision of the 1955 Hague Convention, in *"Legal Aspects of Foreign Economic Relations"*, M., MGIMO, 1985 (p. 55-68).

22. New Hague Convention on the Law Applicable to Contracts of International Sale of Goods, in *"Foreign Trade"*, 1987, No. I (p. 42-46). (Russian, English, French and Spanish)

23. Международный арбитраж и проблемы защиты иностранных инвестиций, в сб. *Правовые проблемы иностранных инвестиций* "Де-юре", М., 1991 (с. 87-98). [International arbitration and the problems of security of foreign investments in the digest *Legal problems of foreign investments* " De-jure", Moscow 1991, (p. 87-98)] (in Russian).

24. Search for arbitration in Stockholm (Russian-American Optional Clause), *"Izvestia"*, 1993, Nos.103 and 112.

25. Russia: New Laws on International Arbitrations, *"Rivista dell 'Arbitrato"*, Roma, 1994, No. 3 (p. 589-595).

26. Court assistance with interim measures, in *Enforcing Arbitral Awards under New York Convention*. The Colloquium "New York Convention Day", United Nations, N.Y. 1999 (p. 24-26).

27. Международный коммерческий арбитраж и обеспечительные меры, *"Московский журнал международного права"*, 1999, №1 (с.60-68).

[International commercial arbitration and provisional measures, "*Moscow journal of international law*', 1999, №1 (p.60-68)].  (Russian)

28. New Russian Legislation on Private International Law, in *"Yearbook of Private International Law"*, Kluwer & Swiss Institute of Comparative Law, 2002, v. IV (p. 117-143) (With attached Extracts from Russian Civil Code, Family Code, Merchant Shipping Code).

29. Нормативные акты Российской Федерации на базе типовых законов, разработанных международными организациями. Учет зарубежной практики применения международных конвенций, *"Общепризнанные принципы и нормы международного права и международные договоры в практике конституционного правосудия"*, М. 2004 (с. 383-386). [Legislation of the Russian Federation on the basis of model laws, developed by international organizations. List of foreign practice of application of international conventions, "*General recognized principles and rules of international law and international treaties in the practice of constitutional justice*", Moscow 2004 (p. 383-386)].  (Russian)

# EXHIBIT B

# Documents Reviewed By Professor S.N. Lebedev

## A.

### *Davis International, LLC, et al. v. New Start Group Corp., et al.*
### *Court of Chancery of the State of Delaware  No: 04-1482-GMS*

1. Complaint;

## B.

### *Base Metal Trading SA, et al. v. Russian Aluminum, et al.*
### *Southern District of New York No: 00-cv-9627*

2. Decision, dated March 27, 2003;

3. Declaration of Prof. Petrukhin (defendants' expert), dated January 26, 2002 (in English and Russian);

4. Declaration of Prof. Stephan (defendants' expert), dated January 28, 2002;

5. Declaration of Ethan S. Burger (plaintiffs' expert), dated September 15, 2002, and Exhibits;

6. Declaration of Marina Telyukina (plaintiffs' expert), dated September 15, 2002 (English and Russian), and Exhibits;

7. Declaration of Anatoly Kleymenov (plaintiffs' expert), dated September 16, 2002, and Exhibits;

8. Supplemental Declaration of Prof. Stephan (defendants' expert), dated February 19, 2003;

9. Third Declaration of Prof. Petrukhin (defendants' expert), dated February 19, 2003 (English and Russian), and Appendix;

10. Declaration of Sergey B. Zaitsev (plaintiffs' expert), dated February 19, 2003 (English and Russian), and Exhibits;

11. Supplemental Declaration of Prof. Stephan (defendants' expert), dated February 24, 2003;

12. Second Declaration of Sergey B. Zaitsev (plaintiffs' expert), dated February 25, 2003 (English and Russian), and Exhibits;

13. Second Declaration of Victor Golubev (plaintiffs' expert), dated February 25, 2003 (English and Russian), and Exhibits;

14. Third Declaration of Sergey B. Zaitsev (plaintiffs' expert), dated March 21, 2003, and Exhibits;

15. Fourth Declaration of Sergey B. Zaitsev (plaintiffs' expert), dated March 24, 2003, and Exhibits;

16. Appellate Declaration of Sergei B. Zaitsev (plaintiffs' expert), dated September 26, 2003 (English and Russian), and Exhibits;

## C.

### *Archangel Diamond Corp. v. Lukoil and Arkhangelskgeoldobycha*
### *District Court, City and County of Denver No: 01cv6514*

17. Order, dated October 15, 2002;

18. Declaration of Prof. Stephan (defendants' expert), dated May 8, 2002;

19. Declaration of Ethan S. Burger ( plaintiffs' expert), dated May 31, 2002;

20. Reply Declaration of Prof. Stephan (defendants' expert), dated June 21, 2002;

## D.

### *Norex Petroleum v. Access Industries, et al.*
### *Southern District of New York No: 02-cv-01499*

21. Decision, dated February 18, 2004;

22. Declaration of Prof. Stephan (defendants' expert), dated October 31, 2002;

23. Declaration of Alexey Alexandrovich Kostin (defendants' expert), dated November 1, 2002;

24. Declaration of Bernard Black (plaintiffs' expert), dated June 30, 2003;

25. Declaration of Sergei B. Zaitsev (plaintiffs' expert), dated June 27, 2003;

26. Declaration of Sergei Pashin (plaintiffs' expert), dated June 30, 2003 (English and Russian);

27. Reply Declaration of Prof. Stephan (defendants' expert), dated September 9, 2003;

28. Reply Declaration of Alexey Alexandrovich Kostin (defendants' expert), dated September 9, 2003.