*Требования, связанные с «присвоением» имущества Истцов*

32. Как следует из текста Искового Заявления, одним из типов требований Истцов являются требования, вытекающие из так называемого «присвоения» принадлежащих им акций ГОКа Ответчиками путем совершения последними актов мошенничества, дачи взяток, вымогательства, результатом которых стала потеря Истцами контроля над ГОКом.

33. Российское гражданское право придерживается концепции генерального деликта (без разделения на отдельные виды деликтов, как в общем праве). Согласно ст. 1064 ГК РФ, согласно которой вред, причиненный личности или имуществу гражданина, а также вред, причиненный имуществу юридического лица, подлежит возмещению в полном объеме лицом, причинившим вред. Законом обязанность возмещения вреда может быть возложена на лицо, не являющееся причинителем вреда. Законом или договором может быть установлена обязанность причинителя вреда выплатить потерпевшим компенсацию сверх возмещения вреда.

34. Заявляя иск о возмещении причиненного вреда истцу необходимо доказать (ст. 1064 ГК) (1) противоправный характер поведения причинителя вреда (действий или бездействия); (2) наличие у истца убытков; (3) причинную связь между противоправным поведением причинителя вреда и возникшими у истца убытками. Последний, четвертый элемент генерального деликта, вина причинителя вреда, презюмируется - лицо, причинившее вред, освобождается от возмещения вреда, если докажет, что вред причинен не по его вине (п. 2 ст. 1064 ГК).

35. Другой важной разновидностью внедоговорных обязательств являются обязательства из неосновательного обогащения, предусмотренные ст. 1102 ГК РФ. Согласно этой статье лицо, которое без установленных законом, иными правовыми актами или сделкой оснований приобрело или сберегло имущество (приобретатель) за счет другого лица (потерпевшего), обязано возвратить последнему неосновательно приобретенное или сбереженное имущество (неосновательное обогащение) или возместить его стоимость в случае невозможности вернуть в натуре.

36. В дополнение, согласно ст. 1103 ГК положения о неосновательном обогащении применяются также к требованиям о возмещении вреда, в том числе причиненного недобросовестным поведением обогатившегося лица.

37. Требования Истцов вытекающие из так называемого «присвоения» имущества путем совершения физическими и юридическими лицами мошенничества и ряда иных противоправных действий охватывается российской концепцией генерального деликта, и если Истцы докажут суду наличие всех описанных выше элементов деликта, Ответчики будут обязаны возместить причиненный Истцам имущественный и иной вред (в том числе, моральный вред и ущерб для деловой репутации). Если при этом имело место неосновательное обогащение Ответчиков за счет Истцов, то они должны будут вернуть Истцам неосновательно приобретенное имущество или возместить его стоимость.

38. Согласно Исковому заявлению причиной возникновения имущественного ущерба Истцов, кроме прочего, явились мошенничество со стороны Ответчиков, дача взяток и вымогательство. Согласно Уголовному Кодексу РФ. Перечисленные действия являются уголовно наказуемыми по российскому праву. и соответствуют составам следующих преступлений, предусмотренных Уголовным Кодексом РФ: мошенничество (ст. 159 УК РФ), вымогательство (ст. 163 УК РФ), дача взятки (ст. 291 УК РФ).

39. Как следствие, с процессуальной точки зрения Истцы вправе заявить свои требования в суде в порядке гражданского или арбитражного судопроизводства или использовать альтернативный механизм заявления гражданского иска в уголовном деле. Для этого им необходимо обратиться в правоохранительные органы РФ с заявлением о совершенном преступлении и, в случае возбуждения уголовного дела, предъявить гражданский иск в уголовном деле.

