**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------x

DAVIS INTERNATIONAL, LLC, HOLDEX, : 
LLC, FOSTON MANAGEMENT, LTD, and : 
OMNI TRUSTHOUSE, LTD, : 
  : 
          Plaintiffs, : 
       v. :    Case No. 04-1482-GMS
  : 
NEW START GROUP CORP., VENITOM : 
CORP., PAN-AMERICAN CORP., MDM : 
BANK, URAL-GORNO METALURAGICAL : 
COMPANY, EVRAZ HOLDING, MIKHAIL : 
CHERNOI, OLEG DERIPASKA, ARNOLD : 
KISLIN, MIKHAIL NEKRICH, and : 
ISKANDER MAKMUDOV, : 
  : 
          Defendants. : 

---------------------------------------------------------------x

**OPENING BRIEF IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE
COMPLAINT ON FORUM NON CONVENIENS GROUNDS**

Attorneys for Defendant Arnold Kislin:

Charles M. Oberly, III (DSBA No. 743)     Lisa C. Cohen
Karen V. Sullivan (DSBA No. 3872)     Schindler Cohen & Hochman LLP
Oberly, Jennings & Rhodunda, P.A.     100 Wall Street
800 Delaware Avenue, Suite 901     15th Floor
PO Box 2054     New York, NY 10005
Wilmington, DE 19899     (212) 277-6300

                        Lawrence S. Goldman
                        Elizabeth Johnson
                        The Law Offices of Lawrence S. Goldman
                        500 Fifth Ave., 29th Floor
                        New York, NY 10110-2900
                        (212) 997-7499

Attorneys for Defendants New Start
Group Corp. and Venitom Group:

Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

Richard J. Schaeffer
Peter J. Venaglia
Laura D. Sullivan
Dornbush, Schaeffer, Strongin &
Weinstein, LLP
747 Third Avenue, 11th Floor
New York, NY 10017
(212) 759-3300


Attorneys for Defendant Oleg Deripaska:

Collins J. Seitz, Jr. (DSBA No. 2237)
Kevin F. Brady (DSBA No. 2248)
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

Rodney F. Page
Michael G. Biggers
Bryan Cave LLP
700 13th Street, N.W.
Washington, D.C. 20005-3960
(202) 508-6002


Attorneys for Defendant Evraz Holding:

William M. Lafferty (DSBA No. 2755)
Morris, Nichols, Arsht & Tunnell
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 575-7341

David H. Herrington
Vitali Rosenfeld
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2266


Attorneys for Defendant MDM Bank:

Richard I.G. Jones, Jr. (DSBA No. 3301)
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

Joel B. Kleinman
Steven J. Roman
David H. Greenberg
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street NW
Washington, DC 20037-1526
(202) 785-9700

Attorneys for Defendant Ural-Gorno
Metallurgical Company:

Charles M. Oberly, III (DSBA No. 743)    William H. Devaney
Karen V. Sullivan (DSBA No. 3872)    Heard & O'Toole LLP
Oberly, Jennings & Rhodunda, P.A.    405 Lexington Ave, Floor 62
800 Delaware Avenue, Suite 901    New York, NY 10174
PO Box 2054    (212) 307-5500
Wilmington, DE 19899
(302) 576-2000


Attorneys for Defendant Iskander
Makmudov:

Charles M. Oberly, III (DSBA No. 743)    William H. Devaney
Karen V. Sullivan (DSBA No. 3872)    Heard & O'Toole LLP
Oberly, Jennings & Rhodunda, P.A.    405 Lexington Ave, Floor 62
800 Delaware Avenue, Suite 901    New York, NY 10174
PO Box 2054    (212) 307-5500
Wilmington, DE 19899
(302) 576-2000


Attorneys for Defendant Mikhail Chernoi:

Charles M. Oberly, III (DSBA No. 743)    Brian Maas
Karen V. Sullivan (DSBA No. 3872)    Cameron A. Myler
Oberly, Jennings & Rhodunda, P.A.    Frankfurt Kurnit Klein & Selz PC
800 Delaware Avenue, Suite 901    488 Madison Avenue, 9th Floor
PO Box 2054    New York, NY 10022
Wilmington, DE 19899    (212) 980-0120
(302) 576-2000


Attorneys for Defendant Mikhail Nekrich:

Charles M. Oberly, III (DSBA No. 743)    Paul R. Grand
Karen V. Sullivan (DSBA No. 3872)    Edward M. Spiro
Oberly, Jennings & Rhodunda, P.A.    Morvillo, Abramowitz, Grand, Iason &
800 Delaware Avenue, Suite 901    Silberberg, P.C.
PO Box 2054    565 Fifth Avenue
Wilmington, DE 19899    New York, NY 10017
(302) 576-2000    (212) 880-9510

Dated: March 31, 2005

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................iii

NATURE AND STAGE OF THE PROCEEDINGS .......................................................1

SUMMARY OF ARGUMENT ......................................................................................2

      1.     Plaintiffs' Choice of a Delaware Forum Deserves Little Deference ........................................................................................2

      2.     Russia Is An Adequate Alternative Forum .....................................3

      3.     The Public and Private Interest Factors Clearly Favor Dismissal.....................................................................................4

STATEMENT OF FACTS ............................................................................................5

   A.    Introduction........................................................................................5

   B.    The Allegations In The Complaint ...........................................................8

      1.     The Bankruptcy Proceeding And Related Challenges In Russia ................................................................................................9

      2.     Allegations And Court Proceedings in Russia Regarding The Governance And Ownership Of GOK....................................12

         a.     The Transfer Of The Davis Shares in Russia ....................14

         b.     The Transfer Of Omni's Shares in Russia .........................14

         c.     The Transfer Of Foston's Shares in Russia .......................15

         d.     The Transfer Of Holdex's Shares in Russia ......................16

ARGUMENT................................................................................................................18

I.    THE COMPLAINT SHOULD BE DISMISSED ON *FORUM NON CONVENIENS* GROUNDS ...................................................................19

   A.    The Factors Relevant To A *Forum Non Conveniens* Motion....................19

      1.     The Test For An Adequate Alternative Forum .............................19

      2.     Russia Is An Adequate Alternative Forum ..................................21

B.    Plaintiffs' Choice of Forum Is Entitled To Diminished Deference ...........24

1.    Factors Considered In Determining Degree Of Deference To Plaintiffs' Choice of Forum ........................................................24

C.    The Private Interest Factors Strongly Favor Dismissal ...........................27

1.    The Great Majority Of The Relevant Witnesses And Documents Are Located In Russia .................................................28

D.    The Public Interest Factors Also Strongly Favor Dismissal.....................30

1.    There Is No Reason To Burden This Court Or A Delaware Jury With This Litigation...............................................................30

2.    Russia Has A Paramount Interest In These Controversies ...........31

3.    Russian Law Applies To Virtually All Of Plaintiffs' Allegations ......................................................................................32

CONCLUSION.............................................................................................34

## TABLE OF AUTHORITIES

Cases

*Aguinda v. Texaco,* 303 F.3d 470 (2d Cir. 2002)................................................................20

*Alfadda v. Fenn*, 159 F.3d 41 (2d Cir. 1998) ..................................................................30

*Base Metal Trading SA v. Russian Alum.*, 253 F. Supp. 2d 681 (S.D.N.Y. 2003),
    *aff'd*, 98 Fed. Appx. 47 (April 30, 2004) ................................................................*passim*

*Bell Helicopter v. C&C Helicopter Sales, Inc.*,
    295 F. Supp. 2d 400 (D. Del. 2002) ............................................................27, 28, 30

*Bhatnagar v. Surrenda Overseas Ltd.*, 52 F.3d 1220 (3d Cir. 1995)..............................19

*Blanco v. Banco Indus. De Venezuela*, 997 F. 2d 974 (2d Cir. 1993) .............................30

*Dahl v. United Tech. Corp.*, 632 F.2d 1027 (3d Cir. 1980)..............................................25

*Dawson v. Compagnie des Bauxities de Guiness,*
    539 F. Supp. 20 (D. Del. 1984) ....................................................................20, 26, 29

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947) .........................................................*passim*

*Iragorri v. United Technologies Corp.*, 274 F. 3d 65 (2d Cir. 2001) .........................25, 27

*Films By Jove v. Berov*, 250 F. Supp. 2d 156 (E.D.N.Y. 2003)
    *motion to vacate denied by*, 341 F.Supp. 2d 199 (E.D.N.Y. 2004) ............................23

*Koster v. Lumberman's Mut. Casualty Co.*, 330 U.S. 518 (1947)....................................27

*Lacey v. Cessna Aircraft Co.*, 862 F.2d 38 (3d Cir. 1998) .........................................19, 24

*Lony v. E.I. Dupont de Nemours & Co.*, 886 F.2d 628 (3d Cir. 1989) ......................20, 24

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 304 F. Supp. 2d 570
    (S.D.N.Y. 2004) ...............................................................................................7, 22, 24

*Parex Bank v. Russian Savings Bank,* 116 F. Supp. 2d 415 (S.D.N.Y. 2000)..................24

*Pavlov v. Bank of New York,* 135 F. Supp. 2d 426 (S.D.N.Y. 2001)...........................24, 30

*Piper Aircraft Co., v. Reyno*, 454 U.S. 235 (1981) .....................................................*passim*

*Rudisill v. Sheraton Copenhagen Corp.*, 817 F. Supp. 443 (D. Del. 1993).......................33

*Sussman v. Bank of Israel*, 801 F. Supp 1068 (S.D.N.Y. 1992), *aff'd,* 990 F.2d 71
    (2d Cir. 1993) (per curiam), *rev'd on other grounds*, 56 F.3d 450 (2d Cir. 1995) ......27

*Transunion Corp. v. Pepsico, Inc.*, 811 F.2d 127 (2d Cir. 1987) .....................................20

*Travel Indemnity Co. v. Lake*, 594 A.2d 38 (Del. 1991).....................................................33

*Varnelo v. Eastwind Transport, Ltd.,* 2003 WL 230741 (S.D.N.Y. Feb. 3, 2003) ............24

*Winex Ltd. v. Paine*, 1990 WL 121483 (E.D. Pa. 1990).....................................................20

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs originally filed their complaint in the Delaware Court of Chancery on November 4, 2004. Defendants removed on November 30th and the Court held a telephone conference with the parties on December 21st. On March 8, 2005, plaintiffs served discovery demands and Rule 26 disclosures. There have been no other proceedings to date. Defendants now submit this opening brief in support of their motion to dismiss the complaint (the "Complaint") on *forum non conveniens* grounds.[1] In addition, by separate briefs, defendants seek dismissal of the Complaint on the grounds of direct estoppel, international comity, failure to state a claim and lack of subject matter jurisdiction.

