## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------------------x
                                                      :
DAVIS INTERNATIONAL, LLC, HOLDEX, LLC,                :
FOSTON MANAGEMENT, LTD., and                          :
OMNI TRUSTHOUSE, LTD.,                                :        No. 04-1482-GMS
                                                      :
                             Plaintiffs,              :
                                                      :
         -against-                                    :
                                                      :
NEW START GROUP CORP., VENITOM CORP.,                 :
PAN-AMERICAN CORP., MDM BANK,                         :
URAL-GORNO METALURAGICAL COMPANY,                     :
EVRAZ HOLDING, MIKHAIL CHERNOI,                       :
OLEG DERIPASKA, ARNOLD KISLIN,                        :
MIKHAIL NEKRICH, and ISKANDER                         :
MAKMUDOV,                                             :
                                                      :
                             Defendants.              :
                                                      :
----------------------------------------------------------------x
```

## OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION
## TO DISMISS COMPLAINT ON GROUNDS OF COMITY

Attorneys for Defendant Arnold Kislin:

Charles M. Oberly, III (DSBA No. 743)      Lisa C. Cohen
Karen V. Sullivan (DSBA No. 3872)          Schindler Cohen & Hochman LLP
Oberly, Jennings & Rhodunda, P.A.          100 Wall Street
800 Delaware Avenue, Suite 901             15th Floor
PO Box 2054                                New York, NY 10005
Wilmington, DE 19899                       (212) 277-6300


                                           Lawrence S. Goldman
                                           Elizabeth Johnson
                                           The Law Offices of Lawrence S. Goldman
                                           500 Fifth Ave., 29th Floor
                                           New York, NY 10110-2900
                                           (212) 997-7499

Attorneys for Defendants New Start
Group Corp. and Venitom Group:

Charles M. Oberly, III (DSBA No. 743)    Richard J. Schaeffer
Karen V. Sullivan (DSBA No. 3872)    Peter J. Venaglia
Oberly, Jennings & Rhodunda, P.A.    Laura D. Sullivan
800 Delaware Avenue, Suite 901    Dornbush, Schaeffer, Strongin &
PO Box 2054    Weinstein, LLP
Wilmington, DE 19899    747 Third Avenue, 11th Floor
(302) 576-2000    New York, NY 10017
    (212) 759-3300


Attorneys for Defendant Oleg Deripaska:

Collins J. Seitz, Jr. (DSBA No. 2237)    Rodney F. Page
Kevin F. Brady (DSBA No. 2248)    Michael G. Biggers
Connolly Bove Lodge & Hutz LLP    Bryan Cave LLP
1007 North Orange Street    700 13th Street, N.W.
P.O. Box 2207    Washington, D.C. 20005-3960
Wilmington, DE 19899    (202) 508-6002
(302) 658-9141


Attorneys for Defendant Evraz Holding:

William M. Lafferty (DSBA No. 2755)    David H. Herrington
Morris, Nichols, Arsht & Tunnell    Vitali Rosenfeld
Chase Manhattan Centre, 18th Floor    Cleary Gottlieb Steen & Hamilton LLP
1201 North Market Street    One Liberty Plaza
P.O. Box 1347    New York, NY 10006
Wilmington, DE 19899-1347    (212) 225-2266
(302) 575-7341


Attorneys for Defendant MDM Bank:

Richard I.G. Jones, Jr. (DSBA No. 3301)    Joel B. Kleinman
Ashby & Geddes    Steven J. Roman
222 Delaware Avenue, 17th Floor    David H. Greenberg
P.O. Box 1150    Dickstein Shapiro Morin & Oshinsky LLP
Wilmington, DE 19899    2101 L Street NW
(302) 654-1888    Washington, DC 20037-1526
    (202) 785-9700

Attorneys for Defendant Ural-Gorno
Metallurgical Company:

Charles M. Oberly, III (DSBA No. 743)        William H. Devaney
Karen V. Sullivan (DSBA No. 3872)            Heard & O'Toole LLP
Oberly, Jennings & Rhodunda, P.A.            405 Lexington Ave, Floor 62
800 Delaware Avenue, Suite 901               New York, NY 10174
PO Box 2054                                  (212) 307-5500
Wilmington, DE 19899
(302) 576-2000


Attorneys for Defendant Iskander
Makmudov:

Charles M. Oberly, III (DSBA No. 743)        William H. Devaney
Karen V. Sullivan (DSBA No. 3872)            Heard & O'Toole LLP
Oberly, Jennings & Rhodunda, P.A.            405 Lexington Ave, Floor 62
800 Delaware Avenue, Suite 901               New York, NY 10174
PO Box 2054                                  (212) 307-5500
Wilmington, DE 19899
(302) 576-2000


Attorneys for Defendant Mikhail Chernoi:

Charles M. Oberly, III (DSBA No. 743)        Brian Maas
Karen V. Sullivan (DSBA No. 3872)            Cameron A. Myler
Oberly, Jennings & Rhodunda, P.A.            Frankfurt Kurnit Klein & Selz PC
800 Delaware Avenue, Suite 901               488 Madison Avenue, 9th Floor
PO Box 2054                                  New York, NY 10022
Wilmington, DE 19899                         (212) 980-0120
(302) 576-2000


Attorneys for Defendant Mikhail Nekrich:

Charles M. Oberly, III (DSBA No. 743)        Paul R. Grand
Karen V. Sullivan (DSBA No. 3872)            Edward M. Spiro
Oberly, Jennings & Rhodunda, P.A.            Morvillo, Abramowitz, Grand, Iason &
800 Delaware Avenue, Suite 901               Silberberg, P.C.
PO Box 2054                                  565 Fifth Avenue
Wilmington, DE 19899                         New York, NY 10017
(302) 576-2000                               (212) 880-9510

Dated: March 31, 2005

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................iii

PRELIMINARY STATEMENT ..................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ....................................................2

SUMMARY OF ARGUMENT ....................................................................................3

STATEMENT OF FACTS ............................................................................................6

    A.    The Supporting Declarations ......................................................6

    B.    The Plaintiffs' Claims ................................................................7

            GOK Bankruptcy ....................................................................7

            The Additional Claims ............................................................7

    C.    The GOK Bankruptcy ..............................................................8

            Background ..............................................................................8

            Overview Of The Bankruptcy Proceedings ...........................8

            Creditors' Claims ..................................................................10

            Russian Agency Review ........................................................11

    D.    Russian Corporate Governance Issues ....................................12

            January 28, 2000 Meeting ....................................................12

            March 4, 2000 Shareholders' Meeting..................................15

            Change In Registrar ..............................................................16

            Issuance of Additional Shares...............................................17

    E.    Shareholder Claims .................................................................19

            Davis .....................................................................................19

            Holdex/ Polyprom .................................................................20

            Omni......................................................................................22

            Foston....................................................................................23

    F.    Judge Koeltl's Decision...........................................................23

ARGUMENT: PLAINTIFFS' CLAIMS ARE BARRED BY THE
        DOCTRINE OF INTERNATIONAL COMITY ....................................25

I.      THE APPLICABLE LEGAL STANDARD......................................................25

II.     COMITY IS WARRANTED HERE TO AVOID RE-
        ADJUDICATION OF ISSUES THAT HAVE BEEN
        PRESENTED TO RUSSIAN COURTS .........................................................28

    A.    Plaintiffs' Claims Relating To The Filing and Conduct of
        GOK's Bankruptcy Have Been Adjudicated ................................29

B.   Plaintiffs' Objections Concerning Various Corporate Governance Matters Have Been More Than Fully Adjudicated ...................................................................................29

C.   The Issues With Respect To Plaintiffs' GOK Shares Are The Subject Of Russian Court Decisions And Pending Russian Court Proceedings ...........................................................................31

III.   RUSSIAN LEGAL PROCEEDINGS SATISFY THE FUNDAMENTAL REQUIREMENTS OF PROCEDURAL FAIRNESS ...............................................................................33

IV.   APPLICATION OF COMITY PRINCIPLES DOES NOT VIOLATE PUBLIC POLICY OF THE UNITED STATES ................................35

CONCLUSION...........................................................................................................38

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allstate Life Ins. Co. v. Linter Group Ltd.,* 994 F.2d 996 (2d Cir. 1993),
  *cert. denied*, 510 U.S. 945 (1993) ............................................................... 33

*Baldwin v. Iowa State Traveling Men's Association*, 283 U.S. 522 (1931) ..................... 25

*Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964) ............................................ 26

*Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681
  (S.D.N.Y. 2003), *aff'd*, 2004 WL 928165 (2d Cir. Apr. 30, 2004) ...................... passim

*Finanz AG Zurich v. Banco Economico, S.A.,* 192 F.3d 240
  (2d Cir. 1999) ........................................................................................ 27, 33

*Hartford Fire Ins v. California*, 509 U.S. 764 (1993) ..................................................... 25

*Hilton v. Guyot*, 159 U.S. 113 (1895) .............................................................................. 25

*In re Colorado Corp.*, 531 F.2d 463 (10th Cir. 1976) ..................................................... 26

*In re Nazi Era Cases Against German Defendants Litigation ("Frumkin")*,
  129 F. Supp. 2d 370 (D. N.J. 2001) .......................................................................... 26

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*,
  731 F.2d 909 (D.C. Cir. 1984) .................................................................................. 25

*Mast, Foos & Co. v. Stover Mfg. Co.*, 177 U. S. 485 (1900) .......................................... 28

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) ................................................................................................. 36

*Pastewka v. Texaco, Inc.*, 565 F.2d 851 (3d Cir. 1977) .................................................. 2

*Pavlov v. Bank of New York*, 135 F. Supp. 2d 426 (S.D.N.Y. 2001) ............................... 6

*Philadelphia Gear Corp. v. Philadelphia Gear De Mexico, S.A.*,
  44 F.3d 187 (3d Cir. 1994) ....................................................................................... 26

*Remington Rand v. Business Sys. Inc.*, 830 F.2d 1260 (3d Cir. 1987) ...................... 26, 27

*Republic of Panama v. BCCI Holdings (Luxembourg) S.S.*,
  90-2913-CV-UUB, slip. op. at 19-20 (S.D. Fla. July 17, 1995) .......................... 27, 35

*Republic of the Philippines v. Westinghouse Electric Corp.*,
  43 F.3d 65 (3d Cir. 1995) .................................................................................... 26, 36

*Somportex Ltd. v. Philadelphia Chewing Gum Corp.*,
  453 F.2d 435 (3d Cir. 1971), *cert. denied,* 405 U.S. 1017 (1972) ............ 26, 27, 28, 33

*U.S.A. ex. Rel. Saroop v. Garcia*, 109 F.3d 165 (3d Cir. 1997)....................................... 28

## PRELIMINARY STATEMENT

Defendants respectfully submit this Opening Brief in support of their motion to dismiss the Complaint on grounds of comity. International comity, or the legal recognition and deference to the adjudicated decisions of a foreign tribunal, should be respected when the actions of a court would unduly threaten the validity of the foreign tribunal. *See* pages 27-29, below. In bringing this action in Delaware, Plaintiffs have attempted to place before this Court claims and issues which have been the subject of *dozens* of Russian court decisions and proceedings, some of which have been fully adjudicated and others of which remain pending in the Russian courts.

