**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------x
DAVIS INTERNATIONAL, LLC, HOLDEX,  :
LLC, FOSTON MANAGEMENT, LTD, and   :
OMNI TRUSTHOUSE, LTD,              :
                                   :
                 Plaintiffs,       :
                                   :
        v.                         :        Case No. 04-1482-GMS
                                   :
NEW START GROUP CORP., VENITOM     :
CORP., PAN-AMERICAN CORP., MDM     :
BANK, URAL-GORNO METALURAGICAL     :
COMPANY, EVRAZ HOLDING, MIKHAIL    :
CHERNOI, OLEG DERIPASKA, ARNOLD    :
KISLIN, MIKHAIL NEKRICH, and       :
ISKANDER MAKMUDOV,                 :
                                   :
                 Defendants.       :
-------------------------------------------------------------x

**OPENING BRIEF IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE COMPLAINT PURSUANT TO**
**RULES 12(b)(1) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Attorneys for Defendant Arnold Kislin:

Charles M. Oberly, III (DSBA No. 743)       Lisa C. Cohen
Karen V. Sullivan (DSBA No. 3872)           Schindler Cohen & Hochman LLP
Oberly, Jennings & Rhodunda, P.A.           100 Wall Street
800 Delaware Avenue, Suite 901              15th Floor
PO Box 2054                                 New York, NY  10005
Wilmington, DE 19899                        (212) 277-6300

                                            Lawrence S. Goldman
                                            Elizabeth Johnson
                                            The Law Offices of Lawrence S. Goldman
                                            500 Fifth Ave., 29th Floor
                                            New York, NY 10110-2900
                                            (212) 997-7499

Attorneys for Defendants New Start Group
Corp. and Venitom Group:

Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

Richard J. Schaeffer
Peter J. Venaglia
Laura D. Sullivan
Dornbush, Schaeffer, Strongin & Weinstein,
LLP
747 Third Avenue, 11th Floor
New York, NY 10017
(212) 759-3300


Attorneys for Defendant Oleg Deripaska:

Collins J. Seitz, Jr. (DSBA No. 2237)
Kevin F. Brady (DSBA No. 2248)
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

Rodney F. Page
Michael G. Biggers
Bryan Cave LLP
700 13th Street, N.W.
Washington, D.C. 20005-3960
(202) 508-6002


Attorneys for Defendant Evraz Holding:

William M. Lafferty (DSBA No. 2755)
Morris, Nichols, Arsht & Tunnell
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 575-7341

David H. Herrington
Vitali Rosenfeld
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2266


Attorneys for Defendant MDM Bank:

Richard I.G. Jones, Jr. (DSBA No. 3301)
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

Joel B. Kleinman
Steven J. Roman
David H. Greenberg
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street NW
Washington, DC 20037-1526
(202) 785-9700

Attorneys for Defendant Ural-Gorno
Metallurgical Company:

Charles M. Oberly, III (DSBA No. 743)          William H. Devaney
Karen V. Sullivan (DSBA No. 3872)              Heard & O'Toole LLP
Oberly, Jennings & Rhodunda, P.A.              405 Lexington Ave, Floor 62
800 Delaware Avenue, Suite 901                 New York, NY 10174
PO Box 2054                                    (212) 307-5500
Wilmington, DE 19899
(302) 576-2000


Attorneys for Defendant Iskander Makmudov:

Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)              William H. Devaney
Oberly, Jennings & Rhodunda, P.A.              Heard & O'Toole LLP
800 Delaware Avenue, Suite 901                 405 Lexington Ave, Floor 62
PO Box 2054                                    New York, NY 10174
Wilmington, DE 19899                           (212) 307-5500
(302) 576-2000


Attorneys for Defendant Mikhail Chernoi:

Charles M. Oberly, III (DSBA No. 743)          Brian Maas
Karen V. Sullivan (DSBA No. 3872)              Cameron A. Myler
Oberly, Jennings & Rhodunda, P.A.              Frankfurt Kurnit Klein & Selz PC
800 Delaware Avenue, Suite 901                 488 Madison Avenue, 9th Floor
PO Box 2054                                    New York, NY 10022
Wilmington, DE 19899                           (212) 980-0120
(302) 576-2000


Attorneys for Defendant Mikhail Nekrich:

Charles M. Oberly, III (DSBA No. 743)          Paul R. Grand
Karen V. Sullivan (DSBA No. 3872)              Edward M. Spiro
Oberly, Jennings & Rhodunda, P.A.              Morvillo, Abramowitz, Grand, Iason &
800 Delaware Avenue, Suite 901                 Silberberg, P.C.
PO Box 2054                                    565 Fifth Avenue
Wilmington, DE 19899                           New York, NY 10017
(302) 576-2000                                 (212) 880-9510


Dated:  March 31, 2005

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iv

PRELIMINARY STATEMENT ........................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS ............................................................ 1

SUMMARY OF ARGUMENT ........................................................................................... 2

STATEMENT OF FACTS .................................................................................................... 4

ARGUMENT ......................................................................................................................... 7

    I.   PLAINTIFFS HAVE NOT AND CANNOT
        ESTABLISH THE COURT'S JURISDICTION
        OVER THE SUBJECT MATTER OF THEIR
        RUSSIAN-BASED ALLEGATIONS ................................................................ 7

        A. There Is No Subject Matter Jurisdiction For
           The RICO Claims Under The Conduct Test ...................................................... 8

        B. There Is No Subject Matter Jurisdiction For
           The RICO Claims Under The Effects Test ...................................................... 11

    II.  PLAINTIFFS' RICO CLAIMS ARE FATALLY
        DEFECTIVE ...................................................................................................... 12

        A. The Statute Of Limitations Bars Plaintiffs' Alleged
           Injury Based On The Alleged Illegal Scheme ................................................. 14

        B. Considered Individually, Each Plaintiff's RICO
           Claims Are Barred By The Statute Of Limitations
           And By Lack Of Direct Causation ................................................................. 15

           1.  Davis And Foston's Claims Are Time-Barred ......................................... 16

           2.  Omni And Holdex's Claims Are Time-Barred ........................................ 16

           3.  Omni And Holdex's Losses Were Not
              Proximately Caused By RICO Acts ........................................................ 17

    III. PLAINTIFFS' FAILURE TO ALLEGE THE
        ELEMENTS OF A CLAIM UNDER §§1962(a), (b),
        (c) OR (d) REQUIRES DISMISSAL .............................................................. 20

        A. Plaintiffs Fail To Establish A Claim
           Under § 1962(a) ............................................................................................. 20

i

1. Plaintiffs' Failure To Allege The Receipt
Of Money From A Pattern Of Racketeering
Activity Requires Dismissal ................................................................. 21

2. Plaintiffs' Failure To Allege An "Investment"
Injury Requires Dismissal ................................................................... 21

B. Plaintiffs' Failure To Allege The Elements Of A
§ 1962(b) Claim Requires Dismissal ............................................................ 23

C. Plaintiffs' Failure To Plead A Cognizable Claim Under
§ 1962(c) Requires Dismissal ..................................................................... 24

1. Plaintiffs Have Failed To Allege A Proper Enterprise ............................... 25

2. Plaintiffs Have Failed To Establish That
Defendants Participated In The Conduct
Of Affairs Of Any Of The Enterprises ..................................................... 26

3. Plaintiffs Fail To Plead The Requisite Pattern
Of Racketeering As To Each Defendant .................................................... 28

(a) The Allegations As To New Start, Venitom,
Pan-American And Delaware Real Estate
Entities Do Not Constitute A Pattern Of
Racketeering ..................................................................... 29

(b) Plaintiffs Fail To Allege A Pattern Of
Racketeering As To MDM, Ural-Gorno
And Evraz ......................................................................... 30

(c) The Allegations As To The GOK Enterprise
Are Insufficient ................................................................. 31

4. Plaintiffs Fail To Allege The Prerequisites
Of The § 1962(C) Claim Against Various
Individual Defendants ......................................................................... 32

D. Plaintiffs' Failure To Plead Their Fraud Claims
With The Requisite Particularity Mandates Dismissal ...................................... 32

1. Rule 9(b) Of The Federal Rules Of Civil
Procedure Requires That Fraud Be Pleaded
With Particularity .............................................................................. 32

2. Plaintiffs' Claims Of Mail And Wire Fraud
Are Insufficiently Pleaded .................................................................... 33

3. Plaintiffs' Money Laundering Claims Are
Inadequately Pleaded .......................................................................... 35

E.  Plaintiffs' Failure To Plead The Elements
Of A §1962(d) Claim Requires Dismissal.......................................................35

IV. PLAINTIFFS' FAILURE TO PLEAD THE
ELEMENTS OF THEIR STATE LAW CLAIMS
REQUIRES DISMISSAL ...................................................................................37

CONCLUSION.............................................................................................................39

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Jankouskas*, 452 A.2d 148 (Del. 1982) ........................................................................38

*Agency Holding Corp. v. Malley-Duff & Associates, Inc.,* 483 U.S. 143 (1987) ..........................2, 12

*Alleghany General Hospital v. Phillip Morris, Inc*., 228 F.3d 429 (3d Cir. 2000) ..........................19

*Anderson v. Ayling*, 396 F.3d 265 (3d Cir. 2005)............................................................2, 13, 19, 36

*Apollo Fuel Oil v. United States*, 195 F.3d 74 (3d Cir. 1999) ......................................................17

*Arthur v. Guerdon Industries, Inc*., 827 F. Supp. 273 (D. Del 1993) ..............................2, 13, 19, 26

*A-Valey Engineers, Inc. v. Board of Chosen Freeholders of the County of Camden*,
    106 F. Supp. 2d 711 (D.N.J. 2000)....................................................................................4, 36

*Baram v. Farugia*, 606 F.2d 42 (3d Cir. 1979) ..........................................................................4, 38

*Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681 (S.D.N.Y. 2003),
    *aff'd*, 98 Fed. Appx. 47 (2d Cir. April 30, 2004) ...............................................................passim

*Beck v. Prupis*, 529 U.S. 494 (2000) ................................................................................3, 35, 36

*Bhatla v. Resort Dev Corp*., 720 F. Supp. 501 (W.D. Pa. 1989)....................................................21

*Butte Mining PLC v. Smith*, 76 F.3d 287 (9th Cir. 1996) ..............................................................10

*Calabrese v. CSC Holdings, Inc*., 283 F. Supp. 2d 797 (E.D.N.Y. 2003)........................................23

*Callahan v. A.E.V., Inc*., 182 F.3d 237 (3d Cir. 1999) ............................................................13, 19

*Callahan v. Commonwealth Land Title Ins. Co*., 1990 WL 168273 (E.D. Pa. Oct. 29, 1990) ............24

*Casper v. Paine Webber Group, Inc*., 787 F. Supp. 1480 (D.N.J. 1992)..........................................18

*Concern Sojuzvneshtrans v. Buyanovski*, 80 F. Supp. 2d 273 (D.N.J. 1999) ..................................7, 9

*Curtin v. Tilley Fire Equip. Co.,* 1999 WL 1211502 (E.D. Pa. 1999) ..............................................30

*Diamond v. Reynolds*, 1986 WL 15374 (D. Del. Jan. 13, 1986) ....................................................18

*Doe v. Unocal Corp*., 110 F. Supp. 2d 1294 (C.D. Cal. 2000),
    *aff'd in relevant part*, 395 F.3d 932 (9th Cir. 2002) ......................................................2, 7, 10

*Dongelewicz v. First Eastern Bank*, 80 F. Supp. 2d 339 (M.D. Pa. 1999),
    *aff'd, Dongelewicz v. PNC Bank Nat'l Ass'n.*, 104 Fed. Appx. 811, 2004 WL 1661863,
    RICO Bus. Disp. Guide 10, 720 (3d Cir. July 23, 2004) ..........................................................37

*Dow Chemical Co. v. Exxon Corp*., 30 F. Supp. 2d 673 (D. Del. 1998)..............................3, 7, 20, 36

*EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244 (1991) ...................................................................7

*EEOC v. Great Atlantic & Pacific Tea Co.*, 735 F.2d 69 (3d Cir. 1984) ..........................................38

*Esposito Hauling & Contracting Co. v. Bldg. & Constr. Trades Council of Del.*,
1993 WL 566442 (D. Del. Sept. 2, 1993) .........................................................................26

*Eureka Paper Box Company v. WBMA, Inc. Voluntary Employee Benefit Trust*,
767 F. Supp. 642 (M.D. Pa. 1991)...................................................................................31

*Garbade v. Great Divide Mining & Milling Corp.*, 831 F.2d 212 (10th Cir. 1987) ...........................21

*Glessner v. Kenny*, 952 F.2d 702 (3d Cir. 1991) ......................................................................22

*H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989) .....................................3, 28, 31

*Helman v. Murry's Steaks, Inc.*, 742 F. Supp. 860 (D. Del. 1990)..........................................3, 23, 36

*Hindes v. Castle*, 937 F.2d 868 (3d Cir. 1991) ....................................................................... 3, 28

*Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992) ....................................2, 13, 18

*Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594 (3d Cir. 1991),
*cert. denied*, 504 U.S. 955 (1992) .......................................................................................28

*In re Bank of Credit & Commerce Int'l Depositors Litig.*, 1992 WL 696398
(C.D. Cal. April 30, 1992) .......................................................................................... 8, 18

*In re South African Apartheid Litig.*, 346 F. Supp. 2d 538 (S.D.N.Y. 2004) ...............................9, 12

