Not Reported in F.Supp.
1990 WL 168273 (E.D.Pa.)
**(Cite as: 1990 WL 168273 (E.D.Pa.))**

Page 11

And, even assuming that the alleged fee overcharging occurred, this fact without more is by no means proof certain that those practices were born of a conspiracy. Second, as to the impact of the defendants' alleged conduct on interstate commerce, real property settlements have been deemed primarily local in character. *Gaylord Shops, Inc. v. Pittsburgh Miracle Mile Town & Country Shopping Center, Inc.,* 219 F.Supp. at 403. Finally, plaintiffs' antitrust claim may encounter other obstacles particular to the title insurance industry. *See Real Estate Title and Settlement Servs. Antitrust Litig.,* 11986-1 Trade Cas. ¶ 67, 149 at 62,932-62,933 (noting difficulty of proving price-fixing among title insurance companies whose prices were set by state rate bureaus).

d. *RICO Claims*

The plaintiffs maintain that the defendants, in consort with their title clerks, overcharged the class for notary fees in violation of RICO, 18 U.S.C. §§ 1962(a), (b), (c) and (d). The defendants maintain that the RICO claims are defective in that the conduct of title clerks in overcharging notary fees does not constitute racketeering activity, impact upon interstate or foreign commerce or amount to conduct prohibited by § 1962. (*See* Memorandum of Law in Support of Joint Motion for Final Approval of Settlement at 11).

*13 (1) *Section 1962(a)*

Under § 1962(a), plaintiffs must allege: (1) that the defendant has received money from a pattern of racketeering activity; (2) invested that money in an enterprise; and (3) that the enterprise affected interstate commerce. *Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1165 (3d Cir.1989). As defined in the statute, racketeering activity consists of specific acts indictable under federal statutes and chargeable under state law [FN20] and punishable by imprisonment for more than one year. 18 U.S.C. § 1962(1)(A)(1990). The seventh count of the amended complaints, which purports to state plaintiff's RICO claims, does not allege that defendants violated any of the federal crimes specified in the statute. The alleged acts of racketeering set forth in the complaint, [FN21] do not constitute the conduct specified in the statute chargeable under state law. [FN22]

Recently, the Third Circuit has found that to maintain a § 1962(a) claim, plaintiffs must also allege an injury caused by the use or investment of income derived from a pattern of racketeering (rather than by the predicate racketeering acts or pattern). *Rose v. Bartle,* 871 F.2d 331, 357 (3d Cir.1989). Notably, the title clerks do not turn the fees collected for their notary services over to the defendants. As a result, the Court seriously doubts that the plaintiffs could show injury stemming from the use of income derived from racketeering activity or through the acquisition of an interest in a RICO enterprise that is required in order to prevail under § 1962(a).

(2) *Section 1962(b)*

The plaintiffs' claims under § 1962(b) are also problematic. Section 1962(b) provides:

It shall be unlawful for any person through a pattern of racketeering activity [FN23] or through the collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. 1962(b) (1984). This subsection makes it unlawful to acquire or maintain an enterprise in interstate commerce through a pattern of racketeering activity or unlawful collection of debt. *See Macario v. Pratt & Whitney Canada, Inc.,* No. 90-3906, slip op. at 13 (E.D.Pa. Sept. 6, 1990) (quoting *Bryant v. City of Philadelphia,* Civ. No. 89-6005, slip op. at 8 1990 WL 82099 (E.D.Pa. June 11, 1990).

First, as set forth above, it is doubtful that the defendants' conduct constitutes "racketeering activity." Second, this Court has held that the analysis of § 1962(a) presented in *Rose v. Bartle* applies with equal force to claims under § 1962(b): "any alleged injury must be caused by the acquisition or maintenance of an enterprise, not simply by the predicate racketeering acts or pattern." *Korman v. Trusthouse Forte PLC,* No. 89-8734, slip op. at 17 (E.D.Pa. June 14, 1990) [1990 WL 83353, Available on Lexis]. Third, it has not been alleged nor otherwise revealed to this Court the manner in which the mail and telephones

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1990 WL 168273 (E.D.Pa.)  
**(Cite as: 1990 WL 168273 (E.D.Pa.))**

Page 12

were used in interstate or foreign commerce to defraud members of the class. Finally, the amended complaints fail to assert collection of an unlawful debt which for purposes of RICO refers to gambling and usury. *Bryant v. City of Philadelphia,* No. 89-6005, slip op. at 10 n. 6.

