3

Westlaw.

Not Reported in F.Supp.2d
1999 WL 1211502 (E.D.Pa.), RICO Bus.Disp.Guide 9861
(Cite as: 1999 WL 1211502 (E.D.Pa.))

Page 1

C

**Motions, Pleadings and Filings**

United States District Court, E.D. Pennsylvania.
Robert **CURTIN** and Catherine **Curtin**, h/w,
Plaintiffs,
v.
**TILLEY FIRE** EQUIPMENT COMPANY, Don and Nancy Tilley, h/w, Kemper National Insurance Co., James Pearson, Eastburn & Gray, P.C., and D.O. Richardson & Associates, Defendants.
No. Civ.A. 99-2373.

Dec. 14, 1999.

MEMORANDUM

KELLY, J.

*1 Presently before this Court are the individual Motions to Dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants, American Manufacturers Mutual Insurance Company (identified in the Amended Complaint as Kemper National Insurance Co.), James Pearson, Eastburn & Gray, P.C., D.O. Richardson & Associates, Tilley Fire Equipment Company, and Don and Nancy Tilley. [FN1] Fed. R. Civ. P. 12(b)(6). For the reasons which follow, Defendants' Motions are granted.

> FN1. Plaintiffs assert the Motion to Dismiss filed by Defendants Tilley Fire Equipment Company and Don and Nancy Tilley pertains only to the Complaint in this action. Because Defendants reference the Amended Complaint in the text of that Motion, the Court assumes it is a Motion to Dismiss the Amended Complaint.

I. FACTS.

Plaintiff, Robert Curtin ("Curtin"), was employed as a sprinkler technician with the Defendant Tilley Fire Equipment Company ("Tilley Fire") from September 24, 1992 through July 26, 1996. Curtin was injured on the job on March 19, 1996, was unable to return to work, and was placed on disability. He thereafter applied for and received worker's compensation. Tilley Fire's worker's compensation program is administered by Defendant, American Manufacturers Mutual Insurance Company ("Kemper"). On May 29, 1997, Curtin received an offer from Tilley Fire to return to work. He declined the offer because of ongoing health issues.

While collecting worker's compensation, Curtin testified in two discrimination cases brought by former employees of Tilley Fire. After testifying at one deposition, Curtin did not receive his regular worker's compensation payment from Kemper. The payment was instead sent to an address in New Jersey. Curtin alerted Tilley Fire of the non-payment of benefits and Kemper remitted payment to Curtin. Curtin claims that his discharge and this non-payment were actions taken by Defendants in retaliation for his court appearances. Curtin also alleges that Defendants hired D.O. Richardson & Associates ("Richardson"), a private investigation service, to follow him and he was "run off" the road by a Richardson vehicle.

Plaintiffs filed their Amended Complaint on June 24, 1999, alleging Defendants conspired to violate The Racketeer Influenced and Corrupt Organizations Act of 1984 ("RICO"). [FN2] Fed. R. Civ. P. 56(b); 18 U.S.C. § 1961 *et seq.* Count I of Plaintiffs' Amended Complaint specifically alleges that Defendants violated sections 1962(c) and (d) of RICO by engaging in witness tampering, witness retaliation, mail fraud and wire fraud. 18 U.S.C. §§ 1962(c)-1962(d); 18 U.S.C. § 1512; 18 U.S.C. § 1513; 18 U.S.C. § 1341 and 18 U.S.C. § 1343. Count II contains a state law claim for intentional infliction of emotional distress by Curtin, and Count III is a loss of consortium claim by Plaintiff Catherine Curtin.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
1999 WL 1211502 (E.D.Pa.), RICO Bus.Disp.Guide 9861  
**(Cite as: 1999 WL 1211502 (E.D.Pa.))**

Page 2

FN2. Plaintiffs, in a procedurally confusing manner, filed their Amended Complaint on June 24, 1999 at Docket No. 99-CV-272. Plaintiffs state that this error was due to a typographical mistake and admit that they filed the Amended Complaint with the wrong docket number. (Pls.' Resp. to Mot. to Strike Am. Compl. at ¶ 5.)

