# 6

Case 1:04-cv-01482-GMS   Document 50-6   Filed 03/31/2005   Page 1 of 10

Westlaw.

Not Reported in F.Supp.
1993 WL 566442 (D.Del.), 144 L.R.R.M. (BNA) 2991
(Cite as: 1993 WL 566442 (D.Del.))

Page 1

C

**Motions, Pleadings and Filings**

United States District Court,
D. Delaware.
ESPOSITO HAULING & CONTRACTING COMPANY, INC., Plaintiff,
v.
BUILDING AND CONSTRUCTION TRADES COUNCIL OF DELAWARE, and Richard Crawford and
John Doe # 1 through John Doe # 15, fictitious names representing 15 persons
believed to be members of the Building and Construction Trades Council of
Delaware, Defendants.
**CIV. A. No. 93-06-SLR.**

Sept. 2, 1993.

Jerome M. Capone and Erik C. Grandell, Wilmington, DE for plaintiff.

Andrews G. Ahern, III, Joseph W. Banson, P.A., Wilmington, DE, Richard B. Sigmond and Richard C. McNeill, Sagot, Jennings & Sigmond, Philadelphia, PA, for defendants.

MEMORANDUM OPINION

SUE L. ROBINSON, District Judge.

I. INTRODUCTION

*1 Presently before the Court is defendants' motion to dismiss plaintiff's substituted amended complaint. (D.I. 12) Defendants contend that plaintiff's complaint must be dismissed, *inter alia,* because (1) plaintiff's federal and state claims are preempted by federal labor laws and (2) plaintiff has failed to state a claim upon which relief can be granted. The Court finds that the disposition of this motion requires it to address only defendants' second argument that plaintiff has failed to state a claim upon which relief can be granted with respect to both the Building and Construction Trades Council of Delaware ("BCTCD") and the individual defendants ("Individual Defendants"). For the following reasons, the Court will grant defendants' motion to dismiss.

II. BACKGROUND

Plaintiff originally filed a complaint on January 4, 1993 in this Court. (D.I. 1) The original complaint was limited to seeking recovery for violations of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 158(b)(4), and various state law claims. (D.I. 1 at ¶ 22)

On February 8, 1993, defendants filed a motion to dismiss. (D.I. 8) In response, plaintiff filed a motion for leave to file an amended complaint. Plaintiff alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.,* for the first time in the amended complaint. (D.I. 11) Subsequently, defendants filed another motion to dismiss the substituted first amended complaint ("second motion to dismiss"). (D.I. 12)

On July 26, 1993, the Court granted defendants' second motion to dismiss. (D.I. 16) In doing so, the Court noted that it would not consider plaintiff's untimely response to the notion. (D.I. 15) Plaintiff then filed a motion for relief from the July 26, 1993 Order and requested an enlargement of time in which to file its memorandum of law in opposition to defendants' second motion to dismiss. (D.I. 17) On August 5, 1993, the Court granted plaintiff's motion to vacate the July 26, 1993 Order. Accordingly, the Court again will review defendants' second motion to dismiss, this time considering plaintiff's memorandum of law in opposition.

III. DISCUSSION

A. Dismissal Standards Under Fed.R.Civ.P. 12(b)(6)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1993 WL 566442 (D.Del.), 144 L.R.R.M. (BNA) 2991
(Cite as: 1993 WL 566442 (D.Del.))

Page 2

on a motion to dismiss, the allegations of the complaint must be accepted as true. *Cruz v. Beto,* 405 U.S. 319, 322 (1972)(per curiam). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the complaint. *Retail Clerks International Association v. Schermerhorn,* 373 U.S. 746 (1963). Additionally, the court must resolve any ambiguities concerning the sufficiency of the claims in favor of the plaintiff. *Hughes v. Rowe,* 449 U.S. 5, 10 (1980) (*per curiam* ).

