Not Reported in F.Supp.
1992 WL 696398 (C.D.Cal.)
(Cite as: 1992 WL 696398 (C.D.Cal.))

Page 5

suit against officers of a bankrupt corporation because the injury suffered by the RICO plaintiffs was significantly different than the injury suffered by creditors in general. [FN26] Similarly, in *University of Maryland v. Peat Marwick Main & Co.*, 923 F.2d 265 (3d Cir.1991), plaintiffs were policyholders of an insolvent insurance company whose RICO claim against the insurer's independent auditors was direct and not derivative based on a breach of duties owed by the defendant directly to the plaintiffs, not to the insolvent insurer. *Id.* at 273. Neither of these cases support a proposition other than that already recognized by the Court: "Absent allegations of a special duty to the depositors or injury distinct from that suffered by other depositors, plaintiffs' claims fail to state a claim upon which relief can be granted." *See* Order, ¶ 2 & n. 1 (citing *Sparling,* 864 F.2d at 640). [FN27]

Plaintiffs also contend that the result reached by the Third Circuit in *Sunrise* does not apply to this case and that *Harmsen v. Smith,* 542 F.2d 496 (9th Cir.1976), *cert. denied,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983), is the controlling precedent. [FN28] However, *Harmsen* held that a depositor who has lost funds in an insolvent institution as a result of fraud by the bank's officers states a claim for direct injury under the National Bank Act, 12 U.S.C. § 93. Not only is *Harmsen* 's holding expressly limited to actions brought under section 93 of the National Bank Act, *Harmsen,* 542 F.2d at 501-02, but the result in *Harmsen* appears inconsistent with the principles it purports to apply. *See supra,* n. 28; *compare Leach v. Federal Deposit Ins. Corp.,* 860 F.2d 1266, 1271-74 (5th Cir.1988), *cert. denied,* 491 U.S. 905, 109 S.Ct. 3186, 105 L.Ed.2d 695 (1989) (describing its result as consistent with *Harmsen,* the court held that absent special duty or distinct injury, minority shareholder's suit under *both* section 93 of the National Bank Act and RICO is derivative and cannot be maintained).

Finally, plaintiffs contend that *Sparling* 's rule barring derivative suits does not apply where fraud *by* a corporation has occurred, as opposed to fraud *on* a corporation, where the corporation may sue to recover for harm done to it. Plaintiffs argue that their claims are direct and appropriate for class-action prosecution under Rule 23 of the Federal Rules of Civil Procedure because (a) unlike those cases finding claims to be derivative, no liquidator exists to prosecute BCCI claims; (b) even if such a trustee existed, claims belonging to the depositors could not be prosecuted by such a trustee; and (c) prosecution by the trustee of the depositors' claims would be subject to an *in pari delicto* defense, since BCCI was not a victim but a perpetrator.

*7 a. Existing Receiver. Since the assumption of a receiver who will represent the depositors' interest underlies all of the cases holding claims to be derivative, plaintiffs contend that the cases are inapposite because no liquidator exists that will prosecute the claims of BCCI. This assertion is belied by the appointment of the Joint Provisional Liquidators by the High Court in London. Plaintiffs' assertion that the liquidators will not prosecute these claims is belied by the proposed settlement with Abu Dhabi for $2.2 million and recent claims filed against Ernst & Young.

b. Trustee's Standing. The cases relied upon by plaintiffs, *i.e., Williams v. California 1st Bank,* 859 F.2d 664, 667 (9th Cir.1988); *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972); *In re Lendvest Mortgage, Inc.,* [1990 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 73,595 at 97,812 (N.D.Cal. July 27, 1990), are inapposite and involve circumstances where plaintiffs had individual causes of action that could not be pursued by the corporation's representatives on their behalf.

c. *In Pari Delicto* Defense. Plaintiffs, relying upon *Cenco, Inc. v. Seidman & Seidman,* 686 F.2d 449 (7th Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982), contend that where the corporation is the perpetrator of a fraud and benefits from it, the trustee stands in the corporation's shoes and cannot maintain a claim like the one asserted by plaintiffs here. However, the Seventh Circuit later limited the result in *Cenco* to situations where the fraud benefits the corporation. *See Schacht v. Brown,* 711 F.2d 1343, 1347-48 (7th Cir.), *cert. denied,* 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983); *see also Kempe v. Monitor Intermediaries, Inc.,* 785 F.2d 1443, 1444 (9th Cir.1986) (in a case "indistinguishable from" *Schacht,* the court found that the liquidator had

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1992 WL 696398 (C.D.Cal.)
**(Cite as: 1992 WL 696398 (C.D.Cal.))**

Page 6

standing to sue under RICO). Here, BCCI did not benefit from the dissipation of its assets; indeed, plaintiffs' repetitively assert that BCCI is "hopelessly insolvent." [FN29]

D. SUBJECT MATTER JURISDICTION

Before considering the issues raised by the motions of PW/UK and ADIA to dismiss for lack of subject matter jurisdiction, the Court must first evaluate plaintiffs' claims in light of two requirements imposed by RICO: (1) proximate cause, and (2) cognizable injury.

