Westlaw.

Not Reported in F.Supp.
1998 WL 3638 (S.D.N.Y.), RICO Bus.Disp.Guide 9434
**(Cite as: 1998 WL 3638 (S.D.N.Y.))**

Page 1

C

**Motions, Pleadings and Filings**

United States District Court, S.D. New York.
**NRB** INDUSTRIES, INC., Plaintiff,
v.
**R.A. TAYLOR** & ASSOCIATES, INC.; Global Intelligence Network, Inc.; Justin D. Waldrep; JDW Consulting; Rodney A. Taylor; and Milliken & Company, Defendants.
No. 97 Civ. 181(JSR).

Jan. 7, 1998.

MEMORANDUM ORDER

RAKOFF, J.

*1 Plaintiff NRB Industries, Inc. ("NRB") sued the above-named defendants alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and state law. Defendant Milliken & Company ("Milliken") timely moved, pursuant to Fed.R.Civ.P. 12(c), for judgment on the pleadings with respect to the RICO claims. Following review of the parties' written submissions and oral arguments, the Court telephonically advised the parties on October 29, 1997 that Milliken's motion would be granted. This memorandum order will serve to confirm that ruling and briefly state the reasons therefor.

The core allegations of the Second Amended Complaint ("Complaint") can be briefly summarized. [FN1] NRB and Milliken compete in the "greige fine goods" subdivision of the textile industry. Complaint at ¶¶ 20-21, 147-148. Defendant R.A. Taylor & Associates ("R.A.Taylor") is a management consulting firm that investigates and compiles business information for its clients. *Id.* ¶ 23. Other defendants include Rodney Taylor, owner of R.A. Taylor; Global Intelligence Network, Inc. ("Global"), also owned by Mr. Taylor; Justin D. Waldrep; and JDW Consulting, owned by Mr. Waldrep. *Id.* ¶¶ 24-32, 35. R.A. Taylor and Global are alter egos of Mr. Taylor, *id.* ¶ 27, and Mr. Waldrep was acting for relevant purposes as an agent of R.A. Taylor on behalf of Milliken. *Id.* ¶¶ 31-32; *see also id.* Ex. E.

FN1. "When reviewing a Rule 12(c) motion for judgment on the pleadings, the Court applies the same standards as on a Rule 12(b)(6) motion." *R.C.M. Executive Gallery Corp. v. Rols Capital Co.,* No. 93 Civ. 8571(JGK), 1997 WL 27059, at *6 (S.D.N.Y. Jan.23, 1997). Accordingly, a motion under Rule 12(c) for judgment on the pleadings requires the court merely to determine "whether the complaint itself is legally sufficient." *Festa v. Local 3 Int'l Brotherhood of Elec. Workers,* 905 F.2d 35, 37 (2d Cir.1990). In this regard, all of the factual allegations in the Complaint must be regarded as true, and all reasonable inferences must be drawn in favor of the plaintiff. *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994).

Milliken and R.A. Taylor executed a letter agreement dated July 24, 1996, pursuant to which R.A. Taylor agreed to compile market information regarding NRB, which recently had been formed by a merger of two previously existing companies. *Id.* ¶¶ 162-163 & Ex. A. In pursuit of this information, Mr. Taylor, posing as an investment banker, telephoned both an NRB officer and an officer of one of the owners of NRB, requesting information regarding NRB. *Id.* ¶ 171-175. When this ruse failed to unearth any information not already publicly available, *id.,* Waldrep, posing as a Columbia University college student doing research for a finance course, contacted several NRB officers seeking similar information. *Id.* ¶¶ 180-181. Eventually, Waldrep managed to obtain certain confidential NRB information, *id.* ¶ 182-220,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1998 WL 3638 (S.D.N.Y.), RICO Bus.Disp.Guide 9434
**(Cite as: 1998 WL 3638 (S.D.N.Y.))**

Page 2

which was incorporated into two documents prepared for Milliken by R.A. Taylor, one entitled "Project Aquarius Report" and one entitled "Project Aquarius Addendum." *Id.* ¶¶ 219-220, 254-255.

