corporation in certain countries have not been made available to the worldwide liquidation and are instead being handled by local liquidators. The assets that existed in Panama as of the date BCCI was seized will not be "pooled" but will instead be distributed with a preference to local Panamanian creditors. It is believed that the local creditors have a good chance of receiving full reimbursement on their claims. *See* Wight Affidavit para. 9-12. This method of liquidation is known as "ring-fencing" and is the same as that employed in the United States.

On December 19, 1991 the BCCI Defendants entered into a Plea Agreement to criminal RICO charges brought by the United States in the District of Columbia. *See* BCCI's Supplemental Motion to Dismiss at 9. Pursuant to the Plea Agreement, all of BCCI's assets in the United States were forfeited to the United States Government and placed in a Custodial Account. Plea Agreement at 11. The first $100 million deposited in the Custodial Account shall be disbursed to a United States Disgorgement, Compensation, and Penalty Fund, maintained by the Treasury Department (the "U.S. Fund") to be used for certain specified purposes including the support for certain banks insured by the Federal Deposit Insurance Corporation. *Id.* The next $100 million shall be disbursed to a Worldwide Victims and Creditors Compensation Fund maintained by Court Appointed Fiduciaries (the "Worldwide Victims Fund") which shall be distributed by the liquidators to innocent BCCI creditors and depositors. *Id.*; Baden Decl. para. 6. The Court Appointed Fiduciaries have also agreed to cooperate fully with the Department of Justice and the District Attorney of New York. Plea Agreement at para. 17.

The Fourth Amended Complaint in this action, filed on August 19, 1993, alleges that between 1982 and 1991 Defendants "formulated and implemented a corporate strategy for increasing the BCCI Group's profits by appearing to provide legitimate international banking

5

services while covertly soliciting and accepting deposits of funds from illegal sources, in conscious disregard of the currency regulations, tax laws, and other laws of the United States and of other Nations." Fourth Amended Complaint at 5. Plaintiff specifies that a major "illegal source" of funds was Manuel Antonio Noriega ("Noriega"), "a former Panamanian military officer, [who] abused his official position in a conspiracy with the BCCI Group to divert millions of dollars of government funds into secret BCCI Group accounts," which the BCCI Group then 'laundered' and redistributed to various component entities. Id. at 6. Plaintiff alleges that Defendants actions constituted a RICO enterprise in violation of 18 U.S.C. § 1961 and that as a result of said Plaintiff is entitled to damages, including statutorily authorized treble damages. Id. at 21-24. Plaintiff further alleges common law causes of action for breach of fiduciary duty, fraud, and conversion. Id. at 24-25.

The BCCI Defendants allege that this matter should be dismissed in accordance with the doctrines of international comity and forum non conveniens. The Court will consider each doctrine and evaluate whether or not it mandates a dismissal of this matter.

## II. FORUM NON CONVENIENS

The doctrine of forum non conveniens derives from the court's inherent power, under Article III of the Constitution, to control the parties and cases before it and to prevent its process from becoming an instrument of abuse or injustice." In re Air Crash Disaster Near New Orleans, La., 821 F.2d 1147, 1153-54 (5th Cir. 1987), vacated on other grounds, 490 U.S. 1032 (1989). Forum non conveniens allows a court to decline to exercise its jurisdiction, even though the court

has jurisdiction and venue, where it appears that the convenience of the parties and the court and the interests of justice indicate that the action should be tried in another forum. Id. at 1154; Koster v. American Lumbermens Mutual Casualty Co., 330 U.S. 518, 526 (1947); Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947).

District courts have broad discretion to retain or refuse to retain jurisdiction under the forum non conveniens doctrine and may be reversed only where there is a clear abuse of discretion. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981); Canada Malting Co. v. Paterson Steamships, 285 U.S. 413, 418 (1932). However, the court's decision must be founded on a procedural framework which guides the decision making process. In re Air Disaster, 821 F.2d at 1165 (citing Friends For All Children in Lockheed Aircraft Corp., 717 F.2d 602, 607 (D.C. Cir. 1983)).

