Westlaw.

Slip Copy
2004 WL 2244539 (E.D.Pa.), RICO Bus.Disp.Guide 10,776
(Cite as: 2004 WL 2244539 (E.D.Pa.))

Page 1

H

**Motions, Pleadings and Filings**

United States District Court,
E.D. Pennsylvania.
Henry STURSBERG, Individually and as trustee
for Jeremy Stursberg and Courtney
Stursberg and Stursberg and Fine, Inc.
v.
Nand TODI, Stephen Harris, Esquire and Andrew
Klein, Esquire
**No. Civ.A.04-1333.**

Oct. 1, 2004.

Mark S. Haltzman, Haltzman & Associates, Bala Cynwyd, PA, for Plaintiffs.

Merri R. Lane, Washington, DC, Michele Langer, Marvin Larsson Henkin & Scheuritzel, Philadelphia, PA, for Defendants

*MEMORANDUM AND ORDER*

JOYNER, J.

*1 This case has been brought before the Court for disposition of the Motion of Defendants Stephen Harris, Esquire and Andrew Klein, Esquire to Dismiss the Plaintiffs' Complaint in its entirety for failure to state any claims upon which relief may be granted. For the reasons outlined below, we shall grant the motion with respect to the Plaintiffs' federal RICO claims and, as we decline to exercise continued supplemental jurisdiction over the remaining state law claims, shall dismiss the complaint in its entirety with leave to the Plaintiffs to re-file their state law claims in the appropriate state court.

*Factual Background*

The present action actually has its origins in several prior lawsuits, two civil actions in this Court for injunctive relief and monetary damages before Judge Dubois, a bankruptcy action filed on behalf of two of the plaintiffs' business ventures and a civil action in the Philadelphia County Court of Common Pleas to enforce a written settlement agreement between the parties settling the first two actions.

Underlying all of these prior suits and the instant litigation is a now-defunct business venture in which Plaintiff Henry Stursberg sought to develop the idea of a commercial real estate industry business-to-business website to facilitate transactions between commercial real estate property owners and commercial real estate providers of goods and services. In furtherance of that goal, Mr. Stursberg, who was already involved in a business called J & C Publishing, Inc. which published the Commercial Realty Review Magazine, incorporated reXnow.com, LLC ("Rex") in March, 2000. In pursuant of the Rex project, the Magazine entered into an agreement with Intermedia Software to develop the software necessary to make the website operational. Defendant Nand Todi loaned $500,000 to Rex to help finance the project. The website, however, never became operational, Intermedia never released the software and Rex went out of business.

In March, 2001, Mr. Todi filed suit against Rex and Commercial Realty Review Magazine in this Court at Civil Action No. 01-CV-1545 for, *inter alia,* breach of contract, violation of the securities laws and seeking monetary and injunctive relief. After Rex and the Magazine filed for bankruptcy and the civil action against them was put into suspense, Todi brought a second suit in this Court against Mr. Stursberg personally and Stursberg & Fine, Inc. at No. 01-2539 alleging, *inter alia,* civil conspiracy, fraud, violation of the securities laws and again seeking both injunctive relief and money damages. Both cases were assigned to the Honorable Jan E. Dubois who, after hearings on the plaintiff's motions therefore, declined to grant preliminary injunctive relief. Thereafter, on December 7, 2001, a settlement conference was held before the Honorable Thomas Rueter, U.S. Magistrate Judge, and a global settlement of all three actions was reached between the parties and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
2004 WL 2244539 (E.D.Pa.), RICO Bus.Disp.Guide 10,776  
**(Cite as: 2004 WL 2244539 (E.D.Pa.))**

Page 2

their counsel. This settlement was placed on the record that same day before Judge Rueter, although it was also agreed that it would later be memorialized in a written settlement agreement. As a result of the settlement, Judge Dubois entered orders dismissing both of the cases before him.

*2 Several months later, Mr. Todi's attorneys, Defendants Harris and Klein prepared a draft written settlement agreement and submitted it to Plaintiff Stursberg's counsel for Plaintiff's signature. In the opinion of Mr. Stursberg and his attorney, however, the proposed written agreement did not comport with the settlement which was agreed to on the record before Judge Rueter on December 7, 2001 and they refused to sign it. Messrs. Harris and Klein then brought suit in the Philadelphia County Court of Common Pleas on Mr. Todi's behalf against Mr. Stursberg, Stursberg & Fine and J & C Publishing for declaratory judgment, breach of contract, breach of the implied covenant of good faith and fair dealing, fraud in the inducement, negligent misrepresentation and unjust enrichment. Via Memorandum Opinion and Order dated July 17, 2003, the Honorable Gene D. Cohen dismissed all of the claims in the complaint save for that seeking declaratory judgment against the defendants and found that the global settlement agreement placed on the record before Judge Rueter on 12/7/01 was a valid and enforceable contract which was binding upon the parties but that the draft written settlement agreement prepared by Messrs. Harris and Klein was not.

