Not Reported in F.Supp.2d                                                                                                    Page 5
2003 WL 230741 (S.D.N.Y.)
**(Cite as: 2003 WL 230741 (S.D.N.Y.))**

crewmembers of the Chinese search and rescue mission would be relevant to Helga's allegation (Dkt. No. 1: Com pl. ¶ ¶ 15-16) that the rescue was performed negligently. The Yellowstone itself was sold to interests in the People's Republic of China after the accident, and is believed to be currently limited to Chinese waters. (Arralde 12/2/02 Aff. Ex. C: Murray Aff. ¶ 2.)

**\*4** Plaintiff contends, by contrast, that because defendants concede that there were no "eye witnesses" [sic] to the accident, no Russian crew members could provide relevant testimony. (Dkt. No. 16: Pl. Br. at 1, 4, 7.) Further, plaintiff contends that because defendants violated a treaty provision requiring that an officer supervise the rigging of pilot ladders, defendants are strictly liable for Stanislav's death. (Pl. Br. at 1, 7; see Dkt. No. 17: Edelman 7/15/02 Aff. at 2-3.) In plaintiff's view, therefore, testimony from Stanislav's shipmates regarding the details of his accident would be superfluous. (*Id.*)

Plaintiff further asserts that Stanislav's accident was caused by a decayed rope ladder. (Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 9.) According to plaintiff, the jury will only need to hear testimony from an American expert on rope ladder negligence and a Russian sailor, identified by plaintiff, who is willing to travel here to testify that a ship similar to the Yellowstone had a defective pilot ladder. (*Id.*) [FN8] Finally, plaintiff asserts that, because defendants' shipping operations are based in New York, most of the relevant witnesses are located here. (Dkt. No. 16: Pl. Br. at 4-5.) Plaintiff, however, fails to identify any such witnesses or the nature of their testimony.

> FN8. Plaintiff also claims to be tracking down "the Chinese pilot, or those on the Chinese pilot boat involved in the case, if he has any relevant information." (Dkt. No. 17: Edelman 7/15/02 Aff. at 15.)

*Procedural History*

On May 16, 2002, Judge Wood referred this case to me for general pretrial supervision and for reports and recommendations on dispositive motions. (Dkt. No. 5.)

This Court held a May 31, 2002 status conference, at which plaintiff's counsel confirmed that he had never spoken to Helga, but rather had been "retained by other [foreign] lawyers" who control the case. (Dkt. No. 12: 5/31/02 Hearing Tr. at 19.) [FN9] The Court admonished plaintiff's counsel that if the case were going to remain in this District, plaintiff's counsel would have to speak directly with plaintiff, foregoing the "intermediary approach." (5/31/02 Hearing Tr. at 18.) At that conference, the Court stayed discovery to allow the parties to consider voluntarily moving the case to Russia or to brief the FNC motion. (*Id.* at 24.) [FN10]

> FN9. *See also* Dkt. No. 26: 10/24/02 Edelman Letter to Court Enc.: 10/23/02 Pavlakis Aff. ¶¶ 1-2 (when Pavlakis was retained he hired Edelman on behalf of Helga); Dkt. No. 9: 6/7/02 Edelman Letter to Court ("I have now been in contact further with the Russian and Greek lawyers, who sent me this case. These lawyers have not authorized me to submit the case to a Russian court.").

> FN10. The Court subsequently denied plaintiffs request for discovery on the forum non conveniens issue. "[I]t is the well established practice in the Southern District of New York to decide such motions on affidavits." *Alcoa S.S. Co. v. M/V Nordic Regent,* 654 F.2d 147, 158-59 (2d Cir.) (en banc), *cert. denied,* 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980); *see also, e.g., Transunion Corp. v. PepsiCo, Inc.,* 811 F.2d 127, 130 (2d Cir.1987) ("Motions to dismiss for forum non conveniens may be decided on the basis of affidavits.... Indeed, as the Court noted in *Piper Aircraft,* 454 U.S. at 258, 102 S.Ct. at 267, '[r]equiring extensive investigation would defeat the purpose of [the] motion.' "); *Fitzgerald v. Texaco, Inc.,* 521 F.2d 448, 451 n. 3 (2d Cir.1975) ("[A] motion to dismiss for forum non conveniens does not call for a detailed development of the entire case; rather discovery is limited to the location of important sources of proof.... Nor did the district court in this case abuse its discretion, on this motion to dismiss for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2003 WL 230741 (S.D.N.Y.)  
**(Cite as: 2003 WL 230741 (S.D.N.Y.))**

Page 6

forum non conveniens, in failing to require detailed disclosure by the defendants of the names of their proposed witnesses and the substance of their testimony."), *cert. denied,* 423 U.S. 1052, 96 S.Ct. 781 (1976); *Base Metal Trading S.A. v. Russian Aluminum,* 00 Civ. 9627, 2002 WL 987257 at *5 (S.D.N.Y. May 14, 2002) (denying "merits" discovery on FNC motion, except allowing deposition of Russian law expert); *Beekmans v. J.P. Morgan & Co.,* 945 F.Supp. 90, 95 (S.D.N.Y.1996) ("The fact that this motion is based on affidavits does not compel the conclusion that discovery should be granted.... A motion to dismiss for forum non conveniens does not call for a detailed development of the entire case through discovery....").

Upon the Court's order (5/31/02 Hearing Tr. at 15-16), and in an effort to convince plaintiff to bring her claims voluntarily in Russia, defendants' counsel forwarded to plaintiff's counsel a proposed stipulation, signed only by defendants:

> IT IS HEREBY AGREED, by and between the parties hereto, that if Russian so [sic] law permits, a case will be brought by Helga Varnelo for claims arising from the death of her husband, Stanislav Varnelo, in a court whose territorial jurisdiction includes Kaliningrad, against [Eastwind, Charm, and Mayflower]. In such event, defendants will appear in said court in response to proper notification and will be responsible for payment of any judgment rendered therein and waive defenses of lack of that court's jurisdiction and statute of limitations.

