Not Reported in F.Supp.2d
2003 WL 230741 (S.D.N.Y.)
(Cite as: 2003 WL 230741 (S.D.N.Y.))

citizens are entitled to a strong presumption against dismissal on forum non conveniens grounds"); *Byrne v. British Broad. Corp.,* 132 F.Supp.2d 229, 237-38 (S.D.N.Y.2001) ("courts should accord the choice of forum of foreign citizens who are legal residents of the United States the same deference as the choice of forum of United States citizens").

## IV. RUSSIA IS AN ADEQUATE ALTERNATE FORUM

*\*13* [4] "The requirement of an alternative forum is ordinarily satisfied if the defendant is amenable to process in another jurisdiction, except in 'rare circumstances' when 'the remedy offered by the other forum is clearly unsatisfactory.' " *Murray v. British Broad. Corp.,* 81 F.3d 287, 292 (2d Cir.1996) (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 265 n. 22, 70 L.Ed.2d 419 (1981)); *accord, e.g., Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine,* 311 F.3d 488, 499 (2d Cir.2002); *Aguinda v. Texaco, Inc.,* 303 F.3d 470, 476-77 (2d Cir.2002); *Bank of Credit & Commerce Int'l (Overseas) Ltd. v. State Bank of Pak.,* 273 F.3d 241, 248 (2d Cir.2001); *Alfadda v. Fenn,* 159 F.3d 41, 45 (2d Cir.1998) ("An alternative forum is adequate if: (1) the defendants are subject to service of process there; and (2) the forum permits 'litigation of the subject matter of the dispute.' ") (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22); *R. Maganlal & Co. v. M.G. Chem. Co.,* 942 F.2d 164, 167 (2d Cir.1991); *Potomac Capital Inv. Corp. v. KLM,* 97 Civ. 8141, 1998 WL 92416 at \*4 (S.D.N.Y. Mar.4, 1998) (Peck, M.J.). [FN27]

> FN27. *Accord, e.g., Skelton Fibres Ltd. v. Canas,* 96 Civ. 6031, 1997 WL 97835 at \*4 n. 2 (S.D.N.Y. Mar.6, 1997) ("The Second Circuit has held that this prong of the test is not difficult to satisfy."); *Cabiri v. Assasie-Gyimah,* 921 F.Supp. 1189, 1199 (S.D.N.Y.1996) (FNC motion will be denied if the plaintiff shows that conditions in the foreign forum plainly demonstrate that "plaintiffs are highly unlikely to obtain basic justice" in the foreign forum).

Plaintiff asserts that Russia is an inadequate forum because: (A) Russian courts would not assert jurisdiction over defendants, even on defendants' consent; and (B) even assuming such jurisdiction, any recovery in Russia would be inadequate. (Dkt. No. 16: Pl. Br. at 3-5; Dkt. No. 17: Edelman Aff. Ex. 1: Kargopolov 6/6/02 Aff. ¶¶ 5-6 & 7/8/02 Aff. ¶¶ 3-5.) [FN28] Neither of these grounds has merit.

> FN28. Plaintiff also asserts that even were a Russian court to entertain this action, it would be "slow, burdensome and costly," lasting "in practice" one year (and up to four years). (Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 1: Kargopolov 6/6/02 Aff. ¶ 6.) Further, plaintiff asserts that the procedure for serving summonses upon foreign defendants is burdensome and time-consuming, and all documents would have to be translated into Russian and the translation certified by a notary public. (*Id.*) Such considerations, while perhaps relevant to the *Gilbert* balancing test discussed in Point V below, should not affect the adequacy of the Russian forum. *See Parex Bank v. Russian Sav. Bank,* 116 F.Supp.2d 415, 423 (S.D.N.Y.2000) ("comity requires that this Court abstain from adversely judging the quality of Russia's justice system unless [plaintiff] makes a showing of inadequate procedural safeguards."); *accord, e.g., Mongasque de Reassurances S.A.M. v. Nak Naftogay of Ukraine,* 311 F.3d 488, 499 (2d Cir.2002) (FNC dismissal in favor of litigation in the Ukraine, where plaintiff's "meager and conclusory" assertion that courts there were "biased" or "corrupt"); *Aguinda v. Texaco, Inc.,* 303 F.3d 470, 478 (2d Cir.2002) ("Plaintiffs point further to several respects in which Ecuadorian procedure is less efficient than U.S. procedure. While Ecuador's judicial procedures may be less streamlined than ours, that does not make Ecuador's procedures ineffective or render Ecuador inadequate as an alternative forum."); *PT United Can Co. v. Crown Cork & Seal Co.,* 138 F.3d 65, 73 (2d Cir.1998) ("considerations of comity preclude a court from adversely judging the quality of a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2003 WL 230741 (S.D.N.Y.)  
**(Cite as: 2003 WL 230741 (S.D.N.Y.))**

Page 17

foreign justice system absent a showing of inadequate procedural safeguards, ... so such a finding is rare"); *Blanco v. Banco Indus. de Venezuela, S.A.,* 997 F.2d 974, 982 (2d Cir.1993) (" '[T]he unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate.' "); *Pavlov v. Bank of New York Co.,* 135 F.Supp.2d 426, 434-35 (S.D.N.Y.2001) (Russia adequate forum despite unavailability of pretrial discovery), *vacated on other grounds,* No. 01- 7434, 25 Fed. Appx. 70, 2002 WL 63576 (2d Cir. Jan.14, 2002); *Potomac Capital Inv. Corp. v. KLM,* 1998 WL 92416 at *5 ("[W]ere a forum considered inadequate merely because it did not provide for federal style discovery, few foreign forums could be considered 'adequate'--and that is not the law.").

A. *Russian Courts Would Likely Exercise Jurisdiction Over Defendants On Consent*

Defendants have consented to jurisdiction in Russia:
> IT IS HEREBY AGREED, by and between the parties hereto, that if Russian so [sic] law permits, a case will be brought by Helga Varnelo for claims arising from the death of her husband, Stanislav Varnelo, in a court whose territorial jurisdiction includes Kaliningrad, against [defendants Eastwind, Charm, and Mayflower]. In such event, defendants will appear in said court in response to proper notification and will be responsible for payment of any judgment rendered therein and waive defenses of lack of that court's jurisdiction and statute of limitations.

