Not Reported in F.Supp.2d  
2003 WL 230741 (S.D.N.Y.)  
**(Cite as: 2003 WL 230741 (S.D.N.Y.))**

Page 38

Arabian bank. The actions in dispute occurred throughout Europe and the Middle East; moreover, the witnesses are nearly all foreign.... Though Plaintiff alleges that there are other, unknown witnesses, mere allegations are not sufficient to connect the community to litigation."), *aff'd,* No. 01-9417, 2002 WL 31317708 (2d Cir. Oct.16, 2002). [FN52]

> FN52. *See also, e.g., Blanco v. Banco Indus. de Venezuela, S.A.,* 997 F.2d 974 (2d Cir.1993) (upholding FNC dismissal in action between Venezuelan litigants in which the only connection to the local forum was the fact that payments were to be made in dollars in New York); *Abert Trading, Inc. v. Kipling Belgium N.V/S.A.,* 00 Civ. 0478, 2002 WL 272408 at *5-6 (S.D.N.Y. Feb.26, 2002) (FNC dismissal: "The Agreement was made for the distribution and sale of Belgium goods which were packed for shipment in Belgium ... [and] shipped directly from Belgium to Central and South America.... The fact that [plaintiff] is a New York corporation does not, by itself, vest this forum (and its jurors) with an interest in this litigation."); *Guimond v. Wyndham Hotels & Resorts,* 95 Civ. 0428, 1996 WL 281959 at *5 (S.D.N.Y. May 29, 1996) (FNC dismissal in case involving swimming pool accident in Jamaica, where "the Court is unable to find that New York has even the most attenuated connection to the instant action"); *Becker v. Club Las Velas,* 94 Civ. 2412, 1995 WL 267025 at *4 (S.D.N.Y. May 8, 1995) (FNC dismissal in case involving boating accident in Mexico where "New York has no real connection to the action" between New Jersey plaintiffs and Mexican defendant), *aff'd,* 101 F.3d 684 (2d Cir.1996); *Noto v. CIA Secula di Armanento,* 310 F.Supp. 639, 647-48 (S.D.N.Y.1970) (Weinfeld, D.J.) (FNC dismissal in case involving the explosion of an Iranian oil tanker where "not a single contact within this district justifies the filing of these lawsuits here").

**\*31** The Court notes that plaintiff's counsel, Paul Edelman, often tries to bring in this Court maritime cases involving foreign plaintiffs injured or killed on foreign vessels in foreign waters, and that most such cases have been dismissed on forum non conveniens grounds. It is useful to quote extensively from Judge Kaplan's decision in one such case brought by Mr. Edelman:

> There is a final public interest consideration that bears more than passing mention. *This is a case brought on behalf of Greek seamen who shipped aboard a Liberian vessel crewed by a Greek company which, wherever its ownership lay, was engaged exclusively in carrying cargos to and from non-U.S. ports. There are fora and remedies available to plaintiffs under the law of their country of domicile.* Three of them already have settled their claims for sums which are substantial, even if they perhaps might seem low by American standards. *There seems little justification for opening the courts of the United States which are paid for by U.S. taxpayers and whose juries are composed of U.S. citizens asked to drop their everyday activities to serve--to claims in these circumstances* even if, as plaintiffs stoutly argue, the ultimate base of operations of the vessel in question was the United States. *That no doubt is why judges of this Court repeatedly have dismissed cases like this one--all brought by the same attorney [Edelman]--in favor of Greek fora. E.g., Damigos,* 716 F.Supp. 104; *Tsangaris v. Elite Inc.,* No. 92 Civ. 7855(RPP), 1993 WL 267425 (S.D.N.Y. July 9, 1993); *Geralis v. Westwind Africa Line, Ltd.,* No. 84 Civ. 4310(DNE) (S.D.N.Y. Apr. 19, 1989); *Hasakis v. Trade Bulkers, Inc.,* 690 F.Supp. 260 (S.D.N.Y.1988); *Kassapas v. Arkon Shipping Agency, Inc.,* 578 F.Supp. 400 (S.D.N.Y.1984); *Doufexis v. Nagos S.S. Inc.,* 583 F.Supp. 1132 (S.D.N.Y.1983); *Krimizis v. Panoceanic Navigation Corp.,* No. 83 Civ. 5667(JFK), 1985 WL 3834 (S.D.N.Y. Nov.14, 1985).
> 
> *Rhoditis* is not to the contrary. The injury there in question occurred in the United States, and the vessel was engaged in carrying cargoes to and from U.S. ports. The interest of the United States in providing a remedy and a forum in that case was far greater than it is here, and it is important to note that the case did not even involve the question whether a forum non conveniens dismissal was appropriate. The public interest

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 230741 (S.D.N.Y.)
**(Cite as: 2003 WL 230741 (S.D.N.Y.))**

Page 39

factors thus weigh heavily in favor of dismissal. *Ioannides v. Marika Mar. Corp.,* 928 F.Supp. 374, 380 (S.D.N.Y.1996) (emphasis added). Here, too, the fact that Russia has a strong interest in this action, and any New York interest is attenuated at best, strongly favors FNC dismissal.

