## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

DAVIS INTERNATIONAL, LLC, HOLDEX,    :
LLC, FOSTON MANAGEMENT, LTD, and    :
OMNI TRUSTHOUSE, LTD,    :
    :
          Plaintiffs,    :
    :
      v.    :    Case No. 04-1482-GMS
    :
NEW START GROUP CORP., VENITOM    :
CORP., PAN-AMERICAN CORP., MDM    :
BANK, URAL-GORNO METALURAGICAL    :
COMPANY, EVRAZ HOLDING, MIKHAIL    :
CHERNOI, OLEG DERIPASKA, ARNOLD    :
KISLIN, MIKHAIL NEKRICH, and    :
ISKANDER MAKMUDOV,    :
    :
          Defendants.    :

------------------------------------------------------------x

# APPENDIX TO DEFENDANTS'
# OPENING BRIEFS IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

## Volume 3 of 13

Attorneys for Defendant Arnold Kislin:

Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

Lisa C. Cohen
Schindler Cohen & Hochman LLP
100 Wall Street
15th Floor
New York, NY 10005
(212) 277-6300

Lawrence S. Goldman
Elizabeth Johnson
The Law Offices of Lawrence S. Goldman
500 Fifth Ave., 29th Floor
New York NY 10110-2900
(212) 997-7499

Attorneys for Defendants New Start Group
Corp. and Venitom Group:

Charles M. Oberly, III (DSBA No. 743)          Richard J. Schaeffer
Karen V. Sullivan (DSBA No. 3872)              Peter J. Venaglia
Oberly, Jennings & Rhodunda, P.A.              Laura D. Sullivan
800 Delaware Avenue, Suite 901                 Dornbush, Schaeffer, Strongin &
PO Box 2054                                    Weinstein, LLP
Wilmington, DE 19899                           747 Third Avenue, 11th Floor
(302) 576-2000                                 New York, NY 10017
                                               (212) 759-3300

Attorneys for Defendant Oleg Deripaska:

Collins J. Seitz, Jr.(DSBA No. 2237)           Rodney F. Page
Kevin F. Brady (DSBA No. 2248)                 Michael G. Biggers
Connolly Bove Lodge & Hutz LLP                 Bryan Cave LLP
1007 North Orange Street                       700 13th Street, N.W.
P.O. Box 2207                                  Washington, D.C. 20005-3960
Wilmington, DE 19899                           (202) 508-6002
(302) 658-9141

Attorneys for Defendant Evraz Holding:

William M. Lafferty (DSBA No. 2755)            David H. Herrington
Morris, Nichols, Arsht & Tunnell               Vitali Rosenfeld
Chase Manhattan Centre, 18th Floor             Cleary Gottlieb Steen & Hamilton LLP
1201 North Market Street                       One Liberty Plaza
P.O. Box 1347                                  New York New York 10006
Wilmington, DE 19899-1347                      (212) 225-2266
(302) 575-7341

Attorneys for Defendant MDM Bank:

Stephen E. Jenkins (DSBA No. 2152)             Joel B. Kleinman
Richard I.G. Jones, Jr. (DSBA No. 3301)        Steven J. Roman
Ashby & Geddes                                 David H. Greenberg
222 Delaware Avenue, 17th Floor                Dickstein Shapiro Morin & Oshinsky LLP
P.O. Box 1150                                  2101 L Street NW
Wilmington, Delaware 19899                     Washington, DC 20037-1526
(302) 654-1888                                 (202) 785-9700

Attorneys for Defendant Ural-Gorno
Metallurgical Company:

Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

William H. Devaney
Heard & O'Toole LLP
405 Lexington Ave, Floor 62
New York, NY 10174
(212) 307-5500

Attorneys for Defendant Iskander
Makmudov:

Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

William H. Devaney
Heard & O'Toole LLP
405 Lexington Ave, Floor 62
New York, NY 10174
(212) 307-5500

Attorneys for Defendant Mikhail Chernoi:

Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

Brian Maas
Cameron Myler
Frankfurt Kurnit Klein & Selz PC
488 Madison Avenue, 9th Floor
New York, NY 10022
(212) 980-0120

Attorneys for Defendant Mikhail Nekrich:

Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

Paul R. Grand
Edward M. Spiro
Morvillo, Abramowitz, Grand, Iason &
Silberberg, P.C.
565 Fifth Avenue
New York, NY 10017
(212) 880-9510

# Table of Contents

| **DOCUMENT** | **PAGE** |
|---|---|
| **VOLUME 1 OF 13:** | |
| Complaint | A-1 |
| *Base Metal Trading v. Russian Alum.*, 253 F. Supp. 2d 681 (S.D.N.Y. 2003) ("*Base Metal Trading*") | A-31 |
| Transcript of Oral Argument before Hon. John G. Koeltl, dated February 10, 2003, in *Base Metal Trading* | A-64 |
| **VOLUME 2 OF 13:** | |
| First Amended Complaint, dated August 3, 2001, filed in *Base Metal Trading* | A-176 |
| **VOLUME 3 OF 13:** | |
| Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss the Amended Complaint, dated September 15, 2002, filed in *Base Metal Trading* | A-295 |
| **VOLUME 4 OF 13:** | |
| Resume of Paul B. Stephan | A-465 |
| List of Paul B. Stephan's "Participation in U.S. Lawsuits" | A-476 |
| Declaration of Paul B. Stephan, dated January 28, 2002, filed in *Base Metal Trading* | A-479 |
| Reply Declaration of Paul B. Stephan, dated October 17, 2002, filed in *Base Metal Trading* | A-514 |
| Complaint filed in *Norex Petroleum Ltd. v. Access Indus.* (LTS) (S.D.N.Y.) | A-535 |
| *Norex Petroleum Ltd. v. Access Indus.*, 304 F. Supp. 2d 570 (S.D.N.Y. 2004) | A-607 |
| Judge Koeltl's written request for submissions prior to oral argument, dated January 29, 2003 | A-622 |
| Defendants' response to Judge Koeltl's Jan. 29th request ("Defendants' Oral Argument Submissions") | A-624 |
| Chronology of GOK-related Russian court decisions | A-625 |
| Map – location of courts | A-651 |
| Chart of Russian Court Decisions | A-652 |

| VOLUME 5 OF 13: | |
|---|---|
| Plaintiffs' response to Judge Koeltl's Jan. 29th request ("Plaintiffs' Oral Argument Submissions") | A-653 |
|    GOK Bankruptcy Litigation Chart | A-654 |
|    Shareholder Litigation Chart | A-660 |
|    Chart – Kozitsin and Kozyrev "Wrongful Conduct" | A-668 |
|    Chart – "Direct Evidence of Corruption" | A-677 |
|    Sergei Zankovsky: Theory and Practice of Bankruptcy | A-684 |
| Defendants' post-oral argument submissions in *Base Metal Trading*, dated February 20, 2003 | A-687 |
|    Letter from Winston & Strawn, dated February 20, 2003 | A-688 |
|    Letter from Hogan & Hartson, dated February 20, 2003 | A-690 |
|    Letter from Dornbush Mensch Mandelstam & Schaeffer, dated February 20, 2003 | A-695 |
|    Defendants' Summary of Contracts | A-698 |
|    Supplemental Declaration of Paul B. Stephan, dated Feb. 19, 2003 | A-705 |
|    Third Declaration of Igor Petrukhin, dated Feb. 20, 2003 | A-713 |
| Plaintiffs' post-oral argument submissions in *Base Metal Trading*, dated February 20, 2003 | A-744 |
|    Letter from Strook Stroock & Lavan, dated February 20, 2003 (with exhibits) | A-745 |
|    Second Declaration and Exhibits of Joseph Traum, dated February 19, 2003 | A-782 |
|    Expert Report of Sergei B. Zaitsev, dated February 19, 2003 (without exhibits) | A-828 |
| **VOLUME 6 OF 13:** | |
| Defendants' post-oral argument submissions in *Base Metal Trading*, dated February 25, 2003 | A-885 |
|    Letter from Winston & Strawn, dated February 25, 2003 (with exhibits) | A-886 |
|    Supplemental Declaration of Paul B. Stephan, dated February 25, 2003 | A-933 |
| Plaintiffs' post-oral argument submissions in *Base Metal Trading*, dated February 25, 2003 | A-941 |

| | |
|---|---|
| Letter from Strook Stroock & Lavan, dated February 25, 2003 (with exhibits) | A-942 |
| Letter from Herrick Feinstein, dated February 25, 2003 | A-986 |
| Second Declaration of Victor Golubev, dated February 25, 2003 (without exhibits) | A-989 |
| Second Declaration of Sergei B. Zaitsev, dated February 25, 2003 (without exhibits) | A-1027 |
| **VOLUME 7 OF 13:** | |
| March 30, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1075 |
| August 22, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1080 |
| April 19, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1092 |
| Application to the Arbitrazh Court for the Sverdlovsk Oblast dated March 24, 2000 filed by Krasnouralskmezhraygaz ("Kras Gas") | A-1112 |
| January 24, 1997 contract between GOK and Kras Gas | A-1130 |
| Letter dated February 4, 2000 from Kras Gas to GOK | A-1146 |
| Letter dated February 15, 2000 from Kras Gas to GOK | A-1157 |
| Letter dated February 8, 2000 from GOK to Kras Gas | A-1170 |
| Letter dated February 21, 2000 from GOK to Kras Gas | A-1175 |
| Federal Service's recommendation to appoint Kozyrev as Interim Trustee | A-1180 |
| Instruction of the Government of the Russian Federation from July 10, 1999 (No. 1100-R) | A-1187 |
| Audit Report and list of GOK's creditors as of March 24, 2000 | A-1191 |
| Minutes of the first GOK creditors' meeting held on August 11, 2000 | A-1245 |
| August 2, 2000 decision of the Izmailovo Inter-Municipal Court of Moscow | A-1266 |
| November 30, 2000 decision of the Moscow City Court | A-1269 |
| **VOLUME 8 OF 13:** | |
| Nexis' appellate complaint | A-1276 |
| January 15, 2001 determination of the Appellate Instance of the Arbitrazh Court for the Sverdlovsk Oblast | A-1306 |
| Nexis' cassation complaint | A-1311 |
| June 7, 2001 decision of the Federal Arbitrazh Court for the Urals Circuit | A-1318 |

