**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------x
```
DAVIS INTERNATIONAL, LLC, HOLDEX,   :
LLC, FOSTON MANAGEMENT, LTD, and   :
OMNI TRUSTHOUSE, LTD,   :
  :
         Plaintiffs,   :
  :
      v.   :   Case No. 04-1482-GMS
  :
NEW START GROUP CORP., VENITOM   :
CORP., PAN-AMERICAN CORP., MDM   :
BANK, URAL-GORNO METALURAGICAL   :
COMPANY, EVRAZ HOLDING, MIKHAIL   :
CHERNOI, OLEG DERIPASKA, ARNOLD   :
KISLIN, MIKHAIL NEKRICH, and   :
ISKANDER MAKMUDOV,   :
  :
         Defendants.   :
```
------------------------------------------------------------x
```

# APPENDIX TO DEFENDANTS'
# OPENING BRIEFS IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

## Volume 4 of 13

Attorneys for Defendant Arnold Kislin:

Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

Lisa C. Cohen
Schindler Cohen & Hochman LLP
100 Wall Street
15th Floor
New York, NY 10005
(212) 277-6300

Lawrence S. Goldman
Elizabeth Johnson
The Law Offices of Lawrence S. Goldman
500 Fifth Ave., 29th Floor
New York NY 10110-2900
(212) 997-7499

Attorneys for Defendants New Start Group
Corp. and Venitom Group:

Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

Richard J. Schaeffer
Peter J. Venaglia
Laura D. Sullivan
Dornbush, Schaeffer, Strongin &
Weinstein, LLP
747 Third Avenue, 11th Floor
New York, NY 10017
(212) 759-3300

Attorneys for Defendant Oleg Deripaska:

Collins J. Seitz, Jr.(DSBA No. 2237)
Kevin F. Brady (DSBA No. 2248)
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

Rodney F. Page
Michael G. Biggers
Bryan Cave LLP
700 13th Street, N.W.
Washington, D.C. 20005-3960
(202) 508-6002

Attorneys for Defendant Evraz Holding:

William M. Lafferty (DSBA No. 2755)
Morris, Nichols, Arsht & Tunnell
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 575-7341

David H. Herrington
Vitali Rosenfeld
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York New York 10006
(212) 225-2266

Attorneys for Defendant MDM Bank:

Stephen E. Jenkins (DSBA No. 2152)
Richard I.G. Jones, Jr. (DSBA No. 3301)
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

Joel B. Kleinman
Steven J. Roman
David H. Greenberg
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street NW
Washington, DC 20037-1526
(202) 785-9700

Attorneys for Defendant Ural-Gorno
Metallurgical Company:

Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

William H. Devaney
Heard & O'Toole LLP
405 Lexington Ave, Floor 62
New York, NY 10174
(212) 307-5500

Attorneys for Defendant Iskander
Makmudov:

Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

William H. Devaney
Heard & O'Toole LLP
405 Lexington Ave, Floor 62
New York, NY 10174
(212) 307-5500

Attorneys for Defendant Mikhail Chernoi:

Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

Brian Maas
Cameron Myler
Frankfurt Kurnit Klein & Selz PC
488 Madison Avenue, 9th Floor
New York, NY 10022
(212) 980-0120

Attorneys for Defendant Mikhail Nekrich:

Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

Paul R. Grand
Edward M. Spiro
Morvillo, Abramowitz, Grand, Iason &
Silberberg, P.C.
565 Fifth Avenue
New York, NY 10017
(212) 880-9510

## Table of Contents

| DOCUMENT | PAGE |
|---|---|
| **VOLUME 1 OF 13:** | |
| Complaint | A-1 |
| *Base Metal Trading v. Russian Alum.*, 253 F. Supp. 2d 681 (S.D.N.Y. 2003) ("*Base Metal Trading*") | A-31 |
| Transcript of Oral Argument before Hon. John G. Koeltl, dated February 10, 2003, in *Base Metal Trading* | A-64 |
| **VOLUME 2 OF 13:** | |
| First Amended Complaint, dated August 3, 2001, filed in *Base Metal Trading* | A-176 |
| **VOLUME 3 OF 13:** | |
| Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss the Amended Complaint, dated September 15, 2002, filed in *Base Metal Trading* | A-295 |
| **VOLUME 4 OF 13:** | |
| Resume of Paul B. Stephan | A-465 |
| List of Paul B. Stephan's "Participation in U.S. Lawsuits" | A-476 |
| Declaration of Paul B. Stephan, dated January 28, 2002, filed in *Base Metal Trading* | A-479 |
| Reply Declaration of Paul B. Stephan, dated October 17, 2002, filed in *Base Metal Trading* | A-514 |
| Complaint filed in *Norex Petroleum Ltd. v. Access Indus.* (LTS) (S.D.N.Y.) | A-535 |
| *Norex Petroleum Ltd. v. Access Indus.*, 304 F. Supp. 2d 570 (S.D.N.Y. 2004) | A-607 |
| Judge Koeltl's written request for submissions prior to oral argument, dated January 29, 2003 | A-622 |
| Defendants' response to Judge Koeltl's Jan. 29th request ("Defendants' Oral Argument Submissions") | A-624 |
| Chronology of GOK-related Russian court decisions | A-625 |
| Map – location of courts | A-651 |
| Chart of Russian Court Decisions | A-652 |

| | |
|---|---|
| **VOLUME 5 OF 13:** | |
| Plaintiffs' response to Judge Koeltl's Jan. 29th request ("Plaintiffs' Oral Argument Submissions") | A-653 |
| GOK Bankruptcy Litigation Chart | A-654 |
| Shareholder Litigation Chart | A-660 |
| Chart – Kozitsin and Kozyrev "Wrongful Conduct" | A-668 |
| Chart – "Direct Evidence of Corruption" | A-677 |
| Sergei Zankovsky: Theory and Practice of Bankruptcy | A-684 |
| Defendants' post-oral argument submissions in *Base Metal Trading*, dated February 20, 2003 | A-687 |
| Letter from Winston & Strawn, dated February 20, 2003 | A-688 |
| Letter from Hogan & Hartson, dated February 20, 2003 | A-690 |
| Letter from Dornbush Mensch Mandelstam & Schaeffer, dated February 20, 2003 | A-695 |
| Defendants' Summary of Contracts | A-698 |
| Supplemental Declaration of Paul B. Stephan, dated Feb. 19, 2003 | A-705 |
| Third Declaration of Igor Petrukhin, dated Feb. 20, 2003 | A-713 |
| Plaintiffs' post-oral argument submissions in *Base Metal Trading*, dated February 20, 2003 | A-744 |
| Letter from Strook Stroock & Lavan, dated February 20, 2003 (with exhibits) | A-745 |
| Second Declaration and Exhibits of Joseph Traum, dated February 19, 2003 | A-782 |
| Expert Report of Sergei B. Zaitsev, dated February 19, 2003 (without exhibits) | A-828 |
| **VOLUME 6 OF 13:** | |
| Defendants' post-oral argument submissions in *Base Metal Trading*, dated February 25, 2003 | A-885 |
| Letter from Winston & Strawn, dated February 25, 2003 (with exhibits) | A-886 |
| Supplemental Declaration of Paul B. Stephan, dated February 25, 2003 | A-933 |
| Plaintiffs' post-oral argument submissions in *Base Metal Trading*, dated February 25, 2003 | A-941 |

| | |
|---|---|
| Letter from Strook Stroock & Lavan, dated February 25, 2003 (with exhibits) | A-942 |
| Letter from Herrick Feinstein, dated February 25, 2003 | A-986 |
| Second Declaration of Victor Golubev, dated February 25, 2003 (without exhibits) | A-989 |
| Second Declaration of Sergei B. Zaitsev, dated February 25, 2003 (without exhibits) | A-1027 |
| **VOLUME 7 OF 13:** | |
| March 30, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1075 |
| August 22, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1080 |
| April 19, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1092 |
| Application to the Arbitrazh Court for the Sverdlovsk Oblast dated March 24, 2000 filed by Krasnouralskmezhraygaz ("Kras Gas") | A-1112 |
| January 24, 1997 contract between GOK and Kras Gas | A-1130 |
| Letter dated February 4, 2000 from Kras Gas to GOK | A-1146 |
| Letter dated February 15, 2000 from Kras Gas to GOK | A-1157 |
| Letter dated February 8, 2000 from GOK to Kras Gas | A-1170 |
| Letter dated February 21, 2000 from GOK to Kras Gas | A-1175 |
| Federal Service's recommendation to appoint Kozyrev as Interim Trustee | A-1180 |
| Instruction of the Government of the Russian Federation from July 10, 1999 (No. 1100-R) | A-1187 |
| Audit Report and list of GOK's creditors as of March 24, 2000 | A-1191 |
| Minutes of the first GOK creditors' meeting held on August 11, 2000 | A-1245 |
| August 2, 2000 decision of the Izmailovo Inter-Municipal Court of Moscow | A-1266 |
| November 30, 2000 decision of the Moscow City Court | A-1269 |
| **VOLUME 8 OF 13:** | |
| Nexis' appellate complaint | A-1276 |
| January 15, 2001 determination of the Appellate Instance of the Arbitrazh Court for the Sverdlovsk Oblast | A-1306 |
| Nexis' cassation complaint | A-1311 |
| June 7, 2001 decision of the Federal Arbitrazh Court for the Urals Circuit | A-1318 |

| | |
|---|---|
| Minutes of the March 11, 2001 creditors' meeting | A-1323 |
| June 27, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1357 |
| August 21, 2001 decision of the Federal Arbitrazh Court for the Urals Circuit | A-1365 |
| August 18, 2000 opinion of the Federal Service | A-1367 |
| August 29, 2000 Nexis petition regarding loan agreement | A-1382 |
| July 26, 1999 supply contract between Nexis and GOK | A-1392 |
| August 29, 2000 Application filed by Nexis regarding supply contract | A-1424 |
| October 4, 2000 letter to Nexis from Trustee Kozyrev | A-1442 |
| March 23, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1445 |
| August 29, 2000 Statement of Claim submitted by Polyprom | A-1452 |
| **VOLUME 9 OF 13:** | |
| Supply agreements between GOK and Polyprom | A-1479 |
| October 4, 2000 letter to Polyprom from Trustee Kozyrev | A-1579 |
| October 31, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1583 |
| February 16, 2001 letter from Trustee Kozyrev to the Arbitrazh Court for the Sverdlovsk Oblast | A-1588 |
| February 19, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1591 |
| April 19, 2001 Resolution of the Appellate Instance of the Arbitrazh Court for the Sverdlovsk Oblast | A-1598 |
| July 12, 2001 determination of the Federal Arbitrazh Court of the Urals District | A-1607 |
| April 18, 2001 decision of the Arbitrazh Court for Sverdlovsk Oblast | A-1613 |
| January 22, 2000 letter from several members of GOK Board of Directors requesting meeting of GOK Board | A-1620 |
| January 24, 2000 letter from several members of GOK Board of Directors requesting meeting of GOK Board | A-1623 |
| February 2, 2000 "Decision Not To Institute Legal Proceedings" of the Senior Assistant Prosecutor for the City of Kachkanar | A-1628 |
| February 1, 2000 ruling of the Kachkanar City Court for the Sverdlovsk Oblast | A-1635 |
| February 15, 2000 decision of the Arbitrazh Court for the Sverdlovsk | A-1649 |

- 4 -

| | |
|---|---|
| Oblast | |
| March 8, 2001 decision by the Moscow City Court | A-1657 |
| September 19, 2000 decision of the Meshchansky Inter-Municipal Regional Court of Moscow | A-1667 |
| **VOLUME 10 OF 13:** | |
| March 26, 2001 decision of the Moscow City Court | A-1676 |
