the public use determination was made. Second, unlike in *Target Corp.*, Defendants have tried on numerous occasions to negotiate with Plaintiffs. Lastly, unlike in *Target Corp.*, there is no evidence in the record of any threat or other coercive action by Private Defendants to abandon the Redevelopment Project if Port Chester refused to exercise its eminent domain power over Plaintiffs' property.

Because the Constitution bars only taking for a public purpose without just compensation, Defendants are obligated to do no more than pay a reasonable sum for the Inside Properties. Plaintiffs' allegations of bad faith in this matter are insufficient to warrant an evidentiary hearing or the granting of a preliminary injunction staying the state court proceedings. Plaintiffs therefore have no right to have their property exempted from the Project so that they can develop it privately.

For the foregoing reasons, I deny Plaintiffs' Motion for a Preliminary Injunction enjoining the prosecution of the EDPL Article 4 proceeding relating to Plaintiffs' Inside Properties in the New York State Supreme Court.

The Clerk of the Court is ordered to extinguish the bond.



**NOREX PETROLEUM LTD., Plaintiff,**

v.

**ACCESS INDUSTRIES, INC.,
et al., Defendants.**

**No. 02 Civ. 1499(LTS)(KN).**

United States District Court,
S.D. New York.

Feb. 18, 2004.

**Background:** Canadian oil corporation sued various corporations and individuals, alleging claim that massive racketeering and money laundering scheme was orchestrated to take control of Russian oil industry, causing injury to corporation. Defendants moved to dismiss.

**Holdings:** The District Court, Swain, J., held that:

(1) nonresident's choice of United States forum would be afforded little weight in making forum non conveniens decision;

(2) court could consider expert declarations on Russian law without regard to federal evidence rule restrictions on expert testimony;

(3) Russian courts were adequate alternative forum, for forum non conveniens purposes;

(4) public interest factors favored dismissal on forum non conveniens grounds; and

(5) private interest factors favored dismissal.

Case dismissed.

See, also, 2003 WL 21872389.

**1. Federal Courts** ⬡45

In deciding whether case is to be dismissed, on forum non conveniens grounds, court is to (1) determine level of deference to which plaintiff's choice of forum is entitled, (2) consider whether there is an adequate alternate forum for litigation, and (3) balance public and private interest factors to ascertain whether plaintiff's chosen forum or defendant's proposed alternative forum is more convenient.

**2. Federal Courts** ⬡45

Plaintiff's choice of forum would be entitled to little weight, in determining whether to dismiss on forum non conveniens grounds suit brought by Canadian oil company alleging that it was injured by massive racketeering and money launder-

ing scheme orchestrated to take control of Russian oil industry, despite claim that United States would be more convenient forum than Russia.

**3. Action** ⟐17

Court was empowered under federal procedure rule to consider expert declarations regarding adequacy of Russian forum, in connection with claim that massive racketeering and money laundering scheme was orchestrated to take control of Russian oil industry, without regard to whether declarations satisfied federal evidence rule requirement for expert testimony. Fed.Rules Evid.Rule 702, 28 U.S.C.A.; Fed.Rules Civ.Proc.Rule 44.1, 28 U.S.C.A.

**4. Federal Courts** ⟐45

Russian courts were adequate alternative forum, for purpose of motion to dismiss on forum non conveniens grounds Racketeer Influenced and Corrupt Organization Act (RICO) claim that massive racketeering and money laundering scheme was orchestrated to take control of Russian oil industry, despite claim that some relief akin to RICO was now time barred, some procedural safeguards available in United States were unavailable in Russia, and Russian judiciary was corrupt. 18 U.S.C.A. § 1961 et seq.

**5. Federal Courts** ⟐45

Public interest factors favored dismissal, on forum non conveniens grounds, of Racketeer Influenced and Corrupt Organization Act (RICO) suit claiming that massive racketeering and money laundering scheme was orchestrated to take control of Russian oil industry; case was largely of Russian concern, with virtually no impact on United States, and Russian law would have to be applied.

**6. Federal Courts** ⟐45

Private interest factors favored dismissal, on forum non conveniens grounds, of Racketeer Influenced and Corrupt Organization Act (RICO) suit claiming that massive racketeering and money laundering scheme was orchestrated to take control of Russian oil industry; evidentiary center of gravity of litigation was Russia, and unwillingness of some of claimant's personnel to return to Russia to testify, out of fear of criminal actions being commenced against them, did not alter result. 18 U.S.C.A. § 1961 et seq.

_____

Marks & Sokolov, LLC, Philadelphia, PA by Bruce S. Marks, Blank Rome, LLP, New York, NY, by Harris N. Cogan, Farrell Fritz, P.C., Uniondale, NY, by George C. Pratt, for Plaintiff.

White & Case LLP, New York, NY by Robert M. Kelly, Owen C. Pell, Akin Gump Strauss Hauer & Feld LLP, New York, NY by Kim Koopersmith, Nathaniel P.T. Read, The Law Offices of Eric J. Grannis, New York, NY by Eric J. Grannis, Curtis, Mallet–Prevost, Colt & Mosle LLP, New York, NY by Myles K. Bartley, Morrison Foerster LLP, New York, NY by Oliver Metzger, Salans, New York, NY, by John F. Cambria, for Defendants.

### OPINION AND ORDER

SWAIN, District Judge.

This is a case involving alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. section 1961, *et seq.* Specifically, Plaintiff contends that Defendants orchestrated a massive racketeering and money laundering scheme to take control of the Russian oil industry, including Plaintiff's business. Defendants move to dismiss the Complaint on various grounds, among which is, the doctrine of *forum non conveniens.* The Court has considered thoroughly all arguments and submissions in connection with

the instant motion. For the following reasons, Defendants' motion is granted.

## BACKGROUND

Plaintiff's principal material allegations, and the undisputed facts pertinent to the instant motion, can be summarized as follows. The summary takes as true the allegations and undisputed factual assertions, but does not in any way constitute factual findings by the Court. Plaintiff Norex Petroleum Limited ("Norex") is organized under the laws of Cyprus, maintains a representative office in Calgary, Canada, and is owned by J.I.V. LLC, which is organized under the laws of California.[1] (Id. ¶ 32.) Alexander Rotzang, a Canadian individual, is the beneficial owner of Norex's parent. (Rotzang Decl. ¶¶ 2, 4.)

*Allegations Regarding the "Illegal Scheme" and "Illegal Takeover"*

In its Complaint, Norex alleges that the Defendants are participants in a widespread racketeering and money laundering scheme whose principal purpose is to take over a substantial portion of the Russian oil industry, principally through the use of Tyumen Oil Company ("TNK"), a Russian oil company, and subsidiaries of TNK.[2]

(Compl.¶ 1.) According to Norex, the Russian oil industry is riddled with corruption, and Russian oligarchs exercise undue influence over government and judicial officers in aid of their own economic goals.

Several of the Defendants are United States citizens or conduct business here, and the conspiracy is alleged to have been directed from the United States. American and other international banking facilities have allegedly been used to conceal financial transactions through which Defendants have diverted oil and related revenues from Russian companies to their own offshore affiliates and have committed tax fraud in several countries. In seeking to show the scope of the alleged conspiracy and sufficient United States connections to support the exercise of subject matter jurisdiction to hear Plaintiff's RICO claims, Norex describes a range of worldwide activities alleged to have been part of this overall "Illegal Scheme," including transactions involving companies in which Norex held no equity interest but which have (or had) United States or other international investors. Those investors include BP–Amoco and the Harvard University Endowment Fund. (Id. ¶ 8.)

---

1. In affidavits submitted in opposition to the instant motion, Plaintiff alleges that its parent is Appalachia Investments Ltd., also a California entity. (Decl. of Philip Murray ¶ 53; Decl. of Alexander Rotzang ¶ 4.)

2. The Complaint identifies five groupings of defendants, defined as follows: (1) the Access/Renova Defendants (including Access Industries, Inc. ("Access"), Renova, Inc. ("Renova"), Leonid Blavatnik ("Blavatnik"), and Victor Vekselberg ("Vekselberg")); (2) the Alfa–Crown Defendants (including Alfa Group Consortium ("Alfa Group"), Crown Finance Foundation ("CFF"), CTF Holdings Ltd ("CTF Holdings"), Alfa Finance Holdings, SA ("Alfa Finance"), Crown Luxembourg Holdings, S.A. ("Crown Luxembourg"), OAO Alfa Bank ("Alfa Bank"), Alfa Capital Markets (USA), Inc. ("Alfa Capital Markets"), Crown

Commodities Ltd ("Crown Commodities"), Crown Trade and Finance Limited ("CTF Ltd"), Crown Resources A.G. ("Crown AG"), Crown Resources (USA) Inc. ("Crown Resources"), Elliot Spitz ("Spitz"), and OOO Alfa-Eco ("Alfa-Eco")); (3) the TNK Defendants (including TNK), Joseph Bakaleynik ("Bakaleynik"), German Khan ("Khan"), Igor Nam ("Nam"), Alexander Berman ("Berman"), OAO TNK-Nyagan ("TNK-NG"), and OAO TNK-Nizhnevartovsk ("TNK-NV"); (4) the "Slush Fund" Companies (including LT Enterprises Limited ("LT"), Sandwell Enterprises Limited ("Sandwell"), and Eastmount Properties Limited ("Eastmount")), which were allegedly used to launder funds related to the illegal scheme; and (5) Astons Corporate Management ("Astons"), which allegedly managed the "Slush Fund" Companies. (Compl.¶¶ 35–91.)

Norex claims that, pursuant to this scheme, it was deprived of its majority ownership stake in Yugraneft, a Russian oil company, and of certain quantities of oil owed to it by Yugraneft and other Russian oil entities, through a series of unlawful actions that included influence wielded through bribery of Russian governmental officials and corrupt Russian bankruptcy proceedings.

TNK, which was privatized in two stages beginning in 1997, is owned, directly or indirectly, by Defendants Access/Renova and Alfa Group in approximately equal shares. Defendants' interests in TNK were obtained through corrupt privatization proceedings. (*Id.* ¶¶ 75, 121–38.) Norex alleges that the Defendants' Illegal Scheme utilized TNK, improper influence of Russian government and judicial officials, and threats of violence to 1) divert oil flows from other Russian oil companies to TNK and its affiliates, 2) achieve an "Illegal Takeover" of Yugraneft, and 3) launder illegally diverted oil profits and achieve massive United States, United Kingdom, and Russian tax fraud through offshore "Slush Fund" arrangements involving certain of the Defendants and their affiliates.

In 1997, after acquiring their initial interest in TNK, Access/Renova and Alfa Group arranged through corrupted government officials to divert the flow of oil from Nizhnevartovsk Nefte Gaz ("NNG") (a Russian oil company that owed oil to Yugraneft) to TNK, thereby forcing NNG into bankruptcy and stripping NNG of assets that were subsequently transferred to TNK or its affiliates. (*Id.* ¶¶ 144–47.) Through the corrupt bankruptcy proceedings and asset-stripping, Norex, which was one of NNG's creditors, was deprived of an oil debt owed to it by NNG.

Some or all of Defendants also utilized TNK to corrupt the bankruptcies of Kondpetroleum and Chernogorneft, two oil companies that were subsidiaries of OAO Si-

berian Far Eastern Oil Co. ("Sidanco"), an entity in which BP–Amoco and the Harvard University Endowment Fund were investors. Through the strategically manipulated appointment of bankruptcy managers who were loyal to TNK, as well as improper payoffs of certain of Chernogorneft's debts that resulted in TNK's ability to control the creditors' committee in the Chernogorneft bankruptcy, TNK and its affiliates obtained the assets of Kondpetroleum and Chernogorneft at below-market prices. Those assets included shares of Yugraneft that had been owned by Chernogorneft. The bankruptcy transfer of Chernogorneft's Yugraneft shares violated a shareholder agreement right-of-first-refusal provision in Norex's favor to which Norex and Chernogorneft were parties. The Chernogorneft asset sale also violated several Russian court decisions prohibiting the sale of Chernogorneft's assets. (*Id.* ¶¶ 148–74.) Complaints by BP–Amoco and others to American government officials arising from the Chernogorneft proceedings led to a State Department block on Export–Import Bank loan guarantees to TNK for purchasing equipment from the United States. (*Id.* ¶¶ 175–78.)

Following the bankruptcy proceedings, Chernogorneft did not fully repay a pre-bankruptcy oil debt to Yugraneft. (*Id.* ¶¶ 185–89.) A TNK official threatened Norex's board chair and general director when they attempted to obtain full payment of the oil debt to Yugraneft, and at least one of the threats was communicated to Norex's board chair, Rotzang, while Rotzang was in the United States. (*Id.* ¶¶ 198–206.) The TNK official, German Khan, told Yugraneft's general director that TNK "own[ed] people at all levels of government" and that TNK "controlled" Russia's Supreme Arbitration Court, where commercial disputes are decided. (*Id.* ¶¶ 200–206.) Norex further alleges that Khan threatened a Yugraneft officer

and attempted to bribe her to cooperate with TNK's efforts, and that the bribe was refused. (*Id.* ¶¶ 212–216.)

In June 2001, a few days before a scheduled Yugraneft shareholders meeting, TNK–NV (the TNK affiliate that had acquired Chernogorneft's interest in Yugraneft) filed a complaint in Russian court, petitioning to arrest a substantial portion of the Yugraneft shares held by Norex. (*Id.* ¶¶ 217–18.) TNK–NV's petition was premised on the false representations that it had acquired its shares legally in the Chernogorneft bankruptcy and that Norex had been served properly with the court papers. (*Id.* ¶¶ 217–19.) The Russian court enjoined Plaintiff from voting a major portion of its Yugraneft shares and prohibited Yugraneft from counting a major portion of Plaintiff's shares at any shareholders meeting. (Id.¶¶ 219–20.)

