settlement agreement until after those appeals had been decided. After April 3, 2001, plaintiffs could have raised on appeal any issues they wanted regarding the approval of the settlement, including issues relating to the inclusion or exclusion of creditors participating in the bankruptcy proceedings.[1]

     3. Footnote 3 to the plaintiffs' charts is also incorrect, or at least very misleading, in at least two important respects. The first substantive paragraph of that footnote attempts to make the point that the right to file a "supervisory complaint" in the Supreme Arbitrazh Court is quite limited. Plaintiffs thus argue that "[p]ursuant to the 1995 Arbitrazh Procedure Code, an aggrieved party could only file an application to bring a protest to the Supreme Arbitrazh Court of <u>final</u> orders . . . and a very limited number of intermediary orders," citing Article 191 of the Arbitrazh Procedure Code. (▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨). They then go on to argue that "while the March 12, 2002 [sic] ruling of the Constitutional Court lifted some of the limitations [on] appeal of intermediary orders in bankruptcy, it did not alter the provisions of Art. 191 of the APC." (▨▨).

     This discussion attempts to create the impression that the right to petition the Supreme Arbitrazh Court remains very limited, notwithstanding the fact that the Constitutional Court ruling has expanded greatly the right to appeal interlocutory orders in bankruptcy proceedings. This is plainly incorrect. Article 191 in fact permits a party to seek review in the Supreme Arbitrazh Court in any case in which the party had the right to appeal under the Arbitrazh Procedure Code. Since the Constitutional Court ruling expanded the types of rulings which could be appealed in bankruptcy proceedings, it also expanded – to exactly the same extent – the types of rulings for which a party could seek review in the Supreme Arbitrazh Court. If there were any doubt, this expanded right to petition the Supreme Arbitrazh Court was codified in the new Arbitrazh Procedure Code, making clear that plaintiffs have the right to petition the Supreme Arbitrazh Court.

     In addition, the third substantive paragraph of this footnote implies that, in Russia, all "collateral attacks based on new matters, such as . . . 'the

---

[1]   Plaintiffs' footnote 2 also claims support in the declaration of one of their experts, Victor Golubev, but Golubev does not really address defendants' argument and thus provides no support for plaintiffs' position. Golubev reasons only that the decision of the Constitutional Court "did not have retrospective effect and did not therefore apply to the settlement of March 6, 2001." (Golubev Decl. ¶¶ 24-25). But this ignores the fact that the settlement – which was merely an agreement of creditors and not a judicial act – is not the relevant event here. Rather, the settlement agreement was not approved by the Arbitrazh Court until April 3, after the Constitutional Court ruling, and that ruling was subject to an appeal that was not decided until September 6. As explained above, plaintiffs had ample opportunity to raise whatever objections they wanted during that time period. Contrary to the claim plaintiffs attribute to Golubev, applying the Constitutional Court ruling to a pending case that was not final would not be giving the ruling "retrospective effect."

criminal actions of the judge,' require[ ] that these actions be 'established by a court sentence,' i.e., a criminal conviction." ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓). This is also incorrect. While it is true that Article 311(3) of the new Arbitrazh Procedure Code requires a prior criminal conviction for an application to re-open a judgment based on the criminal conduct of the judge or the parties to the case, Art. 311(3) of the 2002 APC,[2] Article 311(1) provides that a party may seek to re-open a judgment on the basis of any other "material circumstances that were not known and could not be known to the applicant," without any requirement of a prior conviction.  Article 311(1) thus provides a basis for seeking to re-open a judgment on the ground of alleged bias on the part of the judge or improper interference by, e.g., Governor Tuleyev of the Kemerovo Region, without any requirement of a prior criminal conviction.

4.  Finally, there are three additional points which are important to note in relation to plaintiffs' charts.  First, a careful review of those charts – one of the principal purposes of which was to respond to the Court's request for a clear indication of which Russian court decisions were allegedly the product of corruption – shows that they do not include a single allegation of corrupt conduct on the part of the Federal Arbitrazh Court for the West Siberian Circuit in Tyumen or the Supreme Arbitrazh Court in Moscow.

Second, plaintiffs admit that they had the right to seek review by the Supreme Arbitrazh Court after their unsuccessful appeals of the Arbitrazh Court's March 20, 2000 decision to impose a period of external management, and after the Arbitrazh Court's April 3, 2001 decision to approve the settlement agreement terminating the bankruptcy proceedings, and that, in both cases, they failed to file any such application in the Supreme Arbitrazh Court.  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓

---

[2]  Plaintiffs cite Article 312(1) for this point ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ but this citation is erroneous.  Article 312 simply provides the time limits for bringing an application to re-open a judgment ("to revise a judicial act," in Russian terminology) based on newly revealed circumstances.  It is Article 311 that sets out the authorized grounds for such an application to re-open a judgment.

[3]  In their charts, plaintiffs for the first time claim that they in fact sought review by the Supreme Arbitrazh Court twice during the NKAZ bankruptcy proceedings, once after the Kemerovo Arbitrazh Court accepted the bankruptcy petitions filed by Kuzbassenergo and the Kemerovo Prosecutor ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, and a second time after the Kemerovo Arbitrazh Court ordered MIKOM to be removed from NKAZ management ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, and that these applications were denied.  We have been unable to find anything in the record – including, in particular, anything in the voluminous submissions made by plaintiffs in response to the pending motions -- to support plaintiffs' claim that they sought review in the Supreme Arbitrazh Court.  In any event, as discussed above, plaintiffs admit that they failed to pursue this avenue of relief at other critical times

4

And third, plaintiffs also admit that, even now – and until April 1, 2003 – they have the right to file a petition in the Supreme Arbitrazh Court protesting any aspect of the NKAZ bankruptcy proceedings. See Plaintiffs' Charts re NKAZ at 30-33 ("plaintiffs agree that the 2002 Amendments to the APC provide a party aggrieved by an Order issued prior to January 1, 2003 with the ability to file an application for a protest prior to April 1, 2003"). Thus, plaintiffs – at this very moment – could bring before the Supreme Arbitrazh Court in Moscow all of the allegations of corruption allegedly affecting the NKAZ bankruptcy proceeding which they have made in their Amended Complaint here.

Respectfully submitted,

*Ira M. Feinberg (JAR)*

Ira M. Feinberg

Copy to:

James L. Bernard, Esq.
Bruce S. Marks, Esq.
Raymond Hannigan, Esq.
Michael D. Burrows, Esq.
Paul R. Grand, Esq.
Victor R. Rubin, Esq.
Richard J. Schaeffer, Esq.
Robert E. Hauberg, Jr., Esq.
Brian S. Cousin, Esq.
Raymond L. Vandenberg, Esq.
Lisa C. Cohen, Esq.
Elizabeth M. Johnson, Esq.

---

in the NKAZ bankruptcy, and that they continue to have this avenue open to them at this time and have not pursued it.

5

DORNBUSH MENSCH MANDELSTAM & SCHAEFFER, LLP

747 THIRD AVENUE
NEW YORK, N. Y. 10017
(212) 759-3300

FACSIMILE: (212) 753-7673
CABLE: DORMENSTAM NEWYORK
TELEX: 424831

February 20, 2003

**BY-HAND DELIVERY**

Honorable John G. Koeltl
United States District Judge
United States Courthouse
500 Pearl Street, Room 1030
New York, New York 10007

> Re:  Base Metal Trading, S.A., et al. v.
>      Russian Aluminum, et al.
>      <u>Docket No.: 00 Civ. 9627 (JGK)</u>

Dear Judge Koeltl:

This law firm is counsel to Defendants New Start Group Corp., Venitom Corp., Unidale, LLC and Investland, LLC (the "GOK Defendants"). This letter is written to address several issues raised by the "Decision Charts" submitted by the Plaintiffs to the Court on Monday, February 10, 2003. The GOK Defendants were not provided with those charts until the morning of the oral argument of the various motions to dismiss the Second Amended Complaint.

First, Plaintiffs' charts with respect to the GOK side of the litigation inexplicably fail to address most of the decisions already issued by the Russian courts which have considered and decided many of the matters raised by Plaintiffs' Second Amended Complaint. Those decisions -- some 49 GOK-related decisions are omitted by the Plaintiffs' charts -- include multiple decisions by various courts (including appellate courts): (1) upholding the legality of the January 28, 2000 GOK

DORNBUSH MENSCH MANDELSTAM & SCHAEFFER, LLP

Honorable John G. Koeltl
February 20, 2003
Page 2


Board of Directors' meetings; (2) invalidating the March 4, 2000
"shareholders' meeting," and (3) upholding the change in GOK's
registrar (the alleged initial step in the purported scheme to
deprive Plaintiffs of their GOK shares).  The Plaintiffs,
including Davis International, LLC, Holdex, LLC, Foston
Management Ltd. and Omni Trusthouse, Ltd. all litigated these
issues in the Russian courts (with Plaintiffs Nexis Products, LLC
and Polyprom, Ltd. also litigating other issues in the Russian
courts), and trans-Atlantic re-litigation of these issues should
not be countenanced by this Court.

        Second, many of the decisions not addressed by the
Plaintiffs' charts involve decisions in which Plaintiffs
*prevailed* in the Russian courts.  Those decisions, reflected on
the decision charts submitted by the Defendants, gainsay
Plaintiffs' fundamental contention that they cannot get a fair
hearing in the Russian courts.  Indeed, as the Court noted at
oral argument, the most recent case which is cited in the
Plaintiffs' charts is actually a ruling *in favor of* Foston.

        Finally, Plaintiffs' charts do confirm Defendants'
position that Plaintiffs have multiple avenues of appeal and
other remedies available to them in Russia.*  Those rights and
remedies are discussed again at length in the Declarations of
Professors Paul Stephan and Igor Petrukhin which are being
submitted to the Court today (with the Stephan and Petrukhin
Declarations also specifically identifying additional claims and
remedies that the Plaintiffs have available to them in Russia).
In many cases, Plaintiffs have already taken multiple levels of
appeals, and in others they have chosen not to pursue appeals
available to them.  In any event, Plaintiffs' redress should be
in the Russian courts which can best address the issues of

_____

        *       Plaintiffs' characterization of the appellate rights
and remedies available to them in Russia is flawed.  The letter
from counsel to NKAZ being submitted to the Court herewith
addresses those flaws in the context of the NKAZ proceedings, and
the points set forth therein apply with equal force to the GOK
proceedings.

DORNBUSH MENSCH MANDELSTAM & SCHAEFFER, LLP

Honorable John G. Koeltl
February 20, 2003
Page 3


Russian bankruptcy proceedings and Russian corporate governance
implicated by the 142 laws which Plaintiffs concede govern the
GOK issues in this case.


Respectfully submitted,

Peter J. Venaglia

PJV:cr

Copy to:

James L. Bernard, Esq.
Bruce S. Marks, Esq.
Raymond Hannigan, Esq.
Michael D. Burrows, Esq.
Ira M. Feinberg, Esq.
Paul R. Grand, Esq.
Victor R. Rubin, Esq.
Robert Hauberg, Jr., Esq.
Brian S. Cousin, Esq.
Raymond L. Vandenberg, Esq.
Christopher Armeniades, Esq.
Lisa C. Cohen, Esq.
Elizabeth M. Johnson, Esq.

