73. Because the Civil Code does not recognize a separate cause of action for fraud, Plaintiffs may not assert such a claim based on the alleged corruption except within the context of Chapters 59 and 60, discussed above.

### Russian Courts Do Not Utilize
### Witness Testimony Or Cross-Examination
### As A Practical Matter In Economic Disputes

74. The arbitrazh courts were created to resolve economic disputes which typically concern written evidence. Evidence is usually offered only in written form or in some other tangible form.

75. Article 64 of the 2002 APC provides that admissible evidence includes "written and tangible evidence, explanation of the persons participating in a case, expert opinions, witness testimony, audio- and video-records and other documents and materials."

76. Article 88 of the 2002 APC provides, inter alia, that an arbitrazh court on the application of a person participating in a case may summon a witness for participation in arbitrazh proceedings.

77. Article 56 of the 2002 APC provides, inter alia, that a witness shall present to the arbitrazh court in written or oral form his explanations concerning the circumstances known to him which are significant for the case.

78. Accordingly, arbitrazh courts may consider witness testimony based on these provisions in theory.

79. However, in my years of practice as a judge in the arbitrazh court, I am unaware of any case in which arbitrazh courts admitted witness testimony as an evidentiary basis for a holding.[20] I am also unaware of any case where a court compelled witness testimony.

17

80. Defendants' expert, Professor Zankovsky, goes so far as to state that "[i]ndeed, Russian arbitrazh courts have no authority to summon witnesses, either on their own initiative, or at the request of the parties." Zankovsky Second Dec. ¶ 77.

81. Professor Zankovsky also states that "the cross-examination of witnesses, as a trial procedure aimed at determining whether evidence presented is truthful, simply does not exist in Russian law". Zankovsky Second Dec., ¶77.

82. This is generally true because witness testimony is rarely accepted in the first place.

83. However, in regard to refusal of the arbitrazh court to permit parties to challenge allegations of other persons participating in a case, which, as Plaintiffs allege occurred during the NKAZ bankruptcy at a February 17, 2000 hearing, when S. Chernyshev testified that certain document requests were not satisfied, I find it astounding that the arbitrazh court would not have permitted the opposing parties to contest his statements. Such treatment plainly violated Art. 33 of the 1995 APC which provided parties with a right (among other things) to "pose questions" and "to contest ... statements of persons participating in a case."

84. I would also note that there is no procedure in Russian courts similar to the practice of deposing witnesses prior to trial, as I am told exists in the American system. Moreover, obtaining documents from another party in a dispute in an arbitrazh court is rather complicated. Pursuant to Article 66 (4) § 2 of the 2002 APC, a petition to produce documents "must specify the evidence, indicate which circumstances significant for the case can be established by this evidence, the reasons which prevent a party from obtaining the evidence, and where the evidence is".

18

85.  Finally, while plaintiffs' claims may be brought in the courts of general jurisdiction to the extent that there are grounds to assert a cause of action against individuals, these courts will not utilize witness testimony in an economic dispute to a greater degree than the arbitrazh courts.

### The Risk Of Corruption Of Legal Proceedings In Moscow Is As Great As Any Other Region When Powerful Russian Interests Are Involved

86.  Based on my almost twenty years of experience and knowledge of the Soviet and Russian judicial systems, I am in complete agreement with the conclusions of experts Burger, Golubev, and Telyukina regarding the problems of corruption in the Russian court system, including the ability of powerful interest groups to influence court decisions in specific cases.

87.  This problem exists not only in the trial courts but in the courts of appellate instances and cassation courts as well.  The problem is not limited to the Kemerevo, Sverdlovsk, and Tyumen regions where proceedings affecting plaintiffs took place. Corruption exists in the courts located in other regions of Russia, including Moscow.

88.  The problem stems mainly from two sources:  (1) influence on courts through the federal and local governments and chairperson of the court; and (2) unfortunately, bribes and threats of violence.

89. The problem of corruption, including in Moscow, is especially serious when powerful interests are involved.  Former judge of the Moscow City Court and now Professor V. Mironov noted: "Our court is not dependent on the laws. The main criterion for judicial holdings when powerful interests are involved is the directive of the chairman of the court. The best judge is not an independent judge. Woe to a judge who disobeys a directive and is objective."[21]

90. As recently as two weeks ago, former Moscow Judge Sergey Pashin noted that "according to an extensive study of corruption conducted by the INDEM fund, Russian judges annually receive from a total of $274.5 million in bribes."[22]

91. While I was a judge of the Federal Arbitrazh Court for the District of Moscow, a cassation court for the Arbitrazh Court of Moscow and Arbitrazh Court of the Moscow Region, I became aware of attempts to influence judicial decisions.

92. In one case, the Chairperson of the Court instructed a judge to decide a case against the law and in favor of a private entity which provided certain commercial services to the court.

93. I also regularly discuss issues of corruption with my former colleagues, procurators and other Russian attorneys. They confirm that cases of influencing judicial decisions in the Moscow courts on various levels, including the cassation court, occur on an everyday basis. They also confirm that bribery is one of the ways to effect this influence.

94. For instance, I became aware of one case in which a judge received a bribe, essentially, in front of the prosecutor.

95. Based on my experience and personal knowledge, as well as my review of numerous accounts of and statements on corruption, I conclude that the problem of corruption in the system of arbitrazh courts and general jurisdiction courts is very real, including such in Moscow.

96. As a result, plaintiffs cannot expect a fair and impartial resolution of their claims in Russia, irrespective of whether they pursue their claims in Moscow, Kemerovo, Sverdlovsk or another region, and at all levels of the courts, i.e., trial, first instance

20

appeal, and cassation.

I have executed this affidavit outside the of the United States of America and declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true to the best of my knowledge and belief.

_____

---

[1]    The relevant provisions of the Civil Code are attached hereto as Exhibit "1".

[2]    The relevant provisions of the 1995 APC and 2002 APC are attached hereto as Exhibits "2" and "3" respectively.

[3]    The relevant provisions of the Criminal Code are attached as Exhibit "4".

[4]    Federal Constitutional Law "On Arbitrazh Courts of the Russian Federation" # 1-FKZ dated April 28, 1995, Art. 13(2) ("AC Law") attached as Exhibit "5". *See also* Decision of the Supreme Court of the Russian Federation of April 24, 2000, No. GKPI 00-368, attached as Exhibits "6".

[5]    Under the Russian Criminal Code, it is illegal to commit bribes (Art. 290, 291), interfere with the administration of justice (Art. 294), falsify evidence (Art. 303), and knowingly giving an unjust judgment, decision, or any other judicial act (Art. 305).

[6]    *See* COMMENTARY TO THE ARBITRAZH PROCEDURAL CODE OF THE RUSSIAN FEDERATION, at 790 (G. Zhilin, ed., Moscow, 2003). ("Perpetrating a crime in the course of the proceedings by a participant of the case, which is established by a court sentence that has come into legal force, is the basis for the revision [of a judicial act in accordance with newly revealed circumstances]. At the same time, there must be a connection between the perpetrated crime and the case, which the arbitrazh court examined. For example ... giving a bribe to a judge in order to get the desired decision issued. etc. Same as in instances provided by Article 311(2) of [the 2002 APC], the perpetration of a crime must be established by a court sentence ... that has come into legal force.") (Exhibit "7").

[7]    As a result of the recent enactment of the 2002 APC, applications for protests may be filed with the Supreme Arbitrazh Court as to decisions rendered on or before December 31, 2002 by March 31, 2003. For decisions rendered after December 31, 2002, applications for protest may only be filed within three months after the latest decision comes into legal force. *See* Federal Law "On Enactment of the Arbitrazh Procedural Code of the Russian Federation" #96-FZ, dated July 24, 2002, Art. 8, 9 (Exhibit "8"); *also see* Article 292(3) of the 2002 APC.

