## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------x
DAVIS INTERNATIONAL, LLC, HOLDEX,        :
LLC, FOSTON MANAGEMENT, LTD, and         :
OMNI TRUSTHOUSE, LTD,                     :
                                          :
                    Plaintiffs,           :
                                          :        Case No. 04-1482-GMS
            v.                            :
                                          :
NEW START GROUP CORP., VENITOM           :
CORP., PAN-AMERICAN CORP., MDM           :
BANK, URAL-GORNO METALURAGICAL           :
COMPANY, EVRAZ HOLDING, MIKHAIL          :
CHERNOI, OLEG DERIPASKA, ARNOLD          :
KISLIN, MIKHAIL NEKRICH, and             :
ISKANDER MAKMUDOV,                        :
                                          :
                    Defendants.           :
-------------------------------------------------------------x
```

# APPENDIX TO DEFENDANTS'
# OPENING BRIEFS IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

## Volume 6 of 13

Attorneys for Defendant Arnold Kislin:

Charles M. Oberly, III (DSBA No. 743)    Lisa C. Cohen
Karen V. Sullivan (DSBA No. 3872)        Schindler Cohen & Hochman LLP
Oberly, Jennings & Rhodunda, P.A.        100 Wall Street
800 Delaware Avenue, Suite 901           15th Floor
PO Box 2054                              New York, NY  10005
Wilmington, DE 19899                     (212) 277-6300
(302) 576-2000

                                         Lawrence S. Goldman
                                         Elizabeth Johnson
                                         The Law Offices of Lawrence S. Goldman
                                         500 Fifth Ave., 29th Floor
                                         New York NY 10110-2900
                                         (212) 997-7499

Attorneys for Defendants New Start Group
Corp. and Venitom Group:

| | |
|---|---|
| Charles M. Oberly, III (DSBA No. 743) | Richard J. Schaeffer |
| Karen V. Sullivan (DSBA No. 3872) | Peter J. Venaglia |
| Oberly, Jennings & Rhodunda, P.A. | Laura D. Sullivan |
| 800 Delaware Avenue, Suite 901 | Dornbush, Schaeffer, Strongin & |
| PO Box 2054 | Weinstein, LLP |
| Wilmington, DE 19899 | 747 Third Avenue, 11th Floor |
| (302) 576-2000 | New York, NY 10017 |
| | (212) 759-3300 |

Attorneys for Defendant Oleg Deripaska:

| | |
|---|---|
| Collins J. Seitz, Jr.(DSBA No. 2237) | Rodney F. Page |
| Kevin F. Brady (DSBA No. 2248) | Michael G. Biggers |
| Connolly Bove Lodge & Hutz LLP | Bryan Cave LLP |
| 1007 North Orange Street | 700 13th Street, N.W. |
| P.O. Box 2207 | Washington, D.C. 20005-3960 |
| Wilmington, DE 19899 | (202) 508-6002 |
| (302) 658-9141 | |

Attorneys for Defendant Evraz Holding:

| | |
|---|---|
| William M. Lafferty (DSBA No. 2755) | David H. Herrington |
| Morris, Nichols, Arsht & Tunnell | Vitali Rosenfeld |
| Chase Manhattan Centre, 18th Floor | Cleary Gottlieb Steen & Hamilton LLP |
| 1201 North Market Street | One Liberty Plaza |
| P.O. Box 1347 | New York New York 10006 |
| Wilmington, DE 19899-1347 | (212) 225-2266 |
| (302) 575-7341 | |

Attorneys for Defendant MDM Bank:

| | |
|---|---|
| Stephen E. Jenkins (DSBA No. 2152) | Joel B. Kleinman |
| Richard I.G. Jones, Jr. (DSBA No. 3301) | Steven J. Roman |
| Ashby & Geddes | David H. Greenberg |
| 222 Delaware Avenue, 17th Floor | Dickstein Shapiro Morin & Oshinsky LLP |
| P.O. Box 1150 | 2101 L Street NW |
| Wilmington, Delaware 19899 | Washington, DC 20037-1526 |
| (302) 654-1888 | (202) 785-9700 |

Attorneys for Defendant Ural-Gorno
Metallurgical Company:

Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

William H. Devaney
Heard & O'Toole LLP
405 Lexington Ave, Floor 62
New York, NY 10174
(212) 307-5500

Attorneys for Defendant Iskander
Makmudov:

Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

William H. Devaney
Heard & O'Toole LLP
405 Lexington Ave, Floor 62
New York, NY 10174
(212) 307-5500

Attorneys for Defendant Mikhail Chernoi:

Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

Brian Maas
Cameron Myler
Frankfurt Kurnit Klein & Selz PC
488 Madison Avenue, 9th Floor
New York, NY 10022
(212) 980-0120

Attorneys for Defendant Mikhail Nekrich:

Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

Paul R. Grand
Edward M. Spiro
Morvillo, Abramowitz, Grand, Iason &
Silberberg, P.C.
565 Fifth Avenue
New York, NY 10017
(212) 880-9510

## Table of Contents

| **DOCUMENT** | **PAGE** |
|---|---|
| **VOLUME 1 OF 13:** | |
| Complaint | A-1 |
| *Base Metal Trading v. Russian Alum.*, 253 F. Supp. 2d 681 (S.D.N.Y. 2003) ("*Base Metal Trading*") | A-31 |
| Transcript of Oral Argument before Hon. John G. Koeltl, dated February 10, 2003, in *Base Metal Trading* | A-64 |
| **VOLUME 2 OF 13:** | |
| First Amended Complaint, dated August 3, 2001, filed in *Base Metal Trading* | A-176 |
| **VOLUME 3 OF 13:** | |
| Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss the Amended Complaint, dated September 15, 2002, filed in *Base Metal Trading* | A-295 |
| **VOLUME 4 OF 13:** | |
| Resume of Paul B. Stephan | A-465 |
| List of Paul B. Stephan's "Participation in U.S. Lawsuits" | A-476 |
| Declaration of Paul B. Stephan, dated January 28, 2002, filed in *Base Metal Trading* | A-479 |
| Reply Declaration of Paul B. Stephan, dated October 17, 2002, filed in *Base Metal Trading* | A-514 |
| Complaint filed in *Norex Petroleum Ltd. v. Access Indus.* (LTS) (S.D.N.Y.) | A-535 |
| *Norex Petroleum Ltd. v. Access Indus.*, 304 F. Supp. 2d 570 (S.D.N.Y. 2004) | A-607 |
| Judge Koeltl's written request for submissions prior to oral argument, dated January 29, 2003 | A-622 |
| Defendants' response to Judge Koeltl's Jan. 29th request ("Defendants' Oral Argument Submissions") | A-624 |
| Chronology of GOK-related Russian court decisions | A-625 |
| Map – location of courts | A-651 |
| Chart of Russian Court Decisions | A-652 |

| | |
|---|---|
| **VOLUME 5 OF 13:** | |
| Plaintiffs' response to Judge Koeltl's Jan. 29th request ("Plaintiffs' Oral Argument Submissions") | A-653 |
|    GOK Bankruptcy Litigation Chart | A-654 |
|    Shareholder Litigation Chart | A-660 |
|    Chart – Kozitsin and Kozyrev "Wrongful Conduct" | A-668 |
|    Chart – "Direct Evidence of Corruption" | A-677 |
|    Sergei Zankovsky: Theory and Practice of Bankruptcy | A-684 |
| Defendants' post-oral argument submissions in *Base Metal Trading*, dated February 20, 2003 | A-687 |
|    Letter from Winston & Strawn, dated February 20, 2003 | A-688 |
|    Letter from Hogan & Hartson, dated February 20, 2003 | A-690 |
|    Letter from Dornbush Mensch Mandelstam & Schaeffer, dated February 20, 2003 | A-695 |
|    Defendants' Summary of Contracts | A-698 |
|    Supplemental Declaration of Paul B. Stephan, dated Feb. 19, 2003 | A-705 |
|    Third Declaration of Igor Petrukhin, dated Feb. 20, 2003 | A-713 |
| Plaintiffs' post-oral argument submissions in *Base Metal Trading*, dated February 20, 2003 | A-744 |
|    Letter from Strook Stroock & Lavan, dated February 20, 2003 (with exhibits) | A-745 |
|    Second Declaration and Exhibits of Joseph Traum, dated February 19, 2003 | A-782 |
|    Expert Report of Sergei B. Zaitsev, dated February 19, 2003 (without exhibits) | A-828 |
| **VOLUME 6 OF 13:** | |
| Defendants' post-oral argument submissions in *Base Metal Trading*, dated February 25, 2003 | A-885 |
|    Letter from Winston & Strawn, dated February 25, 2003 (with exhibits) | A-886 |
|    Supplemental Declaration of Paul B. Stephan, dated February 25, 2003 | A-933 |
| Plaintiffs' post-oral argument submissions in *Base Metal Trading*, dated February 25, 2003 | A-941 |

| | |
|---|---|
| Letter from Strook Stroock & Lavan, dated February 25, 2003 (with exhibits) | A-942 |
| Letter from Herrick Feinstein, dated February 25, 2003 | A-986 |
| Second Declaration of Victor Golubev, dated February 25, 2003 (without exhibits) | A-989 |
| Second Declaration of Sergei B. Zaitsev, dated February 25, 2003 (without exhibits) | A-1027 |
| **VOLUME 7 OF 13:** | |
| March 30, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1075 |
| August 22, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1080 |
| April 19, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1092 |
| Application to the Arbitrazh Court for the Sverdlovsk Oblast dated March 24, 2000 filed by Krasnouralskmezhraygaz ("Kras Gas") | A-1112 |
| January 24, 1997 contract between GOK and Kras Gas | A-1130 |
| Letter dated February 4, 2000 from Kras Gas to GOK | A-1146 |
| Letter dated February 15, 2000 from Kras Gas to GOK | A-1157 |
| Letter dated February 8, 2000 from GOK to Kras Gas | A-1170 |
| Letter dated February 21, 2000 from GOK to Kras Gas | A-1175 |
| Federal Service's recommendation to appoint Kozyrev as Interim Trustee | A-1180 |
| Instruction of the Government of the Russian Federation from July 10, 1999 (No. 1100-R) | A-1187 |
| Audit Report and list of GOK's creditors as of March 24, 2000 | A-1191 |
| Minutes of the first GOK creditors' meeting held on August 11, 2000 | A-1245 |
| August 2, 2000 decision of the Izmailovo Inter-Municipal Court of Moscow | A-1266 |
| November 30, 2000 decision of the Moscow City Court | A-1269 |
| **VOLUME 8 OF 13:** | |
| Nexis' appellate complaint | A-1276 |
| January 15, 2001 determination of the Appellate Instance of the Arbitrazh Court for the Sverdlovsk Oblast | A-1306 |
| Nexis' cassation complaint | A-1311 |
| June 7, 2001 decision of the Federal Arbitrazh Court for the Urals Circuit | A-1318 |

| | |
|---|---|
| Minutes of the March 11, 2001 creditors' meeting | A-1323 |
| June 27, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1357 |
| August 21, 2001 decision of the Federal Arbitrazh Court for the Urals Circuit | A-1365 |
| August 18, 2000 opinion of the Federal Service | A-1367 |
| August 29, 2000 Nexis petition regarding loan agreement | A-1382 |
