[5]    Хотя это определение не могло быть обжаловано в момент его вынесения, обжалование стало возможно, поскольку Постановление от 12 марта 2001 было принято во время 30-дневного срока для подачи апелляционной жалобы согласно ст. 147 АПК 1995.

[6]    В соответствии с данными мне адвокатами Истцов инструкциями я делаю допущение, что судом в заседании 22 августа 2000 было проигнорировано заявление кредиторов об отклонении фиктивных требований Лебаута. В отношении этого определения мне было предложено ответить на вопрос, подлежало ли обжалованию такое определение, если бы оно было вынесено арбитражным судом  в виде отдельного акта 22 августа 2000.

[7]    В соответствии с данными мне адвокатами Истцов инструкциями я делаю допущение, что судом в заседании 22 августа 2000 было проигнорировано предложение акционеров ГОКА погасить долги ГОКа. В отношении этого определения мне было предложено ответить на вопрос, подлежало ли обжалованию такое определение, если бы оно было вынесено арбитражным судом в виде отдельного акта 22 августа 2000.

[8]    *См.* п.3 ст.68 и п.4 ст.72 Закона о Банкротстве 1998.

[9]    В соответствии с полученными инструкциями предполагаю, что ГОК, о котором идет речь в статье, это Качканарский ГОК.

[10]    Впоследствии Лебаут переуступил свои требования Сириусу.

[11]    Хотя это определение не могло быть обжаловано в момент его вынесения, обжалование стало возможно, поскольку Постановление от 12 марта 2001 было принято во время 30-дневного срока для подачи апелляционной жалобы.

A - 1026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X
BASE METAL TRADING, SA, et al.,                    :

                 Plaintiffs,        :        Docket No. 00 CIV. 9627 (JGK)

      -against-                                  :

RUSSIAN ALUMINUM, et al.,                          :

              Defendants.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - X

## **Second Declaration and Exhibits of Sergev B. Zaitsev**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

BASE METAL TRADING SA, et al.,                    Docket No. 00 Civ. 9627

              Plaintiffs,

     v.

RUSSIAN ALUMINUM, et al.,

              Defendants.

---

### SECOND EXPERT REPORT OF SERGEY B. ZAITSEV

    I, Sergey Borisovich Zaitsev, pursuant to the provisions of 28 U.S.C. § 1746, hereby declare as follows:

### TASK PRESENTED

    1.  I have been asked by counsel for plaintiffs to review the Third Declarations of I. Petrukhin and Paul A. Stephan, III (Russian translation) and comment on their statements on Russian law.

    2.  I will use the same terminology as my prior report, i.e. Arbitrazh Procedural Code of the Russian Federation enacted on July 1, 1995 ("1995 APC"); Arbitrazh Procedural Code of the Russian Federation enacted on September 1, 2002 ("2002 APC"); Civil Code of Russia ("Civil Code"); Criminal Procedural Code of Russia ("Criminal Procedural Code").[1]

### CONCLUSIONS

    3.  Based on my review of the above declarations, I conclude:

a. Judicial acts may only be reversed based on corruption pursuant to Article 311(2) and (3) of the 2002 APC after a criminal conviction is obtained, which defendants' expert Petrukhin accepts (but Stephan does not);

b. Judicial acts may not be reversed for corruption in the normal appellate process or by application to the Supreme Arbitrazh Court, which is not contested by Petrukhin (but disputed by Stephan);

c. No civil cause of action may be brought against defendants for corrupting the NKAZ and GOK bankruptcies while the judicial acts are in legal force;

d. Russian courts do not compel witness testimony or the production of documents as a practical matter, which is the exact position taken by defendants' expert Zankovsky and not disputed by Petrukhin (but disputed by Stephan).

## THIRD STEPHAN DECLARATION

4. I have reviewed the Third Stephan Declaration, as well as a summary of his deposition and comment as follows.

### Judicial Acts Cannot Be Reversed For Corruption Through Normal Appellate or Supervisory Review

5. Stephan asserts that the "normal way" of challenging "fraudulently procured judicial decisions" is through appellate review. Stephan Dec. ¶ 4. Stephan is simply wrong that judicial acts may be challenged based on corruption in the normal appellate process. As explained in my first report, judicial acts procured through corruption must be challenged pursuant to Article 311(2)&(3) of the 2002 APC. This application must be brought in the same arbitrazh court in which the judicial act was rendered and requires a prior criminal conviction of the person who corrupted the proceedings.

2

6. Contrary to Stephan's assertion, the appellate instance of an arbitrazh court does not have "capacity to consider allegations of wrongful conduct by the first instance arbitrazh court;" neither does the cassation instance nor the Supreme Arbitrazh Court have such capacity in the course of appellate review.

7. Pursuant to Article 268(1) of the 2002 APC, "when considering the case in the course of [first instance] appellate proceeding, an arbitrazh court considers the case de novo on the basis of evidence which exists in the case and on the basis of additionally submitted evidence."

8. "Additionally submitted" evidence within the meaning of Art. 268(1) concerns only the merits of the case. As the Supreme Arbitrazh Court noted "when deciding whether to admit additional evidence, [a court of the first appellate instance] shall take into consideration ... the relevance of the [additional] evidence to the circumstances material for correct resolution of the dispute."[2]

9. Thus, if corruption of judicial proceedings is not the subject of the underlying case, evidence of such corruption will not be considered by the first appellate instance.

10. Also, a party harmed by corruption in the trial instance arbitrazh court cannot assert new claims regarding corruption in the first appellate instance. Claims which were not raised in the trial instance arbitrazh court cannot be considered by the first appellate instance. *See* Article 268(7) of the 2002 APC.

11. Furthermore, Article 270(1) of the 2002 APC provides the exhaustive list of grounds to reverse or modify a decision of the trial instance arbitrazh court as follows:

3

A - 1030

incomplete identification of the circumstances material for
the case;

failure to prove the circumstances material for the case,
which the court considered established;

inconsistency of conclusions set forth in the decision to
circumstances of the case;

violation or incorrect application of provisions of
substantive law or provisions of the procedural law.

12. Corruption of judicial proceedings is not among these grounds. Therefore, even if evidence of corruption is produced (which is not permitted), the first appellate level court cannot reverse the trial court decision based on this evidence.

13. Similarly, pursuant to Article 288 of the 2002 APC, the cassation court cannot reverse judicial acts of the lower courts based on corruption of judicial proceedings if corruption was not addressed on the merits in the lower courts.

14. Review of a decision of a lower court by the cassation court (as well as the Supreme Arbitrazh Court)[3] is limited to the evidence in the record of the lower court proceedings.[4]

15. Thus, the cassation instance (and the Supreme Arbitrazh Court) may not consider evidence of the corruption of judicial acts unless these judicial acts are first challenged pursuant to Article 311 of the 2002 APC, as explained in my first report.

16. Again, the Legislature has provided a specific procedure for revising judicial acts based on corruption in Articles 311(2)&(3) of the 2002 APC (similar provisions were contained in Articles 192(2) §2 & §3 of the 1995 APC). This makes clear that Stephan's statement regarding the possibility of challenging "fraudulently procured judicial decisions" through appellate review is incorrect.[5]

4

17.    Stephan also asserts that a "fraudulently procured arbitrazh court decision" may be overturned by an application to the Supreme Arbitrazh Court for filing a protest. He states that a "party to an erroneous court judgment" may file such an application pursuant to Article 292 of the 2002 APC. He cites Article 304 of the 2002 APC for the proposition that the Supreme Arbitrazh Court may revise a prior judgment that "violates uniformity in the interpretation and application of legal norms." Stephan Dec. ¶ 6. Stephan then concludes that if the Supreme Arbitrazh Court were "presented with credible evidence of fraudulent procurement of an arbitrazh court judgment, however, there is no reason to believe it would not exercise its jurisdiction by way of supervision."

18.    Stephan confuses two different concepts.

19.    Again, as explained above, a "fraudulently procured judicial decision" may only be set aside by collateral attack pursuant to Article 311(2)&(3). If such an application is made, and not granted, a party can seek appellate review of the decision in the first level appellate court and the cassation court, and, ultimately, by filing an application to the Supreme Arbitrazh Court. *See* Article 317(5) of the 2002 APC. Only then may such evidence be considered on appeal.

20.    Stephan is correct that the Supreme Arbitrazh Court may revise a decision which "violates uniformity in the interpretation and application of legal norms." This is the standard for the review in the supervision instance and is different than attacking a judgment based on corruption: It addresses the merits of the judicial act, not whether the decision was procured illegally.

