**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------------------x
```
DAVIS INTERNATIONAL, LLC, HOLDEX,   :
LLC, FOSTON MANAGEMENT, LTD, and   :
OMNI TRUSTHOUSE, LTD,   :
  :
               Plaintiffs,   :
  :
      v.   :    Case No. 04-1482-GMS
  :
NEW START GROUP CORP., VENITOM   :
CORP., PAN-AMERICAN CORP., MDM   :
BANK, URAL-GORNO METALURAGICAL   :
COMPANY, EVRAZ HOLDING, MIKHAIL   :
CHERNOI, OLEG DERIPASKA, ARNOLD   :
KISLIN, MIKHAIL NEKRICH, and   :
ISKANDER MAKMUDOV,   :
  :
               Defendants.   :
```
-------------------------------------------------------------x
```

# APPENDIX TO DEFENDANTS'
# OPENING BRIEFS IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

## Volume 7 of 13

Attorneys for Defendant Arnold Kislin:

Charles M. Oberly, III (DSBA No. 743)    Lisa C. Cohen
Karen V. Sullivan (DSBA No. 3872)     Schindler Cohen & Hochman LLP
Oberly, Jennings & Rhodunda, P.A.      100 Wall Street
800 Delaware Avenue, Suite 901       15th Floor
PO Box 2054                        New York, NY  10005
Wilmington, DE 19899           (212) 277-6300
(302) 576-2000

                            Lawrence S. Goldman
                            Elizabeth Johnson
                            The Law Offices of Lawrence S. Goldman
                            500 Fifth Ave., 29th Floor
                            New York NY 10110-2900
                            (212) 997-7499

Attorneys for Defendants New Start Group
Corp. and Venitom Group:

Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

Richard J. Schaeffer
Peter J. Venaglia
Laura D. Sullivan
Dornbush, Schaeffer, Strongin &
Weinstein, LLP
747 Third Avenue, 11th Floor
New York, NY 10017
(212) 759-3300

Attorneys for Defendant Oleg Deripaska:

Collins J. Seitz, Jr.(DSBA No. 2237)
Kevin F. Brady (DSBA No. 2248)
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

Rodney F. Page
Michael G. Biggers
Bryan Cave LLP
700 13th Street, N.W.
Washington, D.C. 20005-3960
(202) 508-6002

Attorneys for Defendant Evraz Holding:

William M. Lafferty (DSBA No. 2755)
Morris, Nichols, Arsht & Tunnell
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 575-7341

David H. Herrington
Vitali Rosenfeld
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York New York 10006
(212) 225-2266

Attorneys for Defendant MDM Bank:

Stephen E. Jenkins (DSBA No. 2152)
Richard I.G. Jones, Jr. (DSBA No. 3301)
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

Joel B. Kleinman
Steven J. Roman
David H. Greenberg
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street NW
Washington, DC 20037-1526
(202) 785-9700

Attorneys for Defendant Ural-Gorno
Metallurgical Company:

Charles M. Oberly, III (DSBA No. 743)          William H. Devaney
Karen V. Sullivan (DSBA No. 3872)             Heard & O'Toole LLP
Oberly, Jennings & Rhodunda, P.A.             405 Lexington Ave, Floor 62
800 Delaware Avenue, Suite 901                New York, NY 10174
PO Box 2054                                   (212) 307-5500
Wilmington, DE 19899
(302) 576-2000

Attorneys for Defendant Iskander
Makmudov:

Charles M. Oberly, III (DSBA No. 743)          William H. Devaney
Karen V. Sullivan (DSBA No. 3872)             Heard & O'Toole LLP
Oberly, Jennings & Rhodunda, P.A.             405 Lexington Ave, Floor 62
800 Delaware Avenue, Suite 901                New York, NY 10174
PO Box 2054                                   (212) 307-5500
Wilmington, DE 19899
(302) 576-2000

Attorneys for Defendant Mikhail Chernoi:

Charles M. Oberly, III (DSBA No. 743)          Brian Maas
Karen V. Sullivan (DSBA No. 3872)             Cameron Myler
Oberly, Jennings & Rhodunda, P.A.             Frankfurt Kurnit Klein & Selz PC
800 Delaware Avenue, Suite 901                488 Madison Avenue, 9th Floor
PO Box 2054                                   New York, NY 10022
Wilmington, DE 19899                          (212) 980-0120
(302) 576-2000

Attorneys for Defendant Mikhail Nekrich:

Charles M. Oberly, III (DSBA No. 743)          Paul R. Grand
Karen V. Sullivan (DSBA No. 3872)             Edward M. Spiro
Oberly, Jennings & Rhodunda, P.A.             Morvillo, Abramowitz, Grand, Iason &
800 Delaware Avenue, Suite 901                Silberberg, P.C.
PO Box 2054                                   565 Fifth Avenue
Wilmington, DE 19899                          New York, NY 10017
(302) 576-2000                                (212) 880-9510

# Table of Contents

| DOCUMENT | PAGE |
|---|---|
| **VOLUME 1 OF 13:** | |
| Complaint | A-1 |
| *Base Metal Trading v. Russian Alum.*, 253 F. Supp. 2d 681 (S.D.N.Y. 2003) ("*Base Metal Trading*") | A-31 |
| Transcript of Oral Argument before Hon. John G. Koeltl, dated February 10, 2003, in *Base Metal Trading* | A-64 |
| **VOLUME 2 OF 13:** | |
| First Amended Complaint, dated August 3, 2001, filed in *Base Metal Trading* | A-176 |
| **VOLUME 3 OF 13:** | |
| Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss the Amended Complaint, dated September 15, 2002, filed in *Base Metal Trading* | A-295 |
| **VOLUME 4 OF 13:** | |
| Resume of Paul B. Stephan | A-465 |
| List of Paul B. Stephan's "Participation in U.S. Lawsuits" | A-476 |
| Declaration of Paul B. Stephan, dated January 28, 2002, filed in *Base Metal Trading* | A-479 |
| Reply Declaration of Paul B. Stephan, dated October 17, 2002, filed in *Base Metal Trading* | A-514 |
| Complaint filed in *Norex Petroleum Ltd. v. Access Indus.* (LTS) (S.D.N.Y.) | A-535 |
| *Norex Petroleum Ltd. v. Access Indus.*, 304 F. Supp. 2d 570 (S.D.N.Y. 2004) | A-607 |
| Judge Koeltl's written request for submissions prior to oral argument, dated January 29, 2003 | A-622 |
| Defendants' response to Judge Koeltl's Jan. 29th request ("Defendants' Oral Argument Submissions") | A-624 |
| Chronology of GOK-related Russian court decisions | A-625 |
| Map – location of courts | A-651 |
| Chart of Russian Court Decisions | A-652 |

| | |
|---|---|
| **VOLUME 5 OF 13:** | |
| Plaintiffs' response to Judge Koeltl's Jan. 29th request ("Plaintiffs' Oral Argument Submissions") | A-653 |
|    GOK Bankruptcy Litigation Chart | A-654 |
|    Shareholder Litigation Chart | A-660 |
|    Chart – Kozitsin and Kozyrev "Wrongful Conduct" | A-668 |
|    Chart – "Direct Evidence of Corruption" | A-677 |
|    Sergei Zankovsky: Theory and Practice of Bankruptcy | A-684 |
| Defendants' post-oral argument submissions in *Base Metal Trading*, dated February 20, 2003 | A-687 |
|    Letter from Winston & Strawn, dated February 20, 2003 | A-688 |
|    Letter from Hogan & Hartson, dated February 20, 2003 | A-690 |
|    Letter from Dornbush Mensch Mandelstam & Schaeffer, dated February 20, 2003 | A-695 |
|    Defendants' Summary of Contracts | A-698 |
|    Supplemental Declaration of Paul B. Stephan, dated Feb. 19, 2003 | A-705 |
|    Third Declaration of Igor Petrukhin, dated Feb. 20, 2003 | A-713 |
| Plaintiffs' post-oral argument submissions in *Base Metal Trading*, dated February 20, 2003 | A-744 |
|    Letter from Strook Stroock & Lavan, dated February 20, 2003 (with exhibits) | A-745 |
|    Second Declaration and Exhibits of Joseph Traum, dated February 19, 2003 | A-782 |
|    Expert Report of Sergei B. Zaitsev, dated February 19, 2003 (without exhibits) | A-828 |
| **VOLUME 6 OF 13:** | |
| Defendants' post-oral argument submissions in *Base Metal Trading*, dated February 25, 2003 | A-885 |
|    Letter from Winston & Strawn, dated February 25, 2003 (with exhibits) | A-886 |
|    Supplemental Declaration of Paul B. Stephan, dated February 25, 2003 | A-933 |
| Plaintiffs' post-oral argument submissions in *Base Metal Trading*, dated February 25, 2003 | A-941 |

| | |
|---|---|
| Letter from Strook Stroock & Lavan, dated February 25, 2003 (with exhibits) | A-942 |
| Letter from Herrick Feinstein, dated February 25, 2003 | A-986 |
| Second Declaration of Victor Golubev, dated February 25, 2003 (without exhibits) | A-989 |
| Second Declaration of Sergei B. Zaitsev, dated February 25, 2003 (without exhibits) | A-1027 |
| **VOLUME 7 OF 13:** | |
| March 30, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1075 |
| August 22, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1080 |
| April 19, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1092 |
| Application to the Arbitrazh Court for the Sverdlovsk Oblast dated March 24, 2000 filed by Krasnouralskmezhraygaz ("Kras Gas") | A-1112 |
| January 24, 1997 contract between GOK and Kras Gas | A-1130 |
| Letter dated February 4, 2000 from Kras Gas to GOK | A-1146 |
| Letter dated February 15, 2000 from Kras Gas to GOK | A-1157 |
| Letter dated February 8, 2000 from GOK to Kras Gas | A-1170 |
| Letter dated February 21, 2000 from GOK to Kras Gas | A-1175 |
| Federal Service's recommendation to appoint Kozyrev as Interim Trustee | A-1180 |
| Instruction of the Government of the Russian Federation from July 10, 1999 (No. 1100-R) | A-1187 |
| Audit Report and list of GOK's creditors as of March 24, 2000 | A-1191 |
| Minutes of the first GOK creditors' meeting held on August 11, 2000 | A-1245 |
| August 2, 2000 decision of the Izmailovo Inter-Municipal Court of Moscow | A-1266 |
| November 30, 2000 decision of the Moscow City Court | A-1269 |
| **VOLUME 8 OF 13:** | |
| Nexis' appellate complaint | A-1276 |
| January 15, 2001 determination of the Appellate Instance of the Arbitrazh Court for the Sverdlovsk Oblast | A-1306 |
| Nexis' cassation complaint | A-1311 |
| June 7, 2001 decision of the Federal Arbitrazh Court for the Urals Circuit | A-1318 |

| | |
|---|---|
| Minutes of the March 11, 2001 creditors' meeting | A-1323 |
| June 27, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1357 |
| August 21, 2001 decision of the Federal Arbitrazh Court for the Urals Circuit | A-1365 |
| August 18, 2000 opinion of the Federal Service | A-1367 |
| August 29, 2000 Nexis petition regarding loan agreement | A-1382 |
| July 26, 1999 supply contract between Nexis and GOK | A-1392 |
| August 29, 2000 Application filed by Nexis regarding supply contract | A-1424 |
| October 4, 2000 letter to Nexis from Trustee Kozyrev | A-1442 |
| March 23, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1445 |
| August 29, 2000 Statement of Claim submitted by Polyprom | A-1452 |
| **VOLUME 9 OF 13:** | |
| Supply agreements between GOK and Polyprom | A-1479 |
| October 4, 2000 letter to Polyprom from Trustee Kozyrev | A-1579 |
| October 31, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1583 |
| February 16, 2001 letter from Trustee Kozyrev to the Arbitrazh Court for the Sverdlovsk Oblast | A-1588 |
| February 19, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1591 |
| April 19, 2001 Resolution of the Appellate Instance of the Arbitrazh Court for the Sverdlovsk Oblast | A-1598 |
| July 12, 2001 determination of the Federal Arbitrazh Court of the Urals District | A-1607 |
| April 18, 2001 decision of the Arbitrazh Court for Sverdlovsk Oblast | A-1613 |
| January 22, 2000 letter from several members of GOK Board of Directors requesting meeting of GOK Board | A-1620 |
| January 24, 2000 letter from several members of GOK Board of Directors requesting meeting of GOK Board | A-1623 |
| February 2, 2000 "Decision Not To Institute Legal Proceedings" of the Senior Assistant Prosecutor for the City of Kachkanar | A-1628 |
| February 1, 2000 ruling of the Kachkanar City Court for the Sverdlovsk Oblast | A-1635 |
| February 15, 2000 decision of the Arbitrazh Court for the Sverdlovsk | A-1649 |

| | |
|---|---|
| Oblast | |
| March 8, 2001 decision by the Moscow City Court | A-1657 |
| September 19, 2000 decision of the Meshchansky Inter-Municipal Regional Court of Moscow | A-1667 |
| **VOLUME 10 OF 13:** | |
| March 26, 2001 decision of the Moscow City Court | A-1676 |
| November 21, 2000 decision of the Tverskoy Inter-Municipal Regional Court of Moscow | A-1683 |
| February 22, 2001 decision of the Appellate Instance of the Federal Arbitrazh Court of Moscow | A-1691 |
| November 16, 2000 decision of the Arbitrazh Court of Moscow | A-1698 |
| April 26, 2001 decision of the Federal Arbitrazh Court of the Moscow Circuit | A-1706 |
| December 13, 2000 decision of the Perovsky Inter-Municipal Regional Court of Moscow | A-1712 |
| Davis Complaint filed in Moscow before the Gagarinsky Inter-Municipal Court of Moscow | A-1728 |
| April 10, 2000 decision of the Perovsky Inter-Municipal Regional Court of Moscow | A-1737 |
| September 25, 2000 decision of the Perovsky Inter-Municipal Regional Court of Moscow | A-1747 |
| October 26, 2000 decision of the Moscow City Court | A-1752 |
