В Федеральный арбитражный суд
Уральского округа

620075, г. Екатеринбург,
проспект Ленина, 34
*(через Арбитражный суд Свердловской области)*

Заявитель: ОАО «Красноуральскмежрайгаз»
624330, Свердловская область,
г. Красноуральск, ул. Устинова, д. 34

Должник: ОАО «Качканарский горно-обогатительный
комбинат «Ванадий»
624356, Свердловская область,
г. Качканар, ул. Свердлова, д. 2

Конкурсные кредиторы,
подавшие жалобу: 1. ООО «Ленэкс»
109240, г. Москва,
ул. Яузская, д. 8, стр. 2, оф. 6
2. ООО «НЭКСИЗ»
109072, г. Москва,
Болотная площадь, д. 4, стр. 1, оф. 37

разослано: лицам, в соответствии с реестром
(приложение № 9)

## Кассационная жалоба
### на определение Арбитражного суда Свердловской области
### о возвращении кассационной жалобы по делу № А60-4517/2000-С1

22 августа 2000 года на Открытом акционерном обществе «Качканарский горно-обогатительный комбинат «Ванадий» определением Арбитражного суда Свердловской области было введено внешнее управление.

Не согласившись с вышеуказанным определением, в связи с неоднократными нарушениями законодательства о несостоятельности в период наблюдения как со стороны арбитражного управляющего, так и руководителей ОАО «Качканарский горно-обогатительный комбинат «Ванадий», конкурсными кредиторами Комбината – Обществом с ограниченной ответственностью «НЭКСИЗ» и Обществом с ограниченной ответственностью «Ленэкс» была подана апелляционная жалоба на определение Арбитражного суда Свердловской области от 22 августа 2000 года по делу № А60-4517/2000-С1.

Определением от 15 января 2001 года Апелляционная инстанция Арбитражного суда Свердловской области в составе судей Цветковой С.А., Бикмухаметовой Е.А., Стрельниковой Г.И., рассмотрев апелляционную жалобу ООО «Ленэкс» и ООО «НЭКСИЗ», производство по апелляционным жалобам ООО «Ленэкс» и ООО «НЭКСИЗ» прекратила. При этом Апелляционная инстанция при прекращении производства по жалобам руководствовалась п. 1 ст. 85 АПК РФ (если спор не подлежит рассмотрению в арбитражном суде).

В связи с тем, что Определение Апелляционной инстанции Арбитражного суда Свердловской области от 15 января 2001 года о прекращении производства по апелляционным жалобам вынесено с нарушением норм процессуального права, ООО «Ленэкс» и ООО «НЭКСИЗ» направили кассационную жалобу на указанное определение

Данная жалоба поступила в Арбитражный суд Свердловской области 28 февраля 2001 года.

Определением от 05 марта 2001 года Арбитражный суд Свердловской области в составе судьи Коковой С.В. возвратил кассационную жалобу ООО «Ленэкс» и ООО «НЭКСИЗ» на Определение Арбитражного суда Свердловской области от 15 января 2001 года **о прекращении производства по апелляционным жалобам** ООО «Ленэкс» и ООО «НЭКСИЗ» в связи с неоплатой ее государственной пошлиной.

Считаем, что определение Арбитражного суда Свердловской области вынесено с нарушением норм материального и процессуального права, а также с целью затягивания процесса по рассмотрению апелляционных жалоб ООО «Ленэкс» и ООО «НЭКСИЗ», по следующим основаниям:

**Во-первых,** В соответствии со статьей 1 Закона РФ от 09 декабря 1991 г. № 2005-1 «О государственной пошлине» *под государственной пошлиной понимается установленный настоящим Законом обязательный и действующий на всей территории Российской Федерации платеж, взимаемый за совершение юридически значимых действий либо выдачу документов уполномоченными на то органами или должностными лицами».*

Таким образом, судебные органы обязаны возвращать исковые заявления, апелляционные и кассационные жалобы не оплаченные государственной пошлиной, **если ее оплата предусмотрена Законом РФ «О государственной пошлине»** и не имеют права возвращать кассационные жалобы если обжалование судебных актов не предусматривает их оплату государственной пошлиной.

Закон РФ «О государственной пошлине» содержит **исчерпывающий перечень** действий, за которые предусмотрена оплата государственной пошлины.

В соответствии со статьей 91 Арбитражного процессуального кодекса РФ и пунктом 2 подпунктом 9 статьи 4 Закона РФ от 09 декабря 1991 года № 2005-1 «О государственной пошлине» *«государственной пошлиной оплачиваются апелляционные и кассационные жалобы на решения и постановления арбитражного суда, а также **на определения о прекращении производства по делу,** об оставлении иска без рассмотрения, о наложении судебных штрафов».* В указанных нормативных актах нет нормы о том, что **определение Апелляционной инстанции Арбитражного суда о прекращении производства по апелляционной жалобе** подлежит оплате государственной пошлиной.

Следовательно, Арбитражный суд Свердловской области при вынесении определения о возврате кассационной жалобы должен сослаться на нормы материального права, которые указывают на обязательную оплату государственной пошлиной кассационных жалоб на определения о прекращении производства по апелляционным жалобам. Расширительное толкование норм Закона РФ «О государственной пошлине» Арбитражным судом недопустимо.

**Во-вторых,** Арбитражный суд Свердловской области в своем определении о возвращении кассационной жалобы ООО «Ленэкс» и ООО «Нэксиз» указал, что кассационная жалоба на определение апелляционной инстанции Арбитражного суда Свердловской области подлежит возврату на том основании, что не оплачена государственной пошлиной в установленном Законом РФ «О государственной пошлине» размером».

При этом, в самом определении о возврате не указана норма, в соответствии с которой ООО «Нэксиз» и ООО «Ленэкс» должны были оплачивать кассационную жалобу.

Более того, норма о том, что кассационная жалоба на определение о прекращении производства по апелляционной жалобе должна оплачиваться государственной пошлиной в Законе РФ «О государственной пошлине» совсем отсутствует.

Следовательно, Арбитражный суд Свердловской области отказав в принятии кассационной жалобы без мотивирования своего отказа и без ссылки на нормы материального права, в соответствии с которыми ООО «Нэксиз» и ООО «Ленэкс» должны были оплатить пошлиной указанную жалобу, нарушил права и законные интересы заявителей и сделал невозможным дальнейшее движение дела по рассмотрению кассационной жалобы на определение апелляционной инстанции Арбитражного суда Свердловской области о прекращении производства по апелляционным жалобам ООО «Нэксиз» и ООО «Ленэкс».

Кроме того, Законом РФ «О государственной пошлине» также не предусмотрена оплата государственной пошлины за кассационную жалобу на определение Арбитражного суда о возврате кассационной жалобы. Поэтому к нашей кассационной жалобе не прилагается доказательство оплаты государственной пошлины (так как в данном случае это не предусмотрено законодательством)

На основании вышеизложенного, в связи с тем, что в Законе РФ содержится исчерпывающий перечень юридических действий за которые платится государственная пошлина и за кассационные жалобы на определения о прекращении производства по апелляционным жалобам ее оплата не предусмотрена, в соответствии со ст. 91, АПК РФ, ст. ст 1, 3, 4 Закона РФ «О государственной пошлине», руководствуясь ст. ст. 161, 163, 168, 179 АПК РФ, просим Федеральный арбитражный суд Уральского округа:

- определение Арбитражного суда Свердловской области от 05 марта 2001 года о возвращении кассационной жалобы отменить;
- направить дело для рассмотрения кассационной жалобы на определение Апелляционной инстанции о прекращении производства по апелляционным жалобам ООО «НЭКСИЗ» и ООО «Ленэкс» по существу.

Приложение:
подлинники:
1. определения Арбитражного суда Свердловской области от 05.03.01 – 1 лист;
2. квитанции об отправке з/п с № 37144 по № 37744;
3. кассационной жалобы на определение Апелляционной инстанции АС Свердловской области от 15.01.01 (с отметкой в получении от 28.02.01) – 3 листа;
4. доверенности на представителя ООО «НЭКСИЗ» – 1 лист;
5. реестра на заказные письма от 07.02.01 – 23 листа;
6. описи в ценное письмо от 15.02.01 – 1 лист;
7. конверта ценного письма № 3 – 1 лист;
8. конверта заказного письма из АС Свердловской области № 000328 – 1 лист;
9. реестра отправки копии кассационной жалобы на определение Арбитражного суда Свердловской области от 05.03.01 о возврате кассационной жалобы;

копии:
10. определения апелляционной инстанции Арбитражного суда Свердловской области от 15.01.01 о прекращении производства по апелляционным жалобам ООО «Ленэкс» и ООО «НЭКСИЗ» – 1 лист;
11. конверта № 000780.

Представитель ООО «НЭКСИЗ»
(действующий по доверенности)                                    В. В. Вольнов

Директор ООО «Ленэкс»                                            С. Вагн

## FEDERAL ARBITAZH COURT FOR THE URALS CIRCUIT

## DECREE

**Of the Cassational Instance for the Verification of the Legality and Basis of the Decisions (Decrees) of Arbitrazh Courts that have entered into Legal Force**

City of Ekaterinburg
June 7, 2001                                                          Case No. F 09 – 715/01 GK

The federal Arbitrazh Court for the Urals Circuit for the verification in cassational instance of the legality of the decisions and decrees of the arbitrazh courts of the subjects of Russian federation, accepted by them in the first and appellate instances, in the composition of :

Presiding Judge :   Kuznetsov A.G.
Judges:             Makarov V.N
                    Kupreenkov V.A

Considered in a court session the cassational complaint of OOO "Nexis" and OOO "Lenex" on the Determination of Arbitrazh Court for Sverdlovsk Oblast in the case No. . A60 –4517/2000 – C1 on the petition of  OAO "Krasnouralskmezhraygaz" against OAO "Vanadiy" Mining & Concentration      Integrated Plant in the city of Kachkanar"  to recognize as insolvent (bankrupt).

In the court session participated the representatives of:
OOO "Nexis" and OOO "Lenex"    Ashihimina M.M., power of attorney No.112  of July 5, 2000, power of attorney No.113  of October 16,  2000;
Zuikov D.A., power of attorney No.039 – 1/00 of  August 28, 2000; power of attorney No.3/01  of January 26, 2001;
OAO "Vanadiy" Mining & Concentration      Integrated Plant in the city of  Kachkanar" and Grigoriev E.N, the interim trustee, under power of attorney No.70  of  May 14, 2001, power of attorney of June 1, 2001.
................................................................................................................................
...were not asserted, petitions were not filed.
Under the Determination  dated January 15, 2001 of the Appellate  Instance of the Arbitrazh Court for Sverdlovsk Oblast in case No.  A60 – 4517/2000  the proceedings in the cassational complaints of OOO  "Lenex" and OOO "Nexis" were closed  on the basis of pp.4  Article  79 and pp.1 Article 85 APC RF. The cassational complaint on this judicial decision was returned to the petitioner under the Determination  dated March 5, 2001 (Judge Kokova V.S.)  on the basis of  pp.4 Ch.1  Article  168 of APC RF.
OOO "Nexis" and OOO "Lenex"    disagree with the Determination on return of cassational complaint and request  to revoke  thereof.
Challenging the validity of the Determination  in the cassational complaint , the petitioners make reference to the fact, that  the Law of State due of RF  contains a complete list of legal acts subject to be paid by a State due.
Having examined the materials of the case  in the order,  provided  in the Articles 162, 171, 174 of APC RF, the court failed to find grounds for granting the cassational complaint.

