

# ФЕДЕРАЛЬНЫЙ АРБИТРАЖНЫЙ СУД УРАЛЬСКОГО ОКРУГА

# ОПРЕДЕЛЕНИЕ
## о возвращении кассационной жалобы

г. Екатеринбург
«21» августа 2001 г.                                            № А60-4517/00-С1

Судья Балачков С.В., рассмотрев кассационную жалобу Компании «Нэксиз Продактс Эл. Эл. Си.» на определение апелляционной инстанции от 27.06.2001 г. Арбитражного суда Свердловской области по делу № А60-4517/2000-С1 по заявлению ОАО «Красноуральскмежрайгаз» о признании несостоятельным (банкротом) ОАО «Качканарский ГОК «Ванадий»
установил:

В Федеральный арбитражный суд Уральского округа поступила кассационная жалоба Компании «Нэксиз Продактс Эл. Эл. Си.» на определение апелляционной инстанции от 27.06.2001 г. Арбитражного суда Свердловской области, подписанная представителем Ашихминой М.М., и Вольновым В.В. При этом светокопия доверенности на представителя Ашихмину М.М. в нарушение требований ст.60 АПК РФ не заверена надлежащим образом, а доверенности на представителя Вольнова В.В. к жалобе не приложено.

Поскольку доказательств, подтверждающих полномочия представителей на обжалование судебных актов заявителем не представлено, кассационная жалоба подлежит возвращению.

Руководствуясь пунктом 1 части 1 статьи 168 Арбитражного процессуального кодекса Российской Федерации,

## ОПРЕДЕЛИЛ:

1. Кассационную жалобу возвратить заявителю.
2. Возвратить заявителю из федерального бюджета государственную пошлину в сумме 500 руб., уплаченную по квитанции от 26.07.01 г.
3. Определение может быть обжаловано в кассационном порядке в Федеральный арбитражный суд Уральского округа.

Судья                                                        С.В. Балачков

[national emblem]
FEDERAL FINANCIAL RECOVERY
AND BANKRUPTCY SERVICE OF
RUSSIA

FSFO of Russia

42 Shchepkin Street, Moscow, 129857
Phone: 971-87-46
Fax: 975-44-68
August 18, 2000 No. Z-289
To No. _____ of _____

*FINDING*

**Regarding the Existence (Lack) of Symptoms of Intentional Bankruptcy
Of OAO Vanadii Mining and Milling Complex of Kachkanar
(City of Kachkanar, Sverdlovsk Province)**

**OAO Vanadii Mining and Milling Complex of Kachkanar was registered by the City
Administration of Kachkanar on April 15, 1993. The main business of the enterprise is the
manufacture and sale of iron and vanadium concentrate, agglomerate and pellets.**

Pursuant to a determination of the Court of Arbitration of Sverdlovsk Province dated March 30,
2000 and at the request of OAO Krasnouralskmezhraigaz, bankruptcy proceedings were
commenced with respect to OAO Vanadii Mining and Milling Complex of Kachkanar,
monitoring was introduced and an associate of the Federal Financial Recovery and Bankruptcy
Service of Russia was appointed provisional manager.

The following will be used as source of information for the performance of an expert evaluation
and preparation of a finding:

Copy of the bylaws of OAO Vanadii Mining and Milling Complex of Kachkanar;

Copy of the Regulation regarding the Board of Directors of OAO Vanadii Mining and Milling
Complex of Kachkanar;

Copy of the plan for the privatization of GP [State Enterprise] Mining and Milling Complex of
Kachkanar;

Copy of the decision of the Kachkanar City Court in Sverdlovsk Province dated February 8,
2000 and February 9, 2000;

Copy of the determination of the Court of Arbitration of Sverdlovsk Province dated March 30,
2000;

A - 1367

Copies of the quarterly and annual financial and accounting records of the enterprise from January 1, 1998 to June 1, 2000;

Copy of the financial analysis of OAO Vanadii Mining and Milling Complex of Kachkanar for 1998-1999 (prepared by Territorial Agency of the Federal Service of Russia in Matters of Insolvency for Sverdlovsk Province);

Copies of the delivery agreements to the address of OAO Vanadii Mining and Milling Complex of Kachkanar for 1998 – 2000 – 2 folders;

Copies of the agreements for the delivery of products of OAO Vanadii Mining and Milling Complex of Kachkanar – 2 folders;

Copies of the credit agreement and pledge agreement of OAO Vanadii Mining and Milling Complex of Kachkanar – 2 folders;

Copies of the note agreements of OAO Vanadii Mining and Milling Complex of Kachkanar – 1 folder;

Register of fixed assets of OAO Vanadii Mining and Milling Complex of Kachkanar – 1 folder;

Other documents of OAO Vanadii Mining and Milling Complex of Kachkanar – 3 folders.

As a result of the analysis of the financial and economic conditions of OAO Vanadii Mining and Milling Complex of Kachkanar during the period from January 1, 1998 to June 1, 2000, the following was found:

### Parameters describing the Degree of Guarantee of the Liabilities of OAO Vanadii Mining and Milling Complex of Kachkanar

|  | 1/1/98 | 7/1/98 | 10/1/98 | 1/1/99 |
|---|---|---|---|---|
| Debtor's liabilities backed with all assets | 1.43 | 1.39 | 1.33 | 1.04 |
| Debtor's liabilities backed with working assets | 0.58 | 0.53 | 0.56 | 0.71 |
| Amount of net assets (thousand rubles) | 664,075 | 573,365 | 543,059 | 169,627 |

|  | 4/1/99 | 7/1/99 | 10/1/99 | 1/1/00 |
|---|---|---|---|---|
| Debtor's liabilities backed with all assets | 1.08 | 1.13 | 1.18 | 1.16 |
| Debtor's liabilities backed with working assets | 0.57 | 0.64 | 0.69 | 0.62 |
| Amount of net assets (thousand rubles) | 195,627 | 302,975 | 446,174 | 358,411 |

|  | 4/1/00 | 6/1/00 |
|---|---|---|
| Debtor's liabilities backed with all assets | 1.13 | 1.13 |
| Debtor's liabilities backed with working assets | 0.72 | 0.76 |
| Amount of net assets (thousand rubles) | 474,857 | 535,171 |

Based on the accounting records, the calculation of the guarantee of the debtor's liabilities by its assets demonstrated that during the period from 1998 to 2000, the working assets in the organization were insufficient for covering the credit liabilities of the organization in full.

The value of the net assets of OAO Vanadii Mining and Milling Complex of Kachkanar was positive during the entire period reviewed.

The backing of the debts of OAO Vanadii Mining and Milling Complex of Kachkanar with all its assets during the entire period reviewed remained sufficient to satisfy creditors' claims.

The company's lack of sufficient current assets was a consequence of the business policies implemented by the leadership of the company during the entire analyzed period. Transactions entered into by OAO Vanadii Mining and Milling Complex of Kachkanar with suppliers and contractors based on the use of promissory notes and payment in goods (barter) led to the removal from the company's business turnover of the most liquid part of its current assets—cash. The company compensated for its lack of sufficient cash with credit and loans. The use of borrowed funds to make current payments and pay wages worsened the financial and economic condition of the company, because due to the lack of current assets OAO Vanadii Mining and Milling Complex of Kachkanar could not make timely repayments. The production strategy used by the company was typical and used by companies throughout the Russian Federation.

OAO Vanadii Mining and Milling Complex of Kachkanar borrowed funds in the period 1998-1999 by entering into short-term (maximum repayment term: six months) agreements for credit secured by pledges. Thus, under agreements OAO Vanadii Mining and Milling Complex of Kachkanar entered into with Lenex LLC in 1998-1999 for a total of 413.1 million rubles, the security was promissory notes of the company in the amount of 816 million rubles. The funds borrowed under several agreements were sent directly to third parties in repayment of the debts of OAO Vanadii Mining and Milling Complex of Kachkanar.

An analysis of the business agreements entered into by OAO Vanadii Mining and Milling Complex of Kachkanar in the period 1998-2000 with suppliers of materials and equipment and with its customers reveals that they were consistent with the market conditions and the business standards and customs of that period.

The sale of the company's products through intermediary firms in the course of transactions also promoted the diversion of cash from the company's turnover and the growth in expenses for production and sale of products. During 1998-1999 the activity of OAO Vanadii Mining and Milling Complex of Kachkanar was loss-making. The company's total losses were 642.9 million rubles in 1998 and 670 million rubles in 1999. At the same time, according to the results of financial and business activity the company earned a profit of 160.1 million rubles in the first quarter of 2000, and the indicators for the first five months of 2000 show a profit of 254.7 million rubles.

A - 1371

Dynamics of Accounts Payable
of OAO Vanadii Mining and Milling Complex of Kachkanar
(according to accounting balance sheets) [see source for numbers]

Thousands of rubles

| | 1-1-98 | 7-1-98 | 10-1-98 | 1-1-99 | 4-1-99 | 7-1-99 |
|---|---|---|---|---|---|---|
| Bank credits | | | | | | |
| Other loans | | | | | | |
| Total accounts payable, including: | | | | | | |
| Suppliers and contractors | | | | | | |
| Payable promissory notes | | | | | | |
| Wages | | | | | | |
| Indebtedness to the state | | | | | | |
| Social insurance | | | | | | |
| Other creditors | | | | | | |

| | 10-1-99 | 1-1-00 | 4-1-00 | 6-1-00 |
|---|---|---|---|---|
| Bank credits | | | | |
| Other loans | | | | |
| Total accounts payable, including: | | | | |
| Suppliers and contractors | | | | |
| Payable promissory notes | | | | |
| Wages | | | | |
| Indebtedness to the state | | | | |
| Social insurance | | | | |
| Other creditors | | | | |

Dynamics of Accounts Receivable
of OAO Vanadii Mining and Milling Complex of Kachkanar
(according to accounting balance sheets) [see source for numbers]

Thousands of rubles

| | 1-1-98 | 7-1-98 | 10-1-98 | 1-1-99 | 4-1-99 | 7-1-99 |
|---|---|---|---|---|---|---|
| Total accounts receivable, including: | | | | | | |
| Buyers and customers | | | | | | |
| Promissory notes receivable | | | | | | |
| Advances given | | | | | | |
| Other debtors | | | | | | |
| Short-term financial investments | | | | | | |
| Other current assets | | | | | | |

A - 1372

| | 10-1-99 | 1-1-00 | 4-1-00 | 6-1-00 |
|---|---|---|---|---|
| Total accounts receivable, including: | | | | |
| Buyers and customers | | | | |
| Promissory notes receivable | | | | |
| Advances given | | | | |
| Other debtors | | | | |
| Short-term financial investments | | | | |
| Other current assets | | | | |

The dynamics of changes in accounts receivable and payable during the analyzed period are as follows:

- In 1998 accounts payable increased by 61% (accounts receivable increased by 55%);
- In 1999 accounts payable fell by 41% compared with 1998 (accounts receivable fell by 66%);
- According to data for the first quarter of 2000, accounts payable increased by 63% (accounts receivable increased by 91%);
- According to data for the first five months, accounts payable increased by 6% (accounts receivable increased by 24%).

