**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

```
----------------------------------------------------------------x
```
DAVIS INTERNATIONAL, LLC, HOLDEX,       :
LLC, FOSTON MANAGEMENT, LTD, and        :
OMNI TRUSTHOUSE, LTD,                    :
                                        :
                    Plaintiffs,         :
                                        :
        v.                              :       Case No. 04-1482-GMS
                                        :
NEW START GROUP CORP., VENITOM          :
CORP., PAN-AMERICAN CORP., MDM          :
BANK, URAL-GORNO METALURAGICAL          :
COMPANY, EVRAZ HOLDING, MIKHAIL         :
CHERNOI, OLEG DERIPASKA, ARNOLD         :
KISLIN, MIKHAIL NEKRICH, and            :
ISKANDER MAKMUDOV,                      :
                                        :
                    Defendants.         :
```
----------------------------------------------------------------x
```

# APPENDIX TO DEFENDANTS'
# OPENING BRIEFS IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

## Volume 9 of 13

Attorneys for Defendant Arnold Kislin:

Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

Lisa C. Cohen
Schindler Cohen & Hochman LLP
100 Wall Street
15th Floor
New York, NY 10005
(212) 277-6300

Lawrence S. Goldman
Elizabeth Johnson
The Law Offices of Lawrence S. Goldman
500 Fifth Ave., 29th Floor
New York NY 10110-2900
(212) 997-7499

Attorneys for Defendants New Start Group
Corp. and Venitom Group:

Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

Richard J. Schaeffer
Peter J. Venaglia
Laura D. Sullivan
Dornbush, Schaeffer, Strongin &
Weinstein, LLP
747 Third Avenue, 11th Floor
New York, NY 10017
(212) 759-3300

Attorneys for Defendant Oleg Deripaska:

Collins J. Seitz, Jr.(DSBA No. 2237)
Kevin F. Brady (DSBA No. 2248)
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

Rodney F. Page
Michael G. Biggers
Bryan Cave LLP
700 13th Street, N.W.
Washington, D.C. 20005-3960
(202) 508-6002

Attorneys for Defendant Evraz Holding:

William M. Lafferty (DSBA No. 2755)
Morris, Nichols, Arsht & Tunnell
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 575-7341

David H. Herrington
Vitali Rosenfeld
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York New York 10006
(212) 225-2266

Attorneys for Defendant MDM Bank:

Stephen E. Jenkins (DSBA No. 2152)
Richard I.G. Jones, Jr. (DSBA No. 3301)
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

Joel B. Kleinman
Steven J. Roman
David H. Greenberg
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street NW
Washington, DC 20037-1526
(202) 785-9700

Attorneys for Defendant Ural-Gorno
Metallurgical Company:

Charles M. Oberly, III (DSBA No. 743)     William H. Devaney
Karen V. Sullivan (DSBA No. 3872)         Heard & O'Toole LLP
Oberly, Jennings & Rhodunda, P.A.         405 Lexington Ave, Floor 62
800 Delaware Avenue, Suite 901            New York, NY 10174
PO Box 2054                               (212) 307-5500
Wilmington, DE 19899
(302) 576-2000

Attorneys for Defendant Iskander
Makmudov:

Charles M. Oberly, III (DSBA No. 743)     William H. Devaney
Karen V. Sullivan (DSBA No. 3872)         Heard & O'Toole LLP
Oberly, Jennings & Rhodunda, P.A.         405 Lexington Ave, Floor 62
800 Delaware Avenue, Suite 901            New York, NY 10174
PO Box 2054                               (212) 307-5500
Wilmington, DE 19899
(302) 576-2000

Attorneys for Defendant Mikhail Chernoi:

Charles M. Oberly, III (DSBA No. 743)     Brian Maas
Karen V. Sullivan (DSBA No. 3872)         Cameron Myler
Oberly, Jennings & Rhodunda, P.A.         Frankfurt Kurnit Klein & Selz PC
800 Delaware Avenue, Suite 901            488 Madison Avenue, 9th Floor
PO Box 2054                               New York, NY 10022
Wilmington, DE 19899                      (212) 980-0120
(302) 576-2000

Attorneys for Defendant Mikhail Nekrich:

Charles M. Oberly, III (DSBA No. 743)     Paul R. Grand
Karen V. Sullivan (DSBA No. 3872)         Edward M. Spiro
Oberly, Jennings & Rhodunda, P.A.         Morvillo, Abramowitz, Grand, Iason &
800 Delaware Avenue, Suite 901            Silberberg, P.C.
PO Box 2054                               565 Fifth Avenue
Wilmington, DE 19899                      New York, NY 10017
(302) 576-2000                            (212) 880-9510

# Table of Contents

| **DOCUMENT** | **PAGE** |
|---|---|
| **VOLUME 1 OF 13:** | |
| Complaint | A-1 |
| *Base Metal Trading v. Russian Alum.*, 253 F. Supp. 2d 681 (S.D.N.Y. 2003) ("*Base Metal Trading*") | A-31 |
| Transcript of Oral Argument before Hon. John G. Koeltl, dated February 10, 2003, in *Base Metal Trading* | A-64 |
| **VOLUME 2 OF 13:** | |
| First Amended Complaint, dated August 3, 2001, filed in *Base Metal Trading* | A-176 |
| **VOLUME 3 OF 13:** | |
| Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss the Amended Complaint, dated September 15, 2002, filed in *Base Metal Trading* | A-295 |
| **VOLUME 4 OF 13:** | |
| Resume of Paul B. Stephan | A-465 |
| List of Paul B. Stephan's "Participation in U.S. Lawsuits" | A-476 |
| Declaration of Paul B. Stephan, dated January 28, 2002, filed in *Base Metal Trading* | A-479 |
| Reply Declaration of Paul B. Stephan, dated October 17, 2002, filed in *Base Metal Trading* | A-514 |
| Complaint filed in *Norex Petroleum Ltd. v. Access Indus.* (LTS) (S.D.N.Y.) | A-535 |
| *Norex Petroleum Ltd. v. Access Indus.*, 304 F. Supp. 2d 570 (S.D.N.Y. 2004) | A-607 |
| Judge Koeltl's written request for submissions prior to oral argument, dated January 29, 2003 | A-622 |
| Defendants' response to Judge Koeltl's Jan. 29th request ("Defendants' Oral Argument Submissions") | A-624 |
| Chronology of GOK-related Russian court decisions | A-625 |
| Map – location of courts | A-651 |
| Chart of Russian Court Decisions | A-652 |

| | |
|---|---|
| **VOLUME 5 OF 13:** | |
| Plaintiffs' response to Judge Koeltl's Jan. 29th request ("Plaintiffs' Oral Argument Submissions") | A-653 |
|    GOK Bankruptcy Litigation Chart | A-654 |
|    Shareholder Litigation Chart | A-660 |
|    Chart – Kozitsin and Kozyrev "Wrongful Conduct" | A-668 |
|    Chart – "Direct Evidence of Corruption" | A-677 |
|    Sergei Zankovsky: Theory and Practice of Bankruptcy | A-684 |
| Defendants' post-oral argument submissions in *Base Metal Trading*, dated February 20, 2003 | A-687 |
|    Letter from Winston & Strawn, dated February 20, 2003 | A-688 |
|    Letter from Hogan & Hartson, dated February 20, 2003 | A-690 |
|    Letter from Dornbush Mensch Mandelstam & Schaeffer, dated February 20, 2003 | A-695 |
|    Defendants' Summary of Contracts | A-698 |
|    Supplemental Declaration of Paul B. Stephan, dated Feb. 19, 2003 | A-705 |
|    Third Declaration of Igor Petrukhin, dated Feb. 20, 2003 | A-713 |
| Plaintiffs' post-oral argument submissions in *Base Metal Trading*, dated February 20, 2003 | A-744 |
|    Letter from Strook Stroock & Lavan, dated February 20, 2003 (with exhibits) | A-745 |
|    Second Declaration and Exhibits of Joseph Traum, dated February 19, 2003 | A-782 |
|    Expert Report of Sergei B. Zaitsev, dated February 19, 2003 (without exhibits) | A-828 |
| **VOLUME 6 OF 13:** | |
| Defendants' post-oral argument submissions in *Base Metal Trading*, dated February 25, 2003 | A-885 |
|    Letter from Winston & Strawn, dated February 25, 2003 (with exhibits) | A-886 |
|    Supplemental Declaration of Paul B. Stephan, dated February 25, 2003 | A-933 |
| Plaintiffs' post-oral argument submissions in *Base Metal Trading*, dated February 25, 2003 | A-941 |

| | |
|---|---|
| Letter from Strook Stroock & Lavan, dated February 25, 2003 (with exhibits) | A-942 |
| Letter from Herrick Feinstein, dated February 25, 2003 | A-986 |
| Second Declaration of Victor Golubev, dated February 25, 2003 (without exhibits) | A-989 |
| Second Declaration of Sergei B. Zaitsev, dated February 25, 2003 (without exhibits) | A-1027 |
| **VOLUME 7 OF 13:** | |
| March 30, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1075 |
| August 22, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1080 |
| April 19, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1092 |
| Application to the Arbitrazh Court for the Sverdlovsk Oblast dated March 24, 2000 filed by Krasnouralskmezhraygaz ("Kras Gas") | A-1112 |
| January 24, 1997 contract between GOK and Kras Gas | A-1130 |
| Letter dated February 4, 2000 from Kras Gas to GOK | A-1146 |
| Letter dated February 15, 2000 from Kras Gas to GOK | A-1157 |
| Letter dated February 8, 2000 from GOK to Kras Gas | A-1170 |
| Letter dated February 21, 2000 from GOK to Kras Gas | A-1175 |
| Federal Service's recommendation to appoint Kozyrev as Interim Trustee | A-1180 |
| Instruction of the Government of the Russian Federation from July 10, 1999 (No. 1100-R) | A-1187 |
| Audit Report and list of GOK's creditors as of March 24, 2000 | A-1191 |
| Minutes of the first GOK creditors' meeting held on August 11, 2000 | A-1245 |
| August 2, 2000 decision of the Izmailovo Inter-Municipal Court of Moscow | A-1266 |
| November 30, 2000 decision of the Moscow City Court | A-1269 |
| **VOLUME 8 OF 13:** | |
| Nexis' appellate complaint | A-1276 |
| January 15, 2001 determination of the Appellate Instance of the Arbitrazh Court for the Sverdlovsk Oblast | A-1306 |
| Nexis' cassation complaint | A-1311 |
| June 7, 2001 decision of the Federal Arbitrazh Court for the Urals Circuit | A-1318 |

