7.5. При запрете МПС РФ на отгрузку продукции, ограничении Свердловэнерго по потреблению электроэнергии, вследствие чего возникли нарушения в режиме работы Поставщика, последний ответственности за недопоставку продукции не несет, а Стороны предпринимают совместные усилия по устранению указанных препятствий.

7.6. Возможные в рамках реализации настоящего Договора споры при недостижении соглашения разрешаются путем обращения заинтересованной стороны в Арбитражный суд в соответствии с законодательством РФ.

### Статья 8.
### СРОКИ ДЕЙСТВИЯ ДОГОВОРА

8.1. Договор вступает в действие с момента его подписания обеими Сторонами.

8.2. Срок действия Договора устанавливается до «31» декабря 1999 г., а в части расчетов - до полного исполнения Сторонами принятых на себя обязательств, но не позднее 31 января 2000 г.

8.3. Договор может быть прекращен также соглашением Сторон, оформляемым дополнительным протоколом (путем обмена письмами, телеграммами, факсами и т.п.), либо реализацией одной из Сторон права на его прекращение в случае ненадлежащего исполнения или неисполнения другой Стороной обязательств, либо невозможностью исполнения обязательств, либо ликвидацией юридического лица.

8.4 Договор может быть пролонгирован на определенный срок соглашением Сторон.

### Статья 9.
### ПРОЧИЕ УСЛОВИЯ

9.1. Договор может быть изменен или дополнен соглашением Сторон, оформляемым в виде приложений или дополнительных соглашений, на которые распространяются все требования Договора.

9.2. Любые приложения и дополнительные соглашения к Договору являются его неотъемлемой частью, и по соглашению Сторон содержание приложений и дополнительных соглашений объявляется коммерческой тайной.

9.3. Во всех случаях, обстоятельствах и ситуациях, связанных с реализацией настоящего Договора, но им прямо не предусмотренных, Стороны руководствуются действующим законодательством.

### Статья 10.
### РЕКВИЗИТЫ СТОРОН

#### 10.1. Поставщик

ОАО «Качканарский горно-обогатительный комбинат «Ванадий», ИНН 6615001962, 624356, Россия, Свердловская область, г. Качканар, ул. Свердлова, д.2., р/с № 40702810900000000085 в КБ «Качканарбанк», к/с № 30101810200000000710, БИК 046513710

#### 10.2. Покупатель

ООО «Полипром», ИНН 0814113973, 358000, РФ, Республика Калмыкия, г. Элиста, ул. Ленина д. 249, ком. 505, расчетный счет 40702810800090000040 в филиале АКБ «Московский Деловой Мир» г. Элиста, БИК 044525466, к/с № 30101810900000000466, к/с 30301810600011680006 в АКБ «Московский деловой мир»

 /Хайдаров Д.А./

 / Бухарин Г.М./

*Договор поставки № 01-99/П от 28 июня 1998г.*

*ДОПОЛНИТЕЛЬНОЕ СОГЛАШЕНИЕ № 3*
*к договору поставки № 01-99/П от 09.07.1999 г.*

г. Качканар                                                              «30» августа 1999 г.

Открытое акционерное общество «Качканарский горно-обогатительный комбинат «Ванадий», именуемое в дальнейшем Поставщик, в лице Генерального директора Хайдарова Д.А., действующего на основании Устава и

Общество с ограниченной ответственностью «Полипром», именуемое в дальнейшем Покупатель, в лице Генерального Директора Бухарина Г.М., действующего на основании Устава,

вместе именуемые как Стороны, заключили настоящее Дополнительное соглашение №3 (далее по тексту – *Дополнительное соглашение №3*) к договору поставки № 01-99/П от 09.07.1999 г. (далее - *Договор*) о нижеследующем:

1. Стороны определили следующие условия поставки железорудного сырья - окатышей (ТУ 14-00186938-003-95) и агломерата (ТУ 14-00186938-005-95) (далее по тексту – Продукция) в сентябре 1999 года:

| № п/п | Адрес поставки | Объем поставки, тонн | |
|---|---|---|---|
| | | агломерат | окатыши |
| 1. | ОАО «Нижнетагильский металлургический комбинат» (ОАО «НТМК») | 124 000 | 264 000 |
| 2. | ОАО «Серовский металлургический завод» | 5 500 | 5 500 |
| 3. | ОАО «Западно-Сибирский металлургический комбинат» (ОАО «ЗСМК») | --- | 32 000 |
| 4. | ОАО «Чусовской металлургический завод» (ОАО «ЧМЗ») | 32 500 | 76 000 |
| 5. | ОАО «Челябинский металлургический завод» (ОАО «Мечел») | --- | 29 000 |
| 6. | ОАО «Северсталь» | --- | 23 000 |
| | ВСЕГО: | 162 000 | 429 500 |

2. Объем поставки в августе 1999 года составляет:
- 162 000 (Сто шестьдесят две тысячи) (+/-5%) тонн агломерата,
- 429 500 (Четыреста двадцать девять тысяч пятьсот) (+/-5%) тонн окатышей.
3. Цена за Продукцию, отгружаемую в июле 1999 года, составляет:
- агломерат - 228 руб. за тонну, в т.ч. НДС 20%=38 руб.
- окатыши – 228 руб. за тонну, в т.ч. НДС 20%=38 руб.
4. Общая стоимость Продукции отгружаемой в сентябре 1999 года составляет 134 862 000 (Сто тридцать четыре миллиона восемьсот шестьдесят две тысячи) (+/-5%) рублей, в том числе НДС 20 % – 22 477 000 (Двадцать два миллиона четыреста семьдесят семь тысяч) рублей.
5. Настоящее *Дополнительное соглашение №3* являются неотъемлемой частью *Договора.*



От Поставщика                                    От Покупателя

*Дополнительное соглашение №3 к Договору поставки № 01-99/П от 09 июля 1999 г.*

A - 1570

### *ДОПОЛНИТЕЛЬНОЕ СОГЛАШЕНИЕ № 9*
*к Договору поставки № 01-99/П от 09.07.1999 г.*

г. Качканар                                                    «12» января 2000 г.

Открытое акционерное общество «Качканарский горно-обогатительный комбинат «Ванадий», именуемое в дальнейшем Поставщик, в лице Генерального директора Хайдарова Д.А., действующего на основании Устава и

Общество с ограниченной ответственностью «Полипром», именуемое в дальнейшем Покупатель, в лице Генерального Директора Бухарина Г.М., действующего на основании Устава,

вместе именуемые как Стороны, заключили настоящее Дополнительное соглашение №9 (далее по тексту – *Дополнительное соглашение №9*) к договору поставки № 01-99/П от 09.07.1999 г. (далее - *Договор*) о нижеследующем:

1. Стороны определили следующие условия поставки железорудного сырья - окатышей (ТУ 14-00186938-003-95) и агломерата (ТУ 14-00186938-005-95) (далее по тексту – Продукция) в феврале 2000 года:

| № п/п | Адрес поставки | Объем поставки, тонн | |
|---|---|---|---|
| | | агломерат | окатыши |
| 1. | ОАО «Нижнетагильский металлургический комбинат» (ОАО «НТМК») | 114 000 | 266 000 |
| 2. | ОАО «Чусовской металлургический завод» (ОАО «ЧМЗ») | 32 600 | 76 100 |
| 3. | ОАО «Серовский металлургический завод» | 28 000 | 12 000 |
| | ВСЕГО: | 174 600 | 354 100 |

2. Ориентировочный объем поставки Продукции в феврале 2000 года составляет:
- 174 600 (Сто семьдесят четыре тысячи шестьсот) тонн агломерата,
- 354 100 (Триста пятьдесят четыре тысячи сто) тонн окатышей.

3. Предварительная цена за Продукцию, отгружаемую в феврале 2000 года, составляет:
- агломерат – 324 руб. за тонну, в т.ч. НДС 20%=54 руб.
- окатыши – 324 руб. за тонну, в т.ч. НДС 20%=54 руб.

4. Ориентировочная общая стоимость Продукции отгружаемой в феврале 2000 года составляет 171 298 800 (Сто семьдесят один миллион двести девяносто восемь тысяч восемьсот) рублей, в том числе НДС 20 % – 28 549 800 (Двадцать восемь миллионов пятьсот сорок девять тысяч восемьсот) рублей.

5. Объем поставки Продукции и цена на нее в феврале 2000 года могут быть изменены.

6. При отсутствии дополнительных согласований в расчетах между Сторонами, принимается цена на Продукцию указанная в п.3 настоящего *Дополнительного соглашения №9*.

7. Настоящее *Дополнительное соглашение №9* является неотъемлемой частью *Договора*.

От Поставщика                                    От Покупателя

/Хайдаров Д.А./                                  /Бухарин Г.М./

*Дополнительное соглашение № 9 к Договору поставки № 01-99/П от 09 июля 1999 г.*

*ДОПОЛНИТЕЛЬНОЕ СОГЛАШЕНИЕ № 6*
*к Договору поставки № 01-99/П от 09.07.1999 г.*

г. Качканар　　　　　　　　　　　　　　　　　　　　　　　　«29» ноября 1999 г.

Открытое акционерное общество «Качканарский горно-обогатительный комбинат «Ванадий», именуемое в дальнейшем Поставщик, в лице Генерального директора Хайдарова Д.А., действующего на основании Устава и

Общество с ограниченной ответственностью «Полипром», именуемое в дальнейшем Покупатель, в лице Генерального Директора Бухарина Г.М., действующего на основании Устава,

вместе именуемые как Стороны, заключили настоящее Дополнительное соглашение №6 (далее по тексту – *Дополнительное соглашение №6*) к договору поставки № 01-99/П от 09.07.1999 г. (далее - *Договор*) о нижеследующем:

1. Стороны определили следующие условия поставки железорудного сырья - окатышей (ТУ 14-00186938-003-95) и агломерата (ТУ 14-00186938-005-95) (далее по тексту – *Продукция*) в декабре 1999 года:

| № п/п | Адрес поставки | Объем поставки, тонн | |
|---|---|---|---|
| | | агломерат | окатыши |
| 1. | ОАО «Нижнетагильский металлургический комбинат» (ОАО «НТМК») | 166 400 | 250 500 |
| 2. | ОАО «Чусовской металлургический завод» (ОАО «ЧМЗ») | 38 000 | 63 000 |
| 3. | ОАО «Серовский металлургический завод» | 2 200 | 3 100 |
| 4. | ОАО «АК ЛМЗ» г. Лысьва | — | 160 |
| | ВСЕГО: | 206 600 | 316 760 |

2. Объем поставки Продукции в декабре 1999 года составляет:
- 206 600 (Двести шесть тысяч шестьсот) (+/-5%) тонн агломерата,
- 316 760 (Триста шестнадцать тысяч семьсот шестьдесят) (+/-5%) тонн окатышей.

3. Цена за Продукцию, отгружаемую в декабре 1999 года, составляет:
- агломерат – 312 руб. за тонну, в т.ч. НДС 20%=52 руб.
- окатыши – 306 руб. за тонну, в т.ч. НДС 20%=51 руб.

4. Общая стоимость Продукции отгружаемой в декабре 1999 года составляет 161 387 760 (Сто шестьдесят один миллион триста восемьдесят семь тысяч семьсот шестьдесят) (+/-5%) рублей, в том числе НДС 20 % – 26 897 960 (Двадцать шесть миллионов восемьсот девяносто семь тысяч девятьсот шестьдесят) рублей.

