ОТ:Х    НОМЕР ТЕЛЕФОНА:    ДЕК. 21 2001 17:41    СТР5

FROM : "AKiNP"    PHONE NO. : 250 44 34    DEC. 21 2001 03:17PM P3

4

Представитель ООО «Торговый дом ОАО «Ванадий» и представитель ОАО «Качканарский ГОК «Ванадий», возражая против данного довода ООО «Полипром», представили оригинал договора купли-продажи ценных бумаг № 3 от 18.01.1999 г. и пояснили, что списание спорных ценных бумаг было совершено на основании договора купли-продажи № 3 от 18.01.1999 года. Представитель истца также сослался на справку, выданную ЗАО «Компания-регистратор «Панорама», согласно которой запись о списании ценных бумаг с лицевого счета ООО «Торговый дом ОАО «Ванадий» была внесена на основании договора купли-продажи № 3 от 18.01.1999 года.

Представитель истца в судебном заседании пояснил, что ООО «Полипром» было зарегистрировано в качестве юридического лица после заключения спорного договора №3 от 18.01.1999 г., и данное обстоятельство является одним из оснований для признания данного договора недействительным.

Апелляционная инстанция, оценив в совокупности изложенные доказательства, установила, что между ответчиками фактически был заключен договор купли-продажи ценных бумаг 18.01.1999 г. № 3. Данное обстоятельство подтверждается выписками из реестра, представленными самим же представителем ООО «Полипром», в соответствии с которыми, запись о списании с лицевого счета ООО «Торговый дом ОАО «Ванадий» вышеуказанных акций были произведены на основании договора купли-продажи ценных бумаг 18.01.1999 года №3, а также справкой, представленной ЗАО «Компания-регистратор «Панорама», которое являлось на момент заключения спорного договора держателем реестра владельцев ценных бумаг ОАО «Качканарский ГОК «Ванадий». Кроме того, суд считает обоснованным довод истца о том, что факт регистрации ООО «Полипром» после заключения спорного договора № 3 от 18.01.1999 года является одним из оснований для признания данного договора недействительным.

На основании изложенного и руководствуясь ст. ст. 91, 95, 153, 155, 157, 158, п.1, п.п. 2, 3 ст. 159 АПК РФ, арбитражный суд,

**Постановил:**

Решение Арбитражного суда Республики Калмыкии от 05 июля 2001 года по делу № А22-1222/2000/6-109 оставить без изменения, а апелляционную жалобу без удовлетворения.

Настоящее постановление вступает в законную силу с момента его принятия и может быть обжаловано в кассационном порядке в Федеральный Арбитражный суд Северо-Кавказского округа в месячный срок со дня его принятия.

Председательствующий    Чурюмова Р.Д.

Судьи    Алжеева Л.А.,
Токарева В.И.

204

A - 1918

ARBITRATION COURT OF THE REPUBLIC OF KALMYKIA

RULING
On a continuance in the hearing of the case
and the inclusion of a third party in the case

City of Elista
September 10, 2001                        Case No. A22-1222/2000/6-109/Ap-46

The Arbitration Court of the Republic of Kalmykia, comprising Presiding Judge
R. D. Churyumova and Associate Judges L. A. Alzheyeva and V. E. Bembeyev, having
reviewed the materials of the case in the appeal brought by Vanadiy Mining and
Enrichment Plant of Kachkanar OJSC
against T.D. of Vanadiy OJSC, LLC,
and Poliprom LLC,
and Vedeniye Reyestra Kompaniy [Maintaining Company Registries] CJSC
seeking a declaration that the contract is invalid

FINDS:

A representative of the defendant Poliprom LLC appeared at the hearing of the
arbitration court. Motions for a continuance in the hearing of the case were filed by the
plaintiff, Vanadiy Mining Enrichment Plant of Kachkanar OJSC, and the defendant, T.D.
of Vanadiy OJSC, LLC.

The court finds that the appeal by Poliprom LLC cannot be reviewed at this court
hearing in the absence of the representatives from the other parties to the case. The
motion for a continuance in the hearing of the case shall be granted.

In filing the appeal, Poliprom LLC made a motion to include the company Hold
Ex LLC as a third party in the case as a good faith purchaser of securities under a contract
dated January 20, 2000.

The court deems it necessary to grant that motion.

Poliprom LLC also indicated in the appeal that the owner of the disputed shares is
Campbell Corporation, which should also be included in the case. In connection with this
Poliprom LLC must submit a written explanation and present evidence supporting its
arguments.

Moreover, the court believes that in order to follow the directions of the Federal
Arbitration Court of the Northern Caucasus District that it is necessary to request
additional evidence in the case and to made additional preparations for the court hearing.

The Court, guided by Article 120 of the Code of Arbitration Procedure of the
Russian Federation:

RULES:

1. The motion for a continuance in the review of the case is granted.

2. The hearing of the case is continued until October 12, 2001, at 10:00 in Room 305 of the Arbitration Court of the RK [Republic of Kalmykia] located at 9 Pushkin St., telephone: 2-14-68.

3. The motion by Poliprom LLC is granted and Hold Ex LLC is included in the case as a third party.

4. The following shall be presented for review:

**by the plaintiff:** -- the original agreement for the sale and purchase of securities, No. 3 dated January 18, 1[9]99, and
-- documents confirming the nomination and termination of N. I. Chervinskiy as acting General Director. The address of Panorama Registrar Company OJSC must be provided immediately.

**by Poliprom LLC:** --copies of the Charter and the Founding Agreement, with the originals provided for examination;
-- the original agreement for the sale and purchase of securities dated January 18, 2000, and January 20, 2000, for examination, and
-- an explanation with evidence regarding Campbell Corporation [illegible handwritten note]

**by third party, Vedeniye Reyestra Kompaniy CJSC:**-- immediate presentation of the data from the shareholder registry. [handwritten notation: not presented]

**by third party, Hold Ex LLC:**-- evidence confirming title to the disputed securities.

5. The appearance of the parties to the case is mandatory.

| | | |
|---|---|---|
| Presiding Judge | [signature] | R. D. Churyumova |
| Associate Judges | | L. A. Adzheyeva |
| | | V. E. Bembeyev |

G7:X

## АРБИТРАЖНЫЙ СУД РЕСПУБЛИКИ КАЛМЫКИЯ

### ОПРЕДЕЛЕНИЕ
об отложении рассмотрения дела,
привлечению к участию в рассмотрении дела 3-е лицо

г. Элиста
10 сентября 2001 года                     Дело № А22-1222/2000/6-109/Ар-46

Арбитражный суд Республики Калмыкия в составе: председательствующего Чурюмовой Р.Д., судей Алжеевой Л.А., Бембеева В.Э. рассмотрел материалы дела по апелляционной жалобе ОАО «Качканарский ГОК «Ванадий»
**К ООО «Т.Д. ОАО «Ванадий»**
**К ООО «Полипром»**
**К АОЗТ «Ведение реестра компаний»**
о признании договора недействительным

### установил:

В заседание арбитражного суда явился представитель ответчика - ООО «Полипром». От истца – ОАО «Качканарский ГОК «Ванадий» и ответчика - ООО «ТД ОАО «Ванадий» поступили ходатайства об отложении рассмотрения дела.

Суд находит, что дело по апелляционной жалобе ООО «Полипром» не может быть рассмотрено в данном судебном заседании в отсутствие представителей других лиц, участвующих в рассмотрении дела. Ходатайство об отложении рассмотрения дела подлежит удовлетворению.

При подаче апелляционной жалобы ООО «Полипром» заявлено ходатайство о привлечении компании «Холд Экс Эл Эл.Си» к участию в деле в качестве третьего лица как добросовестного приобретателя ценных бумаг по договору от 20.01.2000г.

Суд считает необходимым удовлетворить заявленное ходатайство.

Вместе с тем в кассационной жалобе ООО «Полипром» указал, что собственником спорных акций является Компания «Кэмбл Корпорэйшн», которая должна быть привлечена к участию в деле. В связи с чем ООО «Полипром» необходимо дать письменное объяснение по этому поводу с представлением доказательств, подтверждающих его доводы.

Кроме этого, суд полагает, что для исполнения указаний Федерального арбитражного суда Северо-Кавказского округа необходимо истребовать дополнительные доказательства по делу и произвести дополнительные действия по подготовке дела к судебному разбирательству.

Руководствуясь ст.120 АПК РФ, суд

**о п р е д е л и л:**

**1. Ходатайство об отложении рассмотрения дела удовлетворить.**

**2. Рассмотрение дела отложить на 12 октября 2001 г. 10-00** часов в каб 305 помещения арбитражного суда РК по ул. Пушкина, 9; тел.2-14-68

**3.** Удовлетворить ходатайство ООО «Полипром» и привлечь к участию в рассмотрении дела в качестве 3-го лица Компанию «Холд Экс Эл.Эл.Си».

