7/13/2000, the Company Amber Star L.L.C. and Chezhsiz Products L.L.C. were recognized as bona fide purchasers of inscribed common stock in Vanadiy Kachkanarskii Mining and Dressing Complex open joint stock company.

The decision of the court has entered into legal force.

Buy and sell agreements of shares were not studied in the court session. Persons participating in the indicated business transactions were not involved in the case.

Circumstances stated in the appeal were not studied by the court and were not evaluated, whereas the indicated circumstances have juridical significance for correct resolution of the dispute.

Given this information, the judicial panel holds that the decision found by the court does not conform to [...] of articles 157, 192, 194, 197, 14, 50 [...] RSFSR, in connection with which is subject to [...] with the direction of the case to a new [...] in the same court in another composition [...].

[...] examination of the case [...] what has been stated, having notified [...] and time of the court session [...] arguments of the parties and depending upon the established resolution of disputes on the basis of law.

Governed by articles 305 and 306 of the RSFSR Civil Procedural Code, the Judicial Panel,

has determined:

The decision of the Solntsevsk inter-municipal court, Moscow, on September 29, 2000, is reversed and to refer the case to a new examination in the same court at another composition of judges.

| Presiding | [signature] |
| Judges of the panel | [signature] |
| | [signature] |

349

ф. № 20

н/судья *Ильин Н.Ф*

## Определение

гр. д. № 33-34,

уг.

«30» *декабря* 200_ г.    Судебная коллегия по *гражданским*

делам Московского городского суда в составе председательствующего *Федоровой Л.Д*

и судей *Климовой С.А, Гончаровой Г.Ю.Н*

с участием прокурора _____

и адвокатов _____

заслушав в открытом судебном заседании по докладу *Федоровой Л.Д*

дело по кассационной жалобе

*Компании "Фотон Менеджмент Лимитед"*

на ~~приговор~~ *Солнцевского межмуниципального*

решение *суда г. Москвы*    ~~районного народного суда~~

от «29» *сентября 2000 года,*

*которым истребованы именные бездокументарные акции ОАО "Качканарский горнообога- тительный комбинат "Ванадий" с лицевых счетов компании "Фотон Менедже- мент лимитед" с зачислением на лице- вой счет ООО "Инрелмет" 1245677 акции II выпуска /N гос. регистрации выпуска 62-1-1396/, на лицевой счет ОАО "Нижне- тагильский металлургический комбинат" 103626 акции II выпуска /N гос. регистрации выпуска 62-1П-290/ и 18747610 акции II выпуска /N их регистрации выпуска 62-1-1396/, на лицевой счет ЗАО "Стандарт Траст" 17618254 акции II выпуска /N гос.*

**A - 1974**

регистрации 62-1-1396), регистродержатель ОАО "Качканарский горнообогатительный комбинат "Ванадий", ЗАО "Компания - регистратор "Панорама" и АОЗТ "Ведение реестров компаний" обязаны произвести соответствующие операции в реестре владельцев ценных бумаг", в остальной части исковых требований отказано.

Установила:

ООО "Инрамет", АОА "Нижнетагильский металлургический комбинат", ЗАО "Стандфарм "Траст" обратились в суд с иском к Иванову Е.Н., Компаниям Алибер (тар.з.з.а "Мэжик Продактс Эл.Эл.Си", "Дейвис Интернешнл", ЗАО "Компания-регистратор "Панорама", Файн-Траст хаус Лимитед "Холдекс Эл.Эл.Си", "Фактон менеджмент лимитед" об истребовании имущества из чужого незаконного владения, ссылаясь на то, что они законно приобрели обыкновенные именные акции ОАО Ярно-обогатительного комбината "Ванадий", однако ЗАО "Компания - регистратор "Панорама" незаконно списала акции со счетов истцов и зачислила на счет ООО "Урал - Сторит-Кбу и на нулевой счет Иванова Е.Н.

Ответчик Иванов Е.Н. в суд не явился, иск не признал.

Представители ответчиков - компаний иск не признал.

Судом постановлено вышеуказанное решение, об отмене которого по доводам кассационной жалобы просит Компания "Фактон менеджмент лимитед".

A - 1975

Ознакомившись с материалами дела, обсудив доводы кассационной жалобы, выслушав объяснения Лишкиной М.М., представляющей интересы компании "Фостер менеджмент Лимитед" по доверенности от 1/XI-2000 года; компании "Дэвис интернэшнл" по доверенности от 15/XI 2000 года; компании "Нэксис Продактс Эл Эл Си" по доверенности от 15/XI-2000 года, компании "Холдж Эл Эл Си" по доверенности от 15/XI-2000 года, компании "Омни Траст хаус Лимитед" по доверенности от 15/XI-2000 года, объяснение Полякевич Г.Д. по доверенности от компании "Фостер менеджмент Лимитед" от 20/II-2001 года, объяснение Данилова Д.Я. по доверенности от 1/III-2000 года компании "Амбер Стар Эл Эл Си" компании "Дэвис Интернэшнл", объяснение Григорьевой Е.Л. по доверенности от 16/III-2001 года ООО "Исправмет", объяснение Брусовой Н.С. по доверенности от 19/III-2001 года ОАО "Качканарский металлургический комбинат", Судебная Коллегия находит решение суда подлежащим отмене, как постановленное в нарушение закона.

В соответствии со ст. 157 ГПК в случае неявки в судебное заседание кого-либо из лиц, участвующих [...] [большая часть текста закрыта чернильным пятном] ... вправе рассмотреть дело в [...], если сведения [...]

либо если суд признает причины неявки неуважительными, либо если ответчик умышленно затягивает производство по делу.

Из материалов дела не усматривается, что "Компания "Восток Менеджмент Лимитед" была надлежащим образом уведомлена о месте и времени судебного заседания.

В решении суда от 29/IX-2000 года указано, что представитель ответчиков-соистцов иск не признал.

Однако в материалах дела и в судебном решении отсутствует сведение о том, какое конкретное лицо, с указанием фамилии, имя, отчества, представлял интересы компании и, в частности, "Компании "Восток Менеджмент Лимитед" и имелись ли полномочия у этого лица представлять интересы компании.

Рассмотрев дело в нарушение ст. 157 ГПК РСФСР, суд лишил возможности Компанию "Восток Менеджмент Лимитед" принимать участие в рассмотрении дела, представлять доказательства, участвовать в их исследовании, представить свои доводы, соображения по всем возникающим в ходе судебного разбирательства вопросам, представлять свои возражения на предъявленному иску, возражать против ходатайств, доводов и соображений других лиц, участвующих в деле, пользоваться другими процессуальными правами, предписанными лицам инстанции Кодексом, т.е.

