отсутствием поступления денежных средств за приобретенную продукцию со стороны потребителей, в цифровом выражении недополучение средств составляло порядка 10-12 млн. долларов США. В целях недопущения остановки предприятия руководством было принято решение о кредитовании. Банком было выдвинуто требование об обязательном обеспечении залогом и поручительством. При поиске поручителя, со стороны ОАО «Святогор» было получено согласие на участие в сделке в роли поручителя при выполнении двух условий: передаче в залог векселей ОАО «КГОК» и ускорения выполнения программы по производству пятиокиси ванадия, выражающееся во внесении вклада. Принимая во внимание сложившуюся ситуацию, способную привести к полной остановке предприятия и как следствие возможности наступления экологически и социально опасных последствий, руководство ОАО «КГОК» приняло данные условия. В целях предотвращения возможного наступления вреда и скорейшего погашения задолженности по кредиту банка им были предприняты действия, направленные на скорейшее восстановление платёжных схем с предприятиями потребителями продукции ОАО «КГОК». Так, им была достигнута договоренность с генеральным директором основного потребителя - ОАО «НТМК» Носовым С.К. о внесении указанным предприятием предоплаты за поставленную продукцию. Также он считает, что действия по получению кредита от АКБ «МДМ» не привели к ухудшению положения трудового коллектива, социальной сферы предприятия и муниципального образования г.Качканар. Текущая задолженность ОАО «Красноуралскмежрайгаз» оплачивалась своевременно и обращение данного предприятия с исковым заявлением в Арбитражный суд Свердловской области явилось для него неожиданным (т.1 л.д. 111-113).

Данные показания подтверждаются аналогичными показаниями генерального директора ОАО «КГОК» Груздева А.Г. (т.1 л.д. 81-83), генерального директора ОАО «НТМК» Носова С.К. (т.8 л.д. 1), советника экономическим вопросам ОАО «КГОК» Кудряшкина И.Г. (т.1 л.д.114-116), генерального директора ОАО «Красноуралскмежрайгаз» Шишкина В.Г. (т.9 л.д. 99-100 ).

Кроме того, согласно заключения судебно-экономической экспертизы вне экспертного учреждения от 22 ноября 2001 года, по результатам исследования сделаны следующие выводы:

- значительного снижения показателей обеспеченности за рассматриваемый период ( с 1.01.1998 г. по 1.07.2001 г.) не наблюдается;

- исследованные хозяйственные договоры соответствуют сложившимся рыночным условиям, нормам и обычаям делового оборота;

Из всего вышесказанного следует, что признаки преднамеренного банкротства на протяжении исследуемого периода не усматриваются (т.10 л.д. 188-205 ).

Обстоятельства дела, установленные предварительным следствием, дают основания для вывода, что действия руководителей ОАО «КГОК» Козицына А.А. и Груздева А.Г. не следует квалифицировать как хищение

имущества, вверенного виновному, в крупном размере, направленные на умышленное создание и увеличение неплатежеспособности предприятия, то есть по признакам составов преступлений, предусмотренных ч.3 ст.160 и ст. 196 УК РФ.

Учитывая вышеизложенное, руководствуясь п.2 ч.1 ст. 5 и ст. 209 УПК РСФСР,

## ПОСТАНОВИЛ:

1. Уголовное дело № 323909 в отношении Генерального директора ОАО Качканарский горно-обогатительный комбинат «Ванадий» Козицына А.А. и его первого заместителя Груздева А.Г. по фактам хищения чужого имущества, вверенного виновному, в крупном размере и преднамеренного банкротства ОАО «Качканарский горно-обогатительный комбинат «Ванадий», то есть по признакам составов преступлений, предусмотренных ч. 3 ст. 160 и ст. 196 УК РФ дальнейшим производством прекратить за отсутствием в их действиях состава преступления.

2. О принятом решении уведомить заинтересованных лиц, разъяснив им право на обжалование настоящего постановления.

3. Копию постановления направить Прокурору Свердловской области.

Следователь ГСУ при ГУВД
Свердловской области
лейтенант юстиции                                          Никифоров В.В.

A - 2083

FEDERAL ARBITRAZH COURT FOR THE NORTH CAUCASUS DISTRICT

DECISION

Of the Cassation Instance reviewing the legitimacy and substantiation of the decisions
(orders) of Arbitrazh courts that entered into force

City of Krasnodar            # F08-4572/2001           January 21, 2002
                             Docket # A 22/1222-00/6-109/Ar-46

The Federal Arbitrazh Court for the North Caucasus District, present: Chief Judge Y. V.
Romants, Judges S. A. Vetrov, L. I. Savenko (reporting), in the absence of
representatives of the Open Joint Stock Company Kachkanarskii Ore Mining Combine
Vanadii ("OAO Kachkanarskii GOK Vanadii"), Limited Liability Company Polyprom
(OOO Polyprom), Limited Liability Company Trading House OAO Vanadii ("OOO
Trading House OAO Vanadii"), Closed Joint Stock Company "Vedenie Reestrov
Kompanii" (AOZT Vedenie Reestrov Kompanii), Company Holdex LLC, which have
been duly notified about the time and location of the hearing, having reviewed the
cassation appeal of OOO Polyprom on the decision of the Arbitrazh Court of the
Republic of Kalmykia dated July 5, 2000 (Judge L. B. Jambinova), and the order of the
appellate instance dated November 9, 2000 (Judges R. D. Churumova, L. A. Alzheeva,
V. I. Tokareva) in the case # A 22/1222-00/6-109/Ar46, has determined the following.

OAO Kachkanarsky GOK Vanadii filed a complaint at the Arbitrazh court against OOO
Trading House OAO Vanadii and OOO Polyprom seeking to declare invalid the contract
# 3 for the sale of shares dated January 18, 1999, transfer orders based on which personal
common shares of OAO Kachnanarskii GOK Vanadii were transferred from the personal
account of the seller, in performance of the contract in question, and to restore in the
register of the owners of personal common shares of OAO Kachkanarskii GOK Vanadii
the recording of the ownership of OOO Trading House OAO Vanadii of the personal
common shares conveyed under the contested sale agreement.

AOZT Vedenie Reestrov Kompanii is joined as a third party without independent claims.

By the decision of the Arbitrazh Court of the Republic of Kalmykia dated November 22,
2000, the relief sought was granted in full, on the basis that the contested contract was
signed by an unauthorized person without subsequent ratification. Additionally, the court
indicated that the sale contract dated January 18, 1999 was a large-scale transaction and,
in violation of the norms of article 46 of the Federal Law "On Limited Liability
Companies," no decision to conclude the contested agreement was adopted by the general
meeting of shareholders.

The case was not reviewed in the appellate proceedings.

The decision of the cassation appeal dated April 17, 2001 reversed the decision dated
November 22, 2000 and remanded the case for a new trial. It further indicated that the

plaintiff's demand to restore the recording of the shares in question on the personal account of OOO Trading House OAO Vanadii in the case of the purchase of the shares in question under the contested contract by OOO Polyprom gives the proceedings the nature of the replevin action seeking to return property. In connection with that, it was suggested that the court check the data in the register of shares of OAO Kachkanarskii GOK Vanadii and determine the owners of the shares in question and join them in the proceedings. The court was also suggested to require the parties to present the original of the contract for the sale of shares, the accounting books of OOO Trading House OAO Vanadii with the mark of their submission to the tax authorities, and information on when was N. I. Chervinsky removed from the position of the acting general director of OOO Trading House OAO Vanadii.

At the new hearing, company Holdex LLC was joined as a third party without independent claims regarding the dispute.

By decision dated July 5, 2001, which was affirmed by the decision of the appellate instance dated November 9, 2001, the relief sought in the complaint of OAO Kachkanarskii GOK Vanadii was granted on the basis that the contested contract was signed by an unauthorized person. N. I. Chervinsky, without subsequent ratification of the transaction. Additionally, the court indicated that the sale contract dated January 18, 1999 was a large scale transaction but, in violation of the norms of Article 46 of the Federal Law "On Limited Liability Companies," the decision to enter into the contested contract was not adopted by the general meeting of the shareholders of the company.

OOO Polyprom in its cassation appeal seeks to reverse the decision dated February 28, 2000 and the decision of the appellate instance dated April 25, 2000 and to have a new decision issued. The appellant argues that Contract # 3 dated January 18, 1999 was not signed between OOO Polyprom and OOO Trading House OAO Vanadii since the document that was submitted to the court was a fake one, and, in reality, the contract for the sale of shares in question was concluded on January 18, 2000. Promissory notes were transferred as payment under the January 18, 2000 contract, and recorded by the acceptance act dated January 19, 2000, and transfer instructions were issued on January 21, 2000 and the transfer was conducted, which is confirmed by the issued notification. The shares in question were sold by OOO Polyprom to a third party, which is the good faith purchaser.

In its reply to the cassation appeal, OAO Kachkanarsky GOK Vanadii asks to affirm the decision dated February 28, 2000, and the decision of the appellate instance dated April 25, 2000, and to dismiss the cassation appeal. OAO Kachkanarsky GOK Vanadii argues that the note of the special registrar of shares that the recording of the alienation of the shares was made on the basis of the contract for the sale of shares # 3 dated January 18, 1999 is sufficient proof if the existence of the contract, and the interested party, company Holdex LLC, was joined in the case.

Having studied the materials of the case, the Federal Arbitrazh Court for the North Caucasus District holds that the decisions of the court and of the appellate instance must

be reversed and the case remanded for new hearing to the first instance, for the following reasons.

The materials of the case indicate that plaintiff and defendant presented to the court two contracts for the sale of shares which are different with respect to their dates and contents. At the same time, the claims of OAO Kachkanarskii GOK Vanadii are based on the absence of authority of the general director of OOO Trading House OAO Vanadii at the time of concluding the contract. The cassation instance, reversing the decision of the Arbitrazh court dated November 22, 2000 and remanding the case for further proceedings, indicated the necessity of determining and evaluating the authentic contract for the sale of shares, determining the time of removing N. I. Chervinsky from the position of the acting general director of OOO Trading House Vanadii, the owner of shares at the time of filing the complaint, and resolving the dispute with due account to the factual justification of the claims. In violation of Article 178 of the APC of RF, the orders of the cassation instance were not followed by the court at the new hearing.

