Poliprom, as well as the transfer orders of January 20, 2000 pursuant to which nominal common stock of OAO Kachkanarskii gornoobogatitelnyi kombinat Vanadii issue No. 62-1P-290 of July 12, 1993 in the amount of 9,759 shares and No. 62-1-1396 of June 12, 1996 in the amount of 2,298,225 shares were transferred to the personal account of OOO Poliprom were declared null and void.

According to Article 167, Section 1 of the Civil Code of the Russian Federation, a null and void transaction does not have any legal consequences; therefore OOO Poliprom had not become the owner of said stock and, subsequently, its disposition of said stock was illegal.

In accordance with Article 301 of the Civil Code of the Russian Federation, the owner of stock, plaintiff in a case, has the right to demand and obtain said stock from the illegal possession of another party.

The illegal possessor of the disputed stock is the defendant in the case, i.e. Hold X LLC, which has acquired said stock pursuant to a purchase and sale agreement (Case Sheet 18 – 20, Volume 3).

Taking into consideration Article 302, Section 1 of the Civil Code of the Russian Federation, the court deems the plaintiff's claim for the vindication of the assets (stock) from the possessor because said assets have left the plaintiff's possession contrary to the will of the owner, which is confirmed by the nullity of the transactions for the sale of the stock.

Under such circumstances, the court renders a decision to vindicate the assets (stock in the amount of 2,307,984 shares) from Hold X LLC on behalf of the plaintiff.

Considering the specific nature of the assets subject to restitution and the declared claim of the plaintiff (Case Sheet 5, Volume 1), the court deems it feasible to perform restitution of the assets in the following manner: by mandating that the third party, ZAO Vedenie reestrov kompanii to restore in the register of holders of nominal securities of OAO Kachkanarskii gornoobogatitelnyi kombinat Vanadii the entry regarding the existence on the personal account of OOO Torgovyi dom Vanadii of nominal common stock of OAO Kachkanarskii gornoobogatitelnyi kombinat Vanadii issue No. 62-1P-290 of July 12, 1993 in the amount of 9,759 shares and No. 62-1-1396 of June 12, 1996 in the amount of 2,298,225 shares.

In light of the above and pursuant to Articles 167 – 170 of the Code of Arbitration Procedure of the Russian Federation, the court:

**Decided:**

The claim of the plaintiff, OAO Kachkanarskii gornoobogatitelnyi kombinat Vanadii, is hereby sustained.

The restitution of the plaintiff's stock in the amount of 2,307,984 shares from the illegal possession of Hold X LLC is to be carried out as follows: the third party, ZAO Vedenie reestrov kompanii, is hereby mandated to restore in the register of holders of nominal securities of OAO Kachkanarskii gornoobogatitelnyi kombinat Vanadii the entry regarding the existence on the personal account of OOO Torgovyi dom Vanadii of nominal common stock of OAO Kachkanarskii gornoobogatitelnyi kombinat Vanadii issue No. 62-111-290 of July 12, 1993 in the amount of 9,759 shares and No. 62-1-1396 of June 12, 1996 in the amount of 2,298,225 shares. A writ of execution is to be issued.

This decision may be appealed within one month of the date of rendition thereof before the appellate division of the Court of Arbitration of the Republic of Kalmykia.

[square stamp:]
Court of Arbitration of the Republic of Kalmykia

COPY AUTHENTICATED

**Judge:**        [signature]        **D. G. Kontorova**



## АРБИТРАЖНЫЙ СУД РЕСПУБЛИКИ КАЛМЫКИЯ

### Именем Российской Федерации

### РЕШЕНИЕ

10 сентября 2002 г.                    Дело № А 22/1222-00/6-109

Арбитражный суд РК в составе: председательствующей судьи Конторовой Д.Г., при ведении протокола судебного заседания помощником судьи Бадмаевой Л.М., рассмотрев в открытом судебном заседании дело по иску ОАО «Качканарский горно-обогатительный комбинат «Ванадий» к ООО «Торговый дом ОАО «Ванадий», ООО «Полипром», компании «ХолдЭкс Эл. Эл. Си», третьему лицу ЗАО «Ведение реестров компаний» о возврате акций,

### установил:

ОАО «Качканарский горно-обогатительный комбинат «Ванадий» обратился в арбитражный суд с иском к ООО «Торговый дом «Ванадий», ООО «Полипром» о признании недействительными договора купли-продажи акций № 3 от 18.01.99г. и передаточных распоряжений, на основании которых с лицевого счета продавца были списаны именные обыкновенные акции ОАО «Качканарский ГОК «Ванадий», а также в восстановлении в реестре владельцев именных ценных бумаг ОАО «Качканарский ГОК «Ванадий» записи о наличии на лицевом счете ООО «Торговый дом «Ванадий» именных обыкновенных акций, переданных по названному договору купли-продажи.

Определением суда от 10 сентября 2001г. (л.д.38 т.3) к рассмотрению дела были привлечены в качестве третьих лиц, не заявляющих самостоятельные требования, ЗАО «Ведение реестров компаний» и компания «Холд Экс Эл. Эл.Си».

Решением суда от 12 марта 2002г. исковые требования истца были удовлетворены.

Постановлением кассационной инстанции федерального арбитражного суда Северо-Кавказского округа от 2 июля 2002г. решение суда было изменено: признаны недействительными заключенные ООО «Торговый дом «Ванадий» и ООО «Полипром» договоры № 3 от 18.01.99г. и № 3 от 18.01.99г., а также передаточные распоряжения от 20.01.00г., на основании которых на лицевой счет ООО «Полипром» были зачислены именные обыкновенные акции ОАО «Качканарский горно-обогатительный комбинат «Ванадий» выпуска 62-1П-290 от 12.07.93г. в количестве 9759штук, № 62-1-1396 от 12.06.96г. в количестве 2298225штук.

То же решение суда в части восстановления на лицевом счете ООО «Торговый дом «Ванадий» названных именных обыкновенных акций ОАО «Качканарский ГОК «Ванадий» отменено и в этой части исковые требования истца были направлены на новое судебное рассмотрение.

Кассационная инстанция указала, что спорные акции были проданы компании «Холд Экс Эл. Эл. Си», которое не было привлечено к рассмотрению дела в качестве ответчика, несмотря на то, что решался вопрос о возврате имущества.

Определением суда от 7 августа 2002г. компания «Холд Экс Эл. Эл. Си» была привлечена к рассмотрению дела в качестве ответчика.

ОАО "Качканарский ГОК
"ВАНАДИЙ"

В судебное заседание представитель истца не явился. Истец заявил ходатайство о рассмотрении дела в отсутствие его представителя.

Представитель ответчика ООО «Торговый дом Ванадий» Дворовенко И.Е. иск признал и не возражал против восстановления в реестре владельцев именных ценных бумаг ОАО «Качканарский ГОК «Ванадий» записи о наличии на лицевом счете ООО именных обыкновенных акций ОАО выпуска 1993г. в количестве 9759 шт., выпуска 1996г. – 2298225шт.

Представитель ответчика ООО «Полипром» Вольнов В.В. иск не признал и настаивал на участии в рассмотрении дела представителя компании «Холд Экс Эл. Эл. Си», являющейся добросовестным приобретателем акций.

Представитель соответчика компании «Холд Экс Элю Эл. Си» не явился. О времени и месте рассмотрения дела компания была извещена по последнему, известному суду, почтовому адресу, о чем имеется почтовое уведомление. Дело рассматривается судом в отсутствии представителя компании в порядке п.3 ст.156 АПК РФ.

От третьего лица ЗАО «Ведение реестров компаний» поступило ходатайство о рассмотрении дела в отсутствие его представителя.

Выслушав пояснения представителей ответчиков и исследовав материалы дела, суд приходит к выводу о необходимости удовлетворения исковых требований истца.

Постановлением федерального арбитражного суда Северо-Кавказского округа от 2 июля 2002г. признаны недействительными заключенные ООО «Торговый дом «Ванадий» и ООО «Полипром» договоры № 3 от 18.01.99г. и № 3 от 18.01.99г., а также передаточные распоряжения от 20.01.00г., на основании которых на лицевой счет ООО «Полипром» были зачислены именные обыкновенные акции ОАО «Качканарский горно-обогатительный комбинат «Ванадий» выпуска 62-1П-290 от 12.07.93г. в количестве 9759штук, № 62-1-1396 от 12.06.96г. в количестве 2298225штук.

Согласно ч.1 ст.167 ГК РФ недействительная сделка не влечет юридических последствий, следовательно, ООО «Полипром» не стало собственником названных акций, поэтому распорядилось ими незаконно.

В соответствии со ст.301 ГК РФ собственник акций, истец по делу, вправе истребовать их из чужого незаконного владения.

Незаконным владельцем спорных акций является ответчик по делу компания «Холд Экс Эл. Эл. Си», которое приобрело их по договору купли-продажи (л.д.18-20 т.3).

С учетом п.1 ст.302 ГК РФ суд считает правомерными требования истца об истребовании имущества (акций) от приобретателя, так как имущество выбыло из владения помимо воли собственника, что подтверждается недействительностью сделок отчуждения акций.

При таких обстоятельствах судом принимается решение об истребовании имущества (акций в количестве 2307984 шт.) у компании «Холд Экс Эл. Эл. Си» в пользу истца.

Учитывая специфику возвращаемого имущества и заявленное требование истца (л.д.5 т.1), суд полагает возможным произвести возврат имущества следующим путем: обязать третье лицо ЗАО «Ведение реестров компаний» восстановить в реестре владельцев именных ценных бумаг ОАО «Качканарский горно-обогатительный комбинат «Ванадий» запись о наличии на лицевом счете ООО «Торговый дом «Ванадий» именных обыкновенных акций ОАО «Качканарский горно-обогатительный комбинат «Ванадий» выпуска № 62-1П-290 от 12.07.1993г. в количестве 9759 штук и № 62-1-1396 от 12.06.1996г. в количестве 2298225 штук.

На основании изложенного, руководствуясь ст.ст.167-170 АПК РФ, суд

**р е ш и л:**

Исковые требования ОАО «Качканарский горно-обогатительный комбинат «Ванадий» удовлетворить.

Возврат акций истца в количестве2307984 шт. из незаконного владения компании «Холд Экс Эл. Эл. Си» произвести следующим путем: обязать третье лицо ЗАО «Ведение реестров компаний» восстановить в реестре владельцев именных ценных бумаг ОАО «Качканарский горно-обогатительный комбинат «Ванадий» запись о наличии на лицевом счете ООО «Торговый дом «Ванадий» именных обыкновенных акций ОАО «Качканарский горно-обогатительный комбинат «Ванадий» выпуска № 62-111-290 от 12.07.1993г. в количестве 9759 штук и № 62-1-1396 от 12.06.1996г. в количестве 2298225 штук. Выдать исполнительный лист.

Решение может быть обжаловано в месячный срок со дня его принятия в апелляционную инстанцию арбитражного суда РК.

Судья                    Арбитражный суд
                         Республики Калмыкия      Конторова Д.Г.
                         КОПИЯ ВЕРНА

A - 2276

# COURT OF ARBITRATION
## Of the Sverdlovsk Region
### In the name of the Russian Federation

## RESOLUTION
### Of the Court of Arbitration of the appellate level

City of Ekaterinburg                           Case No. A60-25749/2002-C1
May 22, 2003

**Appellate level of the Court of Arbitration of the Sverdlovsk Region, composed of:**
**Chair: Kokova V.S.**
**Judges: Lutfurakhmanova H.Ia., Bikmukhametova E.A.**
With the administration of the protocol of the judicial session assistant to the judge
Chernov S.V.
With the participation of
From the respondent: Grigoreva Ekaterina Leonardovna, lawyer, reg. No. 66/378,
authorization No. 186 of December 19, 2002
Power of attorney No. 79 from September 2, 2002

Examined the appellate claim in the judicial session

The decision of the Court of Arbitration of the Sverdlovks Region of January 22, 2003
(judge Mikushina N.V.) of the case No. A60-25749/2002-C1 of the lawsuit of
Zanadvorov A.V. against OAO "Kackhanar GOK "Vanadii" of the recognition of the
decision of the Board of Directors as invalid.

