**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------x

DAVIS INTERNATIONAL, LLC, HOLDEX,    :
LLC, FOSTON MANAGEMENT, LTD, and    :
OMNI TRUSTHOUSE, LTD,    :
   :
             Plaintiffs,    :
      v.    :     Case No. 04-1482-GMS
   :
NEW START GROUP CORP., VENITOM    :
CORP., PAN-AMERICAN CORP., MDM    :
BANK, URAL-GORNO METALURAGICAL    :
COMPANY, EVRAZ HOLDING, MIKHAIL    :
CHERNOI, OLEG DERIPASKA, ARNOLD    :
KISLIN, MIKHAIL NEKRICH, and    :
ISKANDER MAKMUDOV,    :
   :
             Defendants.    :

-------------------------------------------------------------x

**OPENING BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT PURSUANT TO
THE DOCTRINE OF DIRECT ESTOPPEL AND
TO ENJOIN PLAINTIFFS FROM RE-FILING THIS ACTION**

Attorneys for Defendant Arnold Kislin:

Charles M. Oberly, III (DSBA No. 743)    Lisa C. Cohen
Karen V. Sullivan (DSBA No. 3872)     Schindler Cohen & Hochman LLP
Oberly, Jennings & Rhodunda, P.A.      100 Wall Street
800 Delaware Avenue, Suite 901         15th Floor
PO Box 2054                            New York, NY 10005
Wilmington, DE 19899              (212) 277-6300

                              Lawrence S. Goldman
                              Elizabeth Johnson
                              The Law Offices of Lawrence S. Goldman
                              500 Fifth Ave., 29th Floor
                              New York, NY 10110-2900
                              (212) 997-7499

Attorneys for Defendants New Start
Group Corp. and Venitom Group:

Charles M. Oberly, III (DSBA No. 743)
Karen V. Sullivan (DSBA No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
PO Box 2054
Wilmington, DE 19899
(302) 576-2000

Richard J. Schaeffer
Peter J. Venaglia
Laura D. Sullivan
Dornbush, Schaeffer, Strongin &
Weinstein, LLP
747 Third Avenue, 11th Floor
New York, NY 10017
(212) 759-3300


Attorneys for Defendant Oleg Deripaska:

Collins J. Seitz, Jr. (DSBA No. 2237)
Kevin F. Brady (DSBA No. 2248)
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

Rodney F. Page
Michael G. Biggers
Bryan Cave LLP
700 13th Street, N.W.
Washington, D.C. 20005-3960
(202) 508-6002


Attorneys for Defendant Evraz Holding:

William M. Lafferty (DSBA No. 2755)
Morris, Nichols, Arsht & Tunnell
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 575-7341

David H. Herrington
Vitali Rosenfeld
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2266


Attorneys for Defendant MDM Bank:

Richard I.G. Jones, Jr. (DSBA No. 3301)
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

Joel B. Kleinman
Steven J. Roman
David H. Greenberg
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street NW
Washington, DC 20037-1526
(202) 785-9700

Attorneys for Defendant Ural-Gorno
Metallurgical Company:

Charles M. Oberly, III (DSBA No. 743)     William H. Devaney
Karen V. Sullivan (DSBA No. 3872)      Heard & O'Toole LLP
Oberly, Jennings & Rhodunda, P.A.       405 Lexington Ave, Floor 62
800 Delaware Avenue, Suite 901         New York, NY 10174
PO Box 2054                             (212) 307-5500
Wilmington, DE 19899
(302) 576-2000


Attorneys for Defendant Iskander
Makmudov:

Charles M. Oberly, III (DSBA No. 743)     William H. Devaney
Karen V. Sullivan (DSBA No. 3872)      Heard & O'Toole LLP
Oberly, Jennings & Rhodunda, P.A.       405 Lexington Ave, Floor 62
800 Delaware Avenue, Suite 901         New York, NY 10174
PO Box 2054                             (212) 307-5500
Wilmington, DE 19899
(302) 576-2000


Attorneys for Defendant Mikhail Chernoi:

Charles M. Oberly, III (DSBA No. 743)     Brian Maas
Karen V. Sullivan (DSBA No. 3872)      Cameron A. Myler
Oberly, Jennings & Rhodunda, P.A.       Frankfurt Kurnit Klein & Selz PC
800 Delaware Avenue, Suite 901         488 Madison Avenue, 9th Floor
PO Box 2054                             New York, NY 10022
Wilmington, DE 19899                  (212) 980-0120
(302) 576-2000


Attorneys for Defendant Mikhail Nekrich:

Charles M. Oberly, III (DSBA No. 743)     Paul R. Grand
Karen V. Sullivan (DSBA No. 3872)      Edward M. Spiro
Oberly, Jennings & Rhodunda, P.A.       Morvillo, Abramowitz, Grand, Iason &
800 Delaware Avenue, Suite 901         Silberberg, P.C.
PO Box 2054                             565 Fifth Avenue
Wilmington, DE 19899                  New York, NY 10017
(302) 576-2000                        (212) 880-9510

Dated: April 22, 2005

## Table of Contents

TABLE OF AUTHORITIES ........................................................................................iii

PRELIMINARY STATEMENT ........................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ..........................................3

SUMMARY OF ARGUMENT ........................................................................3

STATEMENT OF FACTS ...............................................................................4

      A. The Prior New York Action............................................................5

      B.  Finding That the Dispute Belongs in Russia, the
         Southern District Dismissed the New York Action ..........................7

      C. The Second Circuit Summarily Affirmed the
         *Forum Non Conveniens* Dismissal....................................................11

      D. The Plaintiffs' Current Complaint Is Identical
         In All Material Respects to Their Amended
         Complaint in the New York Action...................................................12

ARGUMENT.....................................................................................................15

I.  A Federal Court's Determination That a Dispute
    Should be Resolved in a Foreign Forum Directly
    Estops Plaintiffs From Relitigating the Same
    Claims in Another Federal Court.......................................................15

II.  Because Their Claims Have Already Been
    Dismissed Upon *Forum Non Conveniens*
    Grounds in Favor of Russia, Plaintiffs Are
    Directly Estopped From Relitigating
    Those Claims Here.............................................................................19

      A. There Are No Significant Differences
         Between This Complaint and the
         *Base Metal Trading* Complaint.......................................................19

B.  In Analyzing a Motion to Dismiss On
    *Forum Non Conveniens* Grounds, This
    Court Will Apply the Same Legal
    Criteria and Use the Same Material
    Facts as the New York Court ..........................................................................24

III. Even If Plaintiffs Could Demonstrate New Facts
     Affecting the *Forum Non Conveniens* Analysis,
     Plaintiffs Should Not be Permitted to
     Forum Shop by Circumventing Rule 60(b) ...............................................27

IV. Plaintiffs Should be Enjoined from
    Re-filing This Action ..............................................................................30

CONCLUSION ..............................................................................................32

## Table of Authorities

**Cases**

*Albright v. R.J. Reynolds Tobacco Co.*,  463 F. Supp. 1220 (W.D. Pa. 1979) ................ 30

*Alcantara v. Boeing Co.*,  41 Wash.App. 675,  705 P.2d 1222 (Wash. Ct. App. 1985) ... 19

*Allen v. McCurry*, 449 U.S. 90 (1980)............................................................................ 18

*Baker v. Gotz*, 415 F. Supp. 1243 (D. Del. 1976),  *aff'd without opinion*,
    546 F.2d 415 (3d Cir. 1976)..........................................................................................30

*Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681 (S.D.N.Y. 2003),
    *aff'd sub nom., Base Metal Trading Ltd. v. Russian Aluminum*,
    98 Fed. Appx. 47, 2004 WL 928165 (2d Cir. 2004)............................................passim

*Blonder-Tongue Labs., Inc. v. University of Illinois Found.*, 402 U.S. 313 (1971) ......... 21

*China Tire Holdings Ltd. v. Goodyear Tire & Rubber Co.*, 91 F. Supp. 2d 1106
    (N.D. Ohio 2000) .......................................................................................................passim

*Connell v. Liberty Mut. Ins. Co.*, 841 F. Supp. 578 (D. Del.)........................................... 21

*De Aguilar v. Boeing Co.*, 11 F.3d 55 (5th Cir. 1993) ...................................................... 24

*Fitzgerald v. Texaco, Inc.*, 521 F.2d 448 (2d Cir. 1975) .................................................. 16

*Gambocz v. Yelencsics*, 468 F.2d 837 (3d Cir. 1972) ....................................................... 30

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ......................................................... 10, 24

*Jones v. City of Alton, Illinois*, 757 F.2d 878  (7th Cir. 1985) ......................................... 20

*Koster v. American Lumbermens Mutual Casualty Co.*, 330 U.S. 518 (1947)................. 24

*Lacey v. Cessna Aircraft Co.*, 862 F.2d 38 (3d Cir. 1988) ............................................... 24

*Migra v. Warren City School District Bd. Of Ed.*, 465 U.S. 75 (1984) ............................ 20

