IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
DAVIS INTERNATIONAL, LLC, HOLDEX, : 
LLC, FOSTON MANAGEMENT, LTD, and :
OMNI TRUSTHOUSE, LTD, :
 :
                    Plaintiffs, :
      v. : Case No. 04-1482-GMS
 :
NEW START GROUP CORP., VENITOM :
CORP., PAN-AMERICAN CORP., MDM :
BANK, URAL-GORNO METALURAGICAL :
COMPANY, EVRAZ HOLDING, MIKHAIL :
CHERNOI, OLEG DERIPASKA, ARNOLD :
KISLIN, MIKHAIL NEKRICH, and :
ISKANDER MAKMUDOV, :
 :
                    Defendants. :
---------------------------------------------------------------x

**EXHIBITS TO OPENING BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT PURSUANT TO
THE DOCTRINE OF DIRECT ESTOPPEL AND
<u>TO ENJOIN PLAINTIFFS FROM RE-FILING THIS ACTION</u>**

Attorneys for Defendant Arnold Kislin:

| | |
|---|---|
| Charles M. Oberly, III (DSBA No. 743) | Lisa C. Cohen |
| Karen V. Sullivan (DSBA No. 3872) | Schindler Cohen & Hochman LLP |
| Oberly, Jennings & Rhodunda, P.A. | 100 Wall Street |
| 800 Delaware Avenue, Suite 901 | 15th Floor |
| PO Box 2054 | New York, NY 10005 |
| Wilmington, DE 19899 | (212) 277-6300 |
| | |
| | Lawrence S. Goldman |
| | Elizabeth Johnson |
| | The Law Offices of Lawrence S. Goldman |
| | 500 Fifth Ave., 29th Floor |
| | New York, NY 10110-2900 |
| | (212) 997-7499 |

Attorneys for Defendants New Start
Group Corp. and Venitom Group:

| | |
|---|---|
| Charles M. Oberly, III (DSBA No. 743) | Richard J. Schaeffer |
| Karen V. Sullivan (DSBA No. 3872) | Peter J. Venaglia |
| Oberly, Jennings & Rhodunda, P.A. | Laura D. Sullivan |
| 800 Delaware Avenue, Suite 901 | Dornbush, Schaeffer, Strongin & |
| PO Box 2054 | Weinstein, LLP |
| Wilmington, DE 19899 | 747 Third Avenue, 11th Floor |
| (302) 576-2000 | New York, NY 10017 |
| | (212) 759-3300 |

Attorneys for Defendant Oleg Deripaska:

| | |
|---|---|
| Collins J. Seitz, Jr. (DSBA No. 2237) | Rodney F. Page |
| Kevin F. Brady (DSBA No. 2248) | Michael G. Biggers |
| Connolly Bove Lodge & Hutz LLP | Bryan Cave LLP |
| 1007 North Orange Street | 700 13th Street, N.W. |
| P.O. Box 2207 | Washington, D.C. 20005-3960 |
| Wilmington, DE 19899 | (202) 508-6002 |
| (302) 658-9141 | |

Attorneys for Defendant Evraz Holding:

| | |
|---|---|
| William M. Lafferty (DSBA No. 2755) | David H. Herrington |
| Morris, Nichols, Arsht & Tunnell | Vitali Rosenfeld |
| Chase Manhattan Centre, 18th Floor | Cleary Gottlieb Steen & Hamilton LLP |
| 1201 North Market Street | One Liberty Plaza |
| P.O. Box 1347 | New York, NY 10006 |
| Wilmington, DE 19899-1347 | (212) 225-2266 |
| (302) 575-7341 | |

Attorneys for Defendant MDM Bank:

| | |
|---|---|
| Richard I.G. Jones, Jr. (DSBA No. 3301) | Joel B. Kleinman |
| Ashby & Geddes | Steven J. Roman |
| 222 Delaware Avenue, 17th Floor | David H. Greenberg |
| P.O. Box 1150 | Dickstein Shapiro Morin & Oshinsky LLP |
| Wilmington, DE 19899 | 2101 L Street NW |
| (302) 654-1888 | Washington, DC 20037-1526 |
| | (202) 785-9700 |

