<u>IN THE BOW STREET MAGISTRATES COURT</u>

<u>BETWEEN THE GOVERNMENT OF THE RUSSIAN FEDERATION
-v- DMITRY MARUEV and NATALYA CHERNYSHEVA</u>

The Russian Government seek the extradition of these two defendants in respect of conduct which had it occurred within the United Kingdom would have constituted the offences of conspiracy to defraud.

In Mr Maruev's case, it is said that between the 1st November 1997 and 25th December 1997 he conspired together with Natalya Chernysheva, Mikhail Khodorkovsky and others to defraud the Government of Russia.

Miss Chernysheva is similarly charged and in addition faces an allegation that between the 31st December 1993 and the 1st January 1995 conspired together with Mikhail Khordorkovsky and other persons to defraud the Property Foundation of Murmansk.

The proceedings are brought under the Extradition Act 2003 and the Government of Russia is a Category 2 Territory.

Both defendants object to the making of an extradition order on a number of grounds. They include objections under Section 81A and under Article 18 of the European Convention on Human Rights, alleging that the Prosecution in respect of each of them is politically motivated. In a similar and closely connected objection, they maintain under Section 81(b) that they will be prejudiced at their trial or punished or detained by reason of their political opinions.

The Extradition proceedings are challenged also on the grounds that it would now be unjust or oppressive to extradite them by virtue of the passage of time said to have occurred since the Extradition Offences are alleged to have been committed and that in any event the conduct alleged does not amount to an extradition crime.

I have been provided with a very substantial amount of background material, a bound bundle of some 25 authorities and I have considered a number of expert reports. I have had the benefit of hearing evidence from Professor Bowring, Dr Gladyshev, Professor Pomorski, Professor Sakwa and Professor Chinokaev. All these witnesses gave evidence on behalf of the defendants and the Russian Government has indicated that they do not intend to call evidence in rebuttal.

Although the Extradition Act 2003 sets out a sequence of decisions that this court has to make, I am invited by both the Government and the Defence to give a ruling at this point in connection with the objection raised under Section 81, namely whether the charges to be preferred against these defendants are politically motivated and whether the defendants would be prejudiced at their trial because of their political opinions. I am satisfied that it is right to give this indication at this stage, although should there be any further representations or evidence I would feel obliged to review this decision in the light of any such evidence.

The Prosecution arises out of two separate but connected allegations. Both defendants are charged with the conspiracy to defraud the Government of the Russian Federation, which conspiracy has become known in these proceedings as the "Volgograd allegation". Miss Chernysheva is also charged with a conspiracy to defraud the Property Foundation of Murmansk, which conspiracy has become known as the Apatit allegation. The common feature to both these allegations is that the defendants were senior officials within the Yukos Company which was at the time a flourishing privatized Oil Company with very substantial reserves. The Chief Executive of the Company was Michael Khordorkovsky.

In 1994 Miss Chernysheva together with Mr Khordorkovsky and Mr Lebedev and other entered into an agreement to purchase 20% of the shares of a public company called Apatit. That shareholding would have given them control of the company. The agreement provided for the purchase of the shares at a substantially reduced value but with the additional undertaking and commitment to invest a very substantial amount of money in the Apatit Company. The tender was accepted and the shares transferred. From the evidence before me it is apparent that some of the investment took place but a substantial amount of the promised funds were not invested in Apatit. However, I am satisfied on the documentation presented to me

that there was no attempt to hide or disguise the finances of the company, and indeed the matter was the subject of civil proceedings, which were settled.

It was some 8 years later that it seems that President Putin became involved and I have seen a report prepared by the Prosecutor and dated April 2003 advising the President that there were no grounds for taking action. Despite that decision, a prosecution was launched 2 months later. I have not been advised of any new evidence that had come to light between April 2003 and June 2003, and I have reached the inevitable conclusion that President Putin directed that Miss Chernysheva and Mr Khordorkovsky should be prosecuted. Although this finding would amount to cogent evidence that the Prosecution was politically motivated, it could not be regarded as conclusive and it is necessary to examine the background to the events leading to the liquidation of the Yukos Company.

The case against the two defendants is that they were part of a group, which included Mr Khordorkovsky, who fraudulently obtained 76 billion roubles by means of fictitious agreements, causing loss to the Russian Government, or to the local Authority of Volgograd. Mr Eadie, on behalf of Mr Maruyev, most expertly guided me through a complicated set of transactions, the essence of which was to establish that no loss had been sustained to the Russian Government because the appropriate sum had been paid by tax and that no loss had been sustained by Volgograd who had been paid by promissory notes and oil products to the same value. Although this issue may be relevant to consideration of whether the conduct amounts to an extradition offence, it is relevant at this stage because it is submitted on behalf of the Defence that the Russian Government has deliberately concealed certain facts which would otherwise have demonstrated that there was no offence committed. In doing so it is suggested that this omission is further evidence that the Prosecution is not in good faith and is politically motivated.

