**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____

**BASE METAL TRADING SA et al**                    **Docket No. 00 Civ. 9627**

**Plaintiffs**

**v.**

**RUSSIAN ALUMINUM et al.**

**Defendants.**
_____

## DECLARATION OF DOV RIEGER

I, Dov Rieger, pursuant to the provisions of 28 U.S.C. §1746, hereby declare as follows:

### BACKGROUND

1.      I am a citizen of Israel.  From 1999 to the current date, I have been a director and owner of Holdex, LLC ("Holdex").

2.      I submit this affidavit on behalf of Holdex.

### PURCHASE OF GOK SHARES FROM POLYPROM

3.      On January 20, 2000, Holdex purchased 2,307,984 shares (1.20 %) of Open Joint Stock Company Kachkanarskii GOK "Vanadii" ("GOK") from Limited Liability Company Polyprom ("Polyprom"). (See Exhibit 1).

4.      Polyprom had purchased these shares from Limited Liability Company Trading House OJSC "Vanadii" ("GOK Trading House") on January 18, 2000. (See Exhibit 2).

5.      I am informed that an action was filed by GOK against Polyprom to invalidate the sale of shares from GOK Trading House to Polyprom as well as all subsequent sales, namely, from Polyprom to Holdex, and to have the shares returned to GOK.

6.      Holdex fully complied with the terms of its January 20, 2000 contract with Polyprom and at the time of the GOK's petition to invalidate the sale of shares was the true owner of the shares in question.

7.      However, Holdex was not served, joined or notified of, the action filed by GOK seeking to take back the shares owned by Holdex.

8.      I am informed that an order invalidating the sale was entered by the Kalmykia Arbitrazh Court ("KaAC") on November 22, 2000. (See Exhibit 3).

9.      Holdex was not notified of this action and did not participate in the action, nor did it receive any notice about the November 22, 2000 order that disposed of its property.

10.      I am informed that the November 22, 2000 order was later reversed by the North Caucasus Federal Arbitrazh Court by order dated April 17, 2001. (See Exhibit  4).

11.      Holdex was not notified of, and did not participate in this appeal, nor did it receive any notice about the April 17, 2001 order that directly affected its property.

12.      I am informed that a hearing was held on July 5, 2001 after the matter returned to the lower court. (See Exhibit 5).

13.      Again, Holdex was not notified of this hearing and did not participate in the hearing.

14.     I am informed that by order dated September 10, 2001, the KaAC ordered that Holdex be joined as a party to the proceeding, and required that Holdex present the evidence of title to the shares in question. (See Exhibit 6).

15.     According to the September 10, 2001 order, Holdex appeared as a third party at the hearing at the appellate instance of KaAC that took place on November 9, 2001. (See Exhibit 7).

16.     Holdex was represented at the proceeding.

17.     The Appellate Court affirmed the ruling made at the July 5, 2001 hearing in which Holdex neither participated nor had notice.

18.     At the November 9, 2001 hearing, the court examined the record and concluded that, according to the register of GOK shares, the title to the shares in question was transferred from GOK Trading House to Polyprom on January 21, 2000. This was corroborated by the Contract # 3 dated January 18, 2000 between GOK Trading House and Polyprom (when both companies existed and both persons who signed the contract were duly authorized to do so). The court proceeded by reviewing a note prepared by the company that registers the transfer of shares, Panorama, which indicated that the transfer took place in January, 1999, and the document purporting to be the contract for the sale of the same shares, dated January 18, 1999, which were presented by GOK. While one of the companies did not even exist at the time of the purported 1999 contract, and the persons who "signed" that contract were not authorized to do so (upon information that I have, one of the signatories, Chervinsky, did not even work for GOK Trading House at that time), the Appellate Court concluded that the shares in question were sold under the January 1999 contract, and not under the January 2000 contract.

19.     Proceeding from that, the court concluded that, since the parties who "signed" the 1999 contract were not in a position to sign, and Polyprom did not exist at the time the contract was "signed," the contract was invalid and the subsequent sale was invalid.  Accordingly, the Appellate Court ordered that the shares be returned to GOK in compliance with the July 5, 2001 order.

20.     To summarize, GOK tried (and succeeded) to take back millions of shares that had been properly sold, in compliance with all procedural requirements and with proper payment, to Polyprom and then to Holdex, LLC, by engaging in judicial maneuvers behind the back of the lawful owner of the shares, Holdex, LLC, without even an attempt to give any notice.  After Holdex learned of the attempts to take its property and tried to intervene, GOK succeeded in obtaining a decision of the Appellate Court dated November 9, 2001, whose reasoning beats any conventional standards of logic.  In the end, Holdex lost 2,307,984 shares that it acquired in good faith and for value.

## EXHIBITS TO DECLARATION OF DOV RIEGER

| | |
|---|---|
| 1. | Agreement # KGOK-00/A of January 20, 2000 for sale and purchase of securities |
| 2. | Agreement # 3 for sale and purchase of securities concluded between Trading house Vanadiy and OOO Poliprom dated January 18, 2000 |
| 3. | Decision of the Arbitrazh Court of the Kalmykia Republic of November 22, 2000 in the case # A22-1222/2000/6-109 |
| 4. | Decision of the Cassation instance of Federal Arbitrazh Court of North Caucasus District of April 17, 2001 in the case # A22-1222/2000/6-109 |
| 5. | Decision of the Arbitrazh Court of the Kalmykia Republic of July 5, 2001 in the case # A22-1222/2000/6-109 |
| 6. | Order of the Arbitrazh Court of the Kalmykia Republic of September 10, 2001 in the case # A22-1222/2000/6-109/Ap-46 |
| 7. | Decision of the Appelate Instance of the Arbitrazh Court of the Kalmykia Republic of November 9, 2001 in the case # A22-1222/2000/6-109 |

# EXHIBIT "1"

AGREEMENT # KGOK-001/a
for purchase and sale of securities

Moscow                                                           January 20, 2000

      Limited Liability Company Poliprom, hereinafter "Seller", in the person of the Director General Bukharin G.M. acting on the basis of the Charter, on one side, and
      Company Holdex L.L.C., hereinafter "Purchaser", in the person of representative Ievleva I.V., acting on the basis of the power of attorney of October 11, 1999, on the other side,
      hereinafter jointly "Parties", separately "Party", concluded the following agreement ("Agreement"):

## 1. Subject of the Agreement

1.1 The Seller transfers securities indicated in section 1.2 of the Present agreement, and the Purchaser is obligated to pay for the mentioned securities to the Seller and to accept the securities in ownership.

1.2 The information about securities, which are a subject of sale and purchase pursuant to section 1.1 of the present agreement:

| | |
|---|---|
| Issuer of securities | Open Joint Stock Company Kachkanar Ore Mining and Processing Plant Vanadiy |
| Registration # of the issuer | 0422 series III-IK, registered by the order of the Head of Kachkanar City Administration # 348 of April 15, 1993 |
| Location of the issuer | Russia, Sverdlovsk region, Kachkanar, 2 Sverdlova St. |
| Category (type) of securities | Ordinary nominal non-documentary shares |
| Form of issue of securities | Non-documentary: in a form of a record on accounts |
| State registration number of issue of securities | First issue – 62-1p-290 of July 12, 1993 Second issue – 62-1-1396 of June 13, 1996 |
| Holder of shareholders register of issuer | CJSC Company-registrar Panorama    101000 Moscow, Bolshov Kharitonievskiy Pereulok 13A, office 8A |
| Securities face value | 1 (one) ruble |
| Amount of securities of the first issue: | 9,759 (nine thousand seven hundred fifty eight) |
| Amount of securities of the second issue: | 2,298,225 (two million two hundred ninety eight thousand two hundred twenty five) |
| Total amount of securities: | 2,307,984 (two million three hundred seven thousand nine hundred eighty four) |
| Total amount of transaction pursuant to agreement: | 5,580,000 (Five million five hundred eighty thousand) |

## 2. Order of payments

2.1 The Purchaser is obligated to pay for the securities indicated in section 1.2 of the present agreement by the means of transfer of monetary funds from the type "I" account to the account of the "Seller".

