**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

—————————————————————

**BASE METAL TRADING SA et al**                    **Docket No. 00 Civ. 9627**

**Plaintiffs**

**v.**

**RUSSIAN ALUMINUM et al.**

**Defendants.**

—————————————————————

## DECLARATION OF DOV RIEGER

I, Dov Rieger, pursuant to the provisions of 28 U.S.C. §1746, herby declare as follows:

1.     I am a citizen of Israel.  I submit this declaration to explain certain events surrounding the fraudulent misappropriation of the shares of Omni Trusthouse Limited ("Omni") in the Kachkanarsky GOK Vanadium Plant ("GOK").

## BACKGROUND

**2.**     Omni is a private limited company, registered by the Registrar of Companies for England and Wales on January 5, 1998, Registration Certificate # 3488263.  (See Exhibit 1).  I have been Omni's managing director since 1998.

3.     As of  September 2000, Omni owned 34,031,114 shares of GOK, which amounted to 17.8 % of the company's authorized stock. (See Exhibit 2).  Omni had acquired approximately 10.6 million of these shares from a closed joint stock company called Profit House ("Profit House").

4.      Profit House, in turn, had acquired those shares as a result of the September 1998 judicial sale of GOK shares that had belonged to NPRO Urals.

## THE RUSSIAN LITIGATION

### The Chelyabinsk Action

5.      In Spring 2000, nearly two years after the judicial sale of its shares, NPRO Urals filed a lawsuit in the Chelyabinsk Arbitrazh Court ("ChAC") to set aside the judicial sale of GOK and to re-register the GOK shares in the name of NPRO Urals.  On August 1, 2000, the ChAC ruled in favor of NPRO Urals and ordered that the shares be re-registered in the name of NPRO Urals.  (See Exhibit 3).

6.       Omni was never made a party to this proceeding, and was never notified of the proceeding, even though Omni was the record owner of the shares at the time the lawsuit was brought.  NPRO Urals certainly knew that Omni owned the GOK shares, since that information was available from the stock registry.

7.      Profit House appealed this decision.  On October 16, 2000, the appellate division of ChAC ordered that the shares be re-registered.  (See Exhibit 4).  In its October 16, 2000 Order, ChAC rejected Profit House's argument that the current owners of GOK shares had not been parties to the proceeding.  It reasoned that the ChAC had taken measures to ascertain and join the true owners.  The October 16, 2000 order was affirmed by the Federal Arbitrazh Court for the Ural District on or about December 4, 2001. (See Exhibit 5).

8.      The re-registration apparently occurred on or about November 15, 2000. (See Exhibit 6).  Omni did not learn of the transfer, and did not learn of any of the above-mentioned litigation, until two months after the transfer took place.

9.      On June 4, 2001, Profit House filed a petition at the Supreme Arbitrazh Court of the Russian Federation seeking to bring a protest to the ChAC decision of August 1, 2000, the ChAC Order of October 16, 2000 and the decision of Federal Arbitrazh Court for the Ural District of December 4, 2001 (See Exhibit 7).  The petition is still pending.

**The Moscow Action**

10.      On September 29, 2000, the Solntsevo local court in Moscow issued a decision in an action purportedly brought by OAO Nizhnitagilsky Metalurgical Combine, ZAO Inrossmet, and ZAO Standart Trust against various defendants, including Nexis Products, LLC, Omni Trusthouse Ltd., Foston Management, Ltd., and Holdex LLC, seeking to invalidate the sale of GOK shares to the defendants and claiming to be the owners of those shares. (See Exhibit 8).  This action is described in greater detail in the Declaration of Marina Ashikhmina.

11.      Although the Court decision indicates that Omni was represented at the proceeding, it does not state the name of the person allegedly appearing on Omni's behalf.  Contrary to the decision, Omni was <u>never</u> notified of the proceeding, nor did it participate in any proceeding.  Further, Omni never authorized any person to represent it at this proceeding.

12.      Although the decision of September 29, 2000 did not divest Omni of its shares in GOK, it was yet another attempt to use judicial mechanisms to take back its shares without notifying the true owners.  It is common knowledge that OAO Nizhnitagilsky Metalurgical Combine is controlled by the same person who controls GOK, Iskander Makmudov.

13.     As set forth in the Declaration of Ashikhmina, the Moscow City Court reversed this decision by order dated March 30, 2001.  (See Exhibit 9).

14.     This action was ultimately dismissed by order dated November 30, 2001. (See Exhibit 10).

### The US Defendants

15.     Upon information and belief, the GOK shares that had belonged to Omni are currently registered in whole or in part in the names of Defendants Investland LLC, Unidale, LLC, and/or Venitome Corp.

16.     Based on my conversations with Joseph Traum, I believe that the illegal transfer of Omni's shares was effected by Iskander Makmudov and Mikhail Chernoy.

17.     Further, based on information in the Second Amended Complaint, and various documents which have been submitted to the Court regarding the ownership of real estate in the United States by Chernoy, I believe that the various American companies to which the shares were transferred were organized by Arek Kislin, who acts as Chernoy's agent in the United States.

## EXHIBITS TO DECLARATION OF DOV RIEGER

| # | Exhibits |
|---|---|
| 1. | Certificate of Incorporation of Omni Trusthouse Ltd. |
| 2. | List of GOK's shareholders as of September 25, 2000 |
| 3. | Decision of the Chelyabinsk Arbitrazh Court of August 1, 2000 |
| 4. | Decision of the Appellate Instance of Chelyabinsk Arbitrazh Court of October 16, 2000 |
| 5. | Decision of the Cassation Instance of the Ural District Arbitrazh Court of December 4, 2001. |
| 6. | Registrar's notification evidencing that shares were re-registered on November 15, 2000. |
| 7. | Petition of CJSC Financial Company Profit House to bring a protest filed with the Supreme Arbitrazh Court of the Russian Federation on June 4, 2001 |
| 8. | Decision of Solntsevo inter municipal district court of September 29, 2000 |
| 9. | Order of the Moscow city court of March 30, 2001 in the case # 33-346 |
| 10. | Decision of Solntsevo inter municipal district court of November 30, 2001 |

# EXHIBIT "1"

30 07 01  MON 21:15 FAX                                                        ☒004



# CERTIFICATE OF INCORPORATION
# OF A PRIVATE LIMITED COMPANY

## Company No. 3488263

The Registrar of Companies for England and Wales hereby certifies that

...NI TRUSTHOUSE LIMITED

is this day incorporated under the Companies Act 1985 as a private

company and that the company is limited.

Given at Companies House, Cardiff, the 5th January 1998

*E. P. Owen*

MRS. E. P. OWEN

For the Registrar of Companies



*C O M P A N I E S   H O U S E*

# EXHIBIT "2"

PANORAMA

Outgoing # 135-250900-005/OPERU of September 28. 2000

Company - Registrar

## LIST OF SHAREHOLDERS OF OJSC KACHKANAR GOK VANADIY,
AS OF SEPTEMBER 25, 2000

Registered address of the issuer:                       624356 Russia
                                                         Severdlovsk region
                                                         Kachkanar, 2 Sverdlova St.

Certificate of state registration of the issuer:        0422 series III-IK issued by
                                                         The Head of Kachkanar
                                                         Administration on 04/15/1993

Ordinary nominal non-documentary shares:                403,662
State number of issue of shares:                        # 62-1P-290
Face value of one share:                                1,00 rubles
Ordinary nominal non-documentary shares:                190,528,464
State number of issue of shares:                        # 62-1-1396
Face value of one share:                                1,00 rubles

The person requesting the information:       the company, Foston Management Limited
Properties of the request:
        Outgoing number and the date            No number, of September 25, 2000
        Incoming number of the registrar        Ts-0135-250900-005, of September
        and the date                            25, 2000

Basis for execution of the list: Provisions "On keeping of register of nominal securities
owners", approved by the decision of the FKTsB (Federal Securities Commission) of
October 2, 1997 # 27.

