# EXHIBIT "7"

To the Sverdlovsk region representative office of the Supreme Arbitrazh Court

The First Deputy Chairman of the Supreme Arbitrazh Court of the Russian Federation
Yukov Mikhail Kuzmich

The Plaintiff: LLC NPRO Ural
456785 Chelyabinsk region
Ozersk, 43 Muzrukova St.

Defendants: Chelyabinsk Branch
of Federal Tax Police Service of the Russian Federation
454000 Chelyabinsk, 4 Ternopolskaya St.

The petitioner: CJSC Financial Company Profit House
119121 Moscow
20-a Zemledelcheskiy pereulok

CJSC Financial Company Vadis
454000 Chelyabinsk
108-v Pobedy Ave., office 1

CJSC Company-Registrar Panorama
101000 Moscow, 13-a Bolshoy
Kharitonievskiy pereulok office 8-a

CJSC Mikchel-Invest
454091 Chelyabinsk
279 Rossiyskaya St.

The company Amber Star LLC
318 H Carson St., Carson City,
Nevada 89701, USA

LLC Gidromashservis
456300 Chelyabinsk Region
Miass, 50 Romanenko Street

| |
|---|
| Supreme Arbitrazh Court Of the Russian Federation Reception Incoming # 620/01 June 04, 2001 Signature [signed] |

CJSC Yuzhno-Uralskaya Registratsionnaya Palata
454091 Chelyabinsk, 2a Krasnaya St.

CJSC Vedenie Reestrov Kompaniy
620014, Ekhaterinburg, 28 Lenina Ave.

PETITION
To bring a protest

On August 1, 2000 the Arbitrazh Court of Chelyabinsk region granted relief sought in the complaint of LLC NPRO Ural. For Instance, the court invalidated transfer orders of September 24, 1998 # 648, 649, invalidated bidding regarding sale of 10,583,063 shares of OJSC Kachkanar Ore Mining and Processing Plant Vanadiy of September 17, 1998 and obliged the transfer agent CJSC Company-Registrar Panorama to bring the information on the personal account # 15697 of LLC NPRO Ural in the register of owners of securities of the issuer - OJSC Kachkanar Ore Mining and Processing Plant Vanadiy in consistence with condition existing prior to September 24, 1998.

By the decision of October 16, 2000 (issued on the basis of appeals of CJSC Mikchel-Invest, CJSC Financial Company Profit House, Chelyabinsk Branch of Federal Tax Police Service of the Russian Federation) the Appeal Instance of Arbitrazh Court of Chelyabinsk region reversed the decision of August 1, 2000 in case # 5-105, granted the relief sought in the complaint and invalidated transfer orders of September 24, 1998 # 648, 649, invalidated auction regarding sale of 10583063 shares of OJSC Kachkanar Ore Mining and Processing Plant Vanadiy of September 17, 1998 and obliged the transfer agent CJSC Company-Registrar Panorama to bring the information on the personal account # 15697 of LLC NPRO Ural in the register of owners of securities of the issuer - OJSC Kachkanar Ore Mining and Processing Plant Vanadiy in consistence with condition existing prior to September 24, 1998.

By the decision of January 4, 2001 (upon cassation complaints of the company Amber Star LLC, CJSC Financial Company Vadis, CJSC Financial Company Profit House, Chelyabinsk Branch of Federal Tax Police Service of the Russian Federation) Federal Arbitrazh Court of the Ural District affirmed the decision of the appellate instance of Arbitrazh Court of Chelyabinsk region dated October 16, 2000 in the case # A76-4037/2000, and denied the cassation appeals.

<u>We believe that the above decisions were issued in violation of provisions of substantive and procedural law and that the conclusions made in the decisions contradict the circumstances of the case based on the following grounds:</u>

First, in court hearings the defendants repeatedly stated that there was no bidding with regard to sale of arrested shares of OJSC Kachkanar Ore Mining and Processing Plant Vanadiy. The sale of securities does not have to be carried out in a form of a bidding because the Civil Code of the Russian Federation states that only real estate should be sold through an auction or a competition. Furthermore, the defendants decided that the securities should be sold on the contractual, commission basis. The decision is confirmed by the commission agreement concluded between the Branch of the Federal Tax Police Service of the Russian Federation and CJSC Mikchel-Invest (the sale of the contested securities was a subject of this commission agreement.) The assertion of the plaintiff that tender means bidding is not consistent with the circumstances of the case because the Branch of the Federal Tax Police Service of the Russian Federation and CJSC Mikchel-Invest (parties in the commission agreement) determined the term "tender" in accordance with an economical dictionary as **"written offer, application, offer"** (this fact was repeatedly emphasized in the judicial hearings.) Therefore, the

plaintiff's assertion that the defendants violated the conditions of bidding with regard to the sale of shares is void. Moreover, the Civil Code of the Russian Federation does not provide for such form of bidding as tender. The Code contains closed list of types of bidding - "A bidding shall be carried out in a form of an auction or a competition" (Article 447(4) of the Civil Code of the Russian Federation.) Other legal acts also do not provide for such form of bidding as tender. Therefore the courts' conclusions contained in the contested judicial decisions are inconsistent with the circumstances of the case. The courts did not examine the evidence presented by the defendants and did not evaluate their statements evidencing that the securities were sold by the means of commission (the commission agreement of September 9, 1998, # 183.) Furthermore, the court considered the plaintiff's arguments that the shares were sold by the means of bidding sufficient even though LLC NPRO Ural did not presented a single evidence confirming the sale of securities by the means of bidding. Furthermore, the defendants stated that the securities sale and purchase agreement of September 18, 1998 # 21 does not contain references to bidding because there was no bidding. The arrested property was sold by means of commission: " the sale of the shares shall be performed on the commission basis by the company, which was authorized by the person imposing a penalty" (section 16 of the Temporary Provisions "On the order of imposition of penalty upon the property of companies", approved by the Decree of the President of the Russian Federation dated February 13, 1996 # 199, which was effective as of the moment of arrest and sale of securities.)

Therefore, the conclusion of the courts with regard to invalidity of bidding is inconsistent with circumstances of the case and the courts could not make decision invalidating bidding because it did not take place. Furthermore, the courts did not take into consideration the defendants' statements that even if (according to the plaintiff) bidding have failed, the agreement for purchase and sale of securities of September 18, 1998 # 21 cannot be considered invalid because the Temporary Provisions "On the order of imposition of penalty upon the property of companies", which was effective as of the moment of the sale of assets, indicates that "if the bidding failed the sale should be carried out by an authorized organization on the commission basis." The courts had no lawful grounds to issue such decisions because the defendants were emphasizing the above circumstances in a course of judicial hearings and they were reflected in the replies and complaints of the defendants.

