# EXHIBIT "5"

COPY

The State Registration Chamber of the Republic of Kalmykia

RESOLUTION
[seal]

#00355

June 22, 1999                                            City of Elista

## RE STATE REGISTRATION OF A LIMITED LIABILITY
## COMPANY "Polyprom"

Pursuant to the Civil Code of the Russian Federation and Minutes #2 of the General meeting of shareholders of a Closed joint stock company "SOVAM" dated June 21, 1999, I resolve:

1. To register a Limited liability company "Polyprom" (OOO "Polyprom"), which is being created by a Closed joint stock company "SOVAM".
2. To establish its location as follows: 358000, City of Elista, ul. Lenina, 249, room 505.
3. To oblige OOO "Polyprom" to get registered in the GNI [State Tax Inspection – transl.] of Elista, the city Statistics Department, the RF Pension Fund in Kalmykia, the Service on Employment, the Social Security Fund and the Mandatory Medical Insurance Fund, and to file quarterly reports with the above organizations.
4. To give permission for making seals.
5. An account shall be opened in a bank.
6. To oblige OOO "Polyprom" to publish within the 7-day period in the newspaper "Economic news of Kalmykia" information concerning its state registration.

DEPUTY
CHAIRMAN OF THE GRP RK          [signature]          A.N. Lidgiev
                                [seal]

02/08 01  THU 21:52 FAX                                          NO.719   P.1
2.AUG.2001  17:28


КОПИЯ

*Государственная регистрационная палата Республики Калмыкия*

*ПОСТАНОВЛЕНИЕ*

№ 00356

" 22 " июля        1999 г.                                    г. Элиста

# О ГОСУДАРСТВЕННОЙ РЕГИСТРАЦИИ
## ОБЩЕСТВА  С  ОГРАНИЧЕННОЙ  ОТВЕТСТВЕННОСТЬЮ
## «Полипром»

На основании Гражданского Кодекса Российской Федерации и Протокола № 2 Общего собрания акционеров Закрытого акционерного общества «СОВАМ» от «21» июня 1999 г:

1. Зарегистрировать Общество  с  ограниченной  ответственностью «Полипром» (ООО «Полипром»), создаваемое юридическим лицом Закрытым акционерным обществом «СОВАМ».

2. Установить местонахождение: 358000,  г. Элиста, ул. Ленина, 249, комната 505.

3. Обязать ООО «Полипром» встать на учет и ежеквартально предоставлять отчетность в ГНИ по г. Элиста,  гороотдел статистики, Пенсионный фонд РФ по РК, Службу  занятости населения, Фонды  социального и обязательного медицинского страхования.

4. Дать разрешение на изготовление печати и штампов.

5. Банку открыть счет.

6. Обязать ООО «Полипром» в 7-дневный срок опубликовать сведения о государственной регистрации в газете «Экономические известия Калмыкии».

**ЗАМЕСТИТЕЛЬ**
**ПРЕДСЕДАТЕЛЯ ГРП РК**                                  *А.Н. ЛИДЖИЕВ*

# EXHIBIT "6"

In the name of the Russian Federal

# DETERMINATION

The city of Elista

Case No. A22-1222/2000/6-109

22 November 2000

The Arbitrazh Court of the Republic of Kalmykia, in the composition of:

Presiding Judge Loginov S.N.

Judges:

Considered in a court session the suit of OAO "Kachkanar Mineral Processing Combine "Vanadium" (hereinafter, the Combine) against OOO "Trading House OAO "Vanadium" (hereinafter, the Trading House) and OOO "Polyprom" (hereinafter, the OOO) concerning the recognition as void the agreement of purchase and sale of securities of 18 January 1999 and the conveyance instructions of re-registration of the Combine's stock in the amount of 2 307 984 items for 5 558 847 rubles from the Trading House to the OOO and reinstatement of the entry of ownership of the disputed stock in the bankbook of the Trading House with the participation in the session of:

From the Plaintiff: Shumakov R.A. by Power of Attorney No.72-360/10p of 30 October 2000

From the Respondent: Plotnikov V.A. by Power of Attorney No.28 of 08 November 2000,

From OOO "Polyprom": not attended the session;

From the third party: Kapura S.M., AOZT "Maintenance of Company Registers"

Has established:

Due to violations of the legislation in force at the disposal of shares, the Combine resorted to the Arbitrazh Court with a suit of recognition as void of the agreement of purchase and sale of securities of 18 January 1999 and the conveyance instructions of 20 January 2000 to write-off from the bankbook of the Trading House to the OOO's account the Combine's stock, issuance No. 62-III-290 of 12 July 1993 in the amount of 2 307 984 items for 5 558 847 rubles and the reinstatement in the bankbook of the Combine's shareholders register of the registration entry of the Trade House's ownership of the said stock.

In the court session, the Combine's representative supported the claim and explained that the agreement of purchase and sale of the Combine's stock and the conveyance instructions by the

Trading House were signed by Chervinsky N.I. who at the performance of such actions was not the general director of the Trading House and was not properly authorized. Herewith, proceeding from the value of the disposed stock, the said transaction was large for the Trading House and, under the current legislation the approval of the general meeting of the company's founders is required to conclude such transaction. However, it was not done despite the fact that the Combine's Board member Zanodvornov A.V. who concurrently was an authorized representative of one of the OOO's founders (KEMPL Company) was authentically aware of that. In virtue of that, the concluded transaction does not lead to legal consequences for the parties and the OOO thereby took possession of the disputed shares illegally.

The representative of the Trading House acknowledged the claim and stated that at the conclusion of the agreement, Mashkovtzev E.A. was the general director of the Trading House, and at the forwarding of the conveyance instructions the general director was Khalmirzaev S.A. Thereby, as Chervinsky did not have proper authorities he was not entitled to sign the above-said instruments. Furthermore, the transaction of stock disposal was large for the Trading House, thus it required the approval of the Combine, which was not obtained. Thereby, the shares are to be returned to the Trading House.

The representative of the OOO failed to attend the court session, despite proper notification of the time and location of the dispute consideration. In connection with it and taking in consideration the fact that the case papers have information sufficient to demonstrate the positions of the parties, the arbitrazh court thinks it virtual to consider the case in absentia of the OOO's representative.

The representative of the third party AOZT "Maintenance of Company Registers" acknowledged the claim and explained that it was unaware of violations that took place at registration of the shares under the agreement of purchase and sale of 18 January 1999. Thereby, appropriate measures shall be taken subject to the court decision.

Having heard the opinions of the parties and having studied the case papers, the Arbitrazh Court found that on 18 January 1999 the Trading House and the OOO entered into Agreement No. 3, according to which the Trading House undertook the obligation to convey to the OOO the Combine's registered common shares of issuance No. 62-III-290 of 12 July 1993 in the amount of 9759 items for 23 504.80 rubles and of issuance No. 62-I-1396 of 12 June 1996 in the amount of 2 298 225 items for 5 535 342.20 rubles with the total number of 2 307 984 items for 5 558 847 rubles and the OOO undertook the obligation to pay up the stock value within 35 banking days following the signing of the agreement by the parties both in monetary means and in securities, including in promissory notes.

On 20 January 2000, Trading House sent to ZAO Regist Company "Panorama", the holder of the Combine's shareholders register, the conveyance instructions of re-registration of the stock under Agreement No. 3 of 18 January 1999 to the OOO.

