UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

BASE METAL TRADING, SA, et al.,                             :

                Plaintiffs,                :       Docket No. 00 CIV. 9627 (JGK)

      -against-                                  :

RUSSIAN ALUMINUM, et al.,                                   :

                Defendants.                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## **Declaration and Exhibits of Marina Ashikmina**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____

**BASE METAL TRADING SA et al**  **Docket No. 00 Civ. 9627**

**Plaintiffs**

**v.**

**RUSSIAN ALUMINUM et al.**

**Defendants**

_____

## DECLARATION OF MARINA ASHIKHMINA

I, Marina Ashikhmina, pursuant to the provisions of 28 U.S.C. §1746, herby declare as follows:

1.      I am a citizen of Russia.  I am an attorney duly qualified to practice law in Russia. I submit this declaration to explain certain events surrounding (a) the sham and intentional nature of the bankruptcy proceedings against Kachkanarsky Ore Mining Plant "Vanadium" ("GOK"), and (b) the fraudulent misappropriation of the shares of Foston Management Limited ("Foston") in GOK. Pursuant to a General Power of Attorney, I was authorized to represent the interests of several GOK shareholders, including Foston, and several creditors, including Nexis Products LLC ("Nexis Products"), in various matters.

### SHAM BANKRUPTCY
### Background

2.      On March 30, 2000, the Sverdlovsk Arbitrazh Court initiated bankruptcy proceedings against GOK pursuant to the complaint filed by the electric energy supply company "Krasnouralskmezhraygaz" ("Krasgaz").

3.      I represented the interests of several GOK creditors during the relevant time.  As evidenced by the actions of Kozitsin, the acting General Director of GOK, Kozyrev, the temporary manager, and the Arbitrazh Court of the Sverdlovsk Region, all three pursued the same goal: to put GOK into bankruptcy by all means -- notwithstanding the opportunities to avoid it -- to introduce external management in GOK, and thus exclude the shareholders from control over the plant.

4.      It is clear to me from the events described in the present declaration that the Sverdlovsk Arbitrazh Court ignored Kozitsin's and Kozyrev's blatant violations of the law, and lent its full support to their actions, regardless of their legality.

**Violations of Law in Setting the Date of the August 22, 2000 Hearing**

5.      A GOK creditor, Nexis Products was owed $7 million pursuant to Loan Agreement No. SWER/07-99 dated July 13, 1999.  Although Nexis Products was aware that the Arbitrazh Court had scheduled a hearing for September 27, 2000, Nexis Products was not notified by the Court that the hearing was changed from September 27, 2000 to August 22, 2000. For this reason, Nexis Products did not participate in the hearing on August 22, 2000, which prevented it from objecting to the introduction of external management at GOK.  It also prevented Nexis Products from being able to establish its claim against GOK and thus to acquire standing to participate at the hearing.

6.      I was present at the August 22 hearing, having learned about it two days earlier in my capacity as the attorney for certain shareholders.  There, I witnessed multiple violations of law.

2

7.      First, several creditors, including Leneks, OOO Nexis, Northwest Systems,  and Stalkomplekt, raised the issue of the sham nature of the bankruptcy based upon the chain of transactions that resulted in an artificial inflation of GOK's debt and its accumulation in the hands of a small company called Lebaut.  The creditors underscored the sham nature of the Lebaut transaction (this transaction is described in greater detail in the declaration of Zanadvorov). The court not only ignored these arguments, but also failed to reflect them in the minutes of the hearing. (Exhibit 26)

8.      In addition, Leneks pointed out that certain transactions in this chain violated provisions of Russian law, which proscribe the pursuit of  "interested" transactions.  Again, the court failed to reflect this argument in the minutes of the hearing. (Exhibit 26)

9.      Further during the hearing, I introduced Mr. Joseph Traum, a shareholders' representative, and asked the court to grant permission for Mr. Traum to make a statement.  The judge allowed Mr. Traum to make a statement, who went on to explain that in order to wind up the bankruptcy proceedings against GOK, he was prepared to pay off the GOK debt to Krasgaz and to its other legal creditors.  Mr. Traum also stated that Kozitsin had failed to inform the shareholders of the initial correspondence with Krasgaz.

10.      The judge ignored Mr. Traum's statements:  she failed to ask any questions or to make any comments.  Further, neither the presence of Mr. Traum at the hearing nor his statement to the Court was made part of the record.  Despite the offer of the shareholders to save GOK from bankruptcy, the Court appointed an external manager, which resulted in the shareholders' loss of control over the plant.

HFNWK1: #38235 v.1 #06141-0001 09/15/2002

**Nexis Products' Argument Concerning**
**the Invalidity of the Lebaut and Sirius Claims**

11.     Subsequently, Nexis Products pursued its attempts to exclude the claims of

Lebaut and its assignee, Sirius, from the claims' register.  I was the attorney for Nexis Products

in the court proceedings which I describe below, and was acting on the basis of the General

Power of Attorney issued on November 15, 2000.  (Exhibit 27)

12.     Nexis Products argued the invalidity of the Lebaut transactions on the ground that

they violated various provisions of Russian law, which require Board approval prior to the

issuance of promissory notes, such as those which were eventually assigned to Lebaut.

Notwithstanding the clear impropriety of the transaction, in its Order of February 19, 2001, the

Sverdlovsk Arbitrazh Court denied Nexis Products' claims, failing even to address the applicable

law.  (Exhibit 28)

13.     On March 28, 2001, Nexis Products raised similar objections in connection with

Kozyrev's decision to include Sirius, an assignee of Lebaut, in the list of the creditors.  Nexis

Products also objected to the Lebaut transactions on the ground that they violated the law

regulating the order of entering into "large" transactions.  (Exhibit 29)  But, once again, the

Sverdlovsk Arbitrazh court, in its order of April 18, 2001, denied Nexis Products' claim without

addressing these issues. (Exhibit 30)

14.     Nexis Products raised the issue again on April 19, 2001 in the hearing before the

Appellate Instance of Sverdlovsk Arbitrazh concerning the February 19, 2001 decision.  (Exhibit

31)  Although the Appellate Instance finally looked into the issue of these large scale

transactions, it came to the legally untenable conclusion that a set of interrelated transactions for

alienation of promissory notes does not constitute a set of transactions within the meaning of the

law governing such transactions.  (Exhibit 32)  Moreover, the court reached the equally absurd

4

conclusion that the issuance of notes does not amount to the placing of securities for which

Board approval is required pursuant to Article 65 of the Corporate Act.  (Exhibit 25)

15.     On May 8, 2001 Nexis Products filed a cassation appeal of the decision of April

19, 2001 with the Federal Arbitrazh Court of the Ural District, which was dismissed on

procedural grounds on July 12, 2001.  (Exhibits 33, 34)  The basis for the dismissal was the

court's finding that I was not authorized to act on behalf of Nexis Products because the General

Power of Attorney issued in my name did not carry the apostille.  In fact, the documents did have

an apostille; however, the apostille was attached to the affidavit attesting that the Power of

Attorney in my name was a true and correct original, and not directly to the Power of Attorney.

16.     Further, and as I myself pointed out to the court, there was a misprint in the date

of the affidavit attesting to the validity of the Power of Attorney, which mistakenly carried the

month of September instead of the correct one, November.  The misprint was so apparent that no

one ever had questioned the validity of this Power of Attorney as confirmation of my authority to

act on behalf of Nexis Products.  However, looking for an excuse to dismiss the appeal, the

Federal Arbitrazh Court for the Ural District chose a hypertechnical approach and viewed the

document as if no apostille was in place at all.

## Challenging the Validity of the Settlement Agreement

17.     At the March 11, 2001 meeting, the creditors of GOK approved the Settlement

Agreement, which was made possible with the support of the Lebaut and Sirius votes, whose

illegal claims amounted to 65 percent of the total debt.  (Exhibit 35)  On April 19, 2001, the

Sverdlovsk Arbitrazh Court affirmed the Settlement Agreement, which ended the bankruptcy

proceedings against GOK.  (Exhibit 36)

5

18.     Nexis Products did not vote for the approval of the Settlement Agreement because, as previously described, it opposed the inclusion of Lebaut and Sirius in the list of creditors.  On May 29, 2001, Nexis Products filed a claim with the Appellate Instance of the Sverdlovsk Arbitrazh Court, appealing the April 19, 2001 decision, which had affirmed the Settlement Agreement.  (Exhibit 37)

19.     The court heard the appeal on June 27, 2001 but did not even address the arguments raised by Nexis Products.  Instead, the court dismissed the appeal on the technical grounds discussed in paragraphs 15 and 16 above.  (Exhibit 38)  It is noteworthy that in the past, the Sverdlovsk Arbitrazh Court had never doubted my authority to act on behalf of Nexis Products and always accepted this very document as the confirmation of such authority.

20.     In the cassation appeal of the June 27, 2001 decision, heard by the Federal Aribitrazh Court for the Ural District on August 21, 2001, the Court also did not address the merits of the case and dismissed the appeal on the grounds that the Court "received no proof of authority to sign appeals of judicial acts by the representatives."  (Exhibit 39)

21.     On October 9, 2001, I filed a cassation appeal of the August 21, 2001 dismissal, but it was dismissed on the same grounds on October 29, 2001.  (Exhibit 40)

## FRADULENT MISAPPROPRIATION OF THE SHARES OF FOSTON MANAGEMENT IN GOK

### Background

22.     From November 1, 2000 until the present, I have been representing Foston in a number of matters according to a General Power of Attorney.  Among other things, and in accordance with the Power of Attorney dated October 1, 2001, I was authorized by Foston to

request and receive from GOK's registrar information regarding Foston's shares in GOK.
(Exhibit 22)

### Discovery of the Fraudulent Transfer

23.     As of September 25, 2000, Foston owned 37,779,600 of GOK shares, or 19,7 percent of the total outstanding shares.  (Exhibit 1)  On November 22, 2000, I sought to verify the status of Foston's account with AOZT VRK ("VRK"), which was the entity that maintained the shares' register for GOK.

24.     In response to my request, on December 14, 2000, I received from VRK an extract/certificate attesting to the activities on Foston's account with VRK from October 3, 2000 until December 7, 2000.  Incredibly, this certificate showed that virtually all of Foston's shares -- 37, 715,167 of them -- were removed from Foston's account, purportedly pursuant to a court execution sheet dated October 10, 2000.  (Exhibit 2)  This was the first time that Foston had learned of the theft of its shares.

25.     Although VRK provided me with the above-mentioned certificate, it did not give any details concerning the court decision, including the identity of the court, when the decision was rendered, or the parties to the action.  The following day, I contacted VRK and asked for clarification of these issues.

26.     On  December 28, 2000, VRK informed me that the shares were removed from Foston's account pursuant to the decision of the Solntsevo Intermunicipal Court of the City of Moscow ("Solntsevo Court"), dated September 29, 2000.

HFNWK1: #38235 v.1 #06141-0001 09/15/2002

**The Stolen Court Records**

27.     A short time later, Foston, together with other GOK shareholders whose rights had been violated, filed repeated complaints with the Federal Securities Commission.  The last complaint that was filed alleged that VRK violated the law by transferring Foston's shares without giving Foston prior notice.  (Exhibit 19)

28.     The response from the Deputy Chairman of the Federal Securities Commission, dated January 15, 2001, stated that the shares were written off pursuant to a decision of the Solnsevo Court.  (Exhibit 20)  A copy of the Decision in the Case No. 2-2747/2000 was attached to the Commission's response.  (Exhibit 3)  The decision did not identify an attorney representing Foston at the hearing, which is contrary to the standard procedure of the Russian courts.

29.     According to this decision, 37,715,167 shares were transferred from Foston's account to OAO Nizhnetagilsky Metallurgical Combine ("NTMC"), OOO Inrosmet, and ZAO Standard Trust.  It is well known that NTMC is controlled by Iskander Makmudov.

30.     Having obtained a copy of the decision, I, on Foston's behalf, applied to the Solntsevo Court to obtain information on the case.  The court clerk informed me that the Court could not provide me with the case materials because they were missing from the court files.

31.     The only two documents that remained on file were (a) a copy of the purported demand from the Supreme Court of the Russian Federation requesting that the file be sent to it, and (b) a letter by a Mr. Kurkin in which Kurkin stated that the materials requested by the Supreme Court had been given to him.  (Exhibits 4, 5)  Interestingly, the Supreme Court's demand for the court file was dated November 23, 2000, one day after Foston first asked VRK to verify its account.

