В Арбитражный суд
Свердловской области

**Истцы:** 1. Открытое акционерное общество
«Нижнетагильский металлургический комбинат»
(почтовый адрес: 622025 Свердловская обл.
г. Нижний Тагил, ул. Металлургов, 1)

2. Общество с ограниченной ответственностью «Инросмет»
(почтовый адрес: 620014 г.Екатеринбург
ул. Малышева д. 36. оф.701)

3. Закрытое акционерное общество «Стандарт Траст»
(почтовый адрес: 620014 г.Екатеринбург
ул. Малышева д. 36. оф.701)

**Ответчики:** 1. Общество с ограниченной ответственностью
«Урал-Стэрт-ЛТД»
(почтовый адрес: 620026 г. Екатеринбург, ул. Карла Маркса, д.20
620010, г.Екатеринбург ул. Грибоедова, д.26)

2. ООО «Легат»
(почтовый адрес: 358000 Калмыкия, г. Элиста, ул. Ленина, 249, к.505)

3. ООО «Аконит»
(почтовый адрес: 35800 Калмыкия, г. Элиста, ул. Ленина 249, к.101)

4. Компания «Джеконет Лимитед»
Djekonet Limited
(почтовый адрес: Parliament Street 14/15 Dublin 2 Ireland)

5. ООО «Уралпромопт»
(почтовый адрес: 620130, г.Екатеринбург, ул. Разина д.109А, комн.228)

6. ООО «Компания «Сити Трейд»
(почтовый адрес: 620103 г.Екатеринбург, ул. Селькоровская, д.82Б, к.6)

7. ООО «Марэко ТК»
(почтовый адрес: 123557 г.Москва , Б.Тишинский пер. д.37)

8. ЗАО «Фаргос»
(почтовый адрес: 125047, г.Москва, 3-я Тверская-Ямская, д.26/6, комн.12)

9. ЗАО «Мэзант»
(почтовый адрес: 107082, г.Москва Спартаковская пл., д.14, стр.1)

10. Компания «Амбер Стар Эл.Эл.Си»
Amber Star L.L.S.
(почтовый адрес: 318 N.Carson Street, Carson City, Nevada 89701 USA)

11. ООО «Дженкон»
(почтовый адрес: 111531 г. Москва ш.Энтузиастов, д. 96, корп.4)

12. Компания «Нимеган Трейдинг Лимитед

Арбитражный суд
Свердловской области
ПОСТУПИЛО

3 0 ОКТ 2001

№ _____

FROM : EKATERINBURG                    PHONE NO. : 7 3432 53 19 76

Nimegan Trading Limited
(почтовый адрес: 30 KARPENISI STREET NICOSIA 1660 CYPRUS)

13. Компания «Нэксиз Продакс Эл.Эл.Си»
Nexis Products L.L.S.
(почтовый адрес: Suit 104, 47 West 200South, Salt Lake City, Utah 84101 USA)

14. компания «Фостон менеджмент лимитед»
Foston Management Limited
(почтовый адрес: 1, Naousis Street
Larnaca, 6302 а/я 254, CYPRUS)

Третьи лица, не заявляющие самостоятельных требований,
на стороне ответчика:
Закрытое акционерное общество «Компания-регистратор «Панорама»
(почтовый адрес: 123371 г. Москва, Волоколамское шоссе, д.116)

Закрытое акционерное общество «Ведение реестров компаний»
(почтовый адрес: 620014 г. Екатеринбург, ул. Ленина  д.28)

Объединение юридических лиц «Депозитарно-расчетный союз»
(почтовый адрес:103045 г.Москва, Сретенский бульвар, д.9/2, оф.12)

Закрытое акционерное общество «Депозитарно-клиринговая компания»
(почтовый адрес: 103064, г.Москва, ул. Старая Басманная, д.14/2, стр. 4)

ОАО «Качканарский горно-обогатительный комбинат «Ванадий»
(почтовый адрес: 624356 Свердловская обл. г. Качканар , ул. Свердлова,д.2.)

Исковое заявление
о признании сделок  недействительными

« 30 » октября 2001г.

I. Истцы ОАО «Нижнетагильский металлургический комбинат», ООО «Инросмет», ЗАО «Стандарт Траст» просят признать недействительными сделки, совершенные между ответчиками с акциями Открытого акционерного общества «Качканарский горно-обогатительный комбинат «Ванадий», как противоречащие закону. Перечень сделок  прилагается – приложение № 1.

В 1998г. Истцы являлись собственниками следующего количества акций ОАО «Качканарский горно-обогатительный комбинат «Ванадий»:
- ОАО «Нижнетагильский металлургический комбинат» 103 626 акций I выпуска (№ гос. регистрации выпуска 62-1П-290) и 18 747 610 акций II выпуска (№ гос. регистрации выпуска 62-1-1396), номинальной стоимостью  1(один) рубль;
- ООО «Инросмет» 1 245 677 акций II выпуска (№ гос. регистрации выпуска 62-1-1396), номинальной стоимостью 1(один) рубль;
- ЗАО «Стандарт Траст» 17 618 254 акций II выпуска (№ гос. регистрации выпуска 62-1-1396), номинальной стоимостью  1(один) рубль;
Данные акции были переданы истцам от ЗАО «Уралэлектромаш» по договорам купли-продажи, о чем в реестре владельцев ценных бумаг ОАО «Качканарский горно-обогатительный комбинат «Ванадий»  была совершена соответствующая запись о зачислении акций ОАО «Качканарский горно-обогатительный комбинат «Ванадий» на лицевые счета истцов. В соответствии со ст. 29 Федерального закона «О рынке ценных бумаг» истцы с момента зачисления акций на его лицевой счет являлись собственниками акций ОАО «Качканарский горно-обогатительный комбинат «Ванадий».

В апреле 1998г. компания ООО «Урал-Старт-ЛТД» обратилась в Арбитражный суд Свердловской области с иском  к ЗАО «Уралэлектромаш» и другим юридическим лицам, которые приобрели акции у  ЗАО «Уралэлектромаш», в том  числе  и  к  истцам,  о признании права

собственности на акции ОАО «Качканарский горно-обогатительный комбинат «Ванадий» в количестве 37 804 555 штук и признании недействительными сделок по отчуждению акций.

Решением Арбитражного суда Свердловской области от 16.06.98г. по данному делу № А60-483/98-С2 иск был удовлетворен и за ООО «Урал-Старт-ЛТД» было признано право собственности на акции, в том числе на часть акций, находящихся в собственности истцов. В соответствии с данным решением суд применил последствия недействительности ничтожных сделок по отчуждению спорных акций ОАО «Качканарский горно-обогатительный комбинат «Ванадий» путем списания спорных акций с лицевых счетов ОАО «Нижнетагильский металлургический комбинат», ООО «Инросмет», ЗАО «Стандарт Траст».

Постановлением апелляционной инстанции Арбитражного суда Свердловской области от 29.07.2000г. решение суда первой инстанции оставлено без изменения.

После вступления решения по делу № А60-483/98-С2 в законную силу 30.07.98г. Арбитражным судом Свердловской области был выдан исполнительный лист, в том числе на обязание реестродержателя ОАО «Качканарский горно-обогатительный комбинат «Ванадий» произвести соответствующие операции в реестре владельцев ценных бумаг, в том числе списать со счета ОАО «Нижнетагильский металлургический комбинат» 103 626 акций I выпуска, 18 747 610 акций II выпуска, ООО «Инросмет» 1 245 677 акций II выпуска, ЗАО «Стандарт Траст» 17 618 254 акций II выпуск. На момент вступления решения в силу и его исполнения реестродержателем реестра акционеров ОАО «Качканарский горно-обогатительный комбинат «Ванадий» являлось ЗАО «Компания-регистратор «Панорама».

03.08.98г. ответчиками по делу № А60-483/98-С2 была подана кассационная жалоба на решение первой инстанции и постановление апелляционной инстанции. По ходатайству 10.08.98г. Федеральным арбитражным судом Уральского округа было вынесено определение о приостановлении исполнения судебных актов по данному делу.

Несмотря на вынесение определения о приостановлении исполнения решения по делу, 01.09.98г. ЗАО «Компания- регистратор «Панорама» на основании исполнительного листа №006062 и предъявленного ООО «Урал-Старт-ЛТД» постановления о возбуждении исполнительного производства от 10.08.98г. осуществила операцию по переводу спорных акций со счета ОАО «Нижнетагильский металлургический комбинат», ООО «Инросмет», ЗАО «Стандарт Траст» на лицевой счет ООО «Урал-Старт-ЛТД», данный факт подтверждается справкой ЗАО «Компания-регистратор «Панорама» от 01.10.98г. (Копии справок прилагаются –Приложение № 2).

08.09.98г. Постановлением Федерального Арбитражного суда Уральского округа решение суда I инстанции от 16.06.98г. и постановление апелляционной инстанции от 29.07.98г. отменены, в иске ООО «Урал-Старт-ЛТД» отказано.

Постановлением ВАС РФ от 01.06.99г. все состоявшиеся по данному делу судебные акты отменены, дело направлено на новое рассмотрение в суд первой инстанции.

14.06.2000г. Арбитражный суд Свердловской области оставил иск ООО «Урал-Старт-ЛТД» без рассмотрения.

Все вышеперечисленные судебные акты прилагаются к настоящему отзыву.–Приложение №3.

В связи с вышеизложенным, истцы считают, что операция в реестре владельцев ценных бумаг ОАО «Качканарский горно-обогатительный комбинат «Ванадий» по списанию акций с их лицевых счетов на счет ООО «Урал-Старт-ЛТД» незаконна и, следовательно, ООО «Урал-Старт-ЛТД» не имело право распоряжаться акциями, зачисленными на его лицевой счет в реестре владельцев ценных бумаг ОАО «Качканарский горно-обогатительный комбинат «Ванадий» на основании решения Арбитражного суда Свердловской области от 16.06.98г., по следующим основаниям:

1. На момент списания акций ОАО «Качканарский горно-обогатительный комбинат «Ванадий» со счетов истцов 01.09.98г. ЗАО «Компания-регистратор «Панорама» имела определение Федерального арбитражного суда Уральского округа от 10.08.98г. о приостановлении исполнения судебных актов по данному делу. Данное определение ЗАО «Компания-регистратор «Панорама» получила спецпочтой DHL 14.08.98г., что подтверждается квитанцией почтовой компании № 432093965 (копия прилагается – Приложение № 4) и заказным письмом 20.08.98г., что подтверждается уведомлением о вручении отделением связи РФ заказного письма № 2074 (копия уведомления прилагается - Приложение № 5).