40. В заключение, в контексте аргумента о «присвоении» истцы обращаются с требованием, основанном на «праве справедливости», заключающемся в том, что «присвоенные» акции должны быть возвращены им, или же должно иметь место «открытие корпоративной завесы» отдельных компаний, с тем чтобы к ответственности за действия этих компаний были привлечены определенные физические лица. Как указано выше, российские суды вправе вынести решение о возвращении акций стороне в том случае, если будут доказаны элементы деликта или

факт неосновательного обогащения. Дополнительно, ряд статей ГК РФ предусматривают, что лицо может нести субсидиарную ответственность по долгам юридического лица (организации) в случае недостаточности имущества данного юридического лица. Например, ч. 3 ст. 56 ГК в соответствующей части гласит следующее:

*Если несостоятельность (банкротство) юридического лица вызвана учредителями (участниками), собственником имущества юридического лица или другими лицами, которые имеют право давать обязательные для этого юридического лица указания либо иным образом имеют возможность определять его действия, на таких лиц в случае недостаточности имущества юридического лица может быть возложена субсидиарная ответственность по его обязательствам.*

Статьи 65 и 105 ГК РФ аналогичным образом предусматривают ответственность третьего лица в случае, если юридическое лицо не в состоянии удовлетворить требования своих кредиторов. К тому же в той мере, в какой согласно российским коллизионным нормам к вопросу «открытия корпоративной завесы» в отношении компаний, зарегистрированных в Делавэре, применимо право Делавэра, российские суды будут применять данное право. Соответственно, в той степени, в какой Истцы смогут доказать составные элементы своих требований, российские суды примут виды требований, которые Истцы заявляют как требования «по праву справедливости» в Исковом заявлении.

### Требования, основанные на нарушении RICO Act

41. Как следует из Искового заявления, основная группа требований Истцов связана с нарушением Ответчиками американского закона RICO Act (выразившимся в актах вымогательства, мошенничества, взяточничества итд.), приведшим к существенному имущественному ущербу Истцов.

42. В России отсутствует нормативный акт, аналогичный RICO. Вместе с тем, действия, против которых заявляют свои требования Истцы (взяточничество, мошенничество, вымогательство и т.д.) являются уголовно наказуемыми на основании других российских нормативных актов.

43. Как описано выше, российское право строится на концепции генерального деликта (см. п. 33), к тому же Уголовный Кодекс РФ предусматривает уголовную

ответственность за все вышеперечисленные деяния (см. п. 38). В результате Истцы вправе как обратится с иском о возмещении причиненного вреда как непосредственно в гражданский или арбитражный суд, так и подать гражданский иск в уголовном процессе (в случае возбуждения уголовного дела по данным фактам).

44. Следовательно, Истцы в случае подачи иска в российский суд, располагают процессуальными и материально-правовыми возможностями на возмещение убытков в том же доказанном размере, что и в настоящем Суде. Единственным исключением будет являться, конечно же, положение закона RICO о возмещении убытков в тройном размере - данное положение не имеет аналогии в российском законодательстве.

*Возможные способы обжалования неблагоприятных судебных актов*

45. Хотя Истцы, в целом, утверждают что принадлежащие им акции ГОКа были изъяты у них вследствие мошенничества и коррумпированного судопроизводства, а также по причине нарушений в судебных актах, из текста Искового Заявления сложно сделать четкий вывод, какие именно методы использовали Истцы, чтобы обжаловать указанные случаи мошенничества, коррупции, а также неправомерные судебные акты. Российское законодательство предоставляет истцам (следовательно, и Истцам в настоящем деле) и иным участникам судебного разбирательства большое количество способов для обжалования судебных актов российских судов. В распоряжении Истцов имеется большой спектр процессуальных возможностей. В следующем разделе описаны основные способы обжалования, имеющие отношение к описанной в Исковом заявлении ситуации.

46. Если истцы или иные участвующие в деле лица не удовлетворены решением арбитражного суда он и вправе (до вступления решения в законную силу, то есть до истечения месячного срока с даты вынесения решения) обжаловать решение в арбитражный апелляционный суд (ст. 257 АПК).

47. Вступившие в законную силу постановления апелляционной инстанции и решения арбитражных судов первой инстанции могут быть обжалованы в кассационном порядке в арбитражные суды округов (ст. 273 АПК). Как апелляционное, так и кассационное обжалование доступны для всех участников арбитражного

производства, не являются экстраординарным методом обжалования и одобрения каких-либо органов для подачи не требуется.