This is the second time that this group of defendants has been required to make a motion to dismiss in federal court against these same plaintiffs on the same or substantially similar bases. This case has already been dismissed once on the grounds of *forum non conveniens*. *See Base Metal Trading SA v. Russian Alum.*, 253 F. Supp. 2d 681 (S.D.N.Y. 2003), *aff'd*, 98 Fed. Appx. 47 (April 30, 2004) ("*Base Metal Trading*" or the "New York case"). Defendants refer the Court to the 32-page opinion of the Honorable John G. Koeltl of the United States District Court for the Southern District of New York,[2] for a comprehensive statement of the facts relevant to this dispute. Defendants respectfully suggest -- as a result of that dismissal and in light of the almost identical parties, facts and issues -- that the Court first consider defendants' motion to

---

[1]    All defendants join in this motion. The exhibits to all of the defendants' briefs are contained in the thirteen-volume appendix submitted herewith and numbered pages A-1 – A-2354 ("Appendix"). A copy of the Complaint is included at A-1.

[2]    The *Base Metal Trading* decision is included in the Appendix at A-31.

dismiss the Complaint on the grounds of direct estoppel. If the motion is granted on the grounds of direct estoppel the Court need not consider the remaining grounds.

If, however, the Court concludes that the *Base Metal Trading* decision, and the decision affirming that dismissal by the Second Circuit, do not warrant a direct estoppel dismissal, the Complaint should nonetheless be dismissed based on *forum non conveniens*. Dismissal based on *forum non conveniens* is as much compelled by the allegations in this Complaint as it was by the allegations in the Amended Complaint in *Base Metal Trading*.

## SUMMARY OF ARGUMENT

In dismissing the New York case, Judge Koeltl determined that "little deference should be given to the plaintiffs' choice of forum," (*Base Metal Trading*, 253 F. Supp. 2d at 694), that "Russia is an adequate alternative forum for this dispute" (*id.* at 709) and that "[b]ased on an evaluation of all the private and public interest *Gilbert* factors, Russia is clearly the more convenient forum." *Id.* at 713. This Court should make the same findings.

### 1.    Plaintiffs' Choice of a Delaware Forum Deserves Little Deference

When plaintiffs engage in rank forum shopping, as have the plaintiffs here, their choice of forum is entitled to little deference. The relevant actions and events alleged in the Complaint all took place in Russia, and the dispute plainly belongs there. Plaintiffs here, all of whom were plaintiffs in the New York case, are either foreign corporations or shell corporations which, although purportedly incorporated in the U.S., have no real operations, no employees and no business in Delaware or the U.S. or anywhere else. In the New York case, after the motions to dismiss were fully briefed, Judge Koeltl, at the oral argument, allowed plaintiffs' counsel to provide supplemental affidavits concerning

the operations of the U.S. plaintiffs.  A-65 – A-66.  In response, plaintiffs submitted the declaration of an individual by the name of Joseph Traum, dated February 19, 2003.[3]

Judge Koeltl found Traum's Declaration to be "telling for how little information it provides about the American plaintiffs."  *Base Metal Trading*, 253 F. Supp. 2d at 695. Traum's Declaration did not, because it could not, provide any *bona fide* credibility to plaintiffs' claimed U.S. contacts.  Judge Koeltl observed:

> Traum's Second Declaration is the plaintiffs' sole submission provided to answer the Court's questions about the American plaintiffs' ties to the United States. It provides no bona fide reason for the plaintiffs to have sued in this Court. The declaration does not tell the Court why it would be more convenient for the parties to litigate this case here rather than in Russia.

*Id.* at 696.[4]  The Complaint here suffers from exactly the same deficiency:  it provides no *bona fide* reason for the plaintiffs to have sued in this Court.  Suing in a Delaware court has not given plaintiffs the credibility missing in New York.  Just as they lacked any *bona fide* reason to have sued in New York, they continue to lack any *bona fide* reason to have sued in Delaware.

**2.      Russia Is An Adequate Alternative Forum**

With respect to the adequacy-prong of the *forum non conveniens* analysis, Judge Koeltl, after reviewing numerous expert declarations on Russian law submitted by the parties, concluded that "the defendants' legal experts argue convincingly that the plaintiffs can bring a cause of action for fraud that would provide an adequate alternative remedy" and that "Russian law provides causes of action equivalent to conversion . . . ."

---

[3]    Traum's Declaration is included in the Appendix at A-782.

[4]    Significant submissions were made by both sides after oral argument in the New York case at Judge Koeltl's request.  They are presently in the Appendix chronologically at pages A-687 – A-884.

*Id.* at 700.   Moreover, Judge Koeltl stated that "the plaintiffs' allegations about the corruption of the GOK bankruptcy are similarly insufficient to counter the defendants' showing that Russia is an adequate alternative forum."   *Id.* at 705.   The same applies here.   Russia continues to be an adequate alternate forum for this dispute.

### 3.     The Public and Private Interest Factors Clearly Favor Dismissal

Finally, in weighing the public and private interest factors, Judge Koeltl found that the "striking number of Russian parties and witnesses involved in the case demonstrates the extreme inconvenience of bringing this case to trial in the United States" and that "the relevant allegations that may involve witnesses located in the United States pale in comparison to those involving persons and companies located in Russia." *Id.* at 711.   Judge Koeltl also determined that "there would likely be extensive application of Russian law in this case" (*id.* at 712) and that the Russian interest in adjudicating this dispute was far greater than the United States' interest:

> The plaintiffs' claims involve the bankruptcies of two major Russian companies. These bankruptcies were allegedly part of a larger scheme to take over the Russian aluminum and vanadium industries. The plaintiffs contend that the illegal scheme involved high level Russian politicians, as well as numerous members of the Russian judiciary. <u>The controversy presents issues that are of clear import to Russian citizens that should be resolved by the Russian courts. By contrast, the case has virtually no connection with the United States or this district.</u> As such, the local interest in resolution of the dispute is virtually none.

*Id.* at 713 (emphasis added).   A weighing of the private and public interest factors here still demonstrates that Russia clearly has a greater interest in this dispute than Delaware and that the balance of convenience tips strongly in favor of dismissal.

\*          \*          \*

Now, two years after the dismissal by Judge Koeltl, and after the Second Circuit's affirmance, two plaintiffs have been dropped from this case, three defendants have been added and a few paragraphs have been tacked on alleging the involvement of Delaware entities. The rest of the Complaint is essentially the same as that filed in New York. As if by magic, plaintiffs would have this Court believe that this case is different from the New York case. However, cosmetic changes do nothing to explain why this case now belongs in a Delaware court. It is obvious that the plaintiffs are casting about, shopping for a forum that might provide them with an opportunity to relitigate issues which have already been litigated in Russia and which Judge Koeltl and the Second Circuit have already determined should remain in Russia. Such tactics should not be countenanced.

## STATEMENT OF FACTS

### A.   Introduction

The origin of this case goes back to December 2000. At that time, three plaintiffs, offshore companies incorporated in Switzerland, Channel Islands and Cyprus, respectively, commenced an action in the United States District Court for the Southern District of New York against nine defendants, alleging a racketeering scheme by the defendants to monopolize the Russian aluminum industry.

In May 2001, the defendants filed motions to dismiss on various grounds, including *forum non conveniens.* Plaintiffs, rather than respond to the motions, and in an attempt to cure the deficiencies of the original complaint and allege U.S. contacts, amended the Complaint on August 3, 2001 to add seven new plaintiffs, including all four of the plaintiffs in this action. That Amended Complaint also added eleven new defendants, including six of the defendants here, and a new scheme to take over not only

Russia's aluminum industry, but also a vanadium ore factory in the Ural Mountains about 900 miles east of Moscow (the "GOK allegations").

Six of the seven new plaintiffs added to the Amended Complaint in the New York case were involved in the GOK allegations.  Those six were divided into two groups.  First, the current plaintiffs Davis, Holdex, Foston and Omni  (the "Davis Plaintiffs" in the New York case) alleged the fraudulent transfer of their shares in Kachkanarsky GOK ("GOK").  Second, plaintiffs Nexis and Polyprom (the "GOK Plaintiffs" in the New York case) allegedly maintained contracts and loan agreements with GOK that GOK then breached.  The GOK Plaintiffs, which have been dropped from this action, were alleged to have suffered most of the damages in the New York complaint.  There, plaintiff Polyprom, a Russian company, was alleged to have "suffered damages arising from GOK's breach of contracts" in "an amount in excess of \$100 million," (NY Am. Compl. ¶ 39)[5] and the Amended Complaint repeatedly alleged that in total, all of the "Davis and GOK Plaintiffs have suffered damages in an amount in excess of \$100 million."  NY Am. Compl. ¶¶ 543, 566.  However, in the Delaware Complaint, plaintiffs, without Polyprom and without Nexis, now claim to "have suffered damages in an amount in excess of \$500 million" for the very same alleged conduct by the defendants.  Compl. ¶ 140.