This is not the first time that these Plaintiffs have tried to re-litigate issues they have already litigated in Russia. Unhappy with the outcome of cases in the Russian courts, Plaintiffs (and additional parties) first unsuccessfully attempted to litigate almost duplicate allegations in the Southern District of New York (the "New York Action"). The New York Action included as plaintiffs Davis International, LLC, Holdex, LLC, Foston Management, Ltd. and Omni Trusthouse, Ltd., and included as defendants New Start Group Corp., Venitom Corp., Pan American Corp., MDM Bank, Mikhail Chernoi, Oleg Deripaska, Arnold Kislin, and Iskander Makhmudov. After receiving lengthy, multiple submissions from the parties with respect to the extensive litigation that had already taken place in Russia, the Honorable John G. Koeltl dismissed the New York Action on the basis of *forum non conveniens*. *Base Metal Trading SA v. Russian Aluminum*, 253 F.Supp.2d 681 (S.D.N.Y. 2003), *aff'd,* 2004 WL 928165 (2d Cir. Apr. 30, 2004).

Having dismissed the New York Action on *forum non conveniens grounds,* Judge Koeltl did not reach the merits of a comity motion filed in that action. *Base Metal Trading,* 253 F.Supp.2d at 713 (denying comity motion without prejudice as moot). Defendants believe that this action should also be dismissed on *forum non conveniens* grounds (and, even more preliminarily, on the basis of direct estoppel in accordance with *Pastewka v. Texaco, Inc.,* 565 F.2d 851 (3d Cir. 1977)), but again submit this comity brief to address the numerous Russian court decisions that have already extensively examined the very issues raised by the Plaintiffs' Complaint, including additional Russian litigation that has taken place since Judge Koeltl's decision, additional litigation which supplies further confirmation that the Plaintiffs' claims have been -- and should be -- litigated in Russia.

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs originally filed their complaint in the Delaware Court of Chancery on November 4, 2004. Defendants removed on November 30th, and the Court held a telephone conference with the parties on December 21st. On March 8, 2005, Plaintiffs served discovery demands and Rule 26 disclosures. There have been no other proceedings to date.

Defendants now submit this opening brief in support of their motion to dismiss the complaint (the "Complaint") on grounds of international comity.[1] In addition, by separate briefs, Defendants are seeking dismissal of the Complaint on the grounds of direct estoppel, *forum non conveniens*, failure to state a claim and lack of subject matter jurisdiction.

---

[1] All defendants join in this brief. The exhibits to all of the defendants' opening briefs are contained in the 13-volume appendix submitted herewith and numbered pages A-1 – A-2354 ("Appendix"). A copy of the Complaint is included at A-1.

## SUMMARY OF ARGUMENT

The essence of Plaintiffs' Complaint is that Defendants unlawfully effectuated the takeover of a Russian vanadium company, Kachkanarsky GOK ("GOK"). First, Plaintiffs claim that there was a sham bankruptcy proceeding. Second, Plaintiffs allege a series of improper corporate activities, including an allegedly invalid Board of Directors' meeting (1/28/00), a disregarded shareholders' meeting (3/4/00), a purportedly unlawful change in the company's registrar (in September 2000), and, most recently (in 2003), the claimed unlawful issuance of additional GOK shares by the company. Third, Plaintiffs challenge the propriety of a number of Russian court proceedings and transactions which resulted in other parties reclaiming GOK shares held by Plaintiffs. *All* of these issues have already been litigated extensively in Russia.

1.     The various issues raised by Plaintiffs' Complaint have already been the subject of extensive review by the Russian trial and appellate courts, and principles of international comity provide that this Court should not engage in a wholesale review of the scores of decisions rendered by the Russian legal system.

2.     The GOK bankruptcy has been scrutinized and approved by: (1) three levels of the Russian court system; (2) the Russian Federal Service, and (3) the Sverdlovsk Department of the Interior. In no fewer than 15 decisions (*see* pages 7-12, below), multiple levels of the Russian courts have upheld each phase of the GOK bankruptcy proceedings and have upheld the various decisions made by GOK's bankruptcy trustee, Oleg S. Kozyrev, an independent individual who is also the Deputy Agency Head of the Ural-Siberian Inter-Regional Territorial Body of the Federal Service of Russia for Insolvency and Financial Sanitation ("Federal Service"). The Declaration

of Paul B. Stephan, III, demonstrates that Russian law regarding bankruptcy proceedings abides by fundamental standards of procedural fairness.[2] Stephan ¶¶ 11-17.  With respect to the GOK bankruptcy, the Russian courts were well-equipped to address the issues raised by the Plaintiffs and carried out the proceedings in accordance with fair and reasonable procedures.  In view of the deference afforded to foreign bankruptcy proceedings (*see* pages 26-27, below), the Plaintiffs' second effort to collaterally challenge GOK's bankruptcy proceedings through the courts of the United States should be rejected on the basis of international comity.

        3.      Plaintiffs' effort to re-litigate corporate governance issues already decided by the Russian courts is equally inappropriate and unavailing.  Plaintiffs have chosen not to disclose to the Court that each of these matters has been the subject of numerous Russian court decisions that have resulted in a rejection of the very conspiracy theories now espoused by the Plaintiffs.  Plaintiffs' silence regarding these decisions is not because they did not know about the proceedings -- the Plaintiffs started many of the proceedings themselves, participated in many of the others and the decisions were put before Judge Koeltl by the defendants in the New York Action.  The issues with respect to the: (1) January 28, 2000 Board of Directors' meeting; (2) the March 4, 2000 shareholders' meeting; (3) the change in GOK's registrar, and (4) GOK's issuance of additional shares in 2003[3] have been considered by more than three dozen Russian courts in numerous proceedings, including proceedings commenced by Plaintiffs Davis, Holdex, Foston and Omni.

---

[2]  *See also* the Declaration of Professor Sergei N. Lebedev, at paragraphs 25-26 and 58-60, in which he describes the procedural principles of the Russian court system and his first-hand knowledge that the system functions fairly.

[3]  Plaintiffs also raised this issue at oral argument before Judge Koeltl on February 10, 2003.  Tr. 105 at 2-6 (A-168).

4.      Plaintiffs' protestations that they were deprived of GOK shares they once held and that this Court should effectively intercede in the Russian court proceedings that have addressed -- and are addressing -- these issues are also baseless.  As discussed in the Stephan and Lebedev declarations, Plaintiffs have every opportunity to challenge the rulings of the Russian courts in Russia, and there is simply no basis for Plaintiffs to raise these issues in Delaware.  Stephan ¶¶ 63-64; Lebedev ¶¶ 45-53.  In fact, Plaintiffs have been involved in litigation with respect to many of these issues in Russia, litigation which has continued through this year, with a number of the rulings actually *favoring* Plaintiffs.  There is simply no basis for revisiting anew these same issues in Delaware.

5.      Russian legal proceedings satisfy the fundamental requirements of procedural fairness, and application of comity principles does not violate public policy of the United States.  Rather, principles of international comity effectively preclude a collateral challenge to the numerous Russian court proceedings in this Court.

6.      Plaintiffs' effort to have this Court -- under the guise of a RICO action -- rule on issues already decided by the Russian courts should not be countenanced as a matter of international comity.  It is abundantly clear that public policies -- aimed at securing uniform decisions, discouraging forum shopping and discontinuing repeated litigation -- all weigh heavily in support of affording comity to the prior, pending or available Russian proceedings.  Moreover, the underlying policies of international comity counsel in favor of allowing a foreign sovereign to review allegations of corruption within its own political and judicial systems.

7.      Plaintiffs here continue to have a right to seek redress of any legitimate grievances in the Russian courts.  What Plaintiffs do not have is a right to re-contest

issues raised, litigated, and decided (or pending) in Russian courts. Accordingly, this Court should decline to act as an appellate court with respect to these Russian proceedings and should dismiss Plaintiffs' Complaint on the basis of international comity.

## STATEMENT OF FACTS

### A.     The Supporting Declarations

The facts pertinent to this motion were set forth at length before Judge Koeltl. Specifically, submitted to the New York Court were the Russian court decisions and other documents, as well as English translations of those decisions and documents. The exhibits submitted to Judge Koeltl in connection with the GOK issues are also submitted to this Court, along with additional decisions rendered since the defendants in the New York Action filed their motions.

Also submitted in support of Defendants' motion is the March 23, 2005 Declaration of Paul B. Stephan, III ("Stephan Declaration"), a Professor at the University of Virginia and an expert in Russian law. Professor Stephan addresses each of Plaintiffs' claims relating to GOK, and (1) confirms the substantive and procedural propriety of the proceedings which have taken place to date, and (2) demonstrates both the availability and adequacy of the Russian courts to deal with all of the Plaintiffs' claims.[4]

Finally, the Declaration of Professor Sergei Nikolaevich Lebedev, dated March 25, 2005, addresses the applicable Russian laws and discusses at length the various rights and remedies available to the Plaintiffs in Russia. Professor Lebedev demonstrates that

---

[4]   Professor Stephan also submitted a series of declarations in the New York Action (A-479, A-514, A-705 and A-933). In his opinion Judge Koeltl noted twice that Professor Stephan was more persuasive than Plaintiff's experts. *See Base Metal Trading*, 253 F. Supp. 2d at 701 & 704; *see also Pavlov v. Bank of New York*, 135 F. Supp.2d 426, 438 (S.D.N.Y. 2001)(citing the opinions of Prof. Stephan when finding Russia is "an adequate alternative forum" for a RICO action).