*Isaacson, Stolper & Co. v. Artisan's Sav. Bank*, 330 A.2d 130 (Del. 1974)...............................4, 38

*Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258 (3d Cir. 1995) ..................................26

*Jiffy Lube Int'l Inc. v. Jiffy Lube of Pennsylvania*, 848 F. Supp. 569 (E.D. Pa. 1994) ..................3, 21

*Kaczmarek v. International Business Machines Corp.*, 30 F. Supp. 2d 626 (S.D.N.Y. 1998) ............23

*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir. 1991) ..................................23, 29, 31

*Kimmel v. Peterson*, 565 F. Supp. 476 (E.D. Pa. 1983) .................................................................35

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997).........................................................................13

*Kruman v. Christies Int'l PLC*, 129 F. Supp. 2d 620 (S.D.N.Y. 2001),
*vacated on other grounds*, 284 F.3d 384 (2d Cir. 2002) .........................................................12

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) ..........................................4, 22, 36

*Lum v. Bank of America*, 361 F.3d 217 (3d Cir. 2004) ...............................................................33

*Marshall-Silver Construction Co., Inc. v. Mendel*, 894 F.2d 593 (3d Cir. 1990) .............................31

*Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239 (3d Cir. 2001) .................................... 2, 12, 13, 19

*Nasser v. Andersen Worldwide Societe Cooperative*, 2003 WL 22179008
    (S.D.N.Y. Sept. 23, 2003) ................................................................................... 11

*National Railroad Passenger Corp. v. Notter*, 677 F. Supp. 1 (D.D.C. 1987) ................................... 17

*North South Finance Corporation v. Al-Turki*, 100 F.3d 1046 (2d Cir. 1996) .......................... 2, 7, 8

*NRB Indus. v. R.A. Taylor & Assocs.*, 1998 WL 3638 (S.D.N.Y. Jan. 7, 1998) ................................ 23

*Nuevo Mundo Holdings v. PriceWaterhouse Coopers LLP*, 2004 WL 2848524
    (S.D.N.Y. Dec. 9, 2004) ....................................................................................... 11

*OSRecovery, Inc. v. One Group Int'l, Inc.*, 354 F. Supp. 2d 357 (S.D.N.Y. 2005)........................ 8, 24

*Peters v. Welsh Development Agency*, 1991 WL 172950 (N.D. Ill. Aug. 29, 1991) ........................... 8

*Philan Ins. Ltd. v. Frank B. Hall & Co.*, 748 F. Supp. 190 (S.D.N.Y. 1990) .................................... 10

*Poulos v. Caesars World, Inc.*, 379 F.3d 654 (2d Cir. 2004) ....................................................... 7

*Prudential Insurance Co. v. United Gypsum Co.*, 359 F.3d 226 (3d Cir. 2004) .............. 12, 13, 19, 20

*Brittingham v. Mobil Corp.*, 943 F.2d 297 (3d Cir. 1991) ....................................................... 22, 26

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) ....................................................................... 3, 26

*Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998),
    *abrogation on other grounds recognized by, Forbes v. Eagleson*, 228 F.3d 471 (3d Cir. 2000) ..37

*Roquette America, Inc. v. Alymum N.V.*, 2004 WL 1488384 (S.D.N.Y. July 1, 2004) ...................... 11

*Rose v. Bartle*, 871 F.2d 331 (3d Cir. 1989) ................................................................... 4, 22, 32

*Rotella v. Wood*, 528 U.S. 549 (2000) ................................................................................... 13

*Saporito v. Combustion Engineering Inc.*, 843 F.2d 666 (3d Cir. 1988) .......................................... 34

*Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374 (2d Cir. 1974),
    *cert. denied*, 421 U.S. 976 (1975) ................................................................................... 34

*Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985)........................................................... 25

*Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786 (3d Cir. 1984),
    *cert. denied*, 469 U.S. 1211 (1985) ................................................................................. 33

*Sinaltrainal v. The Coca-Cola Co.*, 256 F. Supp. 2d 1345 (S.D. Fla. 2003) ................................. 7, 8

*Spitzer v. Abdelhak*, 1999 WL 1204352 (E.D. Pa. Dec. 15, 1999) ................................................. 35

*Standard Chlorine of Del. v. Sinibaldi*, 821 F. Supp. 232 (D. Del. 1992) ...................................... 22

*Steamfitters Local Union No. 420 Welfare Fund v. Phillip Morris, Inc.*,
   171 F.3d 912 (3d Cir. 1999) ............................................................................. 19

*Stursberg v. Todi*, 2004 WL 2244539 (E.D. Pa. October 1, 2004) ............................ 28, 30

*Tabas v. Tabas*, 47 F.3d 1280 (3d Cir.), *cert. denied*, 515 U.S. 1118 (1995) .................... 31

*Travelers Indemnity Company v. Lake*, 594 A.2d 38 (Del. 1991) ................................ 37

*United States v. Antar*, 53 F.3d 568 (3d Cir. 1995) ...................................................... 27

*United States v. Giffen*, 326 F. Supp. 2d 497 (S.D.N.Y. 2004) ..................................... 18

*United States v. Irizarry*, 341 F.3d 273 (3d Cir. 2003) ............................................. 3, 26

*United States v. Parise*, 159 F.3d 790 (3d Cir. 1998) .................................................. 27

*United States v. Riccobene*, 709 F.2d 214 (3d Cir. 1983) ........................................... 3, 26

*University of Maryland at Baltimore v. Peat, Marwick, Main & Co.*,
   996 F.2d 1534 (3d Cir. 1993) ................................................................... 27, 37

*Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F. Supp. 276 (S.D.N.Y. 1991) ...................... 23

**Statutes**

10 Del. C. § 8106 ............................................................................................ 4

11 Del. C. § 1201 .......................................................................................... 18

18 U.S.C. § 1961 ................................................................................... passim

18 U.S.C. § 1962 ................................................................................... passim

18 U.S.C. § 201 ........................................................................................... 18

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................... passim

Fed. R. Civ. P. 12(b)(1) ................................................................................ 1, 2

Fed. R. Civ. P. 12(b)(6) .................................................................................. 1

**Treatises**

2A MOORE'S FEDERAL PRACTICE (2d ed. 1982) ...................................................... 34

Restatement (Second) of Conflict of Laws (1971) ...................................................... 37

## PRELIMINARY STATEMENT

As demonstrated in the other opening briefs supporting defendants' motion to dismiss, the complaint should be dismissed because, as the Honorable John G. Koeltl of the Southern District of New York found and as the Second Circuit affirmed, this case belongs in Russia. Even if this Court were to deny defendants' motion based on the other grounds, the complaint should still be dismissed because, as a matter of law, it fails to state any viable cause of action.

In their vague complaint, plaintiffs plead a Byzantine tangle of conclusory allegations that merely parrot statutory language without setting forth the facts required for claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"). Plaintiffs fail to allege a specific RICO enterprise (instead listing eight separate enterprises), fail to set forth the specific acts and statutes corresponding to the claimed RICO predicate acts, and fail to plead with particularity those predicate acts governed by Fed. R. Civ. P. 9(b). With few exceptions, they fail to show which defendants committed which acts, generally merely alleging that the acts were committed by the "Conspirators" (*see, e.g.*, Compl. ¶¶ 46, 51, 52, 59, 62-64, 67-68). Giving plaintiffs the benefit of every doubt, it is nonetheless clear that they cannot state a claim. The complaint should be dismissed.

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs originally filed their complaint in the Delaware Court of Chancery on November 4, 2004. Defendants removed on November 30th and the Court held a telephone conference with the parties on December 21st. On March 8, 2005, plaintiffs served discovery demands and Rule 26 disclosures. There have been no other proceedings to date. Defendants now submit this opening brief in support of their motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that plaintiffs have failed to state a claim and that subject matter jurisdiction is lacking. In addition, by separate briefs, defendants are moving to

dismiss the complaint on the grounds of direct estoppel, *forum non conveniens*, and international comity.[1]

## SUMMARY OF ARGUMENT

I.      **Plaintiffs have not and cannot establish this Court's jurisdiction over the subject matter of their Russian-based RICO allegations**.  None of the purported conduct that directly caused plaintiffs' alleged loss occurred in or had substantial direct effects in  the United States.  Instead, Russia is the locus of all of the alleged conduct and all of the purported substantial effects.  Accordingly, subject matter jurisdiction over plaintiffs' RICO claims is lacking.  *See North South Finance Corporation v. Al-Turki*, 100 F.3d 1046 (2d Cir. 1996); *Doe v. Unocal Corp*., 110 F. Supp. 2d 1294, 1311 (C.D. Cal. 2000), *aff'd in relevant part*, 395 F.3d 932, 961-62 (9th Cir. 2002).

II.      **Plaintiffs' RICO claims are defective because plaintiffs failed to bring their claims within RICO's four year statute of limitations and failed to allege that their purported injury was proximately caused by any purported RICO predicate act**.  The statute of limitations for a civil RICO action is four  years,  counted from  when a plaintiff discovers  or should have discovered the injury.  *Agency Holding Corp. v. Malley-Duff & Associates, Inc.,* 483 U.S. 143, 156 (1987); *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 245 (3d Cir. 2001).  Additionally, a plaintiff must allege facts sufficient to demonstrate that the alleged RICO violations proximately caused the loss for which relief is sought.  *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992); *Anderson v. Ayling*, 396 F.3d 265, 269 (3d Cir. 2005); *Arthur v. Guerdon Industries, Inc*., 827 F. Supp. 273, 280 (D. Del 1993).  Here, plaintiffs allege that they were injured by a takeover scheme and pattern of racketeering activity that "began no later than the early 1990's and continues

---

[1]      All defendants join in this motion, which tracks a motion they filed to dismiss the virtually identical allegations made by plaintiffs (and others) in the Southern District of New York.  In dismissing that action on *forum non conveniens* grounds, Judge Koeltl did not reach defendants' Rule 12 motion.  *Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681 (S.D.N.Y. 2003), *aff'd*, 98 Fed. Appx. 47 (2d Cir. April 30, 2004) ("*Base Metal Trading*").  As in the prior litigation, defendants respectfully suggest that this Court first consider defendants' direct estoppel motion and then, if and as necessary, proceed to their *forum non conveniens* motion, their comity motion, and finally this Rule 12 motion.

through the present date." (Compl. ¶¶ 1 & 136.) All of the alleged conduct causing the purported injury occurred more than four years ago.

Moreover, if plaintiffs are complaining about the purported transfer of their shares, those losses are not proximately linked to the alleged RICO acts. Indeed, plaintiffs specifically allege that the shares of Omni, Holdex, and Foston were transferred as a result of court decisions. Accordingly, plaintiffs' RICO claims must be dismissed.

III.     **Plaintiffs failure to allege the elements of a claim under §§ 1962(a), (b), (c) or (d) of RICO requires dismissal**. Plaintiffs fail to show a violation of § 1962(a) because they do not sufficiently allege that money was received from a pattern of racketeering activity and that their purported injury resulted directly from the investment of that income rather than from the alleged predicate acts themselves. Nor do they establish a claim for each separate defendant. *See Dow Chemical Co. v. Exxon Corp*., 30 F. Supp. 2d 673, 697 (D. Del. 1998); *Jiffy Lube Int'l Inc. v. Jiffy Lube of Pennsylvania*, 848 F. Supp. 569, 582 (E.D. Pa. 1994). Plaintiffs' § 1962(b) claim likewise must be dismissed for failing to show that defendants acquired or maintained an enterprise "through a pattern of racketeering activity." *Helman v. Murry's Steaks, Inc.*, 742 F. Supp. 860, 879, 882 (D. Del. 1990).

Plaintiffs fail on many fronts to allege the elements of their § 1962(c) claim. First, plaintiffs do not properly allege a RICO enterprise. *United States v. Irizarry*, 341 F.3d 273, 286 (3d Cir. 2003); *United States v. Riccobene*, 709 F.2d 214, 221-224 (3d Cir. 1983). Second, plaintiffs have not properly alleged how each defendant individually managed and operated a RICO enterprise. *Reves v. Ernst & Young*, 507 U.S. 170 (1993). Third, plaintiffs have not pleaded a pattern of racketeering as to each defendant. *H.J., Inc. v. Northwestern Bell Telephone Co*., 492 U.S. 229 (1989); *Hindes v. Castle*, 937 F.2d 868, 872 (3d Cir. 1991).

Nor have plaintiffs adequately pleaded a violation of § 1962(d) because: (1) they fail to allege that the acts that caused their purported injury violated RICO, *Beck v. Prupis*, 529 U.S. 494 (2000); (2) they fail to establish a violation of either §§ 1962(a), (b) or (c), *Lightning Lube, Inc. v. Witco*

*Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993); and (3) they fail to allege the prerequisites of a § 1962(d) claim in more than a conclusory manner. *A-Valey Engineers, Inc. v. Board of Chosen Freeholders of the County of Camden*, 106 F. Supp. 2d 711, 717 (D.N.J. 2000).

Finally, plaintiffs' vague claims of fraudulent activities fall far short of the specificity required by Fed. R. Civ. P. 9(b) and thus cannot be considered as predicate acts for purposes of plaintiffs' RICO claim. *Rose v. Bartle*, 871 F.2d 331, 356 n.33 (3d Cir. 1989).