**\*14** (3) *Section 1962(c)*

Defendants also contend that plaintiffs fail to allege a RICO action under § 1962(c). This section of the RICO act makes it unlawful:

for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...

18 U.S.C. § 1962(c). Thus, to prevail under § 1962(c) plaintiffs must establish that the defendant: (1) conducted (2) an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex,* 473 U.S. 479 (1985).

Racketeering activity which constitutes a predicate offense is defined by statute in terms of state and federal crimes, including, but not limited to, mail fraud, bribery, extortion and fraud in the sale of securities. 18 U.S.C. § 1962(a). As set forth above, the plaintiffs' prospects of proving that notary fee overcharges constitute racketeering activity is at best bleak.

An "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C. § 1961(4) [FN24] . The plaintiffs allege the RICO enterprise to consist of the defendants and/or the defendants and title clerks. Under the law in this Circuit, the enterprise and the person accused of violating RICO cannot be one and the same. *Rose v. Bartle,* 871 F.2d at 358. The reason for requiring distinct entities is that § 1962(c) "was intended to govern those instances in which an "innocent" or "passive" corporation is victimized by the RICO "persons" and either drained of its own money or used as a passive tool to extract money from third parties. *Petro-Tech, Inc. v. Western Co.* *of North America,* 824 F.2d 1349, 1359 (3d Cir.1987); *B.F. Hirsch v. Enright Ref. Co., Inc.,* 751 F.2d 628, 634 (3d Cir.1984).

(4) *Section 1962(d)*

The defendants have also challenged the claim asserted under § 1962(d) which makes it unlawful for any person to conspire to violate §§ 1962(a), (b) or (c). 18 U.S.C. § 1962(d) (1984). Again, because the plaintiffs RICO claims under these three subsections are dubious, the prospects of success on this claim is considered remote. Moreover, there is no allegation that the defendants conspired to commit a RICO violation. *See Seville Indus. Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d at 792 n. 8 ("mere agreement to commit the predicate acts is not sufficient to support a charge of conspiracy under § 1962(d)").

e. *RESPA Claims*

The plaintiffs seek to recover treble damages [FN25] for the defendants alleged violation of RESPA, 12 U.S.C. § 2607(b) and (c). The defendants are alleged to have violated these statutes by charging notary fees for services that not performed and that were in excess of amounts properly chargeable under state law. The defendants maintain that such conduct is not contemplated by RESPA. (*See* Memorandum of Law in Support of Joint Petition for Final Approval of Settlement at 11). Specifically, the defendants contend the § 2607 is an anti-kickback statute enacted to prohibit the splitting and kicking back of fees to persons who merely provided a referral for real estate settlement business. Because the alleged notary fee overcharges did not involve fee splitting of sharing, the defendants argue that the RESPA claim is inapplicable.

**\*15** This argument has considerable appeal and is supported by cases which have carefully reviewed the statute's text and legislative history. *See Mercado v. Calument Federal Sav. & Loan Ass'n,* 763 F.2d 269, 270-71 (7th Cir.1985); *Duggan v. Independent Mortgage Co.,* 670 F.Supp. 652, 654 (E.D.Pa.1987). Section 2607(b) prohibits the giving or accepting any "portion, split or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1990 WL 168273 (E.D.Pa.)
**(Cite as: 1990 WL 168273 (E.D.Pa.))**

Page 13

transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607 (1989). Section 2607(c) authorizes title insurance companies to pay fees to its agents for work actually performed in underwriting a title insurance policy. 12 U.S.C. § 2607(c) (1989). Implicit in § 2607(c) is a prohibition against making payment for title insurance underwriting services not actually performed. The fact that the defendants do not receive any portion of the alleged overcharges provides no comfort to the plaintiffs and raises a serious question as to whether the cited RESPA provisions are applicable.

6. *Maintaining the Class Action*

Although the class is likely to be certified, "the risk of maintaining the class through trial cannot be discounted." *In re Asbestos School Litig.,* No. 83-0268, slip op. at 26. The defendants have raised issues going to the viability of the plaintiffs' claims on more than one occasion. Moreover, while the risk of decertification may be remote, the class members would have assumed a significant risk that class-wide relief might not be available, and the defendants would have faced the prospects of incurring substantial damages. *See Sala v. National Railroad Passenger Corp.,* 721 F.Supp. 80, 84 (E.D.Pa.1989).