II. STANDARD.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), tests the legal sufficiency of the complaint. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). A court must determine whether the party making the claim would be entitled to relief under any set of facts that could be established in support of his or her claim. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984) (citing *Conley,* 355 U.S. at 45-46); *see also Wisniewski v. Johns-Manville Corp.,* 759 F.2d 271, 273 (3d Cir.1985). In considering a Motion to Dismiss, all allegations in the complaint must be accepted as true and viewed in the light most favorable to the non-moving party. *Rocks v. City of Phila.,* 868 F.2d 644, 645 (3d Cir.1989) (citations omitted).

III. DISCUSSION.

A. *Injury to Business or Property.*

*2 In Count I of the Amended Complaint, Curtin claims Defendants violated 18 U.S.C. sections 1962(c) and 1962(d). (Am. Compl. at ¶¶ 30-47.) RICO creates a private cause of action for a person injured in business or property under 18 U.S.C. section 1962. 18 U.S .C. § 1964(c); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985). As Defendants note, Curtin's claimed harm was neither to his business nor his property. (Defs. American Manuf. and Pearson's Mem. of Law in Supp. of Mot. to Dismiss Am. Compl. at 2, 12-13.) Curtin seeks monetary compensation for personal and emotional injuries. (Am. Compl. at 8-9.) Physical and emotional injury is not harm to "business or property" as required under RICO. *See Genty v. Resolution Trust Corp.,* 937 F.2d 899, 918-919 (3d Cir.1991); *Fried v. Sunguard Recovery Servs., Inc.,* 900 F.Supp. 758, 763 (E.D.Pa.1995) (citation omitted). Curtin's failure to establish an injury to business or property is fatal to his RICO claim. Despite this failure to allege a business or property injury, this Court will examine the merits of Curtin's RICO claim.

B. *Count I--18 U.S.C. § 1962(c).*

Curtin contends that the Defendants violated section 1962(c) of RICO. 18 U.S.C. § 1962(c). Section 1962(c) provides:
> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). In order to make out a claim under RICO, Curtin must allege the existence of an enterprise and a connected pattern of racketeering activity. To establish RICO liability, Curtin must assert the following five elements: (1) the existence of an enterprise that affects interstate commerce and is separate and distinct from the Defendants; (2) that the Defendants were associated with the enterprise; (3) that the Defendants conducted or participated in the affairs of the enterprise; (4) that each Defendant engaged in a pattern of racketeering activity; and (5) that the racketeering was the proximate cause of Curtin's injury. *City of Rome v. Glanton,* 958 F.Supp. 1026, 1043 (E.D.Pa.) (citing *Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1165 (3d Cir.1989)), *aff'd.,* 133 F.3d 909 (3d Cir.1997).

1. *Enterprise.*

RICO's definition of "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In Paragraph 32 of the Amended Complaint, Curtin states, "In so conspiring, and in acting out the conspiracy, defendants formed an association in fact, the purpose of which was to prevent plaintiff from testifying as a witness in certain racial discrimination lawsuits, and to impair plaintiff in exercising his rights to receive worker's compensation." (Am. Compl. at ¶ 32.) While a group of individuals associated-in-fact for wholly

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 1211502 (E.D.Pa.), RICO Bus.Disp.Guide 9861
**(Cite as: 1999 WL 1211502 (E.D.Pa.))**

Page 3

unlawful ends could constitute an enterprise for RICO purposes, establishing the existence of an association-in-fact enterprise requires proof: (1) of an on-going organization, formal or informal, and (2) that the various associates function as a continuing unit. *United States v. Turkette,* 452 U.S. 576, 580-83 (1981). As the *Turkette* Court cautioned, "[t]he 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *Id.* at 583. It is therefore not enough for Plaintiffs merely to say that the enterprise engaged in a pattern of racketeering activity. "Instead, a viable section 1962(c) action requires a claim against defendant 'persons' acting through a distinct 'enterprise.'" *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.,* 46 F.3d 258, 268 (3d Cir.1995).