The "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). However, it is not appropriate for the court to assume that plaintiffs "can prove facts that it has not alleged or that the defendants have violated the ... laws in ways that have not been alleged." *Associated General Contractors v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). With respect to RICO claims, a "liberal standard should be used in construing RICO complaints due to the remedial nature of the RICO statute." *Aloe Coal Company v. International Union, United Mine Workers of America,* Civ. A. No. 91- 1981, 1992 WESTLAW 465768 (Dec. 8, 1992)(citing *Sedima v. Imrex Co.,* 473 U.S. 479, 497-98 (1985)).

B. Analysis

1. Pattern of Racketeering Activity Requirement

*2 The essential elements of a civil RICO claim are "(1) the existence of a RICO 'enterprise'; (2) the existence of la pattern of racketeering activity'; (3) a nexus between the defendant, the pattern of racketeering activity or the RICO 'enterprise'; and (4) resulting injury to plaintiff, in his business or property." *Klapper v. Commonwealth Realty Trust,* 657 F.Supp. 948, 953 (D. Del.1987).

Defendants assert, *inter alia,* that the second element above is lacking in the present case since plaintiff has failed to allege a pattern of related and continuous predicate racketeering acts. (D.I. 13 at 23-24) In order to succeed on a civil RICO claim, which requires proof of a pattern of racketeering activity, the plaintiff "must show that the racketeering acts are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239 (1989)(emphasis in original). The Third Circuit has indicated that the factors which should be considered in determining whether alleged racketeering acts are properly characterized as "continuous" and "related" include the following: "[T]he number of unlawful acts, the length of time over which the acts were committed" the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity. *Barticheck v. Fidelity Union Bank/First Nat. State,* 832 F.2d 36, 39 (3d Cir.1987).

Predicate acts are considered related and continuous. combining to produce a pattern of racketeering activity, if they " 'have the same or similar purposes, results, participants, victims, or methods of commission, or are otherwise ... interrelated by distinguishing characteristics,' so as not to be 'isolated incidents.' " *United States v. Grayson,* 795 F.2d 278, 290 (3d Cir.1986) (quoting *Sedima, S.P.R.L. v. Inrex Co.,* 473 U.S. 479, 496 n. 14 (1985)). "[T]he threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business" and also may be "sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." *H.J. Inc.,* 492 U.S. at 242-43. in addition, "[a] party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Id.*

The Court finds that the averments of the pleading at bar, which must be taken as true for purposes of this motion, fail to satisfy the "pattern" requirement. Plaintiff has alleged only two incidents which occurred approximately four years apart in 1986 and 1992 at two separate locations. Defendants assert that there "is no indication that the 1986 picketing had anything to do with Esposito; indeed, there is no indication that Esposito was present at either of the job sites involved in the 1986 picketing." (D.I. 13 at 23) Plaintiff responds that RICO "does not require the RICO plaintiff to be present or otherwise involved with each alleged RICO predicate acts." (D.I. 15 at 18)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*3 The issue as to whether plaintiff was present during both RICO predicate acts is just one factor for the Court to consider in determining whether the pattern requirement has been satisfied. As noted above, other relevant factors include, *inter alia,* "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." In the case at bar, plaintiff alleges only two unlawful acts which took place approximately four years apart. Both acts were committed within the course of a day. The Court finds that such facts do not reflect a pattern of continuous and related activity.

2. Enterprise Requirement

Although it is not necessary for the Court to engage in an analysis of defendants' other arguments, brief consideration will be given to the claim that the BCTCD should be dismissed as a defendant.