1. *RICO's Proximate Cause Requirement*

Section 1964 of RICO, which provides civil remedies for violations of RICO, states that "[a]ny person injured in his business or property *by reason of* a violation of section 1962 ... may sue...." 18 U.S.C. § 1964(c) (emphasis added). Thus, the harm alleged must be "by reason of," or proximately caused by, the predicate acts. *See Holmes v. Securities Investor Protection Corp.*, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *Brandenburg v. Seidel*, 859 F.2d 1179, 1188 (4th Cir.1988) (defendant is responsible for injuries flowing from defendant's predicate act liability).

*8 Plaintiffs state a RICO claim only to the extent that the harm they suffer is proximately caused by the predicate acts of racketeering they allege. *Holmes*, 112 S.Ct. 1311, 117 L.Ed.2d 532; *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 294 (9th Cir.1990), *cert. denied*, 112 S.Ct. 332, 116 L.Ed.2d 272 (1991); *see also Bastian v. Petren Resources Corp.*, 892 F.2d 680, 686 (7th Cir.), *cert. denied*, 110 S.Ct. 2590, 110 L.Ed.2d 270 (1990) (unless plaintiffs are worse off as a result of defendant's acts than they would have been in the absence of defendant's acts, the causal nexus required is absent); *compare O'Malley v. O'Neill*, 887 F.2d 1557 (11th Cir.1989), *cert. denied*, 110 S.Ct. 2620, 110 L.Ed.2d 641 (1990); *Burdick v. American Express Co.*, 865 F.2d 527 (2d Cir.1989); *Sperber v. Boesky*, 849 F.2d 60 (2d Cir.1988).

Under the circumstances, proximate cause is a question of law for the Court. *Benefiel v. Exxon Corp.*, 92 Daily Journal D.A.R. 3972, 3973 (9th Cir. Mar. 25, 1992) ("[W]here causation cannot reasonably be established under the facts alleged by a plaintiff, the question of proximate cause is one for the court."); *see Brandenburg*, 859 F.2d at 1189 (proximate cause is a question for the court). Consequently, the Court can determine whether plaintiffs' injuries are sufficiently connected to the alleged RICO predicate acts to state a claim, considering factors such as foreseeability of the particular injury, the intervention of other independent causes, and the factual directness of the causal connection. *Id.* (citing Restatement (Second) of Torts § 548A comments a, b).

Here, plaintiffs allege twenty-eight specific predicate acts of racketeering. *See* Complaint, ¶¶ 350(f)-(ag). [FN30] Few of these alleged acts, however, have the requisite causal connection to the loss of plaintiffs' deposits. The harm inflicted upon plaintiffs stems solely from the looting of depositors' funds, made possible because of allegedly fraudulent statements made regarding BCCI's financial condition and falsified account information that hid BCCI's true financial condition. *See* Complaint, ¶¶ 350(h); 350(o); 350(ad); 350(af); *see also id.*, ¶¶ 291(a)-(x), (aa)-(ao); ¶¶ 296-308. The alleged acquisition of control in United States banks, *id.*, ¶¶ 350(f) & (y), also proximately caused plaintiffs' loss, but only insofar as BCCI dispatched depositors' money to strawmen or frontmen for illegitimate purposes (assuming that the "infiltration of the United States banking system" resulted in a net cost to BCCI, which is not clear in the Complaint). [FN31]

On the other hand, the following predicate acts of racketeering, allegedly committed by all of the defendants, did not proximately cause plaintiffs' losses: [FN32]
 (1) acquiring or controlling numerous United States banks, *id.*, ¶ 350(f) & (y), and then covering up that ownership, *id.*, ¶ 350(r);
 (2) financing illegal drug transactions, *id.*, ¶ 350(g);
 *9 (3) smuggling coffee into the United States, *id.*, ¶ 350(i);
 (4) assisting former heads of state Manuel Noriega and Alan Garcia to loot the national treasuries of Panama and Peru, *id.*, ¶ 350(j), (v), & (ae);
 (5) laundering money and improperly pleading guilty to that charge to avoid further prosecution,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1992 WL 696398 (C.D.Cal.)
**(Cite as: 1992 WL 696398 (C.D.Cal.))**

Page 7

*id.*, ¶ 350(k) & (ac);
(6) causing the United States banks BCCI illegally acquired or controlled to make illegal political contributions, *id.*, ¶ 350(l);
(7) assisting arms smuggling to Iran, *id.*, ¶ 350(m);
(8) delaying investigation into BCCI's United States conduct by buying political favor, *id.*, ¶ 350(n);
(9) securities fraud committed by CenTrust, *id.*, ¶ 350(p);
(10) falsifying CenTrust's financial condition and artificially inflating CenTrust's financial condition, delaying its regulatory seizure, *id.*, ¶ 350(q) & (z);
(11) illegally funneling $3 million from a telemarketing scheme out of the United States, *id.*, ¶ 350(s);
(12) financing the sale of French-manufactured aircraft owned by Argentina to third world countries, *id.*, ¶ 350(t);
(13) financing international terrorism, *id.*, ¶ 350(u);
(14) assisting in the sale of Jordanian helicopters to Guatemala, *id.*, ¶ 350(x); and
(15) BCCI's illegal acceptance of deposits in its United States agency offices, *id.*, ¶ 350(ag). [FN33]

Indeed, plaintiffs themselves recognize that the victims of many of these predicate acts were not the depositors but others, including BCCI, *id.*, ¶ 350(h), the government of Peru, *id.*, ¶ 350(v), the American taxpayers, *id.*, ¶ 350(z), and defendant First American. *Id.*, ¶ 350(aa).