Even when reviewed most favorably to plaintiff, these and other allegations of the Complaint fail to state any RICO claim under any of the provisions relied on by plaintiff, *i.e.,* 18 U.S.C. §§ 1962(a), 1962(c), and 1962(d).

As to the § 1962(a) claim, NRB has not adequately pleaded an injury arising from the use or investment of racketeering income. Only someone who has been injured in his business or property by reason of a violation of one or more subdivisions of section 1962 has standing to bring a private civil RICO action. 18 U.S.C. § 1964(c). With respect to the 1962(a) subsection, the statute provides that it is unlawful to "use or invest, directly or indirectly" any "inme derived ... from a pattern of racketeering activity" in an "enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a). Thus, "the essence of a violation of § 1962(a) is not commission of predicate acts but investment of racketeering income." *Quaknine v. MacFarlane,* 897 F.2d 75, 83 (2d Cir.1990). Accordingly, a plaintiff suing under § 1962(a) must "allege a 'use or investment injury' that is distinct from the injuries resulting from predicate acts." *Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1063 (2d Cir.1996), *cert. denied,* 522 U.S. 809, 118 S.Ct. 49, 139 L.Ed.2d 14 (1997). *See also, e.g., RCM Executive Gallery Corp. v. Rols Capital Co.,* No. 93 Civ. 8571(JGK), 1997 WL 27059, at *9 (S.D.N.Y. Jan.23, 1997).

*2 Here, the sole allegation in the Complaint regarding any purported "investment injury" is the conclusory allegation that NRB "has been, and continues to be, injured in its business and property as a direct and proximate result of Milliken's and R.A. Taylor's investment and use of the property derived through their pattern of racketeering." Complaint ¶ 298. A mere conclusion is insufficient to support a complaint. *De Jesus v. Sears, Roebuck & Co., Inc.,* 87 F.3d 65, 70 (2d Cir.), *cert. denied,* 519 U.S. 1007, 117 S.Ct. 509, 136 L.Ed.2d 399 (1996).

Moreover, in seeking in its submissions in opposition to Milliken's motion to further identify the alleged investment injury referred to in paragraph 298 of the Complaint, NRB offers no more than the further generality that the alleged injury consists both of Milliken's fraudulent acquisition of NRB's confidential information and of Milliken's subsequent use of that information to try to lure away NRB's customers in unspecified ways. *See* NRB Industries' Memorandum of Law in Opposition to Milliken's Motion for Judgment on the Pleadings, at 13. This, again, is entirely conclusory.

Also, given the other allegations of the Complaint, the alleged distinction between the original theft of confidential information and its subsequent use is entirely artificial, since the alleged purpose of obtaining the confidential information was to compete against NRB. The allegation thereby fails to state a separate, investment injury. *See Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1189 (3d Cir.1993).

In *Lightning Lube,* plaintiff contended, as NRB does here, that the defendants had stolen trade secrets, then used that information to build a competing business. *See id.* at 1188. The Third Circuit rejected plaintiff's argument that the subsequent use of the trade secrets, as distinct from the theft of those secrets, constituted a separate injury under § 1962(a), since the purpose of the theft was to enable such misuse. Thus, the court noted, there is no "principled basis" to distinguish between the two "acts," which are really one. *Id.* at 1189. *See also R.E. Davis Chemical Corp. v. Nalco Chemical Co.,* No. 89 C 1182, 1991 WL 212180, at *6 (N.D.Ill. Oct.7, 1991). For these reasons, the claim here under § 1962(a) must fail. [FN2]

> FN2. Given this determination, the Court need not reach the question of whether the information allegedly misappropriated from NRB constitutes "income" within the meaning of section 1962(a). *Cf. Marlee Electronics Corp. v. Eclectic Technologies Corp.,* Civ.A. No. 90-5536, 1993 WL 300081 (E.D.Pa. Feb. 5, 1993).