In determining whether or not to grant Defendants' Motion to Dismiss the Court must evaluate whether an adequate alternative forum exists and then conduct a balancing process considering the private and public interest surrounding the matter. Gilbert, 330 U.S. at 508. This analytical process has been summarized as follows:

> As a prerequisite, the court must establish whether an adequate alternative forum exists which possesses jurisdiction over the whole case. Next, the trial judge must consider all relevant factors of *private* interest, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice. If the trial judge finds this balance of private interests to be in equipoise or near equipoise, he must then determine whether or not factors or *public* interest tip the balance in favor of a trial in a foreign forum. If he decides that the balance favors such a foreign forum, the trial judge must finally ensure that plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice.

La Seguridad v. Transytur Line, 707 F.2d 1304, 1307 (11th Cir. 1983) (quoting Pain v. United Technologies Corp., 637 F.2d 775, 784-85 (D.C. Cir. 1980) (emphasis in original), cert. denied, 454 U.S. 1128 (1981)).

7

## A. Adequate Alternative Forum

The BCCI Defendants argue that the world wide liquidation proceedings presently existing in the Cayman Islands, England, and Luxembourg provide an "available" and "adequate" alternative forum for this matter. *See* BCCI's Supplemental Motion to Dismiss at 5. Plaintiff contends that since the law utilized by the world wide proceedings differs from that in the United States, no adequate alternative forum exists. *See* Response to Supplemental Motion to Dismiss. This Court had considered each parties' arguments and finds that the world wide liquidation proceedings, located in the Cayman Islands, England, and Luxembourg, do provide an adequate alternative forum for Plaintiff's claim because the standard is "adequate" and not "equal."

An adequate alternative forum is said to exist if there is an alternate forum that is "available" and "adequate." In re Air Crash Disaster, 821 F.2d at 1165. A forum is considered "available" if the "defendant is 'amenable' to process in the other jurisdiction." Reyno, 454 U.S. at 254-55, n.22 (*quoting* Gilbert, 330 U.S. at 506-07). It is undisputed that the BCCI Defendants are amenable to process in each of the three world wide liquidation proceedings[5] because the BCCI Defendants are incorporated in the Cayman Islands and Luxembourg with their principal place of business located in England. Accordingly, this Court concludes that an alternative forum is "available."

An alternative forum is considered "adequate" if "the parties will not be deprived of all remedies or treated unfairly," in that forum. In re Air Crash Disaster, 821 F.2d at 1165 (*citing*

---

[5] Plaintiff did not dispute that the BCCI Defendants were amenable to process in the forums at issue. See Plaintiff's Response to BCCI's Supplemental Memorandum on Motion to Dismiss Due to Forum Non Conveniens (D.E. # 188) at 9.

8

Reyno, 454 U.S. at 255). Each of the three locations of the world wide proceedings - the Cayman Islands, England, and Luxembourg - have been recognized by United States courts as providing an "adequate" alternate forum. *See e.g.* In re Gee, as Official Liquidator of Universal Casualty & Surety Co., 53 B.R. 891, 902 (Bankr. S.D.N.Y. 1985) (United States bankruptcy court recognized the bankruptcy laws of the Cayman Islands); Syndicate 420 at Lloyd's London v. Early American Insurance Co., 796 F.2d 821, 829 (5th Cir. 1986) (England provides adequate alternative forum justifying dismissal on forum non conveniens grounds); Overseas National Airways, Inc. v. Cargolux Airlines International S.A., 712 F.2d 11, 14 (2d Cir. 1983) (affirming dismissal on forum non conveniens grounds to Luxembourg).