Plaintiffs here filed the complaint commencing the instant action in the Philadelphia County Court of Common Pleas on February 18, 2004 alleging that the suit before Judge Cohen possessed no factual or legal merit and that the defendants' purpose in instituting it was to cover up Harris' and Klein's negligence in negotiating the settlement on Todi's behalf, to damage the plaintiffs' and the Magazine's reputation, to limit the plaintiffs' ability to enter into business relationships and to secure financing and thus to force them into a weaker financial position such that they would execute the draft written settlement agreement. In Counts I through VII(sic) [FN1] of the Complaint, Plaintiffs seek relief under the theories of Wrongful Use of Civil Procedure, Abuse of Process, Conspiracy, Breach of Contract, Tortious Interference with Contract, Tortious Interference with Existing and Prospective Business Opportunities, RICO: Violation of 18 U.S.C. § 1962(c) and RICO: Violation of 18 U.S.C. § 1962(d). By the motion now before us, Defendants Harris and Klein seek to dismiss the complaint in its entirety for failure to state a claim upon which relief may be granted.

> FN1. Plaintiff's complaint has two counts labeled "IV"-one for Breach of Contract and one for Tortious Interference With a Contract.

*Standards Applicable to 12(b)(6) Motions to Dismiss*

It has long been the rule that in considering motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the district courts must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Allah v. Seiverling,* 229 F.3d 220, 223 (3d Cir.2000) (internal quotations omitted). See Also: *Ford v. Schering-Plough Corp.,* 145 F.3d 601, 604 (3d Cir.1998). A motion to dismiss may only be granted where the allegations fail to state any claim upon which relief may be granted. *See, Morse v. Lower Merion School District,* 132 F.3d 902, 906 (3d Cir.1997). The inquiry is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims. *In re Rockefeller Center Properties, Inc.,* 311 F.3d 198, 215 (3d Cir.2002). Dismissal is warranted only "if it is certain that no relief can be granted under any set of facts which could be proved." *Klein v. General Nutrition Companies, Inc.,* 186 F.3d 338, 342 (3d Cir.1999) (internal quotations omitted). It should be noted that courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint and legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. *In re Rockefeller,* 311 F.3d at 216. A court may, however, look beyond the complaint to extrinsic documents when the plaintiff's claims are based on those documents. *GSC Partners, CDO Fund v. Washington,* 368 F.3d 228, 236 (3d Cir.2004); *In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1426. See Also, *Angstadt v. Midd-West School District,* 377 F.3d 338, 342 (3d Cir.2004).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2244539 (E.D.Pa.), RICO Bus.Disp.Guide 10,776
(Cite as: 2004 WL 2244539 (E.D.Pa.))

Page 3

*Discussion*

**\*3** As noted, the plaintiffs in this case have brought state law claims for wrongful use of civil proceedings, abuse of process, conspiracy, breach of contract, and tortious interference with existing and prospective contractual and business relations and federal claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d). We address the Plaintiffs' RICO claims first as it is upon these claims that federal jurisdiction is premised.

Specifically, Section 1962(c) provides that:
> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Under Section 1962(d),
> It shall be unlawful for any person to conspire to violate the provisions of subsection (a), (b), or (c) of this section.

According to the "Definitions" set forth in 18 U.S.C. § 1961,

As set forth in this chapter--
> (1) "racketeering activity" means ... (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1341 (relating to mail fraud), section 1344 (relating to wire fraud) ...
> (3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property;
> (4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;
> (5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;
> ....

Not surprisingly, the pleading requirements differ depending upon the RICO subsection under which the plaintiff is proceeding. To state a cause of action under Section 1962(c), a plaintiff must at a minimum allege (1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity or the collection of an unlawful debt. *Salinas v. U.S.,* 522 U.S. 52, 62, 118 S.Ct. 469, 476, 139 L.Ed.2d 352 (1997); *H.J., Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 232, 109 S.Ct. 2893, 2897, 106 L.Ed.2d 195 (1989); *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). In order to allege a RICO enterprise, the Third Circuit has identified three elements: (1) that there be an ongoing organization; (2) that the associates function as a continuing unit; and (3) that the enterprise is separate and apart from the pattern of activity in which it engages. *Bonavitacola Electric Contractor, Inc. v. Boro Developers, Inc.,* Civ. A. No. 01-5508, 2003 U.S. Dist. LEXIS 2190, at *10-11 (E.D.Pa. Feb. 12, 2003). See Also, *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161, 121 S.Ct. 2087, 2090, 150 L.Ed.2d 198 (2001) and *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.,* 46 F.3d 258, 269 (3d Cir.1995).