(Dkt. No. 38: 6/7/02 Arralde Letter Enc.: 6/7/02 Stip.; *see* Dkt. No. 13: Eastwind Br. at 6.) Plaintiff, however, declined the invitation to commence suit in Russia. (*See* Dkt. No. 8: 6/17/02 Order.)

*5 Because defendants Mayflower and Charm dispute personal jurisdiction in this District (Dkt. No. 3: Answer ¶ 25), the forum non conveniens motion was brought solely on behalf of defendant Eastwind (Dkt. No. 13: Eastwind Motion). Any motion to dismiss for lack of personal jurisdiction as to Mayflower and Charm was deferred pending disposition of this FNC motion.

According to defendants, the Russian court would not issue a death certificate until six months from Stanislav's loss, at which time Stanislav would be presumed dead under Russian law. (5/31/02 Hearing Tr. at 6-8, 17-18, 24; *see* Dkt. No. 15: Lekkos 7/1/02 Aff. ¶ 9.) After Stanislav's death certificate was finally issued, on June 25, 2002 defendants delivered to plaintiff's counsel a certified check for $49,000, representing Helga's full death benefit under the Service Agreement. (Dkt. No. 37: 6/26/02 Letter Encl. 6/25/02 Receipt; Dkt. No. 13: Eastwind Br. at 5.) [FN11]

> FN11. Plaintiff's counsel asserts that, in addition to the $49,000 check, defendants earlier paid $5,000 directly to Helga relating to Stanislav's death. (5/31/02 Hearing Tr. at 14; Pl. Br. at 5.) Demonstrating the indirect relationship Helga has with New York counsel, the $49,000 check that defendants gave New York attorney Edelman was transmitted to attorney Pavlakis in Greece and from him to attorney Kargopolov in Lithuania and Kaliningrad, and from him to Helga. (*See* Dkt. No. 26: 10/24/02 Edelman Letter Enc.: 10/23/02 Pavlakis Aff. ¶¶ 1-3; *see also* Dkt. No. 28: 10/30/02 Edelman Letter Enc.: Helga Varnelo 10/25/02 Aff. ("I have received from my attorney Professor Stanislav Kargopolov the check ... for the sum 49,000.00 U.S. dollars."); Dkt. No. 25: 10/21/02 Edelman Letter Enc.: Edelman 10/21/02 Aff. at 2 ("As soon as the [$49,000] check was received by us, it was sent to Mr. Pavlakis ... [in Greece and he] sent [it] to Professor Kargopolov at his office in Lithuania, which is adjacent to Kaliningrad.").)

*ANALYSIS*

While defendants Mayflower and Charm dispute personal jurisdiction, defendant Eastwind concedes jurisdiction and has brought this forum non conveniens motion. (*See* page 10 above.) The Second Circuit recently held that where defendants contest jurisdiction, a district court may bypass the question of jurisdiction and dismiss the action solely on forum non conveniens grounds. *Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine,* 311 F.3d 488, 497-98 (2d

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 230741 (S.D.N.Y.)
**(Cite as: 2003 WL 230741 (S.D.N.Y.))**

Page 7

Cir.2002). The Court therefore turns to the forum non conveniens question.

I. *THE FORUM NON CONVENIENS STANDARD*

The equitable doctrine of forum non conveniens ("FNC") permits a court to "resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). "Through a discretionary inquiry, the court determines where litigation will be most convenient and will serve the ends of justice." *PT United Can Co. v. Crown Cork & Seal Co.,* 138 F.3d 65, 73 (2d Cir.1998); accord, e.g., *Murray v. British Broad. Corp.,* 81 F.3d 287, 290 (2d Cir.1996); *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 81 F.3d 1224, 1232 (2d Cir.1996); *Wiwa v. Royal Dutch Petroleum Co.,* 96 Civ. 8386, 2002 WL 319887 at *29 (S.D.N.Y. Feb. 28, 2002 (Wood, D.J.) ("The doctrine of forum non conveniens permits a federal court to decline to entertain a case over which it has jurisdiction if dismissing the action would serve the ends of justice or the convenience of the parties."); *Potomac Capital Inv. Corp. v. KLM,* 97 Civ. 8141, 1998 WL 92416 at *4 (S.D.N.Y. Mar.4, 1998) (Peck, M.J.) ("Under the forum non conveniens ['FNC'] doctrine, a district court has broad discretion to decline to exercise jurisdiction that is authorized by the general venue statute, where dismissal would best serve the convenience of the parties and the ends of justice.") (internal quotations omitted).

*6 The Court's "first level of inquiry" is determining the degree of deference to be accorded the plaintiff's choice of forum:

> We ... understand the Supreme Court's teachings on the deference due to plaintiff's forum choice as instructing that we give greater deference to a plaintiff's forum choice to the extent that it was motivated by legitimate reasons, including the plaintiff's convenience and the ability of a U.S. resident plaintiff to obtain jurisdiction over the defendant, and diminishing deference to a plaintiff's forum choice to the extent that it was motivated by tactical advantage.

*Iragorri v. United Tech. Corp.,* 274 F.3d 65, 73 (2d Cir.2001) (*en banc*). [FN12]

> FN12. *Accord, e.g., Mongasque de Reassurances S.A.M. v. Nak Naftogay of Ukraine,* 311 F.3d 488, 488 (2d Cir.2002); *Aguinda v. Texaco, Inc.,* 303 F.3d 470, 476 (2d Cir.2002); *DiRienzo v. Philip Servs. Corp.,* 294 F.3d 21, 28 (2d Cir.), cert. denied, 537 U.S. 1028, 123 S.Ct. 556, 154 L.Ed.2d 442 (2002).