(Dkt. No. 38: 6/7/02 Arralde Letter Enclosure.) Such "[a]n agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy [the adequate alternative forum] requirement." *DiRienzo v. Philip Servs. Corp.,* 232 F.3d 49, 57 (2d Cir.2000), *vacated on other grounds,* 294 F.3d 21 (2d Cir.2002); *accord, e.g., Aguinda v. Texaco, Inc.,* 303 F.3d 470, 477 (2d Cir.2002); *PT United Can Co. v. Crown Cork & Seal Co.,* 138 F.3d 65, 75 (2d Cir.1998) ("the district court did not err by conditioning the [forum non conveniens] dismissal on [defendant's] consent to personal jurisdiction in Indonesia and any potential jurisdictional problem is avoided"); *In re Union Carbide Corp. Gas Plan Disaster,* 809 F.2d 195, 203 (2d Cir.) ("The emphasis placed by plaintiffs on [defendants] having its domicile here, where personal jurisdiction over it exists, is robbed of significance by its consent to Indian jurisdiction."), *cert. denied,* 484 U.S. 871, 108 S.Ct. 199 (1987); *Abdullahi v. Pfizer, Inc.,* 01 Civ. 8118, 2002 WL 31082956 at *7 (S.D.N.Y. Sep.17, 2002); *Abert Trading, Inc. v. Kipling Belgium N.V./S.A.,* 00 Civ. 0478, 2002 WL 272408 at *3 (S.D.N.Y. Feb.26, 2002); *Deston Songs LLC v. Wingspan Records,* 00 Civ. 8854, 2001 WL 799811 at *4 (S.D.N.Y. July 16, 2001); *Pavlov v. Bank of New York Co.,* 135 F.Supp.2d 426, 434 (S.D.N.Y.2001) (Russia adequate forum because defendant appears to be subject to jurisdiction there, but in any event, defendant "has offered to consent to jurisdiction in Moscow with respect to these claims, thus removing this objection.") (fn.omitted), *vacated on other grounds,* No. 01-7434, 25 Fed. Appx. 70, 2002 WL 63576 (2d Cir. Jan.14, 2002); *Skelton Fibres Ltd. v. Canas,* 96 Civ. 6031, 1997 WL 97835 at *4 (S.D.N.Y. Mar.6, 1997) (adequate alternative forum satisfied where defendants "consent[ed] to the jurisdiction of the Spanish courts."); *Beekmans v. J.P. Morgan & Co.,* 945 F.Supp. 90, 93 (S.D.N.Y.1996); *Doe v. Hyland Therapeutics Div.,* 807 F.Supp. 1117, 1123 (S.D.N.Y.1992).

*14 Plaintiff, however, asserts that because defendants are non-Russian, Russian courts would refuse to exercise jurisdiction even upon defendants' consent. (Dkt. No. 17: Edelman Aff. Ex. 1: Kargopolov 6/6/02 Aff. ¶ 6 & 7/8/02 Aff. ¶¶ 3-5.) The Court thus faces an issue of foreign law: whether a Russian court would exercise jurisdiction over plaintiff's claim on defendants' consent to jurisdiction.

This Court has the power to condition dismissal on: (1) defendants' consent to jurisdiction in Russia; (2) the Russian court accepting the case; and (3) a stay of the U.S. statute of limitations, protecting plaintiff in the event that the Russian court rejects the case. *See, e.g., PT United Can Co. v. Crown Cork & Seal Co.,* 138 F.3d at 75 ("the district court did not err by conditioning the [FNC] dismissal on [defendant's] consent to personal jurisdiction in Indonesia and any potential jurisdictional problem

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2003 WL 230741 (S.D.N.Y.)  
**(Cite as: 2003 WL 230741 (S.D.N.Y.))**

Page 18

is avoided"); *Blanco v. Banco Indus. de Venezuela, S.A.,* 997 F.2d 974, 984 (2d Cir.1993) ("[F]orum non conveniens dismissals are often appropriately conditioned to protect the party opposing dismissal."); *In re Union Carbide Corp. Gas Plant Disaster,* 809 F.2d at 203-04 (affirming FNC dismissal conditioned upon defendant's consent to personal jurisdiction in India and waiver of statute of limitations; such conditions "are not unusual and have been imposed in numerous cases where the foreign court would not provide an adequate alternative in the absence of such a condition"). [FN29]

> FN29. *See also, e.g., Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.,* 145 F.3d 481, 491 (2d Cir.1998) (reversing FNC dismissal for, *inter alia,* district court's failure to "condition [FNC] dismissal on [defendant's] consent to jurisdiction in" foreign forum); *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 81 F.3d 1224, 1235 (2d Cir.1996) (FNC granted on defendant's waiver of statute of limitations); *El-Fadl v. Central Bank of Jordan,* 75 F.3d 668, 679 (D.C.Cir.1996) ("If doubts about the availability of an alternative forum remain due to the difficulties in determining Jordanian law, the district court may dismiss for forum non conveniens, but only if conditioned on the defendants' submitting to jurisdiction in Jordan and on the Jordanian courts' acceptance of the case."); *Sussman v. Bank of Israel,* 990 F.2d 71, 71- 72 (2d Cir.1993) (per curiam) (affirming district court's FNC dismissal conditioned upon defendants' partial waiver of limitations defense and undertaking from Israeli officials that plaintiff would not be detained if he went to Israel to initiate litigation there); *R. Maganlal & Co. v. M.G. Chem. Co.,* 942 F.2d 164, 167 (2d Cir.1991) (defendant agreed to FNC dismissal conditioned upon submission to jurisdiction of foreign court); *Schertenleib v. Traum,* 589 F.2d 1156, 1166 (2d Cir.1978) (upholding FNC dismissal on condition that if foreign court refuses to exercise jurisdiction, plaintiff may reinstate action, and defendant waive statute of limitations defense).

In fact the Second Circuit has held that "[o]nce defendants consent[ ] to suit in" the foreign forum, "there [is] no reason to determine whether defendants were initially subject to the compulsory jurisdiction" of the foreign forum. *Farmanfarmaian v. Gulf Oil Corp.,* 588 F.2d 880, 882 (2d Cir.1978).