3. *The Court Administration Factor Favors Russia*

Considerations of court congestion favor neither party, as there is no evidence that this Court is more congested than Russian courts. *See, e.g., Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine,* 311 F.3d 488, 500 (2d Cir.2002) ("Court congestion is no more a problem in the Ukraine than it is here...."); *DiRienzo v. Philip Services Corp.,* 294 F.3d 21, 31 (2d Cir.2002) ("Ontario courts, like the Southern District of New York, suffer from congestion."); *Guidi v. Inter-Continental Hotels Corp.,* 224 F.3d 142, 147 n. 5 (2d Cir.2000) (The "criterion regarding the administrative and legal problems of the chosen court has no application here. Although the district court noted that the Southern District of New York is 'heavily overburdened,' the recent filling of all judicial vacancies and the resulting full complement of judges for the District makes this concern of little or no present significance."). [FN53]

> FN53. *Accord, e.g., Saab v. Citibank, N.A.,* 00 Civ. 6784, 2001 WL 1382577 at *5 (S.D.N.Y. Nov.7, 2001) ("Though it remains a factor to be considered, court congestion does not affect the analysis in this case."), *aff'd,* No. 01-9417, 2002 WL 31317708 (2d Cir. Oct.16, 2002); *Ingram Micro, Inc. v. Airoute Cargo Express, Inc.,* 99 Civ. 12480, 2001 WL 282696 at *5 (S.D.N.Y. Mar.22, 2001) (finding relative court congestion to be neutral factor where defendant "offered no evidence that [Ontario courts are] any less busy" than courts of this district).

***32** Nevertheless, plaintiff's overseas location and multiple layers of representation are likely to cause pretrial and trial inefficiencies. Plaintiff is currently represented by three levels of counsel: Lithuanian/Russian, Greek, and American. (See pages 8-9 & n. 9 & page 10 n. 11 above.) Plaintiff's American counsel has admitted that he has never spoken directly to his "client," and was retained by overseas counsel. (Dkt. No. 12: 5/31/02 Hearing Tr. at 19.) Pretrial administration of this action is likely to be complicated by the fact that American counsel, in order to communicate with his client, will have to deal with several layers of intermediary lawyers. [FN54] Trial in Russia, involving only one plaintiff's lawyer, likely will be far more efficient. [FN55]

> FN54. As an illustration, this Court recently learned that plaintiff did not receive her $49,000 benefit check until nearly two months after it was delivered to plaintiff's American counsel. Determining the cause of the delay required affidavits from three sets of attorneys. (*See* page 10 n. 11 above.) This does not bode well for an efficient pretrial management of this action. *See Cuevas v. Reading & Bates Corp.,* 577 F.Supp. 462, 466 (S.D.Tex.1983) (Choice of law analysis. "The Philippine courts are substantially more accessible to these Plaintiffs than are the courts of this nation. This fact has been strikingly illustrated in the present litigation by the apparent inability of attorney for Plaintiffs to communicate effectively with his clients ...."), *aff'd,* 770 F.2d 1371 (5th Cir.1985).

> FN55. The court administration factor is compounded by the fact that trial will require translation of a certain amount of testimony. *See Transunion Corp. v. Pepsico, Inc.,* 640 F.Supp. 1211, 1216 (S.D.N.Y.1986) ("While certainly not decisive, language may be a barrier to swift adjudication in this District.... Many of the witnesses who reside in the Philippines speak Tagalog, a Philippines dialect, as their primary language."), *aff'd,* 811 F.2d 127 (2d Cir.1987); *Flores v. Southern Peru Copper Corp.,* 00 Civ. 9812, 2002 WL 1587224 at *28 (S.D.N.Y. July 16, 2002) ("public interest factors strongly counsel dismissing this action in favor of Peru," because, *inter alia,* "the testimony and documents would pose formidable translation requirements").

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 40
2003 WL 230741 (S.D.N.Y.)
**(Cite as: 2003 WL 230741 (S.D.N.Y.))**