| Minutes of the March 11, 2001 creditors' meeting | A-1323 |
|---|---|
| June 27, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1357 |
| August 21, 2001 decision of the Federal Arbitrazh Court for the Urals Circuit | A-1365 |
| August 18, 2000 opinion of the Federal Service | A-1367 |
| August 29, 2000 Nexis petition regarding loan agreement | A-1382 |
| July 26, 1999 supply contract between Nexis and GOK | A-1392 |
| August 29, 2000 Application filed by Nexis regarding supply contract | A-1424 |
| October 4, 2000 letter to Nexis from Trustee Kozyrev | A-1442 |
| March 23, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1445 |
| August 29, 2000 Statement of Claim submitted by Polyprom | A-1452 |
| **VOLUME 9 OF 13:** | |
| Supply agreements between GOK and Polyprom | A-1479 |
| October 4, 2000 letter to Polyprom from Trustee Kozyrev | A-1579 |
| October 31, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1583 |
| February 16, 2001 letter from Trustee Kozyrev to the Arbitrazh Court for the Sverdlovsk Oblast | A-1588 |
| February 19, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1591 |
| April 19, 2001 Resolution of the Appellate Instance of the Arbitrazh Court for the Sverdlovsk Oblast | A-1598 |
| July 12, 2001 determination of the Federal Arbitrazh Court of the Urals District | A-1607 |
| April 18, 2001 decision of the Arbitrazh Court for Sverdlovsk Oblast | A-1613 |
| January 22, 2000 letter from several members of GOK Board of Directors requesting meeting of GOK Board | A-1620 |
| January 24, 2000 letter from several members of GOK Board of Directors requesting meeting of GOK Board | A-1623 |
| February 2, 2000 "Decision Not To Institute Legal Proceedings" of the Senior Assistant Prosecutor for the City of Kachkanar | A-1628 |
| February 1, 2000 ruling of the Kachkanar City Court for the Sverdlovsk Oblast | A-1635 |
| February 15, 2000 decision of the Arbitrazh Court for the Sverdlovsk | A-1649 |

| Oblast | |
|---|---|
| March 8, 2001 decision by the Moscow City Court | A-1657 |
| September 19, 2000 decision of the Meshchansky Inter-Municipal Regional Court of Moscow | A-1667 |
| **VOLUME 10 OF 13:** | |
| March 26, 2001 decision of the Moscow City Court | A-1676 |
| November 21, 2000 decision of the Tverskoy Inter-Municipal Regional Court of Moscow | A-1683 |
| February 22, 2001 decision of the Appellate Instance of the Federal Arbitrazh Court of Moscow | A-1691 |
| November 16, 2000 decision of the Arbitrazh Court of Moscow | A-1698 |
| April 26, 2001 decision of the Federal Arbitrazh Court of the Moscow Circuit | A-1706 |
| December 13, 2000 decision of the Perovsky Inter-Municipal Regional Court of Moscow | A-1712 |
| Davis Complaint filed in Moscow before the Gagarinsky Inter-Municipal Court of Moscow | A-1728 |
| April 10, 2000 decision of the Perovsky Inter-Municipal Regional Court of Moscow | A-1737 |
| September 25, 2000 decision of the Perovsky Inter-Municipal Regional Court of Moscow | A-1747 |
| October 26, 2000 decision of the Moscow City Court | A-1752 |
| September 17, 2001 decision of the Gagarinsky Inter-Municipal Court of Moscow | A-1758 |
| May 30, 2000 decision of the Tverskoy Inter-Municipal Regional Court | A-1761 |
| February 7, 2000 decision of the Tverskoy Inter-Municipal Court of Moscow | A-1765 |
| December 22, 2000 decision of the Gagarinsky Inter-Municipal Court of Moscow | A-1768 |
| February 14, 2000 decsion of the Cheryomoushkinsky Inter-Municipal Court of Moscow | A-1774 |
| March 2, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1779 |
| September 4, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1784 |
| August 14, 2000, decision of the Kachkanar City Court of the Sverdlovsk Oblast | A-1790 |

| | |
|---|---|
| February 15, 2000 decision of the Kachkanar City Court | A-1797 |
| February 29, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1801 |
| March 6, 2001 decision of the Moscow City Court | A-1806 |
| April 5, 2000 decision of the Meshchansky Inter-Municipal Regional Court of Moscow | A-1814 |
| June 22, 2001 decision of the Tverskoy Inter-Municipal Regional Court of Moscow | A-1827 |
| Two Notices of registrar change published in the *Oblastnaya gazeta* on, respectively, March 17, 2000 and October 21, 2000 | A-1832 |
| March 20, 2001 decision by the Arbitrazh Court of Moscow | A-1839 |
| June 26, 2001 decision of Appellate Instance of the Arbitrazh Court of Moscow | A-1846 |
| **VOLUME 11 OF 13:** | |
| September 5, 2001 decision of the Federal Arbitrazh court of the Moscow Circuit | A-1852 |
| December 20, 2000 decision of the Petrogradsky Regional Court of St. Petersburg | A-1859 |
| January 12, 2001 decision of the Petrogradsky Regional Court of St. Petersburg | A-1864 |
| March 13, 2001 decision of Izmailovsky Regional Court of Moscow | A-1871 |
| March 13, 2001 decision of Izmailovsky Regional Court of Moscow | A-1874 |
| August 27, 2001 decision of the Chertanovo Federal Court | A-1877 |
| Agreement between GOK and Polyprom dated January 18, 1999 | A-1880 |
| November 22, 2000 decision of the Arbitrazh Court of the Republic of Kalmykia | A-1884 |
| April 17, 2001 decision of the Arbitrazh Court for the North Caucasus Region | A-1895 |
| July 5, 2001 decision of the Arbitrazh Court for the Republic of Kalmykia | A-1904 |
| November 9, 2001 decision of the Appellate Instance of the Arbitrazh Court for the Republic of Kalmykia | A-1910 |
| September 10, 2001 decision of the Arbitrazh Court for the Republic of Kalmykia | A-1919 |
| August 1, 2000 decision of the Arbitrazh Court for the Chelyabinsk Region | A-1924 |

| | |
|---|---|
| October 16, 2000 decision of the Appellate Instance for the Arbitrazh Court for the Chelyabinsk Region | A-1942 |
| January 4, 2001 decision of the Arbitrazh Court for Urals Circuit | A-1952 |
| September 29, 2000 decision of the Solntsevsky Inter-Municipal Regional Court of Moscow | A-1960 |
| March 30, 2001 decision of the Moscow City Court | A-1970 |
| November 30, 2001 decision of the Solntsevsky Inter-Municipal Regional Court of Moscow | A-1980 |
| Agreement between New Start Group, Corp. and Davis dated October 6, 2000 | A-1995 |
| Eugene Aschenbrenner's Power of Attorney to act on behalf of Davis (valid December 3, 1999 through December 3, 2000) | A-2002 |
| Nexis Loan Agreement dated July 13, 1999 | A-2010 |
| March 23, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2020 |
| July 13, 2000 decision of the Meshchansky Inter-Municipal Regional Court of Moscow | A-2027 |
| Republic of Panama v. BCCI Holdings (Luxemborg) S.A., 90-2913-CV-UUB, slip.op. (S.D. Fla. July 17, 1995) | A-2033 |
| **VOLUME 12 OF 13** | |
| October 29, 2001 decision of the Federal Arbitrazh Court for the Urals Circuit | A-2053 |
| November 24, 2001 Opinion of the Department of the Interior of the Sverdlovsk Region | A-2060 |
| January 21, 2002 decision of the Federal Arbitrazh Court for the North Caucasus Circuit | A-2084 |
| March 12, 2002 decision of the Arbitrazh Court for the Republic of Kalmykia | A-2094 |
| April 23, 2002 decision of the Federal Arbitrazh Court for the North Caucasus Circuit | A-2105 |
| April 30, 2002 decision of the Kachkanar Town Court for the Sverdlovsk Oblast | A-2108 |
| September 24, 2002 decision of the Kachkanar Town Court for the Sverdlovsk Oblast | A-2121 |
| November 19, 2002 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2126 |

| | |
|---|---|
| January 22, 2003 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2133 |
| February 4, 2003 decision of the Appellate Instance for the Arbitrazh Court for the Republic of Kalmykia | A-2143 |
| May 20, 2003 decision of the Federal Arbitrazh Court for the North Caucasus Region | A-2150 |
| May 27, 2003 decision of the Appellate Instance of the Arbitrazh Court for the Sverdlovsk Oblast | A-2159 |
| August 27, 2003 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2165 |
| October 30, 2003 decision of the Moscow Municipal Court | A-2170 |
| January 14, 2004 decision of the Federal Arbitrazh Court for the Urals Circuit | A-2176 |
| April 20, 2004 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2187 |
| **VOLUME 13 OF 13** | |
| April 27, 2004 decision of the Arbitrazh Court for the Republic of Kalmykia | A-2197 |
| July 2, 2004 decision of the Moscow City Court | A-2205 |
| July 29, 2004 decision of the Federal Arbitrazh Court for the Urals Circuit | A-2212 |
| December 7, 2004 decision of the Moscow City Court | A-2221 |
| September 18, 2001 decision of the Sverdlovsk Arbitrazh Court | A-2224 |
| December 20, 2001 decision of the Urals Circuit | A-2238 |
| May 22, 2002 decision of the Moscow City Court | A-2246 |
| August 22, 2002 decision of the Moscow City Court | A-2256 |
| September 10, 2002 decision of the Kalmykia Court | A-2269 |
| May 22, 2003 decision of the Sverdlovsk Arbitrazh Court | A-2277 |
| August 13, 2003 decision of the Solntsevsky Court | A-2283 |
| March 3, 2004 decision of the Sverdlovsk Arbitrazh Court | A-2289 |
| March 31, 2004 report issued by Russian Ministry of Internal Affairs | A-2294 |
| Declaration of Tatiana Yastrebova, dated September 16, 2002, filed in *Base Metal Trading* (without exhibits) | A-2314 |
| July 2, 2002 decision of the North Caucasus Circuit | A-2344 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

BASE METAL TRADING, SA, et al.,                    :

                   Plaintiffs,            :      Docket No. 00 CIV. 9627 (JGK)

       -against-                                  :

RUSSIAN ALUMINUM, et al.,                          :

                  Defendants.           :

- - - - - - - - - - - - - - - - - - - - - - - - - - X

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENEDED COMPLAINT

STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York  10038
(212) 806-5400

MARKS & SOKOLOV, LLC
Eleven Penn Center
1835 Market Street, 28th Floor
Philadelphia, PA  19103
(215) 569-8901

*Attorneys for the Aluminum Plaintiffs and MIKOM*

HERRICK FEINSTEIN LLP
Two Park Avenue
New York, New York  10016
(212) 592-1400

*Attorneys for the Davis and GOK Plaintiffs*

A - 295

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ix

PRELIMINARY STATEMENT ..................................................................... 1

The Harm Suffered by US Citizens as a Result of
Criminal Acts in the US Perpetrated by US Citizens ........................................ 1