| November 21, 2000 decision of the Tverskoy Inter-Municipal Regional Court of Moscow | A-1683 |
| February 22, 2001 decision of the Appellate Instance of the Federal Arbitrazh Court of Moscow | A-1691 |
| November 16, 2000 decision of the Arbitrazh Court of Moscow | A-1698 |
| April 26, 2001 decision of the Federal Arbitrazh Court of the Moscow Circuit | A-1706 |
| December 13, 2000 decision of the Perovsky Inter-Municipal Regional Court of Moscow | A-1712 |
| Davis Complaint filed in Moscow before the Gagarinsky Inter-Municipal Court of Moscow | A-1728 |
| April 10, 2000 decision of the Perovsky Inter-Municipal Regional Court of Moscow | A-1737 |
| September 25, 2000 decision of the Perovsky Inter-Municipal Regional Court of Moscow | A-1747 |
| October 26, 2000 decision of the Moscow City Court | A-1752 |
| September 17, 2001 decision of the Gagarinsky Inter-Municipal Court of Moscow | A-1758 |
| May 30, 2000 decision of the Tverskoy Inter-Municipal Regional Court | A-1761 |
| February 7, 2000 decision of the Tverskoy Inter-Municipal Court of Moscow | A-1765 |
| December 22, 2000 decision of the Gagarinsky Inter-Municipal Court of Moscow | A-1768 |
| February 14, 2000 decsion of the Cheryomoushkinsky Inter-Municipal Court of Moscow | A-1774 |
| March 2, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1779 |
| September 4, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1784 |
| August 14, 2000, decision of the Kachkanar City Court of the Sverdlovsk Oblast | A-1790 |

| | |
|---|---|
| February 15, 2000 decision of the Kachkanar City Court | A-1797 |
| February 29, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1801 |
| March 6, 2001 decision of the Moscow City Court | A-1806 |
| April 5, 2000 decision of the Meshchansky Inter-Municipal Regional Court of Moscow | A-1814 |
| June 22, 2001 decision of the Tverskoy Inter-Municipal Regional Court of Moscow | A-1827 |
| Two Notices of registrar change published in the *Oblastnaya gazeta* on, respectively, March 17, 2000 and October 21, 2000 | A-1832 |
| March 20, 2001 decision by the Arbitrazh Court of Moscow | A-1839 |
| June 26, 2001 decision of Appellate Instance of the Arbitrazh Court of Moscow | A-1846 |
| **VOLUME 11 OF 13:** | |
| September 5, 2001 decision of the Federal Arbitrazh court of the Moscow Circuit | A-1852 |
| December 20, 2000 decision of the Petrogradsky Regional Court of St. Petersburg | A-1859 |
| January 12, 2001 decision of the Petrogradsky Regional Court of St. Petersburg | A-1864 |
| March 13, 2001 decision of Izmailovsky Regional Court of Moscow | A-1871 |
| March 13, 2001 decision of Izmailovsky Regional Court of Moscow | A-1874 |
| August 27, 2001 decision of the Chertanovo Federal Court | A-1877 |
| Agreement between GOK and Polyprom dated January 18, 1999 | A-1880 |
| November 22, 2000 decision of the Arbitrazh Court of the Republic of Kalmykia | A-1884 |
| April 17, 2001 decision of the Arbitrazh Court for the North Caucasus Region | A-1895 |
| July 5, 2001 decision of the Arbitrazh Court for the Republic of Kalmykia | A-1904 |
| November 9, 2001 decision of the Appellate Instance of the Arbitrazh Court for the Republic of Kalmykia | A-1910 |
| September 10, 2001 decision of the Arbitrazh Court for the Republic of Kalmykia | A-1919 |
| August 1, 2000 decision of the Arbitrazh Court for the Chelyabinsk Region | A-1924 |

| | |
|---|---|
| October 16, 2000 decision of the Appellate Instance for the Arbitrazh Court for the Chelyabinsk Region | A-1942 |
| January 4, 2001 decision of the Arbitrazh Court for Urals Circuit | A-1952 |
| September 29, 2000 decision of the Solntsevsky Inter-Municipal Regional Court of Moscow | A-1960 |
| March 30, 2001 decision of the Moscow City Court | A-1970 |
| November 30, 2001 decision of the Solntsevsky Inter-Municipal Regional Court of Moscow | A-1980 |
| Agreement between New Start Group, Corp. and Davis dated October 6, 2000 | A-1995 |
| Eugene Aschenbrenner's Power of Attorney to act on behalf of Davis (valid December 3, 1999 through December 3, 2000) | A-2002 |
| Nexis Loan Agreement dated July 13, 1999 | A-2010 |
| March 23, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2020 |
| July 13, 2000 decision of the Meshchansky Inter-Municipal Regional Court of Moscow | A-2027 |
| Republic of Panama v. BCCI Holdings (Luxemborg) S.A., 90-2913-CV-UUB, slip.op. (S.D. Fla. July 17, 1995) | A-2033 |
| **VOLUME 12 OF 13** | |
| October 29, 2001 decision of the Federal Arbitrazh Court for the Urals Circuit | A-2053 |
| November 24, 2001 Opinion of the Department of the Interior of the Sverdlovsk Region | A-2060 |
| January 21, 2002 decision of the Federal Arbitrazh Court for the North Caucasus Circuit | A-2084 |
| March 12, 2002 decision of the Arbitrazh Court for the Republic of Kalmykia | A-2094 |
| April 23, 2002 decision of the Federal Arbitrazh Court for the North Caucasus Circuit | A-2105 |
| April 30, 2002 decision of the Kachkanar Town Court for the Sverdlovsk Oblast | A-2108 |
| September 24, 2002 decision of the Kachkanar Town Court for the Sverdlovsk Oblast | A-2121 |
| November 19, 2002 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2126 |

| January 22, 2003 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2133 |
| February 4, 2003 decision of the Appellate Instance for the Arbitrazh Court for the Republic of Kalmykia | A-2143 |
| May 20, 2003 decision of the Federal Arbitrazh Court for the North Caucasus Region | A-2150 |
| May 27, 2003 decision of the Appellate Instance of the Arbitrazh Court for the Sverdlovsk Oblast | A-2159 |
| August 27, 2003 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2165 |
| October 30, 2003 decision of the Moscow Municipal Court | A-2170 |
| January 14, 2004 decision of the Federal Arbitrazh Court for the Urals Circuit | A-2176 |
| April 20, 2004 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2187 |
| **VOLUME 13 OF 13** | |
| April 27, 2004 decision of the Arbitrazh Court for the Republic of Kalmykia | A-2197 |
| July 2, 2004 decision of the Moscow City Court | A-2205 |
| July 29, 2004 decision of the Federal Arbitrazh Court for the Urals Circuit | A-2212 |
| December 7, 2004 decision of the Moscow City Court | A-2221 |
| September 18, 2001 decision of the Sverdlovsk Arbitrazh Court | A-2224 |
| December 20, 2001 decision of the Urals Circuit | A-2238 |
| May 22, 2002 decision of the Moscow City Court | A-2246 |
| August 22, 2002 decision of the Moscow City Court | A-2256 |
| September 10, 2002 decision of the Kalmykia Court | A-2269 |
| May 22, 2003 decision of the Sverdlovsk Arbitrazh Court | A-2277 |
| August 13, 2003 decision of the Solntsevsky Court | A-2283 |
| March 3, 2004 decision of the Sverdlovsk Arbitrazh Court | A-2289 |
| March 31, 2004 report issued by Russian Ministry of Internal Affairs | A-2294 |
| Declaration of Tatiana Yastrebova, dated September 16, 2002, filed in *Base Metal Trading* (without exhibits) | A-2314 |
| July 2, 2002 decision of the North Caucasus Circuit | A-2344 |

# Resume

Paul Brooke Stephan

University of Virginia                                  101 Bollingbrook Dr.
School of Law                                          Charlottesville VA 22911
580 Massie Rd.                                        E-mail: pbs@virginia.edu
Charlottesville VA 22903-1789                          Remote: 434-981-2442

(434) 924-7098;  FAX: (434) 924-7536                  (434) 293-6939; FAX: (434) 293-5487

Born 1950;  married to Dr. Pamela Clark;  sons Paul and George, daughter Adriana

## *Specialties*

post-Soviet law;  international business transactions;  federal taxation; U.S. constitutional law

## *Employment*

| | |
|---|---|
| Lewis F. Powell, Jr. Professor, University of Virginia School of Law | 2003- |
| Hunton and Williams Research Professor, University of Virginia School of Law | 1992-95, 2004- |
| Visiting Professor, Université Paris 2 – Panthéon-Assas, Faculté de Droit | 2004 |
| Visiting Professor, Institut d'Études politiques de Paris and Université Paris 1 – Panthéon-Sorbonne, Faculté de Droit | 2004 |
| Visiting Professor, Melbourne University, Faculty of Law | 2002, 2004 |
| Parsons Visiting Professor, Sydney University, Faculty of Law | 2004 |
| Visiting Professor, Université de Lausanne, Faculté de Droit | 2001 |
| Guest Professor, Universität Wien, Rechtswissenschaftliche Fakultät | 1998 |
| Percy Brown, Jr. Professor, University of Virginia School of Law | 1991-2003 |
| E. James Kelly, Jr – Class of 1965 Research Professor | 2000-03 |
| Barron F. Black Research Professor, University of Virginia School of Law | 1996-99 |
| Professor, University of Virginia School of Law | 1985-91 |
| Associate Professor, University of Virginia School of Law | 1983-85 |
| Assistant Professor, University of Virginia School of Law | 1979-83 |
| Law Clerk, Hon. Lewis F. Powell, Jr., Supreme Court of the United States | 1978-79 |
| Law Clerk, Hon. Levin H. Campbell, United States Court of Appeals for the First Circuit | 1977-78 |

## *Education*

| | |
|---|---|
| University of Virginia School of Law | J.D., 1977 |
| Executive Editor, VIRGINIA LAW REVIEW Order of the Coif | |
| Yale University (Russian Studies) | M.A., 1974 |
| Yale University (cum laude;  history major) | B.A., 1973 |

**A - 465**

### *Summer Employment*

| | | |
|---|---|---|
| Associate, Sullivan & Cromwell, New York, N.Y. | | 1977 |
| Associate, Covington & Burling, Washington, D.C. | | 1976 |
| Intern, Soviet Internal Branch, Office of Current Intelligence, Central Intelligence Agency | | 1974, 1975 |

### *Courses Taught*

property; contracts; comparative law; international business transactions; international law and the scholarly process; federal income taxation; corporate taxation; estate and gift taxation; international taxation; taxation of innovative financial transactions; tax policy; colloquium on international relations and international law; emerging markets; Russian law; foreign investment in the former Soviet Union; Soviet legal system; research seminar in Soviet law; tutorial in Soviet law; Soviet-Capitalist business transactions; international civil litigation; U.S. Supreme Court decisions;   legal aspects of foreign intelligence

### *Publications: In Print*

### *Books*

INTERNATIONAL BUSINESS AND ECONOMICS – LAW AND POLICY (1993, 2nd ed. 1996, 3rd ed. 2004) (with Julie A. Roin and Don Wallace, Jr.)