At the shareholders meeting, Norex voted its shares in favor of continuing current management. TNK and other Defendants, however, prepared fraudulent minutes reflecting the election of Alexander Berman, an officer of a TNK affiliate, as general director of Yugraneft. (*Id.* ¶¶ 222–26, 229–30.)

On the day after the shareholders meeting, Berman, along with six TNK attorneys and "at least 16 thugs" in military fatigues and armed with machine guns, took over Yugraneft's Nizhnevartovsk offices by force. (*Id.* ¶¶ 227–228.) TNK also sent armed security guards that same day to take over the Yugraneft oil field and field office and cut off phone and Internet service at the Yugraneft offices. (*Id.* ¶¶ 231–232.) The president of TNK went to Yugraneft's field office, told the employees that the company had been taken over, and instructed them to sign employment agreements with TNK or leave. (*Id.* ¶¶ 233–34.)

Yugraneft's pre-takeover management thereafter obtained a court order enjoining

Berman from acting as Yugraneft's general director and went, along with a marshal and attorneys, to Yugraneft's offices to enforce the order. A TNK-affiliated guard at the offices threatened one of the attorneys, and a TNK officer who came on the scene with armed "thugs" instructed the local chief marshal to order the Yugraneft parties to leave the offices. He then "instructed someone" to call the chief judge of the Nizhnevartovsk Regional court and order the court to dismiss its order, stating that TNK controlled the local government. (*Id.* ¶¶ 236–43.) TNK personnel sought to bribe Yugraneft officers with offers of appointment to a local government post and TNK employment, and threatened the Yugraneft representatives. (*Id.* ¶¶ 243–52.) Defendants also used false criminal proceedings to intimidate Yugraneft officers and quell opposition to the takeover. (*Id.* ¶¶ 259–65.)

Following the takeover of Yugraneft, TNK stripped the company of its assets, including $40 million which was transferred to Alfa Bank for Defendants' use. (*Id.* ¶¶ 253–54.) TNK and the Crown Group have also converted and sold Yugraneft oil in the Russian domestic market and foreign markets, with profits being wired through American banks. (*Id.* ¶¶ 266–68.)

*Use of "Slush Fund" Companies and Other Fraudulent Activities*

Defendants have channeled the oil supplies and revenues of companies owned or controlled by TNK to Defendants' affiliates, including the Crown Group companies and various off-shore entities that are referred to in the Complaint as "Slush Fund" companies. Through various fraudulent bookkeeping practices, including the use of false invoices for oil and services, the Slush Fund companies have made off-shore compensation payments to various individuals, enabling those individuals to

evade United States, United Kingdom, and Russian taxes and have shifted profits illegally and facilitated the evasion of United Kingdom business taxes and penalties by Crown Group affiliates. Slush Fund monies were also used to pay bribes to Russian government officials. (*Id.* at ¶¶ 269–304.). The substantial financial transactions have involved numerous wire transfers through banks in the United States. (*Id.* ¶ 275.)

*Prior Russian Litigation*

A number of the issues raised by Plaintiff's allegations, including issues relating to the validity of bankruptcy proceedings and related asset transfers of which Plaintiff complains, the enforceability of the right of first refusal provision regarding Chernogorneft's Yugraneft shares, and the values of Chernogorneft's and Norex's respective equity interests in Yugraneft, have been the subject of Russian judicial proceedings, the results of all of which have been adverse to the positions taken here by Plaintiff. Norex was not a party to many of the proceedings, but was a party to: litigation challenging the transfer to the TNK affiliate of Chernogorneft's interest in Yugraneft as violative of the right-of-first-refusal provision of the Yugraneft shareholder agreement (the "Right of First Refusal Case"); litigation which was commenced by Norex one week before the instant case was filed in this Court and was promptly abandoned by Norex, seeking to set aside the Chernogorneft bankruptcy auction (the "CNG Auction II Case"); and litigation addressing the validity of Norex's contribution to Yugraneft's charter capital (the "Dividends Return Case"). (Murray Decl. ¶¶ 45–49.) In June 2001, TNK–NV filed a Russian suit that ultimately invalidated a large proportion of Norex's interest in Yugraneft on the ground that Norex's capital contribution to Yugraneft, in the form of "know-how," was

improperly valued (the "Know–How Case"), but Norex contends that it was never served properly in that action despite having notified the Russian court of its legal position concerning service of process. (*Id.* ¶¶ 7–32.)

Norex and its expert witnesses assert that Norex cannot obtain fair hearings or decisions in the Russian courts because of widespread corruption of political and judicial officials and the ability of powerful Russian oil interests to wield undue influence over the Russian courts. Norex acknowledges that the adverse decision in the Know–How Case (which Norex did not appeal in the Russian courts) would be preclusive of its claims premised on alleged deprivation of its majority ownership stake in Yugraneft were those claims to be pursued in the Russian system. Norex's time to appeal the Know–How Case decision expired two days before this case was commenced in this Court. (Decl. of Sergey B. Zaitsev ¶¶ 113–18.)

## DISCUSSION

### I. Choice of Forum

[1] Defendants move to dismiss the Complaint based on the doctrine of *forum non conveniens,* an equitable doctrine which allows a court to "resist imposition on its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute"[3] and determine "where litigation will be most convenient and will serve the ends of justice." *PT United Can Co. v. Crown Cork & Seal Co.,* 138 F.3d 65, 74 (2d Cir.1998). In making such a determination, the Court undertakes a three-step inquiry, which involves (1) determining the level of deference to which the plaintiff's choice of forum is entitled, (2) considering whether there is an adequate alternate forum for the litigation, and (3) balancing

---

3. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507,    67 S.Ct. 839, 91 L.Ed. 1055 (1947).

the public and private interest factors to ascertain whether the plaintiff's chosen forum or the defendant's proposed alternative forum is more convenient. *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 73–74 (2d Cir.2001).

[2] As an initial matter, the Court must consider the level of deference to be provided to Plaintiff's choice of forum. *Iragorri*, 274 F.3d at 70–72. Generally, a plaintiff's choice of forum will not be disturbed; where the balance is strongly in favor of the defendant, however, and trial in the plaintiff's chosen forum "would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Id.* at 70–71. A plaintiff's choice is entitled to the highest level of deference where the plaintiff chooses to litigate it its home forum because it is assumed that the choice was one of convenience. *Id.* at 71. When a foreign plaintiff chooses a United States forum, however, that plaintiff's choice is entitled to less deference because of the potential for forum-shopping. *Id.; see also Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

According to the Complaint, Norex is a Cypriot corporation that maintains a "representative" office and conducts, "through affiliates," business in Canada. (Compl.¶ 32.) Plaintiff argues that its "principal" place of business is Canada and that the United States is thus a more convenient forum for it than Russia. Plaintiff further asserts that the 1795 "Jay Treaty," which contains an "equivalent access" provision, entitles Norex to "the same 'substantial deference' provided to an American plaintiff." (Pl Mem. in Opp'n. at 29 (fn.omitted)). Even if Plaintiff is correct, however, in asserting that the equivalent access provision of the treaty entitles it to the same level of deference as a similarly-situated American, the principal focus of the deference analysis—the inqui-

ry into the nexus between the plaintiff and the chosen forum—remains the same. "The greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens." Iragorri,* 274 F.3d at 71–72. Like an expatriate American or one who chooses a United States forum other than the one in which he is resident, Plaintiff seeks to litigate in a forum that is not presumptively the most convenient one for it. *See Base Metal Trading SA v. Russian Aluminum,* 253 F.Supp.2d 681, 694 n. 9 (S.D.N.Y.2003); *see also Varnelo v. Eastwind Transport. Ltd.,* 2003 WL 230741, at *11–12 (S.D.N.Y. Feb.3, 2003). Thus, Plaintiff's choice is entitled to less than substantial deference, although the Court credits Plaintiff's representation that the United States is a more convenient forum for a Canadian citizen than is Russia, based on geographic proximity. The Court now turns to the other considerations relevant to the convenience analysis.

II. Adequate Alternate Forum

The Court must next determine whether there is an adequate alternate forum. *Piper,* 454 U.S. at 254 n. 22, 102 S.Ct. 252. An alternate forum is adequate where (1) the defendants can be served with process; and (2) "the forum permits 'litigation of the subject matter of the dispute.'" *Alfadda v. Fenn,* 159 F.3d 41, 45 (2d Cir. 1998) (quoting *Piper* ). An identical cause of action need not be available in the alternative forum; in fact, the Second Circuit has expressly held that the nonexistence of a RICO statute in a foreign country does not, alone, preclude dismissal of a case on *forum non conveniens* grounds. *PT United Can Co,* 138 F.3d at 74.

Here, Defendants have expressed their willingness to consent to the jurisdiction of the courts of the Russian Federation, so the first prong of the alternative forum test is easily satisfied. *DiRienzo v. Philip Servs. Corp.*, 232 F.3d 49, 57 (2d Cir.2000); Joint Mem. of Law in Support of Defts.' Mot. to Dismiss at 27. Plaintiff argues that Russia is, nonetheless, an inadequate forum because (1) Russian law does not provide a cause of action for the claims at issue, (2) Russian court procedures are inadequate for this litigation, and (3) the Russian forum is corrupt.

[3] The parties have submitted opinions from several purported experts in Russian law discussing the adequacy of the Russian forum, among other issues. Plaintiff, citing Federal Rule of Evidence 702, has moved to strike the declarations of Defendants' experts Alexey Kostin and Paul B. Stephan III. Rule 702 sets forth standards for the admissibility of scientific, technical or other specialized evidence that may be helpful to the trier of fact. The Kostin and Stephan declarations deal, however, with issues of Russian law and have been presented to assist the Court in determining pertinent Russian legal issues. Federal Rule of Civil Procedure 44.1 provides that "[t]he court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed.R.Civ.P. 44.1. The determination of foreign law is treated as a question of law. *Id.; Base Metal,* 253 F.Supp.2d at 700; *see also Curley v. AMR Corp.,* 153 F.3d 5, 13 (2d Cir.1998); *Norwest Financial, Inc. v. Fernandez,* 86 F.Supp.2d 212, 228 n. 15 (S.D.N.Y.2000). To the extent that the declarations constitute useful and informative testimony, the Court will consider them in evaluating the relevant questions of Russian law in this case. *See Base Metal,* 253 F.Supp.2d at 700. Plaintiff's motion to strike the Kostin and Stephan declarations is therefore denied.

Plaintiff and its experts also attack the Kostin and Stephan declarations as insufficiently grounded in practical experience in the Russian courts and/or naive as to the existence of alleged practical barriers to the assertion of certain of the litigation avenues those two proffer as potentially available to Plaintiff in the Russian courts. (*See generally* Mot. to Strike Defts' Expert Paul B. Stephan III; Mot. to Strike Defts' Expert Alexey Kostin; Zaitsev Decl. ¶¶ 162, 198–207; Decl. of Sergey A. Pashin ¶¶ 166–69.) The Court has weighed the criticisms of these two well-credentialed experts[4] as well as the respective opinions of the parties' experts in making its determinations regarding the adequacy of Russia as an alternative forum.

[4] Defendants' experts posit that various causes of action are available to Plaintiff in Russia. Of these, the most

---

4. Professor Stephan has taught Soviet and post-Soviet law at the University of Virginia School of Law since 1979 and holds an M.A. in Russian Studies from Yale University. He has worked for numerous businesses, government and non-government agencies on matters dealing with Soviet and Russian law. (Stephan Decl. ¶¶ 2–3.) His opinions on Russian law have been considered in a number of other cases in this Circuit. *See generally Base Metal; Films by Jove, Inc. v. Berov,* 154 F.Supp.2d 432 (E.D.N.Y.2001); *Pavlov v.*

*Bank of New York Co.,* 135 F.Supp.2d 426 (S.D.N.Y.2001). Professor Kostin is the Senior Professor at the Private International and Civil Law Department of the Moscow State Institute of International Relations under the Ministry of Foreign Affairs of the Russian Federation and has been Vice President of the International Commercial Arbitration Court at the Russian Chamber of Commerce and Industry for over ten years. He is also a law practitioner, citizen, and permanent resident of Russia. (Kostin Decl. ¶ 1.)

analogous to Plaintiff's RICO claims are Russian law claims of fraud or civil conspiracy. (Decl. of Paul B. Stephan III ¶ 23; Decl. of Alexey Kostin ¶¶ 25, 27, 28.) Professor Stephan argues that Plaintiff would be able to bring a claim for damages in the Russian arbitrazh courts for injuries to Plaintiff's business interests. (Stephan Decl. ¶ 6.) Kostin opines that Plaintiff could also file claims in the courts of general jurisdiction or criminal courts. (Kostin Decl. ¶¶ 24–31.)