151092.1

A - 697

DEFENDANTS' SUMMARY OF GOK CONTRACTS

| No. | Contract | Date | Stated Place of Execution | Parties | Subject | Forum Selection Clause | Choice of Law | Citations[1] |
|-----|----------|------|---------------------------|---------|---------|------------------------|---------------|--------------|
| 1. | No. SWER/07-99 | July 13, 1999 | Moscow | Nexis and GOK | Loan Agreement | Arbitrazh Court of the City of Moscow (¶ 5.4) | Russian[2] (¶ 5.5) | GOK Ex. 9[3], Amend. Compl. ¶ 37[4] |
| 2. | Contract No. 4 | July 26, 1999 | Moscow | Nexis and GOK | Supply of products | Russia[5] (¶ 7.2) | Russian (¶ 7.2) | GOK Ex. 25 |
| 3. | Contract No. 02-99 | July 9, 1999 | Kachkanar, Russia | Polyprom and GOK | Supply of products | Arbitrazh Court in the location of the defendant (¶ 5.4) | Russian (¶¶ 5.1, 5.2) | Bukharin Decl. Ex. 2, Amend. Compl. ¶ 39 |
| 4. | Contract No. 01-99/P | July 9, 1999 | Kachkanar, Russia | Polyprom and GOK | Supply of products | Arbitrazh Court in accordance with the laws of the Russian Federation (¶ 7.6) | Russian (¶ 7.1) | Bukharin Decl. Ex. 5, Amend. Compl. ¶ 39 |
| 5. | Contract No. S-01-99 | September 30, 1999 | Elista, Russia | Polyprom and GOK | Supply of products | Russia[6] (¶ 7.2) | Russian (¶ 7.2) | Bukharin Decl. Ex. 7, Amend. Compl. ¶ 39 |
| 6. | Contract No. S-02/M-99 | October 18, 1999 | Elista, Russia | Polyprom and GOK | Supply of products | Russia[7] (¶ 7.2) | Russian (¶ 7.2) | GOK Ex. 30, Bukharin Decl. Ex. 10, Amend. Compl. ¶ 39 |
| 7. | Contract No. KGOK 18/10-99 | October 18, 1999 | Moscow | Polyprom and GOK | Sale of securities | Arbitrazh Court for the City of Moscow (¶ 5.1) | "Current law" (¶ 5.5) | Bukharin Decl. Ex. 12, Amend. Compl. ¶ 39 |
| 8. | Contract No. 15-99/PK | October 27, 1999 | Kachkanar, Russia | Polyprom and GOK | Sale of goods | Arbitrazh Court in accordance with judicial rules on the basis of Russian Federation law (¶ 7.2) | Russian (¶ 7.2) | Bukharin Decl. Ex. 14, Amend. Compl. ¶ 39 |

[1] Each of the contracts described herein is attached as an exhibit to the declarations submitted in this action and cited to in this column.

[2] The contract provides that "[i]n all other matters that are not regulated by this contract, the Parties shall be guided by the current law of the Russian Federation." (¶ 5.5)

[3] "GOK Ex." refers to the exhibits attached to the declarations of Oleg S. Kozyrev and Samir Kapoura.

[4] "Amend. Compl." refers to the Second Amended Complaint.

[5] The contract provides "disputes shall be resolved in court according to Russian Federation law." (¶ 7.2)

[6] The contract provides "disputes . . . shall be resolved in court in the manner established by current law of the RF." (¶ 7.2)

[7] The contract provides "[d]isputes . . . shall be resolved in court in the manner established by current law of the RF." (¶ 7.2)

NY:755990.2

A - 698

## DEFENDANTS' SUMMARY OF GOK CONTRACTS

| No. | Contract | Date | Stated Place of Execution | Parties | Subject | Forum Selection Clause | Choice of Law | Citations[1] |
|---|---|---|---|---|---|---|---|---|
| 9. | Contract No. 16-99/PK | November 10, 1999 | Kachkanar, Russia | Polyprom and GOK | Supply of products | Moscow Arbitrazh Court, except those disputes that fall under the jurisdiction of the general court (¶8.1) | "Current legislation"[8] (¶9.1) | Bukharin Decl. Ex. 16, Amend. Compl. ¶39 |
| 10. | Loan Agreement 08-99/3 | June 3, 1999 | Moscow | Leneks[9] and GOK | Loan Agreement | Russia[10] (¶5.2) | "Current legislation" (¶5.2) | Bukharin Decl. Ex. 19 |
| 11. | Assignment Agreement No. 18-99/YP | December 9, 1999 | Moscow | Leneks and Polyprom | Assignment of Loan Agreement 08-99/3 | Arbitrazh Court of the City of Moscow (¶4.1) | Not specified | Bukharin Decl. Ex. 20 |
| 12. | Agreement No. 3 | January 18, 1999[11] | Ekaterinburg, Russia | Polyprom and GOK Trading House | Sale of shares of GOK | Russia[12] | Russian (¶3.3) | GOK Ex. 77, Chervinskiy Decl. Ex. 4, Amend. Compl. ¶418 |
| 13. | Agreement No. 3 | January 18, 2000 | Moscow | Polyprom and GOK Trading House | Sale of shares of GOK | Not specified | Not specified | Rieger Decl. Ex. 2, Chervinskiy Decl. Ex. 1 |
| 14. | Agreement No. KGOK-001/a | January 20, 2000 | Moscow | Polyprom and Holdex | Sale of shares of GOK | Moscow Arbitrazh Court (¶5.1) | "Current legislation" (¶5.5) | Rieger Decl. Ex. 1, Chervinskiy Decl. Ex. 3 |

[8] The contract also provides that penalties for late delivery of products shall be based on rules set forth in article 395 of the Russian Federal Civil Code. (¶9.3)

[9] Leneks assigned this contract to Polyprom. *See* December 9, 1999 Assignment Agreement No. 18-99/YP.

[10] The contract provides that "disputes shall be resolved in the order as prescribed by current legislation." (¶5.2)

[11] Holdex's claim that the January 18, 1999 contract was a forgery has been rejected by the Russian courts. *See* GOK Exs. 78, 79, 80, 81 & 82.

[12] The contract provides that "[d]isputes . . . shall be resolved in accordance with the procedure set forth by the current laws of the Russian Federation." (¶3.3)

DEFENDANTS' SUMMARY OF GOK CONTRACTS

| No. | Contract | Date | Stated Place of Execution | Parties | Subject | Forum Selection Clause | Choice of Law | Citations[1] |
|---|---|---|---|---|---|---|---|---|
| 15. | Contract No. 010-S[3] | September 28, 2000 | Moscow, Tel-Aviv | Davis International and Holdex | Sale of shares of GOK | Not specified | New York, Russia or Israel "for choice of the seller" (¶ 8.2) | Traum Decl. Ex. 2 |
| 16. | Agreement No. 25/K | October 6, 2000 | Not specified | Davis International and Newstart Group Corp. | Sale of shares of GOK | London Court of Arbitration (¶ 12) | English (¶ 12) | Traum Decl. Ex. 3 |

[3] Plaintiff Davis alleges that this sale of securities terminated the power of attorney given by Davis to its agent in Russia, Eugene Aschenbrenner; and therefore, Mr. Aschenbrenner was not authorized to sell Davis' GOK shares to Newstart on October 6, 2000.

NY:1559970.2

A - 700

## DEFENDANTS' SUMMARY OF NKAZ CONTRACTS

| No. | Contract | Date | Stated Place of Execution | Parties | Subject | Forum Selection Clause | Choice of Law | Citations[1] |
|---|---|---|---|---|---|---|---|---|
| | **MIKOM Contracts:** | | | | | | | |
| 1 | 270-97 | 06/21/96 | Novokuznetsk | NKAZ and MIKOM | Management of NKAZ | Arbitrazh Court, Moscow (¶ 3.2) | Russian Law (¶ 2.2.1) | Chernyshev ¶¶ 14-15, Ex. 1; Compl. ¶¶ 29-31 |
| 2 | Amendment No. 1 to 270-97 | 06/27/96 | Moscow | NKAZ and MIKOM | Management of NKAZ | Governed by Original Contract | Governed by Original Contract | Chernyshev Ex. 2 |
| 3 | Amendment No. 2 to 270-97 | 01/22/97 | Moscow | NKAZ and MIKOM | Management of NKAZ | Arbitrazh Court, Moscow (¶ 3.1.5) | Russian Law (¶ 3.2.1) | Chernyshev ¶¶ 14-15, Ex. 3; Compl. ¶¶ 29-31 |
| | **BMT S.A. Contracts:** | | | | | | | |
| 4 | BSA-R-003/99 | 03/09/99 | Moscow | NKAZ and BMT S.A. | Sale of pitch coke | Arbitration at International Commercial Arbitration Court of the Russian Federation Chamber of Commerce and Industry[2] (¶ 10.1) | Russian Law (¶ 10.2) | Chernyshev ¶ 17, Ex. 7; Compl. ¶ 24 |
| 5 | 640-99 | 05/19/99 | Fribourg, Switzerland | NKAZ and BMT S.A. | Sale of pluggable crane | Arbitration, Moscow (¶ 12) | Not Specified | Chernyshev ¶ 17, Ex. 9; Compl. ¶ 24 |

[1] Each NKAZ contract is attached as an exhibit to the Second Declaration of Sergei Chernyshev, dated January 27, 2002.
[2] Hereinafter referred to as "Arbitration, Moscow."

DEFENDANTS' SUMMARY OF NKAZ CONTRACTS

| No. | Contract | Date | Stated Place of Execution | Parties | Subject | Forum Selection Clause | Choice of Law | Citations |
|---|---|---|---|---|---|---|---|---|
| 6 | 641-99 | 05/19/99 | Fribourg, Switzerland | NKAZ and BMT S.A. | Sale of truck crane | Arbitration, Moscow (¶ 11) | Not Specified | Chernyshev ¶ 17, Ex. 10; Compl. ¶ 24 |
| 7 | BSA-R-014/99/565-99 | 06/15/99 | Fribourg, Switzerland | NKAZ and BMT S.A. | Sale of alumina, cryolite, and aluminum fluoride | Arbitration at International Commercial Court of the Russian Federation Chamber of Commerce and Industry[3] (¶ 9) | Russian Law (¶ 9) | Chernyshev ¶ 17, Ex. 8; Compl. ¶ 24 |
| 8 | Framework Agreement (Alleged) | 10/20/99 (alleged) | Moscow | NKAZ and BMT S.A. | Long-term financial and economic arrangements | Arbitration at the Arbitration Institute of the Chamber of Commerce and Industry Stockholm[4] (¶ XII) | English Law (¶ XII) | Chernyshev ¶ 17, Ex. 12 |
| 9 | N-RM-0002/99 805/99 | 11/02/99 | Moscow | NKAZ and BMT S.A. | Sale of Cryolite Bathmaterial Lithium | Arbitration, Moscow (¶ 11.1) | Russian Law (¶ 11.1) | Chernyshev ¶ 17, Ex. 11; Compl. ¶ 24 |
| 10 | 924-99 | 12/24/99 | Moscow | NKAZ and BMT S.A. | Sale of primary aluminum | Arbitration, Stockholm (¶ 13) | English Law (¶ 13) | Chernyshev ¶ 17, Ex. 6; Compl. ¶ 24 |
| 11 | BSA-R-066/99/8-2000 | 01/10/00 | Fribourg, Switzerland | NKAZ and BMT S.A. | Sale of pitch coke | Arbitration, Stockholm (¶ 10) | English Law (¶ 10) | Chernyshev ¶ 17, Ex. 5; Compl. ¶ 24 |

[3] Hereinafter referred to as "Arbitration, Moscow."
[4] Hereinafter referred to as "Arbitration, Stockholm."