[8]    *See* ARBITRAZH PROCEDURE. TEXTBOOK, at 349 (V. Yarkov ed., Moscow, 2002). ([T]he Supreme Arbitrazh Court of Russia "does not have authority to independently determine factual circumstances based on the evidence collected, nor does it have authority to collect and evaluate new evidence")(Exhibit "9"); *See also* V.M. SHERSTYUK, ARBITRAZH PROCEDURE IN QUESTIONS AND ANSWERS. COMMENTARIES, RECOMMENDATIONS AND SUGGESTIONS ON APPLICATION OF THE ARBITRAZH PROCEDURAL CODE OF THE RUSSIAN FEDERATION, at 97 (2nd ed., Moscow, 2001) ("[the Supreme Arbitrazh Court of Russia] does not have authority to independently determine

A - 851

the circumstances, which are of importance for the case, based on the evidence collected, nor does it have authority to additionally collect new evidence"). (Exhibit "10").

9       See "Results of the work of the arbitrazh courts of the Russian Federation in 1992-2001" Report available at the official web-site of the Supreme Arbitrazh Court of Russia at http://www.arbitr.ru/news/totals/10anniversary/details.htm (Exhibit "11").

10       See COMMENTARY TO THE ARBITRAZH PROCEDURAL CODE OF THE RUSSIAN FEDERATION, at 777 (G. Zhilin, ed., Moscow, 2003)(if "a judicial act is unlawful or ungrounded which requires conducting of additional collection of evidence or its examination … then the disputed judicial act is to be reversed in its entirety or in part, or modified, and remanded to the arbitrazh court which judicial act is reversed or modified. When judicial acts of several court instances are reversed, the case is to be remanded to the lowest of those instances.") (Exhibit "7").

11       See O. N. SADIKOV, COMMENTARY TO CIVIL CODE, at 665 (Moscow, 1999) ("For liability in tort to arise the presence of corpus delicti is necessary, which includes: a) occurrence of harm; b) unlawfulness of the wrongdoer's conduct; c) causal connection between the first two elements; and d) fault of the wrongdoer") (Exhibit "12"); see also M.I. BRAGINSKY, COMMENTARY TO CIVIL CODE, available in GARANT, Russian Legal Database ("the mere fact of causation of harm is insufficient for liability on compensation for the harm. Article 1064 of the Civil Code contains general conditions (grounds), which together with the fact of causation of harm give rise to the obligation for its compensation. These conditions are as follows: unlawfulness of act (failure to act), causal connection between the act (failure to act) and the result ensued (causation of harm) and the fault of the wrongdoer") (Exhibit "13").

12       See 3 TREATISE OF CIVIL LAW, at 24 (A. Sergeev & Y. Tolstoi, ed., Moscow, 2001) (Exhibit "14").

13       Defendants' expert, I. Petrukhin, references a Russian Constitutional court decision dated January 25, 2001 which addresses the issue of government liability for harm caused by illegal court actions under Art. 1070(2) of the Civil Code.  Second Petrukhin Dec. at ¶30.  This decision actually confirms that the prior criminal conviction of the judge is required in order to bring a claim when a judge corruptly determines a case on the merits.  The only exception to the general requirement that a criminal conviction is required addressed in this decision applies to a limited class of "procedural irregularities," such as when harm is caused by "unlawful arrest of property by the court, violation of reasonable terms of [considering] court proceedings, untimely service of procedural documents on a person which caused missing the term of appeal, [or] unlawful delay of execution [on a judgment]."  Even this exception requires the fault of the judge to have been established by another court decision; however, as set forth in its decision, the Constitutional Court resolved that the Legislature enact a law addressing this because there is currently no provision in Russian law specifying the nature of the decision required.  This enactment has yet to occur. Obviously, this narrow exception

A - 852

does not apply to the corrupted NKAZ and GOK bankruptcies, where the judicial acts, inter alia, approved the allegedly sham settlement agreements, which decided the merits of the bankruptcy. At the same time, there has been no decision establishing the fault of the judges. In addition, a claim under §1070(2) would be required to be made in the same arbitrazh court in which the illegal judicial act took place.

[14]     A. MAKOVSKY, OBLIGATIONS AS A CONSEQUENCE OF UNJUST ENRICHMENT. COMMENTARY TO THE CIVIL CODE OF THE RUSSIAN FEDERATION (PART 2) (O. Kozyr, A. Makovsky, S. Khokhov eds., Moscow, 1996), *available at* KONSULTANT+, Russian legal database, *quoting* G. SHERSHENEVICH, TEXTBOOK OF THE RUSSIAN CIVIL LAW, at 668-669 (10th ed., Moscow, 1912) (Exhibit "15").

[15]     A. MAKOVSKY, OBLIGATIONS AS A CONSEQUENCE OF UNJUST ENRICHMENT. COMMENTARY TO THE CIVIL CODE OF THE RUSSIAN FEDERATION (PART 2) (O. Kozyr, A. Makovsky, S. Khokhov eds., Moscow, 1996), *available at* KONSULTANT+, Russian legal database, *quoting* O. IOFFE, OBLIGATIONS LAW, at 857-858 (Moscow, 1975) (Exhibit "15").

[16]     *See* Decision of the Presidium of the Supreme Arbitrazh Court of the Russian Federation #9261/00 dated July 3, 2001 (affirming arbitrazh court decision denying the claims to collect unjust enrichment since "in order to determine that unjust enrichment took place, it is necessary for a person to lack grounds (legal facts) that give him the right to receive property") (Exhibit "16"). *See also* Decision of the Presidium of the Supreme Arbitrazh Court of the Russian Federation # 7826/99 dated August 23, 2000 (reversing arbitrazh court decision recognizing unjust enrichment because product was received on the basis of and used it in accord with the contract) (Exhibit "17").

[17]     *See* A. MAKOVSKY, OBLIGATIONS AS A CONSEQUENCE OF UNJUST ENRICHMENT. COMMENTARY TO THE CIVIL CODE OF THE RUSSIAN FEDERATION (PART 2) (O. Kozyr, A. Makovsky, S. Khokhov eds., Moscow, 1996), *available at* KONSULTANT+, Russian legal database. "The receipt without legal grounds by one person (the acquirer) of property of another person (the victim), the clearest, although not the main category of instances of unjust enrichment, is put into the basis of the definition of the obligations [arising out of unjust enrichment]."(Exhibit "15").

[18]     TEXTBOOK ON CIVIL PROCEDURE, at 145 (M.K. Treushnikov ed., Moscow, 1996) (Exhibit "18"); Also, Art. 125 of the 2002 APC requires a plaintiff to cite to the substantive law provision which was violated in the complaint.

[19]     TEXTBOOK ON ARBITRAZH PROCEDURE, at 120 (M.K. Treushnikov ed., Moscow, 1995) (Exhibit "19").

[20]     The unwillingness of Russian judges to accept witness testimony, or to give it some weight, could to a certain degree be explained by the lack of a physical record of the proceedings. The *protocol* (minutes) of the hearing are not a stenographic record of

A - 853

the proceedings, but the written impressions of the judge or his assistant of what a witness said. Obviously, such written impressions are subjective reflections of the actual testimony. This subjectivity is not mended by allowing the parties to submit their comments on the *protocol* because parties then describe their own interpretation of a witness' statement. This problem is compounded by the fact that traditionally, the *protocol* is taken by the judge himself, who is then put in an awkward position of taking official notes which later become part of the record while asking questions of the witnesses.. Therefore, *protocols* are usually inadequate to reflect the actual record of the proceedings. The adoption of the new 2002 APC did not solve the problem as a practical matter.

[21]    G. Mylnikova, "From *Justitia* were confiscated her scales and was given a stick." *Parlamenstkaya Gazeta*, June 26, 2000. (Exhibit "20").