| July 26, 1999 supply contract between Nexis and GOK | A-1392 |
| August 29, 2000 Application filed by Nexis regarding supply contract | A-1424 |
| October 4, 2000 letter to Nexis from Trustee Kozyrev | A-1442 |
| March 23, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1445 |
| August 29, 2000 Statement of Claim submitted by Polyprom | A-1452 |
| **VOLUME 9 OF 13:** | |
| Supply agreements between GOK and Polyprom | A-1479 |
| October 4, 2000 letter to Polyprom from Trustee Kozyrev | A-1579 |
| October 31, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1583 |
| February 16, 2001 letter from Trustee Kozyrev to the Arbitrazh Court for the Sverdlovsk Oblast | A-1588 |
| February 19, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1591 |
| April 19, 2001 Resolution of the Appellate Instance of the Arbitrazh Court for the Sverdlovsk Oblast | A-1598 |
| July 12, 2001 determination of the Federal Arbitrazh Court of the Urals District | A-1607 |
| April 18, 2001 decision of the Arbitrazh Court for Sverdlovsk Oblast | A-1613 |
| January 22, 2000 letter from several members of GOK Board of Directors requesting meeting of GOK Board | A-1620 |
| January 24, 2000 letter from several members of GOK Board of Directors requesting meeting of GOK Board | A-1623 |
| February 2, 2000 "Decision Not To Institute Legal Proceedings" of the Senior Assistant Prosecutor for the City of Kachkanar | A-1628 |
| February 1, 2000 ruling of the Kachkanar City Court for the Sverdlovsk Oblast | A-1635 |
| February 15, 2000 decision of the Arbitrazh Court for the Sverdlovsk | A-1649 |

| | |
|---|---|
| Oblast | |
| March 8, 2001 decision by the Moscow City Court | A-1657 |
| September 19, 2000 decision of the Meshchansky Inter-Municipal Regional Court of Moscow | A-1667 |
| **VOLUME 10 OF 13:** | |
| March 26, 2001 decision of the Moscow City Court | A-1676 |
| November 21, 2000 decision of the Tverskoy Inter-Municipal Regional Court of Moscow | A-1683 |
| February 22, 2001 decision of the Appellate Instance of the Federal Arbitrazh Court of Moscow | A-1691 |
| November 16, 2000 decision of the Arbitrazh Court of Moscow | A-1698 |
| April 26, 2001 decision of the Federal Arbitrazh Court of the Moscow Circuit | A-1706 |
| December 13, 2000 decision of the Perovsky Inter-Municipal Regional Court of Moscow | A-1712 |
| Davis Complaint filed in Moscow before the Gagarinsky Inter-Municipal Court of Moscow | A-1728 |
| April 10, 2000 decision of the Perovsky Inter-Municipal Regional Court of Moscow | A-1737 |
| September 25, 2000 decision of the Perovsky Inter-Municipal Regional Court of Moscow | A-1747 |
| October 26, 2000 decision of the Moscow City Court | A-1752 |
| September 17, 2001 decision of the Gagarinsky Inter-Municipal Court of Moscow | A-1758 |
| May 30, 2000 decision of the Tverskoy Inter-Municipal Regional Court | A-1761 |
| February 7, 2000 decision of the Tverskoy Inter-Municipal Court of Moscow | A-1765 |
| December 22, 2000 decision of the Gagarinsky Inter-Municipal Court of Moscow | A-1768 |
| February 14, 2000 decsion of the Cheryomoushkinsky Inter-Municipal Court of Moscow | A-1774 |
| March 2, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1779 |
| September 4, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1784 |
| August 14, 2000, decision of the Kachkanar City Court of the Sverdlovsk Oblast | A-1790 |

| | |
|---|---|
| February 15, 2000 decision of the Kachkanar City Court | A-1797 |
| February 29, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1801 |
| March 6, 2001 decision of the Moscow City Court | A-1806 |
| April 5, 2000 decision of the Meshchansky Inter-Municipal Regional Court of Moscow | A-1814 |
| June 22, 2001 decision of the Tverskoy Inter-Municipal Regional Court of Moscow | A-1827 |
| Two Notices of registrar change published in the *Oblastnaya gazeta* on, respectively, March 17, 2000 and October 21, 2000 | A-1832 |
| March 20, 2001 decision by the Arbitrazh Court of Moscow | A-1839 |
| June 26, 2001 decision of Appellate Instance of the Arbitrazh Court of Moscow | A-1846 |
| **VOLUME 11 OF 13:** | |
| September 5, 2001 decision of the Federal Arbitrazh court of the Moscow Circuit | A-1852 |
| December 20, 2000 decision of the Petrogradsky Regional Court of St. Petersburg | A-1859 |
| January 12, 2001 decision of the Petrogradsky Regional Court of St. Petersburg | A-1864 |
| March 13, 2001 decision of Izmailovsky Regional Court of Moscow | A-1871 |
| March 13, 2001 decision of Izmailovsky Regional Court of Moscow | A-1874 |
| August 27, 2001 decision of the Chertanovo Federal Court | A-1877 |
| Agreement between GOK and Polyprom dated January 18, 1999 | A-1880 |
| November 22, 2000 decision of the Arbitrazh Court of the Republic of Kalmykia | A-1884 |
| April 17, 2001 decision of the Arbitrazh Court for the North Caucasus Region | A-1895 |
| July 5, 2001 decision of the Arbitrazh Court for the Republic of Kalmykia | A-1904 |
| November 9, 2001 decision of the Appellate Instance of the Arbitrazh Court for the Republic of Kalmykia | A-1910 |
| September 10, 2001 decision of the Arbitrazh Court for the Republic of Kalmykia | A-1919 |
| August 1, 2000 decision of the Arbitrazh Court for the Chelyabinsk Region | A-1924 |

| | |
|---|---|
| October 16, 2000 decision of the Appellate Instance for the Arbitrazh Court for the Chelyabinsk Region | A-1942 |
| January 4, 2001 decision of the Arbitrazh Court for Urals Circuit | A-1952 |
| September 29, 2000 decision of the Solntsevsky Inter-Municipal Regional Court of Moscow | A-1960 |
| March 30, 2001 decision of the Moscow City Court | A-1970 |
| November 30, 2001 decision of the Solntsevsky Inter-Municipal Regional Court of Moscow | A-1980 |
| Agreement between New Start Group, Corp. and Davis dated October 6, 2000 | A-1995 |
| Eugene Aschenbrenner's Power of Attorney to act on behalf of Davis (valid December 3, 1999 through December 3, 2000) | A-2002 |
| Nexis Loan Agreement dated July 13, 1999 | A-2010 |
| March 23, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2020 |
| July 13, 2000 decision of the Meshchansky Inter-Municipal Regional Court of Moscow | A-2027 |
| Republic of Panama v. BCCI Holdings (Luxemborg) S.A., 90-2913-CV-UUB, slip.op. (S.D. Fla. July 17, 1995) | A-2033 |
| **VOLUME 12 OF 13** | |
| October 29, 2001 decision of the Federal Arbitrazh Court for the Urals Circuit | A-2053 |
| November 24, 2001 Opinion of the Department of the Interior of the Sverdlovsk Region | A-2060 |
| January 21, 2002 decision of the Federal Arbitrazh Court for the North Caucasus Circuit | A-2084 |
| March 12, 2002 decision of the Arbitrazh Court for the Republic of Kalmykia | A-2094 |
| April 23, 2002 decision of the Federal Arbitrazh Court for the North Caucasus Circuit | A-2105 |
| April 30, 2002 decision of the Kachkanar Town Court for the Sverdlovsk Oblast | A-2108 |
| September 24, 2002 decision of the Kachkanar Town Court for the Sverdlovsk Oblast | A-2121 |
| November 19, 2002 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2126 |

| | |
|---|---|
| January 22, 2003 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2133 |
| February 4, 2003 decision of the Appellate Instance for the Arbitrazh Court for the Republic of Kalmykia | A-2143 |
| May 20, 2003 decision of the Federal Arbitrazh Court for the North Caucasus Region | A-2150 |
| May 27, 2003 decision of the Appellate Instance of the Arbitrazh Court for the Sverdlovsk Oblast | A-2159 |
| August 27, 2003 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2165 |
| October 30, 2003 decision of the Moscow Municipal Court | A-2170 |
| January 14, 2004 decision of the Federal Arbitrazh Court for the Urals Circuit | A-2176 |
| April 20, 2004 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2187 |
| **VOLUME 13 OF 13** | |
| April 27, 2004 decision of the Arbitrazh Court for the Republic of Kalmykia | A-2197 |
| July 2, 2004 decision of the Moscow City Court | A-2205 |
| July 29, 2004 decision of the Federal Arbitrazh Court for the Urals Circuit | A-2212 |
| December 7, 2004 decision of the Moscow City Court | A-2221 |
| September 18, 2001 decision of the Sverdlovsk Arbitrazh Court | A-2224 |
| December 20, 2001 decision of the Urals Circuit | A-2238 |
| May 22, 2002 decision of the Moscow City Court | A-2246 |
| August 22, 2002 decision of the Moscow City Court | A-2256 |
| September 10, 2002 decision of the Kalmykia Court | A-2269 |
| May 22, 2003 decision of the Sverdlovsk Arbitrazh Court | A-2277 |
| August 13, 2003 decision of the Solntsevsky Court | A-2283 |
| March 3, 2004 decision of the Sverdlovsk Arbitrazh Court | A-2289 |
| March 31, 2004 report issued by Russian Ministry of Internal Affairs | A-2294 |
| Declaration of Tatiana Yastrebova, dated September 16, 2002, filed in *Base Metal Trading* (without exhibits) | A-2314 |
| July 2, 2002 decision of the North Caucasus Circuit | A-2344 |

# DEFENDANTS' POST-ARGUMENT SUBMISSIONS 2-25-03

# WINSTON & STRAWN

| | | |
|---|---|---|
| 35 WEST WACKER DRIVE<br>CHICAGO, ILLINOIS 60601-9703 | 200 PARK AVENUE<br>NEW YORK, NEW YORK 10166-4193 | 21 AVENUE VICTOR HUGO<br>75116 PARIS, FRANCE |
| 43 RUE DU RHONE<br>1204 GENEVA, SWITZERLAND | (212) 294-6700 | 1400 L STREET, N W<br>WASHINGTON, D C 20005-3502 |
| 38TH FLOOR<br>333 SOUTH GRAND AVENUE<br>LOS ANGELES, CALIFORNIA 90071-1543 | FACSIMILE (212) 294-4700 | |
| | www.winston.com | |

MICHAEL D. BURROWS
(212) 294-4618
mburrows@winston.com

February 25, 2003

**BY HAND**

Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street, Room 1030
New York New York 10007

Re:    **Base Metal Trading S.A. et al. v. Russian Aluminum, et al.**
          **00 Civ. 9627 (JGK)**

Dear Judge Koeltl:

On behalf of all defendants, this letter is submitted in reply to the submission made by plaintiffs on February 20, 2003.