5

21.  Put simply, the APC does not permit the Supreme Arbitrazh Court to consider an application for supervision based on "credible evidence of fraudulent procurement" of a judgment and Stephan offers no basis or support for his conclusion.

**Collateral Attack For Corruption
Requires a Prior Criminal Conviction
Pursuant to Article 311 of the APC**

22.  Stephan asserts that a judgment may be collaterally attacked pursuant to the procedures set forth in Article 311 of the 2002 APC related to "newly discovered circumstances."  He notes that "only two of these seven grounds involves a determination of criminality of the persons that procured the judgment."  Stephan Dec. ¶ 7.

23.  As explained in my first report, judicial acts may be set aside based on corruption of judicial proceedings only pursuant to Article 311(2)&(3).

24.  Stephan does not disagree with this and makes no conclusion that the other provisions of Article 311 would apply.  They clearly don't.

25.  First, Article 311(1) provides that a judicial act may be revised if there are "circumstances material for the case which were not known and could not be known to the petitioner."

26.  In this regard, commentators have emphasized:

> [C]ircumstances material for the case discussed in Art. 311(1) of the [2002] APC, which were not known and could not be known to the petitioner, also should have not been known to the court ...  A definite criterion for identifying certain newly revealed circumstances as material [for the case] is their ability to affect the outcome of the case.  As a general rule, provisions of law connect these circumstances to arising, modification or termination of substantive or procedural rights of parties to the disputed legal relations.[6]

6

27. Thus, it is clear that Article 311(1) refers only to the merits of the case, and not to corruption of judicial proceedings referenced in Article 311(2)&(3).

28. In addition, if Stephan were right, there would be no purpose for Article 311(2)&(3). It is an accepted principle of statutory interpretation in Russia that if there is "a general provision and a specific provision of acts of the same level ... the latter applies".[7] In other words, the specific provision governs over the general provision.

29. Second, Article 311(4) provides that "a judicial act may be revised if another judicial act, which served as the basis for the judicial act being revised, is reversed," which is inapplicable to the present case.

30. Third, Article 311(5) provides that a judicial act "may be revised if a transaction, which caused the adoption of unlawful or ungrounded judicial act in the case, is declared invalid by a judicial act of an arbitrazh court or a court of general jurisdiction that has come into legal force," which is inapplicable to the present case.

31. Fourth, Article 311(6) provides that a judicial act may be revised "if the Constitutional Court of the Russian Federation declares unconstitutional the law applied by the arbitrazh court in the case," which is inapplicable to the present case because no substantive laws applied by the arbitrazh courts were declared unconstitutional.

32. Fifth, Article 311(7) provides that a judicial act may be revised if the European Court for Human Rights has established that the act violates the Convention on the Protection of Human Rights and Basic Freedoms, which is inapplicable to the present case.

### The Appellate Process of the Civil Procedure Code Is Irrelevant to the Corrupted Bankruptcies

7

33.  Stephan discusses the appellate process in the Civil Procedure Code ("CPC"). Stephan Dec. at ¶ 8.

34.  This is of no relevance to the corrupted bankruptcy proceedings, which all took place in the arbitrazh courts and are subject to the APC; it would only apply to certain litigation related to the GOK shareholders. [8]

### No Cause Of Action May Be Brought Unless the Relevant Judicial Acts Are Revised Pursuant to Article 311 of the APC

35.  Stephan states that an aggrieved party may bring a civil suit for damages caused by fraud or other violation of legal duty under Article 1064 of the Civil Code (Chapter59) and notes that Article 1102 and related provisions of the Civil Code (Chapter 60) create a general obligation to return property unjustly obtained.  He asserts that claims "under these articles are not predicated on prior proof of a criminal misconduct." Stephan Dec. at ¶ 9.

36.  While it is true that criminal misconduct generally need not be established in order to state a claim under these sections, this is not the case when the claims are predicated on the corruption of judicial proceedings.

37.  As explained in my first report, in order to assert a civil claim for harm suffered as a result of the corruption of legal proceedings under Chapter 59, the claimant must allege:  (i) occurrence of harm to a person or property; (ii) caused by an action; (iii) which is unlawful; (iv) through the fault of the person responsible.

38.  In order to assert a civil claim for unjust enrichment under Chapter 60, the claimant must allege that:  (i) a person; (ii) without grounds established by law; (iii) acquired property of another person or saved property at the expense of another person.

8

39. In other words, the conduct must be unlawful or without grounds established by law.

40. However, as explained in my first report, conduct cannot be unlawful or without grounds established by law if the relevant judicial acts are in legal force because Article 8(1) of the Civil Code provides that court decisions constitute legal grounds and Article 16(1) of the 2002 APC requires courts to recognize judicial acts which are in legal force.

41. Stephan does not provide even a cursory analysis of the elements of claims under Article 1064 or Article 1102, or how such claims could be brought while the judicial acts are in legal force.

### Reversal of the Judicial Acts by the Supreme Arbitrazh Court Based On Error Will Not Support A Cause of Action Against Defendants For Corrupting the Bankruptcies

42. As discussed in my prior report, applications for protests are rarely granted by the Supreme Arbitrazh Court; only about 3% of the applications were granted in 2001.

43. I am in agreement with V.V. Golubev, who states in his Second Expert Report that the likelihood of review of decisions in a closed bankruptcy case is practically nil, which is plainly the case when the decisions are based on disputed issues of fact.

44. Even if the application were granted and the NKAZ or GOK bankruptcies set aside in some fashion, the Supreme Arbitrazh Court would simply remand the case to the arbitrazh courts in Kemerevo and Sverdlovsk.

45. The matters would therefore remain under the jurisdiction of the same courts which defendants allegedly corrupted and the risk of continued corruption would remain.

46. Even assuming the best possible result, that the bankruptcies were ultimately terminated, this would not assist plaintiffs.

9

47. First, in regard to claims under Chapter 59 (Article 1064), the status quo between the Aluminum Plaintiffs and NKAZ, as well as between certain Vanadium Plaintiffs and GOK, would not be restored since the Defendants now control both plants.

48. Second, in regard to claims for unjust enrichment under Chapter 60 (Article 1102 and 1107), such reversal would also not affect the fact that no property of plaintiffs was transferred to defendants based on the corrupted bankruptcies for the reasons stated in my first report. Therefore, no claim would lie under Chapter 60 related to the corrupt bankruptcies against defendants.

### Civil Claims in Criminal Proceedings

49. Stephan discusses means by which a civil claim may be asserted in conjunction with a criminal proceeding. Stephan Dec. at ¶10.

50. While this is generally true, I note that Stephan does not address the difficulties involved in bringing criminal claims against a judge.

51. As explained in my first report, pursuant to Article 16 of the Federal Law -- "On Status of Judges in the Russian Federation" -- criminal proceedings against an arbitrazh court judge may only be taken by the General Public Prosecutor of Russia on the basis of a decision of a three judge panel of the Supreme Court and with the consent of the Higher Qualification Panel of Judges of the Russian Federation, which is the state body responsible, inter alia, for supervising judges. Thus, the criminal prosecution, let alone conviction, of judges is very rare.

52. Also, as Stephan observes, criminal cases may only be brought against individuals, not legal entities. Stephan Dec. at ¶ 14. Thus, a criminal proceeding would not provide an avenue of redress against the various corporate defendants.

10

## Venue

53.   Stephan discusses possible venues for bringing civil claims.  Stephan Dec. at ¶¶ 12-15.

54.   It may be possible to bring claims in a Moscow court <u>after</u> an Article 311 petition is granted.

55.   However, the risk of corruption of legal proceedings in Moscow is as great as in other regions when powerful Russian interests are involved, as explained in my first expert report.

56. The corruption of the Russian judicial system does not always result from the bribing of a judge in a particular case.  In cases where powerful Russian interests are involved, it is enough for such interests to be able to influence the Chief Judge of an Arbitrazh court or court of general jurisdiction.  Given that the other judges are administratively dependant on the Chief Judge, in practice the Chief Judge can procure a desirable decision for an interested party.  In my first declaration, I gave some examples which occurred in the Federal Arbitrazh Court for the District of Moscow.