| September 17, 2001 decision of the Gagarinsky Inter-Municipal Court of Moscow | A-1758 |
| May 30, 2000 decision of the Tverskoy Inter-Municipal Regional Court | A-1761 |
| February 7, 2000 decision of the Tverskoy Inter-Municipal Court of Moscow | A-1765 |
| December 22, 2000 decision of the Gagarinsky Inter-Municipal Court of Moscow | A-1768 |
| February 14, 2000 decsion of the Cheryomoushkinsky Inter-Municipal Court of Moscow | A-1774 |
| March 2, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1779 |
| September 4, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1784 |
| August 14, 2000, decision of the Kachkanar City Court of the Sverdlovsk Oblast | A-1790 |

| | |
|---|---|
| February 15, 2000 decision of the Kachkanar City Court | A-1797 |
| February 29, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1801 |
| March 6, 2001 decision of the Moscow City Court | A-1806 |
| April 5, 2000 decision of the Meshchansky Inter-Municipal Regional Court of Moscow | A-1814 |
| June 22, 2001 decision of the Tverskoy Inter-Municipal Regional Court of Moscow | A-1827 |
| Two Notices of registrar change published in the *Oblastnaya gazeta* on, respectively, March 17, 2000 and October 21, 2000 | A-1832 |
| March 20, 2001 decision by the Arbitrazh Court of Moscow | A-1839 |
| June 26, 2001 decision of Appellate Instance of the Arbitrazh Court of Moscow | A-1846 |
| **VOLUME 11 OF 13:** | |
| September 5, 2001 decision of the Federal Arbitrazh court of the Moscow Circuit | A-1852 |
| December 20, 2000 decision of the Petrogradsky Regional Court of St. Petersburg | A-1859 |
| January 12, 2001 decision of the Petrogradsky Regional Court of St. Petersburg | A-1864 |
| March 13, 2001 decision of Izmailovsky Regional Court of Moscow | A-1871 |
| March 13, 2001 decision of Izmailovsky Regional Court of Moscow | A-1874 |
| August 27, 2001 decision of the Chertanovo Federal Court | A-1877 |
| Agreement between GOK and Polyprom dated January 18, 1999 | A-1880 |
| November 22, 2000 decision of the Arbitrazh Court of the Republic of Kalmykia | A-1884 |
| April 17, 2001 decision of the Arbitrazh Court for the North Caucasus Region | A-1895 |
| July 5, 2001 decision of the Arbitrazh Court for the Republic of Kalmykia | A-1904 |
| November 9, 2001 decision of the Appellate Instance of the Arbitrazh Court for the Republic of Kalmykia | A-1910 |
| September 10, 2001 decision of the Arbitrazh Court for the Republic of Kalmykia | A-1919 |
| August 1, 2000 decision of the Arbitrazh Court for the Chelyabinsk Region | A-1924 |

| | |
|---|---|
| October 16, 2000 decision of the Appellate Instance for the Arbitrazh Court for the Chelyabinsk Region | A-1942 |
| January 4, 2001 decision of the Arbitrazh Court for Urals Circuit | A-1952 |
| September 29, 2000 decision of the Solntsevsky Inter-Municipal Regional Court of Moscow | A-1960 |
| March 30, 2001 decision of the Moscow City Court | A-1970 |
| November 30, 2001 decision of the Solntsevsky Inter-Municipal Regional Court of Moscow | A-1980 |
| Agreement between New Start Group, Corp. and Davis dated October 6, 2000 | A-1995 |
| Eugene Aschenbrenner's Power of Attorney to act on behalf of Davis (valid December 3, 1999 through December 3, 2000) | A-2002 |
| Nexis Loan Agreement dated July 13, 1999 | A-2010 |
| March 23, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2020 |
| July 13, 2000 decision of the Meshchansky Inter-Municipal Regional Court of Moscow | A-2027 |
| Republic of Panama v. BCCI Holdings (Luxemburg) S.A., 90-2913-CV-UUB, slip.op. (S.D. Fla. July 17, 1995) | A-2033 |
| **VOLUME 12 OF 13** | |
| October 29, 2001 decision of the Federal Arbitrazh Court for the Urals Circuit | A-2053 |
| November 24, 2001 Opinion of the Department of the Interior of the Sverdlovsk Region | A-2060 |
| January 21, 2002 decision of the Federal Arbitrazh Court for the North Caucasus Circuit | A-2084 |
| March 12, 2002 decision of the Arbitrazh Court for the Republic of Kalmykia | A-2094 |
| April 23, 2002 decision of the Federal Arbitrazh Court for the North Caucasus Circuit | A-2105 |
| April 30, 2002 decision of the Kachkanar Town Court for the Sverdlovsk Oblast | A-2108 |
| September 24, 2002 decision of the Kachkanar Town Court for the Sverdlovsk Oblast | A-2121 |
| November 19, 2002 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2126 |

| | |
|---|---|
| January 22, 2003 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2133 |
| February 4, 2003 decision of the Appellate Instance for the Arbitrazh Court for the Republic of Kalmykia | A-2143 |
| May 20, 2003 decision of the Federal Arbitrazh Court for the North Caucasus Region | A-2150 |
| May 27, 2003 decision of the Appellate Instance of the Arbitrazh Court for the Sverdlovsk Oblast | A-2159 |
| August 27, 2003 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2165 |
| October 30, 2003 decision of the Moscow Municipal Court | A-2170 |
| January 14, 2004 decision of the Federal Arbitrazh Court for the Urals Circuit | A-2176 |
| April 20, 2004 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2187 |
| **VOLUME 13 OF 13** | |
| April 27, 2004 decision of the Arbitrazh Court for the Republic of Kalmykia | A-2197 |
| July 2, 2004 decision of the Moscow City Court | A-2205 |
| July 29, 2004 decision of the Federal Arbitrazh Court for the Urals Circuit | A-2212 |
| December 7, 2004 decision of the Moscow City Court | A-2221 |
| September 18, 2001 decision of the Sverdlovsk Arbitrazh Court | A-2224 |
| December 20, 2001 decision of the Urals Circuit | A-2238 |
| May 22, 2002 decision of the Moscow City Court | A-2246 |
| August 22, 2002 decision of the Moscow City Court | A-2256 |
| September 10, 2002 decision of the Kalmykia Court | A-2269 |
| May 22, 2003 decision of the Sverdlovsk Arbitrazh Court | A-2277 |
| August 13, 2003 decision of the Solntsevsky Court | A-2283 |
| March 3, 2004 decision of the Sverdlovsk Arbitrazh Court | A-2289 |
| March 31, 2004 report issued by Russian Ministry of Internal Affairs | A-2294 |
| Declaration of Tatiana Yastrebova, dated September 16, 2002, filed in *Base Metal Trading* (without exhibits) | A-2314 |
| July 2, 2002 decision of the North Caucasus Circuit | A-2344 |

**ARBITRAZH COURT**
**for SVERDLOVSK OBLAST**
**DETERMINATION**
ON THE ACCEPTANCE OF A CASE FOR PROCEEDINGS

City of Ekaterinburg                                    Case No. A60-4517/00-C1
March 30,2000

Judge of the Arbitrazh Court for Sverdlovsk oblast Kazantseva N.V. having considered the petition
of OAO "Krasnouralskmezhraygaz"
Against OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar"
Concerning the recognition as insolvent (bankrupt)

Materials appendixed to the petition and held thereof sufficient for the acceptance of the petition.
Being guided by Articles 106,112,113 of the Arbitrazh Procedure Code of the Russian Federation,

**HAS DETERMINED:**
1. To accept the petition of suit dated March 24, 2000 for proceedings.
2. To appoint the case for trial in a session of the Arbitrazh Court which will take place on June 19,
2000 at 10:00 in the premises of the Arbitrazh Court for Sverdlovsk oblast of the city of
Ekaterinburg, ul.Lenina 34, in room number 501, 5th floor, telephone 51-38-70.
3. In the process of prelimenary preparation of the case for session to submit the following
documents:
        To implead to the case: Federal Service of Russian Federation on Insolvency and Financial
Reabilitation in the person of the Territorial Agency for Sverdlovsk Oblast; Territorial Fund of
Mandatory Medical Insurance; the Division of Pension Fund of RF in Sverdlovsk Oblast; Social
Insurance Fund in Sverdlovsk Oblast; Rayon Employment Center in the city of Ekaterinburg.
        To the Debtor : for the period until June 13, 2000 to submit the balance sheet of the
enterprise being valid for June 1st, 2000, Appendicies included, authenticated by Tax Collection
Inspection, a list of creditors, setting forth the mailing addresses, the amount of the indebtedness (
without sanctions), basis for emerging thereof and the type of debt (i.e. the reason for getting into a
debt) appending original documents confirming the debt, the information on al the accounts open(
in currency included), authenticated by Tax Collection Inspection, and bank receipts of balance on
those accounts and lack of funds on those accounts ( signed by the Head of the Bank and the Chief
Accountant of the Bank), information on the branch divisions and other separate divisions if any,
Articles of Incorporation therof and certificates of the financial status thereof, Articles of
Incorporation of the Debtor, properly authenticated copies of the documents - to the case, originals -
for inspection.
        In course of the session to the Debtor to submit the book of fixed ssets, all assets in detail,
cash book.
        To make the Debtor liable for notifying of all the Incorporators ( Shareholders) and the
Creditors of the case consideration and of the rights thereof to participate in the court session, with
the evidence of notifying of all the Incorporators ( Shareholders) and the Creditors of the time and
location of the case consideration being submitted to the court.
        To make the Debtor liable for organizing the general meeting of the employees, for notifying
of the meeting members of the claim filed to recognize the enterprise as bankrupt, for electing a

representative of the employees who is to be invited to the court sesssion ( having powers approved by the extract from the minutes of the general meeting).

To make the Impleaded Parties liable : to submit to the court the evidences of the Debtor's indebtedness and the amount therof on payments to budgetary funds and non budgetary funds ( subject to no sanctions).

To start supervising at OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar". To appoint as interim trustee Kozyrev Oleg Stanislavovich - the Deputy Head of the Agency of Federal Service of Russian Federation on Insolvency and Financial Reabilitation in Sverdlovsk oblast.

To make the interim trustee liable for organizing a meeting of creditors for the period until April 23, 2000. To submit to the Arbitrazh Court session the resolution adopted at a meeting of creditors on the claim filed .

**Judge**                                 **Kazantseva N.V.**

# АРБИТРАЖНЫЙ СУД
## СВЕРДЛОВСКОЙ ОБЛАСТИ
# Определение
о принятии искового заявления к производству

г. Екатеринбург
30.03. 2000г.                          Дело № А60-4517/00-С1

Судья Арбитражного суда Свердловской области Н.В.Казанцева рассмотрела заявление ОАО «Красноуральскмежрайгаз»
К ОАО Качканарский горно-обогатительный комбинат «Ванадий»
о  признании несостоятельным (банкротом)

приложенные к заявлению документы и признал их достаточными для принятия заявления.
    Руководствуясь статьями 106,112,113 Арбитражного процессуального кодекса Российской Федерации,

## ОПРЕДЕЛИЛ:

1. Принять заявление от 24.03. 2000г. и  возбудить производство по делу
2. Назначить дело к разрешению в заседание Арбитражного суда на. 19.062000г. в 10час. 00мин. в помещении Арбитражного суда Свердловской области по адресу:    г. Екатеринбург, ул. Ленина, 34, комната № 501-5й эт., тел. 51-38-70.
3. В порядке подготовки материалов к рассмотрению дела в заседании представить следующие документы:

    Привлечь к участию в деле : Федеральную службу России по делам о несостоятельности и финансовому оздоровлению в лице Территориального Агентства по Свердловской области ; Территориальный фонд обязательного медицинского страхования ; Отделение Пенсионного фонда РФ по Свердловской области ; Фонд социального страхования по Свердловской области ; Екатеринбургский районный центр занятости населения.

    Должнику: в срок до 13.06. 2000г. представить баланс предприятия по состоянию на 1.06.2000г. с приложениями, заверенный налоговой инспекцией, список кредиторов с указанием почтовых адресов, сумм задолженности (без санкций), основания её возникновения и вида долга,/ т.е. за что образовался долг/с приложением первичных документов, подтверждающих образование долга, данные обо всех открытых счетах (в т.ч. и валютных), заверенные налоговой инспекцией, и справки банков о наличии или отсутствии денежных средств на этих счетах ( за подписью руководителя и главного бухгалтера банка), данные о филиалах и других обособленных подразделениях, если таковые имеются, их учредительные документы и справки о их финансовом

A - 1078

состоянии, учредительные документы должника, надлежаще заверенные копии документов- в дело, подлинники- для обозрения.