In accordance with Article 1 of the Law of <u>State due</u> of RF a State due is a mandatory payment, stipulated in the present Law and valid within the entire territory of Russian Federation, charged for legal acts or issue of documents by the authorised bodies or officials. The above-mentioned Law states that ( p/p 9 p.2 Article 4) in the cases tried in the Arbitrazh court a state due is charged, in particular, from the cassational complaints on the Determinations on closing the proceedings in the case.

I.e. in such a case a legal act is presumed to be an act aimed at trying on the merits of the suit subject to be paid by a State due. File of a cassational complaint on the determination on closing proceedings in appeal complaints is also an act aimed at trying of the suit ( claim, subject to be paid by a State due) on the merits  - i.e. a legal act .

In this case it can be concluded,  applying Article 11 of APC RF p/p 9 p.2 Article 4 of the Law of  State due of RF, that a State due should be charged for cassational complaints on the Determinations on closing the proceedings in appeal complaints as well.

The determination on the return of the cassational complaint was rendered in accordance with the provisions of p.4 Ch.1 Article 168 of APC RF and is valid and  grounded. Chapter 4 of the article 168 of APC RF stipulates that, after the instances indicated in p.4 Ch.1 Article 168 of APC RF were eliminated, he petitioner is entitled to file a cassational complaint to the arbitrazh cout once again, in general order. Subject to the above-mentioned, the argument of the petitioner of intentional impeding of the arbitrazh procedure is unsound.

The challenged Determination gives no rise to any obstacles for enjoyment of the right to remedy the infringed rights and good interests .

On the basis of the above-mentioned, being guided by Articles 174, 175, 177, 179 of APC RF, the court

### HAS DETERMINED

The Determination dated March 5, 2001 of the arbitrazh court for Sverdlovsk blast in the case No. A60 – 4517/2000  to be let without change. The Appeal Complaint  - without satisfaction.

Presiding Judge :   Kuznetsov A.G.
Judges:                  Makarov V.N
                            Kupreenkov V.A



# ФЕДЕРАЛЬНЫЙ АРБИТРАЖНЫЙ СУД УРАЛЬСКОГО ОКРУГА

## ПОСТАНОВЛЕНИЕ
кассационной инстанции по проверке законности и обоснованности решений
(постановлений) арбитражных судов, вступивших в законную силу

г. Екатеринбург
7 июня 2001 года                                   Дело № Ф09-715/01ГК

        Федеральный арбитражный суд Уральского округа по проверке в кассационной инстанции законности решений и постановлений арбитражных судов субъектов Российской Федерации, принятых ими в первой и апелляционной инстанциях, в составе:
председательствующего Прокофьева И.В.,
судей:          Макарова В.Н.,
                Купреенкова В.А.

        рассмотрел в судебном заседании кассационную жалобу ООО «НЭКСИЗ» И ООО «Ленэкс» на определение от 05.03.01 Арбитражного суда Свердловской области по делу № А60-4517/2000 по заявлению ОАО «Красноуральскмежрайгаз» к ОАО «Качканарский ГОК «Ванадий» о признании несостоятельным (банкротом).

        В заседании суда приняли участие:
от ООО «НЭКСИЗ» и ООО «Ленэкс» Анихмина М.М., довер. № 112 от 05.07.2000, дов. № 113 от 16.10.2000;
        Куйков Д.А., довер. № 039-1/00 от 28.08.2000; довер. № 3/01 от 26.01.01;
        от ОАО «КГОК «Ванадий» и внешнего управляющего Григорьева Е.Н. по довер. № 70 от 14.05.01, дов. от 01.06.01.

        Права и обязанности лицам участвующим в деле разъяснены, отводов составу суда не заявлено, ходатайств не поступило.

        Определением от 15.01.01 апелляционной инстанции Арбитражного суда Свердловской области по делу № А6-4517/2000 производство по кассационным жалобам ООО «НЭКСИЗ» и ООО «Ленэкс» прекращено на основании п. 4 ст. 79 и п. 1 ст. 85 АПК РФ. Кассационная жалоба на данный судебный акт определением от 05.03.01 (судья Кокова В.С.) возвращена заявителю на основании п. 4 ч. 1 ст. 168 АПК РФ.

        ООО «НЕКСИЗ» и ООО «Ленэкс» с определением о возвращении кассационной жалобы не согласны, просят его отменить.

        Оспаривая законность определения, в кассационной жалобе заявители ссылаются на то, что Закон РФ «О государственной пошлине» содержит исчерпывающий перечень действий, за которые предусмотрена оплата государственной пошлины.

        Изучив материалы дела в порядке ст.ст. 162, 171, 174 АПК РФ, суд не находит оснований для удовлетворения кассационной жалобы.

2

Согласно ст. 1 Закона РФ «О государственной пошлине» под государственной пошлиной понимается установленный настоящим законом обязательный и действующий на всей территории Российской Федерации платеж, взимаемый за совершение юридически значимых действий либо выдачу документов уполномоченными на то органами или должностными лицами. Указанным законом (п/п 9 п. 2 ст. 4) установлено, что по делам, рассматриваемым в арбитражных судах, государственная пошлина взимается, в частности, с кассационных жалоб на определения о прекращении производства по делу.

То есть юридически значимым в данном случае подразумевается действие, направленное на рассмотрение по существу искового требования, подлежащего оплате госпошлиной. Подача кассационной жалобы на определение о прекращении производства по апелляционной жалобе также является действием, направленным на рассмотрение дела (требования, подлежащего оплате госпошлиной) по существу, то есть – юридически значимым действием.

В таком случае следует сделать вывод, что применительно ст. 11 АПК РФ, п/п 9 п. 2 ст. 4 Закона РФ «О государственной пошлине» оплате госпошлиной подлежат и кассационные жалобы на определения о прекращении производства по апелляционной жалобе.

Определение о возвращении кассационной жалобы принято в соответствии с требованиями п. 4 ч. 1 ст. 168 АПК РФ, является законным и обоснованным. Частью 4 ст. 168 АПК РФ предусмотрено, что после устранения обстоятельств, указанных в п. 4 ч. 1 ст. 168 АПК РФ, лицо, подавшее жалобу, вправе вновь обратиться в арбитражный суд с кассационной жалобой в общем порядке. С учетом изложенного довод заявителя жалобы о намеренном затягивании арбитражного процесса является несостоятельным.

Препятствий для реализации права на судебную защиту нарушенных прав и законных интересов обжалуемое определение не порождает.

На основании изложенного, руководствуясь ст.ст. 174, 175, 177, 179 АПК РФ, суд

ПОСТАНОВИЛ:

Определение от 05.03.01 Арбитражного суда Свердловской области по делу № А60 15138000 оставить без изменения, кассационную жалобу – без удовлетворения.

Председательствующий                                              А.Г.Кузнецов

Судьи                                                                         В.Н.Макаров



В.А.Купреенков

## MINUTES
### Of the Meeting of the Creditors of OAO Vanadii Mining and Milling Complex of Kachkanar

*City of Kachkanar*                                                     *March 11, 2001*

**The Minutes of the Registration Commission of the Meeting of the Creditors of OAO Vanadii Mining and Milling Complex of Kachkanar are hereby announced:**

During the bankruptcy procedure, external management with respect to OAO Vanadii Mining and Milling Complex of Kachkanar was established and *141 (one hundred forty-one) trustee creditors* were entered into the creditors' claims register as of March 11, 2001. The amount of their claims towards the debtor is *1,681,931,385* (one billion, six hundred eighty-one million, nine hundred thirty-one thousand, three hundred eighty-five) rubles. All trustee creditors have been duly notified of this meeting and its tentative agenda.

This meetings which was called for the purpose of the resolution of certain issues related to the reaching of an amicable settlement with OAO Vanadii Mining and Milling Complex of Kachkanar was attended by *89* (eighty-nine) *trustee creditors* whose claims towards the debtor amount to *1,647,329,461* (one billion, six hundred forty-seven million, three hundred twenty-nine thousand, for hundred sixty-one) rubles.

In this manner, the claims of the creditors represented at this meeting amounts of *97.94%* of the total amount of the claims of trustee creditors of the debtor, established as of the moment of this meeting and included in the creditors' claims register of OAO Vanadii Mining and Milling Complex of Kachkanar.

*(Minutes of the Registration Commission of the Meeting of the Creditors of OAO Vanadii Mining and Milling Complex of Kachkanar)*

Let us proceed to the items on the agenda.

The external manager announces the agenda.

### Agenda:

1.  Decision to reach an amicable settlement.

2.  Election of a person authorized to sign the amicable settlement on behalf of the trustee creditors.

<u>**O. S. Kozyrev:**</u> For the purpose of the meeting, it is proposed to set forth the following time limit:

-       Report of the external manager – up to 10 minutes

- Addresses – up to 3 minutes

- All applications are to be submitted in writing.

**Vote on the meeting's agenda and time limit** (by proxy):

*Yea – 86*

**Nay – none**
**Refrained – none**

<u>O. S. Kozyrev:</u> In this manner, this agenda and this time limit for the conduct of the meeting have been approved with a majority vote.

I move to hear the draft of an amicable settlement.

*(The external manager reads the draft of an amicable settlement:)*

**DRAFT OF AN AMICABLE SETTLEMENT**

The creditors of the Open Joint Stock Company of Vanadii Mining and Milling Complex of Kachkanar, represented by _____, authorized by the creditors' meeting and acting pursuant to Section 2, Article 121 of the Federal Insolvency (Bankruptcy) Act and the decision of the creditors' meeting of _____, 2001, on one hand, and the Open Joint Stock Company of Vanadii Mining and Milling Complex of Kachkanar, hereinafter to be referred to as "the Debtor", represented by the external manager, Oleg Stanislavovich Kozyrev, [illegible] Section 2, Article 121 of the Federal Insolvency (Bankruptcy) Act and the August 22, 2000, Determination of the Court of Arbitration of Sverdlovsk Province, on the other hand, hereinafter to be referred to collectively as "the Parties", have entered into the following amicable settlement regarding the following:

**1. Issues Regulated by This Amicable Settlement**

1.1. This amicable settlement is entered into during the period of external management at the stage of the court investigation of the case for the declaration of the Debtor bankrupt (No. A60-4517/00-S1) currently in proceedings before the Court of Arbitration of Sverdlovsk Province.

1.2. The decision to enter into this amicable settlement has been reached at a Debtor's creditors' meeting held on _____, 2001 (Minutes of the creditors' meeting of _____, 2001).

1.3. The provisions of this amicable settlement shall cover the trustee creditors of OAO Vanadii Mining and Milling Complex of Kachkanar, whose claims have been recognized as established in accordance with the Federal Insolvency (Bankruptcy) Act (hereinafter to be referred to as "Creditors"), including Creditors not participating in the vote on the

issue of entering into an amicable settlement, as well as those who have voted against the entry into such a settlement.

1.4. This amicable settlement determines the amounts, terms and methods of servicing the monetary liabilities of the Debtor towards the Creditors.

1.5. This amicable settlement has been entered into in accordance with the provisions of Chapter 7 of the Federal Insolvency (Bankruptcy) Act.

1.6. This amicable settlement shall become effective as of the moment of its approval by the Court of Arbitration of Sverdlovsk Province.

## 2. Amounts, Procedure and Terms for Servicing the Liabilities of the Debtor and Termination of the Obligations of the Debtor

2.1.    The debt of the Debtor shall be determined in accordance with the information contained in the creditor's claims register prepared by the current manager. The register of creditor's claims shall be an integral part of this amicable settlement (Appendix).