The increase in the indicators of accounts receivable and payable in the first quarter of 2000 was due to the fact that the company's balance sheet reflects a contract entered into on February 4, 2000 with the Moskovskiy Delovoy Mir Joint-Stock Commercial Bank for the opening of a line of credit in the amount of US$15,000,100, for a term until February 3, 2001, guaranteed by Svyatogor OJSC. In accordance with the performance of the contract of February 4, 2000, No. 19/12, granting the guaranty, in the event of default on the credit agreement the Borrower is obligated to give the guarantor promissory notes in the amount of 720 million rubles.

According to information provided by the FINMARKET Information Agency CJSC on the quotation of promissory notes of OAO Vanadii Mining and Milling Complex of Kachkanar, in the period from February 8, 2000, to February 23, 2000, the average selling price of the promissory notes was on average 40% of their nominal value. Thus, the sale price of the promissory notes and the terms of the agreement on the compensation for default on the contract are consistent with the market quotation of the promissory notes. The funds received pursuant to the credit agreement in the amount of 429,495 thousand rubles were used by OAO Vanadii Mining and Milling Complex of Kachkanar to repay indebtedness on wages, current payments to the state budget and extra-budgetary funds, to pay accounts payable on goods received and electrical energy, and 286,200 thousand rubles of the credit were transferred to OAO Svyatogor in payment under the simple partnership agreement (a joint activity agreement) for the "Vanadium Pentoxide Production" project.

The growth in accounts payable as of June 1, 2000, is due to the subsequent borrowing of

funds for production purposes under the credit line agreement with the Ural Bank for Reconstruction and Development.

Conclusions:

1. The lack of due control on the part of the company's management during 1998 – 2000 with respect to the regulation of the cash flows, and the system of payments made through third parties bypassing the company's accounts have led to an increase in credit liabilities.

2. Based on the materials of the case, it was established that the financial situation of OAO Vanadii Mining and Milling Complex of Kachkanar and the parameters describing the solvency of the enterprise fluctuated insignificantly with a tendency towards improvement at the end of the period under analysis.

3. Based on the materials presented, no indications of an intentional bankruptcy were found.

Deputy Chief of the Litigation Support Administration     [signature]     N A. Galachyants

Head of Department                                        [signature]     I. N. Malashkina

Jan-17-02  12:25pm  From-                                    T-898   P.05/10  F-156



**ФЕДЕРАЛЬНАЯ СЛУЖБА РОССИИ
ПО ФИНАНСОВОМУ ОЗДОРОВЛЕНИЮ
И БАНКРОТСТВУ**

**ФСФО России**

129857, Москва, ул. Щепкина, 42
тел. 971-87-46
факс 975-44-68

18.08.00   № ___9-289___

На № _____ от _____

### ЗАКЛЮЧЕНИЕ
о наличии (отсутствии) признаков преднамеренного банкротства
ОАО «Качканарский ГОК «Ванадий»
(г. Качканар Свердловской области)

ОАО «Качканарский ГОК «Ванадий» зарегистрировано Администрацией г. Качканара 15.04.93. Основным видом деятельности предприятия является производство и реализация железо-ванадиевого концентрата, агломерата, окатышей.

Определением Арбитражного суда Свердловской области от 30.03.00 по заявлению ОАО «Красноуральскмежрайгаз» возбуждено производство по делу о банкротстве в отношении ОАО «Качканарский ГОК «Ванадий», введено наблюдение и временным управляющим назначен сотрудник ФСФО России.

Источниками информации для проведения экспертизы и подготовки заключения являются:

Копия устава ОАО «Качканарский ГОК «Ванадий»;

Копия положения о Совете директоров ОАО «Качканарский ГОК «Ванадий»;

Копия плана приватизации ГП «Качканарский горно-обогатительного комбинат»;

Копия решения Качканарского городского суда Свердловской области от 08.02.00 и 09.02.00.

Копия определения Арбитражного суда Свердловской области от 30.03.00.

Копии квартальной и годовой финансово-бухгалтерской отчетности предприятия с 01.01.98 по 01.06.00;

Копия финансового анализа ОАО «Качканарский ГОК «Ванадий» за 1998 - 1999 г.г. (выполненный ТА ФСДН России по Свердловской области);

Копии договоров поставки в адрес ОАО «Качканарский ГОК «Ванадий» за 1998 – 2000 г.г. – 2 папки;

A - 1376

2

Копии договоров поставки товарной продукции ОАО «Качканарский ГОК «Ванадий» – 2 папки;

Копии кредитных договоров и договоров залога ОАО «Качканарский ГОК «Ванадий» - 2 папки;

Копии вексельных договоров ОАО «Качканарский ГОК «Ванадий» – 1 папка;

Реестр основных средств ОАО «Качканарский ГОК «Ванадий» - 1 папка;

Прочие документы ОАО «Качканарский ГОК «Ванадий» – 3 папки.

В результате анализа финансово-экономического состояния ОАО «Качканарский ГОК «Ванадий» в период с 01.01.98 по 01.06.00 установлено следующее:

Показатели, характеризующие степень обеспеченности обязательств ОАО «Качканарский ГОК «Ванадий»

| | 01.01.98 | 01.07.98 | 01.10.98 | 01.01.99 |
|---|---|---|---|---|
| Обеспеченность обязательств должника всеми активами | 1,43 | 1,39 | 1,33 | 1,04 |
| Обеспеченность обязательств должника его оборотными активами | 0,58 | 0,53 | 0,56 | 0,71 |
| Величина чистых активов (тыс. руб.) | 664075 | 573365 | 543059 | 169627 |

| | 01.04.99 | 01.07.99 | 01.10.99 | 01.01.00 |
|---|---|---|---|---|
| Обеспеченность обязательств должника всеми активами | 1,08 | 1,13 | 1,18 | 1,16 |
| Обеспеченность обязательств должника его оборотными активами | 0,57 | 0,64 | 0,69 | 0,62 |
| Величина чистых активов (тыс. руб.) | 195627 | 302975 | 446174 | 358411 |

| | 01.04.00 | 01.06.00 |
|---|---|---|
| Обеспеченность обязательств должника всеми активами | 1,13 | 1,13 |
| Обеспеченность обязательств должника его оборотными активами | 0,72 | 0,76 |
| Величина чистых активов (тыс. руб.) | 474857 | 535171 |

Расчет обеспеченности обязательств должника активами, по данным бухгалтерской отчетности, показал, что в период 1998 – 2000 оборотных активов организации было недостаточно для погашения кредиторской задолженности организации в полном объеме.

A - 1377

Стоимость чистых активов ОАО «Качканарский ГОК «Ванадий» в течение всего рассматриваемого периода была положительной.

Обеспеченность обязательств ОАО «Качканарский ГОК «Ванадий» всеми активами на протяжении всего рассматриваемого периода оставалась достаточной для удовлетворения требований кредиторов.

Отсутствие у предприятия достаточного объема собственных оборотных средств явилось следствием хозяйственной политики, осуществляемой руководством предприятия в течение всего рассматриваемого периода. Заключаемые ОАО «Качканарский ГОК «Ванадий» сделки с поставщиками и подрядчиками, основанные на использовании вексельных и товарных расчетов (бартер), привели к исключению из хозяйственного оборота предприятия наиболее ликвидной части оборотных активов - денежных средств. При этом отсутствие собственных денежных средств компенсировалось за счет привлечения кредитов и займов. Привлекаемые заемные средства для погашения обязательств по текущим платежам и заработной плате ухудшали финансово-экономическое состояние предприятия, так как в связи с отсутствием собственных оборотных средств ОАО «Качканарский ГОК «Ванадий» не мог своевременно обеспечить их погашение. Применяемая предприятием производственная стратегия являлась типичной и используемой повсеместно предприятиями Российской Федерации.

Привлечение заемных средств на ОАО «Качканарский ГОК «Ванадий» в период 1998-1999 г.г. осуществлялось путем заключения краткосрочных (максимальный срок возврата - шесть месяцев) залоговых кредитных договоров. Так по договорам, заключенным в 1998 – 1999 г.г. ОАО «Качканарский ГОК «Ванадий» с ООО «Ленекс» на общую сумму займа 413,1 млн. руб., обеспечением явились векселя предприятия на сумму 816 млн. руб. Заемные средства по ряду договоров напрямую направлялись третьим лицам в счет погашения обязательств ОАО «Качканарский ГОК «Ванадий».

Анализ хозяйственных договоров, заключенных в период 1998 – 2000 г.г. ОАО «Качканарский ГОК Ванадий» с поставщиками материально-технических средств и потребителями продукции, выявил их соответствие сложившимся на тот период рыночным условиям, нормам и обычаям делового оборота.

Реализация товарной продукции предприятия, через фирмы-посредники в ходе сделок также способствовала отвлечению из оборота предприятия денежных средств и наращиванию затрат на производство и реализацию продукции. На протяжении 1998-1999 г.г. деятельность ОАО «Качканарский ГОК «Ванадий» носила убыточный характер. Общий убыток предприятия в 1998 г. составил – 642,9 млн. руб., в 1999 г. - 670 млн. руб. В то же время, по результатом финансово-хозяйственной деятельности первого квартала 2000 предприятием получена прибыль в объеме 160 ,1 млн руб , а по показателям за пять месяцев 2000 г. прибыль составила 254,7 млн. руб.