| Minutes of the March 11, 2001 creditors' meeting | A-1323 |
|---|---|
| June 27, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1357 |
| August 21, 2001 decision of the Federal Arbitrazh Court for the Urals Circuit | A-1365 |
| August 18, 2000 opinion of the Federal Service | A-1367 |
| August 29, 2000 Nexis petition regarding loan agreement | A-1382 |
| July 26, 1999 supply contract between Nexis and GOK | A-1392 |
| August 29, 2000 Application filed by Nexis regarding supply contract | A-1424 |
| October 4, 2000 letter to Nexis from Trustee Kozyrev | A-1442 |
| March 23, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1445 |
| August 29, 2000 Statement of Claim submitted by Polyprom | A-1452 |
| **VOLUME 9 OF 13:** | |
| Supply agreements between GOK and Polyprom | A-1479 |
| October 4, 2000 letter to Polyprom from Trustee Kozyrev | A-1579 |
| October 31, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1583 |
| February 16, 2001 letter from Trustee Kozyrev to the Arbitrazh Court for the Sverdlovsk Oblast | A-1588 |
| February 19, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1591 |
| April 19, 2001 Resolution of the Appellate Instance of the Arbitrazh Court for the Sverdlovsk Oblast | A-1598 |
| July 12, 2001 determination of the Federal Arbitrazh Court of the Urals District | A-1607 |
| April 18, 2001 decision of the Arbitrazh Court for Sverdlovsk Oblast | A-1613 |
| January 22, 2000 letter from several members of GOK Board of Directors requesting meeting of GOK Board | A-1620 |
| January 24, 2000 letter from several members of GOK Board of Directors requesting meeting of GOK Board | A-1623 |
| February 2, 2000 "Decision Not To Institute Legal Proceedings" of the Senior Assistant Prosecutor for the City of Kachkanar | A-1628 |
| February 1, 2000 ruling of the Kachkanar City Court for the Sverdlovsk Oblast | A-1635 |
| February 15, 2000 decision of the Arbitrazh Court for the Sverdlovsk | A-1649 |

| | |
|---|---|
| Oblast | |
| March 8, 2001 decision by the Moscow City Court | A-1657 |
| September 19, 2000 decision of the Meshchansky Inter-Municipal Regional Court of Moscow | A-1667 |
| **VOLUME 10 OF 13:** | |
| March 26, 2001 decision of the Moscow City Court | A-1676 |
| November 21, 2000 decision of the Tverskoy Inter-Municipal Regional Court of Moscow | A-1683 |
| February 22, 2001 decision of the Appellate Instance of the Federal Arbitrazh Court of Moscow | A-1691 |
| November 16, 2000 decision of the Arbitrazh Court of Moscow | A-1698 |
| April 26, 2001 decision of the Federal Arbitrazh Court of the Moscow Circuit | A-1706 |
| December 13, 2000 decision of the Perovsky Inter-Municipal Regional Court of Moscow | A-1712 |
| Davis Complaint filed in Moscow before the Gagarinsky Inter-Municipal Court of Moscow | A-1728 |
| April 10, 2000 decision of the Perovsky Inter-Municipal Regional Court of Moscow | A-1737 |
| September 25, 2000 decision of the Perovsky Inter-Municipal Regional Court of Moscow | A-1747 |
| October 26, 2000 decision of the Moscow City Court | A-1752 |
| September 17, 2001 decision of the Gagarinsky Inter-Municipal Court of Moscow | A-1758 |
| May 30, 2000 decision of the Tverskoy Inter-Municipal Regional Court | A-1761 |
| February 7, 2000 decision of the Tverskoy Inter-Municipal Court of Moscow | A-1765 |
| December 22, 2000 decision of the Gagarinsky Inter-Municipal Court of Moscow | A-1768 |
| February 14, 2000 decsion of the Cheryomoushkinsky Inter-Municipal Court of Moscow | A-1774 |
| March 2, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1779 |
| September 4, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1784 |
| August 14, 2000, decision of the Kachkanar City Court of the Sverdlovsk Oblast | A-1790 |

- 5 -

| | |
|---|---|
| February 15, 2000 decision of the Kachkanar City Court | A-1797 |
| February 29, 2000 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-1801 |
| March 6, 2001 decision of the Moscow City Court | A-1806 |
| April 5, 2000 decision of the Meshchansky Inter-Municipal Regional Court of Moscow | A-1814 |
| June 22, 2001 decision of the Tverskoy Inter-Municipal Regional Court of Moscow | A-1827 |
| Two Notices of registrar change published in the *Oblastnaya gazeta* on, respectively, March 17, 2000 and October 21, 2000 | A-1832 |
| March 20, 2001 decision by the Arbitrazh Court of Moscow | A-1839 |
| June 26, 2001 decision of Appellate Instance of the Arbitrazh Court of Moscow | A-1846 |
| **VOLUME 11 OF 13:** | |
| September 5, 2001 decision of the Federal Arbitrazh court of the Moscow Circuit | A-1852 |
| December 20, 2000 decision of the Petrogradsky Regional Court of St. Petersburg | A-1859 |
| January 12, 2001 decision of the Petrogradsky Regional Court of St. Petersburg | A-1864 |
| March 13, 2001 decision of Izmailovsky Regional Court of Moscow | A-1871 |
| March 13, 2001 decision of Izmailovsky Regional Court of Moscow | A-1874 |
| August 27, 2001 decision of the Chertanovo Federal Court | A-1877 |
| Agreement between GOK and Polyprom dated January 18, 1999 | A-1880 |
| November 22, 2000 decision of the Arbitrazh Court of the Republic of Kalmykia | A-1884 |
| April 17, 2001 decision of the Arbitrazh Court for the North Caucasus Region | A-1895 |
| July 5, 2001 decision of the Arbitrazh Court for the Republic of Kalmykia | A-1904 |
| November 9, 2001 decision of the Appellate Instance of the Arbitrazh Court for the Republic of Kalmykia | A-1910 |
| September 10, 2001 decision of the Arbitrazh Court for the Republic of Kalmykia | A-1919 |
| August 1, 2000 decision of the Arbitrazh Court for the Chelyabinsk Region | A-1924 |

| | |
|---|---|
| October 16, 2000 decision of the Appellate Instance for the Arbitrazh Court for the Chelyabinsk Region | A-1942 |
| January 4, 2001 decision of the Arbitrazh Court for Urals Circuit | A-1952 |
| September 29, 2000 decision of the Solntsevsky Inter-Municipal Regional Court of Moscow | A-1960 |
| March 30, 2001 decision of the Moscow City Court | A-1970 |
| November 30, 2001 decision of the Solntsevsky Inter-Municipal Regional Court of Moscow | A-1980 |
| Agreement between New Start Group, Corp. and Davis dated October 6, 2000 | A-1995 |
| Eugene Aschenbrenner's Power of Attorney to act on behalf of Davis (valid December 3, 1999 through December 3, 2000) | A-2002 |
| Nexis Loan Agreement dated July 13, 1999 | A-2010 |
| March 23, 2001 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2020 |
| July 13, 2000 decision of the Meshchansky Inter-Municipal Regional Court of Moscow | A-2027 |
| Republic of Panama v. BCCI Holdings (Luxemburg) S.A., 90-2913-CV-UUB, slip.op. (S.D. Fla. July 17, 1995) | A-2033 |
| **VOLUME 12 OF 13** | |
| October 29, 2001 decision of the Federal Arbitrazh Court for the Urals Circuit | A-2053 |
| November 24, 2001 Opinion of the Department of the Interior of the Sverdlovsk Region | A-2060 |
| January 21, 2002 decision of the Federal Arbitrazh Court for the North Caucasus Circuit | A-2084 |
| March 12, 2002 decision of the Arbitrazh Court for the Republic of Kalmykia | A-2094 |
| April 23, 2002 decision of the Federal Arbitrazh Court for the North Caucasus Circuit | A-2105 |
| April 30, 2002 decision of the Kachkanar Town Court for the Sverdlovsk Oblast | A-2108 |
| September 24, 2002 decision of the Kachkanar Town Court for the Sverdlovsk Oblast | A-2121 |
| November 19, 2002 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2126 |

| | |
|---|---|
| January 22, 2003 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2133 |
| February 4, 2003 decision of the Appellate Instance for the Arbitrazh Court for the Republic of Kalmykia | A-2143 |
| May 20, 2003 decision of the Federal Arbitrazh Court for the North Caucasus Region | A-2150 |
| May 27, 2003 decision of the Appellate Instance of the Arbitrazh Court for the Sverdlovsk Oblast | A-2159 |
| August 27, 2003 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2165 |
| October 30, 2003 decision of the Moscow Municipal Court | A-2170 |
| January 14, 2004 decision of the Federal Arbitrazh Court for the Urals Circuit | A-2176 |
| April 20, 2004 decision of the Arbitrazh Court for the Sverdlovsk Oblast | A-2187 |
| **VOLUME 13 OF 13** | |
| April 27, 2004 decision of the Arbitrazh Court for the Republic of Kalmykia | A-2197 |
| July 2, 2004 decision of the Moscow City Court | A-2205 |
| July 29, 2004 decision of the Federal Arbitrazh Court for the Urals Circuit | A-2212 |
| December 7, 2004 decision of the Moscow City Court | A-2221 |
| September 18, 2001 decision of the Sverdlovsk Arbitrazh Court | A-2224 |
| December 20, 2001 decision of the Urals Circuit | A-2238 |
| May 22, 2002 decision of the Moscow City Court | A-2246 |
| August 22, 2002 decision of the Moscow City Court | A-2256 |
| September 10, 2002 decision of the Kalmykia Court | A-2269 |
| May 22, 2003 decision of the Sverdlovsk Arbitrazh Court | A-2277 |
| August 13, 2003 decision of the Solntsevsky Court | A-2283 |
| March 3, 2004 decision of the Sverdlovsk Arbitrazh Court | A-2289 |
| March 31, 2004 report issued by Russian Ministry of Internal Affairs | A-2294 |
| Declaration of Tatiana Yastrebova, dated September 16, 2002, filed in *Base Metal Trading* (without exhibits) | A-2314 |
| July 2, 2002 decision of the North Caucasus Circuit | A-2344 |

### SUPPLY CONTRACT No. S-02/M-99

*City of Elista*                                                                 *October 18, 1999*

Poliprom LLC, hereinafter referred to as the Supplier, represented by its General Director G.M. Bukharin, acting on the basis of the Charter, and Vanadiy Mining Enrichment Plant of Kachkanar OJSC, hereinafter referred to as the Purchaser, represented by its General Director D.A. Khaydarov, acting on the basis of the Charter (hereinafter together referred to as the Parties), enter into this contract (hereinafter the Contract) as follows:

### 1. Subject of the Contract

1.1. The Supplier agrees to supply to the Purchaser under the terms of this Contract metal products (hereinafter the "Goods") in accordance with supplemental agreements to this Contract, and the Purchaser agrees to accept and pay for the supplied Goods.