5. Настоящее *Дополнительное соглашение №6* является неотъемлемой частью *Договора*.

От Поставщика　　　　　　　　　　　　　　　　　От Покупателя

_____ /Хайдаров Д.А./　　　　　　　　_____ /Бухарин Г.М./

*Дополнительное соглашение № 6 к Договору поставки № 01-99/П от 09 июля 1999 г.*

A - 1572

## ДОПОЛНИТЕЛЬНОЕ СОГЛАШЕНИЕ № 1
### к договору поставки № 01-99/П от 28.06.1999 г.

г. Качканар                                                                         «___» июля 1999 г.

Открытое акционерное общество «Качканарский горно-обогатительный комбинат «Ванадий», именуемое в дальнейшем Поставщик, в лице Генерального директора Хайдарова Д.А., действующего на основании Устава и

Общество с ограниченной ответственностью «Полипром», именуемое в дальнейшем Покупатель, в лице Генерального Директора Бухарина Г.М., действующего на основании Устава,

вместе именуемые как Стороны, заключили настоящее Дополнительное соглашение №1 (далее по тексту – *Дополнительное соглашение №1*) к договору поставки № 01-99/П от 28.06.1999 г. (далее - *Договор*) о нижеследующем:

1. Стороны определили следующие условия поставки железорудного сырья - окатышей (ТУ 14-00186933-003-95) и агломерата (ТУ 14-00186933-005-95) (далее по тексту – Продукция) в июле 1999 года:

| № п/п | Адрес поставки | Объем поставки, тонн | |
|---|---|---|---|
| | | агломерат | окатыши |
| 1. | ОАО «Нижнетагильский металлургический комбинат» (ОАО «НТМК») | 131 000 | 249 000 |
| 2. | ОАО «Серовский металлургический завод» | 9 500 | 9 500 |
| 3. | ОАО «Западно-Сибирский металлургический комбинат» (ОАО «ЗСМК») | — | 41 000 |
| 4. | ОАО «Чусовской металлургический завод» (ОАО «ЧМЗ») | 33 000 | 76 000 |
| 5. | ОАО «Челябинский металлургический завод» (ОАО «Мечел») | — | 50 000 |
| 6. | ОАО «Новолипецкий металлургический комбинат» (ОАО «НЛМК») | — | 70 000 |
| | ВСЕГО: | 173 500 | 495 500 |

2. Объем поставки в июле 1999 года составляет:
- 173 500 (Сто семьдесят три тысячи пятьсот) (+/-5%) тонн агломерата,
- 495 500 (Четыреста девяносто пять тысяч пятьсот) (+/-5%) тонн окатышей.

3. Цена за Продукцию, отгружаемую в июле 1999 года, составляет:
- агломерат – 240 руб. за тонну, в т.ч. НДС 20%=40 руб.
- окатыши – 228 руб. за тонну, в т.ч. НДС 20%=38 руб.

4. Общая стоимость Продукции отгружаемой в июле 1999 года составляет 154 614 000 (Сто пятьдесят четыре миллиона шестьсот четырнадцать тысяч)(+/-5%) рублей, в том числе НДС 20 % – 25 769 000 (Двадцать пять миллионов семьсот шестьдесят девять тысяч) рублей.

5. Настоящее *Дополнительное соглашение №1* являются неотъемлемой частью *Договора*.



От Поставщика                                                                    От Покупателя

/Хайдаров Д.А./                                                                   /Бухарин Г.М./

*Дополнительное соглашение №1 к Договору поставки № 01-99/П от 28 июня 1999 г.*

### *ДОПОЛНИТЕЛЬНОЕ СОГЛАШЕНИЕ № 5*
### *к Договору поставки № 01-99/П от 09.07.1999 г.*

г. Качканар                                                              «28» октября 1999 г.

Открытое акционерное общество «Качканарский горно-обогатительный комбинат «Ванадий», именуемое в дальнейшем Поставщик, в лице Генерального директора Хайдарова Д.А., действующего на основании Устава и

Общество с ограниченной ответственностью «Полипром», именуемое в дальнейшем Покупатель, в лице Генерального Директора Бухарина Г.М., действующего на основании Устава,

вместе именуемые как Стороны, заключили настоящее Дополнительное соглашение №5 (далее по тексту – *Дополнительное соглашение №5*) к договору поставки № 01-99/П от 09.07.1999 г. (далее - *Договор*) о нижеследующем:

1. Стороны определили следующие условия поставки железорудного сырья - окатышей (ТУ 14-00186938-003-95) и агломерата (ТУ 14-00186938-005-95) (далее по тексту – Продукция) в ноябре 1999 года:

| № п/п | Адрес поставки | Объем поставки, тонн | |
|---|---|---|---|
| | | агломерат | окатыши |
| 1. | ОАО «Нижнетагильский металлургический комбинат» (ОАО «НТМК») | 160 000 | 125 000 |
| 2. | ОАО «Чусовской металлургический завод» (ОАО «ЧМЗ») | 36 500 | 59 500 |
| 3. | ОАО «АК ЛМЗ» г. Лысьва | — | 22 |
| | ВСЕГО: | 196 500 | 184 522 |

2. Объем поставки Продукции в ноябре 1999 года составляет:
- 196 500 (Сто девяносто шесть тысяч пятьсот) (+/-5%) тонн агломерата,
- 184 500 (Сто восемьдесят четыре тысячи пятьсот) (+/-5%) тонн окатышей.

3. Цена за Продукцию, отгружаемую в ноябре 1999 года, составляет:
- агломерат – 312 руб. за тонну, в т.ч. НДС 20%=52 руб.
- окатыши – 300 руб. за тонну, в т.ч. НДС 20%=50 руб.

4. Общая стоимость Продукции отгружаемой в ноябре 1999 года составляет 116 664 600 (Сто шестнадцать миллионов шестьсот шестьдесят четыре тысячи шестьсот) (+/-5%) рублей, в том числе НДС 20 % – 19 444 100 (Девятнадцать миллионов четыреста сорок четыре тысячи сто) рублей.

5. Настоящее *Дополнительное соглашение №5* является неотъемлемой частью *Договора*.

От Поставщика                                            От Покупателя

_____/Хайдаров Д.А./                    _____/Бухарин Г.М./

*Дополнительное соглашение № 5 к Договору поставки № 01-99/П от 09 июля 1999 г.*

A - 1574

**Договор**
**поставки продукции № 02-99**

г. Качканар                                                «09» июля 1999 г.

Общество с ограниченной ответственностью «Полипром», именуемое в дальнейшем «Общество», в лице Генерального Директора Бухарина Г.М., действующего на основании Устава, с одной стороны, и Открытое акционерное общество Качканарский горно-обогатительный комбинат «Ванадий», именуемое в дальнейшем «Комбинат», в лице Генерального директора Хайдарова Д. А., действующего на основании Устава, с другой стороны, заключили настоящий Договор о нижеследующем:

### 1. ПРЕДМЕТ ДОГОВОРА.

1.1. Общество обязуется поставить в течение 1999 года, а Комбинат принять и оплатить следующую продукцию производства ОАО «Нижнетагильский металлургический комбинат»:
- шары D = 60 (ТУ 14-2-139-40)
- стержни (ГОСТ 2590-71, ТУ 144-586-76)
- кислород (ТУ 14-2-139-40)
- коксовая мелочь (ТУ 14-7-115-89)
- рельсы 12.5 (ТУ 14-2-797-88)
- рельсы 25 (ТУ 14-2-797-88).
- другую продукцию производства ОАО «НТМК».

1.2. Цены на поставляемую продукцию устанавливаются ежемесячно в Дополнительных соглашениях к настоящему Договору.

1.3. Объем продукции, указанной в п. 1.1., определяется согласно заявке Комбината на поставку продукции.

1.4. Стороны договорились, что все Дополнения, Спецификации, Приложения и изменения к условиям настоящего Договора, оформленные в надлежащем порядке, являются его неотъемлемой частью.

### 2. КАЧЕСТВО ПРОДУКЦИИ. УПАКОВКА.

2.1. Качество поставляемой продукции должно соответствовать действующим ГОСТ, ОСТ, ТУ.
На каждую партию поставляемой продукции выдается сертификат, либо документ его заменяющий, удостоверяющий качество продукции.

2.2. В случае установления отклонений качества поставляемой продукции по ТУ, ГОСТа, ОСТа, вызов представителя поставляющей стороны является обязательным, а груз получающей стороной принимается на ответственное хранение.

2.3. В случае передачи продукции несоответствующей качеству – Комбинат вправе требовать от Общества устранения недостатков в сроки, оговоренные сторонами дополнительно.

2.4. Упаковка продукции должна обеспечить сохранность продукции при перевозке и хранении.

### 3. ОБЯЗАТЕЛЬСТВА СТОРОН И ПОРЯДОК РАСЧЕТОВ.

3.1. Общая сумма настоящего Договора на момент его заключения составляет, ориентировочно, 100 000 000 (Сто миллионов) рублей без учета НДС и транспортных расходов.

3.2. Форма расчета – путем зачета взаимных требований по поставкам, осуществляемых Комбинатом в адрес Общества.

3.3. На поставляемую продукцию Общество обязуется предоставить Комбинату следующие документы: счет - фактуры, товарно-транспортные накладные, сертификаты качества продукции (документы их заменяющие), иные необходимые документы.

3.4. Общество обязуется в трехдневный срок уведомить Комбинат о факте отгрузки продукции с указанием № вагона, № ж/д накладной, точного количества поставляемой продукции.

3.5. Продукция передается Обществом Комбинату на условиях FCA г. Нижний Тагил. Доставка продукции до пункта назначения осуществляется за счет Комбината. Транспортные расходы по доставке продукции до пункта назначения оплачиваются Обществом и возмещаются Комбинатом сверх цен, устанавливаемых Сторонами в Дополнительных соглашениях к настоящему Договору.

## 4. УСЛОВИЯ ПОСТАВКИ, ПРИЕМКА ПРОДУКЦИИ.

4.1. Поставка продукции Общества производиться ж/д транспортом в вагонах МПС, в срок, предусмотренных пунктом 1.1. настоящего Договора.

4.2. В случае необходимости поставки дополнительных объемов продукции, сверх предусмотренных настоящим Договором, стороны решают этот вопрос путем заключения Дополнительного соглашения, либо путем обмена письмами, телеграммами, являющимися неотъемлемой частью настоящего Договора.

4.3. Днем выполнения обязательств по поставке продукции считается день сдачи продукции органу транспорта, определяемый датой на железнодорожной накладной, а при выборке на самовывоз – день получения продукции со склада.

4.4. Приемка продукции осуществляется в соответствии с Инструкциями П-6 от 15.05.1965 года и П-7 от 25.04.1966 года с последующими дополнениями и изменениями. При принятии компетентными органами новых инструкций о приемке продукции, они автоматически вступают в действие без внесения изменения в договор.

## 5. СПОРЫ СТОРОН. ОТВЕТСТВЕННОСТЬ.

5.1. По всем вопросам, не предусмотренным настоящим Договором, стороны руководствуются ГК РФ, иными нормативными актами, действующими на территории России.