**4. К рассмотрению дела в заседании** <u>представить</u>:
истцу — подлинник договора купли-продажи ценных бумаг № 3 от 18.01.99г.
- документы подтверждающие назначение и отстранение Черны..ского Н И  от исполнения обязанностей Ген.директора.    Срочно сообщить адрес ОАО «Компания-регистратор «Панорама».
ООО «Полипром» - Устав, Учредительный договор (копии), подлинники — для обозрения;
- подлинник договора купли-продажи акций от 18.01.2000г., 20.01.2000г. — для обозрения;
- объяснение с доказательствами в отношении Компании «Кэмбл Корпорэйшн» ........
3-му лицу – АОЗТ «Ведение реестра компаний» – <u>срочно</u> представить данные реестра акционеров. ..................
3-му лицу – компании «Холд Экс Эл.Эл.Си.» – доказательства, подтверждающие право собственности на оспариваемые ценные бумаги.

**5. Явка лиц, участвующих в рассмотрении дела, обязательна.**


Председательствующий                        Чухрюмова Р.Д.

Судьи                                        Алжеева Л.А.

                                             Бембеев В.Э.

## CHELYABINSK REGION ARBITRATION COURT

### RULING IN THE NAME OF THE RUSSIAN FEDERATION

August 1, 2000

City of Chelyabinsk
Case No. A76-4037/2000-5-105

At its open session the Chelyabinsk Region Arbitration Court comprising L. I. Zubkova, Presiding Judge, and V. I. Zaitseva and V. V. Khudyakova, Judges, has considered a suit filed by LLC NPRO "Ural." Ozyorsk, against the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation, CJSC "Finansovaya kompaniya "Vadis." Chelyabinsk, CJSC FC "Profit-House." Moscow, CJSC "Kompaniya-registrator "Panorama." Moscow, and CJSC "Mikchel-Invest." Chelyabinsk, for taking appropriate action based on the finding of invalidity of a void contract, for recognizing the Plaintiff's right of ownership in the contested shares, and for ordering the restoration of the original data in the inscribed security holders' register with participation of the Plaintiff's representatives—A. M. Shakhmatov (permanent proxy No. 19 of October 4, 1999), V. A. Plotnikov (permanent proxy of June 26, 2000) and O. A. Bayanikova (permanent proxy No. 18 of May 29, 2000)—and the Respondents' representatives—A. V. Studennikov (permanent proxy No. 10/23 of January 6, 2000), D. Ye. Zaugarov (proxy No. 195/ю of May 29, 2000) (p. 36, vol. 2) and Ye. N. Bazuyeva (proxy No. 195/ю of May 29, 2000) (p. 36, vol. 2), representatives of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation, and K. O. Nitsiyevskiy (permanent proxy No. 11 of June 26, 2000) and A. V. Yemelyanova (permanent proxy No. 14 of July 26, 2000), representatives of CJSC "Mikchel-Invest."

LLC NPRO "Ural" filed a suit against the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation, CJSC "Finansovaya kompaniya "Vadis." CJSC "Finansovaya kompaniya "Profit-House" and CJSC "Kompaniya-registrator "Panorama" for taking appropriate action based on the finding of invalidity of a void contract, for recognizing the Plaintiff's right of ownership in the contested shares, and for ordering the restoration of the original data in the register keeping system.

In its May 10, 2000 ruling (p. 91, vol. 1) the Arbitration Court named CJSC "Mikchel-Invest" as a Respondent in the case.

At the court session held on May 30, 2000 (p. 97, vol. 1) the Plaintiff amended its claims, requesting the Arbitration Court to void the results of the auction of the nondocumentary shares issued by OJSC "Kachkanarskiy GOK "Vanadium." invalidate contract No. 21 of September 18, 1998, invalidate the contract for sale of the nondocumentary shares issued by OJSC "Ashinskiy metallurgicheskiy zavod" and owned by the Plaintiff, invalidate transfer orders with inc. Nos. 648 and 649 and transfer order No. 135, recognize the Plaintiff's right of ownership in the above shares and order the

restoration of the entry on the Plaintiff's ownership in the above shares in its personal account existing in the system for keeping the securities holders' register.

In its June 27, 2000 ruling the Arbitration Court named Amber Star LLC , CJSC "Yuzhno-uralskaya registratsionnaya palata" and LLC "Gidromashservis" as Respondents in the case.

Although CJSC "Finansovaya kompaniya "Vadis." CJSC FC "Profit-House." CJSC "Kompaniya-registrator "Panorama" and CJSC "Yuzhno-uralskaya registratsionnaya palata" were duly notified of the date and the venue of proceedings their representatives did not appear (pp. 11, 13, 14 and 16, vol. 3).

Representatives of Amber Star LLC and LLC "Gidromashservis" did not appear either, but there is no evidence that these companies were duly notified of the time and the venue of proceedings.

At the court session held on July 31, 2000 the Plaintiff amended its claims, requesting the Arbitration Court to invalidate transfer orders with inc. Nos. 648 and 649 and transfer order No. 135 and, consequently, order the restoration of the entry on its ownership in the shares issued by OJSC "Kachkanarskiy GOK "Vanadium" and OJSC "Ashinskiy metallurgicheskiy zavod" in its personal account, as well as to void the results of the auction of the nondocumentary shares issued by OJSC "Kachkanarskiy GOK "Vanadium."

In light of the Plaintiff's claims and in virtue of Article 34.3 of the Code of Arbitration Procedure of the Russian Federation, Amber Star LLC and LLC "Gidromashservis" are not Respondents in the case in point; besides, the extracts from the personal accounts of these legal entities show that at present they do not hold any of the contested shares.

Under the circumstances, the Arbitration Court deems it possible to consider the case in the absence of representatives of Amber Star LLC and LLC "Gidromashservis."

The Plaintiff has fully supported its claims. In its opinion, its nondocumentary shares issued by OJSC "Kachkanarskiy GOK "Vanadium" and its nondocumentary shares issued by OJSC "Ashinskiy metallurgicheskiy zavod" were seized, arrested and sold by the Ozyorsk Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation without proper legal grounds since the decisions of the Ozyorsk Department of the State Tax Inspectorate, based on which the orders of recovery against property were issued and the above shares were seized, arrested and sold, were invalidated by the March 3, 2000 ruling which was issued by the Chelyabinsk Region Arbitration Court in case No. A76-2946/98-45-32/286/27 and became effective; invalidated were also the orders of recovery against property and the order of arrest (by the December 12, 1998 ruling which was issued by the Chelyabinsk Region Arbitration Court in case No. A76-6467/98-40y-235 and became effective). Besides, the Plaintiff believes that the transfer orders which served as the grounds for making entries in the system for keeping the register of holders of nondocumentary shares were signed by individuals who were not duly authorized to sign such orders and, therefore, should not have been executed by CJSC "Kompaniya-registrator "Panorama." In the Plaintiff's view, the results of the auction of the shares issued by OJSC "Kachkanarskiy GOK "Vanadium" are void since in reality only one entity—CJSC "Finansovaya kompaniya "Profit-House"—took part in the auction; therefore, the contract of sale of the above

shares, which was concluded by CJSC "Mikchel-Invest" and CJSC "Finansovaya kompaniya "Profit-House" on the basis of the auction results, is void, too. The Plaintiff believes that its right of ownership, which was infringed by the wrongful acts consisting in the alienation of the Plaintiff's shares should be protected by restoring the entries on the Plaintiff's ownership in the above shares in the system for keeping the register of holders of nondocumentary securities.

The Respondents have not acknowledged the claims.

The Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation has contested the claims, stating that the shares owned by the Plaintiff were lawfully arrested, which was confirmed by the December 7, 1998 ruling which was issued by the Chelyabinsk Region Arbitration court in case No. A76-6467/98-40y-235 – the suit filed by LLC NPRO "Ural" for invalidating the April 16, 1998 order No. 4 and the August 7, 1998 order No. 19 of the Ozyorsk Department of the State Tax Inspectorate and invalidating the April 20, 1998 order No. 20 and the August 10, 1998 order of the Manager of the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service—and which became effective. The above ruling invalidated those items of the August 7, 1998 order No. 19 of the Ozyorsk Department of the State Tax Inspectorate and the August 10, 1998 order of the Manager of the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service, that prescribed recovery against, and arrest of, the Plaintiff's property worth 6,855,762 rbl.; the other claims put forward by the Plaintiff were dismissed. In the Respondent's opinion, transfer orders with inc. Nos. 649 and 648 and transfer order No. 135 were signed by the Deputy Manager of the Chelyabinsk Region Department of the Federal Tax Police Service within the authority conferred on the tax police bodies by Article 132.1 of the Russian Federation Law "On Federal Tax Police Bodies." The Respondent believes that the Plaintiff's claims should not be satisfied for the reason that the Plaintiff was paid the proceeds of sale of the arrested shares in accordance with the order of the Ozyorsk Department of the State Tax Inspectorate and the order of the Manager of the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation, which were invalidated by the Chelyabinsk Region Arbitration Court.