351

5

нарушены требования, предусмотренные ст. 130 ГПК РСФСР.

Разрешив спор без участия Компании "Дэвис Менеджмент Лимитед", суд не учел обстоятельства, изложенные в кассационной жалобе Компании.

В частности, решением Мещанского межмуниципального суда г. Москвы от 13/VII – 2000 года "Компания "Амбер Стар Эл Эл Си", "Нэксис Продактс Эл Эл Си" признаны добросовестными приобретателями именных обыкновенных акций ОАО "Качканарский ГОК "Ванадий".

Решение суда вступило в законную силу.

Договоры купли-продажи акций в заседании суда не исследовались. Лица, участвовавшие в указанных сделках, к делу не привлекались.

Обстоятельства, изложенные в кассационной жалобе, судом не исследовались и не оценивались, тогда как указанные обстоятельства имеют юридическое значение для правильного разрешения спора.

При таких данных судебная Коллегия считает, что постановленное решение не соответствует требованиям ст. ст. 157, 192, 194, 197, 14, 50 РСФСР, в связи с чем подлежит с направлением дела на новое ... в том же суд в ином состав ...

... вом рассмотрении дела ... есть изложенное, известить ... и времени судебного засед... доводы сторон и в завис-

A - 1978

6

лючии от установленного

разрешить спор на основании закона

Руководствуясь ст. ст 305, 306 ГПК

РСФСР, Судебная Коллегия

Определила:

Решение Савеловского межмуниципаль-

ного суда г. Москвы от 29 сентября 2000 года

отменить и дело направить на новое

рассмотрение в тот же суд в ином

составе судей.

Председательствующий:

судьи Коллегии:

Климове

Голо

[p. 21]

Note regarding the execution of the decision                    n/s f.  No. 2


## DECISION
### In The Name of the Russian Federation

On November 30, 2001, the Solntsevo Inter-Municipal Regional Court of the City of Moscow, comprised of the honorable A. D. Proniakin, presiding over the court, and the judges, A. I. Dymont, and V. V. Klimentova, in the presence of the prosecutor, _____, and the attorney, _____, with secretary, S. V. Surina, upon reviewing, in an open hearing, civil case No. 2-1762/01 related to the claim of ZAO Standard Trust, OOO Inrosmet, OAO Metallurgical Works of Nizhni Tagil against Evgenii Nikolaevich Ivanov and the companies, Foston Management Limited, Omni Trust House Limited, Nexis Products LLC, Amber Star LLC, Davis International, Holdex LLC, and ZAO Kompaniia – Registrator Panorama, regarding a reclaim of assets from its illegal possession by (an)other party/parties; application of Foston Management Limited regarding the reversal of the execution of the decision;


### FOUND:

The plaintiffs approached the Court with a claim against the defendants regarding the reclaim of common nominal shares of OAO Vanadii Mining and Milling Complex of Kachkanar as follows: OAO Metallurgical Works of Nizhni Tagil requested the return of 103,626, shares of the 1st issue, State Registration No. 62-111-290 and 18,747,610 shares of the 2nd issue, State Registration No. 62-1-1396; OOO Inrosmet requested the return of 1,245,677 shares of the 2nd issue, State Registration No. 62-1-1396; ZAO Standard Trust requested the return of 17,618,254 shares of the 2nd issue, State Registration No. 62-1-1396, with one ruble par value per share. The plaintiffs substantiated their requests stating that they were the owners of the shares subject to reclaim and that these shares have been removed from their possession regardless of their will and the plaintiffs also substantiate their requests with the statement that they have legally acquired the appropriate number of shares of OAO Vanadii Mining and Milling Complex of Kachkanar. In the opinion of the plaintiffs, as a result of the illegal actions of the defendants, regardless of the court decisions of the arbitration courts, ZAO Kompaniia-Registrator Panorama has written off the shares from the accounts of the plaintiffs and has entered them on the account of OOO Ural Start LTD and on the personal account of E. N. Ivanov. On the basis of this evidence, the plaintiffs ask that their shares be reclaimed [...]

[p. 22]

[...] from their illegal possession by (an)other party/parties and that ZAO Kompaniia-Registrator Panorama and ZAO Vedenie Reestrov Kompanii make changes in the register of holders of securities—stock of OAO Vanadii Mining and Milling Complex of Kachkanar—by means of writing the common nominal shares off of the personal accounts of the defendants.

E. A. Grigorieva, attorney for the plaintiffs, ZAO Standard Trust and OOO Inrosmet, confirmed the requests of the plaintiffs in court and pleaded with the court to grant the claims of said companies.

I. S. Brusova, attorney for the plaintiff, OAO Metallurgical Works of Nizhni Tagil maintained the requests of the plaintiff in court and also pleaded with the court to grant the claim.

The defendant, E. N. Ivanov, had objections against the claims and explained that he is legally in possession of the securities, i.e., 45 shares of OAO Vanadii Mining and Milling Complex of Kachkanar, and therefore pleaded with the court to deny the claims since bearer securities cannot be reclaimed from a good faith buyer.

M. Ashikhmina, attorney for the companies Foston Management Limited and Nexis Products LLC, objected to the claims stating that the companies that she represented in court, legally held the shares under dispute, hence she pleaded with the court not to leave grant the claims on the following grounds. In the opinion of M. Ashikhmina, attorney for the above companies, the plaintiffs have approached the court of general jurisdiction with their requests on the basis of exaggerated grounds, artificially indicating as a defendant in the statements of claim E. N. Ivanov who legally holds shares of OAO Vanadii Mining and Milling Complex of Kachkanar, and the securities (shares) cannot be reclaimed from him as a good faith buyer. In the opinion of M. Ashikhmina, the above claims should be heard at an arbitration court since such disputes are exclusively in its jurisdiction.

In addition, the attorney for the companies, M. Ashikhmina, insisted that, when hearing this case, the court grants the petition of Foston Management Limited for the reversal of the execution of the decision and reclaims the stock under dispute in the amount of more than 37 shares on behalf of said company.

V. V. Volkov, attorney for Amber Star LLC, objected to the claims and pleaded with the court to leave them without a hearing because, in the opinion of the attorney, these claims are to be heard by an arbitration court.

Davis International, Holdex LLC, and ZAO Kompaniia – Registrator Panorama did not send their attorneys to court and did not make any objections regarding the claims; the parties present at the merits hearing did not object to the case being heard in the absence of attorneys of said companies.

N. S. Karzhavina, attorney for ZAO Vedenie Reestrov Kompanii, summoned to participate in the case as a third party upon petition by the attorneys for the plaintiffs left the issue of deciding on

the claims for the reclaim of shares to the discretion of the court. In addition, she explained in court that all shares under dispute are currently deposited at the Depositary and Clearing Association and all transactions with them have been suspended.