In providing the reasoning for its decision, the court referred to the invalidity of the contract for the sale of shares dated January 19, 1999 signed between OOO Trading House OAO Vanadii and OOO Polyprom. However, declaring invalid the January 18, 1999 contract for the sale of shares, the court did not give a reason why it did not consider the contract for the sale of shares dated January 18, 2000. The court did not take any measures to determine which one of the contracts present in the materials of the case is the authentic one, did not eliminate the contradictions present in submitted evidence. Thus, in justification of the authenticity of the sale contract dated January 18, 1999, the court of the appellate instance referred to the extract from the register of ZAO Registering Company Panorama according to which the recording of the shares were transferred from the account of OOO Trading House Vanadii was made on the basis of the above contract. At the same time, the court did not analyze that the notice of the operation with the shares on the account, dated January 21, 2000, the holder of the register, referring to the contract dated January 18, 1999, simultaneously indicates that the new owner of the shares, OOO Polyprom, was registered at the State Registering Chamber of the Republic of Kalmykia on June 22, 1999. The court did not find out whether the contract dated January 18, 1999 could have the information about the taxpayer identification number of OOO Polyprom, when such number was assigned to the buyer of the shares. The court did not investigate and evaluate the act of the transfer and acceptance of shares dated January 19, 2000 which is part of the docket, which refers to the contract for the sale of the shares in question dated January 18, 2000.

According to Article 29 of the Federal Law "On Securities Market," the recording in the register of shareholders attaches the right of ownership for the respective quantity of shares.

The docket contains the contract for the sale of shares # KGOK-001/A dated January 20, 2000 concluded between OOO Polyprom and Holdex, LLC the subject of which is the shares in question. The cassation appeal of OOO Polyprom refers to the sale of shares to a third party which it believes to be a good faith purchaser.

The court did not give its evaluation to the contract for the sale of shares # KGOK-001/A, nor to the argument of OOO Polyprom about the sale of share to Holdex, LLC. At the same time, depending on the analysis of said circumstances and determining the third party ownership of the shares, the demand of the plaintiff to restore the recording of the presence of the shares in question at the account of OOO Trading House Vanadii, in essence, means a claim in replevin, which may not be heard without joining the actual owner of shares as a second defendant.

Taking into account that the circumstances that have immense significance for the case have not been considered by the courts, the appealed decisions must be reversed and the case remanded for a new hearing. At the new hearing, it is necessary to eliminate the contradictions which are present in the materials of the case, determine which of the contracts for the sale of shares presented by the parties is authentic, determine the actual owner of the shares in question and its being a good faith purchaser, and, depending on the determined circumstances, suggest to the plaintiff to clarify the claims stated in the complaint.

The court fees of the new hearing should be allocated between the parties, according to the rules of Article 95 of the Arbitrazh Procedure Code of the Russian Federation.

Proceeding from the above, and guided by Articles 171, 174, 175, 176, 177 of the Arbitrazh Procedure Code of the Russian Federation, the Federal Arbitrazh Court of the North Caucasus District

RESOLVED:

To reverse the decision of the Arbitrazh Court of the Kalmykia dated July 5, 2001 and the decision of the appellate instance dated November 9, 2001 in the case # A 22/1222-00/6-109/Ar46. To remand the case for a new hearing to the first instance of the Arbitrazh Court of the Republic of Kalmykia.

The issues of the allocation of the court fees must be decided at the new hearing.

This decision enters into force at the time of its adoption and is not subject to appeal.

| | |
|---|---|
| Chief Justice | Y. V. Romanets |
| Justices | S. A. Vetrov |
| | L. I. Savenko |

A - 2087



**ФЕДЕРАЛЬНЫЙ АРБИТРАЖНЫЙ СУД СЕВЕРО-КАВКАЗСКОГО ОКРУГА**

**ПОСТАНОВЛЕНИЕ**
кассационной инстанции по проверке законности
и обоснованности решений (постановлений)
арбитражных судов, вступивших в законную силу

г. Краснодар              Вх. Ф08 – 4572/2001          21 января 2002 года
                      Дело № А 22/1222-00/6-109/Ар46

Федеральный арбитражный суд Северо-Кавказского округа в составе председательствующего Романца Ю.В., судей Ветрова С.А. и Савенко Л.И. (докладчик), в отсутствие представителей открытого акционерного общества "Качканарский горно-обогатительный комбинат "Ванадий" (ОАО "Качканарский ГОК "Ванадий"), общества с ограниченной ответственностью "Полипром" (ООО "Полипром"), общества с ограниченной ответственностью "Торговый дом ОАО "Ванадий" (ООО "Торговый дом ОАО "Ванадий"), акционерного общества закрытого типа "Ведение реестров компаний" (АОЗТ "Ведение реестров компаний"), компании "Холд Экс Эл. Эл. Си", извещенных в установленном порядке о времени и месте судебного заседания, рассмотрев кассационную жалобу ООО "Полипром" на решение Арбитражного суда Республики Калмыкия от 5.07.2000 (судья Джамбинова Л.Б.) и постановление апелляционной инстанции от 9.11.2000 (судьи Чурюмова Р.Д., Алжеева Л.А., Токарева В.И.) по делу № А 22/1222-00/6-109/Ар46, установил следующее.

ОАО "Качканарский ГОК "Ванадий" обратилось в арбитражный суд с иском к ООО "Торговый дом ОАО "Ванадий" и ООО "Полипром" о признании недействительными договора купли-продажи акций № 3 от 18.01.99, передаточных распоряжений, на основании которых во исполнение оспариваемого договора с лицевого счета продавца были списаны именные обыкновенные акции ОАО "Качканарский ГОК "Ванадий", а также о восстановлении в реестре владельцев именных ценных бумаг ОАО "Качканарский ГОК "Ванадий" записи о наличии на лицевом счете ООО "Торговый дом ОАО "Ванадий" именных обыкновенных акций, переданных по оспариваемому договору купли-продажи.

В качестве третьего лица, не заявляющего самостоятельных требований на предмет спора, привлечено АОЗТ "Ведение реестров компаний".

Решением от 22.11.2000 Арбитражного суда Республики Калмыкия исковые требования полностью удовлетворены на том основании, что оспариваемый договор заключен неуполномоченным лицом в отсутствие последующего одобрения сделки. Кроме того, суд указал, что договор купли-продажи от 18.01.99 является крупной сделкой, однако в

A - 2089

2

нарушение норм статьи 46 Федерального закона "Об обществах с ограниченной ответственностью" решение о совершении оспариваемого договора общим собранием акционеров общества не принималось.

В апелляционном порядке дело не пересматривалось.

. Постановлением кассационной инстанции от 17.04.2001 решение от 22.11.2000 отменено с направлением дела на новое рассмотрение. При этом было указано, что требование истца о восстановлении записи о наличии на лицевом счете ООО «Торговый дом ОАО «Ванадий» оспариваемых акций в случае приобретения указанных акций третьими лицами по договору с ООО «Полипром» фактически означает требование о виндикации имущества. В связи с этим при новом рассмотрении дела суду предложено проверить данные реестра акционеров ОАО «Качканарский ГОК «Ванадий», установить владельцев спорных акций и привлечь их к участию в деле. Суду предложено также истребовать у сторон подлинный договор купли-продажи акций, баланс ООО "Торговый дом ОАО "Ванадий" с отметкой о представлении его в налоговые органы, сведения о том, когда Червинский Н.И. был отстранен от должности исполняющего обязанности генерального директора ООО "Торговый дом ОАО «Ванадий».

При новом рассмотрении дела в качестве третьего лица, не заявляющего самостоятельных требований на предмет спора, к участию в деле привлечена компания "Холд Экс Эл. Эл. Си".

Решением от 5.07.2001, оставленным без изменения постановлением апелляционной инстанции от 9.11.2001, исковые требования ОАО "Качканарский ГОК "Ванадий" удовлетворены на том основании, что оспариваемый договор заключен неуполномоченным лицом Червинским Н.И. в отсутствие последующего одобрения сделки. Кроме того, суд указал, что договор купли-продажи от 18.01.99 является крупной сделкой, однако в нарушение норм статьи 46 Федерального закона "Об обществах с ограниченной ответственностью" решение о совершении оспариваемого договора общим собранием акционеров общества не принималось.

В кассационной жалобе ООО "Полипром" просит решение от 28.02.2000 и постановление апелляционной инстанции от 25.04.2000 отменить и принять новое решение. В обоснование доводов кассационной жалобы заявитель ссылается на то, что между ООО "Полипром" и ООО "Торговый дом ОАО "Ванадий" не был заключен договор № 3 от 18.01.99, поскольку представленный суду документ является сфальсифицированным, а фактически договор купли-продажи спорных ценных бумаг заключен 18.01.2000. В счет оплаты по договору от 18.01.2000 были переданы векселя и оформлены актом приема-передачи от 19.01.2000 в связи с чем 20.01.2000 были выписаны передаточные распоряжения и 21.01.2000 операция по зачислению спорных акций была проведена, что подтверждается

A - 2090

3

выданным уведомлением. Спорные акции были отчуждены ООО "Полипром" третьему лицу, который является добросовестным приобретателем.

В отзыве на кассационную жалобу ОАО "Качканарский ГОК "Ванадий" просит решение от 28.02.2000 и постановление апелляционной инстанции от 25.04.2000 оставить без изменения, а кассационную жалобу без удовлетворения. В обоснование доводов отзыва ОАО "Качканарский ГОК "Ванадий" ссылается на то, что представленная истцом справка специализированного регистратора о том, что запись о списании ценных бумаг была внесена на основании договора купли-продажи акций № 3 от 18.01.99, является достаточным доказательством существования договора, заинтересованное лицо - компания "Холд Экс Эл. Эл. Си" привлечено к участию в деле.