　　　　The plaintiff brought a lawsuit against OAO "Kackhanar GOK "Vanadii" of the
recognition of the decision of the Board of Directors of January 28, 2000 as invalid. In
connection with the claims of the plaintiff, the case brought concerning jurisdiction
arrived at the Court of Arbitration of the Sverdlovsk Region from the Kachkanar County
Court of the Sverdlovsk Region. With the decision of the Court of Arbitration of the
Sverdlovsk Region of December 6, 2002, the process was initiated on the case. With the
decision of January 22, 2003, the lawsuit claims were denied.
　　　　The legality and validity of the decision were verified according to articles 258,
266, 268 of the Arbitration Code of Procedure of the Russian Federation for appellate
claims of the plaintiff, which does not agree with the decision, requests that it be reversed
on the following grounds. In the opinion of the plaintiff, the court did not apply the norms
of law appropriate for application, did not establish the fact of the inappropriate notice of
the plaintiff of the conducting of the disputed meeting. The court did research a series of
documents presented by the plaintiff: the letters of Gareev, in which the fact of the
adoption of the decision of the conducting of the extraordinary voting on the agenda is
contradicted, the bulletins for the voting on the disputed decision, which were prepared
after the adoption of the disputed decision by the Board of Directors. In addition, the
plaintiff claims that the court did not examine the motion of Gareev, in which he
indicated that he did not give his agreement for the reclamation, did not issue decision on

the proxy vote, and did not participate in the disputed decision which violates the rights of the shareholders.

Having examined the materials of the case, having heard the representatives of the respondent, the court established the following. With the decision of the Board of Directors of January 28, 2000 the authority of the Chairman of the Board of Directors of OAO GOK "Vanadii" Gareev D.R., Chairman of the Board of Directors elect Kotsuba was terminated; the pre-term termination of the authority of the General Director of OAO GOK "Vanadii" Khaidarov D.A., the General Director elect Kozitsyn.

Meanwhile, in the materials of the case, there is a decision from September 30, 2002 of Kachkanar Municipal Court of the Sverdlovks Region of the lawsuit of Khaidarov D.A. against Zanadvorov A.V., Kurbatsov S-Sh.M., Barkov S.F., Kotsuba A.P., Dzhuraev A. Kh., Valishev R.R., Gareev D.R., OAO "Kachkanar GOK "Vanadii" of the recognition of the decision of the Board of Directors of January 28, 2000 as invalid. This decision denies the claims of the lawsuit in whole. The decision remains without amendment with the ruling of September 24, 2002 of the Kachkanar County Court of the Sverdlovsk Region and with the ruling of November 19, 2002 of the panel of judges for civil matters of the Sverdlovsk Region court. In this manner, a judicial act entered into legal force exists of the court of general jurisdiction, adopted according to the dispute between those individuals on this subject and on these grounds. The indicated conditions are the grounds for the termination of the process of the case in correspondence with point 2 part 1 article 150 of the Arbitration Code of Procedure RF.

The decision of the Court of Arbitration of the Sverdlovsk Region of January 15, 2003 was issued without consideration of the decision of the Kachkanar Municipal Court of the Sverdlovks Region of April 30, 2002, which was a violation of the norms of procedural law. In correspondence with point 4 part 1 article 270 of the Arbitration Code of Procedure, the indicated circumstances are the grounds for the reversal of a decision of a court of arbitration in the first instance.

Governed by point 2 part 1 article 150, articles 258, 268, 269, point 4 part 1 article 270, article 271 of the Arbitration Code of Procedure of the Russian Federation, the court of arbitration

### RESOLVED:

The decision of the Court of Arbitration of the Sverdlovsk Region of January 22, 2003 is reversed, the process of the case No. A60-25749/2002-C1 is terminated.

The resolution can be appealed in a court of arbitration of the appellate level.

The resolution was prepared in full on May 26, 2003.

[stamp]
Chair:                          V.S. Kokova
Judges:                         N.Ia. Lutfurakkmanova
                                E.A. Bikmukhametova

[stamp: copy verified
signature]



# А Р Б И Т Р А Ж Н Ы Й   С У Д
## Свердловской области
## Именем Российской Федерации

# П О С Т А Н О В Л Е Н И Е
### арбитражного суда апелляционной инстанции

г. Екатеринбург                          Дело № А60-25749/2002-С1
"22" мая 2003 г.

**Апелляционная инстанция Арбитражного суда Свердловской области в составе:**
Председательствующего: Коковой В.С.
судей: Лугфурахмановой Н.Я., Бикмухаметовой Е.А.
при ведении протокола судебного заседания помощником судьи Черновым С.В.
при участии:
от ответчика: Григорьевой Екатерины Леонардовны, адвокат,
рег. № 66/378, удостоверение № 186 от 19 декабря 2002г.,
доверенность № 79 от 2 сентября 2002г.

**Рассмотрела в судебном заседании апелляционную жалобу**

на решение  Арбитражного суда Свердловской области от 22 января 2003г. (судья Микушина Н.В.) по делу №А60-25749/2002-С1 по иску Западворова А.В. к ОАО «Качканарский ГОК «Ванадий» о признании недействительными решения Совета директоров

Истец обратился с исковым требованием к ОАО «Качканарский ГОК «Ванадий» о признании недействительным решения Совета директоров от 28 января 2000г. Возбужденное в связи с требованиями истца дело  по подведомственности   поступило в Арбитражный суд Свердловской области из Качканарского районного суда Свердловской области. Определением Арбитражного суда Свердловской области от 6 декабря

**A - 2280**

2002г. возбуждено производство по делу. Решением от 22 января 2003г. в удовлетворении исковых требований отказано.

Законность и обоснованность решения проверена в порядке статей 258, 266, 268 Арбитражного процессуального кодекса Российской Федерации по апелляционной жалобе истца, который с решением не согласен, просит его отменить по следующим основаниям. По мнению истца, суд не применил нормы права, подлежащие применению, не установив факт ненадлежащего извещения истца о проведении оспариваемого собрания. Суд не исследовал ряд документов, предоставленных истцом: письма Гареева, в которых отрицается факт принятия решения о проведении заочного голосования по повестке дня, бюллетени для голосования по оспариваемому решению, которые изготовлены позже принятия оспариваемого решения Советом директоров. Кроме того, истец полагает, что суд не исследовал заявления Гареева, в которых он указывал, что не давал своего согласия на переизбрание, не выносил решения о заочном голосовании, не принимал оспариваемого решения, которое нарушает права акционера.

Рассмотрев материалы дела, заслушав представителя ответчика, суд установил следующее. Решением Совета директоров от 28 января 2000г. были, в частности прекращения полномочия Председателя Совета Директоров ОАО ГОК «Ванадий» Гареева Д.Р., Председателем Совета Директоров избран Коцуба А.П.; досрочно прекращены полномочия Генерального Директора ОАО ГОК «Ванадий» Хайдарова Д.А., Генеральным директором избран Козицын Л.А.

Между тем, в материалах дела имеется решение от 30 сентября 2002г. Качканарского городского суда Свердловской области по иску Хайдарова Д.А. к Занадворову А.В., Курбанову С-Ш.М., Баркову С.Ф., Коцубе А.П., Джураеву А.Х., Валишеву Р.Р., Гарееву Д.Р., ОАО «Качканарский ГОК «Ванадий» о признании недействительным решения Совета директоров от 28 января 2000г. Данным решением в удовлетворении исковых требований отказано в полном объеме. Это решение оставлено без изменений определением от 24 сентября 2002г. Качканарского районного суда Свердловской области и определением от 19 ноября 2002г. Судебной коллегии по гражданским делам Свердловского областного суда. Таким образом, имеется вступивший в законную силу судебный акт суда общей юрисдикции, принятый по спору между теми же лицами, о том же предмете и по тем же основаниям. Указанные обстоятельства являются основанием для прекращения производства оп делу в соответствии с пунктом 2 части 1 статьи 150 Арбитражного процессуального кодекса РФ.

Решение Арбитражного суда Свердловской области от 22 января 2003г. вынесено без учета решения Качканарского городского суда

Свердловской области от 30 апреля 2002г., что привело к нарушению норм процессуального права. В соответствии с пунктом 4 части 1 статьи 270 Арбитражного процессуального кодекса указанное обстоятельство является основанием для отмены решения арбитражного суда первой инстанции.

Руководствуясь пунктом 2 части 1 статьи 150, статьями 258, 268, 269, пунктом 4 части 1 статьи 270, статьей 271 Арбитражного процессуального кодекса Российской Федерации, арбитражный суд

## ПОСТАНОВИЛ:

Решение Арбитражного суда Свердловской области от 22 января 2003г. отменить, производство по делу № А60-25749/2002-С1 прекратить.

Постановление может быть обжаловано в арбитражный суд кассационной инстанции.

Постановление в полном объеме изготовлено 26 мая 2003г.

Председательствующий                    В.С.  Кокова

Судьи                                   Н.Я.  Лутфурахманова

                                        Е.А.  Бикмухаметова

## DECISION

August 13, 2003

      Solntsevskii Regional Court of the city of Moscow
In composition of the Chair Judge                 Shilnov A.N.
With the secretary                            Pluzhnik N.M.
Having examined in open judicial session the civil case No. 2-704/03
Of the lawsuit of OOO "Inrosmet," OAO "NTMK," ZAO "Standart Trust" against
Ivanov Evgenii Nikolaevich and others of the reclamation of property from illegal
possession –

### RULED:

      With the decision of the Solntsevskii Inter-municipal Court ZAO of the city of
Moscow of 11/30/2001, a decision was issued according to the case and in part denied the
motion of company "Foston Management Limited" of the overturning of the execution of
the decision of the court.

      On 8/22/2002 with a resolution of the Presidium of the Moscow Municipal Court,
the decision of the Solntsevskii Inter-municipal Court ZAO of the city of Moscow in this
part was reversed, and the case was directed for a new examination.

      Ivanov E.N. did not appear, did not present any objections, was informed by the
court in an appropriate manner at his known place of residence.

      Having studied the materials of the case, having heard the representatives of the
company "Foston Management Limited," the representative of OOO "Inrosmet," OAO
"NTMK," ZAO "Standart Trust," the court grants the motion of the overturning of the
execution of the decision of the court.

      With the examination of the case, the court established that on 9/29/2000 a
decision of the Solntsevskii Inter-municipal Court ZAO of the city of Moscow was
issued, in correspondence with which nominal shares of OAO "Kachkanar Ore-Mining
and Processing Enterprise "Vanadii," were written-off from the personal accounts of the
company "Foston Management Limited" and transferred to the personal account of OOO
"Inrosmet" and other companies. In correspondence with this decision, the court of
10/18/2000 103540 (one hundred three thousand five hundred forty) common paperless
shares of OAO "Kachkanar GOK "Vanadii," state-number 62-1p-290 were written off
from the personal accounts of "Foston Management Limited" to OAO "NMTK";
18747610 (eighteen million seven hundred forty seven thousand six hundred ten)
common paperless shares state-number 62-1-1396 to OAO "NMTK"; 1245677 (one
million two hundred forty five thousand six hundred seventy seven) common paperless
shares state-number 62-1396 to OOO "Inrosmet"; 17618254 (seventeen million six
hundred eighteen thousand two hundred fifty four) common paperless shares state-
number 62-1-1396 to ZAO "Standart Trust." With the decision of the panel of judges for
civil matters of the Moscow Municipal Court of 3/30/2001, the decision of the
Solntsevskii Inter-municipal Court ZAO of the city of Moscow is reversed. On
11/30/2001, the Solntsevskii Regional Inter-municipal court ZAO of the city of Moscow
issued a decision in correspondence with which OOO "Inrosmet," OAO "NTMK," ZAO
"Standart Trust" were denied a claim against Ivanov E.N. concerning the reclamation of
shares, the process of the lawsuit of OAO "NTMK," ZAO "Standart Trust," OOO

**A - 2283**

"Inrosmet" of the reclamation of shares was terminated, and the motion of company 'Foston Management Limited" of the overturning of the decision of the court was denied. On 8/22/2002, with a resolution of the Presidim of The Moscow Municipal Court, the decision of the Solntsevskii Inter-municipal court ZAO of the city of Moscow of 30.11.2001 was in part reversed, and the case was directed for a new examination.