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 304 F. Supp. 2d 570 (S.D.N.Y. 2004) ......... 2

*Pastewka v. Texaco, Inc.*, 420 F. Supp. 641 (D. Del. 1976),  *aff'd*,
    565 F.2d 851 (3d Cir. 1977)..........................................................................................passim

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) ........................................................... 24

*Ravelo Monegro v. Rosa*, 211 F.3d 509 (9th Cir. 2000).................................................. 24

*Sequihua v. Texaco, Inc.*, 847 F. Supp 61 (S.D. Tex. 1994) ............................................... 25

*Sibaja v. Dow Chemical Co.*, 757 F.2d 1215 (11th Cir. 1985) ......................................... 24

*Torreblanca de Aguilar v. Boeing Co.*, 806 F. Supp. 139 (E.D. Tex. 1992) ............. 18, 20

*United States v. Stauffer Chemical Co.*, 464 U.S. 165 (1984) ......................................... 20

*Van Cauwenberghe v. Biard*, 486 U.S. 517 (1988) ......................................................... 24

*Villar v. Crowley Maritime Corp.*, 990 F.2d 1489 (5th Cir. 1993) ................ 18, 25, 30, 31

*Zoriano Sanchez v. Caribbean Carriers Ltd.*, 552 F.2d 70 (2d Cir. 1977) ...................... 18

**Other Authorities**

Bruce S. Marks, *RICO v. Racketeers: Still Alive and Well, Johnson's Russia List*
  (April 19, 2004), *available at* http://www.cdi.org/russia/johnson/8173-5.cfm ............ 2

Sarah Carey, *RICO v. Russia: A. Lost Cause*, Johnson's Russia List
  (April 16, 2004), *available at* http://www.cdi.org/russia/johnson/ 8169-8.cfm .......... 2

The All Writs Act, 28 U.S.C. § 1651 ................................................................................. 30

The Anti-Injunction Statute, 28 U.S.C. § 2283................................................................. 30

## **PRELIMINARY STATEMENT**

These same plaintiffs, alleging these same claims against many of these same defendants through this same lead attorney, have already been denied relief. On March 27, 2003, the Hon. John G. Koeltl of the Southern District of New York dismissed the plaintiffs' claims on the grounds of *forum non conveniens*. There, as here, the plaintiffs sought recovery under RICO and conversion, alleging that they had been harmed by a "conspiracy to take over" Kachkanarsky GOK, Russia's largest vanadium ore mining factory.

The case was pending before Judge Koeltl for more than two years. During that time, the parties submitted voluminous material to the Court, including more than 50 declarations and affidavits, 28 briefs, and more than 20,000 pages of exhibits. In addition, Judge Koeltl, as well as the Hon. Mag. Judge Frank Maas, reviewed numerous applications and letters submitted by the parties, held several conferences with the parties, and issued orders on various issues raised by the parties, often involving plaintiffs' repeated attempts to lift the stay of discovery ordered by the Court.

In its 32-page published decision dismissing plaintiffs' claims, the Southern District analyzed the amount of deference due to the plaintiffs' choice of forum, whether Russia provided the plaintiffs with an adequate alternative forum for their claims, and all of the contacts that the parties and the dispute had with the United States. The Court concluded that the dispute belonged in Russia. The Southern District's *forum non conveniens* dismissal was unanimously and summarily affirmed on appeal. *Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681

(S.D.N.Y. 2003), *aff'd sub nom., Base Metal Trading Ltd. v. Russian Aluminum*, 98 Fed. Appx. 47, 2004 WL 928165 (2d Cir. 2004).

The plaintiffs, however, have chosen not to bring their claims in Russia, where they belong.  Trying to avoid the rulings of the Second Circuit and the Southern District of New York, the plaintiffs now seek to re-argue their case to this Court.  In fact, plaintiffs' lead counsel readily boasts of his forum shopping on behalf of his clients.  Recently, in response to an article appearing in Johnson's Russia List,[1] which asserted that "the campaign to fight Russian takeover battles via RICO and similar conspiracy claims filed in the US" was dead after several similar dismissals in the federal courts, including the dismissal of the New York case, plaintiffs' lead counsel admitted:

> Unlike the Southern District of New York, where Norex and Base Metals were filed, many American courts, such as Colorado, Delaware, and New Jersey, employ a much more restrictive forum non doctrine.  To be sure, our firm will be filing new cases again[st] American and Russian interests who have engaged in racketeering in the U.S. in appropriate forums shortly.

Bruce S. Marks, *RICO v. Racketeers: Still Alive and Well, Johnson's Russia List* (April 19, 2004), *available at* http://www.cdi.org/russia/johnson/8173-5.cfm. [2]

Fortunately, the law in this Circuit prohibits the plaintiffs' ploy:

> If appellants expected the district judge in Delaware to exercise a more discreet discretion than his judicial brother

---

[1]     Sarah Carey, *RICO v. Russia: A. Lost Cause*, Johnson's Russia List (April 16, 2004), *available at* http://www.cdi.org/russia/johnson/ 8169-8.cfm.  Johnson's Russia List is a daily e-mail newsletter with information and analysis about contemporary Russia from a wide range of sources.

[2]     The same lawyer who filed this case and the *Base Metal Trading* case filed a complaint on February 26, 2002, involving different parties, but making similar allegations regarding an illegal takeover of the Russian oil industry.  That case was also dismissed on *forum non conveniens* grounds.  *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 304 F. Supp. 2d 570 (S.D.N.Y. 2004).  The Norex complaint and the district court dismissal are submitted at A-535 and A-607 respectively.

> in the Southern District of New York, then they should
> have begun their litigation in Delaware.   Having now
> finally lost in New York, they cannot relitigate the same
> factual and legal issues in Delaware.

*Pastewka v. Texaco, Inc.*, 565 F.2d 851, 854 (3d Cir. 1977).  In *Pastewka*, the Third

Circuit held that where a federal court dismisses a case on *forum non conveniens*

grounds, direct estoppel bars a plaintiff from relitigating that same case in another

federal court.  *Id*. at 853-54.

<u>**NATURE AND STAGE OF THE PROCEEDINGS**</u>

Plaintiffs initially filed their complaint in the Delaware Court of Chancery on

November 4, 2004.   Defendants removed on November 30th and the Court held a

telephone conference with the parties on December 21st.  On March 8, 2005, plaintiffs

served discovery demands and Rule 26 disclosures.   There have been no other

proceedings to date.   Defendants now submit this opening brief in support of their

motion to dismiss the complaint on direct estoppel grounds and to enjoin plaintiffs

from re-filing the same claims.[3]  In addition, by separate briefs, defendants seek

dismissal of the complaint on the grounds of *forum non conveniens*, international

comity, lack of subject matter jurisdiction and failure to state a claim.  If the Court

grants the motion based on direct estoppel, it need not reach defendants' other

grounds for dismissal.

---

[3]    All defendants join in this opening brief.  The exhibits to all of the defendants' opening briefs are
contained in the multi-volume appendix submitted herewith and numbered pages A-1 – A- 2354
("Appendix").  A copy of the complaint is included at A-1 – A-30.

## SUMMARY OF ARGUMENT

I.  *Pastewka* makes clear that a federal court's determination that a dispute should be resolved in a foreign forum directly estops a plaintiff from relitigating the same claims in another federal court.

II.  Because the plaintiffs' claims have already been dismissed upon *forum non conveniens* grounds in favor of Russia, *Pastewka* applies here to estop these plaintiffs from relitigating their claims.  There are no significant differences between this complaint and the amended complaint in the *Base Metal Trading* action.  And, in analyzing a motion to dismiss on *forum non conveniens* grounds, this Court will apply the same legal criteria and use the same material facts as did the District Court for the Southern District of New York.

III.  Even if the plaintiffs could demonstrate new facts affecting the *forum non conveniens* analysis, they should not be permitted to forum shop by circumventing Rule 60(b) of the Federal Rules of Civil Procedure.

IV.  Finally, defendants are entitled to an injunction to prevent the plaintiffs from re-filing the same action against these same defendants for a third time.

The defendants respectfully request that this Court dismiss the plaintiffs' complaint and enjoin the plaintiffs from re-filing their claims.

## STATEMENT OF FACTS

For the purposes of this motion, the defendants assume the truth of plaintiffs' allegations set forth in the complaint.  The defendants also rely upon the undisputed facts concerning the plaintiffs' previous attempt to obtain identical relief from many

of these same defendants in the Southern District of New York and the Second Circuit.

## A.  __The Prior New York Action__

The plaintiffs' prior action was commenced on December 19, 2000 in the Southern District of New York.  *Base Metal Trading SA*, 253 F. Supp. 2d at 684.  In that action, Bruce Marks of Marks & Sokolov, LLC represented the plaintiffs as their lead attorney.