Attorneys for Defendant Ural-Gorno
Metallurgical Company:

| | |
|---|---|
| Charles M. Oberly, III (DSBA No. 743) | William H. Devaney |
| Karen V. Sullivan (DSBA No. 3872) | Heard & O'Toole LLP |
| Oberly, Jennings & Rhodunda, P.A. | 405 Lexington Ave, Floor 62 |
| 800 Delaware Avenue, Suite 901 | New York, NY 10174 |
| PO Box 2054 | (212) 307-5500 |
| Wilmington, DE 19899 | |
| (302) 576-2000 | |

Attorneys for Defendant Iskander
Makmudov:

| | |
|---|---|
| Charles M. Oberly, III (DSBA No. 743) | William H. Devaney |
| Karen V. Sullivan (DSBA No. 3872) | Heard & O'Toole LLP |
| Oberly, Jennings & Rhodunda, P.A. | 405 Lexington Ave, Floor 62 |
| 800 Delaware Avenue, Suite 901 | New York, NY 10174 |
| PO Box 2054 | (212) 307-5500 |
| Wilmington, DE 19899 | |
| (302) 576-2000 | |

Attorneys for Defendant Mikhail Chernoi:

| | |
|---|---|
| Charles M. Oberly, III (DSBA No. 743) | Brian Maas |
| Karen V. Sullivan (DSBA No. 3872) | Cameron A. Myler |
| Oberly, Jennings & Rhodunda, P.A. | Frankfurt Kurnit Klein & Selz PC |
| 800 Delaware Avenue, Suite 901 | 488 Madison Avenue, 9th Floor |
| PO Box 2054 | New York, NY 10022 |
| Wilmington, DE 19899 | (212) 980-0120 |
| (302) 576-2000 | |

Attorneys for Defendant Mikhail Nekrich:

| | |
|---|---|
| Charles M. Oberly, III (DSBA No. 743) | Paul R. Grand |
| Karen V. Sullivan (DSBA No. 3872) | Edward M. Spiro |
| Oberly, Jennings & Rhodunda, P.A. | Morvillo, Abramowitz, Grand, Iason & |
| 800 Delaware Avenue, Suite 901 | Silberberg, P.C. |
| PO Box 2054 | 565 Fifth Avenue |
| Wilmington, DE 19899 | New York, NY 10017 |
| (302) 576-2000 | (212) 880-9510 |

Dated: April 22, 2005

# TABLE OF CONTENTS

Declaration of Lisa C. Cohen (attached as Exhibit 1 to Oberly Affidavit, D.I. 48) ........................1

Complaint (contained in Appendix, Volume 1 at A-1 – A-30, D.I. 51) ..........................................2

First Amended Complaint, dated August 3, 2001, filed in *Base Metal Trading* (contained in Appendix, Volume II at A-176 – A-294, D.I  52) ..........................................................................3

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

----------------------------------------------------------------x
DAVIS INTERNATIONAL, LLC, HOLDEX, LLC,
FOSTON MANAGEMENT, LTD, and
OMNI TRUSTHOUSE, LTD,

                        Plaintiffs,

- against –

NEW START GROUP CORP., VENITOM CORP.,
PAN-AMERICAN CORP., MDM BANK,
URAL-GORNO METALURAGICAL COMPANY,
EVRAZ HOLDING,
MIKHAIL CHERNOI, OLEG DERIPASKA,
AROLD KISLIN, MIKHAIL NEKRICH, and
ISKANDER MAKMUDOV,

                        Defendants.
----------------------------------------------------------------x

Case No. 04-1482
(GMS)

## DECLARATION OF LISA C. COHEN

LISA C. COHEN, under penalty of law, hereby declares:

1. I am a practicing attorney and a partner in the law firm of Schindler Cohen & Hochman LLP, located at 100 Wall Street, 15th Floor, New York, New York 10005. I am counsel to Arnold Kislin, one of the Defendants in this action. I submit this affidavit in support of the motion to dismiss the complaint pursuant the doctrine of direct estoppel and to enjoin Plaintiffs from seeking further relief against these Defendants in the United States based upon the allegations set forth in the complaint. All of the Defendants have joined in making that motion.