I am satisfied from the documentation that a full investigation was opened into the Volgograd matter in 1998 and that it concluded in March 1999 with a finding that no criminal offences had been committed.

In 2000 President Putin publicly announced his intention to "liquidate the Oligarchs as a class" but by the year 2003 Mikhail Khordorkovsky and his Yukos company had

become financially and politically influential. It was in the autumn of 2003 that the Russian Government demanded from Yukos sums of over 40 billion dollars by way of tax for the years 2000-2003 and, in 2004 having raised these assessments, immediately instructed the bailiffs to seize the assets of the company. The assets were then sold at a substantially reduced value to a company that was the sole bidder in an auction. That Company then sold the assets on to the Government. In October Mr Khordorkovsky was arrested. The offices of Yukos' lawyers were searched and other Yukos employees; in particular Mr Pichugin and Mr Lebedev were arrested. All were denied bail.

I am satisfied on the evidence of Professor Bowring and the evidence of Dr Gladyshev that Mr Khordorkovsky was seen as a powerful political opponent of Mr Putin. In view of the facts that I have outlined I am satisfied that it is more likely than not that the Prosecution of Mr Khordorkovsky is politically motivated. As the allegation against these defendants is on the basis of a conspiracy with Mr Khordorkovsky, in my view it is the inevitable conclusion that the Prosecution of these two defendants is also politically motivated.

I have then to consider whether they will be prejudiced at their trial by reason of their political opinions. Such a finding would give rise to a bar to extradition under Section 81(b). Professor Bowring gave clear and unequivocal evidence, stating that it was his view that the defendants "would most certainly not" receive a fair trial in Russia. I found support for his view in the two reports to the Council of Europe whose rapporteurs had been monitoring Russia's obligations. In 1996 Russia entered into a commitment to transfer the whole of the prison system to the Ministry of Justice. In 2002 the rapporteurs noted that certain Institutions, particularly the Lefortovo Prison had not been transferred to the Ministry of Justice and remained under the control of the FSB. In a report dated November 2004 the Legal Affairs and Human Rights Committee of the Council of Europe found that Mr Pichugin and Mr Lebedev were being detained in Lefortovo Prison. The Council of Europe found that lawyers had been prevented contact with their clients, denied access to courtrooms during the hearing and had had their offices searched and documents seized. I attach great weight to this report, which is demonstrably measured and objective.

Those findings have been corroborated by the evidence that I have heard from Professor Bowring, Professor Gladyshev and Professor Pomorski. Having reached those conclusions in relation to other Yukos employees who are subject to detention and trial, the overwhelming conclusion is that if these defendants were returned they would be highly likely to be treated in a similar manner, in breach of their human rights and with grave prejudice to the preparation of their defence.

I have heard a substantial amount of evidence about the concerns over the independence of the Judiciary, particularly in Moscow City. Professor Bowring gave evidence of his research into the attitudes of Judges and in particular of the existence of a no acquittals policy. I have noted also the concerns about the Judicial President of the Moscow City Court and the very strong influence that she brings to bear, which suggests that judicial independence has been substantially eroded. I have to bear in mind that the Federation of Russia is designated a Part II Territory and it must therefore be a presumption that the courts in Russia do exercise that judicial independence. However, in respect of this particular case, I am satisfied that it is so politically motivated that there is a substantial risk that the Judges of the Moscow City court would succumb to political interference in a way which would call into question their independence. I have therefore after very careful consideration come to the conclusion that a fair trial of these two defendants is likely to be prejudiced by their political opinions and the opinions of those associated with them.

On the basis of these findings and subject to any further representations or evidence, I am minded to hold that these extradition proceedings are barred by virtue of Section 81 of the Extradition Act 2003.

Tim Workman
Senior District Judge

18th March 2005

CONTINUED

Having given the reasons for this decision I am now invited by all parties to proceed to the technical criteria contained in Section 78 Subsection 4.

I am satisfied that the defence have received all the documents required under Section 78 and that the defendants are the persons being sought by the Government of the Russian Federation.

I am satisfied that the allegations contained in the request are allegations which if proved would constitute crimes both here and in the Russian Federation and would therefore amount to extradition crimes.

For the reasons I have just given I am satisfied that extradition in this case is barred under Section 81 and under Section 79 in that the request for extradition is made for the purpose of prosecuting them on account of their political opinions and that they might be prejudiced at their trial by reason of those political opinions. As such there is a risk that if returned they would not receive a fair trial.

The application for extradition is therefore refused and the defendants are discharged.

Tim Workman
Senior District Judge

18th March 2005