2.2 The Purchaser shall pay for the securities indicated in section 1.2 of the present agreement within 30 (thirty) days from the moment of the conclusion of the present agreement.

### 3. Order of registration of transition of the securities ownership rights

3.1 Within 5 days after execution of the agreement the Seller is obligated to reregister shares on the name of the Purchaser in the register of the issuer's shareholders and to provide notification with regard to transition of the securities ownership rights from the Seller to the Purchaser.

3.2 The Parties share the expenditures connected with reregistration of securities ownership rights in the register of owners of the issuer's nominal securities upon agreement.

### 4. Liability of the parties

4.1 If the Purchaser violates the terms indicated in section 2.2 of the present Agreement, it should pay to the Seller fine in the amount of 0.2 (two tenths) percent from the amount of the present Agreement for each day of the delay.

4.2 If the Purchaser violates the terms indicated in section 2.2 of the present Agreement for more than 10 (ten) banking days, the Seller shall have a right to unilaterally terminate the present Agreement. In this case, the Purchaser is obligated to reregister the received shares to the name of the Seller in the shareholders register and to pay to the Seller a fine for the refusal to execute the Agreement in the amount of 10 (ten) percent from the amount of the present Agreement within three days from the moment of termination of the Agreement.

4.3 If the Seller violates the terms for reregistartion of shares indicated in section 2.2 of the present Agreement, it should pay to the Purchaser a fine in the amount of 0.2 (two tenths) percent from the amount of the present agreement for each day of the delay.

### 5. Term of the Agreement. Order of change and termination of the Agreement

5.1 The parties shall make all efforts to resolve disputes and disagreements in a framework of the present Agreement and to reach bilateral agreements. If the parties failed to reach agreements, the disputes shall be subject to consideration of the Moscow Arbitrazh Court.

5.2 The Agreement becomes effective from the moment of its execution and shall be terminated after the parties completely perform their obligations under the present Agreement, or after the provisions of the present Agreement regarding its termination became effective.

5.3 All the changes, additions, and agreements to the present Agreement will be valid only if they are executed in a written form, signed by the authorized representatives of both parties and attested by seals.

5.4 The Agreement can be changed, terminated or invalidated only on the grounds and in the order as provided by the current legislation and the present Agreement.

5.5 In regard to all circumstances connected with execution of the present agreement, which are not directly regulated by the present agreement, the parties shall be guided by the requirements of the present legislation.

## 6. Registered addresses and Banking information of the parties

**The Seller**
LLC Poliprom
358000 Republic of Kalmykia, Elista
249 Lenina St., off. 505
EIN 0814113973
Account # 40702810800090000040 in the Elista Branch of Joint Stock Commercial Bank Moscow Business World,
Account # 30301810600011680006
BIK 044525466

**The Purchaser**
The Company Holdex LLC
707 W. 7th Street, Austin, Texas 78701, USA
Account type "I"
40805810400000000028
In the of Joint Stock Commercial Bank Tsentrokredit, Moscow
Account # 30101810700000000514
BIK 044583514

Signatures of the parties:

The Seller:

The Purchaser:

[signed] /Bukharin G.M./
[seal]

[signed] /Ievleva I.V./

PAYMENT ORDER # 1  February 17, 2000          via mail        0401060

Five million five hundred eighty thousand rubles 00 kopeks

| EIN 0000000000 Kompany Holdex LLC<br><br>Payer | The amount | 5580000.00 | | |
|---|---|---|---|---|
| | Account # | 408058104000000000028 | | |
| Joint Stock Commercial Bank Tsentrokredit, Moscow, 32 Pyatnitskaya St.<br><br>Bank of the Payer | BIK | 044583514 | | |
| | Account # | 30101810700000000514 | | |
| Joint Stock Commercial Bank Tsentrokredit, Moscow, 32 Pyatnitskaya St.<br><br>Bank of the recipient | BIK | 044583514 | | |
| | Account # | 30101810700000000514 | | |
| LLC Poliprom EIN 0814113973 | Account # | 40702810100000001077 | | |
| | Form of payment | 01 | Payment term | 02/17/00 |
| | Purpose of the payment | | Payment priority | 5 |
| Recipient | Code | | Reserve field | |

Purpose of payment, denomination of goods, works carried out, services performed, ## and dates of commercial documents, agreements, VAT

Payment for 2307984 ordinary nominal shares of Open Joint Stock Company Kachkanar Ore Mining and Processing Plant Vanadiy with face value of 1 ruble pursuant to Sale and Purchase agreement # KGOK-001\A of January 20, 2000. Without VAT.

|  |  |
|---|---|
| Signatures<br>[signed]<br><br>———— | Bank notes<br><br>AKB Tsentrocredit BIK 044583514<br>Account # 30101810700000000514<br>February 17, 2000<br>Paid<br>Mikishola M.B.<br>Accepted _____[signed] |

## ДОГОВОР № KGOK-001/A
### купли-продажи ценных бумаг

*г. Москва*

*«20» января 2000г.*

Общество с ограниченной ответственностью «Полипром», именуемое в дальнейшем «Продавец», в лице Генерального директора Бухарина Г.М., действующего на основании Устава, с одной стороны, и

Компания «Холлэкс Эл.Эл.Си.», именуемая в дальнейшем «Покупатель», в лице Поверенного Иевлевой И.В., действующей на основании Доверенности от 11.10.1999 г., с другой стороны,

именуемые совместно «Стороны» и каждый по отдельности «Сторона», заключили настоящий договор (далее по тексту - «Договор») о нижеследующем:

### 1. Предмет Договора

1.1. Продавец передает ценные бумаги, указанные в п.1.2 настоящего Договора, а Покупатель обязуется оплатить Продавцу стоимость указанных ценных бумаг и принять их в собственность.

1.2. Сведения о ценных бумагах (далее - ЦБ), являющихся предметом купли-продажи в соответствии с п.1.1 настоящего договора:

| | |
|---|---|
| Эмитент ЦБ: | Открытое акционерное общество «Качканарский горно-обогатительный комбинат «Ванадий» |
| Регистр. № Эмитента: | 0422 серия III-ИК, зарегистрировано постановлением Главы Администрации г. Качканар № 348 от 15.04.1993г. |
| Место нахождения Эмитента: | Россия, Свердловская обл., г. Качканар, ул. Свердлова, д. 2 |
| Категория (тип) ЦБ: | Обыкновенные именные акции бездокументарной формы |
| Форма выпуска ЦБ: | Бездокументарная – в виде записи на лицевых счетах |
| Государственный регистрационный номер выпуска ЦБ: | Первый выпуск – 62-1п-290 от 12 июля 1993 г. Второй выпуск - 62-1-1396 от 13 июня 1996 г. |
| Держатель реестра акционеров Эмитента: | ЗАО «Компания – регистратор «Панорама» |
| | 101000 г. Москва, Б. Харитоньевский пер., д. 13А, офис 8А |
| Номинальная стоимость ЦБ | 1 (один) рубль |
| Количество ЦБ 1-го выпуска: | 9 759 (Девять тысяч семьсот пятьдесят девять) штук. |
| Количество ЦБ 2-го выпуска: | 2 298 225 (Два миллиона двести девяносто восемь тысяч двести двадцать пять) штук. |
| Общее количество ЦБ: | 2 307 984 (Два миллиона триста семь тысяч девятьсот восемьдесят четыре) штуки. |
| Общая сумма сделки по Договору: | 5 580 000 (Пять миллионов пятьсот восемьдесят тысяч) рублей. |

### 2. Порядок расчетов

2.1. Покупатель обязуется произвести полную оплату ценных бумаг, указанных в п. 1.2. настоящего Договора, путем перечисления денежных средств со счета типа «И» на расчетный счет Продавца.