Date of execution of the list: September 28, 2000

Order of distribution of the list: on the basis of the acceptance-conveyance report

**List of shareholders of OJSC Kachkanar GOK Vanadiy,
composed as of September 25, 2000**

| # | Type of nominal account | Name | Amount of ordinary nominal shares 1 issue | Amount of ordinary nominal shares 2 issue |
|---|---|---|---|---|
| 3679 | Owner | Yahsina Anna Anatolievna | 4 | 1888 |
| 3680 | Owner | CJSC Gefest Association | 94 | 44368 |
| 3681 | Owner | CJSC Evrosib-Moskva | 6541 | 0 |
| 3682 | Owner | CJSC Novaya Investitsionnaya Kompaniya | 4 | 1888 |
| 3683 | Owner | CJSC IK Iset-Invest | 505 | 8678 |
| 3684 | Owner | LLC Uralskaya Torgovo-Inv. Companiya" | 45 | 0 |
| 3685 | Owner | OJSC Predriyatie Agat | 6 | 2832 |
| 3686 | Owner | Union Committee JSC Vanadiy | 715 | 337480 |
| 3687 | Owner | OJSC Remelektro | 0 | 8164 |
| 3688 | Owner | OJSC Rink-Invest | 0 | 3304 |
| 3689 | Owner | Sverdlovskiy Region Committee on Management of State Property | 1 | 472 |
| 3690 | Owner | Private investment fund Ural-Tri-K | 4 | 1888 |
| 3691 | Owner | LLC Chermetplan LTD | 1091 | 0 |
| 3692 | Owner | First Baltic Commercial Trust | 0 | 2978500 |
| 3693 | Nominal holder | CJSC AKB Rosbank | 26 | 4408 |
| 3694 | Owner | CJSC Uralelekromed | 100 | 0 |
| 3695 | Owner | CJSC BF Interural-Invest | 7447 | 67604 |
| 3696 | Nominal holder | CJSC Depozitarno-Kliringovaya Kompaniya | 167 | 0 |
| 3697 | Owner | CJSC sredneuralskiy Brokerskiy Tsentr | 20 | 9420 |
| 3698 | Owner | CJSC Financial-Investment Company Ural-Kontinent | 0 | 24 |
| 3699 | Owner | Company, Foston Management Limited | 103565 | 37696035 |
| 3700 | Owner | Company, Davis International, LLC | 78282 | 35027740 |
| 3701 | Owner | Company, Nexis Products, LLC | 45 | 0 |
| 3702 | Owner | Company, Omni Trusthouse Limited | 42660 | 33988454 |
| 3703 | Owner | Company, Holdex LLC | 70308 | 30877078 |
| 3704 | Owner | Vox LLC | 63724 | 35819270 |
| 3705 | Owner | OJSC Innovatsionnyi Fond AZ-Kapital | 8126 | 3835472 |
| 3706 | Nominal Holder | Association of Legal Entities Depozitarno-Raschetnyi Soyuz | 0 | 90 |
| 3707 | Owner | LLC BF UTK-Brok-Invest | 588 | 472 |
| 3708 | Owner | LLC Komapniya Novye Investitsii | 1541 | 17938 |

| 3709 | Owner | LLC Lans | | 0 | 100 |
|---|---|---|---|---|---|

Head of the operational department
of JSC Panorama                    [seal]       [signed]      G.E. Yurasova

Executed
Samoilova Ye.A.
Tel. 490-49-40

Provided upon September 9, 2000 request of registered person, the company Foston
Management Limited

02/08 01  THU 22:38 FAX                                                    ☒001



Исх. №135-250900-005/ОПЕРУ от 28.09.2000г.

. КОМПАНИЯ-РЕГИСТРАТОР

# Список
# акционеров ОАО «Качканарский ГОК «Ванадий», составленный по состоянию на 25.09.2000г.

| | |
|---|---|
| Юридический адрес эмитента: | 624356 Россия, Свердловская обл., г.Качканар, ул.Свердлова, д.2 |
| Свидетельство о государственной регистрации эмитента: | 0422 Серия III-ИК выдано Глава администрации г.Качканар 15.04.1993 |

| | |
|---|---|
| *Акции обыкновенные именные бездокументарные:* | 403 662 шт. |
| *Государственный номер выпуска акций:* | № 62-1П-290 |
| *Номинальная стоимость одной акции:* | 1,00 руб. |
| *Акции обыкновенные именные бездокументарные:* | 190 528 464 шт. |
| *Государственный номер выпуска акций:* | № 62-1-1396 |
| *Номинальная стоимость одной акции:* | 1,00 руб. |

Лицо, запрашивающее информацию: Компания «Фостон Менеджмент Лимитед»
Реквизиты запроса:
- ♦ Номер и дата исходящего:                б/н от 25.09.2000
- ♦ Номер и дата входящего регистратора:    Ц-0135-250900-005 от 25.09.2000

Основание выдачи списка: Положение о ведении реестра владельцев именных ценных бумаг, утвержденное постановлением ФКЦБ от 02.10.1997г. №27

Дата подготовки списка: 28.09.2000

Порядок выдачи списка: По акту приема-передачи

02/08 01  THU 22:38 FAX                                                    002

**Список акционеров ОАО "Качканарский горно-обогатительный комбинат "Ванадий" по состоянию на 25.09.2000г.**

| Номер п/п | Тип лицевого счета | Наименование | Кол-во обыкновенных именных акций 1 вып. | Кол-во обыкновенных именных акций 2 вып. |
|---|---|---|---|---|
| 3679 | Владелец | ЯШИНА АННА АНАТОЛЬЕВНА | 4 | 1888 |
| 3680 | Владелец | "ГЕФЕСТ" АОЗТ АССОЦИАЦИЯ | 94 | 44368 |
| 3681 | Владелец | "ЕВРОСИБ- МОСКВА"АОЗТ" | 6541 | 0 |
| 3682 | Владелец | ЗАО "НОВАЯ ИНВЕСТИЦИОННАЯ КОМПАНИЯ" | 4 | 1888 |
| 3683 | Владелец | ЗАО "ИК ИСЕТЬ-ИНВЕСТ" | 505 | 8678 |
| 3684 | Владелец | ООО "УРАЛЬСКАЯ ТОРГОВО-ИНВ. КОМПАНИЯ" | 45 | 0 |
| 3685 | Владелец | АОЗТ "ПРЕДПРИЯТИЕ АГАТ" | 6 | 2832 |
| 3686 | Владелец | ПРОФСОЮЗНЫЙ КОМИТЕТ АО "ВАНАДИЙ" | 715 | 337480 |
| 3687 | Владелец | "РЕМЭЛЕКТРО" ОАО | 0 | 8164 |
| 3688 | Владелец | "РИНК-ИНВЕСТ" ОАО | 0 | 3304 |
| 3689 | Владелец | СВЕРДЛОВСКИЙ ОБЛ. КОМИТЕТ ПО УПР. ГОСИМУЩЕСТВОМ | 1 | 472 |
| 3690 | Владелец | "УРАЛ-ТРИ-К" ЧИФ | 4 | 1888 |
| 3691 | Владелец | ООО "ЧЕРМЕТПЛАН ЛТД" | 1091 | 0 |
| 3692 | Владелец | FIRST BALTIC COMMERCIAL TRUST | 0 | 2978500 |
| 3693 | Ном. держ. | АКБ "РОСБАНК" (ОАО) | 26 | 4408 |
| 3694 | Владелец | ЛООТ "УРАЛЭЛЕКТРОМЕДЬ" | 100 | 0 |
| 3695 | Владелец | ЗАО "БФ "ИНТЕРУРАЛ-ИНВЕСТ" | 7447 | 67604 |
| 3696 | Ном. держ. | ЗАО "ДЕПОЗИТАРНО-КЛИРИНГОВАЯ КОМПАНИЯ" | 167 | 0 |
| 3697 | Владелец | ЗАО "СРЕДНЕУРАЛЬСКИЙ БРОКЕРСКИЙ ЦЕНТР" | 20 | 9420 |
| 3698 | Владелец | ЗАО "ФИНАНСОВО-ИНВЕСТИЦИОННАЯ КОМПАНИЯ "УРАЛ-КОНТИНЕНТ" | 0 | 24 |
| 3699 | Владелец | КОМПАНИЯ "ФОСТОН МЕНЕДЖМЕНТ ЛИМИТЕД" | 103565 | 37696035 |
| 3700 | Владелец | КОМПАНИЯ "ДЭВИС ИНТЕРНЕШНЛ Эл.Эл.Си." | 78282 | 35027740 |
| 3701 | Владелец | КОМПАНИЯ "НЭКСИС ПРОДАКТС Эл.Эл.Си." | 45 | 0 |
| 3702 | Владелец | КОМПАНИЯ "ОМНИ ТРАСТХАУС ЛИМИТЕД" | 42660 | 33988454 |
| 3703 | Владелец | КОМПАНИЯ "ХОЛДЭКС Эл.Эл.Си." | 70308 | 30877078 |
| 3704 | Владелец | КОМПАНИЯ С ОГРАНИЧЕННОЙ ОТВЕТСТВЕННОСТЬЮ "ВОКС" (VOX L.L.C.) | 63724 | 35819270 |
| 3705 | Владелец | ОАО "ИННОВАЦИОННЫЙ ФОНД "АЗ-КАПИТАЛ" | 8126 | 3835472 |
| 3706 | Ном. держ. | ОБЪЕДИНЕНИЕ ЮРИДИЧЕСКИХ ЛИЦ "ДЕПОЗИТАРНО-РАСЧЕТНЫЙ СОЮЗ" | 0 | 90 |
| 3707 | Владелец | ООО "БФ "УТК-БРОК-ИНВЕСТ" | 588 | 472 |
| 3708 | Владелец | ООО "КОМПАНИЯ "НОВЫЕ ИНВЕСТИЦИИ" | 1541 | 17938 |
| 3709 | Владелец | ООО "ЛАНС" | 0 | 100 |