Second, in all judicial instances the defendants pointed out that the claims of the plaintiff – LLC NPRO Ural have replevin nature because it was discovered in a course of the first instance court judicial hearing that neither one of the defendants engaged in the case was the owner of the contested securities as of the moment of consideration of the complaint. Therefore, the complaint of LLC NPRO Ural is aimed at the return of securities from the good faith acquirer, i. e. from the person that "acquired securities, paid for them and as of the moment of acquisition did not know and could not know about third person's rights with regard to securities" (Article 2 of the Federal Law # 39-FZ "On securities market".) The defendants in their replies requested courts to deny the relief sought in the complaint of LLC NPRO Ural because LLC NPRO Ural actually filed a replevin action, however, provisions with regard to invalidity of transactions were indicated as the grounds for the complaint. In the courts of first, appeal and cassation

instances CJSC Financial Company profit House referred not only to provisions of laws, but also to practice of arbitrazh courts confirming impossibility of satisfaction of such plaintiff's claims. "If the property was acquired from the person that had no right to expropriate such property upon the agreement supported by proper consideration, the owner on the property shall be entitled to file a suit demanding to return the property from illegal possession of the person, which acquired such property. If in this situation the owner will file a suit requesting to invalidate the sale and purchase transaction and to return the property, which was transferred to the purchaser, and in a course of consideration of such case will be determined that the purchaser is consistent with requirements characterizing a good faith acquirer, the court shall deny the relief sought in the complaint" (section 25 of the Decision of the Plenum of the Supreme Arbitrazh Court of the Russian Federation of February 25, 1998 # 8 "On some issues of practice of resolution of disputes regarding protection of ownership and other property rights.") The defendants were informing the courts about this circumstance in a course of judicial hearings. However, the courts did not take this provision into consideration and did not reflect it in their decisions. Besides, in its replies CJSC FC Profit House referred to the Informational Letter of the Presidium of the Supreme Arbitrazh Court of the Russian Federation of April 28, 1998 # 33 "Review of practice of resolution of disputes with regard to transactions connected with stock floatation and circulation". Section 7 of the above letter states that "…owner's claim to return shares filed against a good faith acquirer has a replevin nature and can be satisfied only in the presence of conditions provided by the Article 302 of the Civil Code of the Russian Federation." In its complaint the plaintiff indicated CJSC FC Profit House and the Company Amber Star LLC as co-defendants. These companies acquired the securities and paid for them the prescribed price, i.e. they were good faith acquirers. The plaintiff requested to apply consequences of invalidity of bidding and to return the securities. As of the moment of the dispute consideration of the securities were in the ownership of good faith acquirers, therefore their return was possible only by the mean of a replevin action. The Limited Liability Company NPRO Ural did not file such an action. "The State Property Fund was seeking to return shares and filed the complaint requesting to apply the consequences of invalidity of transaction concluded between defendants. The Fund believed that the transaction was void because the seller had no rights to sell the above shares. <u>An Arbitrazh Court denied the relief sought in the complaint of the State Property Fund. The decision is correct.</u>" (Section 7 of the Informational letter of Supreme Arbitrazh Court of the Russian Federation of April 28, 1998 # 33.)

Third, the decision of the Arbitrazh Court of Chelyabinsk region of October 16, 2000 (page 4) and the decision of the Federal Arbitrazh Court of the Ural District of January 4, 2001 (page 3) state that the transfer orders are transactions, and, therefore, can be invalidated pursuant to Article 167 of the Civil Code of the Russian Federation. According to Civil Code of the Russian Federation transactions are actions of persons aimed at establishment, change or termination of civil rights and obligations. The basis for change of civil rights an obligations with regard to sale and purchase of securities is the sale and purchase agreement. In this case the transfer order serves as document confirming the transition of securities ownership rights (Article 8 of the Federal Law "On securities market".)

**<u>Therefore, a transfer order is a technical document evidencing the transition of rights with regard to shares. It is derivative from the reason for transition of rights – the agreement, judicial decision, and so on. The order does not change rights and obligations of the parties and cannot be considered as transaction, therefore, it cannot be invalidated</u>.**

The letter of a Deputy Chairman of the Sverdlovsk region representative office of the Supreme Arbitrazh Court of the Russian Federation dated May 21, 2001, groundlessly denied the CJSC Financial Company Profit-House's petition to bring a protest. The deputy Chairman of the Supreme Court of the Russian Federation Arifulin A.A. did not examine non-engagement of the present owner of the contested securities as a co-defendant in the case, absence of bidding because the shares were sold by the means of commission and a number of other grounds related to this case.

The company, Omni Trusthouse Limited, is the company that was deprived of its shares. Omni Trusthouse Limited acquired shares in a good faith and paid for them the prescribed price. However the decisions of courts restoring shares on the personal account of LLC NPRO Ural were made without examination of all the presented documents (the courts examined only evidence presented by the plaintiff and ignored evidence presented by the defendants.)

Because this is not the first case of writing off shares of ill-famed Open Joint Stock Company OJSC Kachkanar Ore Mining and Processing Plant Vanadiy in violation of rights of good faith acquirers or sometimes without their engagement in a case (as it happened in this case),we request you to initiate examination of all circumstances of the present case.

On the basis of the above, in connection with the fact that the contested judicial decisions violated rights of good faith acquirers and that the judicial decisions are made in violation of substantive legal provisions, pursuant to Article 302 of the Civil Code of the Russian Federation, Articles 2 and 3 of the Federal Law "On securities market", Decision of the Plenum of the Supreme Arbitrazh Court of the Russian Federation of February 25, 1998 # 8, Informational Letter of the Presidium of the Supreme Arbitrazh Court of the Russian Federation of April 28, 1998 # 33, Articles 180, 184, 185, 187, 188 and 208 of the Arbitrazh Procedural Code of the Russian Federation, the Closed Joint Stock Company Financial Company Profit House requests you:

- To obtain on demand the civil case # A76-4037/2000-5-105;
- To bring a protest requesting to reverse the following judicial decisions that became effective:
1. Decision of the Arbitrazh Court of Chelyabinsk region dated August 1, 2000 in the case # A76-4037/2000-5-105;
2. Decision of the appellate instance of the Arbitrazh Court of Chelyabinsk region dated October 16, 2000 in the case # A76-4037/2000-5-105;
3. Decision of the Federal Arbitrazh Court of Ural District of January 4, 2001 in the case # F09-1959/2000 GK;

- Because in the Ural region the problem with regard to securities of OJSC Kachkanar Ore Mining and Processing Plant Vanadiy is being resolved on a one-sided basis and in a very biased manner we request the Presidium of the Supreme Arbitrazh Court of the Russian Federation to reverse the above contested decisions and to deny the relief sought in the complaint of LLC NPRO Ural.

- To apply the turn of execution of the judicial decisions and to return everything received by the plaintiff, and in case of absence of securities on the personal account of LLC NPRO Ural – to oblige the CJSC Vedenie Reestrov Kompaniy to trace movement of the contested securities and to return them on the personal account of the Company they were written off from as a result of execution of the contested judicial decisions (the company OMNI Trusthouse Limited.)

Attachments:
Copies:
- Sale and Purchase agreement of September 18, 1998 # 21;
- The report regarding the execution of obligations upon the agreement on sale and purchase of securities dated September 24, 1998.
- Decision of the Arbitrazh Court of Chelyabinsk region dated August 1, 2000 in the case # A76-4037/2000-5-105
- Decision of the appellate instance of the Arbitrazh Court of Chelyabinsk region dated October 16, 2000 in the case # A76-4037/2000-5-105
- Decision of the Federal Arbitrazh Court of Ural District of January 4, 2001 in the case # F09-1959/2000 GK
- Representative's powers of attorney.