On 21 January 2000, ZAO "Registrar Company "Panorama" made appropriate changes in the shareholders register.

Under Article 53 of the Civil Code of the Russian Federation, a judicial person obtains legal rights and undertakes civil duties through its bodies acting pursuant to the law, other legal acts and constituent documents.

Under Paragraph 4.6 of the Trading House's charter, the general director is entitled to enter into agreements.

The case papers demonstrate that Chervinsky signed the agreement and the conveyance instructions on behalf of the Trading House.

Meanwhile, as was found in the court session, at the conclusion of the agreement (18 January 1999) and at the forwarding of the conveyance instructions (20 January 2000) Mashkovtzev E.A. and Khalmirzaev S.A., accordingly, were the general directors of the Trading House.

As the representatives of the Combine and the Trading House explained it, prior to the dismissal of Mashkovtzev, other persons of the Combine and the Trading House were signed by an unauthorized person.

Under Article 183 of the Civil Code of the Russian Federation if a person is not authorized to act on behalf of another person or if a person exceeds such authorities, the transaction is considered as concluded on behalf and for the person that concluded such transaction, unless the other person (the represented person) expressly approves of that transaction afterwards.

Under the circumstances, the Arbitrazh Court finds that as the agreement was entered into by an unauthorized person and it was approved neither by the Combine, nor the Trading House, the agreement may not lead to legal consequences for the parties.

Pursuant to Article 46 of the Federal Law No. 14-FZ "On Limited Liability Companies" of 08 February 1998, the large transaction is a transaction or a number of interrelated transactions associated with purchase, disposal and possible disposal by the company of property, both directly and indirectly, having the value of more than 25% of the company's property value calculated on the basis of the reports for the last reporting period that preceded the date of the decision to negotiate such transactions.

The case papers demonstrate that the value of the disposed shares amounted to 5 558 847 rubles and the property value of the Trading House was 122 285 903 rubles.

Herewith, the transaction of the Combine's stock disposal does not constitute the transaction concluded in the course of regular business activity of the company as the Trading House is not a professional stock market actor and its charter does not stipulate operations with securities as the main type of activity.

Under the circumstances, the Arbitrazh Court finds that the Trading House and the OOO concluded a large transaction of the Combine's stock disposal.

Under Article 168 of the Civil Code of the Russian Federation, a transaction that is incompliant with the provisions of the law and other legal acts is void, unless the law stipulates that such transaction is traversable.

Under Paragraphs 3 and 5 Article 46 of the Federal Law "On Limited Liability Companies", the general meeting of the company's participants makes the decision to conclude a large transaction. Herewith, a large transaction concluded with violations of the provisions of this article may be recognized as void under the claim of the company or its participant.

The case papers demonstrate that the OOO is the sole participant.

However, the management of the Combine neither made the decision of the stock sale by the Trading House to the OOO, nor approved of the concluded transaction afterwards, pursuant to Article 39 of the Federal Law "On Limited Liability Companies".

Furthermore, by the decision of the Combine's Board of Directors of 18 January 1998, the sale of the Combine's stock to alien organizations was prohibited.

In the court session it was found that the founders of the OOO are Bukharin G.M. and Company "KEMPL" with Zanodvornov A.V. being its authorized representative who signed the constituent agreement on its behalf. Herewith, Zanodvornov A.V. was the Combine's Board member at the signing of the agreement of purchase and sale of 18 January 1999.

In virtue of that, when entering into the agreement of stock sale, the OOO must have known that an unauthorized person signed the agreement and the transaction was concluded without an appropriate approval of its founder.

Under the circumstances and taking into consideration that the stock book-value amounts to 45% of the property value of the Trading House, and the transaction of stock disposal was concluded by an unauthorized person and without consent and an appropriate approval of the

founder, the arbitrazh ırt finds that the purchase and sale trai ∙tion of the Combine's stock is void.

The voidance of the purchase and sale transaction leads to recognition as void of all subsequent transactions with the stock, including the stock's re-registration from the Trading House to the OOO.

Based on the set forth and being guided by Articles 124-127 of the Arbitrazh Procedure Code of the Russian Federation, the Arbitrazh Court has determined:

- To satisfy the claim of OAO "Kachkanar Mineral Processing Combine "Vanadium";

1. To recognize as void Agreement of Purchase and Sale No. 3 of 18 January 1999 entered into by OOO "Trading House OAO "Vanadium" and OOO "Polyprom".

2. To recognize as void the conveyance instructions of 20 January 2000 of the write-off from the bankbook of OOO "Trading House OAO "Vanadium" of the registered common shares of OAO Kachkanar Mineral Processing Combine "Vanadium" of issuance No. 62-III-290 of 12 July 1993 in the amount of 9759 items and of issuance No. 62-I-1396 of 12 June 1996 in the amount of 2 298 225 items.

3. The holder of the shareholders register of OAO "Kachkanar Mineral Processing Combine "Vanadium" AOZT "Maintenance of Company Registers" is to reinstate in the register of owners of registered common securities of OAO "Kachkanar Mineral Processing Combine "Vanadium" the record in the bankbook of OOO "Trading House OAO "Vanadium" that it owns registered common shares of OAO "Kachkanar Mineral Processing Combine "Vanadium" of issuance No. 62-III-290 of 12 July 1993 in the amount of 9759 items and of issuance No. 62-I-1396 of 12 June 1996 in the amount of 2 298 225 items

4. To exact the expenses on the state duty in favor of OAO "Kachkanar Mineral Processing Combine "Vanadium" from OOO "Trading House OAO "Vanadium" in the amount of 834.90 rubles and from OOO "Polyprom" in the amount of 834.90 rubles.

To issue execution orders upon the determination comes into legal force.

This determination may be appealed by the parties within one month after the date hereof to the appeal authority of the Arbitrazh Court of the Republic of Kalmykia.

Judge: Loginov S.N.

74



Именем Российской Федерации

Р Е Ш Е Н И Е

г. Элиста

22 ..... ... ... ......................200.. г.          Дело № А22-1222/2000/8-109

Арбитражный суд Республики Калмыкия
в составе:                                    (наименование арбитражного суда)

председательствующего ............. Логинова С.Н. ......................

судей: ...................................................................

рассмотрев в судебном заседании дело по иску ОАО "Качканарский горнообога-
тительный комбинат "Ванадий" (далее комбинат)
                                    (наименование истца)

к ООО "Торговый дом ОАО "Ванадий" (торговый дом) и
ООО "Полипром" (ООО) (наименование ответчика)

о признании договора купли-продажи ценных бумаг от 18.01.99г.
недействительным, а также о признании недействительными пере-
даточных распоряжений о перерегистрации акций
комбината в кол-ве 2307984 шт. на 5558847 руб. с торгового
дома на ООО и восстановлении записи на лицевом счете торго-
вого дома о владении спорными акциями на праве собственности

при участии в заседании: от истца - Шумаков Р.А., поверенность
№72-360/10р от 30.10.00г., от ответчика - Плотников В.А.,
поверенность №26 от 08.11.00г., от ООО "полипром" - не прибыл,
от 3-его лица АОЗТ "Ведение реестров компаний" - Капура С.М.,
у с т а н о в и л: в связи с нарушением действующего законо-
дательства при отчуждении акций комбинат обратился в арбит-
ражный суд с иском о признании договора купли-продажи ценных
бумаг от 18.01.99г. недействительным, а также недействительны-
ми передаточных распоряжений от 20.01.00г. о списании с лице-
вого счета торгового дома на счет ООО акций комбината выпуска
№22-1П1-290 от 12.07.93г. в кол-ве 2307984 шт. на 5558847 руб.
и восстановлении на лицевом счете в реестре акционеров комби-
ната регистрационную запись о владении торговым домом на пра-
ве собственности указанными акциями.