32.     After I learned of this, Mr. Polyakevich, an attorney, who also acted under the power of attorney, at my request sent a copy of the above-mentioned demand of November 23, 2000 to the Supreme Court of the Russian Federation together with an inquiry about its request for the court file.  In response, the Supreme Court issued a letter on January 24, 2001, stating that it had never issued the demand for the case materials, that the copy of the request on file was fraudulent, and that Mr. Kurkin was not a Supreme Court employee. (Exhibit 6)

33.     Ultimately, in connection with Foston's appeal of the Solntsevo decision -- the appeal is discussed in greater detail below -- I was able to review certain materials relating to the September 29, 2000 decision.  My review of the documents revealed a number of irregularities that demonstrate the illegality of the proceeding.

34.     First, the Solntsevo Court clerk's records related to the cases heard by Judge Il'in, who purportedly rendered the decision that divested Foston of its shares, did not indicate that case No. 2-2747/2000 was among the four or five cases heard by this judge on September 29, 2000.

35.     Second, the transcript of the hearing of September 29, 2000 did not identify the person or persons who represented the defendants at that hearing.  This omission is unusual, given that attorneys are generally identified in these transcripts.  When the case was subsequently heard on the cassation appeal in the Moscow City Court, and the plaintiffs in the Solntsevo case submitted copies of the case materials that were missing from the court, I learned that the attorney that purported to represent Foston was a man named Artur Yanovich Shulrufer.  But Shulrufer was not Foston's attorney and was not authorized to represent Foston.

36.     Third, the transcript of the September 29, 2000 hearing identified several documents, such as bank transfer papers and telegrams, including telegrams allegedly sent by

9

Foston, which Foston had not sent.  In fact, all those documents must have been fraudulent -- the reason being that they have the October 2000 dates, even though the hearing allegedly took place on September 29, 2000.  Those documents were also included in the case file.

### The Subsequent Solntsevo Court Proceedings

37.    Based upon the foregoing, Foston took certain procedural steps in an effort to undo the fraud.  First, Foston applied to the Solntsevo Court to reinstate the case.  On February 19, 2001, this motion was granted, which had the effect of reactivating the matter.  (Exhibit 18)

38.    Second, Foston applied to the Solntsevo Court to reinstate the term for the cassation appeal.  The time for the appeal had expired because Foston had never been apprised of the Solntsevo Court's decision.  Accordingly, it was necessary for Foston to obtain the ability to appeal that decision.  On February 20, 2001, the Court granted Foston's motion and reinstated the term for the cassation appeal.  (Exhibit 7)

39.    Thereafter, on  January 26, 2001, I filed a cassation appeal of the Solntsevo Court's September 29, 2000 decision with the Moscow City Court, which sits as an appellate court to the Solntsevo Court.  (Exhibit 14)  At the March 30, 2001 hearing of the cassation appeal, the Moscow City Court reversed the September 29 decision based upon the absence of any evidence that Foston had been notified of the proceeding.  (Exhibit 8)  It did not, however, order the transfer of shares back to Foston.

40.    On November 30, 2001, the Solntsevo Court heard the case on remand from the Moscow City Court.  At the hearing, the plaintiffs provided the Court with a copy of a Complaint dated October 30, 2001, which they had filed in the Sverdlosk Arbitrazh Court (Exhibit 16) and the Court Order dated November 5, 2001, accepting the case for consideration.  .Foston had not been notified of these proceedings as well.

10

41.     Incredibly, on the basis of plaintiffs' bizarre procedural maneuver, the Solntsevo Court held that it had no jurisdiction over the case, choosing instead to defer to the Sverdlosk Arbitrazh court.  The Court also refused to order the return of shares to Foston.  (Exhibit 10) Thus, the very Court which had ordered the divestiture of Foston's shares had inexplicably determined that it had no jurisdiction, yet had left its prior (and presumably jurisdictionally improper) decision intact.

### Fraud in Sverdlovsk Arbitrazh

42.     On October 30, 2001 NTMC, ZAO Inrosmet, and ZAO Standard Trust filed a suit with the Sverdlosk Arbitrazh Court seeking to invalidate all the share purchase deals in the chain of transactions that led to the acquisition of the shares by Foston.  (Exhibit 16)  Foston was never notified of the suit filed in Sverdlovsk arbitrazh by NTMC, ZAO Inrosmet, and ZAO Standard Trust.

43.     In the court hearing on December 20, 2001 in Sverdlovsk, the plaintiffs petitioned the court to join Foston as a party to the proceedings.  The plaintiffs explained the omission of Foston by pure technical error. The court granted the plaintiffs' petition.  (Exhibit 21)  It is hard to explain this court ruling because Foston was *already* named as a defendant on the face of the complaint.

44.     Foston was never informed of the suit.  Being present at the hearing on behalf of another defendant, I petitioned the court to dismiss the case.  The Court ignored my petition. However, the plaintiffs' petition to postpone the hearing was granted for lack of proof of an adequate notification of one of the other defendants.  A new hearing was scheduled for October 3, 2002.  (Exhibit 41)

11

**Fraud in the Appeal of the Second Solntsevo Court Decision**

45.     On December 6, 2001, Foston filed a cassation appeal of the Solntsevo Court's

November 30, 2001 decision which had refused to reinstate Foston's shareholding in GOK.

(Exhibit 15)

46.     I uncovered a number of instances of fraud perpetrated on the Court in the course

of this appeal.  Specifically, when I called the court inquiring about the status of the case, I was

informed that Judge Pronyakin of the Solntsevo Court received a letter allegedly from Foston

Cyprus.  That letter, which was dated January 23, 2002, informed the Court that Foston had

decided not to exercise its right of appeal.  (Exhibit 11)  The Judge stated that this was not

consistent with Foston's position and asked for an explanation.  I informed the Court that this

letter was fraudulent.

47.     The Court also received another letter allegedly written by Foston, which was

dated February 1, 2002.  That letter stated that all powers of attorney have expired and that

attorneys participating in the proceedings on behalf of Foston are not authorized to do so.

(Exhibit 12)

48.     Both the January 23 and February 1 letters were forgeries.  After I informed

Foston of these forgeries, Foston's director prepared an official letter and duly legalized it in

Cyprus.  The letter to the court stated that the two letters (dated January 23, 2002 and February 1,

2002) were fraudulent and that Foston did not change its intention to pursue its claims.  (Exhibit

9)  In the same letter Foston also confirmed that my powers as a representative were not revoked

and remained valid.

49.     In response to this letter, by order dated March 4, 2002, the Solntsevo Court ruled

that Foston's representative should submit a Power of Attorney explicitly stating whether that

12

representative is authorized to submit cassation appeals of the Solntsevo Court's decision of November 30, 2001.  (Exhibit 13)

50.     Shortly thereafter I submitted an official letter from Foston to the Solntsevo Court stating that by April 4, 2002, the required documents would be delivered to the Court.  (Exhibit XX missing)

51.     In compliance with the Solntsevo Court order and pursuant to the above Foston letter, on March 27, 2002, Foston again issued a Power of Attorney in my name, which was then submitted to the Solntesevo court. (Exhibit 17)

52.     However, on or about March 29, 2002, the Solntsevo Court received a telegram that identified me as the sender.  In this telegram, I purported to state that I did not have a new Power of Attorney and, therefore, was not authorized to pursue the cassation appeal.  (Exhibit 23)  I did not send this telegram.  Judging from the postmark on the telegram, it was sent from Moscow, but I was in Ekaterinburg at the time.  It was yet another forgery submitted to the Court.

53.     Eventually, Foston clarified that it wished to pursue the cassation appeal and that I was authorized to pursue that appeal on Foston's behalf.  The Solntsevo Court directed the hearing of the Foston cassation appeal to take place on May 22, 2002.

54.     At the hearing of May 22, 2002,  the Court refused to return the shares to Foston.  My attempts to obtain a copy of that decision have been unsuccessful.

55.     That the court so ruled could only be attributed to the fact that it was subject to improper influence and bias.

56.     The decisions against Foston evidenced bias to such a degree that, on July 17, 2002, the Office of the Prosecutor for the City of Moscow brought a protest to the Presidium of

13

the Moscow City Court in regard to the decisions of the Solntsevo Court of November 30, 2001 and the Moscow City Court of May 22, 2002.  (Exhibit 24)

57.     On August 22, 2002 the Presidium of the Moscow City Court granted the protest and remanded the case to the Solntsevo Court for the purpose of reversing the two decisions, which had, in part, refused to reinstate Foston's shareholding in GOK.

HFNWK1: #38235 v.1 #06141-0001 09/15/2002

I am informed that the contents of the Affidavit in English corresponds to that in Russian.

I have executed this affidavit outside the of the United States of America and declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true to the best of my knowledge and belief.

_____

Marina Ashikhmina

Date:_____

15

**ОКРУЖНОЙ СУД США**
**ЮЖНЫЙ ОКРУГ НЬЮ-ЙОРКА**

---

**BASE METAL TRADING SA и прочие**          **Дело No. 00 Civ. 9627**

**Истцы**

**против**

**RUSSIAN ALUMINUM и прочие**

**Ответчики**

---

## ЗАЯВЛЕНИЕ МАРИНЫ АШИХМИНОЙ

Я, Марина Ашихмина, в соответствии со статьей 28 U.S.C. §1746, настоящим заявляю о нижеследующем:

1.     Я являюсь гражданкой России.   Я являюсь адвокатом, имеющим право, согласно законодательству, на ведение юридической практики в России.   Целью настоящего заявления является объяснение некоторых событий, имеющих отношение к (а)   мошенничеству   с   преднамеренным   банкротством   Качканарского   Горно-обогатительного комбината «Ванадий» («ГОК») и (б) незаконного присвоения путем мошенничества акций ГОКа, принадлежавших компании Фостон Менеджмент Лимитед («Фостон»).   В соответствии с генеральной доверенностью, я была уполномочена представлять интересы нескольких акционеров ГОКа, в том числе компании Фостон, и другух кредиторов, включая Нексиз Продактс ЛЛСи («Нексиз Продактс»), по различным вопросам.

# МНИМОЕ БАНКРОТСТВО

## Предыстория

2.      30 марта 2000 г., на основании иска, поданного компанией-поставщиком электроэнергии «Красноуральскмежрайгаз» («Красгаз»), Свердловслий Арбитражный суд инициировал дело о банкротстве ГОКа.

3.      В то время я представляла интересы нескольких кредиторов ГОКа.  Как было видно из действий исполняющего обязанности Генерального директора ГОКа Козицина, Арбитражного управляющего Козырева и судей Арбитражного суда Свердловской области, все они преследовали одну цель, а именно, любыми методами привести ГОК к банкротству -- даже если таковое возможно избежать -- и ввести на ГОКе внешнее управление, тем самым лишив акционеров контроля над предприятием.

4.      Из событий, описываемых в данном заявлении, мне совершенно ясно, что Свердловский Арбитражный суд откровенно проигнорировал совершенные Козициным и Козыревым правонарушения, оказав полную поддержку их нелегальным действиям.

## Правонарушения при назначении даты слушания на 22 августа 2000 г.

5.      Исходя из Договора займа No. SWER/07-99 от 13 июля 1999 г., задолженность ГОКа перед компанией Нексиз Продактс составляла 7 миллионов долларов.  Нексис была осведомлена о слушании, назначенном на 27 сентября 2000 г. которое, уже без уведомления Нексиз Продактс, было затем перенесено с 27 сентября 2000 г. на 22 августа 2000 г.  По этой причине Нексиз Продактс не принял участия в слушании 22 августа 2000 г. и, тем самым, не смог опротестовать введение на ГОКе внешнего управления.  Изменение даты без уведомления Нексиз Продактс не позволило

2

компании заявить претензии и, тем самым, получить статус, необходимый для участия в дальнейших слушаниях.

6.     В качестве адвоката, представлявшей интересы нескольких акционерв, я узнала о переносе слушания за два дня до новой даты.   22 Августа 2000 г. я присутствовала на заседании суда, во время которого стала свидетелем целого ряда правонарушений.

7.     Во-первых, несколько кредиторов, в том числе Ленекс, ООО Нексиз, Нортвест Системз и Сталькомплект, подняли вопрос о возможности мнимого банкротства, в результате цепочки сделок, приведшей к искуственному вздутию и накоплению задолженности ГОКа в руках небольшой компании под названием Лебаут. Кредиторы обратили внимание суда на притворный характер сделок с Лебаут (для подробного описания сделок см. Заявление Занадворова).     Суд не только проигнорировал этот аргумент, но даже не занес его в протокол заседания (Приложение 26).