2. Основанием списания акций со счетов истцов являлось  предъявленное ООО «Урал-Старт-ЛТД» постановление о возбуждении исполнительного производства от 10.08.98г. (копии постановления прилагается –Приложение № 6), вынесенное  судебным приставом-исполнителем Швецовой В.В.  при Мещанском межмуниципальном суде г. Москвы. Указанное постановление судебного пристава является подложным, приставом никогда не выносилось, а  исполнительные документы для возбуждения исполнительного производства в адрес службы судебных приставов не поступали. Данный факт подтверждается письмом начальника ОБЭП УВД г.Екатеринбурга С.И. Купрацевич (копия письма прилагается –приложение № 7). Кроме того, по факту подделки постановления судебного пристава ОБЭП УВД г. Екатеринбурга в отношении директора  ООО «Урал-Старт-ЛТД» Кулиева А.М.  возбуждено уголовное дело № 31506 по признакам преступления, предусмотренного ч.3. ст.159 УК РФ. Копия письма ст. следователя по ОВД СО УВД г. Екатеринбурга И.И. Самылова прилагается – Приложение №8).

3. Решение Арбитражного суда Свердловской области от 16.06.98г., на основании которого произведено списание акций с лицевых счетов  истцов,  было отменено Федеральным Арбитражным судом Уральского округа и Высшем Арбитражным судом РФ как незаконное и необоснованное в последствие исковое требование ООО «Урал-Старт-ЛТД» о признание права собственности на акции, списанные с истцов, оставлено без рассмотрения.   Учитывая вышеизложенное, ООО «Урал-Старт-ЛТД» получило акции на незаконном основании.

Факт  неправомерного списания акций ОАО «Качканарский горно-обогатительный комбинат «Ванадий»  со счетов  истцов  подтверждается  решением  Дисциплинарного комитета саморегулируемой некоммерческой организации «Профессиональная ассоциация регистраторов, трансфер-агентов и депозитариев» (ПАРТАД) от 01 февраля 1999г. Дело №2/99-Д. Копии решения прилагается – Приложение № 9). Кроме  того, операция в реестре владельцев ценных бумаг по списанию акций ОАО «Качканарский горно-обогатительный комбинат «Ванадий» с лицевых счетов истцов из основании  подложного постановления судебного пристава- исполнителя   и вопреки запрету Федерального Арбитражного суда Уральского округа 09.08.2000г. признана Апелляционной инстанцией Арбитражного суда Свердловской области  незаконной. (Копия решения прилагается – Приложение № 10).

Таким образом, обыкновенные именные акции ОАО «Качканарский горно-обогатительный комбинат «Ванадий»  были незаконно списаны со счетов истцов, операция  в реестре владельцев ценных бумаг является  недействительной.

II. Незаконно  списанные со счетов истцов  обыкновенные именные  акции ОАО «Качканарский горно-обогатительный комбинат «Ванадий»  были зачислены на счет ООО «Урал-Старт-ЛТД». Таким образом, первоначальным незаконным владельцем  акций, принадлежащих истцам, являлось ООО «Урал-Старт-ЛТД».  ООО «Урал-Старт-ЛТД» не являлось  собственником акций  и в силу ст. 209 ГК РФ  не имело право  распоряжаться акциями ОАО «Качканарский горно-обогатительный комбинат «Ванадий», полученных на основании отмененного решения суда. Учитывая вышеизложенное,  сделка  ООО «Урал-Старт-ЛТД»  по отчуждению акций  ОАО «Качканарский горно-обогатительный комбинат «Ванадий»  недействительна в соответствии со ст. 168 и 209 ГК,  а также недействительны все последующие сделки с данными акциями.

На основании договора купли-продажи   № 03/ГОКа от 30.07.98г.  и соответствующего передаточного распоряжения акции были списаны с лицевого  счета ООО «Урал-Старт-ЛТД» и зачислены на счет ООО «Легат». В последствии данные акции были неоднократно отчуждены различным лицам по различным договорам. Истцы просят суд признать недействительными все сделки, совершенные с акциями ОАО «Качканарский горно-обогатительный комбинат «Ванадий», принадлежащих истцам, начиная со сделки по отчуждению ООО «Урал-Старт-ЛТД»  акции ООО «Легат» и все последующие сделки согласно прилагаемому списку, всего 18 сделок.

Перечень  сделок, совершенных с  акциями,  составлен  на  основании  данных специализированного  регистратора  ЗАО «Компания-регистратор «Панорама»  и  получен  от эмитента ОАО «Качканарский горно-обогатительный   комбинат «Ванадий». Копия ответа ОАО

«Качканарский горно-обогатительный комбинат «Ванадий» на запрос прилагается Приложение № 11.

В связи с тем, что истцы не обладают договорами купли-продажи акций, в рамках которых передавались акции между ответчиками, истцы в соответствии со ст. 54 АПК РФ просят Арбитражный суд истребовать у ответчиков договоры, на основании которых каждым из ответчиков были приобретены акции ОАО «Качканарский горно-обогатительный комбинат «Ванадий».

Истцы соединили в одном исковом заявлении требования о признании недействительными сделок, совершенных между ответчиками, так как все эти требования связаны между собой. Все оспариваемые истцами сделки взаимосвязаны, так как представляют собой движение акций, незаконно списанных с лицевых счетов истцов. В соответствии письмом ВАС РФ от 28.08.95г. № С1-7/ОП-506 соединение нескольких исковых требований может иметь место, когда они связаны между собой по основаниям возникновения или представленным доказательствам.

Основаниями возникновения требований истцов о признании сделок недействительными является то, что недействительность оспариваемых истцами сделок вытекает из факта незаконного приобретения акций ООО «Урал-Старт-ЛТД», т.е. из факта проведения незаконной операции в реестре владельцев ОАО «Качканарский горно-обогатительный комбинат «Ванадий». Все эти сделки представляют собой последовательную передачу между ответчиками акций, незаконно списанных с лицевых счетов истцов. Доказательствами недействительности всех сделок являются один и те же документы, подтверждающие незаконность проведения операции в реестре владельцев ценных бумаг по списанию акций ОАО «Качканарский горно-обогатительный комбинат «Ванадий» с лицевых счетов истцов и зачислению на лицевой счет ООО «Урал-Старт-ЛТД». Таким образом, все оспариваемые истцом сделки связаны между собой по основаниям возникновения и представленным доказательствам.

III. Истцы полагают, что рассмотрение данного дела невозможно без участия специализированных регистраторов ОАО «Качканарский горно-обогатительный комбинат «Ванадий» ЗАО «Компания-регистратор «Панорама», которое осуществляло ведение реестра акционеров ОАО «Ванадий» с 1998г. по 30.09.2000г., и ЗАО «Ведение реестров компаний», которое в настоящий момент осуществляет ведение реестра ОАО «Качканарский горно-обогатительный комбинат «Ванадий», так как именно эти компании могут подтвердить совершение ответчиками всех оспариваемых сделок с акциями и предоставить соответствующую информацию из реестра владельцев ценных бумаг. Кроме того, в связи с тем, что часть сделок осуществлялась в рамках номинального держания депозитарием ОЮЛ «Депозитарно-расчетный союз» и ЗАО «Депозитарно-клиринговая компания» рассмотрение дела без их участие также является невозможным. Кроме того, и регистраторы и депозитарии непосредственно осуществляли переводы акций между ответчиками, поэтому решение по данному делу может повлиять на их права и обязанности. Учитывая вышеизложенное, в соответствии со ст. 39 АПК РФ истцы просят Арбитражный суд Свердловской области привлечь ЗАО «Компания-регистратор «Панорама», ЗАО «Ведение реестров компаний», ОЮЛ «Депозитарно-расчетный союз», ЗАО «Депозитарно-клиринговая компания» к участию в деле в качестве третьих лиц, не заявляющих самостоятельных требований на предмет спора, на стороне ответчика.

Учитывая вышеизложенное, ОАО «Нижнетагильский металлургический комбинат», ООО «Инросмет», ЗАО «Стандарт Траст», руководствуясь ст. 209 и ст.168 ГК РФ просят Арбитражный суд Свердловской области признать недействительными следующие сделки:
1. договор купли-продажи акций № 03/ГОК-а от 30.07.1998 года, заключенный между компанией ООО «Урал-Старт ЛТД» и компанией ООО «Легат»:
103 865 (Сто три тысячи восемьсот шестьдесят пять) акций 1 выпуска (номер гос. регистрации 62-1П-290)
37 700 690 (Тридцать семь миллионов семьсот тысяч шестьсот девяносто) акций 2 выпуска (номер гос. регистрации 62-1-1396).
2. договор купли-продажи акций № 14 от 22.09.1998 года, заключенный между ООО «Легат» и ООО «АКОНИТ»:
103 865 (Сто три тысячи восемьсот шестьдесят пять) акций 1 выпуска (номер гос. регистрации 62-1П-290)

18 607 478 (Восемнадцать миллионов шестьсот семь тысяч четыреста семьдесят восемь) акций 2 выпуска (номер гос. регистрации 62-1-1396).

**3. договор купли-продажи акций № 15 от 25.09.1998 года, заключенный между**
ООО «Легат» и ООО «АКОНИТ»:
19 093 212 (Девятнадцать миллионов девяносто три тысячи двести двенадцать) акций 2 выпуска (номер гос. регистрации 62-1-1396).

**4. договор купли-продажи акций № ГОК1 от 22.09.1998 года, заключенный между**
ООО «АКОНИТ» и Компанией ДЖЕКОНЕТ ЛИМИТЕД
103 865 (Сто три тысячи восемьсот шестьдесят пять) акций 1 выпуска (номер гос. регистрации 62-1П-290)
18 607 478 (Восемнадцать миллионов шестьсот семь тысяч четыреста семьдесят восемь) акций 2 выпуска (номер гос. регистрации 62-1-1396).