48. Высший Арбитражный Суд РФ уполномочен осуществлять пересмотр в порядке надзора любых вступивших в законную силу судебных актов арбитражных судов. Лица, участвующие в деле, вправе оспорить в порядке надзора судебный акт, если полагает, что этим актом существенно нарушены их права и законные интересы в сфере предпринимательской и иной экономической деятельности в результате нарушения или неправильного применения арбитражным судом, принявшим оспариваемый судебный акт, норм материального права или норм процессуального права (ст. 292 АПК). Обращение в Высший Арбитражный Суд возможно после исчерпания всех иных возможностей обжалования судебного акта.

49. Другим важным методом обжалования является пересмотр дела по вновь открывшимся обстоятельствам (ст. 309 АПК). Такое заявление подается в арбитражный суд, вынесший первоначальное решение. В статье 311 перечислены основания пересмотра по вновь открывшимся обстоятельствам:

> *Основаниями пересмотра судебных актов по вновь открывшимся обстоятельствам являются:*
> *1) существенные для дела обстоятельства, которые не были и не могли быть известны заявителю;*
> *2) установленные вступившим в законную силу приговором суда фальсификация доказательства, заведомо ложное заключение эксперта, заведомо ложные показания свидетеля, заведомо неправильный перевод, повлекшие за собой принятие незаконного или необоснованного судебного акта по данному делу;*
> *3) установленные вступившим в законную силу приговором суда преступные деяния лица, участвующего в деле, или его представителя либо преступные деяния судьи, совершенные при рассмотрении данного дела;*
> *4) отмена судебного акта арбитражного суда или суда общей юрисдикции либо постановления другого органа, послуживших основанием для принятия судебного акта по данному делу;*
> *5) признанная вступившим в законную силу судебным актом арбитражного суда или суда общей юрисдикции недействительной сделка, повлекшая за собой принятие незаконного или необоснованного судебного акта по данному делу;*
> *6) признание Конституционным Судом Российской Федерации не соответствующим Конституции Российской Федерации закона, примененного арбитражным судом в конкретном деле,*

в связи с принятием решения по которому заявитель обращался в Конституционный Суд Российской Федерации;

7) установленное Европейским Судом по правам человека нарушение положений Конвенции о защите прав человека и основных свобод при рассмотрении арбитражным судом конкретного дела, в связи с принятием решения по которому заявитель обращался в Европейский Суд по правам человека.

50. Как следует из вышеизложенного одним из оснований пересмотра дела на основании вновь открывшихся обстоятельств является наличие приговора в отношении судьи за преступные деяние, совершенные им при рассмотрении дела. Если потерпевшая сторона (в данном случае Истцы) полагает, что какой-либо судья совершил преступные деяния при рассмотрении дела (получал взятки, умышленно неправомерно применял закон и т.д.), то у нее имеется полное право обратиться в правоохранительные органы с заявлением о привлечении судьи к уголовной ответственности. Соответственно, если судья будет признан виновным в судебном порядке, такое обстоятельство может привести к пересмотру первоначального дела по вновь открывшимся обстоятельствам.

51. В данном контексте следует отметить, что ст. 1070 ГК РФ предусматривает возмещение вреда, причиненного лицу вследствие неправомерных действий судьи (убытки в данном случае будут возмещаться казной РФ).

52. Еще одним дополнительным способом противодействия неправомерным действиям судьи является применение норм о дисциплинарной ответственности судей. Наряду с уголовной ответственностью судьи (что является основанием для прекращения полномочий судьи) судья может быть подвергнут дисциплинарной ответственности, причем одной из санкций является прекращение полномочий судьи, за нарушение норм закона «О статусе судей в РФ», а также Кодекса судейской этики. Потерпевшая сторона вправе обратиться с заявлением к председателю соответствующего или вышестоящего суда или в орган судейского сообщества. Если заявление окажется обоснованным, то данные лица обратятся с обращением о прекращении полномочий судьи в соответствующую квалификационную коллегию судей, которая вправе вынести такое решение.