It is the allegations of the Davis Plaintiffs in the New York case that form the basis for the Complaint in this case.  In fact, approximately 61 of the 86 paragraphs comprising the substantive allegations in the current Complaint (¶¶ 49-134) are identical or substantially similar to those in the New York complaint.[6]  There is nothing that can

---

[5]  "NY Am. Compl." refers to the Amended Complaint filed on August 3, 2001 in the New York case at A-176.

[6]  For a comprehensive analysis of the similarities between the two complaints *see* the Opening Brief In Support of Defendants' Motion to Dismiss the Complaint Pursuant To the Doctrine of Direct Estoppel

distinguish this case from the New York case. The four plaintiffs here were plaintiffs in New York. The claims are the same, RICO and conversion. Of the 11 defendants here, eight of them were defendants in New York. The addition of the three new defendants hardly adds a distinguishing quality; they are merely alleged to be additional conspirators in the scheme, and, with respect to URAL-GORNO and EVRAZ, the companies who ultimately acquired the shares in GOK, no specific conduct is even alleged. Compl. ¶¶ 1, 2, 9, 30-34, 37, 41, 44, 54, 131, 132, 137, 139, 142, 158-60, 165-69.

It is obvious that Plaintiffs are forum shopping. In fact, in response to an article recently appearing in Johnson's Russia List,[7] which asserted that "the campaign to fight Russian takeover battles via RICO and similar conspiracy claims filed in the U.S." was dead after dismissals in the federal courts, including the New York case, plaintiffs' lead counsel, here and in New York, stated,

> [u]nlike the Southern District of New York, were Norex and Base Metals were filed, many American courts, such as Colorado, Delaware, and New Jersey, employ a much more restrictive forum non doctrine. To be sure, our firm will be filing new cases again[st] American and Russian interests who have engaged in racketeering in the U.S. in appropriate forums shortly.

Bruce S. Marks, RICO v. Racketeers: Still Alive and Well, Johnson's Russia List (April 19, 2004), available at http://www.cdi.org/russia/johnson/8173-5.cfm (emphasis added).[8]

---

And To Enjoin Plaintiffs From Re-Filing This Action ("Direct Estoppel Brief") and the chart attached to the Declaration of Lisa C. Cohen.

[7] The article is available at http://www.cdi.org/russia/johnson/8169-8.cfm. Johnson's Russia List is a daily e-mail newsletter with information and analysis about contemporary Russia from a wide range of sources.

[8] The same lawyer who filed this case and the New York case also filed a complaint on February 26, 2002, involving different parties, but making similar allegations regarding an illegal takeover of the Russian oil industry. See Norex Petroleum Ltd. v. Access Indus., Inc., 304 F. Supp. 2d 570 (S.D.N.Y. 2004). That complaint was dismissed on forum non conveniens grounds. The Norex complaint and the district court dismissal are submitted at A-535 and A-607 respectively.

B.     **The Allegations In The Complaint**

The Complaint alleges a conspiracy to take over "Russia's largest vanadium ore plant in Kachkanarsky GOK, which is located in the town of Kachkanar in the Sverdlovsk Oblast in the Ural Mountains." Compl. ¶ 21; *see also* NY Am. Compl. ¶ 5.[9] According to the Complaint, Plaintiffs Davis, Holdex, Foston and Omni "collectively owned more than 72% of the shares of GOK prior to the fraudulent transfer of shares described herein." Compl. ¶ 20; *see also* NY Am. Compl. ¶ 36. Plaintiffs assert a claim for conversion and alleged violations of RICO, as well as a count for equitable relief. Compl. pgs. 24-29; *see also* NY Am. Compl. pgs. 86-103.

Davis is alleged to be "a company organized under the laws of the State of West Virginia," Holdex "a company organized under the laws of the state of Texas," Foston "a company organized under the laws of Cyprus," and Omni "a company organized under the laws of England." Compl. ¶¶ 16-19; *see also* NY Am. Compl. ¶¶ 32-36. As set forth above, and despite being given an opportunity to do so in the New York case, the Complaint yet again reveals almost no information regarding the plaintiffs, other than their alleged place of incorporation. The Complaint does not assert that any of the plaintiffs have any U.S. ownership, have offices in the United States, engaged in any business activity in the U.S. relating to their allegations, or purchased the shares of GOK in the United States. The Complaint fails even to identify plaintiffs' places of business, or any officer, director, or employee of any of the plaintiffs.

---

[9]     Citations to the Amended Complaint in the *Base Metal Trading* case are included to demonstrate the similarities between the two complaints.

1.      <u>The Bankruptcy Proceeding And Related Challenges In Russia</u>

Plaintiffs' claims are premised entirely upon their assertion that defendants forced GOK into a "sham" bankruptcy by which they could assert control and ultimately transfer plaintiffs' shares through "corrupted court proceedings."  Compl. ¶¶ 79, 9; *see also* NY Am. Compl. ¶¶ 387, 7.[10]    Plaintiffs, however, do not allege that defendants filed the involuntary bankruptcy petition against GOK, but rather that defendants allegedly "caus[ed] a local natural gas company" in the Sverdlovsk Region, Krasnouralskmezhraigaz ("Kras Gas"), "to file an involuntary bankruptcy petition against GOK on March 24, 2000," and that the petition was allegedly a "sham."  Compl. ¶ 79; *see also* NY Am. Compl. ¶ 387.

Plaintiffs further allege that the Governor of the Sverdlovsk Region, Governor Roussel, was bribed by defendants to offer his "protection" and "help" in the "sham" bankruptcy filing and that "the Sverdlovsk Oblast government" also participated in this scheme.  Compl. ¶¶ 58-62, 86; *see also* NY Am. Compl. ¶¶ 353-55, 394, 458. Defendants are alleged to have taken over GOK "through physical force, bribery, and extortion." Compl. ¶ 6; *see also* NY Am. Compl. ¶ 5.  The Complaint alleges:

> 7.    Once in control of GOK, the Conspirators replaced the plant's general director with their own designee, who had the plant enter into sham contracts with their affiliates, which contracts were then deliberately defaulted, creating massive sham debts.

---

[10]    Plaintiffs also claim that certain actions taken prior to, during and after the GOK bankruptcy proceeding were part of the alleged takeover scheme, including: (1) an allegedly "illegal" January 28, 2000 Board of Directors' meeting (Compl. ¶¶ 63-64); (2) the efforts to prevent a GOK shareholders' meeting held on March 4, 2000 (Compl. ¶¶ 66-73); (3) a change in the registrar of GOK's shares, purportedly accomplished unlawfully without notice, in an effort to deprive plaintiffs such as Davis of their shares in GOK (Compl. ¶¶ 88-94); and (4) the issuance of additional GOK shares in 2003 (Compl. ¶¶ 127-134).  Many of these issues are discussed generally here.  For a complete discussion of each of these issues see Opening Brief In Support of Motion To Dismiss Complaint on Grounds of Comity ("Comity Brief").

> 8.      The plant was then placed in bankruptcy
> by which they could assert control, because the debts
> they were 'owed' allowed them to elect their agent as
> the bankruptcy manager.

Compl. ¶¶ 7, 8; *see also* NY Am. Compl. ¶ 7.

According to the Complaint, once in control, the "Conspirators arranged for Plaintiffs' shares to be transferred to the Delaware corporate defendants, utilizing, *inter alia*, fraud or corrupted court proceedings in which Plaintiffs were not even named as parties." Compl. ¶ 9; *see also* NY Am. Compl. ¶¶ 7, 8. Plaintiffs allege that the bankruptcy petition was accepted by the court "despite the fact that GOK had on its bank account funds nineteen times greater than the amount of its debt to Krasgaz." Compl. ¶ 81; *see also* NY Am. Compl. ¶ 388. The Complaint further alleges that in March 2000, the Sverdlovsk Arbitrazh Court "accepted the bankruptcy petition and appointed Oleg Kozyrev ("Kozyrev"), an agent of the Conspirators, as provisional manager of GOK." Compl. ¶ 83;[11] *see also* NY Am. Compl. ¶ 389. In making their allegations, plaintiffs place in issue Russian law, a Russian non-party gas company as a key witness, the contract between two Russian companies by which GOK purchased natural gas from Kras Gas, and the issue of whether the Russian gas company's receivables from the Russian vanadium plant were "overdue," as has been found by the Russian agency, the Federal Financial Recovery and Bankruptcy Service of Russia, and the Sverdlovsk Arbitrazh Court.

Pursuant to a March 30, 2000 order of the Sverdlovsk Arbitrazh Court, a meeting of GOK creditors was held on August 11, 2000 at which it was decided to move to the

---

[11]    Though not revealed in the Complaint, this appointment was recommended by the Federal Agency on Insolvency and Financial Bankruptcy for the Sverdlovsk region. *See* the Declaration of Professor Paul B. Stephan III, dated January 28, 2002, submitted in the New York case (hereinafter "Stephan Jan. 28, 2002 Decl."). A-498, ¶ 34.

external trust management phase in GOK's bankruptcy and to appoint Mr. Oleg Kozyrev as External Manager.[12]  Compl. ¶ 84.  According to the Complaint, on "August 22, 2000, the [Sverdlovsk Arbitrazh] Court held a hearing to approve the decision of the first meeting of the creditors."  Compl. ¶ 85;[13] *see also* NY Am. Compl. ¶ 394.