the Russian courts provide Plaintiffs with a proper and adequate means of redress of any grievance or claim they may have.

### B.    The Plaintiffs' Claims

GOK Bankruptcy

Plaintiffs' RICO claims relating to GOK are fundamentally premised on their contention that the year-long (from March 2000 through April 2001) GOK bankruptcy proceedings were a "sham" (Compl. ¶¶ 79-87), based on "false debt" (Compl. ¶¶ 75-78), and that a variety of actions taken by GOK's bankruptcy trustee were inappropriate and part of a conspiracy to allow for a takeover of GOK (Compl. ¶¶ 88-89 and 116-117).

The Additional Claims

Plaintiffs also claim that certain actions taken prior to, during and after the GOK bankruptcy proceedings were part of the alleged takeover scheme, including: (1) an allegedly "illegal" January 28, 2000 Board of Directors' meeting (Compl. ¶¶ 63-64); (2) the efforts to prevent a GOK shareholders' meeting held on March 4, 2000 (Compl. ¶¶ 66-73); (3) a change in the registrar of GOK's shares, purportedly accomplished unlawfully without notice, in an effort to deprive Plaintiffs such as Davis of their shares in GOK (Compl. ¶¶ 88-94); and (4) the issuance of additional GOK shares in 2003 (Compl. ¶¶ 127-134).

Finally, Plaintiffs make reference to a number of litigations commenced in Russia which Plaintiffs claim unlawfully deprived Plaintiffs Omni (Compl. ¶¶ 95-103), Foston (Compl. ¶¶ 104-108), and Holdex (Compl.¶¶ 109-114) of their shares in GOK. Plaintiff Davis also alleges that an individual by the name of Eugene Aschenbrenner executed a share purchase agreement on its behalf after a power of attorney had been revoked and

that GOK's new registrar improperly effected a transfer of shares pursuant to that agreement (Compl. ¶ 91).

### C.    **The GOK Bankruptcy**

Background

In the late 1990's, GOK's financial condition deteriorated, with GOK posting substantial losses in both 1998 and 1999.   In the course of the New York Action, Plaintiffs conceded that GOK was "on the verge of bankruptcy" and had a "significant amount of indebtedness" (over $23 million) at the end of 1998, and that GOK was even further indebted by the end of 1999.  *See* A-2316–17, Declaration of Tatiana Yastrebova at ¶¶ 8-10.[5]

In an effort to address the failing financial situation, members of the GOK Board of Directors called for a meeting of the Board.  A-1620 and A-1623.  On January 28, 2000, a Board of Directors meeting was held, at which D.A. Khaidarov was removed from office and replaced by A.A. Kozitsyn.  Upset by his removal, Mr. Khaidarov (or his supporters) orchestrated a March 4, 2000 shareholders' meeting at which the shareholders present purported to overrule the decisions made at the January 28, 2000 Board of Directors' meeting.  Stephan ¶¶ 44-46, 51.

Overview Of The Bankruptcy Proceedings

On March 24, 2000 Krasnouralskmezhraigaz ("Kras Gas"), a Russian gas company which supplied natural gas to GOK, filed an application with the Arbitrazh Court for the Sverdlovsk Oblast to place GOK in involuntary bankruptcy.  A-1112.  The filing of this bankruptcy petition was based on a substantial debt which was due and

---

[5]   The declaration of Tatiana Yastrebova (A-2314), dated September 6, 2002, was submitted in *Base Metal Trading* by the plaintiffs.

owing to Kras Gas by GOK pursuant to a 1997 contract (A-1130). *See* A-1146, A-1157, A-1170 and A-1175 (series of letters exchanged between GOK and Kras Gas discussing the debt owed by GOK).

The commencement of the GOK bankruptcy proceeding was subject to review by the Arbitrazh Court for the Sverdlovsk Oblast. By way of a decision dated March 30, 2000 (A-1075), the court found that the Kras Gas bankruptcy application was sufficient under Russian law and, after considering the recommendation of the Federal Service, appointed Mr. Kozyrev, as GOK's bankruptcy trustee. Stephan ¶ 37.

After the initial phase of the bankruptcy proceedings, the creditors and, in turn, the Arbitrazh Court for the Sverdlovsk Oblast determined that it was appropriate to move to the second phase of the bankruptcy proceedings under Russian law, i.e., the external trust management phase. By way of a decision dated August 22, 2000, the court, adopting the recommendation of GOK's creditors reached at an August 11, 2000 creditors' meeting, appointed Mr. Kozyrev as GOK's external trustee. A-1080; Stephan ¶ 37.

During this second phase, the external trustee was able to negotiate a settlement with GOK's creditors which enabled the bankruptcy proceedings to be concluded on April 19, 2001. The settlement (the terms of which are outlined in the minutes of the meeting and in the court's decision), approved by a vote of 86% of the creditors following a March 11, 2001 creditors' meeting, was approved by the Arbitrazh Court for the Sverdlovsk Oblast. A-1092 & A-1323 at pp. 3-12; Stephan ¶¶ 40-41.

In addition to the series of three decisions of the Arbitrazh Court for the Sverdlovsk Oblast, the principal issues surrounding the GOK bankruptcy proceedings --

the commencement of the proceedings, the introduction of external management, and the

settlement -- have also been reviewed by Russian appellate courts as follows:

| APPELLATE REVIEW OF PRINCIPAL GOK BANKRUPTCY ISSUES | | | |
|---|---|---|---|
| DATE | COURT | ACTION TAKEN | CITATION |
| 1/15/01 | Appellate Instance of the Arbitrazh Court for the Sverdlovsk Oblast | Court upholds 8/22/00 decision regarding external trust management. | A-1306; Stephan ¶ 37. |
| 6/7/01 | Federal Arbitrazh Court for the Urals Circuit | Upholds 1/15/01 determination regarding external trust management. | A-1318; Stephan ¶ 37. |
| 6/27/01 | Appellate Instance of the Arbitrazh Court for the Sverdlovsk Oblast | Upholds 4/19/01 approval of the GOK settlement. | A-1357; Stephan ¶ 41. |
| 8/21/01 | Federal Arbitrazh Court for the Urals Circuit | Re-affirms 4/19/01 and 6/27/01 approval of settlement. | A-1365; Stephan ¶ 41. |
| 10/29/01 | Federal Arbitrazh Court for the Urals Circuit | Rejects appeal from 8/21/01 decision on procedural grounds. | A-2053; Stephan ¶ 41. |

Creditors' Claims

During the course of the bankruptcy proceedings, the trustee scrutinized the

claims of GOK's creditors, accepting some of the claims and rejecting others.  Plaintiffs'

Complaint (at ¶ 84) makes reference to the trustee's recognition of a claim filed by

Lebaut.  Stephan ¶¶ 39-40. The trustee concluded that there was no legal basis for the

rejection of Lebaut's claim.[6]  Multiple levels of Russian courts have supported the

trustee's acceptance of the Lebaut claim:

---

[6]  Two other plaintiffs in the New York Action, Nexis Products, LLC, and Polyprom, Ltd., had challenged the trustee's rejection of their claims.  The defendants in the New York Action demonstrated that one of Nexis' claims had actually been approved by the trustee and that a second Nexis claim was rejected due to the fact that the underlying agreement had been signed by unauthorized officials and had been the subject

| DECISIONS SUPPORTING TRUSTEE'S ACTIONS | | | |
|---|---|---|---|
| DATE | COURT | ACTION TAKEN | CITATION |
| 2/19/01 | Arbitrazh Court for the Sverdlovsk Oblast | Upholds trustee's recognition of claim of Lebaut, finding that promissory notes were lawful. | A-1591; Stephan ¶ 39. |
| 4/19/01 | Appellate Instance for the Arbitrazh Court for the Sverdlovsk Oblast | Upholds 2/19/01 decision with respect to Lebaut. | A-1598; Stephan ¶ 39. |
| 7/12/01 | Federal Arbitrazh Court for the Urals Circuit | Upholds 4/19/01 decision with respect to Lebaut's claims. | A-1607; Stephan ¶ 39. |
| 4/18/01 | Arbitrazh Court for the Sverdlovsk Oblast | Rejects challenge by Nexis to trustee's recognition of claim by Syrius (which had acquired notes from Lebaut). | A-1613; Stephan ¶ 40. |

Russian Agency Review

In addition to scrutiny by the Russian courts, the propriety of the GOK bankruptcy proceedings has also been analyzed by two Russian agencies -- the Federal Service and the Department of the Interior for the Sverdlovsk Oblast. Specifically, by way of an August 18, 2000 opinion, the Federal Service concluded that, contrary to the implication of Plaintiffs' Complaint, there was no evidence of an intentional bankruptcy at GOK. A-1374. Similarly, the Department of the Interior for the Sverdlovsk Oblast issued an order which concluded that "the indicators of an intentional bankruptcy are not present." A-2072.[7] Thus, the Interior Department joined the Russian Courts and the

_____

of criminal proceedings. The Polyprom claim was rejected for similar reasons. As was the case with the acceptance of the Lebaut claim, the rejections of the second Nexis claim and the Polyprom claim have been extensively reviewed by the Russian courts. A-1445, A-1583 and A-2020.

[7] This same order also examined the Lebaut claim and observed that the transaction giving rise to the Lebaut claim (a transaction between GOK and Svyatogor) was analyzed by "[a]n expert institution [which]

- 11 -

Russian Federal Service in rejecting Plaintiffs' theory of a sham bankruptcy at GOK  -- the *sine qua non* of Plaintiffs' GOK conspiracy theory.