IV.     **Plaintiffs' failure to plead the elements of their state law claims requires dismissal**. Under Delaware conflicts of law analysis, Russian law applies to plaintiffs' state law claims. Thus, as demonstrated in defendants' motions to dismiss on *forum non conveniens* and comity grounds, this Court should leave those issues to be decided by Russian courts. Even if Delaware law applies, plaintiffs' state law claims are both time-barred because they were brought after the three year time period (10 Del. C. § 8106; *Isaacson, Stolper & Co. v. Artisan's Sav. Bank*, 330 A.2d 130 (1974)), and substantively deficient because they fail to properly plead that the acts at issue were done without lawful justification. *Baram v. Farugia*, 606 F.2d 42, 43-44 (3d Cir. 1979).

## STATEMENT OF FACTS

The relevant facts are set forth in Judge Koeltl's decision in the *Base Metal Trading* action. As discussed in defendants' motion to dismiss on the basis of direct estoppel and in the accompanying declaration of Lisa C. Cohen, dated March 18, 2005, plaintiffs' complaint is nearly identical to the relevant portion of plaintiffs' pleadings in the *Base Metal Trading* action. In short, the complaint alleges a conspiracy to take over Kachkanarsky GOK ("GOK"), Russia's largest vanadium ore mining factory, by either appropriating or diluting plaintiffs' GOK shares. (Compl. ¶¶ 1-14.)

Plaintiffs' allegations with respect to GOK begin in 1999, when Messrs. Chernoi, Deripaska, Makhmudov, Nekrich and Kislin – defined as the "Conspirators" – purportedly met with plaintiffs' representative, Jalol Khaidarov, in Paris and in Moscow, in order to threaten GOK shareholders to cede control. (Compl. ¶¶ 5, 50, 54-57.) According to the complaint, in response to the purported threat, the controlling GOK shareholders – presumably the plaintiffs, although the complaint is not

clear – agreed to sell 20% of their shares to the alleged Conspirators, who made a $5 million down payment. But, several months later, the GOK controlling shareholders cancelled the sale and returned the money, allegedly believing that it would be impossible to satisfy the demands of defendants Chernoi and Makmudov. (Compl. ¶¶ 52-53.)

Plaintiffs next plead that the alleged Conspirators bribed the local Governor, Eduard Roussel, to aid in their scheme. (Compl. ¶¶ 58-62.) Plaintiffs claim that defendant Pan-American Corp. in 1999 (even though they also plead that Pan-American was defunct as of 1998 (Compl. ¶ 25)) wired payments through unnamed banks in the United States to Russian-based Moscovsky Delovoy Mir Bank ("MDM Bank") for Governor Roussel, including a sum for use in his election campaign. (Compl. *¶¶ 58-62.*)

The purported Conspirators allegedly took over GOK's Russian plant by armed force on January 28, 2000. Allegedly by bribing and threatening four members of GOK's Board of Directors, the purported Conspirators replaced Khaidarov with Andrey Kozitsin, an agent of the alleged Conspirators, as GOK's general manager. All of this purported conduct took place in Russia, including the bribes of "expensive automobiles and apartments in Moscow." (Compl. ¶¶ 63-67.)

Plaintiffs next contend that the alleged Conspirators arranged for GOK to incur massive false debts with Russian companies and placed it in a sham bankruptcy. (Compl. ¶¶ 75-87.) On about March 30, 2000, the Sverdlovsk Arbitrazh Court accepted the bankruptcy petition and appointed Oleg Kozyrev, another purported agent of the Conspirators, as GOK's provisional manager. (Compl. ¶ 83.) Kozyrev was nominated as GOK's external manager at the first creditors meeting, an appointment that the Russian court approved after a hearing on August 22, 2000.

The purported Conspirators next allegedly arranged for plaintiffs to be removed from the registry of GOK shareholders and for their shares to be transferred secretly to "Delaware shell companies New Start and Venitom and other companies controlled by the Conspirators." (Compl. ¶ 88.) Each plaintiff's losses allegedly occurred as follows:

**Davis:** All of Davis's GOK shares were allegedly transferred to New Start on October 18, 2000. Further, plaintiffs claim that, to "cloak" the transfer with the appearance of legitimacy, the purported Conspirators arranged for a prior agent of Davis, Mr. Ashenbrenner, to submit a power of attorney authorizing the transfer and to make false wire transfers. (Compl. ¶¶ 89-94.)

**Omni:** Omni, which had acquired more than 34 million shares of GOK as a result of a judicial sale in 1998, lost 10,583,063 of those shares as a result of a court order by the Chelyabinsk Arbitrazh Court dated August 1, 2000 to set aside the judicial sale. Plaintiffs claim that these shares were ordered to be re-registered in the name of NPRO Urals, a Russian company allegedly controlled by the purported Conspirators. (Compl. ¶¶ 95-103.)

**Foston:** Foston lost 37,715,081 of its GOK shares also as a result of a court order. That court order, from a Moscow court and dated September 29, 2000, was issued in a lawsuit that was, according to plaintiffs, commenced in 2000 by three companies that had earlier sold their GOK shares to Foston. The transfer of shares back to those companies was effectuated on October 18, 2000. (Compl. ¶¶ 104-08.)

**Holdex:** Holdex lost 2,307,984 of its GOK shares also as a result of a court order, this time from the Kalmykia Arbitrazh Court. In 2000, GOK had sued Polyprom, the company that sold its GOK shares to Holdex. On November 22, 2000, the Kalmykia Arbitrazh Court ruled in GOK's favor, ordering that the shares be registered to "another Russian company." Plaintiffs claim that neither Polyprom nor Holdex were notified of the proceedings..[2] Plaintiffs allege upon information and belief that these shares were "ultimately" transferred to Venitom and other companies controlled by the purported Conspirators. (Compl. ¶¶ 109-14.)

In the only substantive paragraph discussing Ural-Gorno or Evraz, the plaintiffs claim that "[u]ltimately, the GOK shares illegally taken from Plaintiffs were 'sold' to [Ural-Gorno] which then 'sold' the shares to [Evraz] in 2004." (Compl. ¶ 131.)

Finally, plaintiffs plead that the alleged Conspirators used "legal means" in order to "eliminate minority shareholders" (Compl. ¶ 134) by arranging for GOK to issue new shares that were purchased by the Conspirators allegedly with profits obtained from their control of GOK.[3] According to plaintiffs, the purpose of the issuance was to dilute the remaining shares held by Foston, Omni, and Holdex. (Compl. ¶¶ 127-30.) Plaintiffs also allege that Omni and Holdex (seemingly in

---

[2]     Plaintiffs fail to tell this Court that Holdex has argued this lack of notice issue to numerous Russian courts, none of which have held that Holdex lacked adequate notice. Defendants ask this Court to take judicial notice of these precedents, which are referenced in the opening brief supporting their motion to dismiss on the basis of comity.

[3]     The complaint alleges "upon information and belief" that such funds were wired from unnamed American banks, either "directly or indirectly" to either GOK or MDM.

2004, although the complaint is unclear) sold a block of about 52 million GOK shares for $27.7 million – which, through legal means, "end[ed] up in the hands of the Conspirators."

**ARGUMENT**

I.    **PLAINTIFFS HAVE NOT AND CANNOT ESTABLISH THE COURT'S JURISDICTION OVER THE SUBJECT MATTER OF THEIR RUSSIAN-BASED ALLEGATIONS**

Plaintiffs bear the affirmative burden of demonstrating the existence of subject matter jurisdiction. "Once jurisdiction is challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Dow Chemical Co. v. Exxon Corp*., 30 F. Supp. 2d 673, 689 (D. Del. 1998). Here, plaintiffs cannot establish subject matter jurisdiction based upon RICO because all of the material conduct complained of, and all of the direct effects of the alleged conduct, occurred in Russia. Indeed, the Southern District of New York decided on the very same facts alleged here that all of the activities complained about "arise from the conduct of business in Russia." *Base Metal Trading*, 253 F. Supp. 2d at 696.

The Supreme Court has made clear that, absent specific congressional authorization, statutory remedies should not be applied outside the United States. *EEOC v. Arabian Am. Oil Co*., 499 U.S. 244, 248 (1991) ("*Aramco*") ("[L]egislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States") (internal citation omitted). Indeed, while RICO is an expansive statute, "[c]ourts have concluded that this broad construction does not include international schemes largely unrelated to the United States." *Sinaltrainal v. The Coca-Cola Co*., 256 F. Supp. 2d 1345, 1359 (S.D. Fla. 2003) (dismissing for lack of subject matter jurisdiction). Not surprisingly, the prevailing law in this Circuit and others is that civil RICO can be applied extraterritorially only under the limited circumstances that satisfy either the "conduct" or the "effects" test of subject matter jurisdiction. *Concern Sojuzvneshtrans v. Buyanovski*, 80 F. Supp. 2d 273 (D.N.J. 1999) (following Second Circuit and Ninth Circuit case law on this issue). *See North South Finance Corporation v. Al-Turki*, 100 F.3d 1046 (2d Cir. 1996); *Poulos v. Caesars World, Inc*., 379 F.3d 654, 663 (2d Cir. 2004); *Doe v. Unocal Corp.,* 395 F.3d. 932, 961 (9th Cir. 2002) ("for

RICO to apply extraterritorially, the claim must meet either the 'conduct' or the 'effect' test that courts have developed to determine jurisdiction in securities fraud cases").  Under these tests, RICO can be applied extraterritorially where there is either conduct in the United States that "directly caused" the loss at issue or conduct outside the United States intended to have and in fact having an effect in the United States.  *North South Finance Corp.*, 100 F.3d at 1051-52.  *See also OSRecovery, Inc. v. One Group Int'l, Inc*., 354 F. Supp. 2d 357, 367 (S.D.N.Y. Jan. 21, 2005) (dismissing RICO claims against foreign parties where conduct both occurred abroad and caused injury outside the United States); *Sinaltrainal*, 256 F. Supp. 2d at 1359-60 (same).

Plaintiffs have failed to allege a sufficient United States nexus to the purported predicate acts.  As various courts have recognized, RICO cannot be extended cavalierly to acts on foreign soil that might, if they had occurred here, be considered criminal, for that "would give RICO a nearly boundless extraterritorial scope and turn RICO into a vehicle for adventurous civil and criminal litigators with an itch to see the world."  *Peters v. Welsh Development Agency*, 1991 WL 172950, at *7  (N.D. Ill. Aug. 29, 1991) (holding that acts occurring abroad "are not racketeering activities within the meaning of the RICO statute and are unavailable as a basis upon which to state a RICO claim"); *see also In re Bank of Credit & Commerce Int'l Depositors Litig*., 1992 WL 696398, at *12 (C.D. Cal. April 30, 1992) (alleged bribery of Peruvian bankers could not be predicate act of racketeering because it was not indictable or punishable under United States law).

As discussed below, plaintiffs meet neither the conduct nor the effect test.

**A.  There Is No Subject Matter Jurisdiction For The RICO Claims Under The Conduct Test**

Under the "conduct" test, there can be no subject matter jurisdiction if a plaintiff does not fairly allege an injury directly caused by defendant's U.S.-based RICO violations.  As one court within this Circuit held,

> Under the conduct test, the court possesses subject-matter jurisdiction 'where conduct **material to the completion of the fraud** occurred in the United States."  *Psimenos v. E.F. Hutton & Co., Inc*., 722 F.2d 1041, 1046 (2d Cir. 1983).  "Mere preparatory activities

> and conduct far removed from the consummation of the fraud, will
> not suffice to establish jurisdiction.  **Only where conduct 'within
> the United States directly caused' the loss** will a district court have
> jurisdiction."  *Id.* at 1046 (quotation omitted, emphasis added).

*Concern*, 80 F. Supp. 2d at 278.  *See also In re South African Apartheid Litig.*, 346 F. Supp. 2d 538,

556 (S.D.N.Y. 2004) ("[c]onduct test is satisfied where conduct material to the activities occurred in

the United States and directly caused the loss suffered by plaintiffs").  Plaintiffs have failed to allege

any conduct by defendants in the United States that directly caused plaintiffs' purported loss.

Plaintiffs pretend that Delaware was "the forum of choice" for defendants' predicate acts

(Compl. ¶ 135), but ***not one*** of the alleged acts concerning defendants' takeover of GOK occurred

within the United States.  Rather, plaintiffs allege that:

- in mid-1999, threats were made in *France* and in *Russia* warning plaintiffs, through their agent, Jalol Khaidarov, to cede control of GOK (Compl. ¶¶ 5, 50, 54-57);

- in 2000, defendants, acting *in Russia,* bribed Eduard Roussel, the Governor of the Sverdlovsk Oblast, where GOK was located (Compl. ¶¶ 6, 58-62);

- on about January 28, 2000, defendants physically took over the GOK facility *in Russia* by sending in armed persons (Compl. ¶¶ 6, 63);

- following the takeover, defendants both threatened and bribed GOK's directors *in Russia* by, for example, purchasing "apartments in Moscow" (Compl. ¶¶ 6, 64-68);

- once defendants allegedly controlled GOK, they entered into sham contracts with Russian companies and created sham debts *in Russia* (Compl. ¶¶ 7, 75-87);

- when GOK was placed into bankruptcy *in Russia* in March 24, 2000, defendants purportedly asserted further control over GOK (Compl. ¶¶ 8, 79-87, 115-17);

- in late 2000, defendants allegedly arranged for plaintiffs' shares in GOK to be transferred through court proceedings *in Russia* (Compl. ¶¶ 9, 88-114); and

- in 2003, defendants purportedly arranged for GOK to issue new shares *in Russia* (Compl. ¶ 13).