7. *Withstanding a Greater Judgment*

The proposed settlement seeks equitable relief as well as reimbursement for costs associated with notifying the class of the pendency of the proposal and attorney fees up to $150,000. The amended complaints, in addition to equitable relief and an unspecified amount of counsel fees, seek compensatory, treble and punitive damages. While there is no evidence that the settling defendants would be unable to satisfy a judgment against them, this settlement would serve to obviate the risk that the class members will prevail and obtain an award sufficiently sizable to impose significant financial burdens. [FN26]

8. and 9. *Reasonableness of Settlement*

"The court must review a settlement to determine whether it falls within a 'range of reasonableness,' not whether it is the most favorable possible result

of the litigation." *Fickinger v. C.I. Planning Corp.,* 646 F.Supp. 622 (E.D.Pa.1986) (citation omitted). To attempt to establish as a matter of legal certainty the value of a claim would defeat the purpose of disposing of a case by settlement rather than trial. 646 F.Supp. at 632.

In lieu of monetary damages, the settlements provide for injunctive relief. Although the potential aggregate liability facing the defendants is significant, equitable relief is more than appropriate given the risks inherent in proceeding to judgment and the minimal sum each class member stands to receive if successful. Moreover, the award of counsel fees provided for in the settlements is reasonable in that the abuses which the settlements are aimed to cure were exposed through the efforts of plaintiffs' counsel in advancing such a novel case. Given the uncertainty of the outcome of this litigation, the court finds the equitable relief and provision for counsel fees and reimbursement of notice expenditures to be reasonable.

*16 In addition to the foregoing factors, courts have also referred to the professional judgment of counsel involved in the litigation. *Sherin v. Gould,* 679 F.Supp. at 475 (noting that all counsel of record recommended approval of settlement as fair and reasonable); *Fickinger v. C.I. Planning Corp.,* 646 F.Supp. 622 at 630 (observing that agreement was negotiated by experienced counsel); *Daniel B. v. O'Bannon,* 633 F.Supp. at 926-27 (settlement negotiated by counsel experienced in class action suits); *Fisher v. Phelps Dodge Indus., Inc.,* 604 F.Supp. at 452 (settlement negotiated by experienced counsel after consideration of all relevant factors including strengths and weaknesses of the case, expertise and tenacity of counsel). Reliance upon counsel in these situations is rooted principally in the recognition that a "court should refrain from merely substituting it own judgement of the merits of a settlement for that of counsel intimately associated with the litigation and consequently far more able to weigh its relative strengths and weaknesses." *Fisher Bros. v. Phelps Dodge Indus., Inc.* 604 F.Supp. at 452 (quoting *Jamison v. Butcher & Sherrerd,* 68 F.R.D. 479, 481 (E.D.Pa.1975)); *see also Sherin v. Gould,* 679 F.Supp. at 475. There is every indication that the settlement agreement here was negotiated in good faith and at arm's length by seasoned counsel and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1990 WL 168273 (E.D.Pa.)  
**(Cite as: 1990 WL 168273 (E.D.Pa.))**

was concluded after due consideration of relevant factors including the merits of the case, costs and burden of potentially protracted litigation and the best interest of the parties. Accordingly, their approval of the settlement is highly regarded.

In one final point, the court takes notice that the proposed settlement is intended to and will benefit the class and the general public. First, members of the class who resell or purchase real property within the Commonwealth in the future will benefit by the obviation of excessive notary fee assessments by the settling defendants. Second, the settlement will serve to educate the public as to notary fees properly allowable for services performed in connection with real estate settlements generally.
In all, the settlement will increase compliance with the Pennsylvania notary law. This is good public policy and ought to be encouraged. *See Dillard v. Chilton County Bd. of Ed.,* 699 F.Supp. 870, 872 (M.D.Ala.1988), *aff'd without op.,* 868 F.2d 1274 (5th Cir.1989) (a district judge has a duty to ensure settlement is in conformity with public policy); *United States v. Hooker Chemical & Plastics Corp.,* 607 F.Supp. 1052, 1057 (W.D.N.Y.), *aff'd,* 776 F.2d 440 (2d Cir.1985) (court's function is the assure itself that settlement accords with public policy).