*3 Plaintiffs name Don and Nancy Tilley, owners of Tilley Fire, and James Pearson, employee of Kemper, as individual Defendants along with several Defendant corporations. Naming individual Defendant owners or employees of Defendant corporations is insufficient to establish association-in-fact liability under RICO because "an association-in-fact enterprise must consist of more than a combination of a corporation and its officers, employees, agents or affiliates." *Creative Dimensions Management, Inc. v. Thomas Group, Inc.,* No. CIV.A.96-6318, 1997 WL 633684, at *3 (E.D.Pa. Sept. 30, 1997) (citing *Brittingham v. Mobil Corp.,* 943 F.2d 297, 301 (3d Cir.1991); *Pagnotti Enters., Inc. v. Beltrami,* 787 F.Supp. 440, 446 (M.D.Pa.1992)). Plaintiffs not only name the Defendant corporations and the individual Defendants, they also allege that all of the Defendants acted in concert with one another to harm Plaintiffs. The United States Court of Appeals for the Third Circuit ("Third Circuit") requires that a "person" charged with a violation of section 1962(c) be distinct from the "enterprise." *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1991 (3d Cir.1993). Liability may only attach to the person who is the active wrongdoer, while the enterprise is the instrumentality through which the person performs the predicate acts. *See Baglio v. Baska,* 940 F.Supp. 819, 832 (W.D.Pa.1996), *aff'd. without op.,* 116 F.3d 467 (3d Cir.1997). Because there is no distinction between the enterprise and the alleged individual wrongdoers, the Amended Complaint does not satisfy section 1962(c)'s enterprise separateness requirement.

In order to allege a RICO "enterprise," the Third Circuit has identified three elements: (1) that there be an ongoing organization; (2) that the associates function as a continuing unit; and (3) that the enterprise is an entity separate and apart from the pattern of activity in which it engages. *United States v. Console,* 13 F.3d 641, 650 (3d Cir.1993), *cert. denied sub nom., Curcio v. United States,* 511 U.S. 1076 (1994) and *Markoff v. United States,* 513 U.S. 812 (1994). Curtin does not suggest that there was any organizational structure to the alleged association-in-fact enterprise or that the association had an existence beyond committing the alleged predicate acts. *See Id.* at 651-52. The Amended Complaint also does not refer to or identify any mechanism "for controlling and directing the affairs of the group on an on-going, rather than an ad-hoc basis." *Id.* at 651 (citation omitted). Thus, the Amended Complaint does not adequately set forth the necessary elements of an association-in-fact enterprise.

Although Plaintiffs cannot establish an association-in-fact enterprise existed, they do successfully allege that Defendants' actions affect interstate commerce as required under RICO section 1962(c). The nexus with interstate commerce required by RICO is de minimis. *Miller v. Cohen,* Nos. CIV.A.93-5371 & CIV.A.94-2700, 1996 WL 560525, at *4 (E.D.Pa. Sept. 30, 1996) (citing *Shearin,* 885 F.2d at 1166). Curtin alleges that:

> *4 Defendant Kemper, at the direction of defendants Tilley and with the assistance of defendant Eastburn & Gray, further retaliated by redirecting plaintiff's worker's compensation to a New Jersey location, thus preventing plaintiff from collecting worker's compensation. This action was taken after plaintiff was named as a witness in a second discrimination lawsuit. The retaliation was committed using the United States mails to redirect plaintiff's workers' compensation payments.

(Am. Compl. at ¶ 41.) Curtin's allegation in the Amended Complaint of Defendant's use of the United States mail is sufficient to implicate interstate commerce. However, despite this implication, Curtin cannot establish that an association-in-fact enterprise existed.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 1211502 (E.D.Pa.), RICO Bus.Disp.Guide 9861
**(Cite as: 1999 WL 1211502 (E.D.Pa.))**

Page 4

2. *Pattern of Racketeering Activity.*

Curtin must also show that Defendants engaged in a "pattern of racketeering activity," another necessary RICO element. 18 U.S.C. § 1962(c). RICO defines a "pattern" as "at least two acts of racketeering activity" occurring within a ten (10) year period. 18 U.S.C. § 1961(5). This definition has been held to "state a minimum necessary condition for the existence" of a "pattern." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 237 (1989) (citation omitted). The acts alleged in Curtin's Amended Complaint comprising the necessary "pattern" are instances of witness tampering, witness retaliation, mail fraud and wire fraud, all of which are within the scope of the civil RICO racketeering definition. *See Tabas v. Tabas,* 47 F.3d 1280 (3d Cir.1995), *cert. denied,* 515 U.S. 1118 (1995) (common law or garden variety fraud is included in the scope of civil RICO). However, a pattern of racketeering activity requires more than the commission of the requisite number of predicate acts. "[A] plaintiff ... must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc.,* 492 U.S. at 239.

a. Relatedness.