In addition to the elements necessary to establish the existence of a RICO enterprise, a plaintiff must demonstrate that (1) the enterprise is an ongoing organization, with some form of structure which is used in making and carrying out decisions; (2) the enterprise members function as a continuing unit with established duties; and (3) the enterprise has an existence separate from the pattern of racketeering activity in which it engages. *United States v. Turkette,* 452 U.S. 576, 583 (1981); *accord United States v. Riccobene,* 709 F.2d 214, 221 (3d Cir.), *cert. denied,* 464 U.S. 849 (1983); *Seville Indus. Machinery,* 742 F.2d at 789-90. With respect to the third requirement, the Third Circuit has held that a "person" liable under RICO and a RICO enterprise must be different entities. *Brittingham v. Mobile Corp.,* 943 F.2d 297 (3d Cir.1991); *Petro-Tech Inc. v. Western Co. of North America,* 824 F.2d 1349 (3d Cir.1987); *B.F. Hirsch v. Enright Refining Co., Inc.,* 751 F.2d 628 (3d Cir.1984).

In the case at bar plaintiff alleges in Count I that ' "BCTCD is an 'enterprise' engaged in activities affecting interstate commerce." (D.I. 11 at 35) In Count II, plaintiff then alleges that "BCTCD is a 'person' as defined at 18 U.S.C.1961(3)." (D.I. 11 at ¶ 40) Defendants contend that defendant BCTCD cannot be both the enterprise and a defendant in a RICO action.

Plaintiff argues in response that with respect to Count I, the individual member local trade unions which comprise the BCTCD are the RICO persons and that those local trade unions as a whole collectively form the RICO "enterprise." (D.I. 15 at 10) Similarly, with respect to Count II, plaintiff asserts "that the Council is the RICO 'person' operating through the larger RICO 'enterprise'--the National Department." (D.I. 15 at 11)

Under RICO, a section 1962(c) violation requires a finding that the defendant "person" conducted or participated in the affairs of an "enterprise" through a pattern of racketeering activity. The Third Circuit has held in pertinent part as follows:

*4 [I]ndividual defendants, in contrast to collective entities, are generally distinct from the enterprise through which they act ... But when a defendant is itself a collective entity, it is more likely that the alleged enterprise is in reality no different from the association of individuals or entities that constitute the defendant or carry out its actions ... Without allegations or evidence that the defendant corporation had a role in the racketeering activity that was distinct from the undertakings of those acting on its behalf, the distinctiveness requirement is not satisfied.

*Brittinghan v. Mobil Corp.,* 943 F.2d 2971, 302 (3d Cir.1991).

In the case *sub judice,* the Court finds that the claims against the BCTCD cannot survive the motion to dismiss since plaintiff failed to allege that the defendant entity had a distinct and active role in the alleged racketeering activity apart from the actions of its employees and agents. *Aloe Coal Company v. International Union, United Mine Workers of America,* C.A. NO. 91- 1981, 1992 WESTLAW 465768 at *4 (W.D. Pa. Dec. 8, 1992) (citing *Brittingham,* 943 F.2d at 302; *Glessner v. Kenny,* 952 F.2d 702, 712 (3d Cir.1991)). Since the distinctiveness requirement has not been met, the claims against BCTCD can be appropriately dismissed on this ground as well.

3. State Law Claims

The claims set forth in Count III of plaintiff's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1993 WL 566442 (D.Del.), 144 L.R.R.M. (BNA) 2991  
**(Cite as: 1993 WL 566442 (D.Del.))**

Page 4

Substituted First Amended Complaint, as argued by defendants and essentially conceded by plaintiff, appear to be grounded on state law. Since the Court finds that plaintiff's RICO claims are properly dismissed at this time for the reasons stated above, since said claims are the only claims raised in plaintiff's Substituted First Amended Complaint over which this Court has original jurisdiction, and since this Court "may decline to exercise supplemental jurisdiction" over state law claims if the Court "has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3), said state law claims are properly dismissed on jurisdictional grounds.

IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiff's Substituted First Amended Complaint will be granted and the case will be dismissed. An Order consistent with this Memorandum Opinion shall issue.

1993 WL 566442 (D.Del.), 144 L.R.R.M. (BNA) 2991

**Motions, Pleadings and Filings (Back to top)**

. 1:93CV00006 (Docket)  
(Jan. 04, 1993)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

7

Westlaw.