By including allegations of BCCI's criminal activities and United States banking violations in the Complaint, plaintiffs purport to have an interest in far more conduct, engaged in by many more defendants, than those which proximately caused the loss of their deposits. [FN34] To include defendants' United States activity in their causal chain, plaintiffs allege that their injuries were caused by (a) acts of the defendants here in the United States that helped avoid detection by United States banking regulators and permitted BCCI's illegal activities in the United States (including the solicitation of deposits) to continue; (b) the eventual discovery by United States regulators of BCCI's illegal conduct in the United States banking industry; and (c) the role of United States regulators in prompting overseas regulators to close BCCI. *See* Complaint, ¶¶ 342, 350, & 358. [FN35] However, plaintiffs' "causal" allegations implicating the activities of the defendants in the United States and the role United States regulators played in BCCI's seizure do not comport with plaintiffs' factual description of the events leading up to the seizure. *See* Complaint, ¶ 296 at 240 (inquiries from the Bank of England led to the discovery of massive fraud at BCCI and the subsequent regulatory seizure; United States regulators were not involved). [FN36]

2. *Plaintiffs Lack Injuries That Support RICO Claims*

*10 Injury is the *sine qua non* of recovery by plaintiffs on their RICO claims. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.,* 793 F.2d 1100, 1104 (9th Cir.1986), *cert. denied,* 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986) (citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346 (1985)). Without injury, plaintiffs cannot maintain their RICO claims. *See John L. Motley Assocs., Inc. v. Rumbaugh,* 104 Bankr. 683 (E.D.Pa.1989) (no standing to assert RICO claim if claim can be satisfied from bankruptcy estate because plaintiff cannot show requisite "injury"); *Banker's Trust Co. v. Rhoades,* 859 F.2d 1096, 1106 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989) (where plaintiffs' claims against former officers of insolvent corporation overlapped with claims asserted by its trustee in bankruptcy, plaintiffs' damages were "unrecoverable," "speculative," and "unprovable"; plaintiffs' injury was wholly dependent upon the trustee's lack of recovery); *Barnett v. Stern,* 909 F.2d 973, 977 n. 4 (7th Cir.1990) (RICO claims are premature where it was uncertain whether plaintiffs would satisfy their claims from the bankruptcy estate); *L'Europeene de Banque v. La Republica de Venezuela,* 700 F.Supp. 114, 118-19 (S.D.N.Y.1988). All BCCI depositors lack the requisite injury to proceed with RICO claims at this time. [FN37]

Plaintiffs distinguish *Banker's Trust* and argue that it should not apply because the Second Circuit applied a "discovery of injury" accrual to a RICO cause of action and stated that "refusal to award

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1992 WL 696398 (C.D.Cal.)
**(Cite as: 1992 WL 696398 (C.D.Cal.))**

Page 8

damages as too speculative is equivalent to holding that no cause of action has yet accrued." *Id.* at 1106 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 339, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971)). In contrast, plaintiffs contend that a RICO claim accrues in the Ninth Circuit when the plaintiff has "actual or constructive knowledge of the fraud." *Beneficial Standard Life Ins. Co. v. Madariaga,* 851 F.2d 271, 275 (9th Cir.1988). However, a more precise statement of the rule is that the limitations period in the Ninth Circuit begins to run " 'when the plaintiff knows or has reason to know of the *injury* which is the basis for his action.' " *Beneficial Standard Life,* 851 F.2d at 274 (citing and approving the accrual rule stated in *Compton v. Ide,* 732 F.2d 1429, 1433 (9th Cir.1984) ) (emphasis added); *State Farm Mutual Auto Ins. Co. v. Ammann,* 828 F.2d 4, 5 (9th Cir.1987) (same). Accordingly, plaintiffs' distinction does not avoid the Court's application of *Banker's Trust* to their RICO claims. [FN38]

3. *Extra-Territorial Jurisdiction*

While Congress certainly has the authority to enact laws that reach conduct occurring outside the territorial boundaries of the United States, whether Congress has in fact exercised that authority is a question of statutory construction. *EEOC v. Arabian Am. Oil Co.,* 111 S.Ct. 1227, 1230, 113 L.Ed.2d 274 (1991); *Republic of Philippines v. Marcos,* 818 F.2d 1473, 1478 (9th Cir.1987), *on reh'g,* 862 F.2d 1355 (9th Cir.1988) (thefts occurring in the Philippines "quite probably" not reached by RICO and finding jurisdiction solely on the basis of acts occurring in the United States). However, there is a strong presumption against extra-territorial application of any federal statute and unless a contrary intent appears, the statute is meant to apply only within the territorial jurisdiction of the United States. *See EEOC v. Arabian Am. Oil Co.,* 111 S.Ct. 1227, 1230, 113 L.Ed.2d 274 (1991) (Title VII does not apply extra-territorially); *Independent Union of Flight Attendants v. Pan Am. World Airways, Inc.,* 923 F.2d 678, 680-82 (9th Cir.1991), *op. withdrawn and appeal dismissed on other grounds,* 92 Daily Journal D.A.R. 4909 (9th Cir. Apr. 10, 1992) (National Railway Labor Act does not apply extra-territorially). [FN39]