As to the § 1962(c) claim, NRB has failed to allege

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1998 WL 3638 (S.D.N.Y.), RICO Bus.Disp.Guide 9434  
**(Cite as: 1998 WL 3638 (S.D.N.Y.))**

Page 3

a RICO "enterprise" that is sufficiently distinct from the "person" who conducts the affairs of that "enterprise" to meet the requirements of that subsection. *Discon,* 93 F.3d at 1063. While "a single entity simultaneously can be both the person and one of a number of members of the enterprise," *Dornberger v. Metropolitan Life Ins. Co.,* 961 F.Supp. 506, 524 (S.D.N.Y.1997); *see Cullen v. Margiotta,* 811 F.2d 698, 729-30 (2d Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987), this is so only when the "enterprise ... is *distinct* from each of" the RICO "persons." *Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 263 (2d Cir.1995) (emphasis added), *cert. denied,* 516 U.S. 1114, 116 S.Ct. 916, 133 L.Ed.2d 846 (1996). An enterprise that "consists merely of a corporate defendant associated with its own employees or agents" is not sufficiently distinct. *Riverwoods Chappaqua Corp. v. Marine Midland Bank,* 30 F.3d 339, 344 (2d Cir.1994).

*3 Here, the Complaint effectively alleges that each of the members of the enterprise other than Milliken--R.A. Taylor, Global, Mr. Rodney Taylor, JDW Consulting, and Mr. Justin D. Waldrep--were Milliken's agents. Put another way, the Complaint, even when read most favorably to plaintiff, alleges that the defendants operated as a single entity for the purposes alleged in the Complaint. The mere fact that some of the defendants were legally separate from Milliken is not sufficient in itself to make them distinct in terms of section 1962(c) where operative identity, in terms of the relevant conduct, was otherwise complete. *See, e.g., Discon,* 93 F.3d at 1064 (2d Cir.1996) (involvement of attorneys, accountants and other agents of corporation in enterprise otherwise consisting of corporation and its subsidiaries does not render enterprise distinct from corporation); *RCM Executive,* 1997 WL 27059, at *8 (attorney retained by partnership not "an independent actor," and accordingly, distinctiveness requirement not satisfied); *cf. Sterling Interiors Group, Inc. v. Haworth, Inc.,* No. 94 Civ. 9216(CSH), 1996 WL 426379, at *11 (S.D.N.Y. July 30, 1996) (association of corporation and independent dealers satisfies 1962(c), where dealers "do not appear to be" agents, and "were not hired by [corporation] to perform acts on behalf of [corporation]").

As to the § 1962(d) claim, because the claims under sections 1962(a) and (c) fail as a matter of law, the conspiracy claim under section 1962(d) likewise must be dismissed. *Discon,* 93 F.3d at 1064.

For the foregoing reasons, judgment on the pleadings is granted in favor of defendant Milliken on the RICO claims.

SO ORDERED.

1998 WL 3638 (S.D.N.Y.), RICO Bus.Disp.Guide 9434

**Motions, Pleadings and Filings (Back to top)**

. 1:97CV00181  (Docket)

(Jan. 10, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**10**

Westlaw.

Slip Copy
2004 WL 2848524 (S.D.N.Y.), RICO Bus.Disp.Guide 10,789
**(Cite as: 2004 WL 2848524 (S.D.N.Y.))**

Page 1

**H**

**Motions, Pleadings and Filings**

United States District Court,
S.D. New York.
NUEVO MUNDO HOLDINGS, et al., Plaintiff,
v.
PRICEWATERHOUSE COOPERS LLP, et al.,
Defendant.
**No. 03 Civ. 0613(GBD).**

Dec. 9, 2004.

*MEMORANDUM OPINION & ORDER*

DANIELS, J.

*1 Plaintiffs bring suit alleging several claims under common law, breach of contract and a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964 et. seq. This Court previously dismissed the suit against defendants Pricewaterhouse Coopers LLP ("PWC") and Arthur Andersen LLP ("Andersen") pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(7). *Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP,* 2004 U.S. Dist. LEXIS 780 (S.D.N.Y. Jan. 22, 2004). The remaining defendant Luis Cortavarria Checkley ("Checkley") now moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(6), 12(b)(7), and 19. For the reasons stated below, the action is dismissed for lack of subject matter jurisdiction and lack of personal jurisdiction.