Plaintiff contends, however, that under the facts of this case, the forums are inadequate because the bankruptcy rules and procedures of the forums are not the same as the procedures afforded in the United States and because there is no cause of action in the forums that is comparable to Plaintiff's RICO count. *See* Response to Supplemental Motion to Dismiss at 1-2, 10. Plaintiff's first argument appears to contain two components: first, that the liquidation procedures in the world wide proceedings differ from those that would be utilized in the United States and second, that the courts in the three jurisdictions utilize pretrial and trial procedures that differ from those used in the United States. *See* Id. at 1-2, 7-8. As to both arguments Plaintiff is correct. The world wide liquidation proceedings have implemented a "pooling agreement," whereby all of the BCCI Defendants' assets and liabilities will be pooled together and then distributed to all creditors worldwide "pari passu," or equally. *See* High Court Judgment; English Court of Appeals Decision, Exhibit A, Response to Supplemental Motion to Dismiss [hereinafter English Court of Appeals Decision]. Whereas, if the liquidation proceedings were in the United

6

States, a "ring-fencing" approach would be employed, whereby the assets of defendant located in that branch would be collected and then distributed to the creditors of that branch on a preferential basis.[6] Id. Additionally, it is undisputed that the pretrial discovery and similar procedures vary from jurisdiction to jurisdiction.[7]

However, an alternative forum is not considered inadequate merely because the parties may not enjoy the same benefits as they might receive in an American court. Reyno, 454 U.S. at 251 (possibility of an unfavorable change in law does not deprive the plaintiffs of an adequate forum because such an interpretation would ineffectuate the doctrine of forum non conveniens). Courts have consistently held that differences in rules and procedures, even those that are less favorable to Plaintiff are insufficient to make the alternate forum "so clearly inadequate or unsatisfactory that it is no remedy at all" as to require denial of a motion to dismiss. Id. at 254; see e.g. Mercier v. Sheraton International, Inc., 981 F.2d 1345, 1352-3 (1st Cir. 1992), cert. denied 113 S Ct. 2346 (1993) (Turkish forum adequate although Turkish procedures and laws different than those in the United States); Lockman Foundation v. Evangelical Alliance Mission, 930 F.2d 764, 768-69 (9th Cir. 1991) (Japanese forum held adequate although discovery procedures were "not identical to those in the United States"); In re Union Carbide Corp. Gas Plant Disaster, 809 F.2d 195, 206 (2d Cir.), cert denied sub nom, Executive Committee Members

---

[6] The Court thinks that it is important to note at this point that while the bankruptcy rules and procedures on the world proceedings are different than that in the United States, the liquidation proceedings currently progressing in Panama are not. Therefore, Plaintiff does have an alternative forum available in which a "ring-fence" liquidation approach is being utilized.

[7] Specifically, Plaintiff argues, the Luxembourg court does not recognize the United States equivalent of pre-trial discovery or the work product doctrine. Response to Supplemental Motion to Dismiss.

10

v. Union of India, 484 U.S. 871 (1987) (Indian forum adequate although Indian discovery rules were less extensive than United States rules); Zipfel v. Halliburton Co., 832 F.2d 1477, 1484 (9th Cir. 1987), cert. denied, 486 U.S. 1054 (1988) (Singapore and Indonesia forums held adequate and available even though pretrial procedures and available recovery differed from U.S.); Doe v. Hyland Therapeutics Div., 807 F. Supp. 1117, 1123-24 (S.D.N.Y. 1992) (Irish forum adequate although scope of discovery more limited than in the United States).

Plaintiff further claims that "[t]his court cannot force Panama to join a liquidation proceeding which the majority of BCCI S.A. creditors apparently did not believe was in their best interests," as evidenced by the fact that the creditors' committee objected to a significant aspect of the Liquidator's plan - the pooling agreement. Response to Supplemental Motion to Dismiss at 3-4. While the Court takes note of the creditors' committee objections it fails to see how these objections demonstrate that Plaintiff will somehow be deprived of all remedies or treated unfairly in a foreign forum, especially in light of the fact that subsequently the Liquidation Plan was adopted by the supervising courts in England, Luxembourg, and the Cayman Islands, and 93% of all identified depositors and creditors of BCCI S.A. voted to support said Plan. Akers Aff. para. 6; Ballot of Creditors, Exhibit 1, Defendant's Reply to Supplemental Motion to Dismiss.