**\*4** To plead a pattern of racketeering activity, a plaintiff must allege that a defendant committed at least two acts of racketeering activity, as part of a related and continuous pattern. *Teti v. Towamencin Township,* Civ. A. No. 96-CV-5602, 2001 U.S. Dist. LEXIS 15600, at *18 (E.D.Pa. Aug. 17, 2001), citing *H.J., Inc.,* 492 U.S. at 237, 109 S.Ct. at 2899. A pattern is not formed by sporadic activity and a person cannot be subjected to the sanctions of RICO simply for committing two widely separated and isolated criminal offenses. *Teti,* 2001 U.S. Dist. LEXIS at *25, citing *H.J, Inc.,* 492 U.S. at 239, 109 S.Ct. At 2900. Stated otherwise, a "pattern" of racketeering activity exists when predicate criminal acts are related and amount to or otherwise constitute a threat of continued criminal activity. *Werther v. Rosen,* Civ. A. No. 02-CV-3589, 2002 U.S. Dist. LEXIS 22262, at *5 (E.D.Pa. Oct.30, 2002).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2244539 (E.D.Pa.), RICO Bus.Disp.Guide 10,776
(Cite as: 2004 WL 2244539 (E.D.Pa.))

Page 4

Racketeering acts are said to be related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. *H.J., Inc.*, 492 U.S. at 240, 109 S.Ct. At 2901; *Schroeder v. Acceleration Life Insurance Co.*, 972 F.2d 41, 46 (3d Cir.1992). Continuity has been said to be both a closed and open-ended concept referring either to a closed period of repeated conduct or to past conduct which by its nature projects into the future with a threat of repetition. *H.J., Inc.*, 492 U.S. at 241-242, 109 S.Ct. At 2902. Thus, a party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time or by demonstrating that a threat of continuing criminal activity exists. *Id.; Hindes v. Castle*, 937 F.2d 868, 872 (3d Cir.1991).

Whether the predicate acts constitute a threat of continued racketeering activity depends on the specific facts of each case. *Tabas v. Tabas*, 47 F.3d 1280, 1295 (3rd Cir.1995). Indeed, with respect to a "closed-ended scheme," the Third Circuit has developed a durational requirement of at least twelve months, which time period is measured between the first and last predicate acts alleged. *Bonavitacola*, 2003 U.S. Dist. LEXIS at *27, citing *Tabas*, 47 F.3d at 1293 and *Plater-Zyberk v. Abraham*, Civ. A. No. 97-3322, 1998 U.S. Dist. LEXIS 1736, at *23-24 (E.D.Pa. Feb.18, 1998). While predicate acts extending over a few weeks or months and threatening no future criminal conduct thus do not satisfy the continuity requirement, open-ended continuity may be satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business or of conducting or participating in an ongoing and legitimate RICO enterprise. *H.J., Inc.*, 492 U.S. at 243, 109 S.Ct. at 2902; *Tabas*, at 1295. Finally, in determining whether a pattern of racketeering activity has been established in a given case, it is appropriate to consider: (1) the number of unlawful acts; (2) the length of time over which the acts were committed; (3) the similarity of the acts; (4) the number of victims; (5) the number of perpetrators; and (6) the character of the unlawful activity. *Tabas*, at 1292; *Barticheck v. Fidelity Union Bank/First National State*, 832 F.2d 36, 39 (3rd Cir.1987). See Also: *Bonavitacola*, 2003 U.S. Dist. LEXIS at *22.

*5 Finally, "to conduct or participate directly or indirectly in the conduct of an enterprise's affairs," a defendant must have had some part in directing those affairs, i.e., must have participated in the operation or management of the enterprise itself. *Reves v. Ernst & Young*, 507 U.S. 170, 113 S.Ct. 1163, 1170, 1173, 122 L.Ed.2d 525 (1993).