The Court must then engage in an additional two-step process:

> First, the district court asks if there is an alternative forum that has jurisdiction to hear the case.... [In] the second step of the inquiry ... the district court determines the forum that will be most convenient and will best serve the ends of justice. In making this second determination, the court weighs a variety of private and public considerations, as set out in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) (the "*Gilbert* factors").

*Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 46 (2d Cir.1996). [FN13]

> FN13. *Accord, e.g., Aguinda v. Texaco, Inc.,* 303 F.3d at 476; *Iragorri v. United Tech. Corp.,* 274 F.3d at 73-74; *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 100 (2d Cir.2000), cert. denied, 532 U.S. 941, 121 S.Ct. 1402, 149 L.Ed.2d 345 (2001); *Alfadda v. Fenn,* 159 F.3d 41, 45-46 (2d Cir.1998); *PT United Can Co. v. Crown Cork & Seal Co.,* 138 F.3d at 73-74; *Murray v. British Broad. Corp.,* 81 F.3d at 292-93; *Blanco v. Banco Indus. de Venezuela, S.A.,* 997 F.2d 974, 980 (2d Cir.1993); *R. Maganlal & Co. v. M.G. Chem. Co.,* 942 F.2d 164, 167 (2d Cir.1991); *Potomac Capital Inv. Corp. v. KLM,* 1998 WL 92416 at *4 & n. 3 ( & cases cited therein).
>
> Prior to the *en banc* decision in *Iragorri v. United Tech. Corp.,* 274 F.3d at 73-74, the Second Circuit consistently described the forum non conveniens analysis as a two-step process. By adding an additional "first level of inquiry" regarding the deference to be accorded plaintiff's choice of forum, the *Iragorri* Court effectively converted the analysis into a three-step process.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 230741 (S.D.N.Y.)
**(Cite as: 2003 WL 230741 (S.D.N.Y.))**

Page 8

In *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), the Supreme Court held that no one factor is determinative: "[i]f central emphasis were placed on any one factor, the forum non conveniens doctrine would lose much of the very flexibility that makes it so valuable." *Id.* at 249-50, 102 S.Ct. at 263. [FN14]

> FN14. *Accord, e.g., Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 81 F.3d at 1234 ("Forum non conveniens is a doctrine that necessarily requires great flexibility."); *Murray v. British Broad. Corp.,* 81 F.3d at 292 ("Balancing the plaintiff's financial burdens as one of several relevant factors serves the 'repeatedly emphasized ... need to retain flexibility' in the application of the forum non conveniens doctrine.").

"The decision to dismiss a case on forum non conveniens grounds 'lies wholly within the broad discretion of the district court and may be overturned only when ... that discretion has been *clearly abused.*' " *Iragorri v. United Tech. Corp.,* 274 F.3d at 72 (quoting *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 81 F.3d at 1232). [FN15] "There can be a 'clear abuse of discretion' only if 'a court fails to carefully consider[ ] the *Gilbert* factors.' " *Peregrine Myanmar Ltd. v. Segal,* 89 F.3d at 46 (quoting *Allstate Life Ins. Co. v. Linter Group Ltd.,* 994 F.2d 996, 1001 (2d Cir.), *cert. denied,* 510 U.S. 945, 114 S.Ct. 386, 126 L.Ed.2d 334 (1993)). [FN16]

> FN15. *Accord, e.g., Mongasque de Reassurances S.A.M. v. Nak Naftogay of Ukraine,* 311 F.3d at 498; *Capital Currency Exch., N.V. v. National Westminster Bank PLC,* 155 F.3d 603, 609 (2d Cir.1998), *cert. denied,* 526 U.S. 1067, 119 S.Ct. 1459, 143 L.Ed.2d 545 (1999); *Peregrine Myanmar Ltd. v. Segal,* 89 F.3d at 46.

> FN16. *See, e.g., DiRienzo v. Philip Servs. Corp.,* 294 F.3d at 27 (abuse of discretion if "district court fails to consider all the relevant factors or unreasonably balances those factors"); *Iragorri v. United Tech. Corp.,* 274 F.3d at 72 ("the district court

must follow the governing legal standards").

## II. FORUM NON CONVENIENS ANALYSIS APPLIES TO JONES ACT CASES

[1] As a threshold matter, plaintiff contends that the Jones Act governs this maritime action, and that the Court therefore has no choice but to deny the forum non conveniens motion. (Dkt. No. 16: Pl. Br. at 12-14.) To the contrary, and as plaintiff's counsel Edelman well knows, the Second Circuit has squarely held that an action may be dismissed on forum non conveniens grounds even if the Jones Act applies. *See Cruz v. Maritime Co. of Philippines,* 702 F.2d 47, 48 (2d Cir.1983) (per curiam) ("maritime choice of law principles are not involved in a forum non conveniens analysis and ... the district court's discussion on the subject was therefore unnecessary"); *see also Alcoa S.S. Co. v. M/V Nordic Regent,* 654 F.2d 147, 153-54, 158-59 (2d Cir.) *(en banc )* (The Second Circuit "consistently has applied the *Gilbert* standard in reviewing dismissals on the grounds of forum non conveniens in admiralty cases.... [I]t is in the field of admiralty that our federal courts have applied the doctrine of forum non conveniens most flexibly and over the longest period of time ... almost 180 years."), *cert. denied,* 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980).