The Second Circuit, however, recently "clarif[ied] the type of finding that the district court should make regarding the adequacy of an alternative foreign forum in a case in which foreign law or practice is at issue, and in which the case is dismissed conditionally only":

> [T]he district court may dismiss on forum non conveniens grounds, despite its inability to make a definitive finding as to the adequacy of the foreign forum, if the court can protect the non-moving party by making the dismissal conditional. This ... does not, however, excuse the district court from engaging in a full analysis of those issues of foreign law or practice that are relevant to its decision, or from closely examining all submissions related to the adequacy of the foreign forum. If, in the end, the court asserts its "justifiable belief" in the existence of an adequate alternative forum, it should cite to evidence in the record that supports that belief. In doing so, the district court should keep in mind that it remains the movant's burden to demonstrate the existence of an adequate alternative forum.
> Precisely how certain the court must be regarding the existence of an adequate alternative foreign forum will necessarily depend on how protective of the non-moving party the conditional dismissal will in fact be....
> *\*15* ... Finally, we observe that while the conditional dismissal device can help to protect the non-moving party in circumstances where the district court remains concerned about the accuracy of its "justifiable belief" as to a foreign forum's adequacy, the mechanism is not a substitute for the initial "justifiable belief" of adequacy. Conditions cannot transform an inadequate forum into an adequate one.

*Bank of Credit & Commerce Int'l v. State Bank of Pak.,* 273 F.3d 241, 247- 48 (2d Cir.2001) (fns.omitted). Accordingly, even in the face of the Court's power to protect plaintiff through a conditional dismissal, the Court must nevertheless

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2003 WL 230741 (S.D.N.Y.)  
**(Cite as: 2003 WL 230741 (S.D.N.Y.))**

Page 19

determine whether a Russian court likely would exercise jurisdiction over this case. *Cf. Schertenleib v. Traum,* 589 F.2d at 1163 ("If the defendant consents to suit in the foreign alternate forum, and if that appears to be sufficient under the foreign law, why waste the litigants' money and the court's time in what is essentially an unnecessary and difficult inquiry into the further intricacies of foreign jurisdictional law.... If, moreover, contrary to the expert testimony apparently relied on by [the district court] in this case, [the foreign court] refuses jurisdiction notwithstanding defendant's consent, plaintiff is still protected by the conditional nature of the [FNC] dismissal. Thus further inquiry into foreign jurisdictional law really is needless since it is so easily obviated by use of the typical conditional dismissal device."); *In re Air Crash Off Long Island, N.Y.,* 65 F.Supp.2d 207. 215 (S.D.N.Y. Oct. 12, 1999).

The adequacy of the foreign forum and the substance of any relevant foreign law is usually established through expert affidavits or declarations. *See* 17 James W. Moore, *Moore's Federal Practice* § 111.92 (3d ed.2002). Rule 44.1 of the Federal Rules of Civil Procedure provides that "[t]he court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed.R.Civ.P. 44.1. It thus appears that the Court may consider unsworn statements by attorneys opining on foreign law. *See, e.g., Kalmich v. Bruno,* 553 F.2d 549, 555 n. 4 (7th Cir.), *cert. denied,* 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977); 9 James W. Moore, *Moore's Federal Practice* § 44.1.04[5]. The Court is not, however, bound by the parties' submissions, and may conduct its own investigation of foreign law. *See, e.g., Curley v. AMR Corp.* 153 F.3d 5, 13 (2d Cir.1998); *Finance One Public Co. v. Lehman Bros. Special Fin., Inc.,* 215 F.Supp.2d 395, 402-03 (S.D.N.Y.2002).

The parties have submitted conflicting opinions on the substance of Russian law. Eastwind submitted an unsworn "Attorney Letter of Opinion" by Alexander Balakirev, "an attorney duly authorised to practice law in Kaliningrad, Russia." (Dkt. No. 14: Arralde 7/1/02 Aff. ¶ 6 & Ex. C.) Mr. Balakirev asserts that "[p]laintiff, as a citizen and resident of Kaliningrad, Russia, could bring a case under Civil Processual Code of Russian Federation ('Russian Civil Code') in the court for Kaliningrad to recover a sum of money for the death of her husband...." (Arralde 7/1/02 Aff. Ex. C: Balakirev Opinion Letter ¶ 3.)

*16 Under Russian Civil Code, Mrs. Varnelo could ask the judge to enforce the contract service agreement, which according to its terms would pay her $49,000, in the event of the accidental death of her husband. If the ship management company who contracted for Mr. Varnelo's services, in this case Mayflower, does not contest the jurisdiction of the Russian Court and also does not dispute it is bound by the contract service agreement, the judge would have no reason not to find in Mrs. Varnelo's favor and award her the full amount due under the contract.

(*Id.* ¶ 5; *see also id.* ¶ 6 ("[I]f a non-Russian company consents to the Russian Court's jurisdiction, there would be no reason for the court not to hear the case."); *id.* ¶¶ 7-8 (Mrs. Vamelo also could sue for seaman's accidental death, with the same jurisdictional issues).) In support, however, Eastwind cites to an incoherent translation of the Russian Civil Code, Chapter 1, Part 3, Clause 25, stating "The Courts also consider the suits with participation of foreign citizens, stateless persons, foreign companies and organizations...." (Balakirev Opinion Letter Ex. A; *see also* Dkt. No. 20: 7/24/02 Arralde Aff. Ex. A.)