4. *The Jury Duty Factor Strongly Favors Russia*

As the Supreme Court observed in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Id.* at 508-09, 67 S.Ct. at 843. This action's connection to this forum is far too attenuated to justify burdening our citizens with jury duty. *See, e.g., Trigano v. Bain & Co.,* No. 97-7475, 182 F.3d 901 (table), 1999 WL 464991 at *1 (2d Cir. June 29, 1999) (FNC dismissal upheld where contract executed in France and most witnesses were in France, not New York, and no actions were taken in New York; "[T]he interest in having local disputes settled locally, in avoiding complications of applying foreign law, and in avoiding burdening New York jurors with a case that has no impact on their community all weigh heavily against New York as a forum in this case."); *Alfadda v. Fenn,* 159 F.3d 41, 46-47 (2d Cir.1998) ("The interest in protecting jurors from sitting on cases with no relevance to their own community weighs heavily in favor of France. This suit involves ... plaintiffs' investment in a Netherlands Antilles holding company that owned a French-licensed bank.... Thus, French jurors have a more significant interest in this case than American jurors."); *Pavlov v. Bank of New York Co.,* 135 F.Supp.2d 426, 437 (S.D.N.Y.2001) ("This is a private dispute about monetary loss allegedly suffered by depositors in a Russian bank. There is little justification for imposing it on U.S. courts and jurors."), *vacated on other grounds,* No. 01-7434, 25 Fed. Appx. 70, 2002 WL 63516 (2d Cir. Jan. 14, 2002); *Potomac Capital Inv. Corp. v. KLM,* 97 Civ. 8141, 1998 WL 92416 at * 11 (S.D.N.Y. Mar.4, 1998) (Peck, M.J.); *Lan Assocs. XVIII, L.P. v. Bank of Nova Scotia,* 96 Civ. 1022, 1997 WL 458753 at *6 (S.D.N.Y. Aug.11, 1997) ("to require New York's citizens to serve as jurors merely because some wire transfers passed through [defendant's] New York branch would be inappropriate"); *MTS Secs., Inc. v. Creditanstalt-Bankverein,* No. 96-CV-0567E, 1997 WL 251482 at *6 (W.D.N.Y. May 1, 1997) ("because Austria has a far greater interest in [the] case than does the United States, the burdens of jury duty should fall upon Austrian citizens and the burdens of administering this case should fall on Austrian courts"); *Guimond v. Wyndham Hotels & Resorts,* 95 Civ. 0428, 1996 WL 281959 at *5 (S.D.N.Y. May 29, 1996) (Since "the Court is unable to find that New York has even the most attenuated connection to the instant action ... [,] it would be unjust to require New York's citizens to serve as jurors in an action so wholly devoid of local interest."). [FN56]

> FN56. *Accord, e.g., Beekmans v. J.P. Morgan & Co.,* 945 F.Supp. 90, 95 (S.D.N.Y.1996) ("The Court and the jurors of this country ought not to be burdened with deciding a case with so little relation to the United States."); *Bell v. British Telecom,* 95 Civ.1972, 1995 WL 476684 at *3 (S.D.N.Y. Aug.9, 1995) ("The courts in this District, already laden with litigation, and the New York community, have no interest in settling a dispute between Nevada residents and a British corporation arising out of an incident that occurred in Scotland."); *Doe v. Hyland Therapeutics Div.,* 807 F.Supp. 1117, 1128 (S.D.N.Y.1992) ("[T]enuous contacts do not justify the significant administrative costs that stand to be levied upon this Court, or the burden of jury duty expected to be thrust upon a community substantially distanced from the controversy.... That this Court sits in 'one of the busiest districts in the country,' ... is undeniable, making this one of the 'congested centers' of litigation referred to in *Gilbert*.... The need to guard our docket from disputes with little connection to this forum is clear ....") (citations omitted); *Noto v. Cia Secula di Armanento,* 310 F.Supp. 639, 649 (S.D.N.Y.1970) ("The plaintiffs' asserted claims have no relationship to or contact with this district.... The doctrine of forum non conveniens protects not only the immediate defendant from harassing and vexatious litigation, but also other litigants and the community at large from unwarranted imposition upon the local courts' jurisdiction."); *Gazis v. John S. Latsis (USA) Inc.,* 729 F.Supp. 979, 989 (S.D.N.Y.1990) ("[T]he Supreme Court has severely discouraged the adjudication of disputes that have only a minimal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

contact with this country since it hampers the courts' ability to give speedy relief to those parties properly before them.").

C. *Balancing the Private and Public Interest Factors Strongly Favors Trial in Russia*

**\*33** The Court concludes that the private and public interest factors, balanced together, weigh strongly in favor of trial of this action in Russia. [FN57]

> FN57. Indeed, the private convenience and public interest factors weigh so heavily in favor of trial in Russia that the action should be dismissed even if, contrary to my recommendation, Judge Wood were to hold that the plaintiff's choice of forum should be granted strong, rather than diminished, deference.

### CONCLUSION

Accordingly, Eastwind's forum non conveniens motion should be GRANTED and the case dismissed without prejudice on defendants' filing of the undertaking (consent to suit in Russia, waiver of statute of limitations defense, and agreement to make defendants' witnesses available in Russia) called for in this Report and Recommendation.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Kimba M. Wood, 500 Pearl Street, Room 1610, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Wood. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57-59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237-38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

2003 WL 230741 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

. 2002 WL 32631902 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law of Eastwind Transport, Inc. for Dismissal on Grounds of Forum Non Conveniens (Jul. 24, 2002)

. 1:02CV02084 (Docket)
(Mar. 14, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

17

Westlaw.

Not Reported in F.Supp.
1990 WL 121483 (E.D.Pa.)
**(Cite as: 1990 WL 121483 (E.D.Pa.))**

Page 1

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
WINEX, LTD., Baring Hambrecht International,
V.A. Venture Associates, Alan
Tawil-Kummerman and Lowe Investments, Ltd.
v.
G. Eustis PAINE and Sally Paine
v.
BARING BROTHERS (GUERNSEY) LIMITED,
Baring Brothers Hambrecht & Quist, Ltd,
Richard A. Onians, Alan Gordon, Sam Goodner,
Lowe Finance, S.A. and Jack J.
Lowe.
**CIV. A. No. 89-2083.**

Aug. 15, 1990.

William H. Roberts, Blank, Rome, Comisky & McCauley, Ann B. Laupheimer, Jane C. Flickstein, Philadelphia, Pa., for plaintiffs.