Defendants Corrupted Court Proceedings in Russia ........................................ 3

STATEMENT OF FACTS ................................................................................ 5

    A. Introduction and Overview of the Parties ................................................ 5

        1. The Aluminum Plaintiffs ....................................................................... 5

        2. The Vanadium Plaintiffs ....................................................................... 6

        3. The Defendants ..................................................................................... 6

    B. Background to the Takeovers of NKAZ and GOK: Defendants Consolidate
       Control Over the Aluminum Industry .................................................... 7

        1. The SAZ Takeover ................................................................................ 8

        2. The KRAZ Takeover ............................................................................ 8

        3. The BRAZ Takeover ............................................................................ 9

    C. The NKAZ Takeover ................................................................................. 9

        1. The Initial Extortion and Use of the Wires Through Banks in the US
           To Launder the Proceeds of this Criminal Activity .......................... 9

        2. The Murder of An American Citizen, the Extortion in Chicago and Subsequent
           Extortion Payments Made by Wire Through Banks in the US ......................... 10

        3. Defendants Recruit Kuzbass to Pressure the Aluminum Plaintiffs ................ 11

        4. Defendants Enlist the Assistance of Regional Governor Tuleyev and Coordinate
           the Wiring of Bribe Payments through US Entities ......................... 12

        5. Kuzbass Files False Energy Claims .................................................... 13

        6. The Sham NKAZ Bankruptcy Petitions ............................................ 15

        7. The Appointment of Chernyshev as Acting Manager ....................... 16

8. Chernyshev Solidifies Control Over the NKAZ Bankruptcy.............................17

9. The Arrest of NKAZ Metal in the US and the Filing of False Criminal
   Charges Against M. Zhivilo ...............................................................................18

10. Defendants Turn Against Kuzbass and Chernyshev Recognizes Additional
    False Creditor Claims.......................................................................................19

11. Defendants Purchase Control of NKAZ and Force a Sham Settlement of
    the NKAZ Bankruptcy .....................................................................................20

12. Chernyshev's False Affidavit and Kuzbass's Lawsuit Against Chernyshev ................20

D. The GOK Takeover...................................................................................................22

    1. The Initial Extortion of Khaidarov and GOK ..................................................22

    2. Defendants Bribe Regional Governor Roussel .................................................23

    3. The Physical Takeover of GOK and the Extortion of Khaidarov and the
       Board of Directors............................................................................................23

    4. The GOK Shareholders Fight the Illegal Takeover and Malevesky's
       Final Threat to Khaidarov ...............................................................................24

    5. The Conspirators Create False GOK Debt and Lay the Groundwork for
       Another Sham Bankruptcy...............................................................................25

    6. The Sham GOK Bankruptcy ............................................................................26

    7. The Fraudulent Transfer of the Vanadium Shareholders' Shares.......................27

    8. The Sham Settlement of the GOK Bankruptcy.................................................28

    9. Defendants Arrange for False Criminal Charges to Be Filed Against
       Khaidarov and Drugs To Be Planted On Traum ...............................................28

I

This Court Has Jurisdiction Over Plaintiffs' RICO Claims Because
Defendants Engaged in a Pattern of Racketeering Activity in the US
and Defendants' Illegal Activities Involved Substantial Conduct in, and
Had a Substantial Effect Upon, the US..................................................................................29

A. Without the Benefit of Jurisdictional Discovery, Plaintiffs Need Only
   Make a Prima Facie Showing of Jurisdiction ........................................................29

B. This Court Has Jurisdiction over Plaintiffs' RICO Claims Because
   Defendants Engaged in a Pattern of Racketeering Activity in the US....................30

A - 297

1. Defendants Engaged in a Pattern of Racketeering Activity in The US.............................33

   a. Defendants' Predicate Acts of Mail and Wire Fraud Occurred in the US ................33

   b. Defendants' Money Laundering Occurred in the US....................................................36

   c. Defendants' Illegal Transactions in Monetary Instruments Occurred in the US.........38

   d. Defendants' Violations of the Hobbs Act Occurred in the US ....................................39

   e. Defendants' Violations of the Travel Act Occurred in the US ...................................42

C. Alternatively, Plaintiffs Satisfy Either the Cause or Effect Tests for
Establishing Extraterritorial Jurisdiction .................................................................43

   1. Defendants Engaged in Conduct in the US that was Material to
   their Overall Racketeering Scheme.....................................................................43

   2. Defendants' Overseas Racketeering Activity Had a Substantial
   Effect on Commerce in the US .........................................................................45

D. Regardless of the Test, at this Stage of the Litigation, Under the Deferential
Standards that Apply Where Plaintiffs Have Not Obtained Any Discovery,
This Court Can Assert Jurisdiction.....................................................................47

II

This Action Should Not Be Dismissed on the Ground of Forum Non
Conveniens Because Plaintiffs Cannot Obtain Justice in Russia and
this Action Involves Substantial US Conduct.....................................................................48

A. This Court Should Apply a Summary Judgment Standard to Defendants'
Forum Non Motion ...........................................................................................50

B. This Court Should Not Deviate From the Normal Rule of Deference To
Plaintiffs' Choice of Forum ...............................................................................52

C. Defendants Have Not Met Their Burden of Proving that Russia is an
Adequate Forum for this Litigation ...................................................................55

   1. Corruption is a Valid Basis for Finding a Foreign Forum Inadequate............................55

   2. The Russian Judicial System Can Be Influenced by Corruption and
   Defendants Have Engaged in Specific Acts of Corruption.............................................60

      a. General Evidence of Corruption .................................................................60

iii

    i. Valery Grishkovets and Sergey Alexeevich Kuznetsov Provide Direct Evidence that Governor Tuleyev Regularly Corrupted Judicial Proceedings ................................................................................60

    ii. Professor Ethan Burger Provides Substantial Evidence of the General Corruption Problems that Permeate the Russian Judiciary ....................64

        (a) Statements by Russian President Putin and Other Top Russian Government Officials....................................................................................65

        (b) State Department Reports...........................................................................67

        (c) Scholarly Articles and Studies....................................................................67

  b. Fact and Expert Evidence that Defendants Corrupted the NKAZ Bankruptcy Proceedings................................................................................68

    i. Igor Rekhovsky and Jalol Khaidarov Detail the Corruption of the NKAZ Bankruptcy Proceedings...................................................................68

    ii. Expert Opinions of Professors Golubev and Burger Offer Multiple Instances of Specific Corruption in the NKAZ Bankruptcy .................................72

  c. Fact and Expert Evidence that Defendants Corrupted the GOK Bankruptcy Proceedings................................................................................77

    i. Fact Witness Statements ..................................................................................77

    ii. Expert Witness Statements ..............................................................................80

  d. Fact and Expert Evidence Concerning the GOK Shareholders Proceedings..............83

    i. Fact Witness Statements ..................................................................................83

    ii. Expert Witness Statement................................................................................84

  e. Defendants' Expert Arguments Concerning the Alleged Fairness of the Russian Judiciary are Conclusory and Without Merit................................................85

  f. Defendant Russian Aluminum's Admission Concerning Corruption in the Russian Courts ....................................................................................86

3. Russia is an Inadequate Forum for this Litigation Because it Does not Allow for Sufficient Discovery And Parties Cannot Compel the Testimony of Witnesses and Engage in Cross-Examination .............................................88

D. Defendants Have Not Met Their Burden of Proof that Litigation in New York Would Be Oppressive and Vexatious Out of All Proportion to Plaintiff's Convenience ....................................................................................90

1. Defendants Have Not Established that the Private Interest Factors
   Strongly Favor Dismissal to Russia ....................................................................90

   a. Defendants Have Not Met Their Burden of Showing Access to
      Sources of Proof Would Be Easier In Russia...........................................90

   b. Defendants Have Not Met Their Burden of Proving Inconvenience
      to Witnesses Should This Case Remain in the US.....................................95

   c. Defendants Have Not Met Their Burden of Showing that Any Other
      Private Interest Favors Adjudication of this Dispute in Russia ..................100

2. Defendants Have Not Met Their Burden That The Public Interest Factors
   Favor A Dismissal of this Lawsuit to Russia ....................................................101

   a. There Is No Backlog or Other Administrative Impediment to Trying
      This Case in New York ............................................................................101

   b. The US Has a Strong Interest in Protecting Its Citizens From Criminal
      Conduct and Preventing America from Being Used as a Base For
      Criminal Conduct and There Is, Therefore, No Unfairness in Asking a
      New York Jury to Resolve this Dispute ....................................................102

   c. US Law Governs this RICO Litigation and the Issues Involving
      Russian Law Do Not Pose Such an Insurmountable Burden So
      as to Warrant Dismissal ..........................................................................104

III

The Complaint Should Not Be Dismissed on Comity Grounds
Because the Judgments Defendants Rely Upon Were Obtained by
Fraud and the Principles of Collateral Estoppel and Res Judicata
Implicated by Their Motion Either Do Not Apply or Have Not Been Satisfied................................106

   A. This Motion Cannot Be Resolved at this Stage Because Plaintiffs' Allegations
      of Fraud and Corruption Must be Accepted as True, or, Alternatively,
      Because Plaintiffs Raise Disputed Issues of Fact Regarding these Matters .........................106

   B. This Court Should Not Extend Comity to the Decisions of the Russian
      Courts Because Those Decisions Were Procured by Fraud in an Unfair
      System and to Do So Would be Contrary to US Interests ....................................................108

      1. The Russian Judicial System Is Not Fair and Impartial ..................................................109

      2. The Russian Proceedings Were Permeated With Fraud ....................................................109

      3. Recognition of the Russian Judgments Would Be Contrary to the
         Interests of the US ....................................................................................................110

v

C. The Res Judicata and Collateral Estoppel Branch of the Comity
Doctrine Either Does Not Apply or Has Not Been Satisfied ................................ 111

1. These Defenses Cannot Be Resolved at this Stage of the Proceedings
Because Plaintiffs Allege that the Judgments Were Procured by Fraud
in Corrupted Courts ..................................................................................... 112

2. Defendants' Comity Motion Should be Denied Because Russian Law
Applies and Defendants Have Failed to Offer any Evidence of the
Applicable Russian Law .............................................................................. 113

   a. Plaintiffs' Claims Are Not Barred Under the Russian Russian Law
   of Res Judicata Because the Parties to this Litigation Were Not the
   Parties to the Russian Litigations .............................................................. 114

      i. BMT SA's, BMT LTD.'s, and ALUCOAL's Claims .......................... 115

      ii. MIKOM's Claims .............................................................................. 116

      iii. The Vanadium Plaintiffs' Claims ...................................................... 116