THE LAW AND ECONOMICS OF THE EUROPEAN UNION (2003) (with Ben W.F. Depoorter and Francesco Parisi)

### *Book Chapters*

*Energy Development and Distribution – What Can the Law Do?* in INTERNATIONAL ENERGY POLICY, THE ARCTIC AND THE LAW OF THE SEA (Myron H. Nordquist, John Norton Moore & Alexander S. Skaridov eds. 2005)

*Against International Cooperation*, in COMPETITION LAWS IN CONFLICT: ANTITRUST JURISDICTION IN THE GLOBAL ECONOMY 66 (Richard A. Epstein & Michael S. Greve eds. 2004)

*Regulatory Cooperation and Competition – The Search for Virtue* in TRANSATLANTIC REGULATORY COOPERATION – LEGAL PROBLEMS AND POLITICAL PROSPECTS 167 (George A. Bermann, Matthias Herdegen & Peter L. Lindseth eds. 2000)

*Inheritance and Gift Taxation* in IV ENCYCLOPEDIA OF LAW AND ECONOMICS 239 (Boudewijn Bouckaert & Gerrit De Geest eds. 2000)

*Toward a Positive Theory of Privatization: Lessons from Soviet-type Economies* in ECONOMIC DIMENSIONS IN INTERNATIONAL LAW 324 (Jagdeep S. Bhandari & Alan O. Sykes eds. 1997)

*Foreword* and *Westernization of the European East?* in LAW REFORM IN POST-COMMUNIST EUROPE: THE VIEW FROM WITHIN 1, 473 (Stanislaw Frankowski & Paul B. Stephan eds.1994) (with Stanislaw Frankowski)

*Introduction* and *Prevention and Control of International Terrorism*, in INTERNATIONAL LAW AND INTERNATIONAL SECURITY – A U.S.-SOVIET DIALOGUE ON THE MILITARY AND POLITICAL DIMENSIONS (Boris M. Klimenko & Paul B. Stephan eds. 1991) (published in the Soviet Union as Международное право и международная безопасность – Диалог советских и американских экспертов (1991))

*Introduction, Property Law and Economic Rights under Perestroyka: A Sovietologist's Perspective*, and *Revisiting the Incorporation Debate: The Role of Domestic Political Structure*, in THE MOSCOW CONFERENCE ON LAW AND BILATERAL ECONOMIC RELATIONS 147 (James R. Silkenat & Paul B. Stephan eds. 1991) (published in the Soviet Union as Тезицы выступлений советских и американских докладов – Московская конференция право и экономическое сотрудничество (1991))

### *Articles*

*Self-Enforcing International Agreements and the Limits of Coercion*, 2004 WISC. L. REV. 551 (with Robert E. Scott)

*US Constitutionalism and International Law: What the Multilateralist Move Leaves Out*, 2 J. INT'L CRIM. JUSTICE 11 (2004)

*Courts, the Constitution, and Customary International Law – The Intellectual Origins of the Restatement (Third) of the Foreign Relations Law of the United States*, 43 VA. J. INT'L L. 33 (2003)

*A Becoming Modesty – U.S. Litigation in the Mirror of International Law*, 52 DEPAUL L. REV. 627 (2002)

*Courts, Tribunals and Legal Unification – The Agency Problem*, 3 CHI. J. INT'L L. 333 (2002)

*Institutions and Élites: Property, Contract, the State, and Rights in Information in the Global Economy*, 10 CARDOZO J. INT'L & COMP. L. 801 (2002)

*Redistributive Litigation – Judicial Innovation, Private Expectations and the Shadow of International Law*, 88 VA L. REV. 789 (2002)

*The Political Economy of Conflicts of Laws*, 90 GEORGETOWN L.J. 957 (2002)

*International Governance and American Democracy*, 1 CHI. J. INT'L L. 237 (2000)

*Choice of Law and Its Consequences: Constitutions for International Transactions*, 26 BROOKLYN J. INT'L L. 211 (2000)

*Richardson v. McKnight and the Scope of Immunity after Privatization*, 8 SUP. CT. ECON. REV. 103 (2000) (with Clayton P. Gillette)

*The Cold War and Soviet Law*, PROCEEDINGS OF THE 93ᴿᴰ ASIL ANNUAL MEETING 43 (2000)

*Sheriff or Prisoner? The United States and the World Trade Organization*, 1 CHI. J. INT'L L. 49 (2000)

*Rationality and Corruption in the Post-Socialist World*, 14 CONN. J. INT'L L. 101 (1999)

*The Futility of Unification and Harmonization in International Commercial Law*, 39 VA. J. INT'L L. 743 (1999)

*The New International Law – Legitimacy, Accountability, Authority, and Freedom in the New Global Order*, 70 U. COLO. L. REV. 1555 (1999)

*Constitutional Limitations on Privatization*, 46 AM. J. COMP. L. 481 (Supp. 1998) (with Clayton P. Gillette)

*Creative Destruction – Idiosyncratic Claims of International Law and the Helms-Burton Legislation*, 27 STETSON L. REV. 1341 (1998)

*Toward a Positive Theory of Privatization – Lessons from Soviet-Type Economies*, 16 INT'L REV. L. & ECON. 173 (1996)

*Accountability and International Lawmaking: Rules, Rents and Legitimacy*, 17 NW. J. INT'L L. & BUS. 681 (1996-97)

*The Fall – Understanding the Collapse of Soviet Communism*, 29 SUFFOLK U. L. REV. 17 (1995)

*Barbarians Inside the Gates: Public Choice Theory and International Economic Law*, 10 AM. U. J. INT'L L. & POL'Y 745 (1995)

*Modern Techniques for Financial Transactions and Their Effects on Currency*, 42 AM. J. COMP. L. 203 (Supp. 1994), *reprinted in* MODERN TECHNIQUES FOR FINANCIAL TRANSACTIONS AND THEIR EFFECTS ON CURRENCY (Michael Stathopoulos ed. 1995)

*Further Thoughts on the Rule of Law and a New World Order*, 26 JOHN MARSHALL L. REV. 739 (1993)

*Privatization After Perestroyka: The Impact of State Structure*, 14 WHITTIER L. REV. 403 (1993)

*Labor Law in Russia – The Hopes and Fears of Post-Soviet Workers*, 32 VA. J. INT'L L. 789 (1992)

*Further Reflections on the Implementation of Comparative Advantage Principles in Trade Law*, 2 J. LEG. ECON. 111 (1992)

*Soviet Law and Foreign Investment: Perestroyka's Gordian Knot*, 25 INT'L LAW. 741 (1991)

*Revisiting the Incorporation Debate: The Role of Domestic Political Structure*, 31 VA. J. INT'L L. 417 (1991)

*Perestroyka and Property:   The Law of Ownership in the Post-Socialist Soviet Union*, 39 AM. J. COMP. L. 1101 (1991)

*International Law in the Supreme Court*, 1990 SUP. CT. REV. 133

*The Reconstruction of Soviet Commercial Law and Its Impact on International Business Transactions*, 24 GEO. WASH. J. INT'L L. & ECON. 89 (1990)

*Soviet Economic Law:   The Paradox of Perestroyka*, Carl Beck Papers in Russian and East European Studies, No. 805, June 1990

*Disaggregation and Subchapter C:  Rethinking Corporate Tax Reform*, 76 VA. L. REV. 655 (1990)

Перестройка и советология [Perestroyka and Sovietology] in США – ЭКОНОМИКА ПОЛИТИКА ИДЕОЛОГИЯ [USA – ECONOMICS, POLITICS, AND IDEOLOGY], No. 3, p. 30 (1989)

*Courts with Income Tax Jurisdiction – An International Comparison*, 8 VA. TAX REV. 233 (1988), republished as *Una Comparacion Internacional de Tribunales de Impuestos*, REVISTA DE TRIBUNA FISCAL DE LA FEDERACIÓN, NO. 11, p. 73 (1988)

*Constitutional Limits on the Struggle Against International Terrorism:   Revisiting the Rights of Overseas Aliens*, 19 CONN. L. REV. 831 (1987)

*Comrades' Courts and Labor Discipline Since Brezhnev*, in LAW AND ECONOMY IN THE U.S.S.R. 221 (Olimpiad S. Ioffe & Mark W. Janis eds. 1986)

*A Comment on Transfer Tax Reform*, 72 VA. L. REV. 1471 (1986)

*Nontaxpayer Litigation of Income Tax Disputes*, 3 YALE L. & POL'Y REV. 73 (1985)

*Human Capital and the Federal Income Tax*, 70 VA. L. REV. 1357 (1984)

Bob Jones University v. United States:   *Public Policy in Search of Tax Policy*, 1983 SUP. CT. REV. 33

*The First Amendment and Content Discrimination*, 68 VA. L. REV. 203 (1982)

*Constitutional Limits on International Rendition of Criminal Suspects*, 20 VA. J. INT'L L. 777 (1980)

*Defenses, Presumptions, and Burden of Proof in the Criminal Law*, 88 YALE L.J. 1325 (1979) (with John C. Jeffries, Jr.)