Plaintiff's expert, Sergey B. Zaitsev, concedes that Plaintiff could seek damages for general harm and unjust enrichment pursuant to Chapters 59 and 60 of the Russian Civil Code,[5] but argues that such remedies are practically unavailable to Norex as long as the Russian court's decision in the Know–How Case—voiding Norex' equity interest in Yugraneft—stands. (Pltf. Opp'n. at 32–33; Zaitsev Decl. ¶¶ 90–148.) It is undisputed that Norex, aware of the Russian court proceedings in the Know–How Case but contending that it was not served properly with process, declined to participate in those proceedings even to contest the court's jurisdiction, and allowed the time periods for normal appeals and collateral attack to lapse before filing the instant case in this District. (Zaitsev Dec. ¶¶ 110–48; Arbitrazh court decision, Decl. of Vladimir Kuznetsov, Ex. 16 (Norex "has provided no reference on the claim and declined to participate in the hearing of the claim despite having been notified of the place and time of the hearing in compliance with Article 10 of the Hague Convention of 1965."); *see also* Kostin Reply Decl. ¶¶ 32–38.) Moreover, to the extent Plaintiff's claims are barred in Russian courts, they are likewise barred here since this Court would also owe deference to the Russian court decision unless it is shown that the decision was rendered in a way that violated fundamental stan-

dards of procedural fairness. *See Base Metal*, 253 F.Supp.2d at 702.

Zaitsev also acknowledges that, even after other means of collateral attack were time-barred, Plaintiff could have sought to raise newly revealed circumstances as a further basis for collateral attack, pursuant to Article 309 of the 2002 Arbitrazh Procedure Code of the Russian Federation. That article allows a petitioner to bring a challenge up to nine months after learning of the new circumstance. (Zaitsev Decl. ¶¶ 128–35.); *Accord Base Metal*, 253 F.Supp.2d at 702 (discussing Article 309 as a valid means of pursuing appellate review). That such avenue may currently be unavailable to Norex because any "new circumstances" described in the Complaint in this action have clearly have been known to Plaintiff at this point for more than nine months (*see* Zaitsev Decl. ¶ 135) appears to be the product of Plaintiff's strategic choice to allow the time to lapse.

In addition, Articles 311(2) and (3) of the Arbitrazh Procedure Code provide for the reversal of a judicial act based on corruption, although a criminal conviction must first be obtained. (Zaitsev Decl. ¶¶ 136–39, 144.); *accord Base Metal*, 253 F.Supp.2d at 703. Zaitsev argues that, because Articles 311(2) and (3) require criminal conviction as a prerequisite, use of these provisions is very rare (Zaitsev Decl. ¶ 138; *see also* Pashin Decl. ¶¶ 71–73.) The corruption theory is, nonetheless, consistent with a principal factual premise of Plaintiff's claims in this Court. Finally, Professors Kostin and Stephan posit that Plaintiff might be able to bring a variety of other claims consistent with its factual allegations in the Russian courts, including claims based on Russian criminal, bankruptcy, and/or securities laws. (Stephan Decl. ¶¶ 25–27; Kostin Decl. ¶¶ 24–26, 29–31.)

---

5.  (Decl. of Sergey B. Zaitsev ¶ 89.)

The doctrine of *forum non conveniens* does not require that the plaintiff be able to prevail on its claims; there simply must be a cause of action available. The fact that some of Norex's potential Russian law claims are now time-barred does not mean that Plaintiff does not have an adequate forum in Russia. Clearly, Plaintiff had a forum and waited for it to become unavailable.

Plaintiff also invokes alleged procedural differences between United States and Russian courts as grounds for a finding that the Russian forum is inadequate, arguing, among other things, that the Russian arbitrazh courts rarely, if ever, hear live testimony or permit cross-examination and that Russian discovery procedures are vastly more restrictive than those available in this country. (Zaitsev Decl. ¶¶ 149–161.) Defendants' expert, Kostin, identifies several procedural safeguards available in Russian civil and arbitrazh procedures including: an adversarial system; the court's obligation to notify parties about the time and place of hearings; the right of the parties to provide evidence to the court and the obligation of the parties to prove all allegations; the obligation of witnesses (party witnesses, non-party witnesses, and experts) to appear in court on request and give testimony; criminal liability of witnesses for refusal to testify, evasion of testimony, and perjury; appellate, cassation, and supervisory review; and the possibility of re-opening cases based on newly discovered circumstances. (Kostin Decl. ¶ 42.) Plaintiff's experts do not dispute that these procedural protections exist, although they do argue that some may not practically be available to the same degree as in the United States. A foreign court need not, however, provide the same procedures as United States courts in order to be considered an adequate forum. The Court finds that the procedural differences described by Plaintiff's expert do not render the Russian

forum an inadequate one. *Cf. Base Metal,* 253 F.Supp.2d at 707 & n. 22 (rejecting argument that Russian procedures are inadequate to assure fair resolution of disputes because they are different from American procedures); *Parex v. Russian Savings Bank,* 116 F.Supp.2d 415, 423–25 (S.D.N.Y.2000) (same).

The third principal basis of Plaintiff's contention as to inadequacy of the Russian courts as an alternative forum is alleged widespread corruption of the Russian judiciary. Plaintiff proffers the declaration of Sergey Pashin, a retired Russian judge, who asserts that historical factors carrying over from Soviet times and susceptibility of courts to influence by corrupt local government officials stemming from national government underfunding of the judiciary, create an atmosphere in which corruption undermines the integrity of the Russian courts such that Norex cannot reasonably expect to receive a fair hearing in the Russian courts in its dispute with Defendants, who are alleged to be influential in Russia. (Pashin Decl. ¶¶ 31–59.) Pashin's declaration makes broad assertions regarding Russian courts' failure to follow principles of fair treatment and cites a hearsay account (which allegedly appeared in a newspaper report) of a court official's alleged acknowledgment of bribery as a problem in the courts. (*Id.* ¶ 46.) Pashin does not, however, provide evidence of corruption so widespread that an American court would be justified in rejecting any and all decisions of Russian courts as illegitimate, nor does Pashin proffer any evidence of corrupt influences on the judicial decisions at issue in this case. Zaitsev attempts to show the existence of corruption in the Know–How Case decisions by arguing that the decisions are so contrary to Russian law as to be explicable only on the basis of undue influence. (Zaitsev Decl. ¶¶ 2, 27, 66, 72, 85.) Zaitsev's principal evidence in this regard is his own

analysis of the respective provisions of two treaties, his assessment of ways in which Russian courts typically apply provisional remedies, and appellate decisions overturning lower court decisions similar to those reached in the Know–How Case. (Zaitsev Decl. ¶¶ 32, 41, 53–54, 59–72, 79–80.) Finally, Plaintiff cites risk factor provisions of disclosure documents apparently filed pursuant to United States securities laws, and a speech by Russian President Vladimir Putin citing corruption as a problem being addressed in connection with the court system, as evidence of corruption of the entire Russian legal system warranting rejection of Russia as an adequate forum. (Murray Decl. ¶¶ 311–14; Compl. ¶¶ 17–18.)

It is now axiomatic in the Second Circuit that "[i]t is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation." *Blanco v. Banco Industrial de Venezuela, S.A.,* 997 F.2d 974, 982 (2d Cir.1993) (internal citations omitted). The sweeping generalizations, competing legal arguments, warnings in investment documentation, and hearsay acknowledgments of some degree of problems in a large court system cannot sufficiently support a finding that the Russian legal system as a whole lacks integrity, nor does Plaintiff's body of "evidence" warrant rejection on that basis of the Russian legal proceedings that Norex seeks to challenge here. The Court finds that Defendants have carried their burden of showing the existence of an adequate alternative forum. *Cf. Base Metal,* 253 F.Supp.2d at 708–09 (rejecting arguments that Russian forum is inherently unfair and corrupt and find-

ing Russia to be an adequate alternative forum); *Pavlov,* 135 F.Supp.2d at 434 (same).[6]

### III. *Gilbert Factors*

Having determined that an adequate alternate forum exists, the Court must now turn to weighing the relevant public and private interests examining factors originally articulated in *Gulf Oil Corp. v. Gilbert.* The public interests are: (1) the interest in having local disputes settled locally; (2) avoidance of problems in conflict of laws or application of foreign law; (3) administrative difficulties flowing from court congestion; and (4) avoidance of burdening jurors with cases that have no impact on their community. *Piper,* 454 U.S. at 241 n. 6, 102 S.Ct. 252 (citing *Gilbert,* 330 U.S. at 509, 67 S.Ct. 839). The private factors are: (1) relative ease of access to sources of proof; (2) availability of compulsory process to procure witnesses; (3) the cost for witnesses to attend trial; (4) other factors "'that make trial of a case easy, expeditious, and inexpensive.'" *Id.* (quoting *Gilbert,* 330 U.S. at 508, 67 S.Ct. 839).

#### A. *Public interest factors*

[5] The first public interest factor to be considered is that of having local disputes settled locally. Plaintiff seeks to focus on United States connections in its factual claims, arguing that the United States has a strong interest in preventing use of its banking system in connection with frauds and in preventing the orchestration of international frauds by United States persons. (Compl. ¶¶ 97–108; Pltf's Mem. in Opp'n. at 46.) Aside from its

---

6. Plaintiff cites *Films By Jove, Inc. v. Berov,* 250 F.Supp.2d 156, 208, 216 (E.D.N.Y.2003) as a case that has declared the Russian judicial system to be corrupt. On the contrary, the plaintiffs in *Films By Jove* had proffered *specific evidence* of impropriety in the form of documents from the High Arbitrazh Court's

file. Indeed, the trial judge in *Films By Jove* commented that "[a]lthough the alleged flaws in the Russian judicial system are troublesome, the present record does not support a sweeping condemnation of Russia's judiciary." *Id.* at 207.

conclusory allegations of overall direction and supervision of the alleged Illegal Scheme by United States persons and one specific allegation of a threat communicated to a person who was present in the United States at the time, however, the American connections identified by Plaintiff are merely financial channels allegedly used in the money laundering and tax fraud aspects of the Illegal Scheme. (Compl.¶¶ 80, 85, 86, 89.)

The central premise upon which all of Plaintiff's allegations of actionable harm rest is the allegation that Defendants have gained control of Russian entities and Russian company assets improperly, through frauds and violence carried out in Russia and involving Russian persons and institutions. This is clearly a matter that is principally of Russian concern; the viability of Plaintiff's contention that illegally-obtained assets have been concealed and manipulated through offshore entities' banking facilities (many of which are not located in the United States) is obviously largely dependent on a demonstration that the activities which took place in Russia were illegitimate. The public interest weighs in favor of resolution of these basic issues in the local Russian forum. *Cf. Base Metal,* 253 F.Supp.2d at 712–13 (holding that public interest factors favor Russia where controversy involved illegal takeover scheme of Russian aluminum industry). For the same reasons, the fourth factor, the burden on jurors, also weighs in favor of the Russian forum. Most of the parties are not United States persons, and the underlying events occurred largely in Russia. American jurors have little interest in deciding these controversies, which are alleged to have had only limited and attenuated economic effects in the United States, and therefore, the burden on potential jurors is not justifiable. *See Varnelo,* 2003 WL 230741, at *32.

The second public interest factor, avoidance of problems in conflict of laws or the application of foreign law, likewise weighs in favor of the Russian forum, as resolution of this case would require extensive application of Russian law. Plaintiff's case is replete with allegations that Defendants have gained control of entities and assets through means prohibited by Russian law. (Compl. ¶¶ 124–74, 180–265, 269–81, 291–98; *see generally* Zaitsev Decl.; Decl. of Professor Bernard Black; Pashin Decl.; Decl. of Larisa Nukhimovna Ryabchenko; Expert Report of Marina V. Telyukina.) Nor is Plaintiff's focus on the putative need for analysis of RICO issues sufficient to cause this factor to favor an American forum. As previously noted, Plaintiff's allegations of corrupt behavior are premised principally on the illegitimacy of Defendants' actions under Russian law. While the need to apply foreign law is not a reason in and of itself to dismiss the case, this factor strongly favors the Russian forum. *Piper,* 454 U.S. at 260 n. 29, 102 S.Ct. 252.

Because there is no direct evidence that this court is more congested than the Russian courts, the third factor, court congestion, is neutral. *Cf. Varnelo,* 2003 WL 230741, at *31. On balance, the public interest factors taken as a whole, favor the Russian forum.

### B. *Private interest factors*

[6] The first private interest factor, relative ease of access to sources of proof, weighs in favor of the Russian forum. As previously noted, the underlying "Illegal Scheme" largely involved Russian individuals and entities, and would have generated documents that likely remain in Russia, including documents created in connection with allegedly corrupt bankruptcies, allegedly corrupt Russian court decisions, and

the June 2001 Yugraneft shareholders' meeting and subsequent events.

Plaintiff instead chooses to focus its access to proof argument on evidence regarding the alleged "Slush Funds" and tax fraud. (Pltf. Opp'n. at 41–42.) To the extent that documents are located in the various alleged Slush Fund headquarters such as the Bahamas, the British Virgin Islands, and the Isle of Man, this factor is neutral as so applied. To the extent Plaintiff focuses on use of American banking institutions as conduits for transfers of allegedly illegitimate gains, the factor would appear to favor the American forum, particularly since Plaintiff purports to identify hundreds of financial institution-related witnesses and numerous financial transactions. This banking evidence is largely relevant, however, only to the extent Plaintiff is able to demonstrate the illegitimacy of Defendants' acquisition of the transferred funds. That basic demonstration requires, as explained above, the examination of proof concerning events in Russia.

Plaintiff has made no showing that proof of the alleged local and judicial corruption underlying the success of the Illegal Scheme is available outside of Russia. The banking evidence is thus secondary to the central issues involving the Illegal Scheme. As shown by the extensive submission of documents in connection with the briefing by both parties, many of the documents regarding these events are in Russian and would need to be translated into English for litigation in this Court. While this concern is not dispositive, it does present a burden that weighs in favor of proceeding in Russia. *Varnelo*, 2003 WL 230741, at *24. Considerations of ease of access to sources of proof therefore weigh in favor of the Russian forum.