2

## DEFENDANTS' SUMMARY OF NKAZ CONTRACTS

| No. | Contract | Date | Stated Place of Execution | Parties | Subject | Forum Selection Clause | Choice of Law | Citations |
|---|---|---|---|---|---|---|---|---|
| 12 | 56-00 | 01/14/00 | Moscow | NKAZ and BMT S.A. | Sale of alumina | Arbitration, Stockholm (¶ 12) | English Law (¶¶ 12) | Chernyshev ¶ 17, Ex. 4; Compl. ¶ 24 |
| | **BMT Ltd. Contracts:** | | | | | | | |
| 13 | 41-98 | 01/23/98 | Moscow | NKAZ and BMT Ltd. | Sale of pitch coke | Arbitration, Moscow (¶ 10.1) | Russian Law (¶ 10.2) | Chernyshev ¶ 18, Ex. 13 ; Compl. ¶ 26 |
| 14 | 50/98-NK/515-98 | 06/10/98 | Moscow | NKAZ and BMT Ltd. | Sale of alumina | Arbitration, Moscow (¶ 12.1) | Not Specified | Chernyshev ¶ 18, Ex. 14; Compl. ¶ 26 |
| 15 | 60/98-NK/643-98 | 08/10/98 | Moscow | NKAZ and BMT Ltd. | Sale of alumina | Arbitration, Moscow (¶ 12.1) | Not Specified | Chernyshev ¶ 18, Ex. 15; Compl. ¶ 26 |
| | **Alucoal Contracts:** | | | | | | | |
| 16 | 275-99 | 03/05/99 | Moscow | NKAZ and Alucoal | Sale of aluminum fluoride | Arbitration, Moscow (¶ 11.1) | Russian Law (¶ 11.1) | Chernyshev ¶ 19, Ex. 19; Compl. ¶ 28 |
| 17 | AL10/99/336-99 | 03/10/99 | Moscow | NKAZ and Alucoal | Sale of alumina | Arbitration, Moscow (¶ 12.1) | Not Specified | Chernyshev ¶ 19, Ex. 20; Compl. ¶ 28 |
| 18 | 478-99 | 05/06/99 | Moscow | NKAZ and Alucoal | Sale of artificial cryolite | Arbitration, Moscow (¶ 11.1) | Russian Law (¶ 11.1) | Chernyshev ¶ 19, Ex. 21; Compl. ¶ 28 |
| 19 | 607-99 | 07/01/99 | Moscow | NKAZ and Alucoal | Sale of pitch coke | Arbitration, Moscow (¶ 11.1) | Russian Law (¶ 11.1) | Chernyshev ¶ 19, Ex. 22; Compl. ¶ 28 |

3

DEFENDANTS' SUMMARY OF NKAZ CONTRACTS

| No. | Contract | Date | Stated Place of Execution | Parties | Subject | Forum Selection Clause | Choice of Law | Citations |
|---|---|---|---|---|---|---|---|---|
| 20 | AL99/25/859-99 | 09/23/99 | Moscow | NKAZ and Alucoal | Tolling contract to process raw materials into aluminum | Arbitration, Moscow (¶ 10) | Russian Law (¶ 10) | Chernyshev ¶ 19, Ex. 23; Compl. ¶ 28 |
| 21 | AL-R-005/99/773-99 | 10/14/99 | Moscow | NKAZ and Alucoal | Sale of alumina | Arbitration at the Chamber of Commerce Zurich (¶ 12) | Not Specified | Chernyshev ¶ 19, Ex. 24; Compl. ¶ 28 |
| 22 | 661-99 Framework Agreement (Alleged) | 10/22/99 (alleged) | Moscow | NKAZ and Alucoal | Long-term financial and economic arrangements | Arbitration, Stockholm (¶ XII) | English Law (¶ XIII) | Chernyshev ¶ 19, Ex. 25; Compl. ¶ 28 |
| 23 | 923-99 | 12/23/99 | Moscow | NKAZ and Alucoal | Sale of primary aluminum | Arbitration, Stockholm (¶ 13) | English Law (¶ 13) | Chernyshev ¶ 19, Ex. 18 |
| 24 | 58-00 | 01/14/00 | Moscow | NKAZ and Alucoal | Sale of alumina | Arbitration, Stockholm (¶ 12) | English Law (¶ 12) | Chernyshev ¶ 19, Ex. 16; Compl. ¶ 28 |
| 25 | 57-00 | 01/14/00 | Moscow | NKAZ and Alucoal | Sale of pitch coke | Arbitration, Stockholm (¶ 10) | Swiss Law (¶ 10) | Chernyshev ¶ 19, Ex. 17; Compl. ¶ 28 |

NY:755788.4

4

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

BASE METAL TRADING, S.A.; BASE METAL                          :

TRADING, LTD; ALUCOAL HOLDINGS, LTD; MIKOM;

DAVIS INTERNATIONAL, LLC; HOLDEX, LLC; FOSTON              :

MANAGEMENT, LTD.; OMNI TRUSTHOUSE, LTD;

NEXIS PRODUCTS, LLC; and POLYPROM, LTD.,                     :

                                      Plaintiffs,           :         00 Civ. 9627 (JGK)

                    v.

RUSSIAN ALUMINUM; RUAL TRADE, LTD.;                          :

SIBIRSKY ALUMINUM PRODUCTS USA CORP.

          a/k/a SIBIRSKY ALUMINUM (US);                      :

SIBIRSKY ALUMINUM (Russia);

BAUXAL MANAGEMENT, S.A.; METCARE                             :

MANAGEMENT, S.A.; UNIMETAL

LIMITED, S.A.; OLEG DERIPASKA; MIKHAIL                       :

CHERNOI; BLONDE MANAGEMENT, INC.;

BLONDE INVESTMENTS CORP.;                                    :

PAN-AMERICAN CORP.; ARNOLD KISLIN;

ISKANDER MAKHMUDOV; MOSKOVSKIY                               :

DELOVOI MIR BANK; NOVOKUZNETSK

ALUMINUM ZAVOD; NEW START GROUP                              :

CORP.; VENITOM CORP.; UNIDALE LLC; and

INVESTLAND, LLC                                              :

                            Defendants.

-----------------------------------------------------------------------x

### DECLARATION OF PAUL B. STEPHAN III

I, Paul B. Stephan III, declare:

1.      My name is Paul B. Stephan III. My qualifications and experience are described in paragraphs 1-4 of my Declaration of January 28, 2002, and paragraphs 3-9 of my Declaration of October 17, 2002, and I repeat and affirm here the statements made in those Declarations.

2.      I submit this Declaration on behalf of Defendants Russian Aluminum et al. in light of the questions that I understand the Court raised in its February 10, 2003, hearing. In particular, I will address three issues: (1) the substantive Russian law that would provide a cause of action for a suit in Russia based on the claims raised by Plaintiffs; (2) the venues available to Plaintiffs for a suit brought in Russian courts; and (3) the procedures that Russian courts would use in such litigation. I conclude that Russian law provides Plaintiffs with causes of action covering injury from fraud (see paragraphs 9 and 10 below), that it currently provides Plaintiffs with several avenues for overturning those court judgments that they claim caused them harm (see paragraphs 4-8 below), that it permits Plaintiffs significant discretion over which court will hear their claim (see paragraphs below 12-15), and that it provides Russian courts with all the means necessary (including the power to compel testimony and to submit testimony to critical challenge) for a full consideration of Plaintiffs' claims, in particular those based on fraud (see paragraph 16 below).

Bases of Liability under the Civil Code of the Russian Federation

3.      In paragraphs 22-24 of my January 28, 2002, Declaration, I discussed how the provisions of the Civil Code of the Russian Federation would apply to the claims alleged by Plaintiffs and would supply causes of action analogous to those alleged in this proceeding, including causes of action resembling civil RICO claims under U.S. law. Similarly, paragraphs 23-31 of the January 26, 2002, Declaration of Professor I.L. Petrukhin describe the provisions of the Civil Code that would provide a basis for Plaintiffs' claim, were they to bring their suit in Russia. Here I will elaborate briefly on my earlier Declaration.

4.      First, I should note that the normal way of challenging fraudulently procured judicial decisions, which is at the heart of Plaintiffs' claim, would be through appellate review. Plaintiffs allege that several decisions of various first instance arbitrazh courts conducting bankruptcy proceedings resulted in a fraudulent injury. Much as a U.S.

2

District Court would review the decision of a U.S. bankruptcy judge, with further review in a Court of Appeal and, ultimately, the Supreme Court, the appellate instance of the arbitrazh court has the capacity to consider allegations of wrongful conduct by the first instance arbitrazh court, and the Federal Circuit Court and the Supreme Arbitrazh Court also are available to hear such claims. Similarly, a regional court of general jurisdiction (and in the various Republics of the Russian Federation, the Republic Supreme Court), has the capacity to entertain an appeal from a decision of a court of general jurisdiction acting as a first instance court, and the Russian Supreme Court has further authority to review such cases.

5.      The Russian Federation has recently enacted new procedural codes for the arbitrazh courts and courts of general jurisdiction. The Arbitrazh Procedure Code (APC) of the Russian Federation was enacted July 24, 2002, and went into effect on September 1, 2002. I attach the Russian version of this Law as Appendix A of this Declaration, and an English translation as Appendix B. The Civil Procedure Code (CPC) of the Russian Federation was enacted November 14, 2002, and went into effect on February 1, 2003. I attach the Russian version of this Law as Appendix C, and an English translation as Appendix D. These Codes clarify the avenues open to an aggrieved person to attack an existing court judgment.