[22]    S. Pashin, "Kuda Duet "Nord –Ost" (Where Does Nord-Ost Blow), *Novoye Vremya*, February 2, 2003, No. 5 (2983). (Exhibit "21").

A - 854

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**BASE METAL TRADING SA et al**                    *Docket No. 00 Civ. 9627*

**Plaintiffs**

v.

**RUSSIAN ALUMINUM et al.**

**Defendants**

---

## ЭКСПЕРТНОЕ ЗАКЛЮЧЕНИЕ СЕРГЕЯ Б. ЗАЙЦЕВА

Я, Сергей Борисович Зайцев, в соответствии с положениями 28 U.S.C. §

1746, настоящим заявляю следующее:

### ПОСТАВЛЕННЫЕ ВОПРОСЫ

1. Адвокатами Истцов мне было предложено представить свое экспертное

заключение касательно следующих вопросов:

a. Каковы требования российского права для рассмотрения в судебном

порядке гражданского дела, в котором основанием для иска является

вред, причиненный экономическим отношениям в результате

коррумпированных судебных процедур?

b. Предусматривает ли российское процессуальное право обязательную

явку свидетелей, свидетельские показания, а также перекрестный

допрос свидетелей в арбитражных судах в теории или на практике?

c. Отличен ли риск коррумпированности судебных процедур в Москве

от регионов, например, Свердловской, Кемеровской и Тюменской

**A - 856**

областей, когда сторонами представлены влиятельные российские интересы?

## ВЫВОДЫ

2.  Мои выводы следующие:

a.  Необходимым условием наличия основания гражданского иска о возмещении вреда, причиненного в результате коррумпированности судебных процедур, является предварительная отмена состоявшихся судебных актов. Единственной процедурой для отмены судебного акта, основанного на коррумпированности судебного процесса, является пересмотр судебного акта по вновь открывшимся обстоятельствам в суде, который вынес такой акт. Для пересмотра судебного акта в соответствии с подобной процедурой требуется, чтобы арбитражные управляющие или судьи, совершившие преступные деяния, были осуждены в уголовном порядке.

b.  Несмотря на то, что российские процессуальные кодексы содержат положения, касающиеся обязательности явки свидетелей, дачи свидетельских показаний, а также опроса свидетелей, на практике это не используется, что отражено в заключении эксперта Ответчиков Сергея Занковского.

c.  Риск коррумпированности судебных процедур в Москве также велик, как и в других регионах, особенно если затронуты интересы влиятельных в России лиц.

2

A - 857

## КВАЛИФИКАЦИЯ

3.  Я являюсь гражданином Российской Федерации юристом и имею право на ведение юридической практики в России.

4.  Я являюсь судьей (в отставке), проработавшем в советских, и впоследствии, российских судах почти 20 лет.

5.  Я был судьей в Железнодорожном районном суде города Новосибирска с 1978 по 1985 гг.

6.  Я был судьей Новосибирского областного суда с 1985 по 1996 гг.

7.  Я был судьей Федерального Арбитражного Суда Московского округа с 1996 по 1997 гг., после чего покинул должность судьи и ушел в отставку.

8.  За время моего пребывания в должности судьи я участвовал в рассмотрении сотен дел.

9.  После ухода с должности судьи, я работал Начальником Правового Управления Государственного Таможенного Комитета Российской Федерации с 1997 по 2000 гг.

10. Работая в данной должности, я принимал участие в разработке Таможенного Кодекса Российской Федерации. Я покинул государственную службу в звании Генерала - Майора Таможенной Службы.

11. В настоящее время я занимаюсь частной практикой.

## ПРОСМОТРЕННЫЕ ДОКУМЕНТЫ

12.  При подготовке данного заключения, мною были изучены различные материалы по делу, включая:

a.  Второй Дополненный Иск;

3

b. Экспертное Заключение Профессора Итана Бергера (краткое содержание);

c. Экспертное Заключение Виктора Голубева;

d. Экспертное Заключение Марины Телюкиной;

e. Второе Экспертное Заключение Пола А. Стефана III (выдержки из заключения);

f. Второе Заявление эксперта Игоря Петрухина;

g. Второе Заявление эксперта Сергея Занковского.

## ДОПУЩЕНИЯ

13. Для целей настоящего заключения в соответствии с полученными инструкциями я делаю следующие допущения:

a. «Алюминиевые Истцы» понесли убытки вследствие того, что НКАЗ не заплатил денежные средства, которые должен был заплатить Алюминиевым Истцам, а также отказался от исполнения контрактов с Алюминиевыми Истцами в результате коррумпированных процедур банкротства НКАЗа посредством действий внешнего управляющего в ходе банкротства НКАЗа и судей. Коррупция в свою очередь была обусловлена действиями некоторых из Ответчиков.

b. Судебные акты, касающиеся дела о банкротстве НКАЗа, обладают законной силой; никто не был осужден за коррумпирование процедур банкротства НКАЗа.

c. Некоторые «Ванадиевые Истцы» понесли убытки в результате неуплаты ГОКом денежных средств, которые ГОК должен был им

4

A - 859

уплатить, а также отказа ГОКа от исполнения контрактов между ГОКом и Ванадиевыми Истцами в результате коррумпирования процедур банкротства ГОКа посредством действий внешнего управляющего в банкротстве ГОКа, а также судей. Коррупция в свою очередь была обусловлена действиями некоторых из Ответчиков.

d.  Судебные акты, касающиеся дела о банкротстве ГОКа, обладают законной силой; никто не был осужден за коррумпирование процедур банкротства ГОКа.

e.  Некоторые из «Истцов Дэвис» лишились прав на принадлежавшие им акции ГОКа, в результате коррумпирования «Судебного процессов акционеров ГОКа» и действий конкретных судей, которые, в свою очередь, были обусловлены влиянием некоторых из Ответчиков.

f.  Судебные акты, касающиеся «Судебных процессов акционеров ГОКа», обладают законной силой; никто не был осужден за коррумпирование "Судебных процессов акционеров ГОКа".

g.  Под коррупцией понимается злоупотребление судебной властью или административными функциями суда в нарушение уголовного закона, в ущерб законным правам и интересам лиц что представляет собой нарушение Конституции Российской Федерации, законов и подзаконных актов РФ.

5

A - 860

## ОБЩИЕ ПОЛОЖЕНИЯ РОССИЙСКОГО ПРАВА

14.  Россия является страной континентального права. Говоря в целом, источниками права являются Конституция России, кодексы и законы, принимаемые органами законодательной власти. Постановления судов не являются законами, а также не являются судебными прецедентами. Постановления, вынесенные Высшим Арбитражным Судом и Верховным Судом России обязательны для нижестоящих арбитражных судов и судов общей юрисдикции соответственно, а Конституционным Судом РФ -обязательны для всех судов.

15. Основные принципы гражданского права закреплены в Гражданском кодексе. Действующий Гражданский кодекс  Часть Первая была введена в действие 1 января 1995 года, Часть Вторая - 1 марта 1996 года, Часть Третья - 1 марта 2002 года.[1]

16. Вместе с принятием Гражданского кодекса российский законодатель ввел в действие несколько других кодексов, включая новый Арбитражный процессуальный кодекс, который был введен в действие в 2002 взамен Арбитражного процессуального кодекса 1995 г. (АПК 1995 и АПК 2002).[2] Уголовное законодательство представлено Уголовным кодексом, который был введен в действие в 1997.[3]

17. Толкование законодательства арбитражными судами, в основном, осуществляется с учетом разъяснений Высшего Арбитражного Суда («ВАС»). которые являются обязательными для нижестоящих судов.[4]

6

A - 861

18. Работы правоведов, которые, разумеется, не являются обязательными, играют важную роль в толковании законов. Данные труды обычно публикуются в форме статей или комментариев к законам.