At the oral argument of defendants' motions to dismiss, the Court asked the parties to (a) amplify information in the record on "the plaintiffs who are U. S. companies," (b) provide information regarding "the contracts of MIKOM and Nexis," and (c) elaborate on Russian law and procedure concerning "the issue of is there a claim . . . of RICO, fraud, or whatever . . . ."[1]

## U. S. PLAINTIFFS

The particulars of the U. S. plaintiffs are at issue here because of the Second Circuit's statement in *Iragorri* that a plaintiff's connection to the United States must be *"bona fide."*[2] In the instant action, there are 10 plaintiffs. The three original plaintiffs are Swiss, Channel Islands and Cyprus companies whose beneficial owners are the Zhivilo brothers, both Russians. MIKOM is a Russian company, also beneficially owned by the Zhivilos.[3] That

---

[1] Transcript of oral argument, February 10, 2003 ("Tr. p. __"), pp. 100-01, Ex. 1 hereto

[2] *Iragorri v. United Technologies*, 274 F. 3d 65, 73 (2d Cir. 2001) (en banc).

[3] See Letter dated January 23, 2003 from Michael D. Burrows to the Court, pp. 3-4, citing Zurich Arbitration Award, p. 135-6. Ex. 2 hereto.

**WINSTON & STRAWN**

Honorable John G. Koeltl
February 25, 2003
Page 2

disposes of the citizenship of the so-called Aluminum Plaintiffs and $900 million of the Amended Complaint's claimed damages of $1 billion.

Of the other six plaintiffs -- the so-called GOK Plaintiffs that were added by amendment -- Foston is a Cyprus company, Omni is English and Polyprom is Russian. Second Amended Complaint ¶¶ 34, 35, 38. The Court's questions in the context of the *forum non* motion, were, therefore, directed to the remaining three plaintiffs: Davis, Holdex and Nexis, respectively incorporated in West Virginia, Texas and Utah, states with no apparent links to plaintiffs' claims of corruption in the Russian court system.

To answer the Court's inquiry, plaintiffs offer the Second Declaration of Joseph Traum, dated February 19, 2003.[4] Traum, a citizen and resident of Israel, admits now that he is the beneficial owner of plaintiff Nexis[5], although he did not disclose that interest in his first Declaration, dated September 14, 2002. He admits further that two other Israelis, Simha Eizenberg and Dov Rieger, are the beneficial owners of plaintiff Holdex.[6] Thus, there is no U. S. ownership of nine out of the ten plaintiffs, leaving only Davis International, LLC.

Traum fails to identify the beneficial owners of Davis; rather, he uses different terminology. He states that he and Sara Ofen, allegedly a U. S. citizen, are the "members" of Davis.[7] In his first Declaration, Traum said that, "Davis' beneficial owners include one American citizen,"[8] but he did not disclose the identity of that person, nor did he disclose his own beneficial interest as a "member." If he now intends to say that he and Sara Ofen, as "members," are the beneficial owners of Davis, the Court is left with one of six GOK plaintiffs -- plaintiffs whose claims together total $100 million out of a total of $1 billion -- the beneficial owners of which are an Israeli citizen and a U. S. citizen. Ms. Ofen, who was not identified in Traum's first Declaration, is described only as a person who speaks fluent English, does not speak Russian and is afraid to travel to Russia because of alleged threats on Traum's life.[9] Traum does not tell us where she lives or what her ownership percentage is.

Significantly, there is no affidavit from Ms. Ofen herself.

Traum's new Declaration, in the face of the Court's specific requests, is striking for what it does not say. Traum does not assert that any of these companies have real places of business or actual operations in the United States, or anywhere else. They have only "registered

---

[4] "Traum 2d Decl. ¶ __."

[5] *Id.* ¶ 33.

[6] *Id.* ¶ 27.

[7] *Id.* ¶12.

[8] Declaration of Joseph Traum, dated September 14, 2002, ¶ 10.

[9] Traum 2d Decl. ¶¶ 12, 13, 20.

WINSTON & STRAWN

Honorable John G. Koeltl
February 25, 2003
Page 3


addresses," which are the addresses of the service companies used to form the corporations (see discussion *infra*). Traum identifies only a single officer of these plaintiffs, Isaac Savion. Savion is alleged to be a U. S. citizen -- but apparently not a resident -- and an officer of Davis and also of Nexis.   Traum does not tell us where Savion lives or what offices he holds with Davis and Nexis; nor does he describe Savion's duties or responsibilities for either of the companies. Traum only tells us that Savion speaks fluent English, does not speak Russian and is not willing to travel to Russia because of threats to Traum "and the warnings of the Israeli police."[10] However, there is no affidavit from Mr. Savion himself, which presumably could identify the other officers (and directors) of these companies, describe the day-to-day business operations of Davis and elaborate on Nexis' plans to "refurbish electronic products in San Diego."[11]  Mr. Savion could describe for us these companies' actual places of business, how many employees they have, their revenues from U. S. operations and other significant U. S. contacts.

        Finally, there is no affidavit at all from an officer or beneficial owner of Holdex.

        Plaintiffs' unwillingness to provide the information the Court has asked for leads to the inescapable conclusion that these U. S. corporations, Davis, Holdex and Nexis, are exactly what the defendants have claimed they are: shell companies without any *bona fide* connection to this forum, or even to the United States in general. Moreover, Plaintiffs' half-hearted attempt to argue that these Plaintiffs should be afforded the same degree of deference as U.S. plaintiffs actually residing in the U.S. because of international treaties is not only a stretch, but also a misstatement of current *forum non conveniens* law:

> This line of treaty cases requiring 'equal access' to foreign plaintiffs is, however, easily harmonized with the line of cases granting less deference to plaintiffs residing overseas . . . . Foreign plaintiffs deserve less deference, not because they lack U.S. citizenship, but simply because their overseas residence vitiates any presumption that they would find the U.S. forum convenient.

Varnelo v. Eastwind Transport, Ltd., No. 02-Civ. 2084, 2003 WL 230741, *12 (S.D.N.Y. Feb. 3, 2003).


Nexis Products, LLC

        Nexis was formed by two Panamanian companies, Saturn Investment Group, S.A. and Star Group Finance and Holdings, Inc., both having the same address in Panama City, Panama. Ex. 3 hereto.  Its registered agent is All-Search & Inspection, Inc., 1108 E. South

---

[10] *Id.* ¶¶ 14, 15, 20, 40, 41.

[11] *Id.* ¶ 36.

WINSTON & STRAWN

Honorable John G. Koeltl
February 25, 2003
Page 4

Union Ave., Midvale, Utah (Ex. 5 hereto), which is the same address that Joseph Traum gives for Nexis in his Declaration.[12] All-Search resigned as Nexis' registered agent on 3-19-98 and Nexis was involuntarily dissolved on 12-01-98 (Ex. 4 hereto). The company was reinstated by the Utah Department of Commerce on 2-29-00 (Ex. 5 hereto).

Traum states that Nexis used nominee members "for the same reasons and in the same manner" as Davis and Holdex,[13] i.e., "solely for organizational purposes; they played no role in the operational management of the company."[14] Nevertheless, four years after the company was formed, Saturn Investments was still acting on its behalf; it signed the "Application for Reinstatement." (Ex. 5 hereto). Also, these alleged "nominee members" signed the Power of Attorney dated November 20, 2000 giving Marina Ashikmina authority to pursue Nexis' claims in Russian courts.[15] One of the signatories to the aforementioned Power of Attorney, Sydney Tavarez of Star Group, also signed the July 13, 1999 Loan Agreement between Nexis and GOK; that Agreement identifies Mr. Tavarez as a "Director" of Nexis. The Loan Agreement is Exhibit 91 to the Declarations of Oleg S. Kozyrev and Samir Kapoura, submitted in support of defendants' motions to dismiss. It is also Exhibit 4 to Traum's Second Declaration.

<u>Davis International, LLC</u>

Davis was also formed by Star Group Finance and Holdings, Inc. and Saturn Investments Group, S.A., the same Panamanian companies that formed Nexis. Ex. 7 hereto. The company's address, 1205 Wilkie Drive, Charleston, West Virginia, is the address of its registered agent (Ex. 7, ¶¶ fourth and fifth) and also the same as that given by Traum for Davis.[16] Traum states that Sara Ofen is a "member" and Isaac Savion is an "officer".[17] However, corporate search records as of February 12, 2003, do not list either Ms. Ofen or Mr. Savion. Ex. 8 hereto. The records identify only Mr. Traum as a member:

> JOSEPH M. TRAUM
> 48 HAAGIVA STR.
> SAVYON, 56000
> ISRAEL

---

[12] Traum 2d Decl. ¶32.

[13] Traum 2d Decl. ¶31.

[14] Traum 2d Decl. ¶5.

[15] See Ex. 27 to the Declaration of Marina Ashikmina, dated September 12, 2002. Ex. 6 hereto.

[16] Traum 2d Decl. ¶7.

[17] Id. ¶ 12, 14.