57. Chief Judges in turn are dependant on regional authorities.  This is confirmed by defendant's own expert, Petrukhin, in his article "Reform in Criminal Proceeding: Problems and Perspectives", published in the Russian legal magazine "Zakonodatelstvo" in March, 2001.  There, he stated that "contrary to Art. 124 of the Constitution of Russia, financing of courts is openly or secretly conducted not only by the federal budget, but also budgets of subjects [regions of Russia] of the [Russian] Federation which places courts in a position of dependence on the local powers."[9]

11

58. Based on my practical experience as a Judge for almost 20 years, I know that such financing by local authorities is commonplace in all Russian regions, including Moscow, and relates both to courts of general jurisdiction and arbitrazh courts. For example, I personally know that in Moscow the local government, contrary to Russian law, financed the Moscow courts in an amount exceeding US $1.4 mln in 1998 and US $1.1 mln in 1999. These funds were used for both housekeeping needs (building renovation, etc.) and supplemental payrolls to judges.

59. Politically connected and powerful Russian economic interests, such as defendants in this case, use contacts with regional powers to procure desirable decisions in court cases which affect their interests. There is no need to reach an individual judge if the influence can be secured at the Chief Judge level.

### Russian Courts Do Not Compel Witness Testimony and the Production of Documents In Economic Disputes In Practice Contrary to Stephan's Theoretical Understanding of Russian Law

60. Stephan discusses procedures for witness testimony and the production of evidence under the APC and CPC. Stephan Dec. at ¶ 16.

61. He says that courts "have the power to compel the production of evidence, including testimony" and "may allow the parties to challenge their opponents' evidence and to attack its credibility, including attacks on testimonial evidence." Stephan Dec. at ¶ 16.

62. While this may be true in theory, this is not the practice in reality.

63. In fact, arbitrazh courts rarely permit witness testimony or compel the production of evidence; nor would courts of general jurisdiction operate differently in regard to an economic dispute.

12

64. According to the summary of Stephan's deposition provided to me, he has only been to Russia once in the past five years and has not attended court proceedings since 1998.

65. Unlike Stephan, I have been involved in court proceedings in the former Soviet Union and Russia for almost twenty years.

66. I would note that my opinion is universally shared by judges and practitioners.

67. S. Amosov, the Chairman of the Federal Arbitrazh Court for the Eastern Siberian Circuit states that despite "the wide scope of [admissible] evidence in arbitrazh proceedings, in practice the most often used types of evidence are reports, agreements, references, business correspondence, and other documents and materials, i.e., written evidence . . .. The conclusions of arbitrazh courts are very rarely based on references to the testimony of witnesses. Certainly, arbitrazh proceedings are such that in an absolute majority of cases witness testimony is not permitted at all ... [and the low weight given to witness testimony] often significantly undermines the correctness of the court's conclusions."[9]

68. V.V. Molchanov, an adjunct professor at Moscow State University, states that "[t]he testimony of witnesses is not very widely used as a mean of proof in arbitrazh proceeding."[10]

69. Defendants' other expert, Professor Zankovsky, takes the same position. In his Second Declaration, he stated: "Indeed, Russian arbitrazh courts have no authority to summon witnesses, either on their own initiative, or at the request of the parties . . .. The cross-examination of witnesses, as a trial procedure aimed at determining whether

A - 1040

evidence presented is truthful, simply does not exist in Russian law." Zankovsky Second Dec. ¶ 77.

70.  I would add that Petrukhin, an academic who does not appear to have any practical court experience based on his Second Declaration, does not assert that Russian courts compel witness testimony and the production of documents in practice.

### THIRD PETRUKHIN DECLARATION

71.    I have reviewed the Third Petrukhin Declaration and comment as follows.

#### The Russian Criminal Code and Filing Civil Claims
#### Within a Criminal Proceeding

72.    Petrukhin discusses various provisions of the Russian Criminal Code. Petrukhin Dec. at ¶¶ 6-12.

73.    Petrukhin also discusses various means by which claims may be brought in connection with criminal proceedings. Petrukhin Dec. at ¶¶ 13-26.

74.    I agree that the individual defendants' alleged conduct violates numerous provisions of the Russian Criminal Code; however, it is impossible to understand the relevance of this to plaintiffs' current ability to bring civil claims.

75.    Petrukhin asserts that prosecution of the alleged crimes would likely be conducted by the General Prosecutor's Office in Moscow. There is no reason to believe such would be the case. Although the case should be investigated by the Public Prosecutor's office, the venue of the preliminary investigation is determined by the place where the criminal actions were committed, which would lie within the Public Prosecutor's offices in the Kemerovo and Sverdlovsk regions. *See* Article 152 of the Criminal Procedure Code.[11]

14

76. Petrukhin also asserts that the trial of a corrupted judge would most likely be conducted by the Russian Supreme Court. There is no reason to believe that this would be the case. Rather, according to the general rule set forth in Article 31 of the Criminal Procedure Code,[12] it is the court where the criminal conduct took place which would have jurisdiction over the case. The case would only be moved to Supreme Court in Moscow if an accused judge so petitioned. *See* Art. 452 of the Criminal Procedure Code.[13]

### Civil Claims

77. Petrukhin discusses civil claims under Chapter 59 (Article 1064) and Chapter 60 (Articles 1102 and 1107) of the Civil Code. Petrukhin Dec. at ¶ 28.

78. Petrukhin is correct that the criminal conviction of persons involved in corruption would support civil claims. This, of course, is the key point made in my first declaration – in fact, it is required in order to revise judicial acts in legal effect.

79. Petrukhin's statement that "unlawful acts ... by Defendants, as established by authorized bodies even in the absence of a guilty verdict would carry considerable evidentiary weight in any further arbitrazh or court of general jurisdiction proceedings" is difficult to understand because he does not specify the "authorized body" or the nature of the determination which he is describing.

80. Records of a criminal case, let alone one which did not result in a conviction, are not public documents and it is unlikely that a party could access and produce them in court. Even if such evidence -- whatever it might be -- were presented to the court, Article 71(5) of the 2002 APC provides that "[n]o evidence shall have a preordained validity for the arbitration court." Thus, Petrukhin's assertion that an arbitrazh court would give these undescribed determinations "considerable weight" is not correct.

A - 1042

### Petrukhin Correctly States that Collateral Attack Pursuant to Article 311 Requires A Prior Criminal Conviction As Set Forth in My First Expert Report

81.    Petrukhin discusses the means by which a collateral attack may be made pursuant to Article 311 of the APC.  Petrukhin Dec. at ¶¶ 29-32.

82.    Petrukhin is correct that the petition to revise the prior judicial act must be brought in the same court where the judicial act was entered, i.e., Kemerevo or Sverdlovsk.  Petrukhin Dec. at ¶ 32.

83.    Petrukhin is also correct that the petition asserting the corruption of judicial proceedings may not be filed until the criminal conduct is established by a criminal verdict.  Petrukhin Dec. at ¶¶ 29-31.

### Petrukhin's Discussion of Review By the Supreme Arbitrazh Court Is Either Ambiguous or Incorrect

84.    Petrukhin discusses Stephan's statement regarding supervisory review by the Supreme Arbitrazh Court. Petrukhin Dec. at ¶ 33.

85.    He states that "if serious procedural violations, such as falsification of evidence, are established, there is a high probability that the decision will be reviewed."

86.    Petrukhin's statement is ambiguous.

87.    If he means that falsification of evidence is "established" by criminal court conviction, after a petition was filed pursuant to Article 311 of the 2002 APC with the trial court and reviewed by the appellate courts, it is possible for a petition to be filed with the Supreme Arbitrazh Court.

88.    If he means something else, his statement makes no sense because there is no other means by which this may be established under Russian law.

16

## Commercial Arbitration

89. Petrukhin discusses the possibility of claims by certain Plaintiffs being brought against NKAZ in commercial arbitrations. Petrukhin Dec. at ¶¶ 34-37.

90. This, of course, has nothing to do with whether Russian law provides causes of action in Russia for harm caused by the corruption of the NKAZ and GOK bankruptcies.

A - 1044

I have executed this affidavit outside the United States of America and declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true to the best of my knowledge and belief.

_____

[1]     Relevant portions of the 1995 APC are attached as Exhibit "1", of the 2002 APC as Exhibit "2", of the Civil Code as Exhibit "3", and of the Criminal Procedural Code as Exhibit "4".

[2]     *See* Resolution of the Plenum of the Supreme Arbitrazh Court of the Russian Federation #11 "On Application Of The Arbitrazh Procedural Code Of The Russian Federation In The Course Of Consideration Of Cases In The Appellate Instance" dated June 19, 1997. Exhibit "5".