В судебное заседание должнику представить книгу основных средств, расшифровку всех активов, кассовую книгу.

Обязать Должника уведомить о рассмотрении дела всех учредителей (акционеров) и кредиторов и о их праве принять участие в заседании суда, доказательства уведомления учредителей (акционеров) и кредиторов о времени и месте рассмотрения дела представить суду.

Обязать должника собрать общее собрание трудового коллектива, уведомить собрание о заявленном требовании о признании предприятия банкротом, избрать представителя трудового коллектива, которого пригласить в судебное заседание (с полномочиями, подтвержденными выпиской из протокола общего собрания).

Обязать привлеченных лиц : представить суду данные о наличии задолженности должника и ее размерах по платежам в бюджет и внебюджетные фонды. /без учета санкций/.

Ввести наблюдение на ОАО»Качканарский горно-обогатительный комбинат «Ванадий»». Назначить временным управляющим Козырева Олега Станиславовича – заместителя начальника агенства по Свердловской области Федеральной службы России по далам о несостоятельности и финансовому оздоровлению.

Обязать временного управляющего в срок до 23.04.2000г. собрать собрание кредиторов. Решение собрания кредиторов по заявленному требованию представить Арбитражному суду в судебное заседание.


Судья                                                        Н.В.Казанцева

**ARBITRAZH COURT**
**for SVERDLOVSK OBLAST**

**DETERMINATION**

City of Ekaterinburg                                  Case No. A60-4517/2000-C1
August 22,2000

Arbitrazh Court for Sverdlovsk oblast in the composition of the judges : Platonova E.A.,
MikushinaN.V., presided by Kazantseva N.V. tried in a court session the suit on the petition of OAO
"Krasnouralskmezhraygaz" against OAO "Vanadiy" Mining & Concentration Integrated Plant in the
city of Kachkanar"

Concerning the recognition the Debtor insolvent (bankrupt)

With the participation in the session of : Kozyrev O. S., the interim trustee
Stepchenko T.M, the representative of the Plaintiff
Grigorieva E.L., Kolesnikova M.N., Polyansky A.M., Kabakov E.A., Zakharishev E.N.,
Melukhov.,Dzhuraev A.X., Sukhomlin V.S., the representatives of the Debtor
Elistratov D.S., the representative of FSDN
Averilkov V.N., the representative of the administration of the city of Kachkanar
Selivanov A.P., the representative of Bailiff s Department
Popravko V.F. , the representative of OAO"URALKHIMASH"
Makarov A.V., Ashrafzianov I.R.,Mishechkov A.U., Kirillov K.V., the representatives of
OAO"URALSTALKONSTRUKTSIYA"
Kurchanov O.V., the representative of OOO NTP "RESURS"
Romanenko A.N. , the representative of AOOT "GEIZER"
Kalugin U.A., the representative of oblast organization of disabled "IZBAVLENIE", Gulin S.A. the
representative of SPAO OT "SUS"
Selnikhina O.V., the representative of TOO "AMZ"
Urieva N.A., the representative of the Government of Sverdlovsk oblast
Shirokov V.V., representative of OOO "LENEKS"and Modzharova O.L. representative of
OOO"NEXIS"
Shelkanov I.V., representative of Kachkanar Technical Lyceum
Menshikov A.A., representative of OOO Enterprise "LEBAUT"
Kalinin N.A., representative of OAO"VOSTOKMETALLURGMONTAZH"
Zhuikov D.A., representative of OOO "STALKOMPLEKT"
Novozhonov O.A., representative of OAO "ZAPSIBGAZPROM"
Valishev R., representative of Nordwest system Limited
Piankov A.A., representative of the employees of OAO "Vanadiy" Mining & Concentration
Integrated Plant city of Kachkanar"

Before trying the case on the merits the court had been addressed with a statement by
Ashikhmina M.M. and Volnov V.V. on recognizing them as proper representatives of the insolvent

enterprise since their powers of attorney had been signed by Khaidarov D.A., Director General of OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar".

The petitioners consider the powers of attorney , signed by Director General Kozitsyn A.A., to be invalid since appointment of Kozitsyn A.A to the position of Director General, based on the resolution of the Board of Directors, dated January 28, 2000, was approved by the decision of the city court of the city of Kachkanar, which is currently revoked and the case was referred for trial de novo (retrial).

Furthermore, under the Determinations of a few intercity courts of the city of Moscow OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" is prevented from conducting acts specified in the execution of the resolution of the Board of Directors of Mining & Concentration Integrated Plant, dated January 28, 2000, and execution of the resolution of the above-mentioned Board has been suspended.

On March 4, 2000 a general meeting of the shareholders was held which terminated the authorities of the members of the Board of Directors, elected by a general meeting of April 21, 1999, and a new Board of Directors was elected, which elected Khaidarov D.A to be a new Director General, on March 7, 2000.

Eligibility of such a resolution adopted by Board of Directors, was upheld in the decision of Meshansky intercity court of the city of Moscow of April 5, 2000.

Hence, in the opinion of the petitioners, Khaidarov D.A is a proper Director General of OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" and Kozitsyn A.A is not authorised to sign documents in the name of Mining & Concentration Integrated Plant, including powers of attorney to act as representatives at a court session .

The representatives of the Debtor, having powers of attorney signed by Kozitsyn A.A, failed to express consent to the statement and submitted to the court contrary documents, legalizing their authorities.

The court examined all the documents submitted, and the powers of attorney, signed by Kozitsyn A.A., were held proper by the court.

The court states, that in order to try the merits of the claims in this case, the representation of the Debtor enterprise is insignificant, if the Debtor was properly notified of the time and location of considering the petition in bankruptcy.

The assessed amount of arrears to the creditors under the balance is 2 320 200 564 rbl.

The total amount of the creditors claims , by the time of the first meeting of creditors, was 1 359 669 752 rbl.

The amount of pecuniary obligations and due payments to the creditors attending the first meeting of creditors is 1 351 490 412rbl, i.e. 58,25 % of the total assessed amount of indebtedness, which entitles to hold the first meeting of creditors valid.

All the identified creditors were notified in due order both of a chance to assert their claims in the order specified in Article 63 of Bankruptcy Law, and of the the time and location of the first meeting of creditors.

A decision has been adopted at the first meeting of creditors to enforce administration in bankruptcy at OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" for the period of 12 months.

The decision of the meeting has been approved by the representatives of the creditors and of other entities present at the court session.

However, the representatives of the creditors of OOO "LENEKS", OOO"NEXIS, OOO "STALKOMPLEKT" and NORDWEST SYSTEMS LIMITED failed to consent to the decision of the meeting of creditors, and a motin to invalidate , to delay the trial of the case, or to suspend a case, since they were not notified of aprroval of the petition in bankruptcy against Mining & Concentration Integrated Plant, and failed to get notice from interim trustee.

Challenges of the creditors and complaints against the conduct of the interim trustee, submitted to the arbitrazh court before the court session, were disregarded by the court, since according to the documents submitted to the court, all the creditors identified had been timely notified by the interim trustee of a right to claim.

Nevertheless, the creditors claims were not filed either against the interim trustee, nor in the arbitrazh court, in accordance with Article 63 of Bankruptcy Law.

Furthermore, the amount of indebtedness to the above-mentioned creditors (according to the balance sheet) could not affect the decision taken at the first meeting of creditors.

The court has no grounds either for delaying the trial of the case, nor for suspending the proceedings to conduct another examination by the auditors, upon the demand of the above-mentioned creditors.

The complaint filed by OOO "LENEKS" against appointment of Kozyrev O. S. as the interim trustee is not subject to be satisfied, since the stated candidature has been agreed on in a proper order and does not violate Bankruptcy Law.

Furthermore, the court holds unreasonable to take a decision of current replacing the interim trustee subject to the amount of work done by Kozyrev O.S. and eligibility of his conduct.

Furthermore, it is a public hearing and all the persons are entitled to attend it as audience, which is not prejudicial to the interests thereof.


OAO "Krasnouralskmezhraygaz" filed a petition to the arbitrazh court to recognize OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" insolvent (bankrupt) on the grounds that the latter is in arrears to the former in the amount of 22 719 033 roubles 40 copecks for consumed natural gas under the contract 4/n dated January 24, 1997, for the period 1997-1998.

The petition of OAO "Krasnouralskmezhraygaz" has been accepted for proceedings in the arbitrazh court and supervising has been enforced at the Debtor - enterprise.

Kozyrev O. S. has been appointed by the court as interim trustee, being the Deputy Head of the Agency for Sverdlovsk oblast of the Urals-Sibirian Interregional Territorial Division of Federal Service of Russian Federation on Insolvency and Financial Reabilitation.

Kozyrev O. S has been nominated by the Agency for Sverdlovsk oblast and the nomination has been approved by the administration of FSFR of Russia subject to social significance of the Debtor enterprise.

Supervising had been conducted since March 24, 2000 till August 22, 2000.

The interim trustee has investigated into the economic activity of the enterprise , identified the creditors, and on August 11, 2000 the first meeting of creditors was held where a decision was adopted to enforce administration in bankruptcy at OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" for the period of 12 months. The creditors found that the

A - 1082

enterprise is capable of restoring creditworthiness and of financial Reabilitation by means of administration in bankruptcy.

On the interim trustee's initiative an audit has been carried out at the enterprise, which failed to reveal any facts of willful bankruptcy, which is also confirmed by FSFR of Russia.

Out of the documents submitted it was found that OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" is the biggest enterprise in the territory of MO " city of Kachkanar", which employs about 9 000 people.

Integrated Plant is the enterprise engaged in miming and concentration of titanium magnetite ore from Gusevogorskyi deposit, and in agglomeration of ironvanadium concentrate.
The main product is:
iron-ore concentrate, non-fluxed pellets, super fluxed sinter and crushed rock out of waste of the Plant with the fraction of 5-20, 10-40.
Design output (capacity) of the Integrated Plant is:
ore mining - 45 mln.tonns , concentrate produce - 8.2 mln. tonns, sinter produce -2.7 mln.tonns, pellets produce - 4.7 mln.tonns.
90% of the Integrated Plant consumers are metallurgical plants in the Urals.
Expanding the market for the output is restrained mostly due to high cost of carriage by rail.

On the checking financial soundness, it was found that within the scrutinized period the enterprise was in a shaky financial state, and refray of borrowings out of its own assets being unsatisfactory .
The loans provided were spent on financing current economic activity of the enterprise, which caused new losses within 1998-1999, since products were sold through the sales agents who received the prouducts at the Plant at the price lower than the product cost.
Analysis of trends in financial soundness figures revealed a decline in figures for the examined period.
Thus, in 1998, 1999, 2000 current ratio failed to reach 2., prompt liquidity ratio failed to reach 0.7-1.0, and absolute liquidity ratio failed to reach 0.2-0.25.

The figures published show that, current accounts payable were not secured by current assets, it was impossible to discharge short-term liabilities in a desperate financial situation , and to discharge a debt in money in the nearest future, which shows low creditworthiness of the enterprise.

Within the above-mentioned period the Integrated Plant suffered lack of monetary means from their primary activity .
Having scrutinized the profitability it was shown that the primary activity of the Integrated Plant is profitable. Thus in the first quarter of 2000 there was a considerable increase in the main activity and in sales quantity.
However the Integrated Plant balance sheet components continue to be unsatisfactory and fail to reach standard figure of 1.0.
In the first quarter of 2000 there was a considerable increase in the main activity and in sales quantity, which enables to discuss the possibility of restoring creditworthiness of the enterprise

subject to doing without sales agents and establishing direct business channels with the consumers, as well as increasing industrial output and decreasing in product cost .

The conclusions on financial capacity of the Integrated Plant have been brought to the notice of the first meeting of creditors by the interim trustee.

Being guided by Articles 140 of the Arbitrazh Procedure Code of the Russian Federation, Articles 68, 69, 70, 72 of Federal Bankruptcy Law the Arbitrazh Court

### HAS DETERMINED:

- to enforce administration in bankruptcy at OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar"for the period of 12 months (untill August 22, 2001)

- to appoint Kozyrev Oleg Stanislavovich as trustee in bankruptcy

- to terminate supervising at OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" and powers of the interim trustee

- to set a compensation to Kozyrev O. S, the trustee in bankruptcy , for the period of supervising and administering in bankruptcy , in the amount of 10 000 roubles per month.

- to remove Kozitsyn A.A from the post of Director General of OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar"

- to vest administrative powers at OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar"on Kozyrev O. S, in the trustee in bankruptcy

- to decree a moratorium on satisfying the creditors claims in accordance with Article 70 of Federal Bankruptcy Law.


**Presiding Judge**                    Kazantseva N.V.

    **Judges**                        Platonova E.A.,

                                    Mikushina N.V.