2.1.1.  Debt towards first order creditors – none.

2.1.2.  Debt towards second order creditors – none.

2.1.3.  Debt towards third order creditors – none.

2.1.4.  Debt towards fourth order creditors – _____.

2.1.5.  Debt towards fifth order creditors – _____.

2.1.6.  In the event that the Court of Arbitration of Sverdlovsk Province hears the objections of a Creditor with respect to a refusal by the external manager to make an entry into the register of creditors' claims after the date of the Creditors' meeting, on which the decision for signing this amicable settlement has been reached, as well as in the event that a determination is made that the Creditor's claims have been justified, the amount of the debt indicated in Section 2.1.5. herein shall be increased by the amount indicated in the Determination of the Court of Arbitration of Sverdlovsk Province, which sets forth the amount of the claims of the given Creditor.

All provisions of this amicable settlement shall fully cover a Creditor described in this section.

2.2.    All legal expenses, including state taxes, as well as expenses related to the payment of a compensation to the provisional manager and to the external manager, shall be paid by the Debtor, out of order, in full within 10 (ten) days as of the confirmation of this amicable settlement by the Court of Arbitration of Sverdlovsk Province.

2.3.   The procedure and terms of servicing the debt toward the forth order creditors, as well as the liabilities for the payment of fines (penalties) and other financial (economic) sanctions related to the mandatory payments into the budget and the non-budgetary funds shall be set forth in accordance with the laws of the Russian Federation regarding taxation.

2.4.   The servicing of the Debtor's liabilities toward fifth order Creditors shall be done by the Debtor by means of monetary funds deferred as of the moment of confirmation of this amicable settlement, in equal shares, in accordance with the schedule given below:

| Year | Term of Payment | Amount of payment | Note |
|------|-----------------|-------------------|------|
| 1. 2001 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 2. 2002 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 3. 2003 | No later than December 31, 2003 | 5 (five) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 4. 2004 | No later than December 31, 2004 | 5 (five) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 5. 2005 | No later than December 31, 2005 | 10 (ten) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 6. 2006 | No later than December 31, 2006 | 10 (ten) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external | Monetary funds |

| | | manager. | |
|---|---|---|---|
| 7. 2007 | No later than December 31, 2007 | 10 (ten) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 8. 2008 | No later than December 31, 2008 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 9. 2009 | No later than December 31, 2009 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 10. 2010 | No later than December 31, 2010 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 11. 2011 | No later than December 31, 2011 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |

2.5.    In the event of a change in the payment requirements of the Creditor for the transfer of funds under the account of debt servicing by the Debtor in accordance with this amicable settlement, the Creditors shall have the right to send to the Debtor a written notification for the entire term of this amicable settlement.

In the event that the notification indicated in this section is not submitted, the rules regarding debt-servicing set forth by the civil legislation of the Russian Federation shall apply.

2.6.    During the servicing of the Debtor's liabilities towards the Creditors, no transfer of funds under the terms of this amicable settlement shall be allowed into the accounts of third parties, except for cases where the fact of a change in the person of the liability has been confirmed by the Creditor with documents.

### 3. [illegible] Provisions

3.1. This amicable settlement has been prepared in four copies: the first copy shall be kept at the Court of Arbitration of Sverdlovsk Province, the second shall be kept by the Debtor, the third copy shall be kept by the person authorized by the meeting of the creditors of the Debtor of _____, 2001, to sign this Amicable Settlement, and the fourth shall be kept by the external manager of the Debtor. If necessary, a Creditor shall have the right to request from the Debtor a copy of this amicable settlement certified with a seal of the Debtor and a signature of the Debtor's executive officer.

3.2. Any disputes arising during the implementation of this amicable settlement shall be resolved in accordance with the laws of the Russian Federation.

### 4. Signatures of the Parties

**CREDITORS:**
Person authorized by the meeting of the creditors of OAO Vanadii Mining and Milling Complex of Kachkanar for signing the Amicable Settlement

**DEBTOR:**
External Manager of OAO Vanadii Mining and Milling Complex of Kachkanar

_____ (_____)

_____ (O. S. Kozyrev)

**O. S. Kozyrev:** Dear creditors, I would like to bring to your attention the fact that the current draft has been sent to the Federal Financial Recovery and Bankruptcy Service of Russia from where the response was that the presented draft for an amicable settlement meets the requirements of the Federal Act and may be recommended for review by the meeting of the creditors of OAO Vanadii Mining and Milling Complex of Kachkanar.

The draft of the amicable settlement has also been discussed at a session of the Creditors' Committee.

Are there any questions, comments or proposals from the participants?

**V. M. Averenkov** (*representative of the City Administration of Kachkanar*): I propose to make certain changes in the language of the amicable settlement. The main objective is the normal operation of the Mining and Milling Complex and its monetary contribution into the budget. It has to mobilize production and increase the number of employees.

I propose to sign an amicable settlement under a different terms than the terms of the amicable settlement proposed by the Creditors' Committee of OAO Vanadii Mining and Milling Complex of Kachkanar, i.e.:

Section 2.4. of the Amicable Settlement is to read as follows:

"2.4.      The servicing of the Debtor's liabilities toward fifth order Creditors shall be done by the Debtor by means of monetary funds deferred as of the moment of confirmation of this amicable settlement, [circled by hand: in equal shares], in accordance with the schedule given below:

| Year | Term of Payment | Amount of payment | Note |
|---|---|---|---|
| 1. 2001 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 2. 2002 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 3. 2003 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 4. 2004 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 5. 2005 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 6. 2006 | No later than December 31, 2006 | 5 (five) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 7. 2007 | No later than December 31, 2007 | 7 (seven) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of | Monetary funds |

| | | the Debtor's creditor's claims register prepared by the external manager. | |
|---|---|---|---|
| 8. 2008 | No later than December 31, 2008 | 9 (nine) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 9. 2009 | No later than December 31, 2009 | 9 (nine) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 10. 2010 | No later than December 31, 2010 | 10 (ten) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 11. 2011 | No later than December 31, 2011 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 12. 2012 | No later than December 31, 2012 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 13. 2013 | No later than December 31, 2013 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 14. 2014 | No later than December 31, 2014 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |

The remaining portion of the language of the Amicable Settlement is to be left unchanged.

Once again, I ask all of you to listen to the appeal that the Mining and Milling Complex of Kachkanar has to operate normally and productively.

[illegible – possibly: **O. N. or P. Mustafina**] (*representative of the Magnitogorsk Metallurgical Complex*): I have objections:

OAO Magnitogorsk Metallurgical Complex is against the signing of an amicable settlement for the following reasons:

Section 2.4. of the Amicable Settlement is in contradiction with Article 122 of the Federal Insolvency (Bankruptcy) Act since it allows for a postponement of the payment for five years, as well as a deferment for nine years.

In addition, the enclosed schedule for the servicing of the Debtor's debt towards the Creditors envisions an amount of the payment as a percentage of the total amount of the Debtors' debt toward each Creditor determined based on data contained in the creditors' claims register [underlined by hand: rather than in equal portions].

The memorandum to the participant of the creditor's meeting is in contradiction with article 120 of the Federal Insolvency (Bankruptcy) Act. I ask that the vote on the signing of the amicable settlement is done in accordance with the Federal Act, i.e. by majority of the trustee creditors regardless of the amount of the debt.

**O. S. Kozyrev:** Please present your objection in writing. The servicing of the debt in equal shares here means that the debt is being serviced towards each creditor – if 5%, then it would be in equal shares from the creditor's debt [sic].

With respect to the vote, we will vote with ballots, we will vote with votes.

*Any other questions or comments?*

No questions. No comments.

In that case, I propose to take a break for the preparation of the ballots on the vote on changes in the language of the amicable settlement in accordance with the proposal of the representative of the City Administration of Kachkanar.

*(30 minute break)*

**O. S. Kozyrev:** Please obtain additional ballots.

We are moving on with the meeting. Please note the ballot. In the text presented to the administrative office, there was a technical error: in the Amount of Payment column, in the

preposition "*of*", the letter "b" was entered instead of the letter "t". I move to vote on this item (Ballot No. 3) for the correction of the spelling error. No objections were received.

**Vote on the issue of the introduction of changes in the language of Section 2.4. of the amicable settlement:**

Established and entered into the creditors' claims register:
**141** trustee creditors.
The total number of votes of the trustee creditors is:
**1,681,931,385** (*one billion, six hundred eighty-one million, nine hundred thirty one thousand, three hundred eighty five*) votes

**89** (eighty nine) ballots in the total amount of **1,647,329,461** (*one billion, six hundred forty-seven [million], three hundred twenty-nine thousand, four hundred sixty-one*) votes, which is **97.94%** of the total number of the votes of trustee creditors, were distributed for the purposes of the vote.

**The voting ballot included:**
*Section 2.4. of the Amicable Settlement is to read as follows:*

"2.4.    The servicing of the Debtor's liabilities toward fifth order Creditors shall be done by the Debtor by means of monetary funds deferred as of the moment of confirmation of this amicable settlement, [circled by hand: in equal shares], in accordance with the schedule given below:

| Year | Term of Payment | Amount of payment | Note |
|------|-----------------|-------------------|------|
| 1. 2001 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 2. 2002 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 3. 2003 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 4. 2004 | --- | 0% of the total amount of the Debtor's liability towards each | --- |

| | | creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | |
|---|---|---|---|
| 5. 2005 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 6. 2006 | No later than December 31, 2006 | 5 (five) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 7. 2007 | No later than December 31, 2007 | 7 (seven) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 8. 2008 | No later than December 31, 2008 | 9 (nine) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 9. 2009 | No later than December 31, 2009 | 9 (nine) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 10. 2010 | No later than December 31, 2010 | 10 (ten) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 11. 2011 | No later than December 31, 2011 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |

| 11. 2012 | No later than December 31, 2012 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
|---|---|---|---|
| 11. 2013 | No later than December 31, 2013 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 11. 2014 | No later than December 31, 2014 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |

The remaining portion of the language of the Amicable Settlement is to be left unchanged.

Following the vote, 89 (eighty nine) ballots in the total amount of 1,647,329,461 (*one billion, six hundred forty-seven million, three hundred twenty-nine thousand, four hundred sixty-one*) votes, which is 97.94% of the total number of the votes of trustee creditors, were received.

OF WHICH: 89 (eighty nine) ballots were *valid* and none were *invalid.*

**"IN FAVOR OF" the introduction of the changes in the language of the amicable settlement:**
83 (eighty-three) trustee creditors
with a total amount of 1,446,444,979 (one billion, four hundred forty-six million, four hundred forty-four thousand, nine hundred seventy-nine) votes, which is 86.00% of the total number of votes of trustee creditors.

**"AGAINST" the introduction of the changes in the language of the amicable settlement:**
5 (five) trustee creditors with a total amount of 196,235,467 (*one hundred ninety-six million, two hundred thirty-five thousand, four hundred sixty-seven*) votes, which is 11.67% of the total number of votes of trustee creditors.

**"REFRAINED" on this issue:**
1 (one) trustee creditor
with a total amount of 4,649,015 (four million, six hundred forty-nine thousand, fifteen) votes, which is 0.28% of the total number of votes of trustee creditors.

**RESULTS OF THE VOTE: The meeting passed a decision:** To introduce the proposed changes in the language of the amicable settlement (Minutes No. 1 of the Counting Commission).

**O. S. Kozyrev:** I propose that the creditors obtain additional ballots.

During registration, all were given Applications for the nomination of a candidate authorized by the meeting to sign the amicable settlement. Based on the applications, ballots were prepared. The was an application for one nomination -- that of Leonid Vasilyevich Demskii. In the event that anybody else has other nominations to make, please enter them individually into the ballots.