A - 1378

Jan-17-02  12:26pm  From-

T-889   P.08/10   F-156

## Динамика кредиторской задолженности
### ОАО «Качканарский ГОК «Ванадий»
(по данным бухгалтерских балансов)

тыс. руб.

| | 01.01.98 | 01.07.98 | 01.10.98 | 01.01.99 | 01.04.99 | 01.07.99 |
|---|---|---|---|---|---|---|
| Кредиты банков | 25158 | 15457 | 27704 | 8179 | 71 | 71 |
| Прочие займы | | | | 73154 | 364793 | 471046 |
| Кредиторская задолженность - всего, в том числе | 1529120 | 1473491 | 1627443 | 3897552 | 2144632 | 2079511 |
| Поставщики и подрядчики | 772798 | 681522 | 691355 | 2922535 | 1017386 | 771265 |
| Векселя к уплате | 217668 | 86468 | 89887 | 66125 | 456375 | 771156 |
| По оплате труда | 47722 | 67836 | 77122 | 62932 | 51524 | 18311 |
| Задолженность перед бюджетом | 264523 | 325288 | 347989 | 352473 | 108055 | 156843 |
| По социальному страхованию | 180284 | 251372 | 293246 | 369035 | 378585 | 241934 |
| Прочие кредиторы | 46098 | 61005 | 127844 | 124452 | 132707 | 119996 |

| | 01.10.99 | 01.01.00 | 01.04.00 | 01.06.00 |
|---|---|---|---|---|
| Кредиты банков | 71 | 71 | 61956 | 14518 |
| Прочие займы | 527050 | 681925 | 695027 | 720052 |
| Кредиторская задолженность - всего, в том числе | 1913739 | 1626985 | 2994208 | 3316169 |
| Поставщики и подрядчики | 1011411 | 768171 | 1034038 | 1321816 |
| Векселя к уплате | 613522 | 615231 | 1713430 | 1710623 |
| По оплате труда | 11929 | 14234 | 22445 | 27106 |
| Задолженность перед бюджетом | 142738 | 96757 | | 44138 |
| По социальному страхованию | 12959 | 15297 | 33589 | 62615 |
| Прочие кредиторы | 121165 | 116665 | 55082 | 149871 |

## Динамика дебиторской задолженности
### ОАО «Качканарский ГОК «Ванадий»
(по данным бухгалтерских балансов)

тыс. руб.

| | 01.01.98 | 01.07.98 | 01.10.98 | 01.01.99 | 01.04.99 | 01.07.99 |
|---|---|---|---|---|---|---|
| Дебиторская задолженность - всего, в том числе | 700023 | 588769 | 687008 | 2568558 | 1133691 | 1078133 |
| Покупатели и заказчики | 612763 | 548336 | 639764 | 2518718 | 1081011 | 973853 |
| Векселя к получению | 62504 | 11250 | 16663 | 8013 | 6784 | 3000 |
| Авансы выданные | 1 | 1 | | | | |
| Прочие дебиторы | 24755 | 29182 | 30581 | 41827 | 45896 | 101280 |
| Краткосрочные финансовые вложения | 33995 | 1100 | 9098 | 6816 | 28766 | 53394 |
| Прочие оборотные активы | | | | | | 275977 |

A - 1379

|  | 01.10.99 | 01.01.00 | 01.04.00 | 01.06.00 |
|---|---|---|---|---|
| Дебиторская задолженность - всего, в том числе | 1140487 | 862734 | 1652556 | 2058690 |
| Покупатели и заказчики | 999061 | 723243 | 1471070 | 1758329 |
| Векселя к получению |  |  |  |  |
| Авансы выданные | 10743 |  |  |  |
| Прочие дебиторы | 130683 | 139491 | 181486 | 300361 |
| Краткосрочные финансовые вложения | 32121 | 31799 | 24957 | 14457 |
| Прочие оборотные активы | 275977 | 195533 | 696632 | 696632 |

Динамика изменений дебиторской и кредиторской задолженностей за рассматриваемый период выглядит следующим образом:

- В 1998 году кредиторская задолженность увеличилась на 61% (дебиторская задолженность увеличилась на 55%);
- В 1999 году по сравнению с 1998 г. кредиторская задолженность уменьшилась на 41 % (дебиторская задолженность уменьшилась на 66 %);
- По показателям за первый квартал 2000 г. кредиторская задолженность увеличилась на 63 % (дебиторская задолженность увеличилась на 91 %);
- По показателям за пять месяцев кредиторская задолженность увеличилась на 6 % (дебиторская задолженность увеличилась на 24 %).

Увеличение показателей дебиторской и кредиторской задолженности по итогам первого квартала 2000 г. обусловлено отражением в балансе предприятия договора, заключенного 04.02.00 с АКБ «Московский деловой мир» на открытие кредитной линии в объеме 15000100 долл. США, на срок до 03.02.01 под поручительство ОАО «Святогор». В соответствии с исполнением договора от 04.02.00 №19/Г2 о предоставлении поручительства Заемщик обязан отдать поручителю в случае неисполнения кредитного договора собственные простые векселя в объеме 720 млн. руб.

В соответствии с информацией ЗАО «Информационное агентство ФИНМАРКЕТ» по котировке векселей ОАО «Качканарский ГОК «Ванадий» в период с 08.02.00 по 23.02.00 средняя цена продажи векселей составила в среднем 40% от стоимости номинала. Таким образом, продажная цена векселей и условия договора об отступном соответствует рыночной котировке векселей. Полученные в соответствии с кредитным договором средства в объеме 429495 тыс. руб. использовались ОАО «Качканарский ГОК «Ванадий» для погашения задолженности по заработной плате, текущих платежей в бюджет и во внебюджетные фонды, на погашение кредиторской задолженности по поставленным товарам и электроэнергии, а также 286200 тыс. руб. из указанного кредита передано ОАО «Святогор» на оплату по договору простого товарищества (договор о совместной деятельности) по проекту «Производство пятиокиси ванадия».

Рост кредиторской задолженности по состоянию на 01.06.00 обусловлен последующим привлечением заемных средств на

A - 1380

Jan-17-02  12:27pm   From-                                          T-899   P.10/10   F-156

6

производственные цели по договору о кредитной линии, открытой в Уральском банке реконструкции и развитии.

Выводы:

1. Отсутствие должного контроля со стороны органов управления организации в период 1998 – 2000 г.г. за регулированием денежных потоков, проведение расчетов через третьих лиц, минуя счета предприятия, привели к росту кредиторской задолженности.

2. Исходя из материалов дела, установлено, что финансовое положение ОАО «Качканарский ГОК «Ванадий» и показатели, характеризующие платежеспособность предприятия, изменялись незначительно с тенденцией к их улучшению к концу анализируемого периода.

3. На основании представленных материалов признаки преднамеренного банкротства не усматриваются.

Заместитель начальника управления
сопровождения судебных процедур                              Н.А Галачьянц

Начальник отдела                                             И.Н. Малашкина

A - 1381

[stamp]    Exhibit 10

# Nexis Products L.L.C.
*Suite 104, 47 West 2000 South, Salt Lake City, Utah 84101, USA*

Ref. No. 11/08-00
dated August 29, 2000

To:
Oleg Stanislavovich Kozyrev
Receiver in bankruptcy of OAO
[public joint stock company]
Kachkanarskiy GOK Vanadiy
[Vanadium Mining and Processing
Works of Kachkanar]
(hereinafter referred to as
"OAO KGOK Vanadiy")

From:
Nexis Products L.L.C., USA
(hereinafter referred to as
"Nexis Products")

## PETITION

**for Appointing Nexis Products L.L.C.
Creditor-in-Bankruptcy of the
Public Joint Stock Company
Kachkanarskiy gorno-obogatitel'nyi kombinat Vanadiy**

Nexis Products L.L.C., a limited liability company (hereinafter referred to as "Nexis Products"), registered on October 09, 1996 (Registration Certificate No. 015720) by the Department of Commerce of the State of Utah, USA (section of the Trade Corporations Code), with legal address at Suite 104, 47 West 200 South, Salt Lake City, Utah 84101, USA and actual (mailing) address at 119270 Moscow, G-270, P.O. Box 588,

hereby forwards to you the following documents certifying that Nexis Products is a creditor of OAO KGOK Vanadiy:

(a)    On July 13, 1999, Loan Agreement No. SWER/07-99 (**Exhibit No. 1**) was executed by and between Nexis Products and OAO KGOK Vanadiy. Under the terms of this agreement, Nexis Products agreed to provide to OAO KGOK Vanadiy a loan for a not-to-exceed amount of US $7,000,00.00 (seven million US dollars) to be repaid no later than January 08, 2000.

(b)    Nexis Products has performed its obligations under the Loan Agreement by paying funds in the amount of US $7,000,00.00 (seven million US dollars) to OAO

**A - 1382**

KGOK Vanadiy's account which is confirmed by transfer statement No. 6 dated July 15, 1999 (**Exhibit No. 2**) and a letter from AKB [joint stock commercial bank] Moskovskiy Delovoy Mir [Moscow Business World] (Ref. No. 1388/10v dated May 11, 2000) with respect to crediting of the above-mentioned loan amount to OAO KGOK Vanadiy's foreign currency account
(**Exhibit No. 3**).

(c)     On January 05, 2000, the parties executed a certificate of clearing and reconciliation whereby OAO KGOK Vanadiy acknowledged its indebtedness to Nexis Products, as of December 31, 1999, under Loan Agreement No. SWER/07-99 dated July 13, 1999 in the amount of          US $7,000,00.00 (seven million US dollars) (**Exhibit No. 4**).

(d)     On January 06, 2000, Supplementary Agreement [Amendment] No. 1 was executed by and between Nexis Products and OAO KGOK Vanadiy (**Exhibit No. 5**) whereby OAO KGOK Vanadiy acknowledged its indebtedness to Nexis Products under Loan Agreement in the amount of US $7,000,00.00 (seven million US dollars); in addition, the loan repayment date was extended to July 15, 2000.

(e)     At the present time, the loan repayment period has expired, and OAO KGOK Vanadiy has not repaid the funds; therefore, Nexis Products is a creditor of OAO KGOK Vanadiy, with the amount due and payable of US **$7,000,00.00** (seven million US dollars), and the demand of the creditor, Nexis Products, is deemed **established** as provided by the rules of applicable law (Article 4 of the Federal Law on Insolvency / Bankruptcy).

By forwarding the above-listed documents to you, Nexis Products L.L.C., which represents the interests of foreign investors in the Russian Federation, states again that our company, jointly with other creditors of OAO Kachkanarskiy GOK Vanadiy, is against the bankruptcy proceedings and believes that **the plant's bankruptcy is intentional** and has been caused solely by illegal activities on the part of A. A. Kozitsyn who seized the plant by use of arms on
January 28, 2000 and proceeded, intentionally and consistently, to **create and increase insolvency of OAO Kachkanarskiy GOK Vanadiy without any attempts to perform prejudicial restructuring of the plant.**

In addition, in the process of bankruptcy proceedings, you as an interim administrator in bankruptcy of OAO Kachkanarskiy GOK Vanadiy have committed the following gross violations of existing laws:

• The plant's shareholders were never given an opportunity for prejudicial restructuring of the company as provided by Article 26 and Article 27 of the Federal Law on Insolvency / Bankruptcy;

• We believe that the register of creditors of OAO Kachkanarskiy GOK Vanadiy, which you have developed and confirmed, based on the information contained in certificates of reconciliation executed by an unauthorized representative of OAO KGOK

Vanadiy, A. A. Kozitsyn, or by persons acting on the basis of power of attorney provided by him, is unlawful, which is confirmed by the relevant court judgment you have received;

- As a result of inaccurate information included in the register of creditors, only representatives of A. A. Kozitsyn and/or firms controlled thereby were elected to the creditors' committee and no representatives of the majority of creditors of OAO KGOK Vanadiy holding jointly over 70% of the amount due and payable, which constitutes an infringement on their rights;

- As an interim administrator in bankruptcy of OAO KGOK Vanadiy, you were aware of the court judgments passed and of the fact that A. A. Kozitsyn was not allowed to conduct any financial or business activities or manage the company's property, yet you approved the untrue / false register of creditors;

- Our company, just as the majority of creditors of OAO KGOK Vanadiy, was not notified in a timely manner of the date of the first meeting of creditors, which resulted in gross violation of and infringement upon our rights as creditors of OAO KGOK Vanadiy;

- On August 11, 2000, in violation of the judgement by Izmaylovo Court of Moscow, you held an unlawful meeting of creditors of OAO KGOK Vanadiy, which undeniably constitutes a violation of existing laws of the Russian Federation and results in liability under Article 315 of the Criminal Code of the Russian Federation.