### 2. Cost of the Goods and Method of Payment

2.1. The price of the Goods shall be determined on terms FCA, Serov-Zavodskiy Station, Sverdlovsk Railroad, and shall be set in Russian rubles (hereinafter rubles) per ton.

2.2. The price and quantity of the Goods shall be determined in supplemental agreements to this Contract.

2.3. The total cost of the Goods shall be 8,514,375 (eight million five hundred fourteen thousand three hundred seventy-five) (+/- 5%) rubles, including 20% VAT – 1,419,062.50 rubles.

2.4. The price of the Goods shall include the cost of packaging and other expenses of the Seller related to the delivery of the Goods on the terms indicated in section 2.1.

2.5. The total cost of the Contract may be changed by supplemental agreements signed by the Parties.

2.6. Payments between the Parties shall be made by transfer of funds to the current account of the Supplier, or in securities, including by agreement of the Parties by delivery of a promissory note and preparation of a statement of acceptance and transfer, or by offset of mutual claims, or by other financial instruments in accordance with current law of the Russian Federation.

2.7. Payment shall be made by the Purchaser in installments for each shipment of Goods in accordance with supplemental agreements to this Contract no later than 60 (sixty) banking days from the date of delivery of the last car of the shipment of Goods under section 3.3 of the Contract.

### 3. Terms and Time of Delivery

3.1. Delivery of the Goods shall be made in shipments from the Serov Metallurgical Plant (hereinafter the Manufacturing Plant) by railroad

Supply contract No. S-02/M-99, dated October 18, 1999 with Vanadiy Mining Enrichment Plant of Kachkanar

transport on terms FCA, Serov-Zavodskiy Station, Sverdlovsk Railroad pursuant to INCOTERMS 1990.

3.1.1. A shipment shall be defined as the quantity of goods determined in supplemental agreements to this Contract.

3.2. Delivery of Goods under this Contract shall be made at the times indicated in the supplemental agreements.

3.3. The date of delivery of Goods shall be considered the date of the stamp at the railroad station of origin on the railroad waybill and/or the date of issue of the railroad receipt of acceptance of the cargo for the last car of the shipment.

3.4. Title to the Goods shall be transferred from the Supplier to the Purchaser as of the date of delivery of the Goods under section 3.3 of the Contract.

### 4. Quality and Quantity of Goods

4.1. The quantity of Goods transferred by the Supplier to the Purchaser shall be considered the quantity indicated in the railroad waybill.

4.2. The quality of Goods transferred by the Supplier to the Purchaser shall be considered the quality indicated in the certificate of the Manufacturing Plant.

4.3. Upon acceptance of the Goods by the Purchaser, in the event of a discrepancy between the data on the quantity and quality of the Goods received by the Purchaser and the data in the shipping documents, the acceptance of the Goods according to quantity and quality pursuant to the Instruction on the Manner of Acceptance of Manufacturing and Technical Products and Consumer Goods according to Quantity (No. P-6) and the Instruction on the Manner of Acceptance of Manufacturing and Technical Products and Consumer Goods according to Quality (No. P-7), with mandatory notice to the Supplier, and the Goods shall be taken under secure storage in the case of shortage or receipt of indicators of poor quality, with a statement to that effect prepared in the presence of the Supplier.

### 5. Rights and Duties of the Parties

5.1. The Parties agree to indicate in the documents accompanying the Goods, in addition to the data required for shipment documents, the results of analysis of the quality of the Goods or a reference to documents attesting to their proper quality.

5.2. *The Purchaser shall have the right:*

-- to demand that delivered Goods be transferred to the Purchaser;

-- to demand a reduction in price or the termination of the contract if the Goods are not free of rights of third parties;

-- to demand delivery of deficient Goods in the event of incomplete delivery.

5.3. *The Purchaser shall be obligated:*

-- to perform all necessary actions to provide for acceptance of the Goods;

-- to verify the quantity and quality of accepted Goods and to give immediate written notice of any deficiencies to the Supplier;

-- upon refusal to accept delivered Goods, to provide for their safekeeping. If the Supplier does not dispose of the Goods in a reasonable time, the Purchaser shall have the right to sell the Goods or return

Supply contract No. S-02/M-99, dated October 18, 1999 with Vanadiy Mining Enrichment Plant of Kachkanar

A - 1480

them to the Supplier and receive reimbursement of necessary expenses;

— to pay for the Goods at the price prescribed by supplemental agreements to the Contract.

5.4. *The Supplier shall be obligated:*

-- to transfer the Goods free from of any rights of third parties, unless the Purchaser has agreed to accept Goods encumbered by such rights;

-- to transfer the Goods in the quantity and quality required by the terms of the Contract.

## 6. Liability of the Parties

6.1. A Party that fails to perform or improperly performs it obligations under the Contract shall be obligated to compensate the other Party for losses caused by such failure to perform.

6.2. The Supplier shall pay a penalty for failure to deliver or late delivery of Goods in the amount of 0.1% of the amount of Goods not delivered on time, per day until actual performance of the obligation.

6.3. The Purchaser shall pay a penalty for failure to pay or late payment for Goods in the amount of 0.1% of the amount of Goods not paid or paid late, per day until actual payment.

## 7. Dispute Resolution

7.1. All disputes and disagreements shall be resolved by negotiation on the basis of current law of the RF and business customs.

7.2. Disputes not resolved in the process of negotiation shall be resolved in court in the manner established by current law of the RF.

## 8. Grounds for Release from Liability

8.1. The Parties shall be released from liability for partial or full non-performance of their obligations under the Contract if such non-performance was the consequence of circumstances beyond their control that arose after the signing of the Contract as a result of circumstances of an extraordinary nature that the Parties could neither foresee nor prevent.

## 9. Final Provisions

9.1. Unilateral refusal to perform the Contract or unilateral modification of the Contract shall not be permitted.

9.2. Any modifications or additions to the Contract shall be valid if they are made in written form and signed by the parties.

9.3. The Contract shall take effect upon signing and remain in effect until January 15, 2000, except that with respect to payments the Contract shall remain in effect until full performance of obligations.

Supply contract No. S-02/M-99, dated October 18, 1999 with Vanadiy Mining Enrichment Plant of Kachkanar

9.4. The Contract is made in two originals, one of which shall be retained by the Purchaser and one by the Supplier.

9.5. The Parties shall be obligated to inform each other of changes in their addresses or requisites, including their shipping requisites. Notice by the Purchaser of a change in the Purchaser's requisites shall be mandatory for the Supplier for shipment of Goods at the time set by the Contract if such notice is received by the Supplier no later than 10 (ten) days before the beginning of the delivery.

## 10. Legal Addresses and Bank Requisites of the Parties:

**Purchaser:**
**Vanadiy Mining Enrichment Plant OJSC**
Taxpayer ID No. 6615001962
2 Sverdlov St., Kachkanar
Sverdlovsk Oblast 624356
Bank requisites:
current account No. 40702810000000003170
Ural Bank for Reconstruction and Development
City of Yekaterinburg
correspondent account No. 30101810900000000795
BIK 046577795

**Supplier:**
**Poliprom LLC**
Taxpayer ID No. 0814113973
249 Lenin St., Room 505
Elista, Republic of Kalmykia 358000, RF
Bank requisites:
current account No. 40702810800090000040
Branch of Moskovskiy Delovoy Mir
Joint Stock Commercial Bank, City of Elista
correspondent account No. 30101810900000000466,
correspondent account No. 30301810600011680006
Moskovskiy Delovoy Mir Joint Stock Commercial
Bank
BIK 044525466

## Signatures of the Parties:

**Purchaser:**

[signature]

D.A. Khaydarov

[round stamp: Vanadiy Mining Enrichment Plant
of Kachkanar, Open Joint Stock Company; City
of Kachkanar]

**Supplier:**

[signature]

G.M. Bukharin

[round stamp: Poliprom Limited Liability Company,
City of Elista, Republic of Kalmykia, Russian Federation]

Supply contract No. S-02/M-99, dated October 18, 1999 with Vanadiy Mining Enrichment Plant of Kachkanar

### SUPPLEMENTAL AGREEMENT No. 1
### to Supply Contract No. S-02/M-99, dated October 18, 1999

*City of Elista*                                                    *November 15, 1999*

     Poliprom LLC, hereinafter referred to as the "Supplier," and Vanadiy Mining Enrichment Plant of Kachkanar OJSC, hereinafter referred to as the "Purchaser," (together referred to as the "Parties"), have entered into this Supplemental Agreement No.1 (hereinafter "Supplemental Agreement No. 1") to Supply Contract No. S-02/M-99, dated October 18, 1999, (hereinafter "the Contract") as follows:

     The Supplier agrees to supply the Purchaser based on the terms of the Contract, and the Purchaser agrees to accept and pay for the Goods according to the following specifications:

#### Specifications of the Goods:

1. Type of product: Ground and unground disk
S45C and SCM440 (according to ACTM)
Diameter: from 13.00 mm to 75.00 mm and 140.00 mm to 270.00 mm
Length: from 3,000 mm to 6,000 mm
2. Chemical Composition:

| Type | C | Mn | S | P | Si | Cr | Mo | Ni | Cu | Al |
|------|------|------|------|------|------|------|------|------|------|------|
| S45C | .44-.51 | .50-.80 | Max .035 | Max .035 | .15-.35 | Max .40 | -- | Max .30 | Max .30 | Max .06 |
| SCM440 | .38-.45 | .60-.90 | Max .035 | Max .035 | Max .40 | .90-1.10 | .15-.30 | Max .30 | Max .30 | Max .06 |

3. Permissible tolerances for content of elements in rolled metal:

| Type | C | Mn | S | P | Si | Cr | Mo | Ni | Cu | Al |
|------|------|------|------|------|------|------|------|------|------|------|
| S45C | +/-.02 | +/-.03 | +.005 | +.005 | +.02 | +/-.03 | -- | +.03 | +.03 | +.005 |
| SCM440 | +/-.02 | +/-.04 | +.005 | +.005 | +.03 | +/-.05 | +/-.03 | +.03 | +.03 | +.005 |

4. Quantity: 1250 tons (+/-10%), including
S45C:         496 tons
SCM440      754 tons
5. Delivery shall be made in accordance with the terms of the Contract.
6. Price of metal product: 6,811.50 (six thousand eight hundred eleven rubles and fifty kopecks) rubles per 1 ton, including 20% VAT = 1135.25 rubles.
7. The total cost under Supplemental Agreement No. 1 shall be 8,514,375 (eight million, five hundred fourteen thousand, three hundred seventy-five) (+/-5%) rubles, including 20% VAT = 1,419,062.50 rubles.
8. The prices indicated are valid only for this shipment of the Goods.
9. Time of delivery: November-December 1999
10. Supplemental Agreement No. 1 is an integral part of the Contract.

#### Signatures of the Parties:

Purchaser:                                          Supplier:

D.A. Khaydarov                                      G.M. Bukharin
[signature]                                         [signature]


[round stamp: Vanadiy Mining Enrichment             [round stamp: illegible]
Plant of Kachkanar OJSC]

[stamp: COPY]

Statement of Reconciliation of Mutual Payments Between Vanadiy Mining Enrichment Plant of Kachkanar OJSC and Poliprom LLC
under Contract No. S-02/M-99, dated September 30, 1999
for the period from January 1, 2000, to January 21, 2000

City of Kachkanar                                                                                                        January 21, 2000

| Name | Poliprom LLC | | | | Vanadiy Mining Enrichment Plant of Kachkanar OJSC | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Document | Document Number | Date | Amount in Rubles | Document | Document Number | Date | Amount in Rubles |
| 1. Delivery of metal products to Vanadiy Mining Enrichment Plant of Kachkanar OJSC | invoice | 28 | 1-21-00 | 8,288,505.66 | | | | |
| Total: | | | | **8,288,505.66** | | | | |

As of January 22, 2000, the balance of payments in favor of Poliprom LLC is 8,288,505.66 rubles, including VAT of 1,381,417.61 rubles.

Vanadiy Mining Enrichment Plant of Kachkanar OJSC                                        Poliprom LLC

[signature]                                                                                                      [signature]
D.A. Khaydarov                                                                                             G.M. Bukharin
General Director                                                                                            General Director

[signature]                                                                                                      [signature]
I.S. Trishkina                                                                                                 T.N. Tyukacheva
Manager, Finance and Economics Division                                                     Chief Accountant

[stamp: COPY]

**CONTRACT No. KGOK 18/10-99**
**for the purchase and sale of shares**

City of Moscow                                                                October 18, 1999

     Poliprom Limited Liability Company, hereinafter referred to as the "Seller", represented by its General Director G.M. Bukharin, acting on the basis of the Charter, and Vanadiy Mining Enrichment Plant of Kachkanar Open Joint Stock Company, hereinafter referred to as the "Purchaser", represented by its General Director D.A. Khaydarov, acting on the basis of the Charter, collectively referred to as the "Parties", have entered into this contract as follows:

### 1. Subject of the Contract

     1.1. The Seller agrees to transfer the securities indicated in section 1.2 of this Contract, and the Purchaser agrees to take title to the securities and pay the Seller pursuant to section 1.3 of this contract.

     1.2. Information about the securities that are the subject of purchase and sale under this contract:

| | |
|---|---|
| Type of shares | Inscribed common shares in non-documentary form |
| State registration number | 43-1-453, dated May 6, 1996 |
| Issuer of shares | Bentonit Open Joint Stock Company |
| Issuer's registration number | Decree on Registration No. 142 by the Administration of Yurgamysh District, dated May 24, 1995 |
| Location of issuer | [number illegible] Lenin St., City of Kurgan, Kurgan Oblast, Russia |
| Holder of the issuer's registry of shareholders | Bentonit Open Joint Stock Company |
| Par value per share | 10 (ten) rubles |
| Number of shares | 34,075 (thirty-four thousand seventy-five) shares |
| Currency of transaction | Russian Federation rubles |
| Currency of payment | Russian Federation rubles |

     1.3. The amount of the transaction under this contract is 20,445,000 (twenty million four hundred forty-five thousand) rubles.

### 2. Method of Payment for Shares

     2.1. The Purchaser agrees to make full payment for the securities indicated in section 1.2 of this Contract by transfer of funds to the Seller's bank account, or by securities or other financial instruments with preparation of the appropriate statement of acceptance and transfer.

     2.2. Payment for the securities indicated in section 1.2 of this Contract shall be made by the Purchaser within 30 (thirty) days from the date of signing of this contract.

### 3. Transfer of Title to the Shares

     3.1. The Seller agrees upon the signing of this Contract to issue to the Purchaser and/or to the Registrar a transfer order for the securities indicated in section 1.2 of this Contract, in order to enter the change in the registry of holders of the issuer's securities and to re-register the title from the Seller to the Purchaser.

     3.2. The Seller agrees upon the signing of this Contract to issue to the Purchaser a power of attorney to enter changes in the registry of holders of the issuer's securities with respect to the securities indicated in section 1.2 of this Contract.

     3.3. The Seller agrees not to recall the transfer order issued by the Seller in the manner prescribed in section 3.1 of this Contract, and not to issue

a transfer order with respect to all or a portion of the securities indicated in section 1.2 of this Contract to any third party.

3.4. The Purchaser shall perform the re-registration of title to the securities indicated in section 1.2 of this Contract in the registry of holders of the issuer's securities at any time in the Purchaser's discretion.

3.5. The Seller shall bear the expenses for the re-registration of the title to the securities in the registry of holders of the issuer's securities.

### 4. Liability of the Parties

4.1. If the Purchaser fails to meet the deadlines indicated in section 2.2 of this contract, the Purchaser shall be obligated to pay to the Seller a penalty in the amount of 0.2 (zero and two-tenths) percent of the amount of this Contract per day of delay.

4.2. If the Purchaser fails to meet the deadlines indicated in section 2.2 of this Contract by more than 10 (ten) banking days, the Seller shall have the right to terminate this Contract unilaterally. The Purchaser shall pay to the Seller a fine for failure to perform the Contract in the amount of 10 (ten) percent of the amount of this Contract.

4.3. If the Seller fails to perform its obligations under sections 3.1, 3.2, and 3.3 of this Contract, the Seller shall pay to the Purchaser a fine in the amount of 10 (ten) percent of the amount of this Contract.

### 5. Term of Contract

5.1. The Parties shall use all efforts to resolve disputes and disagreements in the implementation of this Contract by negotiations and bilateral agreements. If agreement is not reached, disputes shall be resolved in the arbitration court for the city of Moscow.

5.2. The Contract shall take effect upon its signing and shall be terminated by the full performance by the Parties of their obligations under the Contract, or by the provisions of this contract regarding its termination.

5.3. All amendments, additions, and agreements to this contract shall be valid only if they are made in written form and signed by the authorized representatives of both Parties and certified by their seals.

5.4. The Contract may be amended, terminated, or declared invalid only on the grounds and in the manner prescribed by current law and this contract.

5.5. In all circumstances related to the implementation of this contract that are not directly addressed by this contract, the Parties shall be governed by the requirements of current law.

### 6. Legal and Bank Addresses of the Parties

PURCHASER:

Vanadiy Mining Enrichment Plant of Kachkanar OJSC
2 Sverdlov St., Kachkanar
Sverdlovsk Oblast 624356
Taxpayer ID No. 6615001962
OKPO 00186938,
current account No. 40702810000000003170 at
Ural Bank for Reconstruction and Development,
correspondent account 30101810900000000795
BIK 046577795

General Director of
Vanadiy Mining Enrichment Plant OJSC

D.A. Khaydarov
[signature]
[round stamp: Vanadiy Mining Enrichment Plant of
Kachkanar Open Joint Stock Company,
city of Kachkanar]

SELLER:

Poliprom LLC
249 Lenin St., room 505, Elista, Republic of Kalmykia,
Russian Federation 358000
Taxpayer ID No. 0814113973
current account 40702810800090000040 at
the Elista branch of the Moskovskiy Delovoy Mir
Joint Stock Commercial Bank
correspondent account 30301810600011680006
at Moskovskiy Delovoy Mir Joint Stock Commercial Bank
BIK 044525466

General Director of
Poliprom LLC

G.M. Bukharin
[signature]
[round stamp: Poliprom Limited Liability Company, city of
Elista, Republic of Kalmykia, Russian Federation]

A - 1487

**EXTRACT**
from the registry of holders of inscribed securities
(this is not a security)
as of October 20, 1999

Full name of Issuer: Bentonit Open Joint Stock Company
Registration order: No. 142, dated May 24, 1995
Name of registering agency: Administration of Yurgamysh District
Number of personal account of registered person: 41
Last name, first name, and patronymic of registered person (or full name of legal entity):
VANADIY Mining Enrichment Plant of Kachkanar Open Joint Stock Company
Address: 2 Sverdlov Street, City of Kachkanar, Sverdlovsk Oblast, 624356
Type of registered person: owner

Securities credited to the personal account of the registered person:

| Type of Security | Category of Security | Par Value (in rubles) | Quantity of Securities (units) | State Registration Number of the Issue of Securities | Agency Registering the Issue |
|---|---|---|---|---|---|
| Inscribed shares (first issue) | Common | 10 | 34,075 | 43-1-453, dated May 6, 1996 | Financial Administration of Kurgan Oblast |

Quantity, type, and category of securities that are encumbered by obligations or that have been blocked:

The 34,075 (thirty-four thousand seventy-five) inscribed common shares are not encumbered by obligations and have not been blocked.