5.2. Стороны несут имущественную ответственность за невыполнение или ненадлежащее выполнение условий настоящего Договора в соответствии с действующим законодательством РФ.

5.3. Заключение договора производиться на добровольной основе, поэтому преддоговорные споры не допускаются. При несогласии сторон с условиями Договора, он считается незаключенным.

5.4. Все спорные вопросы по исполнению настоящего Договора, неурегулированные добрым согласием сторон, передаются на рассмотрение арбитражного суда по месту нахождения ответчика.

До предъявления иска заинтересованная сторона обязана предъявить другой стороне претензию. Срок ответа на претензию – 30 дней с момента ее получения стороной. При полном или частичном отклонении претензии, при неполучении ответа в установленный срок (с учетом времени почтового пробега) заинтересованная сторона вправе обратиться в арбитражный суд.

5.5. Если выполнению обязательств препятствуют обстоятельства непреодолимой силы временно препятствующие или вовсе исключающие исполнение договорных обязательств (стихийные бедствия, аварии, пожар, военные действия любого характера, принятие

властей и хозяйственного управления, запрет МПС РФ на отгрузку по определенным направлениям), то срок поставки отдаляется на все время устранения этих обстоятельств, а вопрос имущественной ответственности решается с их учетом. О возникновении таких обстоятельств стороны извещают друг друга письменно в трехдневный срок.

В случае несоблюдения срока, предусмотренного настоящим пунктом, стороны при наступлении ответственности не вправе ссылаться на данные обстоятельства.

## 6. СРОК ДЕЙСТВИЯ ДОГОВОРА.

6.1. Срок действия настоящего Договора устанавливается с момента его подписания сторонами по 31 декабря 1999 года, а в части расчетов – до полного их проведения сторонами. По взаимной договоренности сторон срок действия Договора может быть продлен. Условия продления оговариваются сторонами дополнительно.

## 7. ЮРИДИЧЕСКИЕ АДРЕСА И РЕКВИЗИТЫ СТОРОН:

**Общество:** ИНН 0814113973, 358000, РФ, Республика Калмыкия, г. Элиста, ул. Ленина д. 249, ком. 505, расчетный счет 40702810800090000040 в филиале АКБ «Московский Деловой Мир» г. Элиста, БИК 044525466, к/с № 30101810900000000466, к/с 30301810600011680006 в АКБ «Московский деловой мир».

**Комбинат:** 624356, г. Качканар Свердловской обл., ул. Свердлова, 2, ИНН 6615001962. Р/с 40702810531201000090 в филиале ОАО «Уралпромстройбанк» г. Нижняя Тура. К/сч 30101810600000000762, БИК 046552762, код ст. Качканар Свердловской ж/д 773008, код предпр. –5752037, телетайп 721255 РУДА, тел/факс 21650.

Общество                                Комбинат

     

A - 1578

Joint-Stock Company
Kachkanar Iron Ore Mining & Dressing
Concern "Vanady"

2 Sverdlov Street, Kachkanar Sverdlovsk Oblast Russia 624356

No. 4001-89 of 10-4-00
to No. _____

To Poliprom L.L.C.
Republic of Kalmykia, city of Elista 358000
249 Lenin Street, #505
Moscow, G-270, a/l 50 119270

Having examined the claims presented by Poliprom L.L.C., the external manager of Vanadii Kachkanarskii Mining and Dressing Complex open joint stock company established the following.

Poliprom L.L.C. states a claim regarding its acknowledgement by competing creditor of Vanadii Kachkanarskii Mining and Dressing Complex open joint stock company, and concerning entering its requirements in the registry of creditors' requirements on the following bases.

Poliprom L.L.C.'s claim, following from agreement No. 15-99/PK of 10-27-99, concluded between Vanadii Kachkanarskii Mining and Dressing Complex open joint stock company and Poliprom L.L.C. is groundless and not established since this agreement was not concluded, deliveries according to it were not made to Vanadii Kachkanarskii Mining and Dressing Complex open joint stock company, the collateral act of mutual payments was signed by unauthorized persons, including I. S. Trishkina, who was discharged from Vanadii Kachkanarskii Mining and Dressing Complex open joint stock company February 1, 2000. All presented documents signed in the name of Vanadii Kachkanarskii Mining and Dressing Complex open joint stock company for delivery of metal products in January and February 2000 and collateral acts attached to the claim were made by unauthorized persons who applied a counterfeit seal, about which criminal case No. 184186 was initiated March 22, 2000 by the Nikulinsk inter-municipal prosecutor of the city of Moscow.

Thus, bases are lacking for entering liabilities submitted on the basis of agreement No. 15-99/PK of 10-27-99 in the register of claims of creditors of Vanadii Kachkanarskii Mining and Dressing Complex open joint stock company.

Requirements ensuing from Agreement No. 16-99/PK of 11-10-99, No. 01-99/P of 7-9-99, No. 02-99 of 7-9-99, No. S-01-99/M of 9-30-99, No. S-02/M-99 of 10-18-99, and No. KGOK 18/10-99 of October 18, 1999 are groundless and not established, since shares in the possession of Vanadii Kachkanarskii Mining and Dressing Complex open joint stock company have not been transferred, goods have not been delivered to Vanadii Kachkanarskii Mining and Dressing Complex open joint stock company during January and February, documents signed in the name of Vanadii Kachkanarskii Mining and Dressing Complex open joint stock company for delivery in January and February 2000

and collateral acts attached to the claim were done by unauthorized persons, in particular, by I. S. Trishkina, who was discharged from Vanadii Kachkanarskii Mining and Dressing Complex open joint stock company February 1, 2000, with application of a counterfeit seal, about which criminal case No. 184186 was initiated March 22, 2000 by the Nikulinsk inter-municipal prosecutor of the city of Moscow.

Thus, bases are lacking for entering liabilities submitted on the basis of the above-mentioned agreements in the register of claims of creditors of Vanadii Kachkanarskii Mining and Dressing Complex open joint stock company.

On the basis of what has been stated, and governed by article 75 of the Russian Federation law "Concerning insolvency(bankruptcy), the external manager of Vanadii Kachkanarskii Mining and Dressing Complex open joint stock company informs you that your claims are not subject to entering in the registry of creditors' claims of creditors of Vanadii Kachkanarskii Mining and Dressing Complex open joint stock company.

[signature]
O. S. Kozyrev
external manager
Vanadii Kachkanarskii Mining and Dressing Complex open joint stock company
[seal]: Russian Federation, Sverdlovsk Oblast, city of Kachkanar [illegible]

от:х



**Открытое акционерное общество**
**Качканарский горно-обогатительный**
**комбинат «Ванадий»**

*Joint-Stock Company*
*Kachkanar Iron Ore Mining & Dressing*
*Concern «Vanady»*

624356, Россия, Свердловская обл., г.Качканар, ул.Свердлова, 2     2,Sverdlov str., Kachkanar , Sverdlovsk reg., 624356, Russia

№ 40/4-89 от 04.10.00

на № _____

Обществу с ограниченной ответственностью
«Полипром»
358000, Р. Калмыкия, г. Элиста,
ул. Ленина, 249, к. 505
119270, г. Москва, Г-270, а/я 50

Рассмотрев предъявленные требования ООО «Полипром», Внешний управляющий ОАО «Качканарский горно-обогатительный комбинат «Ванадий» установил следующее.

ООО «Полипром» заявляет требование о признании его конкурсным кредитором ОАО «Качканарский горно-обогатительный комбинат «Ванадий» и включении его требований в реестр требований кредиторов по следующим основаниям.

Требование ООО «Полипром», следующее из договора № 15-99/ПК от 27.10.99 года, заключенного между ОАО «Качканарский горно-обогатительный комбинат «Ванадий» и ООО «Полипром» является необоснованным и не установленным, поскольку данный договор не заключался, поставка по нему в адрес ОАО «Качканарский горно-обогатительный комбинат «Ванадий» не производилась, акт сверки взаимных расчетов подписан неуполномоченными лицами, в том числе Тришкиной И.С., которая уволена с ОАО «Качканарский горно-обогатительный комбинат «Ванадий» 01 февраля 2000 года. Все представленные документы, подписанные от имени ОАО «Качканарский горно-обогатительный комбинат «Ванадий» на поставку металлопродукции в январе-феврале 2000 года и приложенные к требованию акты сверки учинены неуполномоченными лицами с приложением поддельной печати, о которой 22 марта 2000 года Никулинским межмуниципальным прокурором г. Москвы возбуждено уголовное дело № 184186.

Таким образом, отсутствуют основания для включения задолженности, предъявленной на основании договора № 15-99/ПК от 27.10.99 года в реестр требований кредиторов ОАО «Качканарский горно-обогатительный комбинат «Ванадий».

Требования, вытекающие из Договоров № 16-99/ПК от 10.11.99 года, № 01-99/П от 09.07.99 года, № 02-99 от 09.07.99 года, № S-01-99/М от 30.09.99 года, № S-02/М-99 от 18.10.99 года, № KGOK 18/10-99 от 18 октября 1999 года являются необоснованными и не установленными, поскольку акции в собственность ОАО «Качканарский горно-обогатительный комбинат «Ванадий» не передавались, товар в адрес ОАО «Качканарский горно-обогатительный комбинат «Ванадий» в январе-феврале не поставлялся, документы, подписанные от имени ОАО «Качканарский горно-обогатительный комбинат «Ванадий» на поставку в январе-феврале 2000 года и приложенные к требованию акты сверки учинены неуполномоченными лицами, в частности Тришкиной И.С., которая уволена с ОАО «Качканарский горно-обогатительный комбинат «Ванадий» 01 февраля 2000 года, с приложением поддельной печати, о которой 22 марта 2000 года Никулинским межмуниципальным прокурором г. Москвы возбуждено уголовное дело № 184186.

Таким образом, отсутствуют основания для включения задолженности, предъявленной на основании вышеуказанных договоров в реестр требований кредиторов ОАО «Качканарский горно-обогатительный комбинат «Ванадий».

На основании вышеизложенного и руководствуясь ст. 75 Закона РФ «О несостоятельности (банкротстве)», Внешний управляющий Открытого акционерного общества «Качканарский горно-обогатительный комбинат «Ванадий» уведомляет Вас о том, что Ваши требования не подлежат внесению в реестр требований кредиторов ОАО КГОК «Ванадий».

Внешний управляющий
ОАО «КГОК «Ванадий»

Козырев О.С.

A - 1582

**ARBITRATION COURT**
Sverdlovsk Oblast
**Determination**

Ekaterinburg
October 31, 2000                                      Case No. A60-4517/2000-C1

The Arbitration Court of Sverdlovsk Oblast, consisting of judges T. M. Ilyukhina and N.
V. Mikushina, under the presidency of N. V. Kazantseva, has examined in court session
an appeal by Poliprom L.L.C. of the decision of O. S. Kozyrev, the external manager of
Vanadiy Kachkanarskii Mining and Dressing Complex open joint stock company,
concerning his refusal to enter requirements in the registry of creditors.

with the participation in the session of external manager O. S. Kozyrev
representative of the Mining and Dressing Complex, V. A. Andrianov
representative of the Territorial Agency, D. S. Elistratov

On 8/22/2000 the Arbitration Court made a determination concerning introduction in the
enterprise of a debtor –Vanadiy Kachkanarskii Mining and Dressing Complex open joint
stock company – external management and designation of O. S. Kozyrev to the post of
external manager.