CJSC "Mikchel-Invest" contested the claims, stating that its acts consisting in organizing and conducting the auction of the shares issued by OJSC "Kachkanarskiy GOK "Vanadium." concluding the contract of sale of the above shares with CJSC "Finansovaya kompaniya "Profit-House." and concluding the contract of sale of the shares issued by OJSC "Ashinskiy metallurgicheskiy zavod" with CJSC "Finansovaya kompaniya "Vadis" were lawful. Besides, in the Respondent's opinion, under the current laws only the auctioning of real state is mandatory.

CJSC "FK "Profit-House" (Response to the Statement of Claims, pp. 119 and 120, vol. 1) and CJSC "FK "Vadis" (Response to the Statement of Claims, pp. 1 and 2, vol. 2) contested the claims, indicating that they were bona fide acquirers of the shares which, in the Respondents' opinion, could be reclaimed by the Plaintiff only by way of vindication.

CJSC "Kompaniya-registrator "Panorama" (Response to the Statement of Claims, pp. 83 and 84, vol. 2) contested the claims, indicating that its acts consisting in registering the transfer of the rights of ownership in the contested shares were performed

in accordance with the Rules approved by October 2, 1997 Resolution No. 27 of the Federal Securities Market Commission and on the basis of the duly drawn-up transfer orders.

Upon hearing the Parties' arguments and examining the case materials, the present Court has established the following:

LLC NPRO "Ural" owned 30,831 first-issue nondocumentary ordinary shares of OJSC "Kachkanarskiy GOK "Vanadium" (state registration code 62-1п-290), 10,552,232 second –issue nondocumentary ordinary shares of OJSC "Kachkanarskiy GOK "Vanadium" (state registration code 62-1-1396) (p. 57, vol. 1) and 1,675,551 ordinary nondocumentary shares of OJSC "Ashinskiy metallurgicheskiy zavod" (state registration code 69-1-609) (pp. 11 and 12).

The registrar keeping the register of the inscribed securities issued by OJSC "Kachkanarskiy GOK "Vanadium" was CJSC "Kompaniya-registrator "Panorama."

The registrar keeping the register of the inscribed securities issued by OJSC "Ashinskiy metallurgicheskiy zavod" was CJSC "Yuzhno-uralskaya registratsionnaya palata" (p. 11, vol. 2); at present, the register of such securities is kept by CJSC "Kompaniya-registrator "Panorama."

On June 24, 1998 the registrar acting in accordance with the transfer order with inc. No. 175 (2/3/782), which was signed by the Deputy Manager of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation (p. 51, vol. 1) made an entry on the transfer of the rights of ownership in the 1,675,551 nondocumentary ordinary shares of OJSC "Ashinskiy metallurgicheskiy zavod" from LLC NPRO "Ural" to CJSC "Finansovaya kompaniya "Vadis" (p. 11, vol. 2).

Indicated as the grounds for making this entry were the May 5, 1998 contract of sale No. 0505-01-010 concluded by CJSC "Mikchel-Invest" (the Seller) and CJSC "FK "Vadis" (the Buyer), February 14, 1996 Decree No. 199 of the President of the Russian Federation, Taxpayer's Property Seizure and Administrative Arrest Report of March 27, 1998, and April 3, 1998 Agreement No. 77.

On March 7, 1998 the 1,675,551 shares issued by OJSC "Ashinskiy metallurgicheskiy zavod" were seized and arrested by the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation (pp. 44 and 45, vol. 1) in accordance with the March 18, 1998 order No. 4 of the Ozyorsk Department of the State Tax Inspectorate and the March 25, 1998 order of the Manager of the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation (p. 43, vol. 1). The shares were frozen by the registrar on March 26, 1998.

On April 17, 1998 the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation reported that due to the fact that the Ozyorsk Department of the State Tax Inspectorate recalled its March 18, 1998 order No. 4 the March 25, 1998 arrest order was revoked and the property arrested on March 27, 1998 was released from arrest (p. 47, vol. 1). The shares were unfrozen by the registrar on April 23, 1998.

On April 28, 1998 the 3,760,880 shares issued by OJSC "Ashinskiy metallurgicheskiy zavod" were seized and arrested by the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian

Federation (pp. 49 and 50, vol. 1) in accordance with April 16, 1998 order No. 4 of the Ozyorsk Department of the State Tax Inspectorate (p. 39, vol. 2) and April 20, 1998 order No. 20 of the Manager of the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation (p. 48, vol. 1). The shares were frozen by the registrar on April 23, 1998.

On May 13, 1998 the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation and CJSC "Mikchel-Invest" concluded agreement No. 105 (pp. 101-105, vol. 1), under which CJSC "Mikchel-Invest" undertook to sell the arrested shares on commission.

On May 5, 1998 CJSC "Mikchel-Invest" and CJSC "Finansovaya kompaniya "Vadis" concluded contract No. 0505-01-010 for sale of securities (pp. 114-116, vol. 2).

At present, CJSC "Finansovaya kompaniya "Vadis" is neither the actual holder nor the nominee holder of the above shares.

When the June 24, 1998 transfer order No. 135 was submitted the shares covered by this order were released from arrest effected on March 27, 1998 (June 26, 1998 order with inc. No. 176, vol. 1) and actually discontinued on April 17, 1998, and the entry on the transfer of rights of ownership in the above shares to their new holder was actually made in respect to the shares that were under arrest effected on April 28, 1998. The entry on the unfreezing of the shares frozen on April 23, 1998 was made by the registrar on June 26, 1998 upon receipt of the June 26, 1998 order with inc. No. 176 without legal grounds since the order prescribes the release of the shares from arrest effected on March 27, 1998. Thus, with the register containing an entry on the freezing of the above shares the entry on the transfer of rights of ownership in these shares to their new holder was made by the registrar in violation of item 7.3 of the "Rules for Keeping Register of Inscribed Securities." Also, in violation of item 7.5 of the above Rules providing that the freezing and unfreezing operations must be effected on the basis of the documents issued by the authorized bodies the registrar made the entry on the unfreezing of the LLC NPRO "Ural" personal account in the absence of the necessary documents.

Based on transfer orders with inc. No. 649 (p. 59, vol. 1) and inc. No. 648 (p. 60, vol. 1) signed by V. Yu. Usinin, an official of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation, and a representative of CJSC "Mikchel-Invest." on September 24, 1998, the registrar made entries in the register on the transfer of rights of ownership in the 10,552,232 first-issue shares and the 30,831 second-issue shares of OJSC "Kachkanarskiy GOK "Vanadium" from LLC NPRO "Ural" to the nominee holder—CJSC "Depozitarno-kliringovaya kompaniya" (p. 63, vol. 1).

Indicated as documents confirming the powers of the above representative who signed the transfer orders are the February 14, 1996 Decree of the President of the Russian Federation, September 13, 1998 Taxpayer's Property Seizure and Arrest Report and September 9, 1998 Agreement No. 1. Actually, one of the grounds for issuing the transfer orders was the August 13, 1998 Taxpayer's Property Seizure and Arrest Report.

The LLC NPRO "Ural" property was seized and arrested by the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation on August 13, 1998 (pp. 55 and 56, vol. 2) in accordance with August 7, 1998 order No. 19 of the Ozyorsk Department of the State Tax Inspectorate (p. 40, vol. 2) and the August 10, 1998 order of the Manager of the

Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation (p. 54, vol. 1).

On September 9, 1998 the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation and CJSC "Mikchel-Invest" concluded contract No. 183 (pp. 132-135, vol. 2), under which CJSC "Mikchel-Invest" undertook to sell the arrested property on commission.

On September 11, 1998 the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation informed CJSC "Mikchel-Invest" that the decision was made to have the arrested shares sold by tender which was actually an auction not open to the general public since the invitations were sent only to definite organizations and the highest bidder was to be recognized as the winner, the minimum stated price of a block of shares being 16,932,900 rbl. (p. 138, vol. 2).

Recognized as the winner was CJSC "Finansovaya kompaniya "Profit-House" which in reality was the only auction participant since the bids made by the other bidders did not meet the announced terms of the auction because the bids were lower than the minimal starting price (on September 16, 1998 the US dollar – ruble exchange rate was 1: 9.6117); besides, the bids made in dollars were found invalid (September 16, 1998 minutes No. 1-T (p. 139, vol. 2).