Upon hearing the attorneys for the plaintiffs, the defendant, E. N. Ivanov, and the attorneys for Foston Management Limited, Nexis Products LLC, Amber Star LLC and Vedenie Reestrov Kompanii, and upon the examination of the written evidence in the case, based on the following grounds, the court found the following: to deny the claims against E. N. Ivanov; to leave without reviewing the remainder of the claims of the plaintiffs against the companies as legal entities for the reclaim of shares and to deny this portion of the claims since this business dispute is not within the jurisdiction of the court of general jurisdiction and is to be decided in the appropriate arbitration court; and not to grant the application of Foston Management Limited for the reversal of the execution of the decision.

The assertion by the defendant, E. N. Ivanov, that he had legally purchased 45 common shares of OAO Vanadii Mining and Milling Complex of Kachkanar [...]

[p. 23]

[…] and therefore the plaintiffs having groundlessly demanded the reclaim of said shares is confirmed by the following evidence.

[*Handwritten:* Ivanov] It is evident from the copy of the registration journal of shares of OAO Vanadii Mining and Milling Complex of Kachkanar (sheets 226-227, volume 1) that E. N. Ivanov had purchased 45 common shares, State Registration No. 1.00 62-1-1396, from OMNI Trust House Limited, pursuant to a sales and purchase agreement; in turn, OMNI Trust House Limited had purchased 9,240,000 shares of said state registration from [*illegible*] Depository and Clearing Association (See sheet 226, vol. 1).

In this manner, it was established in court that E. N. Ivanov is a good faith buyer of the stock. Whereas, pursuant to Article 302 of the Civil Code of the Russian Federation, an asset may be reclaimed from a good faith buyer who has purchased an object and has been remunerated for it, only in the event that the asset has been lost by the owner or by the person into whose possession the asset has been given by the owner or, if the asset has been stolen from either of the two, or if the asset has left their possession by any other means contrary to their will, monies, as well as bearer securities, may not be reclaimed from a good faith buyer.

Since the plaintiffs have not presented any evidence in court that E. N. Ivanov is a bad faith buyer of the shares, the court has not established facts as to the shares being lost by the owner or stolen from the owner, or that they have left the owner's possession by any other means contrary to the will of the owner or of the person who has purchased the asset, the court believes that it is possible to deny the claims against the defendant, E. N. Ivanov, for the reclaim of 45 shares.

The claims of the plaintiffs against the companies indicated above for the reclaim of 37,715,081 shares of OAO Vanadii Mining and Milling Complex of Kachkanar cannot be reviewed in a court of general jurisdiction and therefore, have been denied by the court on the following grounds.

The court has found that E. N. Ivanov is a good faith buyer of 45 shares of OAO Vanadii Mining and Milling Complex of Kachkanar, which has been known to the plaintiffs. However, the plaintiffs, artificially, on exaggerated grounds, recognized the individual, E. N. Ivanov, along with the companies indicated above, as defendants in this case for the sole purpose of having the matter heard in a court of general jurisdiction pursuant to Article 26 and 28 of the Civil Code of the Russian Federation.

Whereas, pursuant to Article 22 of the Code of Arbitration Procedure of the Russian Soviet Federative Socialist Republic, the arbitration court has jurisdiction over cases related to business disputes arising from civil, administrative and other legal relations, between legal entities (hereinafter referred to as "organizations"), individuals involved in entrepreneurship without the establishment of a legal entity and having the status of an individual entrepreneur obtained in due course, disputes for the reclaim of assets by the owner or another legal holder from the illegal

possession of another party belongs to the area of business disputes resolved by an arbitration court.

Since the court has found that E. N. Ivanov cannot be recognized as a proper defendant in the dispute between legal entities regarding the reclaim of assets from the illegal possession of another party, the court, following the provisions of Article 122 of the RSFSR Code of Arbitration Procedure regarding the fact revealed during the hearing of this case by this court that the case had been taken in violation of the rules of jurisdiction since, in accordance with Article 22 of the Code of Arbitration Procedure of the Russian Federation, the claims of plaintiffs, in their capacity as legal entities, against companies—legal entities—in accordance with the rules of jurisdiction, are to be heard by the arbitration court of the Province of Sverdlovsk [*sic*].

[p. 24]

Under these circumstances and taking into consideration the opinion of [Ms.] Ashikhmina, attorney for Foston Management Limited, V. V. Volkov, attorney for Amber Star LLC, and in the spirit of Article 129, Item 7, of the RSFSR Code of Arbitration Procedure, the court will not review the claims of the plaintiffs on their merits in civil proceedings because the claims of the plaintiffs are within the jurisdiction of the arbitration court.

Upon the review of the petition of Foston Management Limited regarding the reversal of the execution of the court's decision for the recovery of 103,540 shares with State Registration No. 62-111-290 and 18,477,610 shares with State Registration No. 62-1-1396 from OAO NTMK [Metallurgical Works of Nizhni Tagil], of 1,245,677 shares with State Registration No. 62-1396 from OOO Inrosmet, and 17,618,254 shares with State Registration No. 62-1-1396 from ZAO Standard Trust, on behalf of Foston Management Limited, the court did not find grounds to grant it.

The decision of the Solntsevo Inter-Municipal Regional Court of the Western Administrative District of the City of Moscow of September 29, 2000, pursuant to which the stock under dispute in the amount of more than 37 million has been written off from the accounts of Foston Management Limited into the accounts of OAO NTMK, OOO Inrosmet, and ZAO Standard Trust, has been revoked in a cassation procedure.

During this hearing of the court, it was unarguably found that the business dispute regarding the shares of OAO Vanadii Mining and Milling Complex of Kachkanar is within the jurisdiction of the Arbitration court of Sverdlovsk Province on which the attorney for Foston Management Limited insisted in court, demanding that the proceeding in this manner be terminated.

[*Handwritten numbers*]

1) The attorneys for the plaintiffs presented a copy of a claim filed with the Arbitration court of Sverdlovsk Province in court on October 30, 2001, to void the transactions with the disputed shares of OAO Vanadii Mining and Milling Complex of Kachkanar in the amount of more than 37 million, in which Foston Management Limited has also been summoned as a defendant, as well as a copy of the ruling of the Arbitration court of Sverdlovsk Province dated February 5, 2001, regarding the initiation of proceedings regarding this claim.

2) Based on the explanations given in court by the attorney of ZAO Vedenie Reestrov Kompanii, it is found that [all] transactions with the disputed shares have been suspended and that the disputed shares of OAO Vanadii Mining and Milling Complex of Kachkanar have been deposited with OIuL Depositary and Clearing Association, as well as with other depositary companies.