Исследовав материалы дела, Федеральный арбитражный суд Северо-Кавказского округа считает, что решение и постановление апелляционной инстанции следует отменить, а дело передать на новое рассмотрение в суд первой инстанции по следующим основаниям.

Из материалов дела следует, что истец и ответчик представили в судебное заседание два различных по содержанию и датам заключения договора купли-продажи акций. При этом исковые требования ОАО «Качканарский горно-обогатительный комбинат «Ванадий» обоснованы отсутствием в момент заключения договора полномочий у генерального директора ООО «Торговый дом ОАО «Ванадий». Кассационная инстанция, отменяя решение арбитражного суда от 22.11.2000 и направляя дело на новое рассмотрение, указала на необходимость установления и оценки подлинного договора купли-продажи акций, выяснения времени отстранения Червинского Н.И. от должности исполняющего обязанности генерального директора ООО «Торговый дом «Ванадий», владельца акций на момент предъявления иска и разрешения спора с учетом фактического основания исковых требований. В нарушение статьи 178 АПК РФ при новом рассмотрении дела указания кассационной инстанции судом не выполнены.

В обоснование решения по делу суд сослался на недействительность договора купли-продажи акций от 18. 01.1999, заключенного между ООО «Торговый дом ОАО «Ванадий» и ООО «Полипром». Однако, признавая недействительным договор купли-продажи от 18.01.1999, суд не обосновал, причины, по которым он не принимает во внимание договор купли-продажи от 18.01.2000. Суд не принял мер к выяснению вопроса о том, какой из имеющихся в деле текстов договора является подлинным, не устранил противоречий, имеющихся в представленных доказательствах. Так, в обоснование действительности договора купли-продажи от 18.01.99 суд апелляционной инстанции сослался на выписки из реестра ЗАО «Компания-регистратор «Панорама», в соответствии с которыми запись о списании с лицевого счета ООО «Торговый дом «Ванадий» спорных акций произведена на основании вышеуказанного договора. Вместе с тем, суд не дал оценку тому, что в

A - 2091

уведомлении от 21.01.2000 об операции, проведенной по счету с акциями, держатель реестра, ссылаясь на договор купли-продажи от 18.01.99, одновременно указывает, что новый владелец акций – ООО «Полипром» - зарегистрирован в Государственной регистрационной палате Республики Калмыкия 22.06.99. Суд не выяснил, могли ли в договоре купли-продажи от 18.01.99 содержаться данные идентификационного номера налогоплательщика ООО «Полипром», когда такие данные были присвоены покупателю акций. Судами не исследовался и не оценивался имеющийся в материалах дела акт приемки-передачи векселей от 19.01.2000, содержащий ссылку на договор купли-продажи спорных акций от 18.01.2000.

Согласно статье 29 Федерального закона "О рынке ценных бумаг" запись в реестре акционеров фиксирует право собственности лица на соответствующее количество акций.

В материалах дела имеется договор купли-продажи ценных бумаг № KGOK-001/А от 20.01.2000, заключенный между ООО "Полипром" и компанией "Холд Экс Эл. Эл. Си", предметом которого указываются спорные акции. В кассационной жалобе ООО "Полипром" ссылается на отчуждение акций третьему лицу, которое, по его мнению, является добросовестным приобретателем.

Суд не дал оценки ни договору купли-продажи ценных бумаг № KGOK-001/А, ни доводам ООО «Полипром» об отчуждении акций компании «Холд Экс Эл. Эл.Си». Между тем, в зависимости от исследования указанных обстоятельств и установления принадлежности акций третьему лицу, требование истца о восстановлении записи о наличии на лицевом счете ООО «Торговый дом «Ванадий» спорных акций по существу означает требование о возврате имущества, которое не может быть рассмотрено без привлечения фактического владельца акций к участию в деле в качестве второго ответчика.

Принимая во внимание, что обстоятельства, имеющие существенное значение для дела, не были предметом рассмотрения судебных инстанций, обжалуемые акты подлежат отмене с направлением дела на новое рассмотрение. При новом рассмотрении дела следует устранить противоречия, имеющиеся в материалах дела, установить, какой из предъявленных сторонами договоров купли-продажи акций является подлинным, фактического владельца спорных акций и его добросовестность и в зависимости от установленных обстоятельств предложить истцу уточнить заявленные исковые требования.

Судебные расходы следует распределить между сторонами при новом рассмотрении дела по правилам статьи 95 Арбитражного процессуального кодекса Российской Федерации.

Учитывая изложенное и руководствуясь статьями 171, 174, 175, 176, 177 Арбитражного процессуального кодекса Российской Федерации, Федеральный арбитражный суд Северо-Кавказского округа

П О С Т А Н О В И Л:

@002

5

решение Арбитражного суда Республики Калмыкия от 5.07.2001 и постановление апелляционной инстанции от 9.11.2001 по делу № А 22/1222-00/6-109/Ар46 отменить. Передать дело на новое рассмотрение в первую инстанцию Арбитражного суда Республики Калмыкия.

Вопросы распределения госпошлины разрешить при новом рассмотрении дела.

Постановление вступает в законную силу с момента его принятия и обжалованию не подлежит.

| | |
|---|---|
| Председательствующий | Ю.В. Романец |
| Судьи | С.А. Ветров |
| | Л.И. Савенко |

[handwritten:]
N. L. Grishina
For filing.
Send a copy by fax to M. N. Kolesnikov.
[signature] (Belov)
March 28, 2002

[shield]

## IN THE NAME OF THE RUSSIAN FEDERATION

### DECISION

City of Elista
March 12, 2002                    Case No. A22-1222/00/6-109/Ar46

The Judge of the Court of Arbitration of the Republic of Kalmykia **V. E. Bembeev**, upon hearing the case regarding the **claim of OAO Kachkanarskii gornoobogatitelnyi kombinat Vanadii** [Kachkanar Vanadii Mining and Milling Complex, Open Joint Stock Company] **against OOO Torgovyi dom OAO Vanadii** [Vanadii Open Joint Stock Company, Trading Company LLC] **(hereinafter to be referred to as "the Trading Company" and against OOO Poliprom (hereinafter to be referred to as "the LLC") Third Parties:** the company Hold X LLC (hereinafter to be referred to as "the Company") and ZAO Vedenie reestrov kompanii [Company Register Management, Closed Joint Stock Company] (hereinafter to be referred to as "ZAO")
**For nullification** of Agreement No. 3 dated January 18, 1999 for the purchase and sale of securities as well as for nullification of the transfer orders for re-registration of stock of OAO KGOK Vanadii in the amount of 2,307,984 shares for RUR 5,558,847 from the Trading Company to the LLC, and for restoration of the entry on the personal account of the Trading Company regarding possession of the disputed stock on the basis of legal ownership.

Where the hearing was attended by:
On behalf of the Plaintiff (the Complex) – representative E. N. Znamenskii (power of attorney, Case Sheet 13, Volume 4);
On behalf of the Defendant (Trading Company) – representative I. E. Dvorovenko (power of attorney, Case Sheet 14, Volume 4);
On behalf of the Defendant (LLC) – failed to appear, sent a telegram asking that the case be heard in his absence (Case Sheet 10, Volume 4);
On behalf of the Third Party (Hold Company) – failed to appear, sent a telegram asking that the case be heard in his absence (Case Sheet 11, Volume 4);
On behalf of the Third Party (ZAO) – failed to appear, sent a telegram asking that the case be heard in his absence (Case Sheet 12, Volume 4),

### Found:

OAO Kachkanarskii gornoobogatitelnyi kombinat Vanadii (hereinafter to be referred to as "the Complex") filed with the Court of Arbitration a claim against OOO

**A - 2094**

Torgovyi dom OAO Vanadii and OOO Poliprom for nullification of Agreement No. 3 dated January 18, 1999 for the purchase and sale of securities, for nullification of the transfer orders pursuant to which, in implementation of the disputed agreement, nominal common stock of the Complex had been written off from the personal account of the seller, as well as for restoration in the register of holders of nominal common stock of the Complex of the entry regarding the existence on the personal account of the Trading Company of the nominal common stock transferred pursuant to the purchase and sale agreement subject to the dispute.

In its claim, the Plaintiff substantiated its requests by stating that, on January 18, 1999, the LLC and the Trading Company had entered into Agreement No. 3 for the purchase and sale of securities pursuant to which nominal common stock of the Complex had been transferred to the LLC:

[square stamp:] OAO Kachkanarskii GOK<br>[illegible]

-    Stock of issue No. 62-1P-290 of July 12, 1993 in the amount of 9,759 shares priced at RUR 23,504.80;
-    Stock of issue No. 62-1-1396 of June 12, 1996, in the amount of 2,298,225 shares priced at RUR 5,535,342.20. An entry regarding the transfer of the legal ownership of the above stock of OAO Kachkanarskii gornoobogatitelnyi kombinat Vanadii from the Trading Company to the LLC was made into the stockholders register pursuant to two transfer orders of January 21, 2000. Agreement No. 3 of January 18, 1999, for the purchase and sale of securities and the transfer orders had been signed on behalf of the Trading Company by N. I. Chervinskii, who had not been the general director of the Trading Company and had not been granted the authority to perform any transactions as confirmed by the documents regarding his appointment and removal from his position presented by the Trading Company. In addition, according to the Articles of Incorporation, to the balance sheet of the Trading Company with the notation from the tax authority and the Federal Act On Limited Liability Companies, said transaction constituted a major transaction for the Trading Company.

Pursuant to Article 46 of the Federal Joint Stock Companies Act, a decision of the general stockholders meeting of the company had been necessary for the purpose of entering into a major transaction. This had not been done.

In the capacity of a third party not making any independent claims regarding the matter of the dispute, the court has summoned AOZT Vedenie reestrov kompanii [Company Register Management, Closed Joint Stock Company] (presently ZAO).

Pursuant to a ruling of the Court of Arbitration of the Republic of Kalmykia dated September 10, 2001, the court summoned Hold X LLC, based on a request by the LLC, in the capacity of a third party not making any independent claims regarding the matter of the dispute.