According to art. 443 GPK RF, in the event of the reversal of the decision of a court brought into execution, and the adoption of a decision of the court after a new examination of the case of the denial of the lawsuit completely or in part , or a ruling on the termination of the processing of the case or leaving the motion without examination, all that was recovered from the respondent in favor of the plaintiff should be returned to the respondent with the reversal of the decision of the court (overturning of the execution of the decision of the court).

Taking into account that the decision of the Solntsevskii Inter-municipal Court ZAO of the city of Moscow of 9/29/2000 was executed; subsequently this decision was reversed; with the decision of the Solntsevskii Inter-municipal Court ZAO Moscow of 11/30/2001 the lawsuit was denied and the process of the case was terminated, the court considers it necessary to overturn the execution of the decision of the Solntsevskii Inter-municipal Court ZAO of the city of Moscow of 9/29/2000.

The court does not find grounds for granting the motion of the representative of OOO "Inrosmet," OAO "NTMK," ZAO "Standart Trust" of the suspension of the process of the case in connection with the impossibility of examining the case before the issuance of a decision by the Court of Arbitration of the Sverdlovsk Region, as the case in process in the Court of Arbitration of the Sverdlovsk Region is between the indicated parties on different grounds and on a different subject.

On the grounds of the forgoing and governed by art. art. 443-444, 224-225 GPK RF, the court

### RULED:

To overturn the execution of the decision of the Solntsevskii Inter-municipal Court ZAO of the city of Moscow of September 29, 2000 according to the case reversed no. March 30, 2001, the process of which was terminated on August 22, 2002, in correspondence with which:

AOZT "Administration of Company Registers" is to write-off from OAO "NTMK" 103540 (one hundred three thousand five hundred forty) common paperless shares of OAO "Kachkanar GOK "Vanadii," state-number 62-1p-290 to company "Foston Management Limited."

To write-off from OAO "NTMK" 18747610 (eighteen million seven hundred forty seven thousand six hundred ten) common paperless shares state-number 62-1-1396 to the company "Foston Management Limited."

To write-off from OOO "Inrosmet" 1245677 (one million two hundred forty five thousand sic hundred seventy seven) common paperless shares state-number 62-1396 to company "Foston Management Limited."

To write-off from ZAO "Standart Trust" 17618254 (seventeen million six hundred eighteen thousand two hundred fifty four) common paperless shares state-number 62-1-1396 to company "Foston Management Limited."

This decision can be appealed or protested in the Moscow Municipal Court through People's Court within 10 days.

A - 2284

Federal Judge                                        Shilnov A.N.

[signatures]
[stamp]

## ОПРЕДЕЛЕНИЕ

13 августа 2003 года

Солнцевский районный суд г.Москвы
в составе председательствующего судьи                    Шильнова А.Н.
при секретаре                                            Плужник Н.М.
рассмотрев в открытом судебном заседании гражданское дело № 2-704/03
по иску ООО «Инросмет», ОАО «НТМК», ЗАО «Стандарт Траст» к Иванову Евгению Николаевичу и другим об истребовании имущества из чужого незаконного владения, -

УСТАНОВИЛ:

Решением Солнцевского межмуниципального суда ЗАО г.Москвы от 30.11.2001 года вынесено решение по данному делу в части отказа в удовлетворении ходатайства компании «Фостон менеджмент лимитед» о повороте исполнения решения суда.

22.08.2002 года постановлением Президиума Мосгорсуда решение Солнцевского межмуниципального суда ЗАО г.Москвы в этой части отменено, дело направлено на новое рассмотрение.

Иванов Е.Н. не явился, возражений не представил, извещался судом надлежащим образом по известному месту жительства.

Изучив материалы дела, выслушав представителя компании «Фостон менеджмент лимитед», представителя ООО «Инросмет», ОАО «НТМК», ЗАО «Стандарт Траст», суд находит ходатайство о повороте исполнения решения суда подлежащим удовлетворению.

При рассмотрении дела судом было установлено, что 29.09.2000 года вынесено решение Солнцевского межмуниципального суда ЗАО г.Москвы, в соответствии с которым с лицевых счетов компании «Фостон менеджмент лимитед» списаны именные акции ОАО «Качканарский горнообогатительный комбинат «Ванадий»» и зачислены на лицевой счет ООО «Инросмет» и других компаний. В соответствии с данным решением суда 18.10.2000 года с лицевых счетов компании «Фостон менеджмент лимитед» в пользу ОАО «НТМК» списано 103540 (сто три тысячи пятьсот сорок) обыкновенных бездокументарных акций ОАО «Качканарский ГОК «Ванадий»», госномер 62-1п-290; 18747610 (восемнадцать миллионов семьсот сорок семь тысяч шестьсот десять) обыкновенных бездокументарных акций госномер 62-1-1396 в пользу ОАО «НТМК»; 1245567 (один миллион двести сорок пять тысяч шестьсот семьдесят семь) обыкновенных бездокументарных акций госномер 62-1396 в пользу ООО «Инросмет»; 17618254 (семнадцать миллионов шестьсот восемнадцать тысяч двести пятьдесят четыре) обыкновенных бездокументарных акций госномер 62-1-1396 в пользу ЗАО «Стандарт Траст». Определением судебной коллегии по гражданским делам Мосгорсуда от 30.03.2001 года данное решение Солнцевского межмуниципального суда ЗАО г.Москвы отменено. 30.11.2001 года Солнцевским межмуниципальным судом ЗАО г.Москвы вынесено решение, в соответствии с которым ООО «Инросмет», ОАО «НТМК», ЗАО «Стандарт Траст» отказано в иске к Иванову Е.Н. об истребовании акций отказано, производство по иску ОАО «НТМК», ЗАО «Стандарт Траст», ООО «Инросмет» об истребовании акций прекращено, в удовлетворении ходатайства компании «Фостон менеджмент лимитед» о повороте исполнения решения суда отказано. 22.08.2002 года постановлением Президиума Мосгорсуда решение Солнцевского межмуниципального суда ЗАО г.Москвы от 30.11.2001 года в этой части отменено, дело направлено на новое рассмотрение.

В соответствии со ст.443 ГПК РФ, в случае отмены решения суда, приведенного в исполнение, и принятия после нового рассмотрения дела решения суда об отказе в иске полностью или в части либо определения о прекращении производства по делу или об оставлении заявления без рассмотрения ответчику должно быть возвращено все то, что

A - 2287

2

было с него взыскано в пользу истца по отмененному решению суда (поворот исполнения решения суда).

Принимая во внимание, что решение Солнцевского межмуниципального суда ЗАО г.Москвы от 29.09.2000 года приведено в исполнение; впоследствии данное решение отменено; решением Солнцевского межмуниципального суда ЗАО г.Москвы от 30.11.2001 года в иске отказано и производство по делу прекращено, суд считает необходимым произвести поворот исполнения решения Солнцевского межмуниципального суда ЗАО г.Москвы от 29.09.2000 года.

Суд не находит оснований для удовлетворения заявления представителя ООО «Инросмет», ОАО «НТМК», ЗАО «Стандарт Траст» о приостановлении производства по делу в связи с невозможностью рассмотрения данного дела до вынесения решения Арбитражным судом Свердловской области, т.к. в производстве Арбитражного суда Свердловской области находится дело по спору между указанными сторонами по другим основаниям и другому предмету.

На основании вышеизложенного и руководствуясь ст.ст.443-444, 224-225 ГПК РФ, суд, -

### ОПРЕДЕЛИЛ:

Произвести поворот исполнения решения Солнцевского межмуниципального суда ЗАО г.Москвы от 29 сентября 2000 года по данному делу, отмененному 30 марта 2001 года, производство по которому прекращено 22 августа 2002 года, в соответствии с которым:

АОЗТ «Ведение реестров компаний» списать с ОАО «НТМК» 103540 (сто три тысячи пятьсот сорок) обыкновенных бездокументарных акций ОАО «Качканарский ГОК «Ванадий»», госномер 62-1п-290 в пользу компании «Фостон менеджмент лимитед»;

Списать с ОАО «НТМК»18747610 (восемнадцать миллионов семьсот сорок семь тысяч шестьсот десять) обыкновенных бездокументарных акций госномер 62-1-1396 в пользу компании «Фостон менеджмент лимитед»;

Списать с ООО «Инросмет» 1245677 (один миллион двести сорок пять тысяч шестьсот семьдесят семь) обыкновенных бездокументарных акций госномер 62-1396 в пользу компании «Фостон менеджмент лимитед»;

Списать с ЗАО «Стандарт Траст» 17618254 (семнадцать миллионов шестьсот восемнадцать тысяч двести пятьдесят четыре) обыкновенных бездокументарных акций госномер 62-1-1396 в пользу компании «Фостон менеджмент лимитед».

Определение может быть обжаловано или опротестовано в Мосгорсуд через нарсуд в течение 10 дней.

Федеральный судья                                   Шильнов А.Н.

A - 2288

[shield]

## COURT OF ARBITRATION
*SVERDLOVSK PROVINCE*

# RULING

*City of Ekaterinburg*
*March 3, 2004*

Case No. A60-21775/2001-C2

The Honorable **M. L. Skuratovskii**, judge of the Court of Arbitration of Sverdlovsk Province

Assisted in keeping the record of the proceedings by the judge's clerk E. O. Medovshchikova,

Upon hearing the matter under the claim of OAO Nizhnetagilskii metallurgicheskii kombinat [Nizhni Tagil Metallurgical Works, Open Joint Stock Company], OOO Inrosmet [Inrosmet, Limited Liability Company], ZAO Standard Trust [Standard Trust, Closed Joint Stock Company]

Against OOO Ural-Start-LTD, OOO Legat, OOO Akonit, Jaconet Limited, OOO Uralpromopt, OOO Kompaniia City Trade [City Trade Company, LLC], OOO Mareks TK, ZAO Fargos, ZAO Mezant, Amber Star LLC, OOO Jankon, Nimegan Trading Limited, Nexus Products LLC, Foston Management Limited,
Third parties not filing separate claims on behalf of the Defendant: ZAO Kompaniia-registrator Panorama [Panorama Company-Registrar, Closed Joint Stock Company], ZAO Vedenie reestrov kompanii [Company Register Management, Closed Joint Stock Company], Depozitarno-raschetnyi soiuz [Depositary and Clearing Union] Association of Legal Entities, ZAO Depozitarno-kliringovaia kompaniia [Depositary and Clearing Company, Closed Joint Stock Company], OAO Kachkanarskii gorno-obogatitelnyi kombinat Vanadii [Kachkanar Vanadii Mining and Milling Complex, Open Joint Stock Company]

For nullification of transactions

Where the hearing was attended by:

On behalf of the Plaintiffs: E. L. Grigoreva, Esq., power of attorney dated December 25, 2003, on behalf of OOO Inrosmet, E. L. Grigoreva, Esq., power of attorney dated December 25, 2003, on behalf of ZAO Standard Trust.

The Plaintiffs request that the following transactions be nullified: Agreement No. 03/GOK-a for the purchase and sale of stock dated July 30, 1998, Agreement No. 14 for the purchase and sale of stock dated September 25, 1998, Agreement No. 15 for the

A - 2289

purchase and sale of stock dated September 25, 1998, Agreement No. GOK 1 for the purchase and sale of stock dated September 22, 1998, Agreement No. 9 for the purchase and sale of stock dated November 25, 1998, Agreement No. 34 for the purchase and sale of stock dated November 25, 1998, Agreement No. KGOR – RP-12/98 for the purchase and sale of stock dated December 25, 1998, Agreement for the purchase and sale of stock dated January 20, 1999, Agreement for the purchase and sale of stock dated February 11, 1999, Agreement No. 143 for the purchase and sale of stock dated April 5, 1999, Agreement No. 15 for the purchase and sale of stock dated February 11, 1999, Agreement No. 21 for the purchase and sale of stock dated April 7, 1999, Agreement No. 21 for the purchase and sale of stock dated April 7, 1999, Agreement No. KGOK of November 22, 1999 for the purchase and sale of stock, Agreement No. KGOK 2/2/99 for the purchase and sale of stock dated December 17, 1999, Agreement for the purchase and sale of stock dated February 9, 2000, Agreement for the purchase and sale of stock dated August 16, 2000, performed by the Defendants with stock of OAO Kachkanar Vanadii Mining and Milling Complex as contrary to law.