Initially, the *Base Metal Trading* complaint alleged that, beginning in the 1990's, Oleg Deripaska, Mikhail Chernoi, and certain entities controlled by them had conspired with others to monopolize the Russian aluminum industry.  In May of 2001, the defendants filed motions to dismiss on various grounds, including *forum non conveniens* and lack of subject matter jurisdiction.  *Id*.

Rather than respond to the motions, the plaintiffs amended their complaint in August of 2001.  ("NY Action, Am. Compl.")[4]  In an attempt to manufacture additional ties to the United States, the amended complaint added seven new plaintiffs – including three that purported to be United States corporations – and twelve new defendants – including two Delaware corporations, four other U.S. corporations, and one U.S. citizen.  *See Base Metal Trading SA*, 253 F. Supp. 2d at 684.  The amended complaint also added an entirely new scheme of an alleged

---

[4]    A copy of the amended complaint in the *Base Metal Trading* action is included in the Appendix of Exhibits at A 176 - 294.  Although the plaintiffs amended the complaint a second time, the amendments were *de minimis* such that the Southern District Court of New York considered the motions to dismiss as directed to the second amended complaint and cited to the first amended complaint in its decision.  *Base Metal Trading SA*, 253 F. Supp. 2d at 684, n.1.

attempt to control Russia's vanadium industry through the allegedly illegal takeover of Kochkanarsky GOK ("GOK").[5]  *Id*. at 684-85, 689-92.

With respect to GOK, plaintiffs Davis, Holdex, Foston and Omni – the same plaintiffs here – alleged a wild tale of bribery, violence, and extortion.  Starting with "The Initial Extortion" in April 1999 (NY Action, Am. Compl., ¶¶ 341-48), these plaintiffs asserted repeated illegal efforts by the defendants to gain control of GOK, including:

- threats and false criminal charges asserted against Jalol Khaidarov, GOK's general director from December 1998 to January 2000 ("The Initial Extortion," (NY Action, Am. Compl., ¶¶ 341-48); "The Malevsky Extortion," (NY Action, Am. Compl., ¶¶ 349-51); "Makhmudov's Threat," (NY Action, Am. Compl., ¶¶ 362-64); "Malevsky's Final Threat," (NY Action, Am. Compl., ¶¶ 369-70); ("The False Criminal Charges Against Khaidarov," (NY Action, Am. Compl., ¶¶ 435-36));

- bribery of government officials ("The Bribery of Governor Roussel," (NY Action, Am. Compl., ¶¶ 352-55)) and GOK board members (NY Action, Am. Compl., ¶ 360);

- use of armed force ("The Physical Takeover of GOK," (NY Action, Am. Compl., ¶¶ 356-61));

- creation of false debt so as to place GOK in a sham bankruptcy ("The Creation of the False Debt of GOK," (NY Action, Am. Compl., ¶¶ 371-86); "The Sham Bankruptcy of GOK," (NY Action, Am. Compl., ¶¶ 387-96)); and

- fraudulent transfers of the plaintiffs' GOK shares by removing them from the registry of GOK shareholders and the inexplicable upholding of these actions by more than a dozen different court proceedings referenced in the Complaint ("The Fraudulent Transfer of the Davis Shares," (NY Action, Am. Compl., ¶¶ 397-403); "The Fraudulent Transfer of Omni's Shares," (NY Action, Am. Compl., ¶¶ 404-10); "The Fraudulent Transfer of Foston's Shares," (NY Action, Am. Compl., ¶¶ 411-16); "The Fraudulent Transfer of Holdex's Shares," (NY Action, Am. Compl., ¶¶ 417-23); "The Sham Settlement Agreement," (NY Action, Am. Compl., ¶¶ 424-34)).

---

[5]    GOK is located in the Sverdlovsk Oblast, which is situated on the east side of the Ural Mountains north of central Kazakhstan, approximately 5,300 miles from Delaware.

The defendants once again moved to dismiss the amended complaint. The grounds for the motions to dismiss included *forum non conveniens*, comity, and failure to state a claim.

In opposing the motions, the plaintiffs initially filed seven declarations from experts addressing only the *forum non conveniens* issues, as well as fourteen declarations from fact witnesses. In supplemental submissions, the plaintiffs filed five additional expert declarations. In addition, at oral argument on the motions, the Court asked the plaintiffs to provide supplemental affidavits from fact witnesses showing any and all contacts that the three purported U.S. plaintiffs – including Davis and Holdex – had with the United States. In response, the plaintiffs filed another fact declaration of Joseph Traum, which, as the Court found, was "telling for how little information it provides about the American plaintiffs." *Base Metal Trading SA*, 253 F. Supp. 2d at 695.

In total, the parties submitted more than 25,000 pages in briefs, declarations, exhibits, and letter briefs for the Court's consideration.

## B. Finding That the Dispute Belongs in Russia, the Southern District Dismissed the New York Action

The Southern District dismissed the plaintiffs' claims on the ground of *forum non conveniens* without reaching the defendants' other motions.

The Southern District found that the plaintiffs' choice of forum was entitled to little deference. *Base Metal Trading SA*, 253 F. Supp. 2d at 693-98. "[H]aving pursued various remedies in the Russian court system with unsatisfactory results, the plaintiffs now seek to take their case to the United States. Such a tactical maneuver is

not protected by the deference generally owed to the plaintiffs' choice of forum." *Id.* at 698 (internal footnote omitted).

The Southern District first recognized the general principle that "'the plaintiff's choice of forum will stand unless the defendant meets the burden of demonstrating [otherwise]'" but that "'where a foreign plaintiff is concerned its choice of forum is entitled to less deference.'" *Id.* at 693 (quoting *Iragorri v. United Tech Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) and *Varnelo v. Eastwind Transport, Ltd.*, No. 02 Civ. 2084, 2003 WL 230741, at *7 (S.D.N.Y. Feb. 3, 2003)). Two of the plaintiffs that are also plaintiffs here, Foston and Omni, are foreign. *Id.* at 694; s*ee also* Compl., ¶¶ 18-19. The other two *Base Metal* plaintiffs that are plaintiffs here, Davis and Holdex, were given every opportunity by the Southern District to prove any legitimate contact with the United States, including permission to file supplemental materials following oral argument. *Base Metal Trading SA*, 253 F. Supp. 2d at 695-96. The Southern District thereafter concluded that Davis and Holdex "appear to be nothing more than holding companies for shares of GOK and possibly other stocks." *Id.* at 696. As the Southern District determined, there was "no bona fide reason for the plaintiffs to have sued" in the United States, and the plaintiffs' choice of forum was "nothing but forum shopping." *Id.* at 696.

The Southern District also found that Russia provides the plaintiffs with an adequate alternative forum. *Id.* at 698-709. Russia was unquestionably an available forum because all of the defendants had consented to jurisdiction there, *id.* at 698 – which the defendants in this action have done as well.[6] Upon reviewing the

---

[6]     *See* Affidavit of Charles M. Oberly, III, sworn to on March 30, 2005 at ¶ 7, Exs. 5-13.

"extensive submissions" from the parties' experts in Russian law, the Southern District concluded that Russian law provides adequate alternative remedies to all of the claims asserted, including violations of RICO and conversion.  *Id*. at 699-701.

The Southern District also flatly rejected the plaintiffs' assertion that either individual decisions in the Russian bankruptcy courts or the entire Russian judiciary was somehow corrupt.  *Id*. at 704-08.  As the Southern District determined, there are "ample means in the Russian judicial system to overturn decisions that were obtained as a result of corruption," *id*. at 702, there was no specific "showing of corruption in the underlying proceedings," *id*. at 704, and the plaintiffs' "generalized descriptions of corruption . . . are insufficient to disqualify all of the possible Russian venues," *id*. at 706.

Moreover, the Southern District recognized the vast difficulty that it would face if the case were to go to trial.  The District Court stated: "[s]hould the plaintiffs prevail on the motion to dismiss and the case proceed to trial in this Court, the Court would be forced to consider approximately 120 Russian legal decisions related to the [aluminum plant] and GOK bankruptcies and the GOK change of control.[7]  These decisions involved almost 150 Russian judges.  This Court is not a court of appeals for the Russian legal system and will not act as such.  To do so would amount to an act of judicial overreaching of the precise sort rejected by the Court of Appeals for the Second Circuit."  *Id*. at 708 (citations to record omitted; footnote not in original).