2. Mr. Kislin, along with seven of the other Defendants here, were also Defendants in an earlier action filed by these same Plaintiffs, and others, in the Southern District of New York, titled *Base Metal Trading SA, et al. v. Russian Aluminum.* Nearly

all of the substantive factual allegations made in Plaintiffs' current complaint were included in the pleadings in the *Base Metal Trading* action. (A copy of the complaint is included in the appendix that accompanies Defendants' motions at A 1-30; a copy of the *Base Metal Trading* amended complaint is at A 176-294.) That case was dismissed by the Hon. John G. Koeltl on March 27, 2003, on the ground of *forum non conveniens*, and that dismissal was unanimously and summarily affirmed by the Court of Appeals for the Second Circuit on April 30, 2004. *Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681 (S.D.N.Y. 2003), *aff'd*, 98 Fed. Appx. 47, 2004 WL 928165 (2d Cir. 2004).

3.  The table attached hereto as Exhibit A compares the substantive factual allegations set forth in Plaintiffs' current complaint (*i.e.*, ¶¶ 49-134), as well as the headings, with the relevant allegations and headings set forth in the amended complaint in *Base Metal Trading*. On occasion, so as to aid the comparison, the corresponding paragraphs from these pleadings are grouped together.

4.  Of the 86 paragraphs that comprise paragraphs 49-134 of the complaint, 61 are identical to or substantially similar to allegations previously made by these Plaintiffs in the *Base Metal Trading* action. Most, if not all, of the allegations in the remaining twenty-five paragraphs of the Plaintiffs' current complaint were known to the Southern District before it dismissed the Plaintiffs' case in the *Base Metal Trading* action.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 18, 2005, in New York, New York.

_____
Lisa C. Cohen

# EXHIBIT A

# COMPLAINT COMPARISON CHART

| Allegations Made by These Plaintiffs in the *Davis International, LLC* Action | Allegations Previously Made by These Plaintiffs in the *Base Metal Trading* Action |
|---|---|
| **The Initial Extortion** | **The Initial Extortion** |
| 49. Prior to December 1998, Jalol Khaidarov ... had worked for Chernoi, Deripaska, and Makmudov as a financial advisor. In December 1998, Khaidarov established an independent career and began to serve as the general director of GOK in April 1999. | 341. Prior to December 1998, [Jalol] Khaidarov had worked for Chernoi and Makhmudov as a financial advisor. In December 1998, Khaidarov established an independent career and began to serve as the general director of GOK . . . in April 1999. |
| 50. In April 1999, Khaidarov met with Chernoi and Makmudov in Chernoi's apartment in the center of Paris regarding GOK. Chernoi told Khaidarov that "there were a lot of clever people like Felix Lvov, Oleg Kantor, Vadim Yafasov, but sometimes they die. Don't be too clever. You have a chance to continue working with us. To that end, you should persuade the shareholders of GOK to transfer their shares to us. Some people refuse my offers. But for the rest of their lives, they wear bulletproof jackets. So what's the sense? Think it over." This was a direct threat on the life of Khaidarov if he did not cooperate with Chernoi because all of the above persons had been murdered in Russia. | 342-43. In April 1999, Khaidarov met . . . with Chernoi and Makhmudov in Chernoi's apartment in the center of Paris regarding GOK. . . . Chernoi told Khaidarov that "there were a lot of clever people like Felix Lvov, Boris Kantor, Yafiasov, but sometimes they die. Don't be too clever. You have a chance to continue working with us. To that end, you should persuade the shareholders of GOK to transfer their shares to us. Some people refuse my offers. But for the rest of their lives, they wear bullet proof jackets. So what's the sense? Think it over." This was a direct threat on the life of Khaidarov if he did not cooperate with Chernoi. |