2.2. Оплата ценных бумаг, указанных в п. 1.2 настоящего Договора, осуществляется Покупателем в течение 30 (Тридцати) дней с даты заключения настоящего Договора.

### 3. Порядок регистрации перехода прав собственности на ценные бумаги

3.1. Продавец обязуется в течении 5-ти дней после подписания договора перерегистрировать пакет ЦБ на имя Покупателя в реестре акционеров Эмитента и предоставить последнему уведомление о проведении операции по переходу прав собственности на ценные бумаги от Продавца к Покупателю.

3.2. Расходы по перерегистрации прав собственности на ценные бумаги в реестре владельцев именных ценных бумаг Эмитента акций Стороны несут по соглашению.

### 4. Ответственность Сторон

4.1. В случае нарушения Покупателем сроков, указанных в п. 2.2 настоящего договора, Покупатель обязан уплатить Продавцу пеню в размере 0,2 (ноль целых две десятых) процента от суммы настоящего Договора за каждый день просрочки.

4.2. В случае нарушения Покупателем сроков, указанных в п. 2.2 настоящего Договора, более чем на 10 (Десять) банковских дней, Продавец вправе в одностороннем порядке расторгнуть настоящий Договор. При этом Покупатель обязан в трехдневный срок с даты расторжения договора перерегистрировать полученные акции на имя Продавца в реестре акционеров и заплатить Продавцу штраф за отказ от исполнения Договора в размере 10 (Десять) процентов от суммы настоящего Договора.

4.3. В случае нарушения Продавцом сроков перерегистрации акций, указанных в п. 3.1 настоящего договора, Продавец обязан уплатить Покупателю пеню в размере 0,2 (ноль целых две десятых) процента от суммы настоящего Договора за каждый день просрочки.

## 5. Срок действия договора. Порядок его изменения и расторжения

5.1. Стороны прилагают все усилия, чтобы решить в рамках реализации настоящего Договора споры и разногласия путем переговоров и достижения двусторонних соглашений. Если соглашения не будут достигнуты, споры подлежат рассмотрению в Арбитражном суде г. Москвы.

5.2. Договор вступает в силу с момента его подписания и должен быть прекращен полным исполнением Сторонами принятых на себя по Договору обязательств, либо вступивших в силу норм настоящего договора о его расторжении.

5.3. Все изменения, дополнения, соглашения к настоящему договору действительны лишь в том случае, если они составлены в письменной форме и подписаны уполномоченными представителями обеих Сторон, а также заверены печатями.

5.4. Договор может быть изменен, расторгнут, признан недействительным только по основаниям и в порядке, предусмотренным действующим законодательством и настоящим договором.

5.5. Во всех обстоятельствах, связанных с реализацией настоящего договора, которые прямо не урегулированы настоящим договором. Стороны руководствуются требованиями действующего законодательства.

## 6. Юридические и банковские адреса Сторон

**Продавец:**
ООО «Полипром»
358000, Республика Калмыкия, г. Элиста,
ул. Ленина, д.249, к.505, ИНН 0814113973,
расч./счет № 40702810800090000040
в Филиале АКБ «Московский Деловой Мир»,
г. Элиста, кор./счет № 30301810600011680006,
БИК 044525466.

**Покупатель:**
Компания «Холдэкс Эл.Эл.Си.»
707 W. 7th Street, Austin, Texas 78701, USA
расчетный счет типа «И» 40805810400000000028
в АКБ «Центрокредит», г. Москва,
корр. счет № 30101810700000000514
БИК 044583514

### Подписи сторон:

**Продавец:**

/Бухарин Г.М./

**Покупатель:**

/Иевлева И.В./

ПЛАТЕЖНОЕ ПОРУЧЕНИЕ № 1      **17.02.2000**      ПОЧТОЙ      | 0401060 |

Дата      Вид платежа

Сумма прописью: Пять миллионов пятьсот восемьдесят тысяч рублей 00 копеек

| ИНН 0000000000 Компания "Холдэкс Эл.Эл.Си" | Сумма | 5580000-00 |
|---|---|---|
| | Сч. № | 40805810400000000028 |

Плательщик

| АКБ "Центрокредит" г.Москва, ул.Пятницкая, д.32 | БИК | 044583514 |
|---|---|---|
| | Сч. № | 30101810700000000514 |

Банк плательщика

| АКБ "Центрокредит" г. Москва, ул.Пятницкая, д.32 | БИК | 044583514 |
|---|---|---|
| | Сч. № | 30101810700000000514 |

Банк получателя

| ООО "Полипром" ИНН 0814113973 | Сч. № | 40702810100000001077 |
|---|---|---|

| Вид.оп. | 01 | Срок плат. | 17.02.2000 |
|---|---|---|---|
| Наз.пл. | | Очер.плат. | 5 |
| Код | | Рез. поле | |

Назначение платежа, наименование товара, выполненных работ, оказанных услуг, №№ и даты товарных документов, договоров, НДС

Оплата за обыкновенные именные акции "Качканарский ГОК "Ванадий" номинальной стоимостью один рубль в количестве 2307984 штуки по Договору купли-продажи № KGOK-001\А от 20.01.2000 г. Без НДС.

Подписи      Отметки банка

М.П.

АКБ-Центрокредит БИК 044583514
к/с 30101810780000000514

1 7 ФЕВ 2000

ИЗ ПОЛНЕНО
Микишина М.Б
ПРИНЯТО

# EXHIBIT "2"

# AGREEMENT No.3
## ON PURCHASE AND SALE OF SECURITIES

Moscow
January 18, 2000

"TRADING HOUSE "Vanadium", a limited liability company, hereinafter referred to as "the Seller", represented by N.I. Chervinsky, Acting General Director, acting on the basis of Minutes of the Board of Directors' Meeting of "Kachkanar GOK "Vanadium" open joint-stock company, dated February 11, 1999 and the Charter, on the one side, AND

"Polyprom", a limited liability company, hereinafter referred to as "the Buyer", represented by G.M. Bukharin, General Director, acting on the basis of the Charter, on the other side,

commonly named "the Parties", have entered into this agreement (hereinafter referred to as "the Agreement") as follows.

## 1.  SUBJECT OF AGREEMENT

1.1.   In accordance with this Agreement the Seller shall assign securities to the Buyer's ownership, and the Buyer shall accept and pay for securities, meeting the following characteristics (hereinafter referred to as "the Securities" or "Stocks"):

| Type of Securities: | Common registered stocks |
|---|---|
| Issuer: | "Kachkanar GOK "Vanadium" open joint-stock company (hereinafter referred to as "the Issuer"); |
| Number of state registration: | 62-1P-290 (First issue) |
| Number of Stocks of the first issue: | 9,759 (Nine Thousand Seven Hundred and Fifty Nine) |
| Number of state registration: | 62-1-1396 (Second issue) |
| Number of Stocks of the second issue: | 2,298,225 (Two Million Two Hundred Ninety Eight Thousand and Two Hundred Twenty Five) |
| Total number of Stocks transferred under this Agreement: | 2,307,984 (Two Million Three Hundred Seven Thousand and Nine Hundred Eighty Four) |

1.2.   The value of Stocks transferred under this Agreement is 5,558,847 (Five Million Five Hundred Fifty Eight Thousand and Eight Hundred Forty Seven) Roubles.