Начальник операционного управления
АО "ПАНОРАМА"                                        Г.Е.Юрасова

Исполнитель
Самойлова Е.А.
тел.490-49-40

*предоставлен по запросу от 25.09.2000г. зарегистрированного лица Компании "Фостон Менеджмент Лимитед"*

73

# EXHIBIT "3"

## CHELYABINSK REGION ARBITRATION COURT

## RULING IN THE NAME OF THE RUSSIAN FEDERATION

August 1, 2000

City of Chelyabinsk
Case No. A76-4037/2000-5-105

At its open session the Chelyabinsk Region Arbitration Court comprising L. I. Zubkova, Presiding Judge, and V. I. Zaitseva and V. V. Khudyakova, Judges, has considered a suit filed by LLC NPRO "Ural." Ozyorsk, against the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation, CJSC "Finansovaya kompaniya "Vadis." Chelyabinsk, CJSC FC "Profit-House." Moscow, CJSC "Kompaniya-registrator "Panorama." Moscow, and CJSC "Mikchel-Invest." Chelyabinsk, for taking appropriate action based on the finding of invalidity of a void contract, for recognizing the Plaintiff's right of ownership in the contested shares, and for ordering the restoration of the original data in the inscribed security holders' register with participation of the Plaintiff's representatives—A. M. Shakhmatov (permanent proxy No. 19 of October 4, 1999), V. A. Plotnikov (permanent proxy of June 26, 2000) and O. A. Bayanikova (permanent proxy No. 18 of May 29, 2000)—and the Respondents' representatives—A. V. Studennikov (permanent proxy No. 10/23 of January 6, 2000), D. Ye. Zaugarov (proxy No. 195/ю of May 29, 2000) (p. 36, vol. 2) and Ye. N. Bazuyeva (proxy No. 195/ю of May 29, 2000) (p. 36, vol. 2), representatives of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation, and K. O. Nitsiyevskiy (permanent proxy No. 11 of June 26, 2000) and A. V. Yemelyanova (permanent proxy No. 14 of July 26, 2000), representatives of CJSC "Mikchel-Invest."

LLC NPRO "Ural" filed a suit against the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation, CJSC "Finansovaya kompaniya "Vadis." CJSC "Finansovaya kompaniya "Profit-House" and CJSC "Kompaniya-registrator "Panorama" for taking appropriate action based on the finding of invalidity of a void contract, for recognizing the Plaintiff's right of ownership in the contested shares, and for ordering the restoration of the original data in the register keeping system.

In its May 10, 2000 ruling (p. 91, vol. 1) the Arbitration Court named CJSC "Mikchel-Invest" as a Respondent in the case.

At the court session held on May 30, 2000 (p. 97, vol. 1) the Plaintiff amended its claims, requesting the Arbitration Court to void the results of the auction of the nondocumentary shares issued by OJSC "Kachkanarskiy GOK "Vanadium." invalidate contract No. 21 of September 18, 1998, invalidate the contract for sale of the nondocumentary shares issued by OJSC "Ashinskiy metallurgicheskiy zavod" and owned by the Plaintiff, invalidate transfer orders with inc. Nos. 648 and 649 and transfer order No. 135, recognize the Plaintiff's right of ownership in the above shares and order the

2

restoration of the entry on the Plaintiff's ownership in the above shares in its personal account existing in the system for keeping the securities holders' register.

In its June 27, 2000 ruling the Arbitration Court named Amber Star LLC , CJSC "Yuzhno-uralskaya registratsionnaya palata" and LLC "Gidromashservis" as Respondents in the case.

Although CJSC "Finansovaya kompaniya "Vadis." CJSC FC "Profit-House." CJSC "Kompaniya-registrator "Panorama" and CJSC "Yuzhno-uralskaya registratsionnaya palata" were duly notified of the date and the venue of proceedings their representatives did not appear (pp. 11, 13, 14 and 16, vol. 3).

Representatives of Amber Star LLC and LLC "Gidromashservis" did not appear either, but there is no evidence that these companies were duly notified of the time and the venue of proceedings.

At the court session held on July 31, 2000 the Plaintiff amended its claims, requesting the Arbitration Court to invalidate transfer orders with inc. Nos. 648 and 649 and transfer order No. 135 and, consequently, order the restoration of the entry on its ownership in the shares issued by OJSC "Kachkanarskiy GOK "Vanadium" and OJSC "Ashinskiy metallurgicheskiy zavod" in its personal account, as well as to void the results of the auction of the nondocumentary shares issued by OJSC "Kachkanarskiy GOK "Vanadium."

In light of the Plaintiff's claims and in virtue of Article 34.3 of the Code of Arbitration Procedure of the Russian Federation, Amber Star LLC and LLC "Gidromashservis" are not Respondents in the case in point; besides, the extracts from the personal accounts of these legal entities show that at present they do not hold any of the contested shares.

Under the circumstances, the Arbitration Court deems it possible to consider the case in the absence of representatives of Amber Star LLC and LLC "Gidromashservis."

The Plaintiff has fully supported its claims. In its opinion, its nondocumentary shares issued by OJSC "Kachkanarskiy GOK "Vanadium" and its nondocumentary shares issued by OJSC "Ashinskiy metallurgicheskiy zavod" were seized, arrested and sold by the Ozyorsk Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation without proper legal grounds since the decisions of the Ozyorsk Department of the State Tax Inspectorate, based on which the orders of recovery against property were issued and the above shares were seized, arrested and sold, were invalidated by the March 3, 2000 ruling which was issued by the Chelyabinsk Region Arbitration Court in case No. A76-2946/98-45-32/286/27 and became effective; invalidated were also the orders of recovery against property and the order of arrest (by the December 12, 1998 ruling which was issued by the Chelyabinsk Region Arbitration Court in case No. A76-6467/98-40y-235 and became effective). Besides, the Plaintiff believes that the transfer orders which served as the grounds for making entries in the system for keeping the register of holders of nondocumentary shares were signed by individuals who were not duly authorized to sign such orders and, therefore, should not have been executed by CJSC "Kompaniya-registrator "Panorama." In the Plaintiff's view, the results of the auction of the shares issued by OJSC "Kachkanarskiy GOK "Vanadium" are void since in reality only one entity—CJSC "Finansovaya kompaniya "Profit-House"—took part in the auction; therefore, the contract of sale of the above

3

shares, which was concluded by CJSC "Mikchel-invest" and CJSC "Finansovaya kompaniya "Profit-House" on the basis of the auction results, is void, too. The Plaintiff believes that its right of ownership, which was infringed by the wrongful acts consisting in the alienation of the Plaintiff's shares should be protected by restoring the entries on the Plaintiff's ownership in the above shares in the system for keeping the register of holders of nondocumentary securities.

The Respondents have not acknowledged the claims.

The Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation has contested the claims, stating that the shares owned by the Plaintiff were lawfully arrested, which was confirmed by the December 7, 1998 ruling which was issued by the Chelyabinsk Region Arbitration court in case No. A76-6467/98-40y-235 — the suit filed by LLC NPRO "Ural" for invalidating the April 16, 1998 order No. 4 and the August 7, 1998 order No. 19 of the Ozyorsk Department of the State Tax Inspectorate and invalidating the April 20, 1998 order No. 20 and the August 10, 1998 order of the Manager of the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service—and which became effective. The above ruling invalidated those items of the August 7, 1998 order No. 19 of the Ozyorsk Department of the State Tax Inspectorate and the August 10, 1998 order of the Manager of the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service, that prescribed recovery against, and arrest of the Plaintiff's property worth 6,855,762 rbl.; the other claims put forward by the Plaintiff were dismissed. In the Respondent's opinion, transfer orders with inc. Nos. 649 and 648 and transfer order No. 135 were signed by the Deputy Manager of the Chelyabinsk Region Department of the Federal Tax Police Service within the authority conferred on the tax police bodies by Article 132.1 of the Russian Federation Law "On Federal Tax Police Bodies." The Respondent believes that the Plaintiff's claims should not be satisfied for the reason that the Plaintiff was paid the proceeds of sale of the arrested shares in accordance with the order of the Ozyorsk Department of the State Tax Inspectorate and the order of the Manager of the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation, which were invalidated by the Chelyabinsk Region Arbitration Court.

CJSC "Mikchel-Invest" contested the claims, stating that its acts consisting in organizing and conducting the auction of the shares issued by OJSC "Kachkanarskiy GOK "Vanadium." concluding the contract of sale of the above shares with CJSC "Finansovaya kompaniya "Profit-House." and concluding the contract of sale of the shares issued by OJSC "Ashinskiy metallurgicheskiy zavod" with CJSC "Finansovaya kompaniya "Vadis" were lawful. Besides, in the Respondent's opinion, under the current laws only the auctioning of real state is mandatory.

CJSC "FK "Profit-House" (Response to the Statement of Claims, pp. 119 and 120, vol. 1) and CJSC "FK "Vadis" (Response to the Statement of Claims, pp. 1 and 2, vol. 2) contested the claims, indicating that they were bona fide acquirers of the shares which, in the Respondents' opinion, could be reclaimed by the Plaintiff only by way of vindication.

CJSC "Kompaniya-registrator "Panorama" (Response to the Statement of Claims, pp. 83 and 84, vol. 2) contested the claims, indicating that its acts consisting in registering the transfer of the rights of ownership in the contested shares were performed

4

in accordance with the Rules approved by October 2, 1997 Resolution No. 27 of the Federal Securities Market Commission and on the basis of the duly drawn-up transfer orders.

Upon hearing the Parties' arguments and examining the case materials, the present Court has established the following:

LLC NPRO "Ural" owned 30,831 first-issue nondocumentary ordinary shares of OJSC "Kachkanarskiy GOK "Vanadium" (state registration code 62-1п-290), 10,552,232 second –issue nondocumentary ordinary shares of OJSC "Kachkanarskiy GOK "Vanadium" (state registration code 62-1-1396) (p. 57, vol. 1) and 1,675,551 ordinary nondocumentary shares of OJSC "Ashinskiy metallurgicheskiy zavod" (state registration code 69-1-609) (pp. 11 and 12).

The registrar keeping the register of the inscribed securities issued by OJSC "Kachkanarskiy GOK "Vanadium" was CJSC "Kompaniya-registrator "Panorama."

The registrar keeping the register of the inscribed securities issued by OJSC "Ashinskiy metallurgicheskiy zavod" was CJSC "Yuzhno-uralskaya registratsionnaya palata" (p. 11, vol. 2); at present, the register of such securities is kept by CJSC "Kompaniya-registrator "Panorama."

On June 24, 1998 the registrar acting in accordance with the transfer order with inc. No. 175 (2/3/782), which was signed by the Deputy Manager of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation (p. 51, vol. 1) made an entry on the transfer of the rights of ownership in the 1,675,551 nondocumentary ordinary shares of OJSC "Ashinskiy metallurgicheskiy zavod" from LLC NPRO "Ural" to CJSC "Finansovaya kompaniya "Vadis" (p. 11, vol. 2).

Indicated as the grounds for making this entry were the May 5, 1998 contract of sale No. 0505-01-010 concluded by CJSC "Mikchel-Invest" (the Seller) and CJSC "FK "Vadis" (the Buyer), February 14, 1996 Decree No. 199 of the President of the Russian Federation, Taxpayer's Property Seizure and Administrative Arrest Report of March 27, 1998, and April 3, 1998 Agreement No. 77.

On March 7, 1998 the 1,675,551 shares issued by OJSC "Ashinskiy metallurgicheskiy zavod" were seized and arrested by the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation (pp. 44 and 45, vol. 1) in accordance with the March 18, 1998 order No. 4 of the Ozyorsk Department of the State Tax Inspectorate and the March 25, 1998 order of the Manager of the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation (p. 43, vol. 1). The shares were frozen by the registrar on March 26, 1998.

On April 17, 1998 the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation reported that due to the fact that the Ozyorsk Department of the State Tax Inspectorate recalled its March 18, 1998 order No. 4 the March 25, 1998 arrest order was revoked and the property arrested on March 27, 1998 was released from arrest (p. 47, vol. 1). The shares were unfrozen by the registrar on April 23, 1998.

On April 28, 1998 the 3,760,880 shares issued by OJSC "Ashinskiy metallurgicheskiy zavod" were seized and arrested by the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian

5

Federation (pp. 49 and 50, vol. 1) in accordance with April 16, 1998 order No. 4 of the Ozyorsk Department of the State Tax Inspectorate (p. 39, vol. 2) and April 20, 1998 order No. 20 of the Manager of the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation (p. 48, vol. 1). The shares were frozen by the registrar on April 23, 1998.

On May 13, 1998 the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation and CJSC "Mikchel-Invest" concluded agreement No. 105 (pp. 101-105, vol. 1), under which CJSC "Mikchel-Invest" undertook to sell the arrested shares on commission.

On May 5, 1998 CJSC "Mikchel-Invest" and CJSC "Finansovaya kompaniya "Vadis" concluded contract No. 0505-01-010 for sale of securities (pp. 114-116, vol. 2).

At present, CJSC "Finansovaya kompaniya "Vadis" is neither the actual holder nor the nominee holder of the above shares.

When the June 24, 1998 transfer order No. 1?5 was submitted the shares covered by this order were released from arrest effected on March 27, 1998 (June 26, 1998 order with inc. No. 176, vol. 1) and actually discontinued on April 17, 1998, and the entry on the transfer of rights of ownership in the above shares to their new holder was actually made in respect to the shares that were under arrest effected on April 28, 1998. The entry on the unfreezing of the shares frozen on April 23, 1998 was made by the registrar on June 26, 1998 upon receipt of the June 26, 1998 order with inc. No. 176 without legal grounds since the order prescribes the release of the shares from arrest effected on March 27, 1998. Thus, with the register containing an entry on the freezing of the above shares the entry on the transfer of rights of ownership in these shares to their new holder was made by the registrar in violation of item 7.3 of the "Rules for Keeping Register of Inscribed Securities." Also, in violation of item 7.5 of the above Rules providing that the freezing and unfreezing operations must be effected on the basis of the documents issued by the authorized bodies the registrar made the entry on the unfreezing of the LLC NPRO "Ural" personal account in the absence of the necessary documents.

Based on transfer orders with inc. No. 649 (p. 59, vol. 1) and inc. No. 648 (p. 60, vol. 1) signed by V. Yu. Usinin, an official of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation, and a representative of CJSC "Mikchel-Invest." on September 24, 1998, the registrar made entries in the register on the transfer of rights of ownership in the 10,552,232 first-issue shares and the 30,831 second-issue shares of OJSC "Kachkanarskiy GOK "Vanadium" from LLC NPRO "Ural" to the nominee holder—CJSC "Depozitarno-kliringovaya kompaniya" (p. 63, vol. 1).

Indicated as documents confirming the powers of the above representative who signed the transfer orders are the February 14, 1996 Decree of the President of the Russian Federation, September 13, 1998 Taxpayer's Property Seizure and Arrest Report and September 9, 1998 Agreement No. 1. Actually, one of the grounds for issuing the transfer orders was the August 13, 1998 Taxpayer's Property Seizure and Arrest Report.

The LLC NPRO "Ural" property was seized and arrested by the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation on August 13, 1998 (pp. 55 and 56, vol. 2) in accordance with August 7, 1998 order No. 19 of the Ozyorsk Department of the State Tax Inspectorate (p. 40, vol. 2) and the August 10, 1998 order of the Manager of the

6

Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation (p. 54, vol. 1).