Representatives of CJSC FC Profit House            [signed] V.V. Volnov
                                                   [signed] D.A. Zhuikov

31/07/01    19:11    NO.114    P11

В Высший Арбитражный суд Свердловской области

Первому заместителю Председателя Высшего Арбитражного
суда Российской Федерации

Юкову Михаилу Кузьмичу

Истец: ООО НПРО «Урал»
456785, Челябинская обл.,
г. Озерск, ул. Музрукова, д: 43

Ответчики: Управление ФСНП РФ
по Челябинской области
454000, г. Челябинск, ул. Тернопольская, д.4

Лицо, подающее заявление: ЗАО «Финансовая компания «Профит Хауз»
119121, г. Москва,
Земледельческий пер., д. 20-а

ЗАО «Финансовая компания «Валис»
454000, г. Челябинск,
пр. Победы, 108-в, офис 1

ЗАО «Компания-регистратор «Панорама»
101000, г. Москва, Большой
Харитоньевский переулок, д. 13-а, оф. 8-а

ЗАО «Микчал - Инвест»
454091, г. Челябинск, улица Российская, д. 279

Компания «Амбер Стар Эл. Эл. Си.»
318 Н Карсон Стрит, Карсон Сити, Невада, 89701, США.

ООО ««Гидромашсервис»
456300, Челябинская область,
г. Миасс, ул. Романенко, д. 50

ЗАО «Южно-Уральская регистрационная палата»
454091, Челябинск, ул. Красная, д. 2а

АОЗТ «Ведение реестров компаний»
620014, Екатеринбург, просп. Ленина, 28

Высший Арбитражный Суд
Российской Федерации
Принял ____ 620/07
Вх. № 06.07.2007 г.
Подпись ____

## ЗАЯВЛЕНИЕ
о принесении протеста

01 августа 2000 г. Арбитражный суд Челябинской области удовлетворил исковое заявление ООО «НПРО «Урал». В частности: признал недействительными передаточные распоряжения от 24 сентября 1998 г. № 648, 649, признал недействительными торги по продаже акций ОАО «Качканарский ГОК «Ванадий» в количестве 10583063 штук, проведенные 17.09.98 г., обязал реестродержателя – ЗАО «Компания-регистратор «ПАНОРАМА» привести данные реестра владельцев именных ценных бумаг эмитента – ОАО «Качканарский ГОК «Ванадий» по лицевому счету владельца ООО «НПРО «Урал» № 15697 в положение существовавшее на 24.09.98 г.

П

**Постановлением от 16 октября 2000** г. (по апелляционным жалобам ЗАО «Михчел-Инвест», ЗАО «ФК «Профит Хауз», ЦФСНП России по Челябинской области) Апелляционная инстанция Арбитражного суда Челябинской области решение от 01 августа 2000 г. по делу № 5-105 отменила. Иск удовлетворила. Признала недействительным передаточные распоряжения от 24 сентября 1998 г. № 648, 649. Признала недействительными торги по продаже акций ОАО «Качканарский ГОК «Ванадий» в количестве 10 583 063 рублей, проведенные 17.09.98. Обязала реестродержателя АОЗТ «Ведение реестров компаний» привести данные реестра владельцев именных бумаг эмитента – ОАО «Качканарский ГОК «Ванадий» по лицевому счету владельца ООО «НПРО «Урал» № 15697 в положение, существовавшее на 24.09.98.

**Постановлением от 04 января 2001 г.** (по кассационным жалобам Компании «Амбер Стар Эл. Эл. Си.» ЗАО «ФК «ВАДИС», ЗАО «Финансовая компания «Профит Хауз», Управления ФСНП Российской Федерации по Челябинской области, ЗАО «Михчел-Инвест») Федеральный арбитражный суд Уральского округа постановил: постановление апелляционной инстанции от 16.10.2000 Арбитражного суда Челябинской области по делу № А76-4037/2000 оставить без изменения, кассационные жалобы без удовлетворения.

**Считаем, что вышеуказанные судебные акты вынесены с нарушением норм материального и процессуального права и выводы в судебных актах противоречат фактическим обстоятельствам дела по следующим основаниям:**

Во-первых, в судебных заседаниях ответчики неоднократно заявляли, что торгов по продаже арестованных акций ОАО «Качканарский ГОК «Ванадий» не было. Реализация ценных бумаг не обязательно должна происходить в форме торгов, так как к реализации имущества на торгах (аукцион, конкурс) Гражданский кодекс РФ относит только **недвижимость**. Более того, ответчики определили форму реализации ценных бумаг: на договорно-комиссионных началах, что подтверждается договором комиссии, заключенном между УФСНП России и ЗАО «Михчел-Инвест» (предметом которого явилась реализация оспариваемых ценных бумаг). Ссылка истца на то, что тендер – это торги не соответствует обстоятельствам дела, так как ЗАО «Михчел-Инвест» и УФСНП России по Челябинской области (стороны по договору комиссии) определили название «тендер» в соответствии с экономическим словарем как **письменное предложение, заявка, оферта** (о чем неоднократно говорилось в судебных заседаниях). Поэтому ссылка истца на то, что ответчиками были нарушены условия для проведения торгов акций являются ничтожными. Более того, Гражданский кодекс Российской Федерации не предусматривает такую форму торгов как тендер. ГК РФ содержит закрытый список видов торгов – «торги проводятся в форме аукциона или конкурса» (п. 4 ст. 447 ГК РФ). В иных нормативных актах также не определена такая форма торгов акциями как тендер. Следовательно, выводы судов изложенные в оспариваемых судебных актах не соответствуют обстоятельствам дела. При этом суды, не исследовали доказательства, представленные ответчиками и не давали оценку их заявлениям, представляющих доказательства именно комиссионной реализации ценных бумаг (договор комиссии от 09 сентября 1998 г. № 183). Но суд посчитал доводы истца о проведении реализации акций в форме торгов достаточными, хотя ООО «НПРО «Урал» не предоставила ни одного доказательства, подтверждающего реализации ценных бумаг на торгах. Более того, ответчики заявляли, что в договоре купли-продажи ценных бумаг от 18 сентября 1998 г. № 21 отсутствует ссылка на проведение торгов, так как торгов не было, а была комиссионная

III

реализация арестованного имущества: *«продажа производится на комиссионных началах организацией, уполномоченной лицом, осуществляющим взыскание»* (п. 16 Временного положения «О порядке обращения взыскания на имущество организаций, утвержденное указом Президента РФ от 13.02.96 № 199 – действующее на момент ареста и реализации ценных бумаг).

<u>Следовательно, вывод судов о недействительности торгов не соответствует обстоятельствам дела и суды не могли принять решения о признании торгов недействительными, так как их не было.</u> Более того, суды не приняли во внимание заявления ответчиков о том, что даже если (как утверждает истец) торги и не состоялись, то, в любом случае, договор купли-продажи ценных бумаг от 18.09.98 № 21 не может считаться недействительным, так как Временное положение «О порядке обращения взыскания на имущество организаций», действующее на момент реализации имущества, указывает, что «в случае, если торги не состоялись, продажа производится уполномоченной организацией на комиссионных началах». Так как, об этом говорилось в судебных заседаниях и нашло отражение в отзывах и жалобах ответчиков, то суды не имели законных оснований выносить подобные решения.