В судебном заседание представитель комбината исковые
требования поддержал и пояснил, что договор купли-продажи
акций комбината и передаточные распоряжения со стороны тор-
гового дома были подписаны Червинским Н.И., который на момент
совершения указанных действий не являлся генеральным дирек-
тором торгового дома и не был наделен соответствующими пол-
номочиями. При этом исходя из стоимости отчужденных акций
указанная сделка для торгового дома являлась крупной и согласно

действующему законодательству для ее заключения требовалось согласие общего собрания учредителей общества. Однако этого сделано не было, несмотря на то, что член Совета директоров комбината Занобогонов А.В., одновременно являющийся полномочным представителем одного из учредителей ООО (КСМП компания), об этом достоверно знал. В силу этого совершенная сделка не влечет правовых последствий для сторон и соответственно ООО незаконно завладело спорными акциями.

Представитель торгового дома исковые требования признал и показал, что на момент заключения договора директором торгового дома был Марковцев Е.А., а на момент направления передаточных распоряжений – Халмирзаев С.А.Поэтому, Червинский, будучи ненаделенным указанными полномочиями, не имел право подписывать вышеуказанные документы. Кроме этого, сделка по отчуждению акций являлась для торгового дома крупной и требовала согласия комбината, что однако сделано не было. Поэтому акции подлежат возврату торговому дому.

Представитель ООО в судебное заседание не прибыл несмотря на надлежащее извещение о времени и месте рассмотрения спора.В связи с этим и учитывая, что в материалах дела имеются достаточно данных, свидетельствующие о позиции сторон, арбитражный суд находит возможным рассмотрение спора в отсутствии представителя ООО.

Представитель третьего лица АОЗТ "Ведение реестров компаний" исковые требования признал и пояснил, что о допущенных нарушениях при перерегистрации акций по договору купли-продажи от 18.01.99г. им известно не было.Поэтому в зависимости от решения суда будут приняты соответствующие меры.

Выслушав мнение сторон и исследовав материалы дела, арбитражный суд установил, что 18.01.99г. между торговым домом и ООО был заключен договор №3, по которому торговый дом принял на себя обязательство передать ООО именные обыкновенные акции комбината выпуска №62-III-290 от 12.07.99г. в кол-ве 9759 шт. на 2350 руб. 00 коп. и N 62-I-1396 в кол-ве 2298225 шт. от 12.06.96г. на 5555342 руб.20 коп., а всего акций в кол-ве 2307984 шт. на 5558347 руб., а ООО – оплатить стоимость акций в течении 35 банковских дней с момента подписания сторонами договора как денежными средствами, так и ценными бумагами, в т.ч. простыми векселями.

20.01.00г. торговый дом направил держателю реестра акционеров комбината ЗАО"Компания-регистратор "Панорама" передаточные распоряжения о перерегистрации акций по договору №3 от 18.01.99г. на ООО.

АОЗТ "Компания-регистратор"Панорама" 21.01.00г. внесло соответствующие изменения в реестр акционеров.

В соответствии со ст.53 ГК РФ юридическое лицо приобретает гражданские права и принимает на себя гражданские обязанности через свои органы, действующие в соответствии с законом, иными правовыми актами и учредительными документами.

Согласно п.4.6. Устава торгового дома право заключения договоров принадлежит генеральному директору.

Как видно из материалов дела, договор и передаточные распоряжения от имени торгового дома были подписаны Червинским.

прополож..е решение по ге..тус.
NА22-I222/2000/5-I09 от 22.II.00г.

Между тем,как установлено в судебном заседании не момент заклю-
чения договора (15.01.99г.) и направления передаточных распоряжений
(20.01.00г.) генеральными директорами торгового дома соответственно
Машковцев Н.А. и Халмирзаев С.А.

Как пояснили в судебном заседании представители комбината и тор-
гового дома по отстранению Машковцева от занимаемой должности иные
лица комбината и торгового дома были подписаны неуполномоченными на
то лицами.

Согласно ст.I83 ГК РФ при отсутствии полномочий действовать от
имени другого лица или при превышении таких полномочий сделка счи-
тается заключенной от имени и в интересах совершившего ее лица,
если только другое лицо (представляемый) впоследствии прямо не одоб-
рит данную сделку.

При таких обстоятельствах арбитражный суд находит, что договор
в виду его заключения неуполномоченным на то лицом и неодобрения
его впоследующем ни комбинатом, ни торговым домом не может влечь
для сторон правовых последствий.

Согласно ст.46 ЗО от 08.02.98г. N 14-ЗО "Об обществах с ограни-
ченной ответственностью" крупной сделкой является сделка или нес-
колько взаимосвязанных сделок, связанных с приобретением, отчужде-
нием или возможностью отчуждения обществом прямо или косвенно
имущества, стоимость которого составляет более 25% стоимости иму-
щества общества, определенного на основании отчетности за последний
отчетный период, предшествующий дню принятия решения о совершении
таких сделок.

Как видно из материалов дела, стоимость отчужденных акций соста-
вила 5558847 руб., а стоимость имущества торгового дома - 12285903
руб.

При этом сделка по отчуждению акций комбината не является сдел-
кой, совершенной в процессе обычной хозяйственной деятельности, об-
щества, т.к. торговый дом не является профессиональным участником
рынка ценных бумаг и его уставом не предусмотрено в качестве основ-
ного вида деятельности совершение операций с ценными бумагами.

При таких обстоятельствах арбитражный суд находит, что между
торговым домом и ООО была заключена крупная сделка по отчуждению
акций комбината.

Согласно ст.168 ГК РФ сделка, не соответствующая требованиям
закона или иных правовых актов, ничтожна, если закон не устанавли-
вает, что такая сделка оспорима.

В соответствии с п.3 ст.46 ЗО "Об обществах с ограниченной от-
ветственностью" решение о совершении крупной сделки принимается
общим собранием участников общества. При этом крупная сделка, совер-
шенная с нарушением требований, предусмотренных настоящей статьей,
закона,не может быть признана недействительным по иску общества
или его участника.

Как видно из материалов дела, единственным участником ООО является комбинат.

Однако руководство комбината в порядке ст.39 ФЗ"Об обществах с ограниченной ответственностью" решение о продаже торговым домом вышеуказанных проспектов акций ООО не принимало и впоследующем заключенную торговым домом сделку не одобрило.

Более того, решением Совета директоров комбината от 18.01.99г. была запрещена продажа акций комбината сторонним организациям.

Как установлено в судебном заседании, учредителями ООО является гр-н Бухарин Г.М. и КМПП компания, учредительный договор от имени которой был подписан её полномочным представителем Зановорновым А.В. При этом последний на момент заключения договора купли-продажи от 18.01.99г. являлся членом Совета директоров комбината.

В силу этого, заключая договор купли-продажи акций, ООО должно было знать, что от имени торгового дома договор подписывает неуполномоченное на то лицо и заключается крупная сделка при отсутствии согласия на это его учредителя.