8.     Ленекс также указала на некоторые транзакции, произведенные в нарушение положения российского законодательства о последовательности заключения сделок «с заинтересованностью».   И снова суд не занес этот аргумент в протокол заседания (Приложение 26).

9.     Во время слушания, я представила суду одного из представителей акционеров, г-на Траума, и обратилась к суду с просьбой выслушать заявление г-на Траума.  Судья эту просьбу удовлетворил.  Г-н Траум затем заявил, что в своем желании прекратить дело о банкротстве ГОКа, он готов погасить задолженность комбината перед Красгазом и другими его истинными кредиторами в полном размере.  Г-н Траум также

добавил, что Козицин не проинформировал акционеров о первом раунде переписки с Красгазом.

10.     Не задав никаких вопросов и не сделав никаких комментариев, Судья заявление г-на Траума проигнорировала.  Более того, ни присутствие г-на Траума в суде, ни его заявление задокументированы не были.  Вопреки желанию акционеров спасти ГОК от банкротства, суд назначил внешнего управляющего и тем самым лишил акционеров контроля над предприятием.


### Аргументы компании Нексиз Продактс
### о недействительности претензий компаний Лебаут и Сириус

11.     Впоследствии Нексиз Продактс продолжила свои усилия по исключению Лебаут и ее представителя, компании Сириус, из списка требований кредиторов.  На основании Генеральной доверенности от 15 ноября 2000 г., я представляла интересы Нексиз Продактс в судебном разбирательстве, описываемом ниже (Приложение 27).

12.     Нексиз Продактс утверждала, что сделка с Лебаут недействительна, т.к. была заключена в нарушение нескольких положений закона, требующего предварительного одобрения векселей (таких как те, что были выданы компании Лебаут) советом директоров предприятия.  Не смотря на явную незаконность сделки, решением от 19 февраля 2001 г., Свердловский Арбитраж в содержащихся в иске Нексиз Продактс претензиях отказал, даже не адресовав вопрос о правонарушениях (Приложение 28).

13.     28 Марта 2001 г. Нексиз Продактс заявила подобный протест против решения Козырева о включении представлявшей Лебаут компании Сириус в список кредиторов.  Нексиз Продактс также опротестовала транзакции с Лебаут, т.к. они были

заключены в нарушение законодательства о «крупных» сделках (Приложение 29).   И снова, в решении от 18 апреля 2001 г., Свердловский Арбитражный суд отклонил протест Нексиз Продактс, даже не адресовав поднятые в нем вопросы (Приложение 30).

14.   Нексиз Продактс снова подняла вопрос о решении от 19 февраля 2001 г. во время слушания перед Апелляционной инстанцией Свердловского Арбитражного суда 19 апреля 2001 г (Приложение 31).   Свердловский Арбитраж в конце концов все же рассмотрел аргумент о крупных сделках, но пришел к юридически несостоятельному заключению о том, что группа взаимосвязанных трансакций по отчуждению векселей не является группой трансакций, регулируемых законодательством о крупных сделках и ценных бумагах (Приложение 32).   Более того, суд также принял в равной степени абсурдное решение о том, что размещение векселей не является размещением ценных бумаг, для которого, в соответствии со Статьей 65 Закона об Акционерных Обществах, необходимо одобрение совета директоров (Приложение 25).

15.   8 Мая 2001 г. Нексиз Продактс подал кассационную жалобу на Решение от 19 апреля 2001 г. в Федеральный Арбитражный суд Уральского округа, который 12 июля 2001 г. оставил ее без рассмотрения на основе норм процессуального права (Приложения 33, 34).   Основанием для оставления дела без рассмотрения стало решение суда о том, что я не была уполномочена представлять интересы компании Нексиз Продактс потому, что выписанная на мое имя Генеральная доверенность не сопровождалась Апостилем.   На самом же деле, документы апостилированы были. Разница была в том, что апостиль был подшит не к самой доверенности, а к аффидавиту, подтверждающему ее подлинность.

16.    Далее, я также обратила внимание суда на опечатку, допущенную при указании даты аффидавита, подтверждавшего подлинность доверенности.  Аффидавит был ошибочно датирован сентябрем вместо ноября.  Опечатка была настолько очевидной, что никто никогда не подвергал сомнению подлинность доверенности, подтверждавшей мои полномочия действовать от лица компании Нексиз Продактс.  Тем не менее, в поисках причин для оставления иска без рассмотрения, Федеральный Арбитражный суд Уральского округа избрал чисто формальный подход, рассмотрев документ как не сопровожденный апостилем.

**Сомнительная законность Мирового соглашения**

17.    11 Марта 2001 г., благодаря принявшим участие в голосовании компаниям Лебаут и Сириус (сфальсифицированные требования которых составляли 65% от общей суммы задолженности), собранием кредиторов ГОКа было утверждено Мировое соглашение (Приложение 35).  19 Апреля 2001 г. Свердловский Арбитражный суд утвердил Мировое соглашение, тем самым прекратив процедуру банкротства (Приложение 36).

18.    Как указывалось ранее, Нексиз Продактс не голосовала за утверждение Мирового соглашения т.к. была против включения компаний Лебаут и Сириус в список кредиторов.  29 Мая 2001 г. Нексиз Продактс подала жалобу на Решение от 19 апреля 2001 г., утвердившее Мировое соглашение, в Апелляционную инстанцию Свердловского Арбитражного суда (Приложение 37).

19.    Кассационную жалобу суд рассмотрел 27 июня 2001 г., но даже не упомянул содержавшиеся в ней аргументы.  Напротив, суд оставил жалобу без рассмотрения на

формальных основаниях, описываемых выше в параграфах 15 и 16 (Приложение 38). Стоит заметить, что до этого Свердловский Арбитраж никогда не подвергал сомнению мои полномочия действовать от имени Нексиз Продактс и всегда считал эту самую доверенность подтверждением моих полномочий.

20.    При рассмотрении кассационной жалобы на решение от 27 июня 2001 г., слушание по которой состоялось в Федеральном Арбитражном суде Уральского округа 21 августа 2001 г., суд также проигнорировал существо дела и возвратил кассационную жалобу на том основании, что «доказательств, подтверждающих полномочия представителей на обжалование судебных актов заявителем не представлено» (Приложение 39).

21.    9 октября 2001 года я подала кассационную жалобу на определение от 29 октября 2001 года, но и она была возвращена по тем же основаниям (Приложение 40).

## МОШЕННИЧЕСТВО И НЕЗАКОННОЕ ПРИСВОЕНИЕ ПРИНАДЛЕЖАВШИХ ФОСТОНУ АКЦИЙ ГОКА

### Предыстория

22.    С 1 ноября 2000 года по настоящее время, в соответствии с генеральной доверенностью, я представляю интересы компании Фостон по целому ряду вопросов. Согласно выданной мне компанией Фостон доверенностью от 1-го октября 2001 года, наряду с другими полномочиями, я также имела право запрашивать и получать у регистратора ГОКа информацию относительно принадлежавших Фостон акций комбината (Приложение 22).

### Обнаружение мошенничества по списанию акций

23.    по состоянию на 25 сентября 2000 года Фостон принадлежало 37 779 600 (или 19.7% от общего числа) акций ГОКа (Приложение 1). 22 ноября 2000 года я обратилась с запросом относительно состояния счета Фостон в АОЗТ ВРК («ВРК»). ВРК являлась компанией, ответственной за ведение реестра акционеров ГОКа.

24.    Впервые о хищении акций Фостон узнала 14 декабря 2000 г. когда я, в ответ на запрос, получила выписку, подтверждавшую операции регистратора ВРК по счету Фостон в период с 3 октября 2000 года по 7 декабря 2000 года. К моему изумлению, из выписки следовало, что практически все принадлежавшие Фостон акции -- в количестве 37 715 167 штук -- были списаны со счета компании, якобы согласно судебному Исполнительному листу от 10 октября 2000 года (Приложение 2).

25.    Несмотря на то, что выписка была предоставлена, регистратор не предоставил никакой дополнительной информации относительно судебного решения; в частности, когда и каким именно судом это решение было вынесено, и кто являлся сторонами по иску.  На следующий же день я обратилась к ВРК с просьбой прояснить эти вопросы.

26.    28 декабря 2000 года регистратор сообщил, что акции были списаны в исполнение решения Солнцевского межмуниципального суда г. Москвы («Солнцевский суд») от 29 сентября 2000 года.

### Хищение судебного дела

27.    В скором времени Фостон, наряду с другими акционерами ГОКа, права которых были нарушены, подал несколько жалоб в Федеральную Комиссию по ценным

бумагам.   В последней из них утвеждалось, что компания ВРК противозаконным образом списала принадлежавшие Фостон акции ГОКа без уведомления Фостон как акционера. (Приложение 19).

28.   Фостон получила ответ от Заместителя председателя Федеральной Комиссии по ценным бумагам, датированный 15 января 2001 года, с утверждением, что акции были списаны по решению Солнцевского суда (Приложение 20).   Копия решения по делу 2-2747/2000 прилагалась (Приложение 3).   Вопреки стандартной процедуре российских судов, личность адвоката, представлявшего интересы Фостон во время слушания, в решении указана не была.

29.   Согласно решения Солнцевского суда, 37 715 167 штук акций были списаны со счета Фостон в пользу ОАО Нижнетагильский металлургический комбинат («НТМК»), ООО Инросмет и ЗАО Стандарт Траст.   Общеизвестно, что Нижнетагильский металлургический комбинат контролируется Искандером Махмудовым.

30.   Получив копию решения, я, от лица Фостон, обратилась в Солнцевский суд с тем, чтобы получить информацию по делу. Работник канцелярии суда проинформировал меня о невозможности получения какой-либо информации, потому что материалы дела исчезли из суда.

31.   Двумя единственными документами, которые остались в суде касательно данного дела, были: (а) копия предполагаемого запроса из Верховного суда Российской Федерации с требованием прислать судебное дело и (б) письмо за подписью некоего Куркина, в котором Куркин подтверждает получение материалов дела Верховным судом (Приложения 4, 5).   Любопытно то, что запрос Верховного суда был датирован 23

9

ноября 2000 года, на следующий день после того, как Фостон впервые направил запрос в ВРК по поводу операций со счетом компании.

32.    Узнав о вышеизложенном, один из адвокатов, действовавших по доверенности в порядке передоверия от меня, г-н Полякевич, по моей просьбе подал запрос о материалах дела в Верховный Суд Российской Федерации с приложением копии требования от 23 ноября 2000 г.  В ответе от 24 января 2001 года, Верховный суд сообщил, что никаких запросов о материалах дела судом не направлялось, что копия запроса, представленная Фостон, -- фальшивая, и что г-н Куркин сотрудником Верховного суда не является (Приложение 6).

33.    Позднее, в процессе подачи аппелляции на решение Солнцевского суда (более подробное обсуждение самой аппелляции приводится ниже), мне все же удалось ознакомиться с некоторыми материалами, имеющими отношение к решению от 29 сентября 2000 г.  В результате просмотра документов мной было выявлено множество несоответствий, демонстрировавших незаконность действий суда.

34.    Во-первых, в записях работников канцелярии Солнцевского суда касательно четырех или пяти дел, рассмотренных судьей Ильиным 29 сентября 2000 г., дело под номером 2—2747/2000 не числилось.   Ильин являлся судьей, вынесшим решение о лишении комапнии Фостон акций ГОКа.

35.    Во-вторых, в протоколе  заседания суда от 29 сентября 2000 г., не указывалось имени (или имен) лиц, представлявших во время слушания интересы компаний—ответчиков.  Учитывая, что в подобных документах имена адвокатов обычно указываются, такое упущение кажется странным.  Как выяснилось впоследствии (в процессе слушания кассационной жалобы в Московском городском суде истцы по

Солнцевскому иску представили копии утерянных судом материалов дела), адвокатом, якобы представлявшим интересы Фостон, оказался некий Артур Янович Шульруфер. А. Я. Шульруфер никогда не являлся адвокатом Фостон и не имел никаких полномочий представлять интересы компании.

36.     В-третьих, в протоколе заседания суда от 29 сентября 2000 г. упоминается несколько документов, таких как подтверждения о банковских переводах и телеграммы (включая телеграмммы, якобы посланные компанией Фостон, которые Фостон на самом деле не посылала). Документы эти являются неоспоримо поддельными, т.к. все они датированы октябрем 2000 г. несмотря на то, что слушание дела якобы состоялось 29 сентября 2000 г. Вышеперечисленные документы также содержались в материалах дела.