**5. договор купли-продажи акций № 9 от 25.11.1998 года, заключенный между**
Компанией ДЖЕКОНЕТ ЛИМИТЕД и ООО «Уралпромопт»:
103 865 (Сто три тысячи восемьсот шестьдесят пять) акций 1 выпуска (номер гос. регистрации 62-1П-290)
18 607 478 (Восемнадцать миллионов шестьсот семь тысяч четыреста семьдесят восемь) акций 2 выпуска (номер гос. регистрации 62-1-1396).

**6. договор купли-продажи акций № 34 от 25.11.1998 года, заключенный между ООО**
«АКОНИТ» и ООО «Компания «СИТИ-ТРЕЙД»:
19 093 212 (Девятнадцать миллионов девяносто три тысячи двести двенадцать) акций 2 выпуска (номер гос. регистрации 62-1-1396).

**7. договор купли-продажи акций №KGOK – РП-12/98 от 25.12.1998 года,**
заключенный между ООО «Компания «СИТИ-ТРЕЙД» и ООО «МАРЭКС ТК»
19 093 212 (Девятнадцать миллионов девяносто три тысячи двести двенадцать) акций 2 выпуска (номер гос. регистрации 62-1-1396).

**8. договор купли-продажи акций № KGOK-29/12-98 от 29.12.1998 года,**
заключенный между ООО «МАРЭКС ТК» и компанией Амбер Стар Эл Эл Си
21 225 236 (Двадцать один миллион двести двадцать пять тысяч двести тридцать шесть) акций 2 выпуска (номер гос. регистрации 62-1-1396).

**9. договор купли-продажи акций от 20.01.1999 года б/н, заключенный между ООО**
«Уралпромопт» и ЗАО «ФАРГОС»
103 865 (Сто три тысячи восемьсот шестьдесят пять) акций 1 выпуска (номер гос. регистрации 62-1П-290)
18 607 478 (Восемнадцать миллионов шестьсот семь тысяч четыреста семьдесят восемь) акций 2 выпуска (номер гос. регистрации 62-1-1396).

**10. договор купли-продажи акций от 11.02.1999 года б/н, заключенный между ЗАО**
«ФАРГОС» и ЗАО «МЭЗАНТ»
103 865 (Сто три тысячи восемьсот шестьдесят пять) акций 1 выпуска (номер гос. регистрации 62-1П-290)
9 442 740 (Девять миллионов четыреста сорок две тысячи семьсот сорок) акций 2 выпуска (номер гос регистрации 62-1-1396).

**11. договор купли-продажи акций № 143 от 05.04.1999 года, заключенный между**
ЗАО «ФАРГОС» и ЗАО «МЭЗАНТ»
9 060 873 (Девять миллионов шестьдесят тысяч восемьсот семьдесят три) акций 2 выпуска (номер гос. регистрации 62-1-1396).

**12. договор купли-продажи акций № 15 от 11.02.1999 года, заключенный между**
ЗАО «ФАРГОС» и ЗАО «МЭЗАНТ»
103 865 (Сто три тысячи восемьсот шестьдесят пять) акций 2 выпуска (номер гос. регистрации 62-1-1396).

**13. договор купли-продажи акций № 21 от 07.04.1999 года, заключенный между**
ЗАО «МЭЗАНТ» и ООО «ДЖЕНКОН», -
103 865 (Сто три тысячи восемьсот шестьдесят пять) акций 1 выпуска (номер гос. регистрации 62-1П-290)

18 607 478 (Восемнадцать тысяч шестьсот семь тысяч четыреста семьдесят восемь) акций 2 выпуски (номер гос. регистрации 62-1-1396).

**14. договор купли-продажи акций № 21 от 7 апреля 1999 года и дополнительное соглашения к данному договору № 2 от 16.11.1999 года, заключенное между ООО «ДЖЕНКОН» и ООО «Урал-Старт-ЛТД»,**

103 865 (Сто три тысячи восемьсот шестьдесят пять) акций 1 выпуска (номер гос. регистрации 62-1П-290)

18 607 478 (Восемнадцать тысяч шестьсот семь тысяч четыреста семьдесят восемь) акций 2 выпуска (номер гос. регистрации 62-1-1396).

**15. договор купли-продажи акций № КСОК22/11/1999 от 22.11.1999 года, заключенный между ООО «Урал-Старт- ЛТД» и НИМЕГАН ТРЕЙДИНГ ЛИМИТЕД**

103 865 (Сто три тысячи восемьсот шестьдесят пять) акций 1 выпуска (номер гос. регистрации 62-1П-290)

18 607 478 (Восемнадцать тысяч шестьсот семь тысяч четыреста семьдесят восемь) акций 2 выпуска (номер гос. регистрации 62-1-1396).

**16. договор купли-продажи акций № КСОК –2.2/99 от 17.12.1999 года, заключенный между компанией НИМЕГАН ТРЕЙДИНГ ЛИМИТЕД и компанией Амбер Стар Эл.Эл.Си.**

103 865 (Сто три тысячи восемьсот шестьдесят пять) акций 1 выпуска (номер гос. регистрации 62-1П-290)

18 607 478 (Восемнадцать тысяч шестьсот семь тысяч четыреста семьдесят восемь) акций 2 выпуска (номер гос. регистрации 62-1-1396).

**17. договор купли-продажи акций от 09.02.2000 года, заключенный между компанией Амбер Стар Эл.Эл.Си. и компанией НЭКСИЗ ПРОДАКТС Эл.Эл.Си.,**

103 865 (Сто три тысячи восемьсот шестьдесят пять) акций 1 выпуска (номер гос. регистрации 62-1П-290)

37 700 690 (Тридцать семь миллионов семьсот тысяч шестьсот девяносто) акций 2 выпуска (номер гос. регистрации 62-1-1396).

**18. договор купли-продажи акций от 16.08.2000 года, заключенный между компанией НЭКСИЗ ПРОДАКТС Эл.Эл.Си. и компанией ФОСТОН МЕНЕДЖМЕНТ ЛИМИТЕД,**

103 565 (Сто тридцать тысяч пятьсот шестьдесят пять) акций 1 выпуска (номер гос. регистрации 62-1П-290)

37 696 035 (Тридцать семь миллионов шестьсот девяносто шесть тысяч тридцать пять) акций 2 выпуска (номер гос. регистрации 62-1-1396).

Приложения:

1. Перечень сделок, совершенных ответчиками с акциями ОАО «Качканарский горно обогатительный комбинат «Ванадий» - 1 экз. на 2 листах
2. Копии справок о наличии акций за период с 01.07.98г. по 30.09.98г. по лицевым счетам истцам - 3 экз. на 1 листе.
3. Копии судебных актов по делу № А60-483/98-С2 – 6 штук на 32 листах.
4. Копия квитанции специальной почты DHL - 1 экз. на 2 листах.
5. Копия почтового уведомления о вручении документов ЗАО «Компания-регистратор «Панорама» - 1 экз. на 1 листе.
6. Копия Постановления о возбуждении исполнительного производства от 10.08.98г. – 1 экз. на 1 листе.
7. Копия письма начальника ОБЭП УВД г.Екатеринбурга С.И. Купрацевич – 1 экз. на 1 листе.
8. Копия письма от следователя по ОВД СО УВД г. Екатеринбурга Самылова И.И. – 1 экз. на 2 листах.
9. Копия решения дисциплинарного комитета ПАРТАД от 01.02.99г. – 1 экз. на 6 листах.
10. Копия постановления Апелляционной инстанции Арбитражного суда Свердловской области - 1 экз. на 6 листах.

FROM : EKATERINBURG    PHONE NO. : 7 3432 53 19 76    P05

11. Ответ   ОАО «Качканарский горно-обогатительный комбинат «Ванадий» о движении акций, принадлежащих  ЗАО «Стандарт Траст», ООО «Инросмет», ОАО «НТМК» -  на 4 листах,  1 экз.

12. Копия квитанции об отправке искового заявления ответчикам и третьем лицам (реестр отправлений на 1 листе) – 1 шт.

13. Платежное поручение об  уплате государственной пошлины – 1 экз. на 1 листе.

14. Доверенность на Григорьеву Е.Л. – 1 экз. на 1 листе.

15. Доверенности на  Брусову  Н.С. – 2 экз. на 1 листе

Представитель
ОАО «Нижнетагильский
 металлургический комбинат»
по доверенности                                                                            Григорьева Е.Л.

Представитель
ЗАО «Стандарт Траст»
по  доверенности                                                                            Брусова Н.С.

Представитель
ООО «Инросмет»
по  доверенности                                                                            Брусова Н.С.

# POWER OF ATTORNEY

**KNOW ALL MEN BY THESE PRESENTS that**

### Foston Management Limited

a company incorporated under and pursuant to the Laws of Cyprus (hereinafter called "the Grantor") with Registered Office at 1 Naousis Street, Larnaca, Cyprus, has made, constituted and appointed and by these presents does make, constitute and appoint

### Ashikhmina Marina Miroslavovna,
**born 30.09.1960, Holder of Russian passport 65 98 119961, issued 10.02.1999 by Ordzhonikidze District Interior Affairs in Yekaterinburg,**

(hereinafter called "the Attorney") its Attorney for it and its name, place and stead to do all or any of the following acts and deeds:

1. To represent interests of the Grantor before all courts of Russia exercising the rights conferred on a plaintiff, defendant, third party, applicant and sufferer, including the right to sign and file statements of claim, the right to submit and sign appeals to instances of appeal, instances of cassation and instances of supervision, to file challenges and any petitions, the right to change the subject and grounds of the claim, to personally obtain judgements, decisions, writs of execution and court orders and any other judicial documents;

2. To perform all actions connected with the execution proceedings, including the following powers: to present and withdraw execution documents, to instigate execution proceedings, with the right to obtain the writ of execution and to present the same for collection, to appeal against actions of the executor;

3. To submit on behalf of the Grantor any applications, to obtain and furnish all necessary documents and certificates, and also to obtain judgements, decisions, writs of execution and other judicial documents, to produce evidence in respect to the case;

4. To represent interests of the Grantor as a collecting party when presenting writs of execution to any legal and/or natural persons, Russian governmental authorities, authorities and/or bodies of any organisational and legal form, for which purpose the Attorney is hereby empowered to present to any debtors in Russia and other countries for collection any writs of execution issued in the name of the Grantor by any (civil, arbitration, magistrate and other) courts of Russia on the basis of any judgements, sentences, decisions and rulings of these courts (judges), including any injunction imposed on the debtors in respect of certain actions, to be present at the moment of execution of judicial acts, to exercise control of the proper and timely execution of judicial acts at any stage thereof;

5. To sign for the Grantor, and generally and wholly to perform on behalf of the Grantor any necessary legal actions connected with the implementation of the above authorities. Should the authorised representative perform at his own discretion any legal actions, which are directly or indirectly connected with the implementation of the above authorities but not stated in this Power of Attorney, these actions shall be deemed valid and eff...