53. Из Искового заявления не следует, что Истцы воспользовались какими-либо способами обжалования судебных актов в России.

IV. Стороны могут рассчитывать на справедливое рассмотрение дел в российских судах

*В соответствии с законом, российская судебная система независима*

54. Согласно ст. 10 Конституции РФ государственная власть в Российской Федерации осуществляется на основе разделения на законодательную, исполнительную и судебную. Органы законодательной, исполнительной и судебной власти самостоятельны.

55. В Конституции РФ закреплены основные гарантии независимости судебной системы: судьи независимы (ст. 120); судьи несменяемы (ст. 121); судьи неприкосновенны (ст. 122); разбирательство дел во всех судах открытое (ст. 123);

56. Эти конституционные положения конкретизированы в Законе РФ «О статусе судей в РФ» от 26 июня 1992 г. (с последующими изменениями и дополнениями) и в Федеральном конституционном законе «О судебной системе Российской Федерации» от 31 декабря 1996 г. (с последующими изменениями и дополнениями).

В частности, можно отметить следующие гарантии:

- запрет под угрозой ответственности какого бы то ни было вмешательства в деятельность по осуществлению правосудия (статьи 9 и 10 Закона РФ «О статусе судей в РФ»);
- пожизненное назначение на судейские должности (статья 14 Федерального Конституционного Закона «О судебной системе РФ»);
- решение вопросов прекращения полномочий судьи только по установленным законом основаниям и только органами судейского сообщества, а не государственными структурами (статьи 9, 12.1, 13, 14 Закона «О статусе судей в РФ»).

57. Согласно ст. 123 Конституции РФ судопроизводство осуществляется на основе состязательности и равноправия сторон. Вышеупомянутые законы «О статусе судей» и «О судебной системе», наряду с Арбитражным процессуальным Кодексом и Гражданским процессуальным Кодексом содержат детально разработанные нормы,

гарантирующие процессуальные права сторон. Отдельные наиболее важные имеющие к настоящему делу гарантии упомянуты выше в п. 25.

*На практике, российская судебная система функционирует справедливо*

58. Принцип независимости судебной системы и запрет вмешательства в отправление правосудия не только закреплены в законодательстве, но указанные принципы, в целом, действительно реализуются на практике. Мне неизвестно о существовании какой-либо судебной системы, которая бы функционировала абсолютно совершенным образом и в которой полностью отсутствовала бы коррупция, в то же время по моему мнению, стороны процесса могут обоснованно рассчитывать на рассмотрение их споров справедливым образом, в соответствии с законом и на основании фактов, а не под влиянием коррупции и неправомерного давления.

59. Если говорить более конкретно, то я не согласен с утверждением экспертов истцов в сходных делах, что небольшие иностранные компании - истцы не могут получить справедливого отношения в российских судах в делах против компаний, принадлежащих или контролируемых крупными российскими магнатами. Я также знаю о публикациях, в том числе в средствах массовой информации, с упреками в адрес российских судей. В то же время мне неизвестно о существовании достаточно обоснованных свидетельств, которые могли бы убедить меня, что ситуация обстоит именно таким образом. Скорее наоборот, на основании моего общения с адвокатами, судьями, профессурой и иными лицами, связанными с российской судебной системой, а также моего опыта изучения большого числа решений по делам с участием иностранных участников, я убежден, что в целом российская судебная система представляет справедливое место для разбирательства, вне зависимости от личности сторон.

60. В заключение могу добавить, что хотя я не изучал решения российских судов, связанные с утверждениями истцов относительно ГОКа (что, насколько мне известно, будет осуществлено другим экспертом Ответчиком), мне было сообщено, что по данному вопросу существует приблизительно 87 судебных актов, вынесенных большим количеством судей, в нескольких различных судах по всей России. Как мне сообщили, из этих 87 решений около 17 были в пользу Истцов. Во-первых, тот факт, что существенное количество судов вынесли решение в поддержку Истцов противоречит тезису о том, что малоизвестные иностранные истцы не в состоянии

получить справедливого правосудия в Российской Федерации. Во вторых (и это представляется более важным), мне на основании своего многолетнего опыта, просто не представляется обоснованным утверждение, что все 70 связанных с историей вокруг ГОКа судебных актов (а также большинство из них или их существенная часть) были получены вследствие коррупции или неправомерного влияния.