The final step in the alleged "false bankruptcy" was to have GOK enter into a "sham settlement Agreement" with creditors.  Compl. ¶¶ 79, 116;  *see also* NY Am. Compl. ¶¶ 7, 424.  The Complaint alleges that "[t]he GOK sham settlement agreement was intended to make the debt owed to legitimate creditors worthless while transferring control of GOK to the 'new' shareholders" and that "[s]hareholders had no standing to challenge this agreement under Russian bankruptcy law."  Compl. ¶ 117 (emphasis added); *see also* NY Am. Compl. ¶ 429.  The settlement, however, was approved by 86% of the creditors at a March 11, 2001 creditors' meeting.[14]  Moreover, the Complaint fails to reveal that the settlement agreement was  approved by the Sverdlovsk Arbitrazh Court in a decision dated April 19, 2001, in which the Court specifically rejected a challenge to the settlement agreement brought by Nexis Products, a plaintiff in the New York case.[15] Nexis Products unsuccessfully appealed that determination to the Appellate Instance of the Sverdlovsk Arbitrazh Court and then to the Federal Arbitrazh Court for the Urals Circuit.[16]

---

[12]  *Id.*

[13]  Nexis OOO, a Russian company and apparently a wholly-owned subsidiary of Ne xis Products LLC, a plaintiff in the New York case, unsuccessfully challenged that decision.  *See id.* at ¶ 34.

[14]  A-501, ¶ 39.

[15]  A-501, ¶ 38.  Nexis Products not only participated in the bankruptcy, but itself brought an unsuccessful court challenge in the Sverdlovsk Arbitrazh Court to the inclusion in the bankruptcy of creditor Lebaut, a Russian company, and further unsuccessfully appealed to the Urals Circuit Federal Arbitrazh Court. *Id.* at ¶ 39.

[16]  *Id.*

2.     **Allegations And Court Proceedings in Russia**
       **Regarding The Governance And Ownership Of GOK**

Plaintiffs allege a fraudulent scheme in which defendants purportedly took control of GOK's management, changed the registrar of GOK and unlawfully transferred the plaintiffs' shares in GOK.   Following the takeover of GOK described above, the Complaint alleges that "[b]y threat of physical harm, the Conspirators caused four of the seven member board of directors of GOK in the absence of a quorum, which according to the bylaws was five, to vote to remove Khaidarov as general director and to replace him with Andrey Kozitsin ("Kozitsin"), an agent of the Conspirators." Compl. ¶ 64; *see also* NY Am. Compl. ¶ 357.   The Complaint further alleges that "[a]lthough the lower court order approving this resolution of the board of directors was invalidated by a directive from a member of the Supreme Court of Russia, which remanded the case for reconsideration, the lower court failed to conduct a hearing to reconsider its order for over two years and, as of the filing of this Complaint, has yet to decide the matter." Compl. ¶ 65.   The three other Board members "initially refused to succumb to the threats and filed criminal complaints with the Prosecutors of the Kachkanar and Sverdlovsk areas, requesting initiation of the criminal proceedings in connection with the illegal takeover."  Compl. ¶ 66;[17] *see also* NY Am. Compl. ¶ 358.   Thus, Plaintiffs' allegations would seemingly require this Court to determine why the Supreme Court in Russia invalidated a lower court order approving the Board's resolution; why the lower court on remand has allegedly failed to act further; whether criminal proceedings were in fact

---

[17]   The Complaint, like the Amended Complaint in the New York case, does not reveal, however, that a report dated February 2, 2000 by the Senior Assistant Prosecutor for the City of Kachkanar found that "there was no forcible, armed seizure" of GOK on January 28, 2000 and therefore no criminal proceedings were instituted.  A-502, ¶ 42.

initiated in Russia; and whether the Russian Prosecutor's determination not to proceed was appropriate.

Despite defendants' criticisms regarding such omissions in the New York case, the Complaint yet again fails to disclose that Plaintiff Davis, and other individual shareholders, brought several challenges to the January 28, 2000 vote of the four Board members in the Russian trial and appellate courts, the end result establishing that the vote was valid and proper.[18]  Plaintiffs seek to have this Court determine whether the January 28, 2000 GOK board meeting was improper, even though Plaintiff Davis and others in Russia have already brought their claims before the Russian courts.

To support the plaintiffs' conversion claim, the Complaint alleges that "the Conspirators had Kozyrev change the registrar of shares of GOK to VRK Company, a registration company controlled by the Conspirators through UGMC, which was a shareholder of VRK."  Compl. ¶ 89; *see also* NY Am. Compl. ¶ 397.  Once again, the Complaint fails to disclose that Plaintiffs Davis, Foston, Holdex and Omni themselves brought an action in the Moscow Arbitrazh Court challenging the change of register from Kompania-registrator Panorama ("Panorama Corporate Registrar") to Vedeniye reestrov kompaniy ("VRK Corporate Registrar" or "Bookkeeping Registry Company").[19]  The Moscow Arbitrazh Court, in a decision dated March 20, 2001, found that the contract to transfer the register had been proper and that all shareholders were notified of the change

---

[18]  A-502, ¶¶ 42-43.  In three decisions, a May 30, 2000 decision in the Tverskoy Inter-Municipal Regional Court, a December 22, 2000 decision in the Gagarinsky Inter-Municipal Court of Moscow and a June 22, 2001 decision of the Tverskoy Inter-Regional Court of the Central Administrative District of Moscow, each of the respective courts dismissed on venue grounds challenges brought by Khaidarov to the January 28, 2000 meeting.  A-504, ¶ 44.  The courts held that Khaidarov should have brought his claim before the Sverdlovsk Court (in the region in which GOK is located).  *Id.* ("These decisions indicate how the Russian legal system operates in practice to suppress duplicative lawsuits and improper forum shopping.").

[19]  A-506, ¶ 48.

by a publication of notice in the *Oblastnaya gazeta* newspaper.[20]  Although not disclosed

in the Complaint, Davis, Foston, Holdex and Omni unsuccessfully appealed this decision

to the Moscow Arbitrazh Court and then to the Moscow Circuit Federal Arbitrazh

Court.[21]  Both of those courts, in decisions dated June 26, 2001 and September 5, 2001,

respectively, as well as five other Russian court decisions, have held the change of

registrar to be valid.[22]  Thus, plaintiffs seek to have this court review decisions of three

levels of Russian courts holding the change of registrar to be valid and lawful and the

notification satisfactory under Russian law.

### (a)    The Transfer Of The Davis Shares in Russia

After the change of registrar, the Complaint alleges that VRK Corporate Registrar

allegedly "registered a transfer of 35,106,022 shares of GOK from Davis to New Start."

Compl. ¶ 90; *see also* NY Am. Compl. ¶ 399.  The transfer allegedly involved a series of

Russian transactions, forged Russian documents, wire transfers, and the assistance of a

Mr. Ashenbrenner, "a prior agent of Davis," who allegedly submitted to VRK a revoked

power of attorney purportedly "authorizing him to transfer shares from Davis to New

Start."  Compl. ¶¶ 89-94; *see also* NY Am. Compl. ¶¶ 397-403.

### (b)    The Transfer Of Omni's Shares in Russia

The Complaint states that Omni allegedly "purchased its shares in GOK" from

"various entities" who "had acquired the shares as a result of a judicial sale that occurred

in September 1998."  Compl. ¶ 95; *see also* NY Am. Compl. ¶ 404.  Plaintiffs allege that

in the spring of 2000 "unbeknownst to Omni, NPRO Urals, a company controlled by the

---

[20]    *Id.*

[21]    *Id.*

[22]    *Id.* at ¶¶ 48-49.

Conspirators, filed a lawsuit in the obscure Chelyabinsk Arbitrazh Court to set aside the judicial sale," and that the court "ruled in favor of NPRO Urals and ordered that the shares be re-registered" in its name on August 1, 2000. Compl. ¶ 96; *see also* NY Am. Compl. ¶¶ 405-06. Thereafter, cases in the appellate division of the Chelyabinsk Arbitrazh Court and the Urals Circuit Federal Arbitrazh Court confirmed that the shares were to be re-registered to NPRO Urals. Compl. ¶ 96; *see also* NY Am. Compl. ¶¶ 407-08. As a result of these court proceedings, the Complaint asserts that "Omni was divested of 10,583,063 shares" of GOK. Compl. ¶ 97. Allegedly, "[c]ontrary to Russian law, Omni, the owner of the shares, was never notified of or participated in these proceedings . . . ." Compl. ¶ 98; *see also* NY Am. Compl. ¶ 409. The Complaint admits that Omni did in fact "learn[] of the transfer of its shares" and that "a representative appeared at the January 4, 2001 hearing and petitioned to make Omni a party to the proceedings," but "[t]his request was denied." Compl. ¶¶ 99-100. Therefore, Omni would ask this Court to review whether a Russian court's denial of its petition to participate in Russian court proceedings was proper.

### (c)    The Transfer Of Foston's Shares in Russia

The Complaint alleges that in 2000, three unidentified "companies owned and controlled by the Conspirators sued Foston in Moscow seeking to invalidate the sale of shares to Foston." Compl. ¶ 105; *see also* NY Am. Compl. ¶ 411. Foston allegedly "was never notified of the proceedings and, instead, a forged power of attorney was submitted to the Court purportedly on behalf of Foston." Compl. ¶ 105; *see also* NY Am. Compl. ¶ 412. According to the Complaint, "[o]n September 29, 2000, absent any opposition, the court ordered the transfer of 37,715,081 of Foston's GOK shares . . . to the Conspirators'

companies." Compl. ¶ 106; *see also* NY Am. Compl. ¶ 413. Allegedly, in October 2000, "Foston accidentally learned of the transfer," but when it "attempted to investigate what had occurred, the court files were stolen." Compl. ¶ 107. Thereafter, however, after a series of legal challenges in the Russian courts not disclosed in the Complaint, a Russian court ordered the return of the shares to Foston. Compl. ¶ 108; Stephan Decl. ¶ 56.[23] This decision has been upheld by several Russian appellate courts. Stephan Decl. ¶ 56. The Complaint offers no explanation as to why it is appropriate for Foston to now come to this Court when it has been actively involved in litigation in Russia regarding its alleged ownership of these same GOK shares, and when a court in Russia has in fact ordered the return of its shares.