### D.    Russian Corporate Governance Issues

In addition to all of the proceedings relating to GOK's bankruptcy proceedings, there have been numerous additional Russian court proceedings which have addressed many of the Plaintiffs' allegations that raise corporate governance issues relating to GOK. Specifically, the issues with respect to: (1) the January 28, 2000 GOK Board of Directors' meeting; (2) the March 4, 2000 shareholders' meeting; (3) the September 2000 change in GOK's registrar of shares from Panorama Registrar Company to Bookkeeping Registry Company (referenced in the Complaint as "VRK"); and (4) the 2003 issuance of additional GOK shares, have together been the subject of nearly three dozen Russian court decisions.

January 28, 2000 Meeting

The purported illegal takeover of GOK in connection with a January 28, 2000 GOK Board of Directors' meeting is a cornerstone of the Plaintiffs' Complaint.[8]  The Plaintiffs contend (at ¶ 64), *inter alia*, that this meeting was held in violation of GOK's bylaws in that only four of the Directors demanded the meeting. However, the Plaintiffs

conducted a forensic analysis" of the transaction and concluded that it "complied with the existing market conditions and norms and usages of trade." A-2063.

[8]  The Complaint (at ¶ 66) makes reference to criminal complaints filed with respect to the January 28, 2000 meeting. However, by way of report issued on February 2, 2000, Senior Assistant Prosecutor for the City of Kachkanar issued a "Decision Not To Institute Legal Proceedings," declaring that the evidence "leads one to the irrefutable conclusion that there was no forcible, armed seizure of the premises of [GOK] by the newly elected company management on January 28 and 29, 2000." A-1629. A copy of the Decision Not To Institute Legal Proceedings begins at A-1628. Stephan ¶ 45.

neglect to inform the Court that the propriety of the January 28, 2000 meeting has been

established and re-established in an array of Russian court decisions:[9]

| DECISIONS UPHOLDING THE PROPRIETY OF THE JAN. 28TH MEETING | | | |
|---|---|---|---|
| DATE | COURT | ACTION TAKEN | CITATION |
| 2/1/00 | Kachkanar Town Court for the Sverdlovsk Oblast | Upholds 1/28/00 meeting, rejecting an objection that the meeting did not comply with law and finding that votes of 4 of the directors complied with both Russian law and GOK's Articles of Incorporation. | A-1635; Stephan ¶ 46. |
| 2/15/00 | Arbitrazh Court for the Sverdlovsk Oblast | Affirms 2/1/00 ruling upholding 1/28/00 meeting. | A-1649; Stephan ¶ 46. |
| 3/8/01 | Moscow City Court | Upholds 1/28/00 meeting, finding that the actions taken at the meeting complied with Russian law and GOK's Articles of Incorporation. [10] | A-1657; Stephan ¶ 47. |
| 3/26/01 | Moscow City Court | Upholds 1/28/00 meeting. | A-1676; Stephan ¶ 47. |
| 2/22/01 | Appellate Instance of the Arbitrazh Court of Moscow | Upholds 1/28/00 meeting, indicating that a quorum was present. | A-1691; Stephan ¶ 47. |

---

[9]   Plaintiffs' Complaint makes no reference to virtually any of the decisions set forth herein.  Instead, Plaintiffs (at ¶ 65) make reference to a single proceeding they say is still pending in Russia, a case in which Plaintiffs claim the court involved has failed to take proper action.  The Complaint is silent on what steps Plaintiffs or their representatives have taken in that case or why that would be relevant in view of the numerous court decisions addressing the merits of Plaintiffs' claims with respect to the 1/28/00 board of directors' meeting.

[10]   Some of these decisions reversed initial rulings in favor of the Plaintiffs.  The March 8, 2001 decision (A-1657) reversed an earlier September 19,  2000 decision (A-1667) by the Meshchansky Inter-Regional Court of Moscow.  The March 26, 2001 decision (A-1676) reversed a November 21, 2000 decision (A-1683) of the Tver Inter-Peoples Court of Moscow.  The February 22, 2001 decision (A-1691) reversed a November 16, 2000 decision (A-1698) of the Arbitrazh Court of Moscow.  Stephan ¶ 46.

| DECISIONS UPHOLDING THE PROPRIETY OF THE JAN. 28TH MEETING | | | |
|---|---|---|---|
| DATE | COURT | ACTION TAKEN | CITATION |
| 4/26/01 | Federal Arbitrazh Court for the Moscow Circuit | Affirms 2/22/01 decision upholding the 12/28/00 meeting. | A-1706; Stephan ¶ 47. |
| 4/10/00 | Perovsky Inter-Municipal Regional Court of Moscow | Declares 1/28/00 meeting invalid. | A-1737; Stephan ¶ 47. |
| 9/25/00 | Perovsky Inter-Municipal Regional Court of Moscow | Revokes an injunction which had been granted by a 4/10/00 decision (A-1737) against the implementation of the decisions made at the 1/28/00 meeting.  Also revokes ban on change in registrar. | A-1747; Stephan ¶ 47. |
| 10/26/00 | Moscow City Court | Affirms 9/25/00 decision regarding 1/28/00 meeting and change in registrar. | A-1752; Stephan ¶ 47. |
| 12/13/00 | Perovsky Inter-Municipal Regional Court of Moscow | Upholds 1/28/00 meeting (as well as the decision to change GOK's registrar). | A-1712; Stephan ¶ 47. |
| 9/17/01 | Gagarinsky Inter-Municipal Court | Dismisses case brought by Plaintiff Davis regarding the 1/28/00 meeting after Davis fails to appear. | A-1758. |
| 4/30/02 | Kachkanar Town Court for the Sverdlovsk Oblast | Denies claim by Khaidarov to invalidate the decisions made at the 1/28/00 board of directors' meeting. | A-2108; Stephan ¶ 46. |
| 9/24/02 | Kachkanar Town Court for the Sverdlovsk Oblast | Denies Khaidarov's petition to renew the missed period for filing an appeal of the 4/30/02 decision. | A-2121; Stephan ¶ 46. |
| 11/19/02 | Arbitrazh Court for the Sverdlovsk Oblast | Affirms 9/24/02 ruling. | A-2126; Stephan ¶ 46. |

| DECISIONS UPHOLDING THE PROPRIETY OF THE JAN. 28TH MEETING | | | |
|---|---|---|---|
| DATE | COURT | ACTION TAKEN | CITATION |
| 1/22/03 | Arbitrazh Court for the Sverdlovsk Oblast | Rejects request to annul the decision that the Board of Directors made at the 1/28/00 meeting. | A-2133 ; Stephan ¶ 46. |
| 5/22/03 | Appellate Instance of the Arbitrazh Court for the Sverdlovsk Oblast | Reverses the 1/22/03 decision for failure to take into account the 4/30/02 decision which had already denied a claim to invalidate the 1/28/00 board of directors' meeting. | A-2277; Stephan ¶ 46. |

Three additional court decisions relating to the January 28, 2000 meeting rejected challenges brought by GOK's former General Director, D.A. Khaidarov, on the ground that the challenge was filed with the wrong court. A-1761 (May 30, 2000 decision of the Tversky Inter-Municipal Regional Court of Moscow); A-1827 (June 22, 2001 decision of the Tversky Inter-Municipal Regional Court of Moscow); A-1768 (December 22, 2000 decision of the Gagarinsky Inter-Municipal Court of Moscow). Those courts indicated that the claims needed to be brought in the local courts which had proper jurisdiction. [11]

   March 4, 2000 Shareholders' Meeting

   The March 4, 2000 shareholders' meeting referenced in the Complaint (¶¶ 71-73), at which the shareholders purportedly rejected the actions taken at the January 28, 2000 meeting and expressed their support for Mr. Khaidarov, has been invalidated in the following court decisions which focused on important improprieties with respect to the holding of the meeting, as well as two decisions dated February 15, 2000 (Kachkanar City Court), and February 29, 2000 (Arbitrazh Court for the Sverdlovsk Oblast) which

---

[11]   Three additional decisions rejected challenges to the January 28, 2000 meeting on procedural grounds. A-1774 (February 14, 2000 decision of the Cheryomoushkinsky Inter-Municipal Court of Moscow); A-1779 (March 2, 2000 decision by the Arbitrazh Court for the Sverdlovsk Oblast); A-1784 (September 4, 2000 decision by the Arbitrazh Court for the Sverdlovsk Oblast).

has enjoined the holding of the shareholders' meeting.  A-1797 and A-1801; Stephan ¶ 51.

| INVALIDATION OF THE MARCH 4TH MEETING | | | |
|---|---|---|---|
| DATE | COURT | ACTION TAKEN | CITATION |
| 8/14/00 | Kachkanar Town Court of the Sverdlovsk Oblast | Invalidates 3/4/00 shareholders' meeting on the ground that it had been enjoined by the earlier court decisions. | A-1790; Stephan ¶ 51. |
| 3/6/01 | Moscow City Court | Invalidates 3/4/00 shareholders meeting (reversing April 5, 2000 decision of the Meshchnsky Inter-Municipal Regional Court- A-1814). | A-1806; Stephan ¶ 51. |

Change In Registrar

Plaintiff Davis objects to a transaction by which it sold certain GOK shares back to GOK.  Complaint at ¶¶ 89-94.  This transaction was concluded on Davis' behalf by Eugene Aschenbrenner, who presented a power of attorney on behalf of Davis.  A-2002; Stephan ¶ 59. That power of attorney was valid from December 3, 1999 through December 3, 2000, and the transaction took place on October 6, 2000.  A-1995.