The complaint's allegations concerning conduct in the United States are so tangential to the

purported RICO scheme that they cannot conceivably serve as the basis for subject matter

jurisdiction.  Plaintiffs vaguely allege that, in the early 1990s, some defendants laundered funds from

acts unrelated to those in issue, and those funds were used as "seed money" for other unspecified

"illegal ventures." (Compl. ¶ 5.) Even if these allegations are true (and they are not), there is nothing to connect these acts to the alleged RICO violations involving the purported scheme to take over GOK, which plaintiffs allege began almost a decade later "[i]n mid-1999." (Compl. ¶ 5.) Likewise, plaintiffs assert that defendants "created" numerous Delaware entities for the purpose of furthering unspecified "criminal conduct" (Compl. ¶ 35), but nothing connects this activity to the alleged RICO scheme. Plaintiffs also allege that their shares were improperly transferred to Delaware entities (*e.g.*, Compl. ¶ 9), yet the actual transfer occurred in Russia, and the shares purportedly ended up with shell corporations in the United States only after the complained-of conduct. Of the several wire transfers that plaintiffs contend came from unnamed United States banks on unspecified dates for the purpose of furthering the alleged scheme, all went to Russian banks for the benefit of entities in Russia in consideration for transactions or acts that occurred in Russia.

Allegations regarding the use of wires or the creation of a corporation in the United States to further a scheme abroad cannot establish subject matter jurisdiction, as case after case has held. *See, e.g.*, *Butte Mining PLC v. Smith*, 76 F.3d 287, 291 (9th Cir. 1996) ("[t]here is no reason to extend the jurisdictional scope of RICO to make criminal the use of the mail and wire in the United States as part of an alleged fraud outside the United States"). In *Butte Mining*, the court rejected United States contacts far more extensive than those alleged here. There, unlike here, defendants specifically purchased Montana mining property from Americans, formed U.S. corporations to hold those assets, and then issued securities abroad allegedly using those mining properties as the assets underlying the stock sales. That court held that this conduct did not confer subject matter jurisdiction, finding that the securities offers occurred solely abroad and that the U.S.-based conduct was merely preparatory to that scheme. *See also Doe v. Unocal Corp.*, 110 F. Supp. 2d 1294, 1311 (C.D. Cal. 2000), *aff'd in relevant part*, 395 F.3d 932, 961-62 (9th Cir. 2002) ("transfer of significant monies" from the United States to further the international scheme, as well as communications from and meetings in the United States, were mere "preparatory activities insufficient to establish subject matter jurisdiction"); *Philan Ins. Ltd. v. Frank B. Hall & Co.*, 748 F. Supp. 190, 194 (S.D.N.Y. 1990) ("creation of a corporation .

10

. . in New York for the purpose of advancing the conspiracy" does not establish subject matter jurisdiction).

Likewise, in *Nuevo Mundo Holdings v. PriceWaterhouse Coopers LLP*, 2004 WL 2848524, at * 5 (S.D.N.Y. Dec. 9, 2004), allegations that defendants conspired with foreign officials to seize control of a foreign corporation by placing it in receivership/administration to facilitate its liquidation were insufficient to establish jurisdiction under the conduct test because all material conduct occurred abroad. *See also Roquette America, Inc. v. Alymum N.V.,* 2004 WL 1488384, at * 8 (S.D.N.Y. July 1, 2004) (dismissing RICO claim where relevant conduct occurred abroad); *Nasser v. Andersen Worldwide Societe Cooperative*, 2003 WL 22179008, at * 5 (S.D.N.Y. Sept. 23, 2003) (dismissing RICO claim where there were no particularized allegations of conduct in United States material to scheme).

Plaintiffs fail to establish subject matter jurisdiction under the "conduct" test.

### B. There Is No Subject Matter Jurisdiction For The RICO Claims Under The Effects Test

Plaintiffs' failure to satisfy the "conduct test" of RICO subject matter jurisdiction is matched by their inability to plead facts which, even if assumed to be true, demonstrate any substantial "effect" in the United Sates of defendants' allege activity in Russia. The alleged foreign activities have no substantial direct effects here and were not purported to be intended to have an effect here.

Two of the plaintiffs (Foston and Omni) are foreign companies, with no possible claim that they suffered effects here. (Compl. ¶¶ 18 & 19.) And, as the *Base Metal Trading* case has already established, the two purported U.S.-based plaintiffs (Davis and Holdex) are "mere shell companies." *Base Metal Trading*, 253 F. Supp. 2d at 695-96.[4] At best, the alleged effects of defendants' purported

---

[4]      In *Base Metal Trading*, Judge Koeltl found that plaintiffs failed to "effectively counter" defendants' proof that Davis and Holdex were shell companies. 253 F. Supp. 2d at 696. Rather, plaintiffs' response to the Court's questions about their ties to the United States was "telling for how little information it provides about the American plaintiffs." *Id.*, 253 F. Supp. 2d at 695. On appeal, plaintiffs conceded that these companies were shells whose principals all resided abroad, and they merely challenged the significance of that fact to the *forum non conveniens* dismissal. The Second Circuit rejected plaintiffs' argument.

acts were only remotely or indirectly felt in the United States. "Remote and indirect effects, as well as generalized effects in the United States, are insufficient to meet this standard." *In re South African Apartheid Litig.*, 346 F. Supp. 2d at 556 (finding that tortures, murders and crimes committed abroad had no direct or substantial effect in the United States).

Indeed, the mere fact that two plaintiffs are nominally organized under American law is insufficient to allege an effect here. Courts have specifically rejected the extraterritorial application of United States law to acts occurring overseas where the only domestic connection is that some plaintiffs are American citizens. *See, e.g., Kruman v. Christies Int'l PLC*, 129 F. Supp. 2d 620, 625-26 (S.D.N.Y. 2001), *vacated on other grounds*, 284 F.3d 384 (2d Cir. 2002) (dismissing antitrust claim under "effects" test even though some plaintiffs were American where the actual events that caused injury occurred abroad).

Because subject matter jurisdiction for plaintiffs' Russian-based RICO claims cannot be established under either the "conduct" or the "effects" test, those claims must be dismissed.

## II.    PLAINTIFFS' RICO CLAIMS ARE FATALLY DEFECTIVE

To recover under RICO, each plaintiff must allege <u>both</u> that that the claim was asserted within four years from the time that the injury was or should have been discovered <u>and</u> that the alleged RICO violations proximately caused the loss for which relief is sought. Each plaintiff's RICO claims fail to meet one or both of these standards.

The statute of limitations for a civil RICO action is four years. *See Agency Holding Corp. v. Malley-Duff & Associates, Inc.,* 483 U.S. 143, 156 (1987). As the Third Circuit has held, the statute of limitations begins to run when a plaintiff discovers or should have discovered the injury. *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 245 (3d Cir. 2001); *see also Prudential Insurance Co. v. United Gypsum Co*., 359 F.3d 226, 233 (3d Cir. 2004) (courts must determine when a plaintiff knows of his injury and the source of the injury), citing *Forbes v. Eagleson*, 228 F.3d 471, 484-85 (3d Cir. 2000). It does not matter if the injury is continuous in nature such that the plaintiff continues to suffer harm well into the statutory period if the injury itself occurred outside the limitations period. *See*

*Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 191 (1997) (plaintiffs who purchased a faulty grain silo could not collect damages for harm occurring within the statutory period because those damages flowed from a discoverable injury outside the statutory period). Nor does it matter if plaintiffs have knowingly suffered an injury but monetary damages from that injury have not yet accrued. *See Prudential*, 359 F.3d at 236-37 (rejecting argument that RICO injury did not accrue when they became aware of the danger of asbestos in their buildings, but only when they removed it, suffering monetary loss and an "actual" injury); *Mathews*, 260 F.3d at 254 (plaintiffs with RICO securities fraud claim who should have been aware of their injury as the returns on their investment fell could not wait to see how the investment developed before bringing suit).

Accordingly, RICO plaintiffs, who are charged with being "prosecutors, 'private attorneys general', dedicated to eliminating racketeering activity," *Rotella v. Wood*, 528 U.S. 549, 557 (2000), must act at the first sign of injury. *See Klehr*, 521 U.S. at 194-95 (plaintiff must act with reasonable diligence to discover his injury when faced with circumstances that suggest a problem); *Mathews*, 260 F.3d at 251-52 (plaintiffs must act with due diligence to investigate when faced with the possibility of fraud or "storm warnings").

Furthermore, under the Third Circuit's loss causation analysis, "[a] causal connection *simpliciter* between the defendants' actions and the plaintiffs' injuries is insufficient to give rise to a RICO claim; the plaintiff must show that the connection is proximate, i.e. not too remote." *Callahan v. A.E.V., Inc.*, 182 F.3d 237, 260 (3d Cir. 1999). Rather, a plaintiff must allege facts sufficient to demonstrate that the alleged RICO violations proximately caused the loss for which relief is sought. *Holmes v. Securities Investor Protection Corp*., 503 U.S. 258 (1992). *See Anderson v. Ayling*, 396 F.3d 265, 269 (3d Cir. 2005) (RICO "requires a plaintiff to show (1) that he was injured (2) by reason of a violation of § 1962") (affirming dismissal for failure to state a claim); *Arthur v. Guerdon Industries, Inc*., 827 F. Supp. 273, 280 (D. Del 1993) ("[t]o recover under 18 U.S.C. § 1962(c), the plaintiffs are required to present proof of an injury. Further, that injury must have been proximately

caused by the RICO violation of the defendants.  In other words, the injury and the violation must

have some direct relationship").

**A.    The Statute of Limitations Bars**
**Plaintiffs' Alleged Injury Based On The Alleged Illegal Scheme**

Plaintiffs filed the complaint on November 4, 2004, seeking relief for defendants' purported

conduct with respect to the alleged takeover of GOK.  Accordingly, plaintiffs' claims are timely only

if they did not know and should not have known of their injury until after November 4, 2000.

In the complaint, plaintiffs allege that they were harmed by a large, unitary scheme to seize

control of GOK through a common overarching pattern of racketeering activity.  According to

plaintiffs, that takeover scheme and pattern of racketeering activity "began no later than the early

1990's and continues through the present date."  (Compl. ¶¶ 1 & 136.)  The complaint alleges:

- in Count III that plaintiffs have been injured "[a]s a direct and proximate cause of
  Defendants' use and investment of racketeering income **in the Illegal Takeover of
  GOK** and loss of their shares;"

- in Count IV that plaintiffs have been injured "[a]s a direct and proximate result of **the
  takeover of GOK**;

- in Count V that "[t]he pattern of racketeering activity included the commission of
  two or more predicate acts of racketeering **from 1993 through the current date**, in
  violation of 18 U.S.C. § 1962(c);" and

- in Count VI that defendants conspired "**to acquire an interest in GOK and to
  operate GOK through the Illegal Takeover** and conversion of Plaintiffs' shares in
  GOK, . . . ;" "to violate 18 U.S.C. § 1962(b) **by taking over GOK** through a pattern
  of racketeering activity;" and "to violate 18 U.S.C. § 1962(c) **by operating and
  managing GOK** through a pattern of racketeering activity."

(Compl. ¶¶ 151, 156, 162, 165, 166, & 168 (emphasis added).)[5]

*All* of the acts related to the purported takeover of GOK occurred *before November 4, 2000*.

The alleged extortion occurred in April and November of 1999 and February and March of 2000.

(Compl. ¶¶ 50, 54-57 & 74.)  The alleged bribery of Governor Roussel occurred in 1999.  (Compl. ¶¶

---

[5]    That this case represents a single unified scheme or at least one part of a single unified scheme was
recognized in the *Base Metal Trading* action, which found that, in joining the scheme to seize control of GOK
with the scheme to seize an aluminum business, plaintiffs alleged "one coherent scheme."  *Base Metal Trading*,
253 F. Supp. 2d at 684.

58-62.)  The purported armed takeover of GOK occurred "on or about January 28, 2000," followed, in quick succession, by the alleged threats and bribery of the resisting directors of GOK.  (Compl. ¶¶ 63-68.)  The "sham transactions" were purportedly entered into by Kozitsin, GOK's new general director, between the end of January and mid-February of 2000.  (Compl. ¶¶ 75-87.)  And GOK was placed into the supposedly fraudulent bankruptcy on March 24, 2000.  (Compl. ¶¶ 79-87, 115-17.)

Nor is there any doubt that plaintiffs knew before November 4, 2000 of their alleged injury resulting from the purported takeover of GOK in early 2000.  Plaintiffs admit that they knew of defendants' purported extortion to gain control of GOK in 1999:  plaintiffs, as controlling shareholders, contend that they had preliminarily agreed to sell 20% of their shares to the defendants but then changed their mind, deciding "it was impossible to cooperate or satisfy Chernoi and Makmudov, short of simply giving up their interests for far less than their worth."  (Compl. ¶ 53.) Plaintiffs also knew in 1999 that Makmudov had allegedly demanded that they transfer 51% of GOK's shares to Chernoi without payment.  (Compl. ¶¶ 54-57.)  Plaintiffs also knew of the alleged bribery of Governor Roussel:  as they claim, the "illegal payment" was "widely reported in the Russian press."  (Compl. ¶ 61.)  And, as plaintiffs admit, the purported armed takeover of GOK in January of 2000 "was widely covered by leading Russian TV and media."  (Compl. ¶ 63.)