C. *Attorney's Fees*

Also before the Court is the Petition for Attorney's Fees and costs filed by James J. Freeman, Esq. and William C. Reil, Esq., counsel for the plaintiffs. No opposition to the petition has been filed. To the contrary, the settlement itself contains a provision for an award of such fees and costs not to exceed $150,000. Class members were provided an opportunity to submit written objections to this agreement and to be heard at the hearing on June 18, 1990. At the hearing, counsel represented to the court that this aspect of the settlement in particular was negotiated at arm's length and was considered "proper and appropriate." (Tr. at 29).

*17 Mr. Freeman and Mr. Reil have submitted affidavits stating their hourly rates as $125.15 and $83.33 respectively. The affidavits also represent that Mr. Freeman accumulated a total of 1,041.2 hours and Mr. Reil a total of 234.90 hours in working on this case. Mr. Freeman has incurred expenses in excess of $6,269.82. A multiplier has not been requested. Records have been submitted detailing the time and nature of the work performed and expenditures. A review of the time sheets, reveals that counsels' time was devoted to investigating the claim; researching the law applicable to the merits of the claim and class certification; drafting the initial and amended complaints; consulting with clients; corresponding with opposing counsel and the court; drafting comprehensive production request and interrogatories; drafting pre-trial memorandum, pre-trial orders no. 1 and no. 2., motion for preservation of records, motion for consolidation and joint motion for preliminary approval of settlement; attending pre-trial conference and settlement hearing; reviewing defendants' motions to dismiss and conducting the legal research and drafting responses; and conducting research for and drafting proposed settlement and reviewing it with opposing counsel.

This is a novel class action lawsuit asserting a violation of a statute that is no doubt rarely invoked and for which there is a dearth of case law. The parties have not identified nor has this Court been able to locate any published decision dealing with the fee scheduling provisions of the Pennsylvania notary law in general and violations thereof in particular. There are a panoply of legal issues presenting barriers to the range of relief sought and thus increasing the risk of proving liability and damages. Moreover, this is also a case that, given the small dollar amounts involved per transaction, would not likely have been brought without the efforts [FN27] of counsel whose capacity in this matter is akin to that of a private attorney general. The potential costs of suit compared with the actual out-of-pocket loss is a powerful disincentive to pursue an action individually. By commencing this action, engaging discovery and negotiating in good faith with opposing counsel, the plaintiffs' lawyers have obtained a settlement which, as set forth above, will benefit the plaintiffs and members of the class who may in the future require the services of a title clerk/notary publics to effect real estate settlements in the state of Pennsylvania.

After consideration of the foregoing, the Court finds that the allowance of counsel fees and costs to be fair and reasonable compensation for the value

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1990 WL 168273 (E.D.Pa.)  
**(Cite as: 1990 WL 168273 (E.D.Pa.))**

Page 15

of the services performed. *See In re Fine Antitrust Litig.*, 751 F.2d 562 (3d Cir.1984); *Lindy Bros. Bldrs. Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir.1976) (*Lindy I* ); *Lindy Bros. Bldrs. Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir.1973) (*Lindy II* ); *Hoefer & Arnett, Inc. v. Lehigh Press, Inc.* 695 F.Supp. 332, 835 (E.D.Pa.1988).

### IV. *Conclusion*

*18 In sum, the Court finds that the class is properly certifiable under Fed.R.Civ.P. 23(b)(1)(A) and 23(b)(2). The Court also finds that the settlements provide the class with benefits which are in the interest of the class as a whole when weighed against the costs, burden and uncertainty of obtaining a favorable judgment. These factors combined with the opinions of experienced counsel accepting the settlement and the complete lack of opposition from members of the class after being provided with due notice and an opportunity to be heard, supports approval of the settlement as fair, adequate and reasonable. Lastly, the Court concludes that the petition for allowance of fees and costs to the plaintiffs' counsel is fair and reasonable.

The Court's Final Judgment follows.

### FINAL JUDGMENT

AND NOW, this 29th day of October, 1990, upon consideration of the parties' Joint Petition to Make Final the Preliminary Approval of Settlement (the "Joint Petition"); Petition of Plaintiffs To Make Final the Preliminary Approval of the Settlement between Defendants Conestoga Title Insurance Co. and Abstracting Company of Delaware County (the "Conestoga and Abstract Petition"); and the Petition for Attorney's Fees and costs submitted by plaintiffs' counsel, IT IS HEREBY ORDERED that the Joint Petition, the Conestoga and Abstract Petition (collectively the "Settlement Petitions") and Petition for Attorney's fees and Costs are GRANTED as follows:

(1) The notice directed to the class by the Orders of this Court dated February 22 and March 29, 1990 satisfies Fed.R.Civ.P. 23(e). The notice advised the class of the pendency of the class action and the proposed settlement and afforded class members with an opportunity to challenge the propriety of class certification and to contest the settlement proposal.