The United States Supreme Court has held the relatedness requirement is met when defendants' acts have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240 (quoting 18 U.S.C. § 3575(e)). The Third Circuit has applied a six factor test to assess the sufficiency of continuity and relatedness to form a pattern under RICO. These factors are: (1) number of unlawful acts; (2) length of time over which the acts were committed; (3) similarity of the acts; (4) number of victims; (5) number of perpetrators; and (6) character of the unlawful activity. *See Barticheck v. Fidelity Union Bank/First Nat. State,* 832 F.2d 36, 38 (3d Cir.1987). Curtin has stated that the predicate acts committed by Defendants are related because he was the victim of all the acts and the purpose of the acts was witness tampering and/or retaliation. Defendants argue that Curtin's claims do not satisfy the pattern requirement because they involve only one victim, few perpetrators and at most four predicate acts, all of which took place within one year. Although the alleged scheme did injure only one victim, that factor will not preclude a finding of racketeering activity. *Leonard A. Feinberg, Inc. v. Central Asia Capital Corp., Ltd.,* 974 F.Supp. 822, 849 (E.D.Pa.1997).

*5 This Court must analyze each of the alleged predicate acts constituting Plaintiffs' RICO claim in order to determine if Curtin's RICO claim meets the relatedness requirement. The incident involving the late worker's compensation payment cannot support Plaintiffs' retaliation claim because Curtin actually received the funds due to him. In addition, Curtin's discharge pre-dated his testimony in the discrimination lawsuits. It is therefore also excluded from the retaliation claim. Defendants correctly argue that the essential elements of "witness retaliation" found in 18 U.S.C. section 1513 are (1) knowingly engaging in conduct, (2) causing bodily injury or damage to tangible property, (3) intending to retaliate for testimony given. (Def. Eastburn & Gray, P.C.'s Mem. of Law in Supp. Mot. to Dismiss at 12.) In the instant case, because Curtin does not allege that he suffered any physical or property damage when he was "run off" the road by the Richardson vehicle, this predicate act cannot support Plaintiffs' witness retaliation theory. Thus, Defendants correctly argue that Curtin's claims do not satisfy the RICO relatedness requirement.

b. Continuity.

The second element needed for a "pattern of racketeering activity" is the "continuity requirement." "To establish a RICO pattern, [a plaintiff must also show] that the predicates themselves amount to, or that they otherwise constitute a threat of continuing racketeering activity." *H.J. Inc.,* 492 U.S. at 240. This requirement refers either to an "open-ended scheme," in which past conduct by its nature projects into the future with a threat of repetition, or to a "closed-ended scheme," consisting of a closed period of repeated conduct. *Id.* at 241 (citation omitted). A plaintiff must prove a series of related acts lasting a "substantial period of time" in a "closed-ended scheme" or a regular way of doing business in an "open-ended scheme." *Hughes v. Consol-Pennsylvania Coal Co.,* 945 F.2d 594, 610

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 1211502 (E.D.Pa.), RICO Bus.Disp.Guide 9861
**(Cite as: 1999 WL 1211502 (E.D.Pa.))**

Page 5

(3d Cir.1991) (citing *H.J. Inc.,* 492 U.S. at 250), *cert. denied,* 504 U.S. 955 (1992).

To prove the "continuity requirement" under a closed-ended scheme, Curtin must show that the Defendants' actions occurred during a closed period of repeated conduct. Curtin alleges that the series of actions taken against him occurred during a period of twelve months and five days. The first alleged act, Curtin's layoff from Tilley Fire, occurred on July 26, 1996, and the last act occurred in August, 1997, when Curtin's worker's compensation payments were allegedly interrupted or rerouted to New Jersey. The Third Circuit has consistently held that periods of less than one year are not substantial for purposes of RICO. *Tabas,* 47 F.3d at 1293 (citations omitted); *see also Hughes,* 945 F.2d at 609 (holding twelve months is not substantial period of time under RICO). Defendants claim that the predicate acts did not exceed one year. This Court finds that the acts alleged by Curtin actually occurred over a period of twelve months and five days, therefore the continuity requirement is met, though just barely, under a closed-ended scheme.