Not Reported in F.Supp.
1992 WL 696398 (C.D.Cal.)
**(Cite as: 1992 WL 696398 (C.D.Cal.))**

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, C.D. California
In re BANK OF CREDIT AND COMMERCE
INTERNATIONAL DEPOSITORS LITIGATION.
Akhtar HAMID, et al., Plaintiffs,
v.
PRICE WATERHOUSE & CO., et al., Defendants.
**No. MDL-908.**
**No. CV 91-4483 CBM (EX).**

April 30, 1992.

MEMORANDUM OPINION

CONSUELO B. MARSHALL, District Judge.

*1 These matters came on regularly for hearing on March 30, 1992 before the Court, the Honorable Consuelo B. Marshall, District Judge presiding, on plaintiffs' motion to add additional parties, brought pursuant to Rules 15 and 21 of the Federal Rules of Civil Procedure, and defendants' motions to dismiss plaintiffs' third amended complaint (the "Complaint"), brought pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure. [FN1] Also pending resolution are issues raised in defendant PW/UK's motion which the Court took under submission on January 15, 1992 (*i.e.,* whether to dismiss for lack of subject matter jurisdiction, on forum non conveniens grounds, or to abstain). Having considered the papers filed in connection with the motions and the arguments of counsel at hearing, the Court issues the following memorandum opinion.

I. STATEMENT OF FACTS
On July 5, 1991, banking regulators in the United Kingdom, Luxembourg, and the Cayman Islands seized the operations of the Bank of Credit and Commerce International. [FN2] At the time it was closed, BCCI operated 400 branches in over 70 countries and was the fifth largest private bank in the world. BCCI, S.A. will not reopen and is "hopelessly insolvent"; depositors' funds are frozen and unavailable. Potential claims against BCCI exceed its remaining assets, but the cooperative effort of liquidators in the United Kingdom, Luxembourg, and the Cayman Islands has resulted in a proposed settlement with BCCI's majority shareholders, Sheikh Zayed and the government of Abu Dhabi. The settlement contemplates a cash payment by Abu Dhabi of $2.2 billion, which would result in a distribution to depositors of between 25 and 40 percent of the deposits they lost. [FN3]

In the United States, BCCI operated agency offices at one time in Los Angeles, San Francisco, and Beverly Hills, California; Boca Raton, Miami, and Tampa, Florida; Houston, Texas; Chicago, Illinois; New York City, New York; and Washington, D.C. At the time BCCI was closed by regulators, only the Los Angeles and New York offices were operating. Plaintiffs allege that BCCI solicited and obtained deposits in the United States through these agency offices. *See* Complaint, ¶¶ 33, 289(g). Presently, the Superintendents of Banking of New York and California have seized BCCI assets and are proceeding to settle depositor claims. BCCI assets being marshalled in the United States far exceed potential claims and only the excess will be turned over to the foreign BCCI liquidators. As a result, no BCCI depositors who had money in United States offices on July 5, 1991 will lose their deposits. [FN4]

Plaintiffs purport to represent approximately 1 million BCCI depositors worldwide who have lost $6 million as a result of the financial collapse and regulatory seizure of BCCI. Named plaintiffs consist of United States citizens (Hamid, Curran, Khorassanchy, and Chawla); [FN5] United States corporations (Soha, Inc. and Idriss Devco, Inc.); foreign corporations (S & L Gentrade, Inc. and Red Circle Investments, Ltd.); and foreign residents (Musleh, Hermans, Hasim, and Murbarek). Plaintiffs have named seventy-seven defendants on

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1992 WL 696398 (C.D.Cal.)
**(Cite as: 1992 WL 696398 (C.D.Cal.))**

Page 2

the basis of their various relationships to BCCI. [FN6] BCCI itself is not a defendant here because of international liquidation proceedings and a resulting bankruptcy stay entered in the United States. *See In re Petition of Brian Smouha,* No. 91-B-13569 (S.D.N.Y.Bankr.).