*11 To determine whether foreign conduct vests the Court with subject matter jurisdiction requires the Court to undertake three separate inquiries: (1) the effect or intended effect on the foreign commerce of the United States; (2) the type and magnitude of the alleged illegal behavior; and (3) the appropriateness of exercising extraterritorial jurisdiction in light of considerations of international comity and fairness. *Timberlane Lumber Co. v. Bank of Am., N.T. & S.A.,* 749 F.2d 1378, 1381 (9th Cir.1984), *cert. denied,* 472 U.S. 1032, 105 S.Ct. 3514, 87 L.Ed.2d 643 (1985) (citing *Timberlane Lumber Co. v. Bank of Am., N.T. & S.A.,* 549 F.2d 597, 613 (9th Cir.1976) ( *Timberlane I* )). [FN40]

Assuming *arguendo* that the first two *Timberlane 1* elements are met here, the Court must then determine "whether the interests of, and links to, the United States--including the magnitude of the effect on American foreign commerce--are sufficiently strong, vis-a-vis those of other nations, to justify an assertion of extraterritorial authority." *Timberlane I,* 549 F.2d at 613. This determination requires the Court to consider seven factors:

> (1) the degree of conflict with foreign law or policy, (2) the nationality or allegiance of the parties and the locations or principal places of businesses or corporations, (3) the extent to which enforcement by either state can be expected to achieve compliance, (4) the relative significance of effects on the United States as compared with those elsewhere, (5) the extent to which there is explicit purpose to harm or affect American commerce, (6) the foreseeability of such effect, and (7) the relative importance to the violations charged of conduct within the United States as compared with conduct abroad.

*Id.* at 614; *see Vespa of Am. Corp. v. Bajaj Auto Ltd.,* 550 F.Supp. 224 (N.D.Cal.1982). Since only racketeering acts that are predominantly foreign caused plaintiffs' losses, and United States depositors will never suffer any injury because no United States deposits will be lost, the exercise of subject matter jurisdiction over this case would be improper.

a. *Degree of conflict with foreign law or policy.*
This element of *Timberlane I* 's test is usually applied in antitrust cases, where foreign policies and market systems often run counter to those

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1992 WL 696398 (C.D.Cal.)
**(Cite as: 1992 WL 696398 (C.D.Cal.))**

Page 9

policies expressed in United States autitrust law. RICO, on the other hand, prohibits acts that are--for the most part--prohibited everywhere. [FN41] However, the prosecution of plaintiffs' RICO claims here has the potential to interfere with the orderly liquidation of BCCI, presently proceeding in the United Kingdom, Luxembourg, and the Cayman Islands (where BCCI's main operations existed), as well as in many of the sixty nine countries where BCCI accepted deposits. This action certainly conflicts with those foreign proceedings.

b. Nationality or allegiance of the parties and the locations or principal places of businesses or corporations. Few of the one million plaintiffs deposited money in United States offices of BCCI. The defendants whose conduct principally contributed to plaintiffs' losses are all foreign. Additionally, the locations or principal places of the relevant businesses or corporations are all foreign.
By including the infiltration of the United States banking system by BCCI in their RICO claim, plaintiffs confuse the true nature of their looting claim and the appearance that an abundance of relevant activity and parties exist in the United States is misleading. Plaintiffs' argument that the American banks are like subsidiaries of BCCI that weigh in favor of exercising jurisdiction here is wrong.

*12 c. Degree to which enforcement by either state can be expected to achieve compliance. It would be very difficult, if not impossible, for plaintiffs to enforce any judgment that might be entered by the Court here in many of the sixty-eight other countries where BCCI accepted deposits. [FN42] Furthermore, the possibility that the Court's decisions may not have preclusive effect outside United States boundaries, particularly after what promises to be lengthy and expensive litigation, makes the exercise of extraterritorial jurisdiction here improper.

d. Relative significance of effects on the United States as compared with those elsewhere. Plaintiffs contend that the criminal conduct charged against BCCI in the United States and the guilty pleas entered by BCCI here not only show the influence BCCI had in the United States, but that the guilty pleas would be admissible in plaintiffs' RICO suit and would have preclusive effect. Plaintiffs' argument is faulty because the conduct alleged in criminal cases in the United States did not cause plaintiffs' loss, and the guilty pleas were by BCCI, who is not a defendant here.

BCCI is a foreign bank with its core operations in Europe, the Middle East, and Africa. At the time it closed in July 1991, BCCI only had two agencies open in the United States. On June 30, 1991, with world-wide deposits reported at $15.969 billion, only 1/2 of one percent of those deposits were in BCCI's United States agencies. Not only are 99 1/2 percent of BCCI deposits foreign, none of the deposits made in United States agency offices will be lost. [FN43]

e. Extent to which there is explicit purpose to harm or affect American commerce and the foreseeability of such effect. Plaintiffs contend that BCCI solicited and accepted depositors' money here in the United States through its agency offices, despite the fact that it was illegal for BCCI to do so. See Complaint, ¶¶ 33, 289(f). However, no justiciable injury may ever arise from those deposits allegedly made in the United States. Though plaintiffs contend that BCCI's involvement in the United States banking system affects United States commerce, this conduct did not injure plaintiffs.
Similarly, the fraud allegedly perpetrated by the accounting firms and H & K in the United States, see Complaint ¶¶ 28, 36, does not reflect an intended effect on United States commerce because all of plaintiffs' losses stem from their deposits in BCCI's foreign operations.

f. Relative importance to the violations charged of conduct within the United States as compared with conduct abroad. Since none of the predicate acts that caused plaintiffs' injuries occurred here, the United States has very little interest in the foreign conduct of BCCI, however egregious it may be. Construing RICO to provide a remedy to this foreign fraud would give RICO a "nearly boundless extraterritorial scope," providing "a vehicle for adventurous civil and criminal litigators with an itch to see the world." *Peters v. Welsh Dev. Agency,* 1991 WL 172950 1991 U.S.Dist. LEXIS 12174 (N.D.Ill. Aug. 29, 1991).