*I. FACTS*
Plaintiffs Nuevo Mundo Holdings S.A., et al. are the foreign shareholders and directors of Banco Neuvo Mundo S.A. ("Nuevo Mundo"). Defendant Checkley is the former Superintendent of Banking and Insurance ("SBS") of Peru. The facts of the case are as stated by this Court in *Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP,* 2004 U.S. Dist. LEXIS 780, *2-5 (S.D.N.Y. Jan. 22, 2004). Plaintiffs allege that Checkley in his role as the superintendent of SBS conspired with the Peruvian affiliates of defendants PWC and Andersen to seize control of Neuvo Mundo. Based upon these allegations, plaintiffs assert claims against Checkley for violations of RICO, fraud, tortious interference, prima facie tort, and punitive damages.

Plaintiffs allege that Nuevo Mundo Holdings, S.A. is a corporation organized under the laws of Panama. (Compl.¶ 1.) The remaining plaintiffs are Peruvian directors and investors of Nuevo Mundo. *Id.* ¶¶ 2-10. There is no allegation that any of the plaintiffs are United States citizens or reside in the United States. Defendant Checkley was the Peruvian Superintendent of Banking and Insurance from July 28, 2000 to June 23, 2002. *Id.* ¶ 13. He now resides in Maryland and works in Washington D.C. (Checkley Decl. ¶ 2.)

*II. DISCUSSION*
A. *Plaintiffs Have Failed to Establish Subject Matter Jurisdiction*

Defendant Checkley argues that this Court lacks subject matter jurisdiction over this case. There are no longer any U.S. entities in the case. The sole basis for subject matter jurisdiction is founded upon the federal claim of RICO. Checkley argues that because the complaint alleges that a *foreign* defendant engaged in conduct violating RICO on *foreign* soil against *foreign* victims, RICO does not apply. (Mot. to Dismiss at 8-9.) Plaintiffs maintain that the application of the RICO statute is appropriate because the actions of the defendant, as Superintendent of SBS, had effects in New York since "New York investors lost their investment, their notes payable in New York." (Opp'n at 8.)

Plaintiffs' sole allegation upon which they base federal jurisdiction is their RICO claim against remaining defendant Checkley. Plaintiffs allege that Checkley, working in concert with dismissed defendants PWC and Andersen participated in a pattern of racketeering activities and corrupt

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2848524 (S.D.N.Y.), RICO Bus.Disp.Guide 10,789
(Cite as: 2004 WL 2848524 (S.D.N.Y.))

Page 2

practices. (Mot. to Dismiss at 8-9.) Plaintiffs' claims, however, involve foreign acts by foreign parties in violation of foreign law and to the detriment of foreign victims. Federal jurisdiction on this matter is dependent, therefore, on finding that the United States civil RICO statute should be applied in this case.

*2 Plaintiffs, as parties "seeking to invoke the subject matter jurisdiction of the district court," bears the burden of demonstrating that there is subject matter jurisdiction in the case. *Scelsa v. City Univ. of New York,* 76 F.3d 37, 40 (2d Cir.1996). Federal courts "need not accept as true contested jurisdictional allegations" in considering a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Jarvis v. Cardillo,* 1999 U.S. Dist. LEXIS 4310, at *7 (S.D.N.Y. Apr. 5, 1999). A court may resolve disputed jurisdictional facts by referring to evidence outside the pleadings, including affidavits. *See Zappai Middle E. Constr. Co. v. Emerate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir.2000).

The RICO statute is silent as to any extraterritorial application. *See North South Fin. Corp. v. Al-Turki,* 100 F.3d 1046, 1051 (2d Cir.1996). Although "a corporate defendant that is a foreign entity is not for that reason alone shielded from the reach of RICO," the Second Circuit has acknowledged the ambiguity as to the "character and amount of activity in the United States that will justify RICO subject matter jurisdiction over a foreign entity." *Id.* at 1052 (citing *Alfadda v. Fenn,* 935 F.2d 475, 479 (2d Cir.1991)). While the Second Circuit has not expressed a specific test for determining the extraterritorial applications of RICO, the court in *North South Fin.* stated that the "ultimate inquiry is ... whether 'Congress would have wished the precious resources of the United States courts and law enforcement agencies to be devoted to [foreign transactions] rather than leave the problem to foreign countries." ' *Id.* (quoting *Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974, 985 (2d Cir.1975)). The Second Circuit has further noted that "guidance [regarding the extraterritorial application of RICO] is furnished by precedents concerning subject matter jurisdiction for international securities transactions and antitrust matters." *Id.*