Lastly, Plaintiff argues that the world wide proceedings are not "adequate" because none of the alternative forums recognize a cause of action that is equivalent to Plaintiff's RICO claim. Response to Supplemental Motion to Dismiss at 10. Once again, Plaintiff is correct. Plaintiff will not be able to claim RICO violations nor recover treble damages in the world wide proceedings because the forums do not recognize a cause of action equivalent to RICO. However, Plaintiff will be able to recover for money laundering and theft, the causes of action which underlie RICO,

11

in England or Panama because both forums recognize said causes of action. United States courts have consistently held that the absence of a cause of action equal to RICO in a foreign jurisdiction does not render that jurisdiction inadequate for purposes of the doctrine of forum non conveniens. *See e.g.* Transunion Corporation v. Pepsico, Inc., 811 F.2d 127, 129 (2nd Cir. 1987) (Philippine corporation claim against a United States corporation for breach of contract, fraud, and RICO was dismissed on grounds of forum non conveniens; the fact that plaintiff could not assert RICO claim and treble damages in the Philippines was not dispositive as plaintiff could still maintain fraud actions underlying the RICO counts); Kempe v. Ocean Drilling & Exploration Co., 876 F.2d 1138, 1145 (5th Cir.), *cert. denied*, 493 U.S. 918 (1989) (absence of equivalent of RICO in Bermuda does not bar dismissal on grounds of forum non conveniens where foreign law permits recover for fraud, negligence, breach of fiduciary duty and the like); Alcoa Steamship Company, Inc. v. M/V Nordic Regent, 654 F.2d 147, 159 (2nd Cir.), *cert. denied* 449 U.S. 890 (1980) (maximum recovery of $570,000 in foreign forum versus $8,000,000 in United States does not render foreign forum inadequate).

The Court also notes that the special venue provision of the RICO statute, 18 U.S.C. §1965(a) (1982), which provides that any civil RICO action "may be instituted" in the district court in any district with which the defendant has certain specified connections, does not prevent dismissal of a RICO claim on forum non conveniens grounds. *See* Transunion, 811 F.2d at 129-30. Dismissal has been upheld in other instances involving statutes with special venue provisions. *See* In re Air Crash Disaster, 821 F.2d at 1163-64 (forum non conveniens available under Jones Act notwithstanding special venue provision); Howe v. Goldcorp Investments, Ltd., 946 F.2d 944 (1st Cir. 1991) (forum non conveniens applicable to private securities case notwithstanding

special venue provision); Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 431 (9th Cir. 1977) (forum non conveniens applicable to Lanham Act notwithstanding special venue provision).

## B. Weighing of the Private and Public Interest Factors

Once a court determines that an adequate alternative forum exists, it must consider relevant factors of private and public interest to determine whether or not dismissal on grounds of forum non conveniens is appropriate. The starting point in the private interest analysis is a well-recognized presumption that favors Plaintiff's choice of forum. See Gilbert, 330 U.S. at 508. However, the presumption is weakened in this case because plaintiff is a foreign entity. See Reyno, 454 U.S. at 266. Other private interest factors that the court may consider are "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . all other practical problems that make trial of a case easy, expeditious and inexpensive . . . [and] questions [relating] to the enforceability of a judgment if one is obtained." Gilbert, 330 U.S. at 508.