In reviewing Counts VI and VII of the Plaintiffs' Complaint in this case in light of the preceding requirements, we find it to be deficient in numerous respects. For one, it is well settled that where acts of mail and wire fraud constitute the alleged predicate racketeering acts, those acts are subject to the heightened pleading requirement of Rule 9(b). *Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir.2002). The requisite elements of mail or wire fraud are: (1) a scheme to defraud; (2) use of the transmissions to further that scheme; and (3) fraudulent intent. *Bonavitacola*, 2003 U.S. Dist. LEXIS at *17, citing *Werther*, 2002 U.S. Dist. LEXIS at *7-*8, citing *U.S. v. Pharis*, 298 F.3d 228, 233-34 (3d Cir.2002)). When alleging mail and wire fraud as predicate acts in a RICO claim, plaintiff's pleadings must therefore further identify the purpose of the mailing within the defendant's fraudulent scheme and specify the fraudulent statement, the time, place, speaker and content of the alleged misrepresentation, *i.e.* the who, what, when and where details of the alleged fraud. *Bonavitacola*, at *18,, quoting *U.S. ex.rel. Waris v. Staff Builders, Inc.*, Civ. A. No. 96-1969, 1999 U.S. Dist. LEXIS 2998 at *4 (E.D.Pa. Mar. 4, 1999). In this case, the plaintiffs allege that Defendants Todi, Harris and Klein are "persons" within the meaning of Section 1961(3), that they "have together formed and operated an association-in-fact enterprise as defined by 18 U.S.C. § 1961(4) and have together conducted the affairs of that enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c)." (Complaint, ¶ s 113-114). For the predicate racketeering acts, Plaintiffs aver that the defendants "throughout this period conveyed through the United States mail and the interstate telecommunications wires a series of false and fraudulent statements and documents ... [which] have included, inter alia, correspondence, telecommunications, e-mails and copies of the Draft Settlement between and among the Defendants and Stursberg and his counsel." (Complaint, ¶ s115-117). As plaintiffs' complaint does not contain

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2244539 (E.D.Pa.), RICO Bus.Disp.Guide 10,776
**(Cite as: 2004 WL 2244539 (E.D.Pa.))**

Page 5

the "who, what, when and where details necessary to state fraud, we find it fails to allege the required "predicate acts."

We further find the complaint inadequate by virtue of its failure to sufficiently allege "continuity." Again, continuity may be either closed or open-ended. To demonstrate continuity over a closed period, the plaintiff must allege a series of related predicate acts extended over a substantial period of time--generally longer than one year, whereas to make out a case for open-ended continuity there must be something upon which a court could find that the illegal activity is a regular way of conducting business or that it is otherwise likely to continue into the future. There are no allegations and no suggestions that writing inaccurate memorializations of settlements and then transmitting them via the mails and wires is a regular way for the defendants to conduct their business, that such activities are likely to continue or that the defendants have utilized this method to defraud other, similarly situated people in the past. It further appears that the period of time over which the allegedly fraudulent documents were transmitted lasted no more than a few months, at most. We therefore cannot find that the alleged illegal activity has been anything other than sporadic and that the "continuity" element requisite to pleading a pattern of racketeering activity has not been satisfied in this case.

*6 Furthermore, the plaintiff's complaint does not aver that the individual defendants are in any way separate and distinct from the alleged racketeering enterprise. To the contrary, given that Plaintiffs allege only that the three defendants "have together formed and operated an association-in-fact enterprise and have together conducted the affairs of that enterprise through a pattern of racketeering activity," we can only speculate as to what form the "enterprise" purportedly takes in this case or as to how each defendant directly participated. Given the Supreme Court's recent affirmation that to establish liability under Section 1962(c), one must allege and prove the existence of two distinct entities: (1) a "person" and (2) an "enterprise" that is not simply the same "person" referred to by a different name, we simply cannot find that pleading requirement to have been met here. *See, Cedric Kushner Promotions, supra.* Accordingly, we conclude that the plaintiffs have not pled a viable claim under Section 1962(c) of RICO and Count VI is dismissed with prejudice.

We turn next to Count VII, which endeavors to state a claim under Section 1962(d) of the RICO statute. To plead a claim under § 1962(d), a plaintiff must allege that: (1) there was an agreement to commit the predicate acts of fraud, and (2) defendants had knowledge that those acts were part of a pattern of racketeering activity conducted in such a way as to violate §§ 1962(a), (b) or (c). *Martin v. Brown,* 758 F.Supp. 313, 319 (W.D.Pa.1990). Any claim under § 1962(d) based on a conspiracy to violate the other subsections of Section 1962 necessarily must fail if the substantive claims are themselves deficient. *Jiffy Lube International v. Jiffy Lube of Pennsylvania,* 848 F.Supp. 569, 583 (E.D.Pa.1994), citing *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1191 (3rd Cir.1993).

Even disregarding the dependency of Plaintiffs' Section 1962(d) conspiracy claim upon the successful pleading of their Section 1962(c) cause of action, we would also dismiss Count VII because the plaintiffs cannot show that the defendants agreed to the commission of a "pattern of racketeering." As discussed, continuity is a necessary element to establishing a "pattern." Given that the conduct here clearly did not last longer than a year and that there is nothing from which we could infer that there was a threat of its repetition into the future (particularly in light of Judge Cohen's order decreeing the proposed written agreement unenforceable), we find that the plaintiffs do not meet the continuity requirement necessary to make out a Section 1962(d) violation. *See, Breslin v. Brainard,* Civ. A. No. 01-7269, 2003 U.S. Dist. LEXIS 19609 at * 45 (E.D.Pa. Oct. 10, 2003). We therefore grant the motion to dismiss Count VII in its entirety with prejudice.