*7 As have all other judges in this District to whom plaintiff's counsel, Mr. Edelman, made the argument, this Court also declines plaintiff's counsel's invitation to ignore *Cruz. See, e.g., Ioannides v. Marika Mar. Corp.,* 928 F.Supp. 374, 377 & n. 5 (S.D.N.Y.1996) ("Plaintiffs invite this Court to 'reconsider' *Cruz.* It may not do so. Plaintiffs' argument would be addressed more properly to the Court of Appeals.") (plaintiff's counsel in *Ioannides* was Paul Edelman, counsel for plaintiff Varnelo); *Tsangaris v. Elite, Inc.,* 92 Civ. 7855, 1993 WL 267425 at *7 (S.D.N.Y. July 9, 1993) ("The Second Circuit has concluded that it will follow the *Gilbert* standard in all forum non conveniens motions. Even in cases brought under the Jones Act, this Court may properly apply the *Gilbert* forum non conveniens analysis.") (citations, including to *Cruz,* omitted) (Edelman was Tsangaris' counsel); *Gazis v. John S. Latsis (USA) Inc.,* 729 F.Supp. 979, 985 (S.D.N.Y.1990)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2003 WL 230741 (S.D.N.Y.)  
**(Cite as: 2003 WL 230741 (S.D.N.Y.))**

Page 9

(following *Cruz,* "a district court may dismiss a case on forum non conveniens grounds without first making a choice of law determination") (Edelman represented Gazis); *Doufexis v. Nagos S.S., Inc.,* 583 F.Supp. 1132, 1133 (S.D.N.Y.1983) (FNC dismissal in Jones Act case permitted under *Cruz* ) (Edelman was Doufexis' counsel).

### III. DEFERENCE TO PLAINTIFF'S CHOICE OF FORUM

"In weighing the *Gilbert* factors, the court starts with a presumption in favor of the plaintiff's choice of forum, especially if the defendant resides in the chosen forum, as here." *Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 46 (2d Cir.1996). "[U]nless the balance [of interest factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). [FN17] "The defendant has the burden to establish that an adequate alternative forum exists and then to show that the pertinent factors 'tilt[ ] strongly in favor of trial in the foreign forum.' " *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d at 100 (quoting *R. Maganlal & Co. v. M.G. Chem. Co.,* 942 F.2d 164, 167 (2d Cir.1991)). [FN18] In order to meet this burden, "defendants must provide enough information to enable the District Court to balance the parties' interests." *Piper Aircraft Company v. Reyno,* 454 U.S. at 258, 102 S.Ct. at 267. "The amount of information that the defendant must provide, in supporting affidavits or other evidence, depends on the facts of the individual case." *El-Fadl v. Central Bank of Jordan,* 75 F.3d 668, 677 (D.C.Cir.1996).

> FN17. *Accord, e.g., Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 258, 70 L.Ed.2d 419 (1981) ("a plaintiff's choice of forum should rarely be disturbed"); *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 99, 101 (2d Cir.2000) ("a plaintiff's choice of forum is entitled to substantial deference and should only be disturbed if the factors favoring the alternative forum are compelling"), *cert. denied,* 532 U.S. 941, 121 S.Ct. 1402, 149 L.Ed.2d 345 (2001); *Murray v. British Broad. Corp.,* 81 F.3d 287, 290 (2d Cir.1996) ("There is ordinarily a strong presumption in favor of the plaintiff's choice of forum."); *Allstate Life Ins. Co. v. Linter Group Ltd.,* 994 F.2d 996, 1001 (2d Cir.) ("Although there is still a strong presumption in favor of a plaintiff's choice of forum, the Supreme Court has recognized that dismissal nevertheless may be appropriate where certain private and public interest factors point towards trial in an alternative forum."), *cert. denied,* 510 U.S. 945, 114 S.Ct. 386, 126 L.Ed.2d 334 (1993).

> FN18. *Accord, e.g., Aguinda v. Texaco, Inc.,* 303 F.3d 470, 476 (2d Cir.2002) ("The defendant seeking [FNC] dismissal bears the burden as to both" whether the alternative forum is adequate and whether the private and public factors favor dismissal); *DiRienzo v. Philip Servs. Corp.,* 294 F.3d 21, 30 (2d Cir.) ("[P]laintiffs should not have been deprived of their choice of forum except upon defendants' clear showing that a trial in the United States would be so oppressive and vexatious to them as to be out of all proportion to plaintiffs' convenience.") (citing *Koster v. (American) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 832, 91 L.Ed. 1067 (1947)), *cert. denied,* 537 U.S. 1028, 123 S.Ct. 556, 154 L.Ed.2d 442 (2002); *Iragorri v. United Tech. Corp.,* 274 F.3d 65, 71 (2d Cir.2001) (*en banc* ) ("a court reviewing a motion to dismiss for forum non conveniens should begin with the assumption that the plaintiff's choice of forum will stand unless the defendant meets the burden of demonstrating" convenience factors); *Peregrine Myanmar Ltd. v. Segal,* 89 F.3d at 46 ("The defendant has the burden of overcoming this presumption by establishing that the *Gilbert* factors 'tilt[ ] strongly in favor of' the alternative forum."); *Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG,* 160 F.Supp.2d 722, 742 (S.D.N.Y.2001) ("The burden on the defendant in the forum non conveniens context is deliberately heavy ..."); *Rostropovich v. Koch Int'l Corp.,* 94 Civ. 2674, 1995 WL 104123 at *12

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(S.D.N.Y. Mar.7, 1995) (Denying FNC dismissal to Russia: "defendants have not notified this Court of any particular necessary witnesses or documents that are not available in this forum. A party seeking to change forums must specify witnesses and documents requiring a more convenient forum.").

"Where a foreign plaintiff is concerned, however, its choice of forum is entitled to less deference." *Murray v. British Broad. Corp.,* 81 F.3d at 290 (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. at 256, 102 S.Ct. at 266); *accord, e.g., Mongasque de Reassurances S.A.M. v. Nak Naftogay of Ukraine,* 311 F.3d 488, 498 (2d Cir.2002). As the Second Circuit explained:

> *8 The Supreme Court has emphasized that this rule is not based on a desire to disadvantage foreign plaintiffs but rather on a realistic prediction concerning the ultimate convenience of the forum:
> [w]hen the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.