In response, plaintiff submitted two "affirmations" (though not in a form complying with 28 U.S.C. § 1746) by plaintiff's Russian attorney, Professor Stanislav Kargopolov. (Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 1: Kargopolov 6/6/02 & 7/8/02 Aff's.) Prof. Kargopolov's June 6, 2002 affirmation asserts, *ipse dixit,* that Russian courts are "extremely unwilling[ ]" to exercise jurisdiction over actions involving non-Russian defendants. (Kargopolov 6/6/02 Aff. ¶ 6: "Russian Courts insist that a Plaintiff should bring a lawsuit in that court, on which jurisdictional territory a Defendant is.") According to Prof. Kargopolov, because a Russian court would likely limit defendants to those entities located in Russia, plaintiff would be limited to suing only the "crewing agency," Smart Crewing. (*Id.* ¶¶ 3, 8.) Prof. Kargopolov's July 8, 2002 affirmation flatly asserts that, because defendants are non-Russian, no Russian court would exercise jurisdiction over this case, even if defendants

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2003 WL 230741 (S.D.N.Y.)  
**(Cite as: 2003 WL 230741 (S.D.N.Y.))**

Page 20

conceded jurisdiction. (Kargopolov 7/8/02 Aff. ¶¶ 3-7.) In support, he references what he alleges to be a maritime injury case brought by a Russian seaman that a Russian court allegedly dismissed for lack of jurisdiction over the foreign defendant, despite defendant's consent to jurisdiction. (*Id.* ¶ 3.) Plaintiff's summary of the case did not state such key facts as whether the crewman was actually hired in Russia or whether the ship sailed from Russia. (*Id.*)

Both parties' submissions regarding Russian law are virtually incoherent. [FN30] The Court cannot determine foreign law based on garbled snippets of translated statutes or summaries of Russian court decisions.

> FN30. It is unclear whether the problem lies in the affiants' lack of English-language skills or lack of legal training.

It seems inconceivable to this Court that a Russian court would refuse to exercise jurisdiction simply because the defendants are not permanently based in Russia, given that defendants have conceded Russian jurisdiction. At least one Court in this District has found defendants' consent to Russian jurisdiction sufficient to render the Russian forum adequate. *See Pavlov v. Bank of New York Co.,* 135 F.Supp.2d 426, 434 (S.D.N.Y.2001) (Kaplan, D.J.) (Defendant "has offered to consent to jurisdiction in Moscow with respect to these claims, ... thus removing [plaintiff's] objection," as to the adequacy of the alternate forum, that defendant is not subject to jurisdiction in Russia), *vacated on other grounds,* No. 01-7434, 25 Fed. Appx. 70, 2002 WL 63576 (2d Cir. Jan.14, 2002). [FN31]

> FN31. *See also Parex Bank v. Russian Sav. Bank,* 116 F.Supp.2d 415, 423-25 (S.D.N.Y.2000) (Sweet, D.J.) ("Even if Russia employs different procedures than the United States courts, [defendant] has met its burden of proving that Russia's judicial system affords adequate procedural protections upon the face of its statutory provisions."); *Rosinka Joint Venture v. Williams,* No. Civ. 93 0132624, 1993 WL 383301 at *3 (Conn.Super.Ct. Sept.16, 1993) (granting FNC, as Russia is

an adequate alternative forum).

*17 This case clearly implicates Russian interests, as Stanislav was a Russian citizen residing in Kaliningrad, hired by defendant Mayflower in Kaliningrad under a Service Agreement apparently signed in Kaliningrad, and leaving a widow (plaintiff Helga) also of Russian citizenship residing in Kaliningrad. (*See* page 2 above.) According to plaintiff, Mayflower regularly hires crews out of Kaliningrad (Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 7), defendant Charm regularly sails (or sailed) its ships, including the Yellowstone, out of Kaliningrad, and both Mayflower and Charm are owned or controlled by defendant Eastwind (Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 2: Pavlakis Aff. ¶¶ 3-26). Refusing Russian jurisdiction for such claims would leave an entire class of Russian seaman without an effective remedy. Thus, despite the parties' submissions, the Court "justifiably believes," *Bank of Credit & Commerce Int'l v. State Bank of Pak.,* 273 F.3d at 247-48, that a Russian court would exercise jurisdiction over Helga Varnelo's claim, at least where, as here, defendants consent to such jurisdiction.

Moreover, as noted above (*see* pages 31-32), this Court may (and does) condition dismissal on (1) defendants' consent to Russian jurisdiction; (2) the Russian court's acceptance of the case; and (3) defendants' agreement to stay any United States statute of limitations pending the outcome of a Russian lawsuit. As such, there will be no harm if plaintiff returns to Russia and is rebuffed by a Russian court on jurisdictional grounds, and the Court may find the Russian forum adequate based even on a low degree of certainty without fear of harming plaintiff. *See, e.g., Bank of Credit & Commerce Int'l v. State Bank of Pak.,* 273 F.3d at 248 ("Precisely how certain the court must be regarding the existence of an adequate alternative foreign forum will necessarily depend on how protective of the non-moving party the conditional dismissal will in fact be...."). [FN32]

> FN32. *See also, e.g., Red Rock Holdings, Ltd. v. Union Bank Trust Co.,* No. 98-9220, 181 F.3d 83 (table), 1999 WL 310482 at *1 (2d Cir. May 6, 1999) ("we direct that the judgment be modified to provide (1) that the dismissal is without

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 230741 (S.D.N.Y.)
(Cite as: 2003 WL 230741 (S.D.N.Y.))

Page 21

prejudice to a motion for reinstatement of the present action based on a certification by [plaintiff] that, following the present forum non conveniens dismissal, [plaintiff] has made prompt and reasonable attempts to initiate action in Israel and has been unable to receive an adjudication under the laws of that country, such that there was no 'adequate alternative forum' within the meaning of the pertinent authorities, and (2) that upon such a motion, the district court will reassess the adequacy of the Israeli forum, and if it determines that there was not an adequate forum, it will grant the motion for reinstatement and deem any applicable statute of limitations to have been tolled by the initiation of the present action."); *In re Rezulin Prods. Liab. Litig.*, 214 F.Supp.2d 396, 401 (S.D.N.Y.2002) (FNC dismissal conditioned on consent to personal jurisdiction in foreign court, waiver of statute of limitations and other conditions); *Valarezo v. Ecuadorian Line, Inc.*, 00 Civ. 6387, 2001 WL 740773 at *5 (S.D.N.Y. June 29, 2001) (same); *Doe v. Hyland Therapeutics Div.*, 807 F.Supp. 1117, 1131-33 (S.D.N.Y.1992) (discussing the appropriate conditions to an FNC dismissal).