David H. Pittinsky, Dilworth, Paxson, Kalish & Kauffman, Carl G. Roberts, Patrick T. Davish, Philadelphia, Pa., for defendants.

*MEMORANDUM and ORDER*

SHAPIRO, District Judge.

*1 This case arises from an unsuccessful attempt to establish an intercontinental data-communications network for the wine trade. Plaintiffs, Winex Ltd ("Winex") and investors in Winex, allege violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, by defendants, G. Eustis and Sally Paine. Plaintiffs also state claims for fraud, breach of fiduciary duty, negligence and breach of contract.

Plaintiffs other than Winex are all investors in Winex: Baring Hambrecht International ("BHI") is an advised fund with its principal place of business in St. Peter Port, Guernsey, Channel Islands. V.A. Venture Associates ("VA") is an entity organized under the laws of Switzerland with a principal place of business in Boesingen, Switzerland. Lowe Investments ("LI") is a fund organized under the laws of the Cayman Islands. Individual plaintiff, Alan Tawil-Kummerman ("Tawil-Kummerman") is a citizen of the United Kingdom who resides in Geneva, Switzerland.

Defendants G. Eustis and Sally Paine are United States citizens residing in Arizona. [FN1] Defendants filed amended counterclaims against the plaintiffs and joined additional counter-claim defendants, who are allegedly alter egos of the investor-plaintiffs. The amended counterclaims charge violations of federal securities law and RICO, allege intentional misrepresentation, breach of fiduciary duty, breach of contract and seek contribution.

Defendants allege that the additional counterclaim defendants are the real parties in interest or plaintiffs' alter egos. Baring Brothers (Guernesy) Limited, formerly known as Barfield Bank & Trust Co. Ltd ("Barfield"), is a corporation organized under the laws of Guernsey, Channel Islands, with its principal place of business in St. Peter Port, Guernsey. Baring Brothers Hambrecht & Quist Ltd. ("BBHQ") is a joint venture organized under the laws of England with its principal place of business in London, England. Richard A. Onians is an English citizen residing in London, England. Defendants refer to BHI, Barfield, BBHQ and Onians collectively as the Baring Group and allege that the Baring Group functioned as Onians' alter egos.

Alan Gordon is an English citizen who resides in London, England. Gordan was a director of VA. Sam Goodner is a Swiss citizen residing in Fribourg, Switzerland. Goodner was chairman of VA. Defendants refer to VA, Gordon and Goodner

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1990 WL 121483 (E.D.Pa.)  
**(Cite as: 1990 WL 121483 (E.D.Pa.))**

Page 2

collectively as the VA Group.

Organized under the laws of Switzerland, Lowe Finance S.A. ("LF") had its principal place of business in Geneva, Switzerland. Additional counterclaim defendant LF manages LI. Jack J. Lowe ("Lowe") is a Swiss citizen residing near Geneva, Switzerland. Defendants allege that LI and LF functioned as Lowe's alter egos and refer to Lowe, LI and LF collectively as the Lowe Group.

Both plaintiffs and additional counterclaim defendants move to dismiss the amended counterclaims. In addition, the parties have briefed whether the entire action should be dismissed under the doctrine of forum non conveniens.

I. *Factual Background*

*2 In 1984 and 1985, the Paines organized a group of companies (the "Winex system") to facilitate the shipment and importation of wine. The Winex system was intended to create an international trading market for wine by affording subscribers, consisting of shippers and wine dealers, access to current information about wine held by independent wine producers through an international telecommunications and computer storage system.

The Winex system consisted of a parent company, Winex, and four subsidiaries: The Wine Exchange, Ltd. ("WEX US"), WEX France SARL ("WEX France"), The Wine Exchange (UK), Ltd. ("WEX UK") and WEX Italia SRL ("WEX Italia"). Initially, the Paines and Peter Griffiths were the sole shareholders in WEX US and WEX France, and George Paine and Paul Almy were the sole shareholders of WEX UK, but the shares of stock were surrendered to the parent company in 1985 so that investors could purchase shares of stock in Winex. Winex was organized in 1985 under the laws of Guernsey, Channel Islands with its principal place of business at Barfield House, St. Julian's Avenue, St. Peter Port, Guernsey.

Each subsidiary was the operating business of the Winex system in its respective country. WEX US was organized on April 2, 1984 as a Pennsylvania business corporation with its principal office located in Philadelphia, Pennsylvania. WEX France was organized in October, 1984, under the laws of France with its principal place of business in Libourne, France. WEX UK was formed in April, 1985, under the laws of the United Kingdom with a principal place of business in London, England. WEX Italia was organized in November, 1985, as an Italian corporation with a principal place of business in Italy.

The Winex companies were originally financed by Paines' personal investments, bank credit lines and secured loans. In late 1984, George Paine in Philadelphia and Richard A. Onians, acting on behalf of BHI, discussed the Winex system by telephone. [FN2] Paine sent Onians a draft business plan for the Winex companies from Philadelphia. At a meeting on January 29, 1985, Onians offered to invest in Winex, but George Paine rejected the offer. Onians met with the staff of WEX US in Philadelphia regarding the operation of Winex. At a meeting in Philadelphia in March, 1985, Onians advised George Paine to prepare a formal business plan regarding the development of the Winex system.