3. Even if US Law Applies, Neither Res Judicata nor Collateral Estoppel
Applies Because the Parties Are Not Identical, Plaintiffs Did Not Litigate
Many of the Issues Raised Here and the Russian System Did Not Provide
for a Full and Fair Opportunity to Resolve the Claims ................................ 116

   a. Plaintiffs Did Not Have a Full and Fair Opportunity to Litigate in
   Russia Because of the Inadequate Russian Judicial System and the
   Fraud Perpetrated by Defendants .............................................................. 117

   b. Plaintiffs Did Not Actually Litigate Many of the Issues Raised by
   Defendants, and to the Extent Litigated, the Russian System Did
   Not Provide for Appellate Review .............................................................. 118

   c. The Parties are Not Identical .................................................................. 119

D. This Court Should Not Defer to the Pending Proceedings Related to the
Vanadium Shareholder Plaintiffs ....................................................................... 120

1. This Court Should Not Depart from the General Rule that Permits Parallel
Proceedings in Different Forums ................................................................. 120

2. None of the Current Defendants Is a Party to the Pending Proceedings ........... 121

3. This Court Should Not Defer to the Pending Proceedings Because
Defendants Have Already Corrupted these Proceedings ................................ 121

SSL-DOCS2 70079072v1

IV

Plaintiffs Have Standing to Assert their RICO Claims ................................................................122

   A. Predicate Acts Occurring Outside the US Are Sufficient to Confer Standing......................122

   B. Plaintiffs Allege a Direct Relationship Between the RICO Violations
      and their Injuries. ..............................................................................................................124

V

Plaintiffs Satisfy Their Pleading Obligations Because the Complaint Is
More than Sufficiently Detailed and Because RICO's Pleading Elements
Have Been Specifically Alleged .................................................................................................126

   A. The Complaint Provides More than Sufficient Detail to Satisfy
      Rule 9(b)'s Pleading Requirements .....................................................................................126

      1. Plaintiffs Have Not Engaged in Impermissible Group Pleading .......................................127

         a. Plaintiffs' Specific Allegations of Fraud Apprise Each Defendant
            of its Role in the Scheme ...........................................................................................127

         b. The Complaint Pleads Fraud with Sufficient Particularity Because
            Information Describing the Exact Parameters of the Fraud is in
            Defendants' Exclusive Possession ..............................................................................131

      2. Plaintiffs' Allegations of Mail and Wire Fraud Satisfy Rule 9(b)
         Because They Provide Detailed Accounts of Defendants' Fraudulent Scheme...............134

   B. The Complaint Adequately States Violations of the Racketeer Influenced
      Corrupt Organizations Act...................................................................................................138

      1. Plaintiffs Properly Allege Defendants' Pattern of Racketeering Activity .........................139

      2. Defendants Violated 18 U.S.C. § 1962(c) Because They All
         Participated in a Pattern of Racketeering Activity ..........................................................140

         a. Plaintiffs Adequately Distinguish Defendants from the
            Enterprises in which They Participated.....................................................................140

         b. The Metals Enterprise is Adequately Pled.................................................................144

         c. Plaintiffs Satisfy the Reeves Operation and Management Test ..................................145

      3. Plaintiffs Adequately Plead a Violation of 18 U.S.C. § 1962(b) Because
         Defendants Acquired and Maintained Enterprises through Racketeering Activity .........146

SSL-DOCS2 70079072v1

4. Plaintiffs Adequately Plead a Violation of 18 U.S.C. § 1962(a)
Because Defendants Injured Plaintiffs by Investing Racketeering
Income in Various Enterprises .......................................................................................147

5. Plaintiffs Adequately Plead a Violation of 18 U.S.C. § 1962(d)
Because Defendants Conspired to Violate the RICO Statute.............................................149

C. If Plaintiffs Have Not Adequately Pled Violations of the RICO Statute,
or Have not Complied with Rule 9(b), Plaintiffs Should be Given
Leave to Replead ...............................................................................................................149

CONCLUSION .............................................................................................................................151

## TABLE OF AUTHORITIES

### CASES

AXA Marine & Aviation Insurance (UK) Ltd. v. Seajet Industrial Inc.,
    84 F.3d 622 (2d Cir. 1996)....................................................................................................90

Agency Holding Corp. v. Malley-Duff & Asscociates, Inc.,
    483 U.S.143 (1987)..............................................................................................................33

Aguinda v. Texaco, Inc., 2002 WL 1880105, at 6.........................................................................61

Alesayi Beverage Corp. v. Canada Dry Corp.,
    947 F. Supp. 658 (S.D.N.Y. 1996) ........................................111, 112, 114, 119

Alfaada v. Fenn,
    935 F.2d 475 (2d Cir. 1991)...........................................33, 34, 35, 114, 115

Alfadda v. Fenn,
    966 F. Supp. 1317 (S.D.N.Y. 1997)..................................................114, 115, 119

Allstate Insurance Co. v. Administratia Asigurarilor de Stat,
    962 F. Supp. 420 (S.D.N.Y. 1997) ..........................................................109, 115

Allstate Life Insurance Co. v. Linter Group Ltd.,
    782 F. Supp. 215 (S.D.N.Y. 1992) ........................................................................96

Allstate Life Insurance Co. v. Linter Group Ltd.,
    994 F.2d 996 (2d Cir. 1993)..................................................................109, 111

Alnwick v. European Micro Holdings, Inc.,
    No. 01-754829, 2002 WL 407940 (2d Cir. Mar 15, 2002)...............................105

In re American President Lines, Ltd.,
    890 F. Supp. 308 (S.D.N.Y. 1995) ........................................................54, 107

American Protein Corp. v. AB Volvo,
    844 F.2d 56 (2d Cir. 1988)....................................................................................54

In re Application of Chase Manhattan Bank,
    191 F. Supp. 206 (S.D.N.Y. 1961), aff'd, 297 F.2d 611 (2d Cir. 1962) .........................114

Asdourian v. Konstantin,
    77 F. Supp. 2d 349 (E.D.N.Y. 1999) ..............................................................134

A - 304

Atlantic Gypsum Co., Inc. v. Lloyds International Corp.,
    753 F. Supp. 505 (S.D.N.Y. 1990) ...................................................................140

B.V. Optische Industrie de Oude Delft v. Hologic, Inc.,
    909 F. Supp. 162 (S.D.N.Y. 1995) .................................................................140

Bank Brussels Lambert, No. 93 Civ. 6876 (LMM), 2000 WL 1694322 .....................................151

Bank of Credit and Commerce International (Overseas) Ltd. v. State Bank of Pakistan,
    273 F.3d 241 (2d Cir. 2001)...........................................................................58

Bank of Crete v. Koskotas,
    No. 88 Civ. 8412 (KMW), 1991 WL 177287 (S.D.N.Y. Aug. 30, 1991) .................35, 152

Bersch v. Drexel Firestone, Inc.,
    519 F.2d 974 (2d Cir. 1975).............................................................................50

Blanco v. Banco Industrial de Venezuela, S.A.,
    997 F.2d 974 (2d Cir. 1993).............................................................................58

In re Bridgestone/Firestone, Inc.,
    190 F. Supp. 2d 1125 (S.D. Ind. 2002) .............................................................98

Bridgeway Corp. v. Citibank,
    45 F. Supp. 2d 276 (S.D.N.Y. 1999)..............................................62, 64, 110, 112

Bridgeway Corp. v. Citibank,
    201 F.3d 134 (2d Cir. 2000)...............................................................61, 62, 69

Butala v. Agashiwala,
    No. 95 Civ. 936 (JGK), 1997 WL 79845 (S.D.N.Y. Feb. 24, 1997) ...............................152

C.A. Westel de Venezuela v. American Telephone and Telegraph Co.,
    No. 90 Civ. 6665 (PKL), 1992 WL 209641 (S.D.N.Y. Aug. 17, 1992)......34, 98, 140, 150

Cabiri v. Assasie-Gyimah,
    921 F. Supp. 1189 (S.D.N.Y. 1996)..................................................................98

Calavo Growers of California v. General Belgium,
    632 F.2d 963 (2d Cir. 1980)......................................................................96, 104

Calzaturificio Rangoni S.p.A. v. US Shoe Corp.,
    868 F. Supp. 1414 (S.D.N.Y. 1994)................................................................121

Chanayil v. Gulati,
    169 F.3d 168 (2d Cir. 1999)............................................................................42

x

China Trade & Development Corp. v. M.V. Choong Yong,
    837 F.2d 33 (2d Cir. 1987).................................................................................123

In re Circle Trading Corp.,
    26 F.2d 193 (2d Cir. 1928)................................................................................117

Cohen v. Koenig,
    25 F.3d 116 (2d Cir. 1994)................................................................................141

Colorado River Water Cons. District v. United States,
    424 U.S. 800 (1976)...........................................................................................52

Continental Grain Export v. Ministry of War-Etka,
    603 F. Supp. 724 (S.D.N.Y. 1984) ..................................................................121

Cosmas v. Hassett,
    886 F.2d 8 (2d Cir. 1989)................................................................................140

Cromer Finance Ltd. v. Berger,
    158 F. Supp. 2d 347 (S.D.N.Y. 2001).......................................................102, 104

DiRenzo v. Philip Services Corp.,
    294 F.3d 21 (2d Cir. 2002)...........................................................................96, 97

DiVittorio v. Equidyne Extractive Industries, Inc.,
    822 F.2d 1242 (2d Cir 1987)......................................................................130, 134

Diorinou v. Mezitis,
    237 F.3d, 133 (2d Cir. 2001)............................................................112, 113, 114

Eastman Kodak Co. v. Kavlin,
    978 F. Supp. 1078 (S.D. Fla. 1997) ................................54, 58, 59, 60, 62, 63, 64

Equal Employment Opportunity Commission v. New Cherokee Corp.,
    829 F. Supp. 73 (S.D.N.Y. 1993) .....................................................................54

Festa v. Local 3 International Brotherhood of Electrical Workers,
    905 F.2d 35 (2d Cir.1990).................................................................................141

Finanz AG Zurich v. Banco Economico S.A.,
    192 F.3d 240 (2d Cir. 1999).......................................................................111, 113

First Interregional Advisors Corp. v. Wolff,
    956 F. Supp. 480 (S.D.N.Y. 1997) .........................................................134, 138, 150