*The Central Intelligence Agency:   Present Authority and Proposed Legislative Change*, 62 VA. L. REV. 332 (1976)

**Books Edited**

PROCEEDINGS OF THE 94TH ASIL ANNUAL MEETING (2000)

LAW REFORM IN POST-COMMUNIST EUROPE: THE VIEW FROM WITHIN (1994) (with Stanislaw Frankowski)

INTERNATIONAL LAW AND INTERNATIONAL SECURITY – A U.S.-SOVIET DIALOGUE ON THE MILITARY AND POLITICAL DIMENSIONS (1991) (co-editor-in-chief with Boris M. Klimenko) (joint study with the USSR Diplomatic Academy; published in the Soviet Union as Международное право и международная безопасность – Диалог советских и американских экспертов (1991))

THE MOSCOW CONFERENCE ON LAW AND ECONOMIC COOPERATION (with James R. Silkenat 1991) (Conference organized by American Bar Association and USSR Union of Jurists) (published in the Soviet Union as Тезицы выступлений советских и американских докладов – Московская конференция право и экономическое сотрудничество (1991))

**Book Reviews**

*Book Review (Peter H. Solomon, Jr. & Todd S. Fogelsong, Courts and Transition in Russia: The Challenge of Judicial Reform*, 117 POL. SCI. Q. 165 (2002)

*Has Globalization Gone Too Far?* 18 NW. J. INT'L L. & BUS. 246 (1997)

*Book Review (Gordon B. Smith, Reforming the Russian Legal System)*, 56 RUSSIAN REV. 492 (1997)

*Book Review (Robert Rand, Comrade Lawyer)*, 51 RUSSIAN REV. 452 (1992)

*Book Review (P.I. Stuchka, Selected Writings; George Ginsburgs, The Soviet Union and Legal Cooperation)*, 49 RUSSIAN REV. 373 (1990)

*Glasnost' and the Soviet System of Justice (Book Review – Ger P. van den Berg, The Soviet System of Justice: Figures and Policy)*, 21 LAW & SOC'Y REV. 837 (1988)

*Book Review (George M. Armstrong, The Soviet Law of Property)*, 34 AM. J. COMP. L. 813 (1986)

*Book Review (John N. Hazard et al., The Soviet Legal System: Law in the 1980s)*, 12 SOVIET UNION/UNION SOVIÉTIQUE 351 (1985)

*Book Review (Frank M. Coffin, The Ways of a Judge)*, 67 VA. L. REV. 1447 (1981)

**In Press**

*The Constitution, International Treaties, and Contracts*, AM J. COMP. L. (2004)

*An Empirical Assessment of the Impact of Formal Versus Informal Dispute Resolution on Poverty: A Governance-Based Approach*, INT'L REV. L. & ECON. (2004) (with Edgardo Buscaglia)

*Process Values, International Law, and Justice*, SOCIAL PHILOSOPHY AND POLICY (2006)

*Global Governance, Antitrust, and the Limits of International Cooperation*, 37 CORNELL J. INT'L L. (2004)

*Economics of Taxation*, in ENCYCLOPEDIA OF LAW AND SOCIETY: AMERICAN AND GLOBAL PERSPECTIVES

**Work in Progress**

The New Leviathan – Enforcing International Law in the Twenty-First Century (book) (with Robert E. Scott) (to be published by Cambridge University Press in 2006)

The New International Law (book)

**Miscellany**

*The Skeptic Speaks: I am Not a Blind, Pig-Stupid Opponent of Unification*, PROCEEDINGS OF THE 96TH ASIL ANNUAL MEETING 336 (2002)

FEDERAL ESTATE AND GIFT TAXATION (2001) (Smith's Outline Series)

*Introduction*, PROCEEDINGS OF THE 94TH ASIL ANNUAL MEETING *xi* (2000)

*International Law and Economics – Remarks*, PROCEEDINGS OF THE 90TH ASIL ANNUAL MEETING 115 (1997)

*Change in the Soviet Union: Political Dynamics in the Gorbachev Era* in SOVIET AND POST-SOVIET RUSSIA IN A WORLD IN CHANGE 3 (Allen C. Lynch & Kenneth W. Thompson eds. 1994)

The Political Economy of Federalism: The United States Experience and Soviet Problems (for Moscow conference on federalism, December 1991) (published in U.S.S.R. as Политическая экономия федерализма – опыт США и советские проблемы)

*A U.S. Perspective on the Legal Environment for Foreign Investment in Russia*, in PRACTICING LAW INSTITUTE, LEGAL AND PRACTICAL ASPECTS OF DOING BUSINESS IN THE SOVIET REPUBLICS (1992)

Из почты международных отделов – Советы юриста [Postings from Abroad – A Lawyer's Advice], Правда [PRAVDA], Jan. 16, 1991, p. 7

FEDERAL INCOME TAXATION (1990, 2nd ed. 1994, 3rd ed. 1997, 4th ed. 2001) (Smith's Outline Series)

*History, Background and Outstanding Problems of the Twenty-Fifth Amendment: Its History and Meaning* in PAPERS ON PRESIDENTIAL DISABILITY AND THE TWENTY-FIFTH AMENDMENT (1988) (for Commission on Presidential Disability and the Twenty-fifth Amendment)

SIGNIFICANT SUPREME COURT DECISIONS, 1980 TERM (1985) (for American Enterprise Institute)

*Foreword: The First Amendment and National Security* in THE FIRST AMENDMENT AND NATIONAL SECURITY (1984) (for Center for Law and National Security, University of Virginia School of Law)

*Lecturing and Consulting Activities*

*international and U.S. governmental organizations*

International Bank for Reconstruction and Development (World Bank) – advisor on drafting of Turkmenistan Tax Code

Organization for Economic Cooperation and Development – organized workshops for Central and East European governments on tax dispute resolution; made presentation to quarterly meeting of Competition Committee of Directorate for Financial, Fiscal and Enterprise Affairs

International Monetary Fund – adviser on implementation of Kazakh tax code and on drafting of Azerbaijan tax code

Organization of Black Sea Economic Cooperation – advisor on various legal issues

U.S. Court of Appeals for the Fourth Circuit – speaker at 2001 Judicial Conference

U.S. Department of Treasury – adviser on technical assistance to Central and East European and former Soviet states

U.S. Securities and Exchange Commission – lecturer in International Securities Regulation symposium

U.S. Tax Court – reporter for 1988 International Conference on Courts with Income Tax Jurisdiction; speaker at 2001 Judicial Conference

Federal Bureau of Investigation – lecturer in programs for combatting international organized and white collar crime involving former Soviet Union

Central Intelligence Agency – lecturer on Soviet politics and international law issues

Treasury Executive Institute, U.S. Department of Treasury – lecturer on Soviet management problems

House Committee on Ways and Means – invited to testify on international law aspects of expatriation tax

Office of Technology Assessment, U.S. Congress – consultant on problems of First Amendment and information controls

National Judicial College – organized and taught in training program for Soviet judges

Supreme Court of Virginia – lecturer at semiannual district judges conferences and annual judicial conferences

Delaware Supreme Court – lecturer on recent Supreme Court decisions

*foreign governments and educational institutions*

Soviet-American Center for the Development of Constitutional Democracy – planning committee

Supreme Court of the Republic of Georgia – co-chair of international working group developing model commercial and business laws

National Democratic Institute for International Relations – election observer for Georgian elections

Fund for Education, Ministry of Foreign Affairs of the Republic of Georgia – foreign member of advisory board

Centre Americain, Institut d'Études politiques de Paris – lecturer on U.S. approaches to international law

Australian National University – lecturer on U.S. approaches to international law

Diplomatic Academy, Austrian Ministry of Foreign Affairs – lecturer on legal aspects of the post-Communist transition

Ministry of Foreign Affairs of the Georgian Republic – lecturer on international law and domestic elections

Diplomatic Academy, Soviet Ministry of Foreign Affairs – lecturer on international law and superpower relations

Tbilisi State University, Faculty of International Relations – lecturer on international law of trade and economics

Moscow State University, Faculty of Social Sciences – lecturer on the United States and Perestroyka

*private legal practice*

Counsel of Record, brief of *Amicus Curiae*, Medellin v. Dretke, No. 04-5928, Supreme Court of the United States
Counsel of Record, brief of *Amicus Curiae*, Sosa v. Alvarez-Machain, No. 03-339, Supreme Court of the United States
Counsel for petitioner, Hausmaninger v. Commissioner (U.S. Tax Court 2003)
Wilmer, Cutler & Pickering – adviser, 1990-95
DLA Piper Rudnick Gray Cary – expert on Russian law
Greenberg Taurig – expert on Russian law
Akin Gump Strauss Hauer & Feld – expert on Russian law
Covington & Burling – adviser on Russian law
Morvillo, Abramowitz, Grand, Iason & Silberberg – expert on Russian law
Piper Rudnick – expert on Russian law
White & Case – expert on Russian law
Perkins Coie – expert on Russian law
Winston & Strawn – expert on Russian law
Sullivan & Cromwell – expert on Russian law
Munger Tolles & Olson – expert on international business practices
Latham & Watkins – adviser on Russian law
Williams & Connolly – expert on international financial transactions
Hogan & Hartson – expert on Russian law
Steptoe & Johnson – expert on Russian law
Richards Butler – expert on international-letter-of-credit law
Coudert Brothers – adviser on Russian law
Jenner & Block – expert on Russian law
Films By Jove, Inc. – expert on Russian law

*judicial citations of expert opinions*

Norex Petroleum Ltd. v. Access Industries Inc., 304 F. Supp. 2nd 570 (S.D.N.Y. 2004) (issue of adequacy of Russian courts for purposes of *forum non conveniens*)
JSC Foreign Economic Ass'n Technostroyexport v. International Development and Trade Services, Inc., 295 F. Supp. 2nd 366 (S.D.N.Y. 2003) (issue of Russian statute of limitations)
Base Metal Trading, S.A. v. Russian Aluminum, 253 F. Supp. 2nd 681 (S.D.N.Y. 2003) (issue of adequacy of Russian courts for purposes of *forum non conveniens*)
Films By Jove, Inc. v. Berov, 154 F. Supp. 2nd 432 (E.D.N.Y. 2001), 250 F. Supp. 2nd 156 (E.D.N.Y. 2003) (issues of ownership of copyright under Soviet law and effect of conversion of state enterprise into lease enterprise)
Pavlov v. Bank of New York Co., 135 F. Supp. 2nd 426 (S.D.N.Y. 2001) (issue of adequacy of Russian courts for purposes of *forum non conveniens*)

*summer teaching*

Center for Transnational Law, Westfälische Wilhelms-Universität, Münster – guest professor, 2000, 2005

University of San Diego International and Comparative Law Institute – visiting professor, 1998, 1999, 2005 (Paris)

Russian Law Institute, Emory University – instructor, 1994

Cardozo Law School Summer Institute at Moscow State Institute for International Relations – visiting professor and educational director, 1991

Virginia Law School LL.M. in the Judicial Process – instructor, 1981, 1985, 1987, 1989, 1997, 2000

*international conferences*

2004 Conference on Justice and Global Politics, Bowling Green State University – delivered paper

2004 Kennedy School of Government, Harvard University, conference on regulatory competition and complementarity – commentator

2004 St. Petersburg Conference on International Energy Policy, the Arctic and the Law of the Sea – panelist

2004 Annual Meeting of American Society of International Law – panelist

2003 Annual Meeting of American Society of Law and Economics – delivered paper

2003 American Enterprise Institute Conference on Antitrust Policy: Competition and Cooperation – delivered paper

2002 Clifford Symposium on Civil Litigation – delivered paper

2002 Annual Meeting of American Society of International Law – delivered paper

2001 Annual Meeting of European Law and Economics Association – delivered paper

2000 Annual Meeting of Latin American Law and Economics Association – delivered paper

2000 Annual Meeting of American Society of International Law – co-chair of program committee, panelist and panel moderator

1997 Annual Meeting of American Society of International Law – delivered paper

1994 Congress of the International Academy of Comparative Law – U.S. delegate, delivered paper

1991 International Center Moscow Conference on Federalism – planning committee and delivered lead paper

1990 American Bar Association Moscow Conference on Law and Economic Cooperation – vice chair of executive committee; member of faculty

*nongovernmental organizations*

American Constitution Society – speaker at 2004 annual meeting

American Society of International Law, International Economic Law Interest Group – speaker and panelist at various conferences

American Society of International Law, International Law in Domestic Courts Interest Group – speaker and commentator at various conferences

American Enterprise Institute – speaker at conferences on sovereignty and antitrust federalism

Sanford Institute of Public Policy, Duke University – lecture on tax dispute resolution in Russia

International Law Institute – lecturer on privatization and tax reform for Kazakh and Mongolian legal officials and law reform for Russian legal academics

American Bar Association Central and East European Law Initiative – Chair, Commonwealth Planning Group, and participant in assessment trips and workshops in Moscow and Kiev; member of advisory board, 1992-95

American Bar Association Section on International Law and Practice – Chair, Special Committee on Soviet law projects; member, council, 1991-94; member of advisory committee for Soviet lawyer internship projects; chair of committee on legal education

American Association of Law Schools – lecturer at conference for property law teachers

Forum for U.S.-Soviet Dialogue – chair (1986-89), board of directors (1983-91), conference participant (1982-1991)

Association of State Attorney Generals – organized and lectured in program for Soviet procurators

Institute of Chartered Financial Analysts – tax counsel

Commission on Presidential Disability and the Twenty-Fifth Amendment – counsel to the Commission

Soviet Jewry Legal Advocacy Center – lecturer on Soviet criminal law and human rights violations

Virginia Hospital Buyers Association – lecturer on contract law at annual seminars

American Enterprise Institute – lecturer and consultant on activities of U.S. Supreme Court

Federal Executives Institute – lecturer at seminars on legal aspects of foreign intelligence and post-Soviet politics

### *Professional Membership and Affiliations*

Member, Supreme Court of United States, Virginia, District of Columbia, and U.S. Tax Court Bars (Tax Court Code No. SP0422)

Editorial Board, Review of Law and Economics

Co-Editor, European Law Abstracts, Legal Scholarship Network (with John Bell)

Advisory board, Comparative Law Abstracts, Legal Scholarship Network

Honorary board, US-Caucasus Institute

American Law Institute

American Society of International Law

American Law and Economics Association

Contributing Editor, Preview of United States Supreme Court Cases, Public Education Division, American Bar Association

Omicron Delta Kappa

## Participation in U.S. Lawsuits

1.    Pompano Air Center, Inc. v. Sukhoi Design Bureau, Case No. 96-2883-CIV-ATKINS (S.D.Fla.).  Retained by Hogan & Hartson, representing Sukhoi, to provide opinion on adequacy of Russian court system in support of a motion to dismiss on grounds of forum non conveniens.