As with its general arguments concerning access to sources of proof, Plaintiff's arguments regarding the location of documents focuses on its allegations of money laundering and wire fraud, asserting that numerous witnesses, including some 187 bank custodians, are located outside of Russia. (Pltf. Opp'n. at 42; *see also* Tr. Oral Arg. at 14.) A similar effort to focus on financial transactions in *Base Metal*, premised on similar allegations of corruption in Russian commodities transactions, was recently rejected:

[T]he relevant allegations that may involve witnesses located in the United States pale in comparison to those involving persons and companies located in Russia. Furthermore, it is unlikely that testimony from bank officials would be necessary in any forum simply to document that funds were transferred through the use of banks in the United States.

253 F.Supp.2d at 711. Plaintiff's effort to divert this Court's attention is similarly unavailing. Plaintiff virtually ignores the factual issues and sources of proof that are central to the allegations raised in the Complaint—the parties involved in the allegedly corrupt bankruptcies, the alleged bribes paid to Russian officials, the alleged corruption of Russian judges, the "thugs" who were allegedly used to seize control of Yugraneft's offices, and the allegedly intimidated local Yugraneft personnel. These events point to persons located in Russia whom this Court could not reach with compulsory process, and whom it would be quite costly to bring to New York for trial even if they were willing to attend voluntarily.

With respect to witnesses to the Russian events, Plaintiff represents that there are several third-party witnesses to the armed takeover of Yugraneft's offices who are located in the United States and Canada. Of the ten witnesses listed by Norex President Philip Murray in his declaration, only two are Americans; one is located in Cyprus, and the remaining seven are Canadi-

an. (Murray Decl. ¶ 127.) At best, the location of witnesses in Canada and Cyprus is neutral from the compulsory process standpoint. The existence of two U.S. witnesses to the alleged armed takeover does not tip the balance in Plaintiff's favor where the gravamen of the alleged impropriety has to do with court processes and Russian corporate governance rather than the physical means by which corporate and judicial actions adverse to Plaintiff were implemented.

Nor does the alleged unwillingness of Plaintiff's witnesses to travel to Russia constitute a private factor weighing significantly in favor of the American forum. Although the Second Circuit has held, in a case involving individual American plaintiffs who sued an American in their home forum for personal injuries and wrongful death sustained in a terrorist attack abroad, that the "substantial and unusual emotional burden on [those p]laintiffs if they were required to travel to Egypt provides additional support for keeping the case in their chosen forum of New York,"[7] and although a judge of this District has, without elaboration, determined that Iran was an inadequate forum based on his lack of any "confidence whatsoever in the plaintiffs' ability to obtain justice at the hands of the courts administered by Iranian mullahs" and his conclusion that "if the plaintiffs returned to Iran to prosecute [their] claim they would probably be shot,"[8] the dominant rule is that even a party's asserted fear of imprisonment or persecution in the alternate forum is insufficient to render that forum inadequate. *See Base Metal* 253 F.Supp.2d at 711.

Here, Plaintiff alleges that its chairman has been the target of illegitimate criminal proceedings in Russia, and both he and Plaintiff's corporate president assert that they would not return to Russia to testify in this lawsuit for fear of further pursuit of criminal proceedings against them. As Judge Koeltl explained when presented with the same argument in *Base Metal*, this Court has no way of knowing whether putative criminal charges against a witness have merit, but the witness's refusal to return to Russia to answer the charges is not a sufficient basis for retaining the action in this Court. *See id.* at 711. Plaintiff also argues that third-party witnesses claim to have been victimized by the alleged armed takeover of Yugraneft and therefore refuse to return to Russia. (Murray Decl. ¶¶ 128, 323–24.) These assertions, even if credited fully, neither demonstrate that a critical number of crucial witnesses to the facts underlying Plaintiff's claims would be effectively unavailable in the Russian forum, nor, in light of the factors discussed extensively above, do they shift the overall balance of convenience toward the American forum. Indeed, in light of Plaintiff's assertion that Russian courts do not typically entertain live testimony, the unwillingness of witnesses to travel physically to Russia is a neutral factor in the analysis at best.

Because the core allegations are based on Russian events, however, the availability of witnesses and the cost for them to attend trial tips at least somewhat in favor of the Russian forum. Finally, the Court notes Plaintiff's assertion that many of the Defendant companies regularly do business in, and/or have representatives who travel frequently to, the United States. (Pltf. Opp'n. at 44–45; Murray Decl. ¶¶ 287–300.) Even taken as true, this does not undermine the clear indications—apparent from the allegations set forth in Plaintiff's Complaint and RICO statement—that the evidentiary center of gravity of this litigation is located in Russia. On the whole, the availability of witnesses,

---

7.  *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 147 (2d Cir.2000).

8.  *Rasoulzadeh v. Associated Press*, 574 F.Supp. 854, 861 (S.D.N.Y.1983).

**584**        **304 FEDERAL SUPPLEMENT, 2d SERIES**

the cost to transport even willing witnesses to provide testimony in New York, the location of documents, and the need for interpretation of Russian-language testimony and documents if the matter were to be litigated in New York, weigh significantly in favor of the Russian forum.

### CONCLUSION

The Court is persuaded that both the public and private interest factors, considered in their entirety, strongly favor the Russian forum and finds that Defendants have met their burden of showing that Russia provides an adequate alternate forum. Therefore, Defendants' Motion to Dismiss is granted on grounds of *forum non conveniens.* Plaintiff's Motions to Strike the Declarations of Defendants' Experts Paul B. Stephan, III and Alexey Kostin are denied. The pending motions are denied as moot in all other respects. The Clerk of Court is directed to enter judgment dismissing this litigation on *forum non conveniens* grounds and close this case.



**KRISTENSONS–PETROLEUM, INC., Plaintiff,**

v.

**SEALOCK TANKER CO., LTD., Defendant,**

**and**

**Blanc Navigation, Intervenor–Defendant.**

No. 02 Civ. 9222(DC).

United States District Court, S.D. New York.

Feb. 23, 2004.

**Background:** Supplier of marine fuel brought admiralty action against vessel's charterer for breach of contract. Vessel's owner intervened and filed counterclaim seeking declaration that supplier did not possess a maritime lien under supply contracts with charterer and thus had no right to proceed against vessel in rem.

**Holdings:** On supplier's motion to dismiss counterclaim and strike owner's answer and affirmative defenses, the District Court, Chin, J., held that:

(1) counterclaim was compulsory;

(2) counterclaim satisfied Article III's case or controversy requirement; and

(3) in rem jurisdiction over vessel was not required to support exercise of subject matter jurisdiction.

Motion granted in part and denied in part.

**1. Admiralty ⟺10(1)**

If a contract is a maritime contract, it is within a federal court's admiralty jurisdiction. 28 U.S.C.A. § 1333.

**2. Admiralty ⟺14**

A contract for supply of marine fuel is "maritime" in nature, for purposes of district court's admiralty jurisdiction. 28 U.S.C.A. § 1333.

**3. Admiralty ⟺14**

Contracts for the supply of marine fuel were maritime contracts, so that action for breach of the contracts was within district court's admiralty jurisdiction. 28 U.S.C.A. § 1333.

**4. Federal Civil Procedure ⟺776**

Whether a counterclaim is compulsory or permissive turns on whether the counterclaim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; generally, this standard is met when there is a logical relationship between the counterclaim and the main claim. Fed.Rules Civ.Proc.Rule 13, 28 U.S.C.A.

the cost to transport even willing witnesses to provide testimony in New York, the location of documents, and the need for interpretation of Russian-language testimony and documents if the matter were to be litigated in New York, weigh significantly in favor of the Russian forum.

### CONCLUSION

The Court is persuaded that both the public and private interest factors, considered in their entirety, strongly favor the Russian forum and finds that Defendants have met their burden of showing that Russia provides an adequate alternate forum. Therefore, Defendants' Motion to Dismiss is granted on grounds of *forum non conveniens.* Plaintiff's Motions to Strike the Declarations of Defendants' Experts Paul B. Stephan, III and Alexey Kostin are denied. The pending motions are denied as moot in all other respects. The Clerk of Court is directed to enter judgment dismissing this litigation on *forum non conveniens* grounds and close this case.



KRISTENSONS–PETROLEUM,
INC., Plaintiff,

v.

SEALOCK TANKER CO.,
LTD., Defendant,

and

Blanc Navigation, Intervenor–
Defendant.

No. 02 Civ. 9222(DC).

United States District Court,
S.D. New York.

Feb. 23, 2004.

**Background:** Supplier of marine fuel brought admiralty action against vessel's charterer for breach of contract. Vessel's owner intervened and filed counterclaim seeking declaration that supplier did not possess a maritime lien under supply contracts with charterer and thus had no right to proceed against vessel in rem.

**Holdings:** On supplier's motion to dismiss counterclaim and strike owner's answer and affirmative defenses, the District Court, Chin, J., held that:

(1) counterclaim was compulsory;

(2) counterclaim satisfied Article III's case or controversy requirement; and

(3) in rem jurisdiction over vessel was not required to support exercise of subject matter jurisdiction.

Motion granted in part and denied in part.

**1. Admiralty ⊂⊃10(1)**

If a contract is a maritime contract, it is within a federal court's admiralty jurisdiction. 28 U.S.C.A. § 1333.

**2. Admiralty ⊂⊃14**

A contract for supply of marine fuel is "maritime" in nature, for purposes of district court's admiralty jurisdiction. 28 U.S.C.A. § 1333.

**3. Admiralty ⊂⊃14**

Contracts for the supply of marine fuel were maritime contracts, so that action for breach of the contracts was within district court's admiralty jurisdiction. 28 U.S.C.A. § 1333.

**4. Federal Civil Procedure ⊂⊃776**

Whether a counterclaim is compulsory or permissive turns on whether the counterclaim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; generally, this standard is met when there is a logical relationship between the counterclaim and the main claim. Fed.Rules Civ.Proc.Rule 13, 28 U.S.C.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BASE METAL TRADING S.A., et al.,                    00 Civ. 9627 (JGK)

                              Plaintiffs,              ORDER

            - against -

RUSSIAN ALUMINUM, et al.,

                              Defendants.

JOHN G. KOELTL, District Judge:

     The argument on the pending motions is scheduled for
February 10, 2003 at 10:00 a.m.

     While the Court appreciates that the parties have submitted
extensive papers including charts and expert affidavits, and that
these papers contain references to numerous court decisions and
the parties' contentions with respect to those decisions, the
Court requests that the plaintiffs and the defendants submit a
consolidated chart on each side summarizing the following items:

     A chronological list of each of the Russian court decisions
affecting the parties referred to in the papers, particularly all
decisions that the plaintiffs claim were the result of corruption
(marked to show the plaintiffs' contention of corruption), the
result of each of those decisions, any decisions on appeal and
the substance of those decisions, together with a notation for
each such decision as to whether any further appeals have been

- 1 -

pursued, whether any further appeals were or are permissible under Russian law, and whether any further appeals are pending. With respect to each appellate decision, the plaintiffs should indicate whether they contend that the decision was the result of corruption.  With respect to the availability or lack of availability of any further appeals, the relevant provisions of Russian law should be cited. Each of the references in this summary chart should be cross referenced to the appropriate reference in the papers already before the Court.  The charts should be submitted to the Court on paper and on CD-Rom, if possible with the cross references linked to the CD-Roms already provided to the Court.

It would also be useful to the Court if the Parties could provide a map that indicates the location of each of the Courts referred to in the previous summary charts.

The Court requests that these documents be provided to the Court by February 5, 2003.