6.      If a person injured by a fraudulently procured arbitrazh court decision fails to pursue its right to appellate review of a wrongful decision, the APC offers two further means for overturning the improper decisions of a first instance arbitrazh court. First, a party to an erroneous court judgment can petition the Supreme Arbitrazh Court to exercise supervisory jurisdiction over the case. APC Article 292. As a general matter, parties have three months to seek supervisory review of a judgment, once it has entered into force. APC Article 292(3). Under the legislation implementing the APC, however, any judgment of an arbitrazh court currently in effect, no matter how long ago it entered into force, can be attacked on or before March 31, 2003. This grandfather provision gives persons aggrieved by old judgments a window in which to seek supervisory review. The Supreme Arbitrazh Court can decide whether to hear the supervisory filing and then may investigate the case to determine whether grounds for reversing a judgment exist. Article 304 of the APC sets out the criteria for revising by way of supervision a judgment that already has gone into effect, and in particular authorizes the Court to revise a prior judgment that violates uniformity in the interpretation and application of legal norms. These criteria are reminiscent of those used by the Supreme Court of the United States in considering applications for a writ of certiorari, and the Supreme Arbitrazh Court

3

grants this review with about the same frequency as does the Supreme Court of the United States. Were the Supreme Arbitrazh Court presented with credible evidence of fraudulent procurement of an arbitrazh court judgment, however, there is no reason to believe it would not exercise its jurisdiction by way of supervision.

7.      In addition, both the 1995 Arbitrazh Procedure Code and the 2002 APC authorize persons subject to a court judgment to bring newly discovered circumstances to the attention of the court that issued the judgment. APC Articles 309-17. A person aggrieved by a judgment has three months from the uncovering of circumstances justifying overturning or modifying of an existing judgment to apply for revision. APC Article 312(1). The aggrieved person must first present this application to the court that issued the offending judgment, but then may seek appellate review of the issuing court's failure to correct its decision. APC Articles 312(1), 317(5). APC Article 311 requires revision of a prior judgment in seven different circumstances affecting the reliability or integrity of the prior proceeding. Only two of these seven grounds involves a determination of the criminality of the persons that procured the judgment. APC Article 311(2), (3).

8.      The CPC, in operation from February 1 of this year, has virtually identical provisions for review of judgments of courts of general jurisdiction that have gone into effect. It provides for appellate review of erroneous or improper judgments, for supervisory review of judgments that have gone into effect, and for the reopening of judgments based on newly discovered circumstances. In particular, any judgment of a court of general jurisdiction that currently is in effect may be challenged through a filing seeking supervisory review until February 1, 2004, if the judgment had come into legal force before February 1, 2003, and one year after the judgment has entered into force in other cases. CPC Article 376(2) and Implementing Legislation, Article 6. Anyone subject to a judgment in force from such a court has three months from the discovery of new evidence to attack that judgment. CPC Article 394.

9.      In addition to these avenues for directly attacking a wrongful judgment under Russian law, an aggrieved party may bring a civil suit for damages caused by fraud or any other violation of a legal duty. As Professor Petrukhin's Declaration observed at paragraph 31, Article 1064 of the Civil Code creates a general obligation to compensate for harm caused by violation of a legal duty. The same paragraph of his Declaration further notes that Article 1102 creates a general obligation to return property unjustly obtained and Article 1107 mandates compensation for injury caused by unlawful taking of property. Furthermore, Article 1103(4) requires

compensation for unjust enrichment resulting from the bad faith conduct of someone who has been enriched thereby. Actions brought under these Articles are not predicated on prior proof of criminal misconduct, although proof of violation of a criminal law may establish the breach of a duty or wrongful basis for the retention of property.

10.     In cases where a person alleges injury resulting from a criminal act, Russian law supplies a procedure that allows the victim to seek private compensation in tandem with the state's prosecution of the crime.  Plaintiffs' claims, if substantiated, might establish a violation of Article 294(1) of the Criminal Code of the Russian Federation (RCC), which forbids interference with the activity of a court for the purpose of obstructing justice, or RCC Article 305(1), which criminalizes the knowing issuance of an unjust judicial act.  Proof of violation of one or the other of these Articles in turn would establish an element of a claim for damages under Articles 1064 or 1102 of the Civil Code.  In the course of prosecution under either of the Criminal Code provisions, the victim may invoke Article 44 of the Criminal Procedure Code (which went into effect on July 1, 2002).  This provision allows the victim to take advantage of the prosecution's evidence, to otherwise participate in the criminal trial, and to recover monetary compensation pursuant to its civil claim as part of the criminal proceeding.  However, Article 31(3) of the CPC, which deals with venue and which I discuss below in paragraph 13 of this Declaration, indicates clearly that this procedure is optional rather than mandatory, and that a person injured by criminal misconduct does not have to join his claim to the criminal prosecution to obtain compensation.

11.     In summary, I repeat my statement in paragraph 24 of my Declaration of January 28, 2002, that "I am confident that the Plaintiffs, if they could prove that the defendants acted in an unlawful manner to injure their business interests, could obtain a satisfactory and sufficient remedy from the Russian courts."

Venue

12.     As I discussed in paragraphs 6-8 and 16-18 of my January 28 Declaration, in the Russian Federation the arbitrazh courts and the courts of general jurisdiction operate as parallel judicial systems.  Under the new Codes, as under previous law, disputes based on private law (analogous to our tort, contract, and property law) in which an individual is a party will be heard in a court of general jurisdiction, unless all the individual parties are registered entrepreneurs and are suing or being sued in that capacity.  See CPC Article 22.  If a dispute based on the same substantive rights involves exclusively firms (in Russian terminology, a "legal person" (*iuridicheskoye litso*)), or

5

A - 709

individuals acting in the capacity of registered entrepreneurs, an arbitrazh court will hear the claim. See APC Article 28.

13.     The venue rules for the general jurisdiction and arbitrazh courts are largely identical. Compare CPC Articles 28-33 with APC Articles 35-39. The venues available to a plaintiff in either court include the place of residence of any defendant who is a physical person; the location of any defendant that is a legal person under Russian law; the location of an affiliate or representative office of an organization, if the claim results from the activity of such affiliate or office; the location of the defendant's property in Russia, if the defendant cannot be found or has no presence in Russia; and the place of execution of a contract, if the contract refers specifically to that place and if the claim is derived from the contract. CPC Article 29; APC Article 36. In the case of multiple possible venues, the plaintiff has the complete discretion to choose among the available venues to bring the suit. CPC Article 29(10); APC Article 36(7). Where the defendants reside or are located in different venues, the plaintiff again may select in which venue the suit may be brought. CPC Article 31; APC Article 36(7). Finally, both Codes allow the parties to agree to any venue they wish, subject to certain constraints that do not seem relevant to this dispute. CPC Article 32, APC Article 37.

14.     Russian Criminal Law applies only to individuals, and not to firms as such. RCC Article 19. However, individuals acting through a firm may be convicted of a crime and may bear greater penalties for being part of one of the kinds of criminal groups identified in RCC Article 35. As a result, the Arbitrazh Procedure Code does not address the issue of where venue would lie in the case of a private dispute that overlapped with a criminal complaint. The Civil Procedure Code, however, does address this question expressly. In the case of a civil claim that arises from facts making out a criminal violation, the normal rules of venue apply, including all the choices discussed in the preceding paragraph. CPC Article 31(3).

15.     In particular, if Plaintiffs were to bring their claim in a Russian court, if they included all of the defendants currently parties to this litigation, and if all the parties to the litigation satisfied the requirements of the Arbitrazh Procedure Code, then an arbitrazh court would hear the case. If some of parties were not to satisfy the requirements of the Arbitrazh Procedure Code, and if the claims involved a common body of evidence and legal theories such as to make separate proceedings impracticable, then a court of general jurisdiction, and not an arbitrazh court, would have jurisdiction to hear the case. CPC Article 22(4). If one or more of the defendants sued resided in Moscow, had

6

a Moscow location, were sued for activities associated with a Moscow affiliate or representative office, or was not a resident of the Russian Federation but did have property located in Moscow, then Plaintiffs could choose to have a Moscow court hear the claim. Moreover, the parties could consent to have a Moscow court decide the dispute. This statement would remain true even if the misconduct alleged by the Plaintiffs were also to result in a criminal prosecution in some other venue within the Russian Federation.

Applicable Procedures

16.     Both the APC and the CPC provide for the same general procedures of procuring and challenging evidence that I described in paragraphs 10 and 17 of my January 28, 2002 Declaration. Chapter 6 of the CPC lays out the applicable rules for the courts of general jurisdiction, and Chapter 7 of the APC does the same for arbitrazh courts. Both courts have the power to compel the production of evidence, including testimony. CPC Article 57, 63-65; APC Articles 64, 66, 72-74. They may allow the parties to challenge their opponents' evidence and to attack its credibility, including attacks on testimonial evidence. CPC Articles 67-68; APC Articles 71, 81, 88. These procedures resemble closely those that apply to civil suits in all courts in continental Europe with which I am familiar, including in particular the courts of France, Germany and Switzerland. The Russian courts, like their European counterparts, give greater authority to the judge to control the introduction and examination of evidence, including the taking and challenging of the testimony of witnesses, relative to the lawyer-driven procedures with which we are familiar in the United States. See CPC Article 68; APC Article 66. The continental European approach reflects a commitment, to which Russia adheres, to the judge's authority to conduct an independent search for the truth, but by no means eliminates the capacity of the parties' lawyers to affect the course of the proceedings and to shape the evidentiary record. All forms of evidence with which a U.S. trial court would be familiar, including witness testimony, documentary and physical evidence, and expert opinions, are admissible in both a Russian court of general jurisdiction and an arbitrazh court. In particular, these procedures are completely sufficient for considering claims based on allegations of fraud and other legal theories that depend on testimonial evidence.

17.     For all these reasons, I believe that Russia would provide an adequate alternative forum for litigation of the sort that has been brought against defendants in this action.

7

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct. Executed on February 19, 2003, at Charlottesville, Virginia.

_____

Paul B. Stephan III

A - 712

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

BASE METAL TRADING SA;                                    :
BASE METAL TRADING LTD.;
ALUCOAL HOLDINGS LTD.;                                    :
MIKOM;

                                                         :

DAVIS INTERNATIONAL, LLC;                                 :
HOLDEX, LLC;                                              :
FOSTON MANAGEMENT, LTD.;
OMNI TRUSTHOUSE, LTD;                                     :
NEXIS PRODUCTS, LLC; and
POLYPROM, LTD.                                                        00 CIV. 9627 (JGK)
                        Plaintiffs,                      :


              v.                                         :
                                                         THIRD DECLARATION OF
RUSSIAN ALUMINUM;                                        : PROFESSOR IGOR
RUAL TRADE LTD;                                           LEONIDOVICH PETRUKHIN
                                                         : IN SUPPORT OF
                                                         DEFENDANTS' MOTION TO
SIBIRSKY ALUMINUM PRODUCTS USA CORP.                     DISMISS THE
  a/k/a SIBIRSKY ALUMINUM (US);                          : AMENDED COMPLAINT ON
SIBIRSKY ALUMINUM (Russia);                              FORUM NON CONVENIENS
BAUXAL MANAGEMENT, SA;                                   : GROUNDS
METCARE MANAGEMENT, SA;
UNIMETAL LIMITED, SA;
OLEG DERIPASKA;                                          :


MIKHAIL CHERNOI;                                         :
BLOND MANAGEMENT, INC.;
BLOND INVESTMENTS, CORP.;                                :
PAN-AMERICAN CORP.;
ARNOLD KISLIN;                                           :


ISKANDER MAKHMUDOV;                                      :
MOSKOVSKIY DELOVOI MIR BANK;
                                                         :

NOVOKUZNETSK ALUMINUM ZAVOD;
NEW START GROUP CORP.;                                   :
VENITOM CORP.;
UNIDALE LLC; and                                         :
INVESTLAND, LLC
                        Defendants.                      :


-------------------------------------------------------------x

THIRD DECLARATION OF PROFESSOR IGOR LEONIDOVICH PETRUKHIN IN
SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT ON FORUM NON CONVENIENS GROUNDS

I, Igor Leonidovich Petrukhin, hereby declare the following:

1.  I respectfully submit to the Honorable Court this Third Declaration in support of the
Defendants' motion to dismiss the allegations in this case on forum non conveniens grounds.
I previously submitted a Declaration dated January 26, 2002, with respect to Defendants'
motion to dismiss the Amended Complaint on forum non conveniens grounds and confirm in
full everything said in that Declaration, albeit with a clarification that some citations to
particular statutory provisions are out of date due to adoption of new statutory acts of the
Russian Federation (in particular, the Arbitrazh Procedure Code, hereinafter – "APC", and the
Civil Procedure Code, hereinafter – "CPC"). I would like to attract attention to the fact that
extracts from the statutory acts, cited in the present Declaration, are attached as Appendix 1 to
the present Declaration.