19. Суды, о которых идет речь в данном заключении, - это арбитражные суды первой инстанции (суды по рассмотрению дел по существу), арбитражные суды апелляционной инстанции (суды апелляционной инстанции), арбитражные суды округов (суды кассационной инстанции) и Высший Арбитражный Суд.

### ЗАКЛЮЧЕНИЕ

**Вред, причиненный коррумпированностью судебного процесса, может быть возмещен только после успешного обжалования судебных актов в судах, подвергшихся коррупции, и после того, как будут осуждены причастные к коррупции лица**

20. Для того чтобы предъявить гражданский иск о возмещении вреда, причиненного вследствие коррумпированных судебных процедур (как будет рассмотрено ниже), Истцы должны доказать неправомерность деяний Ответчиков. Однако для того, чтобы установить неправомерность деяний Ответчиков, судебные акты, принятые в данных судебных процедурах и лежащие в основе деяний Ответчиков, должны быть сначала отменены. Как объясняется ниже, это может произойти только, если Истцы добьются судебного решения, отменяющего рассматриваемые Судебные Акты, в тех же судах, которые участвовали в рассматриваемых судебных процедурах. Это может произойти только, если предварительно будут осуждены лица, ответственные за имевшую место коррупцию.

21. Заявление в Высший Арбитражный Суд о принесении протеста, основанное на фактах коррумпированности судебных актах, не может быть удовлетворено, так

7

A - 862

как такое заявление должно основываться на доказательствах, уже имеющихся в

материалах гражданского дела, что требует от Истцов осуществления

вышеописанных действий.

**Обжалование судебных актов по вновь открывшимся обстоятельствам на основании фактов коррупции может быть осуществлено только в суде, в котором имела место коррупция, и только после осуждения лиц, причастных к коррупции**

22.    В соответствии с  российским законодательством, существует только один

способ, в соответствии с которым  судебный акт может быть пересмотрен на

основании фактов коррумпированности предшествовавших судебных процедур.

23. Статья 309 АПК 2002 «Право арбитражного суда пересмотреть судебный

акт по вновь открывшимся обстоятельствам» предусматривает следующее:

> Арбитражный суд может пересмотреть принятый им и вступивший в законную силу судебный акт по вновь открывшимся обстоятельствам по основаниям и в порядке, которые предусмотрены в настоящей главе.

24.    Согласно статье 311 АПК 2002 г., озаглавленной "Основания пересмотра

судебных актов по вновь открывшимся обстоятельствам", судебный акт может

быть пересмотрен на основании факта коррупции[5] только в следующих случаях:

> «Основаниями пересмотра судебных актов по вновь открывшимся обстоятельствам являются:
>
> 2) установленные вступившим в законную силу приговором суда фальсификация доказательства, заведомо ложное заключение эксперта, заведомо ложные показания свидетеля, заведомо неправильный перевод, повлекшие за собой принятие незаконного или необоснованного судебного акта по данному делу;
>
> 3) установленные вступившим в законную силу приговором суда преступные деяния лица, участвующего в деле, или его представителя либо преступные деяния судьи, совершенные при рассмотрении данного дела;»

8

25. Говоря вкратце, части 2 и 3 ст. 311 АПК 2002 требуют осуждения лица

(лиц) за совершение преступных коррумпированных деяний, до того, как может

быть удовлетворено заявление о пересмотре предшествующего судебного акта по

вновь открывшимся обстоятельствам. Если имеется факт осуждения, то, как это

четко предусмотрено ст. 310 АПК 2002, озаглавленной «Арбитражные суды,

пересматривающие судебные акты по вновь открывшимся обстоятельствам»,

заявление о пересмотре судебного акта должно быть подано в тот же самый суд,

который вынес первоначальное решение:

> Вступившие в законную силу решение, определение,
> принятые арбитражным судом первой инстанции,
> пересматриваются по вновь открывшимся обстоятельствам
> <u>судом, принявшим эти решение, определение</u>.

26. Более того, в соответствии со ст. 16 Федерального закона "О статусе судей

в Российской Федерации" (Приложение 22), уголовное дело в отношении судей

арбитражного суда может быть возбуждено только Генеральным Прокурором

Российской Федерации на основании решения коллегии судей состоящей из трех

судей Верховного суда и с согласия Высшей квалификационной коллегии судей

Российской Федерации, в компетенцию которой, помимо прочего, входит надзор за

деятельностью судей. Таким образом, уголовное производство и, тем более,

обвинительный приговор в отношении судей - явление крайне редкое.

27. В рассматриваемом случае не имело место осуждение физических лиц,

ответственных за коррупцию, и, таким образом, не может быть удовлетворено

заявление, поданное в порядке ст. 311.[6]

9

A - 864

**Соответствующие судебные акты не могут быть пересмотрены путем подачи
заявления о принесении протеста в Высший Арбитражный Суд
на основании факта коррупции**

28. Хотя российское право и признает такую форму пересмотра судебного акта

Высшим Арбитражным Судом (которая осуществляется по усмотрению суда),

известную как пересмотр в порядке надзора, заявление о принесении протеста

может быть удовлетворено только, если оно основано на обстоятельствах, уже

установленных в материалах гражданских дел. Таким образом, если (что имело

место в данном случае) сторона заявляет, что судебный процесс был

коррумпированным, а доказательства такой коррупции, включая обвинительный

приговор в отношении участвовавших в коррумпировании лиц, отсутствуют в

материалах соответствующих дел, то заявление о принесении протеста, поданное в

Высший Арбитражный Суд, не может быть удовлетворено.

29. Российское право предусматривает возможность непосредственного

обжалования судебных актов. Такое обжалование может осуществляться путем

подачи жалобы в суд апелляционной инстанции (ст. 257 АПК 2002) или суд

кассационной инстанции (ст. 273 АПК 2002), или, наконец, путем подачи заявления

о принесении протеста в Высший Арбитражный Суд на основании статьи 292 АПК

2002.[7]

30. Согласно части 2 статьи 292 АПК 2002 г. «Пересмотр судебных актов в

порядке надзора», судебный акт может быть отменен в следующих случаях:

> Лица, участвующие в деле, и иные лица в случаях,
> предусмотренных настоящим Кодексом, вправе оспорить в
> порядке надзора судебный акт, если полагают, что этим
> актом существенно нарушены их права и законные интересы
> в сфере предпринимательской и иной экономической
> деятельности в результате нарушения или неправильного

<u>применения арбитражным судом, принявшим оспариваемый судебный акт, норм материального права или норм процессуального права.</u>

31. Таким образом, в соответствии с ч. 2 ст. 292 заявление о принесении протеста может быть удовлетворено на основании тех вопросов, которые были предметом рассмотрения в нижестоящих судах.[8]

32. Применительно к данному делу, ч.2 ст. 292 означает, что требования Истцов, связанные с фактами коррупции, не могут быть предъявлены в Высший Арбитражный Суд, пока такие требования не будут вначале предъявлены в суды, которые вынесли соответствующие определения, что не может быть сделано в силу ст. 311 АПК 2002 до тех пор, пока лица, которые несут ответственность за коррупцию, не будут осуждены за совершенные преступления.

33. Как указано выше, рассмотрение Высшим Арбитражным Судом заявлений о принесении протеста происходит по усмотрению суда. Заявления удовлетворяются в крайне редких случаях. Например, в 2001г. было подано 16,867 заявлений о принесении протестов, и только 570 было принято к рассмотрению.[9]

34. Наконец, даже если бы Высший Арбитражный Суд и отменил какой-либо судебный акт, относящийся к делам о банкротстве НКАЗа или ГОКа, по иным основаниям, нежели фактам коррупции, Высший Арбитражный Суд направил бы данное дело на новое рассмотрение в тот же арбитражный суд соответствующей области, который первоначально рассматривал дело, <u>то есть</u>, в Арбитражный суд Кемеровской области или Арбитражный суд Свердловской области. См. п.2 ч.1 ст. 305 АПК 2002.[10]

11

**Глава 59 ГК РФ не предусматривают основания иска в связи с коррумпированием судебных процедур, до тех пор, пока судебные акты обладают законной силой**

35. Глава 59 Гражданского кодекса содержит общие положения российского права, предусматривающие различные основания иска, вытекающие из понятия деликт (гражданское правонарушение).