A - 889

**WINSTON & STRAWN**

Honorable John G. Koeltl
February 25, 2003
Page 5

### Holdex, LLC

Holdex was formed in 1999 by Star Group Finance and Holdings, Inc. (the same company that set up Nexis and Davis) and WorldFund, Inc., both of the same address in Panama City. Ex. 9 hereto. Its registered agent is ChoicePoint Services, Inc., 707 W. 7th Street, Austin, Texas -- the same address that Traum gave for the company in his Declaration. Ex. 9 hereto. The "Certification of Account Status" obtained from Texas on 2/13/2003 lists Star and WorldFund as Managers (MM). Ex. 10 hereto. The same report retrieved on 2/21/2003 lists Simha Eizenberg of Budapest, Hungary as the only Director of Holdex. Ex. 11 hereto. Star and WorldFund are no longer listed on the Certification of Account Status (Ex. 11).

### THE CONTRACTS OF MIKOM AND NEXIS

At the February 10th oral argument. Your Honor asked the parties to make submissions regarding "a couple of contracts . . . [o]ne is any contract between Mikom and NKAZ. And another is any contract between Nexis and GOK . . . ."[18] Your Honor was interested in reviewing "any choice of law or forum or arbitration clause" in those contracts.[19]

#### MIKOM and NKAZ

Although it may not have been clear at the oral argument,[20] the contracts between NKAZ and MIKOM (comprised of one contract and two amendments) were already submitted with defendants' moving papers as Exhibits 1, 2 and 3 to Mr. Chernyshev's Declaration of January 27, 2002.[21] In addition, in response to Your Honor's request, defendants prepared a chart summarizing the contracts between NKAZ and MIKOM (as well as contracts between NKAZ and BMT S.A., BMT Ltd., and Alucoal). That chart was submitted on February 20th and specifies both the forum selection and choice of law for each of the contracts. As the chart clearly shows, <u>none</u> of the contracts selected the United States as a forum, <u>nor</u> did they dictate that U.S. law would apply.

The MIKOM/NKAZ contracts are numbers 1, 2 and 3 on defendants' chart.[22]

While the plaintiffs also submitted a chart, they noticeably neglected to include the NKAZ/MIKOM contracts, as specifically requested by the Court.[23] Instead, they make

---

[18] Tr. pp. 77-8, 100; Ex. 1 hereto.

[19] Id. at 100; Ex. 1.

[20] *See* Tr. pp. 77-78, Ex. 1.

[21] Declaration of Sergei Chernyshev, dated January 27, 2002, Exs. 1, 2, 3.

[22] That page of the chart is reproduced as Exhibit 12 hereto.

**WINSTON & STRAWN**

Honorable John G. Koeltl
February 25, 2003
Page 6

passing reference to the contracts in footnote 3 of Mr. Bernard's February 20th letter. In the footnote, plaintiffs admit that the contract between NKAZ and MIKOM contains a forum selection clause for the Arbitrazh Court in Moscow, but attempt to excuse MIKOM from its agreed choice of forum by claiming that the contract was "entered into at a time when defendants had not infiltrated either NKAZ or GOK and had not corrupted judicial proceedings involving either plaintiff."[24]

      The chart submitted by plaintiffs (Exhibit A to Mr. Bernard's letter) lists only the contracts between NKAZ and BMT S.A., BMT Ltd. and Alucoal. In addition, the chart specifies only the forum selection and not the choice of law provisions. Nevertheless, even the plaintiffs' chart confirms that the U.S. was not a specified forum in any of those contracts. Defendants' chart, on the other hand, lists all of the contracts -- the BMT SA, BMT Ltd. and Alucoal contracts, as well as the MIKOM contracts -- and shows clearly that a U.S. forum or U.S. law was never chosen by the parties.

<u>Nexis and GOK</u>

      Mr. Bernard's February 20, 2003 letter to Your Honor also stated, "as set forth in the accompanying Traum declaration, and summarized in the chart, contracts related to the claims brought by the US plaintiffs, though not cited in the Amended Complaint, contain New York forum selection clauses." [25]

      The chart attached as Exhibit A to Mr. Bernard's letter lists 22 contracts between NKAZ and plaintiffs BMT SA, BMT Ltd. or Alucoal, none of which according to plaintiffs' own chart, selects a U.S. court as the appropriate forum. Plaintiffs' chart, however, also lists six contracts and two purported amendments involving the GOK plaintiffs, most of which purportedly select "Courts of New York State" in their forum selection clause.[26] With one exception, all of the purported GOK plaintiffs' contracts were not contracts between a plaintiff and a defendant, but rather, contracts between two GOK plaintiffs, or between a GOK plaintiff and a third party from whom plaintiffs purportedly obtained their shares.[27] Thus, their supposed choice of forum has no relevance to this lawsuit. Moreover, plaintiffs have failed to include numerous additional contracts involving GOK and the plaintiffs which do not select New York as the forum. Those contracts are listed in the chart submitted by defendants to the Court on February 20, 2003.

---

[23] Tr. pp. 77, 100, Ex. 1.

[24] Letter of James L. Bernard, February 20, 2003 ("Bernard Letter"), p. 4, footnote 3.

[25] Id. at 4.

[26] Id. at Ex. A at 3-4.

[27] Id.

**WINSTON & STRAWN**

Honorable John G. Koeltl
February 25, 2003
Page 7

Of the "GOK" contracts listed by plaintiffs, only one purported Amendment to one contract regarding a $13 million loan, is between a plaintiff and a defendant in this lawsuit. Plaintiffs, for the first time, present this alleged Amendment dated November 25, 1999, to the July 13, 2000 Loan Agreement between Nexis and GOK.[28] This purported Amendment alters the choice of forum from the Arbitrazh Court for the City of Moscow, which was selected in the July 13, 1999 Loan Agreement. This purported Amendment provides instead that "the parties deem the jurisdiction of the US Courts as a proper forum," and that "[a]ll the disputes, including without limitation claims of breach of agreement, fraud in the inducement and negligence, shall be adjudicated in a court of the State of New York, USA."[29] It also alters the choice of law from Russian law to "the laws of State of New York (sic) and Federal Laws of the United States."[30]

This purported Amendment is noteworthy in several respects:

1.      Plaintiffs have never before referred to this Amendment, in their original Complaint, First Amended Complaint, or Second Amended Complaint, in their voluminous brief, declarations and exhibits in opposition to defendants' motions to dismiss, in any of their letters to the Court, in any of their submissions to Magistrate Judge Maas or the telephone conferences with Magistrate Judge Maas on discovery issues, in any of the conferences with this Court, or in the February 10, 2003 oral argument.

2.      This purported Amendment is provided by plaintiffs as Exhibit B to Mr. Bernard's letter, and as Exhibit D to the Declaration of Mr. Traum dated February 19, 2003. Mr. Traum did not make any mention of this Amendment in this earlier Declaration to this Court, dated September 14, 2002. Indeed, in his earlier declaration, which Mr. Traum submitted on behalf of plaintiff Davis, Mr. Traum failed even to reveal that he is the beneficial owner of Nexis. This alleged Amendment between Nexis and GOK, is dated "New York, 25th of November 1999" and appears to be signed by Mr. Traum for Nexis and by Mr. Khaidarov for GOK. Mr. Khaidarov also does not mention this Amendment in either of his declarations, dated April 15, 2002 and September 15, 2002.

3.      Mr. Traum does not state whether he signed this Amendment, nor suggest where the Amendment was signed, notwithstanding the reference in the Amendment to "New York, 25th of November, 1999."[31]

4.      This purported Amendment was signed at a time period when Nexis had been dissolved. Nexis was involuntarily dissolved on December 1, 1998 for failing to file an

---

[28] Traum 2d Decl. Ex. 4; Bernard Letter Ex. B.

[29] Bernard Letter Ex. B at 1.

[30] Id.

[31] Traum 2d Decl. Ex. 4 at 1.

**WINSTON & STRAWN**

Honorable John G. Koeltl
February 25, 2003
Page 8

annual report. Ex. 4 hereto. Nexis applied for reinstatement with the State of Utah Department of Commerce on February 5, 2000. Ex 5 hereto.

     5.    The purported Amendment appears to have no other purpose: as described by Mr. Traum, the Amendment "affirmed the outstanding balance owed" under the July 13, 1999 Loan Agreement.[32]

     6.    Plaintiffs do not even bother to suggest to the Court why this purported Amendment -- which appears to have no relevance, other than its supposed forum selection clause -- has never been referred to before by the plaintiffs in the 26 months that this litigation has been pending.

     7.    Assuming the document is genuine, no explanation is offered as to why GOK, a Russian vanadium company, and Davis, a Utah shell corporation with an Israeli as its sole beneficial owner and no officers, directors, employees or operations in the U.S., but with a plan "to open a center in San Diego, CA to refurbish electronic products," would select New York as a forum.[33]

     8.    Finally, if the Amendment is authentic, it still only deals with a $13 million loan in the context of a $1 billion lawsuit and should have no impact.

<u>CLAIMS UNDER RUSSIAN LAW</u>

     As the Court knows from defendants' post-argument submission on February 20th, the applicability of Russian law to the claims alleged by plaintiffs was addressed by Professors Stephan and Petrukhin in their Declarations submitted with defendants' moving papers in January, 2002.[34] In defendants' February 20th submissions, both Professors confirm and elaborate on the opinions set forth in their earlier declarations. Professor Stephan states:[35]

> I conclude that Russian law provides Plaintiffs with causes of action covering injury from fraud, that it currently provides Plaintiffs with several avenues for overturning those court judgments that they claim caused them harm, that it permits Plaintiffs significant discretion over which court will hear their claim, and that it provides Russian courts with all the means necessary (including the power to compel testimony and to submit

---

[32] Traum 2d Decl. ¶ 39.

[33] Traum 2d Decl. ¶ 36.

[34] *See* Decls. of Paul B. Stephan, January 28, 2002, ¶¶ 22-24 and Igor L. Petrukhin, January 26, 2002, ¶¶ 23-34.

[35] Declaration of Paul B. Stephan, dated February 19, 2003, ¶ 2.

**WINSTON & STRAWN**

Honorable John G. Koeltl
February 25, 2003
Page 9

> testimony to critical challenge) for a full consideration of Plaintiffs'
> claims, in particular those based on fraud.

Citations omitted. In his Third Declaration, Prof. Petrukhin affirms the same conclusion:[36]

> 2.    I was asked to deliver an expert opinion on whether the
> substantive and procedural Russian law provides a cause of action
> in Russia based on the claims on the Amended Complaint.