[3]     In addition to the authority cited in my first expert report with regard to this issue, *see also* Resolution of the Constitutional Court of the Russian Federation #5-P "On Reviewing A Case Contesting Constitutionality of Art. 180, 181, 187(1)§3 and 192 of the Arbitrazh Procedural Code of the Russian Federation", dated February 3, 1998 ("when examining a case by way of supervision, [the Supreme Arbitrazh Court of the Russian Federation] does not directly examine evidence and does not directly establish factual circumstances, since [the Supreme Arbitrazh Court of the Russian Federation] cannot substitute [a court of the trial instance and a court of the first appellate instance] which independently examine and evaluate evidence and establish factual circumstances of the case on the basis of principles of competitiveness and equality of [parties to the proceeding] and continuity of judicial proceeding." Exhibit "6".

[4]     *See* Resolution of the Plenum of the Supreme Arbitrazh Court of the Russian Federation #13 "On Application Of The Arbitrazh Procedural Code Of The Russian Federation In The Course Of Consideration Of Cases In An Arbitrazh Court Of The Cassation Instance" dated September 24, 1999 ("an arbitrazh court of the cassation instance reviews accuracy of application by courts of the first and appellate instances of provisions of substantive and procedural law in a certain case with regard to its factual circumstances, which were determined in the course of consideration of the case in the courts of the first and appellate instances"). Exhibit "7". *See also* ARBITRAZH PROCEDURE TEXTBOOK, at 390 (M. Treushnikov et.al., 5th ed., Moscow, 2002) ("An arbitrazh court of the cassation instance reviews accuracy of application by courts of the first and appellate instances of provisions of substantive and procedural law in a certain case with regard to its factual circumstances, which were determined in the course of consideration of the case in the courts of the first and appellate instances."). Exhibit "8".

[5]     In this regard, *see* COMMENTARY TO THE ARBITRAZH PROCEDURAL CODE OF THE RUSSIAN FEDERATION, at 787 (G. Zhilin. ed., Moscow, 2003). ("One of the distinctive features of the revising of judicial acts of arbitrazh courts due to newly revealed circumstances is in that doubts in lawfulness and soundness of judicial acts do not concern violation of provisions of substantive and procedural law or incorrect evaluation of circumstances material for the case, but concern revelation, after the judicial act has come into legal force, of circumstances material for the case, which have not been considered by the court when issuing a decision"). Exhibit "9".

19

A - 1046

[6]    *See* COMMENTARY TO THE ARBITRAZH PROCEDURAL CODE OF THE RUSSIAN FEDERATION, at 788 (G. Zhilin, ed., Moscow, 2003). Exhibit "9".

[7]    *See, e.g.,* THE THEORY OF STATE AND LAW: A SERIES OF LECTURES, at 471 (N. Matuzov et.al., 2nd ed., Moscow, 2001). Exhibit "10".

[8]    Pursuant to Article 33 of APC 2002 "Special Subject-Matter Jurisdiction of Arbitrazh Courts", "Arbitrazh courts consider cases: 1) on insolvency (bankruptcy)... The given cases are considered by arbitrazh courts regardless of whether individuals, legal entities, individual entrepreneurs or other organizations and citizens are parties to the legal relations out of which the dispute or claim arose."

[9] This article by Petrukhin is attached as Exhibit "C" to the Letter of James L. Bernard, dated February 25, 2003.

[9]    S. Amosov "On Probability and Correctness of Conclusions of Arbitrazh Courts", *Khoziaystvo I Pravo # 12,* 1997. Exhibit "11".

[10]    ARBITRAZH PROCEDURE TEXTBOOK, at 200 (M. Treushnikov et.al., 5th ed., Moscow, 2002). Exhibit "12".

[11]    Article 152. "A place of conducting of preliminary investigation":

    1. Preliminary investigation shall be conducted in a place of perpetration of the act containing signs of a crime, except for the cases stipulated by the present article. In case of need of conducting of investigatory or detective actions in another place the investigator is authorized to conduct them personally or to charge with the conducting of these actions the investigator or body of inquiry accordingly which is obliged to execute the order within the time not exceeding 10 days.
    2. If the crime was started in one place and completed in another place the criminal case shall be investigated in the place of the completion of a crime.
    3. If crimes are committed in different places upon the decision of a public prosecutor the criminal case shall be investigated in a place of perpetration of the majority of crimes or the gravest of them.
    4. Preliminary investigation can be conducted in the place of location of the accused or the majority of witnesses for with a view to ensure its completeness, objectivity and observance of procedural terms.
    5. An investigator, inquirer having established that a criminal case is not within his competence shall conduct urgent investigatory actions and thereafter transfer the criminal case to a public prosecutor for referral to the competent investigative authorities.

[12]    Pursuant Article 31 (3) of the Criminal Procedure Code "[t]he Supreme court of a republic, territorial or regional court, court of city of federal importance, court of autonomous region or court of autonomous district shall have jurisdiction over the criminal cases on crimes provided for by articles... 294 [interference with the

administration of justice], ... 303 (2,3) [falsification of evidence],... 305 [knowingly giving an unjust judgment, decision, or any other judicial act] of the Criminal Code of the Russian Federation".

[13]      Pursuant to Article 452 of the Criminal Procedural Code "Examination of the criminal case against a member of the Council of Federation, a deputy of the State Duma, a judge of a federal court":

> A criminal case in respect of a member of the Council of Federation, a deputy of the State Duma, a judge of a federal court shall be examined by the Supreme Court of the Russian Federation upon their petition lodged before the commencement of the court hearings.

A - 1048

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

BASE METAL TRADING SA et al                    Docket No. 00 Civ. 9627

**Plaintiffs**

**v.**

RUSSIAN ALUMINUM et al.

**Defendants**

---

## ВТОРОЕ ЗАЯВЛЕНИЕ СЕРГЕЯ Б. ЗАЙЦЕВА

Я, Сергей Борисович Зайцев, в соответствии с положениями 28 U.S.C. § 1746, настоящим заявляю следующее:

### ЗАДАЧА ПОСТАВЛЕННАЯ ПЕРЕДО МНОЙ

1.    Ко мне обратились адвокаты истцов с просьбой ознакомиться с Третьими Заявлениями  И. Л. Петрухина и Пола А. Стефана, III (в переводе на русский) и высказать свою точку зрения по поводу их интерпретации  российского права.

2.    Я буду использовать ту же терминологию, которую я использовал в своем предыдущем заключении, т.е. Арбитражный процессуальный кодекс Российской Федерации, введенный в действие 1 июля 1995 г. ("АПК 1995" ); Арбитражный процессуальный кодекс Российской Федерации, введенный в действие 1 сентября 2002г. ("АПК 2002"); Гражданский кодекс России ("Гражданский кодекс"); Уголовный Кодекс России ("Уголовный кодекс"); Уголовно-процессуальный кодекс России ("Уголовно-процессуальный кодекс")[1];

A - 1050

## ВЫВОДЫ

3.   Ознакомившись с вышеуказанными декларациями, я пришел к следующим заключениям:

   a.   Судебные акты могут быть отменены на основании их коррумпированности, только в соответствии с п. 2 и 3 ст. 311 АПК 2002 и только при наличии обвинительного приговора, с чем соглашается эксперт ответчиков Петрухин (и не соглашается Стефан);

   b.   Судебные акты не могут быть отменены на основании коррупции посредством апелляционного обжалования в обычном порядке или при подаче заявление в Высший арбитражный суд, что не оспаривается Петрухиным (однако Стефан не согласен с этим);

   c.   Исключается возможность принесения иска против ответчиков за коррумпирование процедур банкротства НКАЗа и ГОКа, пока судебные акты обладают законной силой;

   d.   Российские суды на практике не используют принудительного привода свидетелей для дачи показаний и не прибегают к истребованию документов, что полностью совпадает с позицией эксперта ответчиков Занковского, с чем не спорит Петрухин (однако Стефан не согласен с этим).

## ТРЕТЬЕ ЗАЯВЛЕНИЕ СТЕФАНА

4.   Я ознакомился с Третьим Заявлением Стефана а также с кратким изложением его показаний, данных под присягой, и заключаю следующее.

A - 1051

**Нельзя добиться отмены судебных актов, вынесенных посредством коррумпированных судебных процедур прибегнув к пересмотру в апелляционной инстанции в общем порядке**

5.  Стефан утверждает, что "обычный путь" оспаривания "судебных решений, полученных обманным путем" лежит через их пересмотр апелляционной инстанцией.  Заявление Стефана ¶4.  Утверждение Стефана о том, что судебные акты могут быть обжалованы в обычном апелляционном порядке на основании их коррумпированности, является попросту ошибочным. Как я разъясняю в своем первом заявлении, судебные акты полученные обманным путем, могу быть обжалованы только в порядке п. 2 и 3 ст. 311 АПК 2002. Такое заявление должно быть подано в тот же арбитражный суд, который вынес судебное решение, при этом необходимо, чтобы лицо, коррумпировавшее судебный процесс, было предварительно осуждено в уголовном порядке.