# АРБИТРАЖНЫЙ СУД
## *СВЕРДЛОВСКОЙ ОБЛАСТИ*
# Определение

*г. Екатеринбург*
*« 22 » августа  2000 г.*                    Дело № А60-4517/2000-С1

Арбитражный суд Свердловской области  в составе судей Платоновой Е.А., Микушиной Н.В. под председательством Казанцевой Н.В. рассмотрел в судебном заседании дело по заявлению ОАО «Красноуральскмежрайгаз»
к  ОАО «Качканарский горно-обогатительный комбинат «Ванадий»

о  признании должника несостоятельным (банкротом)

при участии в заседании: временного управляющего Козырева О.С.
представителя заявителя Степченко Т.Н.
представителей должника Григорьевой Е.Л., Колесникова М.Н., Полянского А.М., Кабакова Е.А., Захарищева Е.Н., Мелюхова О.Ф., Джураева А.Х., Сухомлина В.С.
представителя ФСДН Елистратова Д.С.
представителя администрации г.Качканара  Аверилкова В.Н.
представителя службы судебных приставов Селиванова А.П.
представителя ОАО Уралхиммаш Поправко В.Ф.
представителей ОАО «Уралстальконструкция» Макарова А.В., Ашрафзянова И.Р., Мищечковой А.Ю., Кириллова К.В.
представителя ООО НТП  «Ресурс» Курчанова О.В.
представителя АООТ «Гейзер» Романенко А.Н.
представителя областной организации инвалидов «Избавление» Калугин Ю.А.представителя СПАО ОТ «СУС» Гулина С.А.
представителя ТОО «АМЗ» Сельнихиной О.В.
представителя Правительства Свердловской области Юрьевой Н.А.
представителя ООО «Ленэкс» и ООО «Нэксиз» Широкова В.В., Моджаровой О.Л.
представителя Качканарского технического лицея Щелканова И.В.
представителя ООО Предприятие «Лебаут» Меньшикова А.А.
представителя ОАО «Востокметаллургмонтаж» Калинина Н.А.
представителя ООО «Сталькомплект» Жуйкова Д.А.
представителя ОАО «Запсибгазпром» Новоженова О.А.
представителя Нортвест систем лимитед Валишева Р.

представителя трудового коллектива ОАО «Качканарский ГОК «Ванадий» Пьянкова А.А.

До начала рассмотрения дела по существу суду было подано заявление Ашихминой М.М. и Вольновым В.В. о признании их надлежащими представителями предприятия должника, поскольку их доверенности подписаны генеральным директором ОАО «Качканарский горно-обогатительный комбинат «Ванадий» Д.А.Хайдаровым.

Заявители считают доверенности, подписанные генеральным директором Козицыным А.А. недействительными, т.к. назначение Козицына А.А. на должность генерального директора на основании решения Совета директоров от 28.01.2000 г. подтверждено решением Качканарского городского суда, которое в настоящее время отменено и дело направлено на новое рассмотрение.

Кроме того, определениями ряда межмуниципальных судов г.Москвы ОАО «Качканарский ГОК «Ванадий» запрещено совершать действия, выраженные в исполнении решений Совета директоров ГОКа от 28.01.2000 г. и исполнение решения указанного Совета приостановлено.

04.03.2000 г. состоялось общее собрание акционеров на котором полномочия членов Совета директоров, избранных общим собранием 21.04.99 г. были прекращены и избран новый Совет директоров, который 07.03.2000 г. избрал генеральным директором Хайдарова Д.А.

Правомерность данного решения Совета директоров подтверждено решением Мещанского межмуниципального суда г.Москвы от 05.04.2000 г.

Следовательно, по мнению заявителей, надлежащим генеральным директором ОАО «Качканарский горно-обогатительный комбинат «Ванадий» является Хайдаров Д.А. и Козицын А.А. не вправе подписывать документы от имени ГОКа, а том числе доверенности на представительство в судебном заседании.

Представители должника с доверенностями, подписанными генеральным директором Козицыным А.А. не согласились с заявлением и представили суду иные документы, подтверждающие правомерность их полномочий.

Судом рассмотрены все представленные документы, и доверенности, подписанные генеральным директором Козицыным А.А. признаны судом надлежащими.

Суд отмечает, что для рассмотрения данного дела по существу заявленных требований не имеет значения представительство от предприятия должника, в том случае если должник надлежаще извещен о времени и месте рассмотрения заявления о его несостоятельности.

Выявленная сумма кредиторской задолженности по балансу составляет 2 320 200 564 р.

Общая сумма заявленных требований кредиторов к моменту проведения первого собрания кредиторов составила 1 359 669 752 р.

Сумма требований по денежным обязательствам и обязательным платежам кредиторов, присутствующих на первом собрании составляет 1 351 490 412 р., т.е. 58,25% от общей суммы выявленной задолженности, что позволяет признать первое собрание кредиторов правомочным.

Все выявленные кредиторы были в установленном порядке уведомлены, как о возможности предъявить свои требования в порядке, установленном ст.63 Закона о банкротстве, так и о времени и месте проведения первого собрания кредиторов.

Первым собранием кредиторов принято решение о введении на ОАО «Качканарский горно-обогатительный комбинат «Ванадий» внешнего управления сроком на 12 месяцев.

Присутствующие в судебном заседании представители кредиторов и иных организаций поддержали решение собрания.

Однако, представители кредиторов ООО «Ленэкс», ООО «Нэксиз», ООО «Стальекомплект» и Нортвест системс лимитед не согласны с решением собрания кредиторов и просят признать решение неправомерным, отложить рассмотрение дела, либо приостановить, поскольку они не были извещены о принятии заявления о признании ГОКа банкротом и не получали извещения временного управляющего.

Возражения кредиторов и жалобы на действия временного управляющего, поступившие в арбитражный суд накануне судебного заседания не приняты судом во внимание, поскольку согласно представленным суду документам все выявленные кредиторы были своевременно уведомлены временным управляющим о возможности предъявления своих требований.

Тем не менее, требования кредиторов не были предъявлены ни временному управляющему, ни в арбитражный суд, согласно ст.63 Закона о банкротстве.

Кроме того, размер задолженности указанных кредиторов (по данным бухгалтерского баланса) не мог повлиять на решение первого собрания кредиторов.

У суда нет оснований ни для отложения рассмотрения дела, ни для приостановления производства по делу для проведения повторной аудиторской проверки, как того требуют указанные кредиторы.

Жалоба ООО «Ленэкс» на назначение Козырева О.С. временным управляющим также не подлежит удовлетворению, поскольку указанная кандидатура согласована в установленном порядке и не противоречит Закону о банкротстве.

Кроме того, суд считает нецелесообразным в настоящее время решать вопрос о замене временного управляющего с учетом проведенной Козыревым О.С. работы и правомерности его действий.

Кроме того,  судебное заседание открытое и все лица имеют право присутствовать на нем в качестве слушателей, что никак не ущемляет их интересов.

ОАО «Красноуральскмежрайгаз» обратилось в арбитражный суд с заявлением о признании ОАО «Качканарский горно-обогатительный комбинат «Ванадий» несостоятельным (банкротом) на том основании, что должник имеет перед ним задолженность в сумме  22 719 033 р. 40 к. по оплате потребленного природного газа согласно договору 4/п от 24.01.97 г. за период 1997-1998 г.г.

Заявление ОАО «Красноуральскмежрайгаз» было принято арбитражным судом к производству и на предприятии должника введена процедура наблюдения.

Временным управляющим судом назначен Козырев О.С., являющийся заместителем    начальника    агентства по Свердловской области Урало-Сибирского межрегионального территориального органа Федеральной службы России по делам о несостоятельности и финансовому оздоровлению.

Кандидатура Козырева была предложена агентством по Свердловской области и согласована с руководством ФСФО России, учитывая социальную значимость предприятия должника.

Процедура наблюдения проводилась с 24.03.2000 г. по 22.08.2000 г.

Временным управляющим был проведен анализ хозяйственной деятельности предприятия, выявлены все кредиторы и 11.08.2000 г. проведено первое собрание кредиторов, которое вынесло решение о введении на ОАО «Качканарский горно-обогатительный комбинат «Ванадий» внешнего управления сроком на 12  месяцев. Кредиторы пришли к выводу о том, что на предприятии имеется возможность восстановления платежеспособности и финансового оздоровления путем введения внешнего управления.

За инициативой временного управляющего на предприятии проведена аудиторская проверка, по результатам которой не выявлено признаков преднамеренного банкротства, что подтверждается также ФСФО России.

Из представленных документов установлено, что ОАО КГОК «Ванадий» является самым крупным предприятием на территории МО «город Качканар», где работают около 9000 человек.

Комбинат – предприятие по добыче и обогащению титаномагнетитовых руд Гусевогорского    месторождения    и    окускованию    железованадиевого концентрата.

Основными видами продукции являются:
железорудный концентрат,    неофлюсованные окатыши,    высокоосновный агломерат и щебень из отходов ГОКа фракции 5-20, 10-40.

A - 1089

по добыче руды – 45 млн тн, по производству концентрата – 8,2 млн тн, по производству агломерата – 2,7 млн тн, по производству окатышей – 4,7 млн тн.

90% потребителей комбината составляют металлургические предприятия Урала.

Расширение рынка сбыта сдерживается в основном высокой стоимостью железнодорожных перевозок.

По результатам финансовой устойчивости установлено, что на протяжении анализируемого периода предприятие находилось в неустойчивом финансовом состоянии при неудовлетворительном покрытии заемных средств собственными.

Привлекаемые кредитные ресурсы направлялись на финансирование текущей хозяйственной деятельности, которая на протяжении 1998-1999 г.г. приносила новые убытки, поскольку реализация продукции производилась через посредников, которые получали от комбината продукцию по цене ниже себестоимости.

Анализ динамики коэффициентов финансовой устойчивости выявил тенденцию к ухудшению показателей за рассматриваемый период.

Так, коэффициент текущей ликвидности не достигал в 1998, 1999, 2000 г.г показателя 2, коэффициент быстрой ликвидности не достигал 0,7-1,0, а коэффициент абсолютной ликвидности не достигал 0,2 – 0,25.

Приведенные данные свидетельствуют о том, что текущие кредиторские обязательства не обеспечивались текущими активами, имела место невозможность погашения краткосрочных обязательств при критическом финансовом положении и невозможность погашения долга денежными средствами в ближайшее время, что говорит о низкой платежеспособности предприятия.

На протяжении указанного периода комбинат испытывал недостаток в денежных средствах от основной деятельности.

В результате анализа рентабельности выявлено, что основная деятельность комбината является прибыльной. Так, в 1 квартале 2000 г. произошел значительный рост основной деятельности и объема реализации.

Однако структура баланса комбината продолжает быть неудовлетворительной и не достигает нормативного значения – 1,0.

В 1 квартале 2000 г. наблюдается резкий рост рентабельности производства и увеличение объема реализации, что позволяет говорить о возможности восстановления платежеспособности предприятия при условии исключения посредников и перехода на прямые хозяйственные связи с потребителями, а также увеличения объема производства и снижения себестоимости выпускаемой продукции.

Выводы о финансовом положении комбината были доведены временным управляющим до сведения первого собрания кредиторов.

A - 1090

Руководствуясь ст.140 АПК РФ, ст.ст.68,69,70,72 ФЗ «О несостоятельности (банкротстве)» арбитражный суд

## О П Р Е Д Е Л И Л:

- ввести на ОАО «Качканарский горно-обогатительный комбинат «Ванадий» внешнее управление сроком на 12 месяцев (до 22.08.2001 г.).

- назначить внешним управляющим Козырева Олега Станиславовича.

- прекратить на ОАО «Качканарский горно-обогатительный комбинат «Ванадий» процедуру наблюдения и полномочия временного управляющего.

- установить внешнему управляющему Козыреву О.С. вознаграждение за период наблюдения и период внешнего управления в размере 10 000 р. ежемесячно.

- отстранить Козицына А.А. от должности генерального директора ОАО «Качканарский горно-обогатительный комбинат «Ванадий»

- управление делами на ОАО «Качканарский горно-обогатительный комбинат «Ванадий» возложить на внешнего управляющего Козырева О.С.

- объявить мораторий на удовлетворение требований кредиторов в соответствии со ст.70 ФЗ «О несостоятельности (банкротстве)».

Председательствующий судья                          Казанцева Н.В.

Судьи                                                              Платонова Е.А.



                                                                     Микушина Н.В.

**ARBITRAZH COURT**
**for SVERDLOVSK OBLAST**
**DETERMINATION**

City of Ekaterinburg                                    Case No. A60–4517/2000–C1
April 19, 2001

Arbitrazh Court for Sverdlovsk oblast in the composition of the judges : Platonova E.A., Mikushina
N.V., presided by Kazantseva N.V. tried in a court session the statement of Kozyrev O.S., the trustee
in bankruptcy of OAO "Vanadiy"  Mining & Concentration Integrated Plant in the city of Kachkanar"

On approval of compromise settled between the Debtor – OAO "Vanadiy" Mining & Concentration
Integrated Plant in the city of Kachkanar" , and the creditors in bankruptcy.