*(Distribution of the ballots)*

Since the first issue raised was the issue of the introduction of changes in the language of the amicable settlement, it is necessary to take a logistical break for the preparation of the final version of the amicable settlement for a vote.

*(20 minute break)*

**O. S. Kozyrev:** Dear creditors, the issue of signing an amicable settlement in the following version is now being placed on the agenda:

**AMICABLE SETTLEMENT**

The creditors of the Open Joint Stock Company of Vanadii Mining and Milling Complex of Kachkanar, represented by _____, authorized by the creditors' meeting and acting pursuant to Section 2, Article 121 of the Federal Insolvency (Bankruptcy) Act and the decision of the creditors' meeting of _____, 2001, on one hand, and the Open Joint Stock Company of Vanadii Mining and Milling Complex of Kachkanar, hereinafter to be referred to as "the Debtor", represented by the external manager, Oleg Stanislavovich Kozyrev, acting pursuant to Section 2, Article 121 of the Federal Insolvency (Bankruptcy) Act and the August 22, 2000, Determination of the Court of Arbitration of Sverdlovsk Province, on the other hand, hereinafter to be referred to collectively as "the Parties", have entered into the following amicable settlement regarding the following:

### 1. Issues Regulated by This Amicable Settlement

1.7. This amicable settlement is entered into during the period of external management at the stage of the court investigation of the case for the declaration of the Debtor bankrupt (No. A60-4517/00-S1) currently in proceedings before the Court of Arbitration of Sverdlovsk Province.

1.8. The decision to enter into this amicable settlement has been reached at a Debtor's creditors' meeting held on _____, 2001 (Minutes of the creditors' meeting of _____, 2001).

1.9. The provisions of this amicable settlement shall cover the trustee creditors of OAO Vanadii Mining and Milling Complex of Kachkanar, whose claims have been recognized as established in accordance with the Federal Insolvency (Bankruptcy) Act (hereinafter to be referred to as "Creditors"), including Creditors not participating in the vote on the issue of entering into an amicable settlement, as well as those who have voted against the entry into such a settlement.

1.10.              This amicable settlement determines the amounts, terms and methods of servicing the monetary liabilities of the Debtor towards the Creditors.

1.11.              This amicable settlement has been entered into in accordance with the provisions of Chapter 7 of the Federal Insolvency (Bankruptcy) Act.

1.12.              This amicable settlement shall become effective as of the moment of its approval by the Court of Arbitration of Sverdlovsk Province.

### 2. Amounts, Procedure and Terms for Servicing the Liabilities of the Debtor and Termination of the Obligations of the Debtor

2.1.   The debt of the Debtor shall be determined in accordance with the information contained in the creditor's claims register prepared by the current manager. The register of creditor's claims shall be an integral part of this amicable settlement (Appendix).

2.1.1. Debt towards first order creditors – none.

2.1.2. Debt towards second order creditors – none.

2.1.3. Debt towards third order creditors – none.

2.1.4. Debt towards fourth order creditors – **356,614,294.48 rubles** (*three hundred fifty-six million, six hundred fourteen thousand, two hundred ninety-four rubles and 48 kopeks*).

2.1.5. Debt towards fifth order creditors – **1,681,931,385.19 rubles** (*one billion, six hundred eighty-one million, nine hundred thirty-one thousand, three hundred eighty-five rubles and 19 kopeks*).

2.1.6. In the event that the Court of Arbitration of Sverdlovsk Province hears the objections of a Creditor with respect to a refusal by the external manager to make an entry into the register of creditors' claims after the date of the Creditors' meeting, on which the decision for signing this amicable settlement has been reached, as well as in the event that a determination is made that the Creditor's claims have been justified, the amount of the debt indicated in Section 2.1.5. herein shall be increased by the amount indicated in the Determination of the Court of Arbitration of Sverdlovsk Province, which sets forth the amount of the claims of the given Creditor.

All provisions of this amicable settlement shall fully cover a Creditor described in this section.

2.2.   All legal expenses, including state taxes, as well as expenses related to the payment of a compensation to the provisional manager and to the external manager, shall be paid by the Debtor, out of order, in full within 10 (ten) days as of the confirmation of this amicable settlement by the Court of Arbitration of Sverdlovsk Province.

2.3.   The procedure and terms of servicing the debt toward the forth order creditors, as well as the liabilities for the payment of fines (penalties) and other financial (economic) sanctions related to the mandatory payments into the budget and the non-budgetary funds shall be set forth in accordance with the laws of the Russian Federation regarding taxation.

2.4.   The servicing of the Debtor's liabilities toward fifth order Creditors shall be done by the Debtor by means of monetary funds deferred as of the moment of confirmation of this amicable settlement, in equal shares, in accordance with the schedule given below:

| Year | Term of Payment | Amount of payment | Note |
|------|-----------------|-------------------|------|
| 1. 2001 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 2. 2002 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 3. 2003 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 4. 2004 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 5. 2005 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of | --- |

|  |  | the Debtor's creditor's claims register prepared by the external manager. |  |
|---|---|---|---|
| 6. 2006 | No later than December 31, 2006 | 5 (five) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 7. 2007 | No later than December 31, 2007 | 7 (seven) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 8. 2008 | No later than December 31, 2008 | 9 (nine) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 9. 2009 | No later than December 31, 2009 | 9 (nine) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 10. 2010 | No later than December 31, 2010 | 10 (ten) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 11. 2011 | No later than December 31, 2011 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 12. 2012 | No later than December 31, 2012 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 13. 2013 | No later than | 15 (fifteen) % of the total amount of | Monetary funds |

A - 1338

| | | | |
|---|---|---|---|
| | December 31, 2013 | the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | |
| 14. 2014 | No later than December 31, 2014 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |

2.5.  In the event of a change in the payment requirements of the Creditor for the transfer of funds under the account of debt servicing by the Debtor in accordance with this amicable settlement, the Creditors shall have the right to send to the Debtor a written notification for the entire term of this amicable settlement.

In the event that the notification indicated in this section is not submitted, the rules regarding debt-servicing set forth by the civil legislation of the Russian Federation shall apply.

2.6.  During the servicing of the Debtor's liabilities towards the Creditors, no transfer of funds under the terms of this amicable settlement shall be allowed into the accounts of third parties, except for cases where the fact of a change in the person of the liability has been confirmed by the Creditor with documents.

## 3. Final Provisions

3.1. This amicable settlement has been prepared in four copies: the first copy shall be kept at the Court of Arbitration of Sverdlovsk Province, the second shall be kept by the Debtor, the third copy shall be kept by the person authorized by the meeting of the creditors of the Debtor of _____, 2001, to sign this Amicable Settlement, and the fourth shall be kept by the external manager of the Debtor. If necessary, a Creditor shall have the right to request from the Debtor a copy of this amicable settlement certified with a seal of the Debtor and a signature of the Debtor's executive officer.

3.2. Any disputes arising during the implementation of this amicable settlement shall be resolved in accordance with the laws of the Russian Federation.

### 4. Signatures of the Parties

**CREDITORS:**
Person authorized by the meeting of the creditors of OAO Vanadii Mining and Milling Complex of Kachkanar for signing the Amicable Settlement

_____ (_____)

**DEBTOR:**
External Manager of OAO Vanadii Mining and Milling Complex of Kachkanar

_____ (O. S. Kozyrev)

This amicable settlement is given to the present representatives of the creditors, which is evidenced by their receipts.

Please vote with Ballot No. 1.

**Vote on the issue of signing of an amicable settlement.**

Established and entered into the creditors' claims register: **141** trustee creditors. The total number of votes of the trustee creditors is: **1,681,931,385** (*one billion, six hundred eighty-one million, nine hundred thirty one thousand, three hundred eighty five*) votes.

**89** (eighty nine) ballots in the total amount of **1,647,329,461** (one billion, six hundred forty-seven million, three hundred twenty-nine thousand, four hundred sixty-one) votes, which is **97.94%** of the total number of the votes of trustee creditors, were distributed for the purposes of the vote.

In accordance with Article 120 and Section 1, Article 123 of the Federal Insolvency (Bankruptcy) Act", the decision for signing the amicable settlement is approved with a majority of the votes of the total number of trustee creditors, provided that all creditors on the liabilities guaranteed by the pledge of the debtor's property have voted on it.

*As of March 11, 2001, in the creditors' claims register, there are no creditors' claims on liabilities guaranteed with a pledge on the debtors' property.*

The following was included on the voting ballot:

*Sign an amicable settlement with OAO Vanadii Mining and Milling Complex of Kachkanar.*

Following the vote, 89 (eighty nine) ballots in the total amount of **1,647,329,461** (one billion, six hundred forty-seven million, three hundred twenty-nine thousand, four hundred sixty-one) votes, which is **97.94%** of the total number of the votes of trustee creditors, were received.

**OF WHICH:** 89 (eighty nine) ballots were *valid* and **none** were *invalid*.

**"IN FAVOR OF"** the signing of the amicable settlement:
84 (eighty-four) trustee creditors with a total amount of 1,446,445,275 (one billion, four hundred forty-six million, four hundred forty-five thousand, two hundred seventy-five) votes, which is **86.00%** of the total number of votes of trustee creditors.

**"AGAINST"** the signing of the amicable settlement:
3 (three) trustee creditors with a total amount of **196,096,956** (one hundred ninety-six million, ninety-six thousand, nine hundred fifty-six) votes, which is **11.66%** of the total number of votes of trustee creditors.

"REFRAINED" on the issue of signing the amicable settlement:
2 (two) trustee creditors
with a total amount of 4,787,231 (four million, seven hundred eighty-seven thousand, two hundred thirty-one) votes, which is 0.28% of the total number of votes of trustee creditors.

In this manner, the meeting passed the following decisions: *To sign an amicable settlement with OAO Vanadii Mining and Milling Complex of Kachkanar.*

O. S. Kozyrev: According to the agenda, there is one more item concerning the candidacy of the person authorized by the creditors' meeting to sign the amicable settlement on behalf of the creditors. No other proposals were made in addition to the nomination of L. V. Demskii. Therefore, the item concerning the candidacy of **Leonid Vasilyevich Demskii** authorized to sign the amicable settlement on behalf of the creditors of OAO Vanadii Mining and Milling Complex of Kachkanar is now being offered for a vote. Please vote (with Ballot No. 2).

Vote on the item of the candidacy:

For the purposes of the vote on the candidacy of the person authorized to sign the amicable settlement on behalf of the trustee creditors, 89 (eighty nine) ballots in the total amount of **1,647,329,461** (one billion, six hundred forty-seven million, three hundred twenty-nine thousand, four hundred sixty-one) votes, were distributed.

*Pursuant to Article 14 of the Federal Insolvency (Bankruptcy) Act, a candidate who has gathered the majority of the votes from the number of votes of the trustee creditors present at the meeting shall be considered elected.*

The following had been entered into the voting ballot:
*To authorize the signing of the amicable settlement on behalf of the trustee creditors of OAO Vanadii Mining and Milling Complex of Kachkanar on of the following candidates: Leonid Vasilyevich Demskii*

Following the vote

87 (eighty seven) ballots in the total amount of **1,451,402,754** (one billion, four hundred fifty-one million, four hundred two thousand, seven hundred fifty-four) votes, which is **88.11%** of the total number of the votes of trustee creditors, were received.