In view of the fact that **a criminal action has currently been brought with respect to intentional bankruptcy of OAO Kachkanarskiy GOK Vanadiy**, please be reminded that, in accordance with Article 61 of the Federal Law on Insolvency / Bankruptcy, it was your **responsibility** as an interim administrator in bankruptcy to solely determine any elements of intentional bankruptcy and take all necessary steps to ensure integrity of the property of the debtor, OAO Kachkanarskiy GOK Vanadiy; however, in violation of the above rules, you not only failed to perform your responsibilities, but expedited, through your own actions, the intentional bankruptcy of the plant and introduction of receivership with respect thereto.

In view of the foregoing, **we warn you again of your responsibility as receiver in bankruptcy** and that each of your actions as an interim administrator and/or receiver in bankruptcy will be properly judged in terms of civil law and criminal liability and appropriate evidence will be provided to law enforcement authorities and entered as evidence to a criminal action based on intentional bankruptcy of the plant.

Based on the above, we **demand** that you:

1. File a petition, on your own initiative, to the Sverdlovsk Oblast Arbitration Tribunal for invalidation of the results of the first meeting of creditors of OAO KGOK Vanadiy held on August 11, 2000.

2. Draw a new register of creditors by deleting those creditors whose indebtedness has been confirmed by reconciliation certificates signed by A. A. Kozitsyn or by persons acting on the basis of power of attorney provided by him (specifically, OOO [limited liability company] Lebaut Enterprise).

3. Include in the register of creditors of OAO KGOK Vanadiy the requirement by Nexis Products for collecting US $7,000,000.00 (seven million US dollars) from OAO Kachkanarskiy GOK Vanadiy in favor of Nexis Products.

4. Reconvene and hold, as soon as possible, another meeting of creditors by giving advance notice thereof to the new creditors and include in the agenda of this meeting all items discussed by the meeting of creditors held on August 11, 2000.

Please give notice of any decisions made to the following address: **119270 Moscow, G-270, P.O. Box 588.**

**Exhibits: a total of six (6) pages, including:**
1. Loan Agreement No. SWER/07-99 dated July 13, 1999 (a notarized copy)
2. Transfer Statement No. 6 dated July 15, 1999 (a duplicate; the original is with AKB MDM)
3. Letter from AKB [joint stock commercial bank] Moskovskiy Delovoy Mir [Moscow Business World] (Ref. No. 1388/10v dated May 11, 2000) (a notarized copy)
4. Certificate of Clearing and Reconciliation between OAO Kachkanarskiy GOK Vanadiy and Nexis Products L.L.C. dated January 05, 2000 (a notarized copy)
5. Supplementary Agreement [Amendment] No. 1 dated January 06, 2000 to Loan Agreement No. SWER/07-99 dated July 13, 1999 (a notarized copy)

Sincerely,

[signature]

G. G. Zhirnov
Attorney
Nexis Products L.L.C.

[seal]

*Приложение 10*

# Nexis Products L.L.C.

*Suite 104, 47 West 200 South, Salt Lake City, Utah 84101, USA*

Исх. № 11/08-00 от 29.08.2000

Внешнему управляющему
ОАО «Качканарский ГОК «Ванадий»
(далее – ОАО КГОК «Ванадий»)

Козыреву Олегу Станиславовичу

от компании «Нэксиз Продактс
Эл.Эл.Си.», США
(далее – компания «Нэксиз Продактс»).

### ЗАЯВЛЕНИЕ

о признании компании «Нэксиз Продактс Эл.Эл.Си.» конкурсным

кредитором открытого акционерного общества

«Качканарский горно-обогатительный комбинат «Ванадий»

Компания с ограниченной ответственностью «Нэксиз Продактс Эл.Эл.Си.» (далее – *Компания* «*Нэксиз Продактс*») зарегистрированная 09.10.1996г. (свидетельство о регистрации № 015720) Департаментом торговли штата Юта, США (отделение кодекса о корпорациях о торговли), имеющая юридический адрес: Сьют 104, 47 Вест 200 Сауф, Солт Лейк Сити, Юта 84101, США; фактический (почтовый) адрес: 119270, г. Москва, Г-270, а/я 588,

направляет Вам документы, свидетельствующие о том, что компания «Нэксиз Продактс» является кредитором ОАО КГОК «Ванадий», а именно:

а) 13 июля 1999 года между компанией «Нэксиз Продактс» и ОАО КГОК «Ванадий» был заключен договор займа № SWER/07-99 (Приложение №1). Согласно условиям договора компания «Нэксиз Продактс» обязались предоставить ОАО КГОК «Ванадий» заем в размере не более 7.000.000=00 (Семь миллионов) долларов США со сроком возврата не позднее 08.01.2000г..



b) Компания «Нэксиз Продактс» исполнила свои обязательства по договору займа, перечислив денежные средства на счет ОАО КГОК «Ванадий» в размере $ 7.000.000=00 (Семь миллионов) долларов США, что подтверждается заявлением на перевод № 6 от 15.07.1999г. (Приложение №2) и письмом АКБ «Московский Деловой Мир» (Исх. № 1388/10в от 11.05.2000г.) о зачислении на валютный счет ОАО КГОК «Ванадий» вышеуказанной суммы займа (Приложение №3).

c) 05.01.2000г. между сторонами был подписан акт сверки взаиморасчетов, согласно которому ОАО КГОК «Ванадий» по состоянию на 31.12.1999г. признавало свою задолженность перед компанией «Нэксиз Продактс» по договору займа № SWER/07-99 от 13.07.1999г. в размере 7.000.000 (Семь миллионов) долларов США (Приложение №4);

d) 06 января 2000 года между компанией «Нэксиз Продактс» и ОАО КГОК «Ванадий» было заключено дополнительное соглашение №1 (Приложение №5), согласно которому ОАО КГОК «Ванадий» признавало задолженность перед компанией «Нэксиз Продактс» в размере 7.000.000=00 (Семь миллионов) долларов США, кроме того, срок возврата займа был продлен до 15.07.2000г.

e) В настоящее время срок возврата займа истек, ОАО КГОК «Ванадий»» денежные средства не возвратило, таким образом компания «Нэксиз Продактс» является кредитором ОАО КГОК «Ванадий», кредиторская задолженность составляет **7.000.000=00 (Семь миллионов) долларов США**, при этом в соответствии с нормами действующего законодательства (ст.4 Федерального закона «О несостоятельности (банкротстве)») требование кредитора компании «Нэксиз Продактс» считается <u>установленным</u>.

Направляя Вам вышеперечисленные документы, компания «Нэксиз Продактс Эл.Эл.Си.», представляющая интересы иностранных инвесторов в Российской Федерации, еще раз заявляет, что наша компания совместно с другими кредиторами ОАО «Качканарский ГОК «Ванадий» выступают против процедуры банкротства и считают, что банкротство комбината является **преднамеренным** и единственной причиной этого стали незаконные действия Козицына А.А., который 28 января 2000г. вооруженным путем захватил комбинат, а затем умышленно и последовательно создавал и увеличивал

A - 1388

неплатежеспособность ОАО «Качканарский ГОК «Ванадий», не предпринимая никаких мер по проведению досудебной санации комбината;

Кроме того, в процессе осуществления процедуры банкротства, Вами как временным управляющим ОАО «Качканарский ГОК «Ванадий», грубо нарушены нормы действующего законодательства, а именно:

- акционерам комбината не была предоставлена возможность проведения досудебной санации предприятия, предусмотренная ст. 26 и 27 Федерального закона «О несостоятельности (банкротстве)»;

- считаем, что составленный и подтвержденный Вами реестр кредиторов ОАО «Качканарский ГОК «Ванадий», основанный на данных актов сверок, подписанных со стороны ОАО КГОК «Ванадий» неуполномоченным лицом - Козицыным А.А. или лицами по доверенностям от него является незаконным, о чем есть соответствующее решение судов, полученное Вами.

- в результате искажения данных реестра кредиторов в комитет кредиторов избраны только представители Козицына А.А. и/или подконтрольных ему фирм, и не вошли представители большей части кредиторов ОАО КГОК «Ванадий», владеющих в совокупности свыше 70 % кредиторской задолженности, чем существенно нарушены их права;

- Вы, как временный управляющий ОАО КГОК «Ванадий», зная о вынесенных судебных решениях, о запрете Козицыну А.А. вести финансово-хозяйственную деятельность и распоряжаться имуществом комбината, тем не менее утвердили недостоверный (ложный) реестр кредиторов;

- наша компания как и большая часть кредиторов ОАО КГОК «Ванадий» не была своевременно извещена о дате проведения первого собрания кредиторов, что привело к грубому нарушению и ущемлению наших прав, как кредиторов ОАО КГОК «Ванадий»;

- 11.08.2000г., в нарушение решения Измайловского суда г. Москвы, Вами незаконно проведено собрание кредиторов ОАО КГОК «Ванадий», что безусловно является нарушением действующего

А - 1389

законодательства Российской Федерации и влечет наступление ответственности по ст. 315 УКРФ;

Учитывая, что в настоящее время по фактам преднамеренного банкротства ОАО «Качканарский ГОК «Ванадий» возбуждено уголовное дело, напоминаем Вам, что в соответствии со ст.61 Федерального закона «О несостоятельности (банкротстве)» Вы, как временный управляющий, обязаны были самостоятельно определить наличие признаков преднамеренного банкротства, а также принять все необходимые меры по обеспечению сохранности имущества должника – ОАО «Качканарский ГОК «Ванадий», однако в нарушение указанных норм не только не выполнили возложенные на Вас обязанности, но и своими действиями способствовали преднамеренному банкротству комбината и введению на нем внешнего управления.

В связи с этим повторно предупреждаем Вас о Вашей ответственности при осуществлении функций внешнего управляющего, а также о том, что каждому Вашему действию в качестве временного и/или внешнего управляющего, будет дана соответствующая оценка в рамках гражданско-правовой и уголовной ответственности, материалы по данным фактам будут переданы в правоохранительные органы и приобщены к материалам уголовного дела по фактам преднамеренного банкротства комбината.

На основании вышеизложенного требуем:

1) По собственной инициативе обратиться с ходатайством в Арбитражный суд Свердловской области о признании недействительным результатов первого собрания кредиторов ОАО КГОК «Ванадий», проведенного 11.08.2000г.