The registrar is liable for the completeness and accuracy of the information contained in this extract from the registry.

Holder of the registry: Bentonit OJSC
5-509 Lenin Street, City of Kurgan, 640000, telephone 22670, fax 23118

[signature]
V. V. Eret
General Director

[signature]
M. G. Chernikova
Registrar

[initialed handwritten notation: true copy]

[handwritten: G. M. Bukharin]
[round stamp: illegible]

Statement of Reconciliation of Mutual Payments
Between Vanadiy Mining Enrichment Plant of Kachkanar OJSC and Poliprom LLC
under Contract No. KGOK-18/10-99, dated October 18, 1999,
for the period from January 1, 1999, to December 31, 1999

City of Kachkanar                                                    January 5, 2000

| Name | Document | Amount in Rubles |
|---|---|---|
| 1. Transfer of shares in Bentonit OJSC | extract from registry of shareholders | 20,445,000.00 |

The indebtedness of Vanadiy Mining Enrichment Plant of Kachkanar OJSC toward Poliprom LLC as of December 31, 1999, is 20,445,00.00 rubles.


Poliprom LLC                          Vanadiy Mining Enrichment Plant of Kachkanar OJSC

[signature]                           [signature]
G. M. Bukharin                        D. A. Khaydarov
General Director                      General Director

[signature]                           [signature]
T. N. Tyukacheva                      I. S. Trishkina
Chief Accountant                      Manager, Finance and Economics Division

[round stamp: Poliprom Limited Liability    [round stamp: Vanadiy Mining Enrichment Plant of
Company, city of Elista; Republic of        Kachkanar Open Joint Stock Company, city of Kachkanar]
Kalmykia, Russian Federation]

A - 1489

### SUPPLY CONTRACT No. S-01-99/M

*City of Elista*                                                                                                    *September 30, 1999*

Poliprom LLC, hereinafter referred to as the Supplier, represented by its General Director G.M. Bukharin, acting on the basis of the Charter, and Vanadiy Mining Enrichment Plant of Kachkanar OJSC, hereinafter referred to as the Purchaser, represented by its General Director D.A. Khaydarov, acting on the basis of the Charter (hereinafter together referred to as the Parties), enter into this contract (hereinafter the Contract) as follows:

### 1. Subject of the Contract

1.1. The Supplier agrees to supply to the Purchaser under the terms of this Contract metal products (hereinafter the "Goods") in accordance with supplemental agreements to this Contract, and the Purchaser agrees to accept and pay for the supplied Goods.

### 2. Cost of the Goods and Method of Payment

2.1. The price of the Goods shall be determined on terms FCA, Chusovskaya Station, Sverdlovsk Railroad, and shall be set in Russian rubles (hereinafter rubles) per ton.

2.2. The price and quantity of the Goods shall be determined in supplemental agreements to this Contract.

2.3. The total cost of the Goods shall be 72,000,000 (seventy-two million) (+/- 5%) rubles, including 20% VAT – 12,000,000 rubles.

2.4. The price of the Goods shall include the cost of packaging and other expenses of the Seller related to the delivery of the Goods on the terms indicated in section 2.1.

2.5. The total cost of the Contract may be changed by supplemental agreements signed by the Parties.

2.6. Payments between the Parties shall be made by transfer of funds to the current account of the Supplier, or in securities, including by agreement of the Parties by delivery of a promissory note and preparation of a statement of acceptance and transfer, or by offset of mutual claims, or by other financial instruments.

2.7. Payment shall be made by the Purchaser in installments for each shipment of Goods in accordance with supplemental agreements to this Contract no later than 30 (thirty) banking days from the date of delivery of the last car of the shipment of Goods under section 3.3 of the Contract.

### 3. Terms and Time of Delivery

3.1. Delivery of the Goods shall be made in shipments from the Chusovskiy Metallurgical Plant (hereinafter the Manufacturing Plant) by railroad transport on terms FCA, Chusovskaya Station, Sverdlovsk Railroad pursuant to INCOTERMS 1990.

Supply contract No. S-01-99/M, dated September 30, 1999 with Vanadiy Mining Enrichment Plant of Kachkanar

3.1.1. A shipment shall be defined as the quantity of goods determined in supplemental agreements to this Contract.

3.2. Delivery of Goods under this Contract shall be made at the times indicated in the supplemental agreements.

3.3. The date of delivery of Goods shall be considered the date of the stamp at the railroad station of origin on the railroad waybill and/or the date of issue of the railroad receipt of acceptance of the cargo for the last car of the shipment.

3.4. Title to the Goods shall be transferred from the Supplier to the Purchaser as of the date of delivery of the Goods under section 3.3 of the Contract.

## 4. Quality and Quantity of Goods

4.1. The quantity of Goods transferred by the Supplier to the Purchaser shall be considered the quantity indicated in the railroad waybill.

4.2. The quality of Goods transferred by the Supplier to the Purchaser shall be considered the quality indicated in the certificate of the Manufacturing Plant.

4.3. Upon acceptance of the Goods by the Purchaser, in the event of a discrepancy between the data on the quantity and quality of the Goods received by the Purchaser and the data in the shipping documents, the acceptance of the Goods according to quantity and quality pursuant to the Instruction on the Manner of Acceptance of Manufacturing and Technical Products and Consumer Goods according to Quantity (No. P-6) and the Instruction on the Manner of Acceptance of Manufacturing and Technical Products and Consumer Goods according to Quality (No. P-7), with mandatory notice to the Supplier, and the Goods shall be taken under secure storage in the case of shortage or receipt of indicators of poor quality, with a statement to that effect prepared in the presence of the Supplier.

## 5. Rights and Duties of the Parties

5.1. The Parties agree to indicate in the documents accompanying the Goods, in addition to the data required for shipment documents, the results of analysis of the quality of the Goods or a reference to documents attesting to their proper quality.

5.2. *The Purchaser shall have the right:*

-- to demand that delivered Goods be transferred to the Purchaser;

-- to demand a reduction in price or the termination of the contract if the Goods are not free of rights of third parties;

-- to demand delivery of deficient Goods in the event of incomplete delivery.

5.3. *The Purchaser shall be obligated:*

-- to perform all necessary actions to provide for acceptance of the Goods;

-- to verify the quantity and quality of accepted Goods and to give immediate written notice of any deficiencies to the Supplier;

-- upon refusal to accept delivered Goods, to provide for their safekeeping. If the Supplier does not dispose of the Goods in a reasonable time, the Purchaser shall have the right to sell the Goods or return them to the Supplier and receive reimbursement of necessary expenses;

Supply contract No. S-01-99/M, dated September 30, 1999 with Vanadiy Mining Enrichment Plant of Kachkanar

-- to pay for the Goods at the price prescribed by supplemental agreements to the Contract.

5.4. *The Supplier shall be obligated:*

-- to transfer the Goods free from of any rights of third parties, unless the Purchaser has agreed to accept Goods encumbered by such rights;

-- to transfer the Goods in the quantity and quality required by the terms of the Contract.

## 6. Liability of the Parties

6.1. A Party that fails to perform or improperly performs it obligations under the Contract shall be obligated to compensate the other Party for losses caused by such failure to perform.

6.2. The Supplier shall pay a penalty for failure to deliver or late delivery of Goods in the amount of 0.1% of the amount of Goods not delivered on time, per day until actual performance of the obligation.

6.3. The Purchaser shall pay a penalty for failure to pay or late payment for Goods in the amount of 0.1% of the amount of Goods not paid or paid late, per day until actual payment.

## 7. Dispute Resolution

7.1. All disputes and disagreements shall be resolved by negotiation on the basis of current law of the RF and business customs.

7.2. Disputes not resolved in the process of negotiation shall be resolved in court in the manner established by current law of the RF.

## 8. Grounds for Release from Liability

8.1. The Parties shall be released from liability for partial or full non-performance of their obligations under the Contract if such non-performance was the consequence of circumstances beyond their control that arose after the signing of the Contract as a result of circumstances of an extraordinary nature that the Parties could neither foresee nor prevent.

## 9. Final Provisions

9.1. Unilateral refusal to perform the Contract or unilateral modification of the Contract shall not be permitted.

9.2. Any modifications or additions to the Contract shall be valid if they are made in written form and signed by the parties.

9.3. The Contract shall take effect upon signing and remain in effect until January 15, 2000, except that with respect to payments the Contract shall remain in effect until full performance of obligations.

9.4. The Contract is made in two originals, one of which shall be retained by the Purchaser and one by the Supplier.

Supply contract No. S-01-99/M, dated September 30, 1999 with Vanadiy Mining Enrichment Plant of Kachkanar

9.5.  The Parties shall be obligated to inform each other of changes in their addresses or requisites, including their shipping requisites.  Notice by the Purchaser of a change in the Purchaser's requisites shall be mandatory for the Supplier for shipment of Goods at the time set by the Contract if such notice is received by the Supplier no later than 10 (ten) days before the beginning of the delivery.