An appeal was addressed to the court from the debtor's creditor – Poliprom L.L.C. – to
the action of the external manager, who refused to acknowledge the creditor's
requirements and refused to enter the requirements in the registry of creditors'
requirements with the result that agreement under dispute, No. 15-99/PK of 10/27/99,
was not concluded by the parties, and the collateral act was signed by an unauthorized
person, since at the time of signing of the act, the complex's official had been discharged.
The creditor did not deliver on this agreement. The fact of signing the documents and the
use of a false seal by the city of Moscow prosecutor, evoked criminal case No. 184186.
        On the same basis, the external manager does not recognize the requirements
arising from agreements No. 16-99/PK of 11-10-99, No. 01-99/P of 7/9/99, No. 02-99 of
7/9/99, S-01-99/M of 9/30/2000, KGOK 18/10-99 of 10/18/99. The external manager
claims that shares according to the listed agreements were not transferred to the Complex,
goods were not delivered, and collateral acts were signed by an unauthorized person,
referring to the same criminal case.

In court session documents requested by determination of the court on 10/19/2000 were
not presented, and the representative of Poliprom L.L.C. was not present at the court
session.

The external manager petitioned concerning halting proceedings on the appeal, since the Kachkanar Municipal Court accepted for proceedings a case on a complaint by shareholder B. N. Biryukov concerning invalidation of agreements concluded with Poliprom L.L.C. (including disputable ones).

In addition, the external manager requests halting proceedings on the appeal, since according to evidence of the wrongful acts of Poliprom L.L.C. and of persons executing administrative functions in the organization, criminal case No. 208209 was initiated, and it is impossible to carry the trial on this appeal to completion.

The external manager petitioned concerning reclamation of authentic documents confirming the soundness of Poliprom L.L.C.'s requirements, since the Complex does not have these documents. A list of documents is attached to the motion.

In this regard, a motion was made concerning doing an expert appraisal on the correspondence of the time of preparation of documents (imprints of seals and signatures) and dates written on the documents.

The court examined all petitions.

The court considered reasonable the petition concerning halting proceedings on the appeal before the decision of the Kachkanar Municipal Court on the case concerning invalidation agreements with Poliprom L.L.C. enters into legal force.

The court also took into consideration the necessity of reclaiming authentic documents confirming the presence and amount of indebtedness of the Complex to Poliprom L.L.C.

The question of the necessity of doing a criminal expert appraisal of presented documents will be considered by the court in court session when the appeal is considered on its essence.

Governed by article 54 and 81 of the Russian Federation Arbitration Procedural Code, the Arbitration Court

### DETERMINED:

- to halt proceedings on the appeal before the decision of the Kachkanar Municipal Court on B. N. Beryukov's complaint concerning invalidation of a number of agreements enters into legal force.

- To oblige Poliprom L.L.C. to present to the court before 1-1-2001 what is listed in the attachment to this determination in authentic documents.

N. V. Kazantseva                   [seal]: Arbitration Court, Sverdlovsk Oblast, Russia
                                   [stamp]: [notary, illegible]
N. V. Mikushina
T.M. Ilyukhina

A - 1585

ОТ:Х



# АРБИТРАЖНЫЙ СУД
## *СВЕРДЛОВСКОЙ ОБЛАСТИ*
# Определение

*г. Екатеринбург*
*«31» октября 2000 г.*                    Дело № А60-4517/2000-С1

Арбитражный суд Свердловской области в составе судей Илюхиной Т.М., Микушиной Н.В. под председательством Казанцевой Н.В. рассмотрел в судебном заседании жалобу ООО «Полипром» на решение внешнего управляющего ОАО «Качканарский ГОК «Ванадий» Козырева О.С. об отказе включения требований в реестр кредиторов.

при участии в заседании внешнего управляющего Козырева О.С.
представителя ГОКа Андрианова В.А.
представителя Территориального агентства Елистратова Д.С.

22.08.2000 г. арбитражным судом принято определение о введении на предприятии должника – ОАО «Качканарский горно-обогатительный комбинат «Ванадий» внешнего управления и назначении на должность внешнего управляющего Козырева О.С.

В адрес суда поступила жалоба от кредитора должника – ООО «Полипром» на действия внешнего управляющего, отказавшего кредитору в признании его требований и включении требований в реестр требований кредиторов на том основании, что спорный договор № 15-99/ПК от 27.10.99 г. сторонами не заключался, а акт сверки подписан неуполномоченным лицом, поскольку на момент подписания акта работник комбината был уволен. Поставка по данному договору кредитором не производилась. По факту подписания документов и использования поддельной печати прокурором г.Москвы возбуждено уголовное дело № 184186.

По тем же основаниям внешний управляющий не признает требования, возникшие из договоров № 16-99/ПК от 10.11.99 г., № 01-99/П от 09.07.99 г., № 02-99 от 09.07.99 г., С-01-99/М от 30.09.2000 г., КГОК 18/10-99 от 18.10.99 г. Внешний управляющий утверждает, что акции по перечисленным договорам комбинату не передавались, товар не поступал, а акты сверки подписаны неуполномоченным лицом, ссылаясь на то же уголовное дело.

В судебное заседание не были представлены документы, запрошенные определением суда от 19.10.2000 г. и представитель ООО «Полипром» в заседание суда не явился.

262

Внешним управляющим заявлены ходатайства о приостановлении производства по жалобе, поскольку Качканарским городским судом принято к производству дело по иску акционера Бирюкова Б.Н. о признании договоров, заключенных с ООО «Полипром» (в том числе спорных) недействительными.

Кроме того, внешний управляющий просит приостановить производство по жалобе т.к. по фактам противоправных действий ООО «Полипром» и лиц, исполняющих в обществе управленческие функции, возбуждено уголовное дело № 208209 и рассмотрение данной жалобы до окончания следствия невозможно.

Внешним управляющим заявлено ходатайство об истребовании подлинных документов, подтверждающих обоснованность требований ООО «Полипром», поскольку эти документы отсутствуют на комбинате. Перечень документов приложен к ходатайству.

В связи с этим заявлено ходатайство о проведении экспертизы на соответствие времени изготовления документов (оттисков печатей, подписей) и дат, проставленных на документах.

Судом рассмотрены все заявленные ходатайства.

Суд счел правомерным ходатайство о приостановлении производства по жалобе до вступления в законную силу решения Качканарского городского суда по делу о признании недействительными договоров с ООО «Полипром».

Суд также, принял во внимание необходимость истребования подлинных документов, подтверждающих наличие и размер задолженности комбината перед ООО «Полипром».

Вопрос о необходимости проведения криминалистической экспертизы представленных документов будет рассмотрен судом в судебном заседании при рассмотрении жалобы по существу.

Руководствуясь ст.54, 81 АПК РФ, арбитражный суд

**ОПРЕДЕЛИЛ:**

- приостановить производство по жалобе до вступления в законную силу решения Качканарского городского суда по иску Бирюкова Б.Н. о признании ряда договоров недействительными.

- Обязать ООО «Полипром» в срок до 01.01.2001 г. представить суду в подлинниках документы, перечисленные в приложении к данному определению.

Председательствующий

Казанцева Н.В.

Микушина Н.В.
Илюхина Т.М.

No. 4001-243 of 2-16-2001      To the Arbitration Court, Sverdlovsk Oblast

                                 Case No. A60-4517/2000-S5

                                 On appeal of Poliprom L.L.C. to decision of
O. S. Kozyrev, external manager of Vanadii
Kachkanarskii Mining and Dressing Complex open
joint stock company,

                                 From Vanadii Kachkanarskii Mining and
Dressing Complex open joint stock company

                                 Petition to resume proceedings

        The Arbitration Court of Sverdlovsk Oblast October 31, 2000 halted proceeding on the appeal of Poliprom L.L.C. to the decision of O. S. Kozyrev, external manager of Vanadii Kachkanarskii Mining and Dressing Complex open joint stock company, concerning his refusal to enter requirements in the registry of creditors before the decision of the Kachkanar Municipal Court on B. N. Biryukov's complaint concerning the invalidation of a series of agreements comes into legal force.

        The Kachkanar Municipal Court, by determination of 2-5-2001, halted proceedings in the case on B. N. Biryukov's complaint against Vanadii Kachkanarskii Mining and Dressing Complex open joint stock company, the company Northwest Systems Limited, the company Neksiz Product L.L.C., Leneks L.L.C., Neksiz L.L.C., and Poliprom L.L.C. concerning invalidating the agreements.

        Thus, the circumstances that evoked halting the proceedings on Poliprom L.L.C.'s appeal have been eliminated.

        On the basis of what has been stated above, and governed by article 83 of Russian Federation Arbitration Procedural Code, I request resumption of proceedings on Poliprom L.L.C.'s appeal to the decision of O. S. Kozyrev, external manager of Vanadii Kachkanarskii Mining and Dressing Complex open joint stock company, concerning refusal to enter requirements in the registry of creditors.

                                 Enclosures:

1. Determination of the Kachkanar Municipal Court concerning halting proceedings on the case of B. N. Biryukov of 2-5-2001.

[signature]
O. S. Kozyrev
External Manager
Vanadii Kachkanarskii Mining and Dressing Complex open joint stock company
[seal]: [illegible]
[stamp]: Arbitration Court, Sverdlovsk Oblast, received 2-19-01, composition

A - 1588

ОТ:X                    НОМЕР ТЕЛЕФОНА:                    ЦЕК. 21 2001 19:07 СТР2

*№ 4001 - 243 от 16. 02. 2001г.*    В Арбитражный суд Свердловской области

Дело № А60-4517/2000-С5

По жалобе ООО «Полипром» на решение
внешнего управляющего ОАО "Качканарский
горно-обогатительный комбинат "Ванадий"
Козырева О.С.

От ОАО "Качканарский горно-
обогатительный комбинат "Ванадий"

Ходатайство
о возобновлении производства

Арбитражный суд Свердловской области 31 октября 2000 г. приостановил
производство по жалобе ООО «Полипром» на решение внешнего управляющего ОАО
"Качканарский горно-обогатительный комбинат "Ванадий" Козырева О.С. об отказе
включения требований в реестр кредиторов до вступления в законную силу решения
Качканарского городского суда по иску Бирюкова Б.Н. о признании ряда договоров
недействительными.

Качканарский городской суд определением от 05.02.2001 г. прекратил
производство по делу по иску Бирюкова Б.Н. к ОАО "Качканарский горно-
обогатительный комбинат "Ванадий", Компании «Нортвест Системз Лимитед»,
Компании «Нексиз Продакт Эл.Эл.Си», ООО «Ленэкс», ООО «Нэксиз», ООО
«Полипром» о признании договоров недействительными.

Таким образом, обстоятельства, вызвавшие приостановление производства по
жалобе ООО «Полипром», устранены.

На основании вышеизложенного и руководствуясь ст. 83 АПК РФ прошу
возобновить производство по жалобе ООО «Полипром» на решение внешнего
управляющего ОАО "Качканарский горно-обогатительный комбинат "Ванадий"
Козырева О.С. об отказе включения требований в реестр кредиторов.

Приложения:
1. Определение Качканарского городского суда о прекращении производства по делу
   Бирюкова Б.Н. от 05.02.2001 г.