Based on the results of the above auction, on September 18, 1998 CJSC "Mikchel-Invest" and CJSC "Finansovaya kompaniya "Profit-House" concluded contract No. 21 (pp. 143-145). CJSC "Finansovaya kompaniya "Profit-House" was and is neither the actual holder nor the nominee holder of the above shares since it bought these shares under the June 18, 1998 commission services contract No. KO-0097-98 concluded with Amber Star LLC (pp. 63-66, vol. 2).

On October 6, 1998 the Manager of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation issued order No. 20A (p. 62, vol. 1) revoking the August 10, 1998 order and releasing the shares from the administrative arrest effected on August 13, 1998.

The present Court has come to the conclusion that the Plaintiff's claims are legitimate and that the Respondents' arguments should be rejected for the following reasons:

The orders for recovery of taxes, fines and tax penalties against the taxpayer's property were issued by the Ozyorsk Department of the State Tax Inspectorate in accordance with the decisions made on the basis of the LLC NPRO "Ural" tax audit report of February 10, 1998 (pp. 10-17, vol. 1). The decisions made on the basis of the audit results were revoked and amended by the Ozyorsk Department of the State Tax Inspectorate [Translator's note. In the Russian original the preceding part of this sentence is mistakenly followed by the end of the previous sentence "in accordance with the decisions made on the basis of the LLC NPRO "Ural" tax audit report of February 10, 1998 (pp. 10-17, vol. 1).]" The decisions made on the basis of the audit results were revoked and amended by the Ozyorsk Department of the State Tax Inspectorate (pp. 19-21, vol. 1), and amendments and additions were made to the audit report, too (pp. 13, 14-17 and 22-24, vol. 1). The final decisions made on the basis of the above audit report – June 1, 1998 decision No. 11 (285) (p. 25, vol. 1) and June 1, 1998 decision No. 12 (286) (p. 26, vol. 1) as amended by July 31, 1998 decision No. 27 (p. 29, vol. 1) - were invalidated by the March 3, 2000 ruling of the Chelyabinsk Region Arbitration Court in

case No. A76-2946/98-45-32/33-286/27 (pp. 40 and 41) in respect of the recovery of 5,579,911 rbl. (taking into account the April 17, 2000 ruling of the Board of Appeals).

The December 7, 1998 ruling which was issued in case No. A76-6467/98-40y-235 by the Chelyabinsk Region Arbitration Court and which became effective invalidated those items of the August 7, 1998 order No. 19 of the Ozyorsk Department of the State Tax Inspectorate and the August 10, 1998 order of the Manager of the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation which concerned recovery against the taxpayer's property worth 6,855,762 rbl. (pp. 64-67).

Thus, the Plaintiff's property was seized and arrested by the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation in the absence of legal grounds for recovery against the taxpayer's property.

Under the above circumstances, the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation did not have the right of disposal of the Plaintiff's property.

In the absence of legal grounds for recovery against the taxpayer's property it should not have been sold either on commission or by any other method and all the transactions in the above shares are invalid (void).

Article 11.12 of the Federal Law "On Federal Tax Police Bodies" authorizes the tax police bodies to effect an administrative arrest with the subsequent sale of the arrested property in accordance with the prescribed procedure.

The circulation of securities is regulated by the Federal Law "On Securities Market." Articles 42.4 and 42.5 of which authorize the Federal Securities Market Commission (FSMC) to set mandatory requirements for transactions in securities and for keeping security registers.

Acting within its legal authority, on October 2, 1997 FSMC passed Resolution No. 27 approving the "Rules for Keeping Register of Holders of Inscribed Securities"; item 7.3 of these Rules requires that entries on the transfer of rights of ownership in securities be made by the registrar on the basis of a transfer order specifically submitted by a registered transferee or by its authorized representative. Item 10.2 of the above Rules requires that such orders be signed by a registered transferee or by the person acting on the transferee's behalf on the basis of a proxy drawn up in accordance with the current laws.

The concept "authorized representatives" is defined in item 2 stating that authorized representatives are government officials having the right to request a registrar to perform certain operations in the register.

The operations to be performed by a registrar are listed in section 7 which provides that authorized representatives of government bodies have the right to request a registrar to make entries on the freezing and the unfreezing of a personal account (item 7.5) in the register and to provide information contained in the register (item 7.9).

The Rules do not allow authorized government officials to sign transfer orders on behalf of registered persons.

Thus, transfer order No. 135 (2/3/782) and transfer orders Nos. 648 and 649 signed by the representatives of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation and CJSC "Mikchel-Invest" do not meet the

8

requirements of the above Rules and were accepted by the registrar in violation of item 5 of these Rules.

By its legal nature a transfer order is a unilateral contract (Article 154.2 of the Civil Code of the Russian Federation); therefore, under authority of Article 156 of the Civil Code of the Russian Federation it is covered by the contract invalidity provisions stipulating that a void contract does not have any legal consequences other than that associated with its invalidity, i. e. other than the restoration of the initial positions of the parties (Articles 167.1 and 167.2 of the Civil Code of the Russian Federation).

The wrongful acts of one of the Respondents - the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation - infringed the Plaintiff's right of ownership in its shares; therefore, under Article 12 of the Civil Code of the Russian Federation the Plaintiff has the right to apply for the protection of its civil rights by the restoration of the position that existed before the infringement of its right of ownership.

Nondocumentary shares may not be reclaimed in accordance with Article 301 of the Civil Code of the Russian Federation since only nonfungible property may be the object of a recovery action; nondocumentary shares are fungible things characterized by the issuer's name, code of the state registration of the given issue, and the face value.

The decision does not violate the rights and the lawful interests of the persons that hold the contested shares at present since the entries on their rights of ownership in these shares were made in the register on the basis of void contracts. The above persons have the right to lodge individual claims for damages caused to them.

The argument of one of the Respondents - the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation – that the Plaintiff's claims should be dismissed for the reason that the cost of the sold shares was partially returned to the Plaintiff (pp. 123-126, vol. 2) cannot be accepted by the Court since the wrongful acts consisting in the arrest of the shares and their sale infringed the Plaintiff's right of ownership in its shares and the Plaintiff did not advance a claim for damages.

The state duty is to be charged to one of the Respondents - the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation – (Translator's note. The name of this body is typed in the Russian original twice.) which is exempt from payment of this duty by Articles 5.6 and 5.3 of the Federal Law "On State Duty" as a government body funded from the federal budget.

In view of Articles 95.1 and 124-127 of the Code of Arbitration Procedure of the Russian Federation the Arbitration Court rules:

To satisfy the Plaintiff's claims.

To invalidate the transfer orders:

- No. 135 (No. 2/3/782) of June 24, 1998;

- inc. No. 649 (unnumbered) of September 24, 1998;

- inc. No. 648 of September 24, 1998 (unnumbered);

To void the results of auctioning the 10,583,063 shares of OJSC "Kachkanarskiy GOK "Vanadium" on September 17, 1998.

To obligate the registrar – CJSC "Kompaniya-registrator "Panorama" to restore the data that existed as of September 24, 1998 in personal account No. 1569 of LLC

NPRO "Ural" in the register of the holders of the inscribed securities issued by OJSC "Kachkanarskiy GOK "Vanadium."

To obligate the registrar - CJSC "Kompaniya-registrator "Panorama"—to restore the data that existed as of June 26, 1996 in personal account No. 8642 of LLC NPRO "Ural" in the register of the holders of the inscribed securities issued by OJSC "Ashinskiy metallurgicheskiy zavod."

| Presiding Judge: | *Signature* | L. I. Zubkova |
| Judges: | *Signature* | V. I. Zaitseva |
|  | *Signature* | V. V. Khudyakova |

A - 1932



## Арбитражный суд Челябинской области
## Именем Российской Федерации
# Р Е Ш Е Н И Е

01 августа 2000г                                        г.Челябинск
                                          Дело № А76-4037/2000-5-105

Арбитражный суд Челябинской области в составе:
председательствующего судьи Л.И.Зубковой,
судей: В.И.Зайцевой, В.В.Худяковой,
рассмотрел в открытом судебном заседании дело по иску
ООО НПРО "Урал", г.Озерск,
к УФСНП РФ по Челябинской области, г.Челябинск, ЗАО "Финансовая компания "Вадис", г.Челябинск, ЗАО "Финансовая компания "Профит-Хауз", г.Москва, ЗАО "Компания-регистратор "Панорама", г.Москва, ЗАО "Микчел-Инвест", г.Челябинск,
при участии в заседании: представителей истца: А.М.Шахматова (постоянная доверенность от 04.10.99г № 19), В.А.Плютникова (постоянная доверенность от 26.06.2000г), Банниковой О.А. (постоянная доверенность от 29.05.2000г № 18); представителей ответчиков: УФСНП по Челябинской области: А.В.Студенникова (постоянная доверенность от 06.01.2000г № 10/23), Д.Е.Заугарова (доверенность от 29.05.2000г № 195/ю (л.д. 36, т.2), Е.Н Батуевой (доверенность от 29.05.2000г № 195/ю (л.д. 36, т.2); ЗАО "Микчел-Инвест": К.О.Нациевского (постоянная доверенность от 26.06.2000г № 11), А.В.Емельяновой (постоянная доверенность от 26.07.2000г № 14).
о применении последствий недействительности ничтожных сделок, признании права собственности на акции и восстановлении записей в реестре владельцев именных ценных бумаг.