3) Based on the letter of the Federal Securities Commission of Russia (FKTsB of Russia) (See sheet 25, vol. 1), it is found that said federal authority is examining the legality of writing off the disputed shares from the accounts of Foston Management Limited onto the accounts of OAO NTMK, ZAO Standard Trust, and OOO Inrosmet, performed pursuant to the writ of execution

issued by the Solntsevo Inter-Municipal District Court of the Western Administrative District of the City of Moscow on September 29, 2000 regarding matter No. 2-2747.

4) Upon the evaluation of the presented evidence in the aggregate, the court finds that by granting the petition of Foston Management Limited to recover on its behalf the disputed stock in the amount of more than 37 million shares, the court of general jurisdiction in fact resolves a business dispute which is within the jurisdiction of the arbitration court and this would be in contradiction with the provisions of Article 47 o the Constitution of the Russian Federation, Article 22 of the RF Code of Arbitration Procedure and Article 25 of the RSFSR Code of Civil Procedure.

Under such circumstances, the court finds that the petition of Foston Management Limited regarding the reversal of the execution of the decision, is not to be granted.

Based on the above and pursuant to Article 47 of the RF Constitution, Article 302 of RF Civil Code, Article 22 of the RF Code of Arbitration Procedure, and Articles 122, 129, 191-196, 203, 430-431 of the RSFSR Code of Civil Procedure, the court

DECIDED:

TO deny the claim of ZAO Standard Trust, OOO Inrosmet, and OAO Metallurgical Works of Nizhni Tagil against Evgenii Nikolaevich Ivanov for the reclaim of 45 shares.

A - 1986

[p. 25]

CONTINUED No. 3

To leave without review in civil proceedings the claims of ZAO Standard Trust, OOO Inrosmet, and OAO Metallurgical Works of Nizhni Tagil against Foston Management Limited, OMNI Trust House Limited, Nexis Products LLC, Amber Star LLC, Davis International, Holdex LLC, and ZAO Kompaniia-Registrator Panorama for the reclaim of shares because this dispute is within the jurisdiction of the arbitration court.

Not to grant the petition of Foston Management Limited for the reversal of the execution of the decision on the grounds presented in the substantiation of the decision.

This decision may be appealed or protested in the Moscow City Court via the regional court within 10 days of its rendition.

                    Presiding:     Signature

                    Judges:       Signatures

Copy authenticated.

          Presiding:

          Secretary:

Отметка об исполнении решения

н/с ф. № 2

# Р Е Ш Е Н И Е
## Именем Российской Федерации

30.11.    200  г.

Солнцевский межмуниципальный _____ районный суд г. Москвы

в составе председательствующего судьи Пронякина А.Д.

народных заседателей Дымонт А.И., Климентовой В.В.

с участием прокурора _____

и адвоката _____

при секретаре Суриной С.В.

рассмотрев в открытом судебном заседании гражданское дело № 2-1762/01

по иску ЗАО "Стандарт Траст", ООО "Инросмет"; ОАО "Нижнетагильский металлургический комбинат" к Иванову Евгению Николаевичу; компаниям: "Фостон менеджмент Лимитед"; "Омни Трастхаус Лимитед"; "Нэксиз Про-дакте Эл.Эл.Си"; "Амбер Стар Эл.Эл.Си"; "Дэвис Интернешнл"; "Холдэкс Эл.Эл.Си."; ЗАО "Компания – регистратор "Панорама" об истребовании имущества из чужого незаконного владения; заявления компании "Фостон менеджмент Лимитед" о повороте исполнения решения;

## У С Т А Н О В И Л :

Истцы обратились в суд с иском к ответчикам об истребовании у них обыкновенных именных акций ОАО "Качканарский ГОК "Ванадий": ОАО "Нижнетагильский металлургический комбинат" в количестве 103626 акций I выпуска № гос.регистрации 62-1П-290 и 18 747 610 акций II выпуска № гос.регистрации 62-1-1396; ООО "Инросмет" 12 45 677 акций II выпуска № гос.регистрации 62-1-1396; ЗАО "Стандарт Траст" 17 618 254 акций II выпуска № гос.регистрации 62-1-1396, номинальной стоимостью одной акции в один рубль. Свои требования истцы обосновали тем, что они являются собственниками истребуемых акций, которые выбыли из их владения помимо их воли, мотивируя свои требования тем, что они на законных основаниях приобрели соответствующее количество акций ОАО "Качканарский ГОК "Ванадий". По мнению истцов, в результате незаконных действий ответчиков, несмотря на судебные решения арбитражных судов, ЗАО "Компания-регистратор "Панорама" списала акции со счетов истцов и зачислила их на счет ООО "Урал-Старт-ЛТД" и на лицевой счет Иванова Е.Н. При таких данных истцы просят истребовать свои акции

A - 1989

из чужого незаконного владения и обязать ЗАО "Компания-регистратор "Панорама" и ЗАО "Ведение реестров компаний" внести изменения в реестр владельцев ценных бумаг – акций ОАО "Качканарский ГОК "Ванадий" путем списания обыкновенных именных акций с личевых счетов ответчиков.

Представитель истцов: ЗАО "Стандарт Траст" и ООО "Инреомет" Григорьева Е.А. требования истцов подтвердила в суде и просила суд удовлетворить иски названных компаний.

Представитель истца ОАО "Нижнетагильский металлургический комбинат" Брусова И.С. требования истца поддержала в суде и также просила суд иск удовлетворить.

Ответчик Иванов Е.Н. возражал против исков и пояснил, что он на законных основаниях владеет ценными бумагами – 45 акциями "Качканарский ГОК "Ванадий", а поэтому просил суд в исках отказать, поскольку ценные бумаги на предъявителя не могут быть истребованы от добросовестного приобретателя.

Представитель компаний: "Фостон менеджмент Лимитед" и "Нэксиз Продакте Эл.Эл.Си. – Ашихмина М. возражала против исков, утверждая, что компании, которые она представляет в суде, на законных основаниях владели спорными акциями, и поэтому просила суд иски оставить без удовлетворения по следующим основаниям. По мнению представителя компаний Ашихминой М. истцы по надуманным основаниям обратились в суд общей присдикции со своими требованиями, искусственно указав в исковых заявлениях в качестве ответчика Иванова Е.Н., который на законных основаниях владеет акциями ОАО "Качканарский ГОК "Ванадий" и у него, как у добросовестного приобретателя, не могут быть истребованы ценные бумаги-акции. По мнению Ашихминой М., указанные исковые требования должны рассматриваться в арбитражном суде, поскольку такие споры подведомственны исключительно арбитражному суду.