**A - 2095**

In the course of the hearing, the representative of the Plaintiff sustained the claim in full and sought its satisfaction by the court, since in the presented statements of defense and cassation appeals, the Defendants themselves admitted that the signed Agreement No. 3 of January 18, 1999 for the purchase and sale of securities was executed by a non-authorized person. For the purpose of supporting the validity of Agreement No. 3 of January 18, 1999 for the purchase and sale of securities, the representative of the Plaintiff presented to the court the original of the agreement, which was examined during the hearing and visually compared to the photocopy contained in the case file (Case Sheet 8, Volume 1) thereby confirming the two documents to be identical.

In the course of the hearing, the representative of the Trading Company admitted in full the Plaintiff's claim and explained that, at the time of signing of Agreement No. 3 of January 18, 1999 for the purchase and sale of securities, E. A. Mashkotsev was Director of the Trading Company and, at the time of issue of the transfer orders, S. A. Khalmirzaev was Director of the Trading Company. Therefore, N. I. Chervinskii, not having the above authorizations, did not have the right to enter into a major purchase and sale transaction, which has caused substantial losses to the Trading Company. Upon consideration of the positions of the parties present at the hearing, the court ruled on hearing the case on its merits and on the absence of the interested parties to the case which had failed to appear.

Upon hearing the representatives of the parties which had appeared at the hearing and upon examination of the materials of the case, the court found that, on January 18, 1999, the Trading Company and the LLC had entered into Agreement No. 3 for the purchase and sale of securities pursuant to which nominal common stock of the Complex had been transferred to the LLC:

-       Stock of issue No. 62-1P-290 of July 12, 1993 in the amount of 9,759 shares priced at RUR 23,504.80;
-       Stock of issue No. 62-1-1396 of June 12, 1996, in the amount of 2,298,225 shares priced at RUR 5,535,342.20.

An entry regarding the transfer of the legal ownership of the above stock of the Complex from the Trading Company to the LLC had been made into the stockholders register pursuant to two transfer orders of January 21, 2000, Nos. 12 and 13, photocopies of which are included in the case file (Case Sheets 9 and 10, Volume 1). The ground for making the entry into the register indicated in said transfer orders is Agreement No. 3 of January 18, 1999 for the purchase and sale of securities.

The backs of said transfer orders indicate that the person into the account of which [bottom page cut off] […] registration No. 8305 of June 22, 1999. N. I. Chervinskii has signed on behalf of the entity transferring the securities (Case Sheets 9 – 10).

A - 2096

During the court hearing, the signatures placed by N. I. Chervinskii on the transfer orders and in the witness's testimony (Case Sheets 10 – 13, Volume 3) were compared (visually). As a result of the comparison, the court was satisfied that the signatures made, also in other documents contained in the case file (Case Sheet 20, Volume 2, Case Sheets 68 – 69, Volume 3) were identical.

The case file contains a photocopy of the certificate of state registration of OOO Poliprom indicating a date of registration June 22, 1999, registration No. 141 (Certificate No. 8305) (Case Sheet 52, Volume 3). Therefore, at the time of signing of Agreement No. 3 of January 18, 1999 for the purchase and sale of securities, OOO Poliprom had not constituted a legal entity.

The case file contains a written notification from OOO Kompaniia-registrator Panorama [Panorama Company-Registrar, Open Joint Stock Company] of June 28, 2001, indicating that Agreement No. 3 of January 18, 1999 for the purchase and sale of securities according to which the Trading Company had transferred to the LLC 2,298,225 common nominal shares of the Complex, state registration No. of the issue 62-1-1396, price of the transaction RUR 5,535,342.20, Entry No. Ts-0135-200100-002 of January 20, 2000, 9,759 common nominal shares of the Complex, state registration No. of the issue 62-1P-290, price of the transaction RUR 23,504.80, Entry No. Ts-01350200100-001 of January 20, 2000, had served as grounds for making the entry into the register of the Company pursuant to the transfer orders. No other transfer orders associated with sold stock in the amount of 2,298,225 shares and 9,759 shares owned by the Trading Company on behalf of ZAO had been received (Case Sheet 19, Volume 2).

According to the Articles of Incorporation and the balance sheet of the Trading Company with a notation from the tax authority, and according to the Federal Act On Limited Liabilities Companies, the transaction performed on January 18, 1999 for the purchase and sale of securities constituted a major transaction. Pursuant to Article 46 of the Federal Joint Stock Companies Act, a decision of the general stockholders meeting of the company had been necessary for the purpose of entering into a major transaction. The Complex, in its capacity as founder of the Trading Company had not given its consent to the performance of the disputed transaction. This circumstance has been established in the course of the hearing. The case file contains a photocopy of Agreement No. KSOK-001/A for the purchase and sale of securities dated January 20, 2000, according to which the LLC has sold Holdex Company stock of the Complex in a total amount of 2,307,984 shares for RUR 5,580,000 (Case Sheet 18, Volume 3). During the signing of said agreement, I. V. Ivleva acted as representative of Holdex Company and her signature had not been certified by anybody. The power of attorney dated October 11, 1999 had not been presented to the court.

However, the case file contains a photocopy of a general power of attorney dated November 15, 2000, which indicates Marina Ashimina as representative of Holdex Company (Case Sheet 28, Volume 3). This circumstance casts suspicion on the validity of the transaction for the sale of securities pursuant to the agreement of January 20, 2000 to Holdex Company since Marina Ashimina had been the legal and authorized

representative of the company and, based on the language of the general power of attorney, she had not been granted the right to reassign her powers under the power of attorney to another person. The arguments of the representative of OOO Poliprom indicated in the statements of defense and cassation appeals that the write-off of the disputed package of shares from the personal account of the Trading Company had been done pursuant to Agreement No. 3 of January 18, 2000 for the purchase and sale of securities are deemed by the court to be inconsistent, since the original of Agreement No. 3 of January 18, 2000 has been examined during the hearing and the write-off of the disputed securities was performed precisely pursuant to this agreement (the one dated January 18, 2000). This circumstance is confirmed by the certificate issued by ZAO Kompaniia-registrator Panorama (Case Sheet 19, Volume 2).

Upon the evaluation of the aggregate of evidence examined in the course of the court hearing and upon studying the arguments of the parties, the court found that Agreement No. 3 of January 18, 1999 for the purchase and sale of securities had in fact been signed and pursuant to said agreement the securities had been written off and ZAO Kompaniia-registrator Panorama had been the keeper of the register at the time of signing of the agreement. Therefore, the claim of the Complex are justified [bottom of page cut off]

### Decided:

To **sustain** the claim of OAO Kachkanarskii gornoobogatitelnyi kombinat Vanadii.

1. Purchase and sale agreement No. 3 dated January 18, 2000 entered into between OOO Torgovyi dom OAO Vanadii and OOO Poliprom is hereby declared null and void.

2. The transfer orders dated January 20, 2000 for the transfer of nominal common stock of OAO Kachkanarskii gornoobogatitelnyi kombinat Vanadii issue No. 62-1P-290 of July 12, 1993 in the amount of 9,759 shares and No. 62-1-1396 of June 12, 1996 in the amount of 2,298,225 shares from the personal account of OOO Torgovyi dom OAO Vanadii in implementation of purchase and sale agreement No. 3 of January 18, 1999 are hereby declared null and void.

3. The keeper of the stockholders register of OAO Kachkanarskii gornoobogatitelnyi kombinat Vanadii, ZAO Vedenie reestrov kompanii is hereby ordered to restore in the management system of the register of holders of nominal common stock of OAO Kachkanarskii gornoobogatitelnyi kombinat Vanadii the entries regarding the existence of nominal common stock of OAO Kachkanarskii gornoobogatitelnyi kombinat Vanadii issue No. 62-1P-290 of July 12, 1993 in the amount of 9,759 shares and No. 62-1-1396 of June 12, 1996 in the amount of 2,298,225 shares on the personal account of OOO Torgovyi dom OAO Vanadii.

4. Administrative fees on behalf of OAO Kachkanarskii gornoobogatitelnyi kombinat Vanadii in the amount RUR 834.90 are to be paid by OOO Torgovyi dom OAO Vanadii and administrative fees in the amount of RUR 834.90 are to be paid by OOO Poliprom.

Writs of execution are to be issued after this decision becomes legally effective.

This decision may be appealed in the Court of Arbitration of the Republic of Kalmykia within one month as of the date thereof.

[vertical stamp in right margin:]
[illegible]
on 2 sheets
Specialist of the Court of Arbitration of the Republic of Kalmykia, E. Serebriakova
[round seal – illegible]


**Judge:**        [signature]        **V. E. Bembeev**
[square stamp:]
[illegible]
COPY AUTHENTICATED

A - 2099

**ИМЕНЕМ РОССИЙСКОЙ ФЕДЕРАЦИИ**

Р Е Ш Е Н И Е

г. Элиста
12 марта 2002г.

Дело № А22-1222/00/6-109/Ар46

Судья Арбитражного суда Республики Калмыкия Бембеев В.Э., рассмотрев в судебном заседании дело по иску ОАО «Качканарский горнообогатительный комбинат «Ванадий» к ООО «Торговый дом ОАО «Ванадий» (далее «Торговый дом») и к ООО «Полипром» (далее «ООО»)

третьи лица : компания «Холд Экс Эл.Эл.Си (далее «Компания») и ЗАО «Ведение реестров Компаний»(далее «ЗАО»)

о признании договора купли-продажи ценных бумаг №3 от 18 января 1999г. недействительным, а также о признании недействительными передаточных распоряжений о перерегистрации акций ОАО "КГОК "«Ванадий"»в количестве 2307984 шт. на сумму 5558847 руб. с «Торгового дома» на «ООО» и восстановлении записи на лицевом счете «Торгового дома» о владении спорными акциями на праве собственности.