The Plaintiffs have filed a request for adjournment of the case due to the lack of evidence for proper notification of the Defendants located outside of the Russian Federation, i.e. Jaconet Limited, Nexus Products LLC, Foston Management Limited, and Amber Star LLC.

Considering the above circumstance and pursuant to Articles 158, 184 – 185 of the Code of Arbitration Procedure of the Russian Federation, the Court

**RULED:**

To adjourn the hearing of the case until February 9, 2005, at 11:00 a.m.

**Judge:**                                    **M. L. Skuratovskii**
                                             [round seal:]
                                             Court of Arbitration of Sverdlovsk Province,
                                             Russia


[square stamp:]
Copy true to the original.
Specialist:    Rakhmatushina_____
               (Full Name)
Signature:     [signature]
Court of Arbitration of Sverdlovsk Province
Date: March 4, 2004



# АРБИТРАЖНЫЙ СУД
## *СВЕРДЛОВСКОЙ ОБЛАСТИ*
# Определение

*г. Екатеринбург*
*«03» марта 2004г.*                    Дело № А60-21775/2001-С2

Судья Арбитражного суда Свердловской области **Скуратовский М.Л.**,
при ведении протокола судебного заседания помощником судьи: Е.О. Медовщиковой
рассмотрев в судебном заседании дело по иску ОАО «Нижнетагильский металлургический комбинат», ООО «Инросмет», ЗАО «Стандарт Траст»

к ООО «Урал-Старт-ЛТД», ООО «Легат», ООО «Аконит», Компании «Джеконет Лимитед», ООО «Уралпромопт», ООО «Компания «Сити Трейд», ООО «Марэкс ТК», ЗАО «Фаргос», ЗАО «Мэзант», Компании «Амбер Стар Эл.Эл.Си», ООО «Дженкон», Компании «Нимеган Трейдинг Лимитед», Компании «Нэксиз Продакс Эл.Эл. Си», Компании «Фостон Менеджемент Лимитед».
третьи лица, не заявляющие самостоятельных требований на стороне ответчика: ЗАО «Компания-регистратор «Панорама», ЗАО «Ведение реестров компаний», Объединение юридических лиц «Депозитарно-расчетный союз», ЗАО «Депозитарно-клиринговая компания», ОАО «Качканарский горно-обогатительный комбинат «Ванадий»
о признании сделок недействительными

при участии в заседании:

от истцов: от ООО «Инросмет»- Григорьева Е.Л.- адвокат, доверенность от 25.12.2003 года, ЗАО «Стандарт Траст»- Григорьева Е.Л.- адвокат, доверенность от 25.12.2003 года.

Истцы просят признать недействительными сделки: договор купли – продажи акций №03/ГОК-а от 30.07.1998 г., Договор купли-продажи акций № 14 от 22.09.1998 г., Договор купли-продажи акций № 15 от 25.09.1998 г.,

A - 2292

Договор купли-продажи акций №ГОК 1 от 22.09.1998 г., Договор купли-продажи акций 9 от 25.11.1998 г., Договор купли-продажи акций №34 от 25.11.1998 г., Договор купли-продажи акций №KGOR- РП-12/98 от 25.12.1998 г., Договор купли-продажи акций от 20.01.1999 г., Договор купли-продажи акций от 11.02.1999 г., Договор купли-продажи акций №143 от 05.04.1999 г., Договор купли-продажи акций №15 от 11.-2.1999 г., Договор купли-продажи акций №21 от 07.04.1999 г., Договор купли-продажи акций №21 от 07.04.1999 г., Договор купли-продажи акций № KGOK 22/11/1999 г., Договор купли-продажи акций № KGOK-2.2/99 от 17.12.1999 г., Договор купли-продажи акций от 09.02.2000 г., Договор купли-продажи акций от 16.08.2000 г., совершенные ответчиками с акциями ОАО «Качканарский горно-обогатительный комбинат «Ванадий» как противоречащие закону.

Истцы заявили ходатайство об отложение дела в связи с тем, что отсутствуют доказательства надлежащего уведомления ответчиков, находящихся за пределами Российской Федерации, в частности Компании «Джеконет Лимитед», Компании «Нэксиз Продакс Эл.Эл. Си», Компании «Фостон Менеджемент Лимитед», Компании «Амбер Стар Эл.Эл.Си».

Учитывая данное обстоятельство, руководствуясь ст. 158, 184-185АПК РФ, суд

## ОПРЕДЕЛИЛ:

Отложить рассмотрение дела на 09 февраля 2005 года на 11 часов 00 минут.

Судья                                                    М.Л. Скуратовский





**DETERMINATION**
**To Termination Criminal Proceedings**

City of Moscow                                                                          March 31, 2004
(place of rendition)

The investigator of the Investigation Administration of the Investigation Committee with
the Ministry of Internal Affairs of Russia for the Central Federal District, Captain K. V.
Bratikov
_____
        (name of the preliminary investigation authority, rank, last name, initials of the investigator)
upon reviewing the materials of Criminal Case No. 12281_____,
with respect to Oigen Ashenbrenner , accused in committing
                        (last name and initials)
a crime under Article 159, Paragraph 3, Section (b) of the Criminal Code of the Russian
Federation,

**FOUND:**

        These criminal proceedings were initiated on April 24, 2001 by the Chertanovsk
        (indication of the circumstances used as grounds for prosecution, the article, paragraph, section of the
        Criminal Code of the Russian Federation, providing for a crime on the indicia of which criminal
        proceedings were initiated; information regarding the persons subject to prosecution; and any measures of
        restraint applied)
Inter-Regional Prosecutor's Office of the City of Moscow based on indicia of a crime
under Article 159, Paragraph 3, Section (b) of the Criminal Code of the Russian
Federation, based on a statement from Joseph Traum, head of Davis International LLC
with respect to O. Ashenbrenner and ZAO Registrator Panorama [Panorama Registrar,
Closed Joint Stock Company], which have fraudulently sold to a third party stock of
OAO Kachkanarskii gornoobogatitelnyi kombinat Vanadii [Kachkanar Vanadii Mining
and Milling Complex, Open Joint Stock Company] owned by the applicant.

        Preliminary inquiry of the criminal case was carried out from April 24 to May 7,
2001 by the Head of Secret Department of the Department of Internal Affairs of the
Chertanovo-South Region of the Administration of Internal Affairs of the Southern
Administrative District of the City of Moscow, from May 8 to May 13, 2001 – by the
investigator of SCh of the Investigation Administration of the Department of Internal
Affairs of the Southern Administrative District of the City of Moscow, from May 14 to
June 8, 2001 – by the investigator of SCh of the Investigation Administration of the
Department of Internal Affairs of the Western Administrative District of the City of
Moscow.

        On June 8, 2001, the criminal proceedings were terminated by the investigator of
SCh of the Investigation Administration of the Department of Internal Affairs of the
Western Administrative District of the City of Moscow pursuant to Article 5, Par. 1,
Section 2 of the Code of Criminal Procedure of the Russian Soviet Federative Socialist
Republic [RSFSR] in connection with the lack of indicia of a crime in the actions of
Ashenbrenner.

On September 17, 2001, the determination to terminate the criminal proceedings was revoked by the Generals Prosecutor's Office of the Russian Federation and the criminal case was expedited for additional investigation.

On November 12, 2001, the criminal case was taken over for further action by the investigator of SCh of the Investigation Administration of the Department of Internal Affairs of the Northern Administrative District of the City of Moscow and preliminary inquiry proceedings were resumed.

On December 4, 2001, the term of the preliminary inquiry of the criminal case was extended by the Prosecutor of the Northern Administrative District of the City of Moscow to 3 months, i.e. until December 28, 2001.

On December 27, 2001, the criminal proceedings were terminated by the investigator of SCh of the Investigation Administration of the Department of Internal Affairs of the Northern Administrative District of the City of Moscow pursuant to Article 5, Par. 1, Section 2 of the Code of Criminal Procedure of RSFSR, in connection with the lack of indicia of a crime in the actions of Ashenbrenner.

On February 26, 2002, the determination to terminate the criminal proceedings was revoked by the Prosecutor of the Northern Administrative District of the City of Moscow and, on the same date, the preliminary inquiry on the case was resumed by investigator of SCh of the Investigation Administration of the Department of Internal Affairs of the Northern Administrative District of the City of Moscow.

On March 26, 2002, preliminary inquiry proceedings regarding the criminal case were terminated pursuant to Article 195, Section 3 of the Code of Criminal Procedure of RSFSR.

On April 1, 2000, upon instructions from the Prosecutor of the Northern Administrative District of the City of Moscow, preliminary inquiry proceedings regarding the criminal case were resumed and the term of the preliminary inquiry was extended until May 1, 2002.

On May 1, 2002, preliminary inquiry proceedings regarding the criminal case were terminated pursuant to Article 195, Section 3 of the Code of Criminal Procedure of RSFSR.

On May 15, 2002, upon instructions from the Prosecutor of the Northern Administrative District of the City of Moscow, preliminary inquiry proceedings regarding the criminal case were resumed and the term of the preliminary inquiry was extended until June 15, 2002.

On June 14, 2002, the investigator of SCh of the Investigation Administration of the Department of Internal Affairs of the Northern Administrative District of the City of

Moscow brought charges in absentia against O. Ashenbrenner for committing a crime under Article 159, Par. 3, Section (b) of the Criminal Code of the Russian Federation. On the same day, the investigator selected in absentia a measure of restraint against O. Ashenbrenner in the form of confinement under guard.

On June 15, 2002, preliminary inquiry proceedings regarding the criminal case were terminated by the investigator pursuant to Article 195, Section 1 of the Code of Criminal Procedure of RSFSR.

On July 23, 2002, the determination to terminate the preliminary inquiry was revoked by the First Deputy Prosecutor of the City of Moscow as illegal, and the criminal case was expedited for further investigation to SCh of the City Investigation Administration of the City Department of Internal Affairs of the City of Moscow. On the same date, the criminal case was taken over for further action by the investigator of the 4th Department of SCh of the City Investigation Administration of the City Department of Internal Affairs of the City of Moscow, preliminary inquiry was resumed and the First Deputy Prosecutor of the City of Moscow set the deadline for completion of the additional investigation until August 23, 2002.

On August 22, 2002, the Prosecutor's Office of the City of Moscow revoked the termination to summon O. Ashenbrenner in the capacity of a criminal defendant and the determination to select measures of restraint against him as premature and illegal due to the lack of evidentiary support for a fault on the part of O. Ashenbrenner in committing a crime.

On August 23, 2002, criminal proceedings against O. Ashenbrenner were terminated by the investigator of the 4th Department of SCh of the City Investigation Administration of the City Department of Internal Affairs of the City of Moscow pursuant to Article 24, Par. 1, Section 2 of the Code of Criminal Procedure of the Russian Federation.

On October 16, 2002, the determination to terminate criminal proceedings were revoked by the Prosecutor's Office of the City of Moscow, proceedings regarding the criminal case were resumed, and instructions regarding a number of additional investigative actions were given.

On October 24, 2002, the criminal case was taken over for further action by the investigator of the 4th Department of SCh of the City Investigation Administration of the City Department of Internal Affairs of the City of Moscow and, on the same date, the term of the additional inquiry was set by the First Deputy Prosecutor of the City of Moscow at one month, i.e. until November 24, 2002. On the same date, the First Deputy Prosecutor of the City of Moscow revoked the determination to summon O. Ashenbrenner in the capacity of a criminal defendant and of the determination to select a measure of restraint against him in the form of confinement under guard as having been issued by a person without the appropriate authority.

On November 21, 2002, the term of the preliminary inquiry was extended by the First Deputy Prosecutor of the City of Moscow at nine months, i.e. until January 24, 2003.