Importantly, four of those 120 decisions, the Southern District observed, "are clearly at the core of the plaintiffs' case," and yet the plaintiffs "made little, if any,

---

[7]    Approximately 90 of those decisions concerned GOK.

attempt to articulate substantive allegations of corruption against these decisions." *Id.* at 709.[8]  "In view of this fact, it would be a particular affront to notions of international comity for the Court effectively to ignore or overrule the findings of the Russian courts in these decisions." *Id.*

In weighing the private and public interest factors set forth by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), the Southern District also concluded that the case belongs in Russia. *Base Metal Trading SA,* 253 F. Supp. 2d. at 710-13.  As the Court found, "[t]he list of potential non-party witnesses who appear in the Amended Complaint alone demonstrates why this litigation should proceed in Russia." *Id.* at 710.  The plaintiffs argued that they would call U.S.-based witnesses to prove the alleged "predicate acts for their RICO claims that occurred in [the] United States," but the Court found numerous reasons why that reasoning failed. *Id.* at 711.  Among other things, the Court observed that "the relevant allegations that may involve witnesses located in the United States pale in comparison to those involving persons and companies located in Russia." *Id.*

The Court was not persuaded by the plaintiffs' claims that certain of their witnesses, including Joseph Traum, were not able to go to Russia:  "Traum's fear of returning to Russia does not rise to the level of gravity at which courts within this Circuit have spared *parties*, not merely witnesses, from returning to a threatening forum." *Id.* at 711.  Similarly, the Court found that the bulk of the important

---

[8]    Of those four core decisions, the following two relate to GOK:  (1) the August 21, 2001 decision of the Federal Arbitrazh Court for the Urals Circuit affirming the lower court's dismissal of an appeal of the GOK bankruptcy settlement brought by Nexis Products, LLC, one of the other plaintiffs in the *Base Metal Trading* action, and (2) the September 5, 2001 decision of the Federal Arbitrazh Court for the Moscow Circuit upholding two lower court decisions rejecting claims by Davis, Holdex, Omni, and Foston against GOK's change in registrar. *Base Metal Trading SA*, 253 F. Supp. 2d at 709.

documentary evidence is located in Russia and is written in Russian.  *Id*. at 711-12.

"[T]he substantial degree to which it appears that Russia and the Russian language

outweigh the United States and English in the location and format of many . . .

documents demonstrates the high burden of putting such evidence to use in this

Court.  Access to sources of proof thus tips heavily in favor of Russia."  *Id*. at 712.

The Court's assessment of the public interest factors also strongly favored

dismissal.  *Id*. at 712-13.  The fact that a trial would require extensive application of

Russian law "weighs heavily in favor of dismissing this case in favor of a Russian

forum."  *Id*. at 712.  Moreover, "[a]ll of the principle [*sic*] events in this case

transpired in Russia."  *Id*. at 712.  As the Southern District concluded,

> The plaintiffs contend that the illegal scheme involved high
> level Russian politicians, as well as numerous members of
> the Russian judiciary.  The controversy presents issues that
> are of clear import to Russian citizens that should be
> resolved by the Russian courts.  By contrast, the case has
> virtually no connection with the United States or this
> district.  As such, the local interest in resolution of the
> dispute is virtually none.

*Id*. at 713.

## C.  The Second Circuit Summarily Affirmed the  *Forum Non Conveniens* Dismissal

The plaintiffs appealed the *forum non conveniens* dismissal.  On appeal, the

plaintiffs submitted yet another expert declaration on issues of Russian law, along

with 26 additional exhibits, in an attempt to argue once again that Russia did not

provide an alternative remedy and that Russian courts were corrupt.  The Second

Circuit rejected the plaintiffs' arguments, unanimously affirming the dismissal.  *Base*

*Metal Trading Ltd.*, 98 Fed. Appx. 47, 49-51, 2004 WL 928165, *2-4 (2d Cir. April 30, 2004).

With respect to the plaintiffs' choice of forum, the Second Circuit recognized that the Southern District had reviewed the parties' extensive submissions before finding that the plaintiffs had engaged in forum shopping. *Id.* at 49, 2004 WL 928165, at *2. As the Second Circuit stated, that conclusion "was certainly not a clear abuse of discretion." *Id.*

Moreover, despite the plaintiffs' new expert declaration, the Second Circuit found that the plaintiffs offered "no persuasive basis to conclude that the [trial] court abused its discretion" in holding that Russia presented an adequate alternative forum. *Id.* at 50, 2004 WL 928165, at *2.

Finally, the Second Circuit agreed with the District Court's finding that "both the public and private interest factors strongly favor adjudication in Russia." *Id.* at 51, 2004 WL 928165, at *3.

## D. The Plaintiffs' Current Complaint Is Identical In All Material Respects to Their Amended Complaint in the New York Action

On November 4, 2004, plaintiffs Davis, Holdex, Foston and Omni, through their counsel Bruce Marks of Marks & Sokolov, LLC, filed a complaint in the Chancery Court in Delaware asserting that they had been harmed by a "conspiracy to take over" Kachkanarsky GOK. The defendants removed the action to this Court.

The complaint here does not allege a scheme to take over Russia's aluminum industry, but its allegations are identical in all material respects to the allegations in the *Base Metal Trading* complaint concerning the purported attempt to take over

Russia's vanadium industry. All of the plaintiffs here were plaintiffs in the *Base Metal Trading* action. Eight of the defendants here were defendants in the *Base Metal Trading* action. All of the claims asserted here were asserted in the *Base Metal Trading* action. In fact, as demonstrated in Exhibit A to the Declaration of Lisa C. Cohen dated March 18, 2005 ("Cohen Dec."), submitted as Exhibit 1 to the Affidavit of Charles M. Oberly, III, the plaintiffs use virtually identical language here as in the amended complaint in the *Base Metal Trading* action in making their allegations, including virtually all of the same headings. (*See, e.g.*, "The Initial Extortion," (Compl., ¶¶ 49-53; NY Action, Am. Compl., ¶¶ 341-48); "The Malevsky Extortion," (Compl., ¶¶ 54-57; NY Action, Am. Compl., ¶¶ 349-51); "The Bribery of Governor Roussel," (Compl., ¶¶ 58-62; NY Action, Am. Compl., ¶¶ 352-55).) Set forth below are just a selected handful of some of the dozens of nearly identical paragraphs between the two pleadings:

| Allegations Made by These Plaintiffs in the Current *Davis International, LLC* Action | Allegations Previously Made by These Plaintiffs in the Prior *Base Metal Trading* Action |
|---|---|
| 50. In April 1999, Khaidarov met with Chernoi and Makmudov in Chernoi's apartment in the center of Paris regarding GOK. Chernoi told Khaidarov that "there were a lot of clever people like Felix Lvov, Oleg Kantor, Vadim Yafasov, but sometimes they die. Don't be too clever. You have a chance to continue working with us. To that end, you should persuade the shareholders of GOK to transfer their shares to us. Some people refuse my offers. But for the rest of their lives, they wear bulletproof jackets. So what's the sense? Think it over." This was a direct threat on the life of | 342-43. In April 1999, Khaidarov met . . . with Chernoi and Makhmudov in Chernoi's apartment in the center of Paris regarding GOK. . . . Chernoi told Khaidarov that "there were a lot of clever people like Felix Lvov, Boris Kantor, Yafiasov, but sometimes they die. Don't be too clever. You have a chance to continue working with us. To that end, you should persuade the shareholders of GOK to transfer their shares to us. Some people refuse my offers. But for the rest of their lives, they wear bullet proof jackets. So what's the sense? Think it over." This was a direct threat on the life of |

| | |
|---|---|
| Khaidarov if he did not cooperate with Chernoi because all of the above persons had been murdered in Russia. | Khaidarov if he did not cooperate with Chernoi. |
| 51. By May or June 1999, the controlling shareholders of GOK agreed preliminarily to sell 20% of their shares to a company controlled by the Conspirators in response to the extortion. The GOK controlling shareholders hoped that this would satisfy the Conspirators. The Conspirators made a down payment of $5 million for these shares, which was wired through a bank in the United States to an account held on behalf of the GOK shareholders. | 344-45. By May-June, 1999, the controlling shareholders of GOK agreed preliminarily to sell 20% of their shares to a company controlled by the Conspirators in response to the extortion. The GOK controlling shareholders hoped that this would satisfy the Conspirators. [The Conspirators] made a down payment of $5 million for these shares, which was wired through a bank in the United States to an account held on behalf of the GOK shareholders. |
| 52. Several months later, Makmudov told Khaidarov that the Conspirators needed a controlling share of GOK, and Chernoi demanded that Khaidarov arrange for 51 % of the shares of GOK to be transferred to the Conspirators. | 346. Several months later, Makhmudov … told Khaidarov that the Conspirators needed a controlling share of GOK, and Chernoi demanded that Khaidarov arrange for additional shares of GOK to be transferred to the Conspirators. |
| 53. In response, the GOK controlling shareholders decided that it was impossible to cooperate or satisfy Chernoi and Makmudov, short of simply giving up their interests for far less than their worth. As a result, the GOK shareholders returned the $5 million through a bank in the U.S. and the purported transfer of shares did not take place. | 347. In response, the GOK controlling shareholders decided that it was impossible to cooperate or satisfy Chernoi and Makhmudov, short of simply giving up their interests for far less than their worth. As a result, the GOK shareholders returned the $5 million and the purported transfer of shares did not take place. |
| 54-55. Immediately thereafter, in November 1999, Makmudov asked Khaidarov to meet with him at the Luxor Restaurant at the Metropole Hotel in Moscow. Shortly after the meeting began, Makmudov called Malevsky, who then joined the meeting, accompanied by five armed thugs; . . . Makmudov demanded that Khaidarov arrange for the GOK controlling shareholders to transfer 51% of Gok's shares to Chernoi without payment. | 349-50. Immediately thereafter, in November 1999, Khaidarov was asked to meet with Makhmudov at the Luxor Restaurant at the Metropole Hotel in Moscow. Shortly after the meeting began, Makhmudov called Malevsky, who then joined the meeting, accompanied by five armed thugs. . . . Makhmudov demanded that Khaidarov arrange that the GOK controlling shareholders transfer one-half of their shares to Chernoi without payment. |
| 56-57. Khaidarov said he thought Makmudov was crazy, but that he | 351. Khaidarov said he thought Makhmudov was crazy, but that he |