| | |
|---|---|
| 51. By May or June 1999, the controlling shareholders of GOK agreed preliminarily to sell 20% of their shares to a company controlled by the Conspirators in response to the extortion. The GOK controlling shareholders hoped that this would satisfy the Conspirators. The Conspirators made a down payment of $5 million for these shares, which was wired through a bank in the United States to an account held on behalf of the GOK shareholders. | 344-45. By May-June, 1999, the controlling shareholders of GOK agreed preliminarily to sell 20% of their shares to a company controlled by the Conspirators in response to the extortion. The GOK controlling shareholders hoped that this would satisfy the Conspirators. [The Conspirators] made a down payment of $5 million for these shares, which was wired through a bank in the United States to an account held on behalf of the GOK shareholders. |
| 52. Several months later, Makmudov told Khaidarov that the Conspirators needed a controlling share of GOK, and Chernoi demanded that Khaidarov arrange for 51 % of the shares of GOK to be transferred to the Conspirators. | 346. Several months later, Makhmudov … told Khaidarov that the Conspirators needed a controlling share of GOK, and Chernoi demanded that Khaidarov arrange for additional shares of GOK to be transferred to the Conspirators. |
| 53. In response, the GOK controlling shareholders decided that it was impossible to cooperate or satisfy Chernoi and Makmudov, short of simply giving up their interests for far less than their worth. As a result, the GOK shareholders returned the $5 million … and the purported transfer of shares did not take place. | 347. In response, the GOK controlling shareholders decided that it was impossible to cooperate or satisfy Chernoi and Makmudov, short of simply giving up their interests for far less than their worth. As a result, the GOK shareholders returned the $5 million and the purported transfer of shares did not take place. |
| **The Malevsky Extortion** | **The Malevsky Extortion** |
| 54-55. Immediately thereafter, in November 1999, Makmudov asked Khaidarov to meet with him at the Luxor Restaurant at the Metropole Hotel in Moscow. Shortly after the meeting began, Makmudov called Malevsky, who then joined the meeting, accompanied by five armed thugs; . . . Makmudov demanded that Khaidarov arrange for the GOK controlling shareholders to transfer 51% of Gok's shares to Chernoi without payment. | 349-50. Immediately thereafter, in November 1999, Khaidarov was asked to meet with Makhmudov at the Luxor Restaurant at the Metropole Hotel in Moscow. Shortly after the meeting began, Makhmudov called Malevsky, who then joined the meeting, accompanied by five armed thugs. . . . Makhmudov demanded that Khaidarov arrange that the GOK controlling shareholder transfer one-half of their shares to Chernoi without payment. |