1.3.   The Seller shall be considered fulfilled its obligation on transfer of Securities to the Buyer in duly manner from the moment of handover of notification of making transaction in the stockholders' register of the Issuer to the Buyer;

1.4.   In accordance with the Agreement the Seller shall be responsible for execution of all works (carrying out all actions), as well as covering all expenses related to registration of transfer of the right of ownership to Securities.

## 2. PROCEDURE OF PAYMENT FOR SECURITIES

2.1.    The Buyer shall pay for Stocks acquired under this Agreement within 15 days from the moment of signing of this Agreement, by promissory notes of the Savings Bank of the Russian Federation. The Parties shall make and sign Act of Acceptance on transfer of promissory notes.

## 3. REGISTRATION OF THE TRANSFER OF OWNERSHIP RIGHT FOR SECURITIES

3.1.    The Seller shall within 5 (Five) working days following the date of signing of this Agreement make all actions that are necessary for registration of the transfer of the ownership right for Securities in the Stockholders' register of the Issuer from the Seller to the Buyer and present to the Buyer the original copy of the document indicated in Par.1.3 of this Agreement.

In case the Buyer fails to fulfill terms of Par.3.2 of the Agreement, the term given to the Seller for registration of the ownership right of the Buyer for Securities shall be extended for the term of delay.

3.2.    The Buyer shall within 1 (One) working day following the date of signing of the Agreement present to the Seller all documents indicated by the latter and that are necessary for execution of registration of the transfer of the ownership right for Securities.

3.3.    The moment when the ownership right for Securities of the Buyer arises shall be the moment of registration of transfer of the ownership right from the Seller to the Buyer in the Stockholders' register of the Issuer.

## 4. GUARANTIES OF THE SELLER

4.1.    The Seller guaranties that the Securities transferred under this Agreement are not pledged, arrested or encumbered by other obligations and are free from claims of the third parties.

4.2.    Except case of cancellation of this Agreement all dividends, interest, profit or other distribution (hereinafter, the Income) on Securities accrued to the Seller following the registration of transaction made on the basis of this Agreement, the Seller shall transfer to the Buyer within 2 (Two) banking days following the date of receiving such Income.

## 5. RESPONSIBILITIES OF THE PARTIES

5.1.    In case of violation of terms indicated in Par.2.1 of this Agreement by the Buyer, the Buyer shall pay penalty in the amount of 0,5 (five tenth interest) of the amount indicated in Par.1.2 of this Agreement for each calendar day of delay.

5.2.    In case of violation of terms indicated in Par.3.1 of this Agreement by the Seller, the Seller shall pay penalty in the amount of 0,5 (five tenth interest) of the amount indicated in Par.1.3 of this Agreement for each calendar day of delay.

5.3.    The payment of penalty or fine under this Agreement shall not release the Party infringing its obligation from fulfillment of obligations under this Agreement, unless the other Party agrees to.

## 6. MISCALLENEOUS

6.1.  All changes, amendments and annexes to this Agreement shall be made in writing and signed by authorized representatives of the Parties.

6.2.  The Agreement comes into force from the moment of its signing and be valid till the Parties fulfill all obligations undertaken under this Agreement.

6.3.  The Agreement is made in two copies, having equal legal force, one copy for the Buyer and one copy for the Seller.

## 7. ADDRESSES AND REQUISITES OF THE PARTIES

The Seller:    "TRADING HOUSE OPEN JOINT-STOCK COMPANY "VANADIUM" limited liability company

Legal address: 358000, Elista, 249, Lenin Street, Suite 505

INN:                   0814072702

Banking requisites    Settlements account 40702810416340100075
                      At Saving Bank Branch of the RF No. 8057, Kachkanar
                      Corresponding account 30101810900000000609
                      BIC 046513609


The Buyer:    "POLYPROM" limited liability company

Legal address: 358000, Elista, 249, Lenin Street, Suite 505

INN:                   0814113973

Banking requisites    Settlements account 40702810800090000040
                      At AKB "MDM" Branch, Elista
                      Corresponding account 30301810600011680006
                      BIC 044525466

ACT

OF ACCEPTANCE OF PROMISSORY NOTES

Moscow
January 19, 2000

"Trading House of the open joint-stock company "Vanadium", a limited liability
company, hereinafter referred to as "the Seller", represented by N.I. Chervinsky, Acting
General Director, acting on the basis of Minutes of the Board of Directors' Meeting of
"Kachkanar GOK "Vanadium" open joint-stock company, dated February 11, 1999, on
the one side,
AND
"Polyprom", a limited liability company, hereinafter referred to as "the Buyer",
represented by G.M. Bukharin, General Director, acting on the basis of the Charter, on
the other side,
commonly named "the Parties", have made this Act on the following.

  1.  In pursuance of Par.2.1 of the Agreement No.3 on purchase and sale of securities
dated January 18, 2000, the Seller has transferred and the Buyer has accepted the
following promissory notes issued by the Savings bank of the Russian Federation (Petrov
branch No. 5287, Moscow):

| Ref.No. | Notes value, Rbls. | Series | Number | Maturity |
|---|---|---|---|---|
| 1 | 30000=00 | BC | 1054314 | on demand |
| 2 | 10000=00 | BC | 1054323 | on demand |
| 3 | 20000=00 | BC | 1054333 | on demand |
| 4 | 20000=00 | BC | 1054334 | on demand |
| 5 | 50000=00 | VP | 1077333 | on demand |
| 6 | 1300000=00 | VP | 1077321 | on demand |
| 7 | 650000=00 | BC | 1054565 | on demand |
| 8 | 828500=00 | VP | 0458145 | on demand |
| 9 | 650347=00 | VP | 0458192 | on demand |
| 10 | 1000000=00 | VP | 1936588 | February 1, 2000 |
| 11 | 500000=00 | VP | 1936535 | February 1, 2000 |
| 12 | 500000=00 | VP | 1936536 | February 1, 2000 |

In total twelve promissory notes of the total value of 5.558.847 (Five Million Five and
Fifty Eight Thousand Eight Hundred and Forty Seven) Roubles have been transferred
under this Act.
  2.  The signing of this Act by the authorized representatives of both Parties means
that the Buyer has transferred and the Seller has accepted promissory notes indicated in
Par. 1 of this Act and that the Parties have no claims related to transfer of promissory
notes to each other.

3.   Because of transfer of promissory notes indicated in Par.1 of this Act by the Buyer to the Seller the obligation of the Buyer on payment for Securities acquired under the Agreement No.3 on purchase and sale of securities dated January 18, 2000 shall be considered fulfilled in full amount.

4.   This Act is made in two copies, one for each Party.


Buyer                                                                                      Seller

# ДОГОВОР № 3
## купли-продажи ценных бумаг

г. Москва

«18» января 2000 г.