On September 9, 1998 the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation and CJSC "Mikchel-Invest" concluded contract No. 183 (pp. 132-135, vol. 2), under which CJSC "Mikchel-Invest" undertook to sell the arrested property on commission.

On September 11, 1998 the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation informed CJSC "Mikchel-Invest" that the decision was made to have the arrested shares sold by tender which was actually an auction not open to the general public since the invitations were sent only to definite organizations and the highest bidder was to be recognized as the winner, the minimum stated price of a block of shares being 16,932,900 rbl. (p. 138, vol. 2).

Recognized as the winner was CJSC "Finansovaya kompaniya "Profit-House" which in reality was the only auction participant since the bids made by the other bidders did not meet the announced terms of the auction because the bids were lower than the minimal starting price (on September 16, 1998 the US dollar – ruble exchange rate was 1: 9.6117); besides, the bids made in dollars were found invalid (September 16, 1998 minutes No. 1-T (p. 139, vol. 2).

Based on the results of the above auction, on September 18, 1998 CJSC "Mikchel-Invest" and CJSC "Finansovaya kompaniya "Profit-House" concluded contract No. 21 (pp. 143-145). CJSC "Finansovaya kompaniya "Profit-House" was and is neither the actual holder nor the nominee holder of the above shares since it bought these shares under the June 18, 1998 commission services contract No. KO-0097-98 concluded with Amber Star LLC (pp. 63-66, vol. 2).

On October 6, 1998 the Manager of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation issued order No. 20A (p. 62, vol. 1) revoking the August 10, 1998 order and releasing the shares from the administrative arrest effected on August 13, 1998.

The present Court has come to the conclusion that the Plaintiff's claims are legitimate and that the Respondents' arguments should be rejected for the following reasons:

The orders for recovery of taxes, fines and tax penalties against the taxpayer's property were issued by the Ozyorsk Department of the State Tax Inspectorate in accordance with the decisions made on the basis of the LLC NPRO "Ural" tax audit report of February 10, 1998 (pp. 10-17, vol. 1). The decisions made on the basis of the audit results were revoked and amended by the Ozyorsk Department of the State Tax Inspectorate [Translator's note. In the Russian original the preceding part of this sentence is mistakenly followed by the end of the previous sentence "in accordance with the decisions made on the basis of the LLC NPRO "Ural" tax audit report of February 10, 1998 (pp. 10-17, vol. 1).]" The decisions made on the basis of the audit results were revoked and amended by the Ozyorsk Department of the State Tax Inspectorate (pp. 19-21, vol. 1), and amendments and additions were made to the audit report, too (pp. 13, 14-17 and 22-24, vol. 1). The final decisions made on the basis of the above audit report – June 1, 1998 decision No. 11 (285) (p. 25, vol. 1) and June 1, 1998 decision No. 12 (286) (p. 26, vol. 1) as amended by July 31, 1998 decision No. 27 (p. 29, vol. 1) - were invalidated by the March 3, 2000 ruling of the Chelyabinsk Region Arbitration Court in

case No. A76-2946/98-45-32/33-286/27 (pp. 40 and 41) in respect of the recovery of 5,579,911 rbl. (taking into account the April 17, 2000 ruling of the Board of Appeals).

The December 7, 1998 ruling which was issued in case No. A76-6467/98-40y-235 by the Chelyabinsk Region Arbitration Court and which became effective invalidated those items of the August 7, 1998 order No. 19 of the Ozyorsk Department of the State Tax Inspectorate and the August 10, 1998 order of the Manager of the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation which concerned recovery against the taxpayer's property worth 6,855,762 rbl. (pp. 64-67).

Thus, the Plaintiff's property was seized and arrested by the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation in the absence of legal grounds for recovery against the taxpayer's property.

Under the above circumstances, the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation did not have the right of disposal of the Plaintiff's property.

In the absence of legal grounds for recovery against the taxpayer's property it should not have been sold either on commission or by any other method and all the transactions in the above shares are invalid (void).

Article 11.12 of the Federal Law "On Federal Tax Police Bodies" authorizes the tax police bodies to effect an administrative arrest with the subsequent sale of the arrested property in accordance with the prescribed procedure.

The circulation of securities is regulated by the Federal Law "On Securities Market." Articles 42.4 and 42.5 of which authorize the Federal Securities Market Commission (FSMC) to set mandatory requirements for transactions in securities and for keeping security registers.

Acting within its legal authority, on October 2, 1997 FSMC passed Resolution No. 27 approving the "Rules for Keeping Register of Holders of Inscribed Securities"; item 7.3 of these Rules requires that entries on the transfer of rights of ownership in securities be made by the registrar on the basis of a transfer order specifically submitted by a registered transferee or by its authorized representative. Item 10.2 of the above Rules requires that such orders be signed by a registered transferee or by the person acting on the transferee's behalf on the basis of a proxy drawn up in accordance with the current laws.

The concept "authorized representatives" is defined in item 2 stating that authorized representatives are government officials having the right to request a registrar to perform certain operations in the register.

The operations to be performed by a registrar are listed in section 7 which provides that authorized representatives of government bodies have the right to request a registrar to make entries on the freezing and the unfreezing of a personal account (item 7.5) in the register and to provide information contained in the register (item 7.9).

The Rules do not allow authorized government officials to sign transfer orders on behalf of registered persons.

Thus, transfer order No. 135 (2/3/782) and transfer orders Nos. 648 and 649 signed by the representatives of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation and CJSC "Mikchel-Invest" do not meet the

8

requirements of the above Rules and were accepted by the registrar in violation of item 5 of these Rules.

By its legal nature a transfer order is a unilateral contract (Article 154.2 of the Civil Code of the Russian Federation); therefore, under authority of Article 156 of the Civil Code of the Russian Federation it is covered by the contract invalidity provisions stipulating that a void contract does not have any legal consequences other than that associated with its invalidity, i. e. other than the restoration of the initial positions of the parties (Articles 167.1 and 167.2 of the Civil Code of the Russian Federation).

The wrongful acts of one of the Respondents - the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation - infringed the Plaintiff's right of ownership in its shares; therefore, under Article 12 of the Civil Code of the Russian Federation the Plaintiff has the right to apply for the protection of its civil rights by the restoration of the position that existed before the infringement of its right of ownership.

Nondocumentary shares may not be reclaimed in accordance with Article 301 of the Civil Code of the Russian Federation since only nonfungible property may be the object of a recovery action; nondocumentary shares are fungible things characterized by the issuer's name, code of the state registration of the given issue, and the face value.

The decision does not violate the rights and the lawful interests of the persons that hold the contested shares at present since the entries on their rights of ownership in these shares were made in the register on the basis of void contracts. The above persons have the right to lodge individual claims for damages caused to them.

The argument of one of the Respondents - the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation – that the Plaintiff's claims should be dismissed for the reason that the cost of the sold shares was partially returned to the Plaintiff (pp. 123-126, vol. 2) cannot be accepted by the Court since the wrongful acts consisting in the arrest of the shares and their sale infringed the Plaintiff's right of ownership in its shares and the Plaintiff did not advance a claim for damages.

The state duty is to be charged to one of the Respondents - the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation – (Translator's note. The name of this body is typed in the Russian original twice.) which is exempt from payment of this duty by Articles 5.6 and 5.3 of the Federal Law "On State Duty" as a government body funded from the federal budget.

In view of Articles 95.1 and 124-127 of the Code of Arbitration Procedure of the Russian Federation the Arbitration Court rules:

To satisfy the Plaintiff's claims.
To invalidate the transfer orders:
- No. 135 (No. 2/3/782) of June 24, 1998;
- inc. No. 649 (unnumbered) of September 24, 1998;
- inc. No. 648 of September 24, 1998 (unnumbered);
To void the results of auctioning the 10,583,063 shares of OJSC "Kachkanarskiy GOK "Vanadium" on September 17, 1998.
To obligate the registrar – CJSC "Kompaniya-registrator "Panorama" to restore the data that existed as of September 24, 1998 in personal account No. 1569 of LLC

9

NPRO "Ural" in the register of the holders of the inscribed securities issued by OJSC "Kachkanarskiy GOK "Vanadium."