Во-вторых, во всех судебных инстанциях ответчики указывали, что требования истца – ООО «НПРО «Урал» носят виндикационный характер, так как в ходе судебного разбирательства в суде первой инстанции выяснилось, что ни один из привлеченных к делу ответчиков не является на момент рассмотрения искового заявления собственником оспариваемых ценных бумаг. Таким образом, исковое заявление ООО «НПРО «Урал» направлено на возврат ценных бумаг у добросовестного приобретателя, то есть у лица, которое «приобрело ценные бумаги, произвело их оплату и в момент приобретения не знало и не могло знать о правах третьих лиц на эти ценные бумаги» (статья 2 ФЗ № 39-ФЗ «О рынке ценных бумаг»). На основании того, что ООО «НПРО «Урал» обратилось по своей сути с виндикационным иском, но при этом в основании иска указаны нормы о недействительности сделок, ответчики в своих отзывах просили в удовлетворении исковых требований ООО «НПРО «Урал» отказать. В частности ЗАО «Финансовая компания «Профит Хауз» в суде первой инстанции, в апелляционной и кассационной инстанциях указывало не только на нормы законов, но и на практику Арбитражных судов подтверждающих невозможность удовлетворения подобных исковых требований истца. *«Если по возмездному договору имущество приобретено у лица, которое не имело права его отчуждать, собственник вправе обратиться с иском об истребовании имущества из чужого незаконного владения лица, приобретшего это имущество. Если в такой ситуации собственником заявлен иск о признании недействительной сделки купли-продажи и возврате имущества, переданного покупателю, и при разрешении данного спора будет установлено, что покупатель отвечает требованиям, предъявляемым к добросовестному приобретателю, <u>в удовлетворении исковых требований должно быть отказано</u>»* (п. 25 Постановления Пленума Высшего арбитражного суда Российской Федерации от 25.02.98 № 8 «О некоторых вопросах практики разрешения споров, связанных с защитой права собственности и других вещных прав»). Об этом ответчиками заявлялось в судебных заседаниях, но Суды не приняли во внимание данную норму и она не нашла отражение в оспариваемых судебных актах Арбитражных судов. Кроме того, ЗАО «ФК «Профит Хауз» в отзывах ссылалось на Информационное письмо Президиума Высшего арбитражного суда Российской Федерации от 21 апреля 1998 г. № 33 «Обзор практики разрешения споров по сделкам, связанным с размещением и обращением акций»

IV

п. 7 которого указывает, что «*требование собственника о возврате акций, предъявленное к добросовестному приобретателю, носит виндикационный характер и может быть удовлетворено лишь при наличии условий, предусмотренных статьей 302 Гражданского кодекса РФ*». В своем исковом заявлении истец указал в качестве соответчиков ЗАО «ФК «Профит Хауз», Компанию «Амбер Стар Эл. Эл. Си.», которые приобрели ценные бумаги и заплатили установленную за них цену, то есть являются добросовестными приобретателями. При этом, требуя применить последствия недействительности торгов истец просил возвратить ценные бумаги, но так как на момент спора они находились в собственности добросовестных приобретателей, то их возврат возможен только в порядке виндикационного иска. Подобных исковых требований Общество с ограниченной ответственностью «НПРО «Урал» не заявляло. «*Фонд имущества, добиваясь возврата акций, заявил требование о применении последствий недействительности сделки, заключенной между ответчиками, считая, что она также является ничтожной, поскольку продавец не имел права отчуждать указанные акции. Арбитражный суд отказал фонду государственного имущества в удовлетворении иска. Решение является правильным.*» (п. 7 Информационного письма ВАС РФ от 21.04.98 № 33).

**В-третьих,** В Постановлении Арбитражного суда Челябинской области от 16 октября 2000г. (стр. 4) и Постановлении Федерального арбитражного суда Уральского округа от 04 января 2001 г. (стр. 3) указывается, что <u>передаточные распоряжения являются сделками</u> и, поэтому, могут быть признаны недействительными в соответствии со ст. 167 ГК РФ. Гражданский кодекс Российской Федерации под сделками понимает действия лиц, направленные на установление, изменение или прекращение гражданских прав и обязанностей. Основанием для изменения гражданских прав и обязанностей по купле-продаже ценных бумаг является договор купли-продажи, а передаточное распоряжение служит документом, подтверждающим переход права собственности на ценные бумаги (ст. 8 ФЗ «О рынке ценных бумаг»). **Следовательно, передаточное распоряжение является техническим актом, фиксирующим переход прав на акции и является производным от основания перехода прав – договора, судебного акта и т.д. и который не изменяет права и обязанности сторон в правоотношении, не является сделкой и, таким образом не может быть признан недействительным.**

Письмом Заместителя Председателя Высшего Арбитражного суда Свердловской области от 21 мая 2001 г. ЗАО «Финансовая компания «Профит-Хауз» немотивированно было отказано в принесении протеста. При этом, Заместитель Председателя Высшего арбитражного суда РФ Арифулин А.А. не стал исследовать такие обстоятельства, как то, что в качестве соответчика не было привлечено лицо, у которого на момент рассмотрения находились оспариваемые ценные бумаги, что торгов не было и не могло так как происходила комиссионная реализация ценных бумаг, а также ряд иных оснований имеющих непосредственное отношение к делу.

Компания «Омни Трастхауз Лимитед» является организацией у которой списали акции, которые она добросовестно приобрела и заплатила за них установленную цену. Но решение судебных органов о восстановлении акций на лицевом счете ООО «НПРО «Урал» было совершено без исследования всех представленных доказательств (судебные органы

NO. 114    P15

V

рассматривали только доказательства представленные истцом, и игнорировали доказательства представленные ответчиками).

В связи с тем, что это не первый случай, когда списываются акции печально известного Открытого акционерного общества «Качканарский горно-обогатительный комбинат «Ванадий» с нарушением прав добросовестных приобретателей, а порой и не привлекая их совсем к участию в деле (как произошло в данном случае), просим Вас дать указание проверить все обстоятельства данного дела.

На основании вышеизложенного, в связи с тем, что принятыми судебными актами нарушены права добросовестных приобретателей и судебные решения вынесены с нарушением норм материального права, руководствуясь ст. 302 Гражданского кодекса РФ, ст. 2, 8 ФЗ «О рынке ценных бумаг», Постановлением Пленума Высшего арбитражного суда Российской Федерации от 25.02.98 № 8, Информационным письмом Президиума Высшего арбитражного суда Российской Федерации от 21 апреля 1998 г. № 33, в соответствии со ст. ст. 180, 184, 185, 187, 188, 208 АПК РФ Закрытое акционерное общество «Финансовая компания «Профит Хауз» просит Вас:

- истребовать гражданское дело № А76-4037/2000-5-105;

- принести протест об отмене следующих вступивших в законную силу судебных актов:
1. решения Арбитражного суда Челябинской области от 01 августа 2000 г. по делу № А76-4037/2000-5-105;
2. Постановления Арбитражного суда Челябинской области от 16 октября 2000 г. по делу № А76-4037/2000-5-105;
3. Постановления Федерального арбитражного суда Уральского округа от 04 января 2001 г. по делу № Ф09-1959/2000 ГК;

- в связи с тем, что в Уральском регионе проблема с ценными бумагами ОАО «Качканарский ГОК «Ванадий» решается однобоко и крайне тенденциозно, просить Президиум Высшего арбитражного суда РФ отменить вышеуказанные оспариваемые судебные акты и в удовлетворении исковых требований ООО «НПРО «Урал» отказать.