При таких обстоятельствах и учитывая, что балансовая стоимость акций составляет 45% стоимости имущества торгового дома, а сделка по отчуждению акций от его имени заключена неуполномоченным на то лицом и в отсутствии согласия и одобрения учредителя, суд находит, что заключенная сделка по купле-продаже акции комбината является недействительной.

Недействительность сделки по купле-продаже акций влечет за собой и признание недействительными и всех последующих сделок с ними, в т.ч. и перерегистрации акций с торгового дома на ООО.

На основании изложенного, руководствуясь ст.ст.124-127 АПК РФ, арбитражный суд  р е ш и л :

исковые требования ОАО "Качканарский горно-обогатительный комбинат "Ванадий" удовлетворить.

1. Договор купли-продажи №3 от 18.01.99г., заключенный между ООО "Торговый дом ОАО"Ванадий" и ООО "Долипром" признать недействительным.

2. Признать недействительными передаточные распоряжения от 20.01.00г. о списании с лицевого счёта ООО "Торговый дом ОАО"Ванадий" во исполнении договора купли-продажи №3 от 18.01.99г. именных обыкновенных акций ОАО "Качканарский горно-обогатительный комбинат "Ванадий" выпуска №62-1II-290 от 12.07.93г. в кол-ве 9759 шт. и № 62-1-1396 от 12.06.96г. в кол-ве 2298225 шт.

3. Держателю реестра акционеров ОАО "Качканарский горно-обогатительный комбинат "Ванадий" ЗАО "Ведение реестров компаний" восстановить в системе ведения реестра владельцев именных ценных бумаг ОАО "Качканарский горно-обогатительный комбинат "Ванадий" записи о наличии на лицевом счете ООО "Торговый дом ОАО "Ванадий" именных обыкновенных акций ОАО "Качканарский горно-обогатительный комбинат "Ванадий" выпуска № 62-1II-290 от 12.07.93г. в кол-ве 9759 шт. и № 62-1-1396 от 12.06.96г. в кол-ве 2298225 шт.

продолжение решения по делу
№ А22-1222/2000/6-109 от 22.II.С

3.

Взыскать расходы по госпошлине в пользу ОАО "Качканарский горно-обогатительный комбинат "Ванадий" с ООО "Торговый дом ОАО"Ванадий" в размере 834 руб. 90 коп. и ООО "Полипром" — 834 руб. 90 коп.

Выдать исполнительные листы по вступлении решения в законную силу.

Настоящее решение может быть обжаловано сторонами в месячный срок со дня его принятия в апелляционную инстанцию Арбитражного суда РК.

Судья                                        Логинов С.Н.

# EXHIBIT "7"

(3A)

[*Handwritten:*] 1) [*illegible*](In favor)

[*illegible*]

[*National Emblem*]

# FEDERAL COURT OF ARBITRATION OF NORTH CAUCASUS REGION

## RESOLUTION

Regarding the Cassation Court in charge of the Inspection of the Legality and Substantiation of the Enforced Decisions (Resolutions) of the Courts of Arbitration

**City of Krasnodar**          **Entry No. 998/2001**          **April 17, 2001**

Case No. A22-1222/2000-6/109

The Federal Court of Arbitration of the North Caucasus Region comprised of E. I. Afonina, presiding over the Court, and the judges S. M. Iliushnikova and T. A. Spiridenko, in the presence during the court's session of the representatives of Poliprom, Limited Liability Company (OOO Poliprom), V. V. Volnov (pursuant to authorization No. 11/7/-00 dated May 15, 2000), I. A. Kalinin (pursuant to authorization No. 7 dated July 20, 2000), the representative of Torgovyi Dom [House of Commerce] OAO Vanadii, Limited Liability Company (OOO Torgovyi Dom OAO Vanadii), V. A. Plotnikov (pursuant to authorization dated April 9, 2001), the representatives [*sic*] of the closed joint stock company Vedenie reestrov kompanii [Company Register Keeping] (AOZT Vedenie reestrov kompanii), V. Iu. Sumskii-Mironov (pursuant to authorization No. 34/2001 dated April 13, 2001), the representative of the open joint stock company Kachkanarskii Gorno-obogatitelnyi kombinat Vanadii [Vanadii Mining and Milling Complex of Kachkanar] (OAO Kachkanarskii GOK Vanadii), T. A. Zaborodko (pursuant to authorization dated April 9, 2001), upon the review of the cassation appeal of OOO Poliprom regarding the Decision dated November 22, 2000 (Judge S. N. [*illegible*]) of the Court of Arbitration of the Republic of Kalmykia in the matter No. A22-1222/2000-6/109, determined the following:

OAO Vanadii Mining and Milling Complex of Kachkanar has approached the Court of Arbitration with a claim directed towards OAO Vanadii House of Commerce and OOO Poliprom for the invalidation of Purchase and Sales Agreement No. 3 dated January 12, 2000, the invalidation of the transfer orders pursuant to which and in compliance with the agreement that is subject to this dispute the nominal common shares of OAO Vanadii Mining and Milling Complex of Kachkanar were written off from the personal account of the seller, as well as for the renewal in the register of nominal securities of OAO Vanadii Mining and Milling Complex of Kachkanar of the entry regarding the existence of nominal common shares transferred pursuant to the purchase and sales agreement subject to the dispute on the personal account of OOO OAO Vanadii House of Commerce.

In the capacity of a third party without its own claims regarding the matter of the dispute, AOZT Company Register Keeping has also been called.

[*Stamp:*] OAO Vanadii Mining and Milling Complex of Kachkanar

Pursuant to a Decision dated November 22, 2000, the claim actions have been fully satisfied on the basis of the fact that the disputed agreement had been entered into by an unauthorized person in the absence of a following approval of the transaction. In addition, the Court has pointed out that the purchase and sales agreement dated January 18, 1999, constitutes a major transaction; however, in contradiction with the regulations of Article 46 of the Federal Limited Liability Companies Act, a decision for the implementation of the disputed agreement has not been reached by the General Shareholders' Meeting.

The matter has not been reviewed in an appellation procedure.

In its cassation appeal OOO Poliprom asks for the revocation of the November 22, 2000, decision to deny the claim. The appellant refers to the fact that the appellant had not been properly notified about the place and time of the court hearing, which had been in violation of the appellant's right to legal protection, as well as to the non-compliance of the agreement for the purchase and sale of shares presented by the plaintiff with the requirements of Article 60 of the Code of Arbitration Procedure of the Russian Federation (lack of the original agreement in the materials related to this matter); the appellant also deems unsubstantiated the conclusion of the court regarding the performance of the disputed transaction by an unauthorized person and in the absence of a proper approval. In addition, the appellant indicates that the rights to an ownership to the stock subject to the disputed agreement have been acquired by Camble Corporation in connection with which the renewal of the entry on the personal account of OOO Vanadii OAO House of Commerce had been inappropriate and detrimental to the interests of the above person who is a bona fide buyer and must be called as a party to this matter.

Upon reviewing the materials in this matter, the arguments of the cassation appeal and after hearing the representatives of the parties, the Federal Court of Arbitration of the North Caucasus Region is of the opinion that the decision is to be revoked and the matter is to be directed for rehearing for the following reasons:

The Court had heard the case in the absence of the defendant while believing that OOO Poliprom had been properly notified about the time and place of the court hearing and there had been sufficient evidence regarding the positions of the parties.