### Последующие разбирательства солнцевского суда

37.     На основании вышеизложенного, Фостон предпринял определенные шаги с целью предотвращения последствий мошенничества.  Во-первых, Фостон обратился в Солнцевский суд с требованием восстановить дело.  19 февраля 2001 года Солнцевский суд удовлетворил требование Фостон и дело было восстановлено (Приложение 18).

38.     Во-вторых, Фостон обратился в Солнцевский суд с заявлением о восстановлении срока подачи кассационной жалобы, истекшего до того, как Фостон был уведомлен о решении Солцевского суда и, следовательно, компании причиталась возможность подать апелляцию на данное решение.  20 февраля 2001 года Солнцевский суд удовлетворил заявление Фостон и восстановил срок подачи кассационной жалобы (Приложение 7).

39.     Затем, 26 января 2001 года, я подала в Московский городской суд кассационную жалобу на решение Солнцевского суда от 29 сентября 2000 года

11

(Приложение 14).   По отношению к Солцевскому суду, Московский городской суд является вышестоящей апелляционной инстанцией.   Во время слушания кассационной жалобы 30 марта 2001 г., установив полное отсутствие каких-либо доказательств того, что Фостон был должным образом уведомлен о разбирательстве, Московский городской суд отменил решение от 29 сентября 2000 года (Приложение 8).   Несмотря на это, Московский суд не распорядился о возврате Фостон акций ГОКа.

40.   30 ноября 2001 года Солнцевский суд заслушал дело, возвращенное Московским городским судом.   Во время слушания, истцы представили суду копию иска от 30 октября 2001 года, поданную ими в Свердловский Арбитражный суд против Фостон (Приложение 16) и постановление суда от 5 ноября 2001 года о принятии дела к рассмотрению.   Фостон также не был уведомлен об этом разбирательстве.

41.   Удивительно, что, в результате ловкого процедурного маневрирования истцов, Солнцевский суд решил, что он не обладает юрисдикцией по данному делу и что юрисдикция относится к Арбитражному суду Свердловской области (Приложение 10).   Иными словами, тот же суд, который постановил перевести принадлежавшие Фостон акции ГОКа, сейчас почему-то решил, что у него нет юрисдикции, но при этом не пожелал отменить свое предыдущее (и, в таком случае, подведомственно неправомерное) решение.

**Мошенничество в Арбитражном суде Свердловской области**

42.   30 октября 2001 г. НТМК, ООО Инросмет и ЗАО Стандарт Траст подали в Арбитражный суд Свердловской области иск с требованием признать недействительными все трансакции по купле-продаже акций в процессе их приобретения компанией Фостон (Приложение 16).   Фостон не был извещен об иске, поданном в Свердловске компаниями НТМК, ООО Инросмет и ЗАО Стандарт Траст.

12

43.     Во время заседания суда 20 декабря 2001 г. в Свердловске, истцы потребовали у суда присоединить Фостон к числу ответчиков, объяснив предыдущее невключение Фостона в их число ошибкой клерка.  Суд удовлетворил ходатайство истцов (Приложение 21).  Объяснить это решение суда непросто, т.к. Фостон уже числился среди ответчиков по иску, о чем свидетельствует первая страница искового заявления.

44.     Фостон так и не был уведомлен об иске.  Я присутствовала на заседании по доверенности от другого ответчика, от имени которого заявила ходатайство о приостановлении производства по настоящему делу. Ходатайство мое суд не рассмотрел, однако по ходатайству истца дело все же отложил до 3 октября 2002 года (за отсутствием доказательств надлежащего уведомления одного из ответчиков) (Приложение 41).

## Мошенничество вокруг кассационной жалобы на второе решение Солнцевского суда

45.     6 Декабря 2001 года Фостон подал кассационную жалобу на решение Солнцевского суда от 30 ноября 2001 г., в части, где суд отказал в восстановлении Фостона во владении акциями ГОКа  (Приложение 15).

46.     Впоследствии, в отношении суда было совершено множество актов мошенничества, которые были мной раскрыты.  Об одном из них я узнала, когда позвонила в суд, интересуясь дальнейшей судьбой данного судебного дела.    Клерк меня проинформировал, что Судья Солнцевского суда Пронякин получил письмо, предположительно от Фостон (Кипр).  В этом письме, датированном 23 января 2002 года сообщалось, что Фостон не воспользуется своим правом на обжалование (Приложение 11).  Судья заметил, что это противоречило позиции Фостона и потребовал объяснения.  Я проинформировала суд о том, что письмо это – очевидная подделка.

13

47.     Солнцевским судом также было получено другое письмо от 1 февраля 2002 года, якобы от Фостон, которым уведомлялось, что сроки всех доверенностей истекли и что поверенные, участвовавшие в процессе от имени Фостон, теперь не имеют на это полномочий (Приложение 12).

48.     Оба письма, от 23 января и от 1 февраля, 2002 г., были поддельными. После того, как я сообщила об этом руководству Фостон, директор компании подготовил официальное письмо, которое затем было должным образом легализовано на Кипре. Письмо в суд констатировало, что оба письма (от 23 января 2002 года и от 1 февраля 2002 года) являются фальшивыми и что Фостон не менял намерений отстаивать свои требования (Приложение 9).   Фостон также подтвердил, что мои полномочия как представителя не прекращались и сохраняют силу.

49.     В ответ на письмо Фостон, решением от 4 марта 2002 года Солнцевский суд постановил, что представитель Фостон должен представить доверенность, в которой четко указывается полномочие этого представителя подавать кассационные жалобы на решение от 30 ноября 2001 года (Приложение 13).

50.     В скором времени, я направила в Солнцевский суд от имени компании Фостон официальное письмо о том, что все необходимые документы будут представлены к 4 апреля 2002 года.

51.     В исполнение указания Солнцевского суда, а также выполняя данное в вышеупомянутом письме обещание, 27 марта 2002, Фостон выдал мне новую доверенность, которая затем была представлена в суд (Приложение 17).

52.     Однако, 29 марта 2001 года Солнцевский суд получил телеграмму, в которой мое имя значилось как имя отправителя.  В этой телеграмме, я якобы сообщала,

что новой доверенности у меня нет и, следовательно, я не обладаю полномочием подавать кассационную жалобу (Приложение 23). <u>Я не отправляла эту телеграмму.</u> Судя по почтовому штампу, телеграмма была послана из Москвы, <u>хотя я находилась в это время в Екатеринбурге.</u> Направленная в суд телеграмма была очередной подделкой.

53.     Со временем, Фостон подтвердил как свое намерение подать кассационную жалобу так и мои полномочия представлять интересы компании в этом процессе.  Судья Солнцевского суда затем назначил слушание кассационной жалобы на 22 мая 2002 г.

54.     Во время слушания 22 мая 2002 г., суд отказался вернуть компании Фостон акции ГОКа. Мне не удалось получить копию этого судебного акта.

55.     Принятие подобного решения судом можно объяснить либо предвзятым отношением, либо предположением, что на суд было оказано давление.

56.     17 Июля 2002 г. в Президиум Московского Городского суда Прокурором г. Москвы был направлен протест против решений Солнцевского суда от 30 ноября 2001 г. и Московского Городского суда от 22 мая 2002 г., которые, в нарушение законодательства, частично отказывали в возврате принадлежавжих Фостону акций (Приложение 24).

57.     22 Августа 2002 г., Президиум Московского Городского суда протест удовлетворил и распорядился дело вернуть в Солнцевский Межмуниципальный суд на пересмотрение (для отмены обоих решений в части отказа восстановления Фостона как акционера ГОКа).

15

Я проинформирована. что содержание Заявления на английском языке соответствует Заявлению на русском.

Я составила настоящее Заявление за пределами Соединенных Штатов Америки и заявляю под угрозой ответственности за дачу ложных показаний. в соответствии с законами Соединенных Штатов. что вышеизложенное является верным. насколько я знаю и верю.

Дата: 12  09  02 .

## LIST OF EXHIBITS TO THE WITNESS STATEMENT OF M. ASHIKHMINA

1.  Register of Shareholders of OAO Kachkanarsky GOK Vanadiy as of September 25, 2000.

2.  Court Execution Sheet dated October 10, 2000.

3.  Decision of the Solntsevo District Court of the city of Moscow dated September 29, 2000.

4.  Demand to submit the case materials to the Supreme Court of the Russian Federation dated November 27, 2000.

5.  Letter from the Solntsevo District Court, dated November 23, 2000, accompanying the materials of Case No. 2-2747/00 and containing Mr. Kurkin's signature attesting that he received the hand delivered documents.

6.  SC RF's response to Foston's inquiry, dated January 24, 2001.

7.  Decision of the Solntsevo District Court, dated February 20, 2001, granting Foston's motion and reinstating the term for the cassation appeal.

8.  The Moscow City Court's Decision, dated March 30, 2001, remanding the case to the Solntsevo Court.

9.  Letter of Foston Management Limited, duly legalized in Cyprus on February 15, 2002, to the Solntsevo District Court, informing the Court that the two letters dated 1/1/02 and 2/1/02 were fraudulent and that Foston did not change its intentions to pursue its claims.

10. Decision of Solntsevo District Court dated November 30, 2001.

11. Fraudulent letter from Foston to the Solntsevo Court, dated January 223, 2002, informing it that Foston will not exercise its right to appeal.

12. Fraudulent letter from Foston to the Solntsevo Court, dated February 1, 2002, stating that the powers of attorney for the Foston's attorneys have expired.

13. Solntsevo Court's Order dated March 4, 2002.

14. Foston's Cassation Appeal of the September 29, 2000 Decision, filed with the Moscow City Court on January 21, 2001.

15. Foston's Cassation Appeal of the November 30, 2001 decision, filed with the Moscow City Court.

16. Complaint dated October 30, 2001, filed against Foston with Sverdlovsk Arbitrazh Court.

17. Power of Attorney, dated March 27, 2002, issued by Foston to Ashikhmina in compliance with the Court Order of March 4, 2002.

18. Decision of the Solntsevo District Court, dated February 19, 2001, granting Foston's motion and reinstating the case.

19. Foston's Complaint against VRK with the Federal Securities Commission re the writing off of the shares.

20. Response from the Chairman of the Federal Securities Commission, dated January 15, 2001.

21. Sverdlovsk Arbitrazh Court's Order dated December 20, 2001.

22. Power of Attorney, dated November 1, 2000, authorizing Ashikhmina to receive information from GOK registrar in regard to Foston shareholding in GOK.

23. Telegram dated about March 29, 2002, fraudulently sent to the Solntsevo Court on behalf of Ashikhmina.

24. Protest to the Presidium of the Moscow City Court, brought by the Prosecutor of the City of Moscow on July 18, 2002.

25. Article 65 of the Federal Law on Corporations.

26. Minutes of the Hearing of the Sverdlovsk Arbitrazh Court dated August 22, 2000.

27. General Power of Attorney issued by Nexis Products, LLC to M. Ashikhmina on November 15, 2000.

28. Order of the Sverdlovsk Arbitrazh Court dated February 19, 2001.

29. Objections dated March 28, 2001, submitted by Nexis to the Sverdlovsk Arbitrazh Court.

30. Order of Sverdlovsk Arbitrazh Court dares April 18, 2001.

31. Cassation Appeal of the February 19, 2001 Decision filed by Nexis with Appellate Instance of the Sverdlovsk Arbitrazh Court.

32. Decision of the Sverdlovsk Arbitrazh Court dated April 19, 2001.

33. Cassation Appeal of the Decision of April 19, 2001, filed by Nexis with the Federal Arbitrazh Court for the Ural District.

34.   Decision of the Federal Arbitrazh Court for the Ural District, dated July 12, 2001.

35.   Minutes of the Meeting of GOK's Creditors, dated March 11, 2001.

36.   Sverdlovsk Arbitrazh Court's approval of the Settlement Agreement between GOK and its creditors, dated April 19, 2001.

37.   Cassation Appeal of the April 19, 2001 Decision filed by Nexis with the Appellate Instance of the Sverdlovsk Arbitrazh Court on May 29, 2001.