6. To fully represent interests of the Grantor before all governmental, municipal, commercial and other organisations and institutions, including Closed Joint Stock Company "Kompaniya-registrator "Panorama" (Moscow), Closed Joint Stock Company "Vedeniye Reyestrov Kompaniy" (Yekaterinburg), for which purpose the Attorney of the Grantor is hereby empowered to perform all necessary actions related to the opening of personal accounts in the registers of shareholders, which are maintained by Closed Joint Stock Company "Kompaniya-registrator "Panorama" or Closed Joint Stock Company "Vedeniye Reyestrov Kompaniy", to sign on behalf of the Grantor inquiries for provision of information from the register, an extract as to the movement of shares and any other inquiries of informative nature, to personally obtain responses to the said inquiries, to present for collection any writs of execution and other judicial acts, to make any inquiries through the service of bailiffs, including inquires for receipt of notices and extracts from registers, to obtain at Closed Joint Stock Company "Kompaniya-registrator "Panorama" and Closed Joint Stock Company "Vedeniye Reyestrov Kompaniy" any documents, including letters, notices, refusals, extracts from registers and any other documents.

AND the Grantor hereby undertakes to ratify everything, which the Attorney in that behalf hereinbefore contained shall do or purport to do in virtue of this Power of Attorney.

This Power of Attorney is without the power of substitution and does not entitle the Attorney to alienate or transfer the property of the Grantor.

IN WITNESS WHEREOF this Power of Attorney has been duly executed by Dr. Andreas Karapatakis the Sole Director of **Foston Management Limited** this 27th of March, 2002.

For and on Behalf of Foston Management Limited

Dr. Andreas Karapatakis
The Sole Director

**This Power of Attorney is valid until the 27th day of September, 2002.**

Signed and sealed this day in my presence
by ...D.R.....A.N.D.R.E.A.S....K.A.R.A.P.A.T.A.K.I.S.............
.....................................................................
who is/are personally known to me. In testimony
whereof I have hereto set my hand and official
seal this ..2.7.t.h... day of ...Ma.rch...... 2002
CHRISTAKIS DEMETRIOU
CERTIFYING OFFICER



MARKS&SOKOLOV

*Перевод с английского языка*

# ДОВЕРЕННОСТЬ

## ВНИМАНИЮ ВСЕХ ЛИЦ НАСТОЯЩИМ ПРЕДСТАВЛЯЕТСЯ, что

### Фостон Менеджмент Лимитед

Компания, образованная по и в соответствии с законами Кипра (далее – «Доверитель») и зарегистрированная по адресу 1 Наусис Стрит, Ларнака, Кипр, сделала, назначила и утвердила, и настоящим документом делает, назначает и утверждает

**Ашихмину Марину Станиславовну,**
**30.09.1960 г.р., российский паспорт 65 98 119961, выдан 10.02.1999 г.**
**Орджонекидзевским РОВД г. Екатеринбурга,**

(далее – «Поверенный») своим Поверенным, чтобы от своего имени и вместо нее совершать все или любые из нижеследующих действий:

1. Представлять интересы Доверителя во всех судах России с правами, предоставленными истцу, ответчику, третьему лицу, заявителю и потерпевшему, в том числе с правом подписания и подачи исковых заявлений, с правом подачи и подписания апелляционных, кассационных жалоб, жалоб в порядке надзора, заявления отводов и любых ходатайств, с правом замены предмета и основания иска, получения на руки решений, определений, исполнительных листов и судебных приказов, любых других судебных документов;

2. Совершать все действия, связанные с исполнительным производством, в том числе предъявлять и отзывать исполнительные документы, возбуждать исполнительное производство, с правом получения исполнительного листа и предъявления его ко взысканию, обжалования действий судебного пристава-исполнителя;

3. Подавать от имени Доверителя любые заявления, получать и подавать все необходимые документы и справки, в том числе получать решения, определения, исполнительные листы и другие судебные документы, представлять доказательства по делу;

4. Представлять интересы Доверителя как взыскателя при предъявлении исполнительных листов любым юридическим и/или физическим лицам, органам государственной власти России, органам и/или организациям любой организационно-правовой формы, для чего Поверенному предоставляется право предъявлять к исполнению любым должникам на территории России и других стран любые исполнительные листы, выданные на имя Доверителя любыми (общегражданскими, арбитражными, мировыми и т.д.) судами России на основании любых решений, приговоров, определений и постановлений этих судов (судей), в том числе по запрету должникам совершать определенные действия, присутствовать при исполнении судебных актов, осуществлять на

любой стадии судебных актов контроль за их правильным и своевременным исполнением;

5. Расписываться за Доверителя, а также в общем и целом осуществлять от имени Доверителя любые необходимые юридические действия, связанные с выполнением вышеуказанных поручений. В случае если полномочный представитель совершит по своему усмотрению любые юридические действия, прямо или косвенно связанные с выполнением вышеуказанных поручений, но не указанные в настоящей доверенности, то данные действия будут иметь законную силу;

6. В полном объеме представлять интересы Доверителя во всех государственных, муниципальных, коммерческих и других организациях и учреждениях, в том числе в закрытом акционерном обществе «Компания-регистратор «Панорама» (г.Москва), ЗАО «Ведение Реестров Компаний» (г.Екатеринбург), для чего Поверенному Доверителя предоставляется право осуществлять все необходимые действия по открытию лицевых счетов в реестрах акционеров, ведение которых осуществляет ЗАО «Компания-регистратор «Панорама» или ЗАО «Ведение Реестров Компаний», подписывать от имени Доверителя запросы на получение информации из реестра, выписки о движении акций и любые другие запросы информативного характера, получать на руки ответы на указанные запросы, предъявлять к исполнению любые исполнительные листы и иные судебные акты, в том числе через службу судебных приставов, делать любые запросы, в том числе на получение уведомлений и выписок из реестров, получать в ЗАО «Компания-регистратор «Панорама» и ЗАО «Ведение Реестров Компаний» любые документы, в том числе письма, уведомления, отказы, выписки из реестров и любые другие документы.

А Доверитель настоящим обязуется утверждать все (из вышеизложенного), что Поверенный в качестве такового осуществит или осуществление чего он будет подразумевать на основании настоящей Доверенности.

Данная доверенность без права передоверия и не предоставляет Поверенному прав на отчуждение или переуступку имущества Доверителя.

В ПОДТВЕРЖДЕНИЕ ЧЕГО настоящая Доверенность была должным образом составлена Др. Андреасом Карапатакисом, единоличным директором **Фостон Менеджмент Лимитед** сего дня 27 марта 2002 года.

За и от имени «Фостон Менеджмент Лимитед»

Др. Андреас Карапатакис, единоличный директор
(подпись)
(печать «Фостон Менеджмент Лимитед»)

**Настоящая Доверенность действительна на срок до 27 сентября 2002 года.**

Штамп: «Подписано и скреплено печатью в сей день в моем присутствии Др. Андреасом Карапатакисом, который лично известен мне. В подтверждение чего я поставил мою подпись и официальную печать сего дня 27 марта 2002 года.
Христакис Деметриу, заверитель (подпись)
(печать: «заверитель»)
Штамп: «Настоящим удостоверяется, что вышестоящая подпись является подписью г-на Христакиса Деметриу, заверителя Никосии, назначенного Советом Министров Республики Кипр на основании ст. 39 Закона о заверителях для удостоверения подписей и печатей, и что печать напротив указанной подписи является действительной печатью заверителя Никосии.
Никосия-Кипр, 28 марта 2002 года.
Должностное лицо района, Никосия П. Триминди»
(подпись)
(печать: «Должностное лицо района, Никосия»)

---

### АПОСТИЛЬ
**(Гаагская конвенция от 5 октября 1961 года)**

1. **Страна КИПР**
   Этот официальный документ
2. был подписан П. Триминди
3. действующим в качестве Должностного лица района.
4. имеет печать/штамп Должностного лица района

Удостоверено

5. в Никосии                     6. 28 марта 2002 года
7. М. Иасонос
8. Номер 17073/02
9. Печать/штамп                  10. Подпись: (подпись)
                                    Постоянный секретарь Министерства
                                    юстиции и общественного порядка
(гербовая печать: «Министерство юстиции и общественного порядка»)

---

*Переводчик Шультина Н.А.* (подпись)

## DECISION

On February 19, 2001, the Solntsevo Inter-municipal (district) Court of the Western District of Moscow, present:

Chief Judge    A. D. Proniaken
Secretary      A. N. Starodubova

Has examined in the course of the hearing the motion of Foston Management Limited to restore the proceedings with the missing docket in the civil action # 2-2747/2000, where there was a court hearing and where Solntsevo inter-municipal court of the city of Moscow issued a decision dated September 29, 2000:

Determined:

On September 29, 2000, Solntsevo inter-municipal (district) court of the city of Moscow, federal judge N. V. Illyin presiding, held a hearing on the civil action in replevin # 2-2747/2000 upon the complaint of OOO Inrosmet, OJSC Nizhnetagilsk Metallurgical Plant, CJSC Standard Trust against Evgenii Nikolayevich Ivanov, Amber Trust LLC, Nexis Products LLC, Davis International, CJSC Registering Company Panorama, Omni-Trusthouse Limited, Holdex, LLC, Foston Management Limited. In the course of the hearing, the court issued a decision dated September 29, 2000, which required to return 1,245,677 personal shares of Kachkanarskii GOK of the second issue (state registration number of the emission 62-I-1396) from the accounts of OJSC Foston Management Limited to the accounts of OOO Inrostmet; 103,626 shares of the second issuance (state registration number of the emission 62-III-290) and 18,747,610 shares of the second issuance (state registration number of the emission 62-I-1396) to the account of OJSC Nizhnetagilsky Metallurgical Plant; 17,618,254 shares of the second issue (state registration number 62-I-1396) to the account of CJSC Standard Trust.