### V. У России имеется существенный интерес в том, чтобы данный спор рассматривался в российских судах

61. Истцы в Исковом заявлении прямо и косвенно выдвигают ряд обвинений в мошенничестве, коррупции и получении/дачи взяток не только в отношении Ответчиков, но и ряда российских судей, представителей иных государственных органов (в том числе, государственных служащих высокого ранга, например, губернатора Свердловской области). Также они выдвигают обвинения общего плана о том, что российская судебная система является коррумпированной и неэффективной.

62. Исковое заявление содержит обширные обвинения в отношении судопроизводства и процедур банкротства в России. Данные обвинения включают, кроме прочего, что

- "захват" ГОКа был начат на основании поданного российской компанией «фиктивного» заявления о банкротстве (Иск п.п.79-87) и такое заявление было удовлетворено российским судом (там же);
- назначение российского гражданина внешним управляющим ГОКа, утвержденное российским судом, было осуществлено под давлением губернатора Свердловской области (там же);
- Ответчики впоследствии смогли перевести акции на контролируемые ими компании, что согласно Исковому заявлению «достаточно распространенный метод в России, которым организованные преступные группировки приобретают контроль над промышленными предприятиями» (Иск: п. 88).

63. Обеспечение законности и правопорядка являются одними из важнейших функций государственных органов Российской Федерации, и поэтому российское государство непосредственно заинтересовано в том, чтобы все лица, виновные в описанных в Исковом Заявлении неправомерных действиях (если они соответствуют

действительности), в том числе судьи, должностные лица, арбитражные управляющие были бы привлечены к ответственности (гражданско-правовой, административной, дисциплинарной и уголовной).

64. У России наличествует существенная заинтересованность в том, чтобы данное дело было рассмотрено в российских судах также ввиду того, что Качканарский ГОК является очень важным звеном представляющей стратегическую важность для экономики России горнодобывающей промышленности.

65. Если бы Истцы со своими требованиями обратились в российские правоохранительные и судебные органы, то они не только бы получили возможность возместить причиненный им ущерб, но и содействовали бы устранению случаев нарушения законности, привлечению виновных к ответственности.

66. В данной связи необходимо отметить важное полномочие российских судов, закрепленное в ст. 226 ГПК., согласно которой при выявлении случаев нарушения законности суд вправе вынести частное определение и направить его в соответствующие организации или соответствующим должностным лицам, которые обязаны в течение месяца сообщить о принятых ими мерах. В случае несообщения о принятых мерах виновные должностные лица могут быть подвергнуты штрафу в размере до десяти установленных федеральным законом минимальных размеров оплаты труда. Наложение штрафа не освобождает соответствующих должностных лиц от обязанности сообщить о мерах, принятых по частному определению суда.

67. Особое значение имеет часть 3 данной статьи, согласно которой в случае, если при рассмотрении дела суд обнаружит в действиях стороны, других участников процесса, должностного или иного лица признаки преступления, суд сообщает об этом прокурору. Тем самым российский суд при рассмотрении частного спора может содействовать борьбе с преступностью и обеспечению правопорядка в Российской Федерации.

68. Соответственно, у России имеется существенный интерес в том, чтобы данное дело рассматривалось в российском суде.

**Заключение**

На основании вышеизложенного, отвечая на вопрос поставленный в пункте 10, я прихожу к выводу, что государственные суды Российской Федерации (суды общей юрисдикции или арбитражные суды, в зависимости) являются адекватным альтернативным форумом для рассмотрения исковых требований Истцов.

г. Москва, Российская Федерация                    Лебедев С.Н. _/Лебедев/_

25 марта 2005 г.