### (d)    The Transfer of Holdex's Shares in Russia

The Complaint alleges that in 2000, "GOK filed a suit in the Kalmykia Arbitrazh Court against Polyprom, the company that sold its GOK shares to Holdex, to declare that the sale of shares to Polyprom, which it later sold to Holdex, was invalid." Compl. ¶ 110; *see also* NY Am. Compl. ¶ 417. According to the Complaint, "[b]y order dated November 22, 2000, the Court ruled in favor of GOK which the Conspirators then controlled and ordered that the shares be re-registered to another Russian company" and that "as a result Holdex was divested of 2,307,984 shares" in GOK. Compl. ¶ 110; *see also* NY Am. Compl. ¶ 418. The Complaint further alleges that "contrary to Russian law, neither Polyprom nor Holdex were notified of, and did not participate in, the proceedings" and they "did not learn about the decision until about two months after it was rendered." Compl. ¶ 111-12; *see also* NY Am. Compl. ¶ 419. Apparently plaintiffs

---

[23]    References to "Stephan Decl." are to the Declaration of Paul B. Stephan, dated March 23, 2005, attached as Ex. 2 to the Affidavit of Charles M. Oberly III.

are alleging that Plaintiff Holdex purchased its GOK shares from Polyprom, a Russian company, and that a Russian company filed suit in a Russian court, the Kalmykia Arbitrazh Court, against Polyprom alleging that the original agreement for sales of shares to Polyprom (which called for the application of Russian law) was not valid.

The Complaint then omits – although it is alleged in the *Base Metal Trading* Amended Complaint – that on April 17, 2001, the appellate court reversed and remanded the Kalmykia Arbitrazh Court decision, rejecting Polyprom's claim that it had not been notified of the initial action before the lower court,[24] and that subsequently the Kalmykia Arbitrazh Court held another hearing on this matter. *See* NY Am. Compl. ¶¶ 421-22. On remand, after considering additional evidence, the Kalymkia Arbitrazh Court, on July 5, 2001, again ordered the reversal of the earlier sale of GOK shares to Polyprom.[25] In a decision dated November 9, 2001, the Appellate Instance of the Arbitrazh Court for the Republic of Kalmykia held that the GOK-Polyprom contract was invalid and ordered that the re-register of shares to GOK be affirmed.[26] The decision confirms that both Holdex and Polyprom were notified of and appeared in the proceeding.

Furthermore, Polyprom has since appealed these decisions. *See* Stephan Decl. ¶ 57. On February 4, 2003, the Kalymykia Arbitrazh Court, Appellate Instance, upheld the previous decisions ordering the return of GOK shares from Polyprom. *Id.* Polyprom did not appear at the hearing, but the court found it was given proper notice. *Id.* Polyprom appealed that decision to the Federal Arbitrazh Court for the North Caucasus Region. *Id.* The Caucasus court remanded the case back to the Kalymykia court, finding that third-

---

[24]   A-509, ¶ 52.

[25]   *Id.*

[26]   *Id.*

party, Holdex, was not properly served with notice. *Id.* On remand the Kalymykia court held that the shares should once again be returned to GOK. *Id.* Holdex failed to appear again, but the court found that proper notice was sent to Holdex LLC at 707 W 7th Street, Austin, Texas. *Id.* Plaintiffs' protestations to the contrary, the Russian courts have found that Holdex has been given an opportunity for its day in court but has obviously chosen to forgo its rights while crying foul in this Court.

In the face of similar requests to review decisions of the Russian courts in *Base Metal Trading*, Judge Koeltl held:

> Should the plaintiffs prevail on the motion to dismiss and the case proceed to trial in this Court, the Court would be forced to consider approximately 120 Russian legal decisions related to the NKAZ and GOK bankruptcies and the GOK change of control . . . . These decisions involved almost 150 Russian judges . . . . <u>This Court is not a court of appeals for the Russian legal system and will not act as such.</u>

*Base Metal Trading*, 253 F. Supp. 2d at 708 (emphasis added).

## ARGUMENT

As demonstrated below, Russia is an adequate alternative forum for plaintiffs' claims, and a balancing of the public and private interests relevant in a *forum non conveniens* motion strongly favors dismissal. Most of the witnesses, including numerous important non-party witnesses, are Russian companies or Russian citizens residing in Russia, most of the documents are in Russia and written in Russian, and Russia has a far greater interest in claims relating to bankruptcy proceedings in the Urals and to the proper ownership of shares in a Russian vanadium ore company, which have been the subject of rulings of several Russian courts. Moreover, Russian law applies to virtually all of plaintiffs' claims.

## I.  THE COMPLAINT SHOULD BE DISMISSED ON *FORUM NON CONVENIENS* GROUNDS

### A.    The Factors Relevant To A *Forum Non Conveniens* Motion

The doctrine of *forum non conveniens* affords a trial court discretion in a case over which it has jurisdiction to decline to exercise that jurisdiction, whenever it appears that such case may be more appropriately tried in another forum, either for the convenience of the parties or to serve the ends of justice.  *See generally Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947).  The test established by the Supreme Court and the Third Circuit on a motion to dismiss on *forum non conveniens* grounds requires the district court to: (1) consider whether an adequate alternative forum exists; (2) determine the amount of deference to afford the plaintiffs' choice of forum; and (3) balance the public and private interest factors affecting the convenience of the forum and the litigants.  *See Gulf Oil*, 330 U.S. at 508-09; *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 239 n.6 (1981); *Bhatnagar v. Surrenda Overseas Ltd.*, 52 F.3d 1220, 1226 (3d Cir. 1995).  Defendant bears the burden of persuasion as to all elements of the *forum non conveniens* analysis.  *See Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43 (3d Cir. 1998) ("Lacey I").[27]

### 1.    The Test For An Adequate Alternative Forum

Generally a foreign forum will be adequate when the defendant (1) "is amenable to process in the other jurisdiction" and (2) the alternate forum "permits litigation of the subject matter of the dispute."  *Piper*, 454 U.S. at 255, n.22.  An agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy the first requirement.  *See, e.g., Aguinda v. Texaco*, 303 F.3d 470, 476-77 (2d Cir. 2002).  Only in

---

[27]    This Court must apply federal standards of *forum non conveniens* law.  *See* Direct Estoppel Brief at 22.

"rare circumstances . . . where the remedy offered by the other forum is clearly unsatisfactory" will a court find that the alternate forum is inadequate. *Piper*, 454 U.S. at 255, n.22.

A forum is considered adequate and dismissal is permitted even if a plaintiff faces the possibility of an unfavorable change in the law in the other forum. *Piper*, 454 U.S. at 249; *see also Lony v. E.I. DuPont de Nemours & Co.*, 886 F.2d 628, 632 n.2 (3d Cir. 1989) ("Lony I"), *appeal after remand*, 935 F.2d 604 (1991) ("Lony II"). For example, it is well-settled law that the absence of a RICO statute and treble damages is no impediment to finding that Russia is an adequate alternative forum for plaintiffs' claims. *See Transunion Corp. v. Pepsico, Inc.,* 811 F.2d 127, 129 (2d Cir. 1987) ("though appellants might not be able to claim RICO violations and RICO treble damages in the Philippines, they could assert the three underlying fraud claims"); *Winex Ltd. v. Paine*, 1990 WL 121483, *5 (E.D. Pa. 1990) ("the assertion of . . . RICO claims does not preclude application of forum non conveniens"). Essentially the court "must determine whether Russian law provides adequate, not identical relief." *Base Metal Trading*, 253 F. Supp. 2d at 699.

Finally, general allegations of corruption do not render a forum inadequate. *Id.* at 706 (collecting cases); *see also Dawson v. Compagnie des Bauxites de Guinee*, 539 F. Supp. 20, 24-25 (D. Del. 1984) (finding the Republic of New Guinea to be an adequate alternative forum despite plaintiffs' contentions that it is a "Marxist-Communist state with a one-party system ruled over by a dictator," that "its legal system is subordinate to politics," and that "it would be difficult, if not impossible, to receive a fair trial against the partially [government] owned defendant, and holding that the Court finds "these

broadbased contentions unpersuasive in establishing that plaintiff would be left without a legal remedy").

### 2.    Russia Is An Adequate Alternative Forum

As set forth in the accompanying Declarations of Paul B. Stephan III, Professor at the University of Virginia School of Law, dated March 23, 2005 ("Stephan Decl."), and Sergei Nikolaevich Lebedev, a law professor and lawyer in Russia, dated March 25, 2005 ("Lebedev Decl."), the Russian courts are an adequate alternative forum for plaintiffs' claims in this lawsuit.  *See* Stephan Decl. ¶¶ 7, 64; Lebedev Decl. pg. 23.

The Russian courts would have jurisdiction over the subject matter of this dispute and over all parties.  Were this dispute to be brought in Russia, this case might be heard either by the arbitrazh courts[28] or by the courts of general jurisdiction,[29] depending on how the plaintiffs chose to pursue their claims.  *See* Stephan Decl. ¶ 21; Lebedev Decl. ¶ 13.  Foreign companies have full rights of access to the Russian courts.  *See* Stephan Decl. ¶¶ 16, 19.  Many of the defendants are Russian citizens or companies, and are therefore subject to jurisdiction in the Russian courts.  In addition, so that there will be no doubt, all defendants have explicitly consented to the jurisdiction of the Russian courts over the claims asserted by plaintiffs in this action.  *See* Oberly Aff. ¶ 7, Exs. 5-13. Plaintiffs could choose the venue from among those regions in Russia where any of the defendants are located.  *See* Stephan Decl. ¶¶ 20, 21.  Again, defendants have consented

---

[28]    Arbitrazh courts handle commercial disputes between business entities.  For a more detailed description of the arbitrazh courts in Russia *see* Stephan Decl. ¶¶ 8-17 and Lebedev Decl. ¶¶ 17-20.