Davis suggests that this transaction was made possible by the September 2000 change which GOK made in its registrar of shares -- from Panorama Registrar Company to Bookkeeping Registry Company (identified as "VRK" in the Complaint).   While Plaintiffs claim that this change of registrar was made in violation of Russian law on the ground that notice was not given in accordance with Russian law, proper notice (far more than 45 days' notice) was published in the *Oblastnaya gazeta.*  A-1832; Stephan ¶ 52.  At any rate, the decision to change the registrar has already been the subject of numerous

Russian court proceedings -- including an action commenced by Plaintiffs Davis, Holdex, Foston and Omni -- which have upheld the change in registrar:[12]

| DECISIONS AFFIRMING CHANGE IN REGISTRAR | | | |
|---|---|---|---|
| DATE | COURT | ACTION TAKEN | CITATION |
| 3/20/01 | Arbitrazh Court of Moscow | Refuses to satisfy complaint brought by, *inter alia,* Davis, Holdex, Omni and Foston. The court concluded that the contract had been properly terminated and that notice had been given to GOK's shareholders via publication in *Oblastnaya gazeta.* | A-1839; Stephan ¶ 52. |
| 6/26/01 | Appellate Instance of the Arbitrazh Court of Moscow | Upholds 3/20/01 decision rejecting challenge by Davis, Holdex, Omni and Foston. | A-1846; Stephan ¶ 52. |
| 9/5/01 | Federal Arbitrazh Court for the Moscow Circuit | Upholds 3/20/01 and 6/26/01 rejections of the complaint brought by Davis, Holdex, Omni and Foston. | A-1852; Stephan ¶ 52. |
| 12/20/00 | Petrogradsky Regional Court of St. Peterburg | Rejects challenge to change in registrar. | A-1859; Stephan ¶ 52. |
| 1/12/01 | Petrogradsky Regional Court of St. Peterburg | Upholds legality of registrar change. | A-1864; Stephan ¶ 52. |

<u>Issuance of Additional Shares</u>

Paragraphs 127 through 134 of the Complaint make reference to the issuance of additional GOK shares in 2003.[13]  The plaintiffs in the New York Action also made

---

[12]    Three additional decisions, dated March 13, 2001 (Izmailovo Inter-Municipal Regional Court of Moscow)( A-1871), March 13, 2001 (same court)( A-1874), and August 27, 2001 (Chertanovo Federal Regional Court of Moscow) (A-1877) rejected, for procedural reasons, additional challenges filed in the Russian courts regarding the change in registrar.

reference to this issuance of additional shares in the oral argument before Judge Koeltl (A-168 at lines 2-6), but Judge Koeltl nonetheless rejected the plaintiffs' attempt to litigate their claims in the United States.

Subsequent to Judge Koeltl's ruling, there have been a series of Russian court decisions addressing this very issue -- none of which are disclosed in the Plaintiffs' Complaint. Indeed, the corporate decision made by GOK to issue additional shares was specifically challenged by the very plaintiffs in this action -- Davis International, LLC, Holdex, LLC, Foston Management, Ltd. and Omni Trusthouse, Ltd.

In a decision dated August 27, 2003, the Arbitrazh Court for the Sverdlovsk Oblast rejected the claim brought by Foston, Davis, Holdex and Omni, and held that the decision to issue additional shares was proper. A-2165; Stephan ¶ 60. In a decision dated January 14, 2004, the Federal Arbitrazh Court for the Urals Circuit reversed the August 27, 2003 decision, remanded the matter to the Sverdlovsk Arbitrazh Court for, among other things, a review of the evidence and a determination as to the identity of the shareholders of GOK. A-2176; Stephan ¶ 60.

The Foston, Davis, Holdex and Omni claim was subsequently reconsidered by the Arbitrazh Court for the Sverdlovsk Oblast. In a decision dated April 20, 2004, the Arbitrazh Court for the Sverdlovsk Oblast, following the directive of the appellate court, reviewed the evidence and made the necessary determinations as to the shareholders of GOK. A-2187; Stephan ¶ 60. Finding that the issuance of the additional shares was indeed appropriate, the Court then rejected the Foston, Davis, Holdex and Omni claim.

---

[13] While the Complaint alleges the new shares were issued in 2003 (*see* Compl. ¶ 127) the meeting at which this action was approved was held at the end of 2002. Stephan ¶ 60.

An appeal was then taken by Foston, Davis, Holdex and Omni. In a decision dated July 29, 2004, the Federal Arbitrazh Court for the Urals Circuit affirmed the April 20, 2004 decision and specifically rejected the position advanced by Foston, Davis, Holdex and Omni. A-2212; Stephan ¶ 60.[14]

In short, the latest issue advanced by the Plaintiffs, dealing with the issuance of additional GOK shares, has already been litigated in Russia by these same plaintiffs, and now has been rejected by two levels of Russian courts.

**E.      Shareholder Claims**

Connected to the issues raised by the Plaintiffs with respect to GOK's change in registrar are the references in the Complaint to various transactions, including shareholder litigations commenced in Russia. Specifically, Davis objects to a transaction entered into on its behalf by an individual to whom it had given a power of attorney, and the remaining Plaintiffs challenge Russian litigations dealing with shares of GOK purportedly owned by Holdex (having been conveyed to Holdex by Polyprom), Omni and Foston.

Davis

As it did in the New York Action, Plaintiff Davis alleges that it was deprived of its shares as a result of a transaction entered into on its behalf by Eugene Aschenbrenner, a German citizen. A-2002; Stephan ¶ 59. Davis contends that a power of attorney it had given Mr. Aschenbrenner (which by its terms ran from December 3, 1999 through

---

[14]    The initial decision of the Federal Arbitrazh Court for the Urals Circuit (A-2176) -- which favored Davis, Holdex, Foston and Omni -- was rendered by two of the same three judges who later ruled against the Plaintiffs (A-2212). This confirms that Davis, Holdex, Foston and Omni were not denied a fair day in the Russian courts.

December 3, 2000) had been revoked prior to the October 6, 2000 transaction. Complaint ¶ 91.

However, Plaintiffs' allegation is that the transfer was accomplished due to the improper change in registrar to VRK Company. Complaint ¶¶ 89-91. As indicated above, Davis has already litigated the issue of the registrar change in Russia, and the Russian courts have upheld the change. Furthermore, the agreement in question provides for arbitration of any disputes in London. A-1999 at ¶12. Plaintiffs have proffered no explanation for their failure to challenge their own agent's actions in accordance with the agreement.

### Holdex/ Polyprom

Plaintiffs' Complaint addresses the alleged deprivation of the GOK shares purportedly belonging to Holdex (¶¶ 109-114). The Complaint makes reference to a November 22, 2000 Russian Court decision which found that the sale of shares by GOK to Polyprom (which in turn later sold the shares to Holdex) was invalid, but the Complaint tellingly fails to discuss numerous subsequent opinions issued by the Russian Courts with respect to this very issue. Some of these rulings were favorable for Holdex, and other rulings rejected Holdex's claims.

Specifically, the following Russian Court decisions have all occurred subsequent to the decision referenced in the Plaintiffs' Complaint, again demonstrating that this matter has been fully litigated in the Russian courts and that, contrary to the implication of Plaintiffs' allegations, Holdex in fact had notice of -- and a full and fair opportunity to participate in -- these Russian proceedings:

| DECISIONS REGARDING SALE OF SHARES TO POLYPROM/HOLDEX | | | |
|---|---|---|---|
| DATE | COURT | ACTION TAKEN | CITATION |
| 4/17/01 | Federal Arbitrazh Court for the North Caucasus Region | Reverses the November 22, 2000 decision. | A-1895; Stephan ¶ 57. |
| 7/5/01 | Arbitrazh Court for the Republic of Kalmykia | Invalidates the sale of shares in question, finding that it violated Russian law. | A-1904; Stephan ¶ 57. |
| 11/9/01 | Appellate Instance for the Kalmykia Arbitrazh Court | Upholds the July 5, 2001 decision, finding that the sale of shares in question was in fact contrary to the direction of the GOK Board of Directors (and carried out by an unauthorized individual). The November 9 ruling confirms that Holdex had notice of and appeared in the proceedings before the Kalmykia Court. | A-1910; Stephan ¶ 57. |
| 1/21/02 | Federal Arbitrazh Court for the North Caucasus Circuit | Reverses the November 9, 2001 decision and remanded the matter for a *de novo* review. | A-2084; Stephan ¶ 57. |
| 3/12/02 | Arbitrazh Court for the Republic of Kalmykia | Invalidates the sale of shares. | A-2094; Stephan ¶ 57. |
| 4/23/02 | Federal Arbitrazh Court for the North Caucasus Circuit | Dismisses an appeal from the March 12, 2002 decision. | A-2105. |
| 9/10/02 | Arbitrazh Court for the Republic of Kalmykia | Effectively rules against Holdex, invalidating the original sale of shares. | A-2269; Stephan ¶ 57. |
| 2/4/03 | Appellate Instance for the Arbitrazh Court for the Republic of Kalmykia | Affirms September 10, 2002 decision. | A-2143; Stephan ¶ 57. |

| DECISIONS REGARDING SALE OF SHARES TO POLYPROM/HOLDEX | | | |
|---|---|---|---|
| DATE | COURT | ACTION TAKEN | CITATION |
| 5/20/03 | Federal Arbitrazh Court for the North Caucasus Region | Reverses February 4, 2003 ruling, remanding the matter to ensure that Holdex had an opportunity to be heard on the issues. | A-2150; Stephan ¶ 57. |
| 4/27/04 | Arbitrazh Court for the Republic of Kalmykia | Rules against Holdex, with Holdex apparently electing not to appear at the April 27, 2004 hearing. | A-2197; Stephan ¶ 57. |

Thus, undisclosed by the Plaintiffs to this Court, the Russian courts have zealously guarded Holdex's right to be heard on this issue. Holdex has now apparently unilaterally elected to ignore the Russian proceedings and to instead seek to obtain different rulings from whatever American courts will hear it.

Omni

With respect to Omni, a series of three decisions in an action commenced in Russia by an entity named NPRO Urals dealt with the issue of the re-registration of shares that apparently had previously been transferred in violation of an earlier court order. Stephan ¶ 55.

Specifically, an August 1, 2000 decision of the Arbitrazh Court for the Chelyabinsk Region (A-1924), an October 16, 2000 decision of the Appellate Instance for the Arbitrazh Court for the Chelyabinsk Region (A-1942), and the January 4, 2001 decision of the Federal Uralsky District Arbitration Court (A-1952) each determined that NPRO Urals' claim was valid. Stephan ¶ 55.

While the Stephan Declaration indicates that Omni, to the extent it believes its rights have been affected by those proceedings, would have the right to file an action

against NPRO Urals or the registrar, it appears that Omni has not yet availed itself of this right under Russian law.  Stephan ¶ 55.