Because plaintiffs' purported injuries from the purported "Illegal Takeover of GOK" were known to plaintiffs more than four years ago, their claims are time-barred.

### B.     Considered Individually, Each Plaintiff's RICO Claims Are Barred By The Statute Of Limitations And By Lack Of Direct Causation

Even if this Court does not, for statute of limitations purposes, consider the plaintiffs as one and the same under their own allegations of a unitary scheme and instead considers the first actual monetary loss for each plaintiff separately – that is, the transfer of shares from each – the plaintiffs' claims are still fatally flawed, both because they are individually time-barred and because plaintiffs have failed to show that their losses were proximately caused by any defendant's RICO violations.

1.    **Davis And Foston's Claims are Time-Barred**

Plaintiffs admit that **Davis** lost all of its GOK shares "[o]n or about October 18, 2000," when VRK Company, the registration company for GOK shares, registered a transfer of Davis's shares. (Compl. ¶ 90.)  Plaintiffs likewise concede that **Foston** learned of the transfer of 37,715,081 of its GOK shares "in October 2000."  (Compl. ¶¶ 106-07.)  Davis's and Foston's claims are thus clearly time-barred.

2.    **Omni And Holdex's Claims Are Time-Barred**

Plaintiffs allege that they were unaware of the August 1, 2000 order from a Moscow court divesting **Omni** of 10,583,063 of its GOK shares until December 2000 (Compl. ¶¶ 96, 98, 99) and of the November 22, 2000 order from the Kalmykia Arbitrazh Court divesting **Holdex** of 2,307,984 of its GOK shares until sometime in January 2001 (Compl. ¶¶ 98, 110, 112).[6]  Certainly, Omni should have been aware of its losses.

As a major stockholder, together with the other shareholders, owning 72% of the GOK stock, Omni certainly was aware of the alleged attempt to extort Khaidarov to persuade the shareholders to sell their shares since indeed they agreed in 1999 to sell 20% of their stock to the Conspirators.  It certainly was aware of the subsequent demand of Chernoi and Makmudov since this caused the shareholders to rescind their transfer.  It certainly was aware of the alleged armed takeover of GOK on January 28, 2000 since, according to the complaint, the seizure was widely reported in the media.  It certainly was aware of the removal of Khaidarov since, according to the complaint, on March 4, 2000 the GOK shareholders met to overturn that removal.

In addition, Omni (and Holdex's) agent, Joseph Traum, was certainly aware or should have been aware of the purported injury before the November 4, 2000 cutoff date for statute of limitation purposes.  According to the complaint, Traum, who plaintiffs state was Davis's managing director

---

[6]    As established in defendants' motion to dismiss based on comity, both Omni and Holdex have repeatedly litigated their claim of lack of notice in a number of Russian courts in challenging the transfer.  Although some of the courts have permitted hearings on this issue, every court has rejected Omni's claim that it had not received notice.

and was "authorized to represent" Holdex and Omni, was extorted in January 2000. (Compl. ¶¶ 121-126.)    As the managing director of Davis, Traum was obviously personally aware that Davis lost all of its shares in October 2000.    Accordingly, since their authorized representative knew, as a matter of law Omni and Holdex also knew of defendants' alleged designs on plaintiffs' stock to solidify their control over GOK.    *See, e.g., Apollo Fuel Oil v. United States*, 195 F.3d 74, 76 (3d Cir. 1999); *National Railroad Passenger Corp. v. Notter*, 677 F. Supp. 1, 6-7 (D.D.C. 1987) (notice to agent is notice to principal for limitations purposes).

### 3. Omni's And Holdex's Losses Were Not Proximately Caused By RICO Acts

Even if the claims of Omni and Holdex were not time-barred, they are barred (as are those of Davis and Foston) because plaintiffs' losses are not proximately linked to the alleged RICO acts. Indeed, plaintiffs specifically allege that the shares of Omni, Holdex, and Foston were transferred as a result of court decisions.  (*See, e.g.,* Compl. ¶¶ 96-97.)  According to plaintiffs, in August of 2000 the Chelyabinsk Arbitrazh Court declared invalid the judicial sale where Omni had acquired its GOK shares.  The appellate division "likewise ordered" the re-registrations of the shares on October 16, 2000, and the Federal Court for the Ural District affirmed that order on January 4, 2001.  "As a result," the plaintiffs continue, "Omni was divested of 10,583,063 shares . . . ."  (Compl. ¶¶ 95-97.) For Foston, a "Moscow" court "ordered the transfer of 37,715,081 of Foston's GOK shares." (Compl. ¶¶ 105-06.)  And Holdex's shares were transferred as a result of an order from the Kalmykia Arbitrazh Court dated November 22, 2000, against Polyprom, the company that sold its GOK shares to Holdex.  "As the result, Holdex was divested of 2,307,984 shares . . . ."  (Compl. ¶ 110.)

None of the RICO predicate acts alleged by plaintiffs proximately caused those purported harms.  There is no specific allegation that all, or any, of these five court decisions were caused by RICO acts.  Even the most charitable reading of the complaint fails to identify a RICO predicate act associated with these purportedly improper proceedings.

Moreover, even assuming *arguendo* that there was bribery of a Russian governmental or judicial official that may have been improper under Russian law (and plaintiffs make no such allegation), the fact that something is improper or wrongful does not make it a RICO predicate act satisfying proximate causation requirements. *Casper v. Paine Webber Group, Inc.*, 787 F. Supp. 1480, 1498 (D.N.J. 1992) (dismissing RICO claim where wrongful act causing injury was not a RICO predicate); *see also Diamond v. Reynolds*, 1986 WL 15374, at * 3 (D. Del. Jan. 13, 1986). The crime of bribery under 18 U.S.C. § 201 only prohibits payments to a "public official" that is defined in § 201(a)(1) as including a wide variety of employees of the United States government, not employees of foreign governments. *See In re Bank of Credit & Commerce Int'l Depositors Litig.*, 1992 WL 696398 at n. 32 ("bribery under 18 U.S.C. § 201 only applies to public officials and cannot extend to payments to Peruvian bankers to obtain deposits or London based BCCI employees"). And 11 Del. C. § 1201 requires that the bribe recipient be an officer or employee of the State or a political division thereof. *See also United States v. Giffen*, 326 F. Supp. 2d 497, 506 (S.D.N.Y. 2004) (mail and wire fraud statutes cannot be extended to cover bribery of foreign official).[7]

Similar attempts to piggyback purportedly wrongful conduct not violative of RICO onto a RICO scheme to satisfy the loss causation requirement have been repeatedly rejected. For example, in *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992), the plaintiff, who had been appointed to liquidate the business of two securities dealers in order to pay the claims of those firms' customers, brought a RICO action alleging that defendants had engaged in a fraudulent scheme that led to the firms' demise. The Supreme Court rejected this effort, holding that the losses were at best only indirectly caused by the acts at issue. "Allowing suits by those injured only indirectly would open the door to 'massive and complex damages litigation[, which would] not only burde[n] the courts, but [would] also undermin[e] the effectiveness of treble-damages suits." *Holmes*, 503 U.S. at 274, citing *Associated General Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 545 (1983).

---

[7]    Nor is there any basis in law for finding a violation of the Travel Act where there is no travel alleged to or from the United States.

*See also Steamfitters Local Union No. 420 Welfare Fund v. Phillip Morris, Inc*., 171 F.3d 912, 934 (3d Cir. 1999) (even where there was "little doubt" that defendants had caused smokers to contract diseases for which plaintiffs would have to bear some of the costs, thus suffering some injury, "the causal link between defendants' actions and the negative effects that eventually result is not proximate enough to meet the prudential requirements for . . . RICO standing"); *Alleghany General Hospital v. Phillip Morris, Inc*., 228 F.3d 429, 443 (3d Cir. 2000) (same).

Under these circumstances loss causation cannot be stated. *Anderson v. Ayling*, 396 F.3d 265, 270 (3d Cir. 2005) (where "the plaintiff described a complex pattern of racketeering, but alleged only one act that directly harmed him," no RICO claim is stated where that one act is not a RICO violation); *Callahan v. A.E.V., Inc*., 182 F.3d 237, 264 (3d Cir. 1999) (rejecting a RICO claim because injury was not proximate to purported conduct where small beer distributors claimed that they were unable to compete after large beer distributors fraudulently obtained licenses and obtained volume discounts on purchases). *See also Arthur v. Guerdon Industries, Inc*., 827 F. Supp. 273, 280 (D. Del. 1993).

Nor is it of any moment that plaintiffs also contend that the voting power of Foston, Omni and Holdex based on their remaining shares in GOK after the purported transfers was diluted when defendants issued new shares of GOK in 2003. (Compl. ¶¶ 127-134.) This purported dilution does not violate any RICO provision, and it cannot extend the limitations period. Where, as here, a plaintiff is aware of his injury, courts do not permit him to wait until monetary damages accrue or aggregate before suing. *See Prudential*, 359 F.3d at 236 (finding action time-barred where plaintiffs claimed they did not suffer actual damages until they removed asbestos in their buildings, even though they were aware of the danger of asbestos more than four years before); *Mathews*, 260 F.3d at 254 (once plaintiffs should have known that they suffered an injury, they were not entitled to "wait and see how things [the return on their investment] developed"). Such inaction would be "[a]ntithetical to the 'basic policies of all limitations provisions: repose, elimination of stale claims,

and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities.'"

*Prudential*, 359 F.3d at 236, citing *Rotella*, 528 U.S. at 550.

### III.   PLAINTIFFS' FAILURE TO ALLEGE THE ELEMENTS OF A CLAIM UNDER §§ 1962(a), (b), (c) or (d) REQUIRES DISMISSAL

Even if plaintiffs can overcome the defects in their complaint with respect to subject matter jurisdiction, loss causation, and the statute of limitations, their complaint must still be dismissed due to plaintiffs' failure to plead the necessary elements for each of the RICO counts.

### A.   Plaintiffs Fail To Establish A Claim Under § 1962(a)

Plaintiffs' Count III purports to state a claim under 18 U.S.C. § 1962(a).[8]   Section 1962(a) prohibits "any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . , to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise . . . ."  As this Court has stated,

> Under § 1962(a), in order to withstand a motion to dismiss, a plaintiff must allege (1) that the defendant has received money from a pattern of racketeering activity; (2) that the defendant invested money in an enterprise; and (3) that the enterprise affected interstate commerce.  Furthermore, the Third Circuit has held that in pleading a § 1962(a) claim, the plaintiff must allege an injury resulting from the use or investment of racketeering income that is distinct from the injury caused by the underlying predicate acts themselves. The Third Circuit also has stated that "§ 1962(a) requires the plaintiff to demonstrate that the use or investment of racketeering income was a 'substantial factor' in causing the injury."

*Dow Chemical Co. v. Exxon Corp.*, 30 F. Supp. 2d 673, 697 (D. Del. 1998) (internal citations omitted) (dismissing claim where alleged harm was caused by pattern of racketeering, not by investment of income).

Besides failing to establish subject matter jurisdiction pursuant to this section, the § 1962(a) claim is defective for several other reasons.  It fails to sufficiently allege the receipt of money from a pattern of racketeering activity.  It fails to allege that plaintiffs' purported injury resulted directly

---

[8]    Evraz, Ural-Gorno, and MDM Bank are not named as defendants in Count III.

from the investment of that income, rather than from the alleged predicate acts themselves. And, finally, it fails to establish a § 1962(a) claim separately for each of the defendants.

### 1. Plaintiffs' Failure To Allege The Receipt Of Money From A Pattern Of Racketeering Activity Requires Dismissal

Plaintiffs failed to allege facts to demonstrate that any defendant derived income from a pattern of racketeering acts. Plaintiffs allege merely that some defendants received income from a variety of acts in the early 1990s, including taking advantage of weaknesses in the Russian central banking system. (Compl. ¶¶ 3, 45-48.) Plaintiffs then conclusorily allege that these funds were used as "seed money" for the takeover of GOK. (Compl. ¶¶ 4, 48.)

There are, however, no factual allegations that this initial "seed money" was itself received from a pattern of racketeering acts. As set forth below in Section III(C), establishing a pattern of racketeering acts requires the satisfaction of numerous elements, and plaintiffs make no effort to plead that these early 1990s acts involved a pattern of specific offenses that fit the RICO definition of racketeering acts. This failure requires dismissal. *Garbade v. Great Divide Mining & Milling Corp.*, 831 F.2d 212, 213 (10th Cir. 1987) (dismissing § 1962(a) claim where "[t]here were no facts to support an assertion that the funds loaned to the corporation were from a source described in § 1962(a) nor used for the prohibited purposes"); *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc.*, 848 F. Supp. 569, 582 (E.D. Pa. 1994) (1962(a) requires plaintiff to show defendants "received money from a pattern of racketeering activity"); *Bhatla v. Resort Dev. Corp.*, 720 F. Supp. 501, 505-07 (W.D. Pa. 1989) (1962(a) claim requires sufficient allegations of income derived from a pattern of racketeering acts). [9]

### 2. Plaintiffs' Failure To Allege An "Investment" Injury Requires Dismissal

Plaintiffs also fail to establish that their injury resulted directly from the investment of racketeering income. At best, plaintiffs merely allege an injury from purported predicate acts. This,

---

[9] Plaintiffs also fail to allege that these early 1990s acts involved an enterprise as defined by RICO. This failure also requires dismissal.

of course, is not enough to sustain a § 1962(a) claim.  As the Third Circuit has said, "[t]his court has held that under this section, a plaintiff must allege injury resulting from the investment of racketeering income (investment injury) as distinct from injury from the predicate acts themselves." *Glessner v. Kenny*, 952 F.2d 702, 708 (3d Cir. 1991).  *See also Brittingham v. Mobil Corp.*, 943 F.2d 297, 303 (3d Cir. 1991) (§ 1962(a) "requires that a plaintiff's injury be caused by the use or investment of income in the enterprise"); *Rose v. Bartle*, 871 F.2d 331, 358 (3d Cir. 1989) (dismissing § 1962(a) claim because plaintiffs did not sufficiently allege investment injury).  Central to any § 1962(a) claim is a well-pleaded allegation that the injury was **directly** caused by the investment of income derived from racketeering.  *Lightning Lube, Inc., v. Witco Corp.*, 4 F.3d 1153, 1188 (3d Cir. 1993) (it is not enough to allege that a person has received investment income from racketeering acts; dismissing for failure to allege an investment injury).