(2) The class, as defined in the Stipulations of Settlement (the "Settlements") is hereby certified under Fed.R.Civ.P. 23(b)(1)(A) and 23(b)(2).

(3) Plaintiffs, Daniel H. Callahan, Holly M. Dickerson and Dorothy Judge, are certified as the representatives of the following class:

All persons who between February 11, 1984 and November 30, 1988, have been buyers of real estate in the Commonwealth of Pennsylvania and who have paid for the services of the corporations and companies named in this suit in connection with the closings conducted with references to said real estate and/or mortgages.

(hereafter referred to as the "Class").

(4) James J. Freeman, Esquire and William C. Reil, Esquire are designated counsel for the Class.

(5) The Settlements are hereby approved as fair adequate and reasonable, and the parties are directed to consummate the Settlements in accordance with their terms and conditions.

(6) This action is dismissed in its entirety on the merits, with prejudice and without costs. The plaintiffs and members of the Class are hereby barred and permanently enjoined from prosecuting against any of the following defendants:

Penn Title Insurance Company

T.A. Title Insurance Company

*19 Pine Tree Agency, Inc.

Chase Abstract Company

American Land Transfer Association

Federal Abstract Co., Inc.

Settlement Services, Inc.

Jefferson Abstract Co. Inc.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1990 WL 168273 (E.D.Pa.)  
**(Cite as: 1990 WL 168273 (E.D.Pa.))**

Page 16

County Abstract Co.

American Title Insurance Company

Meridian Title Insurance Company

The Title Insurance Corporation of Pennsylvania

Congress Abstract Corporation

Beneficial Abstract Co.

Assurance Abstract Co.

Academy Abstract Corporation

Chicago Title Insurance Company

Commonwealth Land Title Insurance Company

Lawyers Title Insurance Co.

Suburban Abstract Co.

Metropolitan Abstract Co.

Industrial Valley Title Co.

Montgomery Services Co.

Conestoga Title Insurance Co.

Guardian Abstract Company of Delaware

(hereafter referred to as the "Settling Defendants"), and their successors, assigns, predecessors, past or present parents, subsidiaries, affiliates or any past or present officer, director, agent or other representative of any of them, any individual, derivative or class claim in connection with, arising out of or in any way related to any facts, transactions, or omissions or other subject matter set forth, alleged, embraced or otherwise referred to in this litigation.

(7) Without affecting the finality of this judgment in any way, the Court reserves jurisdiction over the parties to the settlement and this action for purposes of enforcing, construing or effectuating the Settlements.

(8) As there is no just reason for delay in entering Final Judgment in accordance with the terms of the Settlement, the Clerk of the Court is directed the enter Final Judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

(9) The Petition for Attorney's Fees and Cost is hereby GRANTED as fair and reasonable compensation for the value of services rendered.

(10) James J. Freeman, Esq. is hereby awarded a fee of $130,306.18 and expenses in the amount of $6,269.82. William C. Reil, Esq. is awarded a fee of $19,574.28.

(11) The fees and costs are to be paid by the Settling Defendants, with the exception of Guardian Abstracting Company of Delaware and Conestoga Title Insurance Company, in accordance with the settlement agreement attached to the Joint Petition. As to the Guardian Abstracting Company of Delaware and the Conestoga Title Insurance Company, the sums contributed to the Settlement Fund in accordance with the settlement agreement attached to the Conestoga and Abstract Petition, shall be applied towards the payment of the attorney's fees and costs awarded pursuant to this Order.

(12) The fees and costs awarded herein are to be paid within twenty (20) days from the entry of this Order.

> FN1. The two non-settling defendants are Industrial Valley Abstract Company and Guardian Abstract Co. These defendants filed motions to dismiss or summary judgment which were denied by Order of this Court dated August 8, 1990 without prejudice, to renew after such time as the plaintiffs were able to take discovery related to issues raised in the motions. At the same time, this Court issued a Scheduling Order requiring these defendants to complete discovery by September 17, 1990 and file all dispositive motions two weeks prior to the close of discovery. The defendants' motions were not renewed. The plaintiffs filed a motion for entry of a default judgment against these defendants for failing comply with

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1990 WL 168273 (E.D.Pa.)
**(Cite as: 1990 WL 168273 (E.D.Pa.))**

Page 17

Fed.R.Civ.P. 12(a)(1). By order dated October 29, 1990, the motion has been granted.