*6 "Open-ended" continuity may be shown by establishing that "predicates are a regular way of conducting defendant's ongoing legitimate business (in the sense that it is not a business that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO 'enterprise.' " *Temple Univ. Hosp., Inc. v. Medifor-X Corp.,* No. CIV.A.97-5980, 1998 WL 720178, at *2 (E.D.Pa. Sept. 1, 1998) (citing *H.J., Inc.,* 492 U.S. at 243). As stated previously, Curtin has failed to establish the "enterprise" requirement. He has also failed to allege that the predicate acts were a regular way that Defendants conducted their ongoing legitimate businesses. Curtin no longer works for Tilley Fire. He has not alleged that the acts against him are continuing or will occur in the future. *Tabas,* 47 F.3d at 1295 (citing *H.J. Inc.,* 492 U.S. at 242). Under the facts of this case, this Court finds that Plaintiffs cannot establish open-ended continuity.

Although Plaintiffs have met the requirements for closed-ended continuity, they have ultimately failed to establish an injury to business or property and the existence of a pattern of racketeering activity. Therefore, Plaintiffs' claim for RICO liability under section 1962(c) fails.

C. *Count I--Section 1962(d).*

In the absence of a viable claim under 1962(c), Curtin cannot make a RICO conspiracy claim under 18 U.S.C. section 1962(d). 18 U.S.C. § 1962(d); *Steco, Inc. v. S & T Mfg., Inc.,* 772 F.Supp. 1495, 1503 (E.D.Pa.1991) (citations omitted). Thus, Curtin's section 1962(d) claim also fails and Count I of the Amended Complaint is dismissed.

D. *Count II--Intentional Infliction of Emotional Distress.*

Count II of Plaintiffs' Amended Complaint contains a claim by Curtin for intentional infliction of emotional distress under Pennsylvania law. Curtin alleges that "[t]he actions of the defendants were for the purposes of intimidating and injuring plaintiff, and with the intention of causing plaintiff to suffer severe emotional distress." (Am. Compl. at ¶ 49.) Curtin may recover for intentional infliction of emotional distress if Defendants

> engage[d] in conduct that is deliberate or reckless, extreme and outrageous, and that causes severe emotional distress....The conduct complained of must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'

*Craig v. Salamone,* No. CIV.A.98-3685, 1999 WL 213368, at *9 (E.D.Pa. Apr. 8, 1999) (citing *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir.1988), *cert. denied,* 498 U.S. 811 (1990); *Bedford v. Southeastern Pa. Trans. Auth.,* 867 F.Supp. 288, 297 (E.D.Pa.1994); and quoting *Clark v. Township of Falls,* 890 F.2d 611, 623 (3d Cir.1989)). Curtin's allegations do not meet these standards. *See Kimmel v. Peterson,* 565 F.Supp. 476 (E.D.Pa.1983). Count II of Plaintiffs' Amended Complaint is therefore dismissed.

E. *Count III--Loss of Consortium.*

*7 The third Count of Plaintiffs' Amended Complaint contains a loss of consortium claim brought by Plaintiff Catherine Curtin. Mrs. Curtin alleges that she "has been deprived of the society, earnings and assistance of her husband, all of which is to her great loss and detriment." (Am. Compl. at ¶ 52.) Loss of consortium claims are derivative to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
1999 WL 1211502 (E.D.Pa.), RICO Bus.Disp.Guide 9861  
**(Cite as: 1999 WL 1211502 (E.D.Pa.))**

Page 6

spouses' tort claims. *See Little v. Jarvis,* 219 Pa.Super. 156, 162, 280 A.2d 617, 620 (Pa.Super.1971). As stated by the Pennsylvania Superior Court, "[t]he consortium claim and the personal injury claim are closely interconnected; together they represent the total, compensable damages--direct and indirect--suffered as a result of the principal plaintiff's injury." *Hepps v. General American Life Ins.,* No. CIV.A.95-5508, 1998 WL 564497, at *7 (E.D.Pa. Sept. 2, 1998) (quoting *Scattaregia v. Wu,* 343 Pa.Super. 452, 454, 495 A.2d 552, 553 (Pa.Super.1985)). "Under Pennsylvania law, a wife's consortium claim derives only from the injured husband's right to recover in tort." *Id.* (quoting *Wakshul v. City of Phila.,* 998 F.Supp. 585, 590 (E.D.Pa.1998)). Because Curtin has failed to plead a cognizable claim for RICO or intentional infliction of emotional distress, Mrs. Curtin's claim for loss of consortium cannot survive.