*2 Plaintiffs' initial complaint alleged four claims for relief: Counts One through Three were brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. sections 1962(a)/(d), [FN7] (c)/(d), [FN8] & (b)/(d); [FN9] Count Four alleged a claim under the Alien Tort Statute, 28 U.S.C. § 1350. [FN10] On January 15, 1992, the Court issued its Order Re Dismissal and a More Definite Statement (the "Order"), in which the Court dismissed Count Four without leave to amend, but gave plaintiffs leave to amend the RICO claims contained in their 212-page second amended complaint. [FN11] In response to the Court's Order, plaintiffs filed their 482-page Complaint on January 30, 1992, attaching (and, in many cases, incorporating by reference) 2003 additional pages of exhibits.

The facts alleged in plaintiffs' Complaint fall into three categories: (1) BCCI's involvement in various criminal activities; (2) regulatory violations stemming from BCCI's secret ownership and control of several United States financial institutions; [FN12] and (3) the worldwide fraud perpetrated upon depositors, which ultimately ended in the financial collapse of BCCI. In response to the Court's Order, [FN13] plaintiffs allege that the defendants' violations of RICO caused them to lose their deposits as follows:
(a) depositors were defrauded into placing their deposits into a criminal enterprise instead of a legitimate bank because BCCI falsely represented that it had substantial assets, profitability, a lawful operation and would be able to honor depositors' claims;
(b) the ongoing existence of BCCI's criminal enterprise would not have been possible had the defendants not helped BCCI continue to operate; [FN14]
(c) as a continuing operation, BCCI continued to accept plaintiffs' deposits; and
(d) because of defendants' racketeering acts (which constituted the operation of BCCI), banking regulators seized BCCI on July 5, 1991, freezing depositors' funds and causing their present losses.
*See* Complaint, ¶¶ 342, 350, 358.

## II. ANALYSIS
### A. SUFFICIENCY OF PLAINTIFFS' ALLEGATIONS

On a motion to dismiss for failure to state a claim upon which relief can be granted brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint must be construed in the light most favorable to the non-moving party and all of the allegations contained in the complaint are taken as true. *Jenkins v. McKeithen,* 395 U.S. 411, 421-22, 89 S.Ct. 1843, 23 L.Ed.2d 404, *reh'g denied,* 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123 (1969). [FN15] A Rule 12(b)(6) motion to dismiss should be granted only if "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Despite these liberal pleading standards, certain types of pleadings require more particularity. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Allegations of fraud require the pleader to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each fraudulent scheme. *Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.,* 940 F.2d 397, 405 (9th Cir.1991), *cert. denied,* 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393 (9th Cir.1986).

*3 Rule 9(b) ensures that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong. *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985). [FN16] "[P]leading is sufficient under Rule 9(b) if it identifies 'the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.' " *Id.* at 735 (citation omitted). When

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1992 WL 696398 (C.D.Cal.)  
**(Cite as: 1992 WL 696398 (C.D.Cal.))**

Page 3

the alleged conduct upon which a RICO claim are fraud-type predicate offenses, Rule 9(b)'s requirement of pleading particularity applies to those allegations. *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 541 (9th Cir.1989).

Most of the moving defendants continue to protest what they consider a dearth of allegations specifying their role in the alleged wrongdoing. [FN17] However, the Court is satisfied that plaintiffs' Complaint alleges with sufficient particularity the basis for each defendants' inclusion in plaintiffs' suit. Indeed, many of plaintiffs' allegations clearly and painstakingly detail defendants' involvement with BCCI.

Additionally, plaintiffs' prior use of inherently ambiguous names such as "Price Waterhouse" and "Ernst & Young" in previous pleadings is not repeated in the Complaint. Plaintiffs have complied with the Court's Order to "distinguish between the separate firms of each organization...." *See* Order, ¶ 10(B). [FN18] In addition to making distinctions between the accounting firm entities, plaintiffs also sufficiently allege an agency relationship between the different entities and are entitled to proceed on that basis as well.