D. FORUM NON CONVENIENS

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1992 WL 696398 (C.D.Cal.)  
**(Cite as: 1992 WL 696398 (C.D.Cal.))**

Page 10

*13 A party moving to dismiss on grounds of forum non conveniens must show two things: (1) the existence of an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal. *Lockman Foundation v. Evangelical Alliance Mission,* 930 F.2d 764, 767 (9th Cir.1991). The requirement of an adequate alternative forum is ordinarily satisfied when a defendant is "amenable to process" in the other jurisdiction. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 265 n. 22, 70 L.Ed.2d 419, 435 n. 22 (1981) (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 506-07, 67 S.Ct. 839, 842, 91 L.Ed. 1055, 1061 (1947)).

Here, not all defendants are amenable to process in the United Kingdom. One of BCCI's principal accounting firms (PW/UK), BCCI's public relations firm (H & K), and defendants Naqvi and Iqbal are all subject to U.K. jurisdiction. Defendants BofA, PW/US, and E & Y have stipulated to accede to U.K. jurisdiction. On the other hand, the Clifford Defendants, the InterRedec Defendants, the First American Defendants, and defendant Dobrich contest United Kingdom jurisdiction and are probably not subject to compelled process in the U.K.

The defendants invite the Court to distinguish between "key" defendants-- subject to process in the U.K.--and those United States defendants whose conduct did not proximately cause plaintiffs' losses. However, plaintiffs' allegations of conspiracy and aiding and abetting foreclose such a distinction at this time. Thus, assuming *arguendo* that the parties are otherwise properly before the Court, defendants' motion to dismiss on forum non conveniens grounds is denied.

E. MISCELLANEOUS MATTERS

Plaintiffs initially filed their complaint in this action on August 21, 1991; plaintiffs filed a first amended complaint on September 11, 1991. Leave of Court would therefore be required for plaintiffs to add parties at this stage of the litigation. *See* Fed.R.Civ.P. 15(a); 21. Having dismissed the Complaint without leave to amend, plaintiffs' motion to add parties is moot. [FN44]

On a Rule 12(b)(6) motion, it would be premature for the Court to preclusively conclude that no global or worldwide entity theory is available to plaintiffs. *See Department of Econ. Dev. v. Arthur Andersen & Co.,* 683 F.Supp. 1463, 1468 n. 1 (S.D.N.Y.1988) (whether affiliated accounting firms are a single global partnership is a question of fact). The Court's ruling on this issue in the Order was based on the facts as alleged at that time and does not constitute the law of the case. Accordingly, PW/World Firm's motion to strike all references in the Complaint to a "worldwide partnership" with the name "Price Waterhouse," based on the law of the case doctrine, is denied.

As a result of the Court's resolution of the subject matter jurisdiction question, it is unnecessary for the Court to reach the issues of sovereign immunity or personal jurisdiction raised by ADIA's motion to dismiss.

III. CONCLUSION

*14 Though plaintiffs' allegations meet the specificity requirements of federal pleading, plaintiffs' RICO claims must be dismissed without leave to amend because plaintiffs clearly allege that no ascertainable structure exists in their RICO enterprises apart from the alleged pattern of racketeering. Additionally, plaintiffs' section 1962(a) RICO claim must be dismissed without leave to amend because no injury from the use or investment of racketeering income exists where only reinvestment is alleged.

Furthermore, plaintiffs are unable to proceed with their claims because they lack standing. Not only are plaintiffs' claims derivative of BCCI and plaintiffs cannot allege any special duty or distinct injury that might avoid this bar to their suit, but plaintiffs fail to allege an injury presently giving rise to their RICO claims because all or part of their claims may be satisfied through liquidation proceedings.

Finally, in light of the foreign conduct that proximately caused plaintiffs' losses and the negligible injuries that might possibly occur to plaintiffs as a result of BCCI's activities in the United States, the Court lacks subject matter jurisdiction under principles of international comity and fairness.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1992 WL 696398 (C.D.Cal.)  
**(Cite as: 1992 WL 696398 (C.D.Cal.))**

Page 11

Based on the foregoing, IT IS HEREBY ORDERED that plaintiffs' Complaint is dismissed without leave to amend. The Clerk is ordered to serve a copy of this memorandum opinion on the parties forthwith.

IT IS SO ORDERED.

### JUDGMENT

This action came on regularly for hearing on March 30, 1992 before the Court, the Honorable Consuelo B. Marshall, District Judge presiding, on plaintiffs' motion to add additional parties, brought pursuant to Rules 15 and 21 of the Federal Rules of Civil Procedure, and defendants' motions to dismiss plaintiffs' third amended complaint (the "Complaint"), brought pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure. [FN1] Also pending resolution are issues raised in defendant PW/UK's motion which the Court took under submission on January 15, 1992 (*i.e.*, whether to dismiss for lack of subject matter jurisdiction, on forum non conveniens grounds, or to abstain).