The courts in this circuit have applied two alternative tests derived from transnational and antitrust cases--the "conduct" and "effects" tests--to determine the applicability of RICO in extraterritorial cases. *Id.* at 1051-52 (affirming the district court's dismissal of RICO action for lack of subject matter jurisdiction for absence of U.S. conduct material to fraud.); *see also Nasser v. Andersen Worldwide Societe Coop.,* 2003 U.S. Dist. LEXIS 16710 (S.D.N.Y. Sept. 23, 2003); *See also Wiwa v. Royal Dutch Petroleum Co.,* 2002 U.S. Dist. LEXIS 3293 (S.D.N.Y. Feb. 28, 2002). Under the conduct test:

> We entertain suits by aliens only where conduct material to the completion of the fraud occurred in the United States. Mere preparatory activities, and conduct far removed from the consummation of the fraud, will not suffice to establish jurisdiction. Only where conduct "within the United States directly caused" the loss will a district court have jurisdiction over suits by foreigners who have lost money through sales abroad.

*3 *North South Fin.,* 100 F.3d at 1052 (citing *Psimenos v. E.F. Hutton & Co.,* 722 F.2d 1041, 1046 (2d Cir.1983) (internal citations omitted)).

The alternative effects test is applied in two distinct ways. The first, derived from securities cases, finds that jurisdiction over a predominantly foreign entity exists when the entity's activities have "substantial effects within the United States." *Id.* at 1052. "Transactions with only remote and indirect effects in the United States do not qualify as substantial." *Id.* The "effect" must be a "direct and foreseeable result" of the conduct alleged. *Consol. Gold Fields PLC v. Minorco, S.A.,* 871 F .2d 252, 261-62 (2d Cir.1989). The second version of the effects test borrowed from antitrust cases finds that liability attaches when the extraterritorial conduct is "intended to and actually does have an effect on United States imports or exports which the state reprehends." *North South Fin.,* 100 F.3d at 1052 (citing *United States v. Aluminum Co. of America,* 148 F.2d 416, 443-44 (2d Cir.1945)).

In order to apply RICO extraterritorially, plaintiffs must satisfy the conducts test or either of the effects tests. [FN1] Plaintiffs do not allege any fact of U.S. conduct "material to the completion of the fraud." The complaint contains allegations about defendant's actions in Peru as the Superintendent of

Slip Copy
2004 WL 2848524 (S.D.N.Y.), RICO Bus.Disp.Guide 10,789
**(Cite as: 2004 WL 2848524 (S.D.N.Y.))**

Page 3

SBS charging that defendant Checkley ordered unscheduled, irregular, and unprecedented inspections of Nuevo Mundo which were aimed "intentionally to negatively affect Nuevo Mundo's reputation and viability in the banking community in Peru, for the ultimate purpose of taking over the operations of [Nuevo Mundo] and selling its assets while depriving its shareholders of their interest." (Compl.¶ 34.) Further, plaintiffs allege that this irregular inspection was just one "of many actions taken by SBS and other departments, commissions and officials of the Peruvian Government" in its pursuit of the control of the bank. *Id.* Additionally, plaintiffs argue that the SBS, under defendant Checkley's direction, placed Nuevo Mundo under its administration prematurely, and not "based upon objective criteria, but ... as part of a fraudulent and malevolent scheme perpetrated by SBS, and other officials of the Peruvian Government then in power, in concert and conspiracy with and aided and abetted by the defendants." (Compl.¶ 38.) Plaintiffs allege that the SBS issued rules regarding the selling and liquidation of Nuevo Mundo that were in violation of the rights of shareholders. (Compl.¶¶ 45-6.) Plaintiffs also allege abuse of power and fraudulent reporting of Nuevo Mundo's financial situation, including directing "Andersen-Peru" to revise audit reports on the bank that led to the "wrongful takeover and sale or liquidation" of Nuevo Mundo. (Compl.¶¶ 46, 49, 53, 55, 59, 62.)