It is undisputed that the documents and the witnesses pertinent to this matter are scattered throughout the world, making no one forum significantly more convenient than another.[8] It is also undisputed that Plaintiff may join the worldwide liquidation, while the other BCCI creditors are not eligible to join this action. Lastly, it is undisputed that the BCCI defendants forfeited all their United States assets when they plead guilty to criminal RICO charges. Therefore, any

---

[8] While the parties seem unable to agree as to the percentage of documents and witnesses located in the United States or elsewhere for that matter, they do seem to agree that the proof is located everywhere, without any significant concentration.

13

12/21/2001  14:04    4047637059          NARA SE REGION                    PAGE  02

potential judgment attained by Plaintiff in this matter would be unenforceable in the United States.[9]  Accordingly, the Court finds that the factors of private interest, including Plaintiff's weakened presumption of choice of forum, simply do *not* weigh in favor of the continuance of this action in the United States.

"If the trial judge finds [the] balance of private interests to be in equipoise or near equipoise, he must then determine whether or not factors or *public* interest tip the balance in favor of a trial in a foreign forum." La Seguridad, 707 F.2d at 1307 (*quoting* Pain v. United Technologies Corp., 637 F.2d at 784-85 (*emphasis in original*).  Public interest factors which may be considered by the court are the administrative difficulties of congestion of the court system; the burden imposed on jurors, especially in cases unrelated to the surrounding community; the interest in having localized controversies decided at home; and the appropriateness of having a diversity matter tried in a home jurisdiction, thereby avoiding problems in conflict of laws. Gilbert, 330 U.S. at 508.

This Court finds that the public interest factors weigh overwhelmingly in favor of dismissing this action.  The worldwide liquidation proceedings have been in place since 1992 and have implemented a comprehensive plan designed to equally distribute assets to all known BCCI creditors.  The Cayman Islands, England, and Luxembourg have a significant interest in resolving this matter because the matter arose in their jurisdiction and because they are international banking centers with a "strong interest in regulating its industry so as to retain credibility abroad." Kempe, 876 F.2d at 1146 (claim dismissed on forum non conveniens grounds as Bermuda, an

---

[9]  Plaintiff argues that a judgment would be enforceable against the First American Defendants because an appeal is pending as to this Court's Order dismissing said Defendants from this action.  This Court hardly finds Plaintiff's argument tenable.

international insurance center, had a greater interest in regulating insurance industry than the defendant's residence of Louisiana).  Whereas, the United States simply does not have a substantial interest in this litigation as it involves foreign parties and foreign matters.  Further, the administrative difficulties that will be presented if this case is allowed to remain on the Court's docket are enormous, especially in light of the fact that this case concerns Panamanian law and would require the Court to do an extensive conflict of law analysis as well as interpret and apply foreign law.  Gilbert, 330 U.S. at 509 (one of the purposes of a forum non conveniens dismissal is "the avoidance of unnecessary problems of conflict of laws or the application of foreign law.");  Syndicate 420, 796 F.2d at 832 ("[t]he necessity of applying this foreign law, in turn, is simply another factor that militates in favor of the dismissal").  Accordingly, America's interest in this case "is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here." Reyno, 454 U.S. at 260-61.

### C. Conclusion

Originally Plaintiff claimed the United States was the only adequate forum available because "[a] judgment without money to pay it is worthless.  Noriega, with the aid of BCCI, spent years looting the nation's treasury of government assets.  The funds that rightfully are the Republic of Panama's have now made their way into the United States.  It would have been foolish to bring this action in Panama... [or[ the United Kingdom...because the money is no longer there." Response to BCCI's Original Motion to Dismiss at 29-30.  However the money is no longer here.  All of BCCI's assets in the United States have been forfeited and placed into a Custodial Account, and a worldwide proceeding has been instituted to deal with debtor and