For the reasons outlined above, the motion to dismiss is granted with regard to Counts VI and VII of the plaintiffs' complaint. As federal jurisdiction is premised upon these two counts and we decline to continue to exercise supplemental jurisdiction over this action, we shall likewise dismiss the case in its entirety, albeit without prejudice to the plaintiffs' right to re-file their state law claims in the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2244539 (E.D.Pa.), RICO Bus.Disp.Guide 10,776
**(Cite as: 2004 WL 2244539 (E.D.Pa.))**

Page 6

appropriate state court. *See Generally,* 28 U.S.C. § 1367(c)(1).

*7 An order follows.

### ORDER

AND NOW, this day of September, 2004, upon consideration of the Motion to Dismiss of Defendants Stephen Harris, Esquire and Andrew Klein, Esquire and Plaintiffs' Response thereto, it is hereby ORDERED that the Motion is GRANTED, Counts I-V of the Complaint are DISMISSED without prejudice to Plaintiffs' right to re-file them in the appropriate state court and Counts VI and VII are DISMISSED with prejudice pursuant to Fed.R.Civ.P. 12(b)(6).

2004 WL 2244539 (E.D.Pa.), RICO Bus.Disp.Guide 10,776

**Motions, Pleadings and Filings (Back to top)**

. 2:04CV01333  (Docket)

(Mar. 26, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**16**

Westlaw.

Not Reported in F.Supp.2d  
2003 WL 230741 (S.D.N.Y.)  
**(Cite as: 2003 WL 230741 (S.D.N.Y.))**

Page 1

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,  
S.D. New York.  
Helga VARNELO, as Personal Representative of the Estate of Stanislav Varnelo, Deceased, Plaintiff,  
v.  
EASTWIND TRANSPORT, LTD., Charm Navigation, Ltd., & Mayflower Ship Management Corp., Defendants.  
**No. 02Civ.2084(KMW)(AJP).**

Feb. 3, 2003.

Widow of Russian seamen brought action against owners or operators of a ship who allegedly negligently caused seamen's death aboard ship while in Chinese territorial waters. Upon one defendant's motion to dismiss on forum non conveniens grounds, the District Court, Peck, United States Magistrate Judge, held that: (1) Russia was an adequate alternate forum, and (2) private and public interest factors favored dismissal on forum non conveniens grounds.

Motion granted.

West Headnotes

**[1] Federal Courts** 45  
170Bk45 Most Cited Cases

**[1] Seamen** 29(5.5)  
348k29(5.5) Most Cited Cases  
Forum non conveniens analysis applies to Jones Act cases. Jones Act, 46 App.U.S.C.A. § 688.

**[2] Federal Courts** 45  
170Bk45 Most Cited Cases

**[2] Seamen** 29(5.5)  
348k29(5.5) Most Cited Cases  
For purposes of forum non conveniens analysis, Russian widow's choice of New York forum was entitled to "little deference" in action involving the death of a Russian seaman, hired in Russia, on board a Liberian ship in Chinese territorial waters; widow conceded that her recovery in Russia would be, at best, a small fraction of her recovery in New York forum, and it was clear that defendants would be amenable to suit in an alternative forum.

**[3] Federal Courts** 45  
170Bk45 Most Cited Cases

**[3] Seamen** 29(5.5)  
348k29(5.5) Most Cited Cases  
With respect to action involving the death of a Russian seaman, hired in Russia, on board a Liberian ship in Chinese territorial waters, treaty obligations between Russia and the United States did not require any greater deference to Russian widow's choice of New York forum, for purposes of forum non conveniens analysis, than she would be entitled to as a U.S. citizen in similar situation.

**[4] Federal Courts** 45  
170Bk45 Most Cited Cases

**[4] Seamen** 29(5.5)  
348k29(5.5) Most Cited Cases  
For purposes of forum non conveniens analysis, Russia was an adequate alternate forum for action involving the death of a Russian seaman, hired in Russia, on board a Liberian ship in Chinese territorial waters; Russian courts would likely exercise jurisdiction over defendants on consent, and lower size of seaman's widow's recovery in Russia did not render Russia an inadequate forum.