*Murray v. British Broad. Corp.,* 81 F.3d at 290 (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. at 255-56, 102 S.Ct. at 266 (fn.omitted)); *accord, e.g., R. Maganlal & Co. v. M.G. Chem. Co.,* 942 F.2d at 168. The Second Circuit has "cautioned that 'this reduced weight is not an invitation to accord a foreign plaintiff's selection of an American forum *no* deference since dismissal for forum non conveniens is the exception rather than the rule.' " *Murray v. British Broad. Corp.,* 81 F.3d at 290 (quoting *R. Maganlal & Co. v. M.G. Chem. Co.,* 942 F.2d at 168). Thus, "some weight must still be given to a foreign plaintiff's choice of forum." *Murray v. British Broad. Corp.,* 81 F.3d at 290.

In *Iragorri v. United Tech. Corp.,* the Second Circuit *en banc* synthesized recent precedent to hold that "the degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on several relevant considerations":

> The Supreme Court explained in *Piper* that the reason we give deference to a plaintiff's choice of her home forum is because it is presumed to be convenient. *Id.* at 255-56, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419. ("When the home forum has been chosen, it is reasonable to assume that this choice is convenient.") In contrast, when a foreign plaintiff chooses a U.S. forum, it "is much less reasonable" to presume that the choice was made for convenience. *Id.* at 256, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419. In such circumstances, a plausible likelihood exists that the selection was made for forum-shopping reasons, such as the perception that United States courts award higher damages than are common in other countries. Even if the U.S. district was not chosen for such forum-shopping reasons, there is nonetheless little reason to assume that it is convenient for a foreign plaintiff.
> Based on the Supreme Court's guidance, our understanding of how courts should address the degree of deference to be given to a plaintiff's choice of a U.S. forum is essentially as follows: The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice. Stated differently, *the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for forum non conveniens.* Thus, factors that argue against forum non conveniens dismissal include the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense. On the other hand, *the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons--such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States* or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 230741 (S.D.N.Y.)
**(Cite as: 2003 WL 230741 (S.D.N.Y.))**

Page 11

resulting from litigation in that forum--*the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a forum non conveniens* motion by showing that convenience would be better served by litigating in another country's courts.
*\*9 Iragorri v. United Tech. Corp.,* 274 F.3d at 71-72 (emphasis added & fns. omitted). [FN19] The *Iragorri* Court concluded that:

> FN19. *Iragorri* concerned a plaintiff residing in the United States, but outside the district in which the action was filed, on a motion by defendants to dismiss on forum non conveniens grounds. *Id.* at 68-69. Nevertheless, the decision defined the appropriate analysis on a forum non conveniens motion.

> [T]he greater the degree of deference to which the plaintiff's choice of forum is entitled, the stronger a showing of inconvenience the defendant must make to prevail in securing forum non conveniens dismissal. At the same time, a lesser degree of deference to the plaintiff's choice bolsters the defendant's case but does not guarantee dismissal.... The action should be dismissed only if [plaintiffs'] chosen forum is shown to be genuinely inconvenient and [defendant's] selected forum significantly preferable. In considering this point, the court furthermore must balance the greater convenience to the defendant of litigating in its preferred forum against any greater inconvenience to the plaintiff if the plaintiff is required to institute the suit in the defendant's preferred foreign jurisdiction.

*Id.* at 74-75. [FN20]

> FN20. *Accord, e.g., Mongasque de Reassurances S.A.M. v. Nak Naftogay of Ukraine,* 311 F.3d at 498; *see also, e.g., Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d at 101 ("deference increases as the plaintiff's ties to the forum increase"); *Abdullahi v. Pfizer, Inc.,* 01 Civ. 8118, 2002 WL 31082956 at \*10 (S.D.N.Y. Sept.17, 2002) ("[A]s foreign nationals with no significant ties to the Southern District, plaintiffs are not entitled to a strong presumption that their choice of

forum is sufficiently convenient" under *Iragorri* standards.

The Court analyzes below: (A) whether the *Iragorri* factors, including the amenability of defendants to suit in this District, affect deference to plaintiff's choice of forum; and (B) whether deference to plaintiff's choice of this forum should be affected by treaty obligations between Russia and the United States. The Court notes, however, that the degree of deference analyses to some extent overlaps with the *Gilbert* private convenience factors, which the Court discusses in Point V.A. below.

A. *The Iragorri Factors Do Not Support Deference to Plaintiff's Forum Choice*

[2] Here, of course, plaintiff Helga Varnelo is a citizen and resident of Russia. (*See* page 2 above.) A finding of diminished deference based on plaintiff's overseas residence is only the beginning of the *Iragorri* deference analysis; the Court must also consider each of the other deference factors. *See Iragorri v. United Tech. Corp.,* 274 F.3d 65, 71-73 (2d Cir.2001) (*en banc* ); *accord, e.g., Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine,* 311 F.3d 488, 498-99 (2d Cir.2002); *Abdullahi v. Pfizer, Inc.,* 01 Civ. 8118, 2002 WL 31082956 at \*10 (S.D.N.Y. Sep.17, 2002) ; *Wesoke v. Contract Servs. Ltd.,* 00 Civ. 1188, 2002 WL 1560775 at \*5-6 (S.D.N.Y. July 15, 2002) .

First, plaintiff has pointedly conceded that her recovery in Russia would be, at best, a small fraction of her recovery in this forum. [FN21] (Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 1: Kargopolov 6/6/02 Aff. ¶¶ 5-6; Dkt. No. 16: Pl. Br. at 3.) One could hardly hope for a more forthright admission of forum shopping. "[T]he more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons--such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district ...--the less deference the plaintiff's choice commands...." *Iragorri v. United Tech. Corp.,* 274 F.3d at 72. [FN22] This points to giving lesser deference to plaintiff's choice of this forum.