B. *The Size of Plaintiff's Recovery in Russia Does Not Render Russia an Inadequate Forum*

Plaintiff Helga Varnelo asserts that because "Russian law does not provide for damages to the relatives for pain and suffering of deceased prior to his dying," and because Russian statutes are notably stingy in granting recovery for work-related injuries, plaintiff would have "little chance of success for a recovery in excess of the $49,000" already received under the Service Agreement. (Dkt. No. 17: Edelman Aff. Ex. 1: Kargopolov 6/6/02 Aff. ¶¶ 5- 6.) [FN33] Defendant agrees that "it seems unlikely [plaintiff] would recover more than $49,000 at law in Russia." (Dkt. No. 13: Eastwind Br. at 8.)

> FN33. Professor Kargopolov's affirmation, albeit less than clear, appears to assert that, although Russian law would award plaintiff damages of $49,000 under the Service Agreement, plaintiff would also be entitled under Russian statutory law to total damages of: (1) $10,000 pursuant to a widow's right to recover three years' of Stanislav's salary, or (2) $871 under Russian labor insurance law. (*Id.* ¶ 5.) Plaintiff's brief seems to confirm this, stating: "[t]he widow would probably not receive any more than her contractual right and, at most, about $10,000." (Dkt. No. 16: Pl. Br. at 3.)

Under well-settled case law, however, lower recovery in Russia would not render that forum inadequate. The fact that "the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum ... should ordinarily not be given conclusive or even substantial weight in the forum non conveniens inquiry." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 247, 102 S.Ct. 252, 261, 70 L.Ed.2d 419 (1981); *accord, e.g., Alfadda v. Fenn*, 159 F.3d 41, 45 (2d Cir.1998); *Capital Currency Exch., N.V. v. National Westminster Bank PLC*, 155 F.3d 603, 610-11 (2d Cir.1998) ("[A] forum may be adequate even if it does not provide a plaintiff with causes of action that are identical to those plaintiff alleged in an American court.... Although it appears that plaintiffs might not be able to recover in England on some of their common law claims, the essential subject matter of the dispute can be adequately addressed by an English court."), *cert. denied*, 526 U.S. 1067, 119 S.Ct. 1459, 143 L.Ed.2d 545 (1999) ; *Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 130 (2d Cir.1987) (unavailability of RICO treble damages does not render forum inadequate); *Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 159 (2d Cir.1978) (*en banc* ) (Maximum recovery of $570,000 in foreign forum as opposed to $8 million in U.S. forum did not render foreign forum inadequate: "It is abundantly clear ... that the prospect of a lesser recovery does not justify refusing to dismiss on the ground of forum non conveniens."), *cert. denied*, 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980). Indeed, the motion will be denied only if plaintiff's remedy in the foreign forum is "so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft Co. v. Reyno*, 454 U.S. at 254, 102 S.Ct. at 265; *accord, e.g., Tsangaris v. Elite, Inc.*, 92 Civ.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 230741 (S.D.N.Y.)
(Cite as: 2003 WL 230741 (S.D.N.Y.))

Page 22

7855, 1993 WL 267425 at *7 (S.D.N.Y. July 9, 1993) (Greek forum found adequate even though plaintiff would "not be able to obtain relief under the Jones Act there"); *Damigos v. Flanders Compania Naviera, S.A. Panama,* 716 F.Supp. 104, 109 (S.D.N.Y.1989) (Leval, D.J.) ("the seamen's hope to gain the benefits of the Jones Act is not a strong factor weighing against dismissal").

**\*18** Moreover, for better or worse, litigation--and demands for high damages--is increasing in Russia. *See, e.g.,* Steven Lee Myers, *Russians Becoming Litigious: Survivors of Theater Siege Sue,* N.Y. Times 12/2/02 at A3 ("In post-Soviet Russia, civil suits seeking compensation for all manner of suffering, much of it economic, have proliferated, driven by an increasingly aggressive bar," and noting that theater siege victims are seeking $1 million each).

The remedy in Russia is not so inadequate that it is no remedy at all.

V. *ON BALANCING* GILBERT'S *PUBLIC AND PRIVATE INTEREST FACTORS, RUSSIA IS THE APPROPRIATE FORUM*

A. *Gilbert's Private Interest Factors Strongly Support the Russian Forum*

The "private interest factors" relating to "the convenience of the litigants" include " 'the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.' " *Iragorri v. United Tech. Corp.,* 274 F.3d 65, 73-74 (2d Cir.2001) (en banc) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)); [FN34] *accord, e.g., Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 258 n. 6, 70 L.Ed.2d 419 (1981); *Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine,* 311 F.3d 488, 500 (2d Cir.2002); *Aguinda v. Texaco, Inc.,* 303 F.3d 470, 479 (2d Cir.2002); *DiRienzo v. Philip Servs. Corp.,* 294 F.3d 21, 29-30 (2d Cir.2002); *Potomac Capital Inv. Corp. v. KLM,* 97 Civ. 8141, 1998 WL 92416 a *6 (S.D.N.Y. Mar. 4, 1998) (Peck, M.J.). "In considering these factors, the court is necessarily engaged in a comparison between the hardships defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer as the result of dismissal and the obligation to bring suit in another country." *Iragorri v. United Tech. Corp.,* 274 F.3d at 74. [FN35]

FN34. The Supreme Court in *Gulf Oil Corp. v. Gilbert* also noted that "[t]here may also be questions as to the enforc[ea]bility of a judgment if one is obtained." *Gulf Oil Corp. v. Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843; *accord, e.g., Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 81 F.3d 1224, 1232 (2d Cir.1996); *Murray v. British Broad. Corp.,* 81 F.3d 287, 294 (2d Cir.1996).

FN35. This analysis of the specific burdens of a trial in Russia appears to be entirely academic, given the parties' agreement that any recovery in a Russian trial would not materially exceed the $49,000 already paid to plaintiff. The Court has no choice, however, but to pursue this "legal charade." *See Irish Nat'l Ins. Co. v. Aer Lingus Teoranta,* 739 F.2d 90, 91 (2d Cir.1984) ("[T]he real issue before the district court was not whether the case should be tried in Ireland, but whether it would be tried at all. Nevertheless, ... the district court proceeded to weigh the merits of a trial in Ireland against a trial in America just as if the former were likely to occur. Although the procedure smacks somewhat of a legal charade, we will proceed on the same assumption.").