In late 1985, the WEX system began to raise additional funds through venture capital financing. On September 23, 1985, the Paines, Griffiths, Smith, BHI and VA executed a Subscription and Shareholder's Agreement (the "subscription agreement") in London. Exhibit A, Defendants and Counterclaim Plaintiffs' Memorandum of Law Respecting Forum Non Conveniens, Venue and Conflicts of Law. The subscription agreement set forth the terms and conditions of the Winex venture, including subscription procedures, management and business obligations, warranties and capitalization. The Paines, Griffiths and Smith were named executive directors of Winex and received common stock. BHI and VA had the right to nominate two directors and control Winex business and financial decisions in exchange for investing in Winex, or procuring investors, and making loans to Winex.

*3 Throughout 1986 and 1987, BHI and VA made loans to Winex and purchased shares of Winex convertible preferred and common stock. LI and Tawil-Kummerman became parties to the subscription agreement in 1986 and purchased shares of Winex stock and invested in Winex until 1987. The Paines also invested additional capital in the Winex companies on numerous occasions

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                           Page 3
1990 WL 121483 (E.D.Pa.)
**(Cite as: 1990 WL 121483 (E.D.Pa.))**

from 1985 to 1988.

The Winex Board of Directors (the "Board") consisted of directors nominated by each investor, George Paine, Sally Paine Griffiths and Smith. At various times, the Paines, Griffiths, Tawil-Kummerman, Onians, Gordon, Smith, Southard, Goodner, Lowe and M. Denis Ardon were members of the Board. Amended Counter-claims, ¶¶ 44, 48, 54, 57. Board meetings were held from June 1985 until March 1988, in England, France or Switzerland. G. Paine Affidavit, ¶ 4; Complaint, ¶ 44. The date, location, attendance or subject matter of each Board meeting is not of record, but the meetings did not occur in the United States.

Plaintiffs allege that the Paines fraudulently induced them to make stock purchases and loans to the Winex companies through oral and written misrepresentations about the Paines' business experience and financial worth. The Paines contend plaintiff-investors defrauded them by misrepresenting their financial expertise and mismanaging the Winex companies. Despite an infusion of funds from both the investors and Paines, the Winex companies ceased operation around May, 1988.

The plaintiffs and additional counterclaim defendants contend that this court does not have subject matter jurisdiction over the amended counterclaims because none of the conduct alleged in the amended counterclaims occurred in the United States and therefore these extraterritorial claims are beyond the competence of the court.
The additional counterclaim defendants argue that the court lacks personal jurisdiction over the additional counterclaim defendants and that service of process on the additional counterclaim defendants was invalid. In addition, plaintiffs argue that the Paines' claim for contribution is not ripe, the Paines have not adequately stated a RICO claim, and that the Paines, as individual shareholders, may not pursue a corporate claim for breach of fiduciary duty.

The Paines respond that the court should either dismiss both the claims and amended counterclaims or keep both, but should not dismiss the amended counterclaims while retaining jurisdiction over plaintiffs' claims. Defendants argue that the Eastern District of Pennsylvania is an inappropriate forum to litigate the claims arising from this predominately foreign dispute and the entire action should be dismissed under the doctrine of forum non conveniens.

II. *Discussion*

Dismissal of a case on the basis of forum non conveniens is discretionary with the district court. The court considers "where trial will best serve the convenience of the parties and ends of justice." *Koster v. American Lubermans Mutual Casualty Co.,* 330 U.S. 518, 527 (1947). A forum non conveniens dismissal is the exception to the rule favoring plaintiffs' chosen forum. *Lacey v. Cessna Aircraft Company,* 862 F.2d 38, 46 (3d Cir.1988).

*4 A forum non conveniens analysis consists of two steps. First, dismissal is permitted only if an adequate alternative forum exists to hear the case. *Piper Aircraft Company v. Reyno,* 454 U.S. 235, 254 n. 22, (1981). There is a presumption in favor of plaintiff's chosen forum, but plaintiff's choice of forum may receive less deference if it is not plaintiff's home forum. *Id.* at 255-56; *Lony v. E.I. Du Pont de Nemours & Co.,* 886 F.2d 628, 633-34 (3d Cir.1989). Second, if an alternative forum does exist, the court considers several private and public interest factors. *Lacey,* 862 F.2d at 43. Defendant bears the burden of persuasion on all elements of the forum non conveniens analysis. *Lacey,* 862 F.2d at 43-44. Plaintiffs' chosen forum should not be disturbed unless the balance of factors weighs strongly in defendants' favor. *Lacey* at 43.

1. *Alternate Forum*

An adequate alternative forum exists where, as here, the defendants (and defendants on the counterclaims) are amenable to process in another jurisdiction. *Piper,* 455 U.S. at 255, n. 22; *Lony,* 886 F.2d at 663. Sally Paine is a citizen of the United Kingdom. George Paine has appointed an agent to receive process on his behalf in London. Clause 17, Service Agreement between Winex, Ltd. and Eustis Paine, Exhibit B, Defendants and Counterclaim Plaintiffs' Memorandum of Law Respecting Forum Non Conveniens, Venue and Conflicts of Law. The Paines have agreed to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1990 WL 121483 (E.D.Pa.)  
**(Cite as: 1990 WL 121483 (E.D.Pa.))**

Page 4

submit to the jurisdiction of English courts. G. Paine Affidavit ¶ 14, Exhibit A, Defendants' Supplemental Memorandum of Law Regarding Forum Non Conveniens.