SSL-DOCS2 70070518vTOA

A - 306

Fitzgerald v. Texaco, Inc.,
    521 F.2d 448 (2d Cir. 1975)..................................................................................96

Friedman v. Hartman,
    No 91 Civ. 1523 (PKL), 1994 WL 376058 (S.D.N.Y. July, 15, 1994) ...........................148

GICC Capital Corp. v. Technology Finance Group, Inc.,
    67 F.3d 463 (2d Cir.).............................................................................................42

Gleason v. Jandrucko,
    860 F.2d 556 (2d Cir. 1988)..................................................................................112

Gordon and Breach Sci. Publishers S.A. v. America Institute of Physics,
    905 F. Supp. 169 (S.D.N.Y. 1995) ...............................................................115, 119

Grunwald v. Bornfreund,
    668 F. Supp. 128 (E.D.N.Y. 1987) .........................................................................134

Guidi v. Inter-Continental Hotels Corp.,
    224 F.3d 142 (2d Cir. 2000)....................................................................................98

Gulf Oil v. Gilbert,
    330 U.S. 501 (1947)..........................................7, 52, 55, 58, 93, 95, 98, 104, 105

Hatzlachh Supply Inc. v. Tradewind Airways Ltd.,
    659 F. Supp. 112 (S.D.N.Y. 1987) ..........................................................................97

Hecht v. Commercial Clearing House, Inc.,
    897 F.2d 21 (2d Cir. 1990)...........................................................................126, 129

Herbstein v. Bruetman,
    743 F. Supp. 184 (S.D.N.Y. 1990) .............................................95, 104, 105, 123, 124

Hilton v. Guyot,
    159 U.S.113 (1895)....................................................................110, 111, 112, 113

Holmes v. Security Investor Prot. Corp.,
    503 U.S. 258 (1992)...................................................................................126, 128

Horsehead Resource Development Co. v. B.U.S. Environmental Services, Inc.,
    928 F. Supp. 287 (S.D.N.Y. 1996) ...........................................................................54

Iragorri v. United Technologies Corp.,
    274 F.3d 65 (2d Cir. 2001).............................................................................55, 56, 58, 98

SSL-DOCS2 70070518vTOA

A - 307

Jackson v. First Federal Savings of Arkansas,
    709 F. Supp. 863 (E.D. Ark. 1988) ................................................................................136

Jacobson v. Cooper,
    882 F.2d 717 (2d Cir. 1989) ......................................................................................144

Johnson Electric North America v. Mabuchi Motor America Corp.,
    98 F. Supp. 2d 480 (S.D.N.Y. 2000) ...................................................................35, 48

Jota v. Texaco, Inc.,
    157 F.3d 153 (2d Cir. 1998) ........................................................................................63

Koster v. (American) Lumbermens Mutual Casualty Co.,
    330 U.S. 518 (1947) ....................................................................................52, 56, 97

Kovian v. Fulton County National Bank and Trust Co.,
    No. 86-CV-154, 1990 WL 36809 (N.D.N.Y. March 28, 1990) ........................................57

Kruman v. Christie's International PLC,
    129 F. Supp. 2d 620 (S.D.N.Y. 2001) ...........................................................................50

Kruman v. Christie's International PLC,
    284 F.3d 384 (2d Cir. 2002) .......................................................................................50

Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.,
    191 F.3d 229 (2d Cir. 1999), cert. denied, 528 U.S. 1080(2000) ...........................126, 128

Lacey v. Cessna Aircraft Co.,
    932 F.2d 170 (3d Cir. 1991) ........................................................................................91

Leon v. Millon Air, Inc.,
    251 F.3d 1305 (11th Cir. 2001) ............................................................60, 61, 62, 63, 64

London v. Polishook,
    189 F.3d 196 (2d Cir. 1999) ........................................................................................54

Luce v. Edelstein,
    802 F.2d 49 (2d Cir. 1986) ..........................................................................134, 136, 152

Madanes v. Madanes,
    981 F. Supp. 241 (S.D.N.Y. 1997) ...............................................................................47

Manela v. Garantia Banking Ltd.,
    940 F. Supp. 584 (S.D.N.Y. 1996) ..........................................................................91, 97

A - 308

Manela v. Gottlieb,
    784 F. Supp. 84 (S.D.N.Y. 1992) ................................................................140

Manu International, S.A. v. Avon Products, Inc.,
    641 F.2d 62 (2d Cir. 1981)..........................................................................96

Mastercard Int'l Inc. v. Argencard Sociedad Anonima,
    No. 01 Civ. 3027 (JGK), 2002 WL 432379 (S.D.N.Y. March 20, 2002).................. passim

Mata v. American Life Insurance Co.,
    771 F. Supp. 1375 (D. Del. 1991), aff'd, 961 F.2d 208 (3d Cir. 1992)............................112

McCain v. Phoenix Resources, Inc.,
    No. 84 Civ. 0901 (SWK), 1989 WL 146212 (S.D.N.Y. Nov. 17 1989)..........................149

McLaughlin v. Anderson,
    962 F.2d 187 (2d. Cir. 1992)......................................................................129

Mezzonen v. Wright,
    No 97 Civ. 9380 (LLM), 1999 WL 1037866 (S.D.N.Y. Nov. 16, 1999) ................. passim

Monegasque de Reassurances S.A.M. v. NAK Naftogaz of Ukraine,
    158 F. Supp. 2d 377 (S.D.N.Y. 2001)..........................................................63

Needham v. Phillips Petroleum Co. of Norway,
    719 F.2d 1481 (10th Cir. 1983) ...................................................................52

North South Finance Corp. v. Al-Turki,
    100 F.3d 1046 (2d Cir. 1998)..........................................................34, 46, 48, 50

Official Publications, Inc. v. Kable News Co.,
    884 F.2d 664 (2d. Cir. 1989).......................................................................152

Ouaknine v. MacFarlane,
    897 F.2d 75 (2d Cir 1990)......................................................................150, 151

Overseas Programming Cos. Ltd. v. Cinematographische Commerz-Anstalt,
    684 F.2d 232 (2d Cir. 1982)........................................................................95

P&P Marketing, Inc. v. Ditton,
    746 F. Supp. 1354 (N.D. Ill. 1990) ..............................................................134

Pahmer v. Greenberg,
    926 F. Supp. 287 (E.D.N.Y. 1996) ..............................................................151

SSL-DOCS2 70070518vTOA

A - 309

Parklane Hosiery Co. v. Shore,
    439 U.S. 322 (1979).................................................................................................120

Pavlov v. Bank of New York,
    135 F. Supp. 2d 426 (S.D.N.Y.), vacated and remanded, No. 01-7434, 2002 WL
    63576 (2d Cir. Jan. 14, 2002) ...............................................................62, 63, 97

Pellman v. Cinerama, Inc.,
    503 F. Supp. 107 (S.D.N.Y. 1980) ........................................................................130

Peregrine Myanmar Ltd. v. Segal,
    89 F.3d 41 (2d Cir. 1996)......................................................................................108

Pereira v. United States,
    347 U.S. 1 (1954)...................................................................................................137

Piper Aircraft Co. v. Reyno,
    454 U.S. 235 (1981)...........................................................................52, 56, 58, 63, 93

Pravin Banker Associate, Ltd. v. Banco Popular Del Peru,
    109 F.3d 850 (2d Cir. 1997)............................................................................110, 113

Psimenos v. E.F. Hutton Corp.,
    722 F.2d 1041 (2d Cir. 1983)..................................................................................47

Quackenbush v. Allstate Insurance Co.,
    517 U.S. 706 (1996).................................................................................................52

RCM Executive Gallery Corp. v Rols Capital Co.,
    No. 93 Civ. 8571 (JGK), 1997 WL 27059 (S.D.N.Y. Jan. 23, 1997)..............144, 145, 148

Rasoulzadeh v. Associated Press,
    574 F. Supp. 854 (S.D.N.Y. 1983) ..........................................................................98

Reeves v. Ernst & Young,
    507 U.S. 170 (1993).......................................................................................147, 148

Republic of Philippines v. Marcos,
    818 F.2d 1473 (9th Cir. 1987) .................................................................................35

Rich-Taubman Associate v. Stamford Restaurant Operating Co.,
    587 F. Supp. 875 (S.D.N.Y. 1984) ..........................................................................36

Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,
    30 F.3d 399 (2d Cir. 1994).....................................................................................145

A - 310

Ross v. Bolton,
    904 F.2d 819 (2d Cir 1990).................................................................................130

S.C. Chimexim, S.A. v. Velco Enterprises Ltd.,
    36 F. Supp. 2d 206 (S.D.N.Y. 1999)......................................................110, 112

Schechter v. Banque Commerciale Privee, 1991 WL 105217
    (S.D.N.Y. Jun 11, 1991) ..............................................................................108

Schmuck v. United States,
    489 U.S. 705 (1989).............................................................................137, 139

Securitron Magnalock Corp. v. Schnabolk,
    65 F.3d 256 (2d Cir. 1995).................................................................144, 145

Sedima, S.P.R.L. v. Imrex Co.,
    473 U.S. 479 (1985)......................................................................................141

Sommerville v. Major Exploration, Inc.,
    576 F. Supp. 902 (S.D.N.Y. 1983) ...............................................................135

Spira v. Nick,
    876 F. Supp. 553 (S.D.N.Y. 1995) .......................................................139, 140

Staron v. McDonald's Corp.,
    51 F.3d 353 (2d Cir.1995)............................................................................141

Stirone v. United States,
    361 U.S. 212 (1960)........................................................................................42

In re Sumitomo Copper Lit.,
    104 F. Supp. 2d 314 (S.D.N.Y. 2000).......................................................39, 139

In re Sumitomo Copper Litigation,
    995 F. Supp. 451 (S.D.N.Y. 1998) ...........................................137, 138, 140

Sumitomo Corp. v. Chase Manhattan Bank,
    No. 99 Civ. 4004 (JSM), 2000 WL 1616960 (S.D.N.Y. Oct. 30, 2000) ............35

In re Teltronics Services, Inc.,
    762 F.2d 185 (2d Cir. 1985)..........................................................................122

Terminate Control Corp v. Horowitz,
    28 F.3d 1335 (2d Cir. 1994)...........................................................................44

SSL-DOCS2 70070518vTOA

Thai Airways International Ltd. v. United Aviation Leasing B.V.,
    842 F. Supp. 1567 (S.D.N.Y. 1994).................................................................................35

United States v. Abelis,
    146 F.3d 73 (2d Cir. 1998).................................................................................14, 106

United States v. Allen,
    155 F.3d 35 (2d Cir 1998)......................................................................................148