2.    Films By Jove, Inc. v. Berov, 98 Civ. 7674 (E.D.N.Y.). Retained by Films By Jove to provide opinions on Russian law of business organization, intellectual property, and civil procedure in a dispute over the ownership of the U.S. copyright for certain Soviet-era television programs. Judicial opinions in the lawsuit include Films By Jove, Inc. v. Berov, 154 F. Supp. 2nd 432 (E.D.N.Y. 2001), motion to reconsider denied, 250 F. Supp. 2nd 156 (E.D.N.Y. 2003), motion to vacate judgment denied, 341 F. Supp. 2nd 199 (E.D.N.Y. 2004).

3.    Pavlov v. Bank of New York, 99 CIV. 10347 (S.D.N.Y.).  Retained by Sullivan & Cromwell, representing Bank of New York, to provide opinion on adequacy of Russian court system in support of a motion to dismiss on grounds of forum non conveniens. Judicial opinions in the lawsuit include Pavlov v. Bank of New York Co., 135 F.Supp.2nd 426 (S.D.N.Y. 2001), vacated on other grounds by an unpublished decision, 25 Fed Appx. 70 (2nd Cir. 2002), reaffirmed, 2002 U.S. Dist. LEXIS 19614 (S.D.N.Y. 2002).

4.    Base Metal Trading S.A. v. Russian Aluminum, 00 CIV. 9627 (S.D.N.Y.). Retained by Winston & Strawn, representing Russian Aluminum, to provide opinion on adequacy of Russian court system in support of motions to dismiss on grounds of forum non conveniens and comity. Judicial opinions in the lawsuit include Base Metal Trading

S.A. v. Russian Aluminum, 253 F. Supp. 2nd 681 (S.D.N.Y. 2003), affirmed, 98 Fed. Appx. 47 (2nd Cir. 2004).

5.      Archangel Diamond Corp. v. Lukoil, Civil Action No. 02-Z-65 (D.Colo.) and Case No. 01-CV-6514 (Denver Dist. Ct.). Retained by Winston & Strawn, representing co-defendant Archangelskoe Geologodobychnoe Company, to offer an opinion on the adequacy of the Russian court system in connection with motions to dismiss on the grounds of forum non conveniens, comity, and res judicata. Judicial opinions in the lawsuit include Archangel Diamond Corp. v. Lukoil, (unreported, Denver Dist. Ct. 2002), affirmed, 94 P.3rd 1208 (Col. Ct. App. 2004), certiorari granted, 2005 Colo. LEXIS 11 (Col. Sup. Ct.).

6.      Norex Petroleum v. Access Industries, 02 Civ. 1499 (S.D.N.Y.). Retained by White & Case, representing co-defendant Tyumen Oil Company, to offer an opinion on the adequacy of the Russian court system in connection with motions to dismiss on grounds of forum non conveniens and comity. Judicial opinions in the lawsuit include Norex Petroleum v. Access Industries, 304 F. Supp. 2nd 570 (S.D.N.Y. 2004).

7.      Creditanstalt Investment Bank AG v. Holmes Roberts & Owen, LLP, Case Number: 01-CV-1677 (Denver Dist. Ct.). Retained by Perkins Coie, representing Holmes Roberts & Owen, to offer an opinion on civil liability under Russian law for legal malpractice.

8.      JSC Foreign Economic Association Technostroyexport v. International Development and Trade Services, Inc., 03 Civ. 5562 (S.D.N.Y.). Retained by of Morvillo, Abramowitz, Grand, Iason & Silberberg, representing defendants, to offer an opinion on the Russian statute of limitations applicable to the enforcement of an arbitral

award. Judicial opinions in the litigation include <u>JSC Foreign Economic Association Technostroyexport v. International Development and Trade Services, Inc.</u>, 295 F. Supp. 366 (S.D.N.Y. 2004).

9.    <u>JSC Surgutneftegaz v. Presidents and Fellows of Harvard College</u>, 04 Civ. 6069 (S.D.N.Y.). Retained by Akin Gump Strauss Hauer & Feld, representing Surgutneftegaz, to offer an opinion on the adequacy of the Russian court system in connection with a motion to stay arbitration.

10.    <u>Whale Telecom Ltd. v. Qualcomm Inc.</u>, Case No. 116103/04 (Sup. Ct. N.Y.). Retained by DLA Piper Rudnick Gray Cary, representing Qualcomm Inc., to offer an opinion on the Russian statute of limitations applicable to claims derived from an alleged breach of contract.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

BASE METAL TRADING, S.A.; BASE METAL      :
TRADING, LTD; ALUCOAL HOLDINGS, LTD; MIKOM;   :
DAVIS INTERNATIONAL, LLC; HOLDEX, LLC; FOSTON  :   Docket No. 00 Civ. 9627
MANAGEMENT, LTD.; OMNI TRUSTHOUSE, LTD;   :
NEXIS PRODUCTS, LLC; and POLYPROM, LTD.,    :
                                           :
          Plaintiffs,          :
        v.                       :

RUSSIAN ALUMINUM; RUAL TRADE, LTD.;     :
SIBIRSKY ALUMINUM PRODUCTS USA CORP    :
  a/k/a SIBIRSKY ALUMINUM (US);        :
SIBIRSKY ALUMINUM (Russia);          :
BAUXAL MANAGEMENT, S.A.; METCARE     :
MANAGEMENT, S.A.; UNIMETAL         :
LIMITED, S.A.; OLEG DERIPASKA; MIKHAIL    :
CHERNOI; BLONDE MANAGEMENT, INC.;     :
BLONDE INVESTMENTS CORP.;         :
PAN-AMERICAN CORP.; ARNOLD KISLIN;    :
ISKANDER MAKHMUDOV; MOSKOVSKIY    :
DELOVOI MIR BANK; NOVOKUZNETSK     :
ALUMINUM ZAVOD; NEW START GROUP    :
CORP.; VENITOM CORP.; UNIDALE LLC; and  :
INVESTLAND, LLC              :
         Defendants.        :
-------------------------------------------------------------------x

A - 479

## DECLARATION OF PAUL B. STEPHAN III

I, Paul B. Stephan III, declare:

1.  My name is Paul B. Stephan III. I hold the Percy Brown, Jr. Chair and the E. James Kelly, Jr.–Class of 1965 Research Chair at the University of Virginia School of Law. I became a full professor at Virginia in 1985, have held the Brown Chair since 1990, and have held the Kelly Chair since 2000. I received a B.A. in History from Yale University in 1973. I also received an M.A. in Russian Studies from Yale in 1974. After graduating from the University of Virginia School of Law in 1977, I worked first as a law clerk for Judge Levin H. Campbell of the United States Court of Appeals for the First Circuit, and then for Justice Lewis F. Powell, Jr. of the Supreme Court of the United States. A copy of my Resume is attached hereto as Exhibit A.

2.  I joined the Virginia faculty in 1979 and have taught Soviet and post-Soviet law continuously since then. I have worked for numerous government agencies, law firms, international organizations, nongovernmental organizations, and private businesses as an adviser on matters relating to Soviet and Russian law. In particular, from 1993 to 1998 I was employed by the U.S. Department of Treasury as a consultant on issues relating to tax reform in former socialist countries, with the lion's share of my work in Russia. I have taught or lectured in many legal and research institutions in Russia, as well as Azerbaijan, Georgia, Kazakhstan and Ukraine, and have published a number of books and articles–in both Russia and the United States–dealing with Soviet and Russian law.

3.  I have worked with the Russian court system generally, and in particular with the courts responsible for commercial disputes (the so-called arbitrazh courts) for more than a decade. In 1990 the U.S. Agency for International Development, through the National Judicial College, contracted with me to organize and lead a U.S.-based program for the education of Soviet judges,

2

A - 480

including members of the Russian Supreme Court. In 1990 I also worked with Soviet judges, including members of the Supreme Court of the U.S.S.R. and judges in the arbitrazh system, in my capacity as organizer of an American Bar Association conference on Soviet Law. In 1992, acting on behalf of the American Bar Association's Central and East European Law Initiative, I met with the leadership of the various branches of the Russian court system and led a seminar on judicial training at the Russian Ministry of Justice's judicial training institute. Between 1994 and 1997, acting on behalf of the U.S. Treasury, I worked with the Presidium of the Supreme Arbitrazh Court of the Russian Federation to design and implement a training program for judges in the arbitrazh court system responsible for deciding tax disputes. As part of this program I led classes for arbitrazh court judges in both Moscow and the United States and organized and participated in training seminars for these judges and other Russian officials in both Paris and Vienna. I have maintained professional and scholarly contacts with a number of participants in the arbitrazh court system as well as other members of the Russian judiciary.

4. In July 1997, the law firm of Hogan & Hartson retained me to offer a declaration on the adequacy of the Russian legal system in connection with a motion to dismiss on grounds of *forum non conveniens* with respect to *Pompano Air Center, Inc. v. Sukhoi Design Bureau*, Case No. 96-2883-CIV-ATKINS (S.D. Fla.). That case was settled before the court had an opportunity to consider the motion. In December 1999, I submitted a declaration in connection with a motion to dismiss on grounds of *forum non conveniens* in the case of *Pavlov v. Bank of New York*, 99 CIF. 10347 (LAK) (S.D.N.Y.). Judge Kaplan granted that motion on March 21, 2001. *Pavlov v. Bank of New York Co.*, 135 F. Supp. 2nd 426 (S.D.N.Y. 2001), *vacated on other grounds by an unpublished decision* (Jan. 14, 2002). In both instances, my declarations explained why Russia offered an adequate alternative forum for the matters in dispute.