SO ORDERED.
Dated:     New York, New York
           January 29, 2003

_____
John G. Koeltl
United States District Judge

- 2 -

A - 623

# DEFENDANTS' ORAL ARGUMENT SUBMISSIONS

## CHRONOLOGY OF GOK-RELATED RUSSIAN COURT DECISIONS[1]

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|------|------------------|------------------------------|-----------|--------------------------------------|---------|
| 1. | 02/01/00 | Kachkanar City Court for the Sverdlovsk Oblast (A.I. Ryazanova) | Court upholds 01/28/00 BOD meeting, rejecting an objection that the meeting did not comply with law, finding that votes of 4 of the directors complied with both Russian law and GOK's Articles of Incorporation. | Exh. 41[1]; Kapoura ¶ 77; Stephan ¶ 43; GOK Memo. at 11.[3] | Yes.[4] | See 02/15/00 decision (# 4) affirming this decision. |
| 2. | 02/07/00 | Tverskoy Inter-Municipal Court of Moscow (N.V. Zhuravleva) | Bars GOK from implementing decisions made at the 01/28/00 BOD meeting. | Exh. 57; Kapoura ¶ 88; Stephan ¶ 43. | No. | See 05/30/00 decision (# 11) which reversed this decision and dismissed action. |
| 3. | 02/14/00 | Cheryomoushkinsky Inter-Municipal Court of Moscow (D.A. Savostyanov) | Rejected challenges to the 01/28/00 BOD meeting on procedural grounds. | Exh. 59; Kapoura ¶ 91; Stephan ¶ 43; GOK Mem. at 12 n.8. | ? | Parties had ten days in which to appeal this decision. Defendants do not know whether they appealed or not.[5] Whether they did or not, there are two further avenues to appeal. First they may seek supervisory review.[6] Second, they may seek review based on the discovery of newly-revealed circumstances.[7] |

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|------|------------------|----------------------------|-----------|--------------------------------------|---------|
| 4. | 02/15/00 | Arbitrazh Court for the Sverdlovsk Oblast (S.N. Troubkin, L.M. Zvyagintseva, I.L. Smagina) | Affirms 02/01/00 ruling (# 1) upholding 01/28/00 BOD meeting. | Exh. 42; Kapoura ¶ 78; Stephan ¶ 43; GOK Mem. at 11. | Yes. | No appeal was taken.¹ Parties have two further avenues to appeal. First, they may seek supervisory review by the Supreme Arbitrazh Court. Second, they may seek review based on the discovery of newly-revealed circumstances.⁸ |
| 5. | 02/15/00 | Kachkanar City Court (A.I. Ryazanov) | Enjoined the conduct of the 03/04/00 shareholders' meeting. | Exh. 63; Kapoura ¶ 95; Stephan ¶ 47; GOK Mem. at 12 n.9. | Yes. | Parties had ten days in which to appeal this decision. Defendants do not know whether they appealed or not.¹ |
| 6. | 02/29/00 | Arbitrazh Court for the Sverdlovsk Oblast (N.I. Kharmazova, N.V. Kazantseva, V.A. Pletnev) | Enjoined the conduct of the 03/04/00 shareholders' meeting. | Exh. 64; Kapoura ¶ 95; Stephan ¶ 47; GOK Mem. at 12 n.9. | Yes. | No appeal was taken.¹ |

-2-

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|---|---|---|---|---|---|
| 7. | 03/02/00 | Arbitrazh Court for the Sverdlovsk Oblast (M.I. Skourntovsky, L.A. Kolikova, V.A. Rogozhkina) | Rejected challenges to the 01/28/00 BOD meeting on procedural grounds. | Exh. 60; Kapoura ¶ 91; Stephan ¶ 43; GOK Mem. at 12 n.8. | ? | No appeal was taken.[¹] Parties have two further avenues to appeal. First, they may seek supervisory review by the Supreme Arbitrazh Court. Second, they may seek review based on the discovery of newly-revealed circumstances.[²] |
| 8. | 03/30/00 | Arbitrazh Court for the Sverdlovsk Oblast (N.V. Kazantseva) | Court finds that the GOK bankruptcy application was sufficient under Russian Law and appoints Kozyrev as bankruptcy trustee. | Exh. 1; Kozyrev ¶ 12; Kapoura ¶¶ 19-20; Stephan ¶ 34; GOK Mem. at 6, 8, 19. | Yes. | No appeal was taken.[¹] Parties have two further avenues to appeal. First, they may seek supervisory review by the Supreme Arbitrazh Court. Second, they may seek review based on the discovery of newly-revealed circumstances.[²] Propriety of institution of bankruptcy proceeding confirmed by the 08/18/00 decision of the Federal Service of Russia (Exh. 23) and the Order of the Department of the Interior for the Sverdlovsk Region dated November 24, 2001 (Bernard Exh. 36). |

-3-

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|---|---|---|---|---|---|
| 9. | 04/05/00 | Meschansky Inter-Municipal Regional Court (Ye.M. Nemnova) | Rejects challenge to 03/04/00 shareholders' meeting. | Exh. 66; Kapoura ¶ 96; Stephan ¶ 47; GOK Mem. at 12. | No. | See 03/06/01 decision (# 39) reversing this decision. |
| 10. | 04/10/00 | Perovsky Inter-Municipal Court of Moscow. (M.V. Ovsiannikova) | Enjoins GOK from implementing decisions made during the 01/28/00 BOD meeting and enjoins change in Registrar. | Exh. 52; Kapoura ¶ 84 n.*; Stephan ¶ 43; GOK Mem. at 11. | No. | See 09/25/00 decision (# 19) revoking the 04/10/00 injunction. |
| 11. | 05/30/00 | Tverskoy Inter-Municipal Court of Moscow (N.V. Zhuravleva) | Reversed 02/07/00 decision (# 2) and rejected challenge to the 01/28/00 BOD meeting brought by GOK's former General Director, D.A. Khaidarov, on the ground that the challenge was filed with the wrong court. | Exh. 56; Kapoura ¶ 88; Stephan ¶ 43; GOK Mem. at 12. | ? | First, claim could have been brought in proper court. Moreover, parties had ten days in which to appeal this decision. Defendants do not know whether they appealed or not.[5] Whether they did or not, there are two further avenues to appeal. First, they may seek supervisory review.[6] Second, they may seek review based on the discovery of newly-revealed circumstances.[7] |
| 11A. | 07/13/00 | Meschansky Inter-Municipal Regional Court (E.M. Nemnova) | Nexis successfully asserts holder-in-due-course defense. | Exh. 93; Stephan ¶ 50; GOK Mem. at 25 n. 12. | No. | No known further activity. |
| 12. | 08/01/00 | Arbitrazh Court for the Chelyabinsk Region (L.I. Zabirova, V.I. Zaiberv, V.V. Khudynkova) | Court sets aside the judicial sale of GOK stock to Profit House and orders that the stock be re-registered to NPRO Urals. | Exh. 83; Kapoura ¶¶ 114-116; Stephan ¶ 49; GOK Mem. at 15, 24; Kleymenov ¶ 52. | ? | See 10/16/00 decision (# 21) affirming this decision. |

4

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|------|------------------|-----------------------------|-----------|--------------------------------------|---------|
| 13. | 08/02/00 | Izmailovo Inter-Municipal Court of Moscow (Ye. G. Isayeva) | Enjoins Kozyrev, the bankruptcy trustee for GOK, from conducting a creditor's meeting scheduled on 08/11/00. | Exh. 14; Kapoun ¶ 29 n.[4]; Stephan ¶ 35. | No | See 11/30/00 decision (# 28) reversing this decision. |
| 14. | 08/09/00 | Tverskoy Inter-Regional Municipal Court of Moscow (M.V. Ovsiannikov) | Enjoins GOK Board from taking actions based on 01/28/00 BOD meeting. | Bukharin Exh. 32. | No | No known further activity. |
| 15. | 08/14/00 | Kachkanar Town Court of the Sverdlovsk Oblast (T.A. Korakovtseva) | Invalidates 03/04/00 shareholders' meeting on the ground that it had been enjoined by earlier court decisions including the 02/15/00 decision (# 5) and the 02/29/00 decision (# 6). | Exh. 62; Kapoun ¶ 94; Stephan ¶ 47; GOK Mem. at 12. | Yes. | Parties had ten days in which to appeal this decision. Defendants do not know whether they appealed or not.[5] Whether they did or not, there are two further avenues to appeal. First they may seek supervisory review.[6] Second, they may seek review based on the discovery of newly-revealed circumstances.[7] |
| 16. | 08/22/00 | Arbitrazh Court for the Sverdlovsk Oblast (Platonova, E.A., Mikushina, N.V., Kazantseva, N.V.) | Court adopts recommendation of GOK creditors at the 08/11/00 creditors' meeting and appoints Kozyrev as GOK's external trustee. | Exh. 2; Kozyrev ¶¶ 21-22; Kapoun ¶¶ 29-30; Stephan ¶ 34; GOK Mem. at 7, 8. | Yes. | See 01/15/01 decision (# 34) affirming this decision. |

-5-

A - 629

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|---|---|---|---|---|---|
| 17. | 09/04/00 | Arbitrazh Court for the Sverdlovsk Oblast (L.G. Gryazukh, Ye. N. Fedorova, M.G. Voropayeva) | Rejected challenges to the 01/28/00 BOD meeting on procedural grounds. | Exh. 61; Kapoura ¶ 9; Stephan ¶43; GOK Mem. at 12 n.8. | ? | No appeal was taken.¹ Parties have two further avenues to appeal. First, they may seek supervisory review by the Supreme Arbitrazh Court. Second, they may seek review based on the discovery of newly-revealed circumstances.¹ |
| 18. | 09/19/00 | Meshchansky Inter-Municipal Court of Moscow (I.V. Shikanova) | Finds that the actions taken at the 01/28/00 BOD meeting violated Russian law. | Exh. 44; Kapoura ¶ 80; Stephan ¶43; GOK Mem. at 11 n. 7. | No. | See 03/08/01 decision (# 40) reversing this decision. |
| 19. | 09/25/00 | Pervoisky Inter-Municipal Court of Moscow (V.V. Ovsiannikova) | Revokes an injunction which had been granted by a 04/10/00 decision (# 10) against the implementation of the decisions made at the 01/28/01 BOD meeting. Also revokes ban on change in register. | Exh. 53; Kapoura ¶ 84 n.*; Stephan ¶43; GOK Mem. at 11. | ? | See 10/26/00 decision (# 23) affirming this decision. |
| 20. | 09/29/00 | Solmetovsky Inter-Municipal Regional Court of Moscow (N.V. Ilyin) | Court invalidates sale of GOK shares to Foston and orders the shares transferred to OAO Nizhnetagilsky Metallurgical Combine ("NTMC"), OOO Invesment, and ZAO Standard Trust. Claims as to other plaintiffs in this case (Davis and Holder) were rejected. | Exh. 86; Kapoura ¶ 118; Stephan ¶¶ 51, 54; GOK Mem. at 16; Arkhimina ¶¶ 26, 28; Kleymanov ¶ 67. | ? Decision against Foston, but in favor of Davis and Holder. | See 02/19/01 (# 35) and 02/20/01 (# 37) decisions regarding appeal. |
| 21. | 10/16/00 | Appellate Instance for the Arbitrazh Court for the Chelyabinsk Region (T.N. Kurtashkova, L.L. Golovko, V.V. Ruchkov) | Court affirms the 08/01/00 decision (# 12), which set aside the judicial sale of GOK stock to Profit House and ordered that the stock be re-registered to NPRO Uralx. | Exhibit 84; Kapoura ¶¶ 114-116; Stephan ¶ 49; GOK Mem. at 15, 24; Kleymanov ¶ 54. | ? | See 01/04/01 decision (# 32) affirming this decision. |

-6-

A - 630

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|---|---|---|---|---|---|
| 22. | 10/19/00 | Arbitrazh Court for the Sverdlovsk Oblast | Directive from Court for Polygron to supply documents in support of its claim in GOK bankruptcy, which had been rejected by the trustee. | Kozyrev ¶ 50; Kapoura ¶ 56 (as referenced in 10/31/00 decision (# 24)); GOK Mem. at 9. | Yes. | See 10/31/00 decision (# 24) for further developments involving Polygron's refusal to provide documents. |
| 23. | 10/26/00 | Moscow City Court (V.G. Iudina, S.A. Klimova, M.V. MDykh) | Affirms 09/25/00 decision (# 19) regarding 01/28/00 BOD meeting and change in registrar. | Exh. 54; Kapoura ¶ 84 n.[*]; Stephan ¶ 43; GOK Mem. at 11. | ? | No appeal was taken.[3] Parties have two further avenues to appeal. First, they may seek supervisory review by the Supreme Arbitrazh Court. Second, they may seek review based on the discovery of newly-revealed circumstances.[4] |
| 24. | 10/31/00 | Arbitrazh Court for the Sverdlovsk Oblast (T.M. Dyukina, N.V. Mikushina, N.V. Kuznetsova) | Court again directs Polygron to supply documents in connection with its challenge to trustee's rejection of its claim in the GOK bankruptcy proceeding. | Exh. 32; Kozyrev ¶ 50; Kapoura ¶ 57; GOK Mem. at 9. | Yes. | See 03/23/01 decision (# 44) for further action by Court (dismissal due to Polygron's refusal to provide documents). |
| 25. | 11/16/00 | Arbitrazh Court of Moscow (L.D. Tverdokhlebova, Z.N. Leventsova, L.A. Gavrelovskaya) | Finds that the actions taken at the 01/28/00 BOD meeting violated Russian law. | Exh. 48; Kapoura ¶ 83; Stephan ¶ 43; GOK Mem. at 11 n. 7. | No. | See 2/22/01 decision (# 38) reversing this decision. |
| 26. | 11/21/00 | Tverskoy Inter-Regional Municipal Court of Moscow (L.I. Bylovskaya, G.M. Kotina, N.D. Gerasva) | Finds that the actions taken at the 01/28/00 BOD meeting violated Russian law. | Exh. 46; Kapoura ¶ 82; Stephan ¶¶ 43, 54; GOK Mem. at 11 n. 7. | No. | See 03/26/01 decision (# 46) reversing this decision. |

-7-

A - 631

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|------|------------------|-----------------------------|-----------|--------------------------------------|---------|
| 27. | 11/22/00 | Arbitrazh Court for the Republic of Kalmykia (S.N. Loginov) | Voided the agreement providing for the sale of shares to Polypron and held that the transaction was concluded by an unauthorized individual on behalf of GOK. | Exh. 78; Kapoura ¶ 109; Stephan ¶ 52; GOK Mem. at 14; Chervinsky ¶ 10; Kleymenov ¶ 20. | Yes. | See 04/17/01 decision (# 48) which reverses this decision. |
| 28. | 11/30/00 | Moscow City Court (G.A. Gulynaya, M.V. Gornova, R.N. Polishchuk) | Reverses 08/02/00 decision (# 13) and remands to Izmailovo Inter-Municipal Court. | Exh. 15; Kapoura ¶ 29 n.ª; Stephan ¶ 35. | ? | Remands for further proceedings before Izmailovo Inter-Municipal Court. No known further activity. |
| 29. | 12/13/00 | Perovsky Inter-Municipal Court of Moscow (N.V. Sapyrkin) | Upholds 01/28/00 BOD meeting (as well as the decision to change GOK's registrar). | Exh. 50; Kapoura ¶ 84; Stephan ¶ 43; GOK Mem. at 11. | ? | Parties had ten days in which to appeal this decision. Defendants do not know whether they appealed or not.[3] Whether they did or not, there are two further avenues to appeal. First, they may seek supervisory review.[4] Second, they may seek review based on the discovery of newly-revealed circumstances.[5] |