2.  I was asked to deliver an expert opinion on whether the substantive and procedural
Russian law provides a cause of action in Russia based on the claims on the Amended
Complaint.

3.  As I stated in my Declaration of January 26, 2002, I give a positive answer to the raised
question. This Declaration answers this question in more detail, and also with respect to one
available avenue of redress, how, where and in what order the claims of the Plaintiffs might
be satisfied, namely of  Base Metal Trading S.A., Base Metal Trading, Ltd. and Alucoal, Ltd.

2

("the BMT Plaintiffs") and MICOM (the BMT and MICOM Plaintiffs collectively referred to

as "the NKAZ Plaintiffs"), and Davis International, LLC, Holex, LLC, Foston Management,

Ltd., Omni Trusthouse, Ltd. ("the Davis Plaintiffs"), Nexis Products, LLC and Polyprom, Ltd.

(together with the Davis Plaintiffs "the GOK Plaintiffs"), altogether named "Plaintiffs", if

such claims are to be tried in the Russian Federation.


4.    As I pointed out in the Declaration of January 26, 2002, the NKAZ, and GOK Plaintiffs

have a possibility to initiate the proceedings in Russia in regard of all charges and claims

brought by the Plaintiffs under the RICO suit.  As stated in par. 29 of the said Declaration:

> 29. ... Plaintiffs may initiate their suits on fraud charges in Russia.  In that case, under
> Russian law, the Plaintiffs have to either (1) bring a civil law claim against the
> Defendants for compensation of damages caused by fraudulent actions or repayment
> of the amount of unjust enrichment particularly for compensation for damages caused
> by the bad faith of the person unjustly enriched pursuant to Chapter 59 and Chapter 60
> of the CC RF, and/or (2) request that the relevant authorities initiate a criminal
> investigation of the Defendants on fraud charges and, if any of the Defendants is held
> criminally liable, then file a civil lawsuit within a criminal proceeding...

5.    I fully confirm the above and declare that there are several avenues available in the

Russian Federation for examination of Plaintiffs' claims. In Pargraphs 31-34 of the

Declaration of January 26, 2002 I described the legal mechanism corresponding to the avenue

(1) listed above. This course of actions and also some other aspects of possible redress in

regard of Plaintiffs' claims in Russia are described in the Third Declaration of professor

Stephan, which  I agree with. In the present Declaration I describe in detail the referred above

avenue (2) for consideration of Plaintiffs' claims in the Russian Federation, which has not

been yet discussed in sufficient detail. The procedure for examination of Plaintiffs'

accusations and claims described below, from my point of view, would be quite effective for

Plaintiffs taking into consideration that, as follows from the Amended Complaint, Plaintiffs

base their monetary claims on the alleged perpetration of crimes and other unlawful acts by

the Defendants, which allegedly caused real damages to the Plaintiffs. A detailed description

3

of the legal mechanism that would be in furtherance of this avenue.

### A.    Brief Analysis of Criminal Charges Brought by the Plaintiffs

6. In the Amended Complaint, the Plaintiffs base their claims on a whole range of unlawful acts done by the Defendants. Analysis of the brought grievances and charges demonstrates that all the acts complained about are criminally punishable under the law of the Russian Federation.

7. Particularly, the actions listed in Paragraphs 439-442 of the Amended Complaint and titled as "Murder" fall under such corpus delicti as the murder (Art.105 of the Criminal Code of the RF, hereinafter - "Cr.C RF"), the attempted murder (Articles 30, 105 of the Cr.C of the RF) and the threat of murder (Art.119 of the Cr.C RF).

8. The actions listed in Paragraphs 443-453 of the Amended Complaint and titled as "Extortion" conform to corpus delicti of the extortion (Art.163 of the Cr.C RF).

9. The actions listed in Paragraphs 454-459 of the Amended Complaint and titled as "Bribery" fall under such corpus delicti as the bribe-giving (Art. 291 of the Cr.C RF) and the bribe-taking (Art. 290 of the Cr.C RF), the abuse of official powers (Art.285 of the Cr.C of the RF) and the exceeding of official powers (Art. 286 of the Cr.C RF).

10. The actions listed in Paragraphs 460-483 of the Amended Complaint and titled as "Mail and Wire Fraud" are covered by such corpus delicti as the fraud (Art.159 of the Cr.C RF), the obstruction of the administration of justice and of preliminary investigation (Art. 294 of the

4

Cr.C RF); knowingly giving an unjust judgment, decision, or any other juridical act  (Art. 305 of the Cr.C RF).


11. The actions listed in Paragraphs 482-494 of the Amended Complaint and titled as "Money  Laundering" and "Illegal Transactions in Monetary Instruments" conform to the corpus delicti of such crimes as the legalization (laundering) of money or other property, criminally acquired by other persons (Art. 174 of the Cr.C RF), the legalization (laundering) of money or other property acquired by the person due to commission of a crime (Art. 174.1 of the Cr.C RF).


12. In other words, one may conclude that though the corpus delicti of the crimes under the US law are not quite identical to the corpus delicti stipulated by the Russian law, all charges brought by the Plaintiffs against the Defendants are in some form reflected in the Criminal Code of the Russian Federation.


**B.    The First Stage: Criminal Proceedings on Brought Charges with Filing of Civil Claims within the Criminal Proceedings**

<u>Petition regarding a Crime and Pre-Investigation Examination</u>

13. Considering that according to the Plaintiffs the Respondents committed some actions that are considered criminal under the Russian law, they may file an appropriate petition to the law-enforcement authorities (Art. 141 of the Criminal Procedural Code of the RF (hereinafter – CrPrC RF)), as many of the actions (listed in Section A of this Declaration) refer to grave and very serious offences that caused great damage to the Plaintiffs, the petition regarding all crimes may be filed with the General Prosecutor's Office of the RF with a motion for its consideration by the central investigative authorities of the General Prosecutors' Office.

14. On the basis of the received petition regarding crimes, the General Prosecutor's Office of the RF would have to make a pre-investigation examination as stipulated by Art.144 of the CrPrC RF regarding each allegation. If there is enough information pointing at the elements of crime (as stipulated by Art.140 of the CrPrC RF), a prosecutor of the General Prosecutor's Office will decree initiation of the criminal case (Art. 145 of the CrPrC RF) based on the results of consideration of the petition.

15. If the pre-investigation examination results in the initiation of criminal proceedings being denied, but the examination nonetheless reveals commission of unlawful actions (even if not criminally punishable), Plaintiffs can use these conclusions to activate civil proceedings described in Paragraphs 27 and 28 of this Declaration and Paragraphs 9 and 10 of professor Stephan's Declaration.

16. In the Amended Complaint, the Plaintiffs insist that all allegedly committed criminal actions were committed by the Defendants in complicity and by previous concert. Moreover, throughout the Amended Complaints the Plaintiffs are collectively referred to as "the Conspirators" that jointly hatched "the Illegal Conspiracy" for joint implementation of "the Illegal Scheme" (for more details, see Par.438 of the Amended Complaint). If one agrees with the Plaintiffs' assertions that the Defendants acted in complicity, then criminal proceedings with respect to all the charges and episodes must be combined into one proceeding (on the basis of complicity as per Part 1 Art.153 of the CrPrC RF and on the basis of commission of several crimes by one person as per Part 2 Art. 153 of the CrPrC RF). As a result, after the decree of initiation of the criminal proceedings, the prosecutor would direct that a preliminary investigation be opened (Art. 149 of the CrPrC RF) in compliance with the rules of departmental and territorial competence.

6

Preliminary Investigation

17. Under Art.151 of the CrPrC RF, the crimes that the Plaintiffs accuse the Defendants of are referred to different investigative authorities, namely, to the Interior Ministry (MVD) investigators or the prosecutor's office investigators. If the criminal proceedings within the competence of different investigative authorities are combined into one proceeding, the prosecutor determines the proper investigative authority (Part 7 Article 151 of CrPrC RF).

18. Under the general rule, the venue of the preliminary investigation is determined by the locale of the action that contains the elements of crime (Art.152 of the CrPrC RF). However, if several crimes committed by several persons in different locales are investigated within the same proceedings, the prosecutor may freely determine the venue of the preliminary investigation to ensure completeness and impartiality of the preliminary investigation and observance of the procedural deadlines (Parts 2, 3, 4 Art.152 of the CrPrC RF).

19. Considering the principle of centralization of the prosecutor's offices in the Russian Federation stipulated by Art. 4 of the Federal Law "On the Prosecutor's Office of the Russian Federation", and as the General Prosecutor of the Russian Federation is responsible for the fulfillment of the tasks that the prosecutor's offices are charged with by the said Federal Law (Part 4 Art. 17 of the said Law), the investigation of a criminal case of such magnitude must be carried out by the General Prosecutor's Office investigator. Considering a special complexity of the investigation and the amount of work to be done, the General Prosecutor of the Russian Federation may set up an investigative group pursuant to Art.163 of the CrPrC RF.

A - 719

Filing of Civil Suit within Criminal Proceedings

20. Considering that Plaintiffs allege real damages caused by unlawful actions of the Defendants, they are interested to receive from the Defendants of a compensation for alleged damages incurred due to the Defendants's alleged unlawful actions that comprise "the Illegal Scheme". Such procedural option is provided for by the Russian criminal procedural law. As part of the criminal proceedings after their initiation a civil suit within a criminal proceedings may be brought. Under Article 44 of the CrPrC RF, the civil plaintiff is a natural or legal person that puts forward a claim for compensation of damages to property if such person possesses grounds to think that such damages were caused directly by the crime. The civil plaintiff is fully exempt from payment of state duty (Article 44 of CrPrC RF). The interests of a civil plaintiff during preliminary investigation and before the court may be represented by an attorney or another representative (Article 45 of CrPrC RF).