36. Статья 1064 главы 59 «Обязательства вследствие причинения вреда» предусматривает:

Общие основания ответственности за причинение вреда

1. Вред, причиненный личности или имуществу гражданина, а также вред, причиненный имуществу юридического лица, подлежит возмещению в полном объеме лицом, причинившим вред...
2. Лицо, причинившее вред, освобождается от возмещения вреда, если докажет, что вред причинен не по его вине...

37. Для того, чтобы предъявить иск в соответствии со ст. 1064, истец должен обосновать: (i) причинение вреда лицу или имуществу; (ii) вызванного действием; (iii) являющимся противоправным; (iv) вследствие вины лица, которое несет ответственность.[11] Как объясняется ниже, в российском праве отсутствует основание иска, который основывался бы на допущениях, сделанных мною в соответствии с данными мне инструкциями, и заявленных фактах, касающихся коррумпированных банкротств.

**В соответствии с законом требования в связи с незаконными действиями не могут быть предъявлены, пока соответствующие судебные акты обладают законной силой**

38. Во-первых (что является главным), вред, причиненный имуществу, должен быть причинен неправомерными деяниями. Данные деяния, однако, не могут быть

12

A - 867

признаны неправомерными, пока соответствующие судебные акты обладают

законной силой.

39. Часть 1 статьи 8 ГК РФ предусматривает:

> Гражданские права и обязанности возникают из оснований, предусмотренных законом и иными правовыми актами, а также из действий граждан и юридических лиц, которые хотя и не предусмотрены законом или такими актами, но в силу общих начал и смысла гражданского законодательства порождают гражданские права и обязанности. В соответствии с этим гражданские права и обязанности возникают: ...
>
> 2) из актов государственных органов и органов местного самоуправления, которые предусмотрены законом в качестве основания возникновения гражданских прав и обязанностей;
>
> 3) из судебного решения, установившего гражданские права и обязанности;...

40. Российские суды обязаны признавать вступившие в законную силу судебные акты на основании ч.1 ст. 16 АПК 2002, которая предусматривает следующее: «вступившие в законную силу судебные акты арбитражного суда являются обязательными для органов государственной власти, органов местного самоуправления, иных органов, организаций, должностных лиц и граждан и подлежат исполнению на всей территории Российской Федерации».

41. Следовательно, до тех пор, пока судебные акты, вынесенные при осуществлении коррумпированных судебных процедур в делах о банкротстве НКАЗа и ГОКа, обладают законной силой, рассматриваемые деяния не могут считаться неправомерными, так как отказы от исполнения договоров были

A - 868

осущетсвлены в рамках процедур банкротства, одобреных соответствующими

арбитражными судами.

42.   В силу указанных выше причин эти решения могут быть отменены в связи

с фактами коррупции только путем их пересмотра по вновь открывшимся

обстоятельствам в арбитражном суде, который вынес эти решения, и уже после

осуждения лиц, причастных к коррупции. Таким образом, в настоящее время

основание для иска в соответствии с Главой 59 у Истцов попросту отсутствует.

**Иск против государства также требует отмены соответствующих судебных**
**актов и вынесения приговора в порядке уголовного судопроизводства**

43.   Обычно при нарушении договора сторона, чьи интересы были нарушены,

предъявляет свои требования к другой стороне по договору на основании норм о

нарушении договорных обязательств. См. ст. 393 Гражданского кодекса («Должник

обязан возместить кредитору убытки, причиненные неисполнением или

ненадлежащим исполнением [контрактного] обязательства»).

44.   Мне не известно ни об одном постановлении Высшего Арбитражного Суда,

которое бы содержало такое толкование понятия причинно-следственной связи,

которое бы распространяло ее на требования к ответчикам о неправомерном

вмешательстве в договорные отношения путем коррумпирования судебных

процедур. Что же касается отказа от исполнения договоров, вызванных фактами

коррупции, то, вероятно, следует считать, что вред причинен действиями судов. В

данном случае государство будет обязано возместить вред.

45. Статья 1069 ГК РФ, в частности, предусматривает:

> Вред, причиненный гражданину или юридическому лицу в
> результате   незаконных   действий   (бездействия)

A - 869

государственных органов, органов местного самоуправления либо должностных лиц этих органов, в том числе в результате издания не соответствующего закону или иному правовому акту акта государственного органа или органа местного самоуправления, подлежит возмещению.

46. Для обоснования иска, предъявляемого в порядке ст. 1069, необходимо выполнение двух условий.

47. Во-первых, «условием возмещения вреда, причиненного актом власти, является обязательная предварительная его отмена или признание его недействительным».[12] Этого, разумеется, не может произойти до тех пор, пока соответствующие судебные акты не отменены, согласно ст. 311 АПК 2002, которая требует наличие факта осуждения в рамках уголовного судопроизводства.

48. Во-вторых, в отношении вреда, причиненного незаконными деяниями судов, ч.2 ст. 1070 Гражданского кодекса требует наличия осуждения судьи, причастного к коррупции, и предусматривает, что «вред, причиненный при осуществлении правосудия, возмещается в случае, если вина судьи установлена приговором суда, вступившим в законную силу». Таким образом, и в данном случае необходим факт осуждения.[13]

49. Учитывая, что предъявление требований к государству требует отмены соответствующих судебных актов судом, который вынес эти акты, на основании факта осуждения, любое из требований к Ответчикам потребует аналогичных действий как предусмотрено ст. 311 АПК 2002.

A - 870

**Глава 60 Гражданского Кодекса не предусматривает такого основания гражданского иска как коррумпирование судебных процедур, пока судебные акты обладают законной силой**

50. Глава 60 Гражданского кодекса предусматривает основания иска, в рамках которого можно требовать возврата имущества как следствие неосновательного обогащения.

51. Статья 1102, устанавливающая общие правила для данной Главы, предусматривает:

> 1. Лицо, которое без установленных законом, иными правовыми актами или сделкой оснований приобрело или сберегло имущество (приобретатель) за счет другого лица (потерпевшего), обязано возвратить последнему неосновательно приобретенное или сбереженное имущество (неосновательное обогащение), за исключением случаев, предусмотренных статьей 1109 настоящего Кодекса.

> 2. Правила, предусмотренные настоящей главой, применяются независимо от того, явилось неосновательное обогащение результатом поведения приобретателя имущества, самого потерпевшего, третьих лиц или произошло помимо их воли.

52. Для того, чтобы обосновать основание иска в соответствии со ст. 1102, истцу необходимо заявить, что (1) лицо (2) без установленных законом оснований (3) получило имущество другого лица или сберегло имущество за счет другого лица.

53. Как объясняется ниже, по российскому закону отсутствуют основания для предъявления иска из неосновательного обогащения в силу того, что соответствующие судебные акты все еще обладают законной силой.

54. Кроме того, российское право не признает основания для иска из неосновательного обогащения на основании того, что имел место отказ от исполнения договоров в процедурах банкротства НКАЗа и ГОКа, так как имущественные права Истцов не были переданы Ответчикам.

16

A - 871

**Неосновательное обогащение отсутствует, пока соответствующие судебные акты обладают законной силой**

55. Во-первых, (что является главным), для того, чтобы возникло неосновательное обогащение, должны отсутствовать правовые основания для приобретения (или сбережения) имущества.