>
> 3.    As I stated in my Declaration of January 26, 2002, I give a
> positive answer to the raised question.  This Declaration answers
> this question in more detail, and also with respect to one available
> avenue of redress, how, where and in what order the claims of the
> Plaintiffs might be satisfied....

Plaintiffs, however, rather than relying on their previous expert, Ethan S. Berger
(who agreed with Profs. Stephan and Petrukhin), have suddenly found a new expert whose
declaration is included with plaintiffs' post-argument submission.[37]  Sergey B. Zaitsev disagrees
with the previous opinions of Professors Stephan and Petrukhin.

It is important to note that until the Court raised the specific point at issue and
focused the plaintiffs on the Russian causes of action, procedure and venue, plaintiffs' previous
expert did not dispute the conclusions reached by Professors Stephan and Petrukhin.  In
defendants' reply papers, we noted that plaintiffs' then expert, Mr. Berger, did not even contest
that Russian law provides analogous causes of action and adequate remedies for all of Plaintiffs'
claims.[38]  In his Declaration, dated September 15, 2002 ("Berger Decl."), submitted in
opposition to defendants' motions to dismiss, Mr. Berger stated:

> While I am in general agreement with [Professors Stephan,
> Petrukhin and Zankovsky's] discussion of Russian black letter law,
> I am troubled by their suggestions that the Russian judiciary
> operates in the idealized manner envisioned by the Russian
> Constitution, relevant laws and related normative acts. All their
> analyses lack the intellectual skepticism, which one might
> otherwise expect. Burger Decl., ¶ 75.

---

[36] Declaration of Igor L. Petrukhin, dated February 19, 2002, ¶¶ 2-3.

[37] Declaration of Sergey B. Zaitsev, dated February 19, 2003 ("Zaitsev Decl.").

[38] Reply Memorandum of Law In Support Of Motion To Dismiss The Second Amended Complaint On Forum Non
Conveniens Grounds, submitted October 21, 2002, at 18.

A - 894

WINSTON & STRAWN

Honorable John G. Koeltl
February 25, 2003
Page 10

> I believe that it is highly likely that the <u>Plaintiffs will find that they have rights</u> but no real remedies.  Burger Decl., ¶ 96.

> <u>I do not disagree with much of what Petrukhin says about black letter Russian law;</u> but again the law in Russia, as embodied in the Constitution of the Russian Federation, legislation and other normative acts, can at present be best understood as representing a declaratory goal.  Burger Decl., ¶ 100.

(emphasis added).  Mr. Burger also submitted an expert Declaration on behalf of the plaintiff in the Denver case (represented by lead counsel here, Mr. Marks) and did not express any contrary view.[39]  At ¶ 54 of his Expert Witness Statement in Denver, Mr. Burger makes the same statement as set forth above:

> While I am in general agreement with Prof. Stephan's discussion of Russian black letter law,
> I am troubled by his suggestion that the Russian judiciary operates in the manner envisioned by the Russian Constitution, relevant laws and related normative acts.  His analysis lacks skepticism, which one might expect from someone with an extensive background in Soviet/Russian studies.

Emphasis added.  At ¶ 55 of his Statement in Denver, Mr. Burger goes even further and states affirmatively, and categorically, that a Russian court <u>would</u> "exercise jurisdiction over the present dispute":[40]

> The question in my mind is not whether a Russian court would exercise jurisdiction over the present dispute (it not only could but would probably want to), it is whether [the plaintiff] would get a fair hearing of its claims.

Plaintiffs use Mr. Zaitsev's Declaration to make new allegations of corruption in the Moscow Arbitrazh Court,[41] notwithstanding the fact that, during oral argument, Your Honor specifically rejected plaintiffs' request to supplement their voluminous submissions by adding

---

[39] Expert Witness Statement of Ethan S. Burger, dated May 21, 2002, attached as Ex. B to the Reply Declaration of Michael D. Burrows, dated October 21, 2002.

[40] The Denver Complaint that Burger was addressing sought $1.2 billion based on seven claims for relief: fraud and aiding and abetting fraud, breach of contract, intentional interference with contractual relations, civil conspiracy, breach of duty of good faith and fair dealing, breach of fiduciary duty and aiding and abetting breach of fiduciary duty, unjust enrichment and injunctive relief.

[41] Zaitsev Decl., ¶¶ 86-96.

WINSTON & STRAWN

Honorable John G. Koeltl
February 25, 2003
Page 11

purported new evidence of corruption in Moscow or elsewhere.[42]  The Court should disregard these new allegations.[43]

Finally, annexed hereto as the last Exhibit is the Reply Declaration of Professor Stephan. This Declaration speaks for itself, but is particularly noteworthy for its consistency. Professors Stephan and Petrukhin have provided eight Declarations between them[44] and remain confident that Russian law provides adequate remedies -- in terms of substance, procedure and venues -- for plaintiffs if they choose to so avail themselves.

But the plaintiffs have chosen not to pursue their claims in Russia. Rather, they hide behind shell corporations and claims of corruption, unfairness, irrational court decisions and the alleged unwillingness of witnesses to travel to Russia because of alleged threats on the life of Joseph Traum as allegedly conveyed to them by the Israeli police. Plaintiffs come here, to the Southern District of New York, in an attempt to re-litigate 120 cases they have already lost (and won) in the country where all of the events occurred and where the subject matter of their claims is located: The Russian Federation. They are nothing more than disgruntled litigants, whose names are legion.

Respectfully submitted,

Michael D. Burrows
On behalf of all Defendants

MDB:dkm

cc:        James L. Bernard, Esq. - Stroock & Stroock & Lavan LLP (by hand)
           Raymond Hannigan, Esq. - Herrick Feinstein LLP (by hand)
           Bruce S. Marks - Marks & Sokolov (by Fed Ex)
           Defendants' counsel (by Fed Ex)

---

[42] Tr., p. 100, Ex.1.

[43] Plaintiffs also use the last paragraph of Traum's Second Declaration to gratuitously malign two of the individual defendants and again bring the "Russian Mafia" into this case. Traum's statements are unsubstantiated, irrelevant and should also be disregarded.

[44] May 2001, January 2002, October 2002, February 19, 2003 and February 25, 2003.

1

1    Honor, that information about how they came to this conclusion,

2    information about specifically what data they reviewed, what

3    analysis was performed, and those kinds of factors that go into

4    making this kind of a statement in a legal document in the

5    United States is relevant to the very question of to what

6    degree are defendants able to influence proceedings.

7            And in connection with the balancing inquiry, I think

8    it's a factor that the Court should consider when we talk about

9    the claims of corruption, when we have set forth evidence in

10   our papers in terms of corruption, because it's not just things

11   that we're saying.  It's things that the defendants have said.

12           Now, —

13           THE COURT:  Could I —

14           MR. BERNARD:  Yeah.  Yes, Your Honor.

15           THE COURT:  There are a couple of contracts, at

16   least, that — and I raise this because it's relevant to the

17   disclosure in — in an American securities offering.  There are

18   a couple of contracts which it struck me are particularly

19   relevant in the papers.  One is any contract between Mikom and

20   NKAZ.  And another is any contract between Nexis and GOK,

21   because both of those are, at least as I understand it, alleged

22   to have been wrongly abrogated.

23           MR. BERNARD:  Um hmm.

24           THE COURT:  And there may be more.  But are those

25   contracts in the papers themselves somewhere?

1         MR. BERNARD: Your Honor, as I stand here now, I

2 don't believe they are. It —

3         THE COURT: I didn't think so, because one of the

4 issues that's raised by the defendants is that the very

5 contracts at issue may contain forum selection clauses,

6 arbitration clauses, and it may well be useful to put them in

7 the record one way or another, and it raises the issue —

8 plainly, a securities disclosure in the United States is meant

9 to provide potential investors with a fair representation of

10 all of the risks of — of such an investment.

11         At the time that these investments were made, it was

12 another time in Russia. And you can correct me if I'm wrong.

13 Would it not be a fair consideration to say that people — that

14 non-United States citizens investing in Russia at the time

15 would reasonably expect to get what relief was available in

16 Russia?

17         The disclosure that you read from the securities

18 filing says that there could be problems in connection with

19 that relief. But wouldn't that be a factor to be taken into

20 account when the investments here were made, who was making

21 them, and whether there were forum selection clauses in the

22 contracts?

23         MR. BERNARD: Yes, Your Honor. I think it is

24 relevant. As I stand here now, I don't recall the date of the

25 Sibneft offering, and I think that obviously that would — that

1    MR. MARKS:  Yeah.

2    THE COURT:  That's not in the record, is it?

3    MR. MARKS:  It is not in the record, Your Honor.

4  That — which was — to go back where I was, if Your Honor

5  wanted us to supplement the record on whether courts in Tumen

6  can be corrupted, we could easily do that.

7    THE COURT:  Oh, the — the record in the case is, at

8  this point, five boxes.  And I think that the — that the

9  record is — that the parties have had ample opportunity to put

10 in what they wish to put in in the record.

11    There is — I have identified about three issues in

12 the record that I saw that needed to be amplified: the

13 plaintiffs who are U.S. companies' directors, shareholders,

14 officers, business in the United States, the contracts of Mikôm

15 and Nexis, and if there is another contract that the parties

16 believe is centrally involved in the case, such a contract, and

17 I would need a — some translation, not of the whole contract

18 if it's in Russian, but of any choice of law or forum or

19 arbitration clause.

20    And finally, both sides' submission on — unless

21 either side believes that it's fully indicated in your

22 affidavits already, and I'm perfectly happy to accept that and

23 to look at the specific provisions that I've been cited to —

24 the issue of is there a claim under Russian law the equivalent

25 of RICO, fraud, or whatever, what court or courts could that be

**A - 900**

1  brought in, and the — if the parties wish to go into it, the.

2  procedures available in those — in those courts.

3        Again, the parties may think that it's — and both

4  sides have cited to me their expert affidavits so far, and I —

5  I'm — you know, if the parties wish to rely upon that, that's

6  fine.  But I wanted to give the parties that opportunity.  Go

7  ahead, Mr. Marks.  I didn't want to interrupt you.