6.  Несмотря на то, что Стефан утверждает обратное, в компетенцию апелляционной инстанции арбитражных судов не входит "возможность рассматривать утверждения о незаконных действиях арбитражного суда первой инстанции", что также не входит и в компетенцию кассационной инстанции или Высшего Арбитражного, если дело рассматривается в порядке апелляционного производства.

7.  В соответствии с п. 1 ст. 268 АПК 2002 "При рассмотрении дела в порядке апелляционного производства арбитражный суд по имеющимся в деле и дополнительно представленным доказательствам повторно рассматривает дело."

8.  "Дополнительно представленные" доказательства в значении п.1 ст. 268 касаются исключительно существа дела. Как было отмечено Высшим

3

арбитражным судом "при решении вопроса о принятии дополнительных доказательств [суд апелляционной инстанции] принимает во внимание ... относимость доказательств к обстоятельствам, имеющим значение для правильного разрешения спора."[2]

9.  Таким образом, если коррумпированность судебных процедур не входила в предмет доказывания обжалуемого решения, доказательства, свидетельствующие о такой коррумпированности, не будут исследоваться апелляционной инстанцией.

10. Также следует отметить, что лицо, пострадавшее в результате коррумпированности при рассмотрении дела арбитражным судом первой инстанции, не может выдвигать новые требования, основанные на утверждениях об имевшей место коррупции,  в апелляционной инстанции. Требования, которые не были предъявлены в арбитражном суде первой инстанции, не могут рассматриваться апелляционной инстанцией. См п. 7 ст. 268 АПК 2002.

11.  Более того, п. 1 ст. 270 АПК 2002 содержит исчерпывающий перечень оснований отмены или изменения решения  арбитражного суда первой инстанции, а именно:.

неполное  выяснение  обстоятельств,  имеющих  значение для дела;

недоказанность    имеющих    значение    для    дела обстоятельств, которые суд считал установленными;

несоответствие   выводов,   изложенных   в   решении, обстоятельствам дела;

нарушение или неправильное применение норм материального права или норм процессуального права.

A - 1053

12. Коррумпированность судебных процедур не входит в этот перечень. Следовательно, даже если доказательства, свидетельствующие о коррупции будут представлены (что не предусмотрено), суд апелляционной инстанции не может отменить решение нижестоящей инстанции на основании таких доказательств.

13. Схожим образом, в соответствии со ст. 288 АПК 2002, суд кассационной инстанции не может отменить судебные акты, вынесенные нижестоящими судами на том основании, что судебные процедуры были коррумпированы, если коррупция не рассматривалась как часть рассмотрения дела по существу нижестоящим судом.

14. Пересмотр решения нижестоящего суда кассационной инстанцией (также как и Высшим арбитражным судом[3]) ограничивается рамками доказательств, уже имеющихся в деле и исследованных при рассмотрении дела нижестоящим судом[4].

15. Таким образом, суд кассационной инстанции (а также Высший арбитражный суд) не может рассматривать доказательства, свидетельствующее о коррупции, если только соответствующие судебные акты, первоначально не будут оспорены в порядке ст. 311 АПК 2002, как уже разъяснялось в моем первом заявлении.

16. Опять-таки, законодатель предусматривает специальную процедуру для пересмотра судебных актов на основе фактов коррупции в п.2 и 3 ст. 311 АПК 2002. (Сходные положения содержались в ч. 2 пп. 2 и 3 ст. 192  АПК 1995.) Из этого совершенно очевидно, что утверждения Стефана о возможности обжалования "судебных решения, полученных обманным путем" путем подачи апелляционной жалобы является неверным[5].

A - 1054

17.    Стефан также утверждает, что "решение арбитражного суда, полученное нечестным путем" может быть отменено путем подачи в ВАС заявления о принесении протеста. Он утверждает, что "сторона, чьи интересы затрагивает ошибочно вынесенное судебное решение" может подать такое заявление в соответствии со ст. 292 АПК 2002. Он ссылается на ст. 304 АПК 2002 в подтверждение того, что ВАС может пересмотреть вынесенное ранее решение на основе того, что оно "нарушает единообразие в толковании и применении [арбитражными судами] норм права." Заявление Стефана ¶6. Стефан затем приходит к выводу о том, что если в ВАС были бы "представлены убедительные доказательства того, что решение арбитражного суда было получено обманном путем, то нет оснований полагать, что он [ВАС] не воспользовался бы своими полномочиями по пересмотру судебных решений в порядке надзора".

18.    Стефан допускает смешение двух различных понятий.

19.    Опять-таки, как уже разъяснялось выше, "решение полученное обманным путем" может быть отменено только в порядке пересмотра по вновь открывшимся обстоятельствам в соответствии п. 2 и 3 ст. 311. Если подано заявление о таком пересмотре, однако заявителю отказано в его удовлетворении, сторона может обжаловать такой отказ арбитражного суда первой инстанции в апелляционную и кассационную инстанции и, в конечном счете, подать заявление в Высший Арбитражный суд России. См п. 5 ст. 317 АПК 2002. Только в этом случае соответствующие доказательства будут рассмотрены в ходе производства по пересмотру решений.

6

20. Стефан верно отмечает, что Высший Арбитражный суд может пересмотреть решение, которое "нарушает единообразие в толковании и применении [арбитражными судами] норм права". Это - основание для пересмотра в надзорной инстанции, и такой пересмотр отличается от оспаривания судебного решения на основании его коррумпированности: в надзорном производстве предметом рассмотрения является правомерность самого решения, а не то, добился ли кто-либо принятия решения при помощи незаконных средств.

21. Проще говоря, АПК не позволяет Высшему Арбитражному суду пересмотреть дело на основании заявления, ссылающегося на "убедительные доказательства того, что решение было получено обманным путем", причем Стефан не приводит ни одной ссылки на какой-либо источник, который подтверждал бы верность его выводов.

**Для пересмотр дела по вновь открывшимся обстоятельствам необходимо осуждение в порядке уголовного судопроизводства, как предусмотрено ст. 311 АПК.**

22. Стефан утверждает, что решение может быть пересмотрено в соответствии и в порядке, предусмотренном ст. 311 АПК 2002 "по вновь открывшимся обстоятельствам". Он отмечает, что "лишь два из семи оснований [для пересмотра] требуют установления преступного характера действий лиц, которые добились [вынесения] решения, приговором суда по уголовному делу." Заявление Стефана ¶7.

23. Как я разъяснил в своем первом экспертном заключении, судебные акты могут быть отменены на том основании, что они были вынесены в коррумпированных судебных процедурах в соответствии с п. 2 и 3 ст. 311.

A - 1056

24.   Стефан с этим не спорит и не приходит к выводу о том, что применению подлежит какой-либо другой пункт ст. 311. Несомненно, ни один из других пунктов ст. 311 не применим в данной ситуации.

25.   Прежде всего, в соответствии с п. 1 ст. 311, основанием для пересмотра судебного акта по вновь открывшимся обстоятельствам, являются "существенные для дела обстоятельства, которые не были и не могли быть известны заявителю."

26. В этой связи в комментариях отмечается следующее:

> Существенные для дела обстоятельства, о которых идет речь в п. 1 ст. 311 АПК, которые не были и не могли быть известны заявителю, также не должны быть известны и суду. ... Определенным критерием отнесения вновь открывшихся обстоятельств к существенным может являться их способность повлиять на исход дела. Как правило, с этими обстоятельствами нормы права связывают возникновение, изменение или прекращение материальных или процессуальных прав участников спорных правоотношений.[6]

27. Из этого ясно, что п. 1 ст. 311 относится только к разрешению дела по существу, а не к коррумпированности судебных процедур, о чем идет речь в пп.2 и 3 ст. 311.

28. Более того, если бы Стефан был прав, то не было бы никакого смысла в пп. 2 и 3 ст. 311. В соответствии с общими принципами толкования российского законодательства, если законодательством предусмотрена специальная норма, то применению подлежит специальная нома, а не норма описывающая общее правило[7]. Иными словами, специальная норма имеет приоритет над общей.

29. Во-вторых, в соответствии с п. 4 ст. 311, основанием для пересмотра судебного акта является "отмена судебного акта арбитражного суда или суда

8

общей юрисдикции либо постановления другого органа, послуживших основанием

для принятия судебного акта по данному делу". В данном случае это основание не

применимо.