with the participation in the session of : trustee in bankruptcy Kozyrev O. S.,

 representatives of the Debor–Dzhuraev A.X., Zaharisheva E.N., Grigoryeva E.L., Kolesnikov M.N.
the representative FSFR – Elistratov D.S
the representative of the administration of the city of Kachkanar – Averilkov V.N.
the representative of OAO "Zapsibgazprom" – Novozhenov O.A.
the representative of OOO "Bolivar" – Galeev K.V.
the representative of OOO "Syrius" – Brusova N.S.
the representative of Alapaevsk Ferroalloy company –Kondratyev A.V.
the representative of "N.Tagilskoe montazhnoe upravlenie"Vostokmetallurgmontazh" – Kalinina
N.A.
the representative of OAO "Sverdlovenergo" – Gubin N.V.
the representative of "Uralskaya Liteynaya Companiya " and OOO "Trodos –A" – Ivanov A.V
the representative of OOO "PKF ELTEX " – Gulin S.A.
the representative of OOO "Krasnouralskmezhraygaz", OOO "Investment Association "Progress",
OOO "Industrial Construction Company GIP" – Stepchenko T.N.
the representative of OOO "Uralmed'zoloto" – Kulik A.I.
the representative of OOO " Trading House OAO "Vanadyi", OAO "Metallist", OAO "Svyatogor"–
Shelkanov I.V.
the representative of ZAO "Kamennyi Poyas", OAO PO "Sibenergouglesnab', ZAO "Uralskaya
Teploenergeticheskaya Companiya  " – Kalugin U.A.
the representative of " Nexis Prodacts L.L.C." – Ashikhmina M.M.
the representative of the employees of OAO "Vanadiy" Mining & Concentration Integrated Plant in
the city of Kachkanar" – Piankov A.A.

          OAO "Krasnouralskmezhraygaz" filed a petition to the Arbitrazh Court to recognize OAO
"Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" as insolvent
(bankrupt) on the ground , that the Debtor is in arrears to the former, in the amount of 22 719 033
roubles 40 copecks to pay for the consumed natural gas, under the contract 4/p of January 24, 1997
for the period of 1997 – 1998.

The petition of OAO "Krasnouralskmezhraygaz" was accepted for proceedings by the Arbitrazh Court and supervising was enforced at the Debtor's enterprise.

Kozyrev O.S., the Deputy Head of the Agency for Sverdlovsk oblast of the Urals– Sibirian Interregional Body of Federal Service of Russian Federation on Insolvency and Financial Rehabilitation, was appointed interim trustee.

Kozyrev was nominated by the Agency for Sverdlovsk Oblast and approved by the executives of FSFR of Russia taking into account social importance of the Debtor's enterprise.

Supervising was conducted since March 24, 2000 until August 22, 2000.

The interim trustee investigated into economic activity of the enterprise, identified all the creditors and on August 11, 2000 the first meeting of creditors was held where a decision was adopted to enforce administration in bankruptcy at OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" for the period of 12 months.

The Determination of the Arbirazh Court dated August 22, 2000 enforced administration in bankruptcy at OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar". Kozyrev O.S. was appointed trustee in bankruptcy.

The court was addressed with a statement of the trustee in bankruptcy on approval of a compromise, signed by the creditors in bankruptcy and the trustee in bankruptcy at the meeting, of creditors on March 11, 2001.

In accordance with the documents submitted to the court, it was found that in course of the first meeting of creditors, most of the creditors in bankruptcy voted for settling a compromise with the Debtor. The message of the compromise is debt rescheduling by means of paying the debt by installments.

Subject to the above–mentioned fact, as well as to the fact that the notice of the date of considering the statement on approval of a compromise was given to all interested persons, including all the creditors, included by the trustee in bankruptcy into the Register of claims, in general, the issues discussed at the meeting dealt with the approval of a compromise.

Having considered the conditions of a compromise, on hearing the representatives of the Debtor, creditors in bankruptcy, TO FSFO RF for Sverdlovsk Oblast, the trustee in bankruptcy the court approved a compromise.

Herewith the court takes into account the following:

A compromise, as a bankruptcy procedure, is a priority against other procedures, stipulated in the Federal Laws, since it expressly shows the will of most of the creditors in bankruptcy with respect to the order and method of redemption of arrears. Subject to compliance with the rules of law by the Debtor and the creditors in bankruptcy, when settling a compromise, approval thereof is the duty of the court .

The contents of the submitted compromise in general and the order of its settlement comply with the rules of law, in particular with Articles 120, 121, 122, 123 of Bankruptcy (Insolvency) Law, is

not prejudicial to the rights of the interested and third persons, makes it favorable for the Debtor to restore its creditworthiness and to satisfy the claims of the creditors:

First, the decision of settling a compromise on behalf of the creditors in bankruptcy was taken at the meeting of creditors, held on March 11, 2001, being voted for by the majority of creditors, identified by the trustee in bankruptcy;

Second, a compromise was settled in writing, signed on behalf of the creditors by the person authorized by the meeting.

Third, a compromise contains provisions on the amount, order and term of discharging obligations by the Debtor, in a method the most probable for the case (the Debtor has a few hundred creditors in bankruptcy);

Fourth, for the time when the compromise was settled , according to the information provided by the trustee in bankruptcy, the claims of the creditors of the first and second priority were discharged in full.

Moreover, approving the compromise, the court takes into account other facts, in particular:

The Debtor having legal status of a big corporation, the activity thereof is of great importance for economic and social welfare of the city of Kachkanar and Sverdlovsk oblast as a whole;

The opinion of the employees out of a few thousand staff of the Integrated Plant, expressly supporting settlement of a compromise;

The opinion of TO FSFO of Russia for Sverdlovsk oblast and of Kozyrev, the trustee in bankruptcy, supporting settlement and approval of a compromise;

Evident positive trends in the Debtor's activity, in particular, discharging of indebtedness in the salary and current obligations (payables), stabilizing of moral climate at the enterprise, normalizing of production etc. within the period of administration in bankruptcy.

Approving the compromise, the court, with due regard to the opinion of part of the creditors, protecting private interests and having stated their objections to the contents and the order of settlement of a compromise, as well as to those against the compromise, nevertheless proceeds from the fact, that in trying such a case it is impossible to disregard public aspects of the procedure in bankruptcy of such a Debtor as OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" as well as that overall satisfaction of all the creditors, including those who have minor debts due, as compared to so called "big" creditors, cannot be accomplished in practice.

Therewith, the court draws the attention of the Debtor and creditors in bankruptcy, failed to vote on the issue of settling a compromise, as well as those voted against the compromise, to the fact, that in accordance with p.3 of Article 122 of Bankruptcy Law, the conditions of a compromise cannot

be less favorable for them than for the creditors in bankruptcy, having voted for the compromise. This fact provides for discharging of indebtedness to all the creditors, with no exception for performance of obligations on paying penalties, interests and damages under the valid judgments.

The scrutiny of the challenges of the creditors in bankruptcy announced in course of the court session, makes it possible for the court to disregard thereof, for the following reasons:

The major challenges of OAO "MMK" and "Nexis Prodacts L.L.C." sum up in that the creditors in bankruptcy did not vote at the meeting along the principle: one vote –one creditor, but by the amount of arrears available, that the order and the term of discharging of indebtedness under a compromise provides not only a delay, but installments in discharging thereof, that when settling a compromise the contracts of guarantee and of pledge were disregarded., and that discharging of indebtedness in the salary was not full. In particular, the indebtedness in the salary to Khaidarov D.A., the former Director General , and Chervinsky N.I. and Eremina.E., the employees of the Integrated Plant, was not fully discharged.

Having considered the above–mentioned challenges, the court fails to find grounds to be qualified as the ones impeding settlement of a compromise.

The scrutiny of p.2 of Article 120 of Bankruptcy Law in the context of general provisions of the Law on the procedure of counting votes of the creditors in bankruptcy at the meetings of creditors (Articles 12 – 14) provides no grounds for stating , that when settling a compromise, voting should be on the principle: one creditor – one vote. Moreover, under the documents of the meeting submitted, the voting was actually both on the principle: one creditor – one vote , and on the amount of indebtedness.

As for concurrent use of delay and installments to discharge the debt, this method does not violate the rules of Bankruptcy Law.

With respect to the absence in the Register of creditors in salary of the named employees, of the Integrated Plant, the court fails to find any violation, since those employees did not assert their claims of discharging indebtedness in salary to the trustee in bankruptcy, in proper order, were not included into the Register of creditors, were not identified as creditors in the accounting books of the enterprise, and filed claims to the courts of general jurisdiction on indebtedness in salary only in April 2001.For the time when the meeting of creditors was held, there were no judgments on the above– mentioned employees.

In the above–mentioned circumstances, a compromise, settled between the creditors and OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar", in the person of the trustee in bankruptcy , Kozyrev O.S., is approved by the court, the proceedings in the case is closed.

Being guided by p.7 of Article 85, Article 140 of APC RF, Articles 120, 123, 124 of Bankruptcy Law of RF, the Arbitrazh Court

## HAS DETERMINED:

- to approve the compromise, settled on March 11, 2001 between OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar"and creditors in bankruptcy in the following draft:

The creditors of OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" in the person of Demsky Leonid Vasilievich , authorized by the meeting of creditors, acting upon p.2 of Article 121 of Bankruptcy (Insolvency) Law of RF and the decision of the meeting of creditors, dated March 11, 2001, on one part, and OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" , hereinafter referred to as "Debtor", in the person of the trustee in bankruptcy Kozyrev Oleg Stanislavovich, , acting upon p.2 of Article 121 of Bankruptcy (Insolvency) Law of RF and the determination of the arbitrazh court for Sverdlovsk oblast , dated August 22, 2000, on the other part, hereinafter concurrently referred to as "Parties", have settled the present compromise on the following:

I. · **The aspects governed by the present compromise.**

1. 1. The present compromise is settled within the period of administration in bankruptcy at the stage of the court trial of the case on recognition the Debtor as bankrupt (No. A60 –4517/ 00 –C 1), being in the proceedings of the Arbitrazh Court for Sverdlovsk Oblast.

1.2. The decision on settling the present compromise was taken at the meeting of the Debtor's creditors, held on March 11, 2001.

1.3. The provisions of the present compromise extend to the creditors in bankruptcy of OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar", the claims thereof have been held established, in accordance with Bankruptcy (Insolvency) Law of RF, (hereinafter referred as Creditors), including the Creditors, who failed to participate in voting on the issue of settling a compromise, as well as those voting against thereof.

1.4. The present compromise specifies the amount, timeframe, and methods of performing pecuniary obligations of the Debtor to the Creditor.

1.5. The present compromise was settled in accordance with the provisions of Article 7 of Bankruptcy (Insolvency) Law of RF.

1.6. The present compromise comes into force since its approval by the Arbitrazh court for Sverdlovsk oblast.

2. **The amount, order and timeframe of performing obligations
of the Debtor and discharging of the Debtor's obligations.**

2. 1. The arrears of the Debtor are specified in accordance with the Register of the Creditors' claims, compiled by the trustee in bankruptcy. The register of the Creditors' claims is an inherent part of the present compromise (Appendix).

2.1.1. · The arrears to the Creditors of the first priority is absent .

2.1.2. The arrears to the Creditors of the second priority is absent .

2.1.3. The arrears to the Creditors of the third priority is absent .

**A - 1096**

2.1.4.    The arrears to the Creditors of the fourth priority −356 614 294, 48 (three hundred fifty six million six hundred fourteen thousand two hundred ninety four roubles 48 copecks.

2.1.5.    The arrears to the Creditors of the fifth priority − 1 681 931 385, 19 ( one billion six hundred eighty one million nine hundred thirty one thousand three hundred eighty five roubles 19 copecks)

2.1.6.    In case of trial in the Arbitrazh court for Sverdlovsk oblast of the Creditor's challenges against the refusal of the trustee in bankruptcy to include a note into the Register of the Creditors' claims after the date of the meeting of Creditors, whereat the decision of the present compromise was taken, and in case of establishing grounds of the Creditor's claim, the amount of the arrears , specified in the Clause 2.1.5. of the present compromise, is to be increased by the amount, specified in the Determination of the Arbitrazh Court for Sverdlovsk oblast, establishing the amount of the claims of the this Creditor. All the provisions of the present compromise extend to the Creditor, specified in the present Clause, in its entirety.

2.2.    All the court expenses, including the expenses on a State due, as well as expenses on compensation to the interim trustee and trustee in bankruptcy, are paid by the Debtor without priority, in full amount, within ten (10) days since the Arbitrazh Court for Sverdlovsk oblast approves the present compromise.

2.3.    The order and timeframe of discharging the arrears to the Creditors of the fourth priority , as well as the arrears on the amounts of the penalties (fine) and other fiscal (economic) sanctions on the mandatory payments to the budget and off–budget funds are specified in accordance with the Laws of Russian federation on Taxes and Dues.