OF WHICH:
*Valid:* 87 (eighty seven) ballots
*Invalid:* none

Votes:
"IN FAVOR OF" the candidacy of Leonid Vasilyevich Demskii:
83 (eighty-three) Trustee creditors with a total amount of 1,446,444,979 (one billion, four hundred forty-six million, four hundred forty-four thousand, nine hundred seventy-nine) votes, which is **87.81%** of the total number of votes of trustee creditors present at the meeting.

t

# ПРОТОКОЛ
## собрания кредиторов ОАО Качканарский горно-обогатительный комбинат «Ванадий»

**г. Качканар**                                              **11 марта 2001г.**

*Оглашается протокол Регистрационной комиссии собрания кредиторов ОАО Качканарский горно-обогатительный комбинат «Ванадий»:*

В ходе проведения процедуры банкротства – внешнее управление, в отношении ОАО Качканарский ГОК «Ванадий» на 11 марта 2001г. установлено и внесено в реестр требований кредиторов *141 (сто сорок один) конкурсный кредитор*. Сумма требований их к должнику составляет *1 681 931 385 (один миллиард шестьсот восемьдесят один миллион девятьсот тридцать одна тысяча триста восемьдесят пять)* рублей. Все конкурсные кредиторы о настоящем собрании и предполагаемой повестке дня были надлежащим образом уведомлены.

На настоящее собрание, созванное с целью решения вопросов, связанных с заключением мирового соглашения с ОАО Качканарский ГОК «Ванадий», прибыло *89 (восемьдесят девять) конкурсных кредиторов*, сумма требований которых к должнику составляет *1 647 329 461 (один миллиард шестьсот сорок семь миллионов триста двадцать девять тысяч четыреста шестьдесят один)* рубль.

Таким образом, сумма требований кредиторов, представленных на настоящем собрании, составляет *97,94 %* от общей суммы требований конкурсных кредиторов должника, установленных на момент проведения настоящего собрания и включенных в реестр требований кредиторов ОАО Качканарский ГОК «Ванадий».

*(Протокол Регистрационной комиссии собрания кредиторов ОАО КГОК «Ванадий»).*

Приступаем к ведению собрания:

Внешний управляющий оглашает повестку дня:

### Повестка дня:

1.   Принятие решения о заключении мирового соглашения.
2.   Избрание лица, уполномоченного подписать мировое соглашение от имени конкурсных кредиторов.

**Козырев О.С.:**    Для проведения собрания предлагается установить регламент проведения собрания:
-   **Доклад внешнего управляющего - до 10 минут**
-   **Выступления - до 3-х минут**
-   **Все заявления подаются в письменном виде.**

**Голосование по повестке дня и регламенту проведения собрания (мандатами):**

«ЗА» - 86

«ПРОТИВ» - нет

«ВОЗДЕРЖАЛСЯ» - нет

**Козырев О.С.:** Таким образом, настоящая повестка дня и регламент проведения собрания приняты большинством голосов.

Предлагаю ознакомиться с проектом мирового соглашения.

*( Внешним управляющим зачитывается проект мирового соглашения):*

### ПРОЕКТ МИРОВОГО СОГЛАШЕНИЯ

Кредиторы открытого акционерного общества «Качканарский горно-обогатительный комбинат «Ванадий» в лице _____, уполномоченного собранием кредиторов, действующего на основании п. 2 ст. 121 Федерального закона «О несостоятельности (банкротстве)» и решения собрания кредиторов от «_____» _____ 2001 года, с одной стороны, и открытое акционерное общество «Качканарский горно-обогатительный комбинат «Ванадий», именуемое в дальнейшем «Должник», в лице внешнего управляющего Козырева Олега Станиславовича,

A - 1344

действующего на основании п. 2 ст. 121 Федерального закона «О несостоятельности (банкротстве)» и определения Арбитражного суда Свердловской области от 22 августа 2000 года; с другой стороны, именуемые в дальнейшем совместно «Стороны», заключили настоящее мировое соглашение о нижеследующем:

## 1. Вопросы, регулируемые настоящим мировым соглашением

1.1. Настоящее мировое соглашение заключено в период внешнего управления на стадии судебного разбирательства дела о признании Должника банкротом (№ А60-4517/00-С1), находящегося в производстве Арбитражного суда Свердловской области.

1.2. Решение о заключении настоящего мирового соглашения принято на собрании кредиторов Должника, состоявшемся «_____»_____2001 года (протокол собрания кредиторов от «_____»_____2001 года).

1.3. Положения настоящего мирового соглашения распространяются на конкурсных кредиторов ОАО «Качканарский горно-обогатительный комбинат «Ванадий», требования которых признаны установленными в соответствии с Федеральным законом «О несостоятельности (банкротстве)» (именуемые в дальнейшем Кредиторы), в том числе на Кредиторов, не принимавших участие в голосовании по вопросу о заключении мирового соглашения, а также голосовавших против его заключения.

1.4. Настоящее мировое соглашение определяет размер, сроки и способы исполнения денежных обязательств Должника перед Кредиторами.

1.5. Настоящее мировое соглашение заключено в соответствии с положениями главы 7 Федерального закона «О несостоятельности (банкротстве)».

1.6. Настоящее мировое соглашение вступает в силу с момента его утверждения Арбитражным судом Свердловской области.

## 2. Размер, порядок и сроки исполнения обязательств Должника и прекращение обязательств Должника

2.1. Задолженность Должника определяется в соответствии с данными реестра требований кредиторов, составленным внешним управляющим. Реестр требований кредиторов является неотъемлемой частью настоящего мирового соглашения (Приложение).

2.1.1. Задолженность перед кредиторами первой очереди – отсутствует.

2.1.2. Задолженность перед кредиторами второй очереди - отсутствует.

2.1.3. Задолженность перед кредиторами третьей очереди - отсутствует.

2.1.4. Задолженность перед кредиторами четвертой очереди – _____.

2.1.5. Задолженность перед кредиторами пятой очереди – _____.

2.1.6. В случае рассмотрения в Арбитражном суде Свердловской области возражений Кредитора на отказ внешнего управляющего от внесения записи в реестр требований кредиторов после даты проведения собрания Кредиторов, на котором принято решение о заключении настоящего мирового соглашения, и установления обоснованности требований Кредитора, размер задолженности, указанной в пункте 2.1.5. настоящего мирового соглашения, увеличивается на сумму, указанную в определении Арбитражного суда Свердловской области, устанавливающем размер требований данного Кредитора.

Все положения настоящего мирового соглашения распространяются на Кредитора, указанного в настоящем пункте, в полном объеме.

2.2. Все судебные расходы, включая расходы по государственной пошлине, а также расходы, связанные с выплатой вознаграждения временному управляющему и внешнему управляющему, оплачиваются Должником вне очереди в полном объеме в течение 10 (Десять) дней с момента утверждения Арбитражным судом Свердловской области настоящего мирового соглашения.

2.3. Порядок и сроки погашения задолженности перед кредиторами четвертой очереди, а также задолженности по уплате сумм штрафов (пени) и иных финансовых (экономических) санкций по обязательным платежам в бюджет и во внебюджетные фонды определяются в соответствии с законодательством Российской Федерации о налогах и сборах.

2.4. Исполнение обязательств Должника перед Кредиторами пятой очереди производится Должником денежными средствами в рассрочку с момента утверждения настоящего мирового соглашения равными долями согласно нижеприведенному графику:

| Год | Срок  платежа | Размер платежа | Примечание |
|-----|---------------|----------------|------------|
| 1. 2001г. | --- | 0% от общей суммы обязательств Должника перед каждым кредитором, определенной по данным реестра требований кредиторов Должника, | --- |

2

A - 1345

| | | составленного внешним управляющим. | |
|---|---|---|---|
| 2. 2002г. | --- | 0% от общей суммы обязательств Должника перед каждым кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим | --- |
| 3. 2003 г. | Не позднее 31 декабря 2003 года | 5 (Пять) % от общей суммы обязательств Должника перед каждым кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим | Денежные средства |
| 4. 2004г. | Не позднее 31 декабря 2004 года | 5 (Пять) % от общей суммы обязательств Должника перед каждым кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим | Денежные средства |
| 5. 2005г. | Не позднее 31 декабря 2005 года | 10 (Десять) % от общей суммы обязательств Должника перед каждым кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 6. 2006 год | Не позднее 31 декабря 2006 года | 10 (Десять) % от общей суммы обязательств Должника перед каждым кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 7. 2007 год | Не позднее 31 декабря 2007 года | 10 (Десять) % от общей суммы обязательств Должника перед каждым кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 8. 2008 год | Не позднее 31 декабря 2008 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим | Денежные средства |
| 9. 2009 год | Не позднее 31 декабря 2009 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 10. 2010 год | Не позднее 31 декабря 2010 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим | Денежные средства |
| 11. 2011 год | Не позднее 31 декабря 2011 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим | Денежные средства |

2.5. В случае изменения платежных реквизитов Кредитора для перечисления средств в счет исполнения Должником обязательств по настоящему мировому соглашению Кредиторы вправе направить Должнику письменное уведомление в течение всего срока действия настоящего мирового соглашения.

В случае не поступления указанного в данном пункте уведомления применяются правила об исполнении обязательств, установленные гражданским законодательством Российской Федерации.

2.6. При исполнении обязательств Должника перед Кредиторами не допускается перечисление денежных средств в соответствии с условиями настоящего мирового соглашения на счета третьих лиц, за исключением случаев документально подтвержденного Кредитором факта перемены лица в обязательстве.

-3-

A - 1346

3. заключительные положения

3.1. Настоящее мировое соглашение составлено в четырех экземплярах: первый экземпляр находится в Арбитражном суде Свердловской области, второй – у Должника, третий – у лица, уполномоченного собранием кредиторов Должника от «____» _____ 2001 года на подписание настоящего Мирового Соглашения, четвертый – у внешнего управляющего Должника. При необходимости Кредитор вправе потребовать от Должника копию экземпляра настоящего мирового соглашения, заверенную печатью Должника и подписью руководителя Должника.

3.2. Споры, возникающие в ходе исполнения настоящего мирового соглашения, разрешаются в соответствии с законодательством Российской Федерации.

## 4. Подписи Сторон

**КРЕДИТОРЫ:**
лицо, уполномоченное
собранием кредиторов ОАО «Качканарский
горно-обогатительный комбинат «Ванадий»
на заключение Мирового Соглашения

**ДОЛЖНИК:**
Внешний управляющий
ОАО «Качканарский горно-обогатительный комбинат «Ванадий»

_____/_____/

_____/ Козырев О.С./

**Козырев О.С.:** Уважаемые кредиторы, довожу до Вашего сведения, что настоящий проект направлялся в ФСФО России, и был получен ответ, что представленный проект мирового соглашения соответствует требованиям Федерального Закона и может быть рекомендован на рассмотрение собранием кредиторов ОАО Качканарский ГОК «Ванадий».

Проект мирового соглашения также рассматривался на заседании Комитета кредиторов.

Какие есть вопросы у присутствующих, замечания, предложения?

*Аверенков В.М. (представитель администрации г.Качканара):* Я предлагаю внести изменения в текст мирового соглашения. Главная цель, чтобы ГОК нормально работал. давая деньги в бюджет. Он должен мобилизовать производство и увеличить число работающих.