2) Составить заново реестр кредиторов, исключив из него кредиторов, задолженность которых подтверждена актами сверки, подписанными Козицыным А.А. или лицами по доверенности от него (в частности ООО «Предприятие «Лебауг»);

3) Включить требование компании «Нэксиз Продактс» о взыскании в ее пользу с ОАО «Качканарский ГОК «Ванадий» в размере 7.000.000=00 (Семь миллионов) долларов США в реестр кредиторов ОАО КГОК «Ванадий».

НОМЕР ТЕЛЕФОНА:

4) В ближайшее время повторно созвать и провести новое собрание кредиторов, заранее уведомив об этом новых кредиторов, внести в повестку дня данного собрания все вопросы, рассмотренные на собрании кредиторов 11.08.2000г.

О принятых решениях прошу сообщить по следующему адресу: 119270, г. Москва, Г-270, а/я 588.

**Приложения: всего на 6 (шесть) листах, включая:**

1. Договор займа № SWER/07-99 от 13.07.1999г. (нотариально заверенная копия);

2. Заявление на перевод № 6 от 15.07.1999г. (копия, оригинал в АКБ «МДМ»);

3. Письмо АКБ «Московский Деловой Мир» (исх. № 1388/10в от 11.05.2000г.) (нотариально заверенная копия);

4. Акт сверки взаиморасчетов между ОАО «Качканарский ГОК «Ванадий» и компанией «Нэксиз Продактс Эл.Эл.Си.» от 05.01.2000г. (нотариально заверенная копия);

5. Дополнительное соглашение №1 от 06.01.2000г. к договору займа № SWER/07-99 от 13.07.1999г. (нотариально заверенная копия).

С уважением,

Поверенный компании
«Нэксиз Продактс Эл.Эл.Си.»                                                    Г.Г. Жирнов

[stamp reads: "Registered [illegible] 3605-2-1 Moscow 8/20/99]      3605-2-1
                                                                   42-[illegible]

## SUPPLY CONTRACT No. 4

*Moscow*                                                        *July 26, 1999*

    Nexis LLC, hereinafter referred to as Supplier, represented by General Director V.V. Volnov, acting on the basis of the Statutes, party of the first part, and OSC Kachkanar "Vanadiy" GOK, hereinafter referred to as Buyer, represented by General Director D.A. Khaidarov, acting on the basis of the Statutes, party of the second part (jointly referred to as the Parties), have entered into this contract (hereinafter Contract) regarding the following:

### 1. Subject of the Contract

    1.1. Supplier shall supply to Buyer on the terms herein metal products (hereinafter "Goods") according to supplemental agreements to the Contract, and Buyer shall accept and pay for the Goods supplied.

### 2. Cost of Goods and Payment Procedure

    2.1. The price of the Goods shall be accepted on "FCA, Smychka Station, Sverdlovsk Railroad" terms, and shall be set in Russian rubles (hereinafter rubles) per ton.

    2.2. The price and quantity of the Goods shall be specified in supplemental agreements hereto.

    2.3. The total cost of the Goods shall be 360,000,000 (three hundred and sixty million) rubles (+/- 5%) rubles.

    2.4. The price of the Goods shall include packaging and other expenses of Seller (sic) related to supplying the Goods on the terms set forth in par. 2.1.

    2.5. The total cost of the Contract may be amended by the signing of supplemental agreements by the Parties.

    2.6. Settlement of accounts between the Parties shall be in the form of the transfer of funds to Supplier's settlement account, in securities, including, by agreement between the Parties, transfer of promissory notes and drawing up of transfer documents, offsets, and other financial instruments.

    2.7. Buyer shall make payments in installments for each lot of goods in accordance with the supplemental agreements hereto within 40 (forty) banking days from the date the last carload of Goods is supplied pursuant to par. 3.2 hereof.

### 3. Supply Terms and Conditions

    3.1. The Goods shall be supplied in lots from the Nizhnetagilsk Metallurgical Plant (hereinafter – Manufacturer) by railway on "FCA Smychka Station, Sverdlovsk Railroad" terms according to "INCOTERMS 1990."

A - 1392

3.1.1. A lot is the quantity of goods specified in the supplemental agreements hereto.

3.2. The Goods shall be supplied by the dates set forth in the supplemental agreements hereto.

3.3. The supply date of the Goods shall be the date of the dispatch railway station stamp on the rail waybill and/or the date the railway issues a receipt for the last carload of goods.

3.4. Ownership of the Goods shall inure from Supplier to Buyer from the date the Goods are supplied pursuant to par. 3.3. hereof.

## 4. Quality and Quantity of Goods

4.1. The quantity of Goods delivered to Buyer by Supplier shall be the quantity set forth in the rail waybill.

4.2. The quality of the Goods delivered to Buyer by Supplier shall be the quality set forth in the Manufacturer's certificate.

4.3. In the event of a discrepancy in quantity and quality between the Goods received by Buyer and the information contained in the shipping documents, Buyer shall accept the quantity and quality of Goods according to the "Instructions for Accepting Industrial Products and Consumer Goods by Quantity" (No. P-6) and "Instructions for Accepting Industrial Products and Consumer Goods by Quality" (No. P-7), with mandatory notification of Supplier, place the Goods in return storage if they are short or defective, and draw up a corresponding document in Supplier's presence.

## 5. Rights and Responsibilities of the Parties

5.1. In addition to the information required for shipping documents, the Parties shall also set forth in the documents accompanying the Goods the results of quality tests of the Goods or references to quality certification documents.

*5.2. Buyer has the right to:*
- demand that the supplied Goods be delivered to him;
- demand a discount in the price of the Goods or termination of the contract if the Goods are encumbered by third parties;
- demand the missing Goods in the event of a short shipment.

*5.3. Buyer shall:*
- carry out all necessary actions to accept the Goods;
- check the quantity and quality of the accepted Goods and immediately notify Supplier in writing of defects;
- place the delivered Goods in storage if rejecting them. If Supplier does not make arrangements for the Goods by a reasonable deadline, Buyer shall have the right to sell the Goods or return them to Supplier and have the necessary expenses reimbursed;
- pay the price of the Goods set forth in the supplemental agreements hereto.

A - 1393

*5.4. Supplier shall:*

- deliver Goods unencumbered by any third parties unless Buyer agrees to accept encumbered Goods;

- deliver the Goods in the quantity and quality stated herein.

## 6. Liability of the Parties

6.1. A Party which fails to execute or poorly executes its obligations hereunder shall reimburse the other party for the resultant losses.

6.2. For Goods delivered short or late, Supplier shall be fined 0.1% per day of the amount of the late Goods until the obligation is actually fulfilled.

6.3. For non-payment or late payment for the Goods, Buyer shall be fined 0.1% per day of the unpaid or overdue amount until the actual payment is made.

## 7. Dispute Resolution

7.1. All disputes and disagreements shall be resolved by negotiation on the basis of Russian Federation law and business practice.

7.2. If not settled by negotiation, the disputes shall be resolved in court according to Russian Federation law.

## 8. Force Majeure

8.1. The Parties shall not be held liable for failure to perform, in full or in part, under the Contract if the failure was caused by a force majeure event that occurred after the signing of the Contract as a result of an emergency which the parties could not foresee or prevent.

## 9. Final Provisions

9.1. There may be no unilateral refusal to perform or unilateral amendments to the Contract.

9.2. Any amendments or additions hereto shall be valid only if they are in writing and signed by the parties.

9.3. The Contract shall enter into effect when it is signed and remain in force until the Parties have fulfilled their contractual obligations.

9.4. The Contract is made in two copies, one for Buyer and the other for Supplier.

9.5. The Parties shall inform each other of change of address or requisite information, including shipping information. Supplier shall use Receiver's (sic) change of requisite information for shipment of Goods by

A - 1394

the contractual deadline if Supplier is notified of the change by Buyer at least 10 (ten) days prior to shipment.

## 10. Parties' Legal Addresses and Banking Information

*Buyer:*
**OSC Kachkanar "Vanadiy" GOK**
2 Sverdlov St., Kachkanar 624356,
Sverdlov Region
Tax ID No. (INN) 6615001962
Banking Information:
Settlement Account No.
40702810000000003170 at Urals
Reconstruction and Development Bank,
Ekaterinburg
Correspondent Account No.
30101810900000000795, Bank ID Code
(BIK) 046577795

*Supplier:*
Nexis LLC
23/20 B. Molchanovok St., Bldg. 1,
Moscow 121069
Tax ID No. (INN) 770522277
Banking Information:
Settlement Account No.
40702810400020021869 at Moscow
Business World Stock Commercial Bank,
Moscow
Correspondent Account No.
30101810900000000466, Bank ID Code
(BIK) 044525466

## Signatures of the Parties:

**Buyer:**

[signature] [round seal]
**D.A. Khaidarov**

**Supplier:**

[signature] [round seal]
**V.V. Volnov**

A - 1395

**Supplemental Agreement No. 1**
**to Supply Contract No. 4 of July 26, 1999**

Moscow                                                                    **July 26, 1999**

NEXIS LLC, hereinafter referred to as "Supplier", party of the first part, and OSC Kachkanar "Vanadiy" GOK, hereinafter referred to as "Buyer", party of the second part (jointly referred to as the Parties), have executed this Supplemental Agreement No. 1 (hereinafter referred to as "Supplemental Agreement No. 1") to Supply Contract No. 4 of July 26, 1999 (hereinafter referred to as "Contract") regarding the following:

Supplier shall supply Buyer on the contractual terms, and Buyer shall accept and pay for the Goods according to the following specifications:

### GOODS SPECIFICATIONS.

1. Semi-finished steel product, GOST 380-94, TU-14-1-5237-93, for steel 25 – GOST 1050-88.
Surface quality – category 1, TU-14-1-4492-88.
Packaging – 6-ton bundles.
Minimum carload – 60 tons.

| No. | Dimensions, mm | Length, mm | Steel | Quantity, t. |
|-----|----------------|------------|-------|--------------|
| 1 | 120x120 | 11,800(+/-100) | 3 SP/PS | 5,000 |
| 2 | 125x125 | 12,000(+/-100) | 25 | 14,000 |
| 3 | 125x125 | 12,000(+/-100) | 5 SP/PS | 11,000 |
| 4 | 130x130 | 11,700(+/-100) | 0.8 K | 10,000 |
| 5 | 150x150 | 9,000(+/-100) | 3 SP | 15,000 |

The total quantity under the Supplemental Agreement: 55,000 (+/-5%) tons.
2. Price per ton: 3,156 (three thousand one hundred and fifty-six) rubles per ton, including 20% VAT = 526 rubles.
3. Delivery by: August 1999
4. Total cost under Supplemental Agreement No. 1 is 173,580,000 (one hundred and seventy-three million five hundred and eighty thousand) rubles, including 20% VAT = 28,930,000 rubles.
5. Prices valid for this lot only.
6. Supplemental Agreement No. 1 is an integral part of Supply Contract No. 4 of July 26, 1999.