### 10.  Legal Addresses and Bank Requisites of the Parties:

| | |
|---|---|
| *Purchaser:* | *Supplier:* |
| **Vanadiy Mining Enrichment Plant OJSC** | **Poliprom LLC** |
| Taxpayer ID No. 6615001962 | Taxpayer ID No. 0814113973 |
| 2 Sverdlov St., Kachkanar | 249 Lenin St., Room 505 |
| Sverdlovsk Oblast 624356 | Elista, Republic of Kalmykia 358000, RF |
| Bank requisites: | Bank requisites: |
| current account No. 40702810000000003170 | current account No. 40702810800090000040 |
| Ural Bank for Reconstruction and Development | Branch of Moskovskiy Delovoy Mir |
| City of Yekaterinburg | Joint Stock Commercial Bank, City of Elista |
| correspondent account No. 30101810900000000795 | correspondent account No. 30101810900000000466, |
| BIK 046577795 | correspondent account No. 30301810600011680006 |
| | Moskovskiy Delovoy Mir Joint Stock Commercial Bank |
| | BIK 044525466 |

### Signatures of the Parties:

| | |
|---|---|
| **Purchaser:** | **Supplier:** |
| [signature] | [signature] |
| D.A. Khaydarov | G.M. Bukharin |
| [round stamp: Vanadiy Mining Enrichment Plant of Kachkanar, Open Joint Stock Company; City of Kachkanar] | [round stamp: Poliprom Limited Liability Company, City of Elista, Republic of Kalmykia, Russian Federation] |

Supply contract No. S-01-99/M, dated September 30, 1999 with Vanadiy Mining Enrichment Plant of Kachkanar

**Supplemental Agreement No. 1**
**to Supply Contract No. S-01/M-99, dated September 30, 1999**

**City of Moscow**                                                    **September 30, 1999**

Poliprom LLC, hereinafter referred to as the "Supplier", and Vanadiy Mining Enrichment Plant of Kachkanar OJSC, hereinafter referred to as the "Purchaser", (together referred to as the "Parties"), have entered into this Supplemental Agreement No. 1 (hereinafter "Supplemental Agreement No. 1") to Supply Contract No. S-01/M-99, dated September 30, 1999, (hereinafter "the Contract") as follows:

The Supplier agrees to supply the Purchaser based on the terms of the Contract, and the Purchaser agrees to accept and pay for the Goods according to the following specifications:

**Specifications of Goods**

1. Steel stock, state standard 380-94, technical specification 14-1-5237-93.
Surface quality: Category 1, technical specification 14-1-4492-88.
Packing: six-ton bundles
Minimum train car load: 60 tons

| No. | Size, mm | Measured Length, mm | Steel | Quantity, tons |
|-----|----------|---------------------|-------|----------------|
| 1.  | 125x125  | 4,000 (+/-100)      | 3 SP/PS | 9,000 |

Price per ton: 3,246 (three thousand two hundred forty-six) rubles per ton, including 20% VAT = 541 rubles.

Total amount under the Supplemental Agreement:
steel stock: 9,500 (+5%/-0%) tons

2. Time of delivery: October-November 1999
3. The total cost under Supplemental Agreement No. 1 is 29,214,000 (twenty-nine million two hundred fourteen thousand) rubles, including the 20% VAT = 4,869,000 rubles.
4. The prices indicated are valid only for this shipment of the Goods.
5. Supplemental Agreement No. 1 is an integral part of Supply Contract No. S-01/M-99, dated September 30, 1999.

Signatures of the Parties:

Purchaser:                                        Supplier:

D.A. Khaydarov                                    G.M. Bukharin
[signature]                                       [signature]

[round stamp: Vanadiy Mining Enrichment           [round stamp: Poliprom Limited Liability Company
Plant of Kachkanar OJSC]                           EM-V No. 198 Russian Federation, Republic of
                                                   Kalmykia, City of Elista]

**Supplemental Agreement No. 2**
**to Supply Contract No. S-01/M-99, dated September 30, 1999**

**City of Moscow**                                             **November 29, 1999**

Poliprom LLC, hereinafter referred to as the "Supplier," and Vanadiy Mining Enrichment Plant of Kachkanar OJSC, hereinafter referred to as the "Purchaser," (together referred to as the "Parties"), have entered into this Supplemental Agreement No.2 (hereinafter "Supplemental Agreement No. 2") to Supply Contract No. S-01/M-99, dated September 30, 1999 (hereinafter the "Contract") as follows:

The Supplier agrees to supply the Purchaser based on the terms of the Contract, and the Purchaser agrees to accept and pay for the Goods according to the following specifications:

### SPECIFICATIONS OF THE GOODS

1. Hot-rolled reinforcement bars, state standard 5781-82, Class A3.
Steel type: 35 GS
Length: 11,700 (+/-100) mm.

| No. | Diameter, mm | Quantity, tons |
|---|---|---|
| 3. | 16 | 325 |
| 4. | 18 | 325 |
| 5. | 20 | 325 |
| 6. | 25 | 325 |
| 7. | 28 | 325 |
| 8. | 32 | 390 |
| | **TOTAL:** | **2,015** |

Price per ton: 4,080 (four thousand eighty) rubles per ton, including 20% VAT = 680 rubles.

Total amount under the Supplemental Agreement:
Hot-rolled reinforcement bars: 2,015 (+5%/-0%) tons

2. Time of delivery: October-December 1999
3. The total cost under Supplemental Agreement No. 1 is 8,221,200 (eight million, two hundred twenty-one thousand two hundred) rubles, including the 20% VAT = 1,370,200 rubles.
4. The prices indicated are valid only for this shipment of the Product.
5. Supplemental Agreement No. 2 is an integral part of Supply Contract No. S-01/M-99, dated September 30, 1999.

Signatures of the Parties:

Purchaser:                          Supplier:

D.A. Khaydarov                      G.M. Bukharin
[signature]                         [signature]

[round stamp: Vanadiy Mining Enrichment   [round stamp: illegible]
Plant of Kachkanar OJSC]

**A - 1496**

COPY

## CONTRACT No. 15-99/PK

**Kachkanar**                                                  **October 27, 1999**

Poliprom Limited Liability Company, hereinafter referred to as "Seller", represented by General Director G.M. Bukharin, acting on the basis of the Statutes, party of the first part, and Open Stock Company Kachkanar "Vanadiy" Mining and Processing Plant, hereinafter referred to as "Buyer", represented by General Director D.A. Khaidarov, acting on the basis of the Statutes, party of the second part, have entered into this Contract regarding the following:

### 1. SUBJECT OF THE CONTRACT

1.1. Pursuant to the Contract, Seller shall sell to Buyer goods, hereinafter referred to as "Goods", in accordance with the Addenda hereto, and Buyer shall accept and pay for the Goods as and when stipulated herein.

### 2. PRICE OF GOODS

2.1. The price and description of the Goods shall be specified in Addenda hereto.

### 3. DELIVERY AND ACCEPTANCE OF GOODS

3.1. The Goods shall be delivered by December 31, 2000 in the quantity and assortment specified in the Addenda hereto.
3.2. The location of the Goods shall be railway station Nizhny Tagil, Sverdlovsk Region. Buyer shall pay for the delivery of the Goods to the Sverdlovsk railway Kachkanar station. Seller's transportation expenses shall not be included in the price of the Goods and shall be fully reimbursed by Buyer within three days from the date Buyer receives the Goods.
3.3. Buyer shall accept the assortment and quantity of the goods when they are delivered along with a certificate of quality.
3.4. Seller's obligations to deliver the Goods shall be deemed fulfilled when authorized representatives of Seller and Buyer have signed an acceptance certificate.

### 4. PAYMENT PROCEDURE

4.1. Money for the sold Goods shall be transferred to Seller's settlement account within three banking days following the signing date of the acceptance certificate for the Goods.
4.2. If payment for the Goods is delayed beyond the deadline set forth in par. 4.1. through the fault of Buyer, the latter shall pay Seller a penalty of 0.2% for each day of the delay, but not to exceed 5% of the cost of the Goods.

## 5. LIABILITY OF THE PARTIES

5.1. Seller shall be responsible for defects in the Goods unless he proves that the defects arose after the Goods were delivered to Buyer and resulted from their improper use or storage by Buyer, or from the actions of third parties, or were caused by force majeure.

5.2. The parties shall be liable according to established procedure for breaching the Contract. Losses in the form of direct damage and lost profits shall be subject to reimbursement. The burden of proof shall rest with the affected party.

5.3. If the Goods are rejected without cause, Buyer shall reimburse Seller for losses in the form of direct damage and lost profits.

*Mosc.*

## 6. FORCE MAJEURE

6.1. Neither party shall be liable to the other for failure to perform caused by circumstances beyond the will and desire of the parties and which are unforeseeable and unavoidable.

6.2. The party that fails to execute its obligations under the Contract as a result of force majeure shall immediately notify the other party of the obstacle and of how force majeure will affect the fulfillment of contractual obligations.

## 7. DISPUTE RESOLUTION

7.1. All disputes hereunder shall be settled through negotiation.

7.2. If an agreement cannot be reached, disputes shall be settled in arbitration court in accordance with judicial rules on the basis of Russian Federation law.