Внешний управляющий
ОАО "Качканарский горно-обогатительный
комбинат "Ванадий"                                    О.С.Козырев



**ARBITRAZH COURT**
**for SVERDLOVSK OBLAST**
**DETERMINATION**

City of Ekaterinburg                                              Case No. A60-4517/2000-C1
February 19, 2001

Arbitrazh Court for Sverdlovsk oblast in the composition of the judges : Platonova E.A., Gayduk
A.A., presided by Kazantseva N.V. tried in a court session the challenges of OOO "Nexis",
"NordwestSystems Ltd", " Nexis Prodacts L.L.C." following the results of consideration by of
OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" of the claim of
the creditor OOO "Lebaut" and his inclusion into the Register.

with the participation in the session of : the Debtor' representatives trustee in bankruptcy Kozyrev
O. S.,
the representative of the Creditor-petitioner Ashikhmina M.M.
the representative FSFR – Elistratov D.S
representatives of OOO "Lebaut" – Starshinova E.A., Menshikov A.A.
the representative of Mining Integrated Plant - Grigorieva E.L

        On August 22, 2000 the Arbitrazh Court rendered a Determination on enforcement of
administration in bankruptcy at OAO "Vanadiy" Mining & Concentration Integrated Plant in the city
of Kachkanar" and appointment Kozyrev O.S. as trustee in bankruptcy .

        The court was addressed with the creditors' challenges of OOO "Lenex", OOO "Nexis",
"NordwestSystems Ltd", " Nexis Prodacts L.L.C." against the decision of the trustee in bankruptcy
to include the claims of OOO "Lebaut" into the Register of creditors , under Articles 15, 55 of the
Bankruptcy (insolvency) Law of RF.

        When considering the complaint it was established, that  OOO "Lenex", OOO "Nexis",
"NordwestSystems Ltd" are not the creditors of OAO "Vanadiy" Mining & Concentration
Integrated Plant in the city of Kachkanar". Consequently, the complaint was eligibly filed only by
the creditor - " Nexis Prodacts L.L.C."
        The trustee in bankruptcy in the due order acknowledged  1 097 062 495 roubles in arrears of
of OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" to OOO
"Lebaut".

        The arrears are based on promissory notes, presented to be payable.

        Filing a complaint the creditor believes, that the claims of OOO "Lebaut" were groundlessly
included into the creditors' Register, since all the promissory notes, presented to be payable in
violation of the Exchange Law were signed by unauthorized person on behalf of "Vanadiy"
Mining & Concentration Integrated Plant in the city of Kachkanar"- Gruzdev A.G., Deputy Director
General.
        All voidable Promissory Notes lack reference to the powers of the signatory.

A - 1591

Moreover, there is no decision of the Board of Directors of OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" on the distribution of the securities by the entity, Promissory Notes included, in violation of Article 65 of Federal Law on Corporations and Article 29.3.8 of Corporate Charter of OAO "Vanadiy".

The Creditor requests to hold the conduct of the trustee in bankruptcy contrary to law.

In the court session the representative of "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" filed a petition to close the proceedings in the complaint under p.1 of Article 85 of APC RF on the ground, that the Law on Bankruptcy (Insolvency) of RF fails to provide court trial for this sort of complaints.
Moreover, the representative of "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" believes, that the powers of the creditor's representative, who signed the complaint and participated in the court session, were not confirmed by the documents in accordance with the rules of the international law ( the Hague Convention).
The representative also maintains, that the creditor missed seven days term in accordance with Article 63 of the Law on Bankruptcy (Insolvency) of RF and the claims of the creditor are considered to be established.

The representative of OOO "Lebaut" failed to recall the complaint and in the court session agreed with the opinion of OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar".

When considering the complaint, the court held the challenges of " Nexis Prodacts L.L.C." to be groundless and may not be given satisfaction.

The claims of OOO "Lebaut" are based on promissory notes , the total amount thereof is 1 097 062 495, issued by different entities within the period since February 4, 2000 to February 23, 2000. and purchased thereafter by OOO "Lebaut".

Voidable Promissory Notes were not signed by Director General of "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar", however the court was provided with a power of attorney, dated February 1, 2000, issued to Gruzdev A.G., authorizing him to sign Promissory Notes
on behalf of "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar".

The Promissory Notes lack reference to the above-mentioned power of attorney, but this fact may not invalidate the notes, since at the time of signing the signatory was actually empowered, which is in compliance with the rules of Exchange Law.

As for the petition of OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar"on the necessity to close proceedings in the complaint, it was tried by the court and left without satisfaction, since the court consider the powers of the representative of " Nexis Prodacts L.L.C." to be confirmed.

Moreover, the court made a remark, that the creditor's complaint was filed in accordance with p.3 of Article 15, Article 55 of the Law on Bankruptcy .

Taking into account the above-mentioned, the court has no reasons to hold the complaint of the creditor grounded, and the conduct of the trustee in bankruptcy contrary to law.

Being guided by Article 140 of APC RF, Articles 15, 55 of the Law on Bankruptcy (Insolvency) of RF, the Arbitrazh Court

## HAS DETERMINED :

- to hold the challenges of " Nexis Prodacts L.L.C." on inclusion of the claims of OOO "Lebaut" into the register of creditors by the trustee in bankruptcy of OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" groundless, and the complaint may not be satisfied.


Presiding Judge                                                   Kazantseva N.V.

Judges                                                           Platonova E.A.

                                                                Gaiduk A.A.

# АРБИТРАЖНЫЙ СУД
### *СВЕРДЛОВСКОЙ ОБЛАСТИ*
# Определение

*г. Екатеринбург*
*«19» февраля 2001 г.*                                    Дело № А60-4517/2000-С1


Арбитражный суд Свердловской области в составе судей Платоновой Е.А., Гайдука А.А. . под председательством Казанцевой Н.В. рассмотрел в судебном заседании возражения ООО «Ленэкс», ООО «Нэксиз», «Нортвест Системс ЛТД.», «Нэксиз Продактс Эл.Эл.Си.» по результатам рассмотрения внешним управляющим ОАО «Качканарский горно-обогатаительный комбинат «Ванадий» Козыревым О.С. требований кредитора ООО «Лебаут» и включения его требований в реестр.

при участии в заседании: представителей должника внешнего управляющего Козырева О.С.
представителя - кредиторов-заявителей Ашихминой М.М.
представителя ФСФО – Елистратова Д.С.
представителей ООО «Лебаут» - Старшиновой Е.А., Меньшикова А.А.
представителя ГОКа – Григорьевой Е.Л.


22.08.2000 г. арбитражным судом вынесено определение о введении на ОАО «Качканарский ГОК «Ванадий» внешнего управления и назначении внешним управляющим Козырева О.С.

В адрес суда поступили возражения кредиторов – ООО «Ленэкс», ООО «Нэксиз», «Нортвест Системз ЛТД.», «Нэксиз Продактс Эл.Эл.Си.» на решение внешнего управляющего по включению требований ООО «Лебаут» в реестр кредиторов, в порядке ст.15, 55 ФЗ «О несостоятельности (банкротстве)».

В ходе рассмотрения жалобы установлено, что ООО «Ленэкс», ООО «Нэксиз» и «Нортвест Системз ЛТД.» не являются кредиторами ОАО «Качканарский ГОК «Ванадий».Следовательно, правомерно жалоба заявлена только кредитором – «Нэксиз Продактс Эл.Эл.Си.»

Внешним управляющим в установленном порядке признано 1 097 062 495 р. задолженности ОАО «Качканарский ГОК «Ванадий» перед ООО «Лебаут».

**A - 1595**

Задолженность основана на векселях, предъявленных кредитором к оплате.

Предъявляя жалобу, кредитор считает, что требования ООО «Лебаут» необоснованно были включены в реестр кредиторов, поскольку все векселя, предъявленные к оплате в нарушение вексельного законодательства были подписаны неуполномоченным лицом со стороны ГОКа – заместителем генерального директора Груздевым А.Г.

На всех спорных векселях отсутствует ссылка на полномочия лица, их подписавшего.

Кроме того, отсутствует решение Совета директоров ГОКа «Ванадий» на размещение обществом ценных бумаг, к каким относится вексель, в нарушение ст.65 ФЗ «Об акционерных обществах» и ст.29.3.8 Устава ОАО «Качканарский ГОК «Ванадий».

Кредитор просит признать действия внешнего управляющего незаконными.

В судебном заседании представителем ГОКа заявлено ходатайство о прекращении производства по жалобе по п.1 ст. 85 АПК РФ на том основании, что ФЗ «О несостоятельности (банкротстве)» не предусмотрено рассмотрение судом такого рода жалоб.

Кроме того, представитель ГОКа считает, что полномочия представителя кредитора, подписавшего жалобу и участвующего в судебном заседании не подтверждены документально в соответствии с требованиями международного права (Гаагской конвенции).

Представитель также утверждает, что кредитором пропущен семидневный срок по ст.63 Закона о банкротстве и требования кредитора считаются установленными.

Представитель ООО «Лебаут» отзыв на жалобу не представил и в судебном заседании согласился с мнением ОАО «Качканарский ГОК «Ванадий».

При рассмотрении жалобы суд установил, что возражения «Нэксиз Продактс Эл.Эл.Си.» необоснованны и удовлетворению не подлежат.

Требования ООО «Лебаут» основаны на простых векселях на общую сумму 1 097 062 495 р., выданных в период с 04.02.2000 г. по 23.02.2000 г. различным организациям и приобретенным в последствии ООО «Лебаут».

Спорные векселя подписаны не генеральным директором ОАО «Качканарский ГОК «Ванадий», однако, суду представлена доверенность от 01.02.2000 г., выданная Груздеву А.Г. с правом подписания от имени ГОКа векселей.

На векселя отсутствует ссылка на данную доверенность, но это обстоятельство не дает права признавать их недействительными, поскольку на момент подписания лицо, подписавшее их, было фактически наделено таким правом, что соответствует требованиям вексельного законодательства.

Что касается ходатайства ОАО «Качканарский ГОК «Ванадий» по поводу необходимости прекратить производство по жалобе, то оно рассмотрено судом и оставлено без удовлетворения, т.к. суд считает полномочия представиттеля «Нэксиз Продакт Эл.Эл.Си.» подтвержденными.

Кроме того, суд отмечает, что жалоба кредитора подана в соответствии с п.3 ст.15, ст.55 Закона о банкротстве.

Учитывая изложенное у суда отсутствуют основания для признания жалобы кредитора обоснованной, а действия внешнего управляющего незаконными.

Руководствуясь ст.140 АПК РФ, ст.15, 55 ФЗ «О несостоятельности (банкротстве)» арбитражный суд

## О П Р Е Д Е Л И Л :

- признать возражения «Нэксиз Продактс Эл.Эл.Си.» по включению требований ООО «Лебаут» в реестр кредиторов внешним управляющим ОАО «Качканарский горно-обогатительный комбинат «Ванадий» необоснованными, а жалобу не подлежащей удовлетворению.

Председательствующий судья                    Казанцева Н.В.

Судьи                                         Платонова Е.А.

                                              Гайдук А.А.