ООО "НПРО "Урал" обратилось с иском к УФСНП РФ по Челябинской области, ЗАО "Финансовая компания "Вадис", ЗАО "Финансовая компания "Профит-Хауз", ЗАО "Компания-регистратор "Панорама", о применении последствий недействительности ничтожных сделок, признании права собственности на акции и восстановлении регистрации в системе ведения реестра.

Определением от 10.05.2000г (л.д. 97, т.1) к участию в деле в качестве ответчика привлечено ЗАО "Микчел-Инвест".

В судебном заседании 30.05.2000г истцом заявлено об изменении исковых требований: просит признать недействительными торги по продаже принадлежавших истцу бездокументарных акций ОАО "Качканарский ГОК", признать недействительным договор от 18.09.98г № 21, признать недействительной сделку по продаже принадлежавших истцу бездокументарных акций ОАО "Ашинский металлургический завод", признать недействительными передаточные распоряжения №№: вх 648, вх 649, 135, признать право собственности на указанные акции и восстановить в системе ведения реестра владельцев ценных бумаг записи о наличии на лицевом счете истца указанных акций.

Определением от 27.06.2000г к участию в деле в качестве ответчиков привлечены: Компания "Амбер Стар ЭЛ.ЭЛ.СИ.", Южно-Уральская регистрационная палата" и ООО "Гидромашсервис".

ЗАО "Финансовая компания Вадис", ЗАО "Финансовая компания "Профит-Хаус", ЗАО "Компания-регистратор "Панорама" и ЗАО "Южно-Уральская регистрационная компания" в судебное заседание не явились, извещены о времени и месте разбирательства дела надлежащим образом (л.д. 11,13,14;16, т.3).

Компания "Амбер Стар ЭЛ.ЭЛ.СИ." и ООО "Гидромашсервис" в судебное заседание не явились, доказательства надлежащего извещения их о времени и месте разбирательства дела отсутствуют.

В судебном заседании 31.07.2000г истцом заявлено об изменении исковых требований: просит признать недействительными передаточные распоряжения: № 648, № 649 и № 135, применить последствия их недействительности в виде восстановления на его лицевом счете записей о принадлежности ему на праве собственности акций ОАО "Качканарский ГОК "Ванадий" и ОАО "Ашинский металлургический завод", признать недействительными торги по продаже акций "ОАО "Качканарский ГОК "Ванадий".

В свете сформулированных истцом требований и в силу п. 3 ст.34 АПК РФ Компания "Амбер Стар ЭЛ.ЭЛ.СИ." и ООО "Гидромашсервис" ответчиками по рассматриваемому делу не являются, кроме того, как следует из выписок из лицевых счетов указанных юридических лиц, они в настоящее время не являются собственниками акций, фигурирующих в рассматриваемом деле.

При указанных обстоятельствах суд считает возможным рассмотреть дело в отсутствие Компании "Амбер Стар ЭЛ.ЭЛ.СИ." и ООО "Гидромашсервис".

Истец поддержал требования в полном объеме. По мнению истца, опись и арест принадлежащих ему бездокументарных акций ОАО "Качканарский ГОК "Ванадий" и бездокументарных акций ОАО "Ашинский металлургический завод" произведены Озерским УФСНП РФ по Челябинской области без надлежащих правовых оснований, поскольку решения ГНИ по г.Озерску, на основании которых приняты постановления об обращении взыскания на имущество, произведены опись, арест и реализация указанных акций, признаны недействительными решением Арбитражного суда Челябинской области от 03.03.2000г по делу № А76-2946/98-45-32/33-286/27, вступившим в законную силу; также недействительными в части признаны постановления об обращении взыскания на имущество и распоряжение о наложении ареста (решение АС Челябинской области от 07.12.98г по делу № А76-6467/98-40у-235, вступившее в законную силу). Кроме того, истец полагает, что передаточные распоряжения, на основании которых производилось внесение записей в систему ведения реестра владельцев бездокументарных акций, подписаны лицами, не имевшими надлежащих полномочий на их подписание, в связи с чем, не должны были приниматься ЗАО "Компания-регистратор "Панорама" к исполнению. Торги по продаже акций ОАО "Качканарский ГОК "Ванадий", по мнению истца, являются недействительными, поскольку в них фактически принимал участие один участник - ЗАО "Финансовая компания "Профит-Хаус", следовательно, договор купли-продажи указанных акций, заключенный по итогам торгов между ЗАО "Микчел-Инвест" и ЗАО "Финансовая компания "Профит-Хаус" также является недействительным. Истец полагает, что его право собственности, нарушенное неправомерными действиями по

A - 1935

отчуждению принадлежавших ему акций, подлежит защите путем восстановления записей о том, что он является владельцем указанных акций в системе ведения реестра владельцев бездокументарных ценных бумаг.

Ответчики иск отклонили:

УФСНП РФ по Челябинской области - ссылаясь на правомерность действий по описи и аресту акций, принадлежащих истцу, подтвержденную решением Арбитражного суда Челябинской области от 07.12.98г по делу № А76-6167/98-40у-235, вступившим в законную силу, по иску ООО "НПРО "Урал" о признании недействительными постановлений ГНИ по г.Озерску: от 16.04.98г № 4 и от 07.08.98г № 19 и распоряжений начальника Озерского МРО УФСНП от 20.04.98г № 20 и от 10.08.98г. Указанным решением признаны недействительными постановление ГНИ по г.Озерску от 07.08.98г № 19 и распоряжение начальника Озерского МРО УФСНП по Челябинской области от 10.08.98г в части обращения взыскания и наложения ареста на имущество истца на сумму 6855762 руб, в остальной части иска отказано. По мнению ответчика, передаточные распоряжения № 649, № 648 и № 135 подписаны зам.начальника УФСНП по Челябинской области в соответствии с полномочиями, предоставленными органам налоговой полиции п.12 ст.11 Закона РФ "О федеральных органах налоговой полиции". По мнению ответчика, требования истца не подлежат удовлетворению, поскольку истцу были возвращены денежные средства, вырученные от продажи акций, в части, соответствующей признанным недействительными постановления ГНИ по г.Озерску и распоряжения Озерского МРО УФСНП РФ по Челябинской области решением Арбитражного суда Челябинской области.

ЗАО "Микчел-Инвест"- ссылаясь на правомерность своих действий по организации и проведению торгов по продаже акций ОАО "Качканарский ГОК "Ванадий"и заключению договора купли-продажи указанных акций с ЗАО "Финансовая компания "Профит-Хауз", а также по заключению договора купли-продажи акций ОАО "Ашинский металлургический завод" с ЗАО "Финансовая компания "Вадис". Кроме того, по мнению ответчика, обязательным в соответствии с требованиями действующего законодательства является только проведение торгов по продаже недвижимости.

ЗАО "ФК "Профит-Хауз" (отзыв на исковое заявление (л.д. 119,120, т.1), и ЗАО "ФК "Вадис" (отзыв на исковое заявление (л.д. 1,2, т.2) ссылаясь на то, что они являлись добросовестными приобретателями акций, которые, по мнению ответчиков, могут быть истребованы истцом только в порядке виндикации.

ЗАО "Компания-регистратор "Панорама" (отзыв на исковое заявление (л.д. 83, 84, т.2), ссылаясь на правомерность действий по проведению операций по регистрации перехода прав собственности на акции, совершенных в соответствии с Положением, утвержденным постановлением ФКЦБ от 02.10.97г № 27, на основании надлежаще оформленных передаточных распоряжений.