Кроме того, представитель компаний Ашихмина М. настаивала на том, чтобы суд при рассмотрении настоящего дела удовлетворил ходатайство компании "Фостон менеджмент Лимитед" о повороте исполнения решения и в пользу названной компании истребовал спорные акции в количестве более 37 миллионов штук.

Представитель компании "Амбер Стар Эл.Эл.Си. Волков В.В. – возражал против исков и просил суд оставить их без рассмотрения, поскольку по мнению представителя эти исковые требования должны быть рассмотрены в арбитражном суде.

Компании "Дэвис Интернешнл"; "Холдекс Эл.Эл.СИ."; ЗАО "Компания-регистратор "Панорама" своих представителей в суд не направили, возражений по искам не представили, стороны, участвующие в рассмотрении дела по существу, не возражали против того, чтобы дело было рассмотрено в отсутствие представителей названных компаний.

Представитель ЗАО "Ведение реестров компаний" Каржавина Н.С., привлеченная к участию в деле в качестве третьего лица по ходатайству представителей истцов, вопрос о принятии решения по искам об истребовании акций оставила на усмотрение суда. При этом пояснила, в суде, что все спорные акции в настоящее время находятся на депозите в "Депозитарно-расчетном союзе" и движение по ним приостановлено.

Выслушав представителей истцов, ответчика Иванова Е.Н., представителей компаний "Фостон Менеджмент Лимитед"; "Нэксиз Продакте Эл.Эл.Си."; "Амбер Стар Эл.Эл.Си."; "Ведение реестров компаний", исследовав письменные материалы дела, суд, в силу следующих оснований нашел: в исковых требованиях к Иванову Е.Н. отказать; остальные исковые требования истцов к компаниям, как к юридическим лицам, об истребовании акций оставить без рассмотрения в в этой части в исках отказать, так как этот экономический спор не подведомствен судам общей юрисдикции, а разрешается в соответствующем арбитражном суде; заявление компании "Фостон менеджмент Лимитед" о повороте исполнения решения оставить без удовлетворения.

Утверждение ответчика Иванова Е.Н. о том, что он приобрел 45 обыкновенных акций ОАО "Качканарский горно-обогатительный комбинат

ПРОДОЛЖЕНИЕ К ДЕЛУ № ___2___

"Ванадий" на законных основаниях, и поэтому истцы необоснованно предъявили к нему требования о возврате этих акций, подтверждается следующими доказательствами.

Из копии регистрационного журнала по акциям ОАО "Качканарский горно-обогатительный комбинат "Ванадий" (л.д. 226-227 том I) усматривается, что Иванов Е.Н. на основе договора купли-продажи приобрел 45 обыкновенных именных акций, номер государственной регистрации 1.00 62-I-1396, у компании "ОлМИ Траст хаус Лимитед"; в свою очередь компания "ОлМИ Траст хаус Лимитед" акции указанной государственной регистрации в количестве 9 240 000 штук приобрела в ОАО "Депозитарно-расчетный союз" (см.л.д.226 том I).

Таким образом, в суде установлено, что Иванов Е.Н. является добросовестным приобретателем акций. Между тем, согласно ст. 302 ГК РФ имущество может быть истребовано от добросовестного приобретателя, приобретшего вещь возмездно, только в том случае, если имущество утеряно собственником или лицом, которому имущество передано собственником во владение, либо похищено у того или другого, либо выбыло из их владения иным путем помимо их воли; деньги, а также ценные бумаги на предъявителя не могут быть истребованы от добросовестного приобретателя.

Поскольку истцы не представили в суд никаких доказательств, свидетельствующих о том, что Иванов Е.Н. является недобросовестным приобретателем акций, в суде не установлено фактов о том, что акции собственником были утрачены, либо похищены, либо выбыли из владения иным путем помимо воли собственника или лица приобретшего имущество, то суд считает возможным в исковых требованиях истцов к Иванову Е.Н. об истребовании 45 акций отказать.

Исковые требования истцов к названным компаниям об истребовании 37 715 ОлМ акций ОАО "Качканарский ГОК "Ванадий" не могут быть рассмотрены в суде общей юрисдикции, а поэтому судом оставлены без удовлетворения в силу следующих обстоятельств.

В суде установлено, что Иванов Е.Н. является добросовестным приобретателем 45 акций ОАО "Качканарский ГОК "Ванадий", о чем было известно истцам. Однако истцы искусственно, по надуманным основаниям, признали гражданина Иванова Е.Н. вместе с указанными компаниями ответчиками по делу, только для того, чтобы согласно ст.ст. 25, 28 ГПК РСФСР дело рассматривалось в суде общей юрисдикции.

Между тем, согласно ст.22 АПК РФ арбитражному суду подведомственны дела по экономическим спорам, возникающим из гражданских, административных и иных правоотношений: между юридическими лицами (далее организациями), гражданами, осуществляющими предпринимательскую деятельность без образования юридического лица и имеющими статус индивидуального предпринимателя, приобретенный в установленном порядке; к экономическим спорам, разрешаемым арбитражным судом, относятся споры: об истребовании собственником или иным законным владельцем имущества из чужого незаконного владения.

Поскольку в суде установлено, что Иванов Е.Н. не может быть признан надлежащим ответчиком по спору между юридическими лицами об истребовании имущества из чужого незаконного владения, то суд, руководствуясь правилами ст.122 ГПК РСФСР о том, что при рассмотрении дела в данном суде выявилось, что оно было принято с нарушением правил подсудности, так как согласно ст.22 АПК РФ исковые требования истцов, как юридических лиц, к компаниям — юридическим лицам по подсудности должны рассматриваться в арбитражном суде Свердловской области.

При таких обстоятельствах, и, учитывая мнение представителя компании "Фостон менеджмент лимитед" Ашихминой; представителя компании "Амбер Стар Эл.Эл.Си." Вольнова В.В., исходя из смысла п.7 ст.129 ГПК РСФСР суд отказывает истцам в рассмотрении их исковых заявлений по существу в гражданском судопроизводстве, поскольку исковые требования истцов подсудны арбитражному суду.

Рассмотрев ходатайство компании "Фостон менеджмент лимитед" о повороте исполнения решения суда, а именно: о взыскании с ОАО "НТМК" 103540 акций гос. № 62-1п-290 и 18 477 610 акций гос.№ 62-1-1396; с ООО "Инросмет" 1243077 акций гос.№ 62-1-1396; с ЗАО "Стандарт-Траст" 17 618 254 акций гос.№ 62-1-1396 в пользу компании "Фостон менеджмент лимитед", суд не нашел оснований для его удовлетворения.

Решение Солнцевского межмуниципального суда г.Москвы от 29.9.2000 года, по которому спорные акции в количестве более 37 миллионов списаны со счетов "Фостон менеджмент лимитед" на счета ОАО "НТМК"; ООО "Инросмет"; ЗАО "Стандарт Траст" - отменено в кассационном порядке.