При участии в судебном заседании:

От истца («Комбината») –представитель Знаменский Е.Н. (доверенность л.д.13,том 4);

От ответчика («Торговый Дом»)-представитель Дворовенко И.Е. (доверенность л.д.14,том 4);

От ответчика («ООО»)- не явился, направил телеграмму о рассмотрении дела в его отсутствии (л.д.10,том 4);

От третьего лица(«Компании «Холд»)- не явился, направил телеграмму о рассмотрении дела в его отсутствии (л.д.11, том 4);

От третьего лица («ЗАО») - не явился, направил телеграмму о рассмотрении дела в его отсутствии (л.д.12, том 4),

установил:

ОАО «Качканарский горно-обогатительный комбинат «Ванадий»(далее «комбинат») обратилось в арбитражный суд с иском к ООО «Торговый дом ОАО «Ванадий» и ООО «Полипром» о признании недействительными договора купли-продажи акций №3 от 18 января 1999г., передаточных распоряжений, на основании которых во исполнение оспариваемого договора с лицевого счета продавца были списаны именные обыкновенные акции «Комбината», а также о восстановлении в реестр владельцев именных ценных бумаг «Комбината»записи о наличии на лицевом счете «Торгового дома» именных обыкновенных акций, переданных по оспариваемому договору купли-продажи ценных бумаг.

Истец в исковом заявлении мотивировал свои требования в том, что между «ООО» и «Торговым домом» 18 января 1999г. был заключен договор купли-продажи ценных бумаг №3, на основании которого «ООО» были переданы именные обыкновенные акции «Комбината»:

A - 2101

-акции выпуска №62-1П-290 от 12 июля 1993г. в количестве 9759 штук по цене 23504 руб.80 коп.;

-акции выпуска №62-1-1396 от 12 июня 1996г. в количестве 2298225 шт. по цене 5535342 руб.20 коп. Запись о переходе права собственности на вышеуказанные акции ОАО «Качканарский ГОК «Ванадий» от «Торгового дома» к «ООО» внесена в реестр акционеров на основании двух передаточных распоряжений от 21 января 2000г. Договор купли-продажи ценных бумаг №3 от 18 января 1999г. и передаточные распоряжения со стороны «Торгового дома» были подписаны Червинским Н.И., который не являлся генеральным директором «Торговый дом» и не был наделен полномочиями для совершения каких-либо сделок, что подтверждается документами о назначении на должность и снятии с нее, представленными «Торговым домом». Кроме того, согласно Уставу, бухгалтерского баланса «Торгового дома», с отметкой из налогового органа и федерального закона «Об обществах с ограниченной ответственностью» указанная сделка для «Торгового дома» являлась крупной.

Согласно ст.46 ФЗ «Об АО» для заключения крупной сделки должно быть принято решение общего собрания участников общества. Этого же не было сделано.

В качестве третьего лица, не заявляющего самостоятельных требований на предмет спора, привлечено АОЗТ «Ведение реестров компаний» (ныне «ЗАО»).

Определением Арбитражного суда РК от 10 сентября 2001г. в качестве третьего лица, не заявляющего самостоятельных требований на предмет спора была привлечена компания «Холд Экс Эл.Эл.Си» по ходатайству «ООО».

Представитель истца в судебном заседании полностью поддержал исковые требования и просил их удовлетворить, поскольку самими ответчиками подтверждается о том, что подписанный договор купли-продажи ценных бумаг №3 от 18 января 1999г. произведен неуполномоченным лицом в представленных отзывах на иск и кассационных жалобах. Для подтверждения достоверности договора купли-продажи ценных бумаг №3 от 18 января 1999г. (представитель истца представил суду оригинал договора, который был обозрен в судебном заседании и визуально сверен с ксерокопией находящегося в деле (л.д.8, том 1) и удостоверился в их идентичности.

Представитель «Торгового дома» в судебном заседании исковые требования истца признал полностью и пояснил, что на момент заключения договора купли-продажи ценных бумаг №3 от 18 января 1999г. директором «Торгового дома» был Машковцев Е.А., а на момент направления передаточных распоряжений был Халмирзаев С.А.. Поэтому, Червинский Н.И. будучи не наделенным указанными полномочиями, не имел право заключать сделку о купли-продажи в крупном размере, причинившую значительные убытки «Торговому дому». С учетом мнения присутствующих в судебном заседании сторон суд принял определение о рассмотрении дела по существу в отсутствии не явившихся заинтересованных лиц по делу.

Выслушав представителей сторон, явившихся в судебное заседание и исследовав материалы дела суд установил, что между «Торговым домом» и «ООО» был заключен договор купли-продажи ценных бумаг №3 от 18 января 1999г., на основании которого «ООО» были переданы именные обыкновенные акции «Комбината»:

-акции выпуска №62-1П-290 от 12 июля 1993г. в количестве 9759 шт. по цене 23504 руб. 80 коп.;

-акции выпуска №62-1-1396 от 12 июня 1996г. в количестве 2298225 шт. по цене 5535342 руб.20 коп.

Запись о переходе права собственности на вышеуказанные акции «Комбината» от «Торгового дома» к «ООО» внесена в реестр акционеров на основании двух передаточных распоряжений от 21 января 2000г. №№ 12и13, ксерокопии имеются в деле (л.д. 9 и 10, том 1). Основанием для внесения записи в реестр указывается в них договор №3 купли-продажи ценных бумаг от 18 января 1999г.

На обороте указанных распоряжений указывается, что лицо, на счет которого должны быть зачислены ценные бумаги является ООО «Полипром», свидетельство госре-

3

гистрации №8305 от 22 июня 1999г. За передающего ценные бумаги подписался Червинский Н.И. (л.д. 9-10).

В судебном заседании были сверены (визуально) подписи учиненные Червинским Н.И. в передаточных распоряжениях и учиненные в показаниях свидетеля (л.д.10-13, том 3). По результатам сверки суд удостоверился о идентичности учиненных подписей, а также в других документах имеющихся в деле (л.д. 20, том 2; л.д. 68-69, том 3).

В деле имеется ксерокопия свидетельства о государственной регистрации ООО «Полипром», в котором указывается, что дата регистрации 22 июня 1999г., регистрационный номер 141 (свидетельство №8305) (л.д.52,том 3). Следовательно в период заключения договора купли-продажи ценных бумаг №3 от 18 января 1999г. ООО «Полипром» не являлось юридическим лицом.

В деле имеется письменное сообщение ООО «Компании-регистратор «Панорама» от 28 июня 2001г., в котором указывается, что основанием для внесения записи в реестр «Комбината» по передаточным распоряжениям послужил договор купли-продажи ценных бумаг №3 от 18 января 1999г., по которому «Торговый дом» передал «ООО» 2298225 обыкновенных именных акций «Комбината»; госрегистрационный номер выпуска 62-1-1396, цена сделки 5535342,2 руб., входящий № Ц-0135-200100-002 от 20 января 2000г. – 9759 обыкновенных именных акций «Комбината», госрегистрационный номер выпуска 62-1П-290, цена сделки 23504,8 руб., входящий № Ц-01350200100-001 от 20 января 2000г. Каких-либо других передаточных распоряжений, связанных с отчуждением акций в количестве 2298225 шт. и 9759 шт., принадлежащих «Торговому дому» в адрес ЗАО не поступали (л.д.19, том 2).

Согласно Уставу и балансу «Торгового дома» с отметкой из налогового органа и федерального закона «Об ООО» сделка совершенная 18 января 1999г. о купле-продаже ценных бумаг являлась крупной сделкой. Согласно ст.46 ФЗ «Об акционерных обществах» для заключения крупной сделки должно быть принято решение общего собрания участников общества. «Комбинат» как учредитель «Торгового дома» не давал согласия на совершение спорной сделки. Это обстоятельство установлено в судебном заседании. В деле имеется ксерокопия договора купли-продажи ценных бумаг №КСОК-001/А от 20 января 2000г., по которому «ООО» продал Компании «Холдэкс» акции «Комбината» в количестве всего 2307984 шт., на сумму 5580000 руб. (л.д.18, том 3). При заключении указанного договора представителем компании «Холдэкс» была Иевлева И.В., подпись которой никем не заверена. Доверенность от 11 октября 1999г. суду не была представлена.

Однако в деле имеется ксерокопия генеральной доверенности от 15 ноября 2000г., в которой представителем компании «Холдэкс» является Ашимина Марина (л.д.28, том 3). Это обстоятельство ставит под сомнение достоверность сделки по продаже ценных бумаг по договору от 20 января 2000г. компании «Холдэкс», поскольку законным и полномочным представителем компании являлась Ашимина Марина и из текста генеральной доверенности, последней не дано право предоставлять переполномочий по доверенности другому лицу. Доводы представителя ООО «Полипром» указанные в отзывах, кассационных жалобах о том, что списание спорного пакета акций с лицевого счета «Торгового дома» произведено на основании договора купли-продажи ценных бумаг №3 от 18 января 2000г. суд считает их несостоятельными, поскольку в судебном заседании обозревался подлинник договора №3 от 18 января 2000г., а списание спорных ценных бумаг было совершено именно по этому договору (от 18 января 2000г.) Это обстоятельство подтверждается справкой, выданной ЗАО «Компании-регистратор» «Панорама» (л.д.19, том 2).

Оценив в совокупности исследованные в судебном заседании доказательства, изучив доводы сторон суд установил, что фактически был заключен договор купли-продажи №3 от 18 января 1999г., по которому производилось списание ценных бумаг и ЗАО «Компании-регистратор «Панорама» являлось держателем реестра на момент заключения договора. Следовательно исковые требования «Комбината» являются обоснованными и подлежат удовлетворению.

На основании изложенного, руководствуясь ст. ст.95,124-128,145 АПК РФ,

4

### Р е ш и л :

Исковые требования ОАО «Качканарский горно-обогатительный комбинат» «Ванадий» - удовлетворить.

1. Договор купли-продажи №3 от 18 января 2000г., заключенный между ООО»Торговый Дом ОАО»Ванадий» и ООО»Полипром» признать недействительным.

2. Признать недействительными передаточные распоряжения от 20 января 2000г. о списании с лицевого счета ООО «Торговый дом» ОАО»Ванадий» во исполнении договора купли-продажи №3 от 18 января 1999г. именных обыкновенных акций ОАО «Качканарский горно-обогатительный комбинат «Ванадий» выпуска №62-1П-290 от 12 июля 1993г. в количестве 9759 шт. и №62-1-1396 от 12 июня 1996г. в количестве 2298225 шт.