On January 24, 2004, the investigator of the City Investigation Administration of the City Department of Internal Affairs of the City of Moscow terminated criminal proceedings pursuant to Article 24, Par. 1, Section 2 of the Code of Criminal Procedure of the Russian Federation.

On January 27, 2003, the determination to terminate the criminal proceedings was revoked by the Prosecutor's Office of the City of Moscow and criminal proceedings were resumed; also, instructions were given for the undertaking of a number of additional investigative actions and the criminal case was expedited for organization of the preliminary inquiry to the Investigative Committee of the Ministry of Internal Affairs of Russia.

On March 4, 2003, the criminal case was taken over for further action by the investigator of the Investigation Administration of the Investigative Committee of the Ministry of Internal Affairs of Russia for the Central Federal District, and, on March 11, 2003, the term of the additional inquiry was set by the Deputy General Prosecutor of the Russian Federation at eleven months, i.e. until April 4, 2003.

On March 26, 2003, the term of the preliminary inquiry regarding the case was extended by the Deputy General Prosecutor of the Russian Federation to 14 months, i.e. until July 4, 2003.

On June 19, 2003, an international search warrant was issued against Oigen Ashenbrenner.

On June 3, 2003, the term of the preliminary inquiry on the case was extended by the Deputy General Prosecutor of the Russian Federation to 17 months, i.e. until October 4, 2003.

On September 29, 2003, the term of the preliminary inquiry on the case was extended by the Deputy General Prosecutor of the Russian Federation to 20 months, i.e. until January 4, 2004.

On January 5, 2004, the preliminary inquiry proceedings regarding the criminal case were terminated by the investigator pursuant to Article 208, Par. 1, Section 2 of the Code of Criminal Procedure of the Russian Federation.

On January 12, 2004, the determination to terminate the preliminary inquiry was revoked by the Deputy General Prosecutor of the Russian Federation, the preliminary inquiry was resumed and the term was set at 30 days as of the date of acceptance of the case by the investigator.

On March 1, 2004, the criminal case was taken over for further action by the investigator of the Investigation Administration of the Investigative Committee of the Ministry of Internal Affairs of Russia for the Central Federal District with a deadline for completion of the additional inquiry until April 1, 2004.

**The preliminary inquiry on the case established:** Acting on behalf of OAO Davis International LLC pursuant to a general power of attorney issued on December 3, 1999 by the nominal directors of said company, i.e. Pedro Alvarez Garcia and Sidney Tavarez, entered with the General Director of New Star Group Corp, A. S. Tukatsinskii, into Agreement No. 25-K of October 6, 2000, based on which, O. Ashenbrenner sold on behalf of OAO Davis International LLC 35,106,022 shares of OAO Kachkanarskii GOK Vanadii in the amount of US$ 2,011,086.12. Subsequently, on October 20, 2000, New Star Group Corp. transferred the above monies to an account of OAO Davis International LLC with AKB Moskovskii Delovoi Mir [Moscow Business World, Joint Stock Commercial Bank]. For the above amount realized from said transaction, acting on behalf of and in the interest of OAO Davis International LLC, O. Ashenbrenner purchased, pursuant to Purchase and Sale Agreement No. 97/34 of October 26, 2000, AO Smolenskenergo and AO Udmurtenergo, which, according to the agreement, were transferred into the depositary account of OAO Davis International LLC with AKB MDM on November 8, 2000 and November 3, 2000, respectively, where they are located at present.

When questions in connection with the case, O. Ashenbrenner indicated that, pursuant to a general power of attorney issued on December 3, 1999 by the nominal directors of Davis International LLC, for the period from December 3, 1999 until December 3, 2000, he had been a representative of said company, which in turn had had stock of OAO Kachkanarskii GOK Vanadii. In light of the fact that in 2000 several criminal cases were commenced against the management of OAO Kachkanarskii GOK Vanadii, bankruptcy proceedings were initiated, over a long period of time, the stockholders did not receive dividends, and the price of the stock steadily declined, he had made a decision to sell the stock of OAO Kachkanarskii GOK Vanadii and for the proceeds to purchase for Davis International LLC stock of financially more stable companies.

For this purpose, over a period of two months, he had carried out negotiations with the head of New Star Group Corp., A. S. Tukatsinskii, regarding the sale of stock. Based on the arrangements reached between the parties and considering the actual price of stock of the Kachkanar GOK, Agreement No. 25-K for the purchase and sale of securities was signed on October 6, 2002, in Moscow, according to which he (O. Ashenbrenner), sold on behalf of Davis International LLC 35,106,022 shares of Kachkanar GOK Vanadii to New Star Group Corp. for US$ 2,011,086.12.

On October 20, 2000, New Star Group Corp. had transferred the above amount to the account of Davis International LLC with AKB Moskovskii Delovoi Mir after which the appropriate changes in the stockholders register of Kachkanar GOK had been made.

**A - 2298**

For the proceeds from the sale of stock, he (Ashenbrenner) had purchased for Davis International LLC stock of OAO Smolenskenergo and OAO Udmurtenergo, which he had deposited into the depositary account of Davis International LLC with AKB Moskovskii Delovoi Mir. He had purchased said stock on the recommendation of the head of the department of investment account management of the Brokerage Service Management of the Investment Department of AKB MDM, Iu. V. Zakharov, performed the search for sellers of stock of OAO Smolenskenergo and OAO Udmurtenergo, coordinated the terms and conditions of the transaction with the sellers and prepared Purchase and Sale Agreement No. 97/34 of October 26, 2000. To the best of his recollection, the sellers of the stock had been offshore companies registered in the Republic of Cyprus. He had no communication with the sellers of the stock of OAO Smolenskenergo and OAO Udmurtenergo and the signing of Purchase and Sale Agreement No. 97/34 had been done through Iu. V. Zakharov. He had not been aware of the alleged revocation of this general power of attorney of December 3, 1999, since he (Ashenbrenner) had not been [bottom line cut off] by anybody.

[...] stock of OAO Kachkanarskii GOK Vanadii in the amount of US$ 35 million [he] had not signed and the signature on his behalf in the above agreement had not been placed by him.

The search conducted in Dalex M located at 46 Frunzenskaia naberezhnaia Street, Moscow (where, according to D. Traum, the signing of Agreement No. 010-S of September 28, 2000 for the purchase and sale of 35,106,022 shares of OAO Kachkanarskii GOK Vanadii in the amount of US$ 35 million had taken place) produced three unlined pages of white paper containing signatures appearing to be similar to O. Ashenbrenner's signature. The graphologic examination No. 5010 of December 24, 2001, established that these signatures had been made by O. Ashenbrenner, which confirms the testimony of the latter regarding the possibility for falsification of his signature in the above-mentioned agreement.

A. S. Tukatsinskii, questioned as a witness, confirmed the testimony of O. Ashenbrenner with respect to the signing of Agreement No. 25-K of October 6, 2000, stating that the draft of Agreement No. 25-K had been prepared by L. D. Sokolova, an employee of his company, and the legal evaluation of the agreement had been done by A. S. Konkov, head of the Corporate Finance Department of AKB Rossiiski kredit [Russian Credit Joint Stock Commercial Bank]. A. S. Tukatsinskii also indicated that, after the purchase of 35,106,022 shares from Davis International LLC, the stock had been deposited into the account with AKB Moskovskii Delovoi Mir. Subsequently, the entire package of shares had been sold by him (A. S. Tukatsinskii) in December 2000 to two companies, i.e. Brokko and the brokers of AKB Moskovskii Delovoi Mir through the brokerage and with the assistance of the head of the department of investment account management of the Brokerage Service Management of the Investment Department of AKB MDM, Iu. V. Zakharov.

L. D. Sokolova, questioned as a witness, stated that she indeed had prepared Agreement No. 25-K of October 6, 2000 on the basis of the materials provided to her by A. S. Tukatsinskii. She had never seen O. Ashenbrenner and D. Traum and did not recall the contents of Agreement no. 25-K.

A. S. Konkov, questioned as a witness, stated that he had known A. S. Tukatsinskii for a long time and had maintained a friendly relationship with him and had done him favors on numerous occasions in the form of consultations regarding legal matters, since his background is in international economic relations. In 2000, Tukatsinskii had approached him and asked him to examine a set of documents concerning a certain foreign company. At present, he did not recall the name of said company. He had remembered that said documents had mentioned the name Ashenbrenner, which had appeared to him quite rare as a result of which he had memorized it. Upon review of the set of documents, A. S. Konkov had drawn the conclusion that on the whole the documents had been in order of which he had notified A. S. Tukatsinskii. He (A. S. Konkov) was not familiar with the contents and terms and conditions of the transaction that A. S. Tukatsinskii had intended to perform.

The following documents confirming the circumstances indicated by O. Ashenbrenner, were attached to the materials of the criminal case:

- Copy of Agreement No. 25-K of October 6, 2000 for the sale of 35,106,022 shares of OAO Kachkanarskii GOK Vanadii in the amount of US$ 2,011,086.12 to New Star Group Corp., signed by O. Ashenbrenner on behalf of Davis International LLC;
- Transfer orders confirming the fact of implementation of the agreement – transfer of the above monies into the settlement account of Davis International LLC with AKB Moskovskii Delovoi Mir;
- Copy of Agreement No. 97/34 of October 26, 2000, pursuant to which O. Ashenbrenner, on behalf of and in the interest of Davis International LLC, had purchased from Siente Trading Co. Ltd. 1,080,913 shares of OAO Smolenskenergo and 883,600 shares of OAO Udmurtenergo in the total amount of US$ 2,010,000.
- Receipt from AKB MDM confirming the fact of allocation by O. Ashenbrenner of the stock purchased in the beginning of November 2000 into the depositary account of the owner, Davis International LLC, with AKB Moskovskii Delovoi Mir and the location of 1,080,913 shares of OAO Smolenskenergo and 883,600 shares of OAO Udmurtenergo on the depositary account of Davis International LLC with AKB Moskovskii Delovoi Mir for the period from August 16, 2002 until present.
- Documents received from the Business Administration of MDM, according to which Iurii Vladimirovich Zakharov had been an employee of AKB MDM from January 3, 1994 until July 8, 2002, after which he had been stricken from the master roll in connection with his death.

D. Traum, questioned in the case, stated that he was the sole proprietor of Davis International LLC, which he had purchased especially for the purpose of servicing (retention) of the stock of OAO Kachkanarskii GOK Vanadii and in which he had entered

with the nominal directors of Davis International LLC into agreements for nominal director services provided by the latter. On December 3, 1999, on his instructions, the nominal directors of Davis International LLC had issued a general power of attorney to O. Ashenbrenner for a term of one year with the right to represent the interests of said company and conduct any actions on behalf of the company. In the beginning of October 2000, O. Ashenbrenner, along with him (Traum), located at: 46 Frunzenskaia naberezhnaia Street, Moscow, entered with Holdex LLC into Agreement No. 010-S of September 28, 2000 for the purchase and sale of 35,106,022 shares of OAO Kachkanarskii GOK Vanadii in the amount of US$ 35 million, according to which the stock had been transferred to the ownership of Holdex LLC and it had also been discussed that the general power of attorney of December 3, 1999, granted to O. Ashenbrenner was no longer valid. After signing the agreement, he (Traum) forwarded a copy of the agreement (belonging to the seller, i.e. Davis International LLC) to O. Ashenbrenner for the purpose of preparation of notarized copies of said agreement by the latter. However, O. Ashenbrenner had not carried out his (Traum's) request and, on the contrary, upon signing Purchase and Sale Agreement No. 25-K with the General Director of New Star Group Corp. A. Tukatsinskii on October 6, 2000, sold on behalf of Davis International LLC the above-mentioned stock for US$ 2,011,086.12, which had not been received into the account of the company. In this manner, O. Ashenbrenner had inflicted with his actions a great loss to Davis International LLC. In addition, he (Traum) stated that neither he, nor anybody else from the company, had reported the suspension of O. Ashenbrenner's power of attorney to the company – keeper of the register of stock of OAO Kachkanarskii GOK Vanadii.