| | |
|---|---|
| would transmit the message. Malevsky then told Khaidarov, "What do you think you're saying? This is the last time that you <u>will</u> leave here alive." | would transmit the message. Malevsky then told Khaidarov, "What do you think you're saying? This is the last time that you will leave here alive." |
| 58.  As of 1999, Eduard Roussel ("Roussel") was the Governor of the Sverdlovsk Oblast, where GOK was located. | 352.   As of 1999, Eduard Roussel ("Roussel") was the Governor of the Sverdlovsk Oblast, where GOK was located. |
| 59.  In that year, meetings were arranged between representatives of the Conspirators including Makmudov, to pay Roussel for his "protection" and "help." | 353.  In 1999, meetings were arranged between representatives of the Conspirators, including Makhmudov . . . to pay Roussel for his "protection" and "help." |
| 60-61.  Payments were then wired by Pan-American through banks in the United States to MDM Bank for conversion into cash for payment at the direction of Roussel. These payments included the illegal payment of $850,000 in cash for Roussel's election campaign -- a payment that was widely reported in the Russian press. | 354. . . . [P]ayments were made by Pan-American . . . through banks in the United States to MDM Bank for conversions into cash for payment at the direction of Roussel. These payments included the illegal payment of $850,000 in cash for Roussel's election campaign -- a payment that was widely reported in the Russian press. |
| 62.  In return for these payments, Roussel agreed to support the Conspirators' efforts to do "business" in Sverdlovsk Oblast. | 355.  In return for these payments, Roussel agreed to support the Conspirators' efforts to do business in Sverdlovsk Oblast. |

## <u>ARGUMENT</u>

I.  **A Federal Court's Determination That a Dispute Should be Resolved in a Foreign Forum Directly Estops Plaintiffs From Relitigating the Same Claims in Another Federal Court**

The Third Circuit's decision in *Pastewka v. Texaco, Inc.*, 565 F.2d 851 (3d Cir. 1977), bars plaintiffs from relitigating claims in federal court where another federal court has previously determined that the claims should be resolved in a foreign forum.  In *Pastewka*, following the dismissal in New York of their claims based on *forum non conveniens* grounds, the plaintiffs brought their claims to the

Delaware District Court.  Applying principles of direct estoppel, this Court dismissed plaintiffs' claims, holding that:

> this court is bound by a prior discretionary determination of a forum non conveniens defense by a trial court of general jurisdiction from which an appeal lies, where the parties, complaints and legal theories are, for all practical purposes, identical, and plaintiffs have made no showing that there is any difference between districts as to the objective criteria or material facts underlying application of those criteria for forum non conveniens purposes.

*Pastewka v. Texaco, Inc.,* 420 F. Supp. 641, 646 (D. Del. 1976), *aff'd*, 565 F.2d 851 (3d Cir. 1977).  The Third Circuit affirmed:  having lost in New York on *forum non conveniens* grounds, the plaintiffs "cannot relitigate the same factual and legal issues in Delaware."  *Pastewka,* 565 F.2d at 854.

The facts in *Pastewka* arose from the sinking of a ship that had collided with a submerged tanker.  *Id. at* 852.  The estates of twelve deceased crewmen (collectively, the "Estates"), the ship owners ("Ship Owners"), and the owners of the cargo ("Cargo Owners"), filed lawsuits, later consolidated, in the Southern District of New York against Texaco Panama, Inc. ("Texpan"), the owner of the submerged tanker, and Texaco, Inc. ("Texaco"), the corporation that managed Texpan.  *Id*.  The Estates also filed lawsuits in Delaware against Texpan and Texaco.  *Id*.  By stipulation, the Delaware actions were stayed pending the outcome of the actions in the Southern District of New York.  *Id*.

The Southern District dismissed the case on the grounds of *forum non conveniens*, and the Second Circuit affirmed.  *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 450-54 (2d Cir. 1975).  Although the Second Circuit did not explicitly state that no forum in the United States was convenient, the Third Circuit characterized the

*forum non conveniens* decision as founded upon the conclusion that "England, not New York, was the logical forum." *Pastewka*, 565 F.2d at 852.

The Cargo Owners subsequently filed a new complaint against Texpan and Texaco in Delaware, and this Court consolidated that complaint with the complaints previously filed in Delaware by the Estates. *Id*. The defendants moved to dismiss based upon the *forum non conveniens* decisions by the New York courts. This Court granted the defendants' motion:

> I cannot rationalize why the same parties who have previously received adverse forum non conveniens decisions at the district and circuit court levels should be permitted to seek a more favorable resolution in a different district and circuit on the same complaints encompassing identical legal theories absent an ability to demonstrate any difference in objective criteria or material facts underlying those criteria. At some point there should be finality for both the litigants and the courts. **For the litigants, one thorough airing on a non-merits point should be enough. For the courts there is achieved judicial economy inherent in avoidance of duplicative, successive litigation.** Rather than encourage forum shopping, the federal system, heavily overburdened with litigation which must be heard, should not countenance, and cannot afford the luxury of permitting the same plaintiff to litigate the same issue with no demonstration of changed circumstance which would affect the outcome. Therefore, disagreement, if any, with the New York forum non conveniens discretionary decision would be insufficient to give the entire forum non conveniens issue a second, fresh airing.

*Pastewka*, 420 F. Supp. at 646 (internal citations omitted, emphasis added). The Third Circuit, relying on the doctrine of direct estoppel, affirmed the decision:

> Once a judicial system has afforded the opportunity for full and final litigation of issues between parties, . . . permitting relitigation of the same issues in another court is intolerable.  The appellants in this case do not urge any argument that would permit relief from the Second Circuit's judgment.  **They cannot now relitigate the issues which were then finally resolved.**

*Pastewka*, 565 F.2d at 854 (internal notes omitted, emphasis added).

*Pastewka* represents a well-established line of cases that prohibits re-litigation of an issue already decided.  *See Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit . . . involving a party to the first case"); *Zoriano Sanchez v. Caribbean Carriers Ltd.*, 552 F.2d 70, 72 (2d Cir. 1977) (where "plaintiffs-appellants pressed the same claim, involving the same parties and arising out of the same circumstances, before the district court in New York as they did before the district court in Puerto Rico . . . appellants are precluded from raising the [jurisdiction] issue once again in the Southern District of New York"); *Villar v. Crowley Maritime Corp.*, 990 F.2d 1489, 1498 (5th Cir. 1993) ("a plaintiff may not relitigate a *forum non conveniens* issue unless he can show some objective facts that materially alter the considerations underlying the previous resolution") (internal citation omitted); *Torreblanca de Aguilar v. Boeing Co.*, 806 F. Supp. 139, 141-42 (E.D. Tex. 1992) (plaintiffs, who suffered a prior adverse *forum non conveniens* determination, were "estopped from maintaining this action" because "[d]irect estoppel . . . bars a party from relitigating issues of fact or law that were necessary to the court's judgment and actually determined in a prior action") (internal citations omitted), *aff'd*, 11 F.3d 55 (5th Cir. 1993); *China Tire Holdings Ltd. v. Goodyear*

- 18 -

*Tire & Rubber Co.*, 91 F. Supp. 2d 1106, 1110 (N.D. Ohio 2000) ("[a]s a general rule, a federal court's determination that a matter should be resolved in a foreign forum precludes all other federal district courts from adjudicating the action"); *Alcantara v. Boeing Co.*, 41 Wash.App. 675, 684-85, 705 P.2d 1222, 1228 (Wash. Ct. App. 1985) ("[w]here the forum non conveniens issue that was necessary to the federal court's dismissal decision was actually litigated between the parties and the federal court applied essentially similar objective criteria to the same underlying material facts as the subsequent state court, the relitigation of the forum non conveniens issue is precluded by direct estoppel").