| | |
|---|---|
| 56-57. Khaidarov said he thought Makmudov was crazy, but that he would transmit the message. Malevsky then told Khaidarov, "What do you think you're saying? This is the last time that you will leave here alive." | 351. Khaidarov said he thought Makhmudov was crazy, but that he would transmit the message. Malevsky then told Khaidarov, "What do you think you re saying? This is the last time that you will leave here alive." |
| **The Bribery of Governor Roussel** | **The Bribery of Governor Roussel** |
| 58. As of 1999, Eduard Roussel ("Roussel") was the Governor of the Sverdlovsk Oblast, where GOK was located. | 352. As of 1999, Eduard Roussel ("Roussel") was the Governor of the Sverdlovsk Oblast, where GOK was located. |
| 59. In that year, meetings were arranged between representatives of the Conspirators including Makmudov, to pay Roussel for his "protection" and "help." | 353. In 1999, meetings were arranged between representatives of the Conspirators including Makhmudov . . . to pay Roussel for his "protection" and "help." |
| 60-61. Payments were then wired by Pan-American through banks in the United States to MDM Bank for conversion into cash for payment at the direction of Roussel. These payments included the illegal payment of $850,000 in cash for Roussel's election campaign -- a payment that was widely reported in the Russian press. | 354. . . . [P]ayments were made by Pan-American . . . through banks in the United States to MDM Bank for conversions into cash for payment at the direction of Roussel. These payments included the illegal payment of $850,000 in cash for Roussel's election campaign -- a payment that was widely reported in the Russian press. |
| 62. In return for these payments, Roussel agreed to support the Conspirators' efforts to do "business" in Sverdlovsk Oblast. | 355. In return for these payments, Roussel agreed to support the Conspirators' efforts to do business in Sverdlovsk Oblast. |
| **The Physical Takeover of GOK** | **The Physical Takeover of GOK** |
| 63. On or about January 28, 2000, the Conspirators took over GOK by sending armed persons to take physical control of the plant. The takeover of GOK was widely covered by leading Russian TV and media. | 356. On or about January 28, 2000, [Conspirators] sent a small army of armed thugs into GOK to take over the company. . . . |
| 64. By threat of physical harm, the Conspirators caused four of the seven member board of directors of GOK in the | 357. By threat of physical harm, Makhmudov and Chernoi caused four of the seven member board of directors of GOK to vote |

| | |
|---|---|
| absence of a quorum, which according to the bylaws was five to vote to remove Khaidarov as general director and to replace him with Andrey Kozitsin ("Kozitsin"), an agent of the Conspirators. | to remove Khaidarov as general director and to replace him with Andrey Kozitsin, an agent of the Conspirators. This violated the charter of GOK, which required five board members to vote to remove the general director. |
| 65. Although the lower court order approving this resolution of the board of directors was invalidated by a directive from a member of the Supreme Court of Russia, which remanded the case for reconsideration, the lower court failed to conduct a hearing to reconsider its order for over two years and, as of the filing of this Complaint, has yet to decide the matter. | |
| 66. The three remaining board members initially refused to succumb to the threats and filed criminal complaints with the Prosecutors of the Kachkanar and Sverdlovsk areas, requesting initiation of the criminal proceedings in connection with the illegal takeover. | 358. The three remaining board members initially refused to succumb to the threats and filed criminal complaints with the Prosecutors of the Kachkanar and Sverdlovsk areas, requesting initiation of the criminal proceedings in connection with the illegal takeover. |
| 67. Malevsky's people threatened the three resisting directors that their families would be killed. Two of the remaining directors then agreed to support the Conspirators and, in return, received bribes in the form of expensive automobiles and apartments in Moscow. | 360. . . . Malevsky's people threatened the three resisting directors that their families would be killed. Two of the remaining directors then agreed to support the Conspirators and, in return, received bribes in the form of expensive automobiles and apartments in Moscow. |
| 68. On information and belief, these apartments and automobiles were purchased with cash from MDM Bank which had been wired through banks in the United States from Pan-American or another company associated with the Conspirators. | 361. Upon information and belief, these apartments and automobiles were purchased with cash from MDM Bank which had been wired though banks in the United States from Pan American . . . or another company associated with the Conspirators. |