    **ООО «Торговый дом ОАО «Ванадий»,** именуемая в дальнейшем «Продавец», в лице Исполняющего обязанности Генерального директора Червинского Н. И., действующей на основании Протокола заседания совета директоров ОАО «Качканарский ГОК «Ванадий» от 11 февраля 1999 г. и Устава, с одной стороны, и

    **ООО «Полипром»,** именуемое в дальнейшем «Покупатель», в лице Генерального директора Бухарина Г. М., действующего на основании Устава, с другой стороны,

    вместе именуемые в дальнейшем «Стороны», заключили настоящий Договор (далее по тексту «Договор») о нижеследующем:

## 1. ПРЕДМЕТ ДОГОВОРА

1.1 По настоящему Договору Продавец обязуется передать в собственность Покупателю, а Покупатель обязуется принять и оплатить ценные бумаги, отвечающие следующим характеристикам (далее – «ЦБ» или «Акции»):

| | |
|---|---|
| Вид ЦБ: | Акции обыкновенные именные; |
| Эмитент: | Открытое акционерное общество «Качканарский ГОК «Ванадий» (далее – «Эмитент»); |
| Номер государственной регистрации: | 62-1П-290 (Первый выпуск) |
| Количество Акций первого выпуска: | 9.759 (Девять тысяч семьсот пятьдесят девять) штук |
| Номер государственной регистрации: | 62-1-1396 (Второй выпуск) |
| Количество Акций второго выпуска: | 2.298.225 (Два миллиона двести девяносто восемь тысяч двести двадцать пять) штук |
| Общее количество Акций, передаваемых по настоящему Договору: | 2.307.984 (Два миллиона триста семь тысяч девятьсот восемьдесят четыре) штуки. |

1.2 Цена Акций, передаваемых по настоящему Договору, составляет: 5.558.847 (Пять миллионов пятьсот пятьдесят восемь тысяч восемьсот сорок семь) рублей.

1.3 Продавец считается выполнившим свое обязательство по передаче ЦБ Покупателю должным образом с момента передачи Покупателю уведомления о проведении операции в реестре акционеров Эмитента;

1.4 Проведение всех работ (осуществление всех действий), а также расходы по регистрации перехода права собственности на ЦБ, в соответствии с Договором, возлагается на Продавца.

## 2. ПОРЯДОК ОПЛАТЫ ЦБ

2.1 Оплата Акций, приобретаемых по настоящему Договору, осуществляется Покупателем в течение 15 дней с момента подписания настоящего Договора, векселями Сберегательного банка Российской Федерации. При передаче векселей Стороны составляют и подписывают Акт приема-передачи векселей.

## 3. РЕГИСТРАЦИЯ ПЕРЕХОДА ПРАВА СОБСТВЕННОСТИ НА ЦБ

3.1 Продавец обязан в течение 5 (Пяти) рабочих дней, следующих за днем подписания настоящего Договора, совершить все действия, необходимые для регистрации перехода права собственности на ЦБ в реестре акционеров Эмитента от Продавца к Покупателю и предоставить Покупателю оригинал документа, указанного в п. 1.3. настоящего Договора.
В случае, если Покупатель не выполняет условий пункта 3.2. Договора, то срок предоставленный Продавцу для регистрации права собственности Покупателя на ЦБ продлевается на время задержки.

3.2 Покупатель обязан в течение 1 (Одного) рабочего дня, следующего за днем подписания Договора, предоставить Продавцу все указанные последним документы, необходимые для осуществления регистрации перехода права собственности на ЦБ.

3.3 Моментом возникновения права собственности Покупателя на ЦБ является момент регистрации перехода права собственности от Продавца к Покупателю в реестре акционеров Эмитента.

## 4. ГАРАНТИИ ПРОДАВЦА

4.1 Продавец гарантирует, что ЦБ, передаваемые по настоящему Договору, не заложены, под арестом не состоят, не обременены иными обязательствами и свободны от притязаний третьих лиц.

4.2 Кроме случая аннулирования Договора любые дивиденды, проценты, доход или иное распределение (в дальнейшем Доход) на ЦБ, начисленные Продавцу после регистрации сделки, совершаемой на основании Договора, Продавец обязуется передать Покупателю в течение 2 (Двух) банковских дней, следующих за днем получения им такого Дохода.

## 5. ОТВЕТСТВЕННОСТЬ СТОРОН

5.1 В случае нарушения Покупателем сроков, установленных п. 2.1. Договора, Покупатель обязан заплатить Продавцу пеню в размере 0,5 (пять десятых процента) от суммы, указанной в п. 1.2. настоящего Договора, за каждый календарный день просрочки.

5.2 В случае нарушения Продавцом сроков, установленных п. 3.1. Договора, Продавец обязан заплатить Покупателю пеню в размере 0,5 (пять десятых процента) от суммы, указанной в п. 1.3. настоящего Договора, за каждый календарный день просрочки.

5.3 Уплата пени или штрафа по Договору не освобождает нарушившую свое обязательство Сторону от выполнения обязательств по Договору, если другая Сторона не согласится на иное.

## 6. ПРОЧИЕ ПОЛОЖЕНИЯ

6.1 Все изменения, дополнения и приложения к Договору осуществляются в письменной форме и подписываются уполномоченными представителями Сторон.

6.2 Договор вступает в силу с момента его подписания и действует до исполнения Сторонами всех принятых на себя обязательств по настоящему Договору.

6.3 Договор составлен в 2-х экземплярах, имеющих одинаковую юридическую силу, один из которых находится у Покупателя, другой - у Продавца.

## 7 АДРЕСА И РЕКВИЗИТЫ СТОРОН

| Продавец: | ООО «Торговый дом ОАО «Ванадий» |
|---|---|
| Юридический адрес: | 358000, г. Элиста, ул. Ленина, д. 249, к. 505 |
| ИНН: | 0814072702 |
| Банковские реквизиты: | Р/с 40702810416340100075 |
| | В отд. СБ РФ № 8057 в г. Качканаре |
| | К/с 30101810900000000609 |
| | БИК 046513609 |

| Покупатель: | ООО «Полипром» |
|---|---|
| Юридический адрес: | 358000, г. Элиста, ул. Ленина, д.249, к. 505 |
| ИНН: | 0814113973 |
| Банковские реквизиты: | Р/с 40702810800090000040 |
| | В филиале АКБ «МДМ» г. Элиста |
| | К/с 30301810600011680006 |
| | БИК 044525466 |

| Покупатель | Продавец |
|---|---|

М.П.

**АКТ**
приема-передачи векселей

г. Москва                                                «19» января 2000 г.

ООО «Торговый дом ОАО «Ванадий», именуемая в дальнейшем «Продавец», в лице Исполняющего обязанности Генерального директора Червинского Н. И., действующей на основании Протокола заседания совета директоров ОАО «Качканарский ГОК «Ванадий» от 11 февраля 1999 г., с одной стороны, и

ООО «Полипром», именуемое в дальнейшем «Покупатель», в лице Генерального директора Бухарина Г. М., действующего на основании Устава, с другой стороны,

вместе именуемые в дальнейшем «Стороны», составили настоящий Акт о нижеследующем:

1. Во исполнение п. 2.1. Договора № 3 купли-продажи ценных бумаг от 18.01.2000 г. Покупатель передал, а Продавец принял следующие простые векселя, выданные Сберегательным банком Российской Федерации (Петровское отделение №5287 г. Москвы):

| № п/п | Вексельная сумма, руб | Серия | Номер | Срок платежа |
|---|---|---|---|---|
| 1 | 30000=00 | ВС | 1054314 | по предъявлении |
| 2 | 10000=00 | ВС | 1054323 | по предъявлении |
| 3 | 20000=00 | ВС | 1054333 | по предъявлении |
| 4 | 20000=00 | ВС | 1054334 | по предъявлении |
| 5 | 50000=00 | ВП | 1077333 | по предъявлении |
| 6 | 1300000=00 | ВП | 1077321 | по предъявлении |
| 7 | 650000=00 | ВС | 1054565 | по предъявлении |
| 8 | 828500=00 | ВП | 0458145 | по предъявлении |
| 9 | 650347=00 | ВП | 0458192 | по предъявлении |
| 10 | 1000000=00 | ВП | 1936588 | 1 февраля 2000 г. |
| 11 | 500000=00 | ВП | 1936535 | 1 февраля 2000 г. |
| 12 | 500000=00 | ВП | 1936536 | 1 февраля 2000 г. |

Всего по настоящему Акту передано двенадцать векселей общей вексельной суммой 5.558.847 (Пять миллионов пятьсот пятьдесят восемь тысяч восемьсот сорок семь) рублей.