To oblige the registrar - CJSC "Kompaniya-registrator "Panorama"—to restore the data that existed as of June 26, 1996 in personal account No. 8642 of LLC NPRO "Ural" in the register of the holders of the inscribed securities issued by OJSC "Ashinskiy metallurgicheskiy zavod."

| | | |
|---|---|---|
| Presiding Judge: | *Signature* | L. I. Zubkova |
| Judges: | *Signature* | V. I. Zaitseva |
| | *Signature* | V. V. Khudyakova |

11-JAN-2002  19:18   FR                                    TO                          P.01



## Арбитражный суд Челябинской области
## Именем Российской Федерации
## Р Е Ш Е Н И Е

01 августа 2000г                                         г.Челябинск
                                        Дело № А76-4037/2000-5-105

Арбитражный суд Челябинской области в составе:
председательствующего судьи Л.И.Зубковой,
судей: В.И.Зайцевой, В.В.Худяковой,
рассмотрел в открытом судебном заседании дело по иску
ООО НПРО "Урал", г.Озерск,
к УФСНП РФ по Челябинской области, г.Челябинск, ЗАО "Финансовая компания
"Вадис", г.Челябинск, ЗАО "Финансовая компания "Профит-Хауз", г.Москва, ЗАО
"Компания-регистратор "Панорама", г.Москва, ЗАО "Микчел-Инвест",
г.Челябинск,
при участии в заседании: представителей истца: А.М.Пахматова (постоянная
доверенность от 04.10.99г № 19), В.А.Плютникова (постоянная доверенность от
26.06.2000г), Бананковой О.А. (постоянная доверенность от 29.05.2000г № 18);
представителей ответчиков: УФСНП по Челябинской области: А.В.Студенникова
(постоянная доверенность от 06.01.2000г № 10/23), Д.Е.Заугарова (доверенность от
29.05.2000г № 195/ю (л.д. 36, т.2), Е.Н Батуевой (доверенность от 29.05.2000г №
195/ю (л.д. 36, т.2); ЗАО "Микчел-Инвест": К.О.Нашневского (постоянная
доверенность от 26.06.2000г № 11), А.В.Емельяновой (постоянная доверенность от
26.07.2000г № 14).
о применении последствий недействительности ничтожных сделок, признании
права собственности на акции и восстановлении записей в реестре владельцев
именных ценных бумаг.

ООО "НПРО "Урал" обратилось с иском УФСНП РФ по Челябинской области,
ЗАО "Финансовая компания "Вадис", ЗАО "Финансовая компания "Профит-Хауз",
ЗАО "Компания-регистратор "Панорама", о применении последствий
недействительности ничтожных сделок, признании права собственности на акции
и восстановлении регистрации в системе ведения реестра.
Определением от 10.05.2000 (л.д. 97, т.1) к участию в деле в качестве
ответчика привлечено ЗАО "Микчел-Инвест".
В судебном заседании 30.05.2000г истцом заявлено об изменении исковых
требований: просит признать недействительными торги по продаже
принадлежавших истцу бездокументарных акций ОАО "Качканарский ГОК",
признать недействительным договор от 18.09.98г № 21, признать
недействительной сделку по продаже принадлежавших истцу бездокументарных
акций ОАО "Ашинский металлургический завод", признать недействительными
передаточные распоряжения №№ : вх 648, вх 649, 135, признать право
собственности на указанные акции и восстановить в системе ведения реестра
владельцев ценных бумаг записи о наличии на лицевом счете истца указанных
акций.

TOTAL P.01

Определением от 27.06.2000г к участию в деле в качестве ответчиков привлечены: Компания "Амбер Стар ЭЛЭЛСИ", Южно-Уральская регистрационная палата" и ООО "Гидромашсервис".

ЗАО "Финансовая компания Вадис", ЗАО "Финансовая компания "Профит-Хауз", ЗАО "Компания-регистратор "Панорама" и ЗАО "Южно-Уральская регистрационная компания" в судебное заседание не явились, извещены о времени и месте разбирательства дела надлежащим образом (л.д. 11,13,14,16, т.3).

Компания "Амбер Стар ЭЛЭЛСИ" и ООО "Гидромашсервис" в судебное заседание не явились, доказательства надлежащего извещения их о времени и месте рассмотрения дела отсутствуют.

В судебном заседании 31.07.2000г истцом заявлено об изменении исковых требований: просит признать недействительными передаточные распоряжения: № 648, № 649 п № 135, применить последствия их недействительности в виде восстановления на его лицевом счете записей о принадлежности ему на праве собственности акций ОАО "Качканарский ГОК "Ванадий" и ОАО "Ашинский металлургический завод", признать недействительными торги по продаже акций "ОАО "Качканарский ГОК "Ванадий".

В свете сформулированных истцом требований и в силу п. 3 ст.34 АПК РФ Компания "Амбер Стар ЭЛЭЛСИ" и ООО "Гидромашсервис" ответчиками по рассматриваемому делу не являются; кроме того, как следует из выписок из лицевых счетов указанных юридических лиц, они в настоящее время не являются собственниками акций, фигурирующих в рассматриваемом деле.

При указанных обстоятельствах суд считает возможным рассмотреть дело в отсутствие Компании "Амбер Стар ЭЛЭЛСИ"  и ООО "Гидромашсервис".

Истец поддержал требования в полном объеме. По мнению истца, опись и арест принадлежащих ему бездокументарных акций ОАО "Качканарский ГОК. "Ванадий" и бездокументарных акций ОАО "Ашинский металлургический завод" произведены Озерским УФСНП РФ по Челябинской области без надлежащих правовых оснований, поскольку решения ГНИ по г.Озерску, на основании которых приняты постановления об обращении взыскания на имущество, произведены опись, арест и реализация указанных акций, признаны недействительными решением Арбитражного суда Челябинской области от 03.03.2000г по делу № А76-2946/98-45-32/33-286/27, вступившим в законную силу; также недействительными в части признаны постановление об обращении взыскания на имущество и распоряжение о наложении ареста (решение АС Челябинской области от 07.12.98г по делу № А76-6467/98-40у-235, вступившее в законную силу). Кроме того, истец полагает, что передаточные распоряжения, на основании которых производилось внесение записей в систему ведения реестра владельцев бездокументарных акций, подписаны лицами, не имевшими надлежащих полномочий на их подписание, в связи с чем, не должны были приниматься ЗАО "Компания-регистратор "Панорама" к исполнению. Торги по продаже акций ОАО "Качканарский ГОК "Ванадий", по мнению истца, являются недействительными, поскольку в них фактически принимал участие один участник - ЗАО "Финансовая компания "Профит-Хауз", следовательно, договор купли-продажи указанных акций, заключенный по итогам торгов между ЗАО "Микчел-Инвест" и ЗАО "Финансовая компания "Профит-Хауз" также является недействительным. Истец полагает, что это право собственности, нарушенное неправомерными действиями по

отчуждению принадлежавших ему акций, подлежит защите путем восстановления записей о том, что он является владельцем указанных акций в системе ведения реестра владельцев бездокументарных ценных бумаг.

Ответчики иск отклонили:

УФСНП РФ по Челябинской области - ссылаясь на правомерность действий по описи и аресту акций, принадлежащих истцу, подтвержденную решением Арбитражного суда Челябинской области от 07.12.98г по делу № А76-6167/98-40у-235, вступившим в законную силу, по иску ООО "НПРО "Урал" о признании недействительными постановлений ГНИ по г.Озерску: от 16.04.98г № 4 и от 07.08.98г № 19 и распоряжений начальника Озерского МРО УФСНП от 20.04.98г № 20 и от 10.08.98г. Указанным решением признаны недействительными постановление ГНИ по г.Озерску от 07.08.98г № 19 и распоряжение начальника Озерского МРО УФСНП по Челябинской области от 10.08.98г в части обращения взыскания и наложения ареста на имущество истца на сумму 6855762 руб, в остальной части иска отказано. По мнению ответчика, передаточные распоряжения № 649, № 648 и № 135 подписаны зам.начальника УФСНП по Челябинской области в соответствии с полномочиями, предоставленными органам налоговой полиции п.12 ст.11 Закона РФ "О федеральных органах налоговой полиции". По мнению ответчика, требования истца не подлежат удовлетворению, поскольку истцу были возвращены денежные средства, вырученные от продажи акций, в части, соответствующей признанным недействительными постановления ГНИ по г.Озерску и распоряжения Озерского МРО УФСНП РФ по Челябинской области решением Арбитражного суда Челябинской области.