- применить поворот исполнения судебных актов – возвратить все полученное истцом, а в случае отсутствия ценных бумаг на лицевом счете ООО «НПРО «Урал» – обязать ЗАО «Ведение реестров компаний» проверить движение оспариваемых ценных бумаг и возвратить их на лицевой счет Компании, с которого они были списаны во исполнение оспариваемых судебных актов (Компания «ОМНИ Трастхауз Лимитед»)

Приложение:
копии:
- договора купли-продажи от 18.09.98 № 21;
- акта об исполнении обязательств по договору купли-продажи ценных бумаг от 24.09.98;
- решения Арбитражного суда Челябинской области от 01.08.00 по делу № А76-4037/2000-5-105;
- постановления Арбитражного суда Челябинской области от 16.09.00 по делу № А76-4037/2000-5-105;

постановления        Федерельного    VI    арбитражного суда Уральского округа от
04.01.01 по делу № Ф09-1959/2000 ГК;
- доверенности на представителя.

Представители ЗАО «ФК «Профит Хауз»

/ В.В. Вольнов

/ Д.А. Жуйков
(подлинная доверенность в материалах дела)

# EXHIBIT "8"

## DECISION
### In the name of the Russian Federation

On September 29, 2000 the Solntsevsky inter-municipal regional court of the city of Moscow in the composition of
presiding federal judge N.V. Ilyin
assessors O.M. Kevorkova, A.M. Matveyeva
and secretary I.A. Pravelieva
having considered in the open court session civil suit No. 2-2747 initiated by the complaint of OOO "Inrosmet", OAO "Nizhnetagilsky metallurgical industrial enterprise", ZAO "Standart Trust" against Yevgeny N. Ivanov, Amber Star LLC, Nexis Products LLC, Davies International, ZAO "Registrator Company Panorama", Omni Trust House Ltd., Holdex LLC, Foston management Ltd. to recover property from unlawful possession

### HAS ESTABLISHED:

The claimants made recourse to the court with a complaint against the respondents to recover from them registered ordinary shares of OAO "Kachkanar ore mining and processing enterprise "Vanadium": OAO "Nizhnetagilsky metallurgical industrial enterprise" — 103626 shares of issue 1, state registration No. 62-1P-290 and 18747610 shares of issue 2, state registration No. 62-1-1396; OOO "Inrosmet" — 1245677 shares of issue 2, state registration No. 62-1-1396; ZAO "Standart Trust" — 17618254 shares of issue 2, state registration No. 62-1-1396, with the face value of 1 ruble, believing themselves to be the owners of the demanded shares which have left their possession contrary to their will, arguing that they had lawfully acquired the relevant amounts of the shares of OAO "Kachkanar ore mining and processing enterprise "Vanadium". As a result of unlawful actions of the respondents, despite court rulings, ZAO "Registrator Company Panorama" wrote off the shares from the accounts of the claimants and entered them in the account of OOO "Ural-Start-Ltd" and the personal account of Ye.N. Ivanov. The claimants ask to recover their shares from unlawful possession and oblige ZAO "Registrator Company Panorama" to make the relevant changes in the register of the holders of securities of OAO "Kachkanar ore mining and processing enterprise "Vanadium" by writing off the registered ordinary shares from the personal accounts of the respondents.

The representative of the claimants supported their stated claims in court. The respondent Ye.N. Ivanov, having been informed in accordance with Article 106 of the RSFSR Civil Procedure Code, did not appear before the court, asking to consider the case in his absence and disagreeing with the stated claims.

The representative of corporate respondents did not acknowledge the suit in court, stating that the companies held the shares of OAO "Kachkanar ore mining and processing enterprise "Vanadium" lawfully, as bona fide purchasers.

Having heard the parties appearing before the court, studied the written materials in the case, the court believes that the stated claims should be satisfied in part for the following reasons.

As it was established in the court session, in accordance with the contract for the sale of securities No. 7393 of 04.11.1997, OAO "Nizhnetagilsky metallurgical industrial enterprise" acquired registered ordinary shares of OAO "Kachkanar ore mining and processing enterprise "Vanadium" in the amount of 103626 shares of issue 1 and 18747610 shares of issue 2. In accordance with the abstract from the register of the

shareholders of OAO "Kachkanar ore mining and processing enterprise "Vanadium" to the personal account of OOO "Inrosmet" there were credited 1245677 shares of issue 2, and to the personal account of ZAO "Standart Trust" — 17618254 shares of issue 2. Thus, in accordance with Article 29 of the Federal Law "On the market of securities", from the moment the shares were entered in their personal accounts the claimants were the owners of the relevant amounts of the shares of OAO "Kachkanar ore mining and processing enterprise "Vanadium".

In April 1998 OOO "Ural-Start-Ltd" made recourse to the Arbitrazh Court for the Sverdlovsk oblast with a complaint against ZAO "Uralelectromash" and other legal entities, including the claimants in the present case, which had acquired shares from ZAO "Uralelectromash", to hold invalid the right of ownership to the shares of OAO "Kachkanar ore mining and processing enterprise "Vanadium" in the amount of 37804355 units and invalidate transactions to dispose of the shares.

In its decision from 16.06.98 the Arbitrazh Court for the Sverdlovsk oblast satisfied the suit, recognizing the right of ownership to the shares of OOO "Ural-Start-Ltd", including to the part of shares belonging to the claimants in the present case. In accordance with the said decision the court applied the consequences of invalidation of void transactions to dispose of the disputed shares of OAO "Kachkanar ore mining and processing enterprise "Vanadium" by writing off the disputed shares from the accounts of the respondents, including from the personal accounts of ¯OAO "Nizhnetagilsky metallurgical industrial enterprise" — 103626 shares of issue 1 and 18747610 shares of issue 2; OOO "Inrosmet" — 1245677 shares of issue 2; ZAO "Standart Trust" — 17618254 shares of issue 2. The Arbitrazh Court for the Sverdlovsk oblast in the appellate instance by its decree from 29.07.2000 left the decision of the court in the first instance unchanged. After the decision came into effect on 30.07.98 the Arbitrazh Court for the Sverdlovsk oblast issued a writ of execution, which, inter alia, obliged the register holder of OAO "Kachkanar ore mining and processing enterprise "Vanadium" to perform the relevant operations with the register of the holders of securities, including the writing-off from the accounts of the claimants in the given case the above-mentioned amounts of shares. As a result of change of register holders on 01.09.98 ZAO "Registrator Company Panorama" received under an act of transfer all documents forming the system of keeping the register of OAO "Kachkanar ore mining and processing enterprise "Vanadium".