The materials of the case indeed contain a notice to OOO Poliprom regarding the time of the court hearing, which had been sent to the following address: 14 Radio Street, Bldg. 1, 4th Floor, Suite 1, Room 23, Moscow, which corresponds to the legal address indicated in the founding documents thereof; therefore the appellant's reference to a lack of appropriate notice cannot be accepted by the cassation court.

In addition, the indication of the court regarding the presence in the materials of evidence regarding the positions of the parties that is sufficient for the reaching of a decision, does not correspond to the materials in this matter since OOO Poliprom had not participated in the court hearing and had not presented a withdrawal from its claim. The court had reached a decision on

the basis of the documents presented by the plaintiff and OOO Vanadii OAO House of Commerce, which have recognized the claim actions.

However, the conclusion of the court that OOO Vanadii OAO House of Commerce and OOO Poliprom have entered into a purchase and sale agreement dated January 18, 1999, which constitutes an invalid transaction pursuant to Article 183 of the Civil Code of the Russian Federation and Article 46 of the Federal Limited Liability Companies Act, has been reached based on the insufficiently cleared circumstances of this matter.

The materials in this matter contain an uncertified photocopy of the agreement for the purchase and sale of stock dated January 18, 1999, which has been presented by the plaintiff. In addition, during the session of the cassation court, the representatives of OAO Vanadii Mining and Milling Complex of Kachkanar and of OOO Vanadii OAO House of Commerce explained that they did not have the original of the agreement, while the representatives of OOO Poliprom presented an original of the agreement for the purchase and sale of the stock subject to this dispute dated January 18, 2000, which differs from the photocopy of an agreement dated January 18, 1999, found in the materials of the case not only with respect to the date of signing but with respect to its contents, including in the portion where it indicates the authorities of N. I. Chervinskii, who had signed the agreement on behalf of OOO Vanadii OAO House of Commerce and had acted, as indicated in the agreement, pursuant to the Minutes of the session of the Board of Directors of OAO Vanadii Mining and Milling Complex of Kachkanar of February 11, 1999, and pursuant to the bylaws. In accordance with the excerpt from the Minutes of the Minutes of the session of the Board of Directors of OAO Vanadii Mining and Milling Complex of Kachkanar of February 11, 1999, found in the materials of the case, the General Director of OOO Vanadii OAO House of Commerce, E. A. Mashkovtsev, had been temporarily removed from duty during an audit and N. I. Chervinskii had been appointed Acting General Director. There is no information in the case file regarding the time when the latter had been removed from the position of Acting General Director.

While disputing the conclusion of the court regarding the recognition of the stock purchase and sale agreement as a major transaction, OOO Poliprom refers to the inaccuracy of the data contained in the balance sheet of OOO Vanadii House of Commerce in the portion of the amount of fixed assets of the company as of the moment of the transaction. The file contains a balance sheet of OOO Vanadii House of Commerce which has not been marked as presented to the taxation authorities, which does not allow for reaching a conclusion that the information contained therein is true.

In addition, when granting the request for the renewal in the register of owners of nominal securities of OAO Vanadii Mining and Milling Complex of Kachkanar of the entry regarding the existence, on the personal account of OOO Vanadii OAO House of Commerce, of shares transferred pursuant to the disputed agreement, the court has not requested information from the register of shareholders for the purpose of determination of the persons entered into the register as owners of the disputed shares, as of the time of the matter's hearing. In addition, in its cassation appeal, OOO Poliprom refers to the expropriation of the shares by third parties, which, in the opinion of the former, were bona fide buyers.

Pursuant to Article 29 of the Federal Securities Market Act, an entry into the shareholders' register establishes the ownership right of the person to the appropriate number of shares. Therefore, the request of the plaintiff to renew the entry regarding the existence of the disputed shares on the personal account of OOO Vanadii OAO House of Commerce, in the event that such property is held by third parties that have purchased it pursuant to an agreement with OOO Poliprom, of which the appropriate entry had been made into the register, in essence means a request for the return of the property (Article 302 of the Civil Code of the Russian Federation). In connection with the above, the persons whose names appeared in the shareholders' register of OAO Vanadii Mining and Milling Complex of Kachkanar as owners of the disputed shares at the time of the hearing of the dispute, have to be called as parties in the matter since the request for the renewal of the previous entry in the register will affect their rights and legal interests.

In light of the fact that the circumstances listed above, the arguments of OOO Poliprom and the documents presented to the cassation court that are of significance for the matter had not been examined and have not been evaluated by the lower court, the decision subject to this appeal is to be revoked and the matter is to be directed for a new hearing.

During the new hearing of the matter, the court must demand from the parties the original of the purchase and sale agreement, the balance sheet of OOO Vanadii OAO House of Commerce marked for presentation before the taxation authorities, and information as to when N. I. Chervinskii has been removed from the position of Acting General Director of OOO Vanadii OAO House of Commerce, as well as to call all interested parties, and, in consideration of the above, to resolve the dispute in essence.

Considering the above and pursuant to Articles 171, and 174 – 177 of the Code of Arbitration Procedure of the Russian Federation, the Federal Court of Arbitration of the North Caucasus Region hereby

**RESOLVED:**

To revoke the decision of the Court of Arbitration of the Republic of Kalmykia dated November 22, 2000, in matter No. A22-1222/2000-6/109 and to submit the matter for rehearing by the lower court.

This Resolution shall become effective as of the moment of its signing and shall not be subject to appeal.

Chair:          E. I. Afonina

Judges:          [*illegible*]

# ФЕДЕРАЛЬНЫЙ АРБИТРАЖНЫЙ СУД СЕВЕРО-КАВКАЗСКОГО ОКРУГА

## ПОСТАНОВЛЕНИЕ

кассационной инстанции по проверке законности
и обоснованности решений (постановлений)
арбитражных судов, вступивших в законную силу

г. Краснодар    Вх. Ф08   998/2001    17 апреля 2001 года

Дело N А22-1322/2000-6/109

Федеральный    арбитражный    суд    Северо-Кавказского    округа    в    составе
председательствующего Афониной Е.И., судей Извошникова С.М и Спириденко Т.А., при
участии в судебном заседании представителей общества с ограниченной ответственностью
«Полипром» (ООО «Полипром») Вольнова В.В. (по доверенности №11/7-00 от 15.05.2000,
Калинина И.А (по доверенности    №7 от 20.07.2000), представителя общества с
ограниченной ответственностью «Торговый дом ОАО «Ванадий» (ООО «Торговый дом ОАО
«Ванадий») Плотникова В.А. (по доверенности от 09.04.2001), представителей акционерного
общества закрытого типа    «Ведение реестра компаний» (АОЗТ «Ведение реестров
компаний») Сумского-Миронова В.Ю (по доверенности №34/2001 от 13.04.2001),
представителя открытого акционерного общества «Качканарский горно-обогатительный
комбинат «Ванадий» (ОАО «Качканарский ГОК «Ванадий») Забородько Т.А (по
доверенности от 09.04.2001), рассмотрел кассационную жалобу ООО «Полипром» на
решение от 22.11.2000 (судья Гогинов С.Н.) Арбитражного суда Республики Калмыкия делу
№ А22-1322/2000-6/109, установил следующее.