38.   Decision of the Appellate Instance of the Sverdlovsk Arbitrazh Court, dated June 27, 2001.

39.   Decision of the Federal Arbitrazh Court for the Ural District, dated August 21, 2001.

40.   Decision of the Federal Arbitrazh Court for the Ural District dated October 29, 2001.

41.   Decision of the Sverdlovsk Arbitrazh Court, postponing the hearing of May 29, 2002 until October 3, 2002.

PANORAMA

Outgoing # 135-250900-005/OPERU of September 28, 2000

Company - Registrar


LIST OF SHAREHOLDERS OF OJSC KACHKANAR GOK VANADIY,
AS OF SEPTEMBER 25, 2000

Registered address of the issuer:                          624356 Russia
                                                            Severdlovsk region
                                                            Kachkanar, 2 Sverdlova St.

Certificate of state registration of the issuer:            0422 series III-IK issued by
                                                            The Head of Kachkanar
                                                            Administration on 04/15/1993

Ordinary nominal non-documentary shares:                    403,662
State number of issue of shares:                             # 62-1P-290
Face value of one share:                                    1.00 rubles
Ordinary nominal non-documentary shares:                    190,528,464
State number of issue of shares:                             # 62-1-1396
Face value of one share:                                    1.00 rubles

The person requesting the information:      the company, Foston Management Limited
Properties of the request:
        Outgoing number and the date              No number, of September 25, 2000
        Incoming number of the registrar          Ts-0135-250900-005, of September
        and the date                              25, 2000

Basis for execution of the list: Provisions "On keeping of register of nominal securities
owners", approved by the decision of the FKTsB (Federal Securities Commission) of
October 2, 1997 # 27.

Date of execution of the list: September 28, 2000

Order of distribution of the list: on the basis of the acceptance-conveyance report

**List of shareholders of OJSC Kachkanar GOK Vanadiy,
composed as of September 25, 2000**

| # | Type of nominal account | Name | Amount of ordinary nominal shares 1 issue | Amount of ordinary nominal shares 2 issue |
|---|---|---|---|---|
| 3679 | Owner | Yahsina Anna Anatolievna | 4 | 1888 |
| 3680 | Owner | CJSC Gefest Association | 94 | 44368 |
| 3681 | Owner | CJSC Evrosib-Moskva | 6541 | 0 |
| 3682 | Owner | CJSC Novaya Investitsionnaya Kompaniya | 4 | 1888 |
| 3683 | Owner | CJSC IK Iset-Invest | 505 | 8678 |
| 3684 | Owner | LLC Uralskaya Torgovo-Inv. Companiya¨ | 45 | 0 |
| 3685 | Owner | OJSC Predriyatie Agat | 6 | 2832 |
| 3686 | Owner | Union Committee JSC Vanadiy | 715 | 337480 |
| 3687 | Owner | OJSC Remelektro | 0 | 8164 |
| 3688 | Owner | OJSC Rink-Invest | 0 | 3304 |
| 3689 | Owner | Sverdlovskiy Region Committee on Management of State Property | 1 | 472 |
| 3690 | Owner | Private investment fund Ural-Tri-K | 4 | 1888 |
| 3691 | Owner | LLC Chermetplan LTD | 1091 | 0 |
| 3692 | Owner | First Baltic Commercial Trust | 0 | 2978500 |
| 3693 | Nominal holder | CJSC AKB Rosbank | 26 | 4408 |
| 3694 | Owner | CJSC Uralelekromed | 100 | 0 |
| 3695 | Owner | CJSC BF Interural-Invest | 7447 | 67604 |
| 3696 | Nominal holder | CJSC Depozitarno-Kliringovaya Kompaniya | 167 | 0 |
| 3697 | Owner | CJSC sredneuralskiy Brokerskiy Tsentr | 20 | 9420 |
| 3698 | Owner | CJSC Financial-Investment Company Ural-Kontinent | 0 | 24 |
| 3699 | Owner | Company, Foston Management Limited | 103565 | 37696035 |
| 3700 | Owner | Company, Davis International, LLC | 78282 | 35027740 |
| 3701 | Owner | Company, Nexis Products, LLC | 45 | 0 |
| 3702 | Owner | Company, Omni Trusthouse Limited | 42660 | 33988454 |
| 3703 | Owner | Company, Holdex LLC | 70308 | 30877078 |
| 3704 | Owner | Vox LLC | 63724 | 35819270 |
| 3705 | Owner | OJSC Innovatsionnyi Fond AZ-Kapital | 8126 | 3835472 |
| 3706 | Nominal Holder | Association of Legal Entities Depozitarno-Raschetnyi Soyuz | 0 | 90 |
| 3707 | Owner | LLC BF UTK-Brok-Invest | 588 | 472 |
| 3708 | Owner | LLC Komapniya Novye Investitsii | 1541 | 17938 |

| 3709 | Owner | LLC Lans | | 0 | 100 |
|------|-------|----------|---|---|-----|

Head of the operational department
of JSC Panorama                         [seal]        [signed]       G.E. Yurasova

Executed
Samoilova Ye.A.
Tel. 490-49-40


Provided upon September 9, 2000 request of registered person, the company Foston
Management Limited



Исх. №135-250900-005/ОПЕРУ от 28.09.2000г.

КОМПАНИЯ-РЕГИСТРАТОР

# Список
# акционеров ОАО «Качканарский ГОК «Ванадий», составленный по состоянию на 25.09.2000г.

| | |
|---|---|
| **Юридический адрес эмитента:** | 624356 Россия, Свердловская обл., г.Качканар, ул.Свердлова, д.2 |
| **Свидетельство о государственной регистрации эмитента:** | 0422 Серия III-ИК выдано Глава администрации г.Качканар 15.04.1993 |

| | |
|---|---|
| *Акции обыкновенные именные бездокументарные:* | 403 662 шт. |
| *Государственный номер выпуска акций:* | № 62-1П-290 |
| *Номинальная стоимость одной акции:* | 1,00 руб. |
| *Акции обыкновенные именные бездокументарные:* | 190 528 464 шт. |
| *Государственный номер выпуска акций:* | № 62-1-1396 |
| *Номинальная стоимость одной акции:* | 1,00 руб. |

**Лицо, запрашивающее информацию:** Компания «Фостон Менеджмент Лимитед»
**Реквизиты запроса:**
- ◆ **Номер и дата исходящего:**    б/н от 25.09.2000
- ◆ **Номер и дата входящего регистратора:**    Ц-0135-250900-005 от 25.09.2000

**Основание выдачи списка:** Положение о ведении реестра владельцев именных ценных бумаг, утвержденное постановлением ФКЦБ от 02.10.1997г. №27

**Дата подготовки списка:** 28.09.2000

**Порядок выдачи списка:** По акту приема-передачи

Архангельск · Астрахань · Братск · Владивосток · Волгоград · Вологда · Казань · Калуга · Кострома · Краснодар
Магнитогорск · Москва · Нижний Новгород · Оренбург · Ставрополь · Тамбов · Тверь · Челябинск · Йошкар-Ола

Список акционеров ОАО "Качканарский горно-обогатительный комбинат "Ванадий" по состоянию на 25.09.2000г.

| Номер п/п | Тип лицевого счета | Наименование | Кол-во обыкновенных именных акций 1 вып. | Кол-во обыкновенных именных акций 2 вып. |
|---|---|---|---|---|
| 3679 | Владелец | ЯШИНА АННА АНАТОЛЬЕВНА | 4 | 1888 |
| 3680 | Владелец | "ГЕФЕСТ" АОЗТ АССОЦИАЦИЯ | 94 | 44368 |
| 3681 | Владелец | "ЕВРОСИБ- МОСКВА"АОЗТ | 6541 | 0 |
| 3682 | Владелец | ЗАО "НОВАЯ ИНВЕСТИЦИОННАЯ КОМПАНИЯ" | 4 | 1888 |
| 3683 | Владелец | ЗАО "ИК ИСЕТЬ-ИНВЕСТ" | 505 | 8678 |
| 3684 | Владелец | ООО "УРАЛЬСКАЯ ТОРГОВО-ИНВ. КОМПАНИЯ" | 45 | 0 |
| 3685 | Владелец | АОЗТ "ПРЕДПРИЯТИЕ АГАТ" | 6 | 2832 |
| 3686 | Владелец | ПРОФСОЮЗНЫЙ КОМИТЕТ АО "ВАНАДИЙ" | 715 | 337480 |
| 3687 | Владелец | "РЕМЭЛЕКТРО" ОАО | 0 | 8164 |
| 3688 | Владелец | "РИНК-ИНВЕСТ" ОАО | 0 | 3304 |
| 3689 | Владелец | СВЕРДЛОВСКИЙ ОБЛ. КОМИТЕТ ПО УПР. ГОСИМУЩЕСТВОМ | 1 | 472 |
| 3690 | Владелец | "УРАЛ-ТРИ-К" ЧИФ | 4 | 1888 |
| 3691 | Владелец | ООО "ЧЕРМЕТПЛАН ЛТД" | 1091 | 0 |
| 3692 | Владелец | FIRST BALTIC COMMERCIAL TRUST | 0 | 2978500 |
| 3693 | Ном. держ. | АКБ "РОСБАНК" (ОАО) | 26 | 4408 |
| 3694 | Владелец | ЛООТ "УРАЛЭЛЕКТРОМЕДЬ" | 100 | 0 |
| 3695 | Владелец | ЗАО "БФ "ИНТЕРУРАЛ-ИНВЕСТ" | 7447 | 67604 |
| 3696 | Ном. держ. | ЗАО "ДЕПОЗИТАРНО-КЛИРИНГОВАЯ КОМПАНИЯ" | 167 | 0 |
| 3697 | Владелец | ЗАО "СРЕДНЕУРАЛЬСКИЙ БРОКЕРСКИЙ ЦЕНТР" | 20 | 9420 |
| 3698 | Владелец | ЗАО "ФИНАНСОВО-ИНВЕСТИЦИОННАЯ КОМПАНИЯ "УРАЛ-КОНТИНЕНТ" | 0 | 24 |
| 3699 | Владелец | КОМПАНИЯ "ФОСТОН МЕНЕДЖМЕНТ ЛИМИТЕД" | 103565 | 37696035 |
| 3700 | Владелец | КОМПАНИЯ "ДЭВИС ИНТЕРНЕШНЛ Эл.Эл.Си." | 78282 | 35027740 |
| 3701 | Владелец | КОМПАНИЯ "НЭКСИЗ ПРОДАКТС Эл.Эл.Си." | 45 | 0 |
| 3702 | Владелец | КОМПАНИЯ "ОМНИ ТРАСТХАУС ЛИМИТЕД" | 42660 | 33988454 |
| 3703 | Владелец | КОМПАНИЯ "ХОЛДЭКС Эл.Эл.Си." | 70308 | 30877078 |
| 3704 | Владелец | КОМПАНИЯ С ОГРАНИЧЕННОЙ ОТВЕТСТВЕННОСТЬЮ "ВОКС" (VOX L.L.C.) | 63724 | 35819270 |
| 3705 | Владелец | ОАО "ИННОВАЦИОННЫЙ ФОНД "АЗ-КАПИТАЛ" | 8126 | 3835472 |
| 3706 | Ном. держ. | ОБЪЕДИНЕНИЕ ЮРИДИЧЕСКИХ ЛИЦ "ДЕПОЗИТАРНО-РАСЧЕТНЫЙ СОЮЗ" | 0 | 90 |
| 3707 | Владелец | ООО "БФ "УТК-БРОК-ИНВЕСТ" | 588 | 472 |
| 3708 | Владелец | ООО "КОМПАНИЯ "НОВЫЕ ИНВЕСТИЦИИ" | 1541 | 17938 |
| 3709 | Владелец | ООО "ЛАНС" | 0 | 100 |

Начальник операционного управления
АО "ПАНОРАМА"

Г.Е.Юрасова

Исполнитель
Самойлова Е.А.
тел.490-49-40

предоставлен по запросу от 25.09.2000г. зарегистрированного лица Компании "Фостон Менеджмент Лимитед"

73

Case # 2-2747_____2000

## WRIT OF EXECUTION

In the name of the _____Soviet Socialistic Republic
Solntsevskiy intermunicipal court ZAO of Moscow
On September 2000 have considered case initiated upon the complaint of OOO Inrosmet,
OAO Nizhnetagilsky Metallurgical Industrial Enterprise, ZAO Standart Trust against
Evgeniy N. Ivanov, Amber Star LLC, Nexis Products LLC, Davis International, ZAO
Company-Registrar Panorama, Omni Trust House Ltd., Holdex LLC, Foston
Management Ltd. to recover property from unlawful possession.