Foston Management Limited, which was one of the defendants in the above action, on January 26, 2001 filed a motion with the Solntsevo inter-municipal district court of Moscow to restore the missing docket # 2-2747/2000.

The representative of Foston Management Limited, G. V. Polianevich, supported the motion of the company and requested that the court restore the missing docket # 2-2747/2000.

The representative of OJSC Nizhnetagilsky Metallurgical Plant N. S. Brusova presented to the court a copy of the decision of the district court dated September 29, 2000 in the civil action # 2-2747/2000, was against the restoration of the missing docket # 2-2747/2000 and argued that the court's decision in that case entered into force and has been carried out, therefore, if the missing docket is restored, the rights and legal interests of OJSC Nizhnetagilsky Metallurgical Plant will be infringed. Additionally, per N. S. Brusova, copies of all of the main documents in the docket have not been collected.

Having reviewed the motion to restore the missing docket # 2-2747/2000, the court holds that the motion should be granted for the following reasons.

In the course of the consideration of the motion, it has been determined that, according to the copy of the docket sheet for the docket # 2-2747/2000, the case was

registered at the Solntsevo inter-municipal district court of the Western Administrative District of the City of Moscow upon complaint dated July 31, 2000, and assigned to Judge N. V. Illyin. According to the letter from the district court dated November 28, 2000 (ref. no. 1157), signed by the deputy chairman of the court, federal judge N. V. Illyin, it was delivered by courier N. I. Kurkin, ID # 305, to the Supreme Court of the Russian Federation. At the same time, as seen from the letter dated January 24, 2001 (OPG # Gr.01.276 for # 8 dated January 15, 2001), the Supreme Court of the Russian Federation never sent a request to produce the civil case # 2-2747/2000 for review in the course of supervision, and the case # 2-2747/2000 was not delivered from the Solntsevo inter-municipal district court of Moscow to the Supreme Court of the Russian Federation. Under these circumstances, it is necessary to state that the docket in the civil case # 2-2747/2000 in the Solntsevo inter-municipal district court of the Western Administrative District of Moscow was lost in the end of November, 2000. Meanwhile, said civil case upon complaint filed July 7, 2000, was reviewed in an open hearing on September 29, 2000, and a court decision was issued. The decision in this case, dated October 18, 2000, was received at the Federal Securities Commission which, based on the decision of the district court, wrote off the shares from the account of Foston Management Limited and recorded those shares on the accounts of OOO Inrosmet, OJSC Standard-Trust, OJSC Nizhnetagilsky Metallurgical Plant.

The above circumstances have been determined on the basis of the following evidence.

Witness I. A. Pravelieva testified that on September 29, 2000, the case # 2-2747/2000 was reviewed in the court hearing, and she, as the secretary, took the minutes of the proceedings. The court hearing was attended by the representatives of the parties, one for plaintiff and one for defendant, Pravelina could not recall the names. On October 12, 2000, Pravelina, per instructions of Judge N. V. Illyin, drafted the decision in the case, and indicated that it entered into force. Copies of the decision were not mailed to plaintiffs and defendants, but were handed out to them personally. Pravelina further explained that she did not know where the docket in the case # 2-2747/2000 could be sent since she was not working on transferring the docket.

The representative of Nizhnetagilsky Metallurgical Plant N. S. Brusova explained that the legal department of the plant had a copy of the decision of the Moscow district court dated September 29, 2000, which was delivered by the Solntsevo Inter-municipal District Court of the City of Moscow with the participation of Grigorieva, a representative of Nizhnetagilsky Metallurgical Plant, the latter one being ready to present to the Court a copy of the complaint in that case.

Witness Kalinin testified that he, upon instructions of the Solntsevo district court of Moscow, on February 14, 2001 delivered to the legal department of Nizhnetagilsky Metallurgical Plant the request # 170 dated February 9, 2001, demanding to present to the district court a copy of the complaint and other documents through Kalinin, which request was denied.

Witness Znamensky testified in court that on February 16, 2001 he, as the representative of OJSC Kachkanarskii GOK Vanadii, upon his own initiative, gave a ride in his car to Grigorieva to the Solntsevo district court of Moscow. Znamensky learned from Grigorieva that she was to deliver some documents to the court, but did not do so

because she left those documents at CJSC Standard-Trust (36 Malysheva, office 701, Ekaterinburg).

Thus, having examined the presented evidence in its entirety, the Court concluded that Solntsevo district court of Moscow held proceedings in the civil action # 2-2747/2000, in which it issued a decision on September 29, 2000.  In the end of November, 2000, the docket in the above case was lost.

Copies of court decisions in the civil action # 2-2747/2000 dated September 29, 2000, which were submitted to the court by the representatives of OJSC Nizhnetagilsky Metallurgical Plant and Foston Management Limited are determined to be authentic, since the texts of these decisions correspond both by the form and by the contents, therefore, can be restored.  Under these circumstances, the motion filed by the representative of OJSC Nizhnetagilsky Metallurgical Plant N. S. Brusilova to not restore the missing docket in the case # 2-2747/2000 is denied.

Deciding to restore the missing docket in the civil action # 2-2747/2000, the Court believes that the foundation of the restored docket are the copies of the court decisions issued by the Solntsevo Inter-municipal Court of the City of Moscow dated September 29, 2000, which the Court declared to be authentic.

Pursuant to sections 223-224 of the Civil Procedure Code of the Russian Soviet Socialist Federal Republic and Appendix 2 to the Civil Procedure Code of the Russian Soviet Socialist Federal Republic, the Court

DETERMINED:

To partially restore the missing docket in the case # 2-2747/2000, to recognize as the foundation of the restored docket a copy of the decision in the above case dated September 29, 2000, which ordered:
-        to return 1,245,677 personal shares of Kachkanarskii GOK of the second issue (state registration number of the emission 62-I-1396) from the accounts of OJSC Foston Management Limited to the accounts of OOO Inrostmet; 103,626 shares of the second issuance (state registration number of the emission 62-III-290) and 18,747,610 shares of the second issuance (state registration number of the emission 62-I-1396) to the account of OJSC Nizhnetagilsky Metallurgical Plant; 17,618,254 shares of the second issue (state registration number 62-I-1396) to the account of CJSC Standard Trust.
-        to order CJSC Registering Company Panorama, the holder of the register of shares of OJSC Kachkanarskii GOK Vanadii, and Vedenie Reestrov Kompanii, to make corresponding changes in the register of shareholders.

To include in the docket the copies of documents indicated in the decision of the court, as well as copies of the decision of the Solntsevo inter-municipal district court of Moscow dated September 29, 2000.

The copy is authentic.

                                                        Chief judge: signature

                                Chief Judge
                                Secretary
                                Seal

О П Р Е Д Е Л Е Н И Е

19 февраля 2001 года Солнцевский межмуниципальный (районный) суд ЗАО г.Москвы, в составе:

председательствующего судьи  Прокшиной А.Д.
при секретаре  Стародубовой А.И.

рассмотрев в открытом судебном заседании ходатайство компании "Фостон Менеджмент Лимитед" о восстановлении утраченного судебного производства по гражданскому делу № 2-2747/2000, которое было рассмотрено в суде и по нему было вынесено судебное решение Солнцевским межмуниципальным районным судом г.Москвы 29 сентября 2000 года:

У С Т А Н О В И Л :

29 сентября 2000 года Солнцевским межмуниципальным (районным) судом г.Москвы под председательством федерального судьи Елкина Н.В. было рассмотрено гражданское дело № 2-2747/2000 по иску ООО "Евросмет", ОАО "Нижнетагильский металлургический комбинат", ЗАО "Стандарт Траст" к Иванову Евгению Николаевичу, компаниям "Амбер Стар Эл.Эл.Эл.", "Наксон Продакс Эл.Эл.Эл.", "Данис Интернешнл", ЗАО "Компания-регистратор "Панорама", ОНЛИ-Трастгаус Лимитед", "Холдекс Эл.Эл.Си", "Фостон Менеджмент Лимитед" об истребовании имущества из чужого незаконного владения, и, в результате рассмотрения этого дела было вынесено решение от 29 сентября 2000 года, согласно которому истребованы именные обыкновенные акции ОАО "Качканарский горно-обогатительный комбинат "Ванадий" с лицевых счетов компании "Фостон Менеджмент Лимитед" с зачислением этих акций на лицевой счет ООО "Евросмет" 1 245 677 акций II выпуска (№ гос.регистрации выпуска 62-I-1396), на лицевой счет ОАО "Нижнетагильский металлургический комбинат" 103 625 акций II выпуска (№ гос.регистрации выпуска 62-III-290) и 18747610 акций I выпуска (№ гос.регистрации выпуска 62-I-1396); на лицевой счет ЗАО "Стандарт Траст" 17 618 254 акций II выпуска (№ гос.регистрации 62-I-1396).

В Солнцевский межмуниципальный районный суд г.Москвы 26.01.2001 года поступило ходатайство из компании "Фостон Менеджмент Лимитед", которая являлась одним из ответчиков по названному гражданскому делу, из содержания которого усматривается просьба о восстановлении утраченного производства по гражданскому делу № 2-2747/2000.

Представитель компании "Фостон Менеджмент Лимитед" Поляничко Г.В. поддержал ходатайство компании и просил суд восстановить утраченное производство по гражданскому делу № 2-2747/2000г.

Представитель ОАО "Нижнетагильский металлургический комбинат" Брусова Н.С., представив в суд копию решения районного суда от 29.09.2000 г. по гражданскому делу № 2-2747/2000, возражала против восстановления утраченного судебного производства по делу № 2-2747/2000, обосновав свои возражения тем, что судебное решение по названному делу вступило в законную силу и уже исполнено, а поэтому в случае восстановления утраченного производства существенным образом будут нарушены права и законные интересы ОАО "Нижнетагильского металлургического комбината". Кроме того, по мнению Брусовой Н.С. по утраченному производству не собраны копии всех основных документов.

Рассмотрев ходатайство о восстановлении утраченного производства по гражданскому делу № 2-2747/2000, суд пришел к выводу, что ходатайство подлежит удовлетворению в силу следующих обстоятельств.