[29]    The courts of general jurisdiction handle non-commercial disputes between individuals.  For a more detailed description of the courts of general jurisdiction in Russia *see* Stephan Decl. ¶¶ 18, 19 and Lebedev ¶¶ 13-16.

to plaintiffs' choice of venue, which is permissible under Russian law. *See* Oberly Aff. ¶ 7, Exs. 5-13 ; Stephan Decl. ¶ 21.

Russian law provides remedies for all of plaintiffs' claims. *See* Stephan Decl. ¶¶ 22-32; Lebedev ¶¶ 32-44. Russian law allows causes of action for fraud (which is analogous to plaintiffs' RICO claims) and conversion. *See* Stephan Decl. ¶¶ 24, 29, 30; Lebedev Decl. ¶¶ 32-44. Russian law also has the capacity to impose personal liability on individuals who abuse the corporate form. *See* Stephan Decl. ¶¶ 24, 31; Lebedev Decl. ¶ 40. The issue of whether analogous causes of action are available under Russian law for fraud and conversion was extensively briefed in the *Base Metal Trading* case, in which the court invoked these very same paragraphs from Prof. Stephan's Declaration. In fact, Judge Koeltl raised the issue at oral argument and asked the parties to supplement the record on this point.[30] After analyzing the subsequent submissions from both parties, which included several additional expert declarations, including declarations from some of the same experts who have submitted opinions in this case, the Court found that the "defendants' legal experts argue convincingly that the plaintiffs can bring a cause of action for fraud that would provide an adequate alternative remedy." *Base Metal Trading*, 253 F. Supp. 2d at 700; *see also Norex*, 304 F. Supp. 2d at 577-79 (relying also, in part, on a declaration of Professor Stephan and finding that a cause of action for fraud or civil conspiracy existed in Russia which was analogous to those plaintiffs' RICO claim). In addition, the Court in *Base Metal Trading* held that "Russian law also provides causes of action equivalent to conversion . . . ." *Id.*

---

[30]    A-163 – A-164.

The Russian courts have broad remedial powers to make the victims of such injuries whole, and may award damages for what are known under U.S. law as consequential damages. *See* Stephan Decl. ¶ 24; Lebedev Decl. ¶¶ 28-31. If a lawsuit is brought in Russia, the plaintiffs may request the same compensation as they seek to receive in this Court, with the sole exception that there is no treble damages provision in Russia. *See* Stephan Decl. ¶ 24; Lebedev Decl. ¶¶ 28-31, 44. In addition, as Professors Stephan and Lebedev explain, the Russian judicial system provides significant procedural safeguards to litigants. Stephan Decl. ¶¶ 11-13, 19; Lebedev Decl. ¶¶ 24-25.

Finally, Professor Stephan states that "it is realistic for persons who litigate in [the Russian] courts to expect a fair and disinterested resolution of business disputes based on the law and evidence." Stephan Decl. ¶ 13; *see also* Lebedev Decl. ¶¶ 54-60 (" . . . . it is my opinion that parties may reasonably expect their case to be decided on the basis of the law and facts and not due to corruption or improper influence."). Plaintiffs' vague allegations of corruption notwithstanding,[31] five other federal courts have found Russia to

---

[31] For example, Plaintiffs allege that two applications to the Supreme Arbitrazh Court filed by unnamed defendants in a lawsuit in Russia involving Plaintiff Omni were denied by a Justice Arifulin and that "Judge Trager of the Eastern District of New York found that a decision in which Judge Arifulin was involved was obtained through corruption." Compl. ¶¶ 100-01. This is a misleading summary of *Films By Jove,* which involved a dispute over the ownership of copyrights in approximately 1500 animated films created by a state-owned Soviet film studio. Plaintiffs in that case were granted summary judgment in August 2001. Defendants then filed a motion for reconsideration and for a stay of any enforcement proceedings in light of subsequent court decisions in France and Russia relating to this dispute. Judge Trager found that none of the foreign court rulings upon which defendants based their joint motion for reconsideration warranted the relief they sought, and held that the Russian court's opinion offered no direct discussion of the central issue before him -- ownership of the copyrights in the Soviet film studio's classic films. *Films By Jove  v. Berov,* 250 F. Supp. 2d 156, 216 (E.D.N.Y. 2003); *motion to vacate denied by,* 341 F. Supp. 2d 199 (E.D.N.Y. 2004). Moreover, Judge Trager held, "[a]side from the faulty legal analysis underpinning the High Arbitrazh Court's December 18, 2001 decision," it is "apparent that the . . . decision was strongly influenced, if not coerced, by the efforts of various Russian government officials seeking to promote 'state interests.'" *Id.* at 215-16. Therefore, "[u]nder these circumstances, the High Arbitrazh Court's decision is entitled to no deference." *Id.* at 181. The Court specifically declined to see this as proof of corruption in the Russian judiciary as a whole. *Id.* at 207 ("Although the alleged flaws in the Russian judicial system are troublesome, the present record does not support a sweeping condemnation of Russia's judiciary.").

be an adequate alternative forum, despite similar allegations made by plaintiffs in those actions. *See Pavlov v. Bank of New York,* 135 F. Supp. 2d 426, 435 (S.D.N.Y. 2001), *vacated on other grounds and remanded,* 2002 WL 63576 (2d Cir. Jan. 14, 2002), *dismissed by,* 2002 WL 31324097 (S.D.N.Y. October 16, 2002); *Parex Bank v. Russian Savings Bank,* 116 F. Supp. 2d 415 (S.D.N.Y. 2000);[32] *Varnelo v. Eastwind Transport, Ltd.*, 2003 WL 230741 (S.D.N.Y. Feb. 3, 2003); *Base Metal Trading*, 253 F. Supp. 2d at 709; *Norex*, 304 F. Supp. 2d at 580.

### B.    Plaintiffs' Choice of Forum Is Entitled To Diminished Deference

#### 1.    Factors Considered In Determining Degree Of Deference To Plaintiffs' Choice of Forum

The Third Circuit, citing Supreme Court precedent, has stated that "[o]rdinarily, great deference is accorded a plaintiff's choice of forum, but the amount of deference due is less when the plaintiff is foreign." *Lony I*, 886 F.2d at 633 (citing *Piper*, 454 U.S. at 255). However, the Third Circuit has also cautioned that the language in *Piper* should not be viewed as "an invitation to accord a foreign plaintiff's selection of an American forum *no* deference." *Lacey I*, 862 F.2d at 46 (citations omitted) (emphasis in original). Accordingly, the Third Circuit has held that "in ruling on a *forum non conveniens* motion, the district court must indicate the amount of deference it is giving to plaintiff's choice of forum." *Lony I*, 886 F.2d at 633-34.

Although a plaintiff's choice of forum should be given appropriate deference, the Supreme Court has warned that "the open door may admit those who seek not simply

---

[32]    The Court in *Parex Bank* ultimately found, however, that "this is one of the rare cases in which the alternate forum provides 'no remedy at all,'" because a Russian court decision held bank hedging contracts were unenforceable under the Civil Code of the Russian Federation. 116 F. Supp. 2d at 426.

justice but perhaps justice blended with some harassment." *Gulf Oil*, 330 U.S. at 507.

The Third Circuit has stated similar words of admonition:

> Courts know from experience that the selection of a forum is sometimes dictated not only by the search for justice but the temptation of the plaintiff to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself.

*Dahl v. United Tech. Corp.*, 632 F.2d 1027, 1031 (3d Cir. 1980).

Recognizing the need to go beyond mere citizenship of the plaintiff and to examine the true motives for plaintiff's choice, the Second Circuit, sitting *en banc* in *Iragorri v. United Technologies Corp.*, 274 F.3d 65 (2d Cir. 2001), developed a "sliding scale" approach to the issue of deference. There the Second Circuit held that it was to give "greater deference to a plaintiff's forum choice to the extent that it was motivated by legitimate reasons . . . and diminishing deference to a plaintiff's forum choice to the extent that it was motivated by tactical advantage." *Id.* at 73. The Court stated:

> [T]he more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons -- such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum -- the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a forum non conveniens motion by showing that convenience would be better served by litigating in another country's courts.

*Id.* at 72 (emphasis added).

In *Base Metal Trading*, the defendants and Judge Koeltl challenged the same plaintiffs to identify their officers, directors and shareholders, including each individual's citizenship, as well as their operations in the United States and the location of their

offices.[33]  Judge Koeltl gave the plaintiffs a last chance to establish some *bona fides*, but

they could not and they cannot now.  Plaintiffs amended their complaint in the New York

case in the face of defendants' motions to dismiss.  They added U.S. plaintiffs in a

desperate effort to establish ties to a U.S. forum.  The defendants in *Base Metal Trading*

called those plaintiffs "shell companies" and, as set forth above, plaintiffs supplemented

the record on this specific point following oral argument with a declaration from Joseph

Traum, the managing director of Davis.[34]  After analyzing the plaintiffs' submissions and

the entire record, the Court held:

> To the extent that the plaintiffs rely simply on the status of
> three of the ten plaintiffs as United States corporate citizens
> as the basis for bringing suit in New York, this strategy is
> without merit.  These three plaintiffs appear to be nothing
> more than holding companies for shares of GOK . . . . The
> record before the Court points to nothing but forum
> shopping by the plaintiffs . . . . <u>Such a tactical maneuver is
> not protected by the deference generally owed to the
> plaintiffs' choice of forum.</u>

*Base Metal Trading*, 253 F. Supp. 2d at 696, 698 (emphasis added).  Once again, as in

New York, plaintiffs have not alleged any *bona fide* connection to Delaware.  *Cf.*

*Dawson*, 593 F. Supp. at 25 (dismissing plaintiff's complaint on *forum non conveniens*

grounds, finding that "the only conceivable relation Delaware has to the litigation is the

fact that both defendants are incorporated here").