Foston

The Complaint also contains allegations by Foston that it has been wrongfully deprived of its GOK shares.  The Complaint selectively makes reference to two decisions of the Russian courts, but fails to discuss a number of other decisions issued by the Russian courts which have dealt with the issues raised by Plaintiffs' Complaint.  Stephan ¶ 56.

The Stephan Declaration, at ¶ 56, contains an extensive discussion of the Russian litigation that has been taking place with respect to Foston's claim.  The Complaint references an October 30, 2003 decision (A-2170) and suggests that that decision has not been carried out.  However, that decision, while ruling in Foston's favor (affirming an August 13, 2003 decision - A-2283), specifically denied certain additional relief sought by Foston.  Moreover, since the October 30, 2003 decision, there have been a number of additional court rulings regarding Foston, including a July 2, 2004 decision of the Moscow City Court (A-2205; Stephan ¶ 56) which rejected efforts to have the case transferred to that court, and a December 7, 2004 decision by the Presiding Judge of the Moscow City Court (A-2221; Stephan ¶ 56) upholding the July 2, 2004 ruling.

**F.    Judge Koeltl's Decision**

In connection with the motions to dismiss the New York Action, the parties submitted over 57 declarations and 700 exhibits.  In addition to moving, answering and reply papers, the parties made a number of additional submissions requested by the Court, both immediately prior to and shortly after oral argument on the motion.

- 23 -

In dismissing the New York Action on *forum non conveniens* grounds, Judge

Koeltl made a number of observations pertinent to defendants' comity motion:

> Should the plaintiffs prevail on the motion to dismiss and the case proceed to trial in this Court, the Court would be forced to consider approximately 120 Russian legal decisions related to the NKAZ and GOK bankruptcies and the GOK change of control. (Defendants' Chronology of GOK-Related Russian Court Decisions and Chronology of NKAZ. ("Defendants' Decision Chart"). [A-652]) These decisions involved almost 150 Russian judges. (Defendants' Map of Russian Courts with Accompanying List of Judges. [A-651])  This Court is not a court of appeals for the Russian legal system and will not act as such.  To do so would amount to an act of judicial overreaching of the precise sort rejected by the Court of Appeals for the Second Circuit.  The Court of Appeals had "repeatedly emphasized that it is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation."  *See* Blanco, 997 F.2d at 982 (internal quotation marks omitted).

253 F. Supp. 2d at 708-09.

> Considerations of comity also play an important role in the Court's *forum non* conveniens analysis. *See* Blanco, 997 F.2d at 982, 983; Sussman, 801 F.Supp. at 1078.  In this light, the defendants have identified four Russian court decisions that are integral to this case but which, they claim, are not subject to allegations of corruption.  These are 1) [a decision relating to other matters in the New York Action]; 2) [a decision relating to other matters in the New York Action]; 3) the August 21, 2001 decision of the Federal Arbitrazh Court for the Urals Circuit affirming the lower court's dismissal of Nexis' appeal of the GOK bankruptcy settlement, (Urals Circuit Aug. 21, 2001 Determination [A-1365]; and 4) the September 5, 2001 decision of the Federal Arbitrazh Court for the Moscow Circuit upholding two lower court decisions rejecting claims by Davis, Holdex, Omni and Foston against GOK's change in registrar. (Decree of the Moscow Circuit Federal Arbitrazh Court dated Sept. 5, 2001 attached as Ex. 71 to Kozyrev/Kapoura Decls.) [A-1852]   The Court has reviewed the record and finds the defendants' contention to

- 24 -

be true:  The plaintiffs have made little, if any, attempt to articulate substantive allegations of corruption against these decisions which are clearly at the core of the plaintiffs' case.  (*See, e.g.,* Plaintiffs' Oral argument Exhibit Binder, tabs entitled "NKAZ Bankruptcy Litigation", "GOK Bankruptcy Litigation", and "GOK Shareholder Litigation" and associated citations )  In view of this fact, it would be a particular affront to notions of international comity for the Court effectively to ignore or overrule the findings of the Russian courts in these decisions.

253 F. Supp. 2d at 709 (footnote omitted).

**ARGUMENT**

**PLAINTIFFS' CLAIMS ARE BARRED
BY THE DOCTRINE OF INTERNATIONAL COMITY**

I.    **THE APPLICABLE LEGAL STANDARD**

"Public policy dictates that there be an end of litigation; that those who have contested an issue sha ll be bound by the result of the contest; and that matters once tried shall be considered forever settled as between parties." *Baldwin v. Iowa State Traveling Men's Association*, 283 U.S. 522, 525 (1931).  Judicial comity is defined as the principle whereby courts "decline to exercise jurisdiction over matters appropriately adjudged elsewhere." *Hartford Fire Ins. v. California*, 509 U.S. 764, 817 (1993).  Courts have described comity as "serv[ing] our international system like the mortar which cements together a brick house.  No one would willingly permit the mortar to crumble or be chipped away for fear of compromising the entire structure." *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984).

International comity is premised upon "the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own

citizens, or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895). Comity upholds the traditional principles of the act of state doctrine, which "precludes the courts of this country from inquiring into the validity of the public acts of a recognized foreign sovereign power committed within its own territory." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964).

Upholding the doctrine of international comity, the Third Circuit stated that "[c]omity should be withheld only when its acceptance would be contrary or prejudicial to the interests of the nation called upon to give it effect." *Philadelphia Gear Corp. v. Philadelphia Gear De Mexico, S.A.*, 44 F.3d 187, 191 (3d Cir. 1994) (quoting *Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971) (*cert. denied,* 405 U.S. 1017 (1972)). Motions asking U.S. courts to intrude upon law of a foreign sovereign will be dismissed on grounds of comity. *See In re Nazi Era Cases Against German Defendants Litigation ("Frumkin")*, 129 F. Supp. 2d 370 (D. N.J. 2001). Furthermore, foreign judicial acts are not required to be final judgments in order to be granted comity. *See Remington Rand v. Business Sys. Inc.*, 830 F.2d 1260, 1266 (3d Cir. 1987) (citing *In re Colorado Corp.*, 531 F.2d 463, 469 (10th Cir. 1976)).

The Third Circuit has on many occasions reversed, remanded and/or vacated district court decisions due to the failure to preserve the principles of international comity. *See Republic of the Philippines v. Westinghouse Electric Corp.*, 43 F.3d 65 (3d Cir. 1995) (reversing and remanding, finding that the district court exceeded its boundaries under comity principles when it imposed an injunction on the Philippines); *Philadelphia Gear Corp.*, 44 F.3d 187 (vacating and remanding based on abuse of discretion in the district court's refusal to consider comity with respect to Mexican court

proceedings); *Remington Rand*, 830 F.2d at 1266 (vacating in part and remanding in part due to the district court's violation of principles of comity by imposing a constructive trust on assets of a bankrupt Dutch corporation).

Guided by these policy considerations, federal courts generally will defer to foreign bankruptcy proceedings, so long as the foreign proceedings "do not violate the laws or public policy of the United States," and the "foreign court abides by ?fundamental standards of procedural fairness'." *Finanz AG Zurich v. Banco Economico, S.A.,* 192 F.3d 240, 246 (2d Cir. 1999); *Somportex*, 453 F.2d at 440-441; *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 90-2913-CV-UUB, slip. op. at 19-20 (S.D. Fla. July 17, 1995) (J. Ungaro-Benages) (dismissing RICO and common law conversion claims on the grounds of comity and *forum non conveniens*), *aff'd. on other grounds*, 119 F.3d 935 (11th Cir. 1997) (affirmed without reaching issue of comity) (Attached as A-2033).

As this Court is aware, Judge Koeltl of the Southern District of New York dismissed nearly duplicate allegations made by the same plaintiffs for reasons of *forum non conveniens*. *Base Metal Trading SA*, 253 F. Supp. 2d 681. In his decision, Judge Koeltl commented on the principles of international comity by stating:

> The plaintiffs argue that the prior decisions of the Russian courts would be an obstacle to their relief in the Russian judicial system. On its face, this is a curious argument because this Court would also owe deference to decisions of foreign courts unless it could be demonstrated that the decisions were not entitled to deference because, for example, they were rendered in such a way as to deny fundamental standards of procedural fairness, which the plaintiffs have not shown in this case.

*Id.* at 702.

## II. COMITY IS WARRANTED HERE TO AVOID RE-ADJUDICATION OF ISSUES THAT HAVE BEEN PRESENTED TO RUSSIAN COURTS

The issues underlying the GOK bankruptcy and the GOK shareholder disputes have been the subject of numerous lawsuits, extensive adjudication, and factual and legal determinations -- all before Russian trial and appellate courts. Raising these issues again in this forum -- under the guise of a RICO action -- Plaintiffs essentially seek to compel this Court to perform a *de facto* appellate review of facts and determinations that have been made by the Russian courts. It has long been recognized that, in the interest of international relations and comity, American courts should not be so employed. *See Somportex Ltd.*, 453 F.2d 435 (refusing to re-open a matter in which an English Court found the defendant in default); *U.S.A. ex. Rel. Saroop v. Garcia*, 109 F.3d 165, 170 (3d Cir. 1997) (deferring to the judgment of the High Court of Justice for Trinidad and Tobago); *Mast, Foos & Co. v. Stover Mfg. Co.*, 177 U. S. 485, 488 (1900) (comity is something more than mere courtesy; it "has a substantial value in securing uniformity of decision, and discouraging repeated litigation of the same question.").

In *Somportex*, the Third Circuit affirmed summary judgment for the plaintiff based on the fact that the defendant had the opportunity to litigate the issues in England and defaulted. 453 F.2d at 435. The English default ruling was respected by the Third Circuit, which stated that "[w]e hold that the defendant cannot choose its forum to test the factual basis of jurisdiction. It was given, and it waived, the opportunity of making the adequate presentation in the English Court." *Id.* at 441. As in *Somportex*, the Plaintiffs here have had their opportunity to litigate their grievances. Given the extensive and exhaustive litigation on the very issues raised in the Complaint, this Court, as a matter of comity, should recognize the prior adjudications and determinations of the Russian

tribunals and defer to proceedings pending in Russia or proceedings still available to the Plaintiffs before Russian tribunals.