Plaintiffs do not allege that they have been harmed by the investment of racketeering funds.  Instead, they allege that in the early 1990s defendants "took advantage of weaknesses in the Russian central banking system" (Compl. ¶ 3), laundered funds through Delaware entities to purchase U.S. real estate (Compl. ¶ 4), and used the funds earned through these acts as "seed money" for the acts involving the purported takeover of GOK.  *Id*.; *see also* Compl. ¶¶ 45-48.

Plaintiffs do not even allege that the GOK takeover was accomplished with this "seed money;" instead, they allege that it was accomplished through threats of violence (Compl. ¶¶ 54-57, 63-67, 74), bribery of public officials (Compl. ¶¶ 58-62), and various economic and legal maneuvers (Compl. ¶ 75-87).  Plaintiffs also allege that defendants obtained control of GOK through the perfectly legal act of buying the shares from them.  (Compl. ¶ 133.)  None of this satisfies the applicable legal standard.

In *Standard Chlorine of Del. v. Sinibaldi*, 821 F. Supp. 232 (D. Del. 1992), the Court held that a plaintiff must allege that injury was caused by investment rather than by predicate acts and that use or investment of racketeering income was a "substantial factor" in that injury.  *Id*. at 245.  In dismissing the complaint, the *Standard Chlorine* court held that, even where investment played **some**

role in causing injuries, that did not suffice to state a claim under § 1962(a) unless it was also their **direct** cause. *Id*. at 246. Since the investment of racketeering income would not have harmed plaintiffs if defendants had not "perpetrated additional fraudulent acts," there could be no cognizable investment injury. *Id*. *See also Kehr Packages, Inc. v. Fidelcor, Inc*., 926 F.2d 1406, 1411 (3d Cir. 1991) (dismissing § 1962(a) claim for failure to "allege injury specifically from the use or investment of income in the named enterprise"); *Helman v. Murry's Steaks*, *Inc*., 742 F. Supp. 860, 882 (D. Del. 1990) (dismissing § 1962(a) claim because "Plaintiff has not alleged . . . that the injuries complained of were caused by the use or investment of the fraudulently obtained funds in the enterprise" but at best from the alleged predicate acts); *Calabrese v. CSC Holdings, Inc*., 283 F. Supp. 2d 797, 812-13 (E.D.N.Y. 2003) (dismissing § 1962(a) claim where "Plaintiffs have not made any specific allegations concerning how the racketeering income was invested and how that investment directly resulted in their injuries").[10]

    **B.**    **Plaintiffs' Failure To Allege The Elements Of A § 1962(b) Claim Requires Dismissal**

In Count IV, plaintiffs allege a violation of § 1962(b). This section renders it wrongful for "any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise . . . ." This cause of action requires a plaintiff to demonstrate at least two elements that these plaintiffs cannot satisfy as to any defendant: a pattern of racketeering activity and injury resulting directly from the alleged acquisition itself. *Helman*, 742 F. Supp. at 882 (D. Del. 1990) ("Section 1962(b) makes it unlawful for any person to acquire or maintain control of an enterprise through a pattern of racketeering activity. . . . The injury

---

[10]    Nor are plaintiffs' conclusory allegations, often made by way of impermissible group pleading (*see* Compl. ¶¶ 148-51), sufficient to rescue the § 1962(a) claims. Courts routinely reject such attempts to sidestep RICO's stringent pleading requirements. *See, e.g., Kaczmarek v. International Business Machines Corp*., 30 F. Supp. 2d 626, 628-29 (S.D.N.Y. 1998) (conclusory allegations of injury from investment not enough to survive motion to dismiss); *NRB Indus. v. R.A. Taylor & Assocs*., 1998 WL 3638, at *2 (S.D.N.Y. Jan. 7, 1998) (same); *Zaro Licensing, Inc. v. Cinmar, Inc*., 779 F. Supp. 276, 283 (S.D.N.Y. 1991) ("allegations that illicit income was used or invested in an enterprise, without explaining how such use or investment caused the injuries alleged, fail to state a claim under § 1962(a)").

complained of must stem from the acquiring or maintaining control of the enterprise, as well as from the predicate acts").

A § 1962(b) claim also requires a showing that defendants acquired or maintained an enterprise "through a pattern of racketeering activity." *Callahan v. Commonwealth Land Title Ins. Co.*, 1990 WL 168273, at * 13 (E.D. Pa. Oct. 29, 1990). Here, while plaintiffs set forth a grab bag of purported wrongful acts, they do not allege facts sufficient to establish that these alleged acts fall within RICO's definition of racketeering activity. As detailed immediately below in Section C, the plaintiffs have failed to set forth allegations that fit within the strict legal requirements imposed by RICO.

In addition, plaintiffs do not and cannot allege that certain defendants, including MDM Bank, New Start, Venitom, Pan-American, and Ural-Gorno, acquired or maintained an interest in GOK or committed any acts of racketeering, let alone the pattern of racketeering activity required under § 1962(b). For example, plaintiffs' claims against MDM Bank are based solely on allegations that MDM Bank performed its functions as a bank. (*See* Compl. ¶¶ 68, 92, 130 (money wired to or from MDM Bank); ¶76 (MDM Bank loaned money to non-party GOK and collected on the related guarantee after non-party GOK defaulted on the loan)). As a matter of law, this is insufficient to show that MDM Bank acquired or maintained a proprietary interest in or control of GOK or that it committed any act of racketeering. *See OSRecovery, Inc .v. One Groupe Int'l, Inc.*, 354 F. Supp. 2d 357, 372 (S.D.N.Y. 2005) (finding RICO plaintiffs failed to state a § 1962(b) claim against bank defendant where there was no allegation that bank acquired or maintained an interest in racketeering enterprise).

Plaintiffs' § 1962(b) claim must be dismissed.

**C.    Plaintiffs' Failure To Plead A Cognizable Claim
Under § 1962(c) Requires Dismissal**

To state a claim under 18 U.S.C. § 1962(c), plaintiffs must allege: 1) the existence of an "enterprise" affecting interstate commerce; 2) defendants (as "persons" defined in 18 U.S.C.

§ 1961(3)) are employed by or associated with the enterprise; 3) defendants participated, either directly or indirectly, in the conduct of the enterprise's affairs; 4) defendants participated through a "pattern" of racketeering activity that must include at least two racketeering acts; and 5) an injury to plaintiffs' business or property resulted by reason of the violation of Section 1962(c). *See Sedima, S.P.R.L. v. Imrex Co., Inc*., 473 U.S. 479, 496 (1985). Plaintiffs fail to meet this standard.

More specifically, plaintiffs fail to allege any facts that demonstrate any defendant participated in the operation or management of any enterprise's affairs. Further, the conduct attributed to defendants cannot form the basis for the requisite pattern of racketeering for two reasons. First, the complaint fails to plead conduct for any of the alleged enterprises that meets the continuity requirement for a pattern of racketeering. Second, much of the allegedly improper conduct set forth in the complaint either does not constitute "racketeering activity" since it occurred totally outside of the United States and could not have been prosecuted under either federal or Delaware law, or, as to offenses such as fraud and money laundering, since the conduct is not described with the particularity required by Federal Rule of Civil Procedure 9(b), as discussed below (section III(D), *supra*).

### 1.     Plaintiffs Have Failed To Allege A Proper Enterprise

A § 1962(c) violation requires a finding that the defendant "person" conducted or participated in the affairs of an "enterprise" through a pattern of racketeering activity. Under the RICO statute, an "enterprise" can be "any individual, partnership, corporation, association, or other legal entity, and any union or group or individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In their § 1962(c) claim (Count V), plaintiffs inartfully allege the existence of eight separate enterprises, with three separate groups of enterprises run by three separate groups of defendants.[11]

---

[11]     The alleged eight enterprises are: (1) New Start; (2) Venitom; (3) Pan-American; (4) the Delaware Real Estate Entities; (5) GOK; (6) MDM Bank; (7) Ural-Gorno; and (8) Evraz. Five of these – New Start, Venitom, MDM Bank, Ural-Gorno, and Evraz – are also defendants. MDM Bank is not named as defendant in this claim.

As a preliminary matter, pleading eight separate enterprises as part of one count in the complaint does not relieve plaintiffs of the obligation of proving each of the remaining elements of a § 1962(c) claim explained *supra* for <u>each</u> of the listed enterprises.  As courts in this Circuit have repeatedly stressed, at the core of any RICO claim is a well-pleaded enterprise.  A claim under § 1962(c) requires that plaintiffs 1) identify an enterprise that is an ongoing organization with a framework for making decisions, 2) plead how the alleged members of that enterprise function as a continuing unit with defined duties, and 3) define an enterprise that is separate from the pattern of racketeering activity in which it allegedly engages.  *United States v. Irizarry*, 341 F.3d 273, 286 (3d Cir. 2003);  *United States v. Riccobene*, 709 F.2d 214, 221-224 (3d Cir. 1983) (same);  *Esposito Hauling & Contracting Co. v. Bldg. & Constr. Trades Council of Del.*, 1993 WL 566442, at * 3 (D. Del. Sept. 2, 1993); *Arthur v. Guerdon Indus., Inc*., 827 F. Supp. 273, 279 (D. Del. 1993).

Plaintiffs' haphazard references in a single RICO count to eight separate enterprises without explaining how the purported members of the enterprise function is reason enough to dismiss the § 1962(c) claim. [12]

### 2.    Plaintiffs Have Failed To Establish That Defendants Participated In The Conduct Of Affairs Of Any Of The Enterprises

Liability under § 1962(c) only attaches to persons who participate in the operation or management of the RICO enterprise.  *Reves v. Ernst & Young*, 507 U.S. 170 (1993).  Section 1962(c) liability may not be imposed on one who merely "carries on" or "participates" in an enterprise, but rather, in order to be liable, "one must have some part in directing those affairs."  *Id.* at 175-79.

In applying *Reves*, the Third Circuit has held that "[t]he 'operation or management' test is designed to limit RICO liability under § 1962(c) to those situations in which the prosecutor can demonstrate 'a nexus between the person and the conduct in the affairs of an enterprise.'"  *United*

---

[12]    Nor do plaintiffs satisfy the requirement under § 1962(c) that the "person" acting through an "enterprise" be a distinct entity from the enterprise.  *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.,* 46 F.3d 258, 262 (3d Cir. 1995); *Brittingham v. Mobil Corp*., 943 F.2d 297, 300 (3d. Cir. 1991).

*States v. Parise*, 159 F.3d 790, 796 (3d Cir. 1998) ("RICO liability extends to those 'plainly integral to carrying out' the enterprise's activities"); *United States v. Antar*, 53 F.3d 568, 580 (3d Cir. 1995) ("the person being sued must exercise some control over the enterprise"); *University of Maryland at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) (finding the "operation or management test" goes to the nexus between the person and the conduct in the affairs of an enterprise). Under this test, not even action involving some degree of decision-making constitutes participation in the affairs of an enterprise. *University of Maryland*, 996 F.2d at 1538-39.

In this case, the complaint fails to describe how **any** defendant participated in the operation or management of the affairs of **any** of the various enterprises described in Count V. Instead, plaintiffs improperly conflate the acts of wrongdoing attributed to some of the individual defendants, which purport to constitute the pattern of racketeering,[13] with the actual "operation or management" of an enterprise. First, with regard to the Delaware Real Estate Entities, plaintiffs rely on conclusory boilerplate and fail to allege facts to show that any defendant "participated in the conduct of the affairs" of the alleged Delaware Real Estate Entities enterprise or even link those defendants with the Delaware Real Estate Entities enterprise in any way. Plaintiffs' allegations that various defendants "used" or "utilized" the Delaware Real Estate Entities is not enough to demonstrate that the defendants **conducted** the affairs of this alleged enterprise. (Compl. ¶¶ 10, 35, 35, 37.)

Plaintiffs also similarly fail to demonstrate that Chernoi, Deripaska, Kislin, Makmudov and Nekrich participated in the operation or management of the New Start, Venitom, Pan-American, MDM Bank, Ural-Gorno, or Evraz enterprises alleged in paragraphs 158 and 160 of the complaint. Plaintiffs summarily allege that each of those entities was "owned, directly or indirectly, by Chernoi, Deripaska, Makmudov and Nekrich and operated and managed by them." (Compl. ¶¶ 31, 32, 33, 34.)

---

[13]     As shown above, much of this conduct does not qualify as racketeering activity because it could not be prosecuted under federal or state law.