FN2. Notary Public Law, Pa. Stat. Ann. tit. 57, § 147, *et seq.* (Purdon 1964 & Supp.1990). Since February 11, 1984, the schedule of notary fees has been as follows:

```
                    NOTARY PUBLIC FEE SCHEDULE
Executing affidavits..................................  $2.00
Executing acknowledgments.............................   2.00
 in executing acknowledgments, each additional name...   1.00
Executing certificates................................   2.00
Administering oaths...................................   2.00
Taking depositions, per page..........................   2.00
Making protests, per page.............................   2.00
```

Pa.Stat.Ann. tit. 57, § 167 (Purdon Supp.1990).

FN3. On or about January 25, 1990, the plaintiffs and defendants Conestoga Title Insurance Co. and Abstracting Company of Delaware County filed a Joint Motion for Preliminary Approval of Settlement in connection with the disposition of *Callahan I.* On January 29, 1990, the plaintiffs and the remaining defendants (with the exception of the two non-settling defendants) also filed a Joint Motion for Preliminary Approval of Settlement to dispose of *Callahan II.* As discussed *infra,* the proposed settlement agreements differ in that the proposal in *Callahan I* calls for the establishment of a settlement fund and nonpayment of counsel fees whereas the parties in *Callahan II* provide for payment of plaintiffs' counsel fees and for injunctive relief only. The settlement agreements also call for class certification the subject of which is addressed later in this Memorandum.

FN4. Counsel for non-settling defendant Guardian Abstract Company also appeared at the hearing and was provided an opportunity to be heard.

FN5. In accordance with the settlement and consistent with the notary public law, the settling defendants are required to ensure that notary fees are charged as follows:
(i) A notary shall be permitted to charge $2.00 for each affidavit, regardless of the number of signatures appearing on the affidavit. If third parties require that additional copies of affidavits have original signatures and be notarized, a charge of $2.00 per additional document is permitted.
(ii) A notary shall be permitted to charge $2.00 for an acknowledgement containing one signature. A notary shall also be permitted to charge $1.00 for each additional signature required on an acknowledgement. The same fee schedule shall also apply to each copy of an acknowledgement requiring original signatures.
(iii) A notary shall be permitted to charge $2.00 for a certificate regardless of the number of signatures appearing on the certificate. A notary shall be permitted to charge $2.00 for each certificate required by a third party.
Additionally, the settling defendants are required to affirmatively and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1990 WL 168273 (E.D.Pa.)  
**(Cite as: 1990 WL 168273 (E.D.Pa.))**

Page 18

conspicuously advise consumers of the proper charges for notary services. Signs are to be posted in the offices of the defendants in rooms were settlements take place. If the closing occurs outside those offices, a copy of the fee schedule must be provided to the consumer by mail or in some other manner.

FN6. By Order dated February 22, 1990, this Court conditionally certified the proposed class under both Rule 23(b)(1) and (b)(2). That Order required that notice of the proposed settlement be published and scheduled a final hearing.

FN7. At the hearing, the plaintiffs' counsel stated that his investigation revealed that much of the abuse was concentrated in five counties surrounding the greater Philadelphia metropolitan area. (Tr. at 6.) He did note, however, that many of the defendants had and have offices located in Pittsburgh, Harrisburg and Erie. (Tr. at 5.) By letter dated June 20, 1990, plaintiffs' counsel advised the Court that the approximate number of alleged improper transactions was 200,000 per year.

FN8. During the hearing, lead counsel for the settling defendants, in providing a defense perspective as to why settlement was warranted, stated:
"What we found was that we were going to be confronted with a case, from the defense standpoint, which was going to sap a great deal of the underwriter' and their agents' resources, there was an extremely broad discovery request that was propounded that would have opened up statewide records, and it just would have been a massive undertaking to comply with that."
Remarks of Steven R. Waxman, Esq. (Tr. at 24.) Earlier in the hearing, plaintiffs' counsel commented that document production could "conceivably fill a warehouse." Remarks of James J. Freeman, Esq. (Tr. at 10.)