IV. CONCLUSION.

For the foregoing reasons, Defendants' Motions to Dismiss are granted. Plaintiffs' Amended Complaint is dismissed in its entirety with prejudice.

An Order follows. [FN3]

> FN3. This Court notes that Defendant Eastburn & Gray, P.C. filed the identical Motion to Dismiss the Amended Complaint in this case, No. 99-CV-2373, as in *Robert Curtin v. Tilley Fire Equip. Co.,* No. 99-CV-272. The decision in the instant case will render the Motion to Dismiss filed by Eastburn & Gray, P.C. in case No. 99-CV-272 (Docket No. 17) moot. *See supra* n. 1.

ORDER

AND NOW, this 14 th day of December, 1999, upon consideration of the Motions to Dismiss filed by all Defendants and Plaintiffs' Responses thereto, it is hereby ORDERED that said Motions are GRANTED and Plaintiffs' Amended Complaint is dismissed in its entirety with prejudice. It is further ORDERED that all outstanding Motions in this case are DENIED as moot. The Clerk of Court is directed to mark this case CLOSED.

1999 WL 1211502 (E.D.Pa.), RICO Bus.Disp.Guide 9861

**Motions, Pleadings and Filings (Back to top)**

. 2:99CV02373 (Docket)

(May. 07, 1999)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

4

Westlaw.

1986 WL 15374                                                                                                                    Page 1
1986 WL 15374 (D.Del.), RICO Bus.Disp.Guide 6369, RICO Bus.Disp.Guide 6370
**(Cite as: 1986 WL 15374 (D.Del.))**

H

United States District Court, D. Delaware.
Patrick H. DIAMOND, Plaintiff,
v.
David P. REYNOLDS, Reynolds Metals Company,
Ralph S. Thomas, and Robertshaw
Controls Company, Defendants.
**Civ. A. No. 84-280 MMS.**

Jan. 13, 1986.

William Prickett, and Norman L. Pernick, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for plaintiff; Harold E. Kohn, William B. Lytton, Mary E. Kohart, of Kohn, Savett, Marion & Graf, P.C., Philadelphia, Pennsylvania, of counsel.

Arthur G. Connolly, Jr., of Connolly, Bove, Lodge & Hutz, Wilmington, for defendants David P. Reynolds and Reynolds Metals Company; Jeffrey Barist, Kathryn L. Bedke, and Juan H. Saavedra-Castro, of White & Case, New York City, of counsel.

E. Norman Veasey, Allen M. Terrell, Jr., and Thomas A. Beck, of Richards, Layton & Finger, Wilmington, for defendants Ralph S. Thomas and Robert Shaw Controls Company, Wachtell, Lipton, Rosen & Katz, New York City, of counsel.

MEMORANDUM OPINION

MURRAY M. SCHWARTZ, Chief Judge.

*1 Plaintiff Patrick Diamond has commenced this civil action alleging federal statutory violations and pendent state-law claims against defendants David P. Reynolds ("Reynolds"), Reynolds Metals Company ("Reynolds Metals"), Ralph S. Thomas ("Thomas"), [FN1] and Robertshaw Controls Company ("Robertshaw") for a series of events culminating in the termination of plaintiff's employment with defendant Robertshaw. Defendants Reynolds' and Reynolds Metals' have moved to dismiss plaintiff's Second Amended Complaint or, alternatively, for a rule 11 hearing.

For the reasons that follow, defendants' motion to dismiss will be granted in part and denied in part and defendants' motion for a rule 11 hearing will be denied.

I. *Facts*

Plaintiff in April, 1978 assumed the position of Vice-President, Finance, at Robertshaw. In April, 1980 he became a member of Robertshaw's Board of Directors, Chairman of the Board's Finance Committee, and Chief Financial Officer.

On February 24, 1982 Plaintiff entered into a severance agreement with defendant Robertshaw which provided plaintiff would be entitled to termination compensation if his termination occurred within three years of a "change of control" at Robertshaw. Second Amended Complaint ¶ 24. "Change of control" was defined in the severance agreement as

(i) the acquisition of a total of 30% or more of the outstanding shares of the company's common stock by an entity, person or group other than the company pursuant to a tender or exchange offer or otherwise or series of related transactions, or (ii) the election, either directly or indirectly, of more than one third of the company's board of directors by an entity, person or group (except Reynolds Metals Company or a wholly owned subsidiary). Notwithstanding the foregoing, the acquisition of shares of common stock by Reynolds Metals Company, or a wholly owned subsidiary, acting on its behalf shall not constitute a "Change of Control."