The Court further concludes that plaintiffs adequately allege both conspiracy and aiding and abetting liability. Consequently, these allegations bar the independent evaluation of each defendants' isolated role in BCCI's collapse urged by the defendants because the Court cannot dismiss defendants who are sufficiently alleged to have been co-conspirators with those defendants whose predicate acts caused plaintiffs' injuries. *See Beltz Travel Serv., Inc. v. International Air Transport Ass'n,* 620 F.2d 1360, 1367 (9th Cir.1980) (all conspirators are liable for the acts of their co-conspirators).

B. PLAINTIFFS' RICO CLAIMS

*1. Plaintiffs' Alleged RICO Enterprises*

Plaintiffs clearly state that their alleged RICO enterprises are both identical to the pattern of racketeering activity. *See* Complaint, ¶¶ 339 (BCCI enterprise and pattern, as well as associated-in-fact enterprise and pattern, are "one in the same"), 340(b) ("BCCI enterprise and association-in-fact enterprise are both "synonymous with the pattern of illegal racketeering"), 347, 348(b), 355, & 356(b). Plaintiffs' failure to allege an ascertainable structure to the RICO enterprises--separate and apart from the pattern of racketeering activity--is fatal to the allegations of these enterprises. As the Ninth Circuit noted in *United Energy Owners Comm., Inc. v. United States Energy Management Sys., Inc.,* 837 F.2d 356, 362 n. 13 (9th Cir.1988),

*4 [t]he *Allington* [*v. Carpenter,* 619 F.Supp. 474 (C.D.Cal.1985) ] court correctly noted that under [ *United States v.*] *Turkette* [452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981),] every private plaintiff asserting a violation of RICO section 1962(c) must "plead an enterprise apart from the underlying pattern of racketeering activity." 619 F.Supp. at 479 (citing *United States v. Bledsoe,* 674 F.2d 647, 665 (8th Cir.) (RICO enterprise must have "an 'ascertainable structure' distinct from that inherent in the conduct of a pattern of racketeering activity."), *cert. denied,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982)).

*See also Sigmond v. Brown,* 645 F.Supp. 243, 246 (C.D.Cal.1986), *aff'd,* 828 F.2d 8 (9th Cir.1987) (no separate enterprise where plaintiff had stated that the sole purpose of the enterprise was to conduct the alleged racketeering activity). Thus, plaintiffs' RICO claims fail to state a claim because the alleged enterprises have no ascertainable structure distinct from the alleged pattern of racketeering activity. [FN19]

*2. Plaintiffs' "Reinvestment Injury" Claim Under Section 1962(a)*

Plaintiffs section 1962(a) RICO claim is based solely on the use or investment, more accurately characterized as "reinvestment," of racketeering income by defendants in their own continuing operations. *See* Complaint, ¶ 341(f). [FN20] The causal nexus to plaintiffs' injury alleged by plaintiffs is that the reinvestment of racketeering income in each defendants' own operations permitted each defendant to continue to exist and engage in the illegal conduct which permitted BCCI to continue to operate without detection and solicit deposits from plaintiffs. Plaintiffs rely upon *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1992 WL 696398 (C.D.Cal.)
**(Cite as: 1992 WL 696398 (C.D.Cal.))**

Page 4

1393 (9th Cir.1986), to argue that each defendants' reinvestment of racketeering income in its own operation states a claim under section 1962(a). See id. at 1398 ("Logic dictates that a corporation, receiving income from a pattern of racketeering in which it has participated as a principal, can invest that income in its own operations.") (citing *Pennsylvania v. Derry Constr. Co.,* 617 F.Supp. 940, 943 (W.D.Pa.1985)). The *Schreiber* court expressly held that "where a corporation engages in racketeering activities and is the direct or indirect beneficiary of the pattern of racketeering activity, it can be both the 'person' and the 'enterprise' under section 1962(a)." *Id.*

However, a question not considered by *Schreiber* is whether reinvestment can cause plaintiffs' injury in a section 1962(a) claim. Section 1964(c) of RICO provides a private right of action to persons injured "by reason of a violation of section 1962." In *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3285-86, 87 L.Ed.2d 346 (1985), the Supreme Court held that a plaintiff has standing to bring a RICO claim under section 1962(c) only to the extent that the conduct constituting the RICO violation caused injury to his business or property. Thus, under section 1962(c), an allegation of a pattern of racketeering activity which causes injury to plaintiff sufficiently states a cause of action.