Having considered the papers filed in connection with the motions and the arguments of counsel at hearing, and having issued a memorandum opinion that dismisses plaintiffs' third amended complaint without leave to amend, filed concurrently herewithwith, the Court hereby ORDERS that judgment be entered in favor of defendants and against plaintiffs.

IT IS SO ORDERED.

> FN1. These include: (a) the motion of defendants Bank of America NT & SA and BankAmerica Corporation (collectively "BofA") to dismiss; (b) the motion of defendant Price Waterhouse U.K. ("PW/UK") to dismiss; (c) the motion of defendant Price Waterhouse U.S. ("PW/US") to dismiss; (d) the motion of defendant Price Waterhouse World Firm Ltd. to dismiss and to strike; (e) the motion of defendants Clark Clifford, Robert Altman, and the law firm of Clifford & Warnke (collectively the "Clifford Defendants") to dismiss; (f) the motion of defendants InterRedec, Inc., InterRedec Southern Co., Inc., Wesley Co., Inc., River Oaks, Inc., River Oaks Investments, Inc., Sterling Bluff, Inc., Concorde Finance & Investments, and GRP Investments N.V. (collectively the "InterRedec Defendants") to dismiss; (g) the motion of defendants First American Corporation, First American Bankshares, Inc., Jack W. Beddow, Paul G. Adams, III, and A. Vincent Scoffone (collectively the "First American Defendants") to dismiss; (h) the motion of defendant Ernst & Young U.S. ("E & Y") to dismiss; (i) the motion of defendant Fulvio Dobrich to dismiss; (j) the motion of defendant Abu Dhabi Investment Authority ("ADIA") to dismiss; and (k) the motion of defendant Hill & Knowlton, Inc. ("H & K") to dismiss. Additionally, putative defendants Paul C. Warnke, John F. Kovin, David I. Granger, Harold D. Murry, Jr., John G. Calendar, J. Griffin Lesher, Bryan Jay Yolles, Robert P. Reznick, Philip H. Hecht, and James C. Duff, all partners in Clifford & Warnke, have filed a motion to dismiss. However, plaintiffs added these individuals to the Complaint without first seeking leave of the Court to amend. Thus, neither these individuals, nor the motion they have filed, are presently before the Court.

> FN2. Related entities include Bank of Credit and Commerce International, S.A., Bank of Credit and Commerce International (Overseas) Ltd., Bank of Credit and Commerce International Holdings (Luxembourg) S.A., International Credit and Investment Company (Overseas) Ltd., International Credit and Investment Company Holdings, and Credit and Commerce American Holdings N.V. and its subsidiary Credit and Commerce American Investment, B.V. (collectively "BCCI").

> FN3. Many additional factors will affect depositors' ultimate recovery. For example, liquidators are presently pursuing additional claims on behalf of BCCI, including claims filed against both E & Y and various Price Waterhouse entities.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1992 WL 696398 (C.D.Cal.)  
**(Cite as: 1992 WL 696398 (C.D.Cal.))**

Page 12

FN4. Plaintiffs have not argued otherwise. They contend, however, that United States depositors presently suffer the loss of the use of their money, have suffered that loss since July 5, 1991, and will not recover interest on their deposits for this time.

FN5. Additionally, United States citizens Philip Merz and Amit Pandya seek to be added to this action as plaintiffs.

FN6. Plaintiffs characterize defendants as either (1) BCCI strawmen/frontmen or looters; (2) BCCI owners or founders; (3) BCCI officers or agents; (4) United States assistors or co-conspirators; (5) other United States instrumentalities; and (6) professional service providers to BCCI (*i.e.,* accountants, lawyers, and public relations firm). *See* Complaint, chart following page 47.

FN7. Subsection (a) of 18 U.S.C. § 1962 provides:  
It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise....

FN8. Subsection (c) of 18 U.S.C. § 1962(c) provides:  
It shall be unlawful for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

FN9. Subsection (b) of § 1962 provides:  
It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise....

FN10. Section 1350 provides a remedy in federal court for "any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." By its terms, the Alien Tort Statute only imposes liability for violation of a treaty or the law of nations. *See Filartiga v. Pena-Irala,* 630 F.2d 876, 887-88 (2d Cir.1980).

FN11. Part of the Order was adapted from a RICO Standing Order or Case Statement issued by Judge Krenzler in *Lyman Steel Co. v. Shearson Lehman Bros., Inc.,* No. C 86-355 (N.D.Ohio Feb. 13, 1986). A similar RICO Case Statement must now accompany all RICO filings in the Southern District of California. *See* General Order No. 386, 92 Daily Journal D.A.R. 883 (Jan. 22, 1992).

FN12. BCCI's financing of "fronts" or strawmen--wealthy businessmen and rulers of middle eastern states--permitted BCCI to surreptitiously acquire and control defendant First American Bank (400 branches in six states, based in Washington, D.C.); the National Bank of Georgia (the largest bank in Georgia); CenTrust Savings (20 branches in Florida); Independence Bank (11 branches, based in Encino, California; now insolvent and voluntarily dismissed by plaintiffs as a defendant in this case), and Viking Savings & Loan (Santa Monica, California).

FN13. The Court ordered plaintiffs, by appending paragraphs 342, 350 and 358 of the Complaint, to "describe the causal relationship between plaintiffs' alleged injury and *each* defendants' violation of [RICO]." *See* Order, ¶¶ 10(L), (M), and (N) (emphasis in original).