> FN1. Both plaintiffs and defendant Cortavarria are foreign entities. While Cortavarria now resides in the United States, courts have found that a defendant's U.S. citizenship or U.S. presence alone has been deemed insufficient to confer subject matter jurisdiction without additional connections, such as U.S. conduct or effect. *IIT v. Vencap, Ltd.,* 519 F.2d 1001, 1016 (2d Cir.1975).

The only allegations of any actions in the United States are those alleged against the original defendants PWC and Andersen. Plaintiffs allege that defendants PWC and Andersen, accounting firms that operate in the United States, were "responsible and liable for the wrongful and corrupt practices of their respective Peruvian affiliates ... in complicity with the wrongful and illegal acts of certain officials and/or administrators of the Peruvian government." (Compl.¶¶ 11, 12, 14, 130.) Defendants PWC and Andersen have been dismissed from the action. *See Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP,* 2004 U.S. Dist. LEXIS 780 (S.D.N.Y. Jan. 22, 2004). Plaintiffs' allegations, even with the inclusion of the charges against the dismissed defendants, are devoid of any specific, supporting facts that can identify what conduct material to the fraud occurred in the United States. In fact, all material conduct is alleged to have occurred in Peru. These allegations are insufficient to justify extraterritorial application of RICO.

\*4 Plaintiffs also fail to sufficiently allege effects in the United States resulting from defendant's conduct. Plaintiffs allege that U.S. effects arose in only one manner: "the corrupt activities ... affected foreign and U.S. Commerce because ... many investors ... were U.S. citizens and/or residents, and some ... promissory notes payable to such U.S. citizens and/or residents were payable in New York." (Compl.¶ 131.) Plaintiffs argue that New York investors lost their investments as a result of the violation of the RICO Act because "their notes payable in New York ... lost their value," and therefore, extraterritorial--application of RICO is appropriate. (Opp'n at 8.)

These allegations fail both applications of the effects test. The loss allegedly suffered by U.S. investors is vague and conclusory and fails to meet the securities-based requirement for "substantial effects." Plaintiffs' sole allegation is that there were "some" notes payable to "U.S. citizens and/or residents." (Compl.¶ 131.) Plaintiffs provide no specific factual allegations regarding the number of U.S. investors or the amount of monetary loss incurred. Plaintiffs' vague allegations also fall short of the anti-trust based effects test. This test requires that the defendant's conduct be intended to and actually have an effect in the United States. *See North South Fin.,* 100 F.3d at 1052. Plaintiffs fail to allege that defendant intended to cause harm in the United States. Plaintiffs only charge that defendant intended to take over Nuevo Mundo in Peru. There are no allegations that defendant intended to harm U.S. investors. Moreover, plaintiffs do not sufficiently allege or show any actual material effects in the United States.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2848524 (S.D.N.Y.), RICO Bus.Disp.Guide 10,789
(Cite as: 2004 WL 2848524 (S.D.N.Y.))

Page 4

Furthermore, given the exclusive foreign nature of the transactions in question, this matter is not one to which U.S. resources should be devoted. Subject matter jurisdiction should not be invoked. *See Nasser* 2003 U.S. Dist. LEXIS 16710 at *18-19. In *Nasser,* plaintiffs were controlling holding companies and shareholders of a Brazilian bank who eventually sold their ownership stake to a Spanish bank. Defendants were "Andersen Worldwide" and its member firms. *Nasser* 2003 U.S. Dist. LEXIS 16710 at *2-6. Defendants allegedly forced the undervalued sale of the interest by artificially depressing the sale price via the creation of false financial reports on behalf of the Spanish bank. *Id.* In addition to dismissing the case for plaintiffs' failure to satisfy either the conducts or effects test, the court in *Nasser* stated that for policy reasons there is no doubt that the court is "without jurisdiction over a controversy involving foreign defrauders in a foreign transaction lacking significant and material contact with the United States." *Nasser,* 2003 U.S. Dist. LEXIS 16710 at *20-21 (quoting *North South Fin.,* 100 F.3d at 1052). Plaintiffs here fail to sufficiently allege U.S. conduct or effects to justify extraterritorial application. Defendant's motion to dismiss for lack of subject matter jurisdiction is therefore granted.