15

creditor's potential claims. Plea Agreement at para. 11

The Court has weighed all the factors in the forum non conveniens analysis and finds that the coordinated worldwide liquidation is both available and adequate and a balancing of the private and public interest factors favors dismissal based on forum non conveniens. The fact that the laws and procedures in the foreign forum are different from those in the United States, or that Plaintiff will be unable to assert its RICO claim, or that certain documents or witnesses are in this country does not override the fundamental unfairness of allowing Plaintiff to adjudicate its claim outside the official liquidation proceedings. Plaintiff has failed to demonstrate why it should be treated differently than the other innocent creditors who have been forced to seek relief in the pending worldwide proceedings. Plaintiff has the opportunity to file its claim in the liquidation proceeding and should not be able to interfere with the orderly liquidation proceedings of England, Luxembourg, and the Cayman Islands. For these reasons, the BCCI Defendants' Motion to Dismiss is granted based on the doctrine of forum non conveniens.[10]

## II. COMITY

In the alternative, the Court also finds that the BCCI Defendants' Motion to Dismiss should be granted in accordance with the doctrine of international comity because the world wide proceedings are courts of competent jurisdiction which abide by "fundamental standards of procedural fairness" and because said decision furthers the laws and public policies of the United

---

[10]The Court notes that a similar decision was reached in BCCI Holdings (Luxembourg) v. Mahfouz, 828 F. Supp. 92, 100 (D. D.C. 1993).

16

States.

Comity is "the recognition which one nation allows within its territory to the legislative,

executive or judicial acts of another nation, having due regard both to international duty and

convenience, and to the rights of its own citizens or of other persons who are under the protection

of its law." Hilton v. Guyot, 159 U.S. 113, 164 (1895). United States courts have traditionally

recognized the need to extend comity to foreign bankruptcy proceedings. *See* Victrix Steamship

Co. S.A. v. Salen Dry Cargo A.B., 825 F.2d 709, 713-15 (2d Cir. 1987) ("American courts have

long recognized the particular need to extend comity to foreign bankruptcy proceedings.");

Cunard Steamship Co., Ltd. v. Salen Reefer Services A.B., 773 F.2d 452, 458 (2d Cir. 1985);

Canada Southern Railroad Company v. Gebhard, 109 U.S. 527, 537-39 (1883). The Bankruptcy

Court in the Southern District of New York explained the justification behind this policy:

> Lurking in all transnational bankruptcies is the potential for chaos if the courts
> involved ignore the importance of comity. As anyone who has made even a brief
> excursion into this area of insolvency practice will report, there is little to guide
> practitioners or the judiciary in dealing with the unique problems posed by such
> bankruptcies. Yet it is critical to harmonize the proceedings in the different courts
> lest decrees at war with one another result.

*In re* Petition of Brierley, 145 B.R. 151, 164 (Bankr. S.D.N.Y. 1992); *see also* Canada Southern,

109 U.S. at 539 ("[u]nless all parties in interest, wherever they reside, can be bound by the

arrangement which it is sought to have legalized, the scheme may fail.")

Generally, comity may be granted where "it is shown that the foreign court is a court of

competent jurisdiction, and that the laws and public policy of the forum state and the rights of its

residents will not be violated." Cunard, 773 F.2d at 457. This is especially true in sister common

law countries such as the Cayman Islands and England as well as civil law countries such as

Luxembourg and Panama. *See* Lindner Fund, Inc. v. Polly Peck International, 143 B.R. 807, 810

17

(Bankr. S.D.N.Y. 1992) (England); Corfeld v. Investors Overseas Servs. Ltd., 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) (Canada); IIT v. Cornfeld, 462 F.Supp. 209, 216-17 (S.D.N.Y. 1978), aff'd in relevant part, 619 F.2d 909 (2d Cir. 1980) (Luxembourg).