**[5] Federal Courts** 45  
170Bk45 Most Cited Cases

**[5] Seamen** 29(5.5)  
348k29(5.5) Most Cited Cases  
Private and public interest factors favored

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 230741 (S.D.N.Y.)
**(Cite as: 2003 WL 230741 (S.D.N.Y.))**

Page 2

dismissal, on forum non conveniens grounds, of action involving the death of a Russian seaman, hired in Russia, on board a Liberian ship in Chinese territorial waters; location and availability of witnesses strongly favored trial in Russia, choice of law factor was neutral, Russia had a strong interest in the dispute, and action's connection to New York forum, where defendant's offices were located, was far too attenuated to justify burdening U.S. citizens with jury duty.

*REPORT AND RECOMMENDATION*

PECK, Magistrate J.

*1 Plaintiff Helga Varnelo, as personal representative of the Estate of Stanislav Varnelo, deceased (the "decedent"), [FN1] brought this action against defendants Eastwind Transport, Ltd. ("Eastwind"), Charm Navigation, Ltd. ("Charm"), and Mayflower Ship Management Corp. ("Mayflower"), alleging that defendants, as owners or operators of the ship "Yellowstone," negligently caused Stanislav's death aboard ship while in Chinese territorial waters. (Dkt. No. 1: Compl. ¶¶ 2-18.) Eastwind has moved to dismiss on forum non conveniens ("FNC") grounds. (Dkt. No. 13.)

> FN1. To distinguish between Mr. and Mrs. Varnelo, the Court will refer to them by their first names; no disrespect is intended.

Stanislav Varnelo was, and Helga is, a Russian citizen residing in Kaliningrad, Russian Federation. Stanislav was hired in Kaliningrad. His accident took place aboard ship in Chinese waters. All of the relevant witnesses, including Stanislav's shipmates, are Russian nationals. While Eastwind and possibly the other defendants are located in New York, they all have stipulated to suit in Russia. Further, no evidence as to causation or damages appears to be located in New York. In short, it would be unfair to require New York's citizens to serve as jurors in an action so lacking a connection to this forum. By contrast, Russia has a strong interest in protecting its own seamen hired in Russia, and their Russian widows.

Accordingly, for the reasons set forth below, Eastwind's motion to dismiss on forum non conveniens grounds should be GRANTED.

*FACTS*
*Stanislav Varnelo's Employment on the Yellowstone and the Accident that Caused His Death*

Stanislav Varnelo was a Russian citizen residing in Kaliningrad, Russian Federation, and died at the age of 66. (Dkt. No. 14: Arralde 7/1/02 Aff. ¶ 2 & Exs. A & B.) His surviving wife, plaintiff Helga Varnelo, is now 65, a Russian citizen residing in Kaliningrad. (Arralde 7/1/02 Aff. ¶ 2 & Ex. A.)

Stanislav was employed as a "boatswain" or "bosun" aboard defendants' vessel Yellowstone. (Dkt. No. 1: Compl. ¶ 2; Dkt. No. 3: Answer ¶ 2; Dkt. No. 15: Lekkos 7/1/02 Aff. ¶ 4.) He was hired in Kaliningrad, Russian Federation, and employed pursuant to a "Service Agreement" dated March 3, 1999 between the ship's "crewing agent" ("Frost Crewing (Cyprus) Company" and "Reftransflot Crewing Ltd.") and Mayflower, the ship's "operator." (Dkt. No. 15: Lekkos 7/1/02 Aff. ¶ 4 & Ex. A; Compl. ¶ 12; Dkt. No. 34: Eastwind Resp. to Pl's Interrog. No. 1.)

It is undisputed that on October 17, 2001, Stanislav fell overboard and drowned while the Yellowstone was off the port of Shanghai, China. (Compl. ¶¶ 13-18; Dkt. No. 15: Lekkos 7/1/02 Aff. ¶ 7.) At the time of the accident, the ship's "pilot ladder" was being installed in order to take a Chinese river pilot aboard and proceed to Jiangjin, China. (Compl. ¶ 13; Lekkos 7/1/02 Aff. ¶ 7.) [FN2] Despite rescue efforts by the Yellowstone's crew and Chinese authorities, Stanislav's "body was never found." (Lekkos 7/1/02 Aff. ¶ 8.) [FN3]

> FN2. Both "Decedent and the ships's pilot fell into the sea." (Compl. ¶ 14; *accord,* Lekkos 7/1/02 Aff. ¶ 7.)

> FN3. Stanislav's Russian death certificate, issued on June 5, 2002 pursuant to a court proceeding in Kaliningrad, lists his date of death as October 17, 2001 in the city of Jiangyin, People's Republic of China. (Arralde 7/1/02 Aff. ¶ 5 & Ex. B; Lekkos 7/1/02 Aff. ¶ 9.)