> FN21. The prospect of a lower recovery in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                               Page 12
2003 WL 230741 (S.D.N.Y.)
**(Cite as: 2003 WL 230741 (S.D.N.Y.))**

the alternative forum is entitled to little weight in plaintiff's favor under the *Gilbert* factors. *See, e.g., Alfadda v. Fenn,* 159 F.3d 41, 45 (2d Cir.1998); *see also* discussion at Point IV.B. below.

FN22. *Accord, e.g., In re Rezulin Prods. Liab. Litig.,* 214 F.Supp.2d 396, 400 (S.D.N.Y.2002) ("[P]laintiff seeks to justify litigating here in part by noting that Canada does not permit punitive damages ..., a point immaterial to the forum non conveniens analysis but one that underscores the fact that plaintiff's suit here is the product of forum shopping.") (fn.omitted); *Ioannides v. Marika Mar. Corp.,* 928 F.Supp. 374, 378 (S.D.N.Y.1996) ("[P]laintiffs' presumed choice of this forum in pursuit of more liberal American attitudes toward damage awards is not entitled to substantial weight.").

*10 Second, it is highly unlikely that plaintiff chose this forum for "the availability of witnesses or evidence to the forum district." *See Iragorri v. United Tech. Corp.,* 274 F.3d at 72. As explained below (*see* Point V.A.1.), the key witnesses, including Stanislav's shipmates on the Yellowstone and indeed plaintiff Helga Varnelo herself, all reside in Russia. Plaintiff's assertion that employees of the defendants located in New York may possess evidence (*see* Point V.A.1.c. below) appears to be purely speculative. Again, this factor points to giving lesser deference to plaintiff's choice of forum.

Third, "the availability of appropriate legal assistance," *Iragorri v. United Tech. Corp.,* 274 F.3d at 72, cannot be considered a factor favoring this forum, as plaintiff has had to employ no less than three sets of attorneys (Russian/Lithuanian, Greek, and American) to file suit here. (*See* pages 8-9 & n. 9 & page 10 n. 11 above.) Again, this factor points to giving lesser deference to plaintiff's choice of forum.

Fourth, given that this action involves the death of a Russian seaman, hired in Russia, on board a Liberian ship in Chinese territorial waters, one is hard put to argue the "lawsuit's bona fide connection to the United States." *Iragorri v. United Tech. Corp.,* 274 F.3d at 72. Moreover, as described in greater detail in Point V.B.1. below, the possibility that the Jones Act might apply to plaintiff's claim does not create a substantial connection to this forum. Again, this factor points to giving lesser deference to plaintiff's choice of forum.

Finally, the Second Circuit has consistently held that suit in a defendant's home forum supports deference to plaintiff's forum choice. [FN23] In this case, defendants Charm and Mayflower--the parties most clearly responsible for Stanislav's accident--dispute jurisdiction, as they are (at least nominally) based in Liberia and Greece, respectively. (Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 2: Pavlakis Aff. ¶ 3.) Nevertheless, Eastwind is based in this district (*e.g.,* Edelman 7/15/02 Aff. Ex. 6 at 5), and plaintiff asserts that Eastwind controls Charm and Mayflower, so that defendants' overall shipping operations--which include the ship at issue--are owned, controlled, and managed from this District (Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 2: Pavlakis Aff. ¶ ¶ 3-27; *see also* Dkt. No. 1: Compl. ¶¶ 3-12).

FN23. *See, e.g., Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 46 (2d Cir.1996) (finding "a presumption in favor of the plaintiff's choice of forum, especially if the defendant resides in the chosen forum, as here"); *Schertenleib v. Traum,* 589 F.2d 1156, 1164 (2d Cir.1978) ("We begin by noting that plaintiff chose this forum and defendant resides here. This weighs heavily against dismissal. In this rare case, however, none of the relevant events occurred here, and none of the sources of proof are here."); *McLaughlin v. Bankers Trust Co.,* 97 Civ. 9312, 1998 WL 355419 at *3 (S.D.N.Y. July 2, 1998), *aff'd,* 182 F.3d 900 (2d Cir.1999); *Mobil Sales & Supply Corp. v. Republic of Lithuania,* 97 Civ. 4045, 1998 WL 196194 at *9 (S.D.N.Y. Apr.23, 1998), *aff'd,* 166 F.3d 1201 (2d Cir.1998); *Continental Pac. Shipping, Ltd. v. CIT Group/Equip. Fin., Inc.,* 96 Civ. 2646, 1996 WL 571855 at *7 (S.D.N.Y. Oct.7, 1996) ("[T]he presumption in favor of the plaintiff's choice of forum is particularly strong if the defendant resides in the chosen forum.");

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 13
2003 WL 230741 (S.D.N.Y.)
(Cite as: 2003 WL 230741 (S.D.N.Y.))

> *Mutual Exp. Corp. v. Westpac Banking Corp.,* 742 F.Supp. 161, 163 (S.D.N.Y.1990) (fact that "plaintiff has chosen a forum in which the defendant maintains a substantial presence" "weigh[ed] in favor of deferring to plaintiff's choice of forum").

Heightened deference to plaintiff's choice of U.S. forum is only reasonable, however, if it is unclear that defendants would be amenable to suit in an alternative forum such as plaintiff's home forum (here, Russia). The Second Circuit explained:

> One of the factors that necessarily affects a plaintiff's choice of forum is the need to sue in a place where the defendant is amenable to suit. Consider for example a hypothetical plaintiff residing in New Jersey, who brought suit in the Southern District of New York, barely an hour's drive from the plaintiff's residence, because the defendant was amenable to suit in the Southern District *but not in New Jersey.* It would make little sense to withhold deference for the plaintiff's choice merely because she did not sue in her home district. Where a U.S. resident leaves her home district to sue the defendant where the defendant has established itself and is thus amenable to suit, this would not ordinarily indicate a choice motivated by desire to impose tactical disadvantage on the defendant. *This is all the more true where the defendant's amenability to suit in the plaintiff's home district is unclear.*

*11 *Iragorri v. United Tech. Corp.,* 274 F.3d at 72-73 (emphasis added).