"Rather than simply characterizing the case as one in negligence, contract, or some other area of law, the court should focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues." *Iragorri v. United Tech. Corp.,* 274 F.3d at 74. [FN36]

FN36. *See also, e.g., R. Maganlal & Co. v.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2003 WL 230741 (S.D.N.Y.)  
**(Cite as: 2003 WL 230741 (S.D.N.Y.))**

Page 23

*M.G. Chem. Co.,* 942 F.2d 164, 168 (2d Cir.1991); *Overseas Programming Cos. v. Cinematographische Commerz-Anstalt,* 684 F.2d 232, 235 (2d Cir.1982); *World Film Servs., Inc. v. RAI Radiotelevisione Italiana S.p.A.,* 97 Civ. 8627, 1999 WL 47206 at *9 (S.D.N.Y. Feb.3, 1999) (defendant "cannot rely on the location of witnesses with knowledge of the parties' unsuccessful licensing negotiations, since this matter is largely irrelevant to the claims asserted in the complaint").

[5] Private interests will favor dismissal where most of the relevant witnesses and other evidence are located in the foreign forum. *See, e.g., Murray v. British Broad. Corp.,* 81 F.3d at 294-95) (in copyright action arising out of contract, most of witnesses and physical and documentary evidence was located in England, such that private interests favored dismissal); *Blanco v. Banco Indus. de Venezuela, S.A.,* 997 F.2d 974, 982 (2d Cir.1993) (private interest factors strongly favor dismissal when most witnesses and physical and documentary evidence are located in other forum); *Allstate Life Ins. Co. v. Linter Group Ltd.,* 994 F.2d 996, 1001 (2d Cir.) ("since all of the Banks' allegedly fraudulent activity occurred in Australia, most relevant documents ... [and m]ost witnesses and other sources of proof are also located in Australia"), *cert. denied,* 510 U.S. 945, 114 S.Ct. 386, 126 L.Ed.2d 334 (1993); *see also* cases cited below.

1. *The Location and Availability of Witnesses Strongly Favors Trial in Russia*

*19 "[T]he location of the witnesses [is] always a key factor in forum non conveniens cases...." *Manu Int'l, S.A. v. Avon Prods., Inc.,* 641 F.2d 62, 66 (2d Cir.1981). [FN37] As detailed below, most of the key witnesses in this case are Russian nationals and there is little, if any, evidence that witnesses located in New York would provide relevant testimony. The location and availability of witnesses thus strongly favors trial in Russia.

> FN37. *Accord, e.g., Schertenleib v. Traum,* 589 F.2d 1156, 1165 (2d Cir.1978) ("Perhaps the most significant problem is presented by the inability to bring plaintiff and his alleged co-conspirator here for live cross-examination before a factfinder, due to their incarceration in Switzerland."); *Potomac Capital Inv. Corp. v. KLM,* 97 Civ. 8141, 1998 WL 92416 at *7 (S.D.N.Y. Mar.4, 1998) (Peck, M.J.) ("If the location of witnesses and sources of proof are strongly in favor of one forum, the matter likely should be adjudicated there."); *Continental Pac. Shipping, Ltd. v. CIT Group/Equip. Fin., Inc.,* 96 Civ. 2646, 1996 WL 571855 at *6 (S.D.N.Y. Oct.7, 1996) (" 'The location of relevant witnesses is a 'key factor in forum non conveniens cases.' "); *Nippon Fire & Marine Ins. Co. v. M.V. Egasco Star,* 899 F.Supp. 164, 169 (S.D.N.Y.1995) ("when the greater number and more relevant witnesses are located in a foreign forum, common sense suggests that the litigation proceed in that forum"), *aff'd,* 104 F.3d 351 (2d Cir.1996); *Studiengesellschaft Kohle MBH v. Shell Oil Co.,* 93 Civ. 1868, 1993 WL 403340 at *2 (S.D.N.Y. Oct.8, 1993) ("The convenience of both party and non-party witnesses may be the single most important factor in the [FNC] analysis...."); *Zweig v. National Mort. Bank of Greece,* 91 Civ. 5482, 1993 WL 227663 at *3 (S.D.N.Y. June 21, 1993) ("[T]he most significant factor is the convenience of party and non-party witnesses.").

a. *The Russian Residence of the Shipmate Witnesses Strongly Favors Trial in Russia*

Eastwind has identified five of Stanislav's Russian shipmates as potential witnesses--the captain, first mate, and three seamen. (*See* page 6 above.) A threshold issue is whether Stanislav's Russian shipmates could offer relevant testimony.

Plaintiff argues that because defendants have conceded that there were no "eye witnesses" to the accident, [FN38] none of Stanislav's shipmates could provide relevant testimony. (Dkt. No. 16:Pl. Br. at 4, 7.) This is nonsense. The complaint asserts that, *inter alia:* (1) "[t]he vessel was unseaworthy in that the ... pilot ladder was not safe for its intended use"; (2) defendants "were negligent in not securing the pilot ladder in a safe manner"; (3) defendants

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2003 WL 230741 (S.D.N.Y.)  
**(Cite as: 2003 WL 230741 (S.D.N.Y.))**

Page 24

"violated applicable safety regulations"; (4) defendants "failed to warn Decedent of danger"; (5) "rescue equipment was inadequate and not readily available"; and (6) "rescue efforts were negligently directed and enforced." (Dkt. No. 1: Compl. ¶¶ 14-16.) Even if Stanislav's shipmates did not actually see Stanislav fall overboard, they could testify regarding the conditions that allegedly contributed to his death, including: the duties of Stanislav and other crewmen; the ship's regular onboard procedures for boarding pilots; the state of the ship's equipment, including the pilot's ladder, at the time of the accident; the events leading up to and following the accident; Stanislav's health and mental state at the time of the accident; and the ship's rescue efforts. "Moreover, even assuming *arguendo* that [defendant's Russian]-based witnesses were not necessary, [plaintiff] has not identified a single New York-based witness." *Potomac Capital Inv. Corp. v. KLM,* 97 Civ. 8141, 1998 WL 92416 at *8 (S.D.N.Y. Mar.4, 1998) (Peck, M.J.).