Plaintiffs are four foreign entities and one foreign individual. A foreign plaintiff's choice of forum may be accorded less deference than a United States citizen's choice of forum. But this is not license to accord a foreign plaintiff's choice no deference at all. *Lony,* 886 F.2d at 633; *Lacey,* 862 F.2d at 39. Where a foreign plaintiff must choose among inconvenient foreign sites, the court will give plaintiff's choice of forum some weight. *Lacey* at 39. The dealings of these parties were in England, France, Switzerland, Italy and the United States, but the record does not support a strong showing of convenience for the plaintiffs' chosen forum. *See Lony,* 886 F.2d at 634. In addition to the contacts with Philadelphia in late 1984 and 1985, the parties allege fraud, mismanagement and breach of warranties arising from the Winex transactions in Europe throughout 1985 and 1988. Important evidence regarding the operation of the Winex venture is located overseas. There is no showing that substantial evidence of liability is located in Pennsylvania.

The action stems from a relationship created in England where the parties executed a shareholder subscription agreement, providing for the application of English law and non-exclusive jurisdiction of the English courts. Clause 21, Subscription and Shareholders' Agreement, Exhibit A, Defendants and Counterclaim Plaintiffs' Memorandum of Law Respecting Forum Non Conveniens, Venue and Conflicts of Law. G. Eustis Paine's service agreement, appointing him Executive Chairman of Winex and setting forth terms and conditions of his employment, also contains an English choice of law clause. Clause 17, Service Agreement between Winex, Ltd. and Eustis Paine.

*5 VA is a Swiss entity and Tawil-Kummerman resides in Switzerland. The Swiss investors decided to invest in Winex, an off-shore holding company, in the United Kingdom; it was reasonable for them to anticipate that any litigation might be brought in England. Two other investors, BHI and LI, and Winex, are incorporated under the laws of territories of the United Kingdom; for these plaintiffs, England is not a foreign forum. The Paines' amenability to process and submission to the jurisdiction of English courts lead the court to conclude that England is an adequate foreign forum.

The assertion of federal securities and RICO claims does not preclude application of forum non conveniens. *See Kempe v. Ocean Drilling & Exploration Company,* 876 F.2d 1138, 1146 (5th Cir.1989) (forum non conveniens motion to dismiss granted where remedy available for most claims even though RICO cause of action unavailable in alternative forum); *Transunion Corporation v. Pepsico, Inc.,* 811 F.2d 127, 130 (2nd Cir.1987). Ordinarily, the alternative forum requirement will be satisfied if the defendant is amenable to process in a foreign forum, except in the rare circumstance where the alternative forum affords no remedy or an unsatisfactory remedy for plaintiffs' claims. *Piper,* 454 U.S. 255, n. 22; *Lony,* 886 F.2d 628.

A change of forum may not deprive plaintiffs of their day in court, but there is no requirement that plaintiffs must have the opportunity to recover substantially identical relief in the alternative forum. The possibility that a change of forum will result in application of less favorable substantive law does not receive conclusive or substantial weight in a forum non conveniens inquiry. *Piper,* 454 U.SD. 247. Whether or not England has statutes comparable to the Securities Exchange Act or RICO, England will provide a remedy for the non-statutory claims of fraud, negligence of officers and directors, breach of fiduciary duty and breach of contract. The parties expressly provided for the application of English law and the non-exclusive jurisdiction of English courts in the forum-selection clause of the subscription agreement. Therefore, being required to litigate in England leaves the parties with a remedy that they contemplated; they are not without a meaningful remedy.

2. *Private Interest*

The private interest factors that the court must consider in a forum non conveniens analysis are:

1. Relative ease of access to sources of proof;

2. Availability of compulsory process for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1990 WL 121483 (E.D.Pa.)
**(Cite as: 1990 WL 121483 (E.D.Pa.))**

Page 5

attendance of unwilling witnesses;

3. Possibility of view of premises, if appropriate;

4. All other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947).

The private interest factors weigh in favor of dismissal. The Winex system was predominantly a European venture; after early negotiations between Onians and Paine in Philadelphia, transactions between the parties from 1985 to 1988 took place in Europe, particularly in England, France and Switzerland. G. Paine Affidavit, ¶ 3. London was the financial focal point for Winex; English lawyers and accountants performed legal and accounting work for Winex. G. Paine Affidavit ¶ 9. Additional counterclaim defendant, Barfield, acted as Winex's banker. Amended Counterclaims ¶ 64. Therefore, important documents regarding the financial condition of the Winex companies, such as financial statements, management accounts, and budgets, relevant to proof of misrepresentation and breach of the subscription agreement, are located in England.