United States v. Approximately $25,681,268.80 in Funds (Plus Interest) in the Court
    Registry System, No. 98 Civ. 2682 (LMM), 1999 WL 1080370
    (S.D.N.Y. Nov. 30, 1999) ........................................................................35, 36, 39, 41

United States v. Autuori,
    212 F.3d 105 (2d Cir. 2000)....................................................................................137

United States v. Farrish,
    122 F.3d 146 (2d Cir. 1997)...........................................................................42, 44, 111

United States v. Gilboe,
    684 F.2d 235 (2d Cir 1982).......................................................................................36

United States v. Goodwin,
    141 F.3d 394 (2d Cir. 1997)......................................................................................39

United States v. Inigo,
    925 F.2d 641 (3d Cir. 1991).................................................................................42, 44

United States v. Ivanov,
    175 F. Supp. 2d 367 (D. Ct. 2001)............................................................................42

United States v. Jenkins,
    943 F.2d 167 (2d Cir. 1991)......................................................................................45

United States v. Kim,
    246 F.3d 186 (2d Cir. 2001)......................................................................................47

United States v. Shareef,
    190 F.3d 71 (2d Cir. 1999)........................................................................................42

United States v. Trapilo,
    130 F.3d 547 (2d Cir. 1997).......................................................................36, 137, 140

United States v. Zvi,
    168 F.3d 49 (2d Cir. 1999).......................................................................................39

SSL-DOCS2 70070518vTOA

Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.,
    825 F.2d 709 (2d Cir. 1987)...........................................................................................111

Watts v. Swiss Bank Corp.,
    27 N.Y.2d 270 (1970) ....................................................................................................116

Wiwa v. Royal Dutch Petroleum,
    226 F.3d 88 (2d Cir. 2000)............................................................................50, 55, 56, 126

Wiwa v. Royal Dutch Petroleum Co.,
    No. 96 Civ. 8386 (KMW), 2002 WL 319887 (S.D.N.Y. Feb 28, 2002).....42, 49, 116, 125

Zheng v. Reno,
    166 F. Supp. 2d 875 (S.D.N.Y. 2001)..............................................................................32

## STATUTES

18 U.S.C. §§ 1341, 1343.........................................................................................................36

18 U.S.C. § 1952....................................................................................................................45

18 U.S.C. § 1956....................................................................................................................39

18 U.S.C. § 1957....................................................................................................................41

18 U.S.C. § 1961...................................................................................................................149

18 U.S.C. § 1962...............................................................................................142, 147, 149, 151

28 U.S.C. § 1653...................................................................................................................116

Pub. L. 91-452 S 904(a), 84 Stat. 947...................................................................................141

A - 313

## PRELIMINARY STATEMENT

This lawsuit is about the claims of three US companies (along with various non-US residents) against seven US companies and one US citizen (along with non-US citizens) concerning harm suffered as a direct and proximate result of criminal racketeering activity in the US, including extortion, mail and wire fraud, and money laundering. This harm was caused, in part, through the corruption of court proceedings in Russia, which defendants' own legal expert confirmed in an article in one of Russia's most widely circulated newspapers.[1] Putting defendants' technical pleading arguments aside, this case, involving US plaintiffs and US defendants, and criminal conduct in the US, belongs in this Court and not in the inadequate Russian courts, which defendants have already corrupted in multiple legal proceedings.

### The Harm Suffered by US Citizens as a Result of Criminal Acts in the US Perpetrated by US Citizens

First, substantial interests of US citizens have been harmed by defendants, including the following:

- <u>Plaintiffs Davis International LLC & Holdex LLC</u>: These two US companies held shares in Kochkanarsky GOK ("GOK"), and those shares were fraudulently taken from these US entities and transferred to four US defendant companies.

- <u>Plaintiff Nexis Products, LLC</u>: Another US company which loaned money to, and did business with, GOK, and which, as a result of defendants' illegal activities, is owed more than $7 million.

- <u>Various Non-Parties</u>: (1) Felix Lvov, a US citizen, was murdered in connection with defendants' illegal takeover of the KRAZ aluminum plant; (2) AIOC Corp.,

---

[1]    Defendants' expert Sergey Zankofsky wrote an article in Izvestia, a widely circulated Russian newspaper, in which he addressed corruption in the Russian bankruptcy courts, and cited as examples two companies that were taken over through such corruption. A copy of this article is annexed as Exhibit 14 to Declaration of James L. Bernard, dated September 20, 2002. For the reasons set forth in the accompanying Second Declaration of James L. Bernard, dated September 20, 2002, which has been filed under seal, plaintiffs and their experts have assumed that the company which is not identified in the article is Kochkanarsky GOK, one of two plants that were taken over by defendants. <u>See</u> Complaint ¶ 5.

the US company for which Lvov worked, was forced to declare bankruptcy after defendants' illegal takeover of KRAZ; (3) Aldeco (US), a US company, lost its contracts with KRAZ in court proceedings rigged by defendants; (4) ALCOA and Reynolds Aluminum, two major US companies, were denied the opportunity to purchase a controlling interest in the BRAZ aluminum plant as a result of defendants' illegal activities; and (5) Transworld (Aluminum), Inc. (US), a US company, lost various business opportunities with the SAZ and KRAZ aluminum plants as a result of defendants' illegal conduct.

Second, eight US defendants played an important and active role in the criminal scheme:

- Arnold Kislin: This New York resident operated and managed a number of party and non-party corporate entities that laundered the proceeds of defendants' illegal activities, including the wiring of bribes for Russian officials through banks in the US and the purchase of real estate in the US, traded in the metal that should have been traded with plaintiffs and, overall, facilitated other financial aspects of defendants' illegal scheme.

- Blonde Management, Inc. and Pan-American Corp.: These US corporations are managed by defendant Kislin in New York, and engaged in money laundering, including the wiring of funds through banks in the US to bribe Russian government officials in connection with defendants' overall illegal scheme.

- Sibirsky Aluminum Products (US) Corp.: This New York based US corporation engaged in money laundering through the trading of metal which should have been sold to plaintiffs, and, overall, facilitated financial aspects of the illegal scheme.

- New Start Group, Inc., Venitom Corp., Unidale, LLC and InvestLand LLC: These four companies were registered and incorporated in the US by defendant Kislin, and received the shares stolen from the Davis and Holdex plaintiffs, as well as from two other plaintiffs.

Third, all defendants committed a host of predicate acts in the US, including the following:

- Wire Fraud: Funds were transferred through US banks to take over the aluminum and vanadium plants in this case, including wire payments through US banks of specific bribe payments, funds extorted from plaintiffs and funds obtained from the illegal sale of aluminum and vanadium that should have been made to plaintiffs. In addition, defendants committed mail and wire fraud violations when they incorporated and registered the four US defendant corporations that received the fraudulently obtained shares from the two US plaintiffs and two non-US plaintiffs.

- Illegal Transactions in Monetary Instruments: Defendants committed predicate acts in violation of this statute based on these same mail and wire payments.

2

- <u>Money Laundering</u>:  Defendants laundered money through US banks, and in real estate located in NY.

- <u>Hobbs and Travel Act Violations</u>:  In addition to a specific instance in which defendant Deripaska traveled to an aluminum trade conference in Chicago and threatened to murder one of plaintiffs' key witnesses (and a Director of one of the plaintiffs), defendants committed a multitude of other extortionate acts that affected interstate and foreign commerce, as detailed below.

### Defendants Corrupted Court Proceedings in Russia

Defendants have so thoroughly corrupted judicial proceedings in Russia, and retain the ability to do so in the future, that transferring this case to Russia would be tantamount to a dismissal of plaintiffs' claims.  Under either a forum non or a comity analysis, corruption in prior proceedings, and a threat of corruption in future proceedings, are valid grounds for denying either motion.  Here, the evidence of corruption, prior to plaintiffs taking any discovery on the matter, is overwhelming, and includes:

- <u>Defendants' Legal Expert</u>:  Sergey Zankovsky, one of defendants' legal experts, in the Izvestia article, confirmed plaintiffs' specific claims of corruption in the Russian bankruptcy courts, as noted above and as detailed in note 1, <u>supra</u>.  The impact of this candid assessment (after he submitted his "expert" report ) disposes of <u>any</u> effort to rebut the substance of plaintiffs' claims of corruption.

- <u>Public Records</u>:  In a report filed by a Russian prosecutor closing a criminal investigation of the GOK bankruptcy, the prosecutor disclosed that the Institute where Zankovsky worked concluded that there were "<u>objective signs of intentional bankruptcy</u>" at GOK, <u>i.e.</u>, that the bankruptcy was corrupted.

- <u>Two Non-Party Fact Witnesses</u>:  Messrs, Grishkovetz and Kuznetsov, two fact witnesses who worked in the Russian government in the very region where plaintiffs allege that defendants corrupted the NKAZ bankruptcy proceeding, provide stunning details of cases in which they were personally involved where the regional governor Aman Tuleyev, the same person who was bribed by defendants to exert his influence over the same regional court, corrupted other bankruptcy proceedings using the precise techniques plaintiffs allege herein involving the same judges in the NKAZ proceeding.

- <u>Other Non-Party Fact Witnesses</u>:  Plaintiffs also offer affidavits from other fact witnesses who provide details concerning the following:  (1) specific conversations with individual defendants and members of the RICO enterprise

in which these individuals expressed their intention to take over the NKAZ and GOK plants at issue through sham bankruptcy proceedings; (2) specific details of the bribe payments (including amounts, dates, originating parties (including the US defendants in this case)) made to corrupt regional governors Tuleyev and Roussell; and (3) conversations in which members of the so-called bankruptcy "rehabilitation" team referred to themselves as members of the "takeover" team; and, among many other details set forth below and in the accompanying declarations.

- <u>Plaintiffs' General Corruption Expert</u>: Corroborating these claims of general corruption, plaintiffs provide an expert declaration from Professor Ethan Burger, an American scholar who studies corruption in the Russian courts and who details the substantial body of evidence that supports plaintiffs' claim that the Russian courts are an inadequate forum for resolving plaintiffs' claims, which is supported by plaintiffs' Russian legal experts as described below.

- <u>Plaintiffs' Specific Corruption Experts</u>: Providing further support to plaintiffs' various fact declarations, plaintiffs provide declarations from Professor Burger, Russian Professors Golubev and Telyukina, and Russian attorney Kleymenov, all experts on Russian law, who reviewed the various judicial proceedings at issue and concluded that the proceedings were corrupted.