3

5.  Sibirsky Aluminum and Oleg Deripaska have requested my opinion about matters relating to the adequacy of the courts of the Russian Federation as an alternative forum for the subject matter of the litigation brought by Base Metal Trading, Ltd. et al., as claimants under contracts with Novokuznetsk Aluminum Zavod (NKAZ), and for the litigation brought by Davis International et al., as alleged shareholders or creditors of Kachanar GOK "Vanadium" (GOK)[*] and as alleged victims of a purported conspiracy to obtain control of various Russian metals industries. These defendants also have requested my opinion about the validity of the legal proceedings that have occurred in Russia with respect to these claims. I submitted a declaration to this court signed on May 23, 2001, based on the issues raised in the plaintiffs' original complaint, and this declaration repeats at various points the observations and opinions contained in that earlier declaration. Based on my personal knowledge of and experience with Russian law, I do not believe that there is any reason to conclude that the Russian courts would not provide an adequate forum. In fact, the arbitrazh court system already has exercised jurisdiction over NKAZ and most of the contracts that plaintiffs alleged to have been breached during the course of the NKAZ bankruptcy proceedings. The decisions reached by this system remain open to certain collateral challenges to the judgments already reached. The dispute over the ownership of shares in GOK and injuries alleged to have been suffered as a result of the bankruptcy of GOK also have been the subject of litigation in both the arbitrazh court system and in the Russian courts of general jurisdiction. Further judicial review of all of these claims remains available in Russia. In addition, the Russian courts would entertain a claim for damages based on the assertion that the defendants in this suit injured the business interests of plaintiffs through fraudulent or otherwise

---

[*] The Russian acronym "GOK" is a generic term meaning "mineral processing company." There are many GOKs in Russia, but, to my knowledge, only one trades under the name "Vanadium." But because the amended complaint uses this acronym as designating the "Vanadium" company, and because there appear to be no other GOKs involved

4

criminal misconduct. In all instances the Russian courts would be an adequate, indeed the most competent, forum to determine the enforceability and content of the arbitration agreements in dispute. Moreover, those Russian court decisions that already have been reached reflect acceptable and fair procedures and apply Russian rules of law that meet general standards for reasonable commercial practice.

The Russian "Arbitrazh Courts"

6. The system of "state arbitrazh" arose in the Soviet Union originally as a means of resolving disputes between state-owned enterprises with respect to their contractual relations. It may have been envisioned as an informal means of working out differences between firm managers (hence the name "arbitrazh," which is Russian for "arbitration"), but by the Khrushchev period (1953-1964) the system had acquired all the characteristics of a formal, law-oriented court. When the Soviet regime relaxed its controls on private entrepreneurial activity in the late 1980s, the system of state arbitrazh became the logical venue for addressing business law disputes. In July 1991, the Russian Federation enacted a "Law on Arbitrazh Courts" that codified this role, and in March 1992 an "Arbitrazh Procedure Code." The Russian parliament substantially revised both these laws in April 1995. The Constitutional Law on Arbitrazh Courts in the Russian Federation, enacted at that time, established a three-tier system of courts with jurisdiction over commercial disputes, including bankruptcy. The name "arbitrazh" continues to exist for historical reasons, but the institution is in every sense of the word a court system. Most English translations refer to the institution as the Commercial Court, a name that accurately captures that body's function. A publication of the U.S. Department of Commerce, Handbook on Commercial Dispute Resolution

---

in this litigation, I will use GOK to refer to "Vanadium."

in the Russian Federation, provides a helpful review of the arbitrazh court system, as well as of the courts of general jurisdiction. This publication appeared as Exhibit B to my prior declaration.

7.  The arbitrazh court system, as noted in the previous paragraph, comprises three levels of courts. The lowest level arbitrazh courts both consider the "first instance" of cases (the analog to a trial in our system) and can hear appeals of decisions of members of that court. These courts also have the right to reopen proceedings in the light of newly discovered circumstances. The Federal Circuit Arbitrazh Courts exercise appellate review (what in Russian terminology is called cassational review) over decisions of the lower courts, including those that already have been appealed within the lower courts. Ten such courts were created by the 1995 Code. The Supreme Arbitrazh Court (sometimes called the Higher Arbitrazh Court), based in Moscow, has original jurisdiction over a limited number of disputes involving the Russian Federation, exercises supervisory review over the other arbitrazh courts, and has the authority to reopen closed cases in light of newly discovered circumstances. Supervisory jurisdiction is roughly analogous to the certiorari jurisdiction of the Supreme Court of the United States, inasmuch as it is appellate in nature and discretionary rather than of right.

8.  One of the functions that the arbitrazh courts perform is winding up the affairs of insolvent private firms through bankruptcy proceedings. Unlike the U.S. system, there are no separate bankruptcy judges; rather, the arbitrazh courts handle bankruptcies as part of their overall responsibilities. These courts also resolve disputes among businesses, including joint stock companies and individuals acting in an entrepreneurial capacity. Their jurisdiction extends to disputes over the fulfillment of contracts, other violations of the rights of enterprises and entrepreneurs, and controversies involving foreign organizations and persons engaged in economic activity.

6

9.  The Arbitrazh Procedure Code of the Russian Federation makes clear that the court system is to operate under principles of legality and independence. Article 4 protects a citizen's right of access to the courts; Article 5 guarantees the independence of judges; Article 6 prescribes the principle of equality before the law; and Article 7 ensures equal rights to all parties on the basis of adversariality. Article 8 protects the rights of persons who lack knowledge of Russian, and Article 9 requires open proceedings except in limited circumstances. Article 33 describes the procedural rights of participants in arbitrazh court proceedings, including the right to present evidence, to ask questions, and to object to the evidence and questions presented by other parties. Article 44 established the right of an arbitrazh court to summon witnesses to give evidence, and Article 54(2) gives participants the right to petition the court to obtain a summons of witnesses and other evidence. Article 47 guarantees the right of participants to have legal representatives act on their behalf in court.

10. The fact that not every procedural right available under the U.S. Federal Rules of Civil Procedure is identically protected by the Russian Arbitrazh Procedure Code does not render the arbitrazh courts an invalid alternative forum. In particular, while discovery rights are different under Russian law than those that exist in the United States, they are not inadequate. The procedural rules of the arbitrazh court provide for full discovery of evidence relevant to the matter before it. The mechanism for discovery, which is described in Chapter 6 of the Arbitrazh Procedure Code, closely resembles that available in most Western European courts, such as those of Germany or France. The arbitrazh court has clear authority under Articles 54(2), 71 and 73 of the Arbitrazh Procedure Code to procure and preserve all evidence for which a party makes a showing of relevance.

7

11. No one who has studied the operation of the arbitrazh court system could honestly claim that it operates perfectly all of the time or that all of the strictures of the Arbitrazh Procedure Code always are honored. Russia has been involved in a difficult transition process involving the replacement of state control over the economy with a system of law-based commercial relations. From the beginning of the transition, however, the country's leadership, with significant U.S. support, has invested in strengthening and protecting the integrity of the judicial system generally, and the arbitrazh courts in particular. My work with participants in the system and study of its operations leads me to conclude that the leadership of the system is committed to making the legal guarantees contained in the Code a reality for all participants. It is realistic for persons who litigate in these courts to expect a fair and disinterested resolution of business disputes based on the law and evidence.

12. In practice, the Russian arbitrazh courts have demonstrated an ability to decide cases fairly to creditors such as plaintiffs here. The crisis in the banking industry following the August 1998 collapse of the ruble has presented the greatest challenges to the system. Rossiyskiy Credit Bank, Uneximbank, SBS-Agro, and Mezhkombank all have carried out restructurings with partial or full court supervision, and in each case alleged efforts by bank insiders to strip assets to the detriment of bank creditors have been defeated. Other industries similarly have witnessed successful resolutions of bankruptcies under the supervision of the arbitrazh courts. The Russian press has cited Topkinsky Cement in the Kemerovo region and the Amurstal steel enterprise in the Far East as examples of bankrupt firms that have managed to reorganize their operations and retain economic viability. In recognition of the fundamental fairness of Russian bankruptcy procedures, at least one U.S. bankruptcy court has supported the reorganization of Rossiyskiy Credit Bank under way in Russia by enjoining U.S. lawsuits that contravene the protective order

8

of the Russian bankruptcy authorities. *In re Rossiyskiy Kredit Bank,* No. 00-13504 (Oct. 11, 2000, S.D.N.Y.) (Beatty, J.), *reported in* National Law Journal, Dec. 4, 2000, p. B1.

13. In addition, the arbitrazh courts can handle this dispute expeditiously. Article 114 of the Arbitrazh Procedure Code imposes a sixty-day limit on the consideration of a case by the trial court, a period that commences with the filing of the claim. The appeals process is similarly regulated. Some exceptions to this strict time limitation exist, but in general the arbitrazh courts handle the cases before them expeditiously and in much less time than U.S. courts normally take to decide civil disputes.

14. Besides bankruptcy cases, Russian arbitrazh courts consider disputes between commercial actors, whether legal persons or individuals who have registered as entrepreneurs. In particular, arbitrazh courts have the authority and capacity to determine disputed claims of stock ownership, if the parties to the dispute are commercial actors. An aggrieved shareholder may vindicate its rights through at least two different processes. It may sue directly the person who has contested its ownership of share of stock. Alternatively, an aggrieved shareholder may sue the registrar of a company's shares to force the registrar to recognize its claim of ownership. In deciding such disputes, the arbitrazh court would apply the Russian Civil Code and other relevant legislation, including the 1996 Federal Law on the Securities Market and the 1995 Federal Law on Joint Stock Companies. Foreign persons have full rights of access to arbitrazh courts with respect to these cases.

15. Russian arbitrazh courts also have jurisdiction over corporate governance disputes where the aggrieved party is a legal person or a registered entrepreneur. The 1995 Federal Law on Joint Stock Companies provides for judicial oversight of decisions undertaken by the officials, governing bodies, and shareholders of stock companies to ensure compliance both with statutory

9

A - 487

law and with the enterprise's own charter and related constitutive instruments. Russian law ensures foreign investors full rights of access to the arbitrazh courts with respect to these issues.

The Courts of General Jurisdiction of the Russian Federation

16. The Soviet Union established a system of courts of general jurisdiction along the lines of those existing in Europe. During the Soviet period, these courts had jurisdiction over all judicially cognizable disputes, civil and criminal, except for those involving disputes between state enterprises. Because the system was organized within each of the fifteen Soviet republics, the Russian Federation had a functioning court system comprising three levels:  local courts, regional courts, and the Supreme Court of the Russian Federation. With the dissolution of the Soviet Union and the creation of the arbitrazh courts, the Russian Federation courts continued to operate. Under the Code of Civil Procedure, courts of general jurisdiction may hear cases involving tort, contract, and other private disputes. In particular, if a dispute involves an individual acting in his or her own capacity, rather than as the agent of an organization, who is not a registered individual entrepreneur, then a court of general jurisdiction, and not an arbitrazh court, will hear the case. The arbitrazh courts and courts of general jurisdiction coordinate their activity so as to avoid duplicative proceedings while ensuring that every lawful claim receives a hearing.

17. As does the arbitrazh court system, the courts of general jurisdiction operate under principles of legality and independence. The courts have the power to compel production of evidence, including non-party testimony. In all significant respects, the procedural rights of persons who participate in civil proceedings in these courts are the same as those who appear before the arbitrazh courts. Stringent time limits apply to civil cases within these courts, as specified in Article 99 of the Civil Procedure Code. As the arbitrazh courts and also with substantial U.S.

support, the courts of general jurisdiction have benefited from significant investments in training and strengthened protection of their integrity. It likewise is realistic for persons who litigate in these courts to expect a fair and disinterested resolution of business disputes based on the law and evidence. Under Russian law, these courts are open to foreigners on a nondiscriminatory basis.