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|------|------------------|----------------------------|-----------|--------------------------------------|---------|
| 30. | 12/20/00 | Petrogradsky District Court of St. Petersurg (V.V. Starchenkova) | Court rejects challenge to change in registrar. | Exh 72; Kaygoun ¶ 105(e); Stephan ¶ 48; GOK Mem. at 14, 23. | ? | Parties had ten days in which to appeal this decision. Defendants do not know whether they appealed or not.[4] Whether they did or not, there are two further avenues to appeal. First, they may seek supervisory review.[4] Second, they may seek review based on the discovery of newly-revealed circumstances.[7] |
| 31. | 12/22/00 | Gagarinsky Inter-Municipal Regional Court of Moscow (E.A. Maddshanova) | Rejected challenges to 01/28/00 BOD meeting brought by GOK's former General Director, D.A. Khaidarov, on the ground that the challenge was filed with the wrong court. | Exh. 58; Stephan ¶ 43; GOK Mem. at 11 n. 7. | ? | First, claims could have been brought in court with proper jurisdiction. Moreover, parties had ten days in which to appeal this decision. Defendants do not know whether they appealed or not.[5] Whether they did or not, there are two further avenues to appeal. First, they may seek supervisory review.[6] Second, they may seek review based on the discovery of newly-revealed circumstances.[7] |

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|------|------------------|------------------------------|-----------|---------------------------------------|---------|
| 32. | 01/04/01 | Arbitrazh Court for the Urals Circuit (I.G. Arsenov, P.A. Azanov, M.G. Mitina) | Court affirms the 10/16/00 decision (# 21), which set aside the judicial sale of GOK stock to Profit House and ordered that the stock be re-registered to NPRO Urals. Relates to Omni claim. | Exh. 85; Kapoura ¶¶ 114-116; Stephan ¶ 49; GOK Mem. at 15, 24; Kleymanov ¶ 54. | ? | **PENDING** - Profit House has filed a petition with Supreme Arbitrazh Court (Rieger (Omni) 7) to overturn the 10/16/00 decision (# 21) and the 01/04/01 decision (# 32), which set aside the judicial sale of GOK stock to Profit House and ordered that the stock be re-registered to NPRO Urals. Omni is also free to assert its status as an acquirer in good faith of the shares at issue, and a refusal to accede to Omni's demand would be subject to review by the Arbitrazh Court for the Sverdlovsk Oblast. Stephan ¶ 49. |

-10-

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|---|---|---|---|---|---|
| 33. | 01/12/01 | Perovgatsky District Court of St. Petersburg (V.V. Starchilakova) | Court upholds legality of GOK registrar change. | Exh. 73; Kapoura ¶ 1050); Stephan ¶ 48; GOK Mem. at 14, 23. | ? | Parties had ten days in which to appeal this decision. Defendants do not know whether they appealed or not.[6] Whether they did or not, there are two further avenues to appeal. First, they may seek supervisory review.[6] Second, they may seek review based on the discovery of newly-revealed circumstances.[7] |
| 34. | 01/15/01 | Appellate Instance of the Arbitrazh Court for the Sverdlovsk Oblast (C.A. Tsvetkova, E.A. Bikzmahmetova, G.I. Streinikova) | On appeal filed by Nexis, court reviews and upholds the 08/22/00 decision (# 16) regarding institution of external trust management. | Exh. 17; Kozyrev ¶ 26; Kapoura ¶ 33; Stephan ¶ 34; GOK Mem. at 9. | Yes. | See 06/07/01 decision (# 53) affirming this decision. |
| 35. | 02/19/01 | Solntsevsky Inter-Municipal Regional Court of Moscow (A.D. Frolskin) | Court grants Foston's motion to reinstate the case regarding its claim to GOK shares. | Akhilmina Exh. 18; Akhilmina ¶ 37. | No. | See 03/30/01 cassation appeal (# 47). |
| 36. | 02/19/01 | Arbitrazh Court for the Sverdlovsk Oblast (E.A.Platonova, A.A. Grydzik, N.V. Kazantseva) | Upholds trustee's recognition of claim of Lebau, finding that promissory notes were lawful. | Exh. 34; Kozyrev ¶ 56; Kapoura ¶ 64; Stephan ¶ 38; GOK Mem. at 9. | Yes. | See 04/19/01 decision (# 50) affirming this decision. |
| 37. | 02/20/01 | Solntsevsky Inter-Municipal Regional Court of Moscow (A.D. Frolyskin) | Court grants Foston's motion to reinstate cassation appeal in case regarding its claim to GOK shares. | Akhilmina Exh. 7; Akhilmina ¶ 38; Kleynmnov ¶ 69. | No. | See 03/30/01 cassation appeal (# 47). |

-11-

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|------|------------------|----------------------------|-----------|-------------------------------------|---------|
| 38. | 02/22/01 | Appellate Instance of the Arbitrazh Court of Moscow (L.V. Dyina, G.I. Zakharova, P.V. Fursov) | Reversing 11/16/00 decision (# 25), upholds 01/28/00 BOD meeting, indicating that a quorum was present. | Exh. 47; Kapoura ¶ 83; Stephan ¶ 43; GOK Mem. at 11 n.7. | Yes. | Sizt 04/26/01 decision (# 52) affirming this decision. |
| 39. | 03/06/01 | Moscow City Court (Ya. N. Goslkyova, Ya. M. Gorokhova, M.V. Gornova) | Reverses 04/05/00 decision (# 9) which had upheld 03/04/00 shareholders' meeting. | Exh. 65; Kapoura ¶ 94; Stephan ¶ 47; GOK Mem. at 12. | ? | Parties had ten days in which to appeal this decision. Defendants do not know whether they appealed or not. Whether they did or not, there are two further avenues to appeal. First, they may seek supervisory review. Second, they may seek review based on the discovery of newly-revealed circumstances. |

-12-

A - 636

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|------|------------------|----------------------------|-----------|--------------------------------------|---------|
| 40. | 03/08/01 | Moscow City Court (Ye. N. Gonlkaryova, Ye. M. Gorokhova, M.V. Gornova) | Upholds 01/25/00 BOD meeting (reversing 09/19/00 decision (# 18)), finding that the actions taken at the meeting complied with Russian law and GOK's Articles of Incorporation with a quorum being present. | Exh. 43; Kapoun ¶ 80 (mistried as March 3, 2001); Stephan ¶ 43; GOK Mem. at 11. | Yes. | Parties had ten days in which to appeal this decision. Defendants do not know whether they appealed or not. Whether they did or not, there are two further avenues to appeal. First, they may seek supervisory review. Second, they may seek review based on the discovery of newly-revealed circumstances. |
| 41. | 03/13/01 | Izmailovo Inter-Municipal Regional Court of Moscow (E.G. Lasyeva) | Rejected challenge regarding the change in GOK's registrar for procedural reasons. | Exh. 74; Kapoun ¶ 105(c); GOK Mem. at 19 n.10, 23. | ? | Parties had ten days in which to appeal this decision. Defendants do not know whether they appealed or not. Whether they did or not, there are two further avenues to appeal. First, they may seek supervisory review. Second, they may seek review based on the discovery of newly-revealed circumstances. |

-13-

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|---|---|---|---|---|---|
| 42. | 03/13/01 | Izmailovo Inter-Municipal Regional Court of Moscow (E.G. Izsyeva) | Rejected challenge regarding the change in GOK's registrar for procedural reasons. | Exh. 75; Kapoura ¶ 105(e); GOK Mem. at 13 n.10, 23. | ? | Parties had ten days in which to appeal this decision. Defendants do not know whether they appealed or not.[2] Whether they did or not, there are two further avenues to appeal. First, they may seek supervisory review.[3] Second, they may seek review based on the discovery of newly-revealed circumstances.[4] |
| 43. | 03/20/01 | Arbitrazh Court of Moscow (N.V. Koshkeyeva) | Court refuses to satisfy complaint brought by, inter alia, Davis, Holder, Omni and Foston. Court concluded that registrar contract had been properly terminated and that notice had been given via publication in Oblastnaya gazeta. | Exh. 69; Kapoura ¶ 101; Stephan ¶ 48; GOK Mem. at 14, 23. | ? | See 06/26/01 decision (# 55) affirming this decision. |
| 44. | 03/23/01 | Arbitrazh Court for the Sverdlovsk Oblast (N.V. Kazumsava, I.V. Lipina, E.A. Platonova) | Polyprom case regarding its rejected bankruptcy claim dismissed due to Polyprom's decision not to provide documents. | Exh. 92; Korotyev ¶ 51; Kapoura ¶ 51; Stephan ¶ 36. | Yes. | No appeal was taken.[5] Parties have two further avenues to appeal. First, they may seek supervisory review by the Supreme Arbitrazh Court. Second, they may seek review based on the discovery of newly-revealed circumstances.[6] |

-14-

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|------|------------------|------------------------------|-----------|--------------------------------------|---------|
| 45. | 03/23/01 | Arbitrazh Court for the Sverdlovsk Oblast (G.A. Platonova, I.V. Lipina, N.V. Kazmaeva) | Court upholds trustee's denial of Nexia' claim under the supply agreement. | Exh. 28; Kozyrev ¶45; Kapoura ¶51; Stephan ¶36. | Yes. | No appeal was taken.[1] Parties have two further avenues to appeal. First, they may seek supervisory review by the Supreme Arbitrazh Court. Second, they may seek review based on the discovery of newly-revealed circumstances.[2] |
| 46. | 03/26/01 | Moscow City Court (L.V. Berisova, Ye. M. Varlova, L Ye. Loshkanov) | Reverses 11/21/00 decision (# 26) and upholds 1/28/00 BOD meeting. | Exh.45; Kapoura ¶83; Stephan ¶¶43, 54; GOK Mem. at 11. | Yes. | Parties had ten days in which to appeal this decision. Defendants do not know whether they appealed or not.[3] Whether they did or not, there are two further avenues to appeal. First, they may seek supervisory review.[4] Second, they may seek review based on the discovery of newly-revealed circumstances.[5] |
| 47. | 03/30/01 | Moscow City Court (L.V. Fedorova, S.A. Klimova, O.N. Goncharova) | Court remands action regarding Foston shares (see 09/29/00 decision (# 20) to Solntsevsky Inter-Municipal Regional Court of Moscow). | Exh. 87; Stephan ¶51; GOK Mem. at 16; Akhimdna ¶39; Kleymanov ¶¶70-71, 92. | No. | See 11/30/01 decision (# 66) on remand. |

-15-

A - 639

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|------|------------------|----------------------------|-----------|--------------------------------------|---------|
| 48. | 04/17/01 | Federal Arbitrazh Court for the North Caucasus Circuit (E.I. Afonina, S.M. Iliushnikova, T.A. Spiridenko) | Reverses 11/22/00 decision (# 27) and remanded the Polyprom/Holdex claim regarding sale of GOK shares to lower court for further fact finding. | Exh. 79; Kapoura ¶¶ 110-111; Stephan ¶ 52; GOK Mem. at 15; Chervinsky ¶ 11; Kleymenov ¶ 22 | No. | See 07/05/01 decision (# 57) (further proceedings in lower court). |
| 49. | 04/18/01 | Arbitrazh Court for the Sverdlovsk Oblast (E.A. Platonova, I.V. Lipina, N.V. Kazantseva) | Rejects challenge by Nexis to trustee's recognition of claim by Syrius (which had acquired notes from Lebau). | Exh. 37; Kozyrev ¶ 58; Kapoura ¶ 66; Stephan ¶ 39. | Yes. | No appeal was taken.⁴ Parties have two further avenues to appeal. First, they may seek supervisory review by the Supreme Arbitrazh Court. Second, they may seek review based on the discovery of newly-revealed circumstances.⁵ |
| 50. | 04/19/01 | Arbitrazh Court for the Sverdlovsk Oblast (E.A. Platonova, N.V. Miliushin, N.V. Kazantseva) | Court approves GOK settlement over objection of a few creditors, including Plaintiff Nexis Products, LLC. | Exh. 3 and 20; Kozyrev ¶¶ 30-32; Kapoura ¶¶ 38-39; Stephan ¶ 40; GOK Mem. at 7, 8. | Yes. | See 06/27/01 decision (# 56) affirming this decision. |
| 51. | 04/19/01 | Appellate Instance for the Arbitrazh Court for the Sverdlovsk Oblast (N.L. Zorina, G.I. Strelnikova, E.A. Elkanukhamedova) | Resolution upholds 02/19/01 decision (# 36) with respect to Lebau. | Exh. 35; Kozyrev ¶ 57; Kapoura ¶ 65; Stephan ¶ 38; GOK Mem. at 9. | Yes. | See 07/12/01 decision (# 58) affirming this decision. |