21. Therefore, if evidence of cause-effect relationship between the alleged criminal actions of the defendants and the damages is revealed, the claims of the Plaintiffs must be considered as a civil suit within criminal proceedings. If such sufficient evidence is not revealed by a prosecutor or an investigator, the Plaintiffs will nonetheless retain the right to have their claims heard within independent arbitrazh or civil proceedings, depending on proper jurisdiction, as described in Stephan's Declaration.

Court Trial of the Criminal Case

22. If based on the results of the preliminary investigation of the crimes allegedly committed by the Defendants, the investigator would come to the conclusion of Defendants' guilt or the guilt of some of them, a bill of indictment would be composed and the case would be brought to court. It seems that territorial jurisdiction over the case is an important issue for the Plaintiffs.

23. In the text of the Amended Complaint the Plaintiffs repeatedly point out that Kemerovo region judges for bribes passed illegal judgments as a result of "the Illegal Conspiracy" with the "the Conspirators" that caused damages to the Plaintiffs. If those assertions are to be proved true, and this will be proved in the course of preliminary investigation, then the relevant federal judges would have to be subjected to criminal liability. If a federal judge were among the accused in the potential criminal case, the case in general (upon the motion of that judge) would be tried by the Supreme Court of the Russian Federation (Articles 31, 33, 452 of the CrPrC RF).

24. If the federal judges would not be in the line up of the accused, then the case would be tried in the general order, but considering the gravity of the declared crimes, it would be tried under the jurisdiction of a court of higher instance, here - of regional court of general jurisdiction,  the territorial jurisdiction of which would be determined by the locale of the crime (Art. 32 of the CrPrC RF).

25. At the same time, one should take into account that under Art. 35 of the CrPrC RF, if not all of the parties to the criminal proceedings live in the territory that falls under a certain court's jurisdiction and all of the accused consent to another court's jurisdiction for the criminal case, the case may be tried by another court, for instance, by Moscow-based court.

26. In the event of a guilty verdict with respect to the Defendants on the corpus delicti claimed by the Plaintiffs, under Article 299 of the CrPrC RF, when determining the sentence in a case, the court also determines whether the civil claim is to be upheld, in whose favor and in what amount. Thus, based on the results of the criminal trial (in the event of the guilty verdict) the issue of bringing the guilty to criminal responsibility and compensation for

9

damages caused directly by the committed crimes would be settled. In the event of the acquittal for the reason of absence of corpus delicti, the Plaintiffs retain the right of redress of the claims in the course of civil court proceedings. The Plaintiffs retain this right also in case of the termination of the case on the stage of preliminary investigation for any reasons.

**C.     Second Stage: Review of Arbitrazh Decisions Regarding Insolvency**

27. In the event that  (1) the Prosecutor's office, as a result of pre-investigation examination, refused Plaintiffs' request to initiate criminal proceedings, but established the facts of commission of particular unlawful acts (not covered by any criminal corpus delicti), or (2) Plaintiffs' civil claims were not accepted in the criminal proceedings due to lack of cause-effect relationship between  the alleged crimes and suffered losses, or (3) Plaintiffs were not satisfied in full with the amount of awarded compensational damages, including due to the absence of some of the Defendants from the line up of the accused, then the Plaintiffs would have legal grounds and procedural possibilities to receive additional or alternative damages in general jurisdiction or arbitrazh court proceedings. Moreover, when issuing a decision on refusal to accept a civil claim within criminal proceedings, a judge, a prosecutor, or an investigator usually note that the relevant monetary claims may be filed in court in accordance with other established procedure.

28. The fact of one or the other unlawful acts (for example,  falsification of the evidence) done by the Defendants, as established by the authorized bodies even in the absence of the guilty verdict would carry considerable evidentiary weight in any further arbitrazh or court of general jurisdiction proceedings, including those initiated on fraud charges and based on the provisions of Articles 1064, 1102, 1107 of the Civil Code of the RF as described in Paragraphs 31-34 of my Declaration of 26 January, 2002. In the event of a guilty verdict

10

**A - 722**

being passed against the Defendants, Plaintiff can unquestionably demand rescission of court decisions taken, in particular, in connection with NKAZ bankruptcy.

29. Under Art.309 of the APC RF, the arbitrazh court may review its decision that came into legal force on the basis of newly-discovered circumstances. Article 311 of the APC RF stipulates, in particular, the following grounds for such review:

> 2) the falsification of evidence which has caused the adoption of an illegal or an unsubstantiated judicial act in the given case, established by the court verdict that has come into legal force;
> 3) criminal actions of a person participating in the proceedings or of his representative or criminal actions of a judge committed in the course of proceedings all as established by a court verdict that entered into legal force.

30. The petition for review of a final judicial act in force on the basis of newly-discovered circumstances is to be filed by the participants in the proceedings in the arbitrazh court that passed a judicial act within three months after the circumstances that constitute the grounds for the review of the judicial act were discovered. In other words, within three months after the relevant verdict being passed, Plaintiffs would be able to file a petition for review of bankruptcy court decisions that they regard as unlawful, if the unlawfulness of such actions is established by a court verdict.

31. Thus, in theory, all judicial acts passed with respect to the NKAZ insolvency might be reviewed, if falsification of evidence, criminal actions of the judge or other crimes directly linked to the court proceedings with respect to NKAZ insolvency were proved. One should be mindful of the preclusive effect of the guilty verdict that entered into legal force for the court trying a subsequent civil (arbitrazh) case, as provided in Russian law.

32. The court that passed the initial decision reviews the case, i.e. hypothetically, in the event

11

A - 723

of review of NKAZ bankruptcy judicial acts, it would be the Arbitrazh Court of the

Kemerovo Oblast. Considering that this would be a new trial, the claimants would be able to

challenge unsatisfactory court decisions through the appeal and cassation procedures

(including in the Federal Arbitrazh Court for Western Siberian Circuit).


33. It should be noted that, as Professor Stephan rightly states in Paragraph 6 of his

Declaration, the Plaintiffs have another procedural avenue open to them to try to review

bankruptcy court decisions, namely supervisory review of court decisions by the Supreme

Arbitrazh Court of the Russian Federation (Article 292 of the APC RF). If serious procedural

violations, such as falsification of evidence, are established, there is a high probability that the

decision would be reviewed.


**D.    Third Stage: Consideration of Other Claims of the Plaintiffs**

34. Besides taking the action described in section C of this Declaration and in the event of

repeal of the relevant court decision that are referred to in Section C hereof, the Plaintiffs

would be entitled to claim full compensation of damages for breach of contracts through

commercial arbitration in accordance with arbitration clauses of these contracts.


35. The Plaintiffs put forward specific money claims resulting from termination of contracts

with respect to NKAZ only. All these contracts had arbitration clauses, with the majority of

the contracts providing for the International Commercial Arbitration Court with the Chamber

of Commerce and Industry of the Russian Federation as the venue of proceedings. Therefore,

after repeal of the decisions mentioned in Section C of this Declaration, there would arise a

real procedural possibility of getting of the disputes arising out of these contracts heard.


12

36. If a potential guilty verdict in respect to extortion, fraud and bribery on the part of the Defendants (or another act by a Prosecutor, an investigator or court confirming unlawfulness of certain acts even in the absence of the guilty verdict) confirmed the Plaintiffs' arguments as to NKAZ's fictitious insolvency, and further reversals of judicial acts in regard of the insolvency (on the basis of newly discovered circumstances) took place, the claims of the Plaintiffs arising out of the termination of the contracts would have to be examined without the effect of the bankruptcy proceedings, and that would serve as ground for satisfaction of the claims resulting from terminated business contracts.

37. It also would not be out of the question for the Plaintiffs to claim compensation of losses with regard to the sale of NKAZ' shares, if such losses occurred, and also damages related to the termination of the contract with MIKOM.

### E.    Conclusion

38. Considering a foresaid, I state that the Plaintiffs possess all procedural possibilities for their claims to be considered in full within the Russian judicial and legal system, and there are real preconditions for almost all proceedings to be handled out by the central investigative and judicial authorities.

13

A - 725

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Moscow

_____                                    _____/I.L.Petrukhin/

В Федеральный суд Южного округа Нью-Йорка

--------------------------------------------------------x
                                           :

БЭЙЗ МЕТАЛ ТРЭЙДИНГ С.А.;  
БЭЙЗ МЕТАЛ ТРЭЙДИНГ ЛТД.;  
АЛУКОАЛ ЛТД.;  
МИКОМ.;  
ДЕЙВИС ИНТЕРНЕШНЛ ЛЛС;  
ХОЛДЕКС ЛЛС;  
ФОСТОН МЕНЕДЖМЕНТ ЛТД;  
ОМНИ ТРАСТХАУС ЛТД;  
НЕКСИС ПРОДУКТС ЛЛС; и  
ПОЛИПРОМ ЛТД.

                        Истцы

РУССКИЙ АЛЮМИНИЙ;  
РУАЛ ТРЕЙД ЛТД.

СИБИРСКИЙ АЛЮМИНИЙ  
ПРОДУКТС – США КОРП.;  
а/к/а СИБИРСКИЙ АЛЮМИНИЙ – США;  
СИБИРСКИЙ АЛЮМИНИЙ – РОССИЯ;  
БОКСАЛ МЕНЕДЖМЕНТ С.А.;  
МЕТКЕА МЕНЕДЖМЕНТ С.А.;  
ЮНИМЕТАЛ ЛИМИТИД С.А.;  
ОЛЕГ ДЕРИПАСКА;

МИХАИЛ ЧЕРНОЙ;  
БЛОНД МАНАДЖЕМЕНТ ИНК.;  
БЛОНД ИНВЕСТМЕНТ КОРП.;  
ПАН-АМЕРИКАН КОРП.;  
АРНОЛЬД КИСЛИН;

ИСКАНДЕР МАХМУДОВ;  
БАНК МОСКОВСКИЙ ДЕЛОВОЙ МИР;

НОВОКУЗНЕЦКИЙ АЛЮМИНИЕВЫЙ  
ЗАВОД.;  
НЬЮ СТАРТ ГРУП КОРП.;  
ВЕНИТОМ КОРП.;  
ЮНИДЕЙЛ, ЛЛС; и  
ИНВЕСТЛЕНД, ЛЛС

                        Ответчики

--------------------------------------------------------x

По делу 00CIV.9627 (JGK)

ТРЕТЬЕ
ЗАЯВЛЕНИЕ
ПРОФЕССОРА
ПЕТРУХИНА ИГОРЯ
ЛЕОНИДОВИЧА
В ПОДДЕРЖКУ
ХОДАТАЙСТВА
ОТВЕТЧИКОВ ОБ
ОТКАЗЕ
В РАССМОТРЕНИИ
ИЗМЕНЕННОГО ИСКА
НА ОСНОВАНИИ
ТОГО, ЧТО ДАННЫЙ
СУД ЯВЛЯЕТСЯ
НЕУДОБНЫМ МЕСТОМ
ДЛЯ РАССМОТРЕНИЯ
ДЕЛА (FORUM NON
CONVENIENS MOTION)