56. Как отметил один из выдающихся ученых, «главным условием для установления обязательственного отношения из неосновательного обогащения является обогащение без законного основания при переходе ценности от одного лица к другому».[14]

57. Аналогичны утверждения и другого выдающегося ученого, а именно: «нужно, чтобы приобретение (сбережение) имущества одним лицом за счет другого произошло при отсутствии к тому достаточных оснований, предусмотренных законом или сделкой».[15]

58. Высший Арбитражный Суд Российской Федерации также обращал внимание на то, что «для того, чтобы констатировать неосновательное обогащение, необходимо отсутствие у лица оснований (юридических фактов), дающих ему право на получение имущества. Данными основаниями могут являться договоры, сделки и иные основания возникновения прав и обязанностей, предусмотренные статьей 8 Гражданского кодекса».[16]

59. Согласно п. 1 ст. 8 Гражданского кодекса, судебное решение представляет собой правовое основание для приобретения имущества. К тому же, как объяснялось выше, в соответствии с п.1 ст. 16 АПК 2002, для судов вступившие в законную силу судебные акты являются обязательными.

A - 872

60. Таким образом, согласно закону, не может быть неосновательного

обогащения, если рассматриваемые судебные акты, закрепившие отказ от

исполнения договоров, все еще обладают законной силой.

**Оснований для иска о неосновательном обогащении, связанного с отказом от
исполнения договоров, не имеется, так как Ответчики не являлись
приобретателями имущества потерпевших**

61. Для возникновения ответственности на основании ст. 1102 необходимо,

чтобы Ответчики получили имущество потерпевшего (или сберегли имущество) за

счет потерпевшего. <u>См.</u> ч.1 Ст. 1102.[17] Что касается Истцов, торговавших с

НКАЗом и ГОКом, которым был причинен вред коррумпированными

банкротствами, то Ответчиками не было приобретено имущество потерпевших-

Истцов (или сбережено их имущество за счет потерпевших-Истцов).

62. Напротив, хотя этим Истцам был явно причинен ущерб

коррумпированными банкротствами, доходы, которые были получены некоторыми

Ответчиками, отличались от имущественных прав, которых лишились Истцы в

результате отказа от исполнения их договоров. Доходы были получены

посредством заключения новых договоров с НКАЗом и ГОКом, а не

непосредственно вследствие отказа от исполнения договоров с потерпевшими -

Истцами.

63. Данный вывод подтверждается анализом статьи 1106, которая регулирует

последствия незаконной передачи имущественных прав и предусматривает:

> Лицо, передавшее путем уступки требования или иным
> образом принадлежащее ему право другому лицу на
> основании несуществующего или недействительного
> обязательства, вправе требовать восстановления прежнего
> положения, в том числе возвращения ему документов,
> удостоверяющих переданное право.

A - 873

64. Это могло иметь место при уступке имущественных прав, например, если бы подпись потерпевшего была подделана при передаче прав, или передача прав были осуществлена неуполномоченным лицом.

65. Однако, как указано выше, передача прав не осуществлялась; наоборот, имел место отказ от исполнения договоров Истцов с НКАЗом и ГОКом, взамен которых были заключены новые контракты.

66. Что касается Истцов-Акционеров ГОКа, то поскольку некоторыми Ответчиками были получены акции ГОКа, данное положение закона с очевидностью может быть применимо к тем Ответчикам, которыми были получены акции, то есть Нью Старт Груп Корп., Венитом Корп., Юнидейл, ЛЛСи и Инвестленд ЛЛСи.

### Российское Право Не Предусматривает Самостоятельного Основания Иска из Обмана

67. Российское право не знает самостоятельного основания гражданского иска в связи с обманом.

68. Русское слово «обман» используется в Гражданском Кодексе (статья 179 (Недействительность сделки, совершенной под влиянием обмана), 812 (оспаривание договора займа), 951 (признание недействительным договора страхования, заключенного вследствие обмана), 1062 (возмещение убытков в связи с принятием участия в играх или пари под влиянием обмана).

69. В Уголовном кодексе русское слово «обман» (статьи 141, 150, 200, 339), словосочетание «путем обмана» (статьи 159, 165, 240) и словосочетания «обманным использованием» (Статья 188) использованы во многих положениях.

A - 874

70.  Несмотря на то, что понятием обман оперирует  и Гражданский кодекс, и

Уголовный кодекс, Гражданский кодекс не знает специального основания для иска,

вытекающего из обмана; точнее будет заметить, что требования вследствие

гражданского правонарушения (деликта) регулируются в целом Главами 59 и 60

Гражданского кодекса.

71. В силу отсутствия закрепления в законе самостоятельного основания для

иска из обмана, истец не может предъявить иск на основании российского права:

> [для  того],  чтобы  его  [истца]  требование     было
> удовлетворено, надо это требование основывать не только
> на фактах, но и на соответствующей норме [материального]
> права. Можно защищать только то требование, которое
> основано на законе ....[18]

72. Иными словами:

> Закон  требует  от  истца,  чтоб  он  указал  спорное
> правоотношение,     сделал  ссылку  на  закон  и  иные
> нормативные  акты,  на  ту  норму  права,  которая,  по  его
> мнению,  нарушена  ответчиком.  Это  и  будет  являться
> правовым основанием иска.[19]

73. В силу того, что Гражданский кодекс не предусматривает самостоятельного

основания иска по факту обмана, Истцы не могли бы предъявить требование на

основании утверждений об имевшей место коррупции, кроме как в рамках,

предусмотренных Главами  59 и 60 Гражданского кодекса, рассмотренных выше.

**На практике российские суды не используют показания свидетелей
или перекрестный допрос по делам об экономических спорах**

74.  Арбитражные Суды создавались для разрешения экономических споров,

которые, как правило, основаны на письменных доказательствах.  Обычно

доказательства предоставляются в виде письменных или вещественных

доказательств.

A - 875

75. Ст. 64 АПК 2002 предусматривает, что допустимыми доказательствами являются «...письменные и вещественные доказательства, объяснения лиц, участвующих в деле, заключения экспертов, показания свидетелей, аудио- и видеозаписи, иные документы и материалы».

76. Ст. 88 АПК 2002, среди прочего, предусматривает, что арбитражный суд по ходатайству лица, участвующего в деле, может вызвать свидетеля в суд для участия в арбитражном процессе.

77. Ст. 56 АПК 2002, среди прочего, предусматривает, что свидетель сообщает арбитражному суду сведения [в письменной или устной форме] по существу рассматриваемого дела, которые известны ему лично и которые имеют значение для рассмотрения дела.

78. Следовательно, теоретически арбитражные суды могут оценивать свидетельские показания, исходя из положений закона.

79. Однако за все время работы судьей в арбитражном суде, мне не известно ни об одном деле, в котором бы арбитражные суды использовали показания свидетелей в качестве доказательственной базы при вынесении решения.[20] Мне также неизвестно ни об одном деле, в котором бы суд принудил свидетеля давать показания.

80. Эксперт Ответчиков, Профессор Занковский утверждает, что «в самом деле, у российских арбитражных судов нет полномочий вызывать свидетелей, ни по своей инициативе, ни по ходатайству сторон». Второе Заявление Занковского, ¶77.

81. Эксперт Ответчиков Занковский также утверждает, что «по российскому законодательству, в принципе, не предусмотрено перекрестного опроса свидетелей,

A - 876

как судебной процедуры, предназначенной для определения, являются ли достоверными представленными доказательства». Второе Заявление Занковского, ¶77.

82.  Это в целом соответствует действительности, потому что свидетельские показания вообще редко используются в арбитражных судах.