8        MR. MARKS:  Fine, Your Honor.  I would move over

9  generally to some specific issues that I want to discuss on

10 comity.  One more thing I would suggest to Your Honor in terms

11 of Moscow — we don't believe, and we agree with Mr. Burrows,

12 that if there were claims for fraud, which we don't think

13 exist, that they would have to be brought in the Sverdlosk

14 region for GOK and Kemerovo for NKAZ.

15       This is, of course, totally different than the GOK

16 shareholders who have brought claims, because there's never

17 been any resolution against them in Russia in a case in which

18 they were either named or served.  In each of their instances

19 — there is four of them — Davis — there's no litigation

20 whatsoall [sic] — whatsoall against Davis.

21       There's no proceedings that have made any findings

22 against Davis in Russia.  Under — under typical proceedings of

23 comity, if there's parallel actions, you allow them to go

24 forth.

25       Omni lost its shares when it wasn't even named as a

A - 901

2

# WINSTON & STRAWN

35 WEST WACKER DRIVE
CHICAGO, ILLINOIS 60601-9703

43 RUE DU RHONE
1204 GENEVA, SWITZERLAND

36TH FLOOR
333 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-1543

200 PARK AVENUE
NEW YORK, NEW YORK 10166-4193

(212) 294-6700

FACSIMILE (212) 294-4700

www.winston.com

21 AVENUE VICTOR HUGO
75116 PARIS, FRANCE

1400 L STREET, N.W.
WASHINGTON, D.C. 20005-3502

MICHAEL D. BURROWS
(212) 294-4618
mburrows@winston.com

January 23, 2003

<u>TO BE FILED UNDER SEAL</u>

<u>BY HAND DELIVERY</u>

Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street, Room 1030
New York New York 10007

Re:   **Base Metal Trading SA, et al. v. Russian Aluminum, et al.**
<u>00 Civ. 9627 (JGK)</u>

Dear Judge Koeltl:

      We are writing on behalf of the defendants originally sued before the complaint was amended.[1]

      We write to advise Your Honor of developments in an arbitration proceeding (discussed in defendants' pending motions to dismiss), involving claims closely related to the claims in this case, which has been pending in Zurich, Switzerland since January 11, 2001 (about one month after this action was filed). That arbitration was commenced by plaintiff Base Metal Trading SA ("BMT SA") (the plaintiff listed first in the caption of the instant case) against defendant Novokuznetsk Aluminum Plant ("NKAZ") (an original defendant in the instant case and the aluminum plant which is at the heart of the aluminum allegations) under the International Arbitration Rules of the Zurich Chamber of Commerce.

      The Zurich arbitration was based on the same contracts that BMT SA pleaded in the original complaint. Compl. ¶ 17. In their initial motions to dismiss, filed in May of 2001,

---

[1]    Those defendants are: Russian Aluminum, Sibirsky Aluminum (Russia), Sibirsky Aluminum Products USA Corp., Bauxal Management, S.A., Metcare Management, S.A., Unimetal Limited, S.A., Mr. Oleg Deripaska, Mr. Mikhail Chernoi, Chernoi Companies 1 to 10 and Novokuznetsk Aluminum Zavod. The original plaintiffs, before the complaint was amended, are Base Metal Trading SA, Base Metal Trading Ltd. and Alucoal Holdings Ltd. Those plaintiffs are defined in the complaint as the "BMT Plaintiffs" and are sometimes also referred to as the "Aluminum Plaintiffs."

WINSTON & STRAWN

Honorable John G. Koeltl
January 23, 2003
Page 2

the original defendants called the Court's attention to this duplicative action, as well as two others relating to contracts between NKAZ and the other two original plaintiffs -- Base Metal Trading Ltd. ("BMT Ltd.") and Alucoal Holdings Ltd. ("Alucoal").[2]  Plaintiffs then amended the complaint and dropped the cause of action for breach of contract, but plead interference with those same contracts. Am. Compl. ¶¶ 593-95.  Defendants' motions (filed in January of 2002) to dismiss the <u>amended</u> complaint again dealt with those contracts. *See* Memorandum Of Law In Support Of Motion To Dismiss The First Amended Complaint On *Forum Non Conveniens* Grounds, at 6-7, n.3.

The arbitrator in Zurich, Dr. Marc Blessing, first took up the issue of jurisdiction and has now reached a decision.  In a 144-page Award,[3] a copy of which is enclosed herewith, Dr. Blessing dismissed the arbitration, holding that the arbitration agreement upon which BMT SA relied "is invalid, null and void," and "[c]onsequently, the Arbitrator lacks arbitral jurisdiction ...."[4]  Award, p. 143, ¶¶ 1, 2. Costs and attorneys' fees were awarded against BMT. Dr. Blessing stated:

> Basically, the only judicial remedy for Claimant's complaints about the irregularities that allegedly occurred in Kemorovo would be appropriate administrative actions and court actions before the competent Russian authorities, and the present Arbitrator cannot exercise or arrogate to himself a jurisdiction in that respect.

Award, ¶ 398, *see also* ¶ 283.  Dr. Blessing characterized BMT SA's actions as seeking a "second bite at the apple" (Award, ¶ 399), or even a "third bite":

> To conclude this Chapter, the Arbitrator recognises Claimant's significant effort to overcome the *lis pendens* defence; yet, its effort is not fully convincing.  It rather appears that Claimant, after having submitted its claims against NKAZ in the Russian bankruptcy proceedings, first tried to "*have a second bite at the apple*" by having its monetary claims submitted in the framework of the RICO complaint filed in December 2000, and thereafter - moreover - aimed to even have a "*third bite at the apple*," by initiating the present Arbitration.

Award, ¶ 298 (emphasis in original).

---

[2]   In addition to BMT SA, the two other Aluminum Plaintiffs BMT Ltd. and Alucoal filed similar arbitration proceedings in Stockholm and Cyprus, respectively.  NKAZ is seeking dismissal of those proceedings as well.

[3]   Dr. Blessing, recognizing the length of his Award, has provided a guide "For the hurried Reader" at page 3.

[4]   The consequence of this decision is that these contract disputes are arbitable, but not in Zurich.

A - 904

WINSTON & STRAWN

Honorable John G. Koeltl
January 23, 2003
Page 3

The Award makes numerous references to the instant action before Your Honor (referred to by Dr. Blessing as the "RICO case" or the "RICO" complaint), including:

> It rather seems that the monetary claims of, and damages allegedly suffered by, BMT SA had been referred to in the RICO proceedings <u>not only</u> for mere argument's sake, but were in fact referred to, even in the amended complaint, in order to support the causes of action of the various RICO plaintiffs in the RICO proceedings. It thus appears that the monetary claims underlying the present arbitration had also been incorporated and factored into MIKOM's RICO complaint, and somehow form part of the quantification of that complaint, resulting in claimed treble damages in the amount of US$ 2.7 billion.

Award, ¶ 293 (emphasis in original).

> In the RICO case, BMT SA, BMT Ltd, Alucoal and MIKOM are represented by the same lawyers, including Bruce Marks who also acted for BMT SA in connection with the bankruptcy.

Award, ¶ 368. *See also* Award, p. 126 and ¶ 363.

The Arbitrator also found common control of the three Aluminum Plaintiffs and plaintiff MIKOM. Defendants' *forum non conveniens* motion argues that the plaintiffs are principally Russian companies, or companies with undisclosed Russian ownership, an issue relevant to the weight to be given to the plaintiffs' choice of forum, and to the balancing of the private and public interest factors. *See* Sibirsky Def. Mem. at 8, 17; Sibirsky Def. Reply Mem. at 1, 2. Plaintiffs declined in their opposition papers to identify the ownership of the Aluminum Plaintiffs (as well as to identify the ownership of the GOK plaintiffs). Indeed, in the Second Declaration of Mikhail Zhivilo, dated September 16, 2002, submitted by plaintiffs in opposition to defendants' motions to dismiss, Mr. Zhivilo states that he is "the President (General Director)" of plaintiff MIKOM, but he fails to reveal his relationship with the Aluminum Plaintiffs, BMT SA, BMT Ltd. and Alucoal. The relationship between the Aluminum Plaintiffs and Mr. Zhivilo's ownership of them is, however, a key conclusion of the Arbitrator's decision.

In this regard, the Arbitrator noted "Claimant's corporate structures, the use of 'Base Metal Trading,' the connections with BMT Ltd., the integration of Claimant within the MIKOM organisation, the co-existence of parallel contracts between NKAZ and other structures controlled by Messrs. Zhivilo, [and] the teaming-up of the BMT entities and Alucoal in the framework on the RICO complaint. . . ." Award, p. 135. Dr. Blessing concluded:

> All the above direct and circumstantial elements taken together have led the Arbitrator to clearly conclude that Mr Zhivilo was pulling the strings, controlling Claimant and its business, as he

**WINSTON & STRAWN**

Honorable John G. Koeltl
January 23, 2003
Page 4

> and his brother at the same time pulled the strings in respect of
> MIKOM and NKAZ.

• • •

> . . . Mr. Zhivilo, when devising the CAA [Consolidated Arbitration
> Agreement], much less aimed to protect NKAZ' interests but, in
> real fact, his own interest as the ultimate controlling shareholder of
> Claimant and the beneficial owner/investor.

> . . . Mr. Zhivilo, by signing on behalf of NKAZ, **violated his
> inherent fiduciary duties** which an organ of a Russian company
> owes as a matter of Russian law.

Award, p. 136 (emphasis in original).

Thus, the decision confirms that plaintiff BMT SA, and the other two original
plaintiffs in this action, BMT Ltd. and Alucoal, as well as plaintiff MIKOM, are all controlled by
the Russian Mikhail Zhivilo, whose activities must ultimately be judged in accordance with
Russian law.

The Arbitrator awarded fees and expenses against BMT SA in the amount of
approximately US$870,000 and payment was due on January 10, 2003. BMT SA did not make
payment on the due date and NKAZ served an official payment summons under Swiss Law.
BMT SA then called the Arbitrator's attention to a calculation error of approximately
US$168,000 (which the Arbitrator has acknowledged), but failed to pay even the reduced
amount. BMT has now, in response to the payment summons, denied the entire debt (even as
reduced), compelling NKAZ to commence enforcement proceedings before the Swiss courts.

Because the rules of the Zurich Chamber of Commerce provide that the arbitral
award be kept confidential "toward third parties not concerned," we are submitting it under seal,[5]
and providing copies only to the BMT (Aluminum) Plaintiffs and the original defendants. The
so-called "amended" or "GOK" plaintiffs and the 11 "amended" defendants have no connection

---

[5]    Subject to Your Honor's direction.