30. В-третьих, в соответствии с п. 5 ст. 311, основанием для пересмотра

судебного акта является "признанная вступившим в законную силу судебным

актом арбитражного суда или суда общей юрисдикции недействительной сделка,

повлекшая за собой принятие незаконного или необоснованного судебного акта по

данному делу". Это основание не применимо в данном деле.

31. В-четвертых, в соответствии с п. 6 ст. 311, основанием для пересмотра

судебного акта является "признание Конституционным Судом Российской

Федерации не соответствующим Конституции Российской Федерации закона,

примененного арбитражным судом в конкретном деле, в связи с принятием

решения по которому заявитель обращался в Конституционный Суд Российской

Федерации." Это основание не применимо в данном деле, т.к. положения законов,

примененные арбитражными судами, не были признаны не соответствующими

Конституции.

32. В-пятых, в соответствии с п. 7 ст. 311, основанием для пересмотра

судебного акта является " установленное Европейским Судом по правам человека

нарушение положений Конвенции о защите прав человека и основных свобод при

рассмотрении арбитражным судом конкретного дела, в связи с принятием решения

по которому заявитель обращался в Европейский Суд по правам человека." Это

основание не применимо в данном деле.

9

**Ссылки на положения гражданско-процессуального кодекса, регулирующие порядок обжалования не имеют смысла при обсуждении вопросов коррумпированных банкротств**

33.   Стефан обсуждает процедуру апелляционного обжалования, предусмотренную Гражданско-процессуальным кодексом ("ГПК"). Заявление Стефана ¶8.

34.   Такое обсуждение не имеет отношения к коррумпированным процедурам банкротства, которые все имели место в арбитражных судах и регулируются АПК; Гражданский процессуальный кодекс регулирует только определенные судебные разбирательства, в которых участвовали акционеры ГОКа [8].

**Если соответствующие судебные акты не будут отменены в соответствии со ст. 311 АПК 2002, основание для принесения иска будет отсутствовать**

35.   Стефан утверждает, что пострадавшая сторона может предъявить иск в порядке гражданского судопроизводства о возмещении ущерба, нанесенного обманными действиями или другими нарушениями юридических обязанностей в соответствии со ст. 1064 Гражданского кодекса (Глава 59) и отмечает, что ст. 1102 и соответствующие положения Гражданского кодекса (Глава 60) в общем предусматривают обязанность вернуть необоснованно полученное имущество . Он утверждает, что исковые требования, предъявленные "в соответствии с этими статьями не обусловлены предшествующим доказательством преступности деяний."  Заявление Стефана ¶9.

36.   В то время как для предъявления иска в соответствии с указанными главами в общем, действительно, не требуется предварительного установления

A - 1059

факта преступного деяния, картина меняется, если исковые требования обусловлены коррумпированным характером судебных процедур.

37.  Как я уже разъяснял в своем первом заявлении, для того чтобы предъявить иск на основании вреда, понесенного в результате коррумпированных судебных процедур в соответствии с Главой 59, заявитель должен обосновать  (i) причинение вреда лицу или имуществу; (ii) вызванного действием; (iii) являющимся противоправным; (iv) вследствие вины лица, которое несет ответственность.

38.  Для того чтобы предъявить иск из неосновательного обогащения как предусмотрено Главой 60 истцу необходимо обосновать, что (1) лицо (2) без установленных законом оснований (3) получило имущество другого лица или сберегло имущество за счет другого лица.

39. Другими словами, деяния должны представлять из себя противоправные деяния или деяния без предусмотренных на то законом оснований.

40. Однако, как уже объясняется в моем первом заявлении, деяния не являются противоправным или не представляют из себя деяний без предусмотренных на то законом оснований, если соответствующий судебный акт обладает законной силой, так как в соответствии со п. 1 ст. 8 Гражданского кодекса решения суда представляют из себя законные основания, а п. 1 ст.16 АПК 2002 требует от судов исполнять судебные акты, обладающие законной силой.

41. Стефан не приводит даже поверхностного анализа элементов исковых требований предусмотренных ст. 1064 и 1102 и не говорит о том, каким образом такие требования могут быть предъявлены при наличии судебных актов, обладающих законной силой.

A - 1060

**Отмена судебных актов Высшим арбитражным судом на основании судебной ошибки не предоставляет достаточного основания для иска к ответчикам об ответственности за коррумпирование процедур банкротства.**

42. Как обсуждалось в моем предыдущем заключении, заявления о принесении протеста редко удовлетворяются Высшим арбитражным судом; лишь 3% заявлений были удовлетворены в 2001 году.

43. Я согласен с В.В. Голубевым, который в своем Втором Заявлении говорим о том, что вероятность пересмотра решений по завершенным делам о банкротстве практически равна нулю, что является типичной ситуацием в случаях, когда решения выносятся на основании спорных фактов.

44. Даже если заявление о принесении протеста будет удовлетворено и решения по делам о банкротстве НКАЗа и ГОКа будут тем или иным образом отменены, Высший арбитражный суд просто-напросто направит дело на новое рассмотрение в арбитражный суд Кемеровской и Свердловской областей соответственно.

45. Данные дела, таким образом, останутся подсудными тем же судам, в отношении которых были сделаны заявления об их коррумпированности ответчиками и риск коррупции сохранится.

46. Даже если предположить, что будет достигнут наилучший результат, а именно, процедуры банкротства будут в конечном итоге прекращены, такой результат, тем не менее, не принес бы истцам большой пользы .

47. Прежде всего, что касается требований, связанных с причинением вреда, как предусмотрено Главой 59 (статья 1064), невозможно будет достигнуть статуса

A - 1061

кво между Алюминиевыми истцами и НКАЗом, а также между Ванадиевыми

Истцами и ГОКом, так как Ответчики в настоящий момент контролируют оба

завода.

48. Во-вторых, что касается требований из неосновательного обогащения в

рамках, предусмотренных Главой 60 (статья 1102), отмена решений также не даст

положительного результата, так как никакого имущества, принадлежавшего

Истцам, не было передано Ответчикам в результате коррумпированных банкротств

по причинам, указанным в моем первом заявлении. Таким образом, отсутствует

основание для предъявления иска против Ответчиков в рамках Главы 60 в

отношении коррумпированных процедур банкротства.

### Гражданский иск в уголовном процессе

49.  Стефан рассуждает о способах предъявления иска в рамках уголовного

судопроизводства. Заявление Стефан ¶10.

50.  В то время, как в целом рассуждения соответствуют действительности, мне

следует отметить, что Стефан совсем на упоминает о сложности, с которой

сопряжено возбуждение уголовного дела в отношении судьи.

51. Как разъяснено в моем первом заявлении, в соответствии со ст. 16

Федерального закона "О статусе судей в Российской Федерации", уголовное

производство в отношении судьи арбитражного суда может быть возбуждено

только Генеральным Прокурором Российской Федерации на основании заключения

судебной коллегии из трех судей Верховного Суда Российской Федерации и с

согласия Квалификационной Коллегии Судей Российской Федерации, которая

является органом, осуществляющим среди прочего, надзор за деятельностью судей.

A - 1062

Таким образом, уголовное преследование в отношении судьи - явление крайне редкое.

52.  Также, как замечает Стефан, уголовному преследованию могут подвергаться только физические лица, а не юридические лица.  Заявление Стефана ¶14.  Таким образом в уголовном производстве не предусмотрено путей возмещения убытков со стороны Ответчиков-юридических лиц.

## Место рассмотрения

53.  Стефан рассуждает о возможных местах предъявления исков. Заявление Стефана ¶12-15.

54.  Представляется возможным предъявление иска в суде в Москве, после того как будет удовлетворено заявление о пересмотре дела по вновь открывшимся обстоятельствам, в соответствии со  ст. 311 АПК.

55.  Однако риск коррупции судебных процедур в Москве так же велик как и  в регионах в случаях, когда затронуты интересы влиятельных в России лиц, о чем уже шла речь в моем первом заявлении.

56. Коррумпированность судебной системы России не всегда следует из взяточничества судьи в отдельно взятом деле. В случаях, когда затронуты могущественные российские интересы, для таких интересов достаточно иметь возможность оказывать влияние на Председателя любого арбитражного суда или суда общей юрисдикции. Учитывая тот факт, что все другие судьи административно подчинены Председателю суда, Председатель суда практически всегда может обеспечить принятие желаемого для заинтересованной стороны

14

A - 1063

решения. В моем первом заявлении, я привел некоторые подтверждающие это

примеры, имевшие место в Федеральном Арбитражном Суде Московского округа.