2.4.    Discharging of the Debtor's obligations to the Creditors of the fifth priority is conducted by the Debtor by pecuniary means by installments since the approval of the present compromise in equal shares , in accordance with the following schedule:

| Year | Term of payment | Amount of payment | Notes |
|------|-----------------|-------------------|-------|
| 1.2001 | − | 0% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | − |
| 2.2002 | − | 0% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | − |

| 3.2003 | – | 0% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | – |
|---|---|---|---|
| 4.2004 | – | 0% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | – |
| 5.2005 | No later than December 31, 2006 | 0% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | money |
| 6.2006 | No later than December 31, 2006 | 5% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | Money |
| 7.2007 | No later than December 31, 2006 | 7% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | Money |
| 8.2008 | No later than December 31, 2006– | 9% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | Money |
| 9.2009 | No later than December 31, 2006 | 9% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | Money |

| 10.2010 | | 10% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | Money |
|---|---|---|---|
| 11.2011 | No later than December 31, 2006 | 15% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | Money |
| 12.2012 | No later than December 31, 2006 | 15% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | Money |
| 13.2013 | No later than December 31, 20001 | 15% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | Money |
| 14.2014 | No later than December 31, 2006 | 15% of the total amount of the Debtor's arrears to each Creditor, calculated on 2006 the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | Money |

2.5.    In case of changing payment requisites of the Creditor for money transfer, in order to discharge the Debtor's obligation under the present compromise , the Creditors are entitled to notify the Debtor in writing within the entire period of validity of the present compromise.

In case of failure to provide notice, specified in this clause, the rules on enforcement of obligations, stipulated in Civil Laws of Russian Federations should apply.

2.5.    In course of discharging of the Debtor's obligations to the Creditors it is not allowed to transfer money on the accounts of the third persons, in accordance with the provisions of the present compromise, except for the cases the documents of the creditor confirm the fact of replacing the person in obligation.

### 3.    Final Conclusions.

3.1.    The present compromise is made in four copies; the first copy is at Arbitrazh Court for sverdlovsk oblast, the second one – with the debtor, the third one – with the person, authorized by the meeting of the Debtor's Creditors, dated March 11, 2001, to sign the present Compromise, the fourth – with the trustee in bankruptcy of the debtor. If necessary, the creditor is entitled require from the Debtor a copy of the present compromise, authenticated by the seal of the Debtor and the signature oft the Debtor's Director.

3.2.    Disputes, arising out of executing the present compromise, should be settled in accordance with the Laws of Russian Federation.

- the proceeding in the case of insolvency (bankruptcy)of OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" to be closed.
- to terminate the powers of the trustee in bankruptcy, Kozyrev O.S.
- pending the election of the Director of OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar", in accordance with the Articles of Association of the enterprise, Kozyrev O.S. performs his duty on administering the Integrated Plant.


Presiding Judge                                              Kazantseva N.V.

Judges                                                       Platonova E.A
                                                            Mikushina N,V.



# АРБИТРАЖНЫЙ СУД
## *СВЕРДЛОВСКОЙ ОБЛАСТИ*
# Определение

*г. Екатеринбург*

*«19» апреля 2001 г.*                    Дело № А60-4517/2000-С1

Арбитражный суд Свердловской области  в составе судей Платоновой Е.А., Микушиной Н.В. под председательством Казанцевой Н.В. рассмотрел в судебном заседании заявление внешнего управляющего ОАО «Качканарский горно-обогатительный комбинат «Ванадий» Козырева О.С.

Об утверждении мирового соглашения, заключенного между должником – ОАО «Качканарский горно-обогатительный комбинат «Ванадий» и конкурсными кредиторами.

при участии в заседании: внешнего управляющего Козырева О.С.

представителей должника – Джураева А.Х., Захарищевой Е.Н., Григорьевой Е.Л., Колесникова М.Н.
представителя ФСФО -  Елистратова Д.С.
представителя администрации г.Качканара - Аверилкова В.Н.
представителя ОАО «Запсибгазпром» - Новоженова О.А.
представителя ООО «Боливар» - Галеева К.В.
представителя ООО «Сириус» - Брусовой Н.С.
представителя Алапаевской ферросплавной компании – Кондратьева А.В.
представителя ОАО «Н.Тагильской монтажное управление «Востокметаллургмонтаж» - Калининой Н.А.
представителя ОАО «Свердловэнерго» - Губина Н.В.
представителя ООО «Уральская литейная компания» и ООО «Тродос-А» - Иванова А.В.
представителя ООО «ПКФ ЭЛТЕХ» - Гулина С.А.
представителя ОАО «Красноуральскмежрайгаз», ООО «Инвестиционная ассоциация «Прогресс», ООО «Промышленно-строительная компания ГИП» - Степченко Т.Н.

A - 1102

представителя ООО «Уралмедьзолото» - Кулика А.И.
представителя ООО «Торговый дом ОАО «Ванадий», ОАО «Металлист», ОАО «Святогор» - Щелканова И.В.
представителя ЗАО «Каменный пояс», ОАО ПО «Сибэнергоуглеснаб», ЗАО «Уральская теплоэнергетическая компания» - Калугина Ю.А.
представителя «НЭКСИС ПРОДАКС Эл. Эл. СИ» - Апшихминой М.М.
представителя трудового коллектива ОАО «Качканарский ГОК «Ванадий» Пьянкова А.А.

ОАО «Красноуральскмежрайгаз» обратилось в арбитражный суд с заявлением о признании ОАО «Качканарский горно-обогатительный комбинат «Ванадий» несостоятельным (банкротом) на том основании, что должник имеет перед ним задолженность в сумме  22 719 033 р. 40 к. по оплате потребленного природного газа согласно договору 4/п от 24.01.97 г. за период 1997-1998 г.г.

Заявление ОАО «Красноуральскмежрайгаз» было принято арбитражным судом к производству и на предприятии должника введена процедура наблюдения.
Временным управляющим судом назначен Козырев О.С., являющийся заместителем начальника агентства по Свердловской области Урало-Сибирского межрегионального территориального органа Федеральной службы России по делам о несостоятельности и финансовому оздоровлению.
Кандидатура Козырева была предложена агентством по Свердловской области и согласована с руководством ФСФО России, учитывая социальную значимость предприятия должника.

Процедура наблюдения проводилась с 24.03.2000 г. по 22.08.2000 г.
Временным управляющим был проведен анализ хозяйственной деятельности предприятия, выявлены все кредиторы и 11.08.2000 г. проведено первое собрание кредиторов, которое приняло решение о введении на ОАО «Качканарский горно-обогатительный комбинат «Ванадий» внешнего управления сроком на 12 месяцев.

Определением арбитражного суда от 22.08.2000 г. на ОАО «Качканарский горно-обогатительный комбинат «Ванадий» введено внешнее управление. Внешним управляющим назначен Козырев О.С.

В адрес суда поступило заявление внешнего управляющего об утверждении мирового соглашения, подписанного конкурсными кредиторами и арбитражным управляющим на собрании кредиторов 11.03.2001 г.

A - 1103

Согласно представленным суду документов установлено, что в ходе проведения собрания кредиторов, большинство конкурсных кредиторов проголосовало за заключение мирового соглашения с должником. Основным

содержанием мирового соглашения является реструктуризация задолженности путем предоставления должнику рассрочки выплаты долга.

С учетом названного обстоятельства, а также того, что о дате рассмотрения заявления об утверждении мирового соглашения были извещены все заинтересованные лица, в том числе все кредиторы, включенные внешним управляющим в реестр требований, на собрании в основном рассматривались вопросы, связанные с утверждением мирового соглашения.

Рассмотрев условия мирового соглашения, выслушав представителей должника, конкурсных кредиторов, ТО ФСФО РФ по Свердловской области, внешнего управляющего суд утверждает мировое соглашение.

При этом суд принимает во внимание следующие обстоятельства:

Мировое соглашение как процедура банкротства является приоритетной по отношению к другим процедурам, установленным федеральным законодательством, так как непосредственно выражает волю большинства конкурсных кредиторов в отношении порядка и способа погашения должником имеющейся задолженности. При условии соблюдения должником и конкурсными кредиторами, при заключении мирового соглашения требований закона, его утверждение является обязанностью суда.

Содержание представленного мирового соглашения в целом и порядок его заключения соответствуют требования закона, в частности статьям 120, 121, 122, 123 ФЗ «О несостоятельности (банкротстве)», не нарушает прав заинтересованных и третьих лиц, создают условия для восстановления платежеспособности должника и удовлетворения требований конкурсных кредиторов:

Во-первых, решение о заключении мирового соглашения от имени конкурсных кредиторов принято собранием кредиторов, состоявшимся 11.03.2001 г., за данное решение проголосовало большинство установленных внешним управляющим кредиторов;

Во-вторых, мировое соглашение заключено в письменной форме, подписано со стороны кредиторов лицом, уполномоченным собранием кредиторов;

A - 1104

В-третьих, мировое соглашение содержит положения о размерах, порядке и сроках исполнения обязательств должника в форме, максимально возможной для данного случая (наличие у должника нескольких сотен конкурсных кредиторов);

В-четвертых, на момент заключения мирового соглашения по данным, представленным внешним управляющим, требования кредиторов первой и второй очередей погашены в полном объеме.

Кроме того, утверждая мировое соглашение, суд учитывает и другие обстоятельства, в частности:

наличие у должника статуса крупной организации, деятельность которой имеет большую значимость для экономики и социального благополучия города Качканара и Свердловской области в целом;

мнение работников многотысячного коллектива комбината, однозначно поддерживающих заключение мирового соглашения;

мнение ТО ФСФО России по Свердловской области и внешнего управляющего Козырева О.С., выступающих в поддержку заключения и утверждения мирового соглашения;

очевидные положительные тенденции в деятельности должника, в частности ликвидация задолженности по заработной плате и текущим обязательным платежам, стабилизация моральной обстановки на предприятии, нормализация производственного процесса и т.д. в период внешнего управления.

Утверждая мировое соглашение, суд, относясь с уважением к мнению части кредиторов, защищающих частные интересы и высказавших свои претензии к содержанию и порядку заключения мирового соглашения, а также выступивших против заключения мирового соглашения, тем не менее, исходит из того факта, что при рассмотрении данного дела нельзя не учитывать публично-правовой аспект отношений, связанных с процедурой банкротства такого должника как ОАО «Качканарский горно-обогатительный комбинат «Ванадий», а также того, что полный учет интересов абсолютно всех кредиторов, в том числе, имеющих незначительную задолженность по сравнению с так называемыми «крупными» кредиторами, в принципе недостижим.

При этом суд обращает внимание должника и конкурсных кредиторов, не голосовавших по вопросу заключения мирового соглашения, а также голосовавших против соглашения на то, что в соответствии с п.3 ст.122 Закона о банкротстве, условия мирового соглашения для них не могут быть хуже, чем

4

A - 1105

для конкурсных кредиторов, голосовавших за заключение мирового соглашения. Данное обстоятельство предполагает погашение задолженности перед всеми кредиторами, не исключая и исполнение обязанностей по уплате неустоек, процентов и убытков на основании вступивших в законную силу решений судов.

Анализ возражений конкурсных кредиторов, высказанных в ходе судебного заседания, позволяет суду не принимать их во внимание по следующим причинам:

Основные возражения ОАО «ММК» и «Нэксис Продакс Эл. Эл. Си.» сводятся к тому, что конкурсные кредиторы на собрании голосовали не по принципу: один голос - один кредитор, а суммой имеющейся задолженности, что порядок и сроки погашения задолженности по мировому соглашению предусматривает не только отсрочку, но и рассрочку погашения задолженности, что при заключении соглашения не были учтены договоры поручительства и залога и что не в полном объеме погашен долг по заработной плате. В частности, не погашена задолженность по заработной плате бывшему генеральному директору Д.А.Хайдарову и работникам комбината Червинскому Н.И. и Ереминой Н.Е.

Рассмотрев данные возражения, суд не находит оснований для учета их в качестве обстоятельств, препятствующих утверждению мирового соглашения.

Анализ п.2 ст.120 Закона о банкротстве в контексте общих положений закона о порядке учета голосов конкурсных кредиторов на собраниях кредиторов (ст.ст.12-14), не дает оснований утверждать, что при заключении мирового соглашения голосование должно проводиться по принципу: один кредитор – один голос. Кроме того, исходя из представленных документов собрания, фактически голосование проводилось как по принципу: один кредитор – один голос, так и по сумме задолженности.

Что касается применения одновременно отсрочки и рассрочки погашения долга, то этот метод не нарушает требований Закона о банкротстве.

В отношении отсутствия в реестре кредиторов по заработной плате указанных работников комбината, суд не усматривает нарушений, поскольку данные работники не обращались к внешнему управляющему в установленном порядке с требованием о выплате долга по заработной плате, они не включены в реестр кредиторов, не значатся кредиторами по бухгалтерской документации предприятия и заявления в суды общей юрисдикции по поводу долга по зарплате поданы ими только в апреле 2001 г. На момент проведения собрания кредитов, решения судов по указанным работникам отсутствовали.

A - 1106

При изложенных обстоятельствах мировое соглашение, заключенное между кредиторами и ОАО «Качканарский горно-обогатительный комбинат «Ванадий» в лице внешнего управляющего Козырева О.С. утверждается судом, производство по делу прекращается.