Предлагаю заключить мировое соглашение на условиях, отличающихся от условий мирового соглашения, предложенного Комитетом кредиторов ОАО «Качканарский горно-обогатительный комбинат «Ванадий», а именно:

Изложить пункт 2.4. Мирового соглашения в следующей редакции:

«2.4. Исполнение обязательств Должника перед Кредиторами пятой очереди производится Должником денежными средствами в рассрочку с момента утверждения настоящего мирового соглашения равными долями согласно нижеприведенному графику:

| Год | Срок платежа | Размер платежа | Примечание |
|---|---|---|---|
| 1. 2001 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | --- |
| 2. 2002 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | --- |
| 3. 2003 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | --- |
| 4. 2004 г. | --- | 0% от общей суммы обязательств Должника | --- |

4

A - 1347

| | | перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | |
|---|---|---|---|
| 5. 2005 г. | — | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | — |
| 6. 2006 г. | Не позднее 31 декабря 2006 года | 5 (Пять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 7. 2007 г. | Не позднее 31 декабря 2007 года | 7 (Семь) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 8. 2008 г. | Не позднее 31 декабря 2008 года | 9 (Девять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 9. 2009 г. | Не позднее 31 декабря 2009 года | 9 (Девять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 10. 2010 г. | Не позднее 31 декабря 2010 года | 10 (Десять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 11. 2011 г. | Не позднее 31 декабря 2011 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 12. 2012 г. | Не позднее 31 декабря 2012 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 13. 2013 г. | Не позднее 31 декабря 2013 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 14. 2014 г. | Не позднее 31 декабря 2014 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |

В остальной части текст Мирового соглашения оставить без изменений.

Я еще раз обращаюсь ко всем и прошу прислушаться к призыву, что Качканарский ГОК должен нормально и продуктивно работать.

A - 1348

**Мустафина О.Н.** *(представитель Магнитогорского металлургического комбината)*:

У меня есть возражения.

ОАО «Магнитогорский металлургический комбинат» против заключения мирового соглашения по следующим причинам:

п.2.4 Мирового соглашения противоречит ст.122 ФЗ «О несостоятельности (банкротстве)», т.к. предусматривает, как отсрочку платежа на пять лет, так и рассрочку на девять лет.

Кроме того, приведенный график исполнения обязательств Должника перед Кредиторами предусматривает размер платежа в процентном отношении от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов, а не равными долями.

«Памятка участнику собрания кредиторов» противоречит ст. 120 ФЗ «О несостоятельности (банкротстве)». Прошу голосование по заключению мирового соглашения провести в соответствии с ФЗ, т.е. большинством конкурсных кредиторов, вне зависимости от суммы задолженности.

**Козырев О.С.:** Прошу Ваше возражение представить в письменном виде. Погашение задолженности равными долями, здесь имеется в виду, что задолженность погашается каждому кредитору от его задолженности, если 5%, то в равных долях от задолженности кредитора.

Относительно голосования, мы проголосуем бюллетенями, проголосуем голосами.

Есть еще вопросы, замечания?

Вопросов нет. Замечаний нет.

Тогда предлагаю сделать перерыв для подготовки бюллетеней по голосованию изменений в тексте мирового соглашения, в соответствии с предложением представителя Администрации г. Качканара.

*(Перерыв 30 минут)*

**Козырев О.С.:** Прошу получить дополнительные бюллетени.

Продолжаем собрание. Прошу обратить внимание на бюллетень. В том тексте, который был дан в секретариат, была совершена техническая ошибка: в столбце «Размер платежа» в предлоге «от», вместо буквы «т» ошибочно проставлена буква «б». Предлагаю проголосовать по данному вопросу (Бюллетень № 3) с учетом исправленной опечатки. Возражений не поступило.

Голосование по вопросу о внесении изменений в текст п.2.4 мирового соглашения:

Установлено и внесено в реестр требований кредиторов:

141 конкурсный кредитор.

Общее количество голосов конкурсных кредиторов составляет:

1.681 931 385 *(один миллиард шестьсот восемьдесят один миллион девятьсот тридцать одна тысяча триста восемьдесят пять)* голосов

Для проведения голосования было роздано 89 (восемьдесят девять) бюллетеней на общее количество 1 647 329 461 *(один миллиард шестьсот сорок семь триста двадцать девять тысяч четыреста шестьдесят один)* голос, что составляет 97,94% от общего числа голосов конкурсных кредиторов

В бюллетень для голосования внесено:

*Изложить пункт 2.4 Мирового соглашения в следующей редакции:*

«2.4. Исполнение обязательств Должника перед Кредиторами пятой очереди производится Должником денежными средствами в рассрочку с момента утверждения настоящего мирового соглашения равными долями согласно нижеприведенному графику:

| Год | Срок платежа | Размер платежа | Примечание |
|---|---|---|---|
| 1. 2001 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним | --- |

6

| | | управляющим. | |
|---|---|---|---|
| 2. 2002 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | --- |
| 3. 2003 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | --- |
| 4. 2004 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | --- |
| 5. 2005 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | --- |
| 6. 2006 г. | Не позднее 31 декабря 2006 года | 5 (Пять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 7. 2007 г. | Не позднее 31 декабря 2007 года | 7 (Семь) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 8. 2008 г. | Не позднее 31 декабря 2008 года | 9 (Девять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 9. 2009 г. | Не позднее 31 декабря 2009 года | 9 (Девять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 10. 2010 г. | Не позднее 31 декабря 2010 года | 10 (Десять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 11. 2011 г. | Не позднее 31 декабря 2011 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 12. 2012 г. | Не позднее 31 декабря 2012 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 13. 2013 г. | Не позднее 31 декабря 2013 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |

| | декабря 2014 года | (пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
|---|---|---|---|

В остальной части текст Мирового соглашения оставить без изменений.

После голосования поступило 89 (восемьдесят девять) бюллетеней на общее количество:

**1 647 329 461** *(один миллиард шестьсот сорок семь миллионов триста двадцать девять тысяч четыреста шестьдесят один)* голос, что составляет **97,94%** от общего числа голосов конкурсных кредиторов

ИЗ НИХ: *действительных* **89** (восемьдесят девять) бюллетеней; *недействительных:* нет

"**ЗА**" внесение изменений в текст мирового соглашения:

**83** (восемьдесят три) конкурсных кредитора

на общее количество **1 446 444 979** (один миллиард четыреста сорок шесть миллионов четыреста сорок четыре тысячи девятьсот семьдесят девять) голосов, что составляет **86,00%** от общего числа голосов конкурсных кредиторов

"**ПРОТИВ**" внесения изменений в текст мирового соглашения

**5** (пять) конкурсных кредиторов на общее количество **196 235 467** *(сто девяносто шесть миллионов двести тридцать пять тысяч четыреста шестьдесят семь)* голосов, что составляет **11,67%** от общего числа голосов конкурсных кредиторов

"**ВОЗДЕРЖАЛСЯ**" по данному вопросу

**1** (один) конкурсный кредитор

на общее количество **4 649 015** (четыре миллиона шестьсот сорок девять тысяч пятнадцать) голосов, что составляет **0,28%** от общего числа голосов конкурсных кредиторов.

**ИТОГИ ГОЛОСОВАНИЯ:** собранием принято решение: Внести предложенные изменения в текст мирового соглашения (Протокол № 1 Счетной комиссии)

<u>**Козырев О. С.:**</u> Предлагаю кредиторам получить дополнительные бюллетени.

При регистрации, всем были розданы Заявки на выдвижение кандидата, уполномоченного собранием подписать мировое соглашение. На основании заявок были подготовлены бюллетени. В заявки была внесена одна кандидатура Демского Леонида Васильевича. В случае если у кого-либо есть другие кандидатуры, прошу самостоятельно вписать их в бюллетени.

*(Выдача бюллетеней)*

Так как первым вопросом был поставлен вопрос о внесении изменений в текст мирового соглашения, то необходим технический перерыв для подготовки окончательного варианта мирового соглашения для последующего голосования.

*(Перерыв 20 минут)*

<u>**Козырев О.С.:**</u> Уважаемые кредиторы, на повестку дня ставится вопрос о заключении мирового соглашения в следующей редакции:

### МИРОВОЕ СОГЛАШЕНИЕ

Кредиторы открытого акционерного общества «Качканарский горно-обогатительный комбинат «Ванадий» в лице _____, уполномоченного собранием кредиторов. действующего на основании п. 2 ст. 121 Федерального закона «О несостоятельности (банкротстве)» и решения собрания кредиторов от «_____» _____ 2001 года, с одной стороны, и открытое акционерное общество «Качканарский горно-обогатительный комбинат «Ванадий», именуемое в дальнейшем «Должник», в лице внешнего управляющего Козырева Олега Станиславовича. действующего на основании п. 2 ст. 121 Федерального закона «О несостоятельности (банкротстве)» и определения Арбитражного суда Свердловской области от 22 августа 2000 года, с другой стороны,

A - 1351

именуемые в дальнейшем совместно «Стороны», заключили настоящее мировое соглашение о нижеследующем:

### 1. Вопросы, регулируемые настоящим мировым соглашением

1.7. Настоящее мировое соглашение заключено в период внешнего управления на стадии судебного разбирательства дела о признании Должника банкротом (№ А60-4517/00-С1), находящегося в производстве Арбитражного суда Свердловской области.

1.8. Решение о заключении настоящего мирового соглашения принято на собрании кредиторов Должника, состоявшемся «____»_____2001 года (протокол собрания кредиторов от «____»_____ 2001 года).

1.9. Положения настоящего мирового соглашения распространяются на конкурсных кредиторов ОАО «Качканарский горно-обогатительный комбинат «Ванадий», требования которых признаны установленными в соответствии с Федеральным законом «О несостоятельности (банкротстве)» (именуемые в дальнейшем Кредиторы), в том числе на Кредиторов, не принимавших участие в голосовании по вопросу о заключении мирового соглашения, а также голосовавших против его заключения.

1.10. Настоящее мировое соглашение определяет размер, сроки и способы исполнения денежных обязательств Должника перед Кредиторами.

1.11. Настоящее мировое соглашение заключено в соответствии с положениями главы 7 Федерального закона «О несостоятельности (банкротстве)».

1.12. Настоящее мировое соглашение вступает в силу с момента его утверждения Арбитражным судом Свердловской области.

### 2. Размер, порядок и сроки исполнения обязательств Должника и прекращение обязательств Должника

2.1. Задолженность Должника определяется в соответствии с данными реестра требований кредиторов, составленным внешним управляющим. Реестр требований кредиторов является неотъемлемой частью настоящего мирового соглашения (Приложение).

2.1.1. Задолженность перед кредиторами первой очереди – отсутствует.

2.1.2. Задолженность перед кредиторами второй очереди - отсутствует.

2.1.3. Задолженность перед кредиторами третьей очереди - отсутствует.

2.1.4. Задолженность перед кредиторами четвертой очереди – 356 614 294,48 рублей *(триста пятьдесят шесть миллионов шестьсот четырнадцать тысяч двести девяносто четыре рубля 48 копеек).*

2.1.5. Задолженность перед кредиторами пятой очереди - 1 681 931 385,19 рублей *(один миллиард шестьсот восемьдесят один миллион девятьсот тридцать одна тысяча триста восемьдесят пять рублей 19 копеек).*

2.1.6. В случае рассмотрения в Арбитражном суде Свердловской области возражений Кредитора на отказ внешнего управляющего от внесения записи в реестр требований кредиторов после даты проведения собрания Кредиторов, на котором принято решение о заключении настоящего мирового соглашения, и установления обоснованности требований Кредитора, размер задолженности, указанной в пункте 2.1.5. настоящего мирового соглашения, увеличивается на сумму, указанную в определении Арбитражного суда Свердловской области, устанавливающем размер требований данного Кредитора.

Все положения настоящего мирового соглашения распространяются на Кредитора, указанного в настоящем пункте, в полном объеме.

2.2. Все судебные расходы, включая расходы по государственной пошлине, а также расходы, связанные с выплатой вознаграждения временному управляющему и внешнему управляющему, оплачиваются Должником вне очереди в полном объеме в течение 10 (Десять) дней с момента утверждения Арбитражным судом Свердловской области настоящего мирового соглашения.