### Signatures of the Parties:

**Buyer:**                                        **Supplier:**

[signature] [round seal]                          [signature] [round seal]
**D.A. Khaidarov**                                **V.V. Volnov**

**Supplemental Agreement No. 4**
**to Supply Contract No. 4 of July 26, 1999**

Moscow                                                    September 30, 1999


NEXIS LLC, hereinafter referred to as "Supplier", party of the first part, and OSC Kachkanar "Vanadiy" GOK, hereinafter referred to as "Buyer", party of the second part (jointly referred to as the Parties), have executed this Supplemental Agreement No. 4 (hereinafter referred to as "Supplemental Agreement No. 4") to Supply Contract No. 4 of July 26, 1999 (hereinafter referred to as "Contract") regarding the following:

Supplier shall supply Buyer on the contractual terms, and Buyer shall accept and pay for the Goods according to the following specifications:

### GOODS SPECIFICATIONS.

1. Semi-finished steel product, GOST 380-94, TU-14-1-5237-93.
Surface quality – category 1, TU-14-1-4492-88.
Packaging – 6-ton bundles.
Minimum carload – 60 tons.

| No. | Dimensions, mm | Length, mm | Steel | Quantity, t. |
|-----|----------------|------------|--------|--------------|
| 1 | 120x120 | 11,800(+/-100) | 3 SP/PS | 5,000 |
| 2 | 130x130 | 8,000(+/-100) | 3 SP/PS | 10,000 |
| 3 | 130x130 | 5,000(+/-100) | 2 SP/PS | 5,000 |
| 4 | 150x150 | 9,500(+/-100) | 3 SP | 10,000 |
| 5 | 130x130 | 11,700(+/-100) | 0.8 K | 5,000 |
| 6 | 125x125 | 12,000(+/-100) | 5 SP/PS | 7,000 |
| 7 | 130x130 | 11,000(+/-100) | 3 SP/PS | 10,000 |
| 8 | 100x100 | 6,000(+/-100) | 3 SP/PS | 8,000 |

The total quantity under the Supplemental Agreement: 60,000 (+/-5%) tons.
2. Price per ton: 3,000.48 (three thousand point forty-eight) rubles per ton, including 20% VAT = 500.08 rubles.
3. Delivery by: October 1999
4. Total cost under Supplemental Agreement No. 4 is 180,028,800 (one hundred and eighty million twenty-eight thousand eight hundred) rubles, including 20% VAT = 30,004,800 rubles.
5. Prices valid for this lot only.
6. Supplemental Agreement No. 4 is an integral part of Supply Contract No. 4 of July 26, 1999.


### Signatures of the Parties:


Buyer:                              Supplier:

[signature] [round seal]                    [signature] [round seal]
**D.A. Khaidarov**                          **V.N. Zimoglyad**

**Addition No. 1 to Supplemental Agreement No. 1
to Supply Contract No. 4 of July 26, 1999**

**Moscow**                                                    **July 30, 1999**

NEXIS LLC, hereinafter referred to as "Supplier", party of the first part, and OSC Kachkanar "Vanadiy" GOK, hereinafter referred to as "Buyer", party of the second part (jointly referred to as the Parties), have executed this Addition No. 1 to Supplemental Agreement No. 1 (hereinafter referred to as "Addition No. 1") to Supply Contract No. 4 of July 26, 1999 (hereinafter referred to as "Contract") regarding the following:

1. Paragraph 1 of Supplemental Agreement No. 1 to the Contract shall read as follows:

"1. Semi-finished steel product, GOST 380-94, TU-14-1-5237-93, for steel 25 – GOST 1050-88.
Surface quality – category 1, TU-14-1-4492-88.
Packaging – 6-ton bundles.
Minimum carload – 60 tons.

| No. | Dimensions, mm | Length, mm | Steel | Quantity, t. |
|-----|----------------|------------|-------|--------------|
| 1 | 120x120 | 11,800(+/-100) | 3 SP/PS | 5,000 |
| 2 | 125x125 | 12,000(+/-100) | 25 | 14,000 |
| 3 | 125x125 | 12,000(+/-100) | 5 SP/PS | 11,000 |
| 4 | 130x130 | 11,700(+/-100) | 0.8 K | 10,000 |
| 5 | 150x150 | 9,000(+/-100) | 3 SP | 5,000 |
| 6 | 130x130 | 8,000(+/-100) | 3 SP/PS | 10,000 |

The total quantity under the Supplemental Agreement: 55,000 (+/-5%) tons"

2. Addition No. 1 is an integral part of Supply Agreement No. 4 of July 26, 1999.

**Signatures of the Parties:**

**Buyer:**                              **Supplier:**

[signature] [round seal]                [signature] [round seal]
**D.A. Khaidarov**                      **V.V. Volnov**

**Supplemental Agreement No. 3**
**to Supply Contract No. 4 of July 26, 1999**

Moscow                                                    August 30, 1999

NEXIS LLC, hereinafter referred to as "Supplier", party of the first part, and OSC Kachkanar "Vanadiy" GOK, hereinafter referred to as "Buyer", party of the second part (jointly referred to as the Parties), have executed this Supplemental Agreement No. 3 (hereinafter referred to as "Supplemental Agreement No. 3") to Supply Contract No. 4 of July 26, 1999 (hereinafter referred to as "Contract") regarding the following:

Supplier shall supply Buyer on the contractual terms, and Buyer shall accept and pay for the Goods according to the following specifications:

### GOODS SPECIFICATIONS.

1. Semi-finished steel product, GOST 380-94, TU-14-1-5237-93.
Surface quality – category 1, TU-14-1-4492-88.
Packaging – 6-ton bundles.
Minimum carload – 60 tons.

| No. | Dimensions, mm | Length, mm | Steel | Quantity, t. |
|-----|----------------|------------|-------|--------------|
| 1 | 125x125 | 12,000(+/-100) | 5 SP/PS | 8,000 |
| 2 | 130x130 | 8,000(+/-100) | 5 SP/PS | 6,000 |
| 3 | 130x130 | 8,000(+/-100) | 4 SP/PS | 4,000 |
| 4 | 100x100 | 8,000(+/-100) | 5 SP/PS | 3,000 |
| 5 | 100x100 | 6,000(+/-100) | 5 SP/PS | 4,000 |
| 6 | 130x130 | 11,700(+/-100) | 0.8 K | 6,000 |

The total quantity under the Supplemental Agreement: 31,000 (+/-5%) tons.
2. Price per ton: 3,171.60 (three thousand one hundred and seventy-one point sixty) rubles per ton, including 20% VAT = 528.60 rubles.
3. Delivery by: September 1999
4. Total cost under Supplemental Agreement No. 3 is 98,319,600 (ninety-eight million three hundred and nineteen thousand six hundred) rubles, including 20% VAT = 16,386,600 rubles.
5. Prices valid for this lot only.
6. Supplemental Agreement No. 3 is an integral part of Supply Contract No. 4 of July 26, 1999.

### Signatures of the Parties:

Buyer:                                        Supplier:

[signature] [round seal]                      [signature] [round seal]
**D.A. Khaidarov**                            **V.N. Zimoglyad**

**Addition No. 2**
**to Supply Contract No. 4 of July 26, 1999**

Moscow                                                     September 20, 1999


NEXIS LLC, hereinafter referred to as "Supplier", party of the first part, and OSC Kachkanar "Vanadiy" GOK, hereinafter referred to as "Buyer", party of the second part (jointly referred to as the Parties), have executed this Addition No. 2 (hereinafter referred to as "Addition No. 2") to Supply Contract No. 4 of July 26, 1999 (hereinafter referred to as "Contract") regarding the following:

1. Beginning September 20, 1999, Buyer shall implement clearing with Supplier under paragraph No. 2.6 of the Contract according to the following banking information: INN No. 0814113973 Poliprom LLC, settlement account 40702810800090000040 at FSCB MDM, Elist, correspondent account 30301810600001680006 at SCB MDM, Moscow, BIK No. 044525466, indicating payment designation re payment (sic) for Nexis LLC for Commission Contract No. 03/N-PRO of 7/9/1999.

2. Addition No. 2 shall enter into effect on the date it is executed and is an integral part of the Contract.

**Buyer:**                          **Supplier:**                *2 copies*

[signature] [round seal]            [signature] [round seal]
**D.A. Khaidarov**                  **V.N. Zimoglyad**

**Addition No. 1**
**to Supply Contract No. 4 of July 26, 1999**

Moscow                                                September 20, 1999


NEXIS LLC, hereinafter referred to as "Supplier", party of the first part, and OSC Kachkanar "Vanadiy" GOK, hereinafter referred to as "Buyer", party of the second part (jointly referred to as the Parties), have executed this Addition No. 1 (hereinafter referred to as "Addition No. 1") to Supply Contract No. 3 (sic) of July 26, 1999 (hereinafter referred to as "Contract") regarding the following:

1. Paragraph 2.6. of the Contract shall read as follows:
"2.6. Settlement between the Parties shall be in the form of the transfer of funds to Supplier's settlement account, or to third party accounts on Supplier's instructions, for which the Parties shall execute an Addition which shall be an integral part of the Contract. Settlement between the Parties shall also be in the form of securities, for which the Parties shall draw up corresponding documents, offsets, and other financial instruments.

2. Addition No. 1 shall enter into effect on the date it is executed and is an integral part of the Contract.

Buyer:                                   Supplier:

[signature] [round seal]                 [signature] [round seal]
**D.A. Khaidarov**                       **V.N. Zimoglyad**

A - 1402

**Supplemental Agreement No. 5**
**to Supply Contract No. 4 of July 26, 1999**

Moscow                                                    October 29, 1999


NEXIS LLC, hereinafter referred to as "Supplier", party of the first part, and OSC Kachkanar "Vanadiy" GOK, hereinafter referred to as "Buyer", party of the second part (jointly referred to as the Parties), have executed this Supplemental Agreement No. 5 (hereinafter referred to as "Supplemental Agreement No. 5") to Supply Contract No. 4 of July 26, 1999 (hereinafter referred to as "Contract") regarding the following:

Supplier shall supply Buyer on the contractual terms, and Buyer shall accept and pay for the Goods according to the following specifications:

### GOODS SPECIFICATIONS.

1. Semi-finished steel product, GOST 380-94, TU-14-1-5237-93.
Surface quality – category 1, TU-14-1-4492-88.
Packaging – 6-ton bundles.
Minimum carload – 60 tons.

| No. | Dimensions, mm | Length, mm | Steel | Quantity, t. |
|-----|----------------|------------|-------|--------------|
| 1 | 100x100 | 11,800(+/-100) | 5 SP/PS | 15,000 |
| 2 | 125x125 | 12,000(+/-100) | Chem. composition:<br>C – 0.16-0.22%<br>Si – 0.25-0.50%<br>Mn – 0.60-0.90%<br>S, P not to exceed 0.04% | 10,000 |
| 3 | 150x150 | 9,500(+/-100) | 3 SP | 10,000 |
| 4 | 130x130 | 5,000(+/-100) | 5 SP/PS | 10,000 |
| 5 | 130x130 | 8,000(+/-100) | 3 SP/PS | 10,000 |

The total quantity under the Supplemental Agreement: 55,000 (+/-5%) tons.
2. Price per ton: 3,171.60 (three thousand one hundred and seventy-one point sixty) rubles per ton, including 20% VAT = 528.60 rubles.
3. Delivery by: November 1999
4. Total cost under Supplemental Agreement No. 5 is 174,438,000 (one hundred and seventy-four million four hundred and thirty-eight thousand) rubles, including 20% VAT = 29,073,000 rubles.
5. Prices valid for this lot only.
6. Supplemental Agreement No. 5 is an integral part of Supply Contract No. 4 of July 26, 1999.