## 8. TERM OF THE CONTRACT

8.1. The term of the Contract shall be from October 27, 1999 to December 31, 2000.

8.2. The contract may be renewed by Supplemental Agreements between the parties.

8.3. The Contract may be terminated:

8.3.1. By agreement between the parties.

8.3.2. For other reasons provided for by the Contract and current legislation.

## 9. FINAL PROVISIONS

9.1. The Contract is made in two copies of equal legal force, one copy for each party.

9.2. All Addenda and Additions to the Contract are an integral part thereof.

## 10. LEGAL ADDRESSES AND PAYMENT INFORMATION OF THE PARTIES

### 10.1. Buyer

OSC Kachkanar "Vanadiy" GOK, 2 Sverdlov St., Kachkanar 624356, Sverdlovsk Region, Tax ID No. (INN) 6615001962, settlement account No. 40702810800020421865 at Moscow Business World SCB, [illegible] Zhitnaya St., Moscow 117049, correspondent account No. 30101810900000000466, Bank ID Code (BIK) [illegible]

[signature] [round seal]
**D.A. Khaidarov**

### 10.2. Seller

Poliprom LLC, 249 Lenin St., Office 505, Elista 358000    Tax ID No. (INN) 0814113973, settlement account No. 40702810800090000040 at the Moscow Business World SCB branch, correspondent account No. 30301810600011680006 Bank ID Code (BIK) 044525466

[signature] [round seal]
**G.M. Bukharin**

ADDENDUM [illegible]
to AGREEMENT No. 15-99/PK of October 27, 19[illegible]
between Poliprom LLC and OSC Kachkanar "Vanadiy" GOK

[illegible]                                                October 27, 1999

| | | Description of Goods | Quantity | Unit Price (rub.) | Total (rub.) | Total VAT (rub.) | Total with VAT (rub.) |
|---|---|---|---|---|---|---|---|
| | | Set of narrow wedge-shaped [illegible] –30-034, 8 SPS x 3000-28 (rubberized) | 1 set | 222,000 | 220,000 | 44,000 | 264,000 |
| | | Relay Adapter (bayonet joint) | 40 | 2,800 | 112,000 | 22,400 | 134,400 |
| | | Contacts (copper) | 1,430 | 1,540 | 2,202,200 | 440,440 | 2,642,640 |
| | | Special Washer (treated paper electrical insulator) | 30 | 80 | 2,400 | 480 | 2,880 |
| | | Electromagnetic valve 10-45-002 EV 80 110 V | 40 | 24,900 | 996,000 | 199,200 | 1,195,200 |
| | | Pressure Relay KPS 37 R1/4 6-18 bar (valve) | 29 | 10,600 | 307,400 | 61,480 | 368,880 |
| | | Wire Resistor | 10 | 17,200 | 172,000 | 34,400 | 206,400 |
| | | Pilot Nozzle (plastic) | 1 | 34,000 | 34,000 | 6,800 | 40,800 |
| | | Fuse 20-58-006 006L 110a 500v | 1,500 | 180 | 270,000 | 54,000 | 324,000 |
| | | Automatic packet switch | 166 | 4,300 | 713,800 | 142,760 | 856,560 |
| 11 | | AC motor, single phase 20-50-460 J10R 112 M2 7.5 kW | 40 | 46,200 | 1,848,000 | 369,600 | 2,217,600 |
| 12 | | Ammeter 20-53-053 M15 0-1000A v2 45 | 20 | 11,400 | 228,000 | 45,600 | 273,000 |
| 13 | | Intermediate Relay 10-57-014 2RH 01 24b GS | 40 | 8,200 | 328,000 | 65,600 | 393,600 |
| 14 | | Intermediate Relay 10-60-001 2RH01 110v GS | 40 | 8,200 | 328,000 | 65,600 | 393,600 |
| 15 | | Bucholtz Relay 10-56-003. TypBF 50/80 | 10 | 8,200 | 82,000 | 16,400 | 98,400 |
| | TOTAL | | | | 7,843,800 | 1,568,760 | 9,412,560 |

Seller
General Director, Poliprom LLC
[signature] [round seal] G.M. Bukharin

Buyer
General Director
OSC Kachkanar "Vanadiy" GOK
[signature] [round seal] D.A. Khaidarov

*Mosc.*

*4041  9/5/2000   Mosc.*

A - 1501

## ACCEPTANCE CERTIFICATE

**Kachkanar**                                                    **December 29, 1999**

      Poliprom Limited Liability Company, hereinafter referred to as "Seller", represented by General Director G.M. Bukharin, acting on the basis of the Statutes, party of the first part, and Open Stock Company Kachkanar "Vanadiy" Mining and Processing Plant, hereinafter referred to as "Buyer", represented by General Director D.A. Khaidarov, acting on the basis of the Statutes, party of the second part, have prepared and signed this Acceptance Certificate regarding the following:

In November-December 1999, in accordance with Addendum No. 1 of 10/27/1999 to Contract No. 15-99/PK of 10/27/1999, Seller delivered and Buyer accepted goods shipped from Nizhny Tagil Station, Sverdlovsk Region, to Kachkanar Station, Sverdlovsk Region, according to railway receipts.  Buyer has no claims against Seller with respect to the quality and quantity of the goods.

**Seller**                                              **Buyer**
**General Director, Poliprom LLC**                      **General Director**
[signature] [round seal] **G.M. Bukharin**              **OSC Kachkanar "Vanadiy" GOK**
                                                        [signature] [round seal] **D.A. Khaidarov**

*Mosc.*

*4041 9/5/2000   Mosc.*

A - 1502

COPY

**Reconciliation Document between OSC Kachkanar "Vanadiy" GOK and Poliprom LLC**
**pursuant to Agreement No. 15-99/PK of 10/27/1999**
**for [illegible] 1999 to 12/31/1999**

**Kachkanar**                                                        **January 5, 2000**

| Name | Document | Document Number | Date | Total rub. |
|------|----------|-----------------|------|-----------|
| [illegible] OSC "Vanadiy" GOK | Invoice<br>Invoice | 126<br>127 | 12/15/99<br>12/27/99 | 9,412,000<br>936,000<br>10,348,000 |
| Total: | | | | |

As of 12/31/1999, OSC "Vanadiy" GOK owes Poliprom LLC 10,348,000 rubles, including VAT of 1,724,066.67 rubles.

**Poliprom LLC**                                      **OSC Kachkanar "Vanadiy" GOK**
[round seal]                                           [round seal]
General Director [signature] G.M. Bukharin             General Director [signature] D.A. Khaidarov
Chief Accountant [signature] T.N. Tyukacheva           Head [illegible] [signature] [illegible]

*Mosc.*

A - 1503

*3648-5-1*

## CONTRACT No. 16-99/PK

**Kachkanar**                                              **November 10, 1999**

Poliprom LLC, hereinafter referred to as "Seller", represented by General Director G.M. Bukharin, acting on the basis of the Statutes, party of the first part, and OSC Kachkanar "Vanadiy" Mining and Processing Plant, hereinafter referred to as "Buyer", represented by General Director D.A. Khaidarov, acting on the basis of the Statutes, party of the second part, have entered into this Contract regarding the following:

### 1. SUBJECT OF THE CONTRACT

1.1. Seller shall sell and Buyer shall purchase OSC "Vanadiy Tulachermet" vanadium products, hereinafter referred to as Products, with the specifications set forth in Addendum No. 1 hereto.

### 2. PRODUCT QUANTITY

2.1. The Parties shall set forth the quantity of monthly product shipments separately in Addenda.

### 3. DELIVERY TERMS AND CONDITIONS

**Basis of the delivery – FCA Tula (Incoterms 1990).** Seller shall, at his own expense, load the products on the means of transportation provided by Buyer.

At least 3 working days prior to the arrival of the means of transportation at the warehouse for the goods, Buyer shall inform Seller in writing of the name of the shipping agent, the anticipated arrival date, and the automobile and trailer number. Automobiles are prohibited from arriving on weekends (Saturday and Sunday) and Russian holidays. If the automobile arrives at Seller's warehouse by 8.00 a.m. Moscow time, Seller shall ship the products to Buyer within a day of the automobile's arrival at his warehouse, provided that Buyer has complied with the deadline for serving notice of the automobile's arrival. If the automobile arrives at Seller's warehouse after 8.00 a.m. Moscow time, Seller shall ship the products to Buyer during the working day following the day of the automobile's arrival, provided that Buyer has complied with the deadline for serving notice of the automobile's arrival.

The Products shall be shipped in lots of *18.5 mt net ± 10%* by auto transportation, or in lots of 50 mt net ± 10% in covered railroad cars.

The date and, correspondingly, the month of shipment of each lot shall be the date of the road waybill for that lot, or the date of the rail waybill.

Seller shall provide Buyer with the following documents for each shipped lot:
- invoice;
- certificate of quality and quantity issued by OSC "Vanadiy Tulachermet";

- certificate of origin issued by OSC "Vanadiy Tulachermet with seal.

## 4. PRICE OF PRODUCTS

4.1. The price of the products shall be based on FCA Tula (with loading expenses), and shall be fixed and approved for each month by addenda.

4.2. If, at Buyer's request, Seller fulfills additional shipment obligations (save for loading the products onto the means of transportation at Seller's warehouse), for example preparing customs documents, and, correspondingly, incurs additional expenses (payment of customs duty for Buyer, and so on), Seller shall bill Buyer for those expenses separately.

## 5. PAYMENT TERMS

5.1. Buyer shall pay for the Products delivered during the month following the month of shipment.

5.2. By agreement between the Parties, payment shall be effected by the transfer of funds to Buyer's [sic] settlement account, offsets, or securities.

5.3. Additional expenses for preparing customs documents and clearing customs may be paid for with promissory notes, whose issuer shall be agreed upon by the Parties separately.

## 6. QUALITY AND QUANTITY CHECK

Buyer shall have the right to check the weight and quality of the products at his own expense. If the weight determined by weighing is greater or lesser than the weight stated on the certificate of quality and quantity by less than 0.5%, the weight on the certificate of quality and quantity shall be deemed final. Each cast shall be tested separately for primary material content (vanadium pentoxide), and the results shall only apply to the tested cast. If the cast's primary material content does not deviate by more than ± 0.5% from the data stated on the certificate, the test results shall be deemed to conform to the data stated on the certificate. If the weighing or control test results differ from the data stated on the certificate by more than the above amount, Buyer shall file an official claim with Seller within 30 days from the CMR date, attaching the control test results with a full description of the sampling, and the test methods and results. Seller shall review the claim within 10 calendar days of receipt.

If Seller disagrees with the test results, an additional test of the parameters shall be conducted by an independent company approved by Seller and Buyer whose results shall be final for both Seller and Buyer. The sampling method and chemical content test method shall be specified by the Parties separately. All expenses related to the independent company's quality and quantity testing of the goods supplied hereunder which are the subject of a claim shall be borne by the losing Party.

Buyer may not use goods which are the subject of a claim until the Parties have settled the claim.