[p. 27]

[*National Emblem*]

## COURT OF ARBITRATION OF SVERDLOVSK PROVINCE

## RESOLUTION

*City of Ekaterinburg*

April 19, 2001                                    *Case No.* <u>A60-4517/2000-C1</u>

The appellate instance of the Court of Arbitration of Sverdlovsk Province, comprised of:

**Chair:**        N. L. Zorina

**Judges:**      G. I. Strelnikova, E. A. Bikmukhamedova

**In the presence of:**

For the plaintiff: Nexis Products LLC – M. M. Ashikhmina, general power of attorney dated October 15, 2000;

For the creditor: OOO Lebaut – N. S. Brusova, authorization of April 18, 2001;

For the debtor: OOO [*sic*] Vanadii Mining and Milling Complex of Kachkanar – O. S. Kozyrev – external manager, E. L. Grigorieva, attorney, authorization dated December 9, 2000.

For FSFO [Federal Service on Financial Recovery and Bankruptcy]: D. S. Elistratova – attorney, authorization No. 10 of January 4, 2001,

Reviewed at a session the appeal (protest) of Nexis Products LLC against the ruling of the Court of Arbitration of Sverdlovsk Province dated February 19, 2001 in matter No. A60-4517/2000-C1 (judges: N. V. Kazantseva, E. A. Platonova, A. A. Gaiduk) regarding the objections of OOO Lenex, OOO Nexis, Northwest Systems LTD, and Nexis Products LLC regarding the results of the review by the external manager of OAO Vanadii Mining and Milling Complex of Kachkanar of the demands of the creditor, OOO Lebaut, regarding its entry into the register.

OOO Lenex, OOO Nexis, Northwest Systems LTD, and Nexis Products LLC filed with the court of arbitration an appeal against the decision of the external manager of OAO Vanadii Mining and Milling Complex of Kachkanar regarding the entry of the demands of OOO Lebaut into the register of creditors (Article 15 of the Federal Insolvency (Bankruptcy) Act).

[p. 28]

- 2 -

Pursuant to the ruling of February 19, 2001, the appeal was denied. The court found that OOO Lenex, OOO Nexis and Northwest Systems LTD are not creditors of OAO Vanadii Mining and Milling Complex of Kachkanar and do not have the right to appeal the actions of the external manager. The appeal of the creditor Nexis Products LLC is not subject to a grant since the demands of the creditor, OOO Lebaut, recognized as found, are based on notes that are signed on behalf of the promisor (the debtor) by an authorized person, i.e., are valid.

The regularity of the ruling passed was examined in accordance with Articles 146, 153, and 160 of the Code of Arbitration Procedure of the Russian Federation regarding the appeal of Nexis Products LLC, which does not agree with the ruling, requests the ruling's revocation and the recognition of the actions of the arbitration manager related to the entry of the creditors of OOO Lebaut into the creditors' register as illegal with claims in the amount of 1,096,197,951 rubles. In the opinion of the appellant, the debtor, OAO Vanadii Mining and Milling Complex of Kachkanar, is not obligated under the notes presented for payment by OOO Lebaut because the notes have been signed by an unauthorized person—the deputy director of the debtor. The Board of Directors of OAO Vanadii Mining and Milling Complex of Kachkanar has not passed a decision for the offering of notes by which the requirements of Article 34 and 65 of the Federal Act on Joint Stock Companies have been violated; therefore, the transactions have been performed in abuse of authority (Item 1 of Article 183 of the Civil Code of the Russian Federation) and the party obligated to make payments based on the notes is not OAO Vanadii Mining and Milling Complex of Kachkanar but the person who has signed the notes—the deputy general director of the debtor, A. G. Gruzdev.

Upon reviewing the evidence in the case and hearing the attorneys for the parties, the court found the following:

The claims of the creditor, OOO Lebaut, are based on promissory notes released by OAO Vanadii Mining and Milling Complex of Kachkanar during the period from February 4, 2000 to February 23, 2000 to various organizations and subsequently acquired by OOO Lebaut.

OOO Lebaut was entered into the register of creditors of OAO Vanadii Mining and Milling Complex of Kachkanar on the basis of Item 3 of Article 63 of the Federal Insolvency (Bankruptcy) Act; the claim of OOO Lebaut was received in OAO Vanadii Mining and Milling Complex of Kachkanar on May 3, 2000 and, on May 15, 2000, the objections against the creditor's claims were submitted to the court of arbitration, to the provisional manager and to the creditor. In this manner, the debtor missed the seven-day deadline for the submission of any objections.

The reference of the appellant to the irregularity of the entry, into the register [...]

[p. 29]

- 3 -

[…] of creditors, of the claims of OOO Lebaut based on notes signed by an unauthorized person, is groundless.

The powers of the deputy general director of the debtor to sign notes have been determined by his authorization dated February 1, 2000 (vol. 38, sheet 41), and Article 1 of the Provision regarding Bills of Exchange and Promissory Notes (Resolution of the Central Executive Committee and the Council of People's Commissars of the USSR dated August 7, 1937, No. 104/1341) does not provide for the inclusion of any information regarding the powers of the person signing it in the text of the note. Despite the statement of the appellant, a decision by the Board of Directors of the OAO Vanadii Mining and Milling Complex of Kachkanar for the release of the notes was not required because such actions do not constitute a securities offering (Item 7, Section 2 of Article 65 of the Federal Act on Joint Stock Companies). In accordance with Article 2 of the Federal Act on the Securities Market dated July 8, 1999, the term "securities offering" applies only to issued securities. The notes released by the debtor do not meet the criteria for issued securities (Sections 1 –3 of Article 2 of the Federal Act on the Securities Market). The argument of the appellant that the consent of the Board of Directors for the release of the notes was necessary in light of the fact that they constituted several mutually related transactions whose total amount exceeded 25% of the book value of the debtor's assets (Item 1 o Article 25, Item 1 o Article 79 of the Federal Act on Joint Stock Companies), is rejected by the court because, by their legal nature, the release of a note constitutes a unilateral abstract transaction that leads to an obligation, not caused by anything (i.e. not related to any grounds whatsoever), to pay a certain amount (Item 2 of Article 1, Item 2 of Article 75 o the Provision on Bills of Exchange and Promissory Notes). The appellant's statement that the disputed notes were released by the debtor for the purpose of intentional bankruptcy (Item 2 of Article 10 of the Federal Insolvency (Bankruptcy) Act) is not accepted by the court. Pursuant to Finding No. 3-289 of August 18, 2000, of the Federal Service of Russia on Financial Recovery and Bankruptcy (vol. 20, sheet 24), no signs of intentional bankruptcy of OAO Vanadii Mining and Milling Complex of Kachkanar were found.

Therefore, there are no grounds for granting the appeal of Nexis Products LLC.

During the review of the appeal, it was found that OOO Lenex, OOO Nexis, and Northwest Systems LTD are not entered into the register of claims of creditors of OAO Vanadii Mining and Milling Complex of Kachkanar; therefore, they do not have the right to appeal the actions of the external manager pursuant to Articles 15 and 55 of the Federal Insolvency (Bankruptcy) Act.

[p. 30]

- 4 -

Based on the above and pursuant to Articles 157, 159, and 160 of the Code of Arbitration Procedure of the Russian Federation, the court

RESOLVED:

To leave the ruling of February 19, 2001, unchanged and not the grant the appeal.

[*round seal:*]   Court of Arbitration of Sverdlovsk Province, Russia

Chair                                              N. L. Zorina

Judges:                                            G. I. Strelnikova

                                                   E. A. Bikmukhamedova

[*stamp:*]
Authenticated
Specialist (Full Name): L. A. Novozhilova
Signature:        [*signature*]
Court of Arbitration of Sverdlovsk Province
Date: 4/24/2001


4/23/01 kt

A - 1601



# АРБИТРАЖНЫЙ СУД СВЕРДЛОВСКОЙ ОБЛАСТИ

# ПОСТАНОВЛЕНИЕ

*г. Екатеринбург*

19.04.2001г.                            *Дело  №*    А60-4517/2000-С1

Апелляционная инстанция Арбитражного суда Свердловской области в составе:

председательствующего    Зориной Н.Л.

судей    Стрельниковой Г.И., Бикмухаметовой Е.А.

**При участии:**

от заявителя: "Нэксиз Продактс Эл.Эл.Си" - Ашихмина М.М.-генеральная дов. от 15.10.2000г.,

от кредитора: ООО "Лебаут" - Брусова Н.С., дов. от 18.04.2001г.,

от должника: ООО "Качканарский РОК "Ванадий" - Козырев О.С.-внешний управляющий, Григорьева Е.Л. - представитель, дов. от

09.12.2000г.,

ФСФО: Елистратова Д.С.-представитель,дов. № 10 от 04.01.2001г.

Рассмотрела в заседании апелляционную жалобу (протест)

"Нэксиз Продактс Эл.Эл.Си." на определение Арбитражного суда Свердловской области от 19.02.2001г. по делу № А60-4517/2000-С1 (судьи Казанцева Н.В., Платонова Е.А., Гайдук А.А.) по возражениям ООО "Ленэкс", ООО "Нэксиз", Норвест Системс ЛТД", "Нэксиз Продактс Эл.Эл.Си." по результатам рассмотрения внешним управляющим ОАО "Качканарский ГОК "Ванадий" Козыревым О.С. требований кредитора ООО "Лебаут" о включении его в реестр.

ООО "Ленэкс", ООО "Нэксиз", "Норвест Система ЛТДУ, "Нэксиз Продактс Эл.Эл.Си." подали в арбитражный суд жалобу на решение внешнего управляющего ОАО "Качканарский горно-обогатительный комбинат "Ванадий" по включению требований ООО "Лебаут" в реестр кредиторов (ст.15, 55 ФЗ "О несостоятельности (банкротстве)".

A - 1603

- 2 -

Определением от 19.02.2001г. в удовлетворении жалобы отказано. Судом установлено, что ООО "Ленэкс", ООО "Нэксиз" и "Норвест Системз ЛТД" не являются кредиторами ОАО "Качканарский ГОК "Ванадий" и не вправе обжаловать действия внешнего управляющего. Жалоба кредитора "Нэксиз Продактс Эл.Эл.Си." удовлетворению не подлежит, поскольку признанные установленными требования кредитора – ООО "Лебаут" основаны на векселях, подписанных от имени векселедателя (должника) управомоченным лицом, т.е. являющихся действительными.

Правильность принятого определения проверена в порядке ст.ст. 146, 153,160 АПК РФ по апелляционной жалобе "Нэксиз Продактс Эл.Эл. Си.", которое с определением не согласно, просит его отменить и признать незаконными действия арбитражного управляющего по включению в реестр кредиторов ООО "Лебаут" с требованиями на сумму 1096197951рубль. По мнению заявителя жалобы, должник – ОАО "Качканарский ГОК "Ванадий" не является обязанным по векселям, предъявленным к оплате ООО "Лебаут", поскольку векселя подписаны неуправомоченным лицом – заместителем директора должника, Совет директоров ОАО "Качканарский ГОК "Ванадий" не принимал решения о размещении векселей, тем самым нарушены требования ст.ст.34 и 65 ФЗ "Об акционерных обществах", следовательно, сделки совершены с превышением полномочий (п.1 ст.183 Гражданского кодекса РФ),и обязанным к платежу по векселям является не ОАО "Качканарский ГОК "Ванадий", а лицо, подписавшее векселя – заместитель генерального директора должника Груздев А.Г.