Заслушав пояснения сторон, исследовав материалы дела,

суд установил:

ООО НПРО "Урал" являлось собственником 30831 обыкновенной бездокументарной акции ОАО "Качканарский ГОК "Ванадий" первого выпуска (код государственной регистрации 62-1п-290), 10552232 обыкновенных бездокументарных акций ОАО "Качканарский ГОК "Ванадий" второго выпуска (код государственной регистрации 62-1-1396) (л.д. 57,т.1) и 1675551 обыкновенной

бездокументарной акции ОАО "Ашинский металлургический завод" (код государственной регистрации 69-1-689) (л.д. 11, т.2).

Регистратором, осуществляющим деятельность по ведению реестра именных ценных бумаг эмитента - ОАО "Качканарский ГОК "Ванадий" являлось ЗАО "Компания - регистратор "Панорама".

Регистратором, осуществляющим деятельность по ведению реестра именных ценных бумаг эмитента - ОАО "Ашинский металлургический завод" являлось ЗАО "Южно-Уральская регистрационная палата" (л.д. 11, т.2), в настоящее время - ЗАО "Компания-регистратор "Панорама".

24.06.98г на основании передаточного распоряжения № 135 (№ 2/3/782), подписанного заместителем начальника УФСНП РФ по Челябинской области (л.д. 51, т.1), регистратором внесена запись о переходе прав собственности ООО НПРО "Урал" на 1675551 обыкновенную бездокументарную акцию ОАО "Ашинский металлургический завод" к ЗАО "Финансовая компания "Вадис" (л.д. 11, т.2).

В качестве основания внесения записи указан договор купли-продажи от 05.05.98г № 0505-01-010, заключенный между ЗАО "Микчел-Инвест" - "Продавец" и ЗАО "ФК "Вадис" - "Покупатель", указ Президента РФ от 14.02.96г № 199, акт описи и административного ареста имущества налогоплательщика от 27.03.98г, соглашение от 03.04.98г № 77.

Опись и арест 1675551 акции ОАО "Ашинский металлургический завод" произведены Озерским МРО УФСНП РФ по Челябинской области 27.03.98г (л.д. 44,45, т.1) на основании постановления ГНИ по г.Озерску от 18.03.98г № 4 и распоряжения начальника Озерского МРО УФСНП РФ по Челябинской области от 25.03.98г (л.д. 43, т.1). Операция по блокированию акций проведена регистратором 26.03.98г.

17.04.98г Озерский МРО УФСНП РФ по Челябинской области сообщил, что в связи с отзывом ГНИ по г.Озерску постановления от 18.03.98г № 4 распоряжение о наложении ареста от 25.03.98г отменено, арест, произведенный 27.03.98г, снят (л.д. 47, т.1). Операция по прекращению блокирования акций проведена регистратором 23.04.98г.

28.04.98г Озерским МРО УФСНП РФ по Челябинской области произведены опись и арест 3760880 акций ОАО "Ашинский металлургический завод" (л.д. 49,50, т.1) на основании постановления ГНИ по г.Озерску от 16.04.98г № 4 (л.д. 39, т.2) и распоряжения начальника Озерского МРО УФСНП РФ по Челябинской области от 20.04.98г № 20 (л.д. 48, т.1). Операция по блокированию акций проведена регистратором 23.04.98г.

13.05.98г между УФСНП РФ по Челябинской области и ЗАО "Микчел-Инвест" заключен договор № 105 (л.д. 101-105, т.1), согласно которому ЗАО "Микчел-Инвест" обязалось реализовать арестованные акции на договорно-комиссионных началах.

05.05.98г между ЗАО "Микчел-Инвест" и ЗАО "Финансовая компания "Вадис" заключен договор купли-продажи ценных бумаг № 0505-01-010 (л.д. 114-116, т.2).

В настоящее время ЗАО "Финансовая компания "Вадис" не является ни владельцем, ни номинальным держателем указанных акций.

При представлении передаточного распоряжения от 24.06.98г № 135 с акций, в отношении которых оно представлено, снят арест, наложенный 27.03.98г (распоряжение от 26.06.98г № 176 (л.д. 52, т.1), фактически уже снятый 17.04.98г, а запись о переходе прав на указанные акции новому владельцу сделана фактически

в отношении акций, находящихся под арестом, произведенным 28.04.98г. Запись регистратора о прекращении блокирования акций, заблокированных 23.04.98г. совершенная 26.06.98г на основании распоряжения от 26.06.98г № 176, сделана необоснованно, поскольку в распоряжении говорится о снятии ареста, произведенного 27.03.98г. Таким образом, запись о передаче прав на акции новому владельцу совершена регистратором в нарушение п.7.3 "Положения о порядке ведения реестра именных ценных бумаг" при наличии записи в реестре о блокировании операций с указанными акциями. Также в нарушение п.7.5 указанного Положения, согласно которому блокирование и прекращение блокирования производятся, в частности, на основании документов, выданных уполномоченными органами, регистратором внесена в реестр запись о прекращении блокирования операций по лицевому счету ООО НПРО "Урал" в отсутствие необходимых документов.

24.09.98г на основании передаточных распоряжений вх 649 (л.д. 59, т.1) и вх 648 (л.д. 60, т.1), подписанных сотрудником УФСНП РФ по Челябинской области В.Ю. Усынивым и представителем ЗАО "Микчел-Инвест", регистратором внесены в реестр записи о переходе прав собственности ООО НПРО "Урал" на 10552232 акции первого выпуска и 30831 акцию второго выпуска ОАО "Качканарский ГОК "Ванадий" к номинальному держателю - ЗАО "Депозитарно-клиринговая компания" (л.д. 63, т.1).

В качестве документов, подтверждающих полномочия представителя, подписавшего передаточные распоряжения указаны: Указ Президента РФ от 14.02.96г, акт описи и ареста имущества налогоплательщика от 13.09.98г. ?(так в оригинале, соглашение от 09.09.98г № 1. Фактически одним из оснований выдачи передаточных распоряжений явился акт описи и ареста имущества налогоплательщика от 13.08.98г.

Опись и арест имущества ООО НПРО "Урал" произведены Озерским МРО УФСНП РФ по Челябинской области 13.08.98г (л.д. 55-56, т.2) на основании постановления ГНИ по г.Озерску от 07.08.98г № 19 (л.д. 40, т.2) и распоряжения начальника Озерского МРО УФСНП РФ по Челябинской области от 10.08.98г (л.д. 54, т.1).

09.09.98г между УФСНП РФ по Челябинской области и ЗАО "Микчел-Инвест" заключен договор № 183 (л.д. 132-135, т.2), согласно которому ЗАО "Микчел-Инвест" обязалось реализовать арестованное имущество на договорно-комиссионных началах.

11.09.98г УФСНП РФ по Челябинской области сообщило ЗАО "Микчел-Инвест" о принятии решения реализовать арестованные акции путем проведения тендера, фактически - закрытого аукциона, поскольку предложения направлялись определенным организациям, а победителем должен был быть признан участник, предложивший наибольшую цену, причем объявленная минимальная цена пакета акций составила 16932900 руб (л.д. 138, т.2).

Победителем тендера было признано ЗАО "Финансовая компания "Профит-Хауз", фактически единственный участник тендера, поскольку заявки остальных участников не соответствовали объявленным условиям, т.к. указанные в них суммы были меньше минимальной начальной цены (курс доллара США на 16.09.98г составлял 9,5147 руб), кроме того, заявки, поданные в долларах, были признаны недействительными (протокол от 16.09.98г № 1-Т (л.д. 139,т.2).

По итогам  состоявшихся торгов между ЗАО "Микчел-Инвест" и ЗАО "Финансовая компания "Профит-Хауз" заключен договор от 18.09.98г № 21 (л.д. 143-145). ЗАО "Финансовая компания "Профит-Хауз" не являлось и не является ни собственником, ни номинальным держателем указанных акций, поскольку при покупке акций действовало на основании договора комиссии от 18.06.98г № КО-0097-98 с Компанией "Айбер Стар Эл.Эл.Си." (л.д. 63-66, т.2).

06.10.98г распоряжением начальника Озерского МРО УФСНП РФ по Челябинской области № 20А (л.д. 62, т.1) распоряжение от 10.08.98г отменено, административный арест, наложенный 13.08.98г, снят.

Суд приходит к выводу о правомерности требований истца и отклонению доводов ответчиков по следующим основаниям:

Постановления об обращении взыскания недоимок по налогам, пени и налоговых санкций на имущество налогоплательщика приняты ГНИ по г.Озерску на основании решений по акту документальной проверки соблюдения налогового законодательства ООО НПРО "Урал" от 10.02.98г (л.д. 10-17, т.1). Решения, принятые по результатам проверки, отменялись и изменялись ГНИ по г.Озерску (л.д. 19-21, т.1), в акт также вносились изменения и дополнения (л.д. 13, 14-17, 22-24, т.1). Итоговые решения по указанному акту проверки: от 01.06.98г № 11(285) (л.д. 25, т.1) и от 01.06.98г № 12 (286) (л.д. 26,т.1) с учетом изменений, внесенных решением от 31.07.98г № 27 (л.д. 29, т.1) признаны недействительными решением Арбитражного суда Челябинской области от 03.03.2000г по делу № А76-2946/98-45-32/33-286/27 (л.д. 40,41) в части взыскания 5579911 руб (с учетом постановления апелляционной инстанции от 17.04.2000г).