В настоящем судебном заседании бесспорно установлено, что экономический спор об акциях ОАО "Качканарский ГОК "Ванадий" подсуден арбитражному суду Свердловской области, о чем, настаивала в суде представитель "Фостон менеджмент лимитед", требуя прекращения производства по делу.

Представители истцов представили в суд копию искового заявления в арбитражный суд Свердловской области от 30.10.2001 года о признании сделок со спорными акциями ОАО "Качканарский ГОК "Ванадий" в количестве более 37 миллионов недействительными, в котором в качестве ответчика привлечена и компания "Фостон менеджмент лимитед", а также копию определения арбитражного суда Свердловской области от 5.11.2001 года о принятии этого иска к производству.

2)Из объяснений, данных в суде, представителя ЗАО "Ведение реестров компаний" усматривается, что движение по спорным акциям приостановлено и спорные акции ОАО "Качканарский ГОК "Ванадий" находятся на депозитах как в ОАО "Депозитарно-расчетный союз", так и в других депозитарных компаниях.

2) Из письма Федеральной комиссии по рынку ценных бумаг (ФКЦБ России) (см.л.д. 25 т.1) усматривается, что названный федеральный орган проверяет законность списания спорных акций со счетов компании "Фостон менеджмент лимитед" на счета компании ОАО "НТМК"; ЗАО "Стандарт Траст"; ООО "Инросмет", произведенного по исполнительному листу Солнцевского межмуниципального районного суда ЗАО города Москвы, выданного 29.09.2000 года по делу № 2-2747.

4)Оценивая изложенные доказательства в их совокупности, суд приходит к выводу, что удовлетворяя ходатайство компании "Фостон менеджмент лимитед" о взыскании в ее пользу спорные акции в количестве более 37 миллионов штук, суд общей юрисдикции по существу разрешает экономический спор, который подсуден и подведомственен арбитражному суду, что вошло бы в противоречие с положением ст.47 Конституции РФ, ст.22 АПК РФ, ст.25 ГПК РСФСР.

При таких обстоятельствах, суд считает, что ходатайство компании "Фостон менеджмент лимитед" о повороте исполнения решения должно быть оставлено без удовлетворения.

На основании изложенного и руководствуясь ст.47 Конституции РФ, ст.302 ГК РФ, ст.22 АПК РФ, ст.ст. 122, 129, 191-196, 203, 430-431 ГПК РСФСР, суд

Р Е Ш И Л :

В иске ЗАО "Стандарт Траст"; ООО "Инросмет"; ОАО "Нижнетагильский металлургический комбинат" к Иванову Евгению Николаевичу об истребовании 45 акций - отказать.

A - 1992

ПРОДОЛЖЕНИЕ К ДЕЛУ № ___3___

Исковые требования ЗАО "Стандарт Траст", ООО "Виросмет", ОАО "Нижнетагильский металлургический комбинат" к компании "Фостон менеджмент лимитед", "Сэйл Трастхаус лимитед", "Нэксиз Продактс Эл.Эл.Си.", "Амбер Стар Эл.Эл.Си.", "Дэвис Интернешнл", "Холдекс Эл.Эл.Си.", ЗАО "Компания-регистратор "Панорма" об истребовании акций оставить без рассмотрения в гражданском судопроизводстве, поскольку данный спор подведомственен арбитражному суду.

Ходатайство "Фостон менеджмент лимитед" о повороте исполнения решения, по основаниям изложенным в описательно-мотивировочной части решения, оставить без удовлетворения.

Решение может быть обжаловано или опротестовано в Мосгорсуд через районный суд в течение 10 дней со дня его вынесения.

Председательствующий: подпись

Копия верна.                    Народные заседатели: подписи


Председательствующий:

Секретарь:

A - 1993

## Securities Sale and Purchase Agreement No 25/K

06 October 2000

This SECURITIES SALE AND PURCHASE AGREEMENT is entered into between Davis International L.L.C, a company organised under the laws of the State of West Virginia, United States of America (the "Seller"), and Newstart Group Corp., a company organised under the laws of the State of Delaware, United States of America (the "Purchaser ").

Настоящий ДОГОВОР КУПЛИ-ПРОДАЖИ заключен между компанией Davis International L.L.C, созданной по законодательству Штата Западная Вирджиния, Соединенные Штаты Америки, ("Продавец"), и компанией Newstart Group Corp., созданной по законодательству Штата Делавэр, Соединенные Штаты Америки ("Покупатель").

### 1.    Subject of Agreement

The Seller is the owner of certain securities issued by OAO Kachkanar Ore-Mining Integrated Works "Vanadiy" (the *Issuer*) as stated in Attachment 1 hereto (the *Securities*") which the Seller owns free and clear from the rights of third parties. The Purchaser hereby agrees to purchase from the Seller, and the Seller agrees to sell to the Purchaser, the Securities together with any and all rights attaching thereto, including, without limitation, any dividends not as yet paid or stock splits effected, and the right to participate in any general meeting of the shareholders of the Issuers occurring after the date hereof irrespective of the date on which the list of shareholders entitled to participate in the shareholders meeting has been established, against the Purchase Price stated in Attachment 1 hereto.

### 1.    Предмет договора

Продавец является владельцем определенных ценных бумаг, выпущенных OAO «Качканарский горно-обогатительный комбинат «Ванадий» (далее «Эмитент»), указанных в Приложении 1 к настоящему Договору, которые принадлежат Продавцу на праве собственности и не обременены какими-либо правами третьих лиц (далее "Ценные бумаги"). Покупатель настоящим обязуется купить у Продавца, а Продавец обязуется продать Покупателю за сумму Покупной Цены, установленной в Приложении 1, Ценные бумаги и все права, связанные с ними, включая права в отношении невыплаченных дивидендов, проведенных дроблений акций, участия в общих собраниях акционеров, независимо от даты составления списка акционеров.

### 2.    Transfer of Securities

2.1.   The Seller shall satisfy its obligations with respect to delivery of the Securities under this Agreement within ten (10) business days from entering of this Agreement .

### 2.    Передача Ценных бумаг

2.1.   Продавец обязан исполнить свои обязательства в отношении поставки Ценных бумаг в течение десяти (10) рабочих дней после заключения настоящего Договора.

2.2.   The parties agree that ownership of the Securities shall pass to the Purchaser upon payment of the Purchase Price in full.

2.2.   Стороны соглашаются, что право собственности на Ценные бумаги переходит к Покупателю после полной оплаты суммы Покупной Цены.