3. Держателю реестра акционеров ОАО «Качканарский горно-обогатительный комбинат «Ванадий» ЗАО «Ведение реестров компаний» восстановить в системе ведения реестра владельцев именных ценных бумаг ОАО «Качканарский горно-обогатительный комбинат «Ванадий» запись о наличии на лицевом счете ООО «Торговый дом ОАО»Ванадий» именных обыкновенных акций ОАО «Качканарский горно-обогатительный комбинат «Ванадий» выпуска №62-1П-290 от 12 июля 1993г. в количестве 9759 шт. и №62-1-1396 от 12 июня 1996г. в количестве 2298225 шт.

4. Взыскать    расходы по госпошлине в пользу ОАО «Качканарский горно-обогатительный комбинат «Ванадий» с ООО «Торговый дом ОАО»Ванадий» в сумме 834 руб.90 коп. и с ООО «Полипром» в сумме 834 руб.90 коп.

После вступления решения в законную силу выдать исполнительные листы.

На решение может быть подана апелляционная жалоба в арбитражный суд РК в течение месяца со дня его принятия.



Судья                                              Бембеев В.Э.

FEDERAL ARBITRAZH COURT
OF NORTH-CAUCASUS DISTRICT

ORDER
returning the cassation appeal

Krasnodar                              Case # A22-1222/2000/6-109/Ap-46
April 23, 2002                              F08 – 1602/02

The judge of the Federal Arbitrazh Court of North-Caucasus District Trifonova
L.A. having reviewed a cassation appeal of LLC Poliprom contesting the decision of the
Arbitrazh Court of the Republic of Kalmykia of March 12, 2002 in the case # A22-
1222/2000/6-109/Ap-46 has determined:

The cassation appeal was not send through the arbitrazh court that issued the
judicial decision.

Pursuant to Article 168(1)§2 of the Arbitrazh Procedural Code of the Russian
Federation [the court]

ORDERED:

1. To return the cassation appeal to the appellant.
2. IIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIII
3. The order can be appealed in cassation order with the Federal Arbitrazh Court
   of North-Caucasus District.

**Enclosure:** 1. The cassation appeal with the attached documents on 9 pages.

Judge          [signed]          L.A. Trifonova


000364

⊠015



**ФЕДЕРАЛЬНЫЙ АРБИТРАЖНЫЙ СУД
СЕВЕРО-КАВКАЗСКОГО ОКРУГА**

**ОПРЕДЕЛЕНИЕ**
о возвращении кассационной жалобы

г. Краснодар
А22-1222/2000/6-109/Ар46
Дело №

« 23 »  апреля  2002  г.
Ф08-1602/02

Судья Федерального арбитражного  суда Северо-Кавказского округа
_Л.А. Трифонова_ , рассмотрев кассационную
жалобу  ООО "Полипром"
(лицо, подавшее жалобу)

на  решение Арбитражного уда Республики Калмыкия
(наименование судебного акта и арбитражного суда)

от « 12 »  03  2002  г. по делу № А22-1222/2000/6-109/Ар46

установил:

Кассационная жалоба направлена минуя арбитражный суд,
принявший судебный акт.

Руководствуясь пунктом  2  части 1 статьи 168 Арбитражного
процессуального кодекса Российской Федерации,

**ОПРЕДЕЛИЛ:**

1. Кассационную жалобу возвратить заявителю.

2. ~~Возвратить заявителю из федерального бюджета государственную~~
~~пошлину в сумме~~ , перечисленную по
~~платежному поручению~~

3. Определение может быть обжаловано в кассационном порядке в Феде-
ральный арбитражный суд  Северо-Кавказского округа.

Приложение: 1. Кассационная жалоба и приложенные документы
на  9  л., ~~документы, подтверждающие уплату государственной пошлины~~

2. ~~Квитанция об отправлении жалобы заявителю~~

Судья  _Л.А. Трифонова_

000364

Decision.

*On behalf of Russian Federation* _____

_____30.04.2002_____Kachkanarsky_____

*With the chair judge* ___Ryazanov A.l._____

*Asessors* _____Frolova A.L., ___Tasakova L. A._____

*Secretary*_____Kostromina O.G._____

*Having reviewed in an open hearing the civil case at the claim (petition)* _____
Of Jalol Akhatovich Khaidarov against Aleksey Vasilievich Zanadvornov, Sergo-Shakhzad
Mamadalevich Kurbanov, Semen Filipovich Barkov, Alexander Petrovich Kotsuba, Adylzhan
Khabibulovich Dzhuraev, RustiamGoelievich Valishev, Damir Rameilvevich Garsov, OAO
Kachkanarsky GOK "Vanady" to declare the meeting of Board of Directors held on January 28,
2000 invalid.

DETERMINED:

D. A. Khaidarov filed the claim with the court to declare the decision of Board of Directors of
OAO Kachkanarsky GOK "Vanady" dated 28.01.2000 invalid. As the cause of action the
Plaintiff indicates, that the meeting of Board of Directors was called without the Chairman of
Board of Directors deciding it and calling it, was held without quorum, as clause 31.10 of the
Charter of the Combinat determines that the meeting of the Board of Directors is valid if the
members of the Board of Directors participating in the meeting have no less then 5 votes. Clause
34.4 of the Charter and Article 69(3) of the Federal Law on Joint Stock Companies provides that
general director occupying a managing position in other organizations is strictly subject to
approval of the Board of Directors. There was no decision of Board of Directors of the Combinat
in regard to approval of Kozitsin's being general director. The decisions were made through the
procedure of 'in absentia' voting whereas that can be only permitted by the decision of the
Chairman of the Board of Directors, who was absent.

Also the Plaintiff notes that the minutes reflect the decision to dissolve the labour agreement
(contract) with the general director of the Combinat, who temporary was disable to work, and his
dismissal contradicts the Article 33 of the Labor Code of RF.

He believes that the decisions of the Board of Directors violated the Plaintiff's right for the
actions of members of the Board of Directors to be rational and of good faith.

On November, 24, 1998 at the meeting of the Board of Directors he was elected to be a General
Director with the verification of his authority for a period of three years.
He was informed by the telegram about the consideration of the case in his absence.

The OAO Kachkanarsky GOK "Vanadiy" representatives Valisheva and [illegible] Grigorieva –
E.L., Kolesnikov M.N., did not accept the claims, request to dismiss the claim since the meeting
of the Board of Directors was held in accordance with the norms of the Federal Law on Joint
Stock Companies, the Charter, the Regulation on the Board of Directors.

The Judge in addition to the individuals indicated in the statement of claim of Defendants also
notified A.A. Kozitsin and O.S. Kozyrev regarding the place and time of the hearing, as the court
decision might affect there rights and obligations. They submitted the petitions to consider the
case in their absence.

A - 2108

A.V. Zanadvornov sent the telegram to consider the case in his absence.

S-S. M. Kurbanov, S.F. Barkov, A.P. Kotsuba, A. K. Dzhuraev submitted their petitions to consider the case in their absence as well.

In accordance with the Article 157 CC RF the court holds that it is possible to consider the case absent the indicated participants, holding that their participation in the court hearing is not obligatory.

In order to substantiate her position, Grigorieva E.L. explained to the court that in accordance with the Article 68 of the Federal Law on Joint Stock Companies the meeting of the Board of Directors is called by the Chairman of the Board of Directors on his own initiative, by request of the member of the Board of Directors, revision commission, or company's auditor [illegible] executing body of the company.

The court was given the request of four members of the Board of Direectors regarding the [illegible] (convocation) of the Board of Directors of "Vanadiy" in 'absentia', that is in form of written inquiry and the date of term of bulletins acceptance determined [illegible] make a decision [illegible] members of the Board of Directors repeatedly addressed [illegible] regarding the convocation and they were turned down, then members of the Board of Directors [illegible] sent to the Chairman of the Board of Directors the notification [illegible] is notification regarding the convocation of the meeting of the Board of Directors on the terms proposed by the members of the Board of Directors.

The demand, notification, and bulletins were handed in to the Chairman of the Board of Directors Gareev, D.R. on January 26, 2000. Notifications and bulletins were mailed to Valishev and Zanadvorov by registered mail and the rest of the members of the Board of Directors got notifications and bulletins via personal delivery.

Art. 5.24 of the Provision on the Board of Directors of OAO "Vanadiy" provides for the option for the Board of Directors meeting to be conducted by the members of the Board of Director who initiated the meeting.

[illegible] Art. 31.6 of the Charter of OAO "Vanadiy" provides for the right of the Chairman of the Board of Directors to refuse conveyance of the meeting of the Board of Directors based on impracticality contradicts [illegible] Art. 69 of the Federal Law "On Joint Stock Companies".

[illegible section]

...since the Board of Directors has the right to cancel the agreement with a one-person executive body of the company at any time. The labor laws of the Russian Federation govern the relationship between joint stock companies and a general director in parts that don't contradict Federal Law "On Joint Stock Companies". Words "at any time" includes time when an employee cannot work. Early termination of the rights and responsibilities of the general director based on the decision of the board of Directors is also provided for in the Para. 7.3 of the contract dated April 21, 1999 made by the plaintiff and serves as an additional ground for early termination.

When A.A. Kositsin, General Director of OAO "Vanadiy" was elected, all members of the Board of Directors were notified of the fact that he was as the same time holding a position in other organizations, and thus the plaintiff's argument that the Board of Directors did not allow for combining the position in OAO with other managing positions in other companies is not persuasive.

Plaintiff's argument that pursuant to Article 24 of the Provision on Board of Directors, the absentee vote electing the General Director is not allowed, is insufficient., since the current version of the Provision, namely Art. 5.24 provides that if the Chairman refuses to convene the meeting of the Board of Directors, then, upon demand of the members of the Board of Directors, the meeting can be conducted in the form as provided for in the demand (combined meeting or written survey).