The testimony of D. Traum in the portion concerning Agreement no. 010-S of September 28, 2000, confirmed by: the translator of the general power of attorney in the name of O. Ashenbrenner and the representative of Davis International LLC A. B. Zanadvorov; the attorney of Dalex M providing audit services to Davis International LLC V. V. Volnov, and the office manager of OOO Dalex M T. Iu. Khurshudov.

Upon examining of the testimony of D. Traum and the other witnesses, the investigation finds a number of inconsistencies that indicate a discrepancy with the actual course of events, as well as a lack of an objective to implement the provision of Agreement No. 010-5 [sic] of September 28, 2000, as well as unawareness of O. Ashenbrenner about the existence thereof, namely:

-       The investigation found that neither the seller nor the buyer under Agreement No. 010-S had filed an application with the register keeper for entering changes in the stockholders register. The transfer of US$ 35 million into the account of Davis International LLC had not been done;
-       The amount of agreement No. 010-S was US$35 million even though the price of the stock of OAO Kachkanarskii GOK Vanadii determined based on the materials of the criminal case had been no more than RUR1 per share and, accordingly, the stock could not have been sold for more than US$ 2 million.

In the course of the preliminary inquiry, based on the request for legal assistance addressed to the competent US authorities, copies of the founding documents of Davis International LLC were obtained and presented for review to K. N. Semenko, an expert in the area of international law, who, when questioned as a witness, explained that the founding agreement of Davis International LLC sets forth that the management of the company is to be done exclusively by stockholders of the company, i.e. Saturn Investment Group, S.A. and Star Group Finance and Holding Inc., therefore, only these two companies could have revoked the power of attorney granted earlier to O. Ashenbrenner, by means of a joint resolution. It follows from the documents contained in the case file that, as of September 28, 2000, Joseph Traum, had not had the right to manage the company, regardless of the fact that he had been its actual owner (as similar situation arises in [bottom line(s) cut off] to carry out operative management of the company since he is not an executive body). Joseph Traum has acquired powers to manage the company on February 21, 2002, when Saturn Investments Group S.A. and Star Group Finance and Holding Inc. waived their right to a share in Davis International LLC on behalf of the latter. In addition, the power of attorney granted by Davis International LLC to Ashenbrenner indicates that the latter [sic] shall be in effect until December 3, 2000, i.e. until he receives a notification regarding termination of said power of attorney from Davis International LLC itself (its follows from the text of the power of attorney that the company is represented by the following corporate stockholders: Saturn Investments Group S.A. and Star Group Finance and Holding Inc.). No other procedure for signing of a decision to terminate the power of attorney by anybody other than the representatives of the corporate stockholders is envisioned. Therefore, Joseph Traum had not been authorized to revoke the power of attorney of Oigen Ashenbrenner, including by means of signing Agreement No. 010-S of September 28, 2000, for the purchase and sale of securities. If, as of the date of signing of said agreement, Joseph Traum had not had a general power of attorney from Davis International LLC, in fact he had not had the right to sign it on behalf of the company.

Based on the above, examining the conclusive evidence obtained in the course of the preliminary inquiry of this criminal case, it was established that the actions of O. Ashenbrenner associated with the sale of stock of OAO Kachkanarskii GOK Vanadii and the purchase, for the proceeds from said transaction, of stock of OAO Smolenskenergo and OAO Udmurtenergo, are in compliance with the powers granted to O. Ashenbrenner pursuant to the general power of attorney issued on December 3, 1999 by the nominal directors of Davis International LLC, both transactions involved equal amounts, and the price of stock of OAO Kachkanarskii GOK Vanadii, OAO Smolenskenergo, and OAO Udmurtenergo corresponded to the going market prices as of the time of the transactions.

In this manner, taking into consideration the lack, in the materials of the case, of any restrictions of the powers of O. Ashenbrenner with respect to disposition of assets of Davis International LLC during the period under consideration, the actions of O. Ashenbrenner associated with the sale of stock of OAO Kachkanarskii GOK Vanadii and with the purchase, for the proceeds from said transaction, of stock of OAO Smolenskenergo and OAO Udmurtenergo have not caused any pecuniary loss to the

company represented by him and, accordingly, do not have the indicia of the crime under Article 165 of the Criminal Code of the Russian Federation.

When examining the aggregate of the evidence gathered in this case, the investigation has reached the conclusion that the actions of O. Ashenbrenner lack the constituent elements of the crime under Article 159, Par. 3, Section b of the Criminal Code of the Russian Federation because the latter had not had the criminal intent to misappropriate the stock and funds of Davis International LLC, i.e. the criminal intent to perform with a corrupt motive an illegal, non-repayable expropriation or circulation of the assets to his own benefit causing damage to Davis International LLC. The actions for the sale of stock of OAO Kachkanarskii GOK Vanadii, including the determination of the amount of the transaction, as well as the reasonableness of the purchase of stock of OAO Smolenskenergo and OAO Udmurtenergo were undertaken by O. Ashenbrenner during the term of the general power of attorney (December 3, 1999 – December 3, 2000), they were covered by the powers under the general power of attorney issued to him by the nominal directors of Davis International LLC, and do not contain the constituent elements of a criminally liable act.

Based on the above and pursuant to Article 212 and 213 of the Code of Criminal Procedure of the Russian Federation, [the investigator]

**DETERMINED:**

1. To terminate criminal case No. <u>12281</u> (criminal prosecution) against the suspect (defendant) <u>Oigen Ashenbrenner, born on August 18, 1970, German</u>
(full name, date of birth)
Native of <u>the City of Balkhash, Kazakh Soviet Socialist Republic</u>
Citizen of <u>Germany</u>, residing at: 4-23 Zhukovka Village, Moscow Province, previously not tried on the grounds of <u>Article 24, Par. 1, Section 2 of the Code of Criminal Procedure of the Russian Federation</u>
(article, paragraph, section pursuant to which the criminal proceedings (criminal prosecution) are (is) being terminated)

2. To revoke the measure of restraint (procedural constraint) <u>confinement under guard</u>
(specify)
of <u>Oigen Ashenbrenner.</u>
(last name, initials)

3. Pursuant to Article 134 of the Code of Criminal Procedure of the Russian Federation, to admit the right of <u>Oigen Ashenbrenner</u>
(full name)
to rehabilitation and to explain to him the procedure for redress of the injury associated with criminal prosecution.

4. Exhibits _____
(specify and indicate the essence of the decision rendered)

A copy of this determination shall be sent to <u>O. Ashenbrenner</u>
(person in relation to whom the criminal proceedings (criminal prosecution) are (is) being terminated)
the injured person <u>D. Traum</u>_____, the civil plaintiff _____
(last name, initials)                          (last name, initials)
the civil defendant _____
(last name, initials)
<u>the Deputy General Prosecutor of the Russian Federation</u>
(name of the prosecution authority, class, rank, last name, initials)

The injured person, civil plaintiff, has been explained his/her right to file a civil lawsuit[1].

This determination can be appealed before the prosecutor and in court according to the procedure set forth in Chapter 16 of the Code of Criminal Procedure of the Russian Federation.

Investigator:                                      [signature]_____
(signature)

**A - 2304**

I do not object to the termination of the criminal proceedings (criminal prosecution) pursuant to _____ of the Code of Criminal Procedure of the Russian
               (article, paragraph, section)
Federation[2].

Suspect (defendant):                                      _____
                                                           (signature)

Injured person:                                           _____
                                                           (signature)

---

[1] This section is to be filled out in the instances provided for in Article 213, Par. 4 of the Code of Criminal Procedure of the Russian Federation.
[2] This section is to be filled out in the event of termination of the criminal proceedings on the grounds provided for in Article 24, Par. 1, Sections 3 and 6, Articles 25, 26, and 28, and Article 27, Par. 1, Sections 3 and 6 – 8 of the Code of Criminal Procedure of the Russian Federation.

**ПОСТАНОВЛЕНИЕ**

о прекращении уголовного дела

<u>город Москва</u>                                                                "3]" марта 2004 года
(место составления)

Следователь    <u>следственного управления Следственного комитета при МВД</u>
                              (наименование органа предварительного следствия,
<u>России по Центральному федеральному округу капитан юстиции Братиков К. В.</u>
                              классный чин или звание, фамилия, инициалы следователя)
рассмотрев материалы уголовного дела № <u>12281</u>                            ,
в отношении <u>Ащенбреннера Ойгена,</u> обвиняемого в совершении
                        (фамилия, инициалы)
преступления, предусмотренного п. «б» ч. 3 ст. <u>159</u> УК РФ,

**УСТАНОВИЛ:**

<u>    Настоящее уголовное дело возбуждено 24 апреля 2001 года Чертановской межрайонной</u>
(излагаются обстоятельства, послужившие поводом и основанием для
<u>прокуратурой г. Москвы по признакам преступления, предусмотренного п. «б» ч.3 ст. 159 УК</u>
возбуждения уголовного дела, пункт, часть, статья Уголовного кодекса Российской Федерации,
<u>РФ, по заявлению руководителя компании «Дэвис Интернешил Эл.Эл.Си» Джозефа Траума в</u>
предусматривающие преступление, по признакам которого было возбуждено
<u>отношении Ащенбреннера О. и компании ЗАО «Регистратор «Панорама», которые мошенни-</u>
                              данных о лицах, в отношении которых осуществлялось
<u>ческим путем незаконно продали третьему лицу акции ОАО «Кочканарский горно-</u>
<u>обогатительный комбинат «Ванадий», принадлежащие компании заявителя.</u>
                  уголовное преследование, применявшиеся меры пресечения)


    <u>Предварительное расследование уголовного дела проводили: с 24 апреля по 7 мая 2001 г.</u>
<u>начальник СО при ОВД района «Чертаново-Южное» УВД ЮАО г.Москвы, с 8 мая по 13 мая 2001</u>
<u>года - следователь СЧ СУ при УВД ЮАО г. Москвы, с 14 мая по 8 июня 2001 года - следователь СЧ</u>
<u>СУ при УВД ЗАО г. Москвы.</u>
    <u>8 июня 2001 года уголовное дело прекращено следователем СЧ СУ при УВД ЗАО г. Москвы по</u>
<u>основаниям п.2 ч.1 ст.5 УПК РСФСР, в связи с отсутствием в действиях Ащенбреннера признаков</u>
<u>состава преступления.</u>
    <u>17 сентября 2001 года постановление о прекращении уголовного дела отменено Генеральной</u>
<u>прокуратурой РФ и уголовное дело направлено для дополнительного расследования.</u>
    <u>12 ноября 2001 года уголовное дело принято к производству следователем СЧ СУ при УВД САО</u>
<u>г. Москвы и производство предварительного расследования возобновлено.</u>
    <u>4 декабря 2001 года срок предварительного следствия по уголовному делу продлен прокурором</u>
<u>САО г. Москвы до 3-х месяцев, то есть до 28 декабря 2001 года.</u>
    <u>27 декабря 2001 года уголовное дело прекращено следователем СЧ СУ при УВД САО г. Москвы</u>
<u>по основаниям п.2 ч.1 ст.5 УПК РСФСР, в связи с отсутствием в действиях Ащенбреннера признаков</u>
<u>состава преступления.</u>
    <u>26 февраля 2002 года постановление о прекращении уголовного дела отменено прокурором</u>
<u>САО г. Москвы, в тот же день предварительное следствие по делу возобновлено следователем СЧ</u>
<u>СУ при УВД САО г. Москвы.</u>
    <u>26 марта 2002 года производство предварительного следствия по уголовному делу</u>
<u>приостановлено по основаниям п.3 ст.195 УПК РСФСР.</u>
    <u>01 апреля 2002 года по указанию прокурора САО г. Москвы производство предварительного</u>
<u>следствия по уголовному делу возобновлено и срок предварительного следствия установлен до 01</u>
<u>мая 2002 г.</u>
    <u>01 мая 2002 года производство предварительного следствия по уголовному делу приостановлено</u>
<u>по основаниям п.3 ст.195 УПК РСФСР.</u>

15 мая 2002 года по указанию прокурора САО г. Москвы производство предварительного следствия по уголовному делу возобновлено и срок предварительного следствия установлен до 15 июня 2002 года.