II.   **Because Their Claims Have Already Been Dismissed Upon**
      ***Forum Non Conveniens* Grounds in Favor of Russia,**
      **Plaintiffs Are Directly Estopped From Relitigating Those Claims Here**

   A.   **There Are No Significant Differences**
        **Between This Complaint and the *Base Metal Trading* Complaint**

This case is indistinguishable from *Pastewka*. As in *Pastewka*, these same four plaintiffs, along with other plaintiffs, initially filed suit in the Southern District of New York through the same lead attorney that appears on their behalf here. *See Pastewka*, 420 F. Supp. at 642-43. As in *Pastewka*, many of the same defendants in the Southern District action were also defendants in the Delaware action. *See id.* at 642. As in *Pastewka*, plaintiffs made several attempts to obtain broad discovery from defendants, which was denied by the magistrate judge and then accepted and adopted by the Southern District judge, with the exception of permitting expert depositions. *See id.* at 643. As in *Pastewka*, the Southern District dismissed plaintiffs' claims on *forum non conveniens* grounds, holding that the dispute does not belong in the United States and should instead be brought in a foreign forum, and the Second Circuit

affirmed that dismissal.  *Pastewka*, 565 F.2d at 852.  And, as in *Pastewka*, the plaintiffs are attempting to relitigate their very same claims here.  *Id*.  Quite simply, the plaintiffs cannot avoid the application of *Pastewka* to dismiss their claims here.

Although there were additional plaintiffs in New York that are not plaintiffs here, that distinction makes no difference.  Indeed, in *Pastewka,* this Court found that the parties were identical for all practical purposes even though the Ship Owners were plaintiffs in the New York action but not in the Delaware action.  *Id*. at 852; *Pastewka* 420 F. Supp. at 646.  *See also United States v. Stauffer Chemical Co.*, 464 U.S. 165, 169 (1984) (collateral estoppel "preclude[s] relitigation of the same issue already litigated against the same party in another case involving virtually identical facts").

Nor does it matter that three of the eleven present defendants are new to this action.[9]  Direct estoppel, as a type of issue preclusion or collateral estoppel, also prevents the plaintiffs from relitigating the same claims against the new defendants here.  *See Migra v. Warren City School District Bd. Of Ed.*, 465 U.S. 75, 77 n.1 (1984) ("[i]ssue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided.  This effect also is referred to as direct or collateral estoppel") (internal citation omitted); *Jones v. City of Alton, Illinois*, 757 F.2d 878, 879 n1 (7th Cir. 1985) (explaining that direct estoppel is a type of issue preclusion); *Torreblanca de Aguilar*, 806 F. Supp. at 141 (same).  A defendant need not have been a party to a prior action in order to assert issue preclusion or defensive collateral estoppel against a plaintiff that was a party to the

---

[9]    New Start, Venitom, Pan-American Corp., MDM Bank, Chernoi, Deripaska, Kislin, and Makmudov were defendants in the *Base Metal Trading* action, and Ural-Gorno, Evraz and Nekrich are new parties here.

prior action. *Blonder-Tongue Labs., Inc. v. University of Illinois Found.*, 402 U.S.
313, 328-29 (1971); *Connell v. Liberty Mut. Ins. Co.*, 841 F. Supp. 578, 583 (D. Del.)
("[c]ollateral estoppel is available as a defense to a defendant not a party to the first
action"), *aff'd*, 37 F.3d 1486 (3d Cir. 1994).  Accordingly, all of the defendants,
including the new defendants Ural-Gorno, Evraz, and Nekrich, are entitled to assert a
defense of direct estoppel. [10]

Likewise, the insignificant differences in the allegations of the complaint here
and the amended complaint in the *Base Metal Trading* action are not enough to avoid
applying direct estoppel.  For example, the plaintiffs allege for the first time in this
complaint that "[a]ccording to numerous media articles," Nekrich has "financed
Chechen terrorists, including those with ties to the international terrorist network of
al-Qaeda." (Compl., ¶ 44.)  The allegation, although sensationalist in nature, creates
no consequential difference between the substantive claims here and in the Southern
District of New York complaint, particularly since it is not a predicate RICO act and
plaintiffs do not contend that this purported conduct caused them any harm.  The
plaintiffs also allege here for the first time that the defendants caused GOK to issue
additional shares, which the defendants then purchased.  (Compl., ¶¶ 127-34.)  But,
again, this allegation presents no material change to the claims that were alleged in
New York.

---

[10]  Moreover, for purposes of the estoppel analysis, these three new defendants have identical
interests with the other eight defendants who were named in the *Base Metal Trading* action.  For
example, the plaintiffs allege that Nekrich was a co-conspirator in the takeover of GOK.  (Compl., ¶¶ 2
& 6.)  Several named defendants in the *Base Metal Trading* action were also alleged to have been co-
conspirators in the takeover of GOK.  (NY Action, Am. Compl., ¶¶ 1, 5.)  Ural-Gorno is alleged to
have been operated and managed by defendants Makmudov, the present Chairman of the Board of
Directors and a defendant in the *Base Metal Trading* action and to be owned by defendants Nekrich,
Makmudov, Chernoi, and Deripaska, the latter three of whom were defendants in *Base Metal Trading*.
(Compl., ¶ 32.)

And, while allegations concerning the purportedly false drug charges and death threats made against Traum (Compl., ¶¶ 121-26) were not in the *Base Metal Trading* complaint, they make no material difference to the substantive claims between the two actions, particularly since the substance of those allegations was made known to and considered by the New York court prior to its *forum non conveniens* dismissal. *See Base Metal Trading SA*, 253 F. Supp. 2d at 711. The injury remains exactly the same, as does the gravamen of the complaint.

Moreover, the Southern District fully considered Traum's two declarations submitted in opposition to the motions to dismiss that discussed these purportedly false charges and death threats, and the Court rejected the charges as having no significance to its analysis. The Southern District specifically mentioned in its decision that, although "Traum claims that he is unwilling to return to Russia for fear of prosecution on false drug charges and threats to his life," this had little to do with the case as Traum was "not a witness to the main allegations in the Amended Complaint." *Id.*

Finally, while Count II, labeled "Equitable Relief," is new to the complaint, that claim does not set forth a cause of action upon which to base a recovery, but instead seeks alternate forms of recovery in (i) piercing the corporate veil of defendants New Start and Venitom, and (ii) disgorging profits as opposed to monetary damages. (Compl., ¶¶ 141-46.) However, even if Count II were a cause of action, it is not new to this case for the purposes of direct estoppel: it is based upon the same facts as the other five counts – which are identical in both complaints – and seeks to redress the same alleged wrong. *See China Tire Holdings Ltd.,* 91 F. Supp.

2d at 1109 ("claims constitute the same cause of action for purposes of claim preclusion when they arise out of the same transaction and occurrence, or the same core of operative facts").[11]

Despite the 30-page length of this complaint, much of the language is identical to the New York amended complaint. Although this complaint is narrower than the New York complaint in that it omits the alleged scheme to take over Russia's aluminum industry, in their respective sections titled "Nature of the Action" and "Introduction," both complaints allege:

- a "racketeering scheme beginning in the 1990s" among an "organized crime group," (Compl., ¶ 1; NY Action, Am. Compl. ¶ 1);

- that the scheme was accomplished by bribery, extortion, mail and wire fraud, money laundering, and threats of physical harm, (Compl., ¶¶ 2-5; NY Action, Am. Compl., ¶¶ 2-3, 5);

- that the scheme resulted in the takeover of Kachkanarsky GOK ("GOK"), Russia's largest vanadium ore mining concern, (Compl., ¶ 6; NY Action, Am. Compl., ¶ 5);

- that the defendants placed GOK in bankruptcy, (Compl., ¶¶ 7-8; NY Action, Am. Compl., ¶ 7);

- that the defendants used the bankruptcy to cause the plaintiffs' shares in GOK to be transferred to the defendants, (Compl., ¶¶ 9, 13; NY Action, Am. Compl., ¶ 8); and

- that the scheme allegedly damaged the plaintiffs in excess of several hundred million dollars, (Compl., ¶ 14; NY Action, Am. Compl., ¶ 22).

Moreover, of the 86 paragraphs that comprise virtually all of the substantive factual allegations of this complaint – which run from paragraph 49 to paragraph 134

---

[11]    Moreover, the *Base Metal Trading* complaint also alleged that New Start and Venitom "are the corporate alter egos, of the Conspirators." (NY Action, Am. Compl., ¶ 93.) *See also Pastewka*, 420 F. Supp. at 642, n.3 (finding that the complaints filed in New York and Delaware were substantively identical despite some "differences in relief" sought).

– 61 paragraphs are exactly or substantively identical to allegations previously set forth in the New York complaint.  (Cohen Dec. at ¶ 4.)  The remarkable similarity is demonstrated by the chart attached as Exhibit A to the Cohen Declaration.

This complaint and the New York complaint are therefore identical, for all practical purposes, because they both allege that the defendants engaged in a racketeering scheme to take over GOK, which allegedly caused hundreds of millions of dollars in harm to the plaintiffs.