| **Makmudov's Next Threat** | **Makhmudov's Threat** |
|---|---|
| 69. After the physical takeover of GOK, one of Makmudov's men met with Khaidarov. | 362. After the illegal takeover of GOK, one of Makhmudov's men met with Khaidarov. . . . |
| 70. The man said that the Conspirators knew that Khaidarov and the GOK shareholders could fight them with complaints to the authorities and lawsuits in Russia. The man also said that the Conspirators also knew that Khaidarov had relatives in Tashkent and that his wife and son were then in England, and threatened harm to them if Khaidarov resisted the takeover. | 363-64. The man said that the Conspirators knew that Khaidarov and the GOK shareholders could fight them with complaints to the authorities and lawsuits in Russia. The man said that the Conspirators also knew that Khaidarov had relatives in Taskent and that his wife and son were then in England, and threatened harm to them if Khaidarov resisted the takeover. |
| **The Initial Efforts To Fight The Illegal Takeover** | **The Initial Efforts To Fight The Illegal Takeover** |
| 71. On or about March 4, 2000, shareholders of GOK conducted a meeting to invalidate the decision of the board which removed Khaidarov as the general director. | 365. On or about March 4, 2000, shareholders of GOK conducted a meeting to invalidate the . . . decision of the board which removed Khaidarov as the general director. |
| 72. The meeting of shareholders took place on a side of the road near Kachkanar. | 367. [T]he meeting of shareholders took place on a side of the road near Kachkanar. |
| 73. The shareholders adopted a resolution invalidating the decision of the board meeting, elected a new board of directors, and expressed confidence in Khaidarov as general director of GOK. | 368. The shareholders adopted a resolution invalidating the decision of the . . . board meeting, elected a new board of directors, and expressed confidence in Khaidarov as general director of GOK. |

| **Malevsky's Final Threat** | **Malevsky's Final Threat** |
|---|---|
| 74. . . . Malevsky met with Khaidarov at the Balchug-Kempinsky Hotel in Moscow in late February or early March 2000. There, he said to Khaidarov: "What are you doing? It's going to end badly for you. Nobody will help. Not the FSB (Federal Security Service). Not the MVD (Ministry of Interior Affairs)." Malevsky was sending the message that the Conspirators controlled government agencies and that Khaidarov and the GOK shareholders had a "last chance" to give up. | 369-70. Malevsky met with Khaidarov at the Balchug-Kempinsky Hotel in Moscow in late February, early March 2000. There, he said to Khaidarov: "What are you doing? It's going to end badly for you. Nobody will help. Not the FSB (Federal Security [sic] Service). Not the MVD (Ministry of Interior Affairs)." Malevsky was sending the message that the Conspirators controlled government agencies and that Khaidarov and the GOK shareholders had a "last chance" to give up. |
| **The Creation of the False Debt of GOK** | **The Creation of the False Debt of GOK** |
| 75. Recognizing that the shareholders of GOK had an opportunity to reacquire control, the Conspirators arranged for GOK to incur massive false debts prior to placing it in a sham bankruptcy. | 371. Recognizing that the shareholders of GOK . . . had an opportunity to reacquire control, the Conspirators arranged for GOK to incur massive false debts prior to placing it in bankruptcy. |
| 76. The Conspirators and MDM Bank arranged for Andrey Kozitsin, who was acting as general manager of GOK, to enter into a number of sham transactions. The end result of the sham transactions was that a shell company, Lebaut, during the period of several days in the middle of February, became a holder of demand promissory notes issued by GOK with the face value of about $39 million through the following scheme:<br><br>76a. On or about January 28, 2000 – the very day of the physical takeover of GOK – Kozitsin had GOK enter into a sham Joint Venture Agreement (the "JV Agreement") with a Russian company named Svyatogor, which was controlled by the Conspirators and which is currently a subsidiary of UGMK. | 372-73. The Conspirators and MDM Bank arranged for [Andrey] Kozytsin, who was . . . acting as general manager of GOK, to enter into a number of sham transactions. The end result of the sham transactions was that a small company, Leybout, during the period of several days in the middle of February, became a holder of demand promissory notes issued by GOK with the face value of about $39 million through the following scheme.<br><br>374. . . . [O]n or about January 28, 2000 – the very day of the GOK Takeover – [Kozytsin] had GOK enter into a Joint Venture Agreement (the "JV Agreement") with a Russian company named Svyatogor. Pursuant to the JV Agreement, GOK was to contribute funds to the joint venture. |