2. Подписание настоящего Акта уполномоченными представителями обеих Сторон означает, что Покупатель передал, а Продавец принял векселя, указанные в п. 1 настоящего Акта, и что Стороны не имеют друг к другу претензий, связанных с передачей векселей.

3. В связи с передачей векселей, указанных в п. 1 настоящего Акта, Покупателем Продавцу обязанность Покупателя по оплате ценных бумаг, приобретенных по договору № 3 купли-продажи ценных бумаг от 18.01.2000 г., считается выполненной в полном объеме.

4. Настоящий Акт составлен в двух экземплярах по одному для каждой из Сторон.



# EXHIBIT "3"

In the name of the Russian Federal

# DETERMINATION

The city of Elista

Case No. A22-1222/2000/6-109

22 November 2000

The Arbitrazh Court of the Republic of Kalmykia, in the composition of:

Presiding Judge Loginov S.N.

Judges:

Considered in a court session the suit of OAO "Kachkanar Mineral Processing Combine "Vanadium" (hereinafter, the Combine) against OOO "Trading House OAO "Vanadium" (hereinafter, the Trading House) and OOO "Polyprom" (hereinafter, the OOO) concerning the recognition as void the agreement of purchase and sale of securities of 18 January 1999 and the conveyance instructions of re-registration of the Combine's stock in the amount of 2 307 984 items for 5 558 847 rubles from the Trading House to the OOO and reinstatement of the entry of ownership of the disputed stock in the bankbook of the Trading House with the participation in the session of:

From the Plaintiff: Shumakov R.A. by Power of Attorney No.72-360/10p of 30 October 2000

From the Respondent: Plotnikov V.A. by Power of Attorney No.28 of 08 November 2000,

From OOO "Polyprom": not attended the session;

From the third party: Kapura S.M., AOZT "Maintenance of Company Registers"

Has established:

Due to violations of the legislation in force at the disposal of shares, the Combine resorted to the Arbitrazh Court with a suit of recognition as void of the agreement of purchase and sale of securities of 18 January 1999 and the conveyance instructions of 20 January 2000 to write-off from the bankbook of the Trading House to the OOO's account the Combine's stock, issuance No. 62-III-290 of 12 July 1993 in the amount of 2 307 984 items for 5 558 847 rubles and the reinstatement in the bankbook of the Combine's shareholders register of the registration entry of the Trade House's ownership of the said stock.

In the court session, the Combine's representative supported the claim and explained that the agreement of purchase and sale of the Combine's stock and the conveyance instructions by the

Trading House were signed by Chervinsky N.I. who at the performance of such actions was not the general director of the Trading House and was not properly authorized. Herewith, proceeding from the value of the disposed stock, the said transaction was large for the Trading House and, under the current legislation the approval of the general meeting of the company's founders is required to conclude such transaction. However, it was not done despite the fact that the Combine's Board member Zanodvornov A.V. who concurrently was an authorized representative of one of the OOO's founders (KEMPL Company) was authentically aware of that. In virtue of that, the concluded transaction does not lead to legal consequences for the parties and the OOO thereby took possession of the disputed shares illegally.

The representative of the Trading House acknowledged the claim and stated that at the conclusion of the agreement, Mashkovtzev E.A. was the general director of the Trading House, and at the forwarding of the conveyance instructions the general director was Khalmirzaev S.A. Thereby, as Chervinsky did not have proper authorities he was not entitled to sign the above-said instruments. Furthermore, the transaction of stock disposal was large for the Trading House, thus it required the approval of the Combine, which was not obtained. Thereby, the shares are to be returned to the Trading House.

The representative of the OOO failed to attend the court session, despite proper notification of the time and location of the dispute consideration. In connection with it and taking in consideration the fact that the case papers have information sufficient to demonstrate the positions of the parties, the arbitrazh court thinks it virtual to consider the case in absentia of the OOO's representative.

The representative of the third party AOZT "Maintenance of Company Registers" acknowledged the claim and explained that it was unaware of violations that took place at registration of the shares under the agreement of purchase and sale of 18 January 1999. Thereby, appropriate measures shall be taken subject to the court decision.

Having heard the opinions of the parties and having studied the case papers, the Arbitrazh Court found that on 18 January 1999 the Trading House and the OOO entered into Agreement No. 3, according to which the Trading House undertook the obligation to convey to the OOO the Combine's registered common shares of issuance No. 62-III-290 of 12 July 1993 in the amount of 9759 items for 23 504.80 rubles and of issuance No. 62-I-1396 of 12 June 1996 in the amount of 2 298 225 items for 5 535 342.20 rubles with the total number of 2 307 984 items for 5 558 847 rubles and the OOO undertook the obligation to pay up the stock value within 35 banking days following the signing of the agreement by the parties both in monetary means and in securities, including in promissory notes.

On 20 January 2000, : Trading House sent to ZAO Regist Company "Panorama", the holder of the Combine's shareholders register, the conveyance instructions of re-registration of the stock under Agreement No. 3 of 18 January 1999 to the OOO.

On 21 January 2000, ZAO "Registrar Company "Panorama" made appropriate changes in the shareholders register.

Under Article 53 of the Civil Code of the Russian Federation, a judicial person obtains legal rights and undertakes civil duties through its bodies acting pursuant to the law, other legal acts and constituent documents.

Under Paragraph 4.6 of the Trading House's charter, the general director is entitled to enter into agreements.

The case papers demonstrate that Chervinsky signed the agreement and the conveyance instructions on behalf of the Trading House.

Meanwhile, as was found in the court session, at the conclusion of the agreement (18 January 1999) and at the forwarding of the conveyance instructions (20 January 2000) Mashkovtzev E.A. and Khalmirzaev S.A., accordingly, were the general directors of the Trading House.

As the representatives of the Combine and the Trading House explained it, prior to the dismissal of Mashkovtzev, other persons of the Combine and the Trading House were signed by an unauthorized person.

Under Article 183 of the Civil Code of the Russian Federation if a person is not authorized to act on behalf of another person or if a person exceeds such authorities, the transaction is considered as concluded on behalf and for the person that concluded such transaction, unless the other person (the represented person) expressly approves of that transaction afterwards.

Under the circumstances, the Arbitrazh Court finds that as the agreement was entered into by an unauthorized person and it was approved neither by the Combine, nor the Trading House, the agreement may not lead to legal consequences for the parties.

Pursuant to Article 46 of the Federal Law No. 14-FZ "On Limited Liability Companies" of 08 February 1998, the large transaction is a transaction or a number of interrelated transactions associated with purchase, disposal and possible disposal by the company of property, both directly and indirectly, having the value of more than 25% of the company's property value calculated on the basis of the reports for the last reporting period that preceded the date of the decision to negotiate such transactions.

The case papers demon strate that the value of the disposed shares amounted to 5 558 847 rubles and the property value of the Trading House was 122 285 903 rubles.

Herewith, the transaction of the Combine's stock disposal does not constitute the transaction concluded in the course of regular business activity of the company as the Trading House is not a professional stock market actor and its charter does not stipulate operations with securities as the main type of activity.