ЗАО "Минчел-Инвест" - ссылаясь на правомерность своих действий по организации и проведению торгов по продаже акций ОАО "Качканарский ГОК "Ванадий" и заключению договора купли-продажи указанных акций с ЗАО "Финансовая компания "Профит-Хауз", а также по заключению договора купли-продажи акций ОАО "Ашинский металлургический завод" с ЗАО "Финансовая компания "Вадис". Кроме того, по мнению ответчика, обязательным в соответствии с требованиями действующего законодательства является только проведение торгов по продаже недвижимости.

ЗАО "ФК "Профит-Хауз" (отзыв на исковое заявление (л.д. 119,120, т.1), и ЗАО "ФК "Вадис" (отзыв на исковое заявление (л.д. 1,2, т.2) ссылаясь на то, что они являлись добросовестными приобретателями акций, которые, по мнению ответчиков, могут быть истребованы истцом только в порядке виндикации.

ЗАО "Компания-регистратор "Панорама" (отзыв на исковое заявление (л.д. 83, 84, т.2), ссылаясь на правомерность действий по проведению операций по регистрации перехода прав собственности на акции, совершенных в соответствии с Положением, утвержденным постановлением ФКЦБ от 02.10.97г № 27, на основании надлежаще оформленных передаточных распоряжений.

Заслушав пояснения сторон, исследовав материалы дела,

суд установил:

ООО НПРО "Урал" являлось собственником 30831 обыкновенной бездокументарной акции ОАО "Качканарский ГОК "Ванадий" первого выпуска (код государственной регистрации 62-1п-290), 10552232 обыкновенных бездокументарных акций ОАО "Качканарский ГОК "Ванадий" второго выпуска (код государственной регистрации 62-1-1396) (л.д. 57,т.1) и 1675551 обыкновенной

бездокументарной акции ОАО "Ашинский металлургический завод" (код государственной регистрации 69-1-689) (л.д. 11, т2).

Регистратором, осуществляющим деятельность по ведению реестра именных ценных бумаг эмитента - ОАО "Качканарский ГОК "Ванадий" являлось ЗАО "Компания - регистратор "Панорама".

Регистратором, осуществляющим деятельность по ведению реестра именных ценных бумаг эмитента - ОАО "Ашинский металлургический завод" являлось ЗАО "Южно-Уральская регистрационная палата" (л.д. 11, т.2), в настоящее время - ЗАО "Компания-регистратор "Панорама".

24.06.98г на основании передаточного распоряжения № 135 (№ 2/3/782), подписанного заместителем начальника УФСНП РФ по Челябинской области (л.д. 51, т.1), регистратором внесена запись о переходе прав собственности ООО НПРО "Урал" на 1675551 обыкновенную бездокументарную акцию ОАО "Ашинский металлургический завод" к ЗАО "Финансовая компания "Вадис" (л.д. 11, т.2).

В качестве основания внесения записи указан договор купли-продажи от 05.05.98г № 0505-01-010, заключенный между ЗАО "Микчел-Инвест" - "Продавец" и ЗАО "ФК "Вадис" - "Покупатель", указ Президента РФ от 14.02.96г № 199, акт описи и административного ареста имущества налогоплательщика от 27.03.98г, соглашение от 03.04.98г № 77.

Опись и арест 1675551 акции ОАО "Ашинский металлургический завод" произведены Озерским МРО УФСНП РФ по Челябинской области 27.03.98г (л.д. 44,45, т.1) на основании постановления ГНИ по г.Озерску от 18.03.98г № 4 и распоряжения начальника Озерского МРО УФСНП РФ по Челябинской области от 25.03.98г (л.д. 43, т.1). Операция по блокированию акций проведена регистратором 26.03.98г.

17.04.98г Озерский МРО УФСНП РФ по Челябинской области сообщил, что в связи с отзывом ГНИ по г.Озерску постановления от 18.03.98г № 4 распоряжение о наложении ареста от 25.03.98г отменено, арест, произведенный 27.03.98г, снят (л.д. 47, т.1). Операция по прекращению блокирования акций проведена регистратором 23.04.98г.

28.04.98г Озерским МРО УФСНП РФ по Челябинской области произведены опись и арест 3760880 акций ОАО "Ашинский металлургический завод" (л.д. 49,50,т.1) на основании постановления ГНИ по г.Озерску от 16.04.98г № 4 (л.д. 39, т.2) и распоряжения начальника Озерского МРО УФСНП РФ по Челябинской области от 20.04.98г № 20 (л.д. 48, т.1). Операция по блокированию акций проведена регистратором 23.04.98г.

13.05.98г между УФСНП РФ по Челябинской области и ЗАО "Микчел-Инвест" заключен договор № 105 (л.д. 101-105, т.1), согласно которому ЗАО "Микчел-Инвест" обязалось реализовать арестованные акции на договорно-комиссионных началах.

05.05.98г между ЗАО "Микчел-Инвест" и ЗАО "Финансовая компания "Вадис" заключен договор купли-продажи ценных бумаг № 0505-01-010 (л.д. 114-116, т.2).

В настоящее время ЗАО "Финансовая компания "Вадис" не является ни владельцем, ни номинальным держателем указанных акций.

При представлении передаточного распоряжения от 24.06.98г № 135 с акций, в отношении которых оно представлено, снят арест, наложенный 27.03.98г (распоряжение от 26.06.98г № 176 (л.д. 52, т.1), фактически уже снятый 17.04.98г, а запись о переходе прав на указанные акции новому владельцу сделана фактически

в отношении акций, находящихся под арестом, произведенным 28.04.98г. Запись регистратора о прекращении блокирования акций, заблокированных 23.04.98г. совершенная 26.06.98г на основании распоряжения от 26.06.98г № 176, сделана необоснованно, поскольку в распоряжении говорится о снятии ареста, произведенного 27.03.98г. Таким образом, запись о передаче прав на акции новому владельцу совершена регистратором в нарушение п.7.3 "Положения о порядке ведения реестра именных ценных бумаг" при наличии записи в реестре о блокировании операций с указанными акциями. Также в нарушение п.7.5 указанного Положения, согласно которому блокирование и прекращение блокирования производятся, в частности, на основании документов, выданных уполномоченными органами, регистратором внесена в реестр запись о прекращении блокирования операций по лицевому счету ООО НПРО "Урал" в отсутствие необходимых документов.

24.09.98г на основании передаточных распоряжений вх 649 (л.д. 59, т.1) и вх 648 (л.д. 60, т.1), подписанных сотрудником УФСНП РФ по Челябинской области В.Ю. Усыниным и представителем ЗАО "Микчел-Инвест", регистратором внесены в реестр записи о переходе прав собственности ООО НПРО "Урал" на 10552232 акции первого выпуска и 30831 акцию второго выпуска ОАО "Качканарский ГОК "Ванадий" к номинальному держателю - ЗАО "Депозитарно-клиринговая компания" (л.д. 63, т.1).

В качестве документов, подтверждающих полномочия представителя, подписавшего передаточные распоряжения указаны: Указ Президента РФ от 14.02.96г, акт описи и ареста имущества налогоплательщика от 13.09.98г. *?(так в подлиннике)* соглашение от 09.09.98г № 1. Фактически одним из оснований выдачи передаточных распоряжений явился акт описи и ареста имущества налогоплательщика от 13.08.98г.

Опись и арест имущества ООО НПРО "Урал" произведены Озерским МРО УФСНП РФ по Челябинской области 13.08.98г (л.д. 55-56, т.2) на основании постановления ГНИ по г.Озерску от 07.08.98г № 19 (л.д. 40, т.2) и распоряжения начальника Озерского МРО УФСНП РФ по Челябинской области от 10.08.98г (л.д. 54, т.1).

09.09.98г между УФСНП РФ по Челябинской области и ЗАО "Микчел-Инвест" заключен договор № 183 (л.д. 132-135, т.2), согласно которому ЗАО "Микчел-Инвест" обязалось реализовать арестованное имущество на договорно-комиссионных началах.

11.09.98г УФСНП РФ по Челябинской области сообщило ЗАО "Микчел-Инвест" о принятии решения реализовать арестованные акции путем проведения тендера, фактически - закрытого аукциона, поскольку предложения направлялись определенным организациям, а победителем должен был быть признан участник, предложивший наибольшую цену, причем объявленная минимальная цена пакета акций составила 16932900 руб (л.д. 138, т.2).