On 03.08.98 the respondents in case No. A60-483/98-C2 (claimants in the present case) filed a cassational complaint against the decision of the first instance and decree of the appellate instance. On 10.08.98 the Federal Arbitrazh Court for the Urals circuit issued a determination to suspend the execution of the court acts. However, despite that, ZAO "Registrator Company Panorama" on the basis of writ of execution No. 0006062 and the ruling from 10.08.98 to commence execution proceedings submitted by OOO "Ural-Start-Ltd" carried out operations to transfer the disputed shares from the accounts of the claimants in the present case to the personal account of OOO "Ural-Start-Ltd", which is confirmed by the reference issued by ZAO "Registrator Company Panorama" on 01.10.98.

On 08.09.98 the Federal Arbitrazh Court for the Urals circuit by its decree reversed the decision of the court of the first instance from 16.06.98 and the decree of the appellate instance from 29.07.98, dismissing the complaint of OOO "Ural-Start-Ltd". The Higher Arbitrazh Court of the Russian Federation in its decree from 01.06.99 cancelled all court acts in the case, remanding it for a new trial to the court of the first instance. On 14.06.2000 the Arbitrazh Court of the Sverdlovsk oblast dismissed the complaint of OOO "Ural-Start-Ltd".

Thus, at the moment of writing off the shares of OAO "Kachkanar ore mining and processing enterprise "Vanadium" from the accounts of OAO "Nizhnetagilsky metallurgical industrial enterprise", ZAO "Standart Trust" and OOO "Inrosmet" on 01.09.98 ZAO "Registrator Company Panorama" had the determination of the Federal Arbitrazh Court for the Urals circuit from 10.08.99 on suspending the execution of the court acts received by special post DH on 14.08.98, which is confirmed by receipt No. 432093965 of the mail company and a registered letter from 20.08.98, which is in turn confirmed by the receipt of the delivery of registered letter 2074 by the Russian Federation post office.

The reason for writing off the shares from the accounts of the claimants and their entering into the personal accounts of the respondents was the writ on initiating execution proceedings from 10.08.98, issued by the court bailiff V.V. Shvetsova at the Meshchansky inter-municipal court of the city of Moscow. It follows from the reports of the head of the department for preventing economic crimes at the Internal affairs department of Yekaterinburg, senior investigator for special cases of the Internal affairs department of Yekaterinburg, head of the 2nd inter-regional department of the officers of the court of the Central administrative district of Moscow, the said writ of a court bailiff is forged, having never been issued by the bailiff, and the documents of execution having never been received by the department of the officers of the court. A criminal case was initiated on the fact of forgery of the writ of the court bailiff against the director of OOO "Ural-Start-Ltd", with the elements of the crime stipulated by Article 159.3 of the Criminal Code of the Russian Federation.

Decision No. 27 of the Federal Commission on Securities of the Russian Federation from 02.10.97 (as amended by the Decisions of the Federal Commission on Securities of the Russian Federation No. 45 from 31.12.97, No. 1 from 12.01.98, No. 8 from 20.04.98) approved the Regulations for the keeping of the register of the holders of registered securities. In accordance with clause 1 of the said Decision there is established the order of keeping and the requirements to the system of keeping the register of the holders of registered securities mandatory for the registrars and issuers. According to Article 7.7.3, the registrar shall enter in the register the data on the transfer of the right of ownership to the securities if a transfer order is submitted by the registered person transferring the securities, the person to whose personal account the securities are to be entered or the authorized agents of either of these persons, and (or) there are presented other documents stipulated by the given Regulations. In particular, in accordance with Article 7.7.3.3, for making an entry in the register about the transfer of the right of ownership to the securities by court ruling it is necessary to have a copy of the court ruling which has entered into effect, witnessed by the court, and a writ of execution.

By the moment of writing off the disputed shares the ZAO "Registrator Company Panorama" had not been fulfilled these requirements.

The fact of wrongful write-off of the shares of OAO "Kachkanar ore mining and processing enterprise "Vanadium" from the accounts of the claimants in the present case is confirmed by the decision of the Disciplinary committee of the self-governing non-profit organization "Professional association of registrars, transfer agents and depositaries" (PARTAD) from 01.02.1999.

Proceeding from the above, the operations to write off registered ordinary shares of OAO "Kachkanar ore mining and processing enterprise "Vanadium" from the accounts of OAO "Nizhnetagilsky metallurgical industrial enterprise" — 103626 shares of issue 1 and 18747610 shares of issue 2; OOO "Inrosmet" — 1245677 shares of issue 2; ZAO "Standart Trust" — 17618254 shares of issue 2 and operations in the register of the

holders of securities are invalid, and the claimants in the present case are the owners of the said number of shares.

The shares requested by the claimants left their possession against their will. In accordance with Article 301 of the Civil Code of the Russian Federation the owner has the right to recover his property from unlawful possession.

At the same time the court has established that in accordance with the operation log book during the period of time beginning with 08.07.1998 as a result of transfer of shares a disputed amount of shares were entered in the personal account of Foston management Ltd., namely, 103480 shares of issue 1 and 37696035 shares of issue 2.

Thus, the acquisition by Foston management Ltd. of a disputed amount of shares belonging to the claimants in the present case, does not have a perfect basis and results in unlawful possession. At that the respondent produced no evidence to prove that he had not and could not have known that the property had been acquired from a person having no right to dispose of it. This constitutes gross negligence which excludes the possibility to protect his interests in accordance with Article 302 of the Civil Code of the Russian Federation.

At the same time the representative of the claimants has not submitted to the court unquestionable proof of the presence of disputed shares on the personal account of Ye.N. Ivanov, and no additional evidence was disclosed in the court session, that is why to the extent of recovering the shares from Ye.N. Ivanov the stated claims are not subject to satisfaction.

In the course of the hearing the court has established that the respondent in the case, ZAO "Registrator Company Panorama", in accordance with the agreement with OAO "Kachkanar ore mining and processing enterprise "Vanadium" shall transfer the keeping of the register to AOZT "Vedeniye reestrov kompaniy", Yekaterinburg. Thus, in accordance with Decision No. 27 of the Federal Commission on Securities of the Russian Federation from 02.10.97, the register holder shall carry out the relevant operations in the register of the holders of securities, and, inter alia, to write off from the accounts of Foston management Ltd. and transfer to the personal accounts of the claimants the amounts of the registered ordinary shares of issues 1 and 2 of OAO "Kachkanar ore mining and processing enterprise "Vanadium" corresponding to the stated claims.

On the basis of the above, being guided by Articles 191 to 197 of the RSFSR Civil Procedure Code, the court

## HAS DECIDED:

To recover the registered ordinary shares of OAO "Kachkanar ore mining and processing enterprise "Vanadium" from the personal accounts of Foston management Ltd. and enter them into the personal accounts of OOO "Inrosmet" — 1245677 shares of issue 2, state registration No. 62-1-1396; OAO "Nizhnetagilsky metallurgical industrial enterprise" — 103626 shares of issue 1, state registration No. 62-1P-290 and 18747610 shares of issue 2, state registration No. 62-1-1396; ZAO "Standart Trust" — 17618254 shares of issue 2, state registration No. 62-1-1396.

To oblige the register holder of OAO "Kachkanar ore mining and processing enterprise "Vanadium", ZAO "Registrator Company Panorama" and AOZT "Vedeniye reestrov kompariy", to carry out the relevant operations in the register of the holders of securities.

To dismiss the other stated claims.