ОАО «Качканарский ГОК «Ванадий» обратился в арбитражный суд с иском к ООО
«Торговый дом ОАО «Ванадий» и ООО «Полипром» о признании недействительным
договора купли-продажи акций №3 от 13.01.99, о признании недействительными
передаточных распоряжений, на основании которых во исполнение оспариваемого договора
с лицевого счета продавца были списаны именные обыкновенные акции ОАО
«Качканарский ГОК «Ванадий», а также о восстановлении в реестре владельцев именных
ценных бумаг ОАО «Качканарский ГОК «Ванадий» записи о наличии на лицевом счете ООО
«Торговый дом ОАО «Ванадий» именных обыкновенных акций, переданных по
оспариваемому договору купли-продажи.

В качестве третьего лица, не заявляющего самостоятельных требований на предмет
спора, привлечено АОЗТ «Ведение реестров компаний».

Решением   {   22.11.2000   исковые требования {   полстье удовлетворены на том основании, что оспариваемый договор заключен неуполномоченным лицом и отсутствие последующего одобрения сделки. Кроме того, суд указал, что договор купли-продажи от 18.01.99   является крупной сделкой, однако в нарушение норы статьи 46 Федерального закона «Об обществах с ограниченной ответственностью»   решение о   совершении оспариваемого договора общим собранием акционеров общества не принималось.

В апелляционном порядке дело не пересматривалось.

В кассационной жалобе ООО «Полипром» просит отменить решение от 22.11.2000, в иске отказать. Заявитель жалобы ссылается на то, что он не был надлежащим образом извещен о месте и времени судебного заседания, чем было нарушено его право на судебную защиту, на несоответствие представленного истцом   договора купли-продажи акций требованиям статьи 60 Арбитражного процессуального кодекса Российской Федерации (отсутствие в материалах дела подлинного договора), полагает необоснованным вывод суда о совершении оспариваемой сделки неуполномоченным лицом и в отсутствие надлежащего одобрения . Кроме того, заявитель указывает, что право собственности на акции, являющиеся предметом оспариваемого договора,   приобрела Компания «Кэмбл корпорэйшн», в связи с чем восстановление записи на лицевом счете ООО «Торговый дом ОАО «Ванадий» произведено неправомерно, затрагивает интересы указанного лица, которое является добросовестным приобретателем и должно быть привлечено к участию в деле.

Федеральный арбитражный суд Северо-Кавказского округа, изучив материалы дела, доводы кассационной жалобы и выслушав представителей сторон, считает, что решение подлежит отмене, а дело направлению на новое рассмотрение по следующим основаниям.

Суд рассмотрел дело в отсутствие ответчика, считая, что ООО «Полипром» был надлежаще извещен о времени и месте судебного заседания и имеется достаточно данных, свидетельствующих о позиции сторон.

В материалах дела действительно имеется уведомление ООО «Полипром» о времени судебного заседания, направленное по адресу: г. Москва, ул. Радио,14, стр.1, этаж 4, помещение 1, комната 23, что соответствует юридическому адресу, указанному в его учредительных документах, поэтому ссылка заявителя жалобы на отсутствие надлежащего уведомления, не может быть принята кассационной инстанцией.

Вместе с тем указание суда о наличии в деле данных, свидетельствующих о позиции сторон и достаточных для принятия решения, не соответствует материалам дела, поскольку ООО «Полипром» в судебном заседании не участвовало и отзыв на исковое заявление им не представлялся . Суд принял решение на основании документов, представленных истцом и ООО «Торговый дом ОАО «Ванадий», признавшим исковые требования

Однако вывод суда о том, что ООО «Торговый дом ОАО «Ванадий» и ООО «Полипром» заключен договор купли-продажи акций от 18.01.99, который является недействительной сделкой на основании статьи 183 Гражданского кодекса Российской Федерации и статьи 46 Федерального закона «Об обществах с ограниченной ответственностью» сделан по недостаточно выясненным обстоятельствам дела.

В материалах дела истцом представлена не заверенная ксерокопия договора купли-продажи акций от 18.01.99. При этом в заседании кассационной инстанции представители ОАО «Качканарский ГОК «Ванадий» и ООО «Торговый дом ОАО «Ванадий» пояснили, что подлинный договор у них отсутствует, в то же время представители ООО «Полипром» представили подлинник договора купли-продажи спорных акций от 18.01.2000, отличный от имеющейся в материалах дела ксерокопии договора от 18.01.99 не только датой заключения, но и содержанием, в том числе в части указания на полномочия Червинского Н.И., подписавшего договор со стороны ООО «Торговый дом ОАО «Ванадий» и действующего, как указано в договоре, на основании протокола заседания совета директоров ОАО «Качканарский ГОК «Ванадий» от 11 февраля 1999 года и устава. В соответствии с имеющейся в материалах дела выпиской из протокола заседания совета директоров ОАО «Качканарский ГОК «Ванадий» от 11 февраля 1999 года генеральный директор ООО «Торговый дом «Ванадий» Машковцев Е.А. был временно отстранен от должности на время проведения ревизии, временно исполняющим обязанности генерального директора ООО «Торговый дом «Ванадий» назначен Червинский Н.И. Сведения о том, когда последний был отстранен от исполнения обязанностей генерального директора в материалы дела не представлены.

Оспаривая вывод суда о признании договора купли-продажи акций крупной сделкой, ООО «Полипром» ссылается на неточность данных бухгалтерского баланса ООО «Торговый дом «Ванадий» в части величины активов имущества общества на момент заключения сделки. В деле имеется баланс ООО «Торговый дом «Ванадий», в котором отсутствуют отметки о представлении его в налоговые органы, что не позволяет сделать вывод о достоверности содержащихся в нем сведений.

Кроме того, удовлетворяя требование о восстановлении в реестре владельцев именных ценных бумаг ОАО «Качканарский ГОК «Ванадий» записи о наличии на лицевом счете ООО «Торговый дом ОАО «Ванадий» акций, переданных по оспариваемому договору, суд не истребовал данные реестра акционеров с целью установления лиц, значащихся в реестре в качестве владельцев спорных акций на момент рассмотрения спора. Вместе с тем в кассационной жалобе ООО «Полипром» ссылается на отчуждение акций третьим лицам, которые по его мнению, являются добросовестными приобретателями.

Согласно статье 29 Федерального закона «О рынке ценных бумаг» запись в реестре акционеров фиксирует право собственности лица на соответствующее количество акций. Поэтому требование истца о восстановлении записи о наличии на лицевом счете ООО «Торговый дом ОАО «Ванадий» спорных акций, в случае если это имущество находится у третьих лиц, которые приобрели его по договору с ООО «Полипром», о чем в реестр внесена соответствующая запись, по существу означает требование о возврате имущества (статья 302 Гражданского кодекса Российской Федерации). В связи с этим лица, числящиеся на момент рассмотрения спора в реестре акционеров ОАО «Качканарский ГОК «Ванадий» в качестве владельцев спорных акций, должны быть привлечены к участию в деле, поскольку требование о восстановлении в реестре прежней записи затрагивает их права и законные интересы.

Поскольку перечисленные обстоятельства, доводы ООО «Полипром» и представленные в кассационную инстанцию документы, имеющие существенное значение для дела, не были предметом изучения суда первой инстанции и им не дано оценки, обжалуемое решение подлежит отмене, а дело – направлению на новое рассмотрение.