The court decided to recover ordinary nominal shares of OAO Kachkanar Ore Mining
and Processing Plant Vanadiy from the accounts of the company Foston Management
Limited and to enter 1245677 second issue shares (state registration number 62-1-1396)
into the personal account of OOO Inrosmet; 103626 first issue shares (state registration
number 62-1P-290) and 18747610 second issue shares (state registration number 62-1-
1396) into the personal account of OAO Nizhnetagilsky metallurgical industrial
enterprise; 176182254 second issue shares (state registration number 62-1-1396) into the
personal account of ZAO Standart Trust; to obligate Company-Registrar Panorama and
AOZT Vedenie Reestrov Companiy, registrars of OAO Kachkanar Ore Mining and
Processing Plant Vanadiy, to carry out respective operations in the register of securities
owners.

Pursuant to Article 80 of the USSR and autonomous republics Law on judicial syste, demands of a marshal
with regard to execution of judicial verdicts, decisions and orders are obligatory for all officials and
citizens.

On this basis the court ORDERS to all the respective officials and citizens to precisely and timely execute
the decision of a court.

[seal]                          People's judge              [signed]
                                Member of a court

_____[signed]_____
                                      secretary

OOO Inrosmet 620014 Sverdlovskaya oblast, Ekhaterinburg, [name of the street is
illegible] 36-701
ZAO Standart Trust – address is the same
OAO Nizhnetagilsky Metallurgical Industrial Enterprise 622026 Sverdlovskaya oblast,
Nizhniy Tagil, Metallurgov St. 1
AOZT Vedenie Reestrov Companiy 620014 Ekhaterinburg Lenina Ave. 28
Company-Registrar Panorama 123371 Moscow Volokolamskoe shosse 118

Дело № _2-2??_ _____ 199_

Для разового исполнения

## ИСПОЛНИТЕЛЬНЫЙ ЛИСТ

Именем _____ Советской Социалистической Республики

Со_____ 19?? _____ суд _____ ЗАО г. Москва

(полное наименование суда)

«29» сентября 199_ рассмотрел дело ООО"Пирос_ет" _____
(по иску (требованию)

комплект", ОАО"Стандарт Траст" к Иванову Е_____, _____ и
А___ ____ _____ _____ князя Иролакте Эл.Эл._ _____, "дело интерне_ нг",
(наименование истца и ответчика, а по уголовному делу — по уголовному)

ЗАО"_о_пония-регистратор "Панорама" _____ "холд_со
____ ___ _____ _____ компании лимитед" об истребовании имущества из
(или — фамилия, имя и отчество осужденного)

чужого незаконного владения

(сущность требования, а по уголовному делу ст. ст. УК или Указа)

Суд _____ Потребовать лишние обыкновенные акции ОАО"Качканарский горно-
обогатительный комбинат "Ванади_" с лицевых счетов компании "Ростон ___ эд-
___ лимитед" с зачислением на лицевой счет ООО "Пирос_ет" 1245677 _____
____ выпуска (гос. регистрация _____ __ СР-1-139_, по которой счет
ОАО "Нижнетагильский металлургический комбинат" 1С0686 акций II выпуска
(гос. регистрация выпуска 62-III-29С) и 18747610 акций II выпуска (гос. ре-
гистрация выпуска 62-I-1396), на лицевой счет ЗАО"Стандарт Траст" 17018154
акций II выпуска (гос. регистрация 62-I-139_).
Обязать реестродержателя ОАО"Качканарский горнообогатительный комбинат
"Ванади_", ЗАО"Компания-регистратор "Панорама" __ ЛОСТ Джи _не реестра
приговор __ вступил в законную силу по III.1999. г. компани_ провести соответствующие
операции в реестр_ владельцев
ценных бумаг.

Согласно статье 80 Закона о судоустройстве Союза ССР, и автономных республик, предъявляемые судебными исполнителями требования по исполнению судебных приговоров, решений и определений обязательны для всех должностных лиц и граждан.

На основании этого суд ПРИКАЗЫВАЕТ всем должностным лицам и гражданам, к которым это относится, точно и своевременно исполнить решение суда.

Народный судья
Член суда

(подпись)

(подпись)

ООО "Пирос_ет" 620014 (секретарь Свердловской обл.г.Екатеринбург
ул.Малышева, 36-701
ЗАО"Стандарт-Траст" __ том 20
ОАО "Нижнетагильский металлургический комбинат" 622025 Свердловская обл.
г.Нижний Тагил ул.Металлургов
Адрес должника: 620014 г.Екатеринбург, пр-т Ленина дом 28 ЛОСТ Введение ресурсов
135371 г.Москва, Волоколамское шоссе ,,116 = ЗАО "Компания-регистратор
компания"
"Панорама"
Отметки об исполнении

тип. ХОЗУ__92__492 200000

## DECISION
### In the name of the Russian Federation

On September 29, 2000 the Solntsevsky inter-municipal regional court of the city of Moscow in the composition of
presiding federal judge N.V. Ilyin
assessors O.M. Kevorkova, A.M. Matveyeva
and secretary I.A. Pravelieva
having considered in the open court session civil suit No. 2-2747 initiated by the complaint of OOO "Inrosmet", OAO "Nizhnetagilsky metallurgical industrial enterprise", ZAO "Standart Trust" against Yevgeny N. Ivanov, Amber Star LLC, Nexis Products LLC, Davies International, ZAO "Registrator Company Panorama", Omni Trust House Ltd., Holdex LLC, Foston management Ltd. to recover property from unlawful possession

### HAS ESTABLISHED:

The claimants made recourse to the court with a complaint against the respondents to recover from them registered ordinary shares of OAO "Kachkanar ore mining and processing enterprise "Vanadium": OAO "Nizhnetagilsky metallurgical industrial enterprise" — 103626 shares of issue 1, state registration No. 62-1P-290 and 18747610 shares of issue 2, state registration No. 62-1-1396; OOO "Inrosmet" — 1245677 shares of issue 2, state registration No. 62-1-1396; ZAO "Standart Trust" — 17618254 shares of issue 2, state registration No. 62-1-1396, with the face value of 1 ruble, believing themselves to be the owners of the demanded shares which have left their possession contrary to their will, arguing that they had lawfully acquired the relevant amounts of the shares of OAO "Kachkanar ore mining and processing enterprise "Vanadium". As a result of unlawful actions of the respondents, despite court rulings, ZAO "Registrator Company Panorama" wrote off the shares from the accounts of the claimants and entered them in the account of OOO "Ural-Start-Ltd" and the personal account of Ye.N. Ivanov. The claimants ask to recover their shares from unlawful possession and oblige ZAO "Registrator Company Panorama" to make the relevant changes in the register of the holders of securities of OAO "Kachkanar ore mining and processing enterprise "Vanadium" by writing off the registered ordinary shares from the personal accounts of the respondents.

The representative of the claimants supported their stated claims in court. The respondent Ye.N. Ivanov, having been informed in accordance with Article 106 of the RSFSR Civil Procedure Code, did not appear before the court, asking to consider the case in his absence and disagreeing with the stated claims.

The representative of corporate respondents did not acknowledge the suit in court, stating that the companies held the shares of OAO "Kachkanar ore mining and processing enterprise "Vanadium" lawfully, as bona fide purchasers.

Having heard the parties appearing before the court, studied the written materials in the case, the court believes that the stated claims should be satisfied in part for the following reasons.

As it was established in the court session, in accordance with the contract for the sale of securities No. 7393 of 04.11.1997, OAO "Nizhnetagilsky metallurgical industrial enterprise" acquired registered ordinary shares of OAO "Kachkanar ore mining and processing enterprise "Vanadium" in the amount of 103626 shares of issue 1 and 18747610 shares of issue 2. In accordance with the abstract from the register of the

shareholders of OAO "Kachkanar ore mining and processing enterprise "Vanadium" to the personal account of OOO "Inrosmet" there were credited 1245677 shares of issue 2, and to the personal account of ZAO "Standart Trust" — 17618254 shares of issue 2. Thus, in accordance with Article 29 of the Federal Law "On the market of securities", from the moment the shares were entered in their personal accounts the claimants were the owners of the relevant amounts of the shares of OAO "Kachkanar ore mining and processing enterprise "Vanadium".

In April 1998 OOO "Ural-Start-Ltd" made recourse to the Arbitrazh Court for the Sverdlovsk oblast with a complaint against ZAO "Uralelectromash" and other legal entities, including the claimants in the present case, which had acquired shares from ZAO "Uralelectromash", to hold invalid the right of ownership to the shares of OAO "Kachkanar ore mining and processing enterprise "Vanadium" in the amount of 37804355 units and invalidate transactions to dispose of the shares.

In its decision from 16.06.98 the Arbitrazh Court for the Sverdlovsk oblast satisfied the suit, recognizing the right of ownership to the shares of OOO "Ural-Start-Ltd", including to the part of shares belonging to the claimants in the present case. In accordance with the said decision the court applied the consequences of invalidation of void transactions to dispose of the disputed shares of OAO "Kachkanar ore mining and processing enterprise "Vanadium" by writing off the disputed shares from the accounts of the respondents, including from the personal accounts of "OAO "Nizhnetagilsky metallurgical industrial enterprise" — 103626 shares of issue 1 and 18747610 shares of issue 2; OOO "Inrosmet" — 1245677 shares of issue 2; ZAO "Standart Trust" — 17618254 shares of issue 2. The Arbitrazh Court for the Sverdlovsk oblast in the appellate instance by its decree from 29.07.2000 left the decision of the court in the first instance unchanged. After the decision came into effect on 30.07.98 the Arbitrazh Court for the Sverdlovsk oblast issued a writ of execution, which, inter alia, obliged the register holder of OAO "Kachkanar ore mining and processing enterprise "Vanadium" to perform the relevant operations with the register of the holders of securities, including the writing-off from the accounts of the claimants in the given case the above-mentioned amounts of shares. As a result of change of register holders on 01.09.98 ZAO "Registrator Company Panorama" received under an act of transfer all documents forming the system of keeping the register of OAO "Kachkanar ore mining and processing enterprise "Vanadium".

On 03.08.98 the respondents in case No. A60-483/98-C2 (claimants in the present case) filed a cassational complaint against the decision of the first instance and decree of the appellate instance. On 10.08.98 the Federal Arbitrazh Court for the Urals circuit issued a determination to suspend the execution of the court acts. However, despite that, ZAO "Registrator Company Panorama" on the basis of writ of execution No. 0006062 and the ruling from 10.08.98 to commence execution proceedings submitted by OOO "Ural-Start-Ltd" carried out operations to transfer the disputed shares from the accounts of the claimants in the present case to the personal account of OOO "Ural-Start-Ltd", which is confirmed by the reference issued by ZAO "Registrator Company Panorama" on 01.10.98.

On 08.09.98 the Federal Arbitrazh Court for the Urals circuit by its decree reversed the decision of the court of the first instance from 16.06.98 and the decree of the appellate instance from 29.07.98, dismissing the complaint of OOO "Ural-Start-Ltd". The Higher Arbitrazh Court of the Russian Federation in its decree from 01.06.99 cancelled all court acts in the case, remanding it for a new trial to the court of the first instance. On 14.06.2000 the Arbitrazh Court of the Sverdlovsk oblast dismissed the complaint of OOO "Ural-Start-Ltd".

Thus, at the moment of writing off the shares of OAO "Kachkanar ore mining and processing enterprise "Vanadium" from the accounts of OAO "Nizhnetagilsky metallurgical industrial enterprise", ZAO "Standart Trust" and OOO "Inrosmet" on 01.09.98 ZAO "Registrator Company Panorama" had the determination of the Federal Arbitrazh Court for the Urals circuit from 10.08.99 on suspending the execution of the court acts received by special post DH on 14.08.98, which is confirmed by receipt No. 432093965 of the mail company and a registered letter from 20.08.98, which is in turn confirmed by the receipt of the delivery of registered letter 2074 by the Russian Federation post office.

The reason for writing off the shares from the accounts of the claimants and their entering into the personal accounts of the respondents was the writ on initiating execution proceedings from 10.08.98, issued by the court bailiff V.V. Shvetsova at the Meshchansky inter-municipal court of the city of Moscow. It follows from the reports of the head of the department for preventing economic crimes at the Internal affairs department of Yekaterinburg, senior investigator for special cases of the Internal affairs department of Yekaterinburg, head of the 2nd inter-regional department of the officers of the court of the Central administrative district of Moscow, the said writ of a court bailiff is forged, having never been issued by the bailiff, and the documents of execution having never been received by the department of the officers of the court. A criminal case was initiated on the fact of forgery of the writ of the court bailiff against the director of OOO "Ural-Start-Ltd", with the elements of the crime stipulated by Article 159.3 of the Criminal Code of the Russian Federation.