- 2 -

При рассмотрении ходатайства установлено, что согласно копии учетно-статистической карточки по гражданскому делу № 2-2747/2000 г., такое дело было зарегистрировано в Солнцевском межмуниципальном районном суде ЗАО г.Москвы на основании заявления от 31.07.2000 г. и передано на рассмотрение судье Ильину Н.В. Согласно письма из районного суда от 28 ноября 2000 года (исходящий номер 1157) за подписью известителя председателя суда - федерального судьи Ильина Н.В. было передано через почтового Куркина И.И., удостоверение № 305 в Верховный Суд РФ. В тоже время, как это видно из письма от 24 января 2001 года (ОПР № Гр.01-276 на № 8 от 15.01.2001 г.) из Верховного Суда Российской Федерации каких-либо запросов об истребовании из районного суда гражданского дела № 2-2747/2000 для проверки названного дела в порядке надзора не направлялось и из Солнцевского межмуниципального районного суда ЗАО г.Москвы дело за № 2-2747/2000 в Верховный Суд РФ не поступало. При таких данных следует утверждать, что производство по гражданскому делу № 2-2747/2000 в Солнцевском районном суде г.Москвы в конце ноября 2000 года утрачено. Между тем указанное гражданское дело по исковому заявлению от 31.07.2000 г. было рассмотрено в открытом судебном заседании 29 сентября 2000 года и по нему было постановлено судебное решение. Решение по этому делу 18 октября 2000 года поступило в Федеральную комиссию по рынку ценных бумаг, а названное федеральное ведомство на основании решения районного суда списало с лицевого счета компании "Фостон менеджмент лимитед" акции и зачислило акции компании на лицевые счета ООО "Евросмет", ЗАО "Стандарт-Транст", ОАО "Нижнетагильский металлургический комбинат".

Приведенные обстоятельства в суде установлены следующими доказательствами.

Свидетель Правельева И.А. показала, что 29 сентября 2000 года дело № 2-2747/2000 в судебном заседании рассматривалось и по этому делу она, как секретарь оформляла протокол. В судебном заседании присутствовали представители сторон, по одному от истцов и ответчиков, кто конкретно она, Правельева, не помнит. 12 октября 2000 года она, Правельева, по указанию судьи Ильина Н.В. оформляла судебное решение по делу, указав при этом, что оно вступило в законную силу. Копии решения по делу истцам и ответчикам по почте не рассылались, а были выданы сторонам на руки. Далее Правельева пояснила, что не знает куда могло быть направлено гражданское дело № 2-2747/2000, так как отправлением этого дела не занималась.

Представитель "Нижнетагильского металлургического комбината" Брусов Н.С. пояснил, что в юридической службе комбината имелось решение районного суда г.Москвы от 29 сентября 2000 года, которое было постановлено Солнцевским межмуниципальным районным судом г.Москвы с участием представителя "Нижнетагильского металлургического комбината" Григорьевой, последняя готова представить в суд копию искового заявления по данному делу.

Свидетель Калинин показал, что он по поручению Солнцевского районного суда г.Москвы 14 февраля 2001 года передал в юридическую службу "Нижнетагильского металлургического комбината" запрос № 170 от 9.02.2001 г. о представлении в районный суд копии искового заявления и других документов, через его, Калинина, но ему в этом было отказано.

Свидетель Знаменский в суде показал, что 16 февраля 2001 года он, как представитель ОАО "Качкарский ГОК "Ванадий" по собственной инициативе на личном автомобиле доставил Григорьеву в Солнцевский районный суд г.Москвы. Со слов Григорьевой ему, Знаменскому, стало известно, что Григорьева должна была передать в суд какие-то документы, но их не передала из-за того, что документы ей Григорьевой, оставлены по месту нахождения ЗАО "Стандарт-Транст" (г.Нижне-

- 3 -

...ебург, ул. Малышева д.36 офис 701),

Таким образом, оценивая приведенные доказательства в их сово-
купности, суд приходит к выводу, что в производстве Солнцевского
районного суда г.Москвы находилось гражданское дело № 2-2747/2000,
по которому 29 сентября 2000 года было постановлено судебное решение,
но в конце ноября 2000 года судебное производство по указанному
гражданскому делу было утрачено.

Копии судебных решений по гражданскому делу № 2-2747/2000 от
29 сентября 2000 года, которые были представлены в суд представите-
лем как ОАО "Нижнетагильский металлургический комбинат", так и
представителем "Восток Менеджмент Лимитед", следует признать досто-
верными, поскольку тексты этих копий как по форме, так и по содержа-
нию совпадают друг с другом, а поэтому могут быть восстановлены.
При таких обстоятельствах, просьба представителя ОАО "Нижнетагиль-
ского металлургического комбината" Брусовой Н.С. не восстанавливать
утраченное судебное производство по делу № 2-2747/2000 оставлена
без удовлетворения.

Принимая решение о восстановлении утраченного судебного произ-
водства по гражданскому делу № 2-2747/2000, суд считает, что осно-
вой восстановленного судебного производства по указанному делу
служат копии судебных решений, постановленные Солнцевским межмуници-
пальным судом г.Москвы 29 сентября 2000 года, которые признаны судом
достоверными.

Руководствуясь ст.ст. 223-224 ГПК РСФСР и приложением № 2 к
ГПК РСФСР, суд

О П Р Е Д Е Л И Л :

Частично восстановить утраченное судебное производство по
гражданскому делу № 2-2747/2000, основой которого признать копию
решения по названному делу от 29 сентября 2000 года, в резолютивной
части которого указано:

"Истребовать именные обыкновенные акции ОАО "Качканарский
горно-обогатительного комбината "Ванадий" с личевых счетов компании
"Восток Менеджмент Лимитед", с зачислением на лицевой счет ООО
"Инвесмет" 1.245 677 акций II выпуска (№ гос.регистрации выпуска
62-I-1396); на лицевой счет ОАО "Нижнетагильский металлургический
комбинат" 105 628 акций II выпуска (№ гос.регистрации выпуска
62-II-250) и 18 747 619 акций I выпуска (№ гос.регистрации выпуска
62-I-1396); на лицевой счет ЗАО "Стандарт Траст" 17 618 254 акций
II выпуска (№ гос.регистрации 62-I-1396).

- Обязать регистраторов ОАО "Качканарский горно-обогатитель-
ный комбинат "Ванадий", ЗАО "Компания-регистратор "Панорама" и
АОЗТ "Ведение реестров компаний" произвести соответствующие операции
в реестре владельцев ценных бумаг.

К делу приобщить копии документов, указанных в определении суда,
а также копии судебного решения Солнцевского межмуниципального
районного суда г.Москвы от 29 сентября 2000 года.

Копия верна.

Председательствующий: подпись

Председательствующий:

Секретарь:

To the Federal Securities and Trade Commission of Russia

Igor Vladimirovich Kostikov, Chairman

From: Shareholders of the OJSC Kachkanarsky GOK
Vanadium, the owners of 72% of the total shares

1. Davis International, LLC
1205 Weelkey Drive, Charleston, West Virginia, 25314—
1762, USA (18.39% of shares)
Mailing Address:
119270, Moscow, G-270, P.O. Box 608

2. Foston Management, Limited
1 Naousis St., Larnaca, Cyprus (19.80% of shares)
Mailing Address:
119270, Moscow, G-270, P.O. Box 588

3. Holdex, LLC
707 B 7th St., Austin, TX 78701, USA (16.21% of shares)
Mailing Address:
119270, Moscow, G-270, P.O. Box 50

4. OMNI Trusthouse Ltd
located at 241, Camden, High St., London, NW17BU,
England, Great Britain (17.82% of shares)

Amendment to Complaints:
Outgoing No. 12/ж—11/2000 of 16 November 2000, FSEC Incoming No. 22289 of 11.27.00;
Outgoing No. 13/ж—11/2000 of 24 November 2000.

On November 16, 2000, a group of shareholders—owners of the total of over 72% of the shares of the OJSC Kachkanarsky GOK Vanadiy, filed a complaint against the companies—registrars CJSC Panorama and CJSC Vedenie Reestrov Kompaniy with the Federal Securities and Exchange Commission of Russia (Incoming No. 22289 of 27 November 2000).

Thereafter, on 24 November 2000, in light of the continuing violations of the legislation on securities by CJSC Vedenie Reestrov Kompaniy, the shareholders filed a second complaint (Outgoing No. 13/ж—11/2000).

As of this date, CJSC Vedenie Reestrov Kompaniy, the company—registrar, has not satisfied the lawful demands of the shareholders—owners of a significant number of shares of the OJSC Kachkanarsky GOK Vanadiy. As of this date, the shareholders have no information as to whom, when, and on what basis has written off the shares of OJSC Kachkanarsky GOK

Vanadiy without any notification, documentation supporting the basis for the write off, or involvement of the complaining shareholders in the transaction.

As has already been mentioned in the complaint of November 24, 2000, Outgoing No. 13/ж—11/2000, the company—registrar, CJSC Vedenie Reestrov Kompaniy, under various pretexts and on numeral occasions refused to comply with the request of Foston Management Limited, the owner of 19.8% of GOK's shares, to review the list of shareholders of the OJSC Kachkanarsky GOK Vanadiy. At first, this refusal was explained by the unavailability of the list due to the ongoing update and systematization of the register (the systematization took over three weeks). Thereafter, VRK's employees referred to a so-called "sanitary day", which lasted for an undetermined amount of time. Finally, after the request for a copy of the shareholders' list was finally accepted, the authorized representative of Foston Management Company received a reply (No. 207, dated November 27, 2000), in which CJSC Vedenie Reestrov Kompaniy was denying Foston's request.

However, when on November 25, 2000, Foston Management Limited submitted a similar request to CJSC Company—Registrar Panorama, it received no resistance whatsoever. On the contrary, the requested list of shareholders of the OJSC Kachkanarsky GOK Vanadiy as of September 25, 2000 was received by Foston Management only three days later.

By refusing to provide the lawful shareholders with the list of shareholders of OJSC Kachkanarsky GOK Vanadiy, CJSC Vedenie Reestrov Kompaniy violates the constitutional right to legal defense, rendering it impossible for the shareholders to defend their rights in court.