    In addition to the issues raised by the Supreme Court and articulated in *Iragorri*,

"[w]here an American <u>plaintiff chooses to invest in a foreign country</u> and then complains

of fraudulent <u>acts occurring primarily in that country</u>, the plaintiff's ability to rely upon

citizenship as a talisman against forum non conveniens dismissal is diminished."

---

[33]    A-65 – A-66.

[34]    *See* Traum Decl., dated Feb. 19, 2003, at A-782.

*Sussman v. Bank of Israel*, 801 F. Supp 1068, 1073 (S.D.N.Y. 1992), *aff'd,* 990 F.2d 71 (2d Cir. 1993) (per curiam), *rev'd on other grounds*, 56 F.3d 450 (2d Cir. 1995) (emphasis added).  In the instant case, plaintiffs are foreign corporations or shell U.S. companies claiming their shares in a Russian company were fraudulently transferred through corrupt court proceedings in Russia.  Accordingly, Plaintiffs should not be permitted to rely on the purported U.S. citizenship of two of the corporate plaintiffs to avoid a *forum non conveniens* dismissal.

Even were the court to afford plaintiffs' choice of forum some weight, the following sections demonstrate that the overall balance of conveniences nonetheless "tips strongly in favor" of dismissal and far outweighs any convenience claimed by the plaintiffs.  *Gilbert*, 330 U.S. at 508.[35]

### C.    The Private Interest Factors Strongly Favor Dismissal

The relevant private interest factors applicable to a *forum non conveniens* motion all strongly favor dismissing this action.  Those factors are "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a

---

[35]    In a case decided by the Supreme Court on the same day as *Gilbert,* the Court held that a defendant must demonstrate that trial in the chosen forum "would establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience."  *Koster v. Lumberman's Mut. Casualty Co.*, 330 U.S. 518, 524 (1947); *see also Bell Helicopter v. C&C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 411 (D. Del. 2002) (applying the *Koster* standard in dismissing on *forum non conveniens* grounds even where plaintiff and two of the defendants were Delaware corporations and holding that "[plaintiff's] convenience is outweighed by the oppressiveness and vexation to both defendants").  In *Piper*, the Supreme Court characterized *Gilbert* and *Koster* as establishing a single balancing test for *forum non conveniens* dismissals, with a rebuttable presumption that plaintiff's choice of forum would not be disturbed.  *Piper*, 454 U.S. at 241; *see also Iragorri*, 274 F.2d at 73 n.6 ("*Koster* does not establish a separate standard from *Gilbert* for *forum non conveniens* dismissals.").

case easy, expeditious, and inexpensive." *Gilbert*, 330 U.S. at 508; *Bell Helicopter v. C&C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 411 (D. Del. 2002).

### 1.     The Great Majority Of The Relevant Witnesses And Documents Are Located In Russia

The individuals and corporations plaintiffs identified in the Complaint are likely to be witnesses, and are located almost entirely in Russia.  The allegations not only regarding Russian defendants, but regarding numerous non-parties in Russia, including Russian judges and senior Russian Government officials, vividly demonstrate that the United States is not the proper forum for this litigation.  The alleged "illegal scheme" is dependent on the purported actions of a Russian Governor, "regional banks," the "Russian central banking system" and numerous other Russian entities and individuals who plaintiffs have not named as defendants in this litigation, and on a "sham" involuntary bankruptcy petition, filed -- not by any of the defendants -- but rather by a Russian company not even a party here.  Compl. ¶ 80.

The key non-party witnesses specifically identified in the Complaint are almost entirely Russian citizens and corporations:  Sverdlovsk Oblast Governor Eduard Roussel, Jalol Khaidarov (GOK's former General Manager), Andrei Kozitsyn, the Russian companies Lebaut, Svyatogor, NPRO Urals and VRK, Oleg Kozyrev, "five armed thugs," the "Russian police," "a local natural gas company," the board of directors of GOK, the shareholders of GOK, the creditors of GOK, and although not necessarily identified by name, the participants in the Russian lawsuits and appeals that are the subject of allegations in the Complaint, including specifically:  the Sverdlovsk Arbitrazh Court, the Kachkanar City Court, the Chelyabinsk Arbitrazh Court, the Solntsevo Intermunicipal Court in Moscow, the Moscow City Court, the Kalmykia Arbitrazh Court

and even Russian's Supreme Arbitrazh Court and two of its Justices.  Compl. ¶¶ 58, 49, 64, 76, 96, 89, 83, 54, 124, 79, 71-73, 110, 65, 100.  Based on plaintiffs' own allegations, almost all of the individuals and corporations likely to be witnesses are located in Russia.  *Id*.

Not only are almost all the non-party individuals identified in the Complaint located in Russia, but almost all of the defendants' likely potential witnesses are located in Russia.   In addition, defendants have agreed to produce any relevant documents or witnesses in any action filed by plaintiffs  in Russia alleging the same or similar claims asserted in the Complaint. *See* Oberly Aff. ¶ 7, and Exs. 5-13.

Moreover, the great majority of the documents are located in Russia, and many are written in Russian, *i.e.* the submissions to the External Manager and the Arbitrazh Court in the bankruptcy proceedings, and all of the Russian court decisions to which the Complaint objects, as well as those decisions which the Complaint fails to disclose.  *See Dawson*, 593 F. Supp. at 26 (recognizing the "undoubted burden that the language barrier would create for a trial in Delaware").

Given the great number of non-party witnesses located in Russia, there will unquestionably be easier access to the sources of proof in Russia.  As stated in *Base Metal Trading*, "as to third parties to this action, the Court cannot compel such witnesses to appear  . . . . Moreover, even if the Court could do so, the striking number of Russian parties and witnesses involved in the case demonstrates the extreme inconvenience of bringing this case to trial in the United States."  253 F. Supp. 2d at 710, *Dawson*, 593 F. Supp. at 26  ("Certainly it would be impractical, if not impossible and extremely expensive, for all these Guinean witnesses and evidence to be brought to Delaware for a

jury trial . . . . If these witnesses were unwilling to come halfway around the world for trial, they could not be compelled to do so by process issued by this Court.").[36]

**D.    The Public Interest Factors Also Strongly Favor Dismissal**

The public interest factors applicable to a *forum non conveniens* motion are: (1) "[a]dministrative difficulties . . . for courts when litigation is piled up in congested centers instead of being handled at its origin;" (2) "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation;" (3) the "local interest in having localized controversies decided at home;" (4) the "appropriateness . . . in having the trial . . . in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Gilbert*, 330 U.S. at 508-09; *Bell Helicopter*, 295 F. Supp. 2d at 411.

**1.    There Is No Reason To Burden This
Court Or A Delaware Jury With This Litigation**

There is no basis to burden a Delaware jury with issues raised by primarily foreign corporations doing business in Russia regarding shareholdings in a vanadium ore plant in north-central Russia. *See Gilbert*, 330 U.S. at 508; *Dawson*, 593 F. Supp. at 23 ("it would be unfair to burden Delaware citizens with jury duty in these cases when Delaware has so little connection with this controversy which is chiefly local in nature and completely centered in West Africa"); *Base Metal Trading*, 253 F. Supp. 2d at 713.

---

[36]    *See also Pavlov*, 135 F. Supp. 2d at 436 ("[t]his Court has no ability whatever to compel the production of documents or witnesses from Russia, which appears to be the locus of all or substantially all of the evidence concerning the core issues in the case -- whether Inkombank was looted and why it collapsed."); *Blanco v. Banco Indus. De Venezuela*, 997 F.2d 974, 982 (2d Cir. 1993) ("most, if not all, of the witnesses whose testimony would be required, are located in Venezuela; there is no process available to compel their appearance in New York"); *Alfadda v. Fenn*, 159 F.3d 41, 48 (2d Cir. 1998) ("compulsory process is available in France to secure the live testimony of necessary foreign witnesses outside the reach of United States process").

There is equally little basis to further crowd this Court's congested docket with litigation with so little local interest. *Gilbert*, 330 U.S. at 509. Moreover, Russia would provide a more efficient forum for this case – 2-4 months to trial in Russian compared to an average of 26.4 months to trial in the District of Delaware. *See* Stephan Decl. ¶ 15; Lebedev Decl. ¶ 26; Federal Judicial Caseload Statistics, March 31, 2004, U.S. District Courts--Civil, Table C.5.[37]

### 2.     Russia Has A Paramount Interest In These Controversies

Unlike Delaware, Russia has a very significant "local interest" in having this controversy "decided at home," based on the extensive allegations regarding litigation and bankruptcy proceedings in Russia which are central to plaintiffs' claims, and the applicability of Russian law.[38] *Gilbert*, 330 U.S. at 509; *see also* Stephan Decl. ¶¶ 49, 61, 62; Lebedev Decl. ¶¶ 61-68. According to the Complaint, the takeover of GOK was initiated by a "sham" bankruptcy petition in Russia by a Russian company; the bankruptcy petition was approved by a Russian court; a Russian individual was appointed external manager of GOK and his appointment was approved by another Russian court allegedly under the influence of a local Russian governor. Compl. ¶¶ 79-87. The Complaint goes on to allege that with their own designee now in place, the "conspirators" were then allegedly able to transfer the shares to defendant-controlled companies, which according the Complaint, "is a relatively common method <u>in Russia</u> by which organized crime groups seize control of economic enterprise." Compl. ¶ 88 (emphasis added). Russia clearly has a greater local interest in preventing the alleged abuse of its

---

[37]     Available at http://www.uscourts.gov/caseload2004/tables/C05Mar04.pdf.