### A.    Plaintiffs' Claims Relating To The Filing and Conduct of GOK's Bankruptcy Have Been Adjudicated

As set forth in detail in the Stephan Declaration (at paragraphs 36-43) and at pages 7-12 above, the allegations in the Complaint with respect to the GOK bankruptcy have been fully adjudicated in Russia.  Notably, in addition to initial level court decisions upholding the various actions of the trustee, two different levels of appellate courts have upheld them, and two different independent Russian agencies have agreed with them. A-1306, A-1318, A-1357, A-1365, A-1367, A-1591 and A-1613; Stephan ¶¶ 37-41. Moreover, as Judge Koeltl specifically observed, the plaintiffs failed to present any evidence of corruption with respect to the August 21, 2001 decision (A-1365) approving the bankruptcy settlement.  253 F. Supp. 2d at 709.

Meanwhile, the Federal Service -- the agency responsible for monitoring bankruptcies in Russia -- issued its own opinion on August 18, 2000 that there was no evidence of an "intentional" bankruptcy at GOK.  A-1367.  Similarly, the Department of the Interior for the Sverdlovsk Oblast rejected the suggestion of an international bankruptcy at GOK.  A-2060.[15]

### B.    Plaintiffs' Objections Concerning Various Corporate Governance Matters Have Been More Than Fully Adjudicated

In attempting to support their "sham" bankruptcy theory, the Plaintiffs raise issues concerning: (1) a January 28, 2000 GOK Board of Directors' meeting; (2) a March 4,

---

[15]  With respect to Plaintiffs' objection to the treatment of the creditor claim of Lebaut, that objection has also been fully dealt with in the context of the GOK bankruptcy and was extensively scrutinized by the Russian courts.  Decisions by Arbitrazh Court for the Sverdlovsk Oblast, by way of decisions dated February 19, 2001, April 18, 2001 and April 19, 2001 (the Appellate Instance of the Arbitrazh Court for the Sverdlovsk Court) have all upheld the Trustee's recognition of Lebaut's claim.  A-1591, A-1613 and A-1598; Stephan ¶ 39.

2000 GOK Shareholders' meeting; (3) GOK's change in the registrar for its shares; and (4) the issuance of additional GOK shares in 2003. Citing only to a single court action on these subjects (Complaint at ¶ 65), Plaintiffs fail to disclose to the Court that, as was the case with GOK's bankruptcy matters, all of these matters have already been adjudicated -- in a number of forums -- by the Russian courts and that Plaintiffs' claims had been consistently rejected.

First, the issue of the January 28, 2000 Board of Directors meeting has been the subject of more than 20 court decisions in at least a half dozen different proceedings, including one in which Davis was a plaintiff . A-1635, A-1649, A-1657, A-1676, A-1691 and A-1706. *See* pages 12- 15 above.

Second, the March 4, 2000 shareholders' meeting has been invalidated by two different courts. A-1790 and A-1806. Indeed, the conduct of that meeting had been enjoined by two other decisions by two different courts. A-1797 and A-1801. *See* page 15-16 above.

Third, numerous Russian legal proceedings which are not mentioned in the Plaintiffs' Complaint have confirmed that there was appropriate notice of GOK's change of registrar. A-1832, A-1839, A-1846, A-1852, A-1859 and A-1864; Stephan ¶52. *See* pages 16-17 above. The principal proceeding, which included two successive appeals, was filed by, among others, Plaintiffs Davis, Holdex, Foston and Omni. [16]

Fourth, while Plaintiffs' Complaint boldly announces that "The Final Step to Consolidate the Conspirators' Control Over GOK" was the issuance of additional GOK

---

[16]  In the New York case, Plaintiffs were given the opportunity by Judge Koeltl to identify the Russian court decisions which they believed were the product of corruption. As Judge Koeltl noted, Plaintiffs did not even attemp t to proffer any evidence that the September 5, 2001 decision was the product of corruption. *See Base Metal Trading*, 253 F. Supp.2d at 705.

shares in 2003 (Compl. ¶¶127-134), the Complaint elects not to disclose to this Court that two levels of Russian courts have already -- in a proceeding brought by none other than Plaintiffs Davis, Holdex, Foston and Omni -- rejected the argument that these shares were improperly issued. A-2165, A-2176, A-2187, and A-2212; Stephan ¶ 60. *See* pages 17-19, above.

Under established principles of international comity, these decisions -- addressing corporate matters involving a vanadium company located in Kachkanar, Russia -- should not now be revisited by this Court. Plaintiffs have already had a full and fair opportunity to present their claim in the Russian courts.

### C.    The Issues With Respect To Plaintiffs' GOK Shares Are The Subject Of Russian Court Decisions And Pending Russian Court Proceedings

Related to the Plaintiffs' unsuccessful challenge to the change in GOK's registrar are several litigations commenced in Russia pursuant to which the registrar was directed to transfer certain GOK shares owned by Plaintiffs. In each case, as the Complaint indicates, legal proceedings in Russia have been commenced, and the Russian courts have issued rulings. Those Russian courts are the appropriate forum for resolution of these matters.

The Polyprom litigation most recently resulted in the April 27, 2004 decision of the Arbitrazh Court for the Republic of Kalmykia (A-2197). The April 27, 2004 ruling, which confirms that Holdex had notice of the proceedings before the Kalmykia court, ruled that the purported sale of shares to Polyprom was concluded by an unauthorized individual on behalf of GOK and that the sale was completed in contravention of the direction of the GOK Board of Directors. Moreover, the issues relating to the Holdex

shares have been the subject of numerous other Russian court decisions which (1) confirm that Holdex was a party to those proceedings, and (2) demonstrate that the Russian courts have gone to great lengths to protect Holdex's rights. *See* pages 20-22, above.

With regard to the shares claimed by plaintiff, Omni, three separate court decisions, by two different courts, have ruled in favor of NPRO Urals. A-1924, A-1942, A-1952. *See* pages 22-23 above. To the extent Omni believes its rights are affected by these rulings, the Stephan Declaration makes it clear that Omni has a right to bring an action against NPRO Urals or the registrar.[17] Stephan ¶ 55.

Thus, for all three of these plaintiffs, litigation has been commenced in Russia, and the Russian courts have ruled, or are in the process of ruling, upon the merits of the claims brought in those actions. As the Stephan and Lebedev Declarations make clear, the Russian courts are well-equipped to address any of the claims that the Plaintiffs seek to raise with respect to these matters. Stephan ¶¶ 61-64; Lebedev ¶¶ 45-57. A United States collateral attack on these Russian court proceedings would be clearly contrary to the principles of international comity.

Finally, as for Plaintiff Davis, the claim is that Mr. Aschenbrenner did not have the authority to enter into a transaction by which certain GOK shares held by Davis were sold to GOK. However, a power of attorney presented by Mr. Aschenbrenner suggested that he had such authority. A-2002; Stephan ¶ 59. To the extent there is any dispute, the agreement in question (A-1995) provides for arbitration of any dispute in London, and

---

[17]    The August 1, 2000 decision itself explicitly states that the holder of the shares at the time of the decision has a right to bring an action for damages. A-1924 at p. 8. A July 13, 2000 decision of the Meschansky Inter-Municipal Court of Moscow -- in which two shareholders were able to successfully assert a holder in due course defense in an action with respect to their shares -- is an illustration of the rights available to Polyprom, Omni and Foston in the Russian Courts. A-2027; Stephan ¶ 53.

that is the proper forum for resolution of any dispute.  There is simply no basis for this particular Plaintiff to bootstrap claims it may have against Mr. Aschenbrenner into the sort of RICO lawsuit (not against Mr. Aschenbrenner) it seeks to concoct by way of the Complaint.

## III.    RUSSIAN LEGAL PROCEEDINGS SATISFY THE FUNDAMENTAL REQUIREMENTS OF PROCEDURAL FAIRNESS

Under the doctrine of international comity, a court should defer to the pendency or availability of foreign proceedings where the foreign tribunal abides by "fundamental standards of procedural fairness."  *Finanz*, 192 F.3d at 249.  It is well-established that the foreign procedures need not be identical in order for comity to apply.  *See, e.g., Somportex*, 453 F.2d at 440-41;  *Allstate Life Ins. Co. v. Linter Group Ltd.,* 994 F.2d 996, 999 (2d Cir. 1993),  *cert. denied*, 510 U.S. 945 (1993) (affirming a dismissal on the ground of comity without the need for further discovery).

With respect to bankruptcy proceedings, courts have listed several factors as "indicia of procedural fairness," including:

> (1) whether creditors of the same class are treated equally in the distribution of assets; (2) whether the liquidators are considered fiduciaries and are held accountable to the court;  (3) whether creditors have the right to submit claims which, if denied, can be submitted to a bankruptcy court for adjudication; (4) whether the liquidators are required to give notice to the debtors potential claimants; (5) whether there are provisions for creditors meetings; (6) whether a foreign country's insolvency laws favor its own citizens; (7) whether all assets are marshaled before one body for centralized distribution; and (8) whether there are provisions for an automatic stay and for the lifting of such stays to facilitate the centralization of claims.

*Finanz*, 192 F.3d at 249; *Allstate Life Ins. Co.*, 994 F.2d at 999.