However, plaintiffs offer nothing more specific to demonstrate that defendants did in fact participate in the operation or management of any of those enterprises.  Merely asserting that the New Start, Venitom and Pan-American enterprises were "used for the purpose of furthering criminal conduct" (Compl. ¶ 35) or "regularly utilized…in [the Conspirators'] various illegal schemes" (Compl. ¶ 36) does nothing to demonstrate how defendants were connected in any manner whatsoever with those enterprises.  Similarly, plaintiffs have failed to  allege facts that would  demonstrate that any of the defendants participated in the operation or management of the alleged GOK enterprise that is at the center of the complaint.

### 3.    Plaintiffs Fail To Plead The Requisite Pattern Of Racketeering As To Each Defendant

In order for pleaded conduct to satisfy the "pattern of racketeering" element of a § 1962(c) claim, the alleged predicate acts must be related to each other and must establish that the actions "amount to or pose a threat of continued criminal activity."  *H.J., Inc. v. Northwestern Bell Telephone Co*., 492 U.S. 229, 239 (1989).  A RICO claim must show that the enterprise either was operated through "a series of related predicates extending over a substantial period of time" ("close-ended scheme") or that the nature of the enterprise and the alleged conduct establish a continuing threat of criminal activity ("open-ended scheme").  *See Hindes v. Castle*, 937 F.2d 868, 872 (3d Cir. 1991); *Stursberg v. Todi*, 2004 WL 2244539, at * 5 (E.D. Pa. October 1, 2004).  Thus, in order to satisfy the continuity prong, a complaint must set forth a series of related acts lasting a "substantial period of time" in a "closed-ended scheme" or a regular way of doing business in an "open-ended scheme." *See Hughes v. Consol-Pennsylvania Coal Co*., 945 F.2d 594, 610 (3d Cir. 1991) (citing *H.J. Inc*., 492 U.S. at 250), *cert. denied*, 504 U.S. 955 (1992).

**(a)   The Allegations As To New Start, Venitom,
Pan-American And Delaware Real Estate Entities
Do Not Constitute A Pattern Of Racketeering**

The claim that the individual defendants operated New Start, Venitom, Pan-American and, with the exception of Nekrich, the Delaware Real Estate enterprise through a pattern of racketeering fails the continuity test.  The only allegations in the complaint as to the Delaware Real Estate entities is that the individual defendants owned them and that, in the early 1990's, funds were wired out of Russia to bank accounts in the United States to be used for the purchase of real estate by the Delaware Real Estate entities.  (Compl. ¶¶ 36, 46-47.)  The plaintiffs further allege that the proceeds from the sale of the real estate were used as "seed money" for undefined "criminal ventures" and for the takeover of GOK, but they fail to define "seed money" or allege when any of this conduct supposedly took place.  (Compl. ¶ 48.)

These allegations do not suggest the possibility of ongoing criminal activity and must, therefore, be analyzed under the test for a close-ended scheme.  Here, given that the activities of the real estate entities started and ended more than 10 years ago and had the singular goal of purchasing property in the United States, there is no basis for this Court to find that the entities were operated through a pattern of racketeering activity since the conduct did not go on long enough and had the narrow (and legitimate) goal of purchasing real estate.  That the funds were allegedly transferred out of Russia in an improper manner and were allegedly used as "seed money" for unspecified future activity does not change the character of the core activity of the entities.  Thus, the conduct at issue did not satisfy the standards for finding a close-ended scheme.  *See Kehr*, 926 F.2d at 1412.[14]

The characterization of defendants New Start, Venitom and Pan-American as racketeering enterprises also fails.  No factual allegations are made as to Pan-American, and the only allegations as

---

[14]     Additionally, as noted above, the purported underlying predicate acts relating to the Delaware entities initiating an alleged manipulation in Russia of the Russian banking system are not predicate acts since they are not violative of U.S. or Delaware law.

29

to New Start and Venitom are that plaintiffs' GOK shares were transferred to these companies after a series of events involving the individual defendants and unnamed others. (Compl. ¶¶ 88, 90, 102, 108, 114.) Even if these events leading up to the transfer of shares were considered acts of racketeering, these activities were carried on for far less than one year, the minimum time frame in the Third Circuit for finding a close-ended scheme. *See Stursberg*, 2004 WL 2244539, at *17. As to open-ended continuity, the complaint fails to allege the sort of ongoing criminal activity by these entities that would be necessary to constitute an open-ended racketeering scheme. *See Curtin v. Tilley Fire Equip. Co.,* 1999 WL 1211502, at * 4-6 (E.D. Pa. 1999).

### (b) Plaintiffs Fail To Allege A Pattern Of Racketeering As To MDM, Ural-Gorno And Evraz

The allegations that the individual defendants operated the "MDM Bank, UGMC, and EVRAZ enterprises through a pattern of racketeering" are also spurious. Although the complaint alleges that the individual defendants own, in some undefined way, each of these entities, there are no allegations of misconduct in the operation or management of these entities. As to Evraz and Ural-Gorno, the complaint alleges only that the GOK shares allegedly transferred improperly from plaintiffs in 2000 were "'sold' to [Ural-Gorno] which then 'sold' the shares to [Evraz] in 2004." (Compl. ¶¶ 131-132.)[15] No allegation is made of a single improper act taken in the operation or management of these two entities and there is certainly no allegation that remotely shows a "continuous" pattern of conduct. Thus, any RICO claim based on the operation of Evraz and Ural-Gorno must be dismissed.

As to MDM Bank, which is not even named in the § 1962(c) Count, the complaint alleges only that MDM Bank was involved in a series of financial transactions over a short time period so

---

[15]    These allegations, concededly based only on media reports, are so vague as to be unworthy of being credited. Further, as set forth in other briefs submitted herewith, the transfer of shares the plaintiffs contend was improper in fact has been reviewed and upheld by courts in Russia.

that there is no basis for arguing that any allegations as to MDM Bank could demonstrate an open-ended scheme. *See Tabas v. Tabas*, 47 F.3d 1280 (3d Cir.), *cert. denied*, 515 U.S. 1118 (1995). The allegations also fail to establish a close-ended scheme because they at most describe a series of actions over one month with a single goal of creating a false debt, conduct that is far from the sort of repeated conduct over a substantial period of time required to satisfy the continuity test. *See H.J., Inc.*, 109 S.Ct. at 2902.

### (c)    The Allegations As To The GOK Enterprise Are Insufficient

The final enterprise pleaded in the complaint is the GOK enterprise supposedly operated by the five individual defendants as well as by defendants New Start, Venitom, Ural-Gorno and Evraz. The purported purpose of this enterprise was to obtain plaintiffs' GOK shares through a discrete series of actions allegedly beginning with a false bankruptcy in March 2000 (Compl. ¶ 79) and ending with the transfer of the GOK shares to New Start and Venitom in October and November of 2000 (Compl. ¶¶ 90, 102, 108 § 114).[16]  As the alleged activity was completed in less than one year and had a single stated goal, the misappropriation of the GOK shares, and as the complaint provides no information from which this Court could find a "threat of additional repeated criminal activity over a significant period," *Marshall-Silver Construction Co., Inc. v. Mendel*, 894 F.2d 593, 597 (3d Cir. 1990); *see also Eureka Paper Box Company v. WBMA, Inc. Voluntary Employee Benefit Trust*, 767 F. Supp. 642, 648 (M.D. Pa. 1991), the alleged GOK enterprise does not satisfy the continuity test. *See Kehr*, 926 F.2d at 1417.

---

[16]    Although, as part of the alleged effort to obtain control of GOK, various threats were allegedly made in 1999, plaintiffs admit that these threats were not effective (Compl. ¶53) and the series of acts that resulted in the transfer of the shares began with the bankruptcy filed in March 2000.  (Compl. ¶¶ 79-87.)

**4.      Plaintiffs Fail To Allege The Prerequisites Of The
§ 1962(c) Claim Against Various Individual Defendants**

In addition to the defects identified above, the § 1962(c) claim also fails as to various individual defendants.  As to New Start, Venitom, Evraz and Ural-Gorno, the complaint fails to allege any of the required elements of a § 1962(c) claim.  It does not allege that they: (a) participated in the operation or management of any enterprise at all, much less a racketeering enterprise; or (b) engaged in any predicate act; or (c) engaged in any pattern of racketeering activity.  The ***only*** act that Evraz is alleged to have done is simply to purchase GOK shares, allegedly for $500 million, in 2004.  (Compl. ¶¶ 131-132.)[17]  Likewise, Ural-Gorno, New Start and Venitom are alleged only to have received GOK shares.

**D.      Plaintiffs' Failure To Plead Their Fraud Claims
With The Requisite Particularity Mandates Dismissal**

Plaintiffs assert page after page of conclusory allegations claiming that defendants were involved in a multitude of racketeering activities, including, *inter alia*, mail and wire fraud. However, plaintiffs have failed to assert any hint of who committed these alleged acts of fraud, where they were committed or how they were committed.  Because plaintiffs' vague claims of fraudulent activities fall far short of the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure, they cannot be considered as predicate acts for purposes of plaintiffs' RICO claim.

**1.      Rule 9(b) Of The Federal Rules Of Civil Procedure
Requires That Fraud Be Pleaded With Particularity**

The Federal Rules of Civil Procedure set a high bar that plaintiffs must clear in order to plead a claim of fraud.  Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  When the predicate acts of a RICO claim sound in fraud, Rule 9(b) clearly applies.  *Rose v. Bartle*, 871 F.2d 331, 356 n.33 (3d Cir. 1989).

---

[17]      The complaint contains the conclusory (and untrue) allegation that Evraz was purportedly owned or controlled by other of the defendants at some point, but the only act that Evraz is alleged to have committed is to have purchased GOK shares for $500 million in 2004.  (Compl. ¶¶ 131-132.)

The Third Circuit has explained that "Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the Defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786, 791 (3d Cir. 1984), *cert. denied*, 469 U.S. 1211 (1985). Plaintiffs are required to allege the date, time and place of the alleged fraudulent activity, or to "use alternative means of injecting precision and some measure of substantiation" into their allegations of fraud. *Id*.

As explained in detail, *infra*, plaintiffs have failed to plead their claims for mail and wire fraud with the degree of particularity required by Fed. R. Civ. P. 9(b).

### 2. Plaintiffs' Claims Of Mail And Wire Fraud Are Insufficiently Pleaded

Where, as here, plaintiffs "rely on mail and wire fraud as a basis for a RICO violation, the allegations of fraud must comply with Fed. R. Civ. P. 9(b), which requires that allegations of fraud be pled with specificity." *Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004).

In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville*, 742 F.2d at 791

Although plaintiffs list "mail and wire fraud" as a predicate act of defendants' pattern of alleged racketeering activity (Compl. ¶¶ 2, 161), they fail to allege even a single act of mailing, let alone of mail fraud, and fail to allege any acts of wire fraud with the required specificity.

First, plaintiffs' allegations of mail fraud are limited to two fleeting and wholly conclusory references: "Defendants Chernoi, Makmudov, Nekrich and Kislin (the 'Conspirators'), as a unified criminal group, committed numerous criminal acts, including bribery, extortion and mail and wire

fraud, as part of the illegal scheme" (Compl. ¶ 2) and "[t]he pattern included predicate acts of bribery, extortion, money laundering, illegal transactions in monetary instruments, violations of the Travel Act, and mail and wire fraud" (Compl. ¶ 161). There is not a single other reference to mail fraud or to defendants' alleged use of the mail in connection with any of the allegedly illegal activities. As such, plaintiffs' claims of mail fraud should be dismissed and cannot be considered as RICO predicate acts.

Next, while plaintiffs have made some references to alleged uses of wires, they have not pled their claims with sufficient particularity to meet the requirements of Rule 9(b). For example, while plaintiffs allege that funds were wired through United States banks to be laundered (*see, e.g*., Compl. ¶¶ 3, 47), or that share purchases were paid for with money wired from these usually unspecified banks (Compl. ¶¶ 103, 108, 114), plaintiffs have failed to allege either the date, place or time of any of defendants' purported acts of wire fraud, or alternative means of injecting precision and some measure of substantiation. *Saporito v. Combustion Engineering Inc.*, 843 F.2d 666, 675 (3d Cir. 1988). Only one allegation specifies a date and no allegation specifies a time. (Compl. ¶ 92.) Most of plaintiffs' allegations include no more detail about "place" than money being wired "to an American bank," or "through banks in the United States." Indeed, no United States bank is identified by name or location.

Furthermore, it is generally held that allegations pleaded "upon information and belief" do not satisfy the particularity requirements of Fed. R. Civ. P. 9(b). 2A MOORE'S FEDERAL PRACTICE, ¶ 9.03 (2d ed. 1982). While courts have relaxed this rule if the general allegations are accompanied by a statement of the facts upon which the claims are founded, there are no such facts included in this complaint. *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974), *cert. denied*, 421

U.S. 976 (1975); *Kimmel v. Peterson*, 565 F. Supp. 476, 482 (E.D. Pa. 1983). The complaint should be stricken for failure to meet Rule 9(b)'s specificity requirement.[18]

### 3. Plaintiffs' Money Laundering Claims Are Inadequately Pleaded

Plaintiffs' money laundering claims are also subject to the requirements of Rule 9(b). *Spitzer v. Abdelhak*, 1999 WL 1204352, at * 5 (E.D. Pa. Dec. 15, 1999) (predicate act of money laundering "contain[ed] an element of fraud" and was subject to Rule 9(b)'s specificity requirement). Plaintiffs' failure to allege any specifics regarding this claim provides additional grounds for dismissal.