FN9. This Order approved the parties Stipulation to postpone discovery pending the outcome of settlement discussions. The Order was vacated on August 8, 1990.
Notably, the absence of full-fledged discovery is not necessarily a bar to approval of settlement. *See In re Baldwin-United Corp.,* 105 F.R.D. 475, 483 (S.D.N.Y.1984). Discovery, within the context of class action settlement, need not be formal discovery under the Federal Rules of Civil Procedure; access to sufficient information regarding the case will suffice. *See Handschu v. Special Servs. Div.,* 605 F.Supp. 1384, 1394 (S.D.N.Y.), *aff'd,* 787 F.2d 828 (2d Cir.1985).

FN10. These are the very claims that provide this Court with jurisdiction over the subject matter.

FN11. Several defendants moved to dismiss the § 1983 claim as asserted in the initial complaints. The defendants argued that the claim was defective due to the lack of state action and was of limited utility by application of the statute of limitations. These motions were denied as moot after the filing of the amended complaints. No subsequent dispositive motions were filed with this Court except those presented by the non-settling defendants. Accordingly, the court did not express any opinion as to the merit of the arguments advanced supporting dismissal of the § 1983 claims as set forth in the amended complaints. The settling defendants again raised these issues in the Joint Motions for Final Approval of Settlement. *See* Memorandum of Law in Support of Petition for Final Approval of Settlement at 11.

FN12. The Third Circuit has held that " '[s]tate action' for the purposes of the Fourteenth Amendment and 'color of state law' for the purposes of section 1983 are 'identical.' " *Robison v. Canterbury Village, Inc.,* 848 F.2d 424, 427 n. 3 (3d Cir.1988) (citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929 (1982)).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1990 WL 168273 (E.D.Pa.)
**(Cite as: 1990 WL 168273 (E.D.Pa.))**

Page 19

FN13. As to the plaintiffs' agency theory, the Court notes that the defendants in this case are not alleged to have actually received sums derived from the notary services let alone the overcharges. Indeed, at the hearing it was revealed that the title clerks keep the notary fees for themselves. (Tr. at 18.) Moreover, under the notary law, fees earned for notary services are property of the notary and in no case are to belong to or be received by the notary's employer. Pa. Stat. Ann tit. 57, § 165(c) (Purdon 1964). The plaintiffs maintain, however, that the excess fee charging benefitted the defendants because those sums were calculated into the title clerk's compensation thereby establishing the requisite nexus between the notary publics and the defendants. (*See* Tr. at 18 and Amended Complaints in *Callahan I* and *Callahan II* at ¶ 95.)

FN14. We note that the plaintiffs have not identified which of § 1985's three subsections they are relying upon. The averments make plain that the only basis for relief is subsection three.

FN15. Plaintiffs' Clayton Act claims are contained in the second and third counts of the amended complaints. There is no reference to the particular statutory provision relied upon except 15 U.S.C. § 15 (1990) which authorizes private treble damage suits for conduct violative of the antitrust laws. Paragraph 74, however, asserts that defendants conduct was violative of 15 U.S.C. §§ 13(a), (c), 15 and 26.

FN16. The defendants do not raise any specific challenge to the claim asserted under 15 U.S.C. § 13(a).

FN17. Section 13(c) provides:
That it shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative or other intermediary therein where such intermediary is acting in fact for or in behalf or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid.
15 U.S.C. § 13(c) (1984).

FN18. The Court also notes that 15 U.S.C. §§ 13(a) and (c) resulted from the 1936 enactment of the Robinson-Patman Price Discrimination Act (the "Act") which amended the Clayton Act. The Act prohibits discrimination in favor of one purchaser against another of goods in furnishing services or facilities connected with the sale. *M. Leff Radio Parts, Inc. v. Mattel, Inc.,* 706 F.Supp. 387, 399 (W.D.Pa.1988). The purpose of the Act, is to prevent large buyers from using their economic power to gain favorable terms from manufacturers and thus gain an unfair advantage over smaller competitors who cannot buy in bulk. *Id.* (citing *Bouldis v. U.S. Suzuki Motor Corp.,* 711 F.2d 1319 (6th Cir.1983)); *see also Stephen J. Photography, Ltd. v. Olan Mills, Inc.,* 903 F.2d 988, 991 (4th Cir.1990). Section 13(c), for example, was specifically enacted to "curb abuses by large chain store buyers who used dummy brokerage fees as a means of securing price rebates. The large stores required sellers to pay a 'brokerage' to persons employed by the buyers. These persons had rendered no service, and would simply pay over the commissions to their employers." *Seaboard Supply Co. v. Congoleum Corp.,* 770 F.2d 367, 371 (3d Cir.1985). The Court fails to see how the plaintiffs' Clayton Act claim addresses conduct the statute is intended to prevent.