*Id.* ¶ 25.

Defendant Reynolds has been Chairman of the Board of Robertshaw since 1978 and Chairman of the Board and Chief Executive Officer of Reynolds Metals since 1976. Reynolds Metals as of April, 1978, owned 27 percent of the stock of Robertshaw. Reynolds and Reynolds Metals on October 25, 1983 announced the purchase by Reynolds Metals of approximately an additional ten percent of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1986 WL 15374  
1986 WL 15374 (D.Del.), RICO Bus.Disp.Guide 6369, RICO Bus.Disp.Guide 6370  
**(Cite as: 1986 WL 15374 (D.Del.))**

Page 2

Robertshaw shares. *Id.* ¶ 49.

On November 18, 1983, plaintiff was terminated as a Robertshaw officer and director, effective November 18, 1983. *See id.* Ex A (Letter from R.S. Thomas to Patrick H. Diamond (Nov. 18, 1983)). Plaintiff has brought this lawsuit challenging his dismissal.

Plaintiff's first three counts allege that Reynolds, Reynolds Steel, and Thomas violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(b), (c), and (d), by making false and misleading statements to stockholders through the mail, thereby gaining control of Robertshaw. Second Amended Complaint ¶¶ 30, 52-66. Plaintiff alleges he was injured by this purportedly unlawful seizure of control when defendants discharged him. *Id.* ¶¶ 58, 62, & 66. In Count Four, plaintiff alleges that Reynolds tortiously interfered with the prospective contractual relation between plaintiff and Robertshaw by causing the "change of control" definition in the contract to exclude acquisition of shares by Reynolds Metal. *Id.* ¶¶ 67-70. Counts Six and Seven allege that Reynolds, Thomas, and Robertshaw wrongfully discharged plaintiff in order to punish him for performing his fiduciary duties as an officer and director of Robertshaw. *Id.* ¶¶ 74-85. [FN2]

*2 Defendants assert in their motion to dismiss that plaintiff lacks standing to bring a RICO claim against them; that plaintiff has not alleged that "but for" defendant Reynolds' conduct plaintiff's contract would have been different; and that plaintiff's discharge does not fit within the tort of wrongful discharge as it exists in Virginia.

II. *Analysis*

A motion to dismiss for failure to state a claim upon which relief may be granted presents an issue of law only. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In passing on a motion to dismiss, a court construes the factual allegations of the complaint in the light most favorable to the plaintiff. *Scheur v. Rhodes,* 416 U.S. 232, 236 (1974).

A. *Plaintiff's Standing to Bring a RICO Action (Counts One, Two and Three)*

Defendants assert that plaintiff lacks standing to maintain his RICO claims against them. I agree.

The doctrine of standing derives from the Article III requirement that federal courts may adjudicate only actual "cases" and "controversies." *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 3324 (1984). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498 (1975), *quoted in Allen v. Wright, supra,* at 3324. To establish standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct...." *Allen v. Wright, supra,* at 3324. Among the questions a court must ask is whether "the line of causation between the illegal conduct and injury [is] too attenuated." *Id.*

To establish injury under RICO a civil plaintiff need allege only that its injury was caused by predicate acts sufficiently related to each other to constitute a pattern of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.,* 54 U.S.L.W. 5034, 5038-39 (U.S.1985). A party has standing to sue only if "injured in [its] business or property by the conduct constituting the violation." *Id.* at 5039.

*Sedima* simply does not support plaintiff's position. Plaintiff has alleged that defendants have committed certain acts of mail fraud in order to take over Robertshaw, thereby breaching their duty to their shareholders and violating RICO. Plaintiff alleges that "[a]s a result of the successful culmination of this scheme, the Reynolds Defendants [Reynolds and Reynolds Metals] obtained control over Robertshaw *and used that control to oust Plaintiff from his position as an officer and member of the board of directors of Robertshaw.*" Memorandum of Patrick H. Diamond in Opposition to the Motion of David P. Reynolds, Dkt. 74, at 14-15 (emphasis added).