*5 By contrast, the gravamen of the offense under Section 1962(a) is not the underlying racketeering activity itself, but the subsequent use and investment of proceeds obtained through the racketeering activity. Thus, to state a claim under section 1964(c) for a violation of section 1962(a), plaintiffs must allege injury by the use or investment of the proceeds of racketeering activity. See, e.g., *Quaknine v. MacFarlane,* 897 F.2d 75, 82 (2d Cir.1990); *Rose v. Bartle,* 871 F.2d 331, 357-58 (3d Cir.1989); *Grider v. Texas Oil & Gas Corp.,* 868 F.2d 1147, 1149 (10th Cir.), cert. denied, 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989); *U.S. Concord, Inc. v. Harris Graphics Corp.,* 757 F.Supp. 1053, 1060 (N.D.Cal.1991); *In re U.S. Grant Hotel Assoc. Ltd. Sec. Litig.,* 740 F.Supp. 1460, 1469 (S.D.Cal.1990). Contra *In re National Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litig.,* 682 F.Supp. 1073 (C.D.Cal.1987) (" *NMEC* "). [FN21]

Plaintiffs assert that defendants' reinvestment in their own operations perpetuated the RICO enterprise and permitted the racketeering activity to continue. See Complaint ¶ 341(f). This reinvestment injury theory is simply another way of stating that the predicate acts caused plaintiffs' injury and does not state an injury separately stemming from the reinvestment sufficient to state a claim under section 1962(a). See *U.S. Concord, Inc.,* 757 F.Supp. at 1060; *Williamson v. Simon & Schuster,* 735 F.Supp. 565, 567-68 (S.D.N.Y.1990). For these reasons, plaintiffs' section 1962(a) claim is dismissed without leave to amend. [FN22]

C. ARE PLAINTIFFS' CLAIMS DERIVATIVE OR DIRECT?

Defendants contend that plaintiffs lack standing because their claims are derivative of BCCI rather than direct. [FN23] Plaintiffs do not contest the legal principles cited by defendants; rather, plaintiffs merely insist that their claims are direct.
However, plaintiffs' RICO claims are derivative of BCCI and plaintiffs lack standing to prosecute them. See, e.g., *Adato v. Kagan,* 599 F.2d 1111, 1117 (2d Cir.1979) (citing 1 Michie, *Banks and Banking* § 69 at 289-91 (1973), for the general rule that "wrongdoing by bank officers that adversely affects all depositors creates a liability which is an asset of the bank and only the bank or its receiver may sue for its recovery."); *Sax v. World Wide Press, Inc.,* 809 F.2d 610, 613 (9th Cir.1987) (citing 12B W. Fletcher, *Cyclopedia of the Law of Private Corporations,* § 5911 (rev. perm. ed. 1984), for the general rule that "an action enforces a corporate right 'if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders.' "); [FN24] *In re Sunrise Sec. Litig.,* 916 F.2d 874 (3d Cir.1990) (a depositor's loss in an insolvent institution is a derivative claim that can only be brought on behalf of the institution by the receiver); *Sparling v. Hoffman Constr. Co.,* 864 F.2d 635, 640-41 (9th Cir.1988) (dismissing shareholder and guarantor RICO claims because they were derivative). [FN25]

*6 Cases cited by plaintiffs which permitted direct claims to proceed are all distinguishable. For example, in *Ashland Oil, Inc. v. Arnett,* 875 F.2d 1271, 1279-80 (7th Cir.1989), the court permitted

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.