FN14. The alleged assistance provided by the defendants includes the defendants' failure to publicly disclose BCCI's true nature and their assistance helping BCCI avoid detection by regulators.

FN15. However, the Court does not "necessarily assume the truth of legal conclusions merely because they are cast

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1992 WL 696398 (C.D.Cal.)
**(Cite as: 1992 WL 696398 (C.D.Cal.))**

Page 13

in the form of factual allegations." *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

FN16. Rule 9(b) serves three purposes: (1) providing a defendant fair notice of the plaintiff's claim, thus enabling the defendant to prepare a defense; (2) protecting a defendant from harm to his reputation or goodwill; and (3) reducing the number of strike suits. *Di Vittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987) (citing *Reingold v. Deloitte Haskins & Sells,* 599 F.Supp. 1241, 1266 (S.D.N.Y.1984) (Rule 9(b) "inhibits the filing of a complaint as a pretext for discovery of unknown wrongs.").

FN17. For example, the public relations firm H & K complains that it is only alleged to have distributed a "fact sheet" in response to a magazine article about BCCI. *See* Complaint, ¶¶ 36, 334. Defendant Dobrich notes that he is only alleged to have been hired as an executive of Independence Bank in mid-1989, although plaintiffs' conspiracy allegations span sixteen years. *See* Complaint, Ex. 23. E & Y objects to its inclusion in charged misconduct that occurred over unspecified or broad spans of time, particularly since E & Y resigned as BCCI's auditor in 1987 and none of the alleged losses occurred until 1991.

FN18. Though the defendant accounting firms contend that plaintiffs have merely substituted "PW/UK, PW/US and PW/Luxembourg" for each previous instance of "Price Waterhouse" and "EY/US, EY/UK, and EY/Luxembourg" for each previous instance of "Ernst & Young," not all allegations contain all three entities. Plaintiffs have made some distinctions between the entities in the Complaint.

FN19. The Court's dismissal of substantive RICO claims constitutes a dismissal of the conspiracy alleged under section 1962(d) as well. *See Condict v. Condict,* 826 F.2d 923, 927 (10th Cir.1987) ("any claim under section 1962(d) based on a conspiracy to violate the provisions of 18 U.S.C. section 1962(a), (b), or (c) must necessarily fail if the substantive claims are themselves deficient").

FN20. The Court's Order required plaintiffs to amend paragraph 341 of the pleading and "(i) [s]tate specifically who received income derived from the pattern of racketeering activity; (ii) [d]escribe the use or investment of such income and the enterprise in which it was used or invested; and (iii) [s]tate specifically how the victims were injured by reason of the use or investment of racketeering income." Order, ¶ 10(H).

FN21. The Ninth Circuit declined to reach this issue in *Reddy v. Litton Indus., Inc.,* 912 F.2d 291 (9th Cir.1990), *cert. denied,* 112 S.Ct. 332, 116 L.Ed.2d 272 (1991), but recognized that three of four circuit courts and a majority of district courts have required section 1962(a) plaintiffs to show injury from the use or investment of racketeering income rather than from the predicate acts alone. *Id.* at 295-96. The court also noted that Judge Tashima acknowledged the split of opinion on the issue and that his opinion in *NMEC,* 682 F.Supp. at 1073, was issued without the benefit of the appellate decisions in the Second, Third, and Tenth Circuits. *Reddy,* 912 F.2d at 296 n. 6.

FN22. In response to defendants' objections that they had not invested in BCCI, the Court previously observed that the complaint sufficiently alleged the use or investment of income in an enterprise under § 1962(a), "at least to the extent the enterprise is defined as the associated-in-fact enterprise consisting of the BCCI Banks and the defendants listed in the complaint." Order, ¶ 3. The Court did not thereby determine that this

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1992 WL 696398 (C.D.Cal.)  
**(Cite as: 1992 WL 696398 (C.D.Cal.))**

Page 14

claim was legally sufficient in all respects; the present challenge to the legal sufficiency of the claim was not before the Court.

FN23. This issue is a question of law for the Court. See *In re Sunrise Sec. Litig.,* 916 F.2d 874, 882 (3d Cir.1990) ("Whether a claim is individual or derivative is determined from the body of the complaint rather than from the label employed by the parties.").

FN24. Although a depositor is a creditor of a bank or savings and loan, "courts have relied on the principles applicable in shareholder suits in deciding whether depositors and other creditors have stated a claim that may be brought individually." *In re Sunrise Sec. Litig.,* 916 F.2d at 880 (citations omitted).

FN25. The Court rejects plaintiffs' argument that RICO's lack of separate standing requirements permits recovery for indirect injury that would otherwise be characterized as derivative. Such a result would impermissibly expand federal jurisdiction over suits that are barred under other substantive legal principles. See *Warren v. Manufacturers Nat'l Bank,* 759 F.2d 542, 545 (6th Cir.1985).

FN26. Indeed, the Seventh Circuit contrasted *Ashland Oil* with the result reached by the district court in *Dana Molded Prods., Inc. v. Brodner,* 58 Bankr. 576 (N.D.Ill.1986), which barred a RICO claim as derivative because "the predicate acts of racketeering on which plaintiff bases its claim all involve fraudulent transfers of money [from the bankrupt corporation] and the injuries plaintiff asserts are indistinguishable from those suffered by [the bankrupt corporation] itself." *Id.* at 579. *Dana Molded Products,* rather than *Ashland Oil,* is more akin to the facts facing the Court here.