B. *Personal Jurisdiction*

*5 Defendant Checkley further argues that plaintiffs fail to sufficiently allege the basis for asserting personal jurisdiction over him. Defendant, the former Superintendent of Banking and Insurance in Peru, current resides in Maryland and works in Washington, D.C.

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a plaintiff bears the ultimate burden of establishing that the court has jurisdiction over the defendant. *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 566 (2d Cir.1996). Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith legally sufficient allegations of jurisdiction, i.e. by demonstrating a *prima facie* case that personal jurisdiction exists. *Id.* at 566-67. Conclusory allegations are insufficient to meet that burden. *See Galerie Gmurzynska v. Hutton,* 257 F .Supp.2d 621, 625 (S.D.N.Y.2003), *aff'd,* 355 F.3d 206 (2d Cir.2004).

Plaintiffs, in this case, argue that personal jurisdiction exists on two grounds: the New York Long Arm Statute and the civil RICO statute. The New York long arm statute provides for jurisdiction over a non-domiciliary who:

(1) transacts business within the state ...; (2) commits a tortious act ... within the state; (3) commits a tortuous act without the state causing injury to person or property within the state ... if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) owns, uses, or possesses real property within the state.

N.Y. C.P.L.R. § 302(a). "A nondomiciliary 'transacts business' under CPLR 302(a)(1) only if he 'purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." ' *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986) (citing *McKee Electric Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 604 (1967) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958))).

Plaintiffs fail to satisfy the burden of establishing that personal jurisdiction is proper over defendant Checkley under the New York long arm statute. Defendant Checkley did not transact business within New York under § 302(a)(1). Plaintiffs have failed to make any allegations that Checkley transacted any business or entered into any contract in New York. There is no allegation that links Checkley to New York. There is no allegation that Checkley transacted business in New York on his own behalf or for others, or that he sought to take advantage of the benefits and protections of New York law.

Checkley is furthermore not subject to personal jurisdiction under sections 302(a)(2), 302(a)(3), or 302(a)(4). He has not committed a tortious act within New York. Plaintiffs allege no regular course of business dealings by Checkley sufficient to confer jurisdiction over him under § 302(a)(3). Finally, plaintiffs do not allege that Checkley owns or uses any real property in New York for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2848524 (S.D.N.Y.), RICO Bus.Disp.Guide 10,789
**(Cite as: 2004 WL 2848524 (S.D.N.Y.))**

Page 5

jurisdiction under § 302(a)(4).

*6 Even if the New York long arm statute grants personal jurisdiction over defendant Checkley, asserting jurisdiction over him violates due process considerations. The Second Circuit summarizes the due process requirements for exercising personal jurisdiction over a foreign defendant as follows:

> The due process clause of the Fourteenth Amendment permits a state to exercise personal jurisdiction over a non-resident defendant with whom it has certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. In determining whether minimum contacts exist, the court considers the relationship among the defendant, the forum, and the litigation. To establish the minimum contacts necessary to justify specific jurisdiction, the plaintiff first must show that his claim arises out of or arises out of or relates to defendant's contacts with the forum state. The plaintiff must also show that the defendant purposefully availed himself of the privilege of doing business in the forum state and that the defendant could foresee being haled into court there. If the plaintiff satisfies these requirements, the court also considers whether the assertion of jurisdiction comports with traditional notions of fair play and substantial justice--that is, whether it is reasonable under the circumstances of a particular case.

*Chew v. Dietrich,* 143 F.3d 24, 28 (2d Cir.1998) (alterations, citations, and quotation marks omitted). First, it must be determined whether the defendant has sufficient contacts with the forum to justify the court's exercise of personal jurisdiction, and second, whether the assertion of personal jurisdiction is reasonable under the circumstances of the particular case. *See Metropolitan Life Ins.,* 84 F.2d at 567-68 (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

After plaintiff has established the requisite minimum contacts between the defendant and the forum state, a five-factor test to determine reasonableness of the assertion of personal jurisdiction must be applied. *See Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 112 (1987). These factors are: (1) the burden that the exercise of the jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the most efficient resolution of the controversy; and (5) the interests of the state in furthering substantive social policies. *See Asahi,* 480 U.S. at 112; *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476-77 (1985).