In assessing whether a foreign jurisdiction is a "court of competent jurisdiction" courts are most concerned with whether the foreign court abides by "fundamental standards of procedural fairness." Id. In Allstate Life Insurance Co. v. Linter Group Ltd., the court delineated the following factors as those to be considered when assessing procedural fairness:

> 1) whether creditors of the same class are treated equally in the distribution; 2) whether the liquidators are considered fiduciaries and are held accountable to the court; 3) whether creditors have the right to submit claims which, if denied, can be submitted to a bankruptcy court for adjudication; 4) whether the liquidators are required to give notice to the debtor's potential claimants; 5) whether there are provisions for creditors' meetings; 6) whether a foreign country's insolvency laws favor its own citizens; 7) whether all assets are marshalled before one body foe centralized distribution; and 8) whether there are provisions for an automatic stay and for the lifting of such stays to facilitate the centralization of claims

Allstate Life Insurance Co. v. Linter Group Ltd., 994 F.2d 996, 999 (2d Cir.), cert. denied 114 S. Ct. 386 (1993) (citing Cunard, 773 F.2d at 459-60).

The worldwide liquidation proceedings have implemented a comprehensive plan to liquidate the BCCI defendants. The Official Liquidators in the Cayman Islands, England, and Luxembourg published notice to potential creditors directly and indirectly, via mail and by publishing information in over 136 newspapers worldwide. Once identified, the creditor can document their claim by filing a proof of debt form with the liquidator, which includes all past, present, and future claims against the BCCI defendants. The Official liquidators then consider said claim and accept or reject it. If a claim is disallowed, in whole or in part, the creditor may appeal to the appropriate court within the jurisdiction. Meanwhile, the liquidators are directing the pooling of the BCCI defendants' assets, which will then be distributed to all creditors equally,

18

regardless of their country of origin. *See* Wight Aff.; Baden Aff.; Akers Aff. These proceedings clearly comport with a "fundamental standard of procedural fairness," especially in light of the factors enunciated in <u>Allstate</u>.

The next factor that the Court must consider is whether affording comity to the worldwide liquidation proceedings would be "contrary or prejudicial to the interests of the nation called upon to give effect." <u>Philadelphia Gear Corp. v. Gear De Mexico, S.A.</u>, 44 F.3d 187, 191 (3d Cir. 1994); <u>Somportex Ltd. v. Philadelphia Chewing Gum Corp.</u>, 453 F.2d 435, 440 (3d Cir. 1971), *cert. denied*, 405 U.S. 1017 (1972). This Court finds that affording comity in this case furthers the laws and public policies of the United States because "[our] courts have consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities." <u>Allstate</u>, 994 F.2d at 1000 (*quoting* <u>Cunard</u>, 773 F.2d at 458); <u>ITT v. Cornfeld</u>, 462 F.Supp. at 209. Further, where as here, "the granting of comity to a Foreign bankruptcy proceedings enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion," comity has long been recognized as appropriate. <u>Id.</u>

Plaintiff argues that denying them the opportunity to pursue their RICO action is in contravention of United States laws and policies because implicit in RICO is a deterrence factor, which will not be served. *See* Plaintiff's Response to Motion to Dismiss at 9. The Court disagrees because it believes that the important public policy of deterrence implicit in RICO was fulfilled when the United States brought criminal charges against BCCI and the BCCI defendants plead guilty and forfeited significant assets.

Plaintiff further argues that comity should not be granted in this matter because to do so

19

would deny Plaintiff a fair opportunity to present its RICO damage claim. *See* Id. at 8. As

previously discussed in the forum non conveniens section, Plaintiff's argument fails because courts

have consistently held that the law of the foreign forum need not be identical to ours. *See* Allstate,

994 F.2d at 999 (when considering whether dismissal based on comity was proper court stated

that "there is no requirement that Australian liquidation proceedings be identical to United States

bankruptcy proceedings.").

Based on the foregoing discussion, it is hereby

### III. ORDER

ORDERED and ADJUDGED that the BCCI Defendants' Motion to Dismiss is

GRANTED.

DONE AND ORDERED in Chambers at Miami, Florida, this _17_ day of July, 1995.

URSULA UNGARO-BENAGES
UNITED STATES DISTRICT JUDGE

copies provided:

Counsel of Record

20