*2 The parties, however, dispute the cause of the accident. Defendants assert that the accident was

Not Reported in F.Supp.2d
2003 WL 230741 (S.D.N.Y.)
**(Cite as: 2003 WL 230741 (S.D.N.Y.))**

Page 3

Stanislav's fault. (Dkt. No. 13: Eastwind Br. at 8; Dkt. No. 18: Eastwind Reply Br. at 5; Dkt. No. 19: Stearns 7/24/02 Aff. ¶ 6 (Stanislav may have fallen overboard "because of heart attack or other seizure or might even have jumped"); [FN4] 5/14/02 Stearns Letter to Judge Wood at 2.) The complaint, by contrast, asserts that (1) "[t]he vessel was unseaworthy in that the ... pilot ladder was not safe for its intended use"; (2) defendants "were negligent in not securing the pilot ladder in a safe manner"; (3) defendants "violated applicable safety regulations"; (4) defendants "failed to warn Decedent of danger"; (5) "rescue equipment was inadequate and not readily available"; and (6) "rescue efforts were negligently directed and enforced." (Compl.¶¶ 14-16.)

> FN4. Plaintiff and Eastwind both have submitted affidavits containing legal argument or other matter not based on the affiant's personal knowledge. (Dkt. No. 17: Edelman Aff.; Dkt. No. 19: Stearns 7/24/02 Aff.) The Court has disregarded such extraneous matter. *See, e.g., Ugarte v. Johnson,* 40 F.Supp.2d 178, 179 n. 1 (S.D.N.Y.1999) (collecting cases).

The Service Agreement, which was signed and accepted by Stanislav, provided for a base wage rate of $650 per month, and named plaintiff Helga Varnelo as Stanislav's beneficiary. (Dkt. No. 15: Lekkos 7/1/02 Aff. ¶¶ 4-5 & Exs. A-B.) The Service Agreement entitled Helga to a lump-sum payment of $49,000 for Stanislav's accidental death aboard ship. (Lekkos 7/1/02 Aff. ¶ 5 & Ex. A § 12; Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 1: Kargopolov 6/6/02 Aff. ¶¶ 5-6.)

The complaint alleged claims under the Jones Act, 28 U.S.C. § 688 *et seq.,* the Death On the High Seas Act ("DOHSA"), 46 U.S.C. § 761 *et seq.,* and "the General Maritime Law of the United States, and other applicable law." (Compl.¶ 1.) Claimed damages include: (1) $1 million for Helga's "personal losses as a dependent wife; loss of Decedent's support; loss of his society and other losses available under applicable laws"; and (2) $350,000 for "Decedent's pain and suffering prior to his death." (Compl.¶¶ 19, 22-23.)

*Jurisdictional Allegations Concerning Defendants*

The Yellowstone is registered in Liberia (Dkt. No. 15: Lekkos 7/1/02 Aff. ¶ 6; Dkt. No. 34: Eastwind Resp. to Pl's Interrog. No. 6) and at the time of Stanislav's death was owned by Charm, a Liberian company (Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 2: Pavlakis Aff. ¶ 3). Mayflower, the "operator" of the ship (and Stanislav's employer), is a Liberian company with offices in Piraeus, Greece. (Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 2: Pavlakis Aff. ¶ 3.) Eastwind is incorporated in Liberia with its principal place of business in this District. (Pavlakis Aff. ¶¶ 5-20; Edelman 7/15/02 Aff. Ex. 6 at 2; Eastwind Resp. to Pl's Interrog. No. 6.) Of the three defendants, only Eastwind concedes that it is subject to personal jurisdiction in this District. (*See* Dkt. No. 3: Answer ¶ 25.)

One of Helga's attorneys submitted a rambling, 17-page affidavit, asserting that: (1) the Yellowstone, though nominally owned by Charm with a Liberian "flag of convenience," is actually owned, controlled, and operated by Eastwind, headquartered in this District; (2) Mayflower is owned and controlled by Eastwind; (3) the ship was actually operated by Eastwind in New York, not Mayflower in Greece; and (4) the ship's "crewing agents" in Russia were owned, controlled, and operated by Eastwind. (Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 2: Pavlakis Aff. ¶¶ 3-27; *see also* Dkt. No. 1: Compl. ¶¶ 3-12.) Defendants' answer denies, "upon information and belief," plaintiff's jurisdictional allegations. (Answer ¶¶ 3-12.) [FN5]

> FN5. It is nonsensical for defendants to deny, "upon information and belief," the complaint's jurisdictional allegations regarding the defendants (such as defendants' domiciles), since defendants clearly have access to such information. Moreover, certain of defendants' denials are contradicted by Eastwind's other submissions. For example, defendants deny "upon information and belief" that Mayflower "was Decedent's employer and had contracted for Decedent's employment aboard the B/C YELLOWSTONE." (Complaint ¶ 12; Answer ¶ 12.) Yet Eastwind submitted an affidavit averring that Stanislav "was employed pursuant to a Service Agreement between a crewing