Here, it is undisputed that defendant Mayflower hired Stanislav, a Russian citizen, on Russian soil (*see* page 2 above), and plaintiff alleges that Mayflower regularly hires Russian crews on Russian soil. (*See* Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 7: Eastwind Website ("the Russian joint-venture vessels are managed by Mayflower, which provides training programs for Russian and FSU seafarers.").) The Court thus deems it reasonable to assume that at least Mayflower would be amenable to suit in Russia. Otherwise, shipowners and operators would be able to hire Russian crews on Russian soil without being subject to Russian jurisdiction, and that cannot possibly be the substance of Russian law. [FN24] Accordingly, because plaintiff Helga Varnelo could have sued at least Mayflower in her home forum, Russia, this factor does not support heightened deference for plaintiff's choice of forum.

> FN24. Eastwind's expert on Russian law has stated that if Helga sued Mayflower either under the Service Agreement or under the Russian Civil Code for Stanislav's accidental death at sea, if Mayflower "does not contest the jurisdiction of the Russian Court ..., the [Russian] judge would have no reason not to find in Mrs. Varnelo's favor." (Dkt. No. 14: Arralde 7/1/02 Aff. Ex. C: Balakirev 7/1/02 Opinion Letter ¶¶ 5-8.) He conceded, however, that if the non-Russian defendant "refuse[d] to recognize the jurisdiction of the Russian Court, the [Russian] judge may decide not to entertain the case because of the difficulty in enforcing a judgment against a non-Russian company. But if a non-Russian company consents to the Russian Court's jurisdiction, there would be no reason for the [Russian] court not to hear the case." (*Id.* ¶ 6; *see also id.* ¶ 8.) Mayflower, Charm and Eastwind have consented to suit in Russia.
>
> It is unclear whether defendant Charm has any Russian connections, and apparently Eastwind is connected to Russia only through subsidiaries or affiliates. However, jurisdiction in the New York forum over all three defendants is similarly dubious, as only Eastwind is clearly located here.

Indeed, in the related context of the adequacy of the foreign forum (discussed further in Point IV below), the Second Circuit has held that "[o]nce defendants consent[ ] to suit in" the foreign forum, "there [is] no reason to determine whether defendants were initially subject to the compulsory jurisdiction of [the foreign forum]." *Farmanfarmaian v. Gulf Oil Corp.,* 588 F.2d 880, 882 (2d Cir.1978) (citing *Schertenleib v. Traum,* 589 F.2d at 1163) ("Plaintiff argues that this practice is unfair to him in that he first brought suit in allegedly the only place he could, and now, after he tries to sue defendant in Geneva, he may end up back here again, all at his inconvenience and expense. The answer to this is that a district court

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2003 WL 230741 (S.D.N.Y.)  
**(Cite as: 2003 WL 230741 (S.D.N.Y.))**

Page 14

should not dismiss unless it justifiably believes that the alternative forum will take jurisdiction, if the defendant consents. Once that finding has been made, the remaining but unlikely possibility that the plaintiff may ultimately have to return to the inconvenient forum is a factor to be weighed in deciding whether to dismiss, ... but this kind of improbability should not automatically preclude the use of forum non conveniens.")).

In sum, based on this Court's analysis of the "sliding scale" factors described in *Iragorri v. United Tech. Corp.*, 274 F.3d at 71-72, plaintiff Helga Varnelo's choice of this forum is accorded "little deference," *Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine,* 311 F.3d at 499.

B. *Treaty Obligations Between Russia and the United States Do Not Change the Result*

[3] Although neither party raised the issue on this motion, this Court notes that relations between the United States and Russia appear to be governed by a treaty providing for equal access to each other's courts. *See* Agreement On Trade Relations Between the United States of America and the Union of Soviet Socialist Republics Entered into Force June 17, 1992, State Dept. No. 92-168, KAV No. 2609, 1992 WL 466079 (Treaty), Art. XII, § 1 ("Nationals, companies and organizations of either [Treaty] Party shall be accorded national treatment with respect to access to all courts and administrative bodies in the territory of the other Party, as plaintiffs, defendants or otherwise."). The Second Circuit has held that such treaty provisions prohibit courts from treating foreign plaintiffs' forum choices with less deference than that accorded United States citizens:

*\*12 We have ruled ... that when a treaty with a foreign nation accords its nationals access to our courts equivalent to that provided American citizens, identical forum non conveniens standards must be applied to such nationals by American courts. Because such a treaty exists between the United States and Venezuela, no discount may be imposed upon the plaintiff's initial choice of a New York forum in this case solely because [plaintiff] is a foreign corporation.*
*Blanco v. Banco Indus. de Venezuela, S.A.,* 997 F.2d 974, 981 (2d Cir.1993) (citations omitted). [FN25]