> FN38. Defendants responded to an interrogatory as follows:
> There were no witnesses to the alleged accident, although upon information and belief anyone who was aboard ship and/or was involved in search and rescue may have witnessed some of the events prior to and after the event.
> (Dkt. No. 34: Eastwind Resp. to Pl's Interrog. No. 21.)

Second, plaintiff argues that because, "as a matter of law," defendants are strictly liable for the accident that killed Stanislav, there is no need for trial testimony from witnesses to the accident. (Dkt. No. 16: Pl. Br. at 1- 2, 7-8.) According to plaintiff, the International Convention for Safety of Life at Sea, 1974 ("SOLAS"), to which Russia, Liberia, and the United States are signatories, "provides that on the rigging of any pilot ladder, the rigging must be supervised by an *officer* with good visibility." (Pl. Br. at 7, citing Dkt. No. 17: Edelman 7/15/02 Aff. Ex. 5: SOLAS Reg. 17.) In plaintiff's view, the ship *must* have violated SOLAS Regulation 17, because "the story provided by the deckhand in the vicinity [Miron Nuke], and adopted by the defense on this motion," indicates that no officer was on deck supervising the rigging of the Yellowstone's pilot ladder. (Pl. Br. at 7; *see* Edelman 7/15/02 Aff. at 2-3.) According to plaintiff, such a "violation would provide absolute liability and certainly would obviate any claim" that Stanislav was contributorily negligent. (*Id.*) Thus, in plaintiff's view, trial testimony from Stanislav's shipmates regarding the details of his accident would be superfluous.

*20 Plaintiff's argument is meritless. Plaintiff cites decisions holding that in the absence of any showing of negligence, the Jones Act permits recovery for the injury or death of a seaman resulting from a violation of a statutory duty or Coast Guard regulation. (Dkt. No. 16: Pl. Br. at 7, citing *Kernan v. American Dredging Co.,* 355 U.S. 426, 433, 78 S.Ct. 394, 398, 2 L.Ed.2d 382 (1958), & *Fuszek v. Royal King Fisheries, Inc.,* 98 F.3d 514, 516-17 (9th Cir.1996), *cert. denied,* 520 U.S. 1155, 117 S.Ct. 1334, 137 L.Ed.2d 494 (1997).) Yet even if the Court accepted that (1) the Jones Act governed this action, (2) violations of SOLAS Regulation 17 could form the predicate for strict liability recovery under the Jones Act, and (3) defendants violated the SOLAS regulation (all issues disputed by Eastwind, *see* Dkt. No. 18: Eastwind Reply Br. at 6-8), plaintiff nevertheless would recover nothing absent proof of *causation*. *See, e.g., Kernan v. American Dredging Co.,* 355 U.S. at 432-33, 78 S.Ct. at 398 ("In FELA cases based upon violations of [statutory duties], the Court has held that a violation of [the] statute creates liability under FELA if the resulting defect or insufficiency in equipment contributes in fact to the death or injury in suit, without regard to whether the injury flowing from the breach was the injury the statute sought to prevent."); *Fuszek v. Royal King Fisheries, Inc.,* 98 F.3d at 517 ("regulatory ... violation could amount to negligence *per se* under the Jones Act if five elements were met," including "causation"). In other words, the jury would have to find that defendants' alleged violation of SOLAS Regulation 17 (*i.e.,* failing to provide an officer to supervise the rigging of the pilot ladder) *caused* Stanislav's accident and death. Onboard witnesses to the circumstances of the accident and its aftermath therefore would be indispensable to any trial on this issue. [FN39]

> FN39. Assuming that both the Jones Act and the SOLAS regulations governed this action, the burden might be shifted to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defendants to prove that defendants' alleged SOLAS violation did *not* cause Stanislav's accident. *Compare In re Seaboard Shipping Corp.,* 449 F.2d 132, 136 (2d Cir.1971) ("the burden is on a ship in violation of a safety statute ... to show 'not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been' "), *cert. denied,* 406 U.S. 949, 92 S.Ct. 2038, 2039, 32 L.Ed.2d 337 (1972); *& Smith v. Mitlof,* 130 F.Supp.2d 578, 581 (S.D.N.Y.2001) (once plaintiff proved defendant violated navigational statute or Coast Guard regulation, defendant had burden of proof on causation); *with Wills v. Amerada Hess Corp.,* 98 Civ. 7126, 2002 WL 140542 at *16-17 (S.D.N.Y. Jan.31, 2002) (rule shifting burden of proof to defendant is limited to cases involving ship collisions, distinguishing *Seaboard Shipping* ). Even if the burden shifted to defendants, however, testimony on causation would still be necessary.

Third, plaintiff asserts (apparently in the alternative) that testimony from Stanislav's crewmates is unnecessary because a Kaliningrad resident named Andrej Nikitinskij is willing to travel here to testify that in September 2000, the "M/V Yarmouth," was inspected by the United States Coast Guard in "Douglas, USA," and found to have a "decayed" "storm-ladder" that broke when tested. (Dkt. No. 17: Edelman 7/15/02 Aff. at 9 & Ex. 9: Nikitinskij Statement.) Although Nikitinskij has no personal knowledge of the Yellowstone, he asserts in an unsworn statement, based on "conversations with other seaman who worked on m/v Yellowstone," that the "equipment and deck equipment on boards the both vessels were very similar." (*Id.*) Plaintiff thus intends to offer Nikitinskij's testimony along with Coast Guard witnesses and records to prove that defendants' negligence caused Stanislav's death. (Edelman 7/15/02 Aff. at 9.) Even assuming that plaintiff's theory has some basis (and that Nikitinskij's testimony was not impermissible hearsay), the jury would still require testimony from the Yellowstone's Russian crew as to the condition of the Yellowstone's pilot ladder. Evidence that another "similar" ship had a decayed ladder could not, by itself, prove that the Yellowstone's ladder was decayed as well. [FN40]

> FN40. Indeed, this entire line of evidence has little, if any, relevance to this case. Decay is not a type of product defect that one can presume to apply to all "similar" products. Moreover, Nikitinskij does not personally know the condition of the Yellowstone's ladder, and even if he could testify, the fact that a Kaliningrad resident is (allegedly) willing to travel here hardly favors trial in this District rather than the witness' home forum.
> To the extent plaintiff would need an expert to tie this evidence together, the expert's location would be entitled to little weight on this motion. *E.g., Potomac Capital Inv. Corp. v. KLM,* 1998 WL 92416 at *8 ( & cases cited therein); *Balaban v. Pettigrew Auction Co.,* 96 Civ. 3177, 1997 WL 470373 at *4 n. 1 (E.D.N.Y. June 27, 1997) ("it has repeatedly been held that '[t]he convenience of expert witnesses is of 'little or no significance' on a motion to transfer' ").