*6 Except for the Paines, individuals having relevant information as to the operation of Winex are European, but many are English citizens or reside in England. Additional counterclaim defendants, Onians and Goodner, who served as Winex directors, are English citizens and residents. Griffiths, the initial shareholder with the Paines in WEX US and WEX France, resides in England. The managing director of Winex's banker, Peter Walsh, is an English citizen and resident. Walsh Declaration, ¶ 5-6, Exhibit A, Memorandum in Support of Additional Counterclaim Defendants' Motion to Dismiss the Amended Counterclaims. The former CEO of Winex, Smith, [FN3] is amenable to process in England.

Some of the witnesses with knowledge about Winex transactions are located in France and Switzerland. Additional counterclaim defendants, Goodner and Lowe, reside in Switzerland; they may present testimony regarding the activities of the VA and Lowe groups, respectively. It would be easier and less costly for them to participate in a trial in England than in the United States.

The convenience of the parties in gaining access to documents and relevant witnesses favors declining jurisdiction. None of the plaintiffs or additional counterclaim defendants are United States citizens. They are either foreign entities, incorporated under the laws of territories of the United Kingdom or Switzerland, or individuals, residing in England or Switzerland. Either England or Switzerland provides a more convenient forum than the United States. None of the foreign witnesses are within the court's subpoena power. It will be costly to depose witnesses not under plaintiffs' control and compulsory process is not available to bring them to the United States.

The only connections to this forum are preliminary negotiations between Onians and defendants in Philadelphia and the formation of WEX US. Both parties claim that misrepresentations occurred during a telephone call between Onians and Paines and a Philadelphia meeting in March, 1985, between Onians and George Paine. In addition, a business plan for the Winex companies was prepared in Philadelphia by a student at the Wharton School and sent to Onians. Amended Counterclaims ¶ 31. Plaintiffs allege that the business plan contained numerous misrepresentations and omissions.

In a transnational securities fraud case, conduct in the United States in furtherance of a fraudulent scheme is sufficient to support subject-matter jurisdiction in a federal court. *Kasser,* 548 F.2d 109, 114 (3d Cir.1977). But activity in the United States that is merely preparatory to the fraudulent scheme does not suffice to confer jurisdiction. *Id.*

Arguably, there is sufficient alleged fraudulent conduct in Philadelphia to withstand a pre-trial attack on subject matter jurisdiction, but the parties' dealings occurred in Europe predominantly. The parties conducted the Winex venture in Europe: the Board of Director's meetings took place in England, France, and Switzerland; the financial center was located in England; and the parent holding company was incorporated in the Channel Islands. In comparison with the parties' European dealings, Winex's connection to this forum is minimal.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1990 WL 121483 (E.D.Pa.)  
**(Cite as: 1990 WL 121483 (E.D.Pa.))**

Page 6

**\*7** It appears as if the purchase of securities and extension of loans took place overseas. The shareholder subscription agreement and service agreements of the executive chairman and chief executive officer, central to the dispute, were executed in London and contain an English choice of law clause. Only a few clients of the Winex companies, accounting for no more than three percent of revenue, were American-based. G. Paine Affidavit, ¶ 7. The Paines, although American citizens, resided in Libourne, France from April, 1985, until June, 1988. G. Paine Affidavit, ¶ 5.

The private factors in this case favor declining jurisdiction. The foreign focus of the Winex business and the location of critical proof and witnesses overseas, particularly in the United Kingdom, weigh strongly in favor of dismissal on the basis of foreign non conveniens.

3. *Public Interest*

The public interest factors that the court must consider in the forum non conveniens analysis are:

1. Administrative difficulties such as court congestion;

2. Imposition of jury duty on a community with no relation to the litigation;

3. Local interest in having localized controversies decided at home;

4. Difficulties associated with application of foreign law;

5. Any other burdens imposed on the forum.

*Gulf Oil,* 330 U.S. at 508.

The public interest factors also favor dismissing this case. This case is of little local interest and the imposition of jury duty on the community would be great. The parties estimate a twenty day trial. Except for original defendants, who were in Pennsylvania in 1984, in France from 1985 to 1988 and now reside in Arizona, none of the investors or executive officers of Winex are United States citizens or entities. Most of Winex's customers were European; only a small percent of Winex's clients were in the United States. Therefore, the effect of the Winex collapse was felt primarily in Europe.

The evidence does not show WEX US to be the focus of the business after plaintiffs invested in the Winex system. Although the parties' allegations of fraud lack specificity, the complaint charges the Paines with misrepresentations and omissions in connection with each investors' purchase of stock or loan to Winex and breach of warranties contained in the subscription agreement; few of these events are alleged to have taken place in the United States. The parties have not identified any witness from this district and it is unlikely that there will be any witness, other than defendants, from the United States. There is no showing that plaintiffs will be prejudiced by lack of witnesses if the trial is held in England. This dispute concerning alleged transnational fraud has little connection, if any, to the Eastern District of Pennsylvania.

England has an interest in seeing that shareholder subscription and service agreements, executed in London and governed by English law, are properly interpreted and enforced. The court does not decline jurisdiction solely on the basis that foreign law applies to the claims, but it is clear that this case will involve complicated questions of foreign law. Plaintiffs allege that defendants mismanaged the Winex companies based on non-compliance with corporate and tax laws of the United Kingdom, France and Italy.