Putting aside the inadequacy of the Russian courts, based on the substantial US contacts of this lawsuit, defendants fail to meet their burden of proving that litigation in New York, under the <u>Gulf Oil</u> private and public interest factors, would be oppressive and vexatious out of all proportion to plaintiffs' convenience, as the Supreme Court requires. Moreover, trying this lawsuit is not likely to involve complicated issues of Russian law, or even a substantial number of fact witnesses, given the transparent nature of the fraud committed on the court by appointed bankruptcy managers, as even defendants' expert has recognized. And comity simply does not apply to judgments which were procured by fraud in an inadequate judicial system, putting aside other insuperable flaws related to this argument, discussed below.

In short, this case should remain in this Court because it involves substantial US based conduct by a number of US entities and individuals which harmed US interests, and because defendants are particularly capable of corrupting judicial proceedings in Russia, where the

4

judiciary is particularly susceptible to corruption.

## STATEMENT OF FACTS

**A.    Introduction and Overview of the Parties**

    Defendants' criminal scheme is vast in scope, but the essence of the actions that harmed plaintiffs can be easily summarized.

    Plaintiffs – three US companies (Davis, Holdex, Nexis), two Cyprus companies (Alucoal and Foston), two Russian companies (MIKOM and Polyprom), one Swiss company (BMT SA), one UK company (Omni) and one Guernsey company (BMT Ltd.)[2] – entered into commercial arrangements with two metal plants in Russia, defendant Novokuznetsk Aluminum Zavod ("NKAZ") and GOK.  Defendants, as part of a broad scheme to illegally control the metals business, committed various predicate acts in US, and ultimately took control over NKAZ and GOK and terminated these commercial arrangements.

**1.    The Aluminum Plaintiffs**

    The "Aluminum Plaintiffs" – BMT Ltd., BMT SA, Alucoal and MIKOM – traded aluminum and raw materials with NKAZ, with the exception of MIKOM, which managed NKAZ before defendants illegally took it over.  After the takeover, these trading and management contracts were terminated and certain debts owed to BMT Ltd, BMT SA, and Alucoal have not been paid.  See Complaint ¶¶ 23-31.[3]

---

[2]   These abbreviations refer to the following entities:  Davis International, LLC ("Davis"); Holdex, LLC ("Holdex"); Nexis Products, LLC ("Nexis"); Alucoal Holdings Ltd. ("Alucoal"); Foston Management, Ltd. ("Foston"); MIKOM; Polyprom; Base Metal Trading SA ("BMT SA"); Omni Trusthouse, Ltd. ("Omni") and Base Metal Trading Ltd. ("BMT Ltd.")

[3]   "Complaint" refers to the Second Complaint, dated March 26, 2002.  All abbreviations not otherwise defined herein are consistent with the abbreviations used in the Complaint.

5

## 2.    The Vanadium Plaintiffs

The "Vanadium Plaintiffs" refer to Davis, Holdex, Foston, Omni, Nexis and Polyprom.

Davis, Holdex, Foston and Omni ("the Vanadium Shareholders") collectively held more than

70% of the shares in a vanadium plant called GOK.  Davis and Holdex are incorporated in West

Virginia and Texas, respectively.  Of the remaining plaintiffs, Nexis, which is organized in Utah,

loaned money to, and did business with, GOK, and Polyprom traded with GOK.  After GOK was

taken over, the Vanadium Shareholders' shares were fraudulently transferred to four US

defendants, the loan agreements were dishonored, and the trading contracts cancelled.  See id. ¶¶

32-39.

## 3.    The Defendants

Defendants Arnold Kislin, a resident of New York, Oleg Deripaska, Mikhail Chernoi and

Iskander Makhmudov operated and managed the overall Illegal Scheme.[4]  See id. ¶¶ 41, 53, 59,

66.  Deripaska, Chernoi and Makhmudov (collectively, "the Conspirators") operate and manage

defendants Russian Aluminum and Sibirsky Aluminum ("SibAl").  Defendant RUAL Trade, Ltd.

("RUAL") is a trading arm of Russian Aluminum and maintains an office in New York;

defendant Sibirsky Aluminum Products USA Corp. ("Sibirsky U.S.") is the US trading arm of

SibAl and maintains an office in New York.  See id. ¶¶ 42-43 & 70-74; infra note 23.  Defendant

NKAZ is located in the Kemerovo region of Russia and became party to the Illegal Scheme only

after it was taken over by the Conspirators.[5]

Defendants Bauxal Management SA, Blonde Management, Inc. (a New York

---

[4]    The roles played by the various defendants and non-party RICO members are described in greater detail in the Complaint, see id. ¶¶ 41-107, and are diagramed in a chart annexed to the Complaint as Ex. A.

[5]    Only MIKOM has asserted claims against NKAZ.

6

A - 319

corporation), Blonde Investments, Metcare Management, SA, Unimetal Limited, SA and Pan-American Corp (also based in New York) are the key companies involved in the metal trading, money laundering, and bribery arms of the enterprises. See id. ¶¶ 44-46, 54, Exhibit A. Blonde Management, Inc., Blonde Investment, Inc., and Pan American are managed by Kislin in New York and launder funds through banks in the US which are used for bribe payments and which are also "cleansed" by investing in New York real estate. The companies also obtained credit cards from US banks for Deripaska's, Chernoi's and Makhmudov's use and travels, including travel to the US. See id. ¶¶ 56-63.

Defendant Moskovskiy Delovoi Mir Bank ("MDM Bank") is used by Deripaska, Chernoi, Makhmudov and Kislin to launder the proceeds from the Illegal Scheme, and to provide financing for their illegal activities. See id. ¶¶ 67-69.[6] The GOK shares were fraudulently transferred to four defendant companies – New Start Group Corp., Venitom Corp., Unidale LLC and InvestLand LLC – all of which were registered and incorporated in the US by Kislin and under his control. See id. ¶¶ 89-93.

**B.  Background to the Takeovers of NKAZ and GOK:**
    **Defendants Consolidate Control Over the Aluminum Industry**

Before taking over NKAZ and GOK, Deripaska, Chernoi and Makhmudov conspired to take over three other major factories in Russia known as SAZ, KRAZ and BRAZ. See id. ¶¶ 121-24. These takeovers formed an integral part of their overall scheme to control the Russian metal industry, and the profits generated by these takeovers funded the takeovers of NKAZ and

---

[6]  Thus, plaintiffs do not simply allege that MDM Bank's wrongdoing is limited to "performing its functions as a bank" and maintaining "correspondent accounts" in the US, contrary to MDM Bank's brief. See MDM Mem. at 2, 8. Rather, MDM Bank directly participated in the scheme to bribe government officials and create sham debt. See, e.g., Complaint ¶ 69, 524.

GOK. The means and methods for taking over these plants – mail and wire fraud, bribery, extortion, murder and money laundering – were repeated in the takeovers of NKAZ and GOK, and establish a modus operandi of illegal conduct that corroborates and reinforces the continuity of the predicate acts that form the basis of plaintiffs' RICO claims.

### 1.    The SAZ Takeover

SAZ was the first aluminum plant taken over by Deripaska, Chernoi and Makhmudov. Originally, SAZ was partially controlled by Transworld (Aluminum), Inc. (US) ("Transworld"), which maintained an office and place of business in the US. Pursuant to a joint-venture between Transworld and affiliated companies controlled by defendant Sibirsky, Transworld was to receive aluminum from SAZ to sell in the US through trading companies organized in the British Virgin Islands ("BVI"). See id. ¶¶ 95-97, 125-26.

In late 1997 and early 1998, Sibirsky took over SAZ's trading by establishing "sister" companies in the Bahamas with the same names as the BVI companies, and fraudulently shipped SAZ aluminum to the Bahamian companies and then into the US, where the sales' proceeds were wired through banks in the US and laundered. Deripaska and SibAl, among others, are currently under criminal investigation in Switzerland for this conduct. See id. ¶¶ 127-34.

### 2.    The KRAZ Takeover

Transworld was also involved in the ownership of KRAZ, along with Chernoi and KRAZ management. An American citizen, Felix Lvov, who worked for an American company, AIOC Corp., had a business relationship with KRAZ management. See id. ¶¶ 105, 135. In 1993, Chernoi began the takeover of KRAZ by murdering rivals who were also seeking to control KRAZ, including Lvov, in 1995. As a result of Lvov's murder, AIOC Corp. collapsed and filed for bankruptcy. Transworld was forced to sell its interest in KRAZ at a distressed price, and

8

Chernoi arranged for false criminal charges (including murder charges involving alleged victims who are still alive) to be filed against a key figure in KRAZ's management. After the takeover, another US company with which KRAZ was doing business, Aldeco (US), lost its contracts as a result of court proceeding rigged by defendants. See id. ¶¶ 136-42.

### 3. The BRAZ Takeover

Transworld was also involved in the management of BRAZ, along with Lev Chernoi (defendant Chernoi's estranged brother) and BRAZ management. In 1998, two US companies, ALCOA and Reynolds Aluminum Co., each attempted to purchase a controlling interest in BRAZ. See id. ¶¶ 98-102, 144. In a manner identical to that used for the takeover of NKAZ, defendants arranged for a company that provided BRAZ with energy to file a false claim that BRAZ failed to pay its energy bills. In addition, defendants engaged in economic extortion by arranging for the termination of contracts to supply alumina (the raw material for making aluminum) to BRAZ. As a result, ALCOA and Reynolds were denied the opportunity to purchase BRAZ, and BRAZ management, Transworld and Lev Chernoi were forced to sell their interests at distressed prices. See id. ¶¶ 143-47.

## C. The NKAZ Takeover

Following the modus operandi established in these takeovers, and with the funds generated by them, defendants took over NKAZ through a series of illegal acts that reached fruition in 2001.

### 1. The Initial Extortion and Use of the Wires Through Banks in the US To Launder the Proceeds of this Criminal Activity

In late 1994, early 1995, plaintiff MIKOM obtained management control of NKAZ. At the time, NKAZ purchased approximately 70% of its alumina from "PAZ." Chernoi gained control of PAZ and, in violation of prior contractual commitments, threatened to stop the flow of

9

A - 322

alumina if NKAZ did not turn over 50% of all the profits from its sale of aluminum and 50% of

all NKAZ's shares, as well as enter into a "co-operation" agreement with PAZ to purchase all of

NKAZ's alumina requirements at premium prices.  See id. ¶¶ 148-52.  NKAZ, with no

alternative source of alumina, complied, and paid Chernoi with undervalued aluminum that was

sold into the world market, which trades almost exclusively in US dollars.  Chernoi then

incorporated a number of entities with the prefix "Trans," and transferred funds from this

extortion through those entities, including one non-party RICO member, Trans-Commodities,

which has offices in New York.  See Complaint ¶¶ 65, 153-59.