18. The existence of the parallel courts systems for private litigation does not lead to excessive duplication of judicial resources or inconsistent adjudication. The leading bodies of the two systems, namely Plenary Sessions of the Supreme Court and the Supreme Arbitrazh Court, issue joint statements that serve as instructions to lower court judges on the application of particular norms and rules. These instructions serve a similar function in the Russian judicial system to the decisions of the Supreme Court of the United States in ours, namely the provision of authoritative guidance on points of law not explicitly resolved by other authorities. They complement rules found in the Code of Civil Procedure and the Arbitration Procedure Code which provide for consolidation of cases involving common parties and issues, venue of cases within the respective court systems, and allocation of cases between the two systems in instances of overlapping jurisdiction. In particular, when consolidating cases that have been brought separately in the arbitrazh courts and courts of general jurisdiction, the courts of general jurisdiction acquire exclusive jurisdiction over the consolidated case. The existence of these rules, of course, does not mean that lower courts always comply with them in a way that promotes efficiency and conserves judicial resources, any more than the U.S. federal and state courts always cooperate seamlessly. Rather, the existence of these rules and appellate supervision of first-instance courts combines to provide for reasonably effective coordination of litigation brought in multiple venues.

11

Jurisdiction and Venue Over Sibirsky Aluminum and the Other Defendants

19. The Russian courts are entitled to hear disputes against all persons at the place where at least one of those persons are located. In situations where a person has multiple locations or there are several defendants with different locations, the plaintiff may choose among those locations. Suits against Russian citizens and organizations that have foreign locations may be brought at the place of the plaintiff's location or wherever the respondent has property. Foreign firms with a representative office or subsidiary in Russia are subject to a court's jurisdiction at the location of the office or subsidiary. Suits against foreign persons who do not have a representative office or a subsidiary in Russia may be brought before the courts if the claim involves a contract that is to be carried out in Russia, is based on a tort or unjust enrichment that occurs in Russia, or the foreign person has consented to jurisdiction.

20. The amended complaint in this case involves allegations that various legal persons (legal entities) and individuals acted together to harm plaintiffs. Were this dispute to be brought in Russia, this case might be heard either by the arbitrazh courts or by the courts of general jurisdiction, depending on how the plaintiffs chose to pursue their claims. Were the plaintiffs, all of whom would be considered legal persons under Russian law, to sue only those defendants who are legal persons, or if the individual defendants had acted in the capacity of registered entrepreneurs, the arbitrazh courts would have jurisdiction over the dispute. In this instance, the plaintiffs could select from among any venue in Russia in which any defendant was located. Were the plaintiffs to include as defendants individuals who had not acted as registered entrepreneurs, the courts of general jurisdiction, and not the arbitrazh courts, would hear the case. The plaintiffs similarly could choose the venue from among those regions in Russia where

12

any of the defendants was located. In either event, it would be possible for a single court to exercise jurisdiction over the entire case.

The Claims Alleged by Plaintiffs

21. Russian law would recognize claims of the sort raised by the plaintiffs in this case. A few background remarks about Russian law are in order. Although Soviet Russia abolished most private commercial relations shortly after the 1917 revolution, it soon became clear to the Soviet leaders that a limited reintroduction of private commerce would be necessary, and that such commerce would need a legal foundation. Accordingly, Soviet Russia in 1922 adopted a Civil Code that relied both conceptually and literally on the German Civil Code. During the Soviet period, as the scope of private commerce waxed and waned in response to changes in administrative law, this basic legal structure remained in effect and provided the jurisprudential principles for liabilities due to violation of ownership rights. Since the fall of Communism, the Russian Parliament enacted a new Civil Code that resembles the basic private law that exists in most modern capitalist countries. The First Part of the new Civil Code went into effect on January 1, 1995, and the Second Part on March 1, 1996.

22. Russian law thus has had a long connection with the private law of property and contract, even if during the Soviet period its state-run economy did not operate along these lines. The Soviet system also maintained a strong academic expertise in civil law, which was reflected in the training of the judges who came to the arbitrazh courts. For example, Venyamin Yakovlev, the chairman of the Supreme Arbitrazh Court, the highest body within the commercial court structure, is a distinguished professor of civil law with a particular expertise in the law of property.

13

23. The Russian Civil Code now in effect provides full remedies for conversion of property and breach of contract rights, including for indirect involvement or participation in conversion, and for injuries due to fraud. The courts have broad remedial powers to make the victims of such injuries whole, and in particular have the authority to award damages for lost profits and other types of injuries. Although Russian law does not provide an exact counterpart to civil liability under the Racketeering Influenced and Corrupt Organizations Act, and in particular would not make treble damages available, in all salient respects it offers equivalent causes of action and remedies to those sought by plaintiffs. Similarly, Russian law would provide a means of compensating injuries caused by illegal interference with contractual rights, even though it is not exactly equivalent to the common law tort of intentional interference with contractual rights.

24. In light of these aspects of Russian civil law, I am confident that the plaintiffs, if they could prove that the defendants acted in an unlawful manner to injure their business interests, could obtain a satisfactory and sufficient remedy from the Russian courts.

Russian Bankruptcy Law

25. As part of the reform of its economy to provide a legal basis for private transactions, Russian has enacted a series of measures creating a bankruptcy system. The centerpiece comprises the Federal Law on Insolvency of January 8, 1998, as well as the Arbitrazh Procedure Code. The system created (and illustrated by both the NKAZ and GOK bankruptcies that are the subject of this litigation) embraces equal treatment of creditors of the same class in the distribution of assets; the imposition of fiduciary obligations on the temporary and external managers responsible for administering the bankrupt estate; judicial review of the claims of creditors; full notice to potential creditors of the bankruptcy proceedings; creditor meetings; nondiscrimination with respect to foreign creditors; centralized distribution; and, through the powers of the

14

temporary and external managers, the power automatically to stay creditor claims and centrally to administer all claims. Differences between Russian and U.S. bankruptcy law favor creditors as often as not. For example, any creditor's claim not recognized in a bankruptcy proceeding remains in full legal force, entitling the creditor to bring suit in the relevant court.

Russian Law of Corporate Governance and Securities Transactions

26. In the early years after the collapse of the Soviet Union, Russian law permitted private economic activity but did not have a well developed set of rules regarding corporate governance and investor protection. Enactments in the latter half of the 1990s addressed this concern. The paramount legislation is the Law on Joint Stock Companies, enacted on December 26, 1995 and amended June 13, 1996, May 24, 1999, and August 7, 2001. Also relevant is the Law on Securities Markets, enacted on April 22, 1996, and the Law on Protection of Rights and Legitimate Interests of Securities Market Investors, enacted March 5, 1999 and amended December 27, 2000. The Civil Code also applies to transactions in securities. Of particular relevance is Article 302 of the Civil Code, which provides some protection for the ownership rights of the "acquirer in good faith," depending on the nature of the property in dispute and the basis of the prior owner's claim. Article 2 of the Law on Securities Markets supplements this provision:

> The acquirer in good faith is a person who has bought securities and paid for them, who at the time of acquisition did not and could not know about the rights of third persons to these securities, unless the contrary is proved.

In particular, Article 302 would apply to someone who purchases registered securities from a person whose possession rests on a disputed transactions, as opposed to theft, where the seller's ownership was reflected in the firm's stock registry and the purchaser had no knowledge or reason to know of the dispute over the seller's rights. Two of the lawsuits discussed below, the

15

claim brought by Uralelektromash in the Meshchansky local court in Moscow and the claim brought by Inrosmet and others in the Solntsevsky local court in Moscow, illustrate how the Russian courts apply this principle both in the abstract and, in concrete terms, to the benefit of at least one of the plaintiffs in this litigation.

27. The Law on Joint Stock Companies provides the basic framework for corporate governance. It establishes the rights and obligations of the officers, board of directors, and shareholders and specifies the scope of permissible choices that organizers of a company may make through its charter. It also determines the role of the independent registrar of shareholders as protector of shareholder rights. Under Article 45 of this Law, persons who claim to own shares have the right to demand that the registrar recognize their interest and to obtain judicial review of the registrar's refusal to accept their claim of ownership. Under Article 44 of this Law, the registrar's duty is independent of, and does not derogate from, the company's obligation to maintain accurate records of its shareholders.

Current Status of the NKAZ Bankruptcy Proceedings

28. With respect to Base Metal Trading SA, Base Metal Trading Ltd., Alucoal Holdings Ltd., and Mikom, plaintiffs' amended complaint focuses largely on injury allegedly perpetrated on them by the defendants other than NKAZ, which they assert resulted in losses tied directly to the termination of their various contracts with NKAZ. At the same time, the amended complaint does not allege that plaintiffs had a proprietary interest in NKAZ outside of the rights embodied in these contracts. This claim amounts to an assertion that the outcome of the NKAZ bankruptcy proceedings violated their rights under Russian law. The Russian arbitrazh courts, however, still are open to hear objections to the outcome of the bankruptcy proceeding.

16

29. I have inspected, in the Russian original and in translation, many of the documents and judicial orders produced by the Kemerovo bankruptcy proceedings. Based on these documents, the following appears to have occurred: In January 2000, the Open Joint-Stock Company Kuzbassenergo and the *Prokuror* (public prosecutor) of the Kemerovo Region petitioned the Kemerovo arbitrazh court to have NKAZ declared insolvent. (Chernyshev Exhibits 26, 28)[*] The court exercised its supervisory powers over the company, and in particular appointed S.A. Chernyshev as temporary manager to assess NKAZ's financial condition and to secure its property. (Chernyshev Exhibits 23, 25) On February 17, 2000, the court granted several petitions for the removal of the incumbent management and appointed the temporary manager to act in its stead. (Chernyshev Exhibit 54) The recognized NKAZ creditors held an initial meeting on March 10, 2000, at which they resolved to petition the court to impose external management on NKAZ and to have Chernyshev appointed to the post of external manager. The position of external manager is analogous to a trustee in bankruptcy under U.S. law, and external management is analogous to rehabilitation of an insolvent debtor that has greater value as a going concern than as a collection of liquidated assets. On March 20, 2000, the court approved both requests. (Chernyshev Exhibit 109) One of the plaintiffs in this litigation challenged in the West Siberian Circuit Federal Arbitrazh Court the decisions of the Kemerovo court to declare NKAZ insolvent, to remove the incumbent management of NKAZ, to appoint Chernyshev as temporary manager, to install an external manager, and to refuse to transfer the bankruptcy proceeding to the Moscow arbitrazh court. The West Siberian Circuit Court rejected all these appeals. (Chernyshev Exhibits 56, 112) I am unaware of any attempt by the plaintiffs in this litigation to seek supervisory review of these decisions in the Supreme Arbitrazh Court.

---

[*] By Chernyshev exhibits, I mean those submitted in connection with the Declaration of Sergey Chernyshev, which I

30. Immediately upon the removal of the incumbent management and his assumption of managerial responsibilities, Chernyshev determined that some of the claims under the contracts with NKAZ that are the subject of this litigation would not be recognized as valid claims against NKAZ in the bankruptcy. The court upheld this determination, which the creditors have not appealed. (Chernyshev Exhibits 72, 75, 77) Subsequently, upon becoming external manager, Chernyshev repudiated NKAZ's prospective obligations with respect to many of the contracts that are the subject of the present litigation. The court upheld this determination in one instance, and plaintiffs have not appealed that decision. (Chernyshev Exhibit 79) Subsequently, Chernyshev negotiated a settlement agreement with the recognized creditors that would permit NKAZ to continue as an ongoing business. On April 3, 2001, the arbitrazh court approved the settlement, ended external management of NKAZ, and appointed Chernyshev as acting manager of NKAZ pending the election of new management of NKAZ at the general shareholders meeting. (Chernyshev Exhibit 130) The West Siberian Circuit Arbitrazh Court affirmed the arbitrazh court decision on September 6, 2001. (Chernyshev Exhibit 133)

31. Portions of plaintiff's amended complaint amount to an allegation that the bankruptcy proceedings violated Russian law. As stated above, the Russian arbitrazh courts, including the Supreme Arbitrazh Court in Moscow, remain open to such claims. Plaintiffs have several avenues for attacking the results of the bankruptcy proceedings. First, the determination of Chernyshev, in his capacity as acting manager, that some of the claims presented by the plaintiffs were not cognizable in the bankruptcy proceeding does not preclude them from raising those claims in subsequent litigation; the decisions of the arbitrazh court approving these determination were generally based on its findings that the plaintiffs presented inadequate evidence of the

---

*have reviewed in preparing my own declaration.*

alleged claims. These findings would not preclude the plaintiffs from proving their claims in another lawsuit after the termination of the bankruptcy proceedings. Second, the plaintiffs can seek supervisory review of the decisions of the Kemerovo court in the Supreme Arbitrazh Court. Third, the plaintiffs can attack the proceedings at any level of the arbitrazh court system by presenting new evidence, such as proof of a corrupt conspiracy of the sort alleged in their amended complaint.