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|------|------------------|----------------------------|-----------|--------------------------------------|---------|
| 52. | 04/26/01 | Federal Arbitrazh Court for the Moscow Circuit (N.A. Shuruhalova, A.V. Zhukov, V.K. Tikhonova) | Affirms 02/22/01 decision (# 38) upholding the 01/28/00 BOD meeting. | Exh. 49; Kapoura ¶ 84; Stephan ¶ 43; GOK Mem. at 11. | Yes. | Parties have two further avenues to appeal. First, they may seek supervisory review by the Supreme Arbitrazh Court. Second, they may seek review based on the discovery of newly-revealed circumstances. |
| 53. | 06/07/01 | Federal Arbitrazh Court for the Urals Circuit (A.G. Kuznetsov, V.N. Makarov, V.A. Kuprenkov) | Upholds the 01/15/01 determination of the Sverdlovsk Oblast Court (# 34) regarding external trust management. | Exh. 19; Kozyrev ¶ 28; Kapoura ¶ 35; Stephan ¶ 34. | Yes. | Parties have two further avenues to appeal. First, they may seek supervisory review by the Supreme Arbitrazh Court. Second, they may seek review based on the discovery of newly-revealed circumstances. |

-17-

A - 641

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|------|------------------|----------------------------|-----------|--------------------------------------|---------|
| 54. | 06/22/01 | Tverskoy Inter-Regional Municipal Court of Moscow (A.A. Sevilkin, I.N. Degodyn, I.P. Alexandrova) | Rejected challenges to 01/28/00 BOD meeting brought by GOK's former General Director, D.A. Khaidarov, on the ground that the challenge was filed with the wrong court. | Exh. 67; Stephan ¶ 43; GOK Mem. at 12. | ? | First, claims could have been brought in court with proper jurisdiction. Moreover, parties had ten days in which to appeal this decision. Defendants do not know whether they appealed or not.[5] Whether they did or not, there are two further avenues to appeal. First, they may seek supervisory review.[6] Second, they may seek review based on the discovery of newly-revealed circumstances.[7] |
| 55. | 06/26/01 | Appellate Instance of the Arbitrazh Court of Moscow (P.V. Pertser, G.I. Zakharova, L.V. Ilyina) | Court upholds 03/20/01 decision (# 43) rejecting challenge by Davis, Holder, Omni and Forton to change in registration. | Exh. 70; Kapoura ¶ 102; Stephan ¶ 48; GOK Mem. at 14, 23. | ? | See 09/05/01 decision (# 61) affirming this decision. |
| 56. | 06/27/01 | Appellate Instance of the Arbitrazh Court for the Sverdlovsk Oblast (V.S. Kokarva, N.L. Zorina, S.A. Tsvetkova). | Court upholds 04/19/01 (# 50) approval of the GOK settlement. | Exh. 21; Kozyrev ¶ 33; Kapoura ¶ 40; Stephan ¶ 40. | Yes. | See 08/21/01 decision (# 59) affirming this decision. |
| 57. | 07/05/01 | Arbitrazh Court for the Republic of Kalmykia (L.B. Dzhambinova) | Found that the contract providing for the sale of shares to Polymetal violated Russian law and invalidated the transaction. | Exh. 80; Kapoura ¶¶ 110-111; Stephan ¶ 52; GOK Mem. at 15, 24; Chervinsky ¶ 12. | Yes. | See 11/09/01 decision (# 65) affirming this decision. |

-18-

A - 642

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|------|------------------|----------------------------|-----------|--------------------------------------|---------|
| 58. | 07/12/01 | Federal Arbitrazh Court for the Urals Circuit (C.V. Balachov, I.I. Kondratyeva, F.V. Kazmatov) | Upholds 04/19/01 decision (# 51) with respect to Lubnal's creditor claim. | Exh. 36; Kozyrev ¶ 57; Kapoura ¶ 65; Stephan ¶ 38. | Yes. | Parties have two further avenues to appeal. First, they may seek supervisory review by the Supreme Arbitrazh Court. Second, they may seek review based on the discovery of newly-revealed circumstances.[5] |
| 59. | 08/21/01 | Federal Arbitrazh Court for the Urals Circuit (S.V. Balachov) | Court re-affirms 04/19/01 (# 50) and 06/27/01 (# 56) approval of the settlement. | Exh. 22; Kozyrev ¶ 34; Kapoura ¶ 41; Stephan ¶ 40. | Yes. | Parties have two further avenues to appeal. First, they may seek supervisory review by the Supreme Arbitrazh Court. Second, they may seek review based on the discovery of newly-revealed circumstances.[5] |

-19-

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|------|------------------|----------------------------|-----------|--------------------------------------|---------|
| 60. | 08/27/01 | Chertanovo Federal Regional Court of Moscow (L.V. Semyonova) | Rejected additional challenges regarding the change in registrar for procedural reasons. | Exh.76; Kapoura ¶ 105(c); GOK Mem. at 13 n.10, 23. | ? | Parties had ten days in which to appeal this decision. Defendants do not know whether they appealed or not.[3] Whether they did or not, there are two further avenues to appeal. First, they may seek supervisory review.[4] Second, they may seek review based on the discovery of newly-revealed circumstances.[5] |
| 61. | 09/05/01 | Federal Arbitrazh Court for the Moscow Circuit (S.A. Yaslda, V.A. Gordeyev, V.K. Tikhonova) | Court upholds 03/20/01 (# 43) and 06/26/01 (# 55) rejections of the complaint brought by David, Holdex, Omni and Foston regarding registrar changes. | Exh.71; Kapoura ¶ 104; Stephan ¶ 48; GOK Mem. at 14, 23. | ? | Parties have two further avenues to appeal. First, they may seek supervisory review by the Supreme Arbitrazh Court. Second, they may seek review based on the discovery of newly-revealed circumstances.[6] |
| 62. | 09/10/01 | Arbitrazh Court for the Republic of Kalmykia (R.D. Churyumova, L.A. Alzheyeva, V.E. Bembeyev) | Court makes Holdex a party to the proceedings regarding sale of shares to Polyprom. | Exh. 82; Stephan ¶ 52; GOK Mem. at 15. | ? | See further proceeding reflected in 11/09/01 decision (# 65). |

-20-

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|------|------------------|------------------------------|-----------|--------------------------------------|---------|
| 63. | 09/17/01 | Gagarinsky Inter-Municipal Court (L.V. Trapho) | Dismisses case brought by Plaintiff Davis regarding the 01/28/00 BOD meeting after Davis fails to appear. | Exh. 55; Kapoun ¶ 86; GOK Mem. at 11; Stephan ¶ 43. | ? | Parties had ten days in which to appeal this decision. Defendants do not know whether they appealed or not. Whether they did or not, there are two further avenues to appeal. First, they may seek supervisory review. Second, they may seek review based on the discovery of newly-revealed circumstances. |
| 64. | 09/18/01 | Arbitrazh Court for the Sverdlovsk Oblast (Skuratovsky, M.L., Khrustmova, N.I., Kolibova, L.A.) | Rejects Foston Management Ltd.'s challenge to the Lebent transaction. | Telyukina Exh. 61; Telyukina ¶ 47. | Yes. | Parties have two further avenues to appeal. First, they may seek supervisory review by the Supreme Arbitrazh Court. Second, they may seek review based on the discovery of newly-revealed circumstances. |

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|------|------------------|-----------------------------|-----------|-------------------------------------|---------|
| 65. | 11/09/01 | Appellate Instance for the Kalmykia Arbitrazh Court (R.D. Churbanova, L.A. Alekseyeva, V.I. Tokareva) | Upheld the July 5, 2001 decision (# 57) of Arbitrazh Court for the Republic of Kalmykia and confirmed that (1) the purported GOK-Polygron contract was invalid, (2) the sale of shares to Polygron was concluded by an unauthorized individual, and (3) the sale was completed in contravention of the direction of the GOK Board of Directors. [Confirms that Holder had notice of and appeared in proceedings.] | Exh. 81; Kapoura ¶ 112; Stephan ¶ 52; GOK Mem. at 15, 24. | Yes. | See 01/21/02 decision (# 68) reversing this decision. |
| 66. | 11/30/01 | Solntsevsky Inter-Municipal Regional Court of Moscow. (A.D. Protsiakin, A.I. Dymont, V.V. Klimantova) | On remand. See 03/30/01 decision (# 47), the Court determines that it did not have jurisdiction over the claim. | Exh. 88; Stephan ¶ 51; GOK Mem. at 16; Akhimina ¶¶ 40-41; Kleymenov ¶¶ 72-73 | Yes. | Court refers to pending proceeding in the Arbitrazh Court for the Sverdlovsk Oblast. See 12/20/01 decision (# 67). |
| 67. | 12/20/01 | Arbitrazh Court for the Sverdlovsk Oblast (M.L. Skuratovsky) | Court grants petition to join Foston as a party during the course of an action filed by NTMC, ZAO Invtsrust, and ZAO Standard Trust to invalidate the chain of transactions which led to Foston's ownership of GOK shares. | Akhimina Exh. 21; Kapoura ¶¶ 114-116; GOK Mem. at 14, 16; Akhimina ¶¶ 42, 44; Kleymenov ¶ 88. | No. | See 10/03/02 decision (# 77). |
| 68. | 01/21/02 | Federal Arbitrazh Court for the North Caucasus Circuit (Y.V. Romanets, S.A. Vetrov, L.I. Savenko) | Reverses the 07/05/01 decision (# 57) of the Arbitrazh Court for the Republic of Kalmykia and the 11/09/01 decision (# 65) of the Appellate Instance for the Kalmykia Arbitrazh Court and remands for a de novo review. | Chervinsky Exh. 12; Chervinsky ¶ 16; Kleymenov ¶ 26. | No. | See 3/12/02 decision (# 70) on remand invalidating sale of shares to Polygron. |
| 69. | 03/04/02 | Solntsevo Inter-Municipal Court (A.D. Pronyakin) | Court allows Foston until 04/04/02 to submit appropriate power of attorney with authorization to file cassation appeal. | Akhimina Exh. 13; Akhimina ¶ 49. | No | See further proceeding reflected by 05/22/02 decision (# 73). |

-22-

A - 646

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|------|------------------|------------------------------|-----------|---------------------------------------|---------|
| 70. | 03/12/02 | Arbitrazh Court for the Republic of Kalmykia (V.E. Blimbeev) | On remand from 01/21/02 decision (# 68), invalidates sale of shares to Polygrom. | Kleymenov Exh. 12; Chervinsky ¶ 17; Kleymenov ¶ 27. | Yes. | See 04/23/02 decision (# 71) dismissing the appeal. |
| 71. | 04/23/02 | Federal Arbitrazh Court for the North Caucasus Circuit (L.A. Trifonova) | Dismissed the appeal from 03/12/02 decision (# 70) for procedural reasons. | Chervinsky Exh. 14; Kleymenov ¶ 27. | Yes. | Parties have two further avenues to appeal. First, they may seek supervisory review by the Supreme Arbitrazh Court. Second, they may seek review based on the discovery of newly revealed circumstances.[1] |
| 72. | 04/30/02 | Kachkanar City Court for the Sverdlovsk Oblast (A.I. Ryazanov, A.L. Frolova, L.A. Tazakova) | Court denies claim by Khairdurov to invalidate the decisions of the 01/28/00 BOD meeting. | Zanadvorov Exh. 18; Zanadvorov ¶¶ 35-36. | Yes. | See 09/24/02 decision (# 76). |
| 73. | 05/22/02 | Moscow City Court | Affirms 11/30/01 decision (# 66), and rejects Foston's claim to return the GOK shares. | Ashikmina ¶¶ 53-55; Kleymenov ¶ 75. | Yes. | See Protest to Presidium of the Moscow City Court 08/22/02 decision (# 75). |
| 74. | 05/29/02 | Arbitrazh Court for the Sverdlovsk Oblast (M.I. Skuratovsky, B.A. Rogozhkina, N.I. Khramtsova) | Hearing on Foston claims adjourned to 10/03/02 (# 77). | Ashikmina Exh. 41. | ? | See 10/03/02 decision (# 77). |

-23-

A - 647

| # | DATE | COURT (JUDGE(S)) | NATURE OF THE ACTION/RESULT | CITATIONS | PLAINTIFFS' CONTENTION OF CORRUPTION | APPEALS |
|---|---|---|---|---|---|---|
| 75. | 08/22/02 | **Presidium of the Moscow City Court** | **Presidium of the Moscow City Court grants the protest and court remands the case to the Solntsevo Court for the purpose of reviewing 11/30/01 (#66) and 05/22/02 (#73) decisions which rejected Foston's claims of ownership of GOK shares.** | Ashkinina ¶57; Kleymenov ¶77. | No. | PENDING - Foston's claim is now before the Solntsevo Court. See 03/04/02 decision (#69). |
| 76. | 09/24/02 | Kuchkmar Regional Court for the Sverdlovsk Oblast (A.I. Ryazanov) | Court denies D.A. Khaidarov's petition to renew the missed period for filing an appeal of the 04/30/02 decision (#72). | Schaeffer Reply Exh. A. | ? | There are two further avenues to appeal. First, they may seek supervisory review.[6] Second, they may seek review based on the discovery of newly-revealed circumstances.[7] |
| 77. | 10/03/02 | Arbitrazh Court for the Sverdlovsk Oblast (M.L. Skouratovsky) | Court adjourns hearing on Foston claim to 06/03/03. | Schaeffer Reply Exh. B. | No. | PENDING - Action is currently returnable 06/03/03. |

1. Decisions in bold are appellate decisions.

2. Unless otherwise indicated, references to exhibits are to the GOK Defendants' exhibits submitted as Exhibits to the Declarations of Oleg S. Kozyrev and Samir Kapoura.

3. We have not attempted to provide the Court with every citation in the record to each of the decisions, but have referred principally to the citations in Defendants' papers and to the exhibits where the pertinent decision can be found.