A - 728

**ТРЕТЬЕ ЗАЯВЛЕНИЕ ПРОФЕССОРА ПЕТРУХИНА ИГОРЯ ЛЕОНИДОВИЧА В ПОДДЕРЖКУ ХОДАТАЙСТВА ОТВЕТЧИКОВ ОБ ОТКАЗЕ В РАССМОТРЕНИИ ИЗМЕНЕННОГО ИСКА НА ОСНОВАНИИ ТОГО, ЧТО ДАННЫЙ СУД ЯВЛЯЕТСЯ НЕУДОБНЫМ МЕСТОМ ДЛЯ РАССМОТРЕНИЯ ДЕЛА (FORUM NON CONVENIENS MOTION)**

Я, Петрухин Игорь Леонидович, настоящим заявляю о нижеследующем:

1. Я с почтением представляю уважаемому Суду настоящее Третье Заявление в поддержку ходатайства Ответчиков об отказе в рассмотрении заявлений в данном иске на основании того, что данный суд является неудобным местом для рассмотрения дела (forum non conveniens). Я ранее уже предоставил Заявление от 26 января 2002 года в отношении ходатайства Ответчиков об отказе в рассмотрении первоначального иска на основании того, что данный суд является неудобным местом для рассмотрения дела (forum non conveniens) и полностью подтверждаю все сказанное в данном Заявлении с тем лишь уточнением, что в связи с принятием новых законодательных актов Российской Федерации (в частности, Арбитражного процессуального Кодекса РФ, далее – «АПК РФ», и Гражданского процессуального Кодекса, далее – «ГПК РФ») отдельные ссылки на конкретные статьи законов на сегодняшний день устарели. Прошу обратить внимание, что выдержки из законодательных актов, на которые сделаны ссылки в настоящем Заявлении, приведены в Приложении 1 к данному Заявлению.

2. Меня попросили дать экспертное заключение относительно того, дает ли материальное и процессуальное право Российской Федерации возможность предъявления иска в России по основаниям, содержащимся в Измененном Иске.

2

3. Как я уже утверждал в своем Заявлении от 26 января 2002 г., мой ответ на поставленный вопрос является утвердительным.    Данное Заявление детализирует и расширяет ответ на этот вопрос, а  также описывает один из вариантов, где и в какой последовательности могут быть рассмотрены все исковые требования Истцов - Base Metal Trading S.A., Base Metal Trading, Ltd. и Alucoal, Ltd. («Истцы ВМТ») и МИКОМ (Истцы ВМТ и МИКОМ совместно именуемые «Истцы НКАЗ»), а также Davis International, LLC, Holdex, LLC, Foston Management, LTD, Omni Trusthouse, LTD («Истцы Davis»), Nexis Products, LLC и Polyprom, Ltd. (совместно с Истцами Davis именуемые «Истцы ГОК»), все совместно именуемые «Истцы», если таковые требования будут рассматриваться в Российской Федерации.

4. Как я уже указывал в Заявлении от 26 января 2002 г., для Истцов НКАЗ и ГОК существует возможность инициировать разбирательство в России   всех обвинений и требований, предъявленных истцами в рамках иска RICO. Как изложено в пункте 29 этого Заявления:

> 29. ... Истцы имеют право либо (1) заявить в суде в порядке гражданского судопроизводства требование против Ответчиков о возмещении убытков, связанных с причинением вреда вследствие мошеннических действий, а также о возврате неосновательного обогащения, и, в частности, о возмещении вреда, причиненного недобросовестным поведением обогатившегося лица, в соответствии с положениями Главы 59 и 60 ГК РФ, и/или (2) ходатайствовать о возбуждении против Ответчиков уголовного дела о мошенничестве и, в случае привлечения любого из Ответчиков к уголовной ответственности, заявить ... гражданский иск в уголовном процессе.

5. Я полностью подтверждаю вышесказанное и заявляю, что в Российской Федерации существует несколько путей для рассмотрения требований Истцов. В п.п. 31-34 Заявления от 26 января 2002 г. я описывал правовой механизм варианта (1), упомянутого выше. Это же направление действий, а также некоторые иные аспекты возможного рассмотрения требований Истцов в Российской Федерации описаны в  Третьем Заявлении профессора Стефана, с которым я согласен. В настоящем Заявлении я детализирую процитированный

3

A - 730

выше вариант (2) рассмотрения требований Истцов в Российской Федерации, который до сих пор не был достаточно подробно рассмотрен. Описываемая ниже схема рассмотрения обвинений и требований Истцов, с моей точки зрения, явилась бы весьма эффективной для Истцов с учетом того, что, как следует из Измененного Иска, свои денежные требования Истцы основывают на предполагаемом совершении Ответчиками ряда преступлений и иных неправомерных действий, причинивших Истцам материальный ущерб. Детальное изложение правового механизма, соответствующего данному варианту, приведено ниже.

**A.    Краткий анализ заявленных Истцами обвинений**

6. В Измененном Иске Истцы обосновывают свои требования   совершением ответчиками целого ряда неправомерных действий. Анализ всех предъявленных претензий и обвинений свидетельствует о том, что деяния, в связи с которыми заявлен Иск, являются уголовно наказуемыми деяниями по праву Российской Федерации.

7. В частности,   деяния, перечисленные в п.п. 439-442 Измененного Иска и озаглавленные «Убийство», подпадают под составы таких преступлений как убийство (ст. 105 Уголовного Кодекса РФ, далее – «УК РФ»), покушение на убийство (ст.ст. 30, 105 УК РФ), угроза убийством (ст. 119 УК РФ).

8. Деяния, перечисленные в п.п. 443-453 Измененного Иска и озаглавленные «Вымогательство», соответствуют составу вымогательства (ст. 163 УК РФ).

9. Деяния, перечисленные в п.п. 454-459 Измененного Иска и озаглавленные «Взяточничество», подпадают под составы таких преступлений, как дача взятки (ст. 291

4

УК РФ) и получение взятки (ст. 290 УК РФ), злоупотребление должностными полномочиями (ст. 285 УК РФ) и превышение должностных полномочий (ст. 286 УК РФ).

10. Деяния, перечисленные в п.п. 460-483 Измененного Иска и озаглавленные «Мошенничество с использованием почты и электронных средств связи», охватываются составами таких преступлений, как мошенничество (ст. 159 УК РФ); воспрепятствование осуществлению правосудия и производству предварительного расследования (ст. 294 УК РФ); вынесение заведомо неправосудных приговора, решения или иного судебного акта (ст. 305 УК РФ).

11. Деяния, перечисленные в п.п. 482-494 Измененного Иска и озаглавленные «Отмывание денежных средств» и «Незаконные сделки в финансовых механизмах», соответствуют составам следующих преступлений: легализация (отмывание) денежных средств или иного имущества, приобретенных другими лицами преступным путем (ст. 174 УК РФ), Легализация (отмывание) денежных средств или иного имущества, приобретенных лицом в результате совершения им преступления (ст. 174.1 УК РФ).

12. Иными словами, можно прийти к заключению, что хотя составы преступлений по праву США не являются вполне идентичными составам, предусмотренным российским законодательством, однако все обвинения, предъявленные Истцами к Ответчикам, в той или иной форме находят отражение в Уголовном кодексе Российской Федерации.

5

A - 732

**Б.    Первый этап: уголовное дело по предъявленным обвинениям с заявлением гражданских исков в уголовном деле**

Заявление о преступлении и доследственная проверка

13. Учитывая то, что, по мнению Истцов, Ответчики совершили ряд деяний, являющихся преступными по российскому праву, они вправе обратиться с соответствующим заявлением в правоохранительные органы Российской Федерации (ст. 141 Уголовно-процессуального Кодекса РФ, далее – «УПК РФ»). Ввиду того, что многие из перечисленных в п. «А» настоящего Заявления составов преступлений относятся к тяжким и особо тяжким преступлениям, приведшим к причинению ущерба Истцам в особо крупном размере, заявление о совершении всех преступлений может быть подано в Генеральную прокуратуру РФ с ходатайством о рассмотрении его центральными следственными органами Генеральной прокуратуры РФ.

14. На основании полученного заявления о совершении преступлений Генеральная прокуратура РФ должна будет провести доследственную проверку в порядке, установленном ст. 144 УПК РФ, по каждому эпизоду из предъявленных обвинений. При наличии достаточных данных, указывающих на признаки преступления (как указано в ст. 140 УПК РФ), по результатам рассмотрения заявления о преступлении прокурором Генеральной прокуратуры будет вынесено постановление о возбуждении уголовного дела (ст. 145 УПК РФ).

15. В случае, если по результатам доследственной проверки в возбуждении уголовного дела будет отказано, но тем не менее в ходе проверки будет установлено совершение ряда неправомерных действий (даже не подпадающих под категорию уголовно-наказуемых), то на основании этих выводов Истцы могут предпринять действия гражданско-правового

6

A - 733

характера, описанные в пп. 27-28 настоящего Заявления, а также в п.п.9-10 Заявления профессора Стефана.

16. Из анализа Измененного Иска следует, что все предположительно совершенные преступные действия были совершены Ответчиками в соучастии, по предварительному сговору. Более того, Истцы на протяжении Иска именуются совместно «Заговорщиками», совместными усилиями организовавшими «Незаконный Заговор» для совместной реализации «Незаконной схемы» (наиболее полно это отражено в п. 438 Измененного Иска). Если согласиться с утверждениями Истцов о том, что деяния Ответчиков совершены в соучастии, то уголовное дело по всем обвинениям и эпизодам должно быть соединено в одном производстве (по признаку соучастия - ч. 1 ст. 153 УПК РФ и по признаку совершения нескольких преступлений одним лицом - ч.2. ст. 153 УПК РФ). Как следствие, после вынесения постановления о возбуждении уголовного дела прокурор направит уголовное дело для производства предварительного расследования (ст. 149 УПК РФ) в соответствии с правилами подследственности.

Предварительное расследование

17. В соответствии со ст. 151 УПК РФ преступления, в совершении которых Истцы обвиняют Ответчиков, отнесены к разной подследственности, а именно, следователей МВД и следователей прокуратуры. При соединении в одном производстве уголовных дел, подследственных разным органам предварительного расследования, подследственность определяется прокурором (ч. 7 ст. 151 УПК РФ).

18. По общему правилу, место осуществления предварительного расследования определяется местом совершения деяния, содержащего признаки преступления (ст. 152 УПК РФ). Вместе с тем, в  случае расследования по одному делу нескольких

7

A - 734

преступлений, совершенных несколькими лицами в различных местах, прокурор вправе самостоятельно избрать место осуществления предварительного расследования в целях обеспечения полноты осуществления предварительного расследования, его объективности и соблюдения процессуальных сроков (ч.2,3,4 ст. 152 УПК РФ).