83.  Однако, что же касается отказа судьи арбитражного суда дать сторонам возможность представить возражения на доводы других лиц, участвующих в деле, что, как заявляется в Исковом Заявлении Истцов, имело место в деле о банкротстве НКАЗа в судебном заседании 17 февраля 2000 г., когда С. Чернышев давал показания о том, что некоторые из запросов о предоставлении документов не были исполнены, я считаю поразительным, что арбитражный суд не разрешил противным сторонам опровергнуть его заявления. Такие действия явно нарушают ст. 33 АПК 1995, которая предоставляет лицам, участвующим в деле, помимо прочего, «задавать вопросы» и «возражать против ... доводов других лиц, участвующих в деле».

84. Я бы также хотел отметить, что в российских судах отсутствует процедура допроса свидетелей вне рамок судебного заседания, аналогичная той, которая, как мне было пояснено, существует в американской системе правосудия. Кроме того, получение документов от другой стороны при рассмотрении спора в арбитражном суде довольно затруднительно. Согласно ч. 2 п. 4 статьи 66 АПК 2002, в ходатайстве об истребовании документов «должно быть обозначено доказательство, указано, какие обстоятельства, имеющие значение для дела, могут быть установлены этим доказательством, указаны причины, препятствующие получению доказательства, и место его нахождения».

A - 877

85. Наконец, несмотря на то, что данные требования действительно могут быть предъявлены в суды общей юрисдикции при условии наличия оснований для предъявления иска к физическим лицам, отсутствуют какие-либо причины полагать, что эти суды будут использовать свидетельские показания при рассмотрении экономического спора в большей степени, нежели арбитражные суды.

**Риск коррумпированности судебных процедур в Москве также велик, как и в других регионах, особенно если затронуты интересы влиятельных в России лиц.**

86. Основываясь на моем двадцатилетнем опыте работы судьей и знании советской и российской судебных систем, я абсолютно согласен с выводами экспертов Бергера, Голубева и Телюкиной относительно проблем коррупции в российской судебной системе, включая возможность групп, представляющих влиятельные интересы, воздействовать на принятие судебных решений по определенным делам.

87. Данная проблема существует не только в судах первой инстанции, но также и в судах апелляционной и кассационной инстанций. Данная проблема не ограничена Кемеровской, Свердловской или Тюменской областями, в которых велись судебные процессы по делам с участием Истцов. Коррупция существует и в судах, расположенных в других частях России, включая Москву.

88. У данной проблемы два корня: (1) влияние на суды через федеральный центр, местную администрацию и председателя суда: а также (2) как ни прискорбно, взятки и угрозы насилием.

89. Проблема коррупции, включая Москву, особенно серьезна, когда затронуты влиятельные интересы. Бывший судья Московского Городского суда профессор В.

Миронов, отметил, что «Наш суд не зависим... от ... законов. Главный критерий принятия решения [когда затронуты влиятельные интересы] – руководство к действию председателей судов. Самый лучший судья – несамостоятельный судья. Горе тому, кто ослушается установки и проявит объективность».[21]

90. Не далее как две недели назад бывший московский судья Сергей Пашин отметил, что «согласно данным обстоятельного исследования коррупции, проведенного фондом ИНДЕМ, российские судьи ежегодно получают от населения взятки на общую сумму 274.5 млн. долларов США».[22]

91. Когда я был судьей Федерального арбитражного Суда Московского Округа, который является кассационной инстанцией по пересмотру решений арбитражного суда г. Москвы и арбитражного суда Московской области, мне стало известно о попытках воздействия при вынесении решений.

92. В одном из случаев Председатель суда дал указания судье разрешить спор в нарушение норм закона в пользу частного предприятия, которое оказало некоторые коммерческие услуги суду.

93. Я также регулярно обсуждаю вопрос влияния на судебный процесс с моими бывшими коллегами, прокурорами и адвокатами. Они подтверждают, что случаи оказания влияния на вынесение судебного решения в московских судах на различных уровнях, включая кассационную инстанцию, имеют место ежедневно. Они также подтверждают, что взяточничество является одним из путей такого воздействия.

94. Например, мне стало известно об одном деле, в котором судья получил взятку, по существу, прямо в присутствии прокурора.

A - 879

95. Основываясь на моем опыте и личных знаниях, а также изучении множества оценок и заявлений о коррупции, я прихожу к выводу о том, что проблема коррупции в системе арбитражных судов и судов общей юрисдикции очень насущна, в том числе и в Москве.

96. В результате Истцы не могут рассчитывать на справедливое и беспристрастное рассмотрение их требований в России, независимо от того, предъявят ли они требование в Москве, Кемеровской, Свердловской или иных областях, а также независимо от уровня судов, то есть, суд ли это первой, апелляционной или кассационной инстанции.

25

A - 880

Я составил настоящее Заявление за пределами Соединенных Штатов

Америки и заявляю под угрозой ответственности за дачу ложных показаний, в

соответствии с законами Соединенных Штатов, что вышеизложенное является

верным, насколько я знаю и верю.

Дата: *19 февраля 2005.*

[1]      Соответствующие положения Гражданского кодекса приведены в качестве приложений к настоящему заключению как приложения 1.

[2]      Соответствующие положения АПК 1995 и АРС 2002 приведены в качестве приложений к настоящему заявлению как приложения 2 и 3.

[3]      Соответствующие положения Уголовного кодекса приведены в качестве приложений к настоящему заключению как приложения 4.

[4]      П. 2 ст. 13 Федерального Конституционного Закона «Об арбитражных судах Российской Федерации» №1-ФКЗ от 28 апреля 1995 г. («Закон об АС») приведена в качестве приложения к настоящему заключению как приложение. Также см. постановление Верховного суда Российской Федерации от 24 апреля 2000 г. № ГКПИ 00-368, приведенное в качестве приложения к настоящему заключению как приложение 6.

[5]      Согласно Уголовному Кодексу Российской Федерации противоправным является получение и дача взятки (статьи 290, 291), вмешательство в осуществление правосудия (статья 294), фальсификация доказательств (статья 303) и вынесение заведомо неправосудного приговора, решения или иного судебного акта (статья 305).

[6]      См. Комментарий к Арбитражному Процессуальному Кодексу Российской Федерации, стр. 790 (под редакцией Г. Жилина, Москва 2003). ("Основанием для пересмотра [судебного акта по вновь открывшимся обстоятельствам] является установленный вступившим в законную силу приговором факт совершения преступления соответствующим участником процесса при рассмотрении данного дела. При этом между совершенным преступлением и конкретным делом, рассматриваемым арбитражным судом, должна существовать связь. Например, ... дача взятки судье для вынесения по делу желаемого решения и т.д. Как и в случаях, предусмотренных п. 2 ст. 311 АПК [2002 г.], факт совершения преступления должен быть установлен приговором суда ... вступившим в законную силу."

[7]      В результате недавнего введения в действие АПК 2002 г., заявления о принесении протеста могут быть поданы в Высший Арбитражный Суд в отношении решений, вынесенных до 31 декабря 2002 г. Заявления о принесении протеста на решения, вынесенные после 31 декабря 2002 г., могут быть поданы только в течение трех месяцев с момент предшествующего обжалования решения. См. Федеральный Закон «О введении в действие Арбитражного Процессуального Кодекса Российской Федерации» № 96-ФЗ от 24 июля 2002 г., статьи 8, 9 (Приложение 8), также см. п. 3 статьи 292 АПК 2002 г.

[8]      См. «Арбитражный Процесс», учебник, стр. 349 (под редакцией В. Яковлева, Москва, 2002г.) (Высший Арбитражный Суд России «не обладает полномочиями самостоятельно устанавливать фактические обстоятельства, основываясь на собранных доказательствах, так же как и собирать и оценивать новые доказательства») (Приложение 9). Также см. В.М. Шерстюк, «Арбитражный процесс в вопросах и ответах. Комментарии, рекомендации, предложения по применению Арбитражного Процессуального Кодекса Российской Федерации», стр. 97 (второе издание, Москва, 2001 г.) («[Высший Арбитражный Суд России] не вправе самостоятельно устанавливать имеющие значения для дела обстоятельства на основе собранных доказательств и не может дополнительно собирать новые доказательства».) (Приложение 10).