Honorable John G. Koeltl
January 23, 2003
Page 5


to the aluminum claims or the NKAZ contract claims and are therefore not "concerned parties" and are not being provided with a copy of the Award.


Respectfully yours,

Michael D. Burrows
Counsel for defendants
     Sibirsky Aluminum (Russia)
     Sibirsky Aluminum Products USA Corp.;
     Bauxal Management, SA;
     Metcare Management, SA;
     Unimetal Limited, SA;
     Oleg Deripaska

MDB:dkm

cc:    (by federal express)
       Bruce S. Marks, Marks & Sokolov
         Attorney for the BMT Plaintiffs and MIKOM

    (by hand)
       James L. Bernard, Stroock & Stroock & Lavan,
         Attorneys for the BMT Plaintiffs and MIKOM

3

015720

ARTICLES OF ORGANIZATION

OF

NEXIS PRODUCTS LLC.

**RECEIVED**

OCT - 9 1996

Utah Div. of Corp. Comm. Code

*State of Utah
Department of Commerce
Division of Corporations and Commercial Code
I hereby certify that the foregoing has been filed
and approved on the ____ day of ____ 19__
in the office of this Division and hereby state
this Certificate thereof.*

*10/9/96*

**KORLA T. WOODS**
Division Director

The undersigned two or more persons hereby form a limited liability company pursuant to the Utah Limited Liability Company Act and adopt as the Articles of Organization of such limited liability company the following:

**FIRST:** The name of the limited liability company is Nexis PRODUCTS LLC.

**SECOND:** The limited liability company shall exist for a period of thirty (30) years from the date of filing of these Articles of Organization with the Secretary of State of the State of Utah.

**THIRD:** The purpose of the limited liability company shall be to engage in any lawful act or activity for which a limited liability company may be formed under the Limited Liability Company Act of the State of Utah.

**FOURTH:** The address of the principal place of business in Utah is Suite 104, 47 West 200 South, Salt Lake City, UT 84101.

**FIFTH:** The street address of the registered agent in Utah is Suite 104, 47 West 200 South, Salt Lake City, UT 84101. The name of the Agent at such address is All-Search.

**SIXTH:** The total amount of cash and a description and agreed value of property other than cash contributed will be $50,000 (U.S. dollars fifty thousand).

**SEVENTH:** Additional contributions shall be made at such times and in such amounts as may be agreed by the limited liability company and the members as provided in the operating agreement of the limited liability company.

**EIGHTH:** The members of the limited liability company may admit additional members upon unanimous agreement and as provided by the terms set forth in the limited liability company operating agreement.

**NINTH:** The remaining members of the limited liability company may continue the business upon the termination of continued membership of a member in the limited liability company upon unanimous agreement and as provided by the terms set forth in the operating agreement of the limited liability company.

**TENTH:** Management of the limited liability company is vested in the members in accordance with their ownership interests, unless this is varied by the operating agreement. A limited liability company member may not assign, wholly or partially, the right to participate in management without the written consent of all limited liability company members.

The names and addresses of the initial members shall be as follows:

Saturn Investment Group, S.A.          Star Group Finance and Holdings, Inc. (A Panama Corp)
Suite 302 (A Panama Corp)              Suite 302
East Building No. 34/20                East Building No. 34/20
Cuba Avenue & 34th St.                 Cuba Avenue & 34th St.
Panama City 5, Panama                  Panama City 5, Panama

The persons executing these Articles of Organization are as follows:

Member: Saturn Investment Group, S.A.

Sid Garnett, authorized to execute Articles of Organization.

Member: Star Group Finance and
       Holdings, Inc.

Sid Garnett, authorized to execute Articles of Organization.

State of Delaware          )
                           ) SS
County of New Castle       )

I, Sid Garnett, being duly sworn, upon oath, depose and say that I am Vice President of American Incorporators Ltd., and Sid Garnett, the attorney-in-fact for Saturn Investment Group, S.A. and Star Group Finance and Holdings, Inc., that I have read the contents of the foregoing Articles of Organization and that the statements contained therein are true and correct.

Sid Garnett

On October 3, 1996, before me personally appeared Sid Garnett, who being duly sworn by me upon his oath, deposed and acknowledged that he had read the contents of the foregoing Articles of Organization and further acknowledged the facts alleged therein are true and correct. Witness my hand and official seal. My commission expires: 4-10-97

Notary Public

ANN G. SAWYER
NOTARY PUBLIC - DELAWARE
MY COMMISSION EXPIRES 4/10/97

A - 910

4

```
***********************************************************
*
*                              UTAH DEPARTMENT OF COMMERCE
* 02/25/72        DIVISION OF CORPORATIONS AND COMMERCIAL CODE        15:46:0
*
***********************************************************
```

LIMITED LIABILITY COMPANY     FILE # 015720                          PAGE 1

BUSINESS NAME: NEXIS PRODUCTS, LLC
PRINCIPAL ADDRESS: 47 W 200 S STE 104
                   SALT LAKE CITY UT              ORGANIZED/REGISTERED: 10/09/1996
                   84101                            LAST ANNUAL RPT:  / /
                                                        COUPON:
                                                   HOME STATE: UTAH
STATUS: INVOLUNTARILY DISSOLVED ON 12/01/98        STATUS CODE: 2
SIC: 9999 NONCLASSIFIABLE ESTABLISHMENTS
REGISTERED AGENT: DIV. OF CORP DIRECTOR
                  160 E. 300 SO. 2ND FLOOR
                  BOX 146705    SLC, UT
                  841146705

─────────────────────────────────────────────────────
                              MANAGERS

ADDITIONAL MANAGERS: NO

─────────────────────────────────────────────────────
                              MEMBERS

1 SATURN INVESTMENT GROUP, S.A.                              FILE    #
  CUBA AVE & 34TH ST STE302 PANAMA CITY 5 PANAMA
2 STAR GROUP FINANCE AND HOLDINGS, INC.                      FILE    #
  CUBA AVE & 34TH ST STE302 PANAMA CITY 5 PANAMA

ADDITIONAL MEMBERS: NO

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                              REMARKS

01  11-01-97 DELINQUENT FOR FAILURE TO FILE AN ANNUAL REPORT.         <-
02  MAILED TO: ALL-SEARCH            47 W 200 S STE 104               <-
03             SALT LAKE CITY UT          84101                       <-
04  12-01-97 SUSPENDED FOR FAILURE TO FILE AN ANNUAL REPORT.          <-
05  MAILED TO: ALL-SEARCH            47 W 200 S STE 104               <-
06             SALT LAKE CITY UT          84101                       <-
07  03-19-98 AGENT RESIGNED, NOTICE SENT TO SATURN INVESTMENT GROUP, CUBA
08  AVENUE AND 34TH STREET, STE 302, PANAMA CITY 5 PANAMA  (DTM)
09  12-01-98 INVOLUNTARY DISSOLUTION FOR FAILURE TO FILE AN ANNUAL REPORT.  <-
10  MAILED TO: AGENT RESIGNED         03-19-98                        <-
11                                                                    <-
12  12-17-98 CERTIFICATE OF INVOLUNTARY DISSOLUTION RETURNED UNDELIVERABLE (KD

5



**State of Utah**
DEPARTMENT OF COMMERCE
Division of Corporations & Commercial Code


Division File Number

**Application for**
**Reinstatement of:**

Must be typewritten

**FILED**

FEB 2 5 2000

Utah Div. Of Corp. & Comm. Code

| Check Appropriate Box | Fee |
|---|---|
| ☐ Profit Corporation | $50.00 |
| ☐ Non-profit Corporation | $20.00 |
| ☐ Limited Partnership | $50.00 |
| ☒ Limited Liability Company | $50.00 |

*Nexis Products LLC*
(Business Entity Name)

I, *Pedro Alverez Garcia* hereby declare and affirm that:
(Print name)

I am a *Member* of *Nexis Products, LLC*
(Officer, General Partner, or Member)          ( Business Name )

which was involuntarily dissolved or canceled on the __1__ day of *Dec.*, 19**98** under provisions of Utah law.

I hereby remedy all prior defaults and file herewith a current annual report together with the required annual report and statutory reinstatement fee.

I hereby make application for reinstatement and request the Division of Corporations and Commercial Code of the State of Utah to issue a Certificate of Reinstatement and, under penalties of perjury, I declare that the foregoing statement is, to the best of my knowledge and belief, true and correct.

*If the above mentioned corporation name is not available for use at the time of reinstatement, the following corporation name shall be used:

_____
(New Corporation Name)

By: _____        Title: MEMBER
(Signature)

Phone Number: _____
(Daytime phone number)

Submit the following items **with** this application:

- An Annual Report showing the new registered agent's signature
- A tax letter of Good Standing from the Utah Tax Commission (if applicable)
- Your filing fee payable to the State of Utah.

State of Utah
Division of Corporations
and Commercial Code
Mail In: 160 East 300 South 2nd Fl Box 146705
Walk In: 160 East 300 South Main Floor
Salt Lake City, Utah 84114-6705
Service Center: (801) 530-4849
Fax: (801) 530-6111
Web Site: http://www.commerce.state.ut.us

*You may visit our Web Site for this form and access other information.*

corpsdba\forms\cmborcln.msc
revised 08-09-99 mm

**A - 914**



# State of Utah

**DEPARTMENT OF COMMERCE**
Division of Corporations and Commercial Code

Michael O. Leavitt
*Governor*
Douglas C. Borba
*Executive Director*
Lorena P. Riffo-Jenson
*Division Director*

Heber M. Wells Building
160 East 300 South
Box 146705
Salt Lake City, Utah 84114-6705
(801) 530-4849
(801) 530-6438 (Administrative FAX)
(801) 530-6111 (Customer Service FAX)
Web site: http://www.commerce.ut.us

02/29/2000

**VIA CERTIFIED MAIL**

Nexis Products, LLC
Mr. Pedro Alverez Garcia
47 West 200 South Ste 104
Salt Lake City, UT 84101

Re:     <u>GOOD STANDING/LC#015720</u>

Dear Mr. Garcia:

The Division of Corporations and Commercial Code ("Division") has reviewed your application and it has found that your business entity should be placed in a good status. Therefore, this letter confirms the Division's decision on this matter.