57.  Председатели судов, в свою очередь, зависят от региональных органов

власти. Это, собственно, подтверждает и эксперт ответчиков - Петрухин в своей

статье " Реформа уголовного судопроизводства: проблемы и перспективы ",

опубликованной в российском юридическом журнале "Законодательство" – в марте

2001 года. В статье, он заявил, что " вопреки Статье 124 Конституции РФ

финансирование судов ясно или скрыто производится не только из федерального

бюджета, но и из средств субъектов федерации, что ставит суды в зависимость от

местной власти."[9]

58. Основываясь на моем почти 20-летнем практическом опыте работы в

должности судьи, я знаю, что такое финансирование местными органами власти

является обычным во всех российских регионах, включая Москву, и относится как

к судам общей юрисдикции, так и к арбитражным судам. Например, я лично знаю,

что в городе Москве местные власти, вопреки российскому законодательству,

финансировали Московские суды в объемах, превышающих 1,4 миллиона долларов

США в 1998 году и 1,1 миллиона долларов США в 1999 году. Эти средства

использовались как на хозяйственные нужды (ремонт зданий и др.), так и для

дополнительных к заработной плате выплат судьям.

59. Поэтому, для лиц, представляющих могущественные российские

экономические интересы и имеющих политические связи, таких как ответчики по

настоящему делу, необходимым и достаточным для обеспечения принятия любым

судом желательного решения по  делу, затрагивающему их интересы, является

15

A - 1064

наличие связей с региональными органами власти. Нет просто никакой

необходимости в подкупе каждого отдельного судьи, если защита интересов может

быть обеспечена на уровне Председателя суда.

**Российские суды не подвергают свидетелей принудительному приводу для их опроса, а практика истребования документов в делах по экономическим спорам не соответствует теоретизированным представлениям Стефана о российской правовой системе**

60.  Стефан излагает свои рассуждения о процедуре опроса свидетелей а также

процедуре истребования доказательств, которые соответствуют положениям АПК

и ГПК. Заявление Стефана at ¶16.

61.  Он говорит о том, что суды "обладают полномочиями истребовать

доказательства, включая свидетельские показания". Суды также "могут позволить

стороне оспаривать доказательства, представленные другой стороной и показать их

недостоверность, в том числе оспаривать показания свидетелей" Заявление

Стефана ¶16.

62.  Хотя это может быть верным с теоретической точки зрения, на практике это

не соответствует действительности.

63.  На самом деле, арбитражные суды редко используют показания свидетелей

или же прибегают к истребованию доказательств. В этой связи, не отличается и

практика судов общей юрисдикции при рассмотрении экономических споров.

64.  Как я могу судить из краткого изложения опроса Стефана, который был

предоставлен моему вниманию, Стефан был в России всего лишь один раз в

течение последних пяти лет и не присутствовал в судебном заседании с 1998 года.

A - 1065

65. В отличие от Стефана, я участвовал в судебных разбирательствах в бывшем Советском Союзе и в России в течение двадцати лет.

66. Я хотел бы отметить, что мою точку зрения разделяют другие судьи и практикующие юристы.

67. С. Амосов, председатель Федерального Арбитражного суда Восточно-Сибирского округа указывает на то, что "Как бы ни был широк круг доказательств в арбитражном судопроизводстве, на практике как вид доказывания наиболее часто используются акты, договоры, справки, деловая корреспонденция, иные документы и материалы, то есть письменные доказательства... выводы арбитражных судов крайне редко обосновываются ссылками на показания свидетелей. Безусловно специфика арбитражного судопроизводства такова, что по абсолютному большинству дел свидетельские показания не могут быть допустимыми вообще...безразличное отношение к свидетельским показаниям зачастую значительно ослабляет достоверность выводов суда".[10]

68. В.В. Молчанов, один их ведущих профессоров Московского Государственного Университета указал: "Показания свидетелей являются не очень распространенным средством доказывания в арбитражном процессе."[11]

69. Другой эксперт Ответчиков, профессор Занковский также полагает, что отмечено в его Втором Заявлении, что «в самом деле, у российских арбитражных судов нет полномочий вызывать свидетелей, ни по своей инициативе, ни по ходатайству сторон. ..... по российскому законодательству, в принципе, не предусмотрено перекрестного опроса свидетелей, как судебной процедуры,

A - 1066

предназначенной для определения, являются ли достоверными представленные

доказательства.» Второе Заявление Занковского, ¶77.

70.    Мне хотелось бы добавить, что профессор Петрухин, правовед, который,

судя из его Второго заявления, не имеет практического опыта участия в судебных

разбирательствах, не делает утверждений о том, что российские суды прибегают к

принудительному приводу свидетелей и к истребованию документов на практике.

### ТРЕТЬЕ ЗАЯВЛЕНИЕ ПЕТРУХИНА

71.    Я ознакомился с Третьим Заявлением Петрухина и ниже привожу свои

комментариями в этой связи.

#### Уголовный кодекс России и предъявление гражданского иска с рамках уголовного процесса.

72.    Петрухин обсуждает разнообразные положения Уголовного кодекса

России. Заявление Петрухина ¶¶6-12.

73.    Петрухин также обсуждает различные способы предъявления иска в

рамках уголовного процесса. Заявление Петрухина ¶13-26.

74.    Я согласен с тем, что деяния Ответчиков нарушают многочисленные

положения Уголовного кодекса России; однако непонятно, какое это имеет

отношение к способности Истцов предъявить в настоящее время иск в рамках

гражданского судопроизводства.

75.    Петрухин утверждает, что следствие по делам о заявленных

преступлениях с наибольшей вероятностью будет вестись  Генеральной

прокуратурой в Москве. Однако, нет оснований полагать, что это будет именно так.

Хотя дело и подлежит расследованию прокуратурой, место предварительного

расследования определяется местом совершения преступных деяний, которое

A - 1067

находится в ведении прокуратур Кемеровской и Свердловской областей. См. ст. 152 Уголовно-процессуального кодекса.[12]

76. Петрухин также утверждает, что процесс в отношении коррумпированного судьи будет проводиться Верховным судом России. Нет оснований полагать, что так оно и будет. Скорее, по общему правилу, изложенному в ст. 31 Уголовно-процессуального кодекса[13], данные дела будут подсудны судам по месту свершения преступного деяния. Дело будете передано на рассмотрение Верховного суда в Москве, только если об этом будет ходатайствовать судья, обвиняемый по делу. См. ст. 452 Уголовно-процессуального кодекса[14].

**Иски в рамках гражданского судопроизводства**

77.   Петрухин обсуждает возможность предъявления иска в порядке Главы 59 (ст. 1064) и Главы 60 (ст. 1102 и 1107) Гражданского кодекса. Заявление Петрухина ¶28.

78.   Петрухин прав в отношении того, что осуждение лиц в порядке уголовного судопроизводства будет способствовать разрешению дела в гражданском судопроизводстве. Безусловно, это представляет из себя основной момент моего первого заявления.

79.   Смысл утверждения Петрухина в отношении того, что "факт установления уполномоченными органами совершения Ответчиками тех или иных неправомерных действий .... даже в отсутствие обвинительного приговора будет существенными доказательственным моментом в последующем арбитражном или гражданском судебном разбирательстве..." сложно понять, поскольку он не

19

A - 1068

называет какие "уполномоченные органы" он имеет в виду и не указывает на то каким образом установлен соответствующий факт.

80. Материалы уголовного дела, а уж тем более такого, которое не окончилось вынесением обвинительного приговора, не являются документами, доступ к которым открыт для широкой публики и маловероятно, что сторона по делу сможет их получить и предъявить в суде. Даже если бы такие доказательства - что бы они из себя не представляли - были бы предъявлены в суд, то в соответствии с ч. 5 ст. 71 АПК 2002 "Никакие доказательства не имеют для арбитражного суда заранее установленной силы." Таким образом, утверждение Петрухина о том, что арбитражный суд оценит эти неопределенные доказательства как обладающие "существенным весом" не соответствует действительности.

**Петрухин верно замечает, что для пересмотра дела по вновь открывшимся обстоятельствам в соответствии со ст. 311 необходимо наличие обвинительного приговора, как уже разъяснялось в в моем первом заявлении.**

81. Петрухин обсуждает способы пересмотра дела по вновь открывшимся обстоятельствам может осуществляться в соответствии со ст. 311 АПК. Заявление Петрухина ¶29-32.

82. Петрухин прав в своем заявлении о том, что ходатайство о пересмотре вынесенного ранее судебного акта должно быть заявлено в суд, принявший судебный акт. Заявление Петрухина ¶32.