Руководствуясь п.7 ст.85, ст.140 АПК РФ, ст.ст.120, 123, 124 ФЗ «О несостоятельности (банкротстве)» арбитражный суд

## О П Р Е Д Е Л И Л:

- утвердить мировое соглашение, заключенное 11.03.2001 г. между ОАО «Качканарский горно-обогатительный комбинат «Ванадий» и конкурсными кредиторами в следующей редакции:

Кредиторы открытого акционерного общества «Качканарский горно-обогатительный комбинат «Ванадий» в лице Демского Леонида Васильевича, уполномоченного собранием кредиторов, действующего на основании п. 2 ст. 121 Федерального закона «О несостоятельности (банкротстве)» и решения собрания кредиторов от « 11» марта 2001 года, с одной стороны, и открытое акционерное общество «Качканарский горно-обогатительный комбинат «Ванадий», именуемое в дальнейшем «Должник», в лице внешнего управляющего Козырева Олега Станиславовича, действующего на основании п. 2 ст. 121 Федерального закона «О несостоятельности (банкротстве)» и определения Арбитражного суда Свердловской области от 22 августа 2000 года, с другой стороны, именуемые в дальнейшем совместно «Стороны», заключили настоящее мировое соглашение о нижеследующем:

### 1. Вопросы, регулируемые настоящим мировым соглашением

1.1. Настоящее мировое соглашение заключено в период внешнего управления на стадии судебного разбирательства дела о признании Должника банкротом (№ А60-4517/00-С1), находящегося в производстве Арбитражного суда Свердловской области.

1.2. Решение о заключении настоящего мирового соглашения принято на собрании кредиторов Должника, состоявшемся « 11 » марта 2001 года (протокол собрания кредиторов от « 11 » марта 2001 года).

1.3. Положения настоящего мирового соглашения распространяются на конкурсных кредиторов ОАО «Качканарский горно-обогатительный комбинат «Ванадий», требования которых признаны установленными в соответствии с Федеральным законом «О несостоятельности (банкротстве)» (именуемые в дальнейшем Кредиторы), в том числе на Кредиторов, не принимавших участие

6

A - 1107

в голосовании по вопросу о заключении мирового соглашения, а также голосовавших против его заключения.

1.4. Настоящее мировое соглашение определяет размер, сроки и способы исполнения денежных обязательств Должника перед Кредиторами.

1.5. Настоящее мировое соглашение заключено в соответствии с положениями главы 7 Федерального закона «О несостоятельности (банкротстве)».

1.6. Настоящее мировое соглашение вступает в силу с момента его утверждения Арбитражным судом Свердловской области.

**2. Размер, порядок и сроки исполнения обязательств Должника и прекращение обязательств Должника**

2.1. Задолженность Должника определяется в соответствии с данными реестра требований кредиторов, составленным внешним управляющим. Реестр требований кредиторов является неотъемлемой частью настоящего мирового соглашения (Приложение).

2.1.1. Задолженность перед кредиторами первой очереди – отсутствует.

2.1.2. Задолженность перед кредиторами второй очереди - отсутствует.

2.1.3. Задолженность перед кредиторами третьей очереди – отсутствует.

2.1.4. Задолженность перед кредиторами четвёртой очереди – 356 614 294,48 рублей *(триста пятьдесят шесть миллионов шестьсот четырнадцать тысяч двести девяносто четыре рубля 48 копеек).*

2.1.5. Задолженность перед кредиторами пятой очереди - 1 681 931 385,19 рублей *(один миллиард шестьсот восемьдесят один миллион девятьсот тридцать одна тысяча триста восемьдесят пять рублей 19 копеек).*

2.1.6. В случае рассмотрения в Арбитражном суде Свердловской области возражений Кредитора на отказ внешнего управляющего от внесения записи в реестр требований кредиторов после даты проведения собрания Кредиторов, на котором принято решение о заключении настоящего мирового соглашения, и установления обоснованности требований Кредитора, размер задолженности, указанной в пункте 2.1.5. настоящего мирового соглашения, увеличивается на сумму, указанную в определении Арбитражного суда Свердловской области, устанавливающем размер требований данного Кредитора.

Все положения настоящего мирового соглашения распространяются на Кредитора, указанного в настоящем пункте, в полном объеме.

2.2. Все судебные расходы, включая расходы по государственной пошлине, а также расходы, связанные с выплатой вознаграждения временному управляющему и внешнему управляющему, оплачиваются Должником вне очереди в полном объеме в течение 10 (Десять) дней с момента утверждения Арбитражным судом Свердловской области настоящего мирового соглашения.

2.3. Порядок и сроки погашения задолженности перед кредиторами четвертой очереди, а также задолженности по уплате сумм штрафов (пени) и иных

финансовых (экономических) санкций по обязательным платежам в бюджет и во внебюджетные фонды определяются в соответствии с законодательством Российской Федерации о налогах и сборах.

2.4. Исполнение обязательств Должника перед Кредиторами пятой очереди производится Должником денежными средствами в рассрочку с момента утверждения настоящего мирового соглашения равными долями согласно нижеприведенному графику:

| Год | Срок платежа | Размер платежа | Примечание |
|-----|------|------|------|
| 1. 2001 г. | — | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | — |
| 2. 2002 г. | — | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | — |
| 3. 2003 г. | — | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | — |
| 4. 2004 г. | — | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | — |
| 5. 2005 г. | — | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | — |
| 6. 2006 г. | Не позднее 31 декабря 2006 года | 5 (Пять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 7. 2007 г. | Не позднее 31 декабря 2007 года | 7 (Семь) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |

8

A - 1109

| 8. 2008 г. | Не позднее 31 декабря 2008 года | 9 (Девять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
|---|---|---|---|
| 9. 2009 г. | Не позднее 31 декабря 2009 года | 9 (Девять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 10. 2010 г. | Не позднее 31 декабря 2010 года | 10 (Десять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 11. 2011 г. | Не позднее 31 декабря 2011 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 12. 2012 г. | Не позднее 31 декабря 2012 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 13. 2013 г. | Не позднее 31 декабря 2013 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 14. 2014 г. | Не позднее 31 декабря 2014 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |

2.5. В случае изменения платежных реквизитов Кредитора для перечисления средств в счет исполнения Должником обязательств по настоящему мировому соглашению Кредиторы вправе направить Должнику письменное уведомление в течение всего срока действия настоящего мирового соглашения.

В случае не поступления указанного в данном пункте уведомления применяются правила об исполнении обязательств, установленные гражданским законодательством Российской Федерации.

2.6. При исполнении обязательств Должника перед Кредиторами не допускается перечисление денежных средств в соответствии с условиями настоящего мирового соглашения на счета третьих лиц, за исключением случаев документально подтвержденного Кредитором факта перемены лица в обязательстве.

### 3. Заключительные положения

3.1. Настоящее мировое соглашение составлено в четырех экземплярах: первый экземпляр находится в Арбитражном суде Свердловской области, второй – у Должника, третий – у лица, уполномоченного  собранием кредиторов Должника от « 11 » марта 2001 года на подписание настоящего Мирового Соглашения, четвертый – у внешнего управляющего Должника. При необходимости Кредитор вправе потребовать от Должника копию экземпляра настоящего мирового соглашения, заверенную печатью Должника и  подписью руководителя Должника.

3.2. Споры, возникающие в ходе исполнения настоящего мирового соглашения, разрешаются в  соответствии с законодательством Российской Федерации.

- производство по делу о несостоятельности (банкротстве) ОАО «Качканарский горно-обогатительный комбинат «Ванадий» прекратить.

- прекратить полномочия внешнего управляющего Козырева О.С.

- впредь, до момента избрания руководителя ОАО «Качканарский горно-обогатительный комбинат «Ванадий» в соответствии с Уставом предприятия Козырев О.С. исполняет обязанности руководителя комбината.

Председательствующий судья                                    Казанцева Н.В.

Судьи                                                                          Платонова Е.А.

Копия верна:
Специалист _____ Полякова Т.А.
_____ ф.и.о.
8. 05. 01 г.

Микушина Н.В.

**Sverdlovsk Region**
**Arbitration Court**
34 Lenin Blvd.
Ekaterinburg

**Creditor:**
**Open Stock Company**
**Krasnouralskmezhraigaz**

34 Ustinov St., Krasnouralsk
Sverdlovsk Region 624330

**Debtor:** OSC Kachkanar "Vanady"Mining
and Processing Plant
2 Sverdlov St.
Kachkanar 624356, Sverdlovsk Region

**Territorial Agency, Russian Federal Insolvency**
**and Financial Recovery Service,**
**in Sverdlovsk Region**
3 Oktyabrskaya St., Ekaterinburg 620014

**Local Government Agency:** Kachkanar City Administration
8 Sverdlov St.
Kachkanar 624356, Sverdlovsk Region

<u>**APPLICATION**</u>
**to declare debtor insolvent**
**(bankrupt)**

**I**

Open Stock Company Krasnouralskmezhraigaz (hereinafter "Supplier",
"Creditor") and Open Stock Company Kachkanar Vanady" Mining and Processing Plant
(hereinafter Client, Debtor) entered into Contract No. 4/p for the supply of natural gas
(copy attached) on January 24, 1997. Pursuant to para. 8.1 thereof, the effective dates of
the contract were from 1/1/1997 to 12/31/1997.

In accordance with Letter No. 80 of January 21, 1998, and Letter No. 72-58/1
DPR of February 10, 1998, Contract No. 4/p of January 24, 1997 was extended until
January 31, 1998 (copies of Letters attached).

A gas supply arrangement therefore existed between Creditor and Debtor from
1/1/1997 to 12/31/1998.

In accordance with para. 1.1. of the aforementioned natural gas supply contract,
Supplier (Creditor): *"...shall supply, and client shall accept and pay for the natural
gas..."*

According to para. 5.1 of the aforementioned contract, *"...the price of the natural gas shall be determined in accordance with RF Government Edict No. 678 of 7/13/1993 'On State Regulation of the Price of Natural Gas and Other Types of Energy Resources' and shall be indexed monthly..."*

[stamp]Sv. Reg. Arbitration Court, Received 3/24/2000 [illegible]]

According to para. 5.3. of the aforementioned contract, *"...Supplier shall issue a request for payment for the gas supplied under the contract by the 20th of the month following the billing month, without acceptance"*.

In accordance with para. 3.5. of the aforementioned contract: *"...the quantity of delivered (accepted) gas for a month shall be confirmed by an exchange of telephoned telegrams on the first of each month by 3.00 p.m. Moscow time, followed by preparation of a bilateral certificate..."*

## II

Creditor has duly fulfilled his obligations to supply natural gas in accordance with the aforementioned contract. Pursuant to para. 3.5. of Contract No. 4/p of 1/24/1997, the parties confirmed the delivery (receipt) of natural gas by preparing and signing bilateral certificates, namely (copies of the Certificates attached):

| No. | Certificate Date | Gas Supply Period | Quantity of Supplied Gas (in 000 base m$^3$) |
|---|---|---|---|
| 1 | January 31, 1997 | January 1997 | 12,000 |
| 2 | February 28, 1997 | February 1997 | 9,900 |
| 3 | March 30, 1997 | March 1997 | 11,100 |
| 4 | April 30, 1997 | April 1997 | 9,700 |
| 5 | June 2, 1997 | May 1997 | 10,000 |
| 6 | July 1, 1997 | June 1997 | 10,400 |
| 7 | August 1, 1997 | July 1997 | 13,711 |
| 8 | September 1, 1997 | August 1997 | 10,720 |
| 9 | October 1, 1997 | September 1997 | 10,560 |
| 10 | November 1, 1997 | October 1997 | 9,070 |
| 11 | December 2, 1997 | November 1997 | 8,560 |
| 12 | December 26, 1997 | December 1997 | 9,100 |
| 13 | January 30, 1998 | January 1998 | 12,760 |
| 14 | February 26, 1998 | February 1998 | 10,190 |
| 15 | March 31, 1998 | March 1998 | 9,900 |
| 16 | April 24, 1998 | April 1998 | 8,040 |
| 17 | May 31, 1998 | May 1998 | 13,600 |
| 18 | July 1, 1998 | June 1998 | 12,480 |
| 19 | July 30, 1998 | July 1998 | 10,303 |
| 20 | August 31, 1998 | August 1998 | 11,900 |

| 21 | October 1, 1998 | September 1998 | 12,370 |
| 22 | October 31, 1998 and Addendum to Certificate of October 31, 1998 | October 1998 | 13,490 |
| 23 | December 1, 1998 and Addendum to Certificate of December 1, 1998 | November 1998 | 10,018 |
| 24 | December 28, 1998 | December 1998 | 6,407 |

Creditor invoiced Debtor based on the Natural Gas Delivery (Receipt) Certificates signed by Debtor and Creditor, namely (copies of invoices attached):

| No. | Natural Gas Delivery (Receipt) Certificate Date | Invoice Number and Date | Invoice/Bill Amount (adjusted for denomination) in rubles |
|---|---|---|---|
| 1 | January 31, 1997 | No. 138 of February 14, 1997 | 4,164,148=80 |
| 2 | February 28, 1997 | No. 240 of March 7, 1997 | 3,375,108=00 |
| 3 | March 30, 1997 | No. 396 of April 3, 1997 | 3,784,212=00 |
| 4 | April 30, 1997 | No. 514 of April 30, 1997 | 3,306,924=00 |
| 5 | June 2, 1997 | No. 561 of May 30, 1997 | 3,409,200=00 |
| 6 | July 1, 1997 | No. 669 of June 30, 1997 | 3,545,568=00 |
| 7 | August 1, 1997 | No. 739 of July 31, 1997 | 4,674,354=12 |
| 8 | September 1, 1997 | No. 824 of August 29, 1997 | 3,654,662=40 |
| 9 | October 1, 1997 | No. 899 of September 30, 1997 | 3,600,115=20 |
| 10 | November 1, 1997 | No. 1006 of October 31, 1997 | 3,092,144=40 |
| 11 | December 2, 1997 | No. 1074 of November 28, 1997 | 2,918,275=20 |
| 12 | December 26, 1997 | No. 1141 of December 29, 1997 | 3,205,020=00 |
| 13 | January 30, 1998 | No. 69 of January 30, 1998 | 4,494,072=00 |
| 14 | February 26, 1998 | No. 163 of February 27, 1998 | 3,588,918=00 |
| 15 | March 31, 1998 | No. 273 of March 31, 1998 | 3,486,780=00 |
| 16 | April 24, 1998 | No. 378 of April 27, 1998 | 2,831,688=00 |
| 17 | May 31, 1998 | No. 459 of May 29, 1998 | 4,789,920=00 |
| 18 | July 1, 1998 | No. 578 of June 30, 1998 | 4,395,456=00 |
| 19 | July 30, 1998 | No. 742 of July 31, 1998 | 3,628,716=60 |
| 20 | August 31, 1998 | No. 857 of September 31, 1998 | 4,191,180=00 |
| 21 | October 1, 1998 | No. 972 of September 30, 1998 | 4,356,714=00 |
| 22 | October 31, 1998 | No. 1109 of October 30, 1998 | 4,751,178=00 |
| 23 | December 1, 1998 | No. 1276 of November 30, 1998 | 3,528,339=60 |
|  |  | No. 1354 of December 25, 1998 | 1,695,843=00 |
| 24 | December 28, 1998 | No. 1371 of December 29, 1998 | 2,256,545=40 |
|  |  | TOTAL | 90,725,082=72 |

Thus, according to the invoices, the value of the natural gas supplied under Contract No. 4/p of 1/24/1997 was 90,725,082=72 rubles.