2.3. Порядок и сроки погашения задолженности перед кредиторами четвертой очереди, а также задолженности по уплате сумм штрафов (пени) и иных финансовых (экономических) санкций по обязательным платежам в бюджет и во внебюджетные фонды определяются в соответствии с законодательством Российской Федерации о налогах и сборах.

2.4. Исполнение обязательств Должника перед Кредиторами пятой очереди производится Должником денежными средствами в рассрочку с момента утверждения настоящего мирового соглашения равными долями согласно нижеприведенному графику:

| Год | Срок платежа | Размер платежа | Примечание |
|---|---|---|---|
| 1. 2001 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | --- |
| 2. 2002 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | --- |
| 3. 2003 г. | | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | --- |
| 4. 2004 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | --- |
| 5. 2005 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | --- |
| 6. 2006 г. | Не позднее 31 декабря 2006 года | 5 (Пять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 7. 2007 г. | Не позднее 31 декабря 2007 года | 7 (Семь) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 8. 2008 г. | Не позднее 31 декабря 2008 года | 9 (Девять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 9. 2009 г. | Не позднее 31 декабря 2009 года | 9 (Девять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 10. 2010 г. | Не позднее 31 декабря 2010 года | 10 (Десять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 11. 2011 г. | Не позднее 31 декабря 2011 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 12. 2012 г. | Не позднее 31 декабря 2012 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |

A - 1353

| 13. 2013 г. | Не позднее 31 декабря 2013 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 14. 2014 г. | Не позднее 31 декабря 2014 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |

2.5. В случае изменения платежных реквизитов Кредитора для перечисления средств в счет исполнения Должником обязательств по настоящему мировому соглашению Кредиторы вправе направить Должнику письменное уведомление в течение всего срока действия настоящего мирового соглашения.

В случае не поступления указанного в данном пункте уведомления применяются правила об исполнении обязательств, установленные гражданским законодательством Российской Федерации.

2.6. При исполнении обязательств Должника перед Кредиторами не допускается перечисление денежных средств в соответствии с условиями настоящего мирового соглашения на счета третьих лиц, за исключением случаев документально подтвержденного Кредитором факта перемены лица в обязательстве.

### 3. Заключительные положения

3.1. Настоящее мировое соглашение составлено в четырех экземплярах: первый экземпляр находится в Арбитражном суде Свердловской области, второй – у Должника, третий – у лица, уполномоченного собранием кредиторов Должника от «____» _____ 2001 года на подписание настоящего Мирового Соглашения, четвертый – у внешнего управляющего Должника. При необходимости Кредитор вправе потребовать от Должника копию экземпляра настоящего мирового соглашения, заверенную печатью Должника и подписью руководителя Должника.

3.2. Споры, возникающие в ходе исполнения настоящего мирового соглашения, разрешаются в соответствии с законодательством Российской Федерации.

### 4. Подписи Сторон

**КРЕДИТОРЫ:**
лицо, уполномоченное
собранием кредиторов ОАО «Качканарский
горно-обогатительный комбинат «Ванадий»
на заключение Мирового Соглашения

**ДОЛЖНИК:**
Внешний управляющий
ОАО «Качканарский горно-обогатительный комбинат «Ванадий»

_____/_____/                    _____ / Козырев О.С./

Настоящее мировое соглашение выдано присутствующим представителям кредиторов, о чем свидетельствуют их расписки о получении.

Прошу проголосовать Бюллетенем № 1.

**Голосование по вопросу о заключении мирового соглашения.**

Установлено и внесено в реестр требований кредиторов: 141 конкурсный кредитор.

Общее количество голосов конкурсных кредиторов составляет: 1 681 931 385 (один миллиард шестьсот восемьдесят один миллион девятьсот тридцать одна тысяча триста восемьдесят пять) голосов.

Для проведения голосования было роздано 89 (восемьдесят девять) бюллетеней на общее количество: 1 647 329 461 (один миллиард шестьсот сорок семь миллионов триста двадцать девять тысяч четыреста шестьдесят один) голос, что составляет: 97,94% от общего числа голосов конкурсных кредиторов.

В соответствии со ст. 120 и п.1 ст.123 Федерального закона "О несостоятельности (банкротстве)" решение о заключении мирового соглашения принимается большинством голосов от общего числа конкурсных кредиторов, при условии, если за него проголосовали все кредиторы по обязательствам, обеспеченным залогом имущества должника.

A - 1354

*по состоянию на 11 марта 2001г. в реестре требований кредиторов отсутствуют требования кредиторов по обязательствам, обеспеченным залогом имущества должника*

В бюллетень для голосования внесено:

*Заключить мировое соглашение с ОАО Качканарский горно-обогатительный комбинат "Ванадий".*

После голосования поступило: 89 (восемьдесят девять) бюллетеней, на общее количество: 1 647 329 461 (один миллиард шестьсот сорок семь миллионов триста двадцать девять тысяч четыреста шестьдесят один) голос, что составляет 97,94% от общего числа голосов конкурсных кредиторов

**ИЗ НИХ** *действительных* 89 (восемьдесят девять) бюллетеней *недействительных: нет*

"ЗА" заключение мирового соглашения:

84 (восемьдесят четыре) конкурсных кредитора, на общее количество 1 446 445 275 (один миллиард четыреста сорок шесть миллионов четыреста сорок пять тысяч двести семьдесят пять) голосов,

что составляет 86,00% от общего числа голосов конкурсных кредиторов

"ПРОТИВ" заключения мирового соглашения

3 (три) конкурсных кредитора, на общее количество 196 096 956 (сто девяносто шесть миллионов девяносто шесть тысяч девятьсот пятьдесят шесть) голосов, что составляет 11,66% от общего числа голосов конкурсных кредиторов

"ВОЗДЕРЖАЛСЯ" по вопросу о заключении мирового соглашения

2 (два) конкурсных кредитора, на общее количество 4 787 231 (четыре миллиона семьсот восемьдесят семь тысяч двести тридцать один) голос, что составляет 0,28% от общего числа голосов конкурсных кредиторов

Таким образом, собранием принято решение: *Заключить мировое соглашение с ОАО Качканарский горно-обогатительный комбинат "Ванадий".*

**Козырев О.С.:** Согласно повестке дня, остался один вопрос о кандидатуре лица, уполномоченного собранием кредиторов на подписание мирового соглашения от имени кредиторов. Кроме кандидатуры Демского Л.В., других предложений не поступало. Таким образом, на голосование ставится вопрос о кандидатуре Демского Леонида Васильевича, уполномоченного подписать мировое соглашение от имени кредиторов ОАО Качканарский ГОК «Ванадий». Прошу голосовать (Бюллетень № 2).

Голосование по вопросу о кандидатуре:

Для проведения голосования по кандидатуре лица, уполномоченного подписать мировое соглашение от имени конкурсных кредиторов, было роздано 89 (восемьдесят девять) бюллетеней

на общее количество: 1 647 329 461 (один миллиард шестьсот сорок семь миллионов триста двадцать девять тысяч четыреста шестьдесят один) голос

*В соответствии со ст.14 ФЗ "О несостоятельности (банкротстве)" избранным считается кандидат, набравший наибольшее число голосов, от числа голосов конкурсных кредиторов, присутствующих на собрании.*

В бюллетень для голосования внесено:

*Уполномочить подписать мировое соглашение от имени конкурсных кредиторов ОАО Качканарский ГОК "Ванадий" одного из следующих кандидатов:*

*Демский Леонид Васильевич*

После голосования поступило:

87 (восемьдесят семь) бюллетеней, на общее количество 1 451 402 754 (один миллиард четыреста пятьдесят один миллион четыреста две тысячи семьсот пятьдесят четыре) голоса, что составляет 88,11% от числа голосов конкурсных кредиторов, присутствующих на собрании.

A - 1355

ИЗ НИХ:

*действительных:*   87 (восемьдесят семь) бюллетеней

*недействительных:* нет

Проголосовало:

"ЗА" кандидатуру   Демского Леонида Васильевича

83 (восемьдесят три) Конкурсных кредитора, на общее количество 1 446 444 979 (один миллиард четыреста сорок шесть миллионов четыреста сорок четыре тысячи девятьсот семьдесят девять) голосов, что составляет:  87,81% от числа голосов конкурсных кредиторов, присутствующих на собрании.

"ПРОТИВ" поставленной на голосование кандидатуры

1 (один) конкурсный кредитор, на общее количество 170 249 (сто семьдесят тысяч двести сорок девять) голосов, что составляет:   0,01% от числа голосов конкурсных кредиторов, присутствующих на собрании.

"ВОЗДЕРЖАЛИСЬ"

3 (три) Конкурсных кредитора, на общее количество 4 787 526 (четыре миллиона семьсот восемьдесят семь тысяч пятьсот двадцать шесть) голосов, что составляет:  0,29% от присутствующих на собрании кредиторов с правом голоса

Таким образом, собранием принято решение: Уполномочить подписать мировое соглашение от имени конкурсных кредиторов ОАО Качканарский ГОК "Ванадий Демского Леонида Васильевича.

<u>Козырев О. С.:</u> Есть ли замечания, предложения по ведению собрания? Если нет, то собрание считаю оконченным.

Внешний управляющий
ОАО Качканарский ГОК «Ванадий»
_(подпись)_                                         О. С. Козырев

Секретарь собрания
_(подпись)_                                         Е. И. Лялина

13

A - 1356

**ARBITRAZH COURT for SVERDLOVSK OBLAST**
**FO THE OF RUSSIAN FEDERATON**
**DETERMINATION**

City of Ekaterinburg                                          Case No. A60-4517/2000-C1
June 27, 2001

Appellate Instance of the Arbitrazh Court for Sverdlovsk Oblast n the composition of:
Presiding Judge : Kokova V.S.
Judges: Zorina N.L., Tsvetkova S.A.

With the participation in the session of:
Creditor –petitioner –Ashikhmina M.M.
Debtor – Kozyrev O.S. –the trustee in bankruptcy, Starshinov E.A., - power of attorney of May 14, 2001, Kolesnikov M.N., - power of attorney of May 14, 2001.
FSFO – Elistratov D.S - power of attorney No.10 ,of January 4, 2001.
Creditors: OOO "Invest. Assots. "Progress"- Stepchenko T.N. - power of attorney of February 22, 2001
OOO "Prom –str.comp TIP" - Stepchenko T.N. - power of attorney No.49 of August 4, 2000
OOO " Krasnouralskmezhraygaz" - Stepchenko T.N. – power of attorney No.783 of July 31, 2000
OAO "Zapsibgazprom" – Novozhenov O.A. – power of attorney No. 314 of December 8, 2000.
OAO "Sverdlovenergo" – Gubin M.V. – power of attorney No. 119-015 of December 29, 2000.

Considered in a court session the appeal complaint of (objection) "Nexis Prodacts L.L.C. on he determination dated April 19, 2001, in the case No. A60-4517/2000-C1 on the petition of OOO "Krasnouralskmezhraygaz" on recognition OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" as bankrupt (insolvent) .

OOO "Krasnouralskmezhraygaz" fled to the Arbitrazh Court with a petition to recognize OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" as bankrupt (insolvent).
Under the Determination dated April 19, 20001 ( Judges Kazantseva N.V., Platonova E.A., Mikushina N.V.) a compromise was settled on March 11, 2001 between OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" as bankrupt (insolvent) and creditors in bankruptcy, the proceedings in the case closed.
The eligibility of the rendered Determination was checked in the order of the Articles 146, 153, 160 of the Arbitrazh Procedural Code of RF on the Appeal Complaint of "Nexis prodacts L.L.C. ", which insisting on the administration in bankruptcy , made a reference to the fact, that a compromise could not be approved in the court, since a considerable number of Creditors in bankruptcy were not notified of the meeting and failed to participate in approving of the compromise, the compromise being contrary to the Law; at the time when it was settled, due order was violated; AKB Sberbank of Russia, being a pledge creditor, failed to participate; the information on absence of the Creditors of the first and second priority is not true.
The debtor filed a petition to leave the appeal complaint without consideration due to the fact , that the complaint was signed by the person with improper authorities.