### Signatures of the Parties:

**Buyer:**                                        **Supplier:**

[signature] [round seal]                   [signature] [round seal]
**D.A. Khaidarov**                          **V.N. Zimoglyad**

**Supplemental Agreement No. 6**
**to Supply Contract No. 4 of July 26, 1999**

Moscow                                                    November 30, 1999

NEXIS LLC, hereinafter referred to as "Supplier", party of the first part, and OSC Kachkanar "Vanadiy" GOK, hereinafter referred to as "Buyer", party of the second part (jointly referred to as the Parties), have executed this Supplemental Agreement No. 6 (hereinafter referred to as "Supplemental Agreement No. 6") to Supply Contract No. 4 of July 26, 1999 (hereinafter referred to as "Contract") regarding the following:

Supplier shall supply Buyer on the contractual terms, and Buyer shall accept and pay for the Goods according to the following specifications:

**GOODS SPECIFICATIONS.**

1. Semi-finished steel product, GOST 380-94, TU-14-1-5237-93.
Surface quality – category 1, TU-14-1-4492-88.
Packaging – 6-ton bundles.
Minimum carload – 60 tons.

| No. | Dimensions, mm | Length, mm | Steel | Quantity, t. |
|-----|----------------|------------|-------|--------------|
| 1 | 125x125 | 11,800(+/-100) | 5 SP/PS | 10,000 |
| 2 | 125x125 | 12,000(+/-100) | 3 SP | 5,000 |
| 3 | 140x140 | 12,000(+/-100) | 3 SP/PS | 20,000 |
| 4 | 100x100 | 6,000(+/-100) | 3 SP/PS | 5,000 |
| 5 | 130x130 | 5,000(+/-100) | 2 SP/PS | 5,000 |
| 6 | 130x130 | 8,000(+/-100) | 3 SP/PS | 10,000 |

The total quantity under the Supplemental Agreement – 55,000 (+/-5%) tons.
2. Price per ton – 3,171.60 (three thousand one hundred and seventy-one point sixty) rubles per ton, including 20% VAT = 528.60 rubles.
3. Delivery by: December 1999
4. Total cost under Supplemental Agreement No. 6 is 174,438,000 (one hundred and seventy-four million four hundred and thirty-eight thousand) rubles, including 20% VAT = 29,073,000 rubles.
5. Prices valid for this lot only.
6. Supplemental Agreement No. 6 is an integral part of Supply Contract No. 4 of July 26, 1999.

**Signatures of the Parties:**

Buyer:                                         Supplier:

[signature] [round seal]                      [signature] [round seal]
**D.A. Khaidarov**                            **V.N. Zimoglyad**

**Supplemental Agreement No. 7
to Supply Contract No. 4 of July 26, 1999**

Moscow                                                    **December 30, 1999**

NEXIS LLC, hereinafter referred to as "Supplier", party of the first part, and OSC Kachkanar "Vanadiy" GOK, hereinafter referred to as "Buyer", party of the second part (jointly referred to as the Parties), have executed this Supplemental Agreement No. 7 (hereinafter referred to as "Supplemental Agreement No. 7") to Supply Contract No. 4 of July 26, 1999 (hereinafter referred to as "Contract") regarding the following:

Supplier shall supply Buyer on the contractual terms, and Buyer shall accept and pay for the Goods according to the following specifications:

### GOODS SPECIFICATIONS.

1. Semi-finished steel product, GOST 380-94, TU-14-1-5237-93.
Surface quality – category 1, TU-14-1-4492-88.
Packaging – 6-ton bundles.
Minimum carload – 60 tons.

| No. | Dimensions, mm | Length, mm | Steel | Quantity, t. |
|-----|----------------|------------|-------|--------------|
| 1 | 130x130 | 5,000(+/-100) | 2 SP/PS | 5,000 |
| 2 | 130x130 | 5,000(+/-100) | 5 SP | 5,000 |
| 3 | 120x120 | 9,000(+/-100) | 3 SP/PS | 10,000 |
| 4 | 150x150 | 9,500(+/-100) | 3 SP | 10,000 |
| 5 | 130x130 | 12,000(+/-100) | 3 SP/PS | 25,000 |

The total quantity under the Supplemental Agreement: 55,000 (+/-5%) tons.
2. Price per ton: 3,060 (three thousand and sixty) rubles per ton, including 20% VAT = 510 rubles.
3. Delivery by: January 2000
4. Total cost under Supplemental Agreement No. 7 is 168,300,000 (one hundred and sixty-eight million three hundred thousand) rubles, including 20% VAT = 28,050,000 rubles.
5. Prices valid for this lot only.
6. Supplemental Agreement No. 7 is an integral part of Supply Contract No. 4 of July 26, 1999.

### Signatures of the Parties:

**Buyer:**                                    **Supplier:**

[signature] [round seal]                  [signature] [round seal]
**D.A. Khaidarov**                           **V.N. Zimoglyad**

A - 1407

РЕГИСТРИРОВАНО

3605 - 2 - 1
г. Москва    20.08.99

## ДОГОВОР ПОСТАВКИ № 4

"26" июля 1999 г.

ООО «Нэксиз», именуемое в дальнейшем Поставщик, в лице Генерального директора Вольнова В.В., действующего на основании Устава, с одной стороны, и ОАО «Качканарский ГОК «Ванадий», именуемое в дальнейшем Покупатель, в лице Генерального директора Хайдарова Д.А., действующего на основании Устава, с другой стороны, (вместе по тексту именуются Стороны), заключили настоящий договор (далее Договор) о следующем:

### 1.  Предмет Договора

1.1.  Поставщик обязуется поставить Покупателю на условиях настоящего Договора металлопродукцию (далее по тексту – «Товар») согласно дополнительным соглашениям к настоящему Договору, а Покупатель обязуется принять и оплатить поставленный Товар.

### 2. Стоимость Товара и порядок расчетов

2.1.  Цена Товара принимается  на условиях "FCA, станция Смычка, Свердловской железной дороги", и устанавливается в российских рублях (в дальнейшем рубли) за одну тонну.

2.2.  Цена и количество Товара определяется в дополнительных соглашениях к настоящему Договору.

2.3.  Общая  стоимость Товара составляет 360.000.000 (Триста шестьдесят миллионов) (+/- 5%) рублей.

2.4.  Цена Товара включает стоимость упаковки и прочих расходов Продавца, связанных с доставкой Товара на условиях, указанных в п.2.1.

2.5.  Общая  стоимость Контракта может быть изменена, путем подписания Сторонами дополнительных соглашений.

2.6.  Расчеты между Сторонами производятся путем перечисления денежных средств на расчетный счет Поставщика, ценными бумагами, в том числе по согласованию Сторон путем передачи векселя и составления приемопередаточного акта, зачетом взаимных требований, другими финансовыми инструментами.

2.7.  Оплата производится Покупателем частями за каждую партию товара в соответствии с дополнительными соглашениями к настоящему Договору не позднее 40 (Сорока) банковских дней с даты поставки последнего вагона партии Товара по п.3.2 Договора.

### 3. Условия и сроки поставки

3.1.  Поставка Товара осуществляется партиями с Нижнетагильского металлургического комбината (здесь и далее – Завод-изготовитель) железнодорожным транспортом на условиях "FCA, станция Смычка, Свердловской железной дороги" согласно "ИНКОТЕРМС 1990".

A - 1408

3.1.1. Под партией подразумевается количество товара, определяемое в дополнительных соглашениях к настоящему Договору.

3.2. Поставка Товара по настоящему Договору должна быть произведена в сроки, указанные в дополнительных соглашениях.

3.3. Датой поставки Товара считается дата штемпеля ж.д. станции отправления на ж.д. накладной и/или дата выписки ж.д. квитанции о приеме груза последнего вагона партии товара.

3.4 Право собственности на Товар переходит от Поставщика к Покупателю с даты поставки Товара по п.3.3 Договора

## 4. Качество и количество Товара

4.1. Товар считается переданным Поставщиком Покупателю по количеству согласно количеству, указанному в ж.д. накладной.

4.2. Товар считается переданным Поставщиком Покупателю по качеству согласно качеству, указанному в сертификате завода-изготовителя.

4.3. При приемке Товара Покупателем в случае расхождения данных по количеству и качеству Товара, полученных Покупателем, с данными, содержащимися в отгрузочных документах, приемка Товара по количеству и качеству производится согласно "Инструкции о порядке приемки продукции производственно-технического назначения и Товаров народного потребления по количеству" (№ П-6) и "Инструкции о порядке приемки продукции производственно-технического назначения и Товаров народного потребления по качеству" (№ П-7) с обязательным извещением Поставщика, взятием Товара на ответхранение в случаях недостачи или получения некачественных показателей и составлением в присутствии Поставщика соответствующего акта.

## 5. Права и обязанности Сторон

5.1. Стороны обязуются указывать в документах, сопровождающих Товар, помимо данных, необходимых для отгрузочных документов, также и результаты анализов качества Товара либо ссылки на документы, удостоверяющие надлежащее его качество.

*5.2. Покупатель вправе:*

- требовать передачи ему поставляемых Товаров;

- требовать уменьшения цены Товаров либо расторжения договора, если Товары не свободны от прав третьих лиц;

- требовать при недопоставке передачи недостающих Товаров.

*5.3. Покупатель обязан:*

- совершить все необходимые действия, обеспечивающие принятие Товара;

- проверить количество и качество принятых Товаров и о выявленных недостатках Товаров незамедлительно письменно уведомить Поставщика;

- при отказе от принятия поставленных Товаров обеспечить их сохранность. Если в разумный срок Поставщик не распорядиться Товаром, Покупатель вправе реализовать Товар или возвратить его Поставщику с возмещением необходимых расходов;

- оплатить Товар по цене, предусмотренной дополнительными соглашениями к Договору.