## 7. FORCE MAJEURE

7.1. Neither Party shall be liable for failure to execute, in whole or in part, its obligations hereunder if such failure is caused by force majeure conditions such as flood, fire, earthquake and other natural disasters, as well as war or armed conflicts, acts of government and other conditions beyond the Parties' control arising after the execution of the Contract and directly affecting its fulfillment.

A - 1507

7.2. In the event of any of the foregoing circumstances, the deadlines set forth in the Contract and additions thereto shall be extended by the corresponding time the *force majeure* conditions exist.

7.3. The Party, which is unable to fulfill its obligations, shall notify the other Party in writing of the onset, expected duration and termination of the above-listed conditions immediately, but no later than 10 (ten) days from the onset and termination. A document issued by the Russian Federation Chamber of Commerce shall serve as adequate proof of the onset and duration of the foregoing conditions.

7.4. Representatives of the Parties shall meet within one month from the transmit date of notification of the onset of the *force majeure* conditions set forth herein to consult and agree on the taking of measures for further implementation or termination of the Contract.

## 8. DISPUTE RESOLUTION

8.1. Buyer and Seller shall take all measures to resolve through negotiation all disputes and disagreements arising out of or related to the Contract.

8.2. If an agreement cannot be reached, all disputes and disagreements, save for those that fall under the jurisdiction of the general court, shall be settled in a Moscow arbitration court.

## 9. LIABILITY OF THE PARTIES

9.1. The Parties shall be liable, in accordance with current legislation, for failure to perform or poor performance hereunder.

9.2. Seller shall be liable for the quality and quantity of the supplied products set forth in the Contract and Addenda thereto.

9.3. If Seller is late in delivering the products under the Contract or if Buyer is late in paying for the products to the other Party, a penalty shall be paid based on the rules set forth in art. 395 of the Russian Federation Civil Code.

## 10. TERM OF THE CONTRACT

10.1. The Contract shall enter into effect on the date it is signed by both Parties and shall be valid until 12/31/2000.

10.2. The Contract may be renewed by mutual written agreement between the Parties.

## 11. OTHER TERMS

11.1. All prior oral and written agreements regarding the subject matter of the Contract shall be null and void upon the signing of the Contract by the Parties.

11.2. If a smaller price difference between slag and vanadium pentoxide, and/or lower world prices for vanadium pentoxide, and/or higher vanadium pentoxide production expenses make it unprofitable for Seller or Buyer to execute the Contract, the Parties shall agree to amend the Contract. If the amendments are unacceptable for either Party, the Contract shall be suspended.

11.2. All amendments and additions hereto shall be valid if they are in writing. All Addenda mentioned in the Contract are an integral part thereof.

11.3. Neither Party has the right to assign its obligations and rights herein to a third organization without the written agreement of the other Party.

11.4. Relations between the Parties not addressed herein shall be governed by current legislation.

11.5. The Contract contains 4 pages of text and is drawn up in two copies of equal legal force, one copy for each of the Parties.

## 12. LEGAL ADDRESSES AND PAYMENT INFORMATION OF THE PARTIES

**Seller:** Poliprom LLC
Address: 249 Lenin St., Suite 505, Elista 358000  Tax ID No. (INN) 0814113973,
settlement account No. 40702810800090000040 at the Elista branch of Moscow Business World (MDM) SCB
correspondent account No. 30301810600011680006
Bank ID Code (BIK) 044525466

**Buyer:** OSC Kachkanar "Vanadiy" GOK
Address: 2 Sverdlov St., Kachkanar 624356, Sverdlovsk Region, Tax ID No. (INN) 6615001962, All-Russian Classifier of Enterprises and Organizations (OKPO) 00186938, Banking Information: settlement account No. 40702810800020421865 at Moscow Business World SCB, 14 Zhitnaya St., Moscow 117049, correspondent account No. 30101810900000000466, Bank ID Code (BIK) 044525466

### SIGNATURES OF PARTIES

**For Seller:**
General Director, Poliprom LLC
[signature] [round seal] G.M. Bukharin

**For Buyer:**
General Director
OSC Kachkanar "Vanadiy" GOK
[signature] [round seal] D.A. Khaidarov

A - 1510

**Addition No. 1**
**to Contract No. 16-99/Pk of November 10, 1999**

**Moscow**                                                    **November 18, 1999**

The Parties have reached agreement regarding the following:

1. The cost of packaging under the contract (steel drums) is included in the cost of the goods and is a non-returnable container.
2. Add the words "and ferro-vanadium" after the words vanadium pentoxide in par. 1.1, section 1 – "Subject".
3. Other terms are in accordance with the above contract.

**Seller**                                    **Buyer**

[signature] [round seal]                      [signature] [round seal]

**Addendum No. 1**
**to Contract No. 16-99/Pk**
**of November 10, 1999**

**Specifications for $V_2O_5$**

| | | |
|---|---|---|
| $V_2O_5$ | at least | **90%** |
| $SiO_2$ | not to exceed | **0.85%** |
| P | not to exceed | **0.055%** |
| Mn | not to exceed | **2.5%** |
| $TiO_2$ | not to exceed | **0.65%** |
| S | not to exceed | **0.1%** |
| CaO | not to exceed | **5.0%** |
| Fe | not to exceed | **5.0%** |
| | | **(optional)** |

Dimension up to 77 mm
Average thickness 2-3 mm
Maximum thickness 5 mm

Packaging: in steel drums with a maximum net weight of 180 kg.

Specifications may be adjusted by agreement between the Parties.

**SIGNATURES OF THE PARTIES**

**For Seller:**
General Director, Poliprom LLC
[signature] [round seal] G.M. Bukharin

**For Buyer:**
General Director
OSC Kachkanar "Vanadiy" GOK
[signature] [round seal] D.A. Khaidarov

**A - 1512**

**Addendum No. 2
to Contract No. 16-99/Pk
of November 10, 1999**

Kachkanar

November 20, 1999

| Product | Quantity Based on Pure V2O5 Content in Vanadium Pentoxide (V in ferro-vanadium), t. | Price per kg of V2O5 in Vanadium Pentoxide (V in ferro-vanadium), rub./kg. | Cost without VAT |
|---|---|---|---|
| Vanadium Pentoxide | 172,023 ±10% | 80.10 rub./kg | 13,779,042.30 rub. |
| Ferro-Vanadium-80 | 45.58 ±10% | 211 rub./kg | 9,617,380.00 rub. |
| Ferro-Vanadium-50 | 18.6 ±10% | 211 rub./kg | 3,924,800.00 rub. |

**Total**                                                                      27,321,022.30 rub.

Total cost of the goods is 32,785,226.76 rub. (thirty-two million, seven hundred eighty-five thousand, two hundred twenty-six rubles and seventy-six kopecks), including the cost of the goods – 27,321,022.30 rub., 20% VAT – 5,464,204.46 rub.

Delivery Date: November - December 1999.

**For Seller:**                              **For Buyer:**
General Director, Poliprom LLC               General Director
[signature] [round seal] G.M. Bukharin       OSC Kachkanar "Vanadiy" GOK
                                             [signature] [round seal] D.A. Khaidarov

A - 1513

**Addendum No. 3**
**to Contract No. 16-99/Pk**
**of November 10, 1999**


**Specifications for FeV-80**

| | | |
|---|---|---|
| **V** | **at least** | **78%** |
| **Si** | **not to exceed** | **2.0%** |
| **P** | **not to exceed** | **0.06%** |
| **Mn** | **not to exceed** | **2.0%** |
| **Cu** | **not to exceed** | **0.1%** |
| **S** | **not to exceed** | **0.05%** |
| **Al** | **not to exceed** | **2.0%** |
| **C** | **not to exceed** | **0.4%** |
| **As** | **not to exceed** | **0.02%** |
| **Fe** | | **remainder** |

Piece Size: 5-50 mm
Packaging: in marked steel drums with a maximum net weight of 400 kg.

Specifications may be adjusted by agreement between the Parties.

**Seller**                                **Buyer**
[signature] [round seal]                  [signature] [round seal]

A - 1514

**Addendum No. 4
to Contract No. 16-99/Pk
of November 10, 1999**


**Specifications for FeV-50**


| | | |
|---|---|---|
| **V** | at least | **48%** |
| **Si** | not to exceed | **2.0%** |
| **P** | not to exceed | **0.1%** |
| **Mn** | not to exceed | **4.0%** |
| **Cu** | not to exceed | **0.2%** |
| **S** | not to exceed | **0.02%** |
| **Al** | not to exceed | **0.1%** |
| **C** | not to exceed | **0.5%** |
| **As** | not to exceed | **0.01%** |

Piece Size: 5-50 mm
Packaging: in marked steel drums with a maximum net weight of 400 kg.

Specifications may be adjusted by agreement between the Parties.

**Seller**                                    **Buyer**
[signature] [round seal]                      [signature] [round seal]

**A - 1515**

**Addendum No. 5**
**to Contract No. 16-99/Pk**
**of November 10, 1999**

Kachkanar                                    December 9, 1999

| Product | Quantity based on Pure V2O5 Content in Vanadium Pentoxide (V in ferro-vanadium), t. | Price per kg of V2O5 in Vanadium Pentoxide (V in ferro-vanadium), rub./kg. | Cost without VAT |
|---|---|---|---|
| Vanadium Pentoxide | 263,596 ±10% | 72.50 rub./kg | 19,110,710.00 rub. |
| Ferro-Vanadium-80 | 76.00 ±10% | 190.00 rub./kg | 14,440,000.00 rub. |
| Ferro-Vanadium-50 | 29.1 ±10% | 190.00 rub./kg | 5,529,000.00 rub. |

**Total**                                    39,079,710.00 rub.

Total cost of the goods is 46,895,652.00 rub. (forty-six million, eight hundred ninety-five thousand, six hundred and fifty-two rubles), including the cost of the goods – 39,079,710.00 rub., 20% VAT – 7,815,942.00 rub.

Delivery Date: December 1999 - January 2000.

**For Seller:**                    **For Buyer:**
General Director, Poliprom LLC       General Director
[signature] [round seal] G.M. Bukharin    OSC Kachkanar "Vanadiy" GOK
                                   [signature] [round seal] D.A. Khaidarov

A - 1516