Рассмотрев материалы дела, заслушав представителей сторон, суд установил.

Требования кредитора – ООО "Лебаут" основаны на простых векселях, выданных ОАО "Качканарский гок "Ванадий" в период с 04.02.2000г. по 23.02.2000г. различным организациям и впоследствии приобретенных ООО "Лебаут".

ООО "Лебаут" включено в реестр кредиторов ОАО "Качканарский ГОК "Ванадий"на основании п.3 ст.63 ФЗ "О несостоятельности (банкротстве": требование ООО "Лебаут" поступило в ОАО "Качканарский ГОК "Ванадий" 03.05.2000г., возражения на требования кредитора направлены в арбитражный суд, временному управляющему и кредитору 15.05.2000г. Таким образом, должником был пропущен семидневный срок для направления возражений.

Ссылка заявителя жалобы на неправомерность включения в реестр

- 3 -

кредиторов требований ООО "Лебаут", основанных на векселя, подписан-
ных неуправомоченным лицом, несостоятельна.

Полномочия заместителя генерального директора должника на под-
писание векселей определены доверенностью от 01.02.2000г. (т.38,
л.д.41), а ст.1 Положения о переводном и простом векселе (пост.
ЦИК и СНК СССР от 07.08.37г. № 104/1341) не предусматривает включе-
ние в текст векселя сведений об основаниях полномочий лица, его
подписавшего. Вопреки утверждению заявителя жалобы, решения Совета
директоров ОАО "Качканарский ГОК "Ванадий" на выдачу векселей не
требовалось, поскольку такие действия размещением ценных бумаг (п.7
ч.2 ст.65 ФЗ "Об акционерных обществах") не являются. Понятие –
"размещение ценных бумаг" – в соответствии со ст.2 ФЗ от 08.07.99
"О рынке ценных бумаг" применяется только к эмиссионным ценным бума-
гам. Выданные должником векселя признаком эмиссионных ценных бумаг
не отвечают (ч.1-3 ст.2 ФЗ "О рынке ценных бумаг"). Довод заявите-
ля жалобы о необходимости согласия Совета директоров на выдачу век-
селей ввиду того, что они представляют собой несколько взаимосвязан-
ных сделок, в общей сумме превышающих 25% балансовой стоимости акти-
вов должника (п.1 ст.25, п.1 ст.79 ФЗ "Об акционерных обществах"),
судом отклоняется, поскольку по юридической природе выдача векселя
представляет собой одностороннюю абстрактную сделку, порождающую
ничем не обусловленное (т.е. не связанное с каким бы то ни было ос-
нованием) обязательство уплатить определенную сумму -п.2 ст.1, п.2
ст.75 Положения о переводном и простом векселе). Ссылка заявителя
жалобы на то, что спорные векселя были выданы должником с целью
преднамеренного банкротства (п.2 ст.10 ФЗ "О несостоятельности
(банкротстве)" судом не принимается. По заключению Федеральной служ-
бы России по финансовому оздоровлению и банкротству № 3-289 от
18.08.2000г. (т.20, л.д.24) наличия признаков преднамеренного банк-
ротства ОАО "Качканарский ГОК "Ванадий" не обнаружено.

Таким образом оснований для удовлетворения жалобы "Нэксиз Про-
дактс Эл.Эл.Си." нет.

При рассмотрении жалобы установлено, что ООО "Ленэкс", ООО
"Нэксиз", "Норвест Системз ЛТД") в реестр требований кредиторов
ОАО "Качканарский ГОК "Ванадий" не включены, а следовательно, не
вправе обжаловать действия внешнего управляющего в порядке ст.ст.15,
и 55 ФЗ "О несостоятельности (банкротстве)".

– 4 –

На основании изложенного, руководствуясь ст.ст.157, 159, 160 Арбитражного процессуального кодекса РФ, суд

П О С Т А Н О В И Л :

Определение от 19.02.2001г. оставить без изменения, апелляционную жалобу без удовлетворения.

Председательствующий                                      Н.Л.Зорина

                                                         Г.И.Стрельникова

                                                         Е.А.Бикмухаметова

23.04.01г.кт

A - 1606

[national emblem]

## FEDERAL COURT OF ARBITRATION OF THE URAL DISTRICT

## DETERMINATION

Of the Cassation Court regarding the Inspection of the Legality and Substantiation of the
Enforced Decisions (Resolutions) of the Courts of Arbitration

*City of Ekaterinburg*
July 12, 2001                                             *Case No. F09-715/01 GK*

The Federal Arbitration Court of the Ural District in charge of the inspection at the cassation
instance of the legality of the decisions and resolutions of the courts of arbitration of entities in
the Russian Federation passed by such entities in the lower and appellate instances, comprised
of:

Chair:              C. V. Balachkov,
Judges:             L. I. Kondratyeva,
                    F. V. Kuznetsov

Reviewed during a court session the cassation appeal of Nexus Products LLC of the
determination of February 19, 2001 and the April 19, 2001 resolution of the appellate instance of
the Court of Appeals of Sverdlovsk Province in matter No. A60-4517/2000-S2 on the application
of OAO Krasnouralskmezhraigaz to recognize the insolvency of OAO Vanadii Mining and
Milling Complex of Kachkanar.

The sessions were attended by representatives of:

Vanadii Mining and Milling Complex – E. L. Grigoryeva, authorization dated May 14, 2001
                                     E. N. Starshinova, authorization dated May
                                     14, 2001;
Inter-regional Territorial Body in the Ural Federal District of the Federal Financial Recovery and
Bankruptcy Service – D. S. Elistratov, authorization January 4, 2001

The rights and obligations were explained.

No objections to the composition of the court were made.

Nexus Products LLC has filed a complaint regarding the actions of the external manager in
connection with the inclusion of OOO Lebaut into the creditors' register of OAO Vanadii
Mining and Milling Complex of Kachkanar in the amount of 1,097,062,495 rubles.

With a determination dated February 19, 2001 (judges: N. V. Kazantseva, E. A. Platonova, A. A.
Gaiduk), the objections of the applicant were recognized as unjustified.

A - 1607

Pursuant to Resolution of the appellate instance dated April 19, 2001 (Judges: N. L. Zorina, G. I. Strelnikova, E. A. Bikmuhamedova), the Determination of February 19, 2001 was left unchanged.

Nexus Products LLC does not agree with the above court documents and is requesting their revocation referring to an inappropriate application of Articles 33, 34, and 65 of the Joint Stock Companies Act by the court.

The debtor has filed a petition for dismissal of the cassation appeal since it has been signed by a person who had not been authorized to sign it.

Upon reviewing the petition of the debtor, the cassation court believes that the petition should be granted for the following reasons:

Pursuant to Section 1, Article 165 of the Code of Arbitration Procedure of the Russian Federation, the appeal signed by the representative is accompanied by an authorization confirming the representative's authority for appealing court documents.

The cassation appeal of the applicant has been signed by a representative acting based on a general power of attorney from the company dated November 15, 2000, which authorizes him to conduct business on the territory of the Russian Federation.

In violation of Articles 3 and 4 of the Hague Convention, which revokes the requirement for legalization of foreign official documents, the general power of attorney dated November 15, 2000, has not been accompanied by an apostil in accordance with the appropriate procedure.

Under such circumstances, the authority of the representative in the area of the appeal of court documents has not been properly confirmed. In accordance with Section 3, Article 87 of the Code of Arbitration Procedure of the Russian Federation, the cassation appeal of Nexus Products LLC is not subject to a hearing.

Guided by Section 3, Article 87 of the Code of Arbitration Procedure of the Russian Federation, the court

## DETERMINED:

Not to hear the cassation appeal of Nexus Products LLC of the Determination dated February 19, 2001, and the April 19, 2001, Resolution of the Appellate instance of the Court of Arbitration of Sverdlovsk Province in matter No. A60-4517/2000.

Chair:                                              S. V. Balachkov

Judges:                                             L. I. Kondratyeva
                                                    G. V Kuznetsov

[stamp: illegible] [round seal: illegible]

ФЕДЕРАЛЬНЫЙ АРБИТРАЖНЫЙ СУД УРАЛЬСКОГО ОКРУГА

О П Р Е Д Е Л Е Н И Е
кассационной инстанции по проверке законности и обоснованности решений
(постановлений) арбитражных судов, вступивших в законную силу

г. Екатеринбург
12 июля 2001 года                                  Дело № Ф09-715/01 ГК

     Федеральный арбитражный суд Уральского округа по проверке в кассационной инстанции законности решений и постановлений арбитражных судов субъектов Российской Федерации, принятых ими в первой и апелляционной инстанциях, в составе:
председательствующего: Балачкова С.В.,
судей:                Кондратьевой Л.И.,
                  Кузнецова Г.В.
рассмотрел в судебном заседании кассационную жалобу «Нексиз Продактс Эл.Эл.Си» на определение от 19.02.01 и постановление апелляционной инстанции от 19.04.01 Арбитражного суда Свердловской области по делу № А60-4517/2000-С2 по заявлению ОАО «Красноуральскмежрайгаз» о признании несостоятельным ОАО «Качканарский ГОК «Ванадий».
     В заседании приняли участие представители:
ГОК «Ванадий» – Григорьева Е.Л., дов. от 14.05.01,
                Старшинова Е.Н., дов. от 14.05.01;
Межрегионального территориального органа в Уральском федеральном округе ФСФО России – Елистратов Д.С., дов. от 04.01.01.
     Права и обязанности разъяснены.
     Отводов составу суда не заявлено.
     «Нексиз Продактс Эл.Эл.Си» заявлена жалоба на действия внешнего управляющего по включению ООО «Лебаут» в реестр кредиторов ОАО «Качканарский ГОК «Ванадий» в размере 1097062495 руб.
     Определением от 19.02.01 (судьи: Казанцева Н.В., Платонова Е.А., Гайдук А.А.) возражения заявителя признаны необоснованными.
     Постановлением апелляционной инстанции от 19.04.01 (судьи: Зорина Н.Л., Стрельникова Г.И., Бикмухаметова Е.А.) определение от 19.02.01 оставлено без изменения.
     «Нексиз Продактс Эл.Эл.Си» с названными судебными актами не согласна, просит их отклонить, ссылаясь на неправильное применение судом ст.ст.33, 34, 65 Закона «Об акционерных обществах».
     Должником заявлено ходатайство об оставлении кассационной жалобы без рассмотрения, поскольку она подписана лицом, не имеющим права ее подписывать.

A - 1611

Рассмотрев ходатайство должника, суд кассационной инстанции полагает, что оно подлежит удовлетворению по следующим основаниям.

В силу п.1 ст.165 АПК РФ к жалобе, подписанной представителем, прилагается доверенность, подтверждающая его полномочия на обжалование судебных актов.

Кассационная жалоба заявителя подписана представителем, действующим по генеральной доверенности компании от 15.11.2000, управомочивающей вести дела на территории Российской Федерации.

В нарушение ст.ст.3, 4 Гаагской Конвенции, отменяющей требование легализации иностранных официальных документов, к генеральной доверенности от 15.11.2000 не проставлен апостиль в предусмотренном порядке.

При таких обстоятельствах полномочия представителя на обжалование судебных актов надлежащим образом не подтверждены. Кассационная жалоба «Нексиз Продактс Эл.Эл.Си» не подлежит рассмотрению применительно к п.3 ст.87 АПК РФ.