Решением Арбитражного суда Челябинской области от 07.12.98г по делу А76-6467/98-40у-235, вступившим в законную силу, признаны недействительными в части обращения взыскания на имущество налогоплательщика на сумму 6855762 руб постановление ГНИ по г.Озерску от 07.08.98г № 19 и распоряжение начальника Озерского МРО УФСНП по Челябинской области от 10.08.98г (л.д. 64-67).

Таким образом, опись и арест имущества истца произведены Озерским МРО УФСНП РФ по Челябинской области при отсутствии правовых оснований для обращения взыскания на имущество налогоплательщика.

При указанных обстоятельствах у УФСНП РФ по Челябинской области отсутствовало право распоряжения имуществом истца.

При отсутствии правовых оснований для обращения взыскания на имущество налогоплательщика оно не могло быть продано ни на комиссионных началах, ни каким-либо другим способом, а все сделки, заключенные с указанными акциями, являются недействительными (ничтожными).

П.12 ст.11 ФЗ "О федеральных органах налоговой полиции" федеральным органам налоговой полиции предоставлено право производить административный арест с последующей реализацией арестованного имущества в установленном порядке.

Порядок обращения ценных бумаг регулируется ФЗ "О рынке ценных бумаг", в соответствии с п.п. 4 и 5 ст. 42 которого, Федеральной комиссии по рынку ценных бумаг (ФКЦБ) предоставлено право устанавливать обязательные требования к операциям с ценными бумагами и к порядку ведения реестра.

В рамках предоставленных законом полномочий постановлением ФКЦБ от 02.10.97г № 27  утверждено "Положение о ведении реестра владельцев именных

ценных бумаг", согласно п.7.3 которого внесение в реестр записей о переходе прав собственности на ценные бумаги производится регистратором на основании передаточного распоряжения, представленного, в частности, зарегистрированным лицом, передающим ценные бумаги или его уполномоченным представителем. В соответствии с п.10.2 распоряжения должны быть подписаны зарегистрированным лицом либо лицом, действующим от его имени по доверенности, оформленной в соответствии с действующим законодательством.

Понятие "уполномоченные представители" раскрыто в п.2., где указано, что уполномоченные представители - должностные лица государственных органов вправе требовать от регистратора исполнения определенных операций в реестре.

Перечень операций, совершаемых регистратором, установлен разделом 7, согласно которому уполномоченные представители государственных органов вправе требовать от регистратора внесения в реестр записей о блокировании и прекращении блокирования операций по лицевому счету (п. 7.5), а также предоставления информации из реестра (п.7.9).

Право подписывать передаточные распоряжения от имени зарегистрированного лица должностным лицам уполномоченных государственных органов Положением не предоставлено.

Таким образом, передаточные распоряжения № 135 (2/3/782), вх 648, вх 649, подписанные представителями: УФСНП РФ по Челябинской области и ЗАО "Микел-Инвест", не соответствуют требованиям, установленным Положением, и приняты регистратором в нарушение п.5 Положения.

Передаточное распоряжение по своей правовой природе является односторонней сделкой (п.2 ст.154 ГК РФ), следовательно, к нему в силу ст.156 ГК РФ применимы положения о недействительности сделок, согласно которым недействительная сделка не влечет правовых последствий за исключением тех, которые связаны с ее недействительностью, т.е. возвращения сторон в первоначальное положение (ст.п.п.1,2 ст.167 ГК РФ).

Неправомерными действиями ответчика - УФСНП РФ по Челябинской области было нарушено право собственности истца на принадлежащие ему акции, в связи с чем истец вправе требовать защиты гражданских прав путем восстановления положения, существовавшего до нарушения права, в соответствии со ст.12 ГК РФ.

Бездокументарные акции не могут быть истребованы в порядке ст.301 ГК РФ, поскольку предметом виндикационного иска может быть только индивидуально-определенное имущество, бездокументарные акции являются вещами, определенными родовыми признаками: наименование эмитента, код государственной регистрации выпуска, номинальная стоимость.

Принятым решением не нарушаются права и законные интересы лиц, у которых находятся акции, фигурировавшие в рассматриваемом деле, в настоящее время, поскольку записи об их правах на акции внесены реестр на основании ничтожных сделок. Указанные лица вправе предъявить требования о возмещении причиненных им убытков в самостоятельном исковом порядке.

Довод ответчика - УФСНП РФ по Челябинской области об отказе в удовлетворении требований истца в связи с возвращением ему части стоимости реализованных акций (л.д. 123-126, т.2) не может быть принят судом, поскольку неправомерными действиями - арестом и реализацией акций, нарушено право

собственности истца на принадлежащие ему акции, требование о возмещении убытка истцом не предъявлено.

Госпошлина подлежит отнесению на ответчика – УФСНП РФ по Челябинской области, которое в соответствии с п.п.6 п.3 ст.5 ФЗ "О государственной пошлине" подлежит освобождению от ее уплаты, как государственное учреждение, финансируемое из федерального бюджета.

Руководствуясь п.1 ст.95, ст.124-127 АПК РФ,
арбитражный суд решил:

Иск удовлетворить.
Признать недействительными передаточные распоряжения:
от 14.06.98г. № 635 (от 24.06.98: № 23/782);
от 24.09.98г. вх 649 (без номера);
от 24.09.98г. ех 648 (без номера).
Признать недействительными торги по продаже акций ОАО "Качканарский ГОК "Ванадий" в количестве 10583063 штуки, проведенные 17.09.98г.

Обязать регистратора – ЗАО "Компания-регистратор "Панорама" привести данные реестра владельцев именных ценных бумаг эмитента - ОАО "Качканарский ГОК "Ванадий" по лицевому счету владельца - ООО "НПРО "Урал" № 15697 в положение, существовавшее на 24.09.98г.

Обязать реестродержателя - ЗАО "Компания-регистратор "Панорама" привести данные реестра владельцев именных ценных бумаг эмитента - ОАО "Лыпьинский металлургический завод" по лицевому счету владельца - ООО "НПРО "Урал" № 8642 в положение, существовавшее на 26.06.98г.

Председательствующий            Л.И.Зубкова

Судьи                           В.Н.Зайцева

                                В.В.Худякова

[state emblem]
## CHELYABINSK REGION ARBITRATION COURT

45400, Chelyabinsk, ul. Vorovskogo, 2

**RULING**
**by**
**Board of Appeals**

City of Chelyabinsk
October 16, 2000                                    Case No. A76-4037/2000-5-105

The [Board of Appeals of the] Chelyabinsk Region Arbitration Court, comprising T. N. Kartashkova, Presiding Judge, and L. L. Golovko and V. V. Rachkov, Judges, has considered the appeal by CJSC "Mikchell-Invest", the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation and CJSC FC "Profit House", Moscow, about the August 1, 2000 ruling of the Chelyabinsk Region Arbitration Court (Judge L. I. Zubkova) in case No. 5-105 with participation of the Plaintiff's representatives A. M. Shakhmatov (proxy No. 33 of September 26, 2000), V. A. Plotnikov (proxy No. 38 of October 11, 2000) and O. A. Bannikova (proxy No. 18 of May 29, 2000 and the Respondents' representatives - D. A. Zhuikov (unnumbered proxy of October 9, 2000), representative of FC "Profit-House", S. V. Rozhkov (proxy No. 57 of December 10, 1999), representative of FC "Vadis", L. V. Yemelyanova (proxy No. 039/Д of September 15, 2000) and Yu. V. Zhukova (proxy No. 039/Д of September 15, 2000), representatives of CJSC "Mikchell-Invest", I. V. Mironova (proxy No. 10.239 of September 5, 2000), representative of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation and V. L. Rozhkov (proxy No. 67.2000 of October 1, 2000), representative of CJSC "Vedeniye reyestrov kompaniy", and has ESTABLISHED the following:

LLC NPRO "Ural" filed a suit with the Chelyabinsk Region Arbitration Court against the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation, CJSC "Finansovaya kompaniya "Vadis", CJSC "Finansovaya kompaniya "Profit House", CJSC "Kompaniya-registrator "Panorama", Amber Star LLC , LLC "Gidromashservis" and "Yuzhnouralskaya registratsionnaya palata" for recognizing the right of ownership in the shares, taking the appropriate action based on the finding of invalidity of a void contract and ordering that the original data in the register keeping system be restored.