### 3.    Settlement

3.1. The Purchaser shall transfer and deposit the Purchase Price in United States Dollars by means of wire transfer in immediately available funds within three (3) business days from performance by the Seller of its obligations with respect to delivery of the Securities under this Agreement

### 3.    Расчеты

3.1 Покупатель переводит сумму Покупной Цены в долларах США денежным переводом посредством системы электронной связи в виде немедленно доступных средств в течении трех (3-х) рабочих дней после исполнения Продавцом своих обязательств по поставке Ценных бумаг согласно настоящего Договора.

3.2. The Purchaser's obligation of payment for the Securities shall be deemed to be satisfied upon receipt of the funds in the Seller's account.

3.2. Обязательства Покупателя по оплате Пакета ЦБ считаются выполненными в момент поступления денежных средств на счет Продавца.

### 4.    Term and Termination

4.1. The term of this Agreement shall commence on the

### 4.    Срок действия, прекращение и расторжение договора

4.1.   Срок действия настоящего Договора

date hereof and shall expire upon performance by the Parties of their obligations provided hereto.

4.2. In the event of termination or rescission of this Agreement, the provisions of clauses 5, 6, 7, 11 and 12 shall remain in force notwithstanding termination of this Agreement.

## 5.    Responsibility

5.1. The Purchaser and the Seller each confirm that in entering into this Agreement they have undertaken their own enquiries and satisfied themselves as to the nature of the Securities being purchased, and the appropriateness of this transaction for their purposes and have not acted in reliance upon any representation made by the other, except for any representation contained herein. The Purchaser specifically acknowledges that the purchase and ownership of Russian securities is subject to risks and in purchasing the Securities it is acting in reliance on its own professional experience and due diligence.

## 6.    Representations and Warranties of the Seller

(a)    Organization and Authority.  The Seller is a company, duly organized, validly existing and in good standing under the laws of the State of West Virginia, United States of America with full corporate power and authority to execute and deliver this Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby.

(b)    Due Authorization: Binding Obligation.  The execution, delivery and performance by the Seller of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized by all necessary corporate actions on the part of the Seller. This Agreement has been duly and validly executed and delivered by the Seller. This Agreement constitutes legal, valid and binding obligations of the Seller, and is enforceable against the Seller in accordance with its terms.

начинается в дату подписания и прекращается по выполнении Сторонами их обязательств по настоящему Договору.

4.2. В случае прекращения действия или расторжении Договора положения ст. 5, 6, 7, 11 и 12 остаются в силе после прекращения или расторжения настоящего Договора.

## 5.    Ответственность

5.1. Покупатель и Продавец каждый со своей стороны подтверждают, что при заключении настоящего Договора каждый из них провел самостоятельное исследование и сформировал мнение относительно природы Ценных бумаг, являющихся предметом настоящего Договора, и относительно соответствия целей Договора его интересам, не полагаясь при этом на заверения другого. Покупатель особо отмечает, что приобретение и осуществление права собственности в отношении российских ценных бумаг подвержены рискам, и осуществляя эти действия, он полагается на свой собственный профессиональный опыт и должную юридическую проверку.

## 6.    Заверения Продавца

(а)    Организация и правомочие.  Продавец является компанией, должным образом зарегистрированной и существующей в соответствии с законодательством Штата Западная Вирджиния, Соединенные Штаты Америки. Продавец правомочен подписывать и передавать настоящий Договор, выполнять обязательства и совершать сделки, предусмотренные настоящим Договором.

(б)    Полномочия; обязывающий характер Договора.  Продавец обладает необходимыми полномочиями подписать, передать и исполнить настоящий Договор и совершить сделки, предусмотренные настоящим Договором, выполнив все необходимые для этого корпоративные действия. Продавец должным образом подписал и передал настоящий Договор. Обязательства, принятые на себя Продавцом в соответствии с настоящим Договором, являются законными, действительными, обязательными к исполнению и принудительному исполнению против Продавца в соответствии с условиями настоящего Договора.

2



( c )   Non-Contravention.  The execution, delivery and performance of this Agreement by the Seller and the consummation of the transactions contemplated hereby do not and will not, with or without the giving of notice or the lapse of time, or both, violate, conflict with, result in the breach of, or accelerate the performance required by any of the terms, conditions or provisions of the charter documents or by-laws or other governing or constitutive documents of the Seller.

(d)   Approvals.  The Seller is not required to file, seek or obtain any governmental notice, filing, authorization, approval, order or consent in connection with the execution, delivery and performance of this Agreement.

(e)   Pledges.   The Seller has not pledged the Securities to any third party.

7.   Representations and Warranties of the Purchaser

(a)   Organization and Authority. The Purchaser is a company, duly organized, validly existing and in good standing under the laws of the State of Delaware, United States of America, with full corporate power and authority to execute and deliver this Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby.

(b)   Due Authorization; Binding Obligation. The execution, delivery and performance by the Purchaser of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized by all necessary corporate actions on the part of the Purchaser. This Agreement has been duly and validly executed and delivered by the Purchaser. This Agreement constitutes legal, valid and binding obligations of the Purchaser, and is enforceable against the Purchaser in accordance with its terms.

( c )   Non-Contravention.  The execution, delivery and performance of this Agreement by the Purchaser and the consummation of the transactions contemplated hereby do not and will not, with or without the giving of notice or the lapse of time, or both, violate, conflict with, result in the breach of or accelerate the performance required by any of the terms, conditions or provisions of the charter documents or by-laws or other governing or constitutive documents of the Purchaser.

(в)   Отсутствие   нарушений.   Подписание, передача и исполнение Продавцом настоящего Договора, а также совершение сделок, предусмотренных настоящим Договором, не противоречит и не будет противоречить каким-либо условиям уставных, учредительных документов Продавца, не нарушает и не приведет к нарушению таких условий, и не ускорит выполнение действий, требуемых такими условиями, после соответствующего уведомления или без него, или по прошествии времени, или того и другого.

(г)   Разрешения. Продавец не обязан испрашивать или получать какое-либо разрешение, одобрение, приказ или согласие какого-либо органа власти в связи с подписанием, передачей и выполнением настоящего Договора.

(д) Залог.  Продавец не закладывал Ценные бумаги третьим лицам.

7.   Заверения Покупателя

(а)   Организация и правомочие. Покупатель является компанией, должным образом зарегистрированной и существующей в соответствии с законодательством Штата Делавэр, Соединенные Штаты Америки. Покупатель правомочен подписывать и передавать настоящий Договор, выполнять обязательства и совершать сделки, предусмотренные настоящим Договором.