Based on the above, all decisions made by the Board of Directors on January 28, 2000 are valid and lawful. The lawfulness of the decisions is also supported by the Decision of the Appellate Instance of the Arbitrazh Court of the city of Moscow, order of Permsky Court of Moscow.

Upon hearing the arguments of the defendants' representatives and studying the materials of the case, the court concludes as follows:

The representatives supported their arguments with the documents that are material to the case and prove the validity the decision of the Board of Directors of January 28, 2000.

According to the Minutes, the Board of Directors made the following decisions:
1. Put activities, noted in Act of the State Supervisory Board of November 3, 1999 on the list of priority activities of the company.
2. Re-elect the Chairman of the Board of Directors, namely relieve Gareev, D.R. of his duties as the Chairman of the Board of Directors, and elect A.P. Kopuba
3. To terminate early duties of the one-person executive body of OAO Kachkanarsky GOK Vanadiy, namely relieve Khaidarov, J.A. General Director of OAO Kachkanarsky GOK Vanadiy of his duties and cancel the employment agreement (contract) made between him and OAO Kachkanarsky GOK Vanadiy.
4. To form a one-person executive body of OAO Kachkanarsky GOK Vanadiy, namely elect Kositsin, A.A. as a General Director of OAO Kachkanarsky GOK Vanadiy.
5. To authorize Kopuba, A.P., to act as a representative of the Board of Directors of OAO Kachkanarsky GOK Vanadiy and sign on behalf of the company contract with the one-person executive body (General Director Kositsin, A.A.)

Upon reviewing of the arguments and evidence, the court believes that plaintiff's argument that Art. 31.5 and 31.6 of the GOK Charter, providing for the Chairman's right of refusal to convene the meeting of the Board of Directors, and for impracticability as the basis for refusal, is not persuasive, since those articles violate Art. 68 of the Federal Law "On Joint Stock Companies" and therefore, pursuant to Para. 2 Art. 120 of the Constitution of the Russian Federation cannot be applied. Besides, the court considered Art. 5.24 of the Provision on Board of Directors, that provides that if the Chairman refuses to convene the meeting of the Board of Directors, then, upon demand of the members of the Board of Directors, the meeting can be conducted. The court bases its decision on the text of the Provision on Board of Directors, which was reviewed at a hearing and the velobound original of the document was presented, where Art.5.24 contains different wording from what was represented by the Plaintiff. (Vol.1, 44-53) and review of the original made the court conclude that it was a true document and it was admitted into evidence in support of the arguments of the defense.

The court was also presented with the duly notarized copies of the voting bulletins, which show that 4 members of the Board of Directors voted for the decision and one – abstained. A letter from Gareev stating that he has no objections to his dismissal from his position of the Chairman of the Board of Directors, was also presented, and therefore, the decision of the Board of Directors regarding the election of the new Chairman is lawful and was made in accordance with Art. 30.2; 30.9 of the Company Charter.

A - 2110

As such, pursuant to Art. 68 of the Federal Law 'On Joint Stock Companies" and Art. 31.10 of the Charter, there was a necessary quorum, the meeting took place by written survey based on the decision of the members of the Board of Directors and Chairman of the Board of Directors.

Plaintiff's argument that Board of Directors did not agree to the fact that the newly elected Kositsin was combining his duties with his positions in the other companies cannot be the basis to invalidate the decision of the Board of Directors. Art. 34.4 of the Charter allows General Director to combine its duties and serve on the board of other organizations if the Board of Directors agrees to that. The defendant showed enough evidence proving the existence of such agreement, since the members of the Board of Directors who took part in the vote, knew about the fact that he held positions in different companies and they did not object to it.

The court is also taking into consideration the fact that it was possible to relieve the General Director of his duties when he was temporarily unable to work. Since pursuant to Art. 69 of the Federal Law "On Joint Stock Companies", the labor laws of the Russian Federation govern the relationship between the joint stock company and its general director only when it does not contradict the the Federal Law "On Joint Stock Companies" provisions, Para. 3 Art. [illegible] of the Russian Federation does not apply to the general director, because Para. 4 Art.69 of the Federal Law "On Joint Stock Companies" allows to cancel a contract with one-person executive body at any time, based on the decision of the shareholders' meeting or meeting of the members of the Board of Directors., who do not want to trust the above director managing the property.

Under the labor agreement (contract), made between OAO Kachkanarsky GOK Vanadiy and Khaidarov, J.A. on April 21, 1999, reviewed in the course of the court hearing, the contract can be cancelled based on early termination of the duties of the General Director (Art. 7.3 of the contract). The court is considering Art. 7.3 of the contract as an additional basis for canceling the contract under Para. 4, Art. 254 of the Labor Code of the Russian Federation.

The presented documents and the documents reviewed in the course of the hearing along with the explanations offered by the defendants' representatives give this court the basis to deny Khaidarov, J.A.'s complaint to invalidate the decision of the Board of Directors dated January 28, 2000.

The court also analyzed the issue of whether the decisions violated rights of the Plaintiff. This argument does not stand under the Federal Law "On Joint Stock Companies", since the Board of Directors acted in good faith and in a rational manner. Besides, the court has established that the actions of the Board of Directors were lawful. The arguments that Plaintiff's right to manage the company was violated and that financial situation and the GOK worsened and that new management caused the losses were not proved in the hearing.

Since the Complaint is dismissed, the order to accept the complaint dated August 9, 2000, staying the January 28, 2000 decision and prohibiting the defendants from acting on the decision, is reversed.

Based on the above and guided by Art. 191, 197 of the Civil Procedural Code of RF, the court hereby

RESOLVED:

To deny claim by Jalol Akhatovich Khaidarov to declare the decisions of the meeting of Board of Directors of OAO Kachkanarsky GOK "Vanadiy" held on January 28, 2000 invalid.

To reverse the court order to accept the complaint dated August 9, 2000, staying the January 28, 2000 decision and prohibiting the defendants from acting on the decision

The decision can be appealed to Sverdlovsk Oblast Court

April 30, 2002

[illegible]

185

Отметка об исполнении решения

# РЕШЕНИЕ

Именем Российской Федерации

30.04.2002 г. 200__г.          Качканарский

районный (городской) суд

Свердловской области

в составе: председательствующего судьи    Родионова А.И.

народных заседателей    Фроловой А.Л., Тасаковой Л.А.

с участием прокурора

адвоката

представители общественных организаций и трудового коллектива

при секретаре    Костроминой О.Г.,

рассмотрев в открытом судебном заседании гражданское дело по иску (заявлению)

Хайдарова Джалола ахатовича к Занадворнову Алексею Васильевичу, Курбанову Серго-Шахзада Мамадалевичу, Баркову Семену Филипповичу, Кспуба Александру петровичу, Джураеву Адылжан Хабибуллаевичу, Валишеву Рустэму Гоэльевичу, Гирееву Дамиру Рамзилвевичу, ОАО "Качканарский ГОК "Ванадий" о признании недействительным Совета директоров от 20 января 2000 года,

## У С Т А Н О В И Л :

Хайдаров Д.Л. обратился в суд с иском о признании недействительным решений Совета Директоров ОАО "Качканарский ГОК "Ванадий" от 28.01.2000 года. В обоснование своих исковых требований истец указал, что заседание Совета Директоров было созвано без принятия об этом решения Председателя Совета Директоров и им не созывалось, проведено в отсутствие кворума, поскольку п. 31.10 Устава Комбината определяет, что заседание Совета директоров является правомочным, если в нем принимают участием члены Совета директоров, обладающие в совокупности не менее чем пятью голосами. Пункт 34.4 Устава и п. 3 ст. 69 ФЗ " Об акционерных обществах" предусматривает, что совмещение генеральным директором должностей в органах управления других организаций допускается только с согласия совета директоров. Решения совета директоров комбината о согласии занятия Козицыным должности Генерального директора не было. Решения приняты путем заочного голосования, однако такое допускается только по решению Председателя Совета директоров, которого

A - 2114

не было.

Также истцом отмечается, что в протоколе зафиксировано решение о расторжении трудового договора / контракта / с Генеральным директором Комбината, который находился в этот момент в состоянии временной нетрудоспособности и у его увольнение противоречит ст. 33 КЗоТ РФ.

Считает, что решении членов Совета директоров нарушили право истца а, на добросовестные и разумные действия членов Совета директоров Комбината.

Генеральным директором он избран на заседании Совета директоров 24 ноября 1998 года, с подтверждением полномочий на срок три года на заседании Совета директоров.

Телеграммой сообщил о рассмотрении дела в его отсутствие.

Представитель ОАО "Качканарский ГОК "Ванадий", Валишева и Сабрева Григорьева - Е.Л., представитель ОАО "Качканарский ГОК "Ванадий" Колесников М.Н. исковые требования не признали, просят в иске отказать, поскольку Совет директоров был проведен в соответствии с нормами ФЗ "Об акционерных обществах" и Устава Общества, Положения о Совете директоров.

Судьей, кроме указанных в исковом заявлении ответчиков, также извещены о месте и времени рассмотрения дела Козицын А.А. Козырев О.С., на права и обязанности которых может повлиять решение суда. Они направили заявления о рассмотрении дела в их отсутствии.

От Западворнова А.В. поступила телеграмма о рассмотрении дела в его отсутствии.

Курбанов С.Ш.М, Барков С.Ф., Коцуба А.П., Джураев А.Х. также направили в суд заявления о рассмотрении дела в их отсутствие.

Суд в соответствии со ст.157 ГПК РФ считает возможным рассмотреть дело в отсутствии указанных ответчиков, не считая обязательным их участие в судебном заседании.

В обоснование своих доводов Григорьева Е.Л. суду пояснила, что в соответствии со ст. 68 ФЗ "Об акционерных обществах" заседание Совета Директоров созывается Председателем Совета Директоров по его собственной инициативе, по требованию члена Совета Директоров, ревизионной комисси или аудитора общества, исполнительного органа общества.

Суду представлено требование четырех членов Совета директоров о проведении / созыве / Совета директоров ОАО "Ванадий" в письменной форме, то есть путем письменного опроса, ...