14 июня 2002 года следователем СЧ СУ при УВД САО г. Москвы заочно предъявлено обвинение Ашенбреннеру О. в совершении преступления, предусмотренного п. «б» ч.3 ст. 159 УК РФ. В тот же день следователем заочно избрана мера пресечения Ашенбреннеру О. в виде заключения под стражу.

15 июня 2002 года производство предварительного следствия по уголовному делу приостановлено следователем по основаниям п.1 ст. 195 УПК РСФСР.

23 июня 2002 года постановление о приостановлении предварительного следствия отменено первым заместителем прокурора г. Москвы как незаконное, и уголовное дело направлено для дальнейшего расследования в СЧ ГСУ при ГУВД г. Москвы. В тот же день уголовное дело принято к производству следователем 4 отдела СЧ ГСУ при ГУВД г. Москвы, предварительное следствие возобновлено и первым заместителем прокурора г. Москвы установлен срок дополнительного расследования до 23 августа 2002 года.

22 августа 2002 года прокуратурой г. Москвы отменено постановление о привлечении Ашенбреннера О. в качестве обвиняемого и постановление об избрании в отношении него меры пресечения, как вынесенные преждевременно и незаконно, в связи с недоказанностью вины Ашенбреннера О. в совершении преступления.

23 августа 2002 года уголовное дело в отношении Ашенбреннера О. прекращено следователем 4 отдела СЧ ГСУ при ГУВД г. Москвы по основанию, предусмотренному п.2 ч. 1 ст. 24 УПК РФ.

16 октября 2002 года постановление о прекращении уголовного дела отменено прокуратурой г. Москвы и возобновлено производство по уголовному делу, а так же даны указания о производстве ряда дополнительных следственных действий.

24 октября 2002 года уголовное дело принято к производству следователем 4 отдела СЧ ГСУ при ГУВД г. Москвы и в этот же день срок дополнительного следствия установлен первым заместителем прокурора г. Москвы до одного месяца, то есть до 24 ноября 2002 года. В этот же день первым заместителем прокурора г. Москвы постановление об отмене постановления о привлечении Ашенбреннера О. в качестве обвиняемого и постановления об избрании в отношении него меры пресечения в виде заключения под стражу отменено, как вынесенное лицом, не обладающим соответствующими полномочиями.

21 ноября 2002 года срок предварительного следствия продлен первым заместителем прокурора г. Москвы до десяти месяцев, то есть до 24 января 2003 года.

24 января 2003 года следователем ГСУ при ГУВД г. Москвы уголовное дело прекращено по основаниям п. 2 ч. 1 ст. 24 УПК РФ.

27 января 2003 года постановление о прекращении уголовного дела отменено прокуратурой г. Москвы и возобновлено производство по уголовному делу, а так же даны указания о производстве ряда дополнительных следственных действий, в уголовное дело направлено для организации предварительного расследования в СК при МВД России.

04 марта 2003 года уголовное дело принято к производству следователем СУ СК при МВД России по ЦФО. 11 марта 2003 года срок дополнительного следствия установлен заместителем Генерального прокурора РФ до одиннадцати месяцев, то есть до 04 апреля 2003 года.

26 марта 2003 года срок предварительного следствия по делу заместителем Генерального прокурора Российской Федерации продлен до 14 месяцев, то есть до 04 июля 2003 года.

19 июня 2003 года Ашенбреннер Ойген объявлен в международный розыск.

03 июля 2003 года срок предварительного следствия по делу заместителем Генерального прокурора Российской Федерации продлен до 17 месяцев, то есть до 04 октября 2003 г.

29 сентября 2003 года срок предварительного следствия по делу заместителем Генерального прокурора Российской Федерации продлен до 20 месяцев, то есть до 04 января 2004 года.

05 января 2004 года производство предварительного следствия по уголовному делу приостановлено следователем по основаниям п.2 ч. 1 ст.208 УПК РФ.

12 января 2004 года постановление о приостановлении предварительного следствия отменено заместителем Генерального прокурора Российской Федерации, предварительное следствие возобновлено, с установлением срока в 30 суток с момента принятия дела следователем.

01 марта 2004 года уголовное дело принято к производству следователем СУ СК при МВД России по ЦФО со сроком дополнительного расследования до 01 апреля 2004 года.


**Предварительным расследованием по делу установлено:** Ашенбреннер О., действуя от имени компании ОАО «Дэвис Интернэшнл Эл. Эл. Си», на основании генеральной доверенности, выданной 03 декабря 1999 года номинальными директорами указанной компании, а именно Педро Альварес Гарсия и Сидни Таварез, заключил с генеральным директором компании «Нью Стар Групп Корп.» Тукацинским А.С. договор купли-продажи № 25-К от 06 октября 2000 года, по которому реализовал от имени компании ОАО «Дэвис Интернэшнл Эл. Эл. Си» 35106022 акций ОАО «Качканарский ГОК «Ванадий» на сумму 2011086,12 долларов США. После этого, указанные денежные средства 20 октября 2000 года компанией «Нью Стар Групп Корп.» были перечислены на счет компании ОАО «Дэвис Интернэшнл Эл. Эл. Си» в АКБ «Московский Деловой Мир». На вырученную от данной сделки указанную выше сумму, Ашенбреннер О., действуя от имени и в интересах ОАО «Дэвис Интернэшнл Эл. Эл. Си», приобрел по договору купли-продажи № 97/34 от 26 октября 2000 года АО «Смоленскэнерго» и АО «Удмуртэнерго», которые, согласно договора, были переведены на депозитарный счет ОАО «Дэвис Интернэшнл Эл. Эл. Си» в АКБ «МДМ» соответственно 08.11.2000 г. и 03.11.2000 г., где находятся по настоящее время.

Допрошенный по делу Ашенбреннер О. показал, что на основании генеральной доверенности, выданной 03 декабря 1999 года номинальными директорами компании «Дэвис Интернэшнл Эл.Эл.Си.», в период времени с 03 декабря 1999 года по 03 декабря 2000 года, являлся представителем указанной компании, которая в свою очередь имела в собственности акций ОАО «Качканарский ГОК «Ванадий». Учитывая, что в 2000 г. против руководства ОАО «Качканарский ГОК «Ванадий» было возбуждено несколько уголовных дел, введена процедура банкротства, на протяжении длительного времени не получали дивидендов и котировки акций неуклонно снижались, им было принято решение продать акции ОАО «Качканарский ГОК «Ванадий» и на полученные деньги приобрести для компании «Дэвис Интернэшнл Эл.Эл.Си.» акции более устойчивых организаций в финансовом отношении.

С этой целью, на протяжении двух месяцев он вел переговоры с руководителем компании «Нью Стар Групп Корп.» Тукацинским А.С. о продаже акций. На основе достигнутого соглашения сторон, с учетом реальной котировки акций «Качканарского ГОК», 06.10.2002 г. в г. Москве был заключен договор купли-продажи ценных бумаг № 25-К, согласно которому он (Ашенбреннер О.) от лица компании «Дэвис Интернэшнл Эл.Эл.Си.» продал 35 106 022 акций «Качканарского ГОК «Ванадий» компании «Нью Стар Групп Корп.» за 2 011 086. 12 долларов США.

20.10.2000 г. компания «Нью Стар Групп» перечислила вышеуказанную сумму на счет компании «Дэвис Интернэшнл Эл.Эл.Си.» в АКБ «Московский Деловой Мир», после чего были внесены соответствующие изменения в реестр акционеров «Качканарского ГОК».

На полученные от реализации акций денежные средства, он (Ашенбреннер) приобрел для компании «Дэвис Интернэшнл Эл.Эл.Си» акции ОАО «Смоленскэнерго» и ОАО «Удмуртэнерго», которые разместил на счете ДЕПО компании «Дэвис Интернэшнл Эл.Эл.Си» в АКБ «Московский Деловой Мир». Эти акции он купил по рекомендации начальника отдела инвестиционных счетов Управления брокерского обслуживания Инвестиционного департамента АКБ «МДМ» Захарова Ю.В., который осуществлял поиск продавцов акций ОАО «Смоленскэнерго» и ОАО «Удмуртэнерго», согласовывал с продавцами условия сделки и подготовил договор купли-продажи №97/34 от 26.10.00 г. Насколько он помнит, продавцами акций являлись офшорные фирмы, зарегистрированные в республике Кипр. С владельцами акций ОАО «Смоленскэнерго» и ОАО «Удмуртэнерго» он не общался, подписание договора купли-продажи №97/34 осуществлялось через Захарова Ю.В. О том, что генеральная доверенность от 03 декабря 1999 года у него (Ашенбреннера) якобы отозвана, он не знал, т.к. его (Ашенбреннера) никто об этом не

акций ОАО «Качканарский ГОК «Ванадий» на сумму 35 миллионов долларов США не заключал, подпись от его имени в указанном договоре выполнена не им.

В ходе проведенного обыска в компании «Данэкс-М» по адресу: г. Москва, Фрунзенская набережная, д. 46 (где по словам Д. Траума состоялось подписание договора №010-S от 28 сентября 2000 года купли-продажи 35106022 акций ОАО «Качканарский ГОК «Ванадий» на сумму 35 миллионов долларов США), обнаружено три нелинованных листа белой бумаги с имеющимися на них подписями, внешне сходными с подписью О.Ашенбреннера. Проведенной по делу почерковедческой экспертизой №5010 от 24 декабря 2001 года установлено, что эти подписи выполнены Ашенбреннером О., что подтверждает показания последнего о возможности подделки его подписи в указанном договоре.

Допрошенный в качестве свидетеля Тукацинский А.С. подтвердил показания Ашенбреннера О. в части, касающейся заключения договора №25-к от 06 октября 2000 года, сообщив, что проект договора №25-К подготовила сотрудник его компании Соколова Л.Д., а правовую оценку договора осуществлял начальник корпоративно-финансового управления АКБ «Российский Кредит» Коньков А.С. Так же Тукацинский А.С. показал, что после покупки 35106022 акций у компании «Дэвис Интернешнл Эл.Эл.Си», они были размещены на счете АКБ «Московский Деловой Мир». Далее весь пакет акций был продан им (Тукацинским А.С.) в декабре 2000 года двум компаниям: «Брокко» и брокерам АКБ «Московский Деловой Мир» при посредничестве и с помощью начальника отдела учета инвестиционных счетов Управления брокерского обслуживания Инвестиционного департамента АКБ «МДМ» Захарова Ю.В.

Допрошенная в качестве свидетеля Соколова Л.Д. показала, что договор №25-К от 06.10.00 г. она действительно подготовила на основе тех материалов, которые ей предоставил Тукацинский А.С. Ашенбреннера О. и Д. Траума она никогда не видела, содержания договора №25-К не помнит.

Допрошенный в качестве свидетеля Коньков А.С. показал, что давно знает Тукацинского А.С., с которым поддерживает дружеские отношения, и неоднократно оказывал ему услуги в виде консультаций на правовые темы, так как имеет специальность экономист-международник. В 2000 году Тукацинский обратился к нему и попросил проверить комплект документов, касающихся какой-то иностранной фирмы. Название этой фирмы он в настоящий момент не помнит. Он запомнил, что в этих документах фигурировала фамилия Ашенбреннер, которая ему показалась достаточно редкой, поэтому он ее и запомнил. Просмотрев комплект документов, Коньков А.С. сделал вывод, что документы в целом в порядке, о чем и сообщил Тукацинскому А.С. Содержание и условия сделки, которую собирался совершить Тукацинский А.С., ему (Конькову А.С.) не известны.