**B.     In Analyzing a Motion to Dismiss On *Forum Non Conveniens* Grounds, This Court Will Apply the Same Legal Criteria and Use the Same Material Facts as the New York Court**

The plaintiffs can identify no meaningful difference between the objective legal criteria that this Court would use in analyzing a motion to dismiss based on *forum non conveniens* and that used by the Southern District.  Both Courts are bound to apply the Supreme Court's precedents on *forum non conveniens*, including *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), *Koster v. American Lumbermens Mutual Casualty Co.*, 330 U.S. 518 (1947), *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981), and *Van Cauwenberghe v. Biard*, 486 U.S. 517 (1988).  *See Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 42-43 (3d Cir. 1988); *Base Metal Trading Ltd.*, 98 Fed. Appx. 47, 49, 2004 WL 928165, at *1.  *See also Sibaja v. Dow Chemical Co.*, 757 F.2d 1215, 1218-19 (11th Cir. 1985) (district court must apply federal standards of *forum non conveniens*); *Ravelo Monegro v. Rosa*, 211 F.3d 509, 511 (9th Cir. 2000) (federal *forum non conveniens* standards apply in federal court; collecting cases).  Federal law as to *forum non conveniens* applies even where a case is removed from state court to federal court.  *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993) (where case

was removed from state court, federal district court correctly applied federal law to resolve *forum non conveniens* issue); *Villar*, 990 F.2d at 1498 (in suit removed from state court, "the district court properly applied federal *forum non conveniens* law"); *Sequihua v. Texaco, Inc.*, 847 F. Supp 61, 63-64 (S.D. Tex. 1994) (where case was removed from state court, the "federal district court must apply federal law in deciding *forum non conveniens* issues"). Nor can the plaintiffs show any material factual difference between this action and the *Base Metal Trading* action that would affect the *forum non conveniens* analysis. Although the plaintiffs broadly allege that the Conspirators organized or bought over 100 Delaware entities for "various illegal schemes involving fraud, bribery, and money laundering," and the complaint includes a list of fourteen Delaware-incorporated real estate entities, none of these entities are defendants, and the plaintiffs have identified no Delaware-based witnesses from those entities. (*See* Compl., ¶ 36.) Indeed, the plaintiffs strain to allege how these entities are even remotely linked to the purported scheme to take over GOK. Quite simply, the list does not alter the Southern District's conclusion that "[a]ll of the principle [*sic*] events in this case transpired in Russia." *Base Metal Trading SA*, 253 F. Supp. 2d at 712.

The fact that defendants Venitom and New Start are incorporated in Delaware makes no difference. That was true in *Pastewka* as well, and the case was nonetheless dismissed. *Pastewka*, 565 F.2d at 853 ("it appears that the only reason Delaware was resorted to was that . . . [defendant] Texaco, Inc., a Delaware corporation, may be sued there. The tenuous connection between this dispute and the Southern District of New York, which the Second Circuit found insufficient, was the

presence in the district of some Texaco, Inc., employees who might be witnesses. Delaware lacks even this connection with the dispute"); *see also China Tire Holdings Ltd.,* 91 F. Supp. 2d at 1111 (fact that defendants maintained their headquarters in Ohio did not make Ohio a convenient forum where "the evidence and witnesses in this dispute remain located primarily in China").

More importantly, in the *Base Metal Trading* action, the plaintiffs argued the connections between the dispute and ***all*** of the United States, which of course includes Delaware.  For example, in their memorandum of law opposing the motions to dismiss the New York complaint, the plaintiffs devoted an entire argument point to this dispute's purported connection to the United States, with the following heading: "The US Has a Strong Interest in Protecting Its Citizens From Criminal Conduct and Preventing America From Being Used as a Base for Criminal Conduct and There Is, Therefore, No Unfairness in Asking a New York Jury to Resolve This Dispute."  (Pls. NY Mem. in Opp. to Mot. Dismiss at 102, A 295 - 464.)

The Southern District's *forum non conveniens* dismissal was not based on a conclusion that another court in another state within the United States should hear this dispute.  Rather, the Court found that this dispute has no significant connection to *any forum in the United States*, including Delaware.  As the Southern District repeatedly stated, this dispute belongs in Russia:

- "All of the principle [*sic*] events in this case transpired in Russia and the action's connection to the Southern District of New York is far too attenuated to justify asking the citizens of this district to resolve the parties' dispute," (*Base Metal Trading SA*, 253 F. Supp. 2d at 712);

- "Russia's interest in adjudicating this action is far greater than any interest the United States has in adjudicating this dispute," (*id.* at 712 - 713);

- "The controversy presents issues that are of clear import to Russian citizens that should be resolved by the Russian courts," (*id.* at 713);

- "the case has virtually no connection with the United States," (*id.*);

- "the relevant allegations that may involve witnesses located in the United States pale in comparison to those involving persons and companies located in Russia," (*id.* at 711); and

- "All of the GOK plaintiffs are also complaining about activities that arise from the conduct of business in Russia," (*id.* at 696).

The Second Circuit affirmed, stating, "this action has little or no connection to the United States, and thus little or no claim to the time and attention of an American jury or court." *Base Metal Trading Ltd.*, 98 Fed. Appx. at 51, 2004 WL 928165, at *3.

Thus, since the plaintiffs previously failed to convince the New York courts that their allegations had a connection not merely to New York, but to the United States in general, it necessarily follows that the identical allegations now presented in the current Delaware complaint also fail to have a connection with either Delaware or the United States.

## III.  Even If Plaintiffs Could Demonstrate New Facts Affecting the *Forum Non Conveniens* Analysis, Plaintiffs Should Not be Permitted to Forum Shop by Circumventing Rule 60(b)

To the extent, if any, that the plaintiffs are able to demonstrate any new facts affecting the *forum non conveniens* analysis, then they should have availed themselves of Fed. R. Civ. P. 60(b).  That Rule provides, in relevant part, as follows:

Rule 60.  Relief From Judgment or Order
* * *
(b)    Mistakes;  Inadvertence;  Excusable  Neglect; Newly Discovered Evidence; Fraud, Etc.  On motion and upon such terms as are just, the court may relieve a party . . . . from a final judgment . . . for the following reasons:  (1)

- 27 -

> mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . . or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b).

For example, in *China Tire Holdings Ltd.*, the plaintiff had previously filed RICO and other claims against the defendants in the United States District Court for the Central District of California. *China Tire Holdings Ltd.*, 91 F. Supp. 2d at 1108. The California court dismissed the RICO claim for failure to state a claim and dismissed the remaining claims based on *forum non conveniens*. *Id.* at 1109-10. Plaintiff filed a new action in the United States District Court for the Northern District of Ohio on the same claims against the same defendants. With respect to the RICO claim,[12] the court explained that the plaintiff should have used Fed. R. Civ. P. 60(b) to challenge the California decision rather than bringing a new action in Ohio:

> Rather than include its new factual allegations in a second RICO claim, the plaintiff should have simply filed a motion for relief from judgment with the district court in California. Rule 60(b)(2) of the Federal Rules of Civil Procedure expressly authorizes a court to relieve a party from a final judgment based on newly-discovered evidence.
>
> Yet the plaintiff has sought to circumvent the proper procedure for presenting its newly-discovered evidence by bringing a second set of RICO claims in this Court. The doctrine of claim preclusion prevents the plaintiff from so doing. Consequently, the Court grants the defendants' motion to dismiss the plaintiff's RICO claims.

*Id.* at 1110.

---

[12]    The Ohio court dismissed the remaining claims pursuant to the "general rule" that "a federal court's determination that a matter should be resolved in a foreign forum precludes all other federal district courts from adjudicating the action." *China Tire Holdings Ltd.*, 91 F. Supp. 2d at 1110.

The plaintiffs, no doubt in an attempt to forum shop by avoiding another unfavorable ruling from Judge Koeltl of the Southern District of New York or conceding that there are no new facts that could affect the *forum non conveniens* analysis, have declined to avail themselves of Rule 60(b). As the Third Circuit noted in *Pastewka,* "(t)he only reasons for relieving a party from a final judgment are set forth in Fed. R. Civ. P. 60(b)." *Pastewka*, 565 F.2d at 854, n.5. The plaintiffs here never even asked the New York courts if they could get relief under Fed. R. Civ. P. 60(b).

Adhering to Rule 60(b) is, of course, more efficient for the courts and the litigants. Here, this dispute was pending before the Southern District for more than two years before it was dismissed. During that time, Judge Koeltl extensively analyzed voluminous material submitted by the parties, including more than 50 declarations and affidavits, 28 briefs, and more than 20,000 pages of exhibits. In addition, Judge Koeltl, as well as Judge Maas, reviewed numerous applications and letters submitted by the parties, held several conferences with the parties, and issued orders on various issues raised by the parties, often involving plaintiffs' repeated attempts to lift the stay of discovery ordered by the Court. Finally, the Second Circuit reviewed everything that the parties put before it, including many of the same declarations and exhibits that Judge Koeltl considered.