Under the circumstances, the Arbitrazh Court finds that the Trading House and the OOO concluded a large transaction of the Combine's stock disposal.

Under Article 168 of the Civil Code of the Russian Federation, a transaction that is incompliant with the provisions of the law and other legal acts is void, unless the law stipulates that such transaction is traversable.

Under Paragraphs 3 and 5 Article 46 of the Federal Law "On Limited Liability Companies", the general meeting of the company's participants makes the decision to conclude a large transaction. Herewith, a large transaction concluded with violations of the provisions of this article may be recognized as void under the claim of the company or its participant.

The case papers demonstrate that the OOO is the sole participant.

However, the management of the Combine neither made the decision of the stock sale by the Trading House to the OOO, nor approved of the concluded transaction afterwards, pursuant to Article 39 of the Federal Law "On Limited Liability Companies".

Furthermore, by the decision of the Combine's Board of Directors of 18 January 1998, the sale of the Combine's stock to alien organizations was prohibited.

In the court session it was found that the founders of the OOO are Bukharin G.M. and Company "KEMPL" with Zanodvornov A.V. being its authorized representative who signed the constituent agreement on its behalf. Herewith, Zanodvornov A.V. was the Combine's Board member at the signing of the agreement of purchase and sale of 18 January 1999.

In virtue of that, when entering into the agreement of stock sale, the OOO must have known that an unauthorized person signed the agreement and the transaction was concluded without an appropriate approval of its founder.

Under the circumstances and taking into consideration that the stock book-value amounts to 45% of the property value of the Trading House, and the transaction of stock disposal was concluded by an unauthorized person and without consent and an appropriate approval of the

founder, the arbitrazh' urt finds that the purchase and sale trar ·tion of the Combine's stock is void.

The voidance of the purc: .se and sale transaction leads to recognition as void of all subsequent transactions with the stock, including the stock's re-registration from the Trading House to the OOO.

Based on the set forth and being guided by Articles 124-127 of the Arbitrazh Procedure Code of the Russian Federation, the Arbitrazh Court has determined:

- To satisfy the claim of OAO "Kachkanar Mineral Processing Combine "Vanadium";

1. To recognize as void Agreement of Purchase and Sale No. 3 of 18 January 1999 entered into by OOO "Trading House OAO "Vanadium" and OOO "Polyprom".

2. To recognize as void the conveyance instructions of 20 January 2000 of the write-off from the bankbook of OOO "Trading House OAO "Vanadium" of the registered common shares of OAO Kachkanar Mineral Processing Combine "Vanadium" of issuance No. 62-III-290 of 12 July 1993 in the amount of 9759 items and of issuance No. 62-I-1396 of 12 June 1996 in the amount of 2 298 225 items.

3. The holder of the shareholders register of OAO "Kachkanar Mineral Processing Combine "Vanadium" AOZT "Maintenance of Company Registers" is to reinstate in the register of owners of registered common securities of OAO "Kachkanar Mineral Processing Combine "Vanadium" the record in the bankbook of OOO "Trading House OAO "Vanadium" that it owns registered common shares of OAO "Kachkanar Mineral Processing Combine "Vanadium" of issuance No. 62-III-290 of 12 July 1993 in the amount of 9759 items and of issuance No. 62-I-1396 of 12 June 1996 in the amount of 2 298 225 items

4. To exact the expenses on the state duty in favor of OAO "Kachkanar Mineral Processing Combine "Vanadium" from OOO "Trading House OAO "Vanadium" in the amount of 834.90 rubles and from OOO "Polyprom" in the amount of 834.90 rubles.

To issue execution orders upon the determination comes into legal force.

This determination may be appealed by the parties within one month after the date hereof to the appeal authority of the Arbitrazh Court of the Republic of Kalmykia.

Judge: Loginov S.N.

74



Именем Российской Федерации

**Р Е Ш Е Н И Е**

г. Элиста                                        Дело № А22-1222/2000/8-109

22 ноября                    200 г.

Арбитражный суд Республики Калмыкия
                                            (наименование арбитражного суда)

в составе:

председательствующего                Логинова С.Н.

судей:

рассмотрев в судебном заседании дело по иску ОАО"Каспкварский горнообога-
тительный комбинат "Ванадий" (далее комбинат)
                    (наименование истца)

к    ООО "Торговый дом ОАО"Ванадий"(торговый дом) и
     ООО "Полипром" (ООО)
                    (наименование ответчика)

о признании договора купли-продажи ценных бумаг от 18.01.99г.
недействительным,а также о признании недействительными пере-
при участии в заседании: даточных распоряжений о перерегистрации акций
комбината в кол-ве 2307984 шт. на 5558847 руб. с торгового
дома на ООО и восстановлении записи на лицевом счете торго-
вого дома о владении спорными акциями на праве собственности
при участии в заседании: от истца - Шумаков Р.А., доверенность
установил,  №72-360/10р от 30.10.00г., от ответчика - Плотников В.А.,
доверенность №26 от 08.11.00г., от ООО"Полипром" - не прибыл,
от third лица АОЗТ "Ведение реестров компаний" - Капура С.М.,
у с т а н о в и л :  в связи с нарушением действующего законо-
дательства при отчуждении акций комбинат обратился в арбит-
ражный суд с иском о признании договора купли-продажи ценных
бумаг от 18.01.99г. недействительным, а также недействительны-
ми передаточных распоряжений от 20.01.00г. о списании с лице-
вого счета торгового дома на счет ООО акций комбината выпуска
№62-III-290 от 12.07.93г. в кол-ве 2307984 шт. на 5558847 руб.
и восстановлении на лицевом счете в реестре акционеров комби-
ната регистрационную запись о владении торговым домом на пра-
ве собственности указанными акциями.

В судебном заседание представитель комбината исковые
требования поддержал и пояснил,что договор купли-продажи
акций комбината и передаточные распоряжения со стороны тор-
гового дома были подписаны Червинским Н.И., который на момент
совершения указанных действий не являлся генеральным дирек-
тором торгового дома и не был наделен соответствующими пол-
номочиями.При этом исходя из стоимости отчужденных акций
указанная сделка для торгового дома являлась крупной и согласно

действующему законодательству для ее заключения требовалось согласие общего собрания учредителей Общества. Однако этого сделано не было, несмотря на то, что член Совета директоров комбината Заноздров А.В., одновременно являющийся полномочным представителем одного из учредителей ООО (КЭМПП компания), об этом достоверно знал. В силу этого совершенная сделка не влечет правовых последствий для сторон и соответственно ООО незаконно завладело спорными акциями.

Представитель торгового дома исковые требования признал и показал, что на момент заключения договора директором торгового дома был Машковцев Е.А., а на момент направления передаточных распоряжений - Халмирзаев С.А. Поэтому, Червинский, будучи ненаделенным указанными полномочиями, не имел право подписывать вышеуказанные документы. Кроме этого, сделка по отчуждению акций являлась для торгового дома крупной и требовала согласия комбината, что однако сделано не было. Поэтому акции подлежат возврату торговому дому.

Представитель ООО в судебное заседание не прибыл несмотря на надлежащее извещение о времени и месте рассмотрения спора. В связи с этим и учитывая, что в материалах дела имеются достаточно данных, свидетельствующие о позиции сторон, арбитражный суд находит возможным рассмотрение спора в отсутствии представителя ООО.

Представитель третьего лица АОЗТ "Ведение реестров компаний" исковые требования признал и пояснил, что о допущенных нарушениях при перерегистрации акций по договору купли-продажи от 18.01.99г. им известно не было. Поэтому в зависимости от решения суда будут приняты соответствующие меры.