Победителем тендера было признано ЗАО "Финансовая компания "Профит-Хауз", фактически единственный участник тендера, поскольку заявки остальных участников не соответствовали объявленным условиям, т.к. указанные в них суммы были меньше минимальной начальной цены (курс доллара США на 16.09.98г составлял 9,6127 руб), кроме того, заявки, поданные в долларах, были признаны недействительными (протокол от 16.09.98г № 1-Т (л.д. 139,т.2).

По итогам состоявшихся торгов между ЗАО "Микчел-Инвест" и ЗАО "Финансовая компания "Профит-Хауз" заключен договор от 18.09.98г № 21 (л.д. 143-145). ЗАО "Финансовая компания "Профит-Хауз" не являлось и не является ни собственником, ни номинальным держателем указанных акций, поскольку при покупке акций действовало на основании договора комиссии от 18.06.98г № КО-0097-98 с Компанией "Амбер Стар Эл.Эл.Си." (л.д. 63-66, т.2).

06.10.98г распоряжением начальника Озерского МРО УФСНП РФ по Челябинской области № 20А (л.д. 62, т.1) распоряжение от 10.08.98г отменено, административный арест, наложенный 13.08.98г, снят.

Суд приходит к выводу о правомерности требований истца и отклонению доводов ответчиков по следующим основаниям:

Постановления об обращении взыскания недоимок по налогам, пени и налоговых санкций на имущество налогоплательщика приняты ГНИ по г.Озерску на основании решений по акту документальной проверки соблюдения налогового законодательства ООО НПРО "Урал" от 10.02.98г (л.д. 10-17, т.1). Решения, принятые по результатам проверки, отменялись и изменялись ГНИ по г.Озерску (л.д. 19-21, т.1), в акт также вносились изменения и дополнения (л.д. 13, 14-17, 22-24, т.1). Итоговые решения по указанному акту проверки: от 01.06.98г № 11(285) (л.д. 25, т.1) и от 01.06.98г № 12 (286) (л.д. 26, т.1) с учетом изменений, внесенных решением от 31.07.98г № 27 (л.д. 29, т.1) признаны недействительными решением Арбитражного суда Челябинской области от 03.03.2000г по делу № А76-2946/98-45-32/33-286/27 (л.д. 40,41) в части взыскания 5579911 руб (с учетом постановления апелляционной инстанции от 17.04.2000г).

Решением Арбитражного суда Челябинской области от 07.12.98г по делу А76-6467/98-40у-235, вступившим в законную силу, признаны недействительными в части обращения взыскания на имущество налогоплательщика на сумму 6855762 руб постановление ГНИ по г.Озерску от 07.08.98г № 19 и распоряжение начальника Озерского МРО УФСНП по Челябинской области от 10.08.98г (л.д. 64-67).

Таким образом, опись и арест имущества истца произведены Озерским МРО УФСНП РФ по Челябинской области при отсутствии правовых оснований для обращения взыскания на имущество налогоплательщика.

При указанных обстоятельствах у УФСНП РФ по Челябинской области отсутствовало право распоряжения имуществом истца.

При отсутствии правовых оснований для обращения взыскания на имущество налогоплательщика оно не могло быть продано ни на комиссионных началах, ни каким-либо другим способом, а все сделки, заключенные с указанными акциями, являются недействительными (ничтожными).

П.12 ст.11 ФЗ "О федеральных органах налоговой полиции" федеральным органам налоговой полиции предоставлено право производить административный арест с последующей реализацией арестованного имущества в установленном порядке.

Порядок обращения ценных бумаг регулируется ФЗ "О рынке ценных бумаг", в соответствии с п.п. 4 и 5 ст. 42 которого, Федеральной комиссии по рынку ценных бумаг (ФКЦБ) предоставлено право устанавливать обязательные требования к операциям с ценными бумагами и к порядку ведения реестра.

В рамках предоставленных законом полномочий постановлением ФКЦБ от 02.10.97г № 27 утверждено "Положение о ведении реестра владельцев именных

11-JAN-2002 19:28    FR    TO    P.01

ценных бумаг", согласно п.7.3 которого внесение в реестр записей о переходе прав собственности на ценные бумаги производится регистратором на основании передаточного распоряжения, представленного, в частности, зарегистрированным лицом, передающим ценные бумаги или его уполномоченным представителем. В соответствии с п.10.2 распоряжения должны быть подписаны зарегистрированным лицом либо лицом, действующим от его имени по доверенности, оформленной в соответствии с действующим законодательством.

Понятие "уполномоченные представители" раскрыто в п.2., где указано, что уполномоченные представители - должностные лица государственных органов вправе требовать от регистратора исполнения определенных операций в реестре.

Перечень операций, совершаемых регистратором, установлен разделом 7, согласно которому уполномоченные представители государственных органов вправе требовать от регистратора внесения в реестр записей о блокировании и прекращении блокирования операций по лицевому счету (п. 7.5), а также предоставления информации из реестра (п.7.9).

Право подписывать передаточные распоряжения от имени зарегистрированного лица должностным лицам уполномоченных государственных органов Положением не предоставлено.

Таким образом, передаточные распоряжения № 135 (2/3/782), вх 648, вх 649, подписанные представителями: УФСНП РФ по Челябинской области и ЗАО "Микчел-Инвест", не соответствуют требованиям, установленным Положением, и приняты регистратором в нарушение п.5 Положения.

Передаточное распоряжение по своей правовой природе является односторонней сделкой (п.2 ст.154 ГК РФ), следовательно, к нему в силу ст.156 ГК РФ применимы положения о недействительности сделок, согласно которым недействительная сделка не влечет правовых последствий за исключением тех, которые связаны с ее недействительностью, т.е. возвращения сторон в первоначальное положение (ст.п.п.1,2 ст.167 ГК РФ).

Неправомерными действиями ответчика - УФСНП РФ по Челябинской области было нарушено право собственности истца на принадлежащие ему акции, в связи с чем истец вправе требовать защиты гражданских прав путем восстановления положения, существовавшего до нарушения права, в соответствии со ст.12 ГК РФ.

Бездокументарные акции не могут быть истребованы в порядке ст.301 ГК РФ, поскольку предметом виндикационного иска может быть только индивидуально-определенное имущество, бездокументарные акции являются вещами, определенными родовыми признаками: наименование эмитента, код государственной регистрации выпуска, номинальная стоимость.

Принятым решением не нарушаются права и законные интересы лиц, у которых находятся акции, фигурировавшие в рассматриваемом деле, в настоящее время, поскольку записи об их правах на акции внесены реестр на основании ничтожных сделок. Указанные лица вправе предъявить требования о возмещении причиненных им убытков в самостоятельном исковом порядке.

Довод ответчика - УФСНП РФ по Челябинской области об отказе в удовлетворении требований истца в связи с возвращением ему части стоимости реализованных акций (л.д. 123-126, т.2) не может быть принят судом, поскольку неправомерными действиями - арестом и реализацией акций, нарушено право

11-JAN-2002  19:30  FRL             TO         P.01

собственности истца на принадлежащие ему акции, требование о возмещении убытков истцом не предъявлено.

Госпошлина подлежит отнесению на ответчика – УФСНП РФ по Челябинской области, которое в соответствии с п.п 6 п.3 ст.5 ФЗ "О государственной пошлине" выделен освобождению от ее уплаты, как государственное учреждение, финансируемое из федерального бюджета.

Руководствуясь п.1 ст.95, ст.124-127 АПК РФ, арбитражный суд решил:

Иск удовлетворить.

Признать недействительными передаточные распоряжения:
от 26.06.98: № 135 (от 24.06.98: № 2/3/782);
от 24.09.98: вх 649 (без номера);
от 24.09.98: вх 648 (без номера).

Признать недействительными торги по продаже акций ОАО "Качканарский ГОК "Ванадий" в количестве 10583063 штук, проведенные 17.09.98г.

Обязать реестродержателя - ЗАО "Компания-регистратор "Панорама" привести данные реестра владельцев именных ценных бумаг эмитента - ОАО "Качканарский ГОК "Ванадий" по лицевому счету владельца – ООО "НПРО "Урал" № 15697 в положение, существовавшее на 16.09.98г.

Обязать реестродержателя - ЗАО "Компания-регистратор "Панорама" привести данные реестра владельцев именных ценных бумаг эмитента - ОАО "Лысьвенский металлургический завод" по лицевому счету владельца – ООО "НПРО "Урал" № 8642 в положение, существовавшее на 26.06.98г.

Председательствующий             Л.И.Зубкова

Судьи                       В.Н.Зайцева

                             В.В.Худякова