The decision may be challenged and appealed to the Moscow city court within 10 days.

Judge          [signature]
Assessors      [signature]

True copy
Judge          [signature]

The decision came into effect on 10.10.2000.

Judge          [signature]

Р Е Ш Е Н И Е

## Именем Российской Федерации

29 сентября 2000 г. Солнцевский межмуниципальный районный суд г.Москвы в составе председательствующего федерального судьи Ильина Н.В. , народных заседателей Кеворковой О.М.,Матвеевой А.М. при.секретаре Правельевой И.А.,
рассмотрев в открытом судебном заседании гражданское дело №2-2747 по иску ООО "Инросмет", АОА "Нижнетагильский металлургический ко мбинат", ЗАО "Стандарт Траст" к Иванову Евгению Николаевичу,компа ниям "Амбер Стар Эл.Эл.Си", "Наксиз Продакте Эл.Эл.Си.", "Девис Интернешнл", ЗАО "Компания-регистратор "Панорама", "Омни Траст хаус Лимитед", "Холдекс Эл.Эл.Си.", "Фостон менеджмент лимитед" об истребовании имущества из чужого незаконного владения,

У С Т А Н О Б И Л :

истцы  обратились в суд с иском к ответчикам об истребовании у них обыкновенных именных акций ОАО "Качканарский горно-обогати- тельный комбинат "Ванадий": ОАО "Нижнотагильоий металлургический комбинат в количестве 103626 акций.I выпуска № гос.регистрации 62-1П-290 и 18747610 акций II выпуска № гос.регистрации 62-1- 1396 ; ООО "Инросмет" - 1245677 акций II выпуска № гос.регистраци 62-1-1396 ; ЗАО "Стандарт Траст" 17618254 акций II выпуска №гос. регистрации 62-1-1396 , номинальной стоимостью 1 рубль, считая что они являются собственниками истребуемых акций, которые выбы- ли из владения помимо их воли,мотивируя свои требования тем,что они законно приобрели соответствующие количества акций ОАО "Гор- нообогатительный комбинат "Ванадий".В результате незаконных дей- ствий ответчиков,не смотря на судобное решение, ЗАО "Компания ре гистратор "Панорама" списала акции со счетов истцов и зачислило на счет ООО "Урал-Старт-Лтд" и на лицевой счет Иванова Е.Н. Ист- цы просят истребовать свои акции из чужого незаконного владения и обязать ЗАО "Компания-регистратор "Панорама" внести изменения в реестр владельцев ценных бумаг ОАО "Горнообогатительный комби- нат "Ванадий" путем списания обыкновенных именных акций с лице- вых счетов ответчиков.
Представитель истцов поддержал в суде исковые требования.
Ответчик Иванов Е.Н. в суд не явился,извещен в соответствии со ст.106 ГПК РСФСР,просит рассмотреть дело в его отсутствие , с исковыми требованиями не согласен.
Представитель ответчиков-компаний в суде иск не признал,заявив что компании владеют акциями ОАО "Горнообогатительный комбинат "Ванадий" на законном основании, как добросовестные приобрета- тели.
Выслушав явившиеся стороны,изучив письменные материалы дела,суд находит исковые требования подлежащие удовлетворению частично по следующим основаниям.
Как установлено в суде, в соответствии с договором купли-продажи ценных бумаг №7393 от 04.11.1997 г. ОАО "Нижнетагиский металлур- гический комбинат" приобрело обыкновенные именные акции ОАО "Кач- канарский горнообогатительный комбинат "Ванадий" в количестве 103626  акций I выпуска и 18747610 II выпуска. В соответствии с выпиской из реестра акционеров ОАО "Качканарский горнообогательте льный комбинат "Ванадий" на лицевой счет ЗАО "Стандарт Траст" было зачислено 17618254 акций II выпуска, а на лицевой счет ООО "Инросмет" - 1245677 акций II выпуска. Таким образом, в соответст

вии со ст.29 Федерального закона "О рынке ценных бумаг"истцы
с момента зачисления акций на их лицевые счета являлись собствен-
никами соответствующих количеств акций ОАО "Качканарский горно-
обогатительный комбинат "Ванадий".
В апреле 1998 г. компания ООО "Урал-Старт-Лтд" обратилась в Ар-
битражный суд Свердловской области с иском к ЗАО "Уралолектромаш"
и другим юридическим лицам, в том числе и к истцам по данному
делу, которые приобрели акции у ЗАО "Уралалектромаш" о призна-
нии права собственности на акции ОАО "Качканарский горнообогати-
тельный комбинат "Ванадий" в количестве 37804355 штук и призна-
нии сделок по отчуждению акций недействительными.
Решением Арбитражного суда Свердловской области от 16.06.98г.
иск был удовлетворен и за ООО "Урал-Старт-ЛТД"было признано пра-
во собственности на акции, в том числе на часть акций, находящих-
ся в собственности истцов по данному делу. В соответствии с дан-
ным решением суд применил последствия недействительности ничтож-
ных сделок по отчуждению спорных акций ОАО "Качканарский горно-
обогатительный комбинат "Ванадий" путем списания спорных акций
со счетов ответчиков, в том числе с лицевых счетов ОАО "Нижнета-
гильский металлургический комбинат" 103626 акций I выпуска, 18
747640 акций II выпуска, ООО "Инросмет" 1245677 акций II выпуска,
ЗАО "Стандарт Траст" 17618254 акций II выпуска. Постановлением
апелляционной инстанции Арбитражного суда Свердловской области
от 29.07.2000 г. решение суда 1 инстанции оставлено без изменения.
После вступления решения в законную силу 30.07.98 г.Арбитражным
судом Свердловской области был выдан исполнительный лист, в том
числе на обязание реестродержателя ОАО "Качканарский горнообога-
тительный комбинат "Ванадий" произвести соответствующие операции
в реестре владельцев ценных бумаг, в том числе списать со счетов
истцов по данному делу вышеуказанных количеств акций. В резуль-
тате смены реестродержателей 01.09.98 г. ЗАО "Компания-регистра-
тор "Панорама" получила по акту приема-передачи все документы,
составляющие систему ведения реестра ОАО "Качканарский горно-
обогатительный комбинат "Ванадий".
03.08.98 г. ответчиками по делу №А60-483/98-С2 /истцами по дан-
ному делу / была подана кассационная жалоба на решение 1 инстан-
ции и постановление апелляционной инстанции. 10.08.98 г. Феде-
ральным арбитражным судом Уральского округа было вынесено опре-
деление о приостановлении исполнения судебных актов. Однако, не-
смотря на это, ЗАО "Компания-регистратор "Панорама" на основании
исполнительного листа №0006062 и представленного ООО "Урал-Старт-
Лтд" постановления о возбуждении исполнительного производства от
10.08.98 г. осуществила операции по переводу спорных акций со
счетов истцов по данному делу на лицевой счет ООО "Урал-Старт-
Лтд", что подтверждается справкой ЗАО "Компания-регистратор"Па-
норама" от 01.10.98 г.
08.09.98г. Постановлением Федерального Арбитражного суда Ураль-
ского округа решение суда 1 инстанции от 16.06.98 г. и постанов-
ление апелляционной инстанции от 29.07.98 г. отменены, в иске
ООО "Урал Старт-Лтд" отказано. Постановлением ВАС РФ от 01.06.99
г. все состоявшиеся по данному делу судебные акты отменены, дело
направлено на новое рассмотрение в суд 1 инстанции. 14.06.2000г.
Арбитражный суд Свердловской области оставил иск ООО "Урал-Старт-
Лтд" без рассмотрения.
Таким образом, на момент списания акций ОАО "Качканарский горно-
обогатительный комбинат "Ванадий" со счетов ОАО "Нижнетагильский
металлургический комбинат", "ЗАО "Стандарт Траст", ООО "Инросмет"
01.09.98 г. ЗАО "Компания-регистратор "Панорама" имела определе-
ние Федерального арбитражного суда Уральского округа от 10.08.99
о приостановлении исполнения судебных актов, которое было получа-

спецпочтой ДН 14.08.98г., что подтверждается квитанцией почтовой компании №432093965 и заказным письмом 20.08.98г., что в свою очередь подтверждается уведомлением о вручении отделением связи РФ заказного письма 2074 .