При новом рассмотрении дела суду необходимо истребовать у сторон подлинный договор купли-продажи акций, баланс ООО «Торговый дом ОАО «Ванадий» с отметкой о представлении его в налоговые органы, сведения о том, когда Червинский Н.И. был отстранен от должности исполняющего обязанности генерального директора ООО «Торговый дом ОАО «Ванадий», привлечь к участию всех заинтересованных лиц и с учетом этого разрешить спор по существу.

Учитывая изложенное, руководствуясь статьями 171, 174-177 Арбитражного процессуального кодекса Российской Федерации, Федеральный арбитражный суд Северо-Кавказского округа

ПОСТАНОВИЛ:

решение Арбитражного суда Республики Калмыкия от 22.11.2000 по делу №А22-1222/2000-6/109 отменить, дело передать на новое рассмотрение в суд первой инстанции.

Постановление вступает в законную силу с момента его принятия и обжалованию не подлежит

Председательствующий                                                              Е.И. Афонина

Судьи

# EXHIBIT "8"

To the arbitrazh court of the Republic of Kalmykia
Federal Judge Dzhambinova
Address: Elista, 9 Pushkina St.

Docket # A22-1222/2000/6-109

Copy to: Prosecutor of the Republic of Kalmykia

## WITNESS STATEMENT
In order of Article 44 of the Arbitrazh Procedural Code of the Russian Federation

On June 18, 2001 the Arbitrazh Court of Republic of Kalmykia issued an order "On engagement of a citizen Chervinskiy N.I. as a witness in the arbitrazh case # A22-1222/2000/6-109".

I, Chervinskiy Nikita Ilyich, Russian Federation passport 45 00 672611 issued on March 29, 2001 by OVD Moskvorechie-Saburovo of Moscow (in exchange of the USSR passport 11-MYu # 745425), residing: Moscow 11 Proletarskiy Ave., Apt 37,
**having reviewed**:
-        the complaint of OJSC Kachkanar ore mining and processing plant Vanadiy against LLC Trading House OJSC Vanadiy and LLC Poliprom requesting to invalidate the agreement # 3 of January 18, 1999 for sale and purchase of securities, to invalidate transfer orders to reregister 2,307,984 shares of OJSC Kachkanar ore mining and processing plant Vanadiy for the total amount of 5,558,847 rubles from the account of LLC Trading House OJSC Vanadiy to the account of LLC Poliprom and to restore the information on the account of LLC Trading House OJSC Vanadiy,
-        The decision of the Arbitrazh court of the Kalmykia republic of November 22, 2000 in the case # # A22-1222/2000/6-109,
-        The decision of the cassation instance of Federal Arbitrazh Court of North-Caucasus District of April 17, 2001 in the same case,
in the presence if the notary, Yakusheva L.I. with my own hand wrote the following witness statement with regard to circumstances of the case # A22-1222/2000/6-109 I have a personal knowledge about.
**The notary Yakusheva L.I. explained to me responsibilities of a witness indicated in Article 44 of the Arbitrazh Procedural Code of the Russian Federation. I was also explained about the liability with respect to deliberately false testimony pursuant to Article 308 of the Criminal Code of the Russian Federation.**

By the decision of the Board of Directors of OJSC Kachkanar ore mining and processing plant Vanadiy of February 11, 1999 I was appointed as Acting Director General of LLC Trading House OJSC Vanadiy. At the same time Mashkovtsev Evgeniy Aleksandrovich was removed from the position of Director General of LLC Trading House OJSC Vanadiy. Later on, pursuant to Order #29 of July 12,1999, Mashkovtsev E.A. was fired on his own initiative on the basis of his personal written request.

My authorities as Director General of LLC Trading House OJSC Vanadiy were terminated on January 29, 2000 on the basis of the order # 19, of OJSC Kachkanar ore mining and processing plant Vanadiy dated January 29, 2000. Therefore I was performing administration and organizational functions as the Director General of LLC Trading House OJSC Vanadiy from February 11, 1999 until January 29, 2000.

Neither the Director General nor the Board of Directors of OJSC Kachkanar ore mining and processing plant Vanadiy informed me that I occupied the above position on the temporary basis, i.e. for the period of auditing inspection of LLC Trading House OJSC Vanadiy. Within the above period of time nobody contested my authorities as Director General of LLC Trading House OJSC Vanadiy. As a Director General of LLC Trading House OJSC Vanadiy I was signing orders, issuing powers of attorney, signing reports for tax authorities at the place of registration of LLC Trading House OJSC Vanadiy, concluding agreements, and carrying out other responsibilities peculiar to the position of the Director General.

In 1999 the inventory of previous financial and economical activity of LLC Trading House OJSC Vanadiy took place. The results of the inventory indicated that some of LLC Trading House OJSC Vanadiy's assets, namely 4,615,968 shares of OJSC Kachkanar ore mining and processing plant Vanadiy from the first and the second issues for the total amount of 11,800,000 rubles, were illegally expropriated.

OJSC Kachkanar ore mining and processing plant Vanadiy, the only founder of LLC Trading House OJSC Vanadiy, filed a complaint with the Arbitrazh Court of the Republic of Kalmykia with respect to the fact of illegal expropriation of assets of its subsidiary company, LLC Trading House OJSC Vanadiy. In its complaint OJSC Kachkanar ore mining and processing plant Vanadiy requested to invalidate the transactions with regard to expropriation of the above assets and to return assets in ownership of LLC Trading House OJSC Vanadiy.

On the basis of the decision of the Arbitrazh Court of the Republic of Kalmykia of December 7, 1999 in the case # A22-1222/2000/6-109 that became affective, and the writ of execution issued by the above court, part of illegally expropriated property, namely 2,307,984 shares of OJSC Kachkanar ore mining and processing plant Vanadiy from the first and the second issues, were recovered from CJSC Trading House Altaishina in favor of LLC Trading House OJSC Vanadiy. In connection with this decision on January 18, 2000 the respective record was made in the register of shareholders of OJSC Kachkanar ore mining and processing plant Vanadiy on the account of LLC Trading House OJSC Vanadiy.

In January 2000 Khaidarov D.A., the Director General of OJSC Kachkanar ore mining and processing plant Vanadiy ordered me to sell the above shares and to lend the received money to OJSC Kachkanar ore mining and processing plant Vanadiy as a loan for enlargement of liquid assets. Pursuant to provisions of the Charter of LLC Trading House OJSC Vanadiy, orders of the executive body (Director General or Board of Directors) of the only founder - OJSC Kachkanar ore mining and processing plant Vanadiy are obligatory for LLC Trading House OJSC Vanadiy.

Acting on the basis of the above order, on January 18, 2000 I sold 2,307,984 shares of OJSC Kachkanar ore mining and processing plant Vanadiy from the first and the second issues for the total amount of 5,558,847 rubles to LLC Poliprom on the basis of the agreement # 3. as a payment upon the above transaction, LLC Poliprom

transferred 12 ordinary promissory notes of the Savings Bank of the Russian Federation for the total amount of 5,558,847 rubles.

Pursuant to the loan agreement of January 20, 2000, the lender - LLC Trading House OJSC Vanadiy provided to the borrower - OJSC Kachkanar ore mining and processing plant Vanadiy no interest loan for the amount of 5,558,847 rubles in a form of 12 promissory notes. The transfer of the notes is confirmed by the report on conveyance-acceptance of promissory notes of January 20, 2000.

I also know that OJSC Kachkanar ore mining and processing plant Vanadiy did not insert information about 12 ordinary promissory notes of the Savings Bank of the Russian Federation for the total amount of 5,558,847 rubles in the accounting documentation, and later on, these notes were stolen.

**I believe that the plaintiff filed the complaint with regard to return of property of its subsidiary, the company LLC Trading House OJSC Vanadiy, for the purpose of unjust enrichment (receipt of double profits) and in order to conceal the fact of stealing of the above notes.** On the basis of the above I request the court to issue special order with regard to violation of a law and send to the Sverdlovsk Region prosecutors office, i.e. the prosecutors office at the place of the crime.

I also inform the court that I'm not and have never been a person interested in conclusion of agreement on sale and purchase of securities # 3 of January 18, 2000.

I'm not and have never been an affiliated person of either LLC Poliprom or OJSC Kachkanar ore mining and processing plant Vanadiy. Neither me, nor my closest relatives are founders of LLC Poliprom and have never been such. Neither me, nor my closest relatives are carrying out organizational an administrative functions in LLC Poliprom or are employed with LLC Poliprom and have never been.

Therefore, the assertion of the plaintiff stating that I am an affiliated person of LLC Poliprom and was acting in favor of this company is false. The plaintiff made such assertion in order to mislead the court.

The decision of the Arbitrazh Court of the Republic of Kalmykia of December 7, 1999 in the case # A22-1222/2000/6-109 indicated that the total amount of both invalidated transactions regarding LLC Trading House OJSC Vanadiy's sale of 2,307,984 the first and the second issue shares of OJSC Kachkanar ore mining and processing plant Vanadiy for the total amount of 5,900,000 rubles to LLC Inrosmet and the sale of 2,307,984 the first and the second issue shares of OJSC Kachkanar ore mining and processing plant Vanadiy for the total amount of 5,900,000 rubles to CJSC Trading House Altaishina constitutes 41,38 % of the total cost of assets of LLC Trading House OJSC Vanadiy. All the evidence regarding the amount of the two mentioned interrelated transactions with regard to cost of assets of LLC Trading House OJSC Vanadiy can be found in the record of the case # A22-1222/2000/6-109. The decision in this case, in part of invalidation of two interrelated transactions (taking into account the fact that the amount of two interrelated transactions constituted 41,38 % from the cost of assets of LLC Trading House OJSC Vanadiy) was affirmed by the decision of the Federal Arbitrazh Court of North-Caucasus District.

**Within the period of time between December 7, 1999 and January 18, 2000 the cost of the LLC Trading House OJSC Vanadiy's assets did not reduced. Within the period when I occupied a position of a Director General of LLC Trading House OJSC Vanadiy the Board of Directors of OJSC Kachkanar ore mining and**

**processing plant Vanadiy made no decisions reducing the cost of assets of LLC Trading House OJSC Vanadiy.**

Therefore, the cost of the property expropriated pursuant to the agreement # 3 of January 18, 2000 for sale and purchase of 2,307,984 shares of OJSC Kachkanar ore mining and processing plant Vanadiy from the first and the second issues for the total amount of 5,558,847 rubles constitutes **20,69 %** of the cost of assets of LLC Trading House OJSC Vanadiy.

**Besides, the above transaction was concluded for the benefit of the borrower, the OJSC Kachkanar ore mining and processing plant Vanadiy, and at no degree violated lawful rights and interests of OJSC Kachkanar ore mining and processing plant Vanadiy as the only founder of LLC Trading House OJSC Vanadiy.**

I also inform the court that on January 18, 1999 I made and signed no agreement # 3 for sale and purchase of securities, notarized copy of which was produced in the court by the plaintiff.

**I know nothing about origin of the above document.**

I believe that the above document – the Agreement # 3 for sale and purchase of securities dated January 18, 1999 between LLC Trading House OJSC Vanadiy and LLC Poliprom was forged by the plaintiff in order to falsify the evidence in the civil case and to mislead the court. **I declare to the court that I did not execute the signature of Acting Director General Chervinskiy N. I. on the following document: Agreement # 3 dated January 18, 1999 for sale and purchase of 2,037,984 shares of OJSC Kachkanar ore mining and processing plant Vanadiy for the amount of 5,558,847 rubles concluded between LLC Trading House OJSC Vanadiy and LLC Poliprom. The signature was counterfeited by unknown to me person.**

On the basis of evidence produced by the plaintiff, OJSC Kachkanar ore mining and processing plant Vanadiy, including forged agreement # 3 of January 18, 1999 for sale and purchase of securities, the Arbitrazh Court of republic of Kalmykia made the decision of November 22, 2000 in the case # A22-1222/2000/6-109, which became effective.

Actions of the plaintiff, who presented in the Arbitrazh Court of Republic of Kalmykia falsified agreement # 3 of January 18, 1999 for sale and purchase of securities, shall be qualified as a crime as provided by Article 303(1) of the Criminal Code of the Russian Federation – falsification of evidence in the civil case.

On the above grounds I request the court to issue an order regarding conduction of an expert examination of authenticity of the signature of Acting Director General Chervinskiy N. I. in the agreement # 3 of January 18, 1999.

Also with regard to the fact of provision by the plaintiff of falsified evidence to the court I request the Court to issue a special order and send it to the prosecutors office of the republic of Kalmykia, i. m. the prosecutors office at the place of the crime as prescribed by Article 109 of the Criminal Procedural Code of RSFSR.

Also I request the Court to attach the following documents, which can play an important role when the court makes a new decision, to the record of the case # A22-1222/2000/6-109:

   1.   Agreement # 3 of January 18, 2000 for sale and purchase of securities on three pages, notarized copy.

2.  Report on acceptance-conveyance of promissory notes of January 19, 2000 to the Agreement # 3 of January 18, 2000 for sale and purchase of securities, notarized copy.

3.  Loan agreement of January 20, 2000 on two pages, notarized copy.

4.  Report on acceptance-conveyance of promissory notes of January 20, 2000 to the Loan agreement of January 20, 2000, notarized copy.

5.  Excerpt from the minutes of the meeting of the Board of Directors of OJSC Kachkanar ore mining and processing plant Vanadiy of February 11, 1999, ordinary copy.

6.  Order # 19 of January 1999, 2000 "On replacement of the manager of the subsidiary company, LLC Trading House OJSC Vanadiy, ordinary copy.

7.  Order 3 89 of June 12, 1999 with regard to personnel, ordinary copy.

The present witness statement was written with my own hand and signed in the presence of the notary Yakusheva L.I.

I hand the present witness statement together with the above mentioned attachments over to my representative Volnov V.V. for the presentation in the Arbitrazh Court of the Republic of Kalmykia.

Moscow
July nineteen, two thousand and one

In handwriting: Chervinskiy Nikita Ilyich     [signed]

| On July 19, 2001 I, Yakusheva Lyubov Ivanovna, a notary of the city of Moscow verified the authenticity of the signature of Chervinskiy Nikita Ilyich executed in my presence. The identity of the signatory is established.<br>Registered in the register under # 49-96<br>Recovered 150 rub.<br>Notary: signed | Notary of the city of Moscow Yakusheva Lyubov Ivanovna 1 Luganskaya st. office 137 Tel: 322-81-17 License # 000424 of May 12, 1994 |
| --- | --- |

[seal]