Decision No. 27 of the Federal Commission on Securities of the Russian Federation from 02.10.97 (as amended by the Decisions of the Federal Commission on Securities of the Russian Federation No. 45 from 31.12.97, No. 1 from 12.01.98, No. 8 from 20.04.98) approved the Regulations for the keeping of the register of the holders of registered securities. In accordance with clause 1 of the said Decision there is established the order of keeping and the requirements to the system of keeping the register of the holders of registered securities mandatory for the registrars and issuers. According to Article 7.7.3, the registrar shall enter in the register the data on the transfer of the right of ownership to the securities if a transfer order is submitted by the registered person transferring the securities, the person to whose personal account the securities are to be entered or the authorized agents of either of these persons, and (or) there are presented other documents stipulated by the given Regulations. In particular, in accordance with Article 7.7.3.3, for making an entry in the register about the transfer of the right of ownership to the securities by court ruling it is necessary to have a copy of the court ruling which has entered into effect, witnessed by the court, and a writ of execution.

By the moment of writing off the disputed shares the ZAO "Registrator Company Panorama" had not been fulfilled these requirements.

The fact of wrongful write-off of the shares of OAO "Kachkanar ore mining and processing enterprise "Vanadium" from the accounts of the claimants in the present case is confirmed by the decision of the Disciplinary committee of the self-governing non-profit organization "Professional association of registrars, transfer agents and depositaries" (PARTAD) from 01.02.1999.

Proceeding from the above, the operations to write off registered ordinary shares of OAO "Kachkanar ore mining and processing enterprise "Vanadium" from the accounts of OAO "Nizhnetagilsky metallurgical industrial enterprise" — 103626 shares of issue 1 and 18747610 shares of issue 2; OOO "Inrosmet" — 1245677 shares of issue 2; ZAO "Standart Trust" — 17618254 shares of issue 2 and operations in the register of the

holders of securities are invalid, and the claimants in the present case are the owners of the said number of shares.

The shares requested by the claimants left their possession against their will. In accordance with Article 301 of the Civil Code of the Russian Federation the owner has the right to recover his property from unlawful possession.

At the same time the court has established that in accordance with the operation log book during the period of time beginning with 08.07.1998 as a result of transfer of shares a disputed amount of shares were entered in the personal account of Foston management Ltd., namely, 103480 shares of issue 1 and 37696035 shares of issue 2.

Thus, the acquisition by Foston management Ltd. of a disputed amount of shares belonging to the claimants in the present case, does not have a perfect basis and results in unlawful possession. At that the respondent produced no evidence to prove that he had not and could not have known that the property had been acquired from a person having no right to dispose of it. This constitutes gross negligence which excludes the possibility to protect his interests in accordance with Article 302 of the Civil Code of the Russian Federation.

At the same time the representative of the claimants has not submitted to the court unquestionable proof of the presence of disputed shares on the personal account of Ye.N. Ivanov, and no additional evidence was disclosed in the court session, that is why to the extent of recovering the shares from Ye.N. Ivanov the stated claims are not subject to satisfaction.

In the course of the hearing the court has established that the respondent in the case, ZAO "Registrator Company Panorama", in accordance with the agreement with OAO "Kachkanar ore mining and processing enterprise "Vanadium" shall transfer the keeping of the register to AOZT "Vedeniye reestrov kompaniy", Yekaterinburg. Thus, in accordance with Decision No. 27 of the Federal Commission on Securities of the Russian Federation from 02.10.97, the register holder shall carry out the relevant operations in the register of the holders of securities, and, inter alia, to write off from the accounts of Foston management Ltd. and transfer to the personal accounts of the claimants the amounts of the registered ordinary shares of issues 1 and 2 of OAO "Kachkanar ore mining and processing enterprise "Vanadium" corresponding to the stated claims.

On the basis of the above, being guided by Articles 191 to 197 of the RSFSR Civil Procedure Code, the court

## HAS DECIDED:

To recover the registered ordinary shares of OAO "Kachkanar ore mining and processing enterprise "Vanadium" from the personal accounts of Foston management Ltd. and enter them into the personal accounts of OOO "Inrosmet" — 1245677 shares of issue 2, state registration No. 62-1-1396; OAO "Nizhnetagilsky metallurgical industrial enterprise" — 103626 shares of issue 1, state registration No. 62-1P-290 and 18747610 shares of issue 2, state registration No. 62-1-1396; ZAO "Standart Trust" — 17618254 shares of issue 2, state registration No. 62-1-1396.

To oblige the register holder of OAO "Kachkanar ore mining and processing enterprise "Vanadium", ZAO "Registrator Company Panorama" and AOZT "Vedeniye reestrov kompaniy", to carry out the relevant operations in the register of the holders of securities.

To dismiss the other stated claims.

The decision may be challenged and appealed to the Moscow city court within 10 days.

Judge          [signature]
Assessors      [signature]

True copy
Judge          [signature]

The decision came into effect on 10.10.2000.

Judge          [signature]

Р Е Ш Е Н И Е

Именем  Российской  Федерации

29 сентября 2000 г. Солнцевский межмуниципальный районный суд
г.Москвы в составе председательствующего федерального судьи
Ильина Н.В. , народных заседателей Кеворковой О.М.,Матвеевой А.М.
при секретаре Правельевой И.А.,
рассмотрев в открытом судебном заседании гражданское дело №2-2747
по иску ООО "Инросмет", АОА "Нижнетагильский металлургический ко
мбинат", ЗАО "Стандарт Траст" к Иванову Евгению Николаевичу,компа
ниям "Амбер Стар Эл.Эл.Си", "Наксис Продакте Эл.Эл.Си.", "Девис
Интернешнл", ЗАО "Компания-регистратор "Панорама", "Омни Траст
хаус Лимитед","Холдекс Эл.Эл.Си.", "Фостон менеджмент лимитед"
об истребовании имущества из чужого незаконного владения,

У С Т А Н О В И Л :

истцы  обратились в суд с иском к ответчикам об истребовании у
них обыкновенных именных акций ОАО "Качканарский горно-обогати-
тельный комбинат "Ванадий": ОАО "Нижнотагисний металлургический
комбинат в количестве 103626 акций I выпуска I выпуска № гос.регистрации
62-1П-290 и 18747610 акций II выпуска № гос.регистрации 62-1-
1396 ; ООО "Инросмет" - 1245677 акций II выпуска № гос.регистрации 62-
62-1-1396 ; ЗАО "Стандарт Траст" 17618254 акций II выпуска №гос.
регистрации 62-1-1396 , номинальной стоимостью 1 рубль, считая
что они являются собственниками истребуемых акций, которые выбы-
ли из владения помимо их воли,мотивируя эти требования тем,что
они законно приобрели соответствующие количества акций ОАО "Гор
нообогатительный комбинат "Ванадий".В результате незаконных дей
ствий ответчиков,не смотря на судебные решения, ЗАО "Компания ро
гистратор "Панорама" списала акции со счетов истцов и зачислило
на счет ООО "Урал-Старт-Лтд" и на лицевой счет Иванова Е.Н. Ист
цы просят истребовать свои акции из чужого незаконного владения
и обязать ЗАО "Компания-регистратор "Панорама" внести изменения
в реестр владельцев ценных бумаг ОАО "Горнообогатительный комби-
нат "Ванадий" путем списания обыкновенных именных акций с лице-
вых счетов ответчиков.
Представитель истцов поддержал в суде исковые требования.
Ответчик Иванов Е.Н. в суд не явился,извещен в соответствии со
ст.106 ГПК РСФСР,просит рассмотреть дело в его отсутсвие , с
исковыми требованиями не согласен.
Представитель ответчиков-компаний в суде иск не признал,заявив
что компании владеют акциями ОАО "Горнообогатительный комбинат
"Ванадий" на законном основании, как добросовестные приобрета-
тели.
Выслушав явившиеся стороны,изучив письменные материалы дела,суд
находит исковые требования подлежащие удовлетворению   частично
по следующим основаниям.
Как установлено в суде, в соответствии с договором купли-продажи
ценных бумаг №7393 от 04.11.1997 г. ОАО "Нижнетагиский металлур-
гический комбинат" приобрело обыкновенные именные акции ОАО "Кач-
канарский горнообогатительный комбинат "Ванадий" в количестве
103626  акций I выпуска и 18747610 II выпуска. В соответствии с
выпиской из реестра акционеров ОАО "Качканарский горнообогателе-
льный комбинат "Ванадий" на лицевой счет ЗАО "Стандарт Траст"
было зачислено 17618254 акций II выпуска, а на лицевой счет ООО
"Инросмет" - 1245677 акций II выпуска. Таким образом, в соответст

вии со ст.29 Федерального закона "О рынке ценных бумаг" истцы с момента зачисления акций на их лицевые счета являлись собственниками соответствующих количеств акций ОАО "Качканарский горно-обогатительный комбинат "Ванадий".

В апреле 1998 г. компания ООО "Урал-Старт-Лтд" обратилась в Арбитражный суд Свердловской области с иском к ЗАО "Уралэлектромаш" и другим юридическим лицам, в том числе и к истцам по данному делу, которые приобрели акции у ЗАО "Уралэлектромаш", о признании права собственности на акции ОАО "Качканарский горнообогатительный комбинат "Ванадий" в количестве 37804355 штук и признании сделок по отчуждению акций недействительными.

Решением Арбитражного суда Свердловской области от 16.06.98г. иск был удовлетворен и за ООО "Урал-Старт-ЛТД" было признано право собственности на акции, в том числе на часть акций, находящихся в собственности истцов по данному делу. В соответствии с данным решением суд применил последствия недействительности ничтожных сделок по отчуждению спорных акций ОАО "Качканарский корнообогатительный комбинат "Ванадий" путем списания спорных акций со счетов ответчиков, в том числе с лицевых счетов ОАО "Нижнетагильский металлургический комбинат" 103626 акций I выпуска, 18747610 акций II выпуска, ООО "Инросмет" 1245677 акций II выпуска, ЗАО "Стандарт Траст" 17618254 акций II выпуска. Постановлением аппеляционной инстанции Арбитражного суда Свердловской области от 29.07.2000 г. решение суда 1 инстанции оставлено без изменения После вступления решения в законную силу 30.07.98 г.Арбитражным судом Свердловской области был выдан исполнительный лист, в том числе на обязание реестродержателя ОАО "Качканарский горнообогатительный комбинат "Ванадий" произвести соответствующие операции в реестре владельцев ценных бумаг, в том числе списать со счетов истцов по данному делу вышеуказанных количеств акций. В результате смены реестродержателей 01.09.98 г. ЗАО "Компания-регистратор "Панорама" получила по акту приема-передачи все документы, составляющие систему ведения реестра ОАО "Качканарский горно-обогатительный комбинат "Ванадий".

03.08.98 г. ответчиками по делу №А60-483/98-С2 /истцами по данному делу / была подана кассационная жалоба на решение 1 инстанции и постановление аппеляционной инстанции. 10.08.98 г. Федеральным арбитражным судом Уральского округа было вынесено определение о приостановлении исполнения судебных актов. Однако, несмотря на это, ЗАО "Компания-регистратор "Панорама" на основании исполнительного листа №0006062 и представленного ООО "Урал-Старт-Лтд" постановления о возбуждении исполнительного производства 10.08.98 г. осуществила операции по переводу спорных акций со счетов истцов по данному делу на лицевой счет ООО "Урал-Старт-Лтд", что подтверждается справкой ЗАО "Компания-регистратор "Панорама" от 01.10.98 г.

08.09.98г. Постановлением Федерального Арбитражного суда Уральского округа решение суда 1 инстанции от 16.06.98 г. и постановление аппеляционной инстанции от 29.07.98 г. отменены, в иске ООО "Урал Старт-Лтд" отказано. Постановлением ВАС РФ от 01.06.99 г. все состоявшиеся по данному делу судебные акты отменены, дело направлено на новое рассмотрение в суд 1 инстанции. 14.06.2000г. Арбитражный суд Свердловской области оставил иск ООО "Урал-Старт-Лтд" без рассмотрения.

Таким образом, на момент списания акций ОАО "Качканарский горно-обогатительный комбинат "Ванадий" со счетов ОАО "Нижнетагиский металлругический комбинат", "ЗАО "Стандарт Траст", ООО "Инросмет" 01.09.98 г. ЗАО "Компания-регистратор "Панорама" имела определение Федерального арбитражного суда Уральского округа от 10.08.98 о приостановлении исполнения судебных актов, которое было получа-

спецпочтой ДН 14.08.98г., что подтверждается квитанцией почтовой компании №432093965 и заказным письмом 20.08.98г., что в свою очередь подтверждается уведомлением о вручении отделением связи РФ заказного письма 2074.

Основанием списания акций со счетов истцов и зачисление их на лицевые счета ответчиков явилось постановление о возбуждении исполнительного производства от 10.08.98 г., вынесенное судебным приставом-исполнителем Швецовой В.В. при Мещанском м/м суде г.Москвы.Как следует из сообщений начальника ОБЭП УВД г.Екатеринбурга, ст.следователя по ОВД СО УВД г.Екатеринбурга, начальника 2 межрайонного отдела службы судебных приставов г.Москвы по ЦАО указанное постановление судебного пристава является подложным, приставом никогда не выносилось, а исполнительные документы в адрес службы судебных приставов-исполнителей не поступали. По факту подделки постановления судебного пристава в отношении директора ООО "Урал-Старт-Лтд" возбуждено уголовное дело по признакам преступления, предусмотренного ч.3 ст.159 УК РФ.

Постановлением Федеральной комиссии по рынку ценных бумаг №27 от 02.10.97г./в редакции Постановлений ФКЦБ РФ от 31.12.97 №45, от 12.01.98 №1 , от 20.04.98 №8 /утверждено Положение о ведении реестра владельцев ценных бумаг. В соответствии со ст.1 указанного Положения устанавливается порядок ведения и требования предъявляемые к системе ведения реестра владельцев именных ценных бумаг, обязательные для исполнения регистраторами и эмитентами. В соответствии со ст.7, п.7.3 регистратор обязан вносить в реестр записи о переходе прав собственности на ценные бумаги припредставлени передаточного распоряжения зарегистрированным лицом,передающим ценные бумаги или лицом, на лицевой счет которого должны быть зачислены ценные бумаги,или уполномоченными представителями одного из этих лиц и /или/ иных документов,предусмотренных настоящим положением. В частности , в соответствии со ст.7 п.7.3.3 для внесения в реестр записи о переходе прав собственности на ценные бумаги по решению суда необходимо наличие копии решения суда,вступившего в законную силу,заверенную судом и исполнительный лист.

На момент осуществления списания спорных акций данные требования компанией -регистратором "Панорама" не были выполнены.

Факт неправомерного списания акций ОАО "Качканарский горнообогатительный комбинат "Ванадий" со счетов истцов по данному делу подтверждается решением Дисциплинарного комитета саморегулируемой некоммерческой организации "Профессиональная ассоциация регистраторов,трансферагентов и депозитариев" /ПАРТАД/ от 01.02.1999 г.

На основании изложенного, обыкновенные именные акции ОАО "Качканарский горнообогатительный комбинат "Ванадий", списанные со счетов ОАО "Нижнетагильский металлургический комбинат" в количестве 103 626 акций I выпуска и 18747610 акций II выпуска, со счетов ЗАО "Стандарт Траст" в количестве 17618254 акции II выпуска, со счето в ООО "Инросмет" в количестве 1245677 акций II выпуска, операции в реестре владельцев ценных бумаг является недействительными, а истцы по данному делу являются собственниками указанного количества акций.

Истребуемые истцами акции выбыли из владения помимо их воли.
В соответствии со ст.301 ГК РФ собственник вправе истребовать свое имущество из чужого незаконного владения.

Вместе с тем, судом установлено , что согласно регистрационному журналу операций за период с 08.07.1998 г. в результате перемещений акций спорное количество акций зачислено на лицевой счет компании "Фостон менеджмент лимитед", а именно 103480 акций I выпуск и 37696035 акций II выпуска.

Таким образом,приобретение компанией "Фостон менеджмент лимитед" спорного количества акций, принадлежащих на праве собственности

истцам по данному делу, имеет порочное основание и носит незаконн
ный характер владения. При этом, ответчик не представил доказа-
тельств, что он не знал и не мог знать, что имущество приобретает
ся у лица,которое не вправе его отчуждать.На лицо грубая неосто-
рожность, которая исключает возможность защиты его интересов в
соответствии со ст.302 ГК РФ.
Вместе с тем, представителем истцов не представлены суду беспор-
ных доказательств наличия спорных акций на лицевом счете Иванова
Е.Н. и в суде дополнительных доказательств не установлено,поэто-
му в части истребования акций от Иванова Е.Н. исковые требования
удовлетворению не подлежат.
В ходе судебного разбирательства судом установлено, что ответчик
по делу ЗАО "Компания-регистратор "Панорама" в соответствии с сог
лашением с ОАО "Качканарский горнообогатительный комбинат "Вана-
дий" передает ведение реестра АОЗТ "Ведение реестров компаний"
г.Екатеринбурга . Таким образом, в соответствии с Положением о
ведении реестра ценных бумаг,утвержденного Постановлением Феде-
ральной комиссии по рынку ценных бумаг № 27 от 02.10.97 г.,ре!
естродержатель обязан произвести соответствующие операции в ре-
естре владельцев ценных бумаг, в том числе списать со счетов
компании "Фостон менеджмент лимитед" и превести на лицеыве счета
истцов соответствующие исковым требованиям количество обыкновенны
именных акций ОАО "Качканарский горнообогатительный комбинат "Ва-
надий" I и II выпусков.
На основании изложенного,руководствуясь ст.ст.191-197 ГПК РСФСР,
суд

Р Е Ш И Л :

Истребовать именные обыкновенные акции ОАО "Качканарский горно
обогатительный комбинат "Ванадий" с лицевых счетов компании
"Фостон менеджмент лимитед" с зачислением на лицевой счет ООО
"Инросмет" 1245677 акций II выпуска /№гос.регистрации выпуска
62-1-1396/ , на лицевой счет ОАО "Нижнетагильский металлургичес
кий комбинат " 103626 акций II выпуска /№гос.регистрации выпуска
62-1П-290/ и 18747610 акций II выпуска /№гос.регистрации выпуска
62-1-1396/, на лицевой счет ЗАО "Стандарт Траст" 17618254 акции
II выпуска /№ гос.регистрации 62-1-1396 /.
Обязать реестродержателя ОАО "Качканарский горнообогатительный
комбинат "Ванадий"  ЗАО "Компания-регистратор "Панорама" и АОЗТ
"Ведение реестров компаний" произвести соответствующие операции
в реестре владельцев ценных бумаг
В остальной части исковых требований - отказать.
Решение может быть обжаловано и опротестовано в Мсогорсуд в 10-
дневный срок ..

Судья: _подпись_

Народные заседатели: _подписи_

_подписи и печати_

SUPREME COURT
OF THE RUSSIAN FEDERATION
103289. Moscow. Ilyinka. 7/3
23.11.2000 OPG No. 25f-1813

/Stamp illegible/
7982          27.11.00
To the Chairman of the Solntsevo
Inter-municipal Court of Moscow

Copy to:
Shulrufer. M.A.

For auditing purposes. you are requested to submit to the Supreme Court of the Russian
Federation the materials of the civil litigation between OJSC Inrosmet and Mr. Evgeny
Nikolayevich Ivanov relating to the recovery of property from an illegal possession by
another.

Vice-Chairman
Supreme Court of the Russian Federation          N. Sergeyeva

28.DEC.2000  13:52                                        NO.706    P.3

ВЕРХОВНЫЙ СУД
РОССИЙСКОЙ ФЕДЕРАЦИИ
103289, Москва, ул. Ильинка, д. 7/3
23.11.2000 СИП № оп 25Ф-1813

                                          Председателю Солнцевского
                                          межмуниципального суда
                                          г. Москвы

                                          КОПИЯ:
                                          Шульруфер М.А.

         Для проверки в порядке надзора прошу направить в Верховный суд Российской

Федерации гражданское дело по иску ООО "Инросмет" к Иванову Евгению Николаевичу об

истребовании имущества из чужого незаконного владения.


Заместитель Председателя                           Н.Сергеева
Верховного суда Российской Федерации              Н.Сергеева


3

28 Nov 2000
Outgoing No. 1157

To the Supreme Court of the Russian Federation
Vice-Chair of the Supreme Court of the RF
N. Sergeyeva
Moscow, Ilyinka Street, 7/3

In response to your request No. 25f—1813, dated November 23, 2000OPG, the Solntsevo Inter-municipal Court of Moscow hereby submits the materials of the case No. 2—2747/00g, a civil litigation between OJSC Inrosmet, OJSC Nizhnetagilsky Metallurgical Combine, CJSC Standart Trust, and Mr. Evgeny Nikolayevich Ivanov, et. al., in relation to the recovery of property from an illegal possession by another.

Enclosure: civil case 2—2747/00g, on 395 pages.

Chairman of the Solntsevo
Inter-municipal Court of Moscow                      S.M. Danilov

Vice-Chairman                    /signature/         N.V. Goldin

*Hand delivered package accepted by Kurkin M.I.  /signature/*
*ID No. /illegible/  28.11.00*

28.DEC.2000  13:53                                   NO.785   P.4

28 ........
ИСХ. 1157

В Верховный суд  Российской Федерации
Зам. Председателя Верховного суда РФ
Сергеевой Н.
г.Москва, ул. Ильинка, дом 7/3

Солнцевский межмуниципальный суд ЗАО г.Москвы на Ваш
исходящий 25Ф-1813 от 23.11.20000ПГ   направляет гражданское
дело 2-2747/00г. по иску ООО "Инросмет", ОАО " Нижнетагиль-
ский  металлургический  комбинат", ЗАО " Стандарт Траст" к
Иванову Евгению Николаевичу и др. об истребовании имущества
из чужого незаконного владения.

Приложение: гражд. дело 2-2747/00г. на 395 л

Председатель Солнцевского межмуници-
пального суда ЗАО г.Москвы                    Данилов С.М.

26 ТМО 3. 1997 86 г Т. 200000

SUPREME COURT
OF THE RUSSIAN FEDERATION

103289 Moscow, 7/3 Ilyuin Street

24.01.2001 OPG No. gr01-276
[In reply] to No. 8 of 15. 01.2001

To: Attorney Polyakevich G.V.
117218 Moscow
20/30 Krzhizhanovsky Street, Bldg. 4

This is a response to Attorney Polyakevich's request. The Supreme Court of the Russian Federation has never received any appeals from the parties to the litigation in the civil action OOO "Inrosmet" v. Ivanov Eugeniy Nikolaevich (recovery of property from an illegal possession by another), filed with the Solntsevo Inter-municipal Court of Moscow.

The copy of the "Demand" letter (OPG No. 25f-1813, dated 23 November 2000) is an obvious falsification based on its formatting, wording, nonexistent case number, and a clearly forged signature.

Moreover, the mentioned in your letter Mr. Kurkin is not employed by the Supreme Court.

Deputy Director of the
Department of Citizens' Complaints,
Senior Advisor of Jurisprudence

L.Yu. Trofimovich



Адвокату Полякевичу Г.В.

**ВЕРХОВНЫЙ СУД
РОССИЙСКОЙ ФЕДЕРАЦИИ**

103289, г. Москва, ул. Ильинка, д. 7/3

117218 Москва
ул.Кржижановского, 20/30, корпус 4

24.01.2001 ОПГ  № гр01-276
на № 8 от 15.01.2001г.

В связи с Вашим заявлением сообщаю, что в Верховный Суд РФ никаких жалоб от участников судебного процесса по делу по иску ООО «Инросмет» к Иванову Евгению Николаевичу об истребовании имущества из чужого незаконного владения, рассмотренному Солнцевским межмуниципальным судом Москвы, не поступало и, соответственно, Верховный Суд РФ дело для проверки в порядке надзора не запрашивал.

Представленная Вами ксерокопия «запроса» ОПГ № 25ф-1813 от 23 ноября 2000 года свидетельствует о явной подделке (оформление, компоновка текста, несуществующий номер надзорного производства, явно сфальсифицированная подпись).

Кроме того, упомянутый в Вашем заявлении Куркин в Верховном Суде РФ не работает.

Заместитель начальника
отдела приема граждан
Старший советник юстиции                                                    Л.Ю.Трофимович