Based on the above as well as the following:

-- the fact that the lawful shareholders have not been able to obtain the list of shareholders of OJSC Kachkanarsky GOK Vanadiy;
-- the belief that the list of shareholders, presently in possession of CJSC Vedenie Reestrov Kompaniy, will prove the significant violations of the securities legislation by the registrar;
-- the belief that [the list of shareholders] will prove the bias on the part of CJSC Vedenie Reestrov Kompaniy toward the lawful shareholders; and
-- the belief that the above-named list of shareholders will assist the Federal Securities and Exchange Commission of Russia in the review of the issue of CJSC VRK's violations of the securities legislation,

The Petitioners request the following:

-- To request CJSC Vedenuie Reestrov Kompaniy (registered address: 620014, Yekaterinburg, 28 Lenin Prospect; FSEC License No. 01059 of June 20, 1996) to submit to the FSEC the register of shareholders of the ordinary nominal shares of the OJSC Kachkanarsky GOK Vanadiy of the First Emission (Registered No. 62—1P—290 dated July 12, 2993) and the Second Emission (Registered No. 62—1—1396 dated June 13, 1996), **as of the date of acceptance of the Register by CJSC Vedenie Reestrov Kompaniy**. Said register must indicate the quantity, category (type) of the shares for

each shareholder, as well as the information about any existing leans or judgments in relation to those shares;

--   To request CJSC Vedenie Reestrov Kompaniy (registered address: 620014, Yekaterinburg, 28 Lenin Prospect; FSEC License No. 01059 of June 20, 1996) to submit to the FSEC the register of shareholders of the ordinary nominal shares of the OJSC Kachkanarsky GOK Vanadiy of the First Emission (Registered No. 62—1P—290 dated July 12, 2993) and the Second Emission (Registered No. 62—1—1396 dated June 13, 1996), **as of the date of receipt of the Federal Securities and Exchange Commission's inquiry by CJSC Vedenie Reestrov Kompaniy**.   Said register must indicate the quantity, category (type) of the shares for each shareholder, as well as the information about any existing leans or judgments in relation to those shares.

Attachments:

Copies:

--   List of Shareholders of OJSC Kachkanarsky GOK Vanadiy as of September 29, 2000, Outgoing No. 135—250900—005/OPRU dated September 28, 2000;
--   Letter from CJSC Vedenie Reestrov Komapniy, Outgoing No. 207 dated November 27, 2000.

Respectfully,

General Representative,
Davis International, LLC                    /signature/                    V.V. Volnov

Chairman of the Board of Directors,
Holdex, LLC                                 /signature/                    Joseph Traum

Representative,
OMNI Trusthouse, Ltd.                       /signature/                    A.B. Zanadvorov

Company's Attorney,
Foston Management Limited                   /signature/                    M.M. Ashihmina

*Attention: Masha Grechikkina*

В Федеральную комиссию по рынку ценных
бумаг России

Председателю
Костикову Игорю Владимировичу

от: акционеров ОАО «Качканарский горно-
обогатительный комбинат «Ванадий», которые
владеют в совокупности 72% акций

1.  Компания «Дэвис Интернэшнл Эл.Эл.Си.»
1205 Уилки Драйв, Чарльстон, Западная Вирджиния,
25314-1762, США (**18,39  % акций**)
**почтовый адрес: 119270, г. Москва, Г-270, а/я 608**

2.  Компания «Фостон Менеджмент Лимитед»
1, Наусис стрит, Ларнака, Кипр (**19,80 % акций**)
**почтовый адрес: 119270, г. Москва, Г-270, а/я 588**

3. Компания «Холдэкс Эл.Эл.Си.»
707 В. 7 Стрит, Остин, Техас 78701, США   (**16,21 %**)
**почтовый адрес: 119270, г. Москва, Г-270, а/я 50**

4. Компания «ОМНИ Трастхауз Лтд»,
находящейся по адресу: 241, Кэмдэн, Хай Стрит,
Лондон,
NW1 7 BU, Англия, Великобритания (**17,62%**)
**почтовый адрес: 119270, г. Москва, Г-270, а/я 449**

в дополнение к жалобам
Исх. № 12/ж-11/2000 от 16 ноября 2000 г., вх. № в ФКЦБ РФ 22289 от 27.11.00,
Исх. № 13/ж-11/2000 от 24 ноября 2000 г.

16 ноября 2000 г. группа акционеров ОАО «Качканарский горно-
обогатительный комбинат «Ванадий», владеющих в совокупности более 72
% акций, в адрес Федеральной комиссии по рынку ценных бумаг России
направила жалобу на компании-регистраторы ЗАО «Панорама» и АОЗТ
«Ведение реестров компаний» (вх. № 22289 от 27.11.00).

В дальнейшем, в связи с продолжающимися нарушениями АОЗТ
«Ведение реестров компаний» действующего законодательства о ценных
бумагах акционеры направили 24 ноября 2000 г. в ФКЦБ России еще одну
жалобу (исх. № 13/ж-11/2000).

До настоящего времени компания регистратор АОЗТ «Ведение
реестров компаний» не исполняет законных требований акционеров,
владеющих значительным пакетом акций ОАО «Качканарский горно-
обогатительный комбинат «Ванадий» и акционеры, до настоящего времени,
не владеют информацией о том, кто, когда, на каком основании списал
акции ОАО «Качканарский горно-обогатительный комбинат «Ванадий» без
их уведомления, не представив никаких документов, об основаниях
списания акций у них и не привлекая акционеров (подавших жалобы) к
участию в делах о списании акций.

Как уже было упомянуто в жалобе от 24 ноября 2000 г. исх. № 13/ж-
11/2000 компания регистратор АОЗТ «Ведение реестров компаний» под

разными предлогами отказывала в принятии запроса Компании «Фостон Менеджмент Лимитед» (владелец 19,80 % процентов акций ГОКа) о выдаче списка акционеров ОАО «Качканарский горно-обогатительный комбинат «Ванадий». Сначала работники АОЗТ «Ведение реестров компаний» говорили, что выписка из реестра не может быть выдана, так как «ВРК» еще не систематизировала реестр (систематизация длилась более трех недель), в дальнейшем работники «ВРК» сообщали о санитарном дне, который длился неопределенное время, когда же законный представитель Компании «Фостон менеджмент Лимитед» наконец отдал запрос о выдаче списка акционеров, от АОЗТ «Ведение реестров компаний» был получен ответ от 27.11.00 № 207 в котором Компании «Фостон Менеджмент Лимитед» в выдаче списка было отказано.

При этом когда Компания «Фостон Менеджмент Лимитед» обращалась в ЗАО «Компания регистратор «Панорама» 25 ноября 2000 г. никаких противодействий со стороны ЗАО «Компания-регистратор «Панорама» не было и уже через три дня после получения запроса Компанией-регистратором «Панорама» в адрес Компании «Фостон Менеджмент «Лимитед» поступил Список акционеров ОАО «Качканарский горно-обогатительный комбинат «Ванадий», составленный по состоянию на 25.09.00.

АОЗТ «Ведение реестров компаний», не выдавая список акционеров ОАО «Качканарский горно-обогатительный комбинат «Ванадий» законным акционерам, нарушает, предусмотренную Конституцией РФ, право на судебную защиту и делает невозможным защитить акционерам свои права в судебном порядке.

На основании вышеизложенного, в связи с тем, что законные акционеры до сих пор не могут получить список акционеров ОАО «Качканарский горно-обогатительный комбинат «Ванадий», полагая, что список акционеров, представленный АОЗТ «Ведение реестров компаний» будет свидетельствовать о значительном нарушении регистратором норм действующего законодательства о ценных бумагах и докажет предвзятость со стороны АОЗТ «Ведение реестров компаний» в отношении законных акционеров, а также в связи с тем, что указанный список акционеров поможет Федеральной комиссии по рынку ценных бумаг России полно и всесторонне рассмотреть дело о нарушениях АОЗТ «Ведение реестров компаний» действующего законодательства,

Заявители просят Федеральную комиссию по рынку ценных бумаг России:

- истребовать у АОЗТ «Ведение реестров компаний» (юридический адрес: 620014, г. Екатеринбург, проспект Ленина, д. 28, Лицензия ФКЦБ России от 20 июня 1996 г. № 001059) список владельцев обыкновенных именных акций Открытого акционерного общества «Качканарский горно-обогатительный комбинат «Ванадий» первого выпуска (регистрационный номер 62-1П-290 от 12 июля 1993 г.) и второго выпуска (регистрационный

номер 62-1-1396 от 13 июня 1996 г.) **на дату принятия реестра Акционерным обществом закрытого типа «Ведение реестров компаний»**, с указанием количества, категории (типа) принадлежащих им акций, а также сведения об обременении этих ценных бумаг;

- истребовать у АОЗТ «Ведение реестров компаний» **(юридический адрес: 620014, г. Екатеринбург, проспект Ленина, д. 28, Лицензия ФКЦБ России от 20 июня 1996 г. № 01059)** список владельцев обыкновенных именных акций Открытого акционерного общества «Качканарский горно-обогатительный комбинат «Ванадий» первого выпуска (регистрационный номер 62-1П-290 от 12 июля 1993 г.) и второго выпуска (регистрационный номер 62-1-1396 от 13 июня 1996 г.) **на дату принятия Акционерным обществом закрытого типа «Ведение реестров компаний» запроса Федеральной комиссии по рынку ценных бумаг России**, с указанием количества, категории (типа) принадлежащих им акций, а также сведения об обременении этих ценных бумаг;

Приложение:

копии:

- списка акционеров ОАО «Качканарский ГОК «Ванадий» на 25.09.00 исх. № 135-250900-005/ОПЕРУ от 28.09.00;
- письма АОЗТ «Ведение реестров компаний» от 27.11.00 исх № 207№.

С Уважением,

Генеральный представитель
Компании «Дэвис Интернэшнл Эл.Эл.Си.»                              В.В. Вольнов

Председатель Совета директоров Компании
«Холдэкс Эл.Эл.Си.»                                               Джозеф Траум

Представитель Компании
«ОМНИ Трастхауз Лтд.»                                          А.В. Занадворов

Поверенный компании
«Фостон Менеджмент Лимитед»                                   М.М. Ашихмина

VM-03/218
January 15, 2001

Foston Management Limited
119270, Moscow, G-270, P.O. Box 588


RE:    Transactions in the Register of
       OJSC Kachkanarsky GOK Vanadiy

We have reviewed your requests to investigate whether the rights of the shareholders of Kachkanarsky GOK Vanadiy (hereinafter "Company") have been properly protected during the re-registration of the property rights to the shares of the Company by the Registrar, CJSC Vedenie Reestrov Companiy. Please be advised as follows:

According to the documentation provided, on October 18, 2000, from the account of Foston Management Limited the following shares were written off by the Registrar:

103,540 shares of the Company, Emission Registration No. 62—1P—290 (hereinafter, shares of the First Emission) and
37,611,541 shares of the Company, Emission Registration No. 62—1—1396 (hereinafter, shares of the Second Emission)

The above shares were then deposited to the following accounts:

Inrosmet LLC—1,245,677 shares of the Second Emission;
CJSC Standat-Trust—17,618,254 shares of the Second Emission;
OJSC Nizhnetagilsk Metallurgical Combine—103,540 shares of the First Emission and 18,747,610 shares of the Second Emission.

The above transactions have been effected by the Registrar based on the legally enforceable Decision of the Solntsevo Inter-municipal District Court of Moscow, rendered in the Case No. 2—2747 on September 29, 2000, and the Court Execution Sheet, issued by the same court on September 29, 2000 (copies are attached).

A separate investigation is being conducted in regard to the transfer of the Company's Register from CJSC Company-Registrar Panorama to the Registrar. The results of the investigation as to the lawfulness of the procedure under the legislation of the Russian Federation on securities will be submitted to you separately.

Attachment: 1 copy on 5 pages


First Vice-Chairman        /signature is authentic/              V.D. Milovidov

[ENVELOPE]

**FEDERAL SECURITIES AND TRADE COMMISSION**
**117939 GSP—1        Moscow, Leninsky Prospect, 9**

Z    No. 4809
　　　Moscow B-49

119270

Address:      Moscow, G-270, P.O. Box 588

Recipient:    Foston Management Limited

No. BM—03/218

[CIRCULAR STAMP]
The Postal Service of Russia
Moscow
January 16, 2001

*Вх-03/818*
*15.01.2001*

Компания «Фостон Менеджмент Лимитед»
119270, г. Москва, Г-270, а/я 588

О совершении операций в реестре
ОАО «Качканарский горно-
обогатительный комбинат «Ванадий»

     Рассмотрев Ваши обращения относительно проверки соблюдения прав акционеров ОАО «Качканарский горно-обогатительный комбинат «Ванадий» (далее - Общество) при перерегистрации прав собственности на акции Общества регистратором АОЗТ «Ведение реестров компаний» (далее - Регистратор), сообщаем следующее.

     Согласно представленным документам 18.10.2000 Регистратором были списаны с лицевого счета компании «Фостон Менеджмент Лимитед» 103 540 акций Общества (регистрационный номер выпуска 62-1П-290 (далее - акции Общества первого выпуска)) и 37 611 541 акций Общества (регистрационный номер выпуска 62-1-1396 (далее - акции Общества второго выпуска)) с последующим зачислением акций на лицевые счета ООО «Инросмет» (в количестве 1 245 677 акций Общества второго выпуска), ЗАО «Стандарт-Траст» (в количестве 17 618 254 акций Общества второго выпуска), ОАО «Нижнетагильский металлургический комбинат» (в количестве 103 540 акций Общества первого выпуска и 18 747 610 акций Общества второго выпуска). Указанные операции произведены Регистратором на основании вступившего в законную силу решения Солнцевского межмуниципального районного суда г. Москвы, вынесенного по делу № 2-2747 от 29.09.2000, и исполнительного листа, выданного 29.09.2000 вышеназванным судом по делу № 2-2747 (копии прилагаются).

     О результатах проверки процедуры передачи реестра Общества от ЗАО «Компания-регистратор «ПАНОРАМА» Регистратору на предмет соответствия требованиям законодательства Российской Федерации о ценных бумагах вам будет сообщено дополнительно.

Приложение: на 5л. в 1 экз.

Первый заместитель председателя          В. Д. Миловидов

**комиссия по рынку ценных бумаг**

117939 ГСП-1          Москва, Ленинский проспект, 9



№ 7809
Москва В-49
ПОЧТА РОССИИ
117049   04509   8

*119270*

Куда *Москва, Г-270, а/з 588*

Кому *Компания „Фостон Менеджмент Лимитэд"*

№ *ВМ-03/218*



THE ARBITRAZH COURT
FOR THE SEVRDLOVSK REGION

DECISION

Yekaterinburg
20 December 2001                                Case No. A60—21775/2001—C2

Judge M.L. Skuratovsky, of the Arbitrazh Court for the Sverdlovsk Region, having reviewedin a court session the case of OJSC Nizhnetagilsk Metallurgical Combine, Inrosmet LLC, and CJSC Standart Trust

versus OJSC Ural-Start-Ltd, OJSC Legat, OJSC Akonit, Jackonet Limited, OJSC Uralpromopt, OJSC City Trade LLC, OJSC Jenkon, Nimegan Trading Ltd, Nexis Products LLC

and the following Third—Party Defendants not filing separate claims: CJSC Company-Registrar Panorama, CJSC Vedenie Reestrov Companiy, The Association of Legal Entities "Depository—Accounting Union", CJSC Depository—Clearing Company, and OJSC Kachkanarsky GOK Vanadiy,

in declaring certain transactions invalid,

with participation:

on behalf of the Plaintiffs: E.L. Grigoriev, on behalf of OJSC Nizhnetagilsk Metallurgical Combine, Power of Attorney 3140—11/239 of October 31, 2001; E.L. Grigoriev, on behalf of Inrosmet LLC, Power of Attorney dated December 20, 2000; E.L. Grigoriev, on behalf of CJSC Standart Trust, Power of Attorney dated December 12, 2000.

on behalf of the Defendants:  M.M. Ashihmina, on behalf of Nexis Products LLC, Power of Attorney dated September 5, 2001,

on behalf of the Third Parties—Defendants: T.N. Stepanchenko, on behalf of OJSC Kachkanarsky GOK Vanadiy, Power of Attorney No. 66 of May 14, 2001; O.A. Pushkareva, on behalf of CJSC [V]edenie Reestrov Companiy, Power of Attorney No. 99/2000 of December 27, 2000.

The Plaintiffs request to declare unlawful and invalid the following transactions with the shares of Kachkanarsky GOK Vanadiy (which transactions were performed by the Defendants): Agreement for Sale and Purchase of Securities No. 03/GOK-a dated July 30, 1998; Agreement for Sale and Purchase of Securities No. 14 dated September 22, 1998; Agreement for Sale and Purchase of Securities No. 15 dated September 25, 1998; Agreement for Sale and Purchase of Securities No. GOK 1 dated September 22, 1998; Agreement for Sale and Purchase of Securities No. 9 dated November 25, 1998; Agreement for Sale and Purchase of Securities No. 34 dated November 25, 1998; Agreement for Sale and Purchase of Securities No. KGOR-RP-12/98 dated

December 25, 1998; Agreement for Sale and Purchase of Securities dated January 20, 1999; Agreement for Sale and Purchase of Securities dated November 2, 1999; Agreement for Sale and Purchase of Securities No. 143 dated April 5, 1999; Agreement for Sale and Purchase of Securities No. 15 dated February 11, 1999; Agreement for Sale and Purchase of Securities No. 21 dated April 7, 1999; Agreement for Sale and Purchase of Securities No. KGOK 22/11/1999; Agreement for Sale and Purchase of Securities No. KGOK-2.2/99 dated December 17, 1999; Agreement for Sale and Purchase of Securities dated February 9, 2000; and Agreement for Sale and Purchase of Securities dated August 16, 2000.

During the court's session, the Plaintiffs requested the Court to ad Foston Management Limited as another defendant in this matter since one of the transactions in question, the Agreement for Sale and Purchase of Securities dated August 16, 2000, was executed between Nexis Products LLC and Foston Management Limited. Due to a clerical error, Foston Management Limited was inadvertently omitted from the list of the defendants in the original complaint.

Pursuant to Article 35 of the Arbitrazh Procedural Code of the RF, the Plaintiffs' request is hereby granted.

Moreover, the Plaintiffs placed a request for additional evidence as follows:

From CJSC Depository—Clearing Company: the information about the 9,093,212 Kachkanarsky GOK Vanadiy's shares of the Second Emission (State Registration No. 62-1-1396), transferred to CJSC Depository—Clearing Company from Marex TK, LLC on December 30, 1998. The information must include the type of the agreement, its number and date of execution.

From The Association of Legal Entities "Depository—Accounting Union": the information about the 10,000,000 Kachkanarsky GOK Vanadiy's shares of the Second Emission (State Registration No. 62-1-1396), transferred to The Association of Legal Entities "Depository—Accounting Union" from Marex TK, LLC on December 30, 1998. The information must include the type of the agreement, its number and date of execution. The Plaintiffs have been unable to obtain the above information since the clearing houses provide such information only to their clients, the licensing authorities, or other government bodies. In addition, the Plaintiffs request a postponement of this case since the receipt and review of the above information requires additional time.

The Plaintiff's request is hereby granted.

Based on the above and in the absence of proof of the proper notification of the Defendants located outside the Russian Federation—Jackonet Limited, Amber Star LLC, and Nimegan Trading Limited—of the date, time, and place of this hearing, and the Plaintiffs' request for additional documentation and time to review same, this hearing is hereby continued.

In accordance with Articles 35,54,120, and 140 of the Arbitrazh Procedural Code of the Russian Federation, [this Court has]

DECIEDED:

To reschedule the hearing of this case for May 29, 2002 at 9:30 am.

To ad Foston Management Limited to the list of Defendants in this case.

To require CJSC Depository—Clearing Company to disclose the requested information about the 9,093,212  Kachkanarsky GOK Vanadiy's shares of the Second Emission (State Registration No. 62-1-1396), transferred to CJSC Depository—Clearing Company from Marex TK, LLC on December 30, 1998.  The information must include the type of the agreement, its number and date of execution.

To require The Association of Legal Entities "Depository—Accounting Union" to disclose the requested information about the 10,000,000 Kachkanarsky GOK Vanadiy's shares of the Second Emission (State Registration No. 62-1-1396), transferred to The Association of Legal Entities "Depository—Accounting Union" from Marex TK, LLC on December 30, 1998.  The information must include the type of the agreement, its number and date of execution.

The Honorable                                      M.L. Skuratovsky