[38]     A map of Russia indicating the location of the courts and Russian judges involved in the GOK-allegations was submitted in the New York case and is also included here in defendants' Appendix at A-651.

bankruptcy processes and judicial system for the illegal takeover of its companies.

In the absence of any significant connection by the plaintiffs to the United States, and in the face of plaintiffs' previous dismissal in New York, the Complaint resorts to alleging broadly, and without specificity, that "Delaware was the forum of choice for Defendants for effecting this and other illegal schemes; over the course of time, Defendants used over 100 Delaware entities to effect their schemes of fraud, bribery, and money laundering; seventeen of these entities are named herein." Compl. ¶ 10. Plaintiffs list fourteen Delaware entities that defendants' allegedly utilized "in their various schemes," but in no way link the use of these entities to the scheme that is the subject of this Complaint and for which they seek relief.

Plaintiffs' allegations are a transparent attempt to manufacture local interest in this dispute and to desperately proffer some basis to support plaintiffs' continued forum-shopping. Plaintiffs tactic is particularly obvious given that in the *Base Metal Trading* case they repeatedly argued that the focal point of these defendants' illegal conduct was New York, specifically alleging that defendants laundered money through New York banks and New York real estate. *See* Pl. Opp. Br. at 3, 7, 27, 37, 40, 53-54, 91, 103.[39]

### 3.    Russian Law Applies To Virtually All Of Plaintiffs' Allegations

The doctrine of *forum non conveniens* "is designed in part to help courts avoid conducting complex exercises in comparative law," and the public interest factors point towards dismissal where the court would be required to "untangle problems in conflict of laws, and in law foreign to itself.'" *Piper Aircraft*, 454 U.S. at 251, *quoting Gilbert*, 330 U.S. at 509. Here, Russian law applies to virtually all of plaintiffs' claims.

---

[39]  "Pl. Opp. Br." refers to Plaintiffs' Memorandum of Law In Opposition To Defendants' Motion to Dismiss the Amended Complaint filed in the New York case and included in the Appendix at A-295.

Regardless of whether the Court applies a Federal common law choice of law rule or Delaware's choice of law rules,[40] Russian law should govern virtually all of plaintiffs' claims. The Complaint repeatedly alleges that questions of Russian law are at the core of plaintiffs' allegations: (1) "[a]s shareholders, Plaintiffs had no standing under the Russian bankruptcy law to challenge these actions"; (2) "[c]ontrary to Russian law, Omni, the owner of shares, was never notified of or participated in these proceedings"; (3) "[c]ourt ordered transfer of property of persons who are not named as parties and not provided notice … in violation of Russian law is emblematic of corruption in Russia"; (4) "[u]nder Russian Law, an external manager has management authority over a company . . . .;" (5) "contrary to Russian law, neither Polyprom nor Holdex were notified of, and did not participate in, the proceedings;" (6) "Shareholders had no standing to challenge this agreement under Russian bankruptcy law;" and (7) "under Russian law certain corporate decisions require the approval of 75% plus 1 of the voting shares." Compl. ¶¶ 87, 98, 111, 84, 117, 129. *See also* Stephan Decl. ¶¶ 49, 61 ("Two common threads through all of these lawsuits are the correct interpretation of the Russian law of corporate governance and the existence of particular facts . . . . these questions are matters for which a Russian court has unique expertise."), 62. Facing similar allegations in *Base Metal*, Judge Koeltl held:

> [t]he Amended Complaint contains myriad alleged violations of Russian law . . . . Furthermore, this action challenges over 100 Russian court decisions, the validity of

---

[40] For the non-RICO claims, this court must apply Delaware's choice of law rules in order to determine which jurisdiction's law governs the present dispute. In determining choice of law in tort actions, Delaware has adopted the "most significant relationship" test. *See Rudisill v. Sheraton Copenhagen Corp.*, 817 F. Supp. 443, 448 n.7 (D. Del. 1993). Under that test, the Delaware Supreme Court has instructed "courts to apply the law of the state where the injury occurred unless another state has a more significant relationship to the occurrence and the parties." *Id.*, citing *Travel Indemnity Co. v. Lake*, 594 A.2d 38, 44-47 (Del. 1991).

> which will have to be determined under Russian law . . . .
> Thus, although the need to apply foreign law is not alone
> sufficient to warrant dismissal, *Piper*, 454 U.S. at 260 n.29,
> this factor weighs heavily in favor of dismissing this case in
> favor of a Russian forum.

*Base Metal Trading* , 253 F. Supp. 2d at 712.[41]

The most significant contacts unquestionably are with Russia, and Russia has the greatest interest in the case:  the alleged conversion occurred in Russia; the alleged fraud occurred in Russia; the vanadium ore at issue was produced in Russia; defendants are primarily Russian companies or citizens; most of the plaintiffs are foreign companies or U.S. shells and are apparently owned by foreign individuals; and plaintiffs' allegations seek to have this Court in effect reverse the decisions of several Russian courts and of the Russian bankruptcy proceedings.

## CONCLUSION

Even if plaintiffs' forum shopping and inexcusable filing of duplicative actions were not present in this litigation – and notwithstanding their lack of *bona fide* U.S. connections –  plaintiffs' own allegations regarding Russian court proceedings, the nature and complexity of the allegations, the applicability of Russian law, the large number of Russian witnesses, and the unprecedented intrusion into another sovereign country's legal system, demonstrate that this action should be dismissed on *forum non conveniens* grounds.  The dispositions in New York by Judge Koeltl (March 2003) and the Second Circuit (April 2004) were correct.  The same result should obtain here.

---

[41]  *See* chart of GOK-related court decisions submitted in the *Base Metal Trading* case upon Judge Koeltl's request, identifying a total of 78 GOK-related Russian court decisions.  A-652.  Additional GOK-related decisions have been issued since the *Base Metal Trading* decision and are included in Volumes 12 and 13 of the Appendix.

Respectfully submitted,

Attorneys for Defendants Arnold Kislin:

 /s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

Lisa C. Cohen
Schindler Cohen & Hochman LLP
100 Wall Street
15th Floor
New York, NY  10005
(212) 277-6300

Lawrence S. Goldman
Elizabeth Johnson
The Law Offices of Lawrence S. Goldman
500 Fifth Ave., 29th Floor
New York, NY 10110-2900
(212) 997-7499

Attorneys for Defendants New Start Group
Corp. and Venitom Group:

/s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

Richard J. Schaeffer
Peter J. Venaglia
Laura D. Sullivan
Dornbush, Schaeffer, Strongin &
Weinstein, LLP
747 Third Avenue, 11th Floor
New York, NY 10017
(212) 759-3300

Attorneys for Defendant Oleg Deripaska:

 /s/ Collins J. Seitz, Jr.
Collins J. Seitz, Jr. (DSBA No. 2237)
Kevin F. Brady (DSBA No. 2248)
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

Rodney F. Page
Michael G. Biggers
Bryan Cave LLP
700 13th Street, N.W.
Washington, D.C. 20005-3960
(202) 508-6002

Attorneys for Defendant Evraz Holding:

 /s/ William M. Lafferty
William M. Lafferty (DSBA No. 2755)        David H. Herrington
Morris, Nichols, Arsht & Tunnell           Vitali Rosenfeld
Chase Manhattan Centre, 18th Floor         Cleary Gottlieb Steen & Hamilton LLP
1201 North Market Street                   One Liberty Plaza
P.O. Box 1347                              New York, NY 10006
Wilmington, DE 19899-1347                  (212) 225-2266
(302) 575-7341


Attorneys for Defendant MDM Bank:

 /s/ Richard I.G. Jones, Jr.
Richard I.G. Jones, Jr. (DSBA No. 3301)    Joel B. Kleinman
Ashby & Geddes                             Steven J. Roman
222 Delaware Avenue, 17th Floor            David H. Greenberg
P.O. Box 1150                              Dickstein Shapiro Morin & Oshinsky LLP
Wilmington, DE 19899                       2101 L Street NW
(302) 654-1888                             Washington, DC 20037-1526
                                           (202) 785-9700


Attorneys for Defendant Ural-Gorno
Metallurgical Company:

 /s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)      William H. Devaney
Karen V. Sullivan (DSBA No. 3872)          Heard & O'Toole LLP
Oberly, Jennings & Rhodunda, P.A.          405 Lexington Ave, Floor 62
800 Delaware Avenue, Suite 901             New York, NY 10174
PO Box 2054                                (212) 307-5500
Wilmington, DE 19899
(302) 576-2000

Attorneys for Defendant Iskander
Makmudov:

/s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)        William H. Devaney
Karen V. Sullivan (DSBA No. 3872)            Heard & O'Toole LLP
Oberly, Jennings & Rhodunda, P.A.            405 Lexington Ave, Floor 62
800 Delaware Avenue, Suite 901               New York, NY 10174
PO Box 2054                                  (212) 307-5500
Wilmington, DE 19899
(302) 576-2000


Attorneys for Defendant Mikhail Chernoi:

/s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)        Brian Maas
Karen V. Sullivan (DSBA No. 3872)            Cameron A. Myler
Oberly, Jennings & Rhodunda, P.A.            Frankfurt Kurnit Klein & Selz PC
800 Delaware Avenue, Suite 901               488 Madison Avenue, 9th Floor
PO Box 2054                                  New York, NY 10022
Wilmington, DE 19899                         (212) 980-0120
(302) 576-2000

Attorneys for Defendant Mikhail Nekrich:

/s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)        Paul R. Grand
Karen V. Sullivan (DSBA No. 3872)            Edward M. Spiro
Oberly, Jennings & Rhodunda, P.A.            Morvillo, Abramowitz, Grand, Iason &
800 Delaware Avenue, Suite 901               Silberberg, P.C.
PO Box 2054                                  565 Fifth Avenue
Wilmington, DE 19899                         New York, NY  10017
(302) 576-2000                               (212) 880-9510

Dated: March 31, 2005