As set forth in the Stephan and Lebedev Declarations, Arbitrazh Courts, which preside over the bankruptcy proceedings in Russia, follow standard procedures that

incorporate each of the significant factors.  The factors are addressed by Russian law as follows: (1) Article 6 and Article 7 of the Arbitrazh Procedure Code of the Russian Federation (the "Arbitrazh Code") provide that all claimants are considered equal before the law and ensure equal rights to all parties (Stephan ¶ 11; Lebedev ¶ 25); (2) Russian law allows for the appointment of an interim trustee and an external trustee who are fiduciaries accountable to the court for decisions rendered with respect to the debtor corporation (*see generally* Stephan ¶ 33; as shown here in Stephan ¶ 37; A-1075 and A-1080); (3) a creditor may adjudicate claims which are rejected by the interim or external trustee before the Arbitrazh Court (as Plaintiffs have done; *see* pages 9-11 above); (4) interim and external trustee must, and in this case did, provide notice to GOK creditors as to creditor meetings and the bankruptcy settlement (*see generally* Stephan ¶ 33; and as shown here in A-1832, A-1839, A-1846, A-1852, and A-1910); (5) Arbitrazh procedure allows for creditor meetings, which -- in this case -- were held by the trustee to recognize creditor claims and vote on the bankruptcy settlement (*see* meeting minutes at A-1245, A-1323); (6) under the Arbitrazh Code, foreign claims are treated equally with Russian claims (Stephan ¶ 19); (7) the debtor's assets are marshaled by an interim and/or external trustee and protected by the Russian courts (Stephan ¶ 33); (8) there are procedures for automatic stays (*Id.*).  Given the above procedures provided under Russian law and followed by the Russian judiciary in this action, it is clear that Russian Courts abided by "basic norms of procedural fairness." Stephan ¶¶ 36, 61-63; Lebedev ¶ 25, 58-60.

The procedures followed in connection with other claims raised with respect to the GOK shareholders also satisfy fundamental standards of procedural fairness.  As set forth in the Stephan and Lebedev Declarations, Russian Arbitrazh courts and courts of

general jurisdiction are available to adjudicate shareholder claims as to corporate governance and disputed stock ownership.  Stephan ¶¶ 10 and 18; Lebedev ¶¶ 25 and 28. Both the Arbitrazh courts and courts of general jurisdiction in Russia operate under principles of independence and equality.  Stephan ¶¶ 11 and 19; Lebedev ¶¶ 54-57.  The rules of both Russian courts provide due process procedures which protect the rights of adversaries and ensure access to discovery of relevant evidence.  Stephan ¶¶ 11 and 19; Lebedev ¶ 25.  With respect to the numerous claims in connection with the corporate governance of GOK and the disputes as to shareholder ownership -- which have been adjudicated in Russia -- these fundamental standards of due process were followed. Stephan ¶¶ 62-63.

There is simply no basis or justification to pursue this litigation in the United States.  As a matter of international comity, the entirely lawful proceedings, conducted under Russian law, should not be subjected to a collateral challenge in this Court.

## IV.    APPLICATION OF COMITY PRINCIPLES DOES NOT VIOLATE PUBLIC POLICY OF THE UNITED STATES

The public policies of the United States are not offended by dismissing Plaintiffs' action on the grounds of comity.  The mere fact that Plaintiffs have alleged RICO claims and damages, which are unique to American law, does not preclude a court from dismissing such action on the grounds of comity.  *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 90-2913-CV-UUB, slip. op. at 19-20 (dismissing RICO claims on the grounds of comity and forum non conveniens) (A-2033).

In *Republic of Panama*, the plaintiff the Panamanian Government (Panama), brought an action against BCCI Holdings (Luxembourg S.A. ("BCCI")) and others, alleging that Manuel Noriega, the former Panamanian military officer, abused his official

position and diverted millions of dollars of government funds to BCCI Group, which in turn laundered and redistributed the funds to various entities. *Id.* Panama alleged that these actions constituted a RICO enterprise. The Government of Panama asserted federal claims under RICO, and common law claims of breach of fiduciary duty, fraud and conversion.

After observing that BCCI was in the process of being liquidated in "world wide liquidation proceedings" in the Cayman Islands, England and Luxembourg, the court dismissed that action both on the grounds of forum non convenience and comity. Given the fact that Panama could bring its claims to various Official Liquidators, as part of the liquidation plan, the Count concluded that no prejudice to Panama or violation of public policy resulted from the dismissal of the RICO or common law claims.[18]

Here, the international public policies which lie at the heart of this case support dismissal. As a matter of public policy, courts have recognized that, in essence, comity may be viewed as a version of the golden rule: a "concept of doing to others as you would have them do to you . . . ." *Republic of Philippines*, 43 F.3d at 75 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). Understanding comity in these terms, one could imagine the controversy that would arise if a foreign court attempted to review (and re-determine) issues involving the alleged corruption of (1) United States judiciary, (2) United States government officials, (3) United States corporations (4) United States contracts and (5) United States citizens, which were aired and adjudicated previously before district and appellate courts in the United States.

---

[18] The appellate court, which dismissed the case on *forum non conveniens* grounds, did not reach the issue of comity. *Republic of Panama*, 119 F.2d 935.

It is evident that -- if the tables were turned -- such actions initiated by private plaintiffs and a foreign judiciary would be regarded as intrusive and objectionable. Given the circumstances of this case, it is clear that the underlying principles of international comity counsel in favor of judicial abstention, allowing Plaintiffs to pursue whatever claims they may have in proceedings before the Russian judiciary. Plaintiffs should not be allowed to revisit matters already decided by multiple Russian courts.

## CONCLUSION

For all of the foregoing reasons, and those set forth in the accompanying declarations and exhibits, Plaintiffs' Complaint should be dismissed in its entirety on the basis of international comity. The matters set forth in the Complaint have been litigated extensively before numerous Russian courts which have already ruled on these matters. In the interest of comity, the facts and claims asserted by the Plaintiffs -- which involve issues of Russian bankruptcy law, governance of Russian corporations and shareholder litigations which have been ongoing in Russia -- should not be re-visited by this Court. Judge Koeltl, in dismissing the New York Action on *forum non conveniens* grounds, recognized that principles of international comity precluded Plaintiffs' effort to engage in wholesale relitigation of 120 Russian court decisions rendered by over 150 Russian judges. Plaintiffs' latest effort to sidestep the Russian decisions -- and Judge Koeltl's ruling -- should not be countenanced by this Court.

Respectfully submitted,

Attorneys for Defendants Arnold Kislin:

 /s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

Lisa C. Cohen
Schindler Cohen & Hochman LLP
100 Wall Street
15th Floor
New York, NY  10005
(212) 277-6300

Lawrence S. Goldman
Elizabeth Johnson
The Law Offices of Lawrence S. Goldman
500 Fifth Ave., 29th Floor
New York, NY 10110-2900
(212) 997-7499

Attorneys for Defendants New Start Group
Corp. and Venitom Group:

/s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)  Richard J. Schaeffer
Karen V. Sullivan (DSBA No. 3872)   Peter J. Venaglia
Oberly, Jennings & Rhodunda, P.A.   Laura D. Sullivan
800 Delaware Avenue, Suite 901    Dornbush, Schaeffer, Strongin &
PO Box 2054         Weinstein, LLP
Wilmington, DE 19899      747 Third Avenue, 11th Floor
(302) 576-2000        New York, NY 10017
             (212) 759-3300


Attorneys for Defendant Oleg Deripaska:

/s/ Collins J. Seitz, Jr.
Collins J. Seitz, Jr. (DSBA No. 2237)  Rodney F. Page
Kevin F. Brady (DSBA No. 2248)   Michael G. Biggers
Connolly Bove Lodge & Hutz LLP   Bryan Cave LLP
1007 North Orange Street     700 13th Street, N.W.
P.O. Box 2207        Washington, D.C. 20005-3960
Wilmington, DE 19899      (202) 508-6002
(302) 658-9141


Attorneys for Defendant Evraz Holding:

/s/ William M. Lafferty
William M. Lafferty (DSBA No. 2755)  David H. Herrington
Morris, Nichols, Arsht & Tunnell   Vitali Rosenfeld
Chase Manhattan Centre, 18th Floor  Cleary Gottlieb Steen & Hamilton LLP
1201 North Market Street     One Liberty Plaza
P.O. Box 1347        New York, NY 10006
Wilmington, DE 19899-1347    (212) 225-2266
(302) 575-7341

Attorneys for Defendant MDM Bank:

 /s/ Richard I.G. Jones, Jr.
Richard I.G. Jones, Jr. (DSBA No. 3301)        Joel B. Kleinman
Ashby & Geddes                                 Steven J. Roman
222 Delaware Avenue, 17th Floor                David H. Greenberg
P.O. Box 1150                                  Dickstein Shapiro Morin & Oshinsky LLP
Wilmington, DE 19899                           2101 L Street NW
(302) 654-1888                                 Washington, DC 20037-1526
                                               (202) 785-9700


Attorneys for Defendant Ural-Gorno
Metallurgical Company:

 /s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)          William H. Devaney
Karen V. Sullivan (DSBA No. 3872)              Heard & O'Toole LLP
Oberly, Jennings & Rhodunda, P.A.              405 Lexington Ave, Floor 62
800 Delaware Avenue, Suite 901                 New York, NY 10174
PO Box 2054                                    (212) 307-5500
Wilmington, DE 19899
(302) 576-2000


Attorneys for Defendant Iskander
Makmudov:

/s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)          William H. Devaney
Karen V. Sullivan (DSBA No. 3872)              Heard & O'Toole LLP
Oberly, Jennings & Rhodunda, P.A.              405 Lexington Ave, Floor 62
800 Delaware Avenue, Suite 901                 New York, NY 10174
PO Box 2054                                    (212) 307-5500
Wilmington, DE 19899
(302) 576-2000

Attorneys for Defendant Mikhail Chernoi:

/s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)          Brian Maas
Karen V. Sullivan (DSBA No. 3872)              Cameron A. Myler
Oberly, Jennings & Rhodunda, P.A.              Frankfurt Kurnit Klein & Selz PC
800 Delaware Avenue, Suite 901                 488 Madison Avenue, 9th Floor
PO Box 2054                                    New York, NY 10022
Wilmington, DE 19899                           (212) 980-0120
(302) 576-2000


Attorneys for Defendant Mikhail Nekrich:

/s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)          Paul R. Grand
Karen V. Sullivan (DSBA No. 3872)              Edward M. Spiro
Oberly, Jennings & Rhodunda, P.A.              Morvillo, Abramowitz, Grand, Iason &
800 Delaware Avenue, Suite 901                 Silberberg, P.C.
PO Box 2054                                    565 Fifth Avenue
Wilmington, DE 19899                           New York, NY  10017
(302) 576-2000                                 (212) 880-9510

Dated: March 31, 2005