### E. Plaintiffs' Failure To Plead The Elements Of A § 1962(d) Claim Requires Dismissal

Plaintiffs' § 1962(d) claim fails for several reasons. First, the actual events that purportedly caused the injuries allegedly suffered by plaintiffs – the transfer and subsequent dilution of their shares – are not alleged to have violated any sections of RICO. In *Beck v. Prupis*, 529 U.S. 494 (2000), the Supreme Court recently clarified that, even if a plaintiff alleges a conspiracy in violation of RICO, where, as here, the actual act that purported to cause the harm does not violate RICO, no § 1962(d) claim exists. There, the plaintiff, a corporate CEO and President, alleged that his former employer, an insurance company, engaged in various racketeering acts, including extorting fees from contractors, diverting corporate funds, and submitting false financial statements, all of which plaintiff was allegedly unaware. Once plaintiff learned of this scheme and contacted regulators, he was terminated, purportedly based on false accusations of poor job performance. He asserted a § 1962(d) claim on the ground that his termination was an act in furtherance of a RICO conspiracy. The Supreme Court, however, held that, since his termination did not independently violate RICO, it could not be an act in furtherance of a RICO conspiracy. "[R]espondents' alleged overt act in furtherance of their conspiracy is not independently wrongful under any substantive provision of the statute. Injury caused by such an act is not, therefore, sufficient to give rise to a cause of action under

---

[18]     The allegations based on "media reports" (Compl. ¶¶ 11, 40, 44, 132) should be stricken for the same reasons.

§ 1964(c)." *Beck*, 529 U.S. at 506.

Similarly, plaintiffs here allege that they were harmed only by the purported transfer and dilution of their shares, but they nowhere allege that these acts violated any RICO provision. Consequently, under *Beck*, they fail to state a claim under § 1962(d). *See also Anderson v. Ayling*, 396 F.3d 265, 269 (3d Cir. 2005) (relying on *Beck*).

Second, where, as here, the claims under either §§ 1962(a), 1962(b) or 1962(c) are defective, the § 1962(d) claim must fail as well. "Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993); *see also Dow Chemical Corp. v. Exxon Corp.*, 30 F. Supp. 2d 673, 702 (D. Del. 1998) (dismissing § 1962(d) claim where § 1962(a), (b) and (c) claims are legally insufficient).

Third, because plaintiffs have alleged the prerequisites of a § 1962(d) claim in a bald, conclusory manner, their claim must be dismissed. "To state a claim for a RICO conspiracy under section 1962(d), a plaintiff must allege that defendants (1) agreed to commit predicate racketeering acts (2) with knowledge that the acts formed a pattern of racketeering activity in violation of § 1962(a), (b) or (c)." *A-Valey Engineers, Inc. v. Board of Chosen Freeholders of County of Camden*, 106 F. Supp. 2d 711, 717 (D.N.J. 2000); *see also Helman v. Murry's Steaks, Inc.*, 742 F. Supp. 860, 879 (D. Del. 1990). The absence of allegations setting forth **any** details of any agreement or knowledge that the acts at issue violated RICO requires dismissal. *A-Valey Engineers*, 106 F. Supp. 2d at 718 (dismissing because complaint "fail[ed] to describe the general composition of the conspiracy and each defendant's role therein" and failed to allege that defendants committed acts "with knowledge that such acts constituted a pattern of racketeering activity").

Finally, once again plaintiffs fail to allege the elements of a § 1962(d) claim against various individual defendants. For example, the plaintiffs do not allege that Evraz entered into any "agreement" to commit any predicate racketeering acts, much less that it did so with knowledge that such acts formed a pattern of racketeering activity. Likewise, the fact that MDM Bank is alleged to

have provided banking services to individuals and entities purportedly involved in a RICO conspiracy does not give rise to an inference, much less a well-pleaded fact, that MDM agreed to the commission of predicate acts or that MDM Bank knew that the predicate acts were part of racketeering activity, two necessary elements of a RICO conspiracy. Plaintiffs do not even name MDM Bank in the underlying causes of action based on 1962(a) and (c) violations, and they make no colorable effort to plead that MDM Bank (or Evraz or Ural-Gorno, for that matter) knowingly agreed to commit, or to the commission of, predicate racketeering acts which violated any part of § 1962. Nor could they.[19] Nor do plaintiffs name Evraz or Ural-Gorno in the 1962(a) claim.

## IV.    PLAINTIFFS' FAILURE TO PLEAD THE ELEMENTS OF THEIR STATE LAW CLAIMS REQUIRES DISMISSAL

Plaintiffs assert that Delaware law applies to their claim for conversion and the related equitable claim (Counts I and II). Defendants disagree: Russian law applies to these claims under Delaware's choice of law principles,[20] and, as demonstrated in defendants' *forum non conveniens* and comity briefs, this Court should leave the determination of those claims to the Russian courts. Even if

---

[19]    Courts in this Circuit have held repeatedly that merely facilitating the conduct of a RICO enterprise does not support a conspiracy claim under RICO. For example, in *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998), *abrogation on other grounds recognized by, Forbes v. Eagleson*, 228 F.3d 471 (3d Cir. 2000), certain banking defendants in a RICO action were alleged to have provided financing to a RICO enterprise. The Third Circuit characterized the banking defendants' role as, at most, aiders and abettors of the scheme rather than as participants in the scheme or members of the enterprise, or even as co-conspirators. Since there is no liability for aiding and abetting a RICO violation, the district court's dismissal of the claim was affirmed. *Id* at 657. *See also Univ. of Md*., 996 F.2d at 1539 ("[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under Rico as a result"), *Dongelewicz v. First Eastern Bank*, 80 F. Supp. 2d 339 (M.D. Pa. 1999) (granting summary judgment on RICO conspiracy claim to lender defendant), *aff'd, Dongelewicz v. PNC Bank Nat'l Ass'n*., 104 Fed. Appx. 811, 2004 WL 1661863, RICO Bus. Disp. Guide 10, 720 (3d Cir. July 23, 2004).

[20]    The applicability of Russian law is established by the "most significant relationship" test from § 145 of the Restatement (Second) of Conflict of Laws (1971). *See Travelers Indemnity Company v. Lake*, 594 A.2d 38 (Del. 1991). Pursuant to § 145, the key contacts to be considered in determining the applicable law are: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. In this case, the complaint makes clear that the relevant conduct, the locus of the parties' relationship, and the injury, if any, took place in Russia, where GOK operated, where plaintiffs made their investment in GOK and where the Russian courts directed the changes in ownership of plaintiffs' GOK shares.

those claims are governed by Delaware law, they should nonetheless be dismissed because plaintiffs have failed to meet basic pleading requirements.

First, as the Third Circuit has explained, conversion is an act of willful interference with the dominion or control over a chattel, ***done without lawful justification***, by which any person entitled to the chattel is deprived of its use and possession. *Baram v. Farugia*, 606 F.2d 42, 43-44 (3d Cir. 1979) (emphasis supplied). Plaintiffs, however, explicitly state that the Omni, Foston, and Holdex shares were transferred as a result of court orders. (Compl. ¶¶ 96, 106, 110.) Accordingly, plaintiffs have conceded that defendants did not come to possess the shares without lawful justification.[21]

Second, plaintiffs' conversion claim is time-barred under Delaware law. The applicable statute of limitations for conversion is three years pursuant to 10 Del. C. § 8106. *See also Isaacson, Stolper & Co. v. Artisan's Sav. Bank*, 330 A.2d 130 (Del. 1974). A conversion claim accrues at the time the property is transferred, not at the time of discovery. *Id.*, at 132. Thus, in this case, where the complaint alleges that all of the transfer of ownership from plaintiffs was complete by the fall of 2000, any conversion claim under Delaware law is time-barred.[22]

Plaintiffs' Count II, seeking equitable relief of disgorgement and piercing the alleged corporate veils of New Start and Venitom, must also be dismissed. These are remedies, which are dependent on plaintiffs prevailing on their conversion cause of action. If the conversion cause of action is time-barred, then that claim, too, is time-barred under Delaware law. *Adams v. Jankouskas*, 452 A.2d 148, 157 (Del. 1982); *see also EEOC v. Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 80 (3d Cir. 1984) ("[i]f a statutory limitations period that would bar legal relief has expired, then the defendant in an action for equitable relief enjoys the benefit of a presumption of inexcusable delay

---

[21]    As to the Davis shares, the complaint includes a claim involving the validity of a power of attorney, which is also an issue under Russian law that the Russian courts should adjudicate.

[22]    As discussed in Section II, *supra*, the complaint alleges that Davis's GOK shares were transferred on about October 18, 2000 (Compl. ¶ 90); Omni's shares were transferred on about November 15, 2000 (Compl. ¶ 96); Foston's shares were transferred in on about October 18, 2000 (Compl. ¶ 106-07); and Holdex's shares were transferred on about December 22, 2000 (Compl. ¶ 110).

and prejudice"). As demonstrated above, plaintiffs were aware of the facts giving rise to their disgorgement claim – that is, the alleged conversion of their shares in GOK – more than three years before bringing this action.

Moreover, as a matter of logic, if plaintiffs' other claims are dismissed, then there is no reason to pierce New Start's and Venitom's alleged corporate veils or to provide the remedy of disgorgement. Accordingly, this claim should be dismissed as well.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant their motion to dismiss the complaint against them.

Respectfully submitted,

Attorneys for Defendants Arnold Kislin:

/s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

Lisa C. Cohen
Schindler Cohen & Hochman LLP
100 Wall Street
15th Floor
New York, NY 10005
(212) 277-6300

Lawrence S. Goldman
Elizabeth Johnson
The Law Offices of Lawrence S. Goldman
500 Fifth Ave., 29th Floor
New York, NY 10110-2900
(212) 997-7499

Attorneys for Defendants New Start Group
Corp. and Venitom Group:

/s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

Richard J. Schaeffer
Peter J. Venaglia
Laura D. Sullivan
Dornbush, Schaeffer, Strongin & Weinstein, LLP
747 Third Avenue, 11th Floor
New York, NY 10017
(212) 759-3300

Attorneys for Defendant Oleg Deripaska:

 /s/ Collins J. Seitz, Jr.
Collins J. Seitz, Jr. (DSBA No. 2237)          Rodney F. Page
Kevin F. Brady (DSBA No. 2248)                 Michael G. Biggers
Connolly Bove Lodge & Hutz LLP                 Bryan Cave LLP
1007 North Orange Street                       700 13th Street, N.W.
P.O. Box 2207                                  Washington, D.C. 20005-3960
Wilmington, DE 19899                           (202) 508-6002
(302) 658-9141


Attorneys for Defendant Evraz Holding:

 /s/ William M. Lafferty
William M. Lafferty (DSBA No. 2755)            David H. Herrington
Morris, Nichols, Arsht & Tunnell               Vitali Rosenfeld
Chase Manhattan Centre, 18th Floor             Cleary Gottlieb Steen & Hamilton LLP
1201 North Market Street                       One Liberty Plaza
P.O. Box 1347                                  New York, NY 10006
Wilmington, DE 19899-1347                      (212) 225-2266
(302) 575-7341


Attorneys for Defendant MDM Bank:

 /s/ Richard I.G. Jones, Jr.
Richard I.G. Jones, Jr. (DSBA No. 3301)        Joel B. Kleinman
Ashby & Geddes                                 Steven J. Roman
222 Delaware Avenue, 17th Floor                David H. Greenberg
P.O. Box 1150                                  Dickstein Shapiro Morin & Oshinsky LLP
Wilmington, DE 19899                           2101 L Street NW
(302) 654-1888                                 Washington, DC 20037-1526
                                               (202) 785-9700


Attorneys for Defendant Ural-Gorno
Metallurgical Company:

 /s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)          William H. Devaney
Karen V. Sullivan (DSBA No. 3872)              Heard & O'Toole LLP
Oberly, Jennings & Rhodunda, P.A.              405 Lexington Ave, Floor 62
800 Delaware Avenue, Suite 901                 New York, NY 10174
PO Box 2054                                    (212) 307-5500
Wilmington, DE 19899
(302) 576-2000

Attorneys for Defendant Iskander Makmudov:

/s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)          William H. Devaney
Oberly, Jennings & Rhodunda, P.A.          Heard & O'Toole LLP
800 Delaware Avenue, Suite 901             405 Lexington Ave, Floor 62
PO Box 2054                                New York, NY 10174
Wilmington, DE 19899                       (212) 307-5500
(302) 576-2000


Attorneys for Defendant Mikhail Chernoi:

/s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)          Brian Maas
Oberly, Jennings & Rhodunda, P.A.          Cameron A. Myler
800 Delaware Avenue, Suite 901             Frankfurt Kurnit Klein & Selz PC
PO Box 2054                                488 Madison Avenue, 9th Floor
Wilmington, DE 19899                       New York, NY 10022
(302) 576-2000                             (212) 980-0120


Attorneys for Defendant Mikhail Nekrich:

/s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)          Paul R. Grand
Oberly, Jennings & Rhodunda, P.A.          Edward M. Spiro
800 Delaware Avenue, Suite 901             Morvillo, Abramowitz, Grand, Iason &
PO Box 2054                                Silberberg, P.C.
Wilmington, DE 19899                       565 Fifth Avenue
(302) 576-2000                             New York, NY  10017
                                           (212) 880-9510


Dated:  March 31, 2005