FN19. Section 13(a) provides, in pertinent part:
It shall be unlaw for any person engaged in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1990 WL 168273 (E.D.Pa.)  
**(Cite as: 1990 WL 168273 (E.D.Pa.))**

Page 20

commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any territory thereof or in the District of Columbia or any insular possession or any place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers or either of them ..."  
15 U.S.C. § 13(a) (1984).

FN20. 18 U.S.C. § 1962(1)(A), in pertinent part, defines "racketeering activity" as:  
(A) any act or threat involving murder, kidnapping, gambling, arson robbery, extortion, or dealing in narcotics or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year ..."

FN21. The defendants are alleged to have committed the following acts: criminal conspiracy, Pa.Stat.Ann. tit., 18 § 903 (Purdon 1983), theft by deception and cheating by false pretenses, Pa.Stat.Ann. tit., 18 § 3922 (Purdon 1983), Deceptive Business Practices, Pa.Stat.Ann. tit., 18 § 4107 (Purdon 1983). (*See* Amended Complaints in *Callahan I* and *Callahan II*, Seventh Counts, ¶ 220. Notably, the notary public law, does not carry a criminal penalty for fee overcharging.

FN22. In *United States v. Forsythe*, 560 F.2d 1127, 1137 (3d Cir.1977), the court examined RICO's legislative history and concluded that the "State offenses" designated in § 1961(1)(a) are included by generic designation. Accordingly, the court observed that a state violation which falls within the generic category of the specified predicate offenses (bribery, robbery, murder, extortion and kidnapping) is adequate to charge a violation of RICO. *Id.* The crimes which the defendants are alleged to have committed under state law do not, however, fit neatly, if at all, within the generic category of any of these offenses.

FN23. A "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this Chapter and the last which occurred within ten years (excluding any period of imprisonment) after the commission of racketeering activity. 18 U.S.C. § 1962(5)(1984). The predicate acts must be related and amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Northwestern Bell, Inc.*, 109 S.Ct. 2893, 2900 (1989); *Hoxworth v. Blinder Robinson & Co., Inc.*, 902 F.2d 186, 204 n. 26 (3d Cir.1990).

FN24. The Third Circuit has held that to prove an enterprise under RICO the plaintiff must show: (1) that the enterprise is an ongoing organization with some sort of framework or superstructure for making or carrying out decisions; (2) that the members of the enterprise function as a continuing unit with established duties; and (3) that the enterprise must be separate and apart from the pattern of activity which it engages. *Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786, 789-90 (3d Cir.1984), *cert. denied*, 469 U.S. 1211 (1985).

FN25. Section 2607(d)(2) provides for an award of damages equal to three times the amount of any charge paid for a settlement service in violation of the provisions of § 2607. 12 U.S.C. § 2607(d)(2) (1989).

FN26. Although the amount per each overcharge seems inconsequential at first blush, a closer examination of the facts reveals a potential for substantial liability.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1990 WL 168273 (E.D.Pa.)
**(Cite as: 1990 WL 168273 (E.D.Pa.))**

Page 21

Based upon the plaintiffs' Pre-trial Statement No. 1 (*Callahan II*, Document No. 11), the following damage formula is extracted:

Amount of overcharge/settlement x number of settlements/day x the number of offices conducting settlements x five day week x 50 week year x four years = damages.

Applying this formula, if a defendant conducts 10 settlements per day, has 10 offices and overcharges by $6.00 per settlement the resulting liability would equal $600,000. Plaintiffs also seek punitive and treble damages.

FN27. By letter to this Court dated June 20, 1990, Mr. Freeman represented that "a great deal of thought and preparation" was put into formulating the plaintiffs' case and that plaintiffs' counsel worked on a contingent basis without compensation for over three years.

1990 WL 168273 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

. 2:88CV08319 (Docket)
(Oct. 28, 1988)

. 2:88CV07656 (Docket)
(Oct. 04, 1988)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.