The weakness of plaintiff's argument is revealed by plaintiff's own statement of the causal nexus

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1986 WL 15374                                                                                                    Page 3
1986 WL 15374 (D.Del.), RICO Bus.Disp.Guide 6369, RICO Bus.Disp.Guide 6370
**(Cite as: 1986 WL 15374 (D.Del.))**

between the alleged mail fraud and his allegedly wrongful discharge. Under plaintiff's reasoning, *any* wrongful act committed by defendants after they took control of Robertshaw could be denominated an injury "as a result of" the mail fraud by which defendants allegedly gained control. According to plaintiff, if defendants had wrongfully terminated a janitor's contract, the janitor could sue under RICO because the defendants "used [their] control" over Robertshaw to effect the ouster.

*3 This ludicrous example points up the fallacy in plaintiff's reasoning. Plaintiff would rob of all meaning the notion of proximate cause and would expand beyond recognition the already broad scope of RICO liability.

The proximate cause of plaintiff's allegedly wrongful discharge was defendants' act of discharging him. It is true that defendants would not be in a position to discharge plaintiff unless they had control over Robertshaw. This does not establish that defendants' "control" over Robertshaw "caused" plaintiff to be discharged, much less that defendants' allegedly wrongful acts in taking control "caused" plaintiff to be discharged. Evidence relating to how defendants allegedly took control of Robertshaw is completely extraneous to plaintiff's claims relating to his termination of employment.

Because plaintiff has not suffered injury as a result of defendant's allegedly wrongful acts in violation of RICO, plaintiff lacks standing to maintain a RICO action against defendants. Defendants Reynolds' and Reynolds Metals' motion to dismiss as to them Counts One, Two, and Three of Plaintiff's Second Amended Complaint will be granted. Since diversity jurisdiction exists, the Court proceeds to the merits of defendants' motion to dismiss plaintiff's state-law claims.

B. *The Claim Alleging Tortious Interference With Prospective Contractual Relations (Count Four)*

1. *Choice-of-Law Analysis*

As a federal court sitting in the District of Delaware, this Court is bound to apply Delaware choice-of-law rules when deciding what law to apply in a state-law action. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941). Both the claim of tortious interference with contractual relations and of wrongful discharge are tort actions. For torts, Delaware continues to follow the *lex loci delicti* rule under which the law of the jurisdiction where a tort allegedly takes place (Virginia) governs the substantive rights of the parties in an action based on the tort. *Friday v. Smoot,* 211 A.2d 594 (Del.1965); *Tew v. Sun Oil Co.,* 407 A.2d 240, 242 (Del.Super.1979). This Court is therefore bound to follow Virginia law for both of plaintiff's state-law claims.

2. *Tortious Interference With a Prospective Contract*

a. *The Prima Facie Case*

Virginia recognizes the tort of intentional interference with a prospective contract. *Allen Realty Corp. v. Holbert,* --- Va. ----, ----, 318 S.E.2d 592, 597 (Va.1984). The tortious interference "must (1) induce or otherwise cause a third party not to enter into a prospective contract with the plaintiff, or (2) prevent the plaintiff from entering into a contract." *Id.* (citing 6 A.L.R. 4th 195, 201 (1981)).

Plaintiff on February 24, 1982 entered into a severance agreement with Robertshaw. Plaintiff alleges that defendant Reynolds "demanded that an exclusion clause be inserted into the severance agreement[ ] making the severance agreement[ ] inapplicable to certain actions by Reynolds Metals Company." Second Amended Complaint, ¶ 22. Thus, plaintiff alleges that Reynolds induced Robertshaw not to enter into a severance agreement with the plaintiff which did not contain the exclusion provision; *i.e.,* but for Reynolds' interference, Robertshaw would have entered into a more favorable contract with plaintiff.

*4 The Court entertains grave doubt whether plaintiff will be able ultimately to establish tortious conduct on the part of defendant. In most instances where liability has been upheld on a claim of tortious interference with contract, the third party has refused to enter into a contract with the plaintiff as a result of the wrongful conduct of the defendant. *E.g., Yaindl v. Ingersoll-Rand Co.,* 281 Pa.Super. 560, 422 A.2d 611 (1980); *Phillips v. Vandygriff,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.