FN27. The Court invited plaintiffs to plead the one condition that would permit them to avoid this result: a special duty to the depositors that would give them direct claims. The only other condition that would permit a direct suit--special injury not suffered by all depositors--cannot apply in these circumstances where the plaintiffs are, by definition, the putative class of all depositors. See Order, ¶ 2 at 2-3 & n. 1. Plaintiffs allege a "special duty" exists because all the defendants were aware of the criminal conduct of BCCI and the risk to depositors' funds, and since public disclosure of this information would have prevented depositors from placing their funds in BCCI, defendants had a duty to disclose their knowledge of BCCI's fraudulent operation. See Complaint, ¶ ¶ 1(a), 17(b) & (c), 37. Plaintiffs' conclusory statements neither change the character of plaintiffs' claims nor establish that a special duty exists. See *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981). Because the plaintiffs have failed to adequately plead a special duty, the Court finds that neither a special duty nor a distinct injury exists that might provide an exception to a bar of plaintiffs' derivative claims.

FN28. The Third Circuit in *Sunrise* expressly declined to follow *Harmsen,* noting first that the result reached by the Ninth Circuit in *Harmsen* ran counter to the general rule, recognized in *Harmsen,* that shareholders may not recover directly for injuries sustained by the bank but must demonstrate injury to themselves "as distinct from the bank." *In re Sunrise Sec. Litig.,* 916 F.2d at 886. Further, the Third Circuit observed that the result in *Harmsen* "has not been adopted by other courts." *Id.* at 886 & n. 12 (citing cases).

FN29. Additionally, *in pari delicto* is an equitable defense. When application of the doctrine is not in the public interest, recovery is permitted. *In re Leasing Consultants, Inc.,* 592 F.2d 103, 110 (2d Cir.1979); see *In re Wedtech Corp.,* 88

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1992 WL 696398 (C.D.Cal.)
**(Cite as: 1992 WL 696398 (C.D.Cal.))**

Page 15

Bankr. 619, 622 (Bankr.S.D.N.Y.1988) ("a trustee's ability to obtain a recovery for an estate and its blameless creditors may not be denied by the pre-petition wrongful conduct of the debtor").

FN30. In the Order, the Court required plaintiffs to "[a]ppend [ ] paragraph 350 of the complaint" and "describe the causal relationship between plaintiffs' alleged injury and *each* defendants' violation of: (i) specific predicate acts; and (ii) RICO section 1962(c) and (d)." Order, ¶ 10(M) (emphasis in original).

FN31. Several alleged predicate acts involving the United States banks obviously enriched BCCI rather than depleted the depositors' funds and could not have caused depositor losses. *E.g., id.,* ¶¶ 350(aa) (causing defendant First American to funnel $220 million to BCCI); 350(l) (causing numerous United States banks that BCCI illegally acquired or controlled to make illegal political contributions in order to gain political favor for BCCI).

FN32. Plaintiffs also allege, as predicate acts of racketeering, that BCCI bribed Peruvian bankers to obtain deposits from Peru's Central Bank, *id.,* ¶ 350(w) & (ab), and bribed a former BCCI employee in London to keep him from blowing the whistle on BCCI's illegal conduct, *id.,* ¶ 350(ab). However, to qualify as RICO predicate acts, conduct must be indictable or punishable under United States laws. Since bribery under 18 U.S.C. § 201 only applies to "public officials," *see* 18 U.S.C. § 201(a)(1), a group to which Peruvian bankers and London BCCI employees do not belong, this conduct is not racketeering activity under RICO. *See Peters v. Welsh Dev. Agency,* 1991 WL 172950, 1991 U.S.Dist. LEXIS 12174 (N.D.Ill. Aug. 29, 1991).

FN33. The fact that BCCI accepted plaintiffs' deposits, whether that transaction is characterized as legal or illegal, will always be a necessary element of any but-for causation link but it is not the proximate cause of plaintiffs' loss. *See Brandenburg,* 859 F.2d at 1189 ("[A]s a factual matter, plaintiffs would not have lost any interest on their deposits but for having made them in the first place.").

FN34. For example, though plaintiffs have sought the default of deposed Panamanian dictator Manuel Noriega, Noriega's alleged misconduct, *i.e.,* looting the national treasury of Panama, has no nexus whatsoever to plaintiffs' losses, let alone being the proximate cause of their losses.

FN35. These causal allegations were specifically ordered by the Court. *See supra* n. 13.

FN36. Significantly, no United States representative participated in the College of Regulators, the regulatory body that undertook regulation of BCCI's activities. This substantial regulatory interest by European authorities began as early as 1988, independently of United States regulatory activities. *See* Testimony of Gerald Corrigan before the House Banking Comm. (Sept. 18, 1991) (Abu Dhabi Motion, Ex. 3).

FN37. Certain putative class plaintiffs' claims may never suffer injury giving rise to a RICO claim. In the United States, BCCI assets held by the Superintendents of Banking of New York and California are being distributed to depositors. Since available assets in both states far exceed potential claims and only the excess will be turned over to the foreign BCCI liquidators, no BCCI depositors who had money in United States offices on July 5, 1991 will lose their deposits. Similarly, depositors in Pakistan and Oman may not lose any of their deposits because those governments have announced their intention to insure depositor losses.

FN38. Additionally, plaintiffs attempt to distinguish *John L. Motley Assocs.,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.