Plaintiffs fail to allege jurisdictional facts that would satisfy the minimum contacts requirement of due process. Moveover, even if plaintiffs could establish minimum contacts, it would be unreasonable to assert jurisdiction over Checkley in light of the five-factor test. First, it would be a burden for him to have to defend his case in New York as he has no other contacts with the forum. Second, based on plaintiffs' pleadings, it is unclear that New York would have a substantial interest in adjudicating the case. The claims of injury in the state are vague and conclusory. Because none of the plaintiffs are New York residents and because all of the alleged conduct took place in Peru, plaintiffs' interest in obtaining convenient and effective relief and general efficiency arguments do not weigh in favor of litigation in this forum. Furthermore, plaintiffs have not identified any witnesses or other evidence more convenient to this forum. Lastly, plaintiffs have not presented any reason why adjudicating this case in New York would further the substantive policy concerns of the state. In sum, the five factors disfavors assertion of jurisdiction in New York.

*7 Plaintiffs also assert that the statutory service provision of RICO, specifically the nationwide service provision, is sufficient to confer personal jurisdiction over Checkley. (Opp'n at 8.) Section 1965 of RICO provides that:

> (a) Any civil action ... under this chapter ... may be instituted in the district court ... for any district in which such person resides, is found, has an agent, or transacts his affairs.
> (b) In any action under § 1964 of this chapter ... in any district court ... in which it is shown that the ends of justice require that other parties residing in any other district be brought before this court, the court may cause such parities to be summoned ... and process ... may be served in any judicial district....

18 U.S.C. §§ 1965(a), (b). Checkley is not subject to suit under § 1965(a) because he does not reside

Slip Copy
2004 WL 2848524 (S.D.N.Y.), RICO Bus.Disp.Guide 10,789
**(Cite as: 2004 WL 2848524 (S.D.N.Y.))**

Page 6

and does not transact his affairs in New York.

Section 1965(b) provides for nationwide service of process and authorizes an assertion of jurisdiction over *co-defendants* of § 1965(a) defendants who are subject to the jurisdiction of the United States, even if they do not satisfy § 1965(a). The Second Circuit in *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.,* explained that "a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant." 138 F.3d 65, 71 (2d Cir.1998). Defendants PWC and Andersen have both been dismissed from this action. Therefore, § 1965(b) does not apply to assert personal jurisdiction over Checkley since there are no co-defendants that do satisfy the minimum contacts requirement. In fact, there are no longer any co-defendants.

The court in *PT United Can* explains that the RICO statute "does not provide for nationwide personal jurisdiction over every defendant in every civil RICO case, no matter where the defendant is found." *Id.* Rather, this section provides for national service of process only if the "ends of justice [so] require." *See PT United Can,* 138 F.3d at 71; 18 U.S.C. § 1965(b). The phrase "ends of justice require" has been interpreted to mean that the statute authorizes an assertion of personal jurisdiction if, otherwise, the entire RICO claim could not be tried in one civil action. *See PT United Can Co. v. Crown Cork & Seal Co.,* 1997 U.S. Dist LEXIS 692 at *8 (S.D.N.Y. Jan. 28, 1997) (relying on *Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Invest., Inc.,* 788 F.2d 535, 538-39 (9th Cir.1986)). This impossibility of trial in one action does not apply here. The statutory service of process provision of RICO therefore does not confer personal jurisdiction over defendant Checkley.

For the foregoing reasons, defendant Checkley's motions to dismiss for lack of subject matter jurisdiction and for lack of personal jurisdiction are granted. [FN2]

> FN2. Defendant also moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and also asserts numerous other arguments challenging the Court's jurisdiction including: the Act of State Doctrine, the Foreign Sovereign Immunities Act, and the principles of Comity. As the Court lacks both subject matter over this action and personal jurisdiction over defendant Checkley, it does not reach any conclusion as to these arguments.

2004 WL 2848524 (S.D.N.Y.), RICO Bus.Disp.Guide 10,789

**Motions, Pleadings and Filings (Back to top)**

. 1:03CV00613 (Docket)
(Jan. 27, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11