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

agent and the operator of M/V YELLOWSTONE, Mayflower...." (Dkt. No. 15: Lekkos 7/1/02 Aff. ¶ 4; *see also* Eastwind Resp. to Pl's Interrog. No. 1 (decedent "was employed pursuant to a company service agreement by Mayflower"). Similarly, defendants flatly deny the complaint's allegation that "[o]n or about 17 October 2001, while the vessel [B/C Yellowstone] was off the port of Shanghai, China, the pilot ladder was placed over the side to take a river pilot aboard to proceed to Jiangjin, China to discharge cargo" (Compl. ¶ 13; Answer ¶ 13), even though Eastwind's affidavit alleges virtually identical facts (Dkt. No. 15: Lekkos 7/1/02 Aff. ¶ 7 & Ex. D). Defense counsel must be more careful in future in preparing answers to avoid Rule 11 sanctions.

*Relevant Witnesses*

**\*3** According to Eastwind, all relevant evidence and witnesses are located in Russia "and perhaps China" (Dkt. No. 13: Eastwind Br. at 9-10), and "it is believed no witness who is available in New York has any knowledge concerning causation or damages" (Dkt. No. 31: Arralde 12/2/02 Aff. ¶ 13).

Eastwind asserts that the key liability witnesses are located in Russia: the Yellowstone was "manned exclusively by Russian nationals" at the time of Stanislav's death. (Dkt. No. 15: Lekkos 7/1/02 Aff. ¶ 6 & Ex. C; *see* Dkt. No. 31: Arralde 12/2/02 Aff. ¶ 7; Dkt. No. 13: Eastwind Br. at 10.) Of the crewmembers, Eastwind specifically names as potential witnesses the captain ("master" Vasily Larionov), the first mate ("chief officer" Andrey Bogdanov), and three "able-bodied seamen"-Miron Nuke, Sergey Gankevich, and Dmitriy Naronovich. (Arralde 12/2/02 Aff. ¶¶ 6-7; Dkt. No. 18: Eastwind Reply Br. at 8.) [FN6] Larionov, Nuke, and Gankevich are currently working aboard ships operated by Mayflower, while Bogdonov and Naronovich are not. (Arralde 12/2/02 Aff. Ex. B: Lekkos 11/29/02 Aff. ¶¶ 4, 7.) [FN7] Eastwind asserts, moreover, that "[w]hen seamen are not aboard ship, Mayflower cannot require them to make an appearance in connection with a case because once their contract has terminated, Mayflower has no power to require the seamen [to] do anything." (*Id.* ¶ 3.) Further, Eastwind asserts that the ships on which Larionov, Nuke, and Gankevich currently work are "bulk carriers and are not in a regular liner service," so that each voyage has "different ports of call" (*id.* ¶ 4)--presumably meaning that the ships do not predictably port in New York.

FN6. Nuke and Stanislav allegedly were installing the pilot ladder together around the time of the accident, but Nuke did not witness Stanislav's fall overboard. (Dkt. No. 15: Lekkos 7/1/02 Aff. Ex. E.) Unidentified "investigators" apparently took "statement[s]" from Nuke, the captain, and the first mate (Lekkos 7/1/02 Aff. ¶ 7 & Ex. E; Arralde 12/2/02 Aff. ¶ 6; Dkt. No. 36: Edelman 7/2/02 Letter), but only a portion of an unsworn written statement from Nuke has been submitted to this Court. (Lekkos 7/1/02 Aff. ¶ 7 & Ex. E.)

FN7. The affidavit submitted by Captain Lekkos of Mayflower fails to mention whether Bogdonov and Naronovich currently work on ships owned or controlled by defendants Eastwind or Charm. (Lekkos 11/29/02 Aff. ¶¶ 4, 7.)

Eastwind also contends that in order to assess Helga's damages, the jury would need to hear testimony from Russian witnesses regarding Stanislav's "health, state of mind or the sums he spent for personal consumption or instead contributed to his wife's support." (Dkt. No. 18: Eastwind Reply Br. at 5; *see also* Dkt. No. 31: Arralde 12/2/02 Aff. ¶ 9.) However, other than plaintiff Helga, the only damages witness that Eastwind identifies is "A. Kozlov," formerly a representative of Yellowstone's crewing agent. (Arralde 12/2/02 Aff. ¶¶ 2, 8-9 & Ex. A.)

According to Eastwind, other relevant witnesses reside in or near Piraeus, Greece, including Captain Lekkos of Mayflower and Mayflower ship inspectors. (Dkt. No. 31: Arralde 12/2/02 Aff. Ex. B: Lekkos 11/29/02 Aff. ¶¶ 1, 6.) Eastwind does not specifically identify any witnesses located in China, although presumably testimony from the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.