FN25. *Accord, e.g., Irish Nat'l Ins. Co. v. Aer Lingus Teoranta,* 739 F.2d 90, 91-92 (2d Cir.1984) (Treaty of Friendship, Commerce and Navigation between the United States and Ireland providing for "national treatment with respect to ... having access to the courts of justice" required the district court to apply "the same forum non conveniens standards that it would have applied to a United States citizen"); *Farmanfarmaian v. Gulf Oil Corp.,* 588 F.2d 880, 882 (2d Cir.1978) ( "Whatever the merits of [the] proposition generally" that "a foreign plaintiff's 'right to sue in the United States is clearly of a lesser magnitude than that of an American citizen', ... we think it has no application where, as here, a treaty between the United States and the foreign plaintiff's country allows nationals of both countries access to each country's courts on terms no less favorable than those applicable to nationals of the court's country."); *see also, e.g., Murray v. British Broad. Corp.,* 81 F.3d 287, 290-92 (2d Cir.1996) (discussing "access to courts" clause in FNC context; distinguishing particular treaty provision as not providing for equal access to courts); *Alcoa S.S. Co. v. M/V Nordic Regent,* 654 F.2d 147, 152-53 (2d Cir.1978) (*en banc* ) (same), *cert. denied,* 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980); *Flores v. Southern Peru Copper Corp.,* 00 Civ. 9812, 2002 WL 1587224 at *28-29 (S.D.N.Y. July 16, 2002) (Haight, D.J.) (convenience factors favored dismissal even if foreign plaintiff's forum choice granted heightened deference under treaty cases); *Doe v. Hyland Therapeutics Div.,* 807 F.Supp. 1117, 1122-23 (S.D.N.Y.1992) ("Where an 'equal access to courts' provision exists in a treaty, the Second Circuit has held that a foreign plaintiff's right to sue in a United States forum is equal to that of a United States citizen." Declining to determine the degree of deference, as action would be dismissed even if greater deference granted.).

This line of treaty cases requiring "equal access" to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2003 WL 230741 (S.D.N.Y.)  
**(Cite as: 2003 WL 230741 (S.D.N.Y.))**

Page 15

foreign plaintiffs is, however, easily harmonized with the line of cases granting less deference to plaintiffs residing overseas. (*See* cases cited at page 17 above.) Foreign plaintiffs deserve less deference, not because they lack U.S. citizenship, but simply because their overseas residence vitiates any presumption that they would find the U.S. forum convenient. As the Second Circuit explained, U.S. residence is a "factor supporting the plaintiff's choice of a U.S. forum," "not because of chauvinism or bias in favor of U.S. residents," but

> rather because the greater the plaintiff's ties to the plaintiff's chosen forum, the more likely it is that the plaintiff would be inconvenienced by a requirement to bring the claim in a foreign jurisdiction. Also, while our courts are of course required to offer equal justice to all litigants, *see* [ *Alcoa S.S. Co. v. M/V Nordic Regent,*], 654 F.2d at 152-53 (noting existence of treaties requiring "no less favorable" treatment of foreign nationals), a neutral rule that compares the convenience of the parties should properly consider each party's residence as a factor that bears on the inconvenience that party might suffer if required to sue in a foreign nation.

*Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 102 (2d Cir.2000), *cert. denied,* 532 U.S. 941, 121 S.Ct. 1402, 149 L.Ed.2d 345 (2001).

Thus, a foreign plaintiff residing overseas should receive the same diminished degree of deference as would be accorded an expatriate U.S. citizen living abroad. *See Iragorri v. United Tech. Corp.,* 274 F.3d 65, 73 n. 5 (2d Cir.2001) ("it would be less reasonable to assume" that an "expatriate U.S. citizen residing permanently in a foreign country bring[ing] suit in the United States" chose this forum "based on convenience"). This solution (1) satisfies this country's treaty obligations, by treating foreign plaintiffs the same as similarly situated U.S. citizens (*i.e.,* similarly situated in that they reside overseas), and (2) respects convenience as the touchstone of the forum non conveniens analysis by giving deference solely to plaintiffs actually residing in this country. [FN26] *See In re Bridgestone/Firestone, Inc.,* 190 F.Supp.2d 1125, 1136-37 (S.D.Ind.2002) ("expatriate U.S. nationals and treaty nationals residing in their home countries are entitled to the same deference on their choice of forum, with the consideration that suing in a United States forum while residing in a foreign country is less likely to be convenient. This formulation accommodates a number of conflicting values, including protecting U.S. courts from a glut of foreign cases while continuing to respect our treaty obligations.... And, ultimately, it captures the main point of our analysis-- convenience. Hence, we conclude that Plaintiffs here are entitled to the same deference as U.S. citizens *in similar situations,* with the understanding that suing in a United States court is sometimes, although not always, less likely to be convenient when the shared situation is residence in a foreign country."); *Doe v. Hyland Therapeutics Div.,* 807 F.Supp. at 1123 n. 9 ("the practice of according talismanic significance to a plaintiff's citizenship seems contrary to the rationale underlying forum non conveniens analysis"); *Oxley v. Wyeth Labs., Inc.,* No. Civ. A. 91-1285, 1992 WL 116308 at *3 (E.D.Pa. May 20, 1992) ("Pursuant to the terms of [Ireland-U.S.] Treaty, Irish plaintiffs are to be given the same deference to choice of forum as would be given to nonresident United States citizens."). Accordingly, because plaintiff Helga Vamelo resides in Russia, treaty obligations between Russia and the United States do not require any greater deference to her choice of this forum, and as discussed above, the *Iragorri* factors lead to giving her choice of forum lesser deference.

> FN26. As a corollary, because the touchstone of forum non conveniens is the plaintiff's residence (and thus convenience) rather than citizenship, foreign nationals residing in the U.S. receive the same heightened deference as U.S. resident citizens. In all cases in which the Second Circuit has "deemed a plaintiff 'foreign' and accorded that plaintiff's choice of forum less deference, the plaintiffs involved were foreign corporations or foreign-national individuals residing abroad.... [The Second Circuit has] never accorded less deference to a foreign plaintiff's choice of a United States forum where that plaintiff was a U.S. resident." *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d at 103; *accord Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah,* 184 F.Supp.2d 277, 302 (S.D.N.Y.2001) ("actions brought by residents of the United States who happen to be foreign

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.