**\*21** Given the importance of the shipmates' testimony, their Russian location strongly favors trial in Russia. Forum non conveniens decisions in this District give great weight to the overseas location of seamen witnesses. *See Valarezo v. Ecuadorian Line, Inc.,* 00 Civ. 6387, 2001 WL 740773 at *4 (S.D.N.Y. June 29, 2001) (Granting FNC motion: "The two seamen who witnessed [plaintiff's] fall are citizens and residents of the Philippines.... The Port Captain for the vessel, Captain Achilles, is a resident of Ecuador, as is Captain N. Mancayo who assists in recruiting and placing crew members on board.... In sum, none of the relevant witnesses are citizens or residents of the United States. On the other hand, six of the key witnesses are residents of Ecuador."); *Gazis v. John S. Latsis (USA) Inc.,* 729 F.Supp. 979, 989 (S.D.N.Y.1990) ("Witnesses to the event, the treating physicians and the other crewmembers aboard the [ship] are presumably still in the Netherlands, aboard ship, or in Greece. None of these witnesses are subject to the subpoena power of the court. Although the depositions of these

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 230741 (S.D.N.Y.)
**(Cite as: 2003 WL 230741 (S.D.N.Y.))**

Page 26

witnesses could be substituted at trial, this is not the optimal way for a jury to decide a case."); *Bastas v. Atlantic Mar. Enter. Corp.,* No. Civ. A. 86-6962, 1988 WL 48547 at *2 (E.D.Pa. May 13, 1988) (Granting FNC motion: "As seamen are frequently out at sea, witnesses to the accident are more likely to be accessible in Greece, the vessel's home port."); *Cruz v. Maritime Co. of Philippines,* 549 F.Supp. 285, 290 (S.D.N.Y.1982) (Leval, D.J.) (Granting FNC motion: "The six Philippine crewmen who the parties agree witnessed the accident are more likely to be available to testify in the Philippines than in New York (although it is possible that either forum would be required to take their testimony by deposition)."), *aff'd,* 702 F.2d 47 (2d Cir.1983) (per curiam). [FN41]

> FN41. In the context of venue transfer motions within the United States under 28 U.S.C. § 1404, in contrast, courts generally accord little, if any, weight to the availability and convenience of witnesses who are seaman, as they are likely to be at sea, and thus available only by deposition (at their home or on board ship) regardless of the U.S. trial forum. *See, e.g., Lykes Bros. S.S. Co. v. Sugarman,* 272 F.2d 679, 682 (2d Cir.1959) ("In all probability the testimony of these witnesses who sail the high seas will have to be taken by deposition anyhow, on some occasion when they happen to be available on shore leave."); *Conlon v. Sea-Land Serv., Inc.,* 94 Civ. 0609, 1995 WL 20321 at *5 (S.D.N.Y. Jan.19, 1995) (Denying § 1404 transfer motion because, *inter alia,* since non-party witness residing outside this district "is in the merchant marine, it is quite possible in any event that his testimony would have to be taken by way of deposition since he presumably spends much of his time overseas."); *Garza v. Marine Trans. Lines, Inc.,* 84 Civ. 6610, 1985 WL 6150 at *1 (S.D.N.Y. Apr.8, 1985) (Denying § 1404 transfer motion because, *inter alia,* "several [witnesses] are seamen on active duty at sea who are usually deposed on the ship and only infrequently appear at trial to testify; thus, their location does not affect the choice of forum."); *Babbidge v. Apex Oil Co.,* 676 F.Supp. 517, 519-20 (S.D.N.Y.1987) (Denying § 1404 transfer motion in action by seaman under Jones Act regarding accident onboard ship: "A number of these witnesses, who are seamen, are not even in their home state [neither the transferor nor the transferee district], but on vessels traveling to different parts of the world.... It is likely that the testimony of many of the seamen in this case will be taken by deposition on their ships. Therefore, the residence of these witnesses should not affect plaintiff's choice of forum."); *Drees v. Lykes Bros. S.S. Co.,* 500 F.Supp. 15, 17-18 (S.D.N.Y.1980) (Denying § 1404 transfer motion in Jones Act action for injury at sea: "When the testimony of seamen is required, ... the weight given to the convenience of the witnesses may be diminished in view of the fact that their testimony is often in the form of depositions.").
> Neither party has cited to the *Lykes* line of cases, and the Court has not found any cases applying these § 1404 cases regarding seamen witnesses in the FNC context. The seamen here are Russian and their testimony surely can be more easily obtained for use in a trial in Russia. Particularly in the absence of plaintiff's counsel's reliance on the *Lykes* line of cases, the Court will not consider their effect on this FNC decision.

Defendants claim that they currently employ only three of the five shipmate witnesses, and that defendants lack the power to compel even those three to attend a New York trial. (*See* pages 6-7 above.) The Court need not decide whether the seamen would be willing to voluntarily appear in New York or whether as a practical (as opposed to legal) matter defendants could "convince" them to testify here, since in any event the cost of transporting the shipmate witnesses to New York for trial would, in and of itself, strongly favor trial in Russia. *See, e.g., Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 81 F.3d 1224, 1232-33 (2d Cir.1996) (affirming FNC dismissal based upon the considerable "difficulty, cost, and disruption of requiring the attendance of [British] witnesses in New York"); *Blanco v. Banco Indus. de Venezuela,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.