**\*8** Plaintiffs would have the court erect a Chinese wall between the claims and amended counterclaims in order to justify dismissing the amended counterclaims but retaining jurisdiction of the complaint. Plaintiffs argue that there is no subject matter jurisdiction over the amended counterclaims because so little of the fraudulent conduct alleged in the amended counterclaims took place in the United States. The argument of plaintiffs and additional counterclaim defendants in support of dismissing the amended counterclaims supports dismissal of this entire case on forum non conveniens grounds.

The motion to dismiss the amended counterclaims is disingenuous. The court will not deprive defendants of the opportunity to pursue their

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1990 WL 121483 (E.D.Pa.)  
**(Cite as: 1990 WL 121483 (E.D.Pa.))**

Page 7

counterclaims because subject matter jurisdiction is lacking while at the same time force them to defend plaintiffs' charges in this forum, when both the complaint and amended counterclaims arise from a common core of facts. To dismiss the amended counterclaims but not the complaint would make trial in this forum particularly oppressive and burdensome for defendants and encourage multiple litigation.

Plaintiffs admit that the Winex venture "is at the center of both plaintiffs' and the Paines' counterclaims." Memorandum of Plaintiffs and Counterclaim Defendants in Support of Motion to Dismiss Counterclaims, p. 2. The crux of the complaint is that plaintiffs, excluding Winex, were induced through the Paines' fraud and misrepresentation to purchase stock and invest in the Winex venture. Conversely, Paines argue that the plaintiff-investors and their alleged alter-egos defrauded them and induced them to continue providing capital to the Winex companies. The same facts form the basis of the parties' federal claims and the common law causes of action and involve the same subscription and service agreements.

Because the amended counterclaims arise from the same transactions giving rise to the complaint, operation of the Winex venture from 1985 to 1988, they are probably, as compulsory counterclaims under Fed.R.Civ.P. 13(a), within the court's ancillary jurisdiction. The court is unwilling to segregate artificially defendants' alleged fraud from plaintiffs' alleged fraud when both allegedly arise from the same transactions involving Winex. Plaintiffs' argument that the operation of the Winex companies was essentially European, with little connection to this forum, applies to declining jurisdiction over their complaint as well as the amended counterclaims.

Finally, additional counterclaim defendants make a persuasive argument that the court lacks personal jurisdiction over them because their contacts with this forum are insufficient. The court need not reach the issue of personal jurisdiction, but the record suggests that the additional counterclaim defendants' contacts with the United States, particularly Pennsylvania, are minimal. The additional counterclaim defendants are foreign citizens who reside in Europe and travel infrequently to the United States. Whether or not the additional counterclaim plaintiffs are the alter egos of plaintiffs, as alleged by defendants, it is clear that Onians, Gordon, Goodner and Lowe were significantly involved in the Winex companies. The inability to join these indispensable parties weighs in favor of a foreign non conveniens dismissal.

*9 The predominately foreign nature of this dispute and the entities involved warrants dismissal of this case on the basis of forum non conveniens. England provides an adequate alternative forum. Critical documentary and testimonial proof necessary for trial is located in Europe, particularly in England. The parent company and financial center of Winex were in the United Kingdom. The parties operated the Winex venture primarily in Europe and its connection to Pennsylvania is slight. The subscription agreement and employment agreements for key employees each contain clauses providing that English law governs the documents and the parties submit to the non-exclusive jurisdiction of English courts. Public and private interest factors support the conclusion that trial in the Eastern District of Pennsylvania would be expensive, inefficient and burdensome.

Dismissal of this action is conditioned on defendants' submission to the jurisdiction of the courts of England and the parties' waiver of any defense based on delay in asserting claims after the dates the claims were made in this forum. The complaint and counterclaims, as amended, are dismissed without prejudice based on forum non conveniens.

An order follows.

### ORDER

AND NOW this 15th day of August, 1990, the parties having briefed the issue of dismissal on the basis of forum non conveniens and upon review of plaintiffs and additional counterclaim defendants' motions to dismiss and defendants' responses thereto and after oral argument held on October 18, 1989 regarding forum non conveniens and the outstanding motions, for the reasons in the memorandum of this date, it is ORDERED that:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1990 WL 121483 (E.D.Pa.)  
**(Cite as: 1990 WL 121483 (E.D.Pa.))**

Page 8

1. The complaint and counterclaims, as amended, are DISMISSED without prejudice on the basis of forum non conveniens on the condition that:

a. Defendants submit to the jurisdiction of the courts of England.

b. The parties waive any defense based on delay in asserting claims after the date said claims were made in the Eastern District of Pennsylvania.

2. All other outstanding motions are DENIED as moot.

> FN1. Sally Paine is also a citizen of the United Kingdom. Amended Counterclaims ¶ 2.
>
> FN2. The parties dispute who initiated the telephone call. *See* Complaint, ¶ 18; Amended Counterclaims ¶ 27.
>
> FN3. Smith now lives in Milan, Italy, but his Service Agreement appoints an English lawyer to receive process on his behalf. Clause 16, Exhibit B, Defendants' Supplemental Memorandum of Law Regarding Forum Non Conveniens. Therefore, Smith is amenable to process in the English courts.

**Motions, Pleadings and Filings (Back to top)**

. 2:89CV02083  (Docket)  
(Mar. 23, 1989)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.