> **2.    The Murder of An American Citizen, the
>        Extortion in Chicago and Subsequent Extortion
>        Payments Made by Wire Through Banks in the US**

By August 1995, NKAZ found an alternate source for alumina, and the President of

MIKOM, Mikhail Zhivilo ("M. Zhivilo"), informed Chernoi that NKAZ and BMT Ltd. would no

longer trade with PAZ.  In September, M. Zhivilo's brother, Yuri Zhivilo ("Y. Zhivilo"), traveled

to an aluminum trade conference in Chicago.  Deripaska also traveled to Chicago to attend the

conference, and plaintiffs believe that his expenses were paid for with corporate credit cards

issued by American banks and guaranteed by Blonde Management (a NY corporation), which is

in turn managed by Kislin (a NY resident).  See Complaint ¶¶ 160-64.

In September, 1995, Felix Lvov, an American citizen working for the US company AIOC

Corp. in connection with the KRAZ plant, was murdered.  See infra Point I.B.2.  At the Chicago

conference, Deripaska threatened Y. Zhivilo that if M. Zhivilo did not cooperate with the

Conspirators, "they" would do the same thing to the Zhivilos that "they" did to Lvov.  See

Complaint ¶¶ 162, 165.

Later in the fall of 1995, Chernoi summoned M. Zhivilo to a meeting in Tel Aviv.

10

Present at the meeting was non-party Anton Malevsky, head of the Russian-American Izmailovo Mafia, which uses New York as a center of operations. See id. ¶¶ 75-78. Chernoi threatened M. Zhivilo that if he did not continue to cooperate as before, it would be necessary for Malevsky's friend, "Yaponchik," to "become involved in the business," which was a threat on M. Zhivilo's life.[7] And in March 1996, an actual attempt was made on his life. After that attempt, Chernoi again threatened M. Zhivilo that if "it" did not happen the first time, then "it" would happen the second time. See id. ¶¶ 165-70.

As a result of these threats, BMT Ltd. paid millions of dollars of "protection money" to companies controlled by the Conspirators. In total, between April 1996 and October 1999, sixteen payments of approximately $1.5 million each were made to these companies, through banks in the US, including Chase Manhattan Bank and the Bank of New York. See id. ¶ 174 (providing details on these payments). After the payments were made, Chernoi laundered the money through defendants Pan-American and Blonde Management (both of which are US companies), and non-party RICO members Transmetal and Trans-Commodities (the latter of which is a US company). See id. ¶¶ 64-65, 171-76.

### 3. Defendants Recruit Kuzbass to Pressure the Aluminum Plaintiffs

In 1997, M. Zhivilo learned of a scheme by which the Conspirators, in conjunction with Kuzbassenergo ("Kuzbass"), the local electricity producer, planned to take over NKAZ by raising NKAZ's energy rates above the legal limit set by the Russian Federal Energy

---

[7]    "Yaponchik" refers to Vyacheslav Ivankov, the head of the Ismailovo mafia in New York, who was subsequently convicted of extortion in the US and is currently in prison. In fact, Your Honor authored the Second Circuit decision affirming Ivankov's conviction, and noted in that opinion, which concerned substantial criminal activity in New York, that Ivankov "had a reputation as one of the most powerful members of the Russian criminal world" and that the victims of this particular extortionate scheme were "frightened" when they heard of his involvement. See United States v. Abelis, 146 F.3d 73, 77 (2d Cir. 1998).

11

A - 324

Commission, thereby creating a false NKAZ liability, and then forcing NKAZ into bankruptcy, just as they had done with BRAZ. The Conspirators supplied Kuzbass with 80% of the coal which it used to generate electricity, and used this leverage, in addition to their ties to Malevsky and Russian organized crime, to control Kuzbass. See id. ¶¶ 177-78.

In an effort to thwart the Conspirators' plan, NKAZ reached out to the Kemerovo regional deputy governor, Dimitry Chirakadze, who directed Kuzbass to reduce its tariffs to the lawful rate. NKAZ is located in the Kemerovo region. Kuzbass ignored these instructions. Chirakadze then arranged a meeting with the General Director of Kuzbass' parent company, but immediately before the meeting, on July 3, 1997, Chirakadze was attacked by two men, stabbed five times in the neck, back and stomach and incapacitated for six months. Plaintiffs believe that the Izmailovo Mafia carried out this attack at the behest of the Conspirators. Shortly thereafter, the Kemerovo regional governor who had appointed Chirakadze was removed from office and replaced with Aman Tuleyev. See id. ¶¶ 177-86.

### 4. Defendants Enlist the Assistance of Regional Governor Tuleyev and Coordinate the Wiring of Bribe Payments through US Entities

Almost immediately upon taking office, Tuleyev demanded that M. Zhivilo arrange for NKAZ and its trading partners to pay bribes, and threatened that if they failed to comply, control over NKAZ would be transferred to the Conspirators. They refused. Later in 1998, M. Zhivilo met defendant Chernoi at a World Cup soccer game in France, and Chernoi again threatened M. Zhivilo that unless M. Zhivilo cooperated and paid the bribes, Chernoi would "talk" to Malevsky, the head of the Russian-American Izmailovo Mafia. Again, this was a threat on M. Zhivilo's life. In 1999, M. Zhivilo met with Anatoly Chubais, a powerful Russian oligarch, who told M. Zhivilo that if he did not cooperate with the Conspirators, Chubais would instruct Tuleyev, whose appointment Chubais had arranged, to transfer control of NKAZ to the

12

Conspirators by whatever means necessary. See id. ¶¶ 187-92.

In 1999, Tuleyev agreed to assist the Conspirators in taking over NKAZ by arranging for the filing of false claims through the local Kemerovo procurator against NKAZ ("the Illegal Takeover"), much as the Conspirators had done with BRAZ. In return, in June and July 1999, the Conspirators directed defendants Pan-American (a US company) and Blonde Management (a NY company) – both operated and managed by defendant Kislin (a NY resident) – to wire through an American bank four payments to Tuleyev, totaling $10.5 million dollars. See id. ¶¶ 193-98.

The plan to file false claims against NKAZ, which was similar to the modus operandi used in the BRAZ takeover, involved the following steps: (1) Kuzbass (NKAZ's energy provider) would file a claim in Kemerovo alleging that NKAZ had failed to pay the illegally inflated energy rates; (2) that claim, reduced to a judgment, would enable the Conspirators to put NKAZ into an involuntary bankruptcy; and (3) the Conspirators would then control the conduct of the bankruptcy proceeding by appointing one of their agents as the Russian equivalent of a bankruptcy trustee, and by having their affiliated companies file false claims against NKAZ, thereby creating a group of creditors, not interested in recovering debt, but instead intent on transferring control of NKAZ to the defendants. See id. ¶¶ 199-202. That is precisely what happened.

### 5.    Kuzbass Files False Energy Claims

Beginning in November 1994, NKAZ entered into a series of contracts with Kuzbass to set rates for purchasing electricity. However, on November 12, 1997, Kuzbass filed an action in which it claimed that NKAZ should pay significantly higher rates set by the Kemerovo Regional Energy Commission ("KREC"), a local agency under Tuleyev's direction and control ("the First

13

Kuzbass Action"). NKAZ responded by filing a suit against KREC in which it alleged that the rates KREC imposed violated NKAZ's contracts with Kuzbass, and also violated rates established by the Russian Federal Energy Commission ("the Kemerovo Tariff Action"). The Russian Federal Energy Commission reviewed the rates and agreed with NKAZ. Because the First Kuzbass Action depended on the result of the Kemerovo Tariff Action, the court presiding over the First Kuzbass Action adjourned that proceeding pending the outcome of the Kemerovo Tariff Action. See id. ¶¶ 203-11.

In response to the adjournment, and as part of the deal with Tuleyev, on September 10, 1999, the Kemerovo procurator filed a second action against NKAZ, in the name of Kuzbass, raising the same type of claim raised in the First Kuzbass Action ("the Second Kuzbass Action"). Although the Second Kuzbass Action should have been adjourned for the same reason that the First Kuzbass Action was adjourned, Tuleyev exerted his influence over the court and a judgment was entered against NKAZ on October 21, 1999 for approximately $28 million dollars. See id. ¶¶ 212-16.

NKAZ appealed this decision, but Tuleyev was again able to exert his influence over the local appellate court and the judgment was affirmed on December 24, 1999. NKAZ appealed to the next appellate court, which, on January 19, 2000, entered a stay of the underlying judgment pending consideration of the appeal (the "Tumen Stay Order"). The Tumen Stay Order was significant because under Russian law only enforceable judgments may be used as the basis for an involuntary bankruptcy petition, but this victory would prove to be elusive in light of Tuleyev's ability to control the outcome of judicial proceedings in the local Kemerovo courts. See id. ¶¶ 217-20.

SSL-DOCS2 70070518v7

### 6.    The Sham NKAZ Bankruptcy Petitions

The same day the Tumen Stay Order was issued, Kuzbass filed an ex parte petition in the Kemerovo court for an order declaring NKAZ bankrupt, to appoint Sergey A. Chernyshev as NKAZ's Provisional Manager (the equivalent of a bankruptcy trustee) and to arrest NKAZ's assets (even though Kuzbass had already arrested NKAZ assets in the amount of its judgment in a prior proceeding). The court granted all of this relief on the same day the ex parte petition was filed, ignoring not only the Tumen Stay Order, but also other provisions of Russian law, addressed in greater detail infra, Point II.C.2.b.ii. Among other orders, the court froze all of NKAZ's assets and thus prevented NKAZ from paying its bills and conducting its business. See id. ¶¶ 221-30.

Almost immediately upon being appointed Provisional Manager, and between January 21 and February 14, 2000, Chernyshev submitted over 90 demands for documents with numerous subparts. The precise nature and sheer volume of these demands, as well as their content and timing, belie any claim that Chernyshev carried out his obligations in good faith and for legitimate purposes. In the accompanying declaration of Igor Rekhovsky, NKAZ's counsel at the time, we summarize, and annex, various demands. Chernyshev's purpose in serving them was transparent: Serve NKAZ with so many document demands under impossibly short deadlines (often within hours and sometimes after the deadlines had already passed) that NKAZ could not possible comply, and then rely on NKAZ's inability to comply as a ground for ousting NKAZ's management, i.e., MIKOM. See id. ¶¶ 230-35.

On January 26, 2000, Chernyshev and Kuzbass filed petitions to remove NKAZ management and MIKOM. At the same time, the Kemerovo procurator filed a separate petition to declare NKAZ bankrupt, including the same grounds previously alleged by Kuzbass and

15