32. There also is a question whether and to what extent plaintiffs' claims may be affected by the outcome of various arbitration proceedings. It is my understanding that, either prior to or subsequent to the initiation of this lawsuit in the United States, Base Metal Trading Ltd. filed an arbitration proceeding in Cyprus, Base Metal Trading S.A. filed an arbitration proceeding in Zurich, and Alucoal filed an arbitration proceeding in Stockholm. These proceedings involve claims against NKAZ based on many of the contracts in dispute in the Russian bankruptcy proceedings and most of those in contention in this lawsuit. An issue common to all these proceedings is whether the exercise by an external manager in the course of a bankruptcy proceeding of his authority to repudiate prospectively all contracts limits the debtor's liability to out-of-pocket damages, as provided for by Article 77(3) of the Bankruptcy Law. The particular venue of each of the arbitration proceedings also is being challenged by NKAZ on the basis of the invalidity of the respective arbitration agreements on which the plaintiffs' claims are based, and NKAZ's claim that each of the contracts contains other arbitration agreements that bind the plaintiffs. Interpreting the applicability of Article 77(3) and determining which of the arbitration agreements apply involve questions of Russian law that a U.S. court would have great difficulty resolving, but for which the Russian arbitrazh courts would be well suited.

19

Current Status of the GOK Bankruptcy Proceedings

33. Plaintiffs' amended complaint with respect to GOK also asserts that the outcome of the GOK bankruptcy proceedings violated their rights under Russian law. In its procedural aspects, if not the substantive issues involved, the GOK bankruptcy closely resembled that of NKAZ. In particular, the proceeding began with a petition by a creditor, leading to judicial appointment of a temporary manager to supervise the company's affairs. On the recommendation of creditors, the court subsequently instituted the Russian version of receivership, under which the temporary manager became an external manager and replaced the incumbent management. The external manager negotiated a settlement with the creditors, which the courts approved. Dissatisfied creditors obtained further judicial review, which to date has upheld the settlement. As with the NKAZ proceeding, the Russian arbitrazh courts still are open to hear objections to the outcome of the bankruptcy proceeding. Claims not recognized by the external manager may be asserted in independent lawsuits. Those proceedings that have occurred to date appear to have complied with basic norms of procedural fairness and substantive rationality.

34. I have inspected, in the Russian original and in translation, many of the documents and judicial orders produced by the Sverdlovsk bankruptcy proceedings. Based on these documents, the following appears to have occurred:  On March 24, 2000, Kranouralskmezhraygaz, the supplier of natural gas to GOK, instituted a bankruptcy proceeding in the Sverdlovsk arbitrazh court. (GOK Exhibit 4)[*] On March 30, 2000, the court appointed O.S. Kozyrev as temporary manager of GOK. (GOK Exhibit 1) In a later opinion, the court stated that the Federal Agency on Insolvency and Financial Bankruptcy for the Sverdlovsk region had nominated Kozyrev for this post, based on his position as Deputy Head of the regional body of that Agency. (GOK

---

[*] By GOK exhibits, I mean those submitted to accompany the declarations of Oleg S. Kozyrev and Samir Kapoura,

A - 498

Exhibit 2) An auditor's report dated April 21, 2000, determined GOK's creditors as of the date of the filing of bankruptcy. (GOK Exhibit 12) This report included in this list Nexis OOO,* Polyprom OOO, and Lebaut OOO. Under Russian bankruptcy law, these creditors were required to receive notice of the proceedings and to present their claims to the temporary manager for verification and registration. The registered creditors held their first meeting on August 11, 2000, and voted to subject the enterprise to a year of bankruptcy supervision. (GOK Exhibit 13) In response, on August 22, 2000, the court made Kozyrev the external manager of GOK. (GOK Exhibit 2) In that order the court noted, but did not accept, arguments made by Khaidarov attacking the validity of his ouster and the powers of GOK's officers and board of directors. Nexis OOO and Lenex OOO, two Russian entities (and not plaintiff Nexis Products LLC), challenged the August 22, 2000, decision in the appellate branch of the Sverdlovsk arbitrazh court, but on January 15, 2001, the court determined that because neither had presented their claims to Kozyrev, they did not qualify as registered creditors with standing to challenge the court ruling. (GOK Exhibit 17) The Urals Circuit Federal Arbitrazh Court in turn upheld the decision of the appellate branch on June 7, 2001. (GOK Exhibit 19)

35. This bankruptcy proceeding, under the supervision of the arbitrazh court system, was subject to a collateral attack in the courts of general jurisdiction. In particular, two persons sued the Federal Agency in the Izmailovo local court in Moscow to overturn the appointment of Kozyrev. In a decision dated August 2, 2000, the Izmailovo court ruled that it lacked jurisdiction to stay the bankruptcy proceedings but that it would order Kozyrev not to hold a creditors' meeting until it could rule on the merits of the complaint. (GOK Exhibit 14) That court appears not to have

---

which I have reviewed in preparing my own declaration.
* "OOO" is the Russian acronym for the terms translated as limited liability company. I use this acronym when referring to Russian entities, included Polyprom OOO, described in the amended complaint as "Polyprom Ltd."

21

taken into account that the March 30, 2000, order of the Sverdlovsk arbitrazh court required Kozyrev to hold this meeting no later than August 22, 2000. It further appears that the Izmailovo court never issued a proper order to Kozyrev. On November 30, 2000, the Moscow city court, while reversing the decision of the Izmailovo court, noted that the court had not issued this order in proper form. (GOK Exhibit 15) The Izmailovo court subsequently dismissed the lawsuit on March 13, 2001, because the petitioners had failed to appear at hearings. (GOK Exhibit 74)

36. After the Sverdlovsk arbitrazh court appointed Kozyrev as external manager of GOK, Nexis Products, Ltd. and Polyprom OOO presented claims to him based on supply contracts. (GOK Exhibits 26, 29) On October 4, 2000, Kozyrev in two different letters rejected these claims on the ground that the person who had purported to sign the contracts on behalf of GOK had lacked the authority to do so, and in addition that no deliveries under the contracts had taken place. (GOK Exhibits 27, 31) The Sverdlovsk arbitrazh court in two separate opinions upheld Kozyrev's decision on March 23, 2001. (GOK Exhibits 28, 92) The court determined that the claimants had failed to present evidence supporting their claims to have made deliveries under the supply contracts. I am unaware of any appeal taken from the court's action.

37. On August 29, 2000, Nexis Products LLC also presented a claim to Kozyrev based on a debt instrument. (GOK Exhibit 24) It appears from the amended complaint and Kozyrev's declaration in this litigation that this claim was accepted as a valid debt of GOK and included among the claims ultimately settled by the bankruptcy proceedings.

38. During the course of the bankruptcy administration Kozyrev recognized as a valid debt of GOK to Lebaut OOO. Nexis Products LLC petitioned the Sverdlovsk arbitrazh court overseeing the bankruptcy to overturn this decision. The court determined that the Lebaut claim was a valid debt in an order dated February 19, 2001. (GOK Exhibit 34) The appellate branch of that court

22

A - 500

upheld this decision on April 19, 2001. (GOK Exhibit 35) It ruled that Nexis Products had not presented any evidence to indicate that the Lebaut claim was anything other than a bona fide commercial obligation of GOK. It appears that Nexis Products sought further review of this decision in the Urals Circuit federal arbitrazh court, but that at some point an irregularity in the documents purporting to authorize Nexus Products' legal representative emerged. Because of this irregularity, the Urals Circuit on July 12, 2001, determined that it could not consider the appeal. (GOK Exhibit 36)

39. After conclusion of the settlement between GOK and its creditors, dated March 11, 2001 (GOK Exhibit 20), Nexis Products again brought a challenge to GOK notes given to Lebaut, in this instance those later transferred to Syrius OOO. The Sverdlovsk arbitrazh court rejected this claim on April 18, 2001. (GOK Exhibit 23) As in the February 19 decision, the court ruled that Nexis Products had failed to present evidence impeaching the validity of the Lebaut claim.

40. On April 19, 2001, the court approved the settlement. (GOK Exhibit 3) Nexis Products sought appellate review of this decision. On June 27, 2001, the appellate branch of the Sverdlovsk arbitrazh court determined that the documents purporting to authorize Nexis Products' legal representative were not in order. (GOK Exhibit 21) As a result, the person purporting to represent Nexis Products was unable to prosecute the appeal and the court had no authority to consider the case. The Urals Circuit Federal Arbitrazh Court affirmed this determination on Aug. 21, 2001. (GOK Exhibit 36)

41. Portions of plaintiff's amended complaint amount to an allegation that the bankruptcy proceedings violated Russian law. As stated above, the Russian arbitrazh courts, including the Supreme Arbitrazh Court in Moscow, remain open to such claims. Plaintiffs have several avenues for attacking the results of the bankruptcy proceedings. First, the plaintiffs can seek

23

supervisory review of the decisions of the Sverdlovsk court in the Supreme Arbitrazh Court. Second, the plaintiffs can attack the proceedings at any level of the arbitrazh court system by presenting new evidence, such as proof of a corrupt conspiracy of the sort alleged in their amended complaint or by establishing that the external manager failed to recognize valid claims that they, or their predecessors in interest, had against GOK.

Current Status of the Contest for Control of GOK and Ownership of GOK Stock

41. Aside from the bankruptcy proceedings discussed above, the records and judicial decisions I have reviewed indicate that disputes over the governance and ownership of GOK occurred in four phases, each of which entailed substantial litigation in Russian arbitrazh courts and courts of general jurisdiction. Russian courts have reviewed (1) the outcome of the January 28, 2000, changes in the board of directors and officers of GOK; (2) the March 4, 2000, attempt by the ousted management to reverse the decisions of the board of directors through a shareholders meeting; (3) the September 5, 2000, decision by GOK to change registrars; and (4) claims by GOK and its shareholders made both before and after the change in registrars that various entities wrongfully claimed ownership of GOK shares. I will discuss each series of lawsuits in turn.

42. Based on the judicial opinions I have reviewed, it appears that on January 28, 2000, the board of directors of GOK convened and, among other actions, replaced the enterprise's general director and the board's chair. The ousted management complained to the Kachkanar authorities that this event constituted a forcible seizure of GOK, but a report of the Senior Assistant *Prokuror* (Prosecutor), dated February 2, 2000, rejected the charge. (GOK Exhibit 40) Multiple civil suits attacking the January 28 meeting ensued. I am aware of seven lawsuits filed in five different local courts of general jurisdiction in Moscow, two in a local court in the Sverdlovsk

24