4. In this column we have provided the Court with our best assessment as to whether Plaintiffs are alleging corruption as to a particular decision. Many of Plaintiffs' claims of corruption seem to be based on the general notion that the Russian courts are corrupt, coupled with their disagreement with various Russian courts' decisions on issues of Russian Law. In other instances, it is unclear whether Plaintiffs are alleging corruption and that uncertainty is denominated with a "?"

5.    Under the Civil Procedural Code of the RSFSR enacted in 1964 ("1964 CPC"), an aggrieved party had ten days to appeal a decision of the people's court, as of right, to the regional court or Republic Supreme Court, and a further ten days to appeal a decision of a regional court or Republic Supreme Court, as of right, to the Supreme Court of the Russian Federation. See Articles 282, 283, 284 of the 1964 CPC.

6.    Under the 1964 CPC, an aggrieved party had the right to file a supervisory application to certain officials, who were in turn empowered to file a supervisory complaint in the President of the court that had issued the judgment subject to the complaint, with final supervisory review by the Supreme Court of the Russian Federation, without any limitation. See Article 319, 320, 321 of the 1964 CPC.

The new Civil Procedural Code enacted on November 14, 2002, and effective as of February 1, 2003 (the "2003 CPC") amended these provisions. Now all parties to the case have a right to seek supervisory review by the Presidium of the court that issued the judgment subject to the complaint within one year of the day in which that judgment entered into force. Ultimate authority to exercise supervisory review rests in the Supreme Court of the Russian Federation. See Article 376 of the 2003 CPC. Supervisory review is discretionary and is analogous to a petition for certiorari to the United States Supreme Court.

The rules of the 1964 CPC for the exercise of supervisory jurisdiction remain in effect until July 1, 2003. As a result, aggrieved persons have until that date to invoke this procedure with respect to all outstanding judgments. See Federal Law No. 137-FZ of November 14, 2002 on putting into effect the Civil Procedure Code of the Russian Federation, Art. 6.

7.    An aggrieved party may also seek review of a judicial decision in the court that rendered the decision, based on the discovery of newly revealed circumstances. The 1964 CPC allowed a motion to reopen a judgment based on newly revealed circumstances to be brought within three months of the discovery of the circumstances or, in the case of the criminal conviction of a party associated with the case (including the judge) for misconduct, within three months of the conviction entering into force. See Article 333, 334, 335. The 2003 CPC amended these provisions, but the procedure in essence remains unchanged. See Articles 392, 393, 394, 395. This rule is analogous to Fed. R. Civ. P. 60(b). One of the grounds for "revising judicial acts" is "the criminal actions of the person, taking part in the case, or his representative... or the criminal actions of the judge, committed in considering the given cause. See Article 392(3) (emphasis added).

8.    Under the Arbitrazh Procedural Code of the Russian Federation enacted in 1995 ("1995 APC"), an aggrieved party had one month to appeal a decision of the arbitrazh court, as of right, to the appellate instance of that court, and similarly had one month to file a cassation appeal from a decision of the appellate instance of the arbitrazh court to the Federal Arbitrazh Court for the relevant circuit. See Articles 147, 149, 164 of the 1995 APC. Plaintiffs' right to appeal was limited by Article 55 of the 1998 Law on Insolvency (Bankruptcy), which limited creditors' rights to appeal certain decisions in bankruptcy proceedings. On March 12, 2001, however, the Russian Constitutional Court held this provision unconstitutional, thereby providing a basis upon which plaintiffs could seek leave to appeal, within a reasonable time, virtually all of the decisions taken by the Sverdlovsk Arbitrazh Court in the GOK bankruptcy.

9.    Under the 1995 APC, an aggrieved party had the right to file a supervisory application to certain officials, who were in turn empowered to file a supervisory complaint in the Supreme Arbitrazh Court to seek review of an allegedly improper lower court decision, without any time limitation. See Articles 180, 181, 185 of the 1995 APC. In light of a ruling of the Constitutional Court, dated January 14, 2000, a party's failure to file an appeal to the appellate instance of the Arbitrazh Court or the failure to file a cassation appeal does not prevent the aggrieved party from filing such a supervisory application to seek review by the Supreme Arbitrazh Court. In addition, an aggrieved party could have sought a review of a court act on the basis of newly revealed circumstance. See Article 192 of the 1995 APC.

-25-

A - 649



The new Arbitrazh Procedural Code enacted on July 24, 2002, and effective as of September 1, 2002 (the "2002 APC"), amended these provisions. There are now two avenues of redress after a judgment has gone into effect. First, a party itself may seek supervisory review by the Supreme Arbitrazh Court, by filing an application within "three months from the date of entry into legal force" of the court order. See Article 292 of the 2002 APC. Supervisory review is discretionary and is analogous to a petition for *certiorari* to the United States Supreme Court. The three-month time limit does not apply, however, to cases decided before January 1, 2003. The new Code specifically provides that parties who seek to review any decision rendered prior to January 1, 2003 have until March 31, 2003 to do so. See Article 292. (See Article 9 of the Federal Law "On Introduction Into Effect of the APC of the Russian Federation" dated July 24, 2002).

Second, an aggrieved party may also seek review of a judicial decision in the court that rendered the decision, based on the discovery of newly revealed circumstances. See Article 310 of the 2002 APC. Under this provision, a party must make an application "to the [arbitrazh] court that has adopted the given judicial act. . . not later than three months as from the day when the circumstances comprising a ground for the revision of the judicial act were revealed." See Article 312(1) of the 2002 APC. If a party has not filed an application within three months, it "may be restored by the arbitration court, under the condition that the request is submitted no later than six months from the day" the circumstances were discovered. See Article 312(2) of the 2002 APC. This rule is analogous to Fed. R. Civ. P. 60(b). One of the grounds for "revising judicial acts" is "the criminal actions of the person, taking part in the case, or his representative... or the criminal actions of the judge, committed in considering the given case." See Article 311(3) of the 2002 APC (emphasis added).

# Russian Court Decisions

## Decisions Relating to NKAZ Bankruptcy

- Kemerovo arbitrazh court, Dec. 22, 1997
- Kemerovo arbitrazh court, June 9, 1998
- Kemerovo arbitrazh court, Oct. 13, 1999
- Kemerovo arbitrazh court, Oct. 21, 1999
- Kemerovo arbitrazh court appellate branch, Dec. 6, 1999
- Kemerovo arbitrazh court appellate branch, Dec. 24, 1999
- Kemerovo arbitrazh court, Jan. 19, 2000
- Kemerovo arbitrazh court, Jan. 19, 2000
- West Siberian Circuit federal arbitrazh court, Jan. 19, 2000
- West Siberian Circuit federal arbitrazh court, Jan. 26, 2000
- Kemerovo arbitrazh court, Jan. 27, 2000
- Kemerovo arbitrazh court, Jan. 31, 2000
- Kemerovo arbitrazh court, Feb. 9, 2000
- Kemerovo arbitrazh court, Feb. 17, 2000
- Kemerovo arbitrazh court, Feb. 28, 2000
- Kemerovo arbitrazh court, March 3, 2000
- Kemerovo arbitrazh court, March 10, 2000
- Kemerovo arbitrazh court, March 17, 2000
- Kemerovo arbitrazh court, March 17, 2000
- Kemerovo arbitrazh court, March 17, 2000
- Kemerovo arbitrazh court, March 20, 2000
- Kemerovo arbitrazh court, March 20, 2000
- Kemerovo arbitrazh court appellate branch, March 20, 2000
- Kemerovo arbitrazh court, April 7, 2000
- Kemerovo arbitrazh court, April 10, 2000
- Kemerovo arbitrazh court, May 19, 2000
- West Siberian Circuit federal arbitrazh court, May 23, 2000
- West Siberian Circuit federal arbitrazh court, May 31, 2000
- West Siberian Circuit federal arbitrazh court, May 31, 2000
- Kemerovo arbitrazh court, June 9, 2000
- Kemerovo arbitrazh court, June 13, 2000
- West Siberian Circuit federal arbitrazh court, July 3, 2000
- Kemerovo arbitrazh court, Aug. 17, 2000
- Kemerovo arbitrazh court, Aug. 17, 2000
- Kemerovo arbitrazh court, Sept. 28, 2000
- Kemerovo arbitrazh court, Oct. 17, 2000
- Kemerovo arbitrazh court appellate branch, Nov. 28, 2000
- West Siberian Circuit federal arbitrazh court, Feb. 5, 2001
- Kemerovo arbitrazh court, Feb. 28, 2001
- Kemerovo arbitrazh court, April 3, 2001
- West Siberian Circuit federal arbitrazh court, Sept. 6, 2001

**41 Court Decisions**

## Decisions Relating to GOK Bankruptcy

- Sverdlovsk arbitrazh court, March 30, 2000
- Izmailovsky local court (Moscow), Aug. 2, 2000
- Sverdlovsk arbitrazh court, Aug. 22, 2000
- Sverdlovsk arbitrazh court, Oct. 19, 2000
- Sverdlovsk arbitrazh court, Oct. 31, 2000
- Moscow city court, Nov. 30, 2000
- Sverdlovsk arbitrazh court appellate branch, Jan. 15, 2001
- Sverdlovsk arbitrazh court, Feb. 19, 2001
- Izmailovsky local court (Moscow), March 13, 2001
- Sverdlovsk arbitrazh court, March 23, 2001
- Sverdlovsk arbitrazh court, April 18, 2001
- Sverdlovsk arbitrazh court, April 19, 2001
- Sverdlovsk arbitrazh court appellate branch, April 19, 2001
- Sverdlovsk arbitrazh court appellate branch, June 7, 2001
- Sverdlovsk arbitrazh court appellate branch, June 27, 2001
- Urals Circuit federal arbitrazh court, July 12, 2001
- Urals Circuit federal arbitrazh court, Aug. 21, 2001
- Sverdlovsk arbitrazh court Sept. 18, 2001

**19 Court Decisions**

## Decisions Relating to GOK Change of Control

- Kachkanar local court (Sverdlovsk), Feb. 1, 2000
- Tverskoy local court (Moscow), Feb. 7, 2000
- Cheremuzhinsky local court (Moscow), Feb. 14, 2000
- Sverdlovsk arbitrazh court, Feb. 15, 2000
- Kachkanar local court (Sverdlovsk), Feb. 18, 2000
- Sverdlovsk arbitrazh court, Feb. 29, 2000
- Sverdlovsk arbitrazh court, March 2, 2000
- Meshchansky local court (Moscow), April 5, 2000
- Perovsky local court (Moscow), April 10, 2000
- Tverskoy local court (Moscow), May 30, 2000
- Meshchansky local court (Moscow), July 13, 2000
- Chelyabinsk arbitrazh court, Aug. 1, 2000
- Tverskoy local court (Moscow), Aug. 9, 2000
- Kachkanar local court (Sverdlovsk), Aug. 14, 2000
- Sverdlovsk arbitrazh court, Sept. 4, 2000
- Meshchansky local court (Moscow), Sept. 19, 2000
- Perovsky local court (Moscow), Sept. 25, 2000
- Sonitsevsky local court (Moscow), Sept. 29, 2000
- Chelyabinsk arbitrazh court appellate division, Oct. 16, 2000
- Moscow city court, Oct. 26, 2000
- Moscow arbitrazh court, Nov. 16, 2000
- Tverskoy local court (Moscow), Nov. 21, 2000
- Kalmykia arbitrazh court, Nov. 21, 2000
- Perovsky local court (Moscow), Dec. 13, 2000
- Petrogradsky local court (St. Petersburg), Dec. 20, 2000
- Gagarinsky local court (Moscow), Dec. 22, 2000
- Urals Circuit federal arbitrazh court, Jan. 4, 2001
- Petrogradsky local court (St. Petersburg), Jan. 12, 2001
- Sonitsevsky local court (Moscow), Feb. 19, 2001
- Sonitsevsky local court (Moscow), Feb. 20, 2001
- Moscow arbitrazh court appellate branch, Feb. 22, 2001
- Moscow city court, March 6, 2001
- Moscow city court, March 8, 2001
- Izmailovsky local court (Moscow), March 13, 2001
- Moscow arbitrazh court, March 20, 2001
- Moscow city court, March 26, 2001
- Moscow city court, March 30, 2001
- North Caucasus Circuit Federal Arbitrazh Court, April 17, 2001
- Moscow Circuit federal arbitrazh court, April 26, 2001
- Tverskoy local court (Moscow), June 22, 2001
- Moscow arbitrazh court appellate division, June 26, 2001
- Kalmykia arbitrazh court, July 5, 2001
- Cheremovo local court (Moscow), Aug. 27, 2001
- Moscow Circuit federal arbitrazh court, Sept. 5, 2001
- Kalmykia arbitrazh court, Sept. 10, 2001
- Gagarinsky local court (Moscow), Sept. 17, 2001
- Kalmykia arbitrazh court appellate division, Nov. 9, 2001
- Sonitsevsky local court (Moscow), Nov. 30, 2001
- North Caucasus federal arbitrazh court, Jan. 21, 2002
- Sonitsevsky local court (Moscow), March 4, 2002
- Kalmykia arbitrazh court, March 12, 2002
- North Caucasus Circuit federal arbitrazh court, April 23, 2002
- Kachkanar local court (Sverdlovsk), April 30, 2002
- Moscow city court, May 22, 2002
- Sverdlovsk arbitrazh court, May 29, 2002
- Moscow city court, Aug. 22, 2002
- Kachkanar local court, Sept. 24, 2002
- Sverdlovsk arbitrazh court, Oct. 3, 2002

**59 Court Decisions**