19. Учитывая принцип централизованного построения прокуратуры Российской Федерации, закрепленный в ст. 4 Федерального закона "О прокуратуре Российской Федерации", и то, что Генеральный прокурор Российской Федерации несет ответственность за выполнение задач, возложенных на органы прокуратуры настоящим Федеральным законом (ч. 4 ст. 17 того же Закона), расследование уголовного дела такого масштаба должно быть возложено на следователей Генеральной прокуратуры Российской Федерации. Учитывая особую сложность расследования по делу и большой объем необходимой работы, Генеральный прокурор РФ может создать следственную группу в порядке, установленном ст. 163 УПК РФ.

<u>Заявление гражданского иска в уголовном деле</u>

20. Учитывая, что Истцы заявляют, что именно неправомерными действиями Ответчиков им был причинен материальный ущерб, то они заинтересованы в получении от Ответчиков суммы предположительно понесенных убытков вследствие совершения Ответчиками неправомерных действий, составляющих в совокупности «Незаконную схему». Такая процессуальная возможность закреплена в российском уголовно-процессуальном праве. Так, в рамках уголовного процесса по делу после его возбуждения может быть предъявлен гражданский иск в уголовном деле. В соответствии со ст. 44 УПК РФ гражданским истцом является физическое или юридическое лицо, предъявившее требование о возмещении имущественного вреда, при наличии оснований полагать, что данный вред причинен ему непосредственно преступлением. Гражданский истец

8

освобождается полностью от уплаты государственной пошлины (ст. 44 УПК РФ). Интересы гражданского истца на предварительном следствии и в суде может защищать его представитель - адвокат или иное лицо (ст. 45 УПК РФ).

21. Таким образом, в случае если будут выявлены доказательства, предполагающие наличие причинно-следственной связи между декларированными преступными действиями Ответчиков и возникновением убытков, требования Истцов должны быть приняты к рассмотрению в качестве гражданского иска в уголовном деле, если такие достаточные доказательства не будут выявлены прокурором или следователем, то Истцы тем не менее сохраняют право, чтобы их требования были рассмотрены самостоятельно в рамках арбитражного или гражданского процесса, в зависимости от подведомственности, как описано в Заявлении Стефана.

Рассмотрение уголовного дела в суде

22. Если по результатам предварительного расследования в отношении преступлений, предположительно совершенных Ответчиками, следователь придет к выводу о виновности Ответчиков или некоторых из них, то он должен будет составить в отношении них обвинительное заключение и передать дело в суд. Представляется, что для Истцов важным вопросом является подсудность такого дела.

23. В тексте Измененного иска Истцы неоднократно указывают на то, что судьи в Кемеровской области за взятки выносили незаконные судебные решения по «Незаконному заговору» с «Заговорщиками», повлекшие за собой убытки для Истцов. Если эти утверждения соответствуют действительности и будут подтверждены в ходе предварительного расследования, то виновные федеральные судьи должны быть привлечены к уголовной ответственности. Если федеральный судья будет фигурировать

9

A - 736

среди обвиняемых в возможном уголовном деле, то дело в целом (по ходатайству этого судьи) должно быть рассмотрено Верховным Судом Российской Федерации (ст. 31, 33, 452 УПК РФ).

24. Если среди обвиняемых не будет федерального судьи, то дело будет рассматриваться в общем порядке, а учитывая тяжесть декларированных преступлений, судом более высокой инстанции, в данном случае, областным судом общей юрисдикции, территориальная подсудность которого определяется местом совершения преступления (ст. 32 УПК РФ).

25. Вместе с тем следует учесть, что в соответствии со ст. 35 УПК РФ, если не все участники уголовного судопроизводства по уголовному делу проживают на территории, на которую распространяется юрисдикция определенного суда, и все обвиняемые по делу согласны на изменение территориальной подсудности данного уголовного дела, то дело может быть рассмотрено в другом суде, к примеру, в суде, находящемся в г. Москве.

26. В случае вынесения обвинительного приговора в отношении Ответчиков по заявленным Истцами составам, суд в соответствии со ст. 299 УПК РФ при постановлении приговора по делу разрешает вопрос, подлежит ли удовлетворению гражданский иск, в чью пользу и в каком размере. Таким образом, по результатам уголовного процесса (в случае обвинительного приговора) будет решен вопрос о привлечении к уголовной ответственности виновных и о возмещении вреда, возникшего непосредственно вследствие совершенных преступлений. В случае оправдания подсудимого за отсутствием состава преступления, Истцы сохраняют право добиваться удовлетворения своих исковых требований в порядке гражданского судопроизводства. Истцы сохраняют

10

это право и при прекращении уголовного дела на предварительном следствии по любому из оснований.

**В.    Второй этап:  Пересмотр решений арбитражного суда, принятых в связи с банкротством**

27. В случаях, если (1) прокуратура по результатам доследственной проверки откажет Истцам в возбуждении уголовного дела, но установит факты совершения отдельных противоправных деяний (не подпадающих под уголовно наказуемые составы преступлений), или (2) Истцам будет отказано в рассмотрении их гражданских исков в рамках уголовного дела в связи с отсутствием причинно-следственной связи  между предполагаемым преступлением и возникшими убытками, или (3) Истцы не будут удовлетворены в полной мере размером полученного возмещения убытков, в том числе по причине отсутствия ряда Ответчиков среди обвиняемых,  то у Истцов есть основания и процессуальные возможности получить дополнительное или альтернативное возмещение причиненного ущерба в гражданском или арбитражном процессе. Более того, при вынесении соответствующего решения об отказе в рассмотрения гражданского иска в уголовном деле, суд, прокурор или следователь обычно указывают, что соответствующие денежные требования могут быть заявлены в суде в другом установленном законом порядке.

28. Факт установления уполномоченными органами совершения Ответчиками тех или иных неправомерных действий (к примеру, фальсификации доказательств) даже в отсутствие обвинительного приговора будет существенным доказательственным моментом в последующем арбитражном или гражданском судебном разбирательстве, в том числе, в ходе рассмотрений исков, поданных в связи с мошенническими действиями и основанных на положениях ст.ст. 1064, 1102, 1107 Гражданского Кодекса РФ,  как

11

описано в п.п. 31-34 моего Заявления от 26 января 2002 г. В случае вынесения обвинительного приговора в отношении Ответчиков Истцы, безусловно, могут потребовать отмены судебных решений, принятых, в частности, в связи с банкротством НКАЗа.

29. В соответствии со ст. 309 АПК Арбитражный суд может пересмотреть принятый им и вступивший в законную силу судебный акт по вновь открывшимся обстоятельствам. В ст. 311 АПК перечислены основания для пересмотра, в частности:

> 2) установленные вступившим в законную силу приговором суда фальсификация доказательства, .... повлекшие за собой принятие незаконного или необоснованного судебного акта по данному делу;
> 3) установленные вступившим в законную силу приговором суда преступные деяния лица, участвующего в деле, или его представителя либо преступные деяния судьи, совершенные при рассмотрении данного дела.

30. Заявление о пересмотре вступившего в законную силу судебного акта по вновь открывшимся обстоятельствам подается в арбитражный суд, принявший данный судебный акт, лицами, участвующими в деле, не позднее трех месяцев со дня открытия обстоятельств, являющихся основанием для пересмотра судебного акта. Иными словами, в течение трех месяцев после вынесения соответствующего приговора Истцы смогут подать заявление о пересмотре решений суда, принятых в ходе банкротства, которые считают незаконными, если факт незаконных действий будет установлен приговором суда. Иные ограничения по срокам отсутствуют.

31. Таким образом, теоретически должны быть пересмотрены все судебные акты, вынесенные в связи с банкротством НКАЗа, если будет доказано, что в рамках процесса банкротства НКАЗа имели место фальсификация доказательств, преступные деяния со стороны судьи, иные преступления, непосредственно связанные с судебными разбирательствами. Следует иметь в виду установленный в российском законодательстве

12

преюдициальный характер вступившего в законную силу обвинительного приговора для суда, рассматривающего впоследствии гражданское (арбитражное) дело.

32. Пересмотр дела осуществляется в суде, принявшем первоначальное решение, то есть в гипотетическом случае пересмотра судебных актов, принятых по банкротству НКАЗа, в Арбитражном Суде Кемеровской области.  Учитывая то, что это будет новый судебный процесс, у заявителей будет возможность в дальнейшем обжаловать не удовлетворяющее их решение суда  в порядке апелляции и кассации, в том числе, в Федеральном Арбитражном Суде Западно-Сибирского округа.

33. Следует отметить, что  для Истцов существует еще одна процессуальная возможность для пересмотра решений арбитражных судов по банкротству, а именно, пересмотр судебных решений Высшим Арбитражным Судом РФ в порядке надзора (ст. 292 АПК РФ). В случае установления серьезных процессуальных нарушений, к примеру, факта фальсификации доказательств, существует высокая вероятность, что дело будет пересмотрено.

**Г.    Третий этап: Рассмотрение остальных требований истцов**

34. Помимо совершения действий, описанных в разделе «В» настоящего Заявления и в случае отмены соответствующих судебных решений, на которые имеется ссылка в разделе «В», для окончательной защиты своих интересов Истцы смогут требовать полного возмещения причиненных убытков за нарушение контрактов посредством обращения в коммерческие арбитражи в соответствии с арбитражными оговорками этих контрактов.

35. Истцы заявляют конкретные денежные требования, вытекающие из расторжения контрактов, только в связи с НКАЗом.  Во всех этих договорах имелись арбитражные

13

оговорки, причем большая часть контрактов предусматривает в качестве места разбирательства Международный Коммерческий Арбитражный Суд при Торгово-промышленной Палате РФ. Следовательно, при отмене решений, указанных в разделе «В», появится реальная процессуальная возможность рассмотрения споров, вытекающих из этих контрактов.

36. Если обвинительный приговор суда относительно вымогательства, мошенничества, взяточничества со стороны Ответчиков (или иной документ прокурора, следователя, суда о фактах неправомерных действий, даже в отсутствие обвинительного приговора) подтвердит аргументы Истцов о фиктивном характере банкротства НКАЗа, а также будут приняты последующие решения об отмене судебных актов в связи с банкротством (по вновь открывшимся обстоятельствам), то исковые требования Истцов, вытекающие из фактов нарушения контрактов, должны будут рассматриваться без учета процедур банкротства, что послужит основанием для удовлетворения исков, вытекающих из расторгнутых хозяйственных контрактов.

37. Не исключается возможность для Истцов потребовать возмещения убытков в связи с продажей акций НКАЗа, если такие убытки, конечно, имели место, а также убытков, связанных с расторжением контракта с МИКОМом.

**Д.    Заключение**

38. С учетом вышеизложенного, я могу утверждать, что у Истцов существуют все процессуальные возможности в для того, чтобы их требования были полностью рассмотрены в рамках российской судебно-правовой системы, и существуют реальные

14

предпосылки для того, чтобы практически все процедуры разбирательства проводились центральными следственными и судебными органами.

A - 742

Я заявляю под страхом ответственности, которую предполагает законодательство Соединенных Штатов Америки за дачу заведомо ложных показаний, что все вышеуказанное правдиво и верно.

Москва, Российская Федерация

_____                    _____ / И.Л. Петрухин /

16

# PLAINTIFFS'
# POST-ARGUMENT
# SUBMISSIONS
# 2-20-03