[9]      См. "Результаты работы арбитражных судов Российской Федерации в 1992-2001 годах" Отчет размещенный на официальной Интернет странице Высшего Арбитражного Суда России по адресу http://www.arbitr.ru/news/totals/10anniversary/details.htm (Приложение 11).

[10]      См. Комментарий к Арбитражному Процессуальному Кодексу Российской Федерации, стр. 777 (под редакцией Г. Жилина, Москва, 2003 г.) ("Если по результатам проверки оспариваемого судебного акта обнаружится его незаконность, требующая проведения дополнительного собирания доказательств либо их исследования [...], оспариваемый судебный акт подлежит отмене полностью или в части, а также изменению с передачей дела на новое рассмотрение в тот арбитражный суд, судебный акт которого был отменен или изменен. При отмене судебных актов нескольких судебных инстанций дело направляется на новое рассмотрение в первую из них.") (Приложение 7).

[11]      См. О. Н. Садиков, Комментарий к Гражданскому Кодексу, стр.665 (Москва 1999) ("Для наступления деликтной ответственности необходимо наличие состав правонарушения, включающего: a) наступление вреда; b) противоправность поведения причинителя вреда; c)

27

причинную связь между двумя первыми элементами: и d) вину причинителя вреда") (Приложение 12); также см. М.И. Брагинский, Комментарий к Гражданскому Кодексу, предоставленный GARANT, российской правовой системой ("Для возникновения обязательства по возмещению вреда одного факта причинения вреда недостаточно. Статья 1064 ГК содержит общие условия (основания), которые в совокупности с фактом причинения вреда порождают обязательство по его возмещению. Условия эти следующие: противоправность действия (бездействия), причинная связь между действием (бездействием) и наступившим результатом ( причинение вреда) и вина причинителя.") (Приложение13).

[12] См. 3 Учебник по Гражданскому Праву, стр. 24 (под ред. А. Сергеева и Ю. Толстого. Москва, 2001) (Приложение 14).

[13] Эксперт ответчиков, И.Л. Петрухин, делает ссылку на Постановление Конституционного суда от 25 января 2001г., в котором обсуждается проблема ответственности государственных органов за вред причиненный незаконными действиями суда в соответствии с п. 2 ст. 1070 Гражданского кодекса. см. Заявление И.Л. Петрухина ¶30. Указанное Постановление подтверждает, что для подачи иска в связи с вынесением судьей коррумпированного решения по существу, необходимым условием является осуждение судьи в порядке уголовного судопроизводства, предшествовавшее принесению иска. В качестве единственного исключения из общего правила, в соответствии с которым требуется осуждение в уголовном порядке, указанное Поставновление выделяет группу "процессуальных нарушений". Речь идет о об ограниченном числе случаев, когда вред вызван тем, что имели место "... незаконное наложение судом ареста на имущество, нарушение разумных сроков судебного разбирательства, несвоевременное вручение лицу процессуальных документов, приведшее к пропуску сроков обжалования, неправомерная задержка исполнения." Однако даже это исключение в качестве необходимого выдвигает требование установления вины судьи в судебном решении. В соответствии с требованием указанного Постановления, Конституционный суд постановил, что законодателю надлежит урегулировать этот вопрос, так как на настоящий момент российское законодательство не содержит указания на то, какого рода должно быть требуемое судебное решение. На настоящий момент законодатель не урегулировал этот вопрос. С очевидностью можно сказать, что это исключение, характер которого ограничен, не применимо к коррумпированным банкротствам НКАЗа и ГОКа, в которых судебными актами, среди прочего, были утверждены фиктивные мировые соглашения, разрешившие вопросы банкротства по существу. В то же время отсутствовали какие-либо решения, устанавливающие вину судей. Более того, следует обратить внимание на то, что иск в порядке п. 2 ст. 1070 следовало бы приности в арбитражный суд, принявший незаконный судебный акт.

14     А. Маковский, Обязательства вследствие неосновательного обогащения. Комментарий к Гражданскому Кодексу российской Федерации (Часть 2) (под ред. О. Козыря, А. Маковского, С.Хохлова, Москва, 1996), источник: КОНСУЛЬТАНТ +, Российская правовая база, со ссылкой на Г. Шершеневича, Учебник русского гражданского права, стр. 668-669 (изд. 10, Москва, 1912). (Приложение 15).

15     А. Маковский, Обязательства вследствие неосновательного обогащения. Комментарий к гражданскому кодексу российской федерации (часть 2) (под ред. О. Козыря, А.Маковского, С. Хохлова, Москва, 1996), источник: Консультант+, Российская правовая база, со ссылкой на О. Иоффе, обязательственное право, стр. 857-858 (Москва, 1975).(Приложение 15).

16     См. Постановление Президиума Высшего Арбитражного Суда Российской Федерации №9261/00 от 3 июля 2001 (которым оставлено в силе решение арбитражного суда об отказе в удовлетворении исковых требований о взыскании суммы неосновательного обогащения вследствие того, что «для того, чтобы констатировать неосновательное обогащение, необходимо отсутствие у лица оснований (юридических фактов), дающих ему право на получение имущества») (Приложение 16). См. также Постановление Президиума Высшего Арбитражного Суда Российской Федерации от 23 августа 2000 № 7826/99 (отменяющее решение арбитражного суда, признавшего факт неосновательного обогащения, на том основании, что алюминиевый дом был получен ответчиком на основании договора и ответчик использовал его в соответствии с договором). (Приложение 17).

17     См. А. Маковский, Обязательства вследствие неосновательного обогащения. Комментарий к Гражданскому Кодексу российской Федерации (Часть 2) (под ред. О. Козыря, А. Маковского, С.Хохлова, Москва, 1996), источник: КОНСУЛЬТАНТ +, российская правовая база: «В основу

определения обязательств [из неосновательного обогащения] положена наиболее понятная, хотя и не главная категория случаев неосновательного обогащения – получение одним лицом (приобретателем) без законных оснований имущества другого лица (потерпевшего)» (Приложение 15).

18      Учебник по гражданскому процессу, стр. 145 (под ред. М.К.Треушникова, Москва, 1996) (Приложение 18); Ст. 125 АПК 2002 также требует от истца указывать в исковом заявлении нормы материального права, которые были нарушены.

19      Учебник по арбитражному процессу, стр. 120 (под ред. М.К. Треушникова, Москва, 1995) (Приложение 19)

20      Данное нежелание российских судей использовать свидетельские показания или придавать им какое-либо значение в определенной мере объясняется тем, что фактически ход процесса не фиксируется. Протокол судебного заседания не является стенографической записью, и представляет собой письменное отражение понимания судьи или его помощника того, о чем сказал свидетель. Очевидно, что такое письменное фиксирование является субъективным отражением действительных показаний. Такая субъективность не может быть исправлена и тем, что стороны могут приносить замечания на протокол, потому что стороны по-своему интерпретируют показания свидетеля. Данная проблема осложняется еще и тем фактом, что традиционно протокол ведется самим судьей, что создает затруднения при составлении официальных записей, которые затем станут частью материалов дела, во время допроса свидетеля при даче свидетельских показаний. Таким образом, протоколы обычно являются неадекватным отражением фактического хода дела. Принятие нового АПК 2002 г. на практике не решило данную проблему.

21      Г. Мыльникова, "У Фемиды конфисковали весы, а взамен выдали дубинку." Парламентская Газета, 26 июня 2000 г., Приложение 20

22      С. Пашин, "Куда дует Норд-Ост", Новое Время, 2 февраля 2003 г., № 5(2983). (Приложение 21).

A - 884