At this time, the Division's electronic records will not reflect this decision. However, the electronic record will be updated as soon as the Division's system upgrade is completed. In order to assist you with the situation, attached you will find a "Certificate of Existence."

Once again, it has been a pleasure to working with you to address this issue. If the Division can assist you further, please contact Karen Medley at (801) 530-6022 or review the Division's Homepage at www.commerce.state.ut.us.

Sincerely,

Lorena Riffo-Jenson
Director & General Counsel
Lriffo@br.state.ut.us

CC:     Karen Medley, Legal Assistant, Division of Corporations and Commercial Code



LC 015720

# State of Utah
### DEPARTMENT OF COMMERCE
Division of Corporations and Commercial Code

Michael O. Leavitt
Governor

Douglas C. Borba
Executive Director

Lorena P. Riffo
Division Director

Heber M. Wells Building
160 East 300 South
Box 146705
Salt Lake City, Utah 84114-6705
(801) 530-4849
(801) 530-6438 (Administrative FAX)
(801) 530-6111 (Customer Service FAX)

**DONE**

OCT 02 2000



Utah Div of Corp. & Comm. Code

Greetings:

The Division of Corporations and Commercial Code has received notice of the resignation or change of your registered agent. A copy of this notice is enclosed for your records. The effective date of the resignation/change is 30 days after the "date received" stamp indicated on the document.

Each business organization is required by law to continuously maintain a registered agent in Utah. Please appoint a new registered agent and submit the completed form below to our offices within 30 days. A Corporation, Limited Partnership, Limited Liability Company or DBA is subject to suspension, revocation or cancellation if it does not file a replacement registered agent.

You may designate your new registered agent on this form and return it to the Division offices. If you have any questions, please call (801) 530-4849.

Sincerely,

Lorena Riffo, J.D., M.P.H.
Director
Division of Corporations and
Commercial Code

03-21-00  :205:51  H

---

Name of Business Organization: **Nexis Products, LLC.**                    File #:

Type of Business Organization (Check One): Corporation, Limited Partnership, Limited Liability Partnership, (Limited Liability Company) or DBA.

Old Registered Agent: **ALL-SEARCH & INSPECTION, INC.**

Old Registered Address: **47 WEST 200 SOUTH  STE 104  SALT LAKE CITY, UTAH  84101**

New Registered Agent: **ALL-SEARCH & INSPECTION, INC.**

New Registered Office Street Address: **1108 EAST SOUTH UNION AVE  MIDVALE, UTAH  84047**

The above changes were authorized by resolution of the governing board as required of our business organization by state law. We declare that this information is, to the best of our knowledge and belief, true, correct and complete.

Signature of NEW Registered Agent                    Signature of authorized Corporate Officer, General Partner, Member or Applicant

revised 08-10-00 MRA

A - 916

6

## GENERAL POWER OF ATTORNEY

THIS POWER OF ATTORNEY is made by this Fifteenth day of November 2000

KNOW ALL MEN PRESENT that we:

### NEXIS PRODUCTS L.L.C.
#### 47 West 200 South, Suite 104, Salt Lake City, Utah, 84101 USA.

ACTING by Resolution of the Members this Fifteenth day of November 2000 and in accordance with our Certificate of Formation and Limited Liability Company Operating Agreement (hereinafter called "the Company") we hereby appoint:

### ASHIKHMINA MARINA
#### holder of passport 65 98 119961

The true and lawful Attorney in fact of the Company (hereinafter called "the Attorney") for and in the name of and on behalf of the Company to do or to execute all or any of the facts and things hereinafter mentioned that is to say:

    1) to conduct cases the Company involved in all courts of Russian Federation with the rights, given to the plaintiff, defendant, the third person, applicant and suffered including the right of signing and presenting of actions, with the right of presenting of a complaint to the Court of appeal and a complaint in order of supervision, applications of allotments and solicitation, with the right of substitution of the subject and basis of an action, receipt of judgments, decisions, executive lists and legal orders, other documents; to accomplish all the actions, connected with the execution, to produce and to recall executive documents, to arouse an executive production, with the right of receipt of executive list and producing it to a penalty, of appeal the actions of legal executor; to hand in any applications on behalf of the decrees, decisions and the other legal documents, to produce proofs on a case with the right of receipt of a property and money awarded;

    2) to represent interests of the Company as an applicant with the producing executive list to any juridical organizations and/or persons, government bodies of Russian Federation, organs and/or organizations, for what the Company gives the Attorney the right to produce for execution to any debtors on the territory of Russian Federation any executive lists, given to the Company by any courts (People's Court, Court of Arbitration, etc.) of Russian Federation, on the base of any decrees, sentences, decisions and resolutions of these Courts (judges), including on the ban to the debtors to accomplish the definite actions, to be present at the execution of legal deeds, to accomplish a control of the execution of legal deeds;

    3) to sign for the Company and also on the whole to accomplish any other juridical and actual actions on behalf of the Company. In the case if the Attorney accomplish any juridical and actual actions with the direct or indirect connection with _____ of this Power of Attorney, these ____ will be valid.

    4) to represent in complete volume interests of the Company in all State, municipal, commercial and other organizations and establishments, including in the

...... company «Panorama» Ltd. (Moscow), joint-stock company «VRK» (Katerinburg, Lenina str., 28) so Company let him accomplish all the necessary ...ions for opening of personal accounts in the books of registration of the stock – ...ders, which are conducted by «Panorama» Ltd. or «VRK» Ltd., to sign the ...nsmission and any other orders on behalf of the Company, to pass on «Panorama» ...d. or «VRK» Ltd. all the necessary documents connected with the opening of ...onal accounts, registration of purchase and selling of shares, to produce for ...cution any executive lists and other legal statements, to accomplish any ...quirements, including a receipt of notification, to receive any documents in ...anorama» Ltd., «VRK» Ltd. including letters, notifications, rejections, etc.

Powers by this Power of Attorney may be passed on other persons.

AND IT IS HEREBY AGREED THAT:

(1) This Power of Attorney shall remain in force within Fifteenth day of November 2001 or until notice of the Company having revoked the same shall have been ...ceived by the said Attorney or by the Company Secretary to whom all enquiries ...garding its validity should be addressed whichever is the earliest.

We hereby authenticate the sign of our Attorney as herein below:

IN WITNESS whereof the seal of the Company has been hereunto affixed this ...teenth day of November 2000.

In the name and on behalf of
STAR INVESTMENT GROUP, S.A.

In the name and on behalf of
STAR GROUP FINANCE & HOLDINGS, INC.

...dro Alvarez Garcia

Sydney Tavarez

7

ARTICLES OF ORGANIZATION OF

DAVIS INTERNATIONAL L.L.C.

FILED
DEC. 0 1 1998
! THE OFFICE OF
····ARY OF STAT*
· · ··· ·· 'IA

The undersigned two or more persons hereby form a limited liability company pursuant to the West Virginia Limited Liability Company Act and adopt as the Articles of Organization of such limited liability company the following:

FIRST: The name of the limited liability company is Davis International L.L.C.

SECOND: The limited liability company shall exist for a period of thirty (30) years from the date of filing of these Articles of Organization with the Secretary of State of the State of West Virginia.

THIRD: The purpose of the limited liability company shall be to engage in any lawful act or activity for which a limited liability company may be formed under the Limited Liability Company Act of the State of West Virginia.

FOURTH: The address of the principal place of business in West Virginia is 1205 Wilkie Drive, Charleston, WV 25314-1726.

FIFTH: The street address of the registered agent in West Virginia is 1205 Wilkie Drive, Charleston, WV 25314-1726. The name of the Agent at such address is Barbie Dallman.

SIXTH: The total amount of cash and a description and agreed value of property other than cash contributed will be $50,000 (U.S. dollars fifty thousand).

SEVENTH: Additional contributions shall be made at such times and in such amounts as may be agreed by the limited liability company and the members as provided in the operating agreement of the limited liability company.

EIGHTH: All debts, obligations and liabilities are those of the limited liability company.

NINTH: The members of the limited liability company may admit additional members upon unanimous agreement and as provided by the terms set forth in the limited liability company operating agreement.

TENTH: The remaining members of the limited liability company may continue the business upon the termination of continued membership of a member in the limited liabilty company upon unanimous agreement and as provided by the terms set forth in the operating agreement of the limited liability company.

ELEVENTH: The name and address of the person authorized to execute the Articles of Organization is Janet M. Caruccio, 1220 N. Market St., Suite 606, Wilmington, DE 19801.

TWELFTH: Management of the limited liability company is vested in the members in accordance

A - 921

with their ownership interests, unless this is varied by the operating agreement. A limited liability company member may not assign, wholly or partially, the right to participate in management without the written consent of all limited liability company members. The names and addresses of the initial members shall be as follows:

| | |
|---|---|
| Saturn Investment Group, S.A. | Star Group Finance and Holdings, Inc. |
| Suite 302 | Suite 302 |
| East Building No. 34/20 | East Building No. 34/20 |
| Cuba Avenue & 34th St. | Cuba Avenue & 34th St. |
| Panama City 5, Panama | Panama City 5, Panama |

The persons executing these Articles of Organization are as follows:

Member: Saturn Investment Group, S.A.

Janet M. Caruccio, authorized to execute Articles of Organization.

Member: Star Group Finance and Holdings, Inc.

Janet M. Caruccio, authorized to execute Articles of Organization.

State of Delaware          )
                           ) SS
County of New Castle       )

I, Janet M. Caruccio, being duly sworn, upon oath, depose and say that I am General Manager of American Incorporators Ltd., and Janet M. Caruccio, the attorney-in-fact for Saturn Investment Group, S.A. and Star Group Finance and Holdings, Inc., that I have read the contents of the foregoing Articles of Organization and that the statements contained therein are true and correct.

Janet M. Caruccio

On November 30, 1998, before me personally appeared Janet M. Caruccio, who being duly sworn by me upon his oath, deposed and acknowledged that he had read the contents of the foregoing Articles of Organization and further acknowledged the the facts alleged therein are true and correct. Witness my hand and official seal. My commission expires:___4-10-99___

Notary Public

ANN G. SAWYER
NOTARY PUBLIC - DELAWARE
MY COMMISSION EXPIRES 4/10/99

A - 922

8