83. Петрухин также прав в том что ходатайство, в котором делается утверждение об имевшей место коррупции судебных процедур, не может быть заявлено до того, как будет вынесен обвинительный приговор в порядке уголовного судопроизводства. Заявление Петрухина ¶¶30, 31.

20

A - 1069

**Рассуждения Петрухина в отношении пересмотра решения Высшим арбитражным судом либо неясны либо неверны.**

84.    Петрухин представляет свои рассуждения касательно заявления Стефана в отношении пересмотра решений в порядке надзора Высшим Арбитражным судом. Заявление Петрухина at ¶33.

85.    Он утверждает, что "в случае установления серьезных процессуальных нарушений, к примеру факта фальсификации доказательств, существует высокая вероятность, что дело будет пересмотрено".

86.    Данное утверждение Петрухина не совсем ясно.

87.    Если он имеет ввиду, что фальсификация доказательств " установлена" обвинительным приговором по уголовному делу, то в таком случае возможно подать заявление в Высший Арбитражный суд после того, как в соответсвии со ст. 311 АПК 2002 будет подано заявление в суд первой инстанции и за этим последует обычный процесс апелляционного и кассационного производства.

88. Если он имеет ввиду что-либо другое, то в таком случае его утверждение не имеет смысла, так как российское законодательство не предусматривает какого-либо иного порядка.

**Коммерческий арбитраж**

89.    Петрухин рассуждает о возможности предъявления требований определенными Истцами против НКАЗа в коммерческих арбитражах. Заявление Петрухина ¶34-37.

90.    Это конечно же не имеет никакого отношения к тому, предоставляет ли российское право возможность предъявления иска на основании вреда, причиненного коррумпированностью процедур банкротства НКАЗа и ГОКа.

21

Я составил настоящее Заявление за пределами Соединенных Штатов

Америки и заявляю под угрозой ответственности за дачу ложных показаний, в

соответствии с законами Соединенных Штатов, что вышеизложенное является

верным, насколько я знаю и верю.

Дата: 25.03.2003 г.

A - 1071

---

¹ Статьи АПК 1995, на которые делаются ссылки в настоящем заявлении прилагаются как Приложение 1; статьи АПК 2002 как Приложение 2; Гражданского кодекса как Приложение 3; Уголовно-процессуального кодекса как Приложение 4.

² См. Постановление Пленума Высшего арбитражного суда Российской Федерации от 19 июня 1997г. №11 "О применении Арбитражного процессуального кодекса Российской Федерации при рассмотрении дел в апелляционной инстанции." Приложение 5.

³ В дополнение к источникам, на которые я ссылался в своем первом заявлении, разъясняя данный вопрос, см. также Постановление Конституционного Суда Российской Федерации от 3 февраля 1998 г. №5-П «По делу о проверке конституционности статей 180, 181, пункта 3 части 1 статьи 187 и статьи 192 Арбитражного процессуального кодекса Российской Федерации.» ("Президиум Высшего Арбитражного Суда Российской Федерации, рассматривающий дело в порядке надзора, непосредственно не исследует доказательства и не устанавливает фактические обстоятельства, так как он не может подменять первую и апелляционную инстанции, которые самостоятельно исследуют и оценивают доказательства и устанавливают фактические обстоятельства дела на основе принципов состязательности и равноправия сторон и непосредственности судебного разбирательства.") Приложение 6.

⁴ См Постановление Пленума Высшего Арбитражного Суда РФ от 24 сентября 1999 г. N 13 "О применении Арбитражного процессуального кодекса Российской Федерации при рассмотрении дел в арбитражном суде кассационной инстанции" ("арбитражный суд кассационной инстанции проверяет правильность применения судом первой и апелляционной инстанций норм материального права и норм процессуального права в конкретном деле применительно к его фактическим обстоятельствам, установленным судом при рассмотрении дела в суде первой и апелляционной инстанций.") Приложение 7. Также см. "АРБИТРАЖНЫЙ ПРОЦЕСС. УЧЕБНИК." (под ред. М.К. Треушникова и др., издание пятое, Москва 2002), стр. 390 ("Арбитражный суд кассационной инстанции проверяем правильность применения судом первой и апелляционной инстанций норм материального права и норм процессуального права в конкретном деле применительно к его фактическим обстоятельствам, установленным судом при рассмотрении дела в суде первой и апелляционной инстанций.") Приложение 8.

⁵ См. КОММЕНТАРИЙ К АРБИТРАЖНОМУ ПРОЦЕССУАЛЬНОМУ КОДЕКСУ РОССИЙСКОЙ ФЕДЕРАЦИИ (под ред. Г.А. Жилина, Москва 2003), стр. 787 («Одной из особенностей института пересмотра судебного акта арбитражного суда по вновь открывшимся обстоятельствам является то, что сомнения в его законности и обоснованности связаны не с нарушением норм материального или процессуального права или неправильной оценкой существенных для дела

A - 1072

обстоятельств, а с открытием уже после вступления судебного акта в законную силу обстоятельств, имеющих существенное значение для дела, которые не были учтены судом при вынесении решения»). Приложение 9.

[6]    См. КОММЕНТАРИЙ К АРБИТРАЖНОМУ ПРОЦЕССУАЛЬНОМУ КОДЕКСУ РОССИЙСКОЙ ФЕДЕРАЦИИ (под ред. Г.А. Жилина, Москва 2003), стр. 788. Приложение 9.

[7]    См., например, "ТЕОРИЯ ГОСУДАРСТВА И ПРАВА, КУРС ЛЕКЦИЙ", (под ред. Н.И. Матузова и др., Москва, 2001), стр. 471 ("если расходятся общий и специальный акты одного уровня .... то применяется последний"). Приложение 10.

[8]    В соответствии со ст. 33 АПК 2002 Специальная подведомственность дел арбитражным судам "Арбитражные суды рассматривают дела:... о несостоятельности (банкротстве);.... Указанные ...... дела рассматриваются арбитражным судом независимо от того, являются ли участниками правоотношений, из которых возникли спор или требование, юридические лица, индивидуальные предприниматели или иные организации и граждане.

[9] Указанная статья Петрухина прилагается как Приложение "С" к письму Джеймса Л. Бернарда от 25 февраля 2003 г.

[10]    См. С. Амосов "О вероятности и достоверности выводов арбитражного суда". Приложение 11.

[11]    См. "АРБИТРАЖНЫЙ ПРОЦЕСС. УЧЕБНИК." (под ред. М.К. Треушникова и др., издание пятое, Москва 2002), стр. 200. Приложение 12.

[12] Статья 152. Место производства предварительного расследования.

1. Предварительное расследование производится по месту совершения деяния, содержащего признаки преступления, за исключением случаев, предусмотренных настоящей статьей. В случае необходимости производства следственных или розыскных действий в другом месте следователь вправе произвести их лично либо поручить производство этих действий соответственно следователю или органу дознания, который обязан выполнить поручение в срок не позднее 10 суток.

2. Если преступление было начато в одном месте, а окончено в другом месте, то уголовное дело расследуется по месту окончания преступления.

3. Если преступления совершены в разных местах, то по решению прокурора уголовное дело расследуется по месту совершения большинства преступлений или наиболее тяжкого из них.

4. Предварительное расследование может производиться по месту нахождения обвиняемого или большинства свидетелей в целях обеспечения его полноты, объективности и соблюдения процессуальных сроков.

A - 1073

5. Следователь, дознаватель, установив, что уголовное дело ему не подследственно, производит неотложные следственные действия, после чего передает уголовное дело прокурору для направления по подследственности.

[13]    В соответствии с п. 3 ст. 31 Уголовно-процессуального кодекса "Верховному суду республики, краевому или областному суду, суду города федерального значения, суду автономной области и суду автономного округа подсудны ...уголовные дела о преступлениях, предусмотренных статьями 294 [воспрепятствование осуществлению правосудия и производству предварительного расследования], ..... 303 частями второй и третьей [фальсификация доказательств], .... 305 [вынесение заведомо неправосудных приговора, решения или иного судебного акта].... Уголовного кодекса Российской Федерации";

[14]    Статья 452. Рассмотрение уголовного дела в отношении члена Совета Федерации, депутата Государственной Думы, судьи федерального суда.

> "Уголовное дело в отношении члена Совета Федерации, депутата Государственной Думы, судьи федерального суда по их ходатайству, заявленному до начала судебного разбирательства, рассматривается Верховным Судом Российской Федерации."

A - 1074