Pursuant to para. 5.3. of Contract No. 4/p of January 24, 1997, Creditor has issued requests for payment to Debtor, namely (copies of requests for payment attached):

| No. | Request for Payment Number and Date | Request for Payment Amount (adjusted for denomination) in rubles |
|-----|-------------------------------------|-----------------------------------------------------------------|
| 1 | No. 15 of February 17, 1997 | 4,164,148=80 |
| 2 | No. 23 of April 8, 1997 | 7,159,320=00 |
| 4 | No. 47 of May 29, 1997 | 3,306,924=00 |
| 5 | No. 60 of June 26, 1997 | 3,409,200=00 |
| 6 | No. 64 of July 14, 1997 | 3,545,368=00 |
| 7 | No. 73 of August 13, 1997 | 4,674,354=12 |

[previous section missing]

| No. | Instrument | Date | Amount |
|-----|-----------|------|--------|
| 11 | Account Settlement Instrument No. 42-01/859 between Tyumentransgaz, Krasnouralskmezhraigaz, Kachkanar GOK, ZAO TD Ural | April 1, 1999 | 3,000,000=00 |
| 12 | Offset Instrument between AO Vanady, Kachkanar; OOO Promtekhsnab, Ekaterinburg; AO Krasnouralskmezhraigaz, Krasnouralsk | May 14, 1999 | 216,012=00 |
| 13 | Offset Instrument No. 42-01/368 | February 24, 1997 | 5,000,000=00 |
| 14 | Offset Instrument No. 16816 between AO Vanady, Kachkanar; OOO Promtekhsnab, Ekaterinburg; AO Krasnouralskmezhraigaz, Krasnouralsk | June 10, 1998 | 345,446=42 |
| 15 | Offset Instrument between OAO KGOK Vanady, AO Krasnouralskmezhraigaz, ZAO UMSK Kamenny Poyas | June 2, 1999 | 900,000=00 |
| 16 | Offset Instrument No. 42-01/505 between Kachkanary GOK, AO Krasnouralskmezhraigaz, DP Tyumentransgaz | June 25, 1997 | 7,000,000=0 |
| 17 | Mutual Debt Offset Agreement No. 6-VR/109 Offset Instrument No. 6-VR/109 | March 17, 1997 March 17, 1997 | 3,000,000=0 |
| 18 | Offset Instrument between OSO KGOK Vanady and OAO AO Krasnouralskmezhraigaz for natural gas supply contract No. 4/p of 1/24/1997 | June 5, 1999 | 2,908,973=90 |
| | | TOTAL: | 68,006,049=32 |

As a result of this settlement, Debtor owed **Creditor 22,719,033=40** rubles under Contract No. 4/p of 1/24/1997. This sum was arrived at by deducting the amount of the offset debt (68,006,049=32 rubles) from the total amount owed to Creditor by Debtor under Contract No. 4/p of 1/24/1997 (90,725,082=72 rubles).

To confirm this, Debtor and Creditor signed an Offset Reconciliation Instrument between Debtor and Creditor as of 12/15/1999 (copy of Instrument attached).

Creditor has provided these data and attached the above-mentioned documents in order to comply with para. 6 and 8, clause 2, article 35 and clause 1, article 37 of the Federal Law "On Insolvency (Bankruptcy)" (Creditor's application must state Debtor's liability to Creditor on which the claim is based, its due date, as well as documentation of the grounds for creditor's application).

### III

On February 4, 2000, Creditor sent a claim to Debtor (incoming No. 370 of February 7, 2000; copy attached) demanding repayment of the debt of 22,719,033=40 rubles, which Debtor had incurred under Contract No. 4/p of 1/24/1997 to supply natural gas.

In response to the claim, Debtor sent Creditor a letter (outgoing No. 4050-110A of February 8, 2000; copy attached) acknowledging Debtor's liability to Creditor in the amount of 22,719,033=40 rubles under Contract No. 4/p of 1/24/1997 to supply natural gas, but refusing to repay it.

On February 15, 2000, Creditor sent a claim to Debtor (outgoing No. 493A of February 16, 2000; copy attached) repeating the demand for repayment of the debt of 22,719,033=40 rubles which Debtor had incurred under Contract No. 4/p of 1/24/1997 to supply natural gas, and giving notice of his intention to seek legal remedy if repayment was not forthcoming.

In response to the claim, Debtor sent Creditor a letter (outgoing No. 4050-149A of February 21, 2000; copy attached) once again acknowledging Debtor's liability to Creditor in the amount of 22,719,033=40 rubles under Contract No. 4/p of 1/24/1997 to supply natural gas and once again refusing to repay it.

Creditor is submitting to the Arbitration Court and citing the foregoing claims and letters pursuant to para. 7, clause 2, article 35 and para. 3, clause 3, article 37 of the Federal Law "On Insolvency (Bankruptcy)" (Creditor's application must state and must have attached documentation of Creditor's claims, including documentation of Debtor's acknowledgement of the claims).

### IV

Taking into consideration that Debtor's debt to Creditor in the amount of 22,719,033=40 rubles has been outstanding for over a year, pursuant to clause 1, article 6, clause 1, article 32, and article 35 and 37 of the Federal Law "On Insolvency (Bankruptcy)", Creditor has decided to have his claims met through bankruptcy proceedings against Debtor.

Pursuant to para. 5, clause 2, article 35 of the Federal Law "On Insolvency (Bankruptcy)", Creditor states that his claims against Debtor amount to 22,719,033=40 rubles; this amount is the principal and does not include interest or penalties (fees, fines), which Debtor is not claiming and Creditor does not acknowledge (sic).

Therefore, proceeding from the fact that at the time this application was filed Debtor's liability of 22,719,033=40 rubles to Creditor had been outstanding for over 3 months and that the total debt exceeds the limit of 500 times the minimum wage set by clause 2, article 5 of the Federal Law "On Insolvency (Bankruptcy)", based on article 143 of the Arbitration Code and Rules and article 48 of the Federal Law "On Insolvency (Bankruptcy)", Creditor

## PETITIONS:

the Sverdlovsk Region Arbitration Court to declare OSC Kachkanar "Vanady" Mining and Processing Plant bankrupt and place it in receivership.

**Addenda:**

1.  Proof of payment of state tax;
2.  Proof of Mailing of copy of application to Debtor;
3.  Proof of Mailing of copy of application to Territorial Agency, Russian Federal Insolvency and Financial Recovery Service;
4.  Proof of Mailing of copy of Application to Local Government Agency;
5.  Creditor's motion to appoint a temporary receiver with 13 addenda;
6.  Copy of Statutes;
7.  Copy of Protocol on Appointing Company General Director;
8.  Copy of Contract No. 4/p of January 24, 1997;
9.  Copy of letter No. 80 of January 21, 1998;
10  Copy of letter 72 58/1 DPR of February 10, 1998;
11.  Copy of gas delivery certificate of January 31, 1997;
12.  Copy of gas delivery certificate of February 28, 1997;
13.  Copy of gas delivery certificate of March 30, 1997;
14.  Copy of gas delivery certificate of April 30, 1997;
15.  Copy of gas delivery certificate of June 2, 1997;
16.  Copy of gas delivery certificate of July 1, 1997;
17.  Copy of gas delivery certificate of August 1, 1997;
18.  Copy of gas delivery certificate of September 1, 1997;
19.  Copy of gas delivery certificate of October 1, 1997;
20.  Copy of gas delivery certificate of November 1, 1997;
21.  Copy of gas delivery certificate of December 2, 1997;
22.  Copy of gas delivery certificate of December 26, 1997;
23.  Copy of gas delivery certificate of January 30, 1998;
24.  Copy of gas delivery certificate of February 26, 1998;
25.  Copy of gas delivery certificate of April 24, 1998;
26.  Copy of gas delivery certificate of May 31, 1998;
27.  Copy of gas delivery certificate of July 1, 1998;
28.  Copy of gas delivery certificate of July 30, 1998;
29.  Copy of gas delivery certificate of August 31, 1998;
30.  Copy of gas delivery certificate of October 1, 1998;
31.  Copy of gas delivery certificate of October 31, 1998;
32.  Copy of certificate addendum of October 31, 1998;
33.  Copy of gas delivery certificate of December 1, 1998;

34. Copy of gas delivery certificate of December 1, 1998;
35. Copy of gas delivery certificate of December 28, 1998;
36. Copy of certificate of assignment of OAO NTMK promissory note of December 16, 1997
37. Copy of certificate of acceptance of promissory note of February 22, 1999
38. Copy of certificate of assignment of promissory notes of OAO NTMK of December 3, 1997
39. Copy of certificate of acceptance of promissory note of April 8, 1999
40. Copy of certificate of assignment of promissory notes of OSC Kachkanar "Vanady" Mining and Processing Plant of March 30, 1997
41. Copy of certificate of acceptance of notes of April 14, 1998
42. Copy of certificate of acceptance of promissory notes of AOOT West-Siberian Metallurgical Plant of January 29, 1997
43. Copy of certificate of acceptance of promissory notes for Contract No. 4/p of 1-24-97 of August 25, 1998
44. Copy of OSO Krasnouralskmezhraigaz power-of-attorney No. 1060 of 6/29/1998 for V.V. Vasilyev
45. Copy of certificate of assignment of OAO MMK promissory notes of December 16, 1997
46. Copy of offset instrument of July 19, 1999
47. Copy of account settlement instrument No. 42-01/859 between Tyumentransgaz, Krasnouralskmezhraigaz, Kachkanar GOK, ZAO TD Ural of April 1, 1999
48. Copy of offset instrument between AO Vanady, Krasnodar; OOO Promtekhsnab, Ekaterinburg; AO Krasnouralskmezhraigaz, Krasnouralsk of May 14, 1999
49. Copy of offset instrument No. 42-01/368 of February 24, 1997;
50. Copy of offset instrument No. 16816 of June 10, 1998;
51. Copy of offset instrument of June 2, 1999;
52. Copy of offset instrument No. 42-01/505 of June 24, 1997;
53. Copy of offset instrument No. 6-VR/109 of March 17, 1997;
54. Copy of debt offset agreement No. 6-VR/109 of March 17, 1997;
55. Copy of offset instrument of June 5, 1999;
56. ~~Copy of offset instrument of January 24, 1997;~~
57. Copy of invoice No. 138 of February 14, 1997;
58. Copy of invoice No. 240 of March 7, 1997;
59. Copy of invoice No. 396 of April 3, 1997;
60. Copy of invoice No. 514 of April 30, 1997;
61. Copy of invoice No. 561 of May 30, 1997;
62. Copy of invoice No. 669 of June 30, 1997;
63. Copy of invoice No. 739 of July 31, 1997;
64. Copy of invoice No. 824 of August 29, 1997;
65. Copy of invoice No. 899 of September 30, 1997;
66. Copy of invoice No. 1006 of October 31, 1997;
67. Copy of invoice No. 1074 of November 28, 1997;