The representative of "Nexis prodacts L.L.C. " made a reference to issuing of a General power of attorney of November 15, 2000 in accordance with the Laws of the USA.

Having considered the documents of the case, having heard the representatives of the Parties, the court established:

In accordance with Ch.1 of Article 148 of the Arbitrazh Procedural Code of RF , the appeal complaint should be signed by the person, fling the petition, or the representative thereof, whose authorities to challenge the court decisions are confirmed by the power of attorney, attached to the appeal complaint.

The Appeal Complaint on the Determination dated April 19, 2001 on behalf of the "Nexis prodacts L.L.C. " (Salt Lake city , state of Uta, the USA) was signed by the representative, acting upon the general power of attorney of the company, of November 15, 2000, authorizing to conduct business of the company within the territory of Russian Federation.

In accordance with Article 3 of the Hague Convention, which revokes the requirement of legalizing foreign official documents of October 5, 1961, the only formality , which can be required to legalize the authentication of the signature, the status of the person when signing the document, and in due case, the authentication of the seal and stamp, affixed to document, is provision of apostille, stipulated in Article 4, by the competent body of the State where the document was executed.

Under Article 4 of the named Convention, the apostille is provided on the document itself or on a separate paper, affixed to the document, it must correspond to the sample, attached to the Convention.

In this case the representative of "Nexis prodacts L.L.C. " submitted the general power of attorney of November 15, 2000, a statement made under oath (affidavit) dated September 28, 2000, affixed by apostille, executed on a separate paper on November 28, 2000. The above-mentioned documents may not be taken by the court into consideration. With respect to the general power of attorney of November 15, 2000, apostille, provided in Article 3 of the Convention was not executed.

A statement under oath was made on September 28, 2000, and consequently may not refer to the general power of attorney, issued on a later date – November 15, 2000. Apostille of November 28, 2000 was executed with respect to the statement under oath of September 28, 2000 and affixed, in accordance with the rules of the Hague Convention, just with this document, rather than with general power of attorney of November 15, 2000, consequently , may not authenticate the signatures and the status of the persons who signed the general power of attorney.

The fact, that all 3 above-mentioned documents and their notary authenticated translations were affixed and laced up by the notary, does not affect the merits of the case, since the general power of attorney and apostille were not affixed by a competent body of the USA.

Thus, the requirements of Article 148 of the Arbitrazh Procedural Code of RF and Articles 3, 4 of the Hague Convention of October 5, 1961, in the part on legalization of the powers of the representative to make complaints on court decisions were not observed in this case, due thereof the Appeal Complaint of "Nexis prodacts L.L.C. " may not be considered, applicable to p.3 of Article 87 of the Arbitrazh Procedural Code of RF.

Being guided by p.3 of Article 87 of the Arbitrazh procedural Code of Russian Federation, the court:

## HAS DETERMINED

To have the Appeal Complaint of the company "Nexis prodacts L.L.C " without consideration.


Presiding                                          Kokova V.S.

Judges                                             Zorina N.L.
                                                   Tsvetkova S.A.



# Арбитражный суд Свердловской области
## Именем Российской Федерации
# Определение

*г. Екатеринбург*
*«27.06.» 2001 г.*                               Дело № А60-4517/2000-С1

    Апелляционная инстанция Арбитражного суда Свердловской области в составе:
**председательствующего Коковой В.С.**
**судей: Зориной Н.Л., Цветковой С.А.**

при участии в заседании:
Кредитора-заявителя - Ашихмина М.М. - дов. от 15.11.2000
Должника - Козырев О.С. - внешний упр-й, Старшинова Е.А. - дов. от 14.05.01, Колесников М.Н. - дов. от 14.05.01
ФСФО - Елистратов Д.С. - дов. № 10 от 04.01.01
Кредиторы: ООО "Инвест ассоц. "Прогресс" - Степченко Т.Н. - дов. от 22.02.01
ООО "Пром.-стр.комп. ТИП" - Степченко Т.Н. - дов. № 49 от 04.08.2000
ОАО "Красноуральскмежрайгаз" - Степченко Т.Н. - дов. № 783 от 31.07.2000
ОАО "Запсибгазпром" - Новоженова О.А. - дов. № 314 от 08.12.2000
ОАО "Свердловэнерго" - Губин М.В. - дов. № 119-015 от 29.12.2000

    Рассмотрела в судебном заседании апелляционную жалобу (протест) "Нэксиз Продактс Эл.Эл.Си" на определение от 19.04.01 по делу № А60-4517/2000-С1 по заявлению ОАО "Красноуральскмежрайгаз" о признании несостоятельным (банкротом) ОАО "Качканарского ГОКа "Ванадий"

    ОАО "Красноуральскмежрайгаз" обратилось в арбитражный суд с заявлением о признании ОАО Качканарского ГОКа "Ванадий" несостоятельным (банкротом).
    Определением от 19.04.01 (судьи Казанцева Н.В., Платонова Е.А., Микушина Н.В.) утверждено мировое соглашение от 11.03.01 между ОАО Качканарским ГОКом "Ванадий" и конкурсными кредиторами, производство по делу прекращено.
    Правильность принятого определения проверена в порядке ст.ст.146, 153, 160 Арбитражного процессуального кодекса РФ по апелляционной жалобе "Нэксиз Продактс Эл.Эл.Си", которое, настаивая на продолжении процедуры внешнего управления, сослалось на то, что

**A - 1361**

2

мировое соглашение не могло быть утверждено судом, поскольку значительное число конкурсных кредиторов не извещалось о собрании и не принимало участия в утверждении мирового соглашения, мировое соглашение противоречит закону; при его заключении нарушен установленный порядок; в собрании не принимал участия АКБ Сбербанк России, являющийся залоговым кредитором; сведения об отсутствии кредиторов 1 и 2 очереди не соответствуют действительности.

Должником заявлено ходатайство об оставлении апелляционной жалобы без рассмотрения в связи с тем, что жалоба подписана лицом, не имеющим надлежащих полномочий.

Представитель "Нэксиз Продактс Эл.Эл.Си" сослался на выдачу генеральной доверенности от 15.11.2000 в соответствии с законодательством США.

Рассмотрев материалы дела, выслушав представителей сторон, суд установил:

В соответствии с ч.1 ст.148 Арбитражного процессуального кодекса РФ апелляционная жалоба подписывается лицом, подающим жалобу, или его представителем, чьи полномочия на обжалование судебных актов подтверждаются доверенностью, прилагаемой к апелляционной жалобе.

Апелляционная жалоба на определение от 19.04.01 от имени "Нэксиз Продактс Эл.Эл.Си" (Солт Лейк Сити, штат Юта. США) подписана представителем, действующим по генеральной доверенности компании от 15.11.2000, предоставляющей право вести дела компании на территории Российской Федерации.

Согласно ст.3 Гаагской Конвенции, отменяющей требование легализации иностранных официальных документов от 05.10.61, единственной формальностью, которая может быть потребована для удостоверения подлинности подписи, качества, в котором выступало лицо, подписавшее документ, и, в надлежащем случае, подлинности печати или штампа, которыми скреплен этот документ, является проставление предусмотренного ст.4 апостиля компетентным органом государства, в котором этот документ был совершен.

В соответствии со ст.4 названной Конвенции апостиль проставляется на самом документе или на отдельном листе, скрепляемом с документом, он должен соответствовать образцу, приложенному к Конвенции.

В настоящем случае, представителем "Нэксиз Продактс Эл.Эл.Си" представлены генеральная доверенность от 15.11.2000, заявление под присягой (аффидавит) от 28.09.2000, скрепленное с апостилем, исполненным на отдельном листе 28.11.2000. Указанные документы не могут быть приняты судом во внимание. В отношении генеральной доверенности от 15.11.2000 апостиль, предусмотренный ст.3 Конвенции не совершен.

Заявление под присягой сделано 28.09.2000 и, следовательно, не может относится к генеральной доверенности, выданной позднее - 15.11.2000. Постиль от 28.11.2000 совершен в отношении заявления под присягой от 28.09.2000 и скреплен по правилам ст.4 Конвенции именно с

3

этим документом, а не с генеральной доверенностью от 15.11.2000, следовательно, не может служить удостоверением подлинности подписей и качества, в котором выступали лица, подписавшие генеральную доверенность.

То обстоятельство, что все 3 названных документа и их нотариально заверенные переводы скреплены и прошнурованы нотариусом, не меняет существа дела, поскольку генеральная доверенность и апостиль не скреплены компетентным органом США.

Таким образом, требования ст.148 Арбитражного процессуального кодекса РФ и ст.ст.3, 4 Гаагской Конвенции от 05.10.61 в части удостоверения полномочий представителя на обжалование судебных актов в данном случае не соблюдены, в связи с чем апелляционная жалоба "Нэксиз Продактс Эл.Эл.Си" рассмотрению не подлежит применительно к п.3 ст.87 Арбитражного процессуального кодекса РФ.

Руководствуясь п.3 ст.87 Арбитражного процессуального кодекса Российской Федерации, суд

## ОПРЕДЕЛИЛ:

Апелляционную жалобу Компании "Нэксиз Продактс Эл.Эл.Си" оставить без рассмотрения.

Председательствующий                    В.С.Кокова

Судьи                                   Н.Л.Зорина

                                        С.А.Цветкова

03.07.01 оа

A - 1363

### FEDERAL ARBITRAZH COURT FOR THE URALS CIRCUIT
### DETERMINATION
#### On returning of the Cassational Complaint

**City of Ekaterinbug**
**August 21, 2001**                                              Case No. A60 –4517/00-C1

The Judge Balachkov S.V. considered the Cassational Complaint of the company "Nexis prodacts L.L.C " on the Determination of the Appellate Instance of the Arbitrazh Court for Sverdlovsk Oblast, dated June 26, 2001, in the case No. Case No. A60 –4517/2000 –C1 on the petition of OOO "Krasnouralskmezhraygaz" on recognition OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" as bankrupt (insolvent),

Has established:

Federal Arbitrazh court for the Urals Circuit was addressed with a cassational complaint of the Company "Nexis prodacts L.L.C " on the Determination of he Appellate Instance of the Arbitrazh Court for Sverdlovsk Oblast , dated June 27, 2001, signed he representative Ashikhmina M.M. and Volnov V.V. The Xerox copy of the power of attorney to the representative Ashimikhina M.M.., in violation of Article 60 of APC RF was not authenticated in a due way, and the powers of attorney to the representative Volnov V.V., has not been attached to the complaint.

Since no evidence confirming the authorities of the representatives to file complaints on the court decisions by the petitioner has been submitted, the cassational complaint is to be returned.

Being guided by clause 1 of Chapter 1 of Article 168 of the Arbitrazh Procedural Code of Russian federation,

#### Has Determined

1. the cassational complaint to be returned to the petitioner.
2. a state due in the amount of 500 roubles, paid on the receipt of July 26, 2001 to be recouped to the petitioner from the budget.
3. a complaint on the Determination may be filed to the cassational instance of the Federal Arbitrazh Court of the Urals Circuit.

Judge                                                          Balachkov S.V.

A - 1365