A - 1409

**5.4. Поставщик обязан:**
- передать Товар свободным от любых прав третьих лиц, если только Покупатель не согласился принять Товар, обремененный такими правами;
- передать Товар в количестве и качестве, соответствующий условиям Договора.

## 6. Ответственность сторон

6.1. Сторона, не исполнившая или ненадлежащим образом исполнившая обязательства по Договору, обязана возместить другой стороне причиненные таким неисполнением убытки.

6.2. С Поставщика за недопоставку или просрочку поставки Товара до фактического исполнения обязательства взыскивается неустойка в размере 0,1 % в день от суммы не поставленного в срок Товара.

6.3. С Покупателя за неоплату или несвоевременную оплату Товара до фактической оплаты взыскивается неустойка в размере 0,1 % в день от неоплаченной или несвоевременно оплаченной суммы Товара.

## 7. Разрешение споров

7.1. Все споры и разногласия разрешаются путем переговоров на основе действующего законодательства РФ и обычаев делового оборота.

7.2. При не урегулировании в процессе переговоров спорных вопросов, споры разрешаются в суде в порядке, установленном действующим законодательством РФ.

## 8. Основания освобождения от ответственности

8.1. Стороны освобождаются от ответственности за частичное или полное неисполнение обязательств по Договору, если это неисполнение явилось следствием обстоятельств непреодолимой силы, возникших после заключения Договора в результате обстоятельств чрезвычайного характера, которые стороны не могли предвидеть или предотвратить.

## 9. Заключительные положения

9.1. Односторонний отказ от исполнения Договора или одностороннее его изменение не допускаются.

9.2. Любые изменения и дополнения к Договору действительны при условии, если они совершены в письменной форме и подписаны сторонами.

9.3. Договор вступает в силу с момента его подписания и действует до выполнения Сторонами обязательств по Договору.

9.4. Договор составлен в двух экземплярах, один из которых находится у Покупателя, второй - у Поставщика.

9.5. Стороны обязаны информировать друг друга об изменении адресов и реквизитов, в том числе отгрузочных. Сообщение Покупателя об изменении реквизитов Получателя принимается к исполнению Поставщиком для отгрузки Товара в

A - 1410

установленный Договором срок, если такое сообщение поступит к Поставщику не позднее 10 (десяти) дней до начала поставки.

### 10. Юридические адреса и банковские реквизиты сторон:

*Покупатель:*

**ОАО «Качканарский ГОК «Ванадий»**
624356, г. Качканар, Свердловской
области, ул. Свердлова, 2,
ИНН 6615001962
Банковские реквизиты:
расчетный счет № 40702810000000003170
в КБ «Уральский банк реконструкции
и развития», г. Екатеринбург,
корр. счет № 30101810900000000795,
БИК 046577795

*Поставщик:*

**ООО «Нэксиз»**
121069, г. Москва, ул. Б. Молчановка,
д.23/20 корп.1.,
ИНН 7705222277,
Банковские реквизиты:
расчетный счет № 40702810400020021869
в АКБ «Московский Деловой Мир»,
г. Москва,
корр. счет №30101810900000000466,
БИК 044525466

### Подписи сторон:

Покупатель:                              Поставщик:

Д.А. Хайдаров                            В.В. Вольнов

A - 1411

**Дополнительное соглашение № 1**
**к Договору поставки № 4 от «26» июля 1999 г.**

г. Москва                                                    «26» июля 1999 г.

ООО "НЭКСИЗ", именуемое в дальнейшем «Поставщик», с одной стороны, и ОАО «Качканарский ГОК «Ванадий», именуемое в дальнейшем «Покупатель», с другой стороны (вместе по тексту именуются – Стороны), заключили настоящее Дополнительное соглашение № 1 (далее - «Дополнительное соглашение № 1») к Договору поставки № 4 от «26» июля 1999 г. (далее – «Договор») о нижеследующем:

Поставщик обязуется поставить Покупателю на условиях Договора, а Покупатель обязуется принять и оплатить Товар согласно следующей спецификации:

### СПЕЦИФИКАЦИЯ ТОВАРА.

1. Стальная заготовка, ГОСТ 380-94, ТУ-14-1-5237-93, для стали 25 – ГОСТ 1050-88.
Качество поверхности – 1 категория, ТУ-14-1-4492-88.
Упаковка – связки по 6 тонн.
Минимальная загрузка вагонов -- 60 тонн.

| № п/п | Размер, мм | Длина мерная, мм | Сталь | Количество, т. |
|-------|-----------|------------------|--------|---------------|
| 1 | 120x120 | 11800(+/-100) | 3 СП/ПС | 5 000 |
| 2 | 125x125 | 12000(+/-100) | 25 | 14 000 |
| 3 | 125x125 | 12000(+/-100) | 5 СП/ПС | 11 000 |
| 4 | 130x130 | 11700(+/-100) | 0,8 К | 10 000 |
| 5 | 150x150 | 9000(+/-100) | 3 СП | 15 000 |

Общее количество по Дополнительному соглашению 55 000 (+/- 5%) тонн.
2. Цена за 1 тонну- 3 156 (Три тысячи сто пятьдесят шесть) рублей за тонну, в том числе НДС 20%=526 рублей.
3. Срок поставки: август 1999г.
4. Общая стоимость по Дополнительному соглашению № 1 составляет 173 580 000 (Сто семьдесят три миллиона пятьсот восемьдесят тысяч) рублей, в том числе НДС 20%=28 930 000 руб.
5. Указанные цены действительны только на данную партию Товара.
6. Дополнительное соглашение № 1 является неотъемлемой частью Договора поставки № 4 от «26» июля 1999 г.

### Подписи сторон:

Покупатель:                                    Поставщик:

Д.А. Хайдаров                                  Х.Х.Вагизов

**Дополнительное соглашение № 4**
**к Договору поставки № 4 от «26» июля 1999 г.**

г. Москва                                                                        «30» сентября 1999 г.

ООО "НЭКСИЗ", именуемое в дальнейшем «Поставщик», с одной стороны, и ОАО «Качканарский ГОК «Ванадий», именуемое в дальнейшем «Покупатель», с другой стороны (вместе по тексту именуются – Стороны), заключили настоящее Дополнительное соглашение № 4 (далее - «Дополнительное соглашение № 4») к Договору поставки № 4 от «26» июля 1999 г. (далее – «Договор») о нижеследующем:

Поставщик обязуется поставить Покупателю на условиях Договора, а Покупатель обязуется принять и оплатить Товар согласно следующей спецификации:

**СПЕЦИФИКАЦИЯ ТОВАРА.**

1. Стальная заготовка, ГОСТ 380-94, ТУ-14-1-5237-93.
Качество поверхности – 1 категория, ТУ-14-1-4492-88.
Упаковка – связки по 6 тонн.
Минимальная загрузка вагонов – 60 тонн.

| № п/п | Размер, мм | Длина мерная, мм | Сталь | Количество, т. |
|-------|------------|------------------|-------|----------------|
| 1 | 120х120 | 11800(+/-100) | 3 СП/ПС | 5 000 |
| 2 | 130х130 | 8000(+/-100) | 3 СП/ПС | 10 000 |
| 3 | 130х130 | 5000(+/-100) | 2 СП/ПС | 5 000 |
| 4 | 150х150 | 9500(+/-100) | 3 СП | 10 000 |
| 5 | 130х130 | 11700(+/-100) | 0,8 К | 5 000 |
| 6 | 125х125 | 12000(+/-100) | 5 СП/ПС | 7 000 |
| 7 | 130х130 | 11000(+/-100) | 3 СП/ПС | 10 000 |
| 8 | 100х100 | 6000(+/-100) | 3 СП/ПС | 8 000 |

Общее количество по Дополнительному соглашению 60 000 (+/- 5%) тонн.
2. Цена за 1 тонну- 3 000.48 (Три тысячи целых сорок восемь сотых) рубля за тонну, в том числе НДС 20%=500,08 рублей.
3. Срок поставки: октябрь 1999г.
4. Общая стоимость по Дополнительному соглашению № 4 составляет 180 028 800 (Сто восемьдесят миллионов двадцать восемь тысяч восемьсот) рублей, в том числе НДС 20%=30 004 800 руб.
5. Указанные цены действительны только на данную партию Товара.
6. Дополнительное соглашение № 4 является неотъемлемой частью Договора поставки № 4 от «26» июля 1999 г.

**Подписи сторон:**

Покупатель:                                                        Поставщик:



Д.А. Хайдаров                                                      Зимогляд

Дополнительное соглашение № 4 к Договору поставки № 4 от 26.07.99 г.

A - 1414

**Дополнение № 1 к Дополнительному соглашению № 1
к Договору поставки № 4 от «26» июля 1999 г.**

г. Москва                                                                «30» июля 1999 г.

ООО "НЭКСИЗ", именуемое в дальнейшем «Поставщик», с одной стороны, и ОАО «Качканарский ГОК «Ванадий», именуемое в дальнейшем «Покупатель», с другой стороны (вместе по тексту именуются – Стороны), заключили настоящее Дополнение № 1 к Дополнительному соглашению № 1 (далее - «Дополнение № 1») к Договору поставки № 4 от «26» июля 1999 г. (далее – «Договор») о нижеследующем:

1. Пункт 1 Дополнительного соглашения № 1 к Договору следует читать в следующей редакции:

«1. Стальная заготовка, ГОСТ 380-94, ТУ-14-1-5237-93, для стали 25 – ГОСТ 1050-88.
Качество поверхности – 1 категория, ТУ-14-1-4492-88.
Упаковка – связки по 6 тонн.
Минимальная загрузка вагонов – 60 тонн.

| № п/п | Размер, мм | Длина мерная, мм | Сталь | Количество, т. |
|-------|-----------|-----------------|--------|---------------|
| 1 | 120х120 | 11800(+/-100) | 3 СП/ПС | 5 000 |
| 2 | 125х125 | 12000(+/-100) | 25 | 14 000 |
| 3 | 125х125 | 12000(+/-100) | 5 СП/ПС | 11 000 |
| 4 | 130х130 | 11700(+/-100) | 0,8 К | 10 000 |
| 5 | 150х150 | 9000(+/-100) | 3 СП | 5 000 |
| 6 | 130х130 | 8000(+/-100) | 3 СП/ПС | 10 000 |

Общее количество по Дополнительному соглашению 55 000 (+/- 5%) тонн.»

2. Дополнение № 1 является неотъемлемой частью Договора поставки № 4 от «26» июля 1999 г.

**Подписи сторон:**

Покупатель:                                                  Поставщик:

Д.А. Хайдаров                                              Е.А. Волков

Дополнение № 1 к Дополнительному соглашению № 1 к Договору поставки № 4 от 26.07.99 г.

A - 1416