Руководствуясь п.3 ст.87 АПК РФ, суд

О П Р Е Д Е Л И Л:

Кассационную жалобу «Нексиз Продактс Эл.Эл.Си» на определение от 19.02.01 и постановление апелляционной инстанции от 19.04.01 Арбитражного суда Свердловской области по делу № А60-4517/2000 оставить без рассмотрения.

Председательствующий                                    С.В.Балачков

Судьи                                                             Л.И.Кондратьева

                                                                      Г.В.Кузнецов

**ARBITRAZH COURT**
**for SVERDLOVSK OBLAST**
**DETERMINATION**

City of Ekaterinburg                                    Case No. A60-4517/2000-C1
April 18, 2001

Arbitrazh Court for Sverdlovsk oblast in the composition of the judges : Platonova E.A., Lipina
I.V., presided by Kazantseva N.V. tried in a court session the challenges of OOO " Nexis Prodacts
L.L.C." against the results of consideration by Kozyrev O.S. , the trustee in bankruptcy of OAO
"Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar", of the claims of the
creditor OOO "Syrius" and inclusion of his claims into the Register.

with the participation in the session of : the Debtor' representatives trustee in bankruptcy Kozyrev
O. S.,
the representative of the Creditors-petitioners Ashikhmina M.M.          ·
representatives of OOO "Syrius" – Brusova N.C

On August 22, 2000 the Arbitrazh Court rendered the Determination on enforcement of
administration in bankruptcy at OAO "Vanadiy" Mining & Concentration Integrated Plant in the city
of Kachkanar" and appointment Kozyrev O.S. as trustee in bankruptcy .

The court was addressed with the creditors' challenges - " Nexis Prodacts L.L.C." against
the decision of the trustee in bankruptcy to include the claims of OOO "Syrius" into the Register of
creditors, under Articles 15, 55 of the Bankruptcy (insolvency) Law of RF.

The trustee in bankruptcy in the due order acknowledged 1 096 197 951 roubles in arrears
of to OOO "Syrius".

The arrears are based on the promissory notes, presented by the creditor OOO "Lebaut" to
be payable, and afterwards the right of claim thereunder was assigned to OOO "Syrius".

Filing a complaint the creditor believes, that the claims of OOO "Lebaut" were originally
groundlessly included into the Register of creditors, since all the promissory notes, presented to be
payable in violation of the Exchange Law were signed by unauthorized person on behalf of
"Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar"- Gruzdev A.G.,
Deputy Director General.
All voidable Promissory Notes lack reference to the powers of the signatory.
Moreover, there is no decision of the Board of Directors of OAO "Vanadiy" Mining &
Concentration Integrated Plant in the city of Kachkanar" on the distribution of the securities by the
entity, Promissory Notes included, in violation of Article 65 of Federal Law on Corporations and
Article 29.3.8 of Corporate Charter of OAO "Vanadiy".
In the opinion of the creditor - " Nexis Prodacts L.L.C.", the above-mentioned grounds
impede the assignment of the right of claim on voidable notes of OOO "Syrius" and inclusion of

**A - 1613**

OOO "Syrius" into the register of Creditors of OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" .

The Creditor requests to hold the conduct of the trustee in bankruptcy contrary to law and exclude OOO "Syrius", having the amount of claim 1 096 197 951 roubles, from the Register of creditors in bankruptcy.

The representative of OOO "Syrius" disagreed with the challenges of the petitioner and considers lawful inclusion of his claims into the Register of creditors claims to be grounded.

The trustee in bankruptcy of OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" also disagreed with the challenges of the petitioner and considers inclusion into the Register of the claims of OOO "Syrius" to be valid, on the ground that voidable notes were signed by the authorized person, having the power of attorney, dated February 1, 2000, at the time of signing, and absence of reference on the notes to the power of attorney of the signatory may not be ground for invalidating such a signature.

When considering the complaint the court held the challenges of " Nexis Prodacts L.L.C." to be groundless and may not be satisfied.

The claims of OOO "Syrius" are based on promissory notes , the total amount thereof is 1 096 197 951, issued by different entities within the period since February 4, 2000 to February 23, 2000. and purchased thereafter by OOO "Lebaut", the right of claim thereunder was assigned to OOO "Syrius'.

Voidable Promissory Notes were not signed by Director General of "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar", however the court was provided with a power of attorney, dated February 1, 2000, issued to Gruzdev A.G., authorizing him to sign Promissory Notes
on behalf of "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar".

The Promissory Notes lack reference to the above-mentioned power of attorney, but this fact may not invalidate the notes, since at the time of signing the signatory was actually empowered, which is in compliance with the rules of Exchange Law.

Moreover, the court made a remark, that on February 19, 2001 under the Determination of the Arbitrazh Court on the results of consideration of the challenges of a number of creditors, including " Nexis Prodacts L.L.C.", no satisfaction was given to their claim of exclusion of OOO "Lebaut" of the Register of creditors and to the claim of invalidating the conduct of the trustee in bankruptcy .

In the court session on February 19, 2001 the court gave its appraisal to the voidable notes.

Since the present court session conducts trial of the same grounds and the same notes, the court maintains that the facts found on February 19, 2001 require no reappraisal .

Taking into account the above-mentioned, the court has no reasons to hold the complaint of the creditor grounded, and the conduct of the trustee in bankruptcy contrary to law.

Being guided by Article 140 of APC RF, Articles 15, 55 of the Law on Bankruptcy (Insolvency) of RF, the Arbitrazh Court

### HAS DETERMINED :

-   to hold the challenges of " Nexis Prodacts L.L.C." on inclusion of the claims of OOO "Syrius" into the Register of creditors by the trustee in bankruptcy of OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" groundless.

Presiding Judge                                             Kazantseva N.V.

Judges                                                         Platonova E.A.

                                                                  Lipina I.V.



# АРБИТРАЖНЫЙ СУД
## *СВЕРДЛОВСКОЙ ОБЛАСТИ*
# Определение

*г. Екатеринбург*
*«18» апреля 2001 г.*                    Дело № А60-4517/2000-С1


Арбитражный суд Свердловской области в составе судей Платоновой Е.А., Липиной И.В., под председательством Казанцевой Н.В. рассмотрел в судебном заседании возражения «Нэксис Продакс Эл. Эл. Си.» по результатам рассмотрения внешним управляющим ОАО «Качканарский горно-обогатаительный комбинат «Ванадий» Козыревым О.С. требований кредитора ООО «Сириус» и включения его требований в реестр.

при участии в заседании: представителей должника - внешнего управляющего Козырева О.С., Григорьевой Е.Л.
представителя - кредиторов-заявителей Ашихминой М.М.
представителя ООО «Сириус» - Брусовой Н.С.


22.08.2000 г. арбитражным судом вынесено определение о введении на ОАО «Качканарский ГОК «Ванадий» внешнего управления и назначении внешним управляющим Козырева О.С.

В адрес суда поступили возражения кредитора – «Нэксиз Продактс Эл.Эл.Си.» на решение внешнего управляющего по включению требований ООО «Сириус» в реестр кредиторов, в порядке ст.15, 55 ФЗ «О несостоятельности (банкротство)».

Внешним управляющим в установленном порядке признано 1 096 197 951р. задолженности ОАО «Качканарский ГОК «Ванадий» перед ООО «Сириус».

Задолженность основана на векселях, предъявленных кредитором ООО «Лебаут» к оплате и в последствии право требования по которым передано ООО «Сириус»

Предъявляя жалобу, кредитор считает, что требования ООО «Лебаут» изначально необоснованно были включены в реестр кредиторов, поскольку все векселя, предъявленные к оплате в нарушение вексельного

**A - 1617**

ГОКа – заместителем генерального директора Груздевым А.Г.

На всех спорных векселях отсутствует ссылка на полномочия лица, их подписавшего.

Кроме того, отсутствует решение Совета директоров ГОКа «Ванадий» на размещение обществом ценных бумаг, к каким относится вексель, в нарушение ст.65 ФЗ «Об акционерных обществах» и ст.29.3.8 Устава ОАО «Качканарский ГОК «Ванадий».

По мнению кредитора – «Нэксис Продакс Эл. Эл. Си.» указанные основания являются препятствием для передачи прав требования по спорным векселям ООО «Сириус» и включения ООО «Сириус» в реестр кредиторов ГОКа «Ванадий».

Кредитор просит признать действия внешнего управляющего незаконными и исключить из реестра конкурсных кредиторов ООО «Сириус» с суммой требований в 1 096 197 951 р.

Представитель ООО «Сириус» с возражениями заявителя не согласился и считает правомерным включение его требований в реестр требований кредиторов обоснованным.

Внешний управляющий ОАО «Качканарский ГОК «Ванадий» также не согласен с возражениями заявителя и считает включение в реестр требований ООО «Сириус» законным на том основании, что спорные векселя подписаны уполномоченным лицом, имеющим на момент подписания доверенность от 01.02.2000 г., а отсутствие ссылки на векселях на доверенность лица их подписавшего не может служить основанием для признания такой подписи ненадлежащей.

При рассмотрении жалобы суд установил, что возражения «Нэксиз Продактс Эл.Эл.Си.» необоснованны и удовлетворению не подлежат.

Требования ООО «Сириус» основаны на простых векселях на общую сумму 1 096 197 951 р., выданных в период с 04.02.2000 г. по 23.02.2000 г. различным организациям, приобретенным в последствии ООО «Лебаут», право требования по которым, передано ООО «Сириус».

Спорные векселя подписаны не генеральным директором ОАО «Качканарский ГОК «Ванадий», однако, суду представлена доверенность от 01.02.2000 г., выданная Груздеву А.Г. с правом подписания от имени ГОКа векселей.

На векселях отсутствует ссылка на данную доверенность, но это обстоятельство не дает права признавать их недействительными, поскольку на момент подписания лицо, подписавшее их, было фактически наделено таким правом, что соответствует требованиям вексельного законодательства.

A - 1618

Кроме того, суд отмечает, что 19.02.2001 г. определением арбитражного суда по результатам рассмотрения возражений ряда кредиторов, в том числе и «Нэксис Продакс Эл. Эл. Си.» было отказано в удовлетворении их требования об исключении из реестра кредиторов ООО «Лебаут» и признании действий внешнего управляющего неправомерным.

В ходе судебного заседания 19.02.2001 г. судом была дана оценка спорным векселям

Поскольку в данном судебном заседании рассматриваются те же основания и те же векселя, то суд считает, что обстоятельства, установленные 19.02.2001 г. не требуют повторной оценки.

Учитывая изложенное у суда отсутствуют основания для признания жалобы кредитора обоснованной, а действия внешнего управляющего незаконными.

Руководствуясь ст.140  АПК РФ, ст.15, 55 ФЗ «О несостоятельности (банкротстве)» арбитражный суд

О П Р Е Д Е Л И Л:

- признать возражения «Нэксиз Продактс Эл.Эл.Си.» по включению требований ООО «Сириус» в реестр кредиторов внешним управляющим ОАО «Качканарский горно-обогатительный комбинат «Ванадий» необоснованными.

Председательствующий судья          Казанцева Н.В.

Судьи                               Платонова Е.А.

Копия верна:

Лашина И.В.