The Plaintiff acting in accordance with Article 37 of the Code of Arbitration Procedure of the Russian Federation made the wording of its claims more precise and requested the Chelyabinsk Region Arbitration Court to invalidate transfer orders Nos. 648, 649 and 135, to take the appropriate action based on the finding of invalidity of a void contract by ordering that the entries in its personal account on its ownership in the shares of OJSC "Kachkanarskiy GOK "Vanadium" and OJSC "Ashinskiy metallurgicheskiy zavod" be restored and void the results of the auction of the shares issued by OJSC "Kachkanarskiy GOK "Vanadium".

In substantiation of its claims the Plaintiff indicated that 30,831 first-issue shares and 10,552,232 second-issue shares of OJSC "Kachkanarskiy GOK "Vanadium" and nondocumentary shares of OJSC "Ashinskiy metallurgicheskiy zavod" had been seized, arrested and sold by the Ozyorsk Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation in accordance with the decisions of the [local] State Tax Inspectorate to collect the arrears of taxes, fines and penalties. By its rulings in case No. A76-2946/98-45-32/33-286/27 and A76-6467/98-40y-235 the Arbitration Court invalidated the State Tax Inspectorate decision, the order or recovery against property (in part) and the arrest order. According to the Plaintiff, the transfer orders were signed by [illegible]; therefore, they should not have been executed by CJSC "Kompaniya-registrator "Panorama", and the results of the auction of the shares issued by OJSC "Kachkanarskiy GOK "Vanadium" should be found invalid since only one participant [illegible] took part in the auction.

The Respondents did not acknowledge the claims.

By its August 1, 2000 ruling the Arbitration Court satisfied the Plaintiff's claims.

In their appeals CJSC "Mikchell-Invest", CJSC FC Profit House" and the Chelyabinsk Region Arbitration Court against the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation indicated that they do not agree with the Arbitration Court ruling and requested the Board of Appeals to reverse it for the reason that no violations of the law had been committed. Besides, the above ruling was issued in the absence of representatives of LLC "Gidromashservis" and Amber Star LLC which had not been properly notified.

Upon examining the case materials and the arguments presented in the appeals and upon hearing the Parties' representatives, the Board of Appeals finds that the ruling in question should be reversed in view of Article 58.2 (Part III) of the Code of Arbitration Procedure of the Russian Federation.

The Arbitration Court named LLC "Gidromashservis" and Amber Star LLC as Respondents. The case materials do not contain information that these entities were properly informed of the time and the place of examination of the suit, and the Arbitration Court issued its ruling in their absence, which fact is a ground for reversal of this ruling. In view of Article 157.2 of the Code of Arbitration Procedure the Board of Appeals has the right to completely reverse the ruling and issue a new one.

Before reconsidering the suit, the Court notified the Respondents - LLC "Gidromashservis" and Amber Star LLC – of the reconsideration, but their representatives did not appear, which fact is confirmed by the notices sent to them (pp. 141 and 142, v. III). The case was considered in their absence. The other parties to the suit, whose representatives did not appear were also notified, which fact is also confirmed by the notices sent to these parties.

According to the case materials, the Plaintiff's property including 30,831 first-issue ordinary nondocumentary shares and 10,552,232 second-issue ordinary nondocumentary shares of OJSC "Kachkanarskiy GOK "Vanadium" and 1,675,551 ordinary nondocumentary shares of OJSC "Ashinskiy metallurgicheskiy zavod" was seized and arrested by the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation in accordance with the decisions of the Ozyorsk City State Tax Inspectorate of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation to enforce the

Plaintiff's compliance with the tax laws and to collect the arrears of taxes, fines and penalties from the Plaintiff.

These shares were transferred to CJSC "Mikchel-Invest" for their sale, and entries on the transfer of the right of ownership in the shares to the new owner were made by the registrar in accordance with the transfer orders issued by the Federal Tax Police Service .

On the basis of the register entry on the blocking of transactions in securities and the documents issued by the authorized bodies the entry on the transfer of rights of ownership in the shares of OJSC "Ashinskiy metallurgicheskiy zavod" to the new owner was made by the registrar on June 26, 1998 in violation of items 7.3 and 7.5 of the Regulations "On Procedures for Keeping Register of Registered Securities" since these shares were not released from arrest.

The registrar made the entry on the transfer of rights of ownership in the above quantities of the first-issue and second-issue shares of the OJSC "Kachkanarskiy GOK "Vanadium" to the nominee—CJSC "Depozitarno-kliringovaya kompaniya"—on the basis of the transfer orders (inc. Nos. 648 and 649). The above transfer orders signed by the representatives of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation and CJSC "Mikchell-Invest" do not comply with the requirements of Item 5 of the Regulations "On Keeping Registers of Holders of Registered Securities". The registrator disposed of the shares without the authorization of their owner.

The State Tax Inspectorate decisions to enforce the Plaintiff's compliance with the tax laws were revoked, amended and supplemented, and eventually their paragraphs concerning the sum of 5,579,911 rbl. were invalidated by the Arbitration Court ruling in case No. A76-2946/98-45-32/33-286/27 and their paragraphs concerning the sum of 6,855,762 rbl. were invalidated by the Arbitration Court ruling in case No. A76-6464/98-40y-235. The August 10, 1998 order by the Manager of the Ozyorsk Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation to place the Plaintiff's property under arrest was also invalidated. The arrested property of the Plaintiff was sold for 14,766,635, and the order was invalidated in respect of 12,435,673 rbl.

The Board of Appeals finds that the Plaintiffs' claims should be satisfied since the writing-off of the shares of [illegible] and their alienation were effected in violation of the requirements of [illegible] Federal Law "On Securities Market" (Article 8) and the Regulations "On Keeping Register of Holders of Registered Securities" (items [illegible].

As unilateral contracts (Articles 154.2 and 156 of the Civil Code of the Russian Federation) the transfer orders do not comply with the laws or other legal acts (Article 168 of the Civil Code of the Russian Federation), and under Article of 167 of the Civil Code of the Russian Federation the original entries should be restored.

The argument of FC "Profit House", a Respondent, that [illegible] shares are not considered property which has individual characteristics since shares have generic characteristics.

At the Plaintiff's request CJSC "Vedeniye reyestrov kompaniy" which was keeping the shareholders' register at the time when the request was filed was named a Respondent in this case (June 19, 1997 Resolution No. 11 by the Plenary Session of the Supreme Arbitration Court, i. 6).

The Board of Appeals rejects the argument of FC "Profit House", a Respondent, that the Arbitration Court did not involve bona fide purchasers in the proceedings since no Party requested the above Court to involve any specific bona fide purchaser named by this party, and, besides, the Arbitration Court took steps to identify the owners of [illegible] shares; these persons were the Respondents. Under Article 53 of the Code of Arbitration Procedure of the Russian Federation the parties to a suit must produce evidence of the facts stated by them, and the Arbitration Court afforded this opportunity to them numerous times.

In view of the above and based on Articles 157-159 of the Code of Arbitration Procedure of the Russian Federation, the Board of Appeal **RULES:**

To reverse the August 1, 2000 ruling in case No. 5-105 and to satisfy the appeal.

To void transfer order No. 35 of June 24, 1998, unnumbered transfer order (inc. No. 649) of September 24, 1998 and unnumbered transfer order (inc. No. 648) of September 24, 1998.

To void the results of the auction of the OJSC "Kachkanarskiy GOK "Vanadium" shares sold for 10 10,583,063 rbl. on September 17, 1998.

To obligate the registrar CJSC "Vedeniye reyestrov kompaniy" to restore the data that existed as of September 24, 1998 in personal account No. 15697 of LLC NPRO "Ural" – the owner of 30,831 first-issue shares, reg. No. 62-1П-290, and 10,552,232 second-issue shares, reg. No. 62-1П-1396 - in the register of the holders of the securities issued by OJSC "Kachkanarskiy GOK "Vanadium".

To obligate the registrar CJSC "Kompaniya-registrator "Panorama" to restore the data that existed as of June 26, 1996, in personal account No. 8642 of LLC "NPRO "Ural" – the owner of 1,675,551 ordinary nondocumentary shares, reg. No. 69-1-689 – in the register of the holders of registered securities issued by OJSC "Ashinskiy metallurgicheskiy zavod".

To dismiss the claims against Amber Star LLC and LLC "Gidromashservis".

| | | |
|---|---|---|
| Presiding Judge: | [signature] | T. N. Kartashova |
| Judges: | [signature] | L. L. Golovko |
| | [signature] | V. V. Rachkov |