(б)   Полномочия; обязывающий характер Договора. Покупатель обладает необходимыми полномочиями подписать, передать и исполнить настоящий Договор и совершить сделки, предусмотренные настоящим Договором, выполнив все необходимые для этого корпоративные действия. Покупатель должным образом подписал и передал настоящий Договор. Обязательства, принятые на себя Покупателем в соответствии с настоящим Договором, являются законными, действительными, обязательными к исполнению и принудительному исполнению против Покупателя в соответствии с условиями настоящего Договора.

(в)   Отсутствие   нарушений.   Подписание, передача и исполнение Покупателем настоящего Договора, а также совершение сделок, предусмотренных настоящим Договором, не противоречит и не будет противоречить каким-либо условиям уставных, учредительных и других нормативных документов Покупателя, не нарушает и не приведет к нарушению таких условий, и не ускорит выполнение действий, требуемых такими условиями, после соответствующего уведомления или без него, или по прошествии времени, или того и другого.

3

A - 1997

(d)    Approvals. The Purchaser is not required to file, seek or obtain any governmental notice, filing, authorization, approval, order or consent in connection with the execution, delivery and performance of this Agreement.

(г)    Разрешения. Покупатель не обязан испрашивать или получать какое-либо разрешение, одобрение, приказ или согласие какого-либо органа власти в связи с подписанием, передачей и выполнением настоящего Договора.

### 8.    Entire Agreement

This Agreement (together with the Attachments hereto) constitutes the whole agreement between the parties hereto relating to its subject matter. No variation shall be effective unless made in writing and duly executed on behalf of both the Purchaser and the Seller. This Agreement supersedes all earlier agreements, whether oral or in writing, concluded by the parties relating to the Securities which are the subject matter of this Agreement.

### 8.    Полнота Договора

Настоящий Договор и Приложения к нему являются полным договором между сторонами по настоящему Договору в отношении его предмета. Никакие изменения данного Договора не будут обязательными для любой из сторон без подписания полномочными представителями Покупателя и Продавца соответствующего документа. Никакие прежние устные или письменные договоренности в отношении Ценных бумаг, являющихся предметом настоящего Договора, не будут являться обязательными для соблюдения любой из сторон, кроме включенных в данный Договор.

### 9.    Additional Documentation

Each party hereto shall perform or execute, as appropriate, all necessary acts, documents, instructions or other actions as and when necessary to give effect to that party's obligations under or in connection with this Agreement, including, without limitation, any and all of the foregoing that may be requested by the other party.

### 9.    Дополнительные документы

Каждая из сторон по настоящему Договору обязана выполнить, подготовить и подписать все необходимые акты, документы, указания или совершить действия, если и когда это необходимо для выполнения обязательств соответствующей стороны в соответствии или в связи с настоящим Договором, включая без ограничения все вышеуказанное, как может быть востребовано другой стороной.

### 10.    Notices

Any notice or other communication in connection with this Agreement shall be in writing and delivered personally or by courier, in each instance against acknowledgement of receipt, or sent by facsimile transmission or sent by certified or registered mail and shall be addressed to the intended recipient at its address or number as specified in Attachment 1 hereto or at such other address or numbers as may be communicated later in writing. The parties hereto expressly and irrevocably agree that all documents, notices, agreements properly signed and then faxed to the numbers set forth in Attachment 1 hereto or at such numbers as may be communicated later in writing, shall be deemed originals for the purpose of establishing the proper execution of such notice, document or agreement.

### 10.    Уведомления

Любые уведомления по данному Договору будут считаться действительными только будучи подготовленными в письменном виде и доставленными лично, курьером, каждый раз подтвержденные признанием получения, отправленными по факсимильной связи или заказной почтой получателю по адресу или номеру, указанному в Приложении 1 к настоящему Договору, или по иному адресу или номеру, письменно сообщенному впоследствии. Стороны по настоящему Договору явно и безотзывно согласились, что все документы, уведомления, договоры, должным образом подписанные и отправленные по факсимильной связи на номера, указанные в Приложении 1 к настоящему Договору, или на иные номера, письменно сообщенные впоследствии, будут считаться оригиналами при установлении правильности совершения таких уведомлений, документов или договоров.

A - 1998

**11.    Confidentiality**

Except as required by applicable law or by court order, and in such case only to the extent so required, the parties hereto shall not disclose the existence of this Agreement or the contents hereof to any third party, save (to the extent strictly necessary) to the professional advisers and employees of that party.

**12.    Governing Law**

This Agreement shall be governed by, and construed in accordance with English law, without regard to the principles of conflicts of laws thereof. In the event of any dispute or disagreement arising between the Purchaser and the Seller under, or in connection with, this Agreement, such dispute or disagreement shall be resolved by binding arbitration held in London under the rules of the London Court of Arbitration (which rules are deemed to be incorporated herein).

**13.    Language of this Agreement**

This Agreement shall be executed in original both in the English and Russian languages, each of which is equally authentic. In each case of discrepancy between the English and Russian language versions, the English version shall prevail.

**14.    Signatures**

This Agreement and Attachments hereto may be signed by the parties in two counterparts for the purpose of which either an original signature or facsimile signature shall be sufficient, but such counterparts shall together constitute a single agreement.

**11.    Конфиденциальность**

За исключением случаев, когда применимое право требует раскрытия информации (но только в пределах таких требований), Стороны по настоящему Договору обязуются не раскрывать факт существования настоящего Договора или его содержание третьим лицам, за исключением случаев (если существует действительная необходимость) раскрытия информации своим работникам или советникам.

**12.    Применимое Право и споры**

Настоящий Договор регулируется английским правом (без учета коллизионных норм и принципов английского права) и толкуется в соответствии с ним. В случае возникновения каких-либо споров или разногласий между Покупателем и Продавцом в соответствии или в связи с настоящим Договором такие споры и разногласия подлежат окончательному и обязательному к исполнению разрешению в Международном Арбитражном суде г. Лондона (правила которого считаются инкорпорированными в текст настоящего Договора).

**13.    Язык настоящего Договора**

Настоящий Договор составлен в двух экземплярах на русском и английском языках, каждый из которых считается оригиналом и является равно достоверным. В случае разночтений между экземплярами на русском и английском языке, экземпляр на английском языке будет иметь преимущественную силу.

**14.    Подписи**

Настоящий Договор и Приложения к нему могут быть подписаны сторонами в двух экземплярах, с целью чего и оригинальная подпись и факсимильная подпись являются обоснованными, но эти экземпляры вместе составляют один договор.

5

A - 1999

Signed by Mr. O.Aschenbrenner
for and on behalf of the Seller:

Подписано Ойгеном Ашенбреннером
за и от имени Продавца:

Attorney-in-fact

Лицо, действующее по доверенности

Signed by Mr. A.S.Tukatsinsky
for and on behalf of the Purchaser:

Подписано А.С.Тукацинским
за и от имени Покупателя:

President

Президент

6

**A - 2000**