A - 2115

2

приема бюллетеней определили [...]
[...]ложено принять решение по [...]
[...] члены Совета директоров нео[...]
[...]ем о созыве и им было отказано, то члены Совета
[...]правили Председателю Совета директоров извещение
[...]ляется уведомлением о созыве заседания Совета директ[...]
[...]паемых членами Совета директоров условиях.
[...]бование, извещение и бюллетени были вручены председателю
Совета директоров Гарееву Д.Р. 26 января 2000 года. Валишеву
[...]рнову извещения и бюллетени были направлены заказным
[...]остальным члена Совета директоров извещения и бюлле-
[...] вручены нарочным.

[...] Возможность проведения Совета директоров членами Совета ди-
ректоров инициаторами прямо предусмотрено п. 5.24 Положения
[...] Совета директоров ОАО "Ванадий".

[...] 31.6 Устава ОАО "Ванадий", предусматривающие право
Председателя Совета директоров отказывать в проведении заседа-
ния [...] директоров по причине нецелесообразности противоре-
[...] 69 ФЗ "Об акционерных обществах".

[...]мя 26 января 2000 года в адрес членов Совета дирек-
торов [...]шло письмо о принятии председателем Совета Общест[...]
28 [...] 2000 года путем письменного опроса.

[...]реева Д.Р. от 26 января 2000 года следует, что
[...]ости проведения Совета директоров заочным
[...]нято им [...]

[...] директоров 28 января 2000 года был созван
[...]вии с ФЗ "Об акционерных обществах".
[...]рании каждому из семи членов Совета
[...]равлены и в момент окончания приема бюлле-
[...]ть и за принятие решений по вопросам
[...]совало 4 члена Совета директоров и воздер-
[...]ин директоров. Также имелся бюллетень члена
[...]кова С.Ф., который является представите-
[...]лотой акции"", но его бюллетень не учи-
[...]лностью его положения. Поэтому кворум
[...] имелся и все решения приняты большинством

[...]ректоров дал свое согласие на переизбра-
[...]изгании законно, в соответствии
[...] Общества.

[...] полномочий истца как генерального
[...]ольку Совет директоров вправе в любое

время расторгнуть договор с единоличным исполнительным органом общества. Действие законодательства РФ о труде распространяется на отношения между акционерным обществом и генеральным директором лишь в части не противоречащей положениям ФЗ "Об акционерных обществах". Понятие "любое время" включает в себя периоды и временной нетрудоспособности работника. Досрочное прекращение полномочий генерального директора на основании решения Совета директоров содержится также в п. 7.3 контракта от 21 апреля 1999 года, заключенного с истцом и это дополнительное основание для прекращения полномочий.

При избрании генеральным директором ОАО "Завод ..." Корнева А.А. все члены Совета директоров были уведомлены о совмещении им должностей в других организациях и в этой связи ссылка истца о том, что Совет директоров не давал согласия на совмещение должностей с должностями в органах управления других организаций неубедительна.

Довод истца о том, что в соответствии с п. 5.24 Положения о Совете директоров не допускается принятие решение об избрании генерального директора путем проведения заочного голосования необоснователен, поскольку в настоящей редакции Положения и в частности в п. 5.24 содержится положение о том, что в случае отказа или уклонения председателя Совета директоров от созыва и по требованию члена Совета директоров проводится заседание в той форме, которая указывается в требовании / совместное заседание или письменный опрос /.

В связи с этим все решения Совета директоров, принятые 28 января 2000 года законны. Законность принятых решений подтверждается также Постановлением Апелляционной инстанции Арбитражного суда г. Москвы, решением Пресненского суда г. Москвы.

Суд, выслушав объяснения представителей ответчиков, изучив материалы дела, приходит к следующему.

Представители ответчиков свои доводы подтвердили письменными средствами доказывания и представленными документами, которые имеют значение для дела и подтверждают законность принятого решения Совета директоров от 28 января 2000 года.

Согласно протоколу Советом директоров приняты следующие решения:

1. Включить в число приоритетных направлений деятельности Общества мероприятия, указанные в акте Госгортехнадзора от 3 ноября 1999 года.

2. Переизбрать Председателя Совета директоров, а именно прекра-

тить полномочия Председателя Совета директоров Гареева Д.Р.
и избрать Председателем Совета директоров Конуба А.П..

3. Досрочно прекратить полномочия единоличного исполнительного
органа ОАО Качканарский ГОК "Ванадий", а именно досрочно прек-
ратить полномочия генерального директора ОАО "Качканарский ГОК
"Ванади" Хайдарова Д.А. и расторгнуть трудовой договор / конт-
ракт/, заключенный с ним ОАО "Качканарский ГОК "Ванадий".

4. образовать единоличный исполнительный орган ОАО "Качканар-
ский ГОК "Ванадий", а именно избрать генеральным директором.
ОАО "Качканарский ГОК "Ванадий" Козицына А.А..

5. Определить Конуба А.П. лицом, уполномоченным Советом
директоров ОАО "Качканарский ГОК "Ванадий" подписать от имени
общества договор с единоличным исполнительным органом / гене-
ральным директором Козицыным А.А.

Рассмотрев представленные ответчиком доводы и доказательства,
суд считает, что ссылка истца на нарушение членами Совета ди-
ректоров п.п. 31.5,31.6 Устава Общества, предусматривающих воз-
можность отказа председателя Совета директоров в созыве за-
седания Совета директоров, и в качестве отказа – нецелесообраз-
ность, необоснована, так как данные пункты Устава противоречат
ст. 68 ФЗ "об акционерных обществах" и не могут быть применены
в силу п. 2 ст. 120 Конституции РФ. Кроме того, судом учтено
положение п. 5.24 Положения о Совете директоров, предусматри-
вающее возможность проведения Совета директоров лицами, тре-
бующими созыва, в случае отказа Председателя Совета директоров.

При вынесении решения суд исходит из текста Положения о сове-
те директоров, подлинник которого в прошнурованном и подшитом
виде обозревался в судебном заседании, где п. 5.24 имеет иное
содержание, чем представленный истцом / т.1, л/д. 44–53 / и
исследование подлинника привело к выводу о его достоверности
и допустимости как доказательства по делу, подтверждающего
доводы доводы представителя ответчиков.

Суду также были представлены надлежаще заверенные копии бюлле-
теней для голосования, из которых видно, что за принятие реше-
ний проголосовали четыре члена Совета директоров при одном
воздержавшемся. Представлено также письмо Гареева Д.Р. о том,
что он не возражает на свое переизбрание как Председателя Сове-
та директоров, следовательно, решение Совета директоров о пе-
реизбрании Председателя, законно и соответствует требованиям
ст. 30.2,30.9 Устава Общества.

Таким образом, согласно ст. 68 ФЗ "Об акционерных обществах"
п. 31.10 Устава кворум имел место, заседание было проведено

путем письменного опроса на основании решений членов Совета директоров и председателя Совета директоров.

Не может служить основанием для признания недействительным решений Совета директоров и утверждение истца об отсутствии согласия совета директоров на совмещение вновь избранным Генеральным директором Кемниевым должностей в органах управления других организаций. П.34.4 Устава Общества допускает совмещение Генеральным директором должностей в органах управления других оорганизаций с согласия Совета директоров. Ответчиком представлены достаточные данные о наличие такого согласия, так как члены Совета директоров, принявшие участие в голосовании, были уведомлены о совмещении должностей и не возражали против данного совмещения.

Суд принимает во внимание также то, что прекращение полномочий генерального директора возможно было в период временной нетрудоспособности. Поскольку в силу ст. 69 ФЗ "Об акционерных обществах" действие законодательства РФ о труде распространяются на отношения между акционерным обществом и генеральным директором лишь в части, не противоречащей положениям ФЗ "Об акционерных обществах", в данном случае положения п. 3 ст. ... КЗоТ РФ не применимы в отношении генерального директора, так как п. 4 ст. 69 ФЗ "об акционерных обществах" позволяет расторгнуть договор с единоличным исполнительным органом общества в любое время, на основании соответствующего решения акционеров или членов совета директоров, которые не желают доверять управление собственностью данному руководителю.

Согласно трудовому договору /контракту /, заключенному ОАО "Качканарский ГОК "Ванадий" Хайдаровым Д.А. 21 апреля 1999 года, исследованному в судебном заседании, допускается расторжение трудового договора / контракта /по основанию досрочного прекращения полномочий Генерального директора по решению совета директоров / п. 7.3 контракта /. Суд рассматривает п. 7.3 трудового договора / контракта / в качестве исполнительного основания прекращения трудового договора в соответствии с п. 4 ст. 254 КЗоТ РФ.

Предоставленные документы и исследованные в судебном заседании наряду с объяснениями представителей ответчика доказательства дают основание суду сделать вывод об отказе в иске Хайдарову Д.А. о признании недействительным решений Совета директоров от 28 января 2000 года.

Суд также проанализировал вопрос о нарушении принятым решением прав истца. Доводы о нарушении прав истца на добросовестные

A - 2119

и разумные действия членов Совета директоров не обоснованы нормами ФЗ "Об акционерных обществах". Кроме того, судом установлено, что действия членов Совета директоров законны. Нарушение права истца на управление обществом и его предположения об ухудшении экономического состояния комбината и причинения ущерба новым руководством не нашли подтверждения в судебном заседании.

В связи с отказом в иске должно быть отменено определение об обеспечении иска от 9 августа 2000 года, запрещающее ответчикам совершать действия по реализации решения от 28 января 2000 года.

На основании изложенного и руководствуясь ст.ст. 191,197 ГПК РФ, суд

### Р Е Ш И Л :

В иске Хайдарова Джалола Ахатовича о признании недействительными решения Совета директоров ОАО " Качканарский ГОК "Ванадий", зафиксированные в протоколе  Совета директоров от 28 января 2000 года в полном объеме — отказать.

Определение об обеспечении иска от 9 августа 2000 года, запрещающего ответчикам совершать действия по реализации решения от  28 января 2000 года отменить.

Решение может быть обжаловано в Свердловский областной суд в течении

Полный ... изготовлен  30 апреля  2002 года.

Судья
Народ...



A - 2120