К материалам уголовного дела приобщены документы, подтверждающие обстоятельства, указанные О. Ашенбреннером:

- копия договора №25-к от 06 октября 2000 года о продаже компании «Нью Стар Групп Корп.» 35106022 акций ОАО «Качканарский ГОК «Ванадий» на сумму 2011086.12 долларов США, заключенного О. Ашенбреннером, от имени компании «Дэвис Интернешнл Эл.Си»;

- платежные поручения, подтверждающие факт исполнения договора - перечисление указанных денежных средств на расчетный счет компании «Дэвис Интернешнл Эл.Эл.Си» в АКБ «Московский Деловой Мир»;

- копия договора № 97/34 от 26 октября 2000 года, в соответствии с которым О.Ашенбреннер, от имени и в интересах компании «Дэвис Интернешнл Эл.Эл.Си» приобрел у компании «Sjente Trading Co Ltd» 1080913 акций ОАО «Смоленскэнерго» и 883600 акций ОАО «Удмуртэнерго» на общую сумму 2010000 долларов США;

- справка АКБ «МДМ», подтверждающая факт размещения Ашенбреннером О. приобретенных акций в начале ноября 2000 года на счете ДЕПО собственника - компании «Дэвис Интернешнл Эл.Эл.Си» в АКБ «Московский Деловой Мир» и нахождение их с 16.08.2002 года по настоящее время 1080913 акций ОАО «Смоленскэнерго» и 883600 акций ОАО «Удмуртэнерго». на счете ДЕПО компании «Дэвис Интернешнл Эл.Эл.Си» в АКБ «Московский Деловой Мир»;

- документы, полученные из Управления делами АКБ «МДМ», согласно которым Захаров Юрий Владимирович с 01.03.94 г. по 08.07.02 г. являлся сотрудником АКБ «МДМ», а затем исключен из списка личного состава в связи со смертью.

Допрошенный по делу Д. Траум показал, что он является единственным собственником компании «Дэвис Интернешнл Эл.Эл.Си», которую он приобрел специально для обслуживания (удержания) акций ОАО «Качканарский ГОК «Ванадий» и в которой он заключил с номинальными директорами компании «Дэвис Интернешнл Эл.Эл.Си» договоры об оказании последними услуг номинальных директоров, 03 декабря 1999 года, по его поручению, номинальными директорами компании «Дэвис Интернешнл Эл.Эл.Си» выдана генеральная доверенность Ашенбреннеру О. сроком на один год с правом представлять интересы указанной компании, совершать от имени компании любые действия. В начале октября 2000 года О. Ашенбреннер, совместно с ним (Траумом), находясь по адресу: г. Москва, Фрунзенская набережная, д.46, заключил с компанией «Холдэкс Эл.Эл.Си» договор № 010-S от 28 сентября 2000 года купли-продажи 35106022 акций ОАО «Качканарский ГОК «Ванадий» на сумму 35 миллионов долларов США, по которому акции переходили в собственность компании «Холдэкс Эл.Эл.Си», а так же оговаривалось то, что генеральная доверенность от 3 декабря 1999 года на имя О. Ашенбреннера прекращает свое действие. После подписания договора, он (Траум) передал экземпляр договора (принадлежащий продавцу - компании «Дэвис Интернешнл Эл.Эл.Си») О. Ашенбреннеру с целью изготовления последним нотариально заверенных копий указанного договора. Однако О. Ашенбреннер его (Траума) поручение не выполнил, а напротив, заключив с генеральным директором компании «Нью Стар Групп Корп.» А. Тукацинским 06 октября 2000 года договор купли-продажи № 25-к, реализовал от имени компании «Дэвис Интернешнл Эл.Эл.Си» вышеуказанные акции на сумму 2011086.12 долларов США, которые на счет компании не поступили. Таким образом, О. Ашенбреннер причинил своими действиями крупный ущерб компании «Дэвис Интернешнл Эл.Эл.Си». Кроме того, он (Траум) показал, что ни он, ни кто-либо другой из компании, не заявлял в компанию держатель реестра акций ОАО «Качканарский ГОК «Ванадий» об отзыве доверенности у Ашенбреннера О.

Показания Д. Траума, в части, касающейся заключения договора № 010-S от 28 сентября 2000 года, подтвердили: переводчик генеральной доверенности на имя О. Ашенбреннера и представитель компании «Дэвис Интернешнл Эл.Эл.Си» Завадворов А.В.; юрист компании «Далэкс-М», оказывающий аудиторские услуги компании «Дэвис Интернешнл Эл.Эл.Си», Вольнов В.В.; распорядитель офиса ООО «Далэкс-М», Хуршудов Т.Ю.

Анализируя показания Д. Траума и других свидетелей, следствие усматривает в них ряд противоречий, свидетельствующих об их несоответствии действительному ходу событий, а также отсутствие цели реализовать положения договора №010-S от 28 сентября 2000 года, и неосведомленности Ашенбреннера О. в его существовании, а именно:

- следствием установлено, что ни продавец, ни покупатель по договору №010-S не обращались к реестродержателю с заявлением о внесении изменений в реестр акционеров. Перечисления 35 млн. долларов США на счет компании «Дэвис Интернешнл Эл. Эл. Си,» не было осуществлено;

- сумма договора №010-S составляла 35 млн. долларов США, хотя, установленная материалами уголовного дела цена акций ОАО «Качканарский ГОК «Ванадий» составляла не более 1 рубля за одну акцию, в соответствии с которой они могли быть реализованы не более чем за 2 млн. долларов США.

В ходе предварительного следствия на основании поручения об оказании правовой помощи направленного в компетентные органы США, были получены копии учредительных документов компании, «Дэвис Интернешнл Эл.Эл.Си», которые были для обозрения представлены специалисту в области международного права Семенко К.Н., который будучи допрошенным в качестве свидетеля пояснил, что учредительным договором компании «Дэвис Интернейшнл», предусмотрено, что управление компанией осуществляется исключительно участниками компании, а именно: компанией «Сатурн инвестмент Групп С.А.» и компанией «Стар Групп Файнэнс энд Холдинг инк», следовательно отменить ранее выданную доверенность Ашенбреннеру могли только две указанные компании путем совместной резолюции. Из имеющихся в деле документов следует, что по состоянию на 28.09.00 Джозеф Траум не имел права управлять компанией, несмотря на то, что являлся ее фактическим владельцем (похожая ситуация возникает в Российской)

A - 2311

осуществлять оперативное управление компанией, т.к. не является исполнительным органом). Полномочия управлять компанией Джозеф Траум приобрел 21.02.2002, когда компания «Сатурн инвестментс Групп С.А.» и компания «Стар Групп Файненс энд Холдинг инкю отказались в пользу последнего от прав на долю в компании «Дэвис Интернейшнл Эл.Эл.Си.». Кроме того, в доверенности выданной компанией «Дэвис Интернейшнл Эл.Эл.Си.» Ашенбреннеру, указано, что последняя действует до 03.12.00 или до тех пор пока он не получит уведомление о прекращении данной доверенности от самой компании «Дэвис Интернейшнл Эл.Эл.Си.» (как следует из текста доверенности, компанию представляют корпоративные участники: компания «Сатурн инвестментс Групп С.А.» и компания «Стар Групп Файненс энд Холдинг инкю). Иной порядок подписания кем-либо другим, кроме представителей корпоративных участников, решения о прекращении доверенности не предусмотрен. Таким образом, Джозеф Траум не был правомочен отзывать доверенность Ойгена Ашенбреннера, в том числе путем подписания договора купли-продажи ценных бумаг №010-S от 28 сентября 2000 года. В случае если Джозеф Траум не имел на дату подписания указанного договора генеральной доверенности от компании «Дэвис Интернейшнл Эл.Эл.Си.», то фактически он не имел права его подписывать, выступая от имени компании.

На основании изложенного, оценивая неоспоримые доказательства, добытые в ходе предварительного расследования настоящего уголовного дела, установлено, что действия Ашенбреннера О. по реализации акций ОАО «Качканарский ГОК «Ванадий» и покупке на полученные от данной операции денежные средства акций ОАО «Смоленскэнерго» и ОАО «Удмуртэнерго», соответствуют полномочиям, предоставленным Ашенбреннеру О. генеральной доверенностью, выданной 03 декабря 1999 года номинальными директорами компании «Дэвис Интернешнл Эл.Эл.Си», обе сделки равны по сумме, а цена акций ОАО «Качканарский ГОК «Ванадий», ОАО «Смоленскэнерго», ОАО «Удмуртэнерго» соответствовала существующим рыночным ценам на момент совершения сделок.

Таким образом, учитывая отсутствие в материалах дела каких-либо ограничений полномочий Ашенбреннера О. по распоряжению имуществом компании «Дэвис Интернешнл Эл.Эл.Си» в исследуемый период, действия Ашенбреннера О. по реализации акций ОАО «Качканарский ГОК «Ванадий» и покупке на полученные от данной операции денежные средства акций ОАО «Смоленскэнерго» и ОАО «Удмуртэнерго» не причинили никакого имущественного ущерба представляемой им компании и, соответственно, не содержат признаков преступления, предусмотренного ст. 165 УК РФ.

Оценивая в совокупности собранные по делу доказательства, следствие приходит к выводу о том, что в действиях О. Ашенбреннера отсутствует состав преступления, предусмотренный п. «б» ч.3 ст. 159 УК РФ, так как у последнего отсутствовал умысел на хищение акций и денежных средств компании «Дэвис Интернешнл Эл.Эл.Си», то есть умысел на совершенное с корыстной целью противоправное, безвозмездное изъятие или обращение имущества в свою пользу, причинившее ущерб компании «Дэвис Интернешнл Эл.Эл.Си». Совершение Ашенбреннером О. действий по реализации акций ОАО «Качканарский ГОК «Ванадий», в том числе установление суммы сделки, а так же целесообразность приобретения акций ОАО «Смоленскэнерго» и ОАО «Удмуртэнерго», проводилось в период действия генеральной доверенности (03 декабря 1999 года - 03 декабря 2000 года), охватывалось полномочиями генеральной доверенности, выданной ему номинальными директорами компании «Дэвис Интернешнл Эл.Эл.Си.» и не содержат состава уголовно-наказуемого деяния.

На основании изложенного и руководствуясь ст. 212 и 213 УПК РФ,

# ПОСТАНОВИЛ:

1. Прекратить уголовное дело № 12281 (уголовное преследование) в отношении подозреваем___ (обвиняемого) Ашенбреннера Ойгена, 18 августа 1970 года рождения, немца

(фамилия, имя, отчество, дата рождения)

уроженца г. Балхаш Казахской ССР

гражданина  Германии, проживающего по адресу: Московская область, дер.Жуковка, 4-23, ранее не судимого по основанию, предусмотренному  п.2 ч._I ст.24 УПК РФ

(пункт, часть, статья, на основании которых прекращается  уголовное дело ( уголовное преследование)

2. Меру пресечения (процессуального принуждения)  заключение под стражу

(какую именно)

Ашенбреннера Ойгена отменить.

(фамилия, инициалы)

3. Признать в соответствии со ст.134. УПК РФ за Ашенбреннером О.

(фамилия, имя, отчество)

право на реабилитацию и разъяснить ему порядок возмещения вреда, связанного с уголовным преследованием.

4. Вещественные доказательства _____

(какие именно и суть принятого решения)

Копия      настоящего      постановления      направить      Ашенбреннеру      О.

(лицу, в отношении которого прекращено уголовное дело (уголовное преследование)

потерпевшему Трауму Д. , гражданскому истцу _____

(фамилия, инициалы)                                        (фамилия, инициалы)

гражданскому ответчику _____

(фамилия, инициалы)

заместителю Генерального прокурора Российской Федерации

(наименование органа прокуратуры, классный чин, фамилия, инициалы)

Потерпевшему, гражданскому истцу разъяснено право на предъявление иска в порядке гражданского судопроизводства[1].

Настоящее  постановление  может  быть  обжаловано прокурору и в суд в порядке, установленном главой 16 УПК РФ.

Следователь (дознаватель)

(подпись)

против  прекращения  уголовного  дела  (уголовного  преследования)  по  основани___,  п редусмотрен_____УПК РФ, не возражаю[2].

(пункт, часть, статья)

Подозреваем___ (обвиняем___)

(подпись)

Потерпевш___  .

(подпись)

[1] Данная графа заполняется в случае, предусмотренном ч. 4 ст. 213 УПК РФ.
[2] Данная графа заполняется в случае прекращения уголовного преследования по основаниям, указанным в п.3 и 6 ч.1 ст.24, ст.25,26 и 28,  п.3 и 6-8 ч.1 ст.27 УПК РФ.