By bringing a new but duplicative action in Delaware, these plaintiffs are asking this Court to familiarize itself with all these materials in order to determine the same issues that have already been determined. This is a burden that this Court

should not have to bear. Plaintiffs should not be permitted to circumvent Rule 60(b) in this fashion.

### IV.    Plaintiffs Should be Enjoined from Re-filing This Action

The All Writs Act, 28 U.S.C. § 1651, authorizes this Court to "issue all writs necessary or appropriate in aid of" its jurisdiction, including injunctions to protect and effectuate its judgments. *Baker v. Gotz*, 415 F. Supp. 1243, 1247 (D. Del. 1976), *aff'd without opinion*, 546 F.2d 415 (3d Cir. 1976). A district court may thus enjoin plaintiffs in a civil suit from bringing future actions based on the same operative facts that have been the subject of a district court decision. *Gambocz v. Yelencsics*, 468 F.2d 837, 842 (3d Cir. 1972); *Albright v. R.J. Reynolds Tobacco Co.*, 463 F. Supp. 1220, 1228-29 (W.D. Pa. 1979). The Anti-Injunction Statute, 28 U.S.C. § 2283, does not restrict the scope of this injunction to federal courts because there are no pending state court proceedings. *E.g. Villar*, 990 F.2d at 1499; *Albright*, 463 F. Supp. at 1229.

This Court can and should exercise its authority to protect its judgment of dismissal, and the judgment in the *Base Metal Trading* action, by enjoining plaintiffs from bringing future actions based on the underlying facts asserted here. The New York judgment rests, *inter alia*, on the litigated finding that, in the words of the Second Circuit, "this action has little or no connection to the United States, and thus little or no claim to the time and attention of an American jury or court." *Base Metal Trading Ltd.*, 98 Fed. Appx. at 51, 2004 WL 928165, at *3. Plaintiffs should not be allowed to further evade that judgment, and the judgment to the same effect in this case, by filing repetitive actions in a continued effort to shop for a forum that will somehow disregard that truth. Plaintiffs should not be allowed to force defendants to

continue to defend this litigation in the United States or further to burden courts in the country whose time would be better spent adjudicating claims that do merit their time and attention.

*Villar* is on point. The plaintiffs in that case had two identical cases dismissed on *forum non conveniens* grounds in California state and federal courts, and a Texas district court dismissed the case before it (after removal) based on the *res judicata* effect of those dismissals and, alternatively, the merits of the defendants' *forum non conveniens* motion. *Villar*, 990 F.2d at 1498. The Texas district court also, *sua sponte*, enjoined plaintiffs from bringing further suit in any other federal or state court in the United States. The Fifth Circuit affirmed both grounds of dismissal. *Id.* It also affirmed the injunction, stating in words that could have been written for this case:

> Federal courts have repeatedly urged the Villars' [sic] to sue in the Philippines. Nonetheless, the Villars continue to bring these frivolous suits in the United States. The Villars seem determined to pursue this abusive litigation in federal courts until ordered to stop. Under these circumstances, it was appropriate for the district court to enjoin the Villars from bringing any future litigation based on the underlying facts in this case, including future litigation in state courts.

*Id.* at 1499.

Accordingly, because direct estoppel bars the continuation of this case, the judgment of dismissal should include an injunction barring plaintiffs from re-filing anywhere in the United States another case based on the underlying facts asserted in the complaint.

## CONCLUSION

In opposing the *forum non conveniens* motion, these plaintiffs here have had a full and fair opportunity to assert every one of their United States contacts. After carefully considering all of their arguments, the District Court for the Southern District of New York dismissed the plaintiffs' case, and that dismissal was affirmed on appeal. These plaintiffs are directly estopped from relitigating their claims here. For the same reason, these plaintiffs should be enjoined from re-filing their claims against defendants.

The defendants respectfully request that this Court dismiss the plaintiffs' complaint with prejudice and enjoin the plaintiffs from re-filing their claims.

Respectfully submitted,

Attorneys for Defendants Arnold Kislin:

 /s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)       Lisa C. Cohen
Karen V. Sullivan (DSBA No. 3872)           Schindler Cohen & Hochman LLP
Oberly, Jennings & Rhodunda, P.A.           100 Wall Street
800 Delaware Avenue, Suite 901              15th Floor
PO Box 2054                                 New York, NY  10005
Wilmington, DE 19899                        (212) 277-6300
(302) 576-2000

                                            Lawrence S. Goldman
                                            Elizabeth Johnson
                                            The Law Offices of Lawrence S. Goldman
                                            500 Fifth Ave., 29th Floor
                                            New York, NY 10110-2900
                                            (212) 997-7499

Attorneys for Defendants New Start Group
Corp. and Venitom Group:

/s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)       Richard J. Schaeffer
Karen V. Sullivan (DSBA No. 3872)           Peter J. Venaglia
Oberly, Jennings & Rhodunda, P.A.           Laura D. Sullivan
800 Delaware Avenue, Suite 901              Dornbush, Schaeffer, Strongin &
PO Box 2054                                 Weinstein, LLP
Wilmington, DE 19899                        747 Third Avenue, 11th Floor
(302) 576-2000                              New York, NY 10017
                                            (212) 759-3300


Attorneys for Defendant Oleg Deripaska:

/s/ Collins J. Seitz, Jr.
Collins J. Seitz, Jr. (DSBA No. 2237)       Rodney F. Page
Kevin F. Brady (DSBA No. 2248)              Michael G. Biggers
Connolly Bove Lodge & Hutz LLP              Bryan Cave LLP
1007 North Orange Street                    700 13th Street, N.W.
P.O. Box 2207                               Washington, D.C. 20005-3960
Wilmington, DE 19899                        (202) 508-6002
(302) 658-9141


Attorneys for Defendant Evraz Holding:

/s/ William M. Lafferty
William M. Lafferty (DSBA No. 2755)         David H. Herrington
Morris, Nichols, Arsht & Tunnell            Vitali Rosenfeld
Chase Manhattan Centre, 18th Floor          Cleary Gottlieb Steen & Hamilton LLP
1201 North Market Street                    One Liberty Plaza
P.O. Box 1347                               New York, NY 10006
Wilmington, DE 19899-1347                   (212) 225-2266
(302) 575-7341

Attorneys for Defendant MDM Bank:

 /s/ Richard I.G. Jones, Jr.

| | |
|---|---|
| Richard I.G. Jones, Jr. (DSBA No. 3301) | Joel B. Kleinman |
| Ashby & Geddes | Steven J. Roman |
| 222 Delaware Avenue, 17th Floor | David H. Greenberg |
| P.O. Box 1150 | Dickstein Shapiro Morin & Oshinsky LLP |
| Wilmington, DE 19899 | 2101 L Street NW |
| (302) 654-1888 | Washington, DC 20037-1526 |
| | (202) 785-9700 |

Attorneys for Defendant Ural-Gorno
Metallurgical Company:

 /s/ Charles M. Oberly, III

| | |
|---|---|
| Charles M. Oberly, III (DSBA No. 743) | William H. Devaney |
| Karen V. Sullivan (DSBA No. 3872) | Heard & O'Toole LLP |
| Oberly, Jennings & Rhodunda, P.A. | 405 Lexington Ave, Floor 62 |
| 800 Delaware Avenue, Suite 901 | New York, NY 10174 |
| PO Box 2054 | (212) 307-5500 |
| Wilmington, DE 19899 | |
| (302) 576-2000 | |

Attorneys for Defendant Iskander
Makmudov:

/s/ Charles M. Oberly, III

| | |
|---|---|
| Charles M. Oberly, III (DSBA No. 743) | William H. Devaney |
| Karen V. Sullivan (DSBA No. 3872) | Heard & O'Toole LLP |
| Oberly, Jennings & Rhodunda, P.A. | 405 Lexington Ave, Floor 62 |
| 800 Delaware Avenue, Suite 901 | New York, NY 10174 |
| PO Box 2054 | (212) 307-5500 |
| Wilmington, DE 19899 | |
| (302) 576-2000 | |

Attorneys for Defendant Mikhail Chernoi:

/s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)          Brian Maas
Karen V. Sullivan (DSBA No. 3872)              Cameron A. Myler
Oberly, Jennings & Rhodunda, P.A.              Frankfurt Kurnit Klein & Selz PC
800 Delaware Avenue, Suite 901                 488 Madison Avenue, 9th Floor
PO Box 2054                                     New York, NY 10022
Wilmington, DE 19899                            (212) 980-0120
(302) 576-2000


Attorneys for Defendant Mikhail Nekrich:

/s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)          Paul R. Grand
Karen V. Sullivan (DSBA No. 3872)              Edward M. Spiro
Oberly, Jennings & Rhodunda, P.A.              Morvillo, Abramowitz, Grand, Iason &
800 Delaware Avenue, Suite 901                 Silberberg, P.C.
PO Box 2054                                     565 Fifth Avenue
Wilmington, DE 19899                            New York, NY  10017
(302) 576-2000                                  (212) 880-9510

Dated: April 22, 2005