Выслушав мнение сторон и исследовав материалы дела, арбитражный суд установил, что 18.01.99г. между торговым домом и ООО был заключен договор №3, по которому торговый дом принял на себя обязательство передать ООО именные обыкновенные акции комбината выпуска №62-III-290 от 12.07.95г. в кол-ве 9789 шт. на 23504 руб.80 коп. и № 62-I-1396 в кол-ве 2298025 шт. от 13.06.96г. на 5535342 руб.20 коп., а всего акций в кол-ве 2307984 шт. на 5558847 руб., а ООО оплатить стоимость акций в течении 3 банковских дней с момента подписания сторонами договора как денежными средствами, так и ценными бумагами, в т.ч. простыми векселями.

20.01.00г. торговый дом направил держателю реестра акционеров комбината ЗАО "Компания-регистратор "Панорама" передаточные распоряжения о перерегистрации акций по договору №3 от 18.01.99г. на ООО.

АОЗТ "Компания-регистратор "Панорама" 21.01.00г. внесло соответствующие изменения в реестр акционеров.

В соответствии со ст.53 ГК РФ юридическое лицо приобретает гражданские права и принимает на себя гражданские обязанности через свои органы, действующие в соответствии с законом, иными правовыми актами и учредительными документами.

Согласно п.4.6 Устава торгового дома, право заключения договоров принадлежит генеральному директору.

Как видно из материалов дела, договор и передаточные распоряжения от имени торгового дома были подписаны Червинским.

продолжение решения по делу
№А22-1222/2000/6-109 от 22.11.00г.

Между тем, как установлено в судебном заседании (на момент заклю-
чения договора (16.01.99г.) и направления передаточного распоряжения
(20.01.00г.) генеральными директорами торгового дома соответственно
Машковцев Е.А. и Халмирзаев С.А.

Как пояснили в судебном заседании представители комбината и тор-
гового дома по отстранению Машковцева от занимаемой должности иные
лица комбината и торгового дома были подписаны неуполномоченным на
то лицом.

Согласно ст.183 ГК РФ при отсутствии полномочий действовать от
имени другого лица или при превышении таких полномочий сделка счи-
тается заключенной от имени и в интересах совершившее его лица,
если только другое лицо (представляемый) впоследствии прямо не одоб-
рит данную сделку.

При таких обстоятельствах арбитражный суд находит, что договор
в виду его заключения неуполномоченным на то лицом и неодобрения
его впоследующем ни комбинатом, ни торговым домом не может влечь
для сторон правовых последствий.

Согласно ст.46 ФЗ от 08.02.98г. № 14-ФЗ об обществах с ограни-
ченной ответственностью" крупной сделкой является сделка или нес-
колько взаимосвязанных сделок, связанных с приобретением, отчужле-
нием или возможностью отчуждения обществом прямо или косвенно
имущества, стоимость которого составляет более 25% стоимости иму-
щества общества, определенного на основании отчетности за последний
отчетный период, предшествующий дню принятия решения о совершении
таких сделок.

Как видно из материалов дела, стоимость отчужденных акций соста-
вила 5558847 руб., а стоимость имущества торгового дома 12285903
руб.

При этом сделка по отчуждению акций комбината не является сдел-
кой, совершенной в процессе обычной хозяйственной деятельности об-
щества, т.к. торговый дом не является профессиональным участником
рынка ценных бумаг и его уставом не предусмотрено в качестве основ-
ного вида деятельности совершение операций с ценными бумагами.

При таких обстоятельствах арбитражный суд находит, что между
торговым домом и ООО была заключена крупная сделка по отчуждению
акций комбината.

Согласно ст.168 ГК РФ сделка, несоответствующая требованиям
закона или иных правовых актов ничтожна, если закон не устанавли-
вает, что такая сделка оспорима.

В соответствии с п.3 и п.ст.46 ФЗ об обществах с ограниченной
ответственностью" решение о совершении крупной сделки принимается
общим собранием участников общества. При этом крупная сделка совер-
шенная с нарушением требований, предусмотренных настоящей статьей
закона, не может быть признана недействительной по иску общества
или его участника.

Как видно из материалов дела, единственным участником ООО является комбинат

Однако руководство комбината в порядке ст.39 ФЗ"Об обществах с ограниченной ответственностью" решение о продаже торговым домом вышеуказанных проспектов акций ООО не принимало и впоследующем заключенную торговым домом сделку не одобрило.

Более того, решением Совета директоров комбината от 18.01.98г. была запрещена продажа акций комбината сторонним организациям.

Как установлено в судебном заседании, учредителями ООО являются гр-н Бухарин Г.М. и КОМПП компания,учредительный договор от имени которой был подписан ее полномочным представителем Заводновым А.В.При этом последний на момент заключения договора купли-продажи от 18.01.99г. являлся членом Совета директоров комбината.

В силу этого,заключая договор купли-продажи акций, ООО должно было знать,что от имени торгового дома договор подписывает неуполномоченное на то лицо и заключается крупная сделка при отсутствии согласия на это его учредителя.

При таких обстоятельствах и учитывая,что балансовая стоимость акций составляет 45% стоимости имущества торгового дома, а сделка по отчуждению акций от его имени заключена неуполномоченным на то лицом и в отсутствии согласия и одобрения учредителя,арбитражный суд находит,что заключенная сделка по купле-продаже акций комбината является недействительной.

Недействительность сделки по купле-продаже акций влечет за собой и признание недействительными и всех последующих сделок с ними,в т.ч. и перерегистрации акций с торгового дома на ООО.

На основании изложенного,руководствуясь ст.ст. 124-127 АПК РФ,арбитражный суд р е ш и л :

исковые требования ОАО "Качканарский горно-обогатительный комбинат"Ванадий" удовлетворить.

1.Договор купли-продажи №3 от 18.01.99г.,заключенный между ООО "Торговый дом ОАО"Ванадий" и ООО "Цолипром" признать недействительным.

2.Признать недействительными передаточные распоряжения от 20.01.00г. о списании с лицевого счета ООО"Торговый дом ОАО"Ванадий" во исполнении договора купли-продажи №3 от 18.01.99г. именных обыкновенных акций ОАО "Качканарский горно-обогатительный комбинат "Ванадий" выпуска №62-III-290 от 12.07.93г. в кол-ве 9759 шт. и № 62-I-1396 от 12.06.96г. в кол-ве 2298225 шт.

3.Держателю реестра акционеров ОАО "Качканарский горно-обогатительный комбинат "Ванадий" АООТ "Ведение реестров компаний" восстановить в системе ведения реестра владельцев именных ценных бумаг ОАО "Качканарский горно-обогатительный комбинат "Ванадий" записи о наличии на лицевом счете ООО "Торговый дом ОАО "Ванадий" именных обыкновенных акций ОАО "Качканарский горно-обогатительный комбинат "Ванадий" выпуска № 62-III-290 от 12.07.93г. в кол-ве 9759 шт. и №62-I-1396 от 12.06.96г. в кол-ве 2298225 шт.

продолжение решения по делу
№А22-I222/2000/6-I09 от 22.II.0

3.

    Взыскать расходы по госпошлине в пользу ОАО "Качканарский горно-обогатительный комбинат "Ванадий" с ООО "Торговый дом ОАО"Ванадий" в размере 834 руб. 90 коп. и ООО "Полипром" — 834 руб. 90 коп.

    Выдать исполнительные листы по вступлении решения в законную силу.

    Настоящее решение может быть обжаловано сторонами в месячный срок со дня его принятия в апелляционную инстанцию Арбитражного суда РК.

Судья                                                        Логинов С.Н.