Основанием списания акций со счетов истцов и зачисление их на лицевые счета ответчиков явилось постановление о возбуждении исполнительного производства от 10.08.98 г.,вынесенное судебным приставом-исполнителем Швецовой В.В. при Мещанском м/м суде г.Москвы.Как следует из сообщений начальника ОБЭП УВД г.Екатеринбурга, ст.следователя по ОВД СО УВД г.Екатеринбурга, начальника 2 межрайонного отдела службы судебных приставов г.Москвы по ЦАО указанное постановление судебного пристава является подложным, приставом никогда не выносилось, а исполнительные документы в адрес службы судебных приставов-исполнителей не поступали. По факту подделки постановления судебного пристава в отношении директора ООО "Урал-Старт-Лтд" возбуждено уголовное дело по признакам преступления,предусмотренного ч.3 ст.159 УК РФ.

Постановлением Федеральной комиссии по рынку ценных бумаг №27 от 02.10.97г./в редакции Постановлений ФКЦБ РФ от 31.12.97 №45, от 12.01.98 №1 , от 20.04.98 №8 /утверждено Положение о ведении реестра владельцев ценных бумаг. В соответствии со ст.1 указанного Положения устанавливается порядок ведения и требования предъявляемые к системе ведения реестра владельцев именных ценных бумаг, обязательные для исполнения регистраторами и эмитентами. В соответствии со ст.7, п.7.3 регистратор обязан вносить в реестр записи о переходе прав собственности на ценные бумаги припредставлении передаточного распоряжения зарегистрированным лицом,передающим ценные бумаги или лицом, на лицевой счет которого должны быть зачислены ценные бумаги,или уполномоченными представителями одного из этих лиц и /или/ иных документов,предусмотренных настоящим положением. В частности , в соответствии со ст.7 п.7.3.3 для внесения в реестр записи о переходе прав собственности на ценные бумаги по решению суда необходимо наличие копии решения суда,вступившего в законную силу,заверенную судом и исполнительный лист.

На момент осуществления списания спорных акций данные требования компанией -регистратором "Панорама" не были выполнены.

Факт неправомерного списания акций ОАО "Качканарский горнообогатительный комбинат "Ванадий" со счетов истцов по данному делу подтверждается решением Дисциплинарного комитета саморегулируемой некомерческой организации "Профессиональная ассоциация регистраторов,трансферагентов и депозитариев" /ПАРТАД/ от 01.02.1999 г.

На основании изложенного, обыкновенные именные акции ОАО "Качканарский горнообогатительный комбинат "Ванадий", списанные со счетов ОАО "Нижнетагильский металлургический комбинат" в количестве 103 626 акций I выпуска и 18747610 акций II выпуска, со счетов ЗАО "Стандарт Траст" в количестве 17618254 акции II выпуска, со счето в ООО "Инросмет" в количестве 1245677 акций II выпуска, операции в реестре владельцев ценных бумаг является недействительными, а истцы по данному делу являются собственниками указанного количества акций.

Истребуемые истцами акции выбыли из владения помимо их воли. В соответствии со ст.301 ГК РФ собственник вправе истребовать свое имущество из чужого незаконного владения.

Вместе с тем, судом установлено , что согласно регистрационному журналу операций за период с 08.07.1998 г. в результате перемещений акций спорное количество акций зачислено на лицевой счет компании "Фостон менеджмент лимитед", а именно 103480 акций I выпуск и 37696035 акций II выпуска.

Таким образом,приобретение компанией "Фостон менеджмент лимитед" спорного количества акций, принадлежащих на праве собственности

истцам по данному делу, имеет порочное основание и носит незаконный характер владения. При этом, ответчик не представил доказательств, что он не знал и не мог знать, что имущество приобретается у лица,которое не вправе его отчуждать.На лицо грубая неосторожность, которая исключает возможность защиты его интересов в соответствии со ст.302 ГК РФ.
Вместе с тем, представителем истцов не представлены суду бесспорных доказательств наличия спорных акций на лицевом счете Иванова Е.Н. и в суде дополнительных доказательств не установлено,поэтому в части истребования акций от Иванова Е.Н. исковые требования удовлетворению не подлежат.
В ходе судебного разбирательства судом установлено, что ответчик по делу ЗАО "Компания-регистратор "Панорама" в соответствии с соглашением с ОАО "Качканарский горнообогатительный комбинат "Ванадий" передает ведение реестра АОЗТ "Ведение реестров компаний" г.Екатеринбурга . Таким образом, в соответствии с Положением о ведении реестра ценных бумаг,утвержденного Постановлением Федеральной комиссии по рынку ценных бумаг № 27 от 02.10.97 г.,реестродержатель обязан произвести соответствующие операции в реестре владельцев ценных бумаг, в том числе списать со счетов компании "Фостон менеджмент лимитед" и превести на лицеыве счета истцов соответствующие исковым требованиям количество обыкновенны именных акций ОАО "Качканарский горнообогатительный комбинат "Ванадий" I и II выпусков.
На основании изложенного,руководствуясь ст.ст.191-197 ГПК РСФСР, суд

## Р Е Ш И Л :

Истребовать именные обыкновенные акции ОАО "Качканарский горно обогатительный комбинат "Ванадий" с лицевых счетов компании "Фостон менеджмент лимитед" с зачислением на лицевой счет ООО "Инросмет" 1245677 акций II выпуска /№гос.регистрации выпуска 62-1-1396/ , на лицевой счет ОАО "Нижнетагильский металлургический комбинат " 103626 акций II выпуска /№гос.регистрации выпуска 62-1П-290/ и 18747610 акций II выпуска /№гос.регистрации выпуска 62-1-1396/, на лицевой счет ЗАО "Стандарт Траст" 17618254 акции II выпуска /№ гос.регистрации 62-1-1396 /.
Обязать реестродержателя ОАО "Качканарский горнообогатительный комбинат "Ванадий" ЗАО "Компания-регистратор "Панорама" и АОЗТ "Ведение реестров компаний" произвести соответствующие операции в реестре владельцев ценных бумаг
В остальной части исковых требований - отказать.
Решение может быть обжаловано и опротестовано в Мсогорсуд в 10-дневный срок ..

                        Судья:

                        Народные заседатели: