To:    Federal Arbitrazh Court
       For the Urals District

       Docket # A 60-4517/2000-C1

From business creditor:

Nexis Products LLC
47 West 200 South, Suite 104
Salt Lake City, Utah 84101, U.S.A.

Address of representative in Russia:
620014, Ekaterinburg, Sheikmana, 30

**CASSATION APPEAL**
**On the court decisions, pursuant to Article 15 of the Federal Law**
**of the Russian Federation "On Insolvency (Bankruptcy)"**
**[on the disputes] between business creditors and the arbitrazh manager**


The Sverdlovsk Region Arbitrazh Court by the decision dated February 19, 2001 rejected as groundless the objections of Nexis Products LLC to the inclusion by the external manager of OAO Kachkanarsky GOK Vanadiy of the claims of OOO Lebaut in the register of creditors.

This decision was affirmed by the decision of the appellate instance dated April 19, 2001.

We believe that, in rendering these decisions, the courts incorrectly applied the norms of substantive law, namely, article 143 of the Civil Code of the Russian Federation, and articles 33, 34, 65 of the Federal Law "On Joint Stock Companies."

The arbitrazh manager unreasonably included OOO Lebaut into the register of creditors, with its claims in the amount of 1,096,197,951 roubles upon promissory notes presented for payment. Kachkanarsky GOK is not liable under those promissory notes, since these notes were placed by an unauthorized individual.

1.    Petitioner's claim is based on the provisions of the Federal Law of the Russian Federation On Joint Stock Companies, which limits the authority of the executive body of a joint stock company to issue securities, including promissory notes, without the approval of the Board of Directors of the company.

No decision to issue promissory notes in the total amount of 1,096,197,951 Rubles had been made by the Board of Directors and the Board of Directors had not agreed to the placement of the notes, these transactions violated the authority and should be subject to the consequences provided for by Art. 183(1) CC RF (Decree VAS No. 1112/98 of 06.23.1998).

1.1    The Court of the Appellate Instance determined that "placement of securities" means exclusively "placement of the issued securities", subject to FL On the Securities Market and, therefore, the term "security", as applied to Articles 33, 34, 65 FL On the Securities Market, excludes promissory notes. Thus, the Court decided that the executive bodies of joint stock companies have the right to independently issue an unlimited number of promissory notes of the Company and in any amount regardless of the value of the company's assets, and to sell them in any order and with any discount, even for 1% of the nominal value.

This decision does not comply with the law.

The purpose of the law of joint stock companies is, first of all, to protect the interests of the shareholders and, thus, applies certain limits to the actions of the executive body, specifically, by prohibiting large-scale and interested transactions. An emission of promissory notes may be organized in compliance with the requirements for the large-scale and other transactions in such a manner that, after they are called, the company may not be able to pay off the debt and, therefore, lose all of its assets. This is why the law provides that the decision to place securities, including promissory notes, must be made by the Board of Directors. This decision, in complaisance with Articles 33 and 34 FL On Joint Stock Companies must include the method of payment for the securities.

Therefore, the law and Art. 29.3.8 of the Charter of OAO Kachkanarsky Gok Vanadiy do not provide for the right of the executive body of the Company to issue promissory notes without the approval of the Board of Directors.

1.2    The Court determined that, since the text of the FL On Joint Stock Companies uses the word "placement" and Art. 2 of FL On the Securities Market, under the term "placement of the issued securities", implies only those securities to which current law applies, then the present procedure does not apply to the emission of the promissory notes. Such determination is unfounded.

The legislation does not allow for the limitations in the interpretation of the meaning of the term "securities", as provided in the Civil Code of the Russian Federation, only because of the use of the word "placement."

This word does not belong to those terms which are used exclusively in relation to the issued securities. The word "placement" is used in relation to many concepts, such as investments, finances, deposits, capital investments and so on, and is not limited exclusively by shares and bonds.

Furthermore, the normative acts, related to the turnover of securities, contain the word "placement". For instance, Paragraph 8 of the Decree of the Government of the Russian Federation No. 321, dated 04.14.1994, states the "order of placement, turnover, and repayment of the treasury notes"; Paragraph 6 of the Decree of the President of the RF No. 1005, dated 05.23.1994, talks about the "placement of the government treasury notes"; Art. 7 of the Regulations of the State Bank No. 17, dated 10.01.1997, talks about "placement of promissory

notes". The VAS RF uses the phrase "placement" of "securities" in Paragraph 11 of its Newsletter No. 42 dated 06.21.1999: "…the securities, previously placed by the bank…"

Thus, the word "placement" is not an exclusive term to characterize only the issued securities and, therefore, its use in the FL RF On Joint Stock Companies may not be interpreted as excluding promissory notes from the concept of securities.

1.3     Art. 33(1) of the FL RF On Joint Stock Companies grants the company the right to place those securities included in the judicial acts of the RF regarding securities. Thus, the law does not limit the securities legislation within this provision exclusively to the FL RF On Joint Stock Companies, but provides that the term "securities" means all securities, whose order of emission and turnover is regulated by legislation, including the law on promissory notes.

Since the legislation on securities is not limited exclusively by the FL RF On the Securities Market, and includes the entire legislation on securities, the Court had no basis to exclude the promissory notes from the definition of securities, as given in Articles 33, 34 and 65 of FL RF On Joint Stock Companies.

1.4     The Court's reference to Art. 2 of the FL RF On the Securities Market should also be disregarded since the Court, using the meaning of Art. 2, dies not quote it word by word but in excerpts.

For instance, Art. 2 gives the definition of "placement of issued securities" and not of "placement of securities". The Court, however, omits the word "issued", stating that "since Art. 2 applies to the placement of securities in general, and FL RF On the Securities Market applies only to the issued securities, then the term "placement of securities", as provided in the FL RF On Joint Stock Companies is limited to the issued securities.

Therefore, the FL RF On the Securities Market does not give the definition of "placement of securities" but only defines "placement of issued securities". Consequently, the Court's conclusion that the emission of promissory notes does not constitute placement of securities, is not consistent with the law.

2.     Furthermore, all of the notes, called by OOO Lebaut on 02.22.2000 and 02.23.2000, are signed by A.G. Gruzdev, the Deputy General Director of OOO Kachkanarsky GOK Vanadiy, in lieu of the issuer's director.

The Court did not accept the above argument citing the provided by the Arbitrazh Manager power of attorney issued to Mr. Gruzdev.

However, the Court did not take into consideration that, in accordance with Paragraph 1(8) of the Regulation on Simple Transferable Promissory Notes, a promissory note is an official document, which must explicitly follow the appropriate format and, in particular, must contain "a signature of the person who issued the note". The absence of at least one of the essential elements and/or signature of the legal entity renders the document substitute.

The requisite of the "the note issuer's signature" to a legal entity means "signature on behalf of the note issuer". In this regard, in order to recognize the note as drawn in the required format, it must include the authority of the individual who signed the document.

Therefore, in the event that a note is signed by someone other than the Director (Manager) of the Company, as is the case with GOK, his authority must be referenced in the note(power of attorney, resolution of members, resolution of shareholders, etc.). Since the notes contain no references to the powers of A.G. Gruzdev, it must be concluded that the note was signed by an unauthorized individual. Therefore, pursuant to Paragraph 8 of the Regulations, the note was authorized by Mr. Gruzdev personally and not by the Company.

The Notary, who prepared the objections to the Notes in question, received no power of attorney in Mr. Gruzdev's name. The notice to the Notary, denying the payment of the Notes, on behalf of GOK was signed by Gruzdev, the Deputy General Director and not the General Director himself. There was no reference to a power of attorney.

Under these circumstances, the Court's conclusion that the Notes were signed by an authorized individual, is unfounded.

Based on the above and pursuant to Art. 157 APC RF,

**IT IS REQUESTED:**

That the Order of the Arbitrazh Court of the Sverdlovsk Region dated 01.19.2001 and the Decision of the Appellate Instance of the Arbitrazh Court of Sverdlovsk Region, dated 04.19.2001, be reversed;
    the actions of the Arbitrazh Manager in including the claims of OOO Lebaut in the amount of 1,096,197,951 Rubles in the register of creditors of OOO Kachkanarsky GOK Vanadiy declared unlawful; and

    Addendum:
    Postal receipts confirming service of the complaint on OOO Lebaut and the Debtor;
    A copy of the Power of Attorney (the original is on file and will be presented in court and at creditors' meetings), 10 pages in total.

    Authorized Representative of the
    Business Creditors,
    Nexis Products LLC                    /signature/          M.M. Ashihmina

Case 1:04-cv-01482-GMS    Document 67-3    Filed 05/31/2005    Page 5 of 20

11/07 2002 11:32 FAX 436401                                    NO. 424  P. 20

В Федеральный Арбитражный
суд Уральского округа

по делу № А 60– 4517/2000–С1

От конкурсного кредитора –

« Нэксиз Продактс Эл.Эл.Си. » 47 Вест
200 Саус, Сьют 104, Солт Лейк Сити,
Юта 84101 США,
Адрес поверенного компании в
России: 620014 г. Екатеринбург,
ул. Шейнкмана дом. 30

## КАССАЦИОННАЯ ЖАЛОБА
на судебные акты в порядке ст. 15 ФЗ РФ
« О несостоятельности (банкротстве)» между
конкурсными кредиторами и Арбитражным управляющим

Определением Арбитражного суда Свердловской области от
19.02.2001 г. возражения Компании «Нэксиз Продакс Эл.Эл.Си.» по
включению требований ООО «Лебаут» в реестр кредиторов
внешним управляющим ОАО «Качканарский ГОК «Ванадий»
признаны необоснованными.

Постановлением апелляционной инстанции от 19.04.2001 г.
данное определение оставлено в силе.

Считаем, что при вынесении данных актов судом неправильно
применены нормы материального права, в частности ст. 143 ГК РФ и
ст.ст. 33, 34, 65 ФЗ « Об акционерных обществах».

Арбитражный управляющий необоснованно включил в реестр
кредиторов ООО «Лебаут» с требованиями на сумму 1,096,197,951
рублей, по предъявленным к оплате векселям. Качканарский ГОК
«Ванадий» не является обязанным по данным векселям, поскольку
эти векселя размещены неуполномоченным лицом.

(1) Заявитель основывает свои требования на положении ФЗ РФ
«Об акционерных обществах», которое ограничивает полномочия
исполнительного органа власти акционерного общества выпускать
ценные бумаги, в том числе векселя, без согласия Совета директоров
Общества.

АРБИТРАЖНЫЙ
СУД СВ. ОБЛ.
ПОСТУПИЛО 09 05 01

Case 1:04-cv-01482-GMS    Document 87-8    Filed 05/31/2005    Page 6 of 34

Поскольку никакого решения Совета директоров по вопросу о выпуске векселей на общую сумму 1,096,197,951 рублей не было и Совет директоров не давал свое согласие на размещение этих векселей, сделки совершены с нарушением полномочий и к ним применяются последствия, предусмотренные п. 1 ст. 183 ГК РФ. (Постановление ВАС № 1112/98 от 23.06.1998 г.)

(1.1.) Суд апелляционной инстанции посчитал, что под «размещением ценных бумаг» понимается исключительно «размещение эмиссионных ценных бумаг» в рамках ФЗ « О рынке ценных бумаг», а следовательно понятие «ценных бумаг», используемое в ст.ст. 33, 34, 65 ФЗ « Об акционерных обществах», исключает векселя. Таким образом, суд сделал вывод, что исполнительный орган власти в акционерных обществах вправе самостоятельно выпускать без ограничения сколько угодно векселей Общества, на какую угодно сумму вне зависимости от стоимости активов общества и продавать их в каком угодно порядке и с каким угодно дисконтом, хоть за 1 % от номинала.

Такой вывод не соответствует закону.

Закон об акционерных обществах направлен в первую очередь на защиту интересов акционеров, поэтому предусматривает определенные ограничения в действиях исполнительного органа власти, в частности путем запрета на совершение крупных сделок и сделок, в отношении которых имеется заинтересованность. Поскольку выпуск собственных векселей можно организовать с соблюдением правил о крупных и иных сделках таким образом, что после их предъявления к оплате Общество может оказаться не способным их оплатить и может лишиться всего своего имущества, законом установлено, что решение о размещении ценных бумаг, в том числе и векселей, должно приниматься Советом директоров. Это решение, в соответствии со ст.ст. 33, 34 ФЗ « Об акционерных обществах» должно содержать форму оплаты ценных бумаг.

Таким образом, закон и ст.29.3.8 Устава ОАО «Качканарский ГОК «Ванадий» не предусматривают право исполнительного органа власти Общества выпускать векселя без согласия Совета директоров.

(1.2.) Вывод суда о том, что поскольку в тексте ФЗ РФ « Об акционерных обществах» использовано слово «размещение», а в ст. 2 ФЗ РФ « О рынке ценных бумаг» под «размещением эмиссионных ценных бумаг» понимаются только ценные бумаги, на которые распространяется данный закон, то на выпуск векселей данный порядок не распространяется, несостоятелен.

3

Законодательство не допускает ограничение в толковании понятия ценных бумаг, данное в гражданском кодексе РФ, только из-за использования слова «размещение».

Данное слово не относится к терминам, которые используются только по отношению к эмиссионным ценным бумагам. Слово *«размещение»* используется по отношению ко многим понятиям, таким как инвестиции, денежные средства, вклады, капитальные вложения и т.д и не ограничено использованием только по отношению к акциям и облигациям.

Кроме того, в нормативных актах, касающихся вексельного обращения, используется слово *«размещение»*. Так, в Постановлении Правительства РФ № 321 от 14.04.1994 г. в п. 8 говорится о «порядке *размещения*, обращения и погашения казначейских векселей», в Указе Президента РФ № 1005 от 23.05.1994 г. в п. 6 сказано о *«размещении* государственных казначейских векселей», в Инструкции Госбанка № 17 от 01.10.997 г. в ст. 7 говорится о *«размещении* собственных векселей». ВАС РФ использует сочетание слов «размещение» «векселей» в своем Информационном письме № 42 от 21.06.1999 г., где в п. 11 указывает, что «...векселя ранее *размещены* банком...».

Таким образом, слово *«размещение»* не является исключительным термином, характеризующим эмиссионные ценные бумаги, а потому его использование в ФЗ РФ «Об акционерных обществах» не может трактоваться как исключение векселей из понятия ценные бумаги.

1.3. Статья 33 п. 1 ФЗ РФ «Об акционерных обществах» предусматривает право общества размещать ценные бумаги, предусмотренные правовыми актами РФ о ценных бумагах. Таким образом, закон не указывает в качестве единственного закона о ценных бумагах в рамках данной нормы только ФЗ РФ «О рынке ценных бумаг», а предусматривает, что под ценными бумагами понимаются все ценные бумаги, порядок выпуска и обращения которых законодательно урегулирован, в том числе и вексельным законодательством.

Поскольку законодательство о ценных бумагах не ограничивается только ФЗ РФ «О рынке ценных бумаг», а включает в себя и все законодательство о векселях, суд необоснованно исключил векселя из понятия ценные бумаги, данных в ст.ст. 33, 34, 65 ФЗ РФ «Об акционерных обществах».

1.4. Ссылка суда на ст. 2 ФЗ РФ «О рынке ценных бумаг» также не может быть принята во внимание, поскольку суд используя

11/07 2002 11:53 FAX 9334614          MARKS&SOKOLOV                    NO.414    P.23
15.MAY.2002   16:47                      ↓
FROM : EKATERINBURG                PHONE NO. : 7 3432 53 19 76

понятие, содержащееся в ст. 2, воспроизводит его не дословно, а с сокращениями.

Так, в ст. 2 дано определение «размещения эмиссионных ценных бумаг», а не «размещения ценных бумаг». Суд же в своем постановлении слово «эмиссионных» опускает и указывает, что поскольку ст. 2 говорит о размещении ценных бумаг вообще, а ФЗ РФ «О рынке ценных бумаг» распространяется только на эмиссионные ценные бумаги, то и понятие «размещение ценных бумаг», данное в ФЗ РФ « Об акционерных обществах» ограничивается эмиссионными ценными бумагами.

Таким образом, ФЗ РФ « О рынке ценных бумаг» не дает определение «размещению ценных бумаг», а дает определение только «размещению эмиссионных ценных бумаг», поэтому вывод суда о том, что выпуск векселей не является размещением ценных бумаг, не соответствует закону.

(2) Кроме того, все векселя, предъявленные к оплате ООО «Лебаут» 22.02.2000 г. и 23.02.2000 г. подписаны заместителем Генерального директора ОАО «Качканарский ГОК «Ванадий» Груздевым А.Г. за руководителя Векселедателя.

Суд не принял указанный довод, сославшись на доверенность, выданную на имя Груздева А.Г., которую временный управляющий представил в судебное заседание.

Однако, суд не учел, что в соответствии с п. 1 п.п. 8 Положения о простом переводном векселе ,вексель является формальным документом, который должен строго соответствовать форме и, в частности, должен содержать «подпись того, кто выдал вексель». Отсутствие хотя бы одного существенно необходимого элемента в подписи юридического лица приводит к суррогатности документа.

Реквизит «подпись векселедателя» приобретает для юридического лица смысл «подпись от лица векселедателя». В этой связи для признания векселя составленным без нарушения формы необходимо указание в векселе на полномочия лица, поставившего на нем свою подпись.

Таким образом, в случае подписание векселя не генеральным директором (руководителем) Общества, а иным лицом от имени ГОКа, его полномочия должны быть зафиксированы в векселе (доверенность, решение участников, решение акционеров и т.д.). Поскольку никакой ссылки в векселях на доверенность Груздева А.Г. не имеется, можно сделать вывод, что вексель подписан неуполномоченным лицом, а следовательно, согласно п. 8

11/07 2002 11:54 FAX 9334614    MARKS&SOKOLOV    NO. 414    P.24
15.MAY.2002  16:47    ▲
FROM : EKATERINBURG    PHONE NO. : 7 3432 53 19 76    ℡005
P.24

5

Положения уполномоченным по векселю является не Общество, а сам Груздев А.Г..

Никаких доверенностей на имя Груздева А.Г. не было представлено и нотариусу, производившему протест по этим векселям. Уведомление нотариусу об отказе в оплате векселей от имени ГОКа также подписано не Генеральным директором Общества, а его заместителем - Груздевым А.Г., без ссылки на доверенность.

При таких обстоятельствах суд необоснованно сделал вывод о подписании векселя уполномоченным лицом.

На основании изложенного, руководствуясь ст. 175 АПК РФ,

ПРОШУ:

Определение Арбитражного суда Свердловской области от 19.02.2001 г. и Постановление апелляционной инстанции Арбитражного суда Свердловской области от 19.04.2001 г. отменить и признать незаконными действия Арбитражного управляющего по включению в реестр кредиторов ООО «Лебаут» с требованиями на сумму 1,096,197,951 рублей.

Приложение - почтовые квитанции о направлении жалобы ООО «Лебаут» и Должнику,

копия доверенности (подлинник находится на руках и необходим для предъявления в судебных заседаниях) - всего на 10-ти листах.

Полномочный представитель,
Конкурсный кредиторов
« Нэксиз Продакте Эл.Эл.Си.                                    М.М.Ашихмина

[national emblem]

# FEDERAL COURT OF ARBITRATION OF THE URAL DISTRICT

## DETERMINATION

Of the Cassation Court regarding the Inspection of the Legality and Substantiation of the Enforced Decisions (Resolutions) of the Courts of Arbitration

**City of Ekaterinburg**
July 12, 2001
                                                      *Case No. F09-715/01 GK*

The Federal Arbitration Court of the Ural District in charge of the inspection at the cassation instance of the legality of the decisions and resolutions of the courts of arbitration of entities in the Russian Federation passed by such entities in the lower and appellate instances, comprised of:

Chair:              C. V. Balachkov,
Judges:             L. I. Kondratyeva,
                    F. V. Kuznetsov

Reviewed during a court session the cassation appeal of Nexus Products LLC of the determination of February 19, 2001 and the April 19, 2001 resolution of the appellate instance of the Court of Appeals of Sverdlovsk Province in matter No. A60-4517/2000-S2 on the application of OAO Krasnouralskmezhraigaz to recognize the insolvency of OAO Vanadii Mining and Milling Complex of Kachkanar.

The sessions were attended by representatives of:

Vanadii Mining and Milling Complex –  E. L. Grigoryeva, authorization dated May 14, 2001
                                       E. N. Starshinova, authorization dated May
                                       14, 2001;
Inter-regional Territorial Body in the Ural Federal District of the Federal Financial Recovery and Bankruptcy Service – D. S. Elistratov, authorization January 4, 2001

The rights and obligations were explained.

No objections to the composition of the court were made.

Nexus Products LLC has filed a complaint regarding the actions of the external manager in connection with the inclusion of OOO Lebaut into the creditors' register of OAO Vanadii Mining and Milling Complex of Kachkanar in the amount of 1,097,062,495 rubles.

With a determination dated February 19, 2001 (judges: N. V. Kazantseva, E. A. Platonova, A. A. Gaiduk), the objections of the applicant were recognized as unjustified.

Pursuant to Resolution of the appellate instance dated April 19, 2001 (Judges: N. L. Zorina, G. I. Strelnikova, E. A. Bikmuhamedova), the Determination of February 19, 2001 was left unchanged.

Nexus Products LLC does not agree with the above court documents and is requesting their revocation referring to an inappropriate application of Articles 33, 34, and 65 of the Joint Stock Companies Act by the court.

The debtor has filed a petition for dismissal of the cassation appeal since it has been signed by a person who had not been authorized to sign it.

Upon reviewing the petition of the debtor, the cassation court believes that the petition should be granted for the following reasons:

Pursuant to Section 1, Article 165 of the Code of Arbitration Procedure of the Russian Federation, the appeal signed by the representative is accompanied by an authorization confirming the representative's authority for appealing court documents.

The cassation appeal of the applicant has been signed by a representative acting based on a general power of attorney from the company dated November 15, 2000, which authorizes him to conduct business on the territory of the Russian Federation.

In violation of Articles 3 and 4 of the Hague Convention, which revokes the requirement for legalization of foreign official documents, the general power of attorney dated November 15, 2000, has not been accompanied by an apostil in accordance with the appropriate procedure.

Under such circumstances, the authority of the representative in the area of the appeal of court documents has not been properly confirmed. In accordance with Section 3, Article 87 of the Code of Arbitration Procedure of the Russian Federation, the cassation appeal of Nexus Products LLC is not subject to a hearing.

Guided by Section 3, Article 87 of the Code of Arbitration Procedure of the Russian Federation, the court

### DETERMINED:

Not to hear the cassation appeal of Nexus Products LLC of the Determination dated February 19, 2001, and the April 19, 2001, Resolution of the Appellate instance of the Court of Arbitration of Sverdlovsk Province in matter No. A60-4517/2000.

Chair:                                               S. V. Balachkov

Judges:                                           L. I. Kondratyeva
                                                      *G. V Kuznetsov*

[stamp: illegible] [round seal: illegible]

ФЕДЕРАЛЬНЫЙ АРБИТРАЖНЫЙ СУД УРАЛЬСКОГО ОКРУГ,

О П Р Е Д Е Л Е Н И Е
кассационной инстанции по проверке законности и обоснованности решений
(постановлений) арбитражных судов, вступивших в законную силу

г. Екатеринбург
12 июля 2001 года                                      Дело № Ф09-715/01 ГК

Федеральный арбитражный суд Уральского округа по проверке в кассационной инстанции законности решений и постановлений арбитражных судов субъектов Российской Федерации, принятых ими в первой и апелляционной инстанциях, в составе:
председательствующего: Балачкова С.В.,
судей:                          Кондратьевой Л.И.,
                                Кузнецова Г.В.
рассмотрел в судебном заседании кассационную жалобу «Нексиз Продактс Эл.Эл.Си» на определение от 19.02.01 и постановление апелляционной инстанции от 19.04.01 Арбитражного суда Свердловской области по делу № А60-4517/2000-С2 по заявлению ОАО «Красноуральскмежрайгаз» о признании несостоятельным ОАО «Качканарский ГОК «Ванадий».
В заседании приняли участие представители:
ГОК «Ванадий» – Григорьева Е.Л., дов. от 14.05.01,
                          Старшинова Е.Н., дов. от 14.05.01;
Межрегионального территориального органа в Уральском федеральном округе ФСФО России – Елистратов Д.С., дов. от 04.01.01.
Права и обязанности разъяснены.
Отводов составу суда не заявлено.
«Нексиз Продактс Эл.Эл.Си» заявлена жалоба на действия внешнего управляющего по включению ООО «Лебаут» в реестр кредиторов ОАО «Качканарский ГОК «Ванадий» в размере 1097062495 руб.
Определением от 19.02.01 (судьи: Казанцева Н.В., Платонова Е.А., Гайдук А.А.) возражения заявителя признаны необоснованными.
Постановлением апелляционной инстанции от 19.04.01 (судьи: Зорина Н.Л., Стрельникова Г.И., Бикмухаметова Е.А.) определение от 19.02.01 оставлено без изменения.
«Нексиз Продактс Эл.Эл.Си» с названными судебными актами не согласна, просит их отклонить, ссылаясь на неправильное применение судом ст.ст.33, 34, 65 Закона «Об акционерных обществах».
Должником заявлено ходатайство об оставлении кассационной жалобы без рассмотрения, поскольку она подписана лицом, не имеющим права ее подписывать.

Рассмотрев ходатайство должника, суд кассационной инстанции полагает, что оно подлежит удовлетворению по следующим основаниям.

В силу п.1 ст.165 АПК РФ к жалобе, подписанной представителем, прилагается доверенность, подтверждающая его полномочия на обжалование судебных актов.

Кассационная жалоба заявителя подписана представителем, действующим по генеральной доверенности компании от 15.11.2000, управомочивающей вести дела на территории Российской Федерации.

В нарушение ст.ст.3, 4 Гаагской Конвенции, отменяющей требование легализации иностранных официальных документов, к генеральной доверенности от 15.11.2000 не проставлен апостиль в предусмотренном порядке.

При таких обстоятельствах полномочия представителя на обжалование судебных актов надлежащим образом не подтверждены. Кассационная жалоба «Нексиз Продактс Эл.Эл.Си» не подлежит рассмотрению применительно к п.3 ст.87 АПК РФ.

Руководствуясь п.3 ст.87 АПК РФ, суд

О П Р Е Д Е Л И Л :

Кассационную жалобу «Нексиз Продактс Эл.Эл.Си» на определение от 19.02.01 и постановление апелляционной инстанции от 19.04.01 Арбитражного суда Свердловской области по делу № А60-4517/2000 оставить без рассмотрения.

Председательствующий                                    С.В.Балачков

Судьи                                                              Л.И.Кондратьева

                                                                       Г.В.Кузнецов

## MINUTES
### Of the Meeting of the Creditors of OAO Vanadii Mining and Milling Complex of Kachkanar

*City of Kachkanar*                                              *March 11, 2001*

**The Minutes of the Registration Commission of the Meeting of the Creditors of OAO Vanadii Mining and Milling Complex of Kachkanar are hereby announced:**

During the bankruptcy procedure, external management with respect to OAO Vanadii Mining and Milling Complex of Kachkanar was established and *141 (one hundred forty-one) trustee creditors* were entered into the creditors' claims register as of March 11, 2001. The amount of their claims towards the debtor is *1,681,931,385* (one billion, six hundred eighty-one million, nine hundred thirty-one thousand, three hundred eighty-five) rubles. All trustee creditors have been duly notified of this meeting and its tentative agenda.

This meetings which was called for the purpose of the resolution of certain issues related to the reaching of an amicable settlement with OAO Vanadii Mining and Milling Complex of Kachkanar was attended by *89* (eighty-nine) *trustee creditors* whose claims towards the debtor amount to *1,647,329,461* (one billion, six hundred forty-seven million, three hundred twenty-nine thousand, for hundred sixty-one) rubles.

In this manner, the claims of the creditors represented at this meeting amounts of *97.94%* of the total amount of the claims of trustee creditors of the debtor, established as of the moment of this meeting and included in the creditors' claims register of OAO Vanadii Mining and Milling Complex of Kachkanar.

*(Minutes of the Registration Commission of the Meeting of the Creditors of OAO Vanadii Mining and Milling Complex of Kachkanar)*

Let us proceed to the items on the agenda.

The external manager announces the agenda.

### Agenda:

1. Decision to reach an amicable settlement.

2. Election of a person authorized to sign the amicable settlement on behalf of the trustee creditors.

**O. S. Kozyrev:** For the purpose of the meeting, it is proposed to set forth the following time limit:

- Report of the external manager – up to 10 minutes

-        Addresses – up to 3 minutes

-        All applications are to be submitted in writing.

**Vote on the meeting's agenda and time limit** (by proxy):

*Yea – 86*

**Nay – none**
**Refrained – none**

<u>O. S. Kozyrev:</u> In this manner, this agenda and this time limit for the conduct of the meeting have been approved with a majority vote.

I move to hear the draft of an amicable settlement.

(*The external manager reads the draft of an amicable settlement:*)

## DRAFT OF AN AMICABLE SETTLEMENT

The creditors of the Open Joint Stock Company of Vanadii Mining and Milling Complex of Kachkanar, represented by _____, authorized by the creditors' meeting and acting pursuant to Section 2, Article 121 of the Federal Insolvency (Bankruptcy) Act and the decision of the creditors' meeting of _____, 2001, on one hand, and the Open Joint Stock Company of Vanadii Mining and Milling Complex of Kachkanar, hereinafter to be referred to as "the Debtor", represented by the external manager, Oleg Stanislavovich Kozyrev, [illegible] Section 2, Article 121 of the Federal Insolvency (Bankruptcy) Act and the August 22, 2000, Determination of the Court of Arbitration of Sverdlovsk Province, on the other hand, hereinafter to be referred to collectively as "the Parties", have entered into the following amicable settlement regarding the following:

### 1. Issues Regulated by This Amicable Settlement

1.1. This amicable settlement is entered into during the period of external management at the stage of the court investigation of the case for the declaration of the Debtor bankrupt (No. A60-4517/00-S1) currently in proceedings before the Court of Arbitration of Sverdlovsk Province.

1.2. The decision to enter into this amicable settlement has been reached at a Debtor's creditors' meeting held on _____, 2001 (Minutes of the creditors' meeting of _____, 2001).

1.3. The provisions of this amicable settlement shall cover the trustee creditors of OAO Vanadii Mining and Milling Complex of Kachkanar, whose claims have been recognized as established in accordance with the Federal Insolvency (Bankruptcy) Act (hereinafter to be referred to as "Creditors"), including Creditors not participating in the vote on the

issue of entering into an amicable settlement, as well as those who have voted against the entry into such a settlement.

1.4. This amicable settlement determines the amounts, terms and methods of servicing the monetary liabilities of the Debtor towards the Creditors.

1.5. This amicable settlement has been entered into in accordance with the provisions of Chapter 7 of the Federal Insolvency (Bankruptcy) Act.

1.6. This amicable settlement shall become effective as of the moment of its approval by the Court of Arbitration of Sverdlovsk Province.

### 2. Amounts, Procedure and Terms for Servicing the Liabilities of the Debtor and Termination of the Obligations of the Debtor

2.1.    The debt of the Debtor shall be determined in accordance with the information contained in the creditor's claims register prepared by the current manager. The register of creditor's claims shall be an integral part of this amicable settlement (Appendix).

2.1.1.    Debt towards first order creditors – none.

2.1.2.    Debt towards second order creditors – none.

2.1.3.    Debt towards third order creditors – none.

2.1.4.    Debt towards fourth order creditors – _____.

2.1.5.    Debt towards fifth order creditors – _____.

2.1.6.    In the event that the Court of Arbitration of Sverdlovsk Province hears the objections of a Creditor with respect to a refusal by the external manager to make an entry into the register of creditors' claims after the date of the Creditors' meeting, on which the decision for signing this amicable settlement has been reached, as well as in the event that a determination is made that the Creditor's claims have been justified, the amount of the debt indicated in Section 2.1.5. herein shall be increased by the amount indicated in the Determination of the Court of Arbitration of Sverdlovsk Province, which sets forth the amount of the claims of the given Creditor.

All provisions of this amicable settlement shall fully cover a Creditor described in this section.

2.2.    All legal expenses, including state taxes, as well as expenses related to the payment of a compensation to the provisional manager and to the external manager, shall be paid by the Debtor, out of order, in full within 10 (ten) days as of the confirmation of this amicable settlement by the Court of Arbitration of Sverdlovsk Province.

2.3.    The procedure and terms of servicing the debt toward the forth order creditors, as well as the liabilities for the payment of fines (penalties) and other financial (economic) sanctions related to the mandatory payments into the budget and the non-budgetary funds shall be set forth in accordance with the laws of the Russian Federation regarding taxation.

2.4.    The servicing of the Debtor's liabilities toward fifth order Creditors shall be done by the Debtor by means of monetary funds deferred as of the moment of confirmation of this amicable settlement, in equal shares, in accordance with the schedule given below:

| Year | Term of Payment | Amount of payment | Note |
|------|-----------------|-------------------|------|
| 1. 2001 | ---- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | ---- |
| 2. 2002 | ---- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | ---- |
| 3. 2003 | No later than December 31, 2003 | 5 (five) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 4. 2004 | No later than December 31, 2004 | 5 (five) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 5. 2005 | No later than December 31, 2005 | 10 (ten) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 6. 2006 | No later than December 31, 2006 | 10 (ten) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external | Monetary funds |

| | | manager. | |
|---|---|---|---|
| 7. 2007 | No later than December 31, 2007 | 10 (ten) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 8. 2008 | No later than December 31, 2008 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 9. 2009 | No later than December 31, 2009 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 10. 2010 | No later than December 31, 2010 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 11. 2011 | No later than December 31, 2011 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |

2.5.    In the event of a change in the payment requirements of the Creditor for the transfer of funds under the account of debt servicing by the Debtor in accordance with this amicable settlement, the Creditors shall have the right to send to the Debtor a written notification for the entire term of this amicable settlement.

In the event that the notification indicated in this section is not submitted, the rules regarding debt-servicing set forth by the civil legislation of the Russian Federation shall apply.

2.6.    During the servicing of the Debtor's liabilities towards the Creditors, no transfer of funds under the terms of this amicable settlement shall be allowed into the accounts of third parties, except for cases where the fact of a change in the person of the liability has been confirmed by the Creditor with documents.

### 3. [illegible] **Provisions**

3.1. This amicable settlement has been prepared in four copies: the first copy shall be kept at the Court of Arbitration of Sverdlovsk Province, the second shall be kept by the Debtor, the third copy shall be kept by the person authorized by the meeting of the creditors of the Debtor of _____, 2001, to sign this Amicable Settlement, and the fourth shall be kept by the external manager of the Debtor. If necessary, a Creditor shall have the right to request from the Debtor a copy of this amicable settlement certified with a seal of the Debtor and a signature of the Debtor's executive officer.

3.2. Any disputes arising during the implementation of this amicable settlement shall be resolved in accordance with the laws of the Russian Federation.

### 4. **Signatures of the Parties**

**CREDITORS:**
Person authorized by the meeting of the creditors of OAO Vanadii Mining and Milling Complex of Kachkanar for signing the Amicable Settlement

_____ (_____)

**DEBTOR:**
External Manager of OAO Vanadii Mining and Milling Complex of Kachkanar

_____ (O. S. Kozyrev)

**O. S. Kozyrev:** Dear creditors, I would like to bring to your attention the fact that the current draft has been sent to the Federal Financial Recovery and Bankruptcy Service of Russia from where the response was that the presented draft for an amicable settlement meets the requirements of the Federal Act and may be recommended for review by the meeting of the creditors of OAO Vanadii Mining and Milling Complex of Kachkanar.

The draft of the amicable settlement has also been discussed at a session of the Creditors' Committee.

Are there any questions, comments or proposals from the participants?

**V. M. Averenkov** (*representative of the City Administration of Kachkanar*): I propose to make certain changes in the language of the amicable settlement. The main objective is the normal operation of the Mining and Milling Complex and its monetary contribution into the budget. It has to mobilize production and increase the number of employees.

I propose to sign an amicable settlement under a different terms than the terms of the amicable settlement proposed by the Creditors' Committee of OAO Vanadii Mining and Milling Complex of Kachkanar, i.e.:

Section 2.4. of the Amicable Settlement is to read as follows:

"2.4.      The servicing of the Debtor's liabilities toward fifth order Creditors shall be done by the Debtor by means of monetary funds deferred as of the moment of confirmation of this amicable settlement, [circled by hand: in equal shares], in accordance with the schedule given below:

| Year | Term of Payment | Amount of payment | Note |
|------|-----------------|-------------------|------|
| 1. 2001 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 2. 2002 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 3. 2003 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 4. 2004 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 5. 2005 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 6. 2006 | No later than December 31, 2006 | 5 (five) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 7. 2007 | No later than December 31, 2007 | 7 (seven) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of | Monetary funds |

| | | the Debtor's creditor's claims register prepared by the external manager. | |
|---|---|---|---|
| 8. 2008 | No later than December 31, 2008 | 9 (nine) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 9. 2009 | No later than December 31, 2009 | 9 (nine) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 10. 2010 | No later than December 31, 2010 | 10 (ten) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 11. 2011 | No later than December 31, 2011 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 12. 2012 | No later than December 31, 2012 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 13. 2013 | No later than December 31, 2013 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 14. 2014 | No later than December 31, 2014 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |

The remaining portion of the language of the Amicable Settlement is to be left unchanged.

Once again, I ask all of you to listen to the appeal that the Mining and Milling Complex of Kachkanar has to operate normally and productively.

[illegible – possibly: **O. N. or P. Mustafina**] (*representative of the Magnitogorsk Metallurgical Complex*): I have objections:

OAO Magnitogorsk Metallurgical Complex is against the signing of an amicable settlement for the following reasons:

Section 2.4. of the Amicable Settlement is in contradiction with Article 122 of the Federal Insolvency (Bankruptcy) Act since it allows for a postponement of the payment for five years, as well as a deferment for nine years.

In addition, the enclosed schedule for the servicing of the Debtor's debt towards the Creditors envisions an amount of the payment as a percentage of the total amount of the Debtors' debt toward each Creditor determined based on data contained in the creditors' claims register [underlined by hand: rather than in equal portions].

The memorandum to the participant of the creditor's meeting is in contradiction with article 120 of the Federal Insolvency (Bankruptcy) Act. I ask that the vote on the signing of the amicable settlement is done in accordance with the Federal Act, i.e. by majority of the trustee creditors regardless of the amount of the debt.

**O. S. Kozyrev:** Please present your objection in writing. The servicing of the debt in equal shares here means that the debt is being serviced towards each creditor – if 5%, then it would be in equal shares from the creditor's debt [sic].

With respect to the vote, we will vote with ballots, we will vote with votes.

*Any other questions or comments?*

No questions. No comments.

In that case, I propose to take a break for the preparation of the ballots on the vote on changes in the language of the amicable settlement in accordance with the proposal of the representative of the City Administration of Kachkanar.

(*30 minute break*)

**O. S. Kozyrev:** Please obtain additional ballots.

We are moving on with the meeting. Please note the ballot. In the text presented to the administrative office, there was a technical error: in the Amount of Payment column, in the

preposition "*ot*", the letter "b" was entered instead of the letter "t". I move to vote on this item (Ballot No. 3) for the correction of the spelling error. No objections were received.

**Vote on the issue of the introduction of changes in the language of Section 2.4. of the amicable settlement:**

Established and entered into the creditors' claims register:
**141** trustee creditors.
The total number of votes of the trustee creditors is:
**1,681,931,385** (*one billion, six hundred eighty-one million, nine hundred thirty one thousand, three hundred eighty five*) votes

**89** (eighty nine) ballots in the total amount of **1,647,329,461** (*one billion, six hundred forty-seven [million], three hundred twenty-nine thousand, four hundred sixty-one*) votes, which is **97.94%** of the total number of the votes of trustee creditors, were distributed for the purposes of the vote.

**The voting ballot included:**
*Section 2.4. of the Amicable Settlement is to read as follows:*

"2.4.     The servicing of the Debtor's liabilities toward fifth order Creditors shall be done by the Debtor by means of monetary funds deferred as of the moment of confirmation of this amicable settlement, [circled by hand: in equal shares], in accordance with the schedule given below:

| Year | Term of Payment | Amount of payment | Note |
|------|-----------------|-------------------|------|
| 1. 2001 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 2. 2002 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 3. 2003 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 4. 2004 | --- | 0% of the total amount of the Debtor's liability towards each | --- |

| | | | |
|---|---|---|---|
| | | creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | |
| 5. 2005 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 6. 2006 | No later than December 31, 2006 | 5 (five) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 7. 2007 | No later than December 31, 2007 | 7 (seven) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 8. 2008 | No later than December 31, 2008 | 9 (nine) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 9. 2009 | No later than December 31, 2009 | 9 (nine) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 10. 2010 | No later than December 31, 2010 | 10 (ten) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 11. 2011 | No later than December 31, 2011 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |

| 11. 2012 | No later than December 31, 2012 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
|---|---|---|---|
| 11. 2013 | No later than December 31, 2013 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 11. 2014 | No later than December 31, 2014 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |

The remaining portion of the language of the Amicable Settlement is to be left unchanged.

Following the vote, **89 (eighty nine)** ballots in the total amount of **1,647,329,461** (*one billion, six hundred forty-seven million, three hundred twenty-nine thousand, four hundred sixty-one*) votes, which is **97.94%** of the total number of the votes of trustee creditors, were received.

OF WHICH: **89 (eighty nine)** ballots were **valid** and **none** were *invalid.*

**"IN FAVOR OF"** the introduction of the changes in the language of the amicable settlement:
83 (eighty-three) trustee creditors
with a total amount of 1,446,444,979 (one billion, four hundred forty-six million, four hundred forty-four thousand, nine hundred seventy-nine) votes, which is **86.00%** of the total number of votes of trustee creditors.

**"AGAINST"** the introduction of the changes in the language of the amicable settlement:
5 **(five)** trustee creditors with a total amount of **196,235,467** (*one hundred ninety-six million, two hundred thirty-five thousand, four hundred sixty-seven*) votes, which is **11.67%** of the total number of votes of trustee creditors.

**"REFRAINED"** on this issue:
1 **(one)** trustee creditor
with a total amount of 4,649,015 (four million, six hundred forty-nine thousand, fifteen) votes, which is **0.28%** of the total number of votes of trustee creditors.

**RESULTS OF THE VOTE: The meeting passed a decision:** To introduce the proposed changes in the language of the amicable settlement (Minutes No. 1 of the Counting Commission).

**O. S. Kozyrev:** I propose that the creditors obtain additional ballots.

During registration, all were given Applications for the nomination of a candidate authorized by the meeting to sign the amicable settlement. Based on the applications, ballots were prepared. The was an application for one nomination – that of Leonid Vasilyevich Demskii. In the event that anybody else has other nominations to make, please enter them individually into the ballots.

*(Distribution of the ballots)*

Since the first issue raised was the issue of the introduction of changes in the language of the amicable settlement, it is necessary to take a logistical break for the preparation of the final version of the amicable settlement for a vote.

*(20 minute break)*

**O. S. Kozyrev:** Dear creditors, the issue of signing an amicable settlement in the following version is now being placed on the agenda:

## AMICABLE SETTLEMENT

The creditors of the Open Joint Stock Company of Vanadii Mining and Milling Complex of Kachkanar, represented by _____, authorized by the creditors' meeting and acting pursuant to Section 2, Article 121 of the Federal Insolvency (Bankruptcy) Act and the decision of the creditors' meeting of _____, 2001, on one hand, and the Open Joint Stock Company of Vanadii Mining and Milling Complex of Kachkanar, hereinafter to be referred to as "the Debtor", represented by the external manager, Oleg Stanislavovich Kozyrev, acting pursuant to Section 2, Article 121 of the Federal Insolvency (Bankruptcy) Act and the August 22, 2000, Determination of the Court of Arbitration of Sverdlovsk Province, on the other hand, hereinafter to be referred to collectively as "the Parties", have entered into the following amicable settlement regarding the following:

### 1. Issues Regulated by This Amicable Settlement

1.7. This amicable settlement is entered into during the period of external management at the stage of the court investigation of the case for the declaration of the Debtor bankrupt (No. A60-4517/00-S1) currently in proceedings before the Court of Arbitration of Sverdlovsk Province.

1.8. The decision to enter into this amicable settlement has been reached at a Debtor's creditors' meeting held on _____, 2001 (Minutes of the creditors' meeting of _____, 2001).

1.9. The provisions of this amicable settlement shall cover the trustee creditors of OAO Vanadii Mining and Milling Complex of Kachkanar, whose claims have been recognized as established in accordance with the Federal Insolvency (Bankruptcy) Act (hereinafter to be referred to as "Creditors"), including Creditors not participating in the vote on the issue of entering into an amicable settlement, as well as those who have voted against the entry into such a settlement.

1.10.    This amicable settlement determines the amounts, terms and methods of servicing the monetary liabilities of the Debtor towards the Creditors.

1.11.    This amicable settlement has been entered into in accordance with the provisions of Chapter 7 of the Federal Insolvency (Bankruptcy) Act.

1.12.    This amicable settlement shall become effective as of the moment of its approval by the Court of Arbitration of Sverdlovsk Province.

## 2. Amounts, Procedure and Terms for Servicing the Liabilities of the Debtor and Termination of the Obligations of the Debtor

2.1.    The debt of the Debtor shall be determined in accordance with the information contained in the creditor's claims register prepared by the current manager. The register of creditor's claims shall be an integral part of this amicable settlement (Appendix).

2.1.1.  Debt towards first order creditors – none.

2.1.2.  Debt towards second order creditors – none.

2.1.3.  Debt towards third order creditors – none.

2.1.4.  Debt towards fourth order creditors – **356,614,294.48 rubles** (*three hundred fifty-six million, six hundred fourteen thousand, two hundred ninety-four rubles and 48 kopeks*).

2.1.5.  Debt towards fifth order creditors – **1,681,931,385.19 rubles** (*one billion, six hundred eighty-one million, nine hundred thirty-one thousand, three hundred eighty-five rubles and 19 kopeks*).

2.1.6.  In the event that the Court of Arbitration of Sverdlovsk Province hears the objections of a Creditor with respect to a refusal by the external manager to make an entry into the register of creditors' claims after the date of the Creditors' meeting, on which the decision for signing this amicable settlement has been reached, as well as in the event that a determination is made that the Creditor's claims have been justified, the amount of the debt indicated in Section 2.1.5. herein shall be increased by the amount indicated in the Determination of the Court of Arbitration of Sverdlovsk Province, which sets forth the amount of the claims of the given Creditor.

All provisions of this amicable settlement shall fully cover a Creditor described in this section.

2.2.    All legal expenses, including state taxes, as well as expenses related to the payment of a compensation to the provisional manager and to the external manager, shall be paid by the Debtor, out of order, in full within 10 (ten) days as of the confirmation of this amicable settlement by the Court of Arbitration of Sverdlovsk Province.

2.3.    The procedure and terms of servicing the debt toward the forth order creditors, as well as the liabilities for the payment of fines (penalties) and other financial (economic) sanctions related to the mandatory payments into the budget and the non-budgetary funds shall be set forth in accordance with the laws of the Russian Federation regarding taxation.

2.4.    The servicing of the Debtor's liabilities toward fifth order Creditors shall be done by the Debtor by means of monetary funds deferred as of the moment of confirmation of this amicable settlement, in equal shares, in accordance with the schedule given below:

| Year | Term of Payment | Amount of payment | Note |
|---|---|---|---|
| 1. 2001 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 2. 2002 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 3. 2003 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 4. 2004 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | --- |
| 5. 2005 | --- | 0% of the total amount of the Debtor's liability towards each creditor, determined on the basis of | --- |

| | | the Debtor's creditor's claims register prepared by the external manager. | |
|---|---|---|---|
| 6. 2006 | No later than December 31, 2006 | 5 (five) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 7. 2007 | No later than December 31, 2007 | 7 (seven) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 8. 2008 | No later than December 31, 2008 | 9 (nine) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 9. 2009 | No later than December 31, 2009 | 9 (nine) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 10. 2010 | No later than December 31, 2010 | 10 (ten) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 11. 2011 | No later than December 31, 2011 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 12. 2012 | No later than December 31, 2012 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |
| 13. 2013 | No later than | 15 (fifteen) % of the total amount of | Monetary funds |

| | December 31, 2013 | the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | |
|---|---|---|---|
| 14. 2014 | No later than December 31, 2014 | 15 (fifteen) % of the total amount of the Debtor's liability towards each creditor, determined on the basis of the Debtor's creditor's claims register prepared by the external manager. | Monetary funds |

2.5.    In the event of a change in the payment requirements of the Creditor for the transfer of funds under the account of debt servicing by the Debtor in accordance with this amicable settlement, the Creditors shall have the right to send to the Debtor a written notification for the entire term of this amicable settlement.

In the event that the notification indicated in this section is not submitted, the rules regarding debt-servicing set forth by the civil legislation of the Russian Federation shall apply.

2.6.    During the servicing of the Debtor's liabilities towards the Creditors, no transfer of funds under the terms of this amicable settlement shall be allowed into the accounts of third parties, except for cases where the fact of a change in the person of the liability has been confirmed by the Creditor with documents.

**3. Final Provisions**

3.1. This amicable settlement has been prepared in four copies: the first copy shall be kept at the Court of Arbitration of Sverdlovsk Province, the second shall be kept by the Debtor, the third copy shall be kept by the person authorized by the meeting of the creditors of the Debtor of _____, 2001, to sign this Amicable Settlement, and the fourth shall be kept by the external manager of the Debtor. If necessary, a Creditor shall have the right to request from the Debtor a copy of this amicable settlement certified with a seal of the Debtor and a signature of the Debtor's executive officer.

3.2. Any disputes arising during the implementation of this amicable settlement shall be resolved in accordance with the laws of the Russian Federation.

**4. Signatures of the Parties**

**CREDITORS:**
Person authorized by the meeting of the creditors of OAO Vanadii Mining and Milling Complex of Kachkanar for signing the Amicable Settlement
_____ (_____)

**DEBTOR:**
External Manager of OAO Vanadii Mining and Milling Complex of Kachkanar

_____ (O. S. Kozyrev)

This amicable settlement is given to the present representatives of the creditors, which is evidenced by their receipts.

Please vote with Ballot No. 1.

**Vote on the issue of signing of an amicable settlement.**

Established and entered into the creditors' claims register: 141 trustee creditors. The total number of votes of the trustee creditors is: **1,681,931,385** (*one billion, six hundred eighty-one million, nine hundred thirty one thousand, three hundred eighty five*) votes.

**89** (eighty nine) ballots in the total amount of **1,647,329,461** (one billion, six hundred forty-seven million, three hundred twenty-nine thousand, four hundred sixty-one) votes, which is **97.94%** of the total number of the votes of trustee creditors, were distributed for the purposes of the vote.

In accordance with Article 120 and Section 1, Article 123 of the Federal Insolvency (Bankruptcy) Act", the decision for signing the amicable settlement is approved with a majority of the votes of the total number of trustee creditors, provided that all creditors on the liabilities guaranteed by the pledge of the debtor's property have voted on it.

*As of March 11, 2001, in the creditors' claims register, there are no creditors' claims on liabilities guaranteed with a pledge on the debtors' property.*

The following was included on the voting ballot:

*Sign an amicable settlement with OAO Vanadii Mining and Milling Complex of Kachkanar.*

Following the vote, 89 (eighty nine) ballots in the total amount of **1,647,329,461** (one billion, six hundred forty-seven million, three hundred twenty-nine thousand, four hundred sixty-one) votes, which is **97.94%** of the total number of the votes of trustee creditors, were received.

**OF WHICH: 89** (eighty nine) ballots were *valid* and **none** were *invalid.*

**"IN FAVOR OF"** the signing of the amicable settlement:
84 (eighty-four) trustee creditors with a total amount of 1,446,445,275 (one billion, four hundred forty-six million, four hundred forty-five thousand, two hundred seventy-five) votes, which is **86.00%** of the total number of votes of trustee creditors.

**"AGAINST"** the signing of the amicable settlement:
3 (three) trustee creditors with a total amount of **196,096,956** (one hundred ninety-six million, ninety-six thousand, nine hundred fifty-six) votes, which is **11.66%** of the total number of votes of trustee creditors.

**"REFRAINED"** on the issue of signing the amicable settlement:
2 (two) trustee creditors
with a total amount of 4,787,231 (four million, seven hundred eighty-seven thousand, two hundred thirty-one) votes, which is **0.28%** of the total number of votes of trustee creditors.

In this manner, the meeting passed the following decisions: *To sign an amicable settlement with OAO Vanadii Mining and Milling Complex of Kachkanar.*

**O. S. Kozyrev:** According to the agenda, there is one more item concerning the candidacy of the person authorized by the creditors' meeting to sign the amicable settlement on behalf of the creditors. No other proposals were made in addition to the nomination of L. V. Demskii. Therefore, the item concerning the candidacy of **Leonid Vasilyevich Demskii** authorized to sign the amicable settlement on behalf of the creditors of OAO Vanadii Mining and Milling Complex of Kachkanar is now being offered for a vote. Please vote (with Ballot No. 2).

**Vote on the item of the candidacy:**

For the purposes of the vote on the candidacy of the person authorized to sign the amicable settlement on behalf of the trustee creditors, 89 (eighty nine) ballots
in the total amount of **1,647,329,461** (one billion, six hundred forty-seven million, three hundred twenty-nine thousand, four hundred sixty-one) votes, were distributed.

*Pursuant to Article 14 of the Federal Insolvency (Bankruptcy) Act, a candidate who has gathered the majority of the votes from the number of votes of the trustee creditors present at the meeting shall be considered elected.*

**The following had been entered into the voting ballot:**
*To authorize the signing of the amicable settlement on behalf of the trustee creditors of OAO Vanadii Mining and Milling Complex of Kachkanar on of the following candidates:*
*Leonid Vasilyevich Demskii*

*Following the vote*
87 (eighty seven) ballots in the total amount of **1,451,402,754** (one billion, four hundred fifty-one million, four hundred two thousand, seven hundred fifty-four) votes, which is **88.11%** of the total number of the votes of trustee creditors, were received.

OF WHICH:
*Valid:* 87 (eighty seven) ballots
*Invalid:* none

Votes:
**"IN FAVOR OF" the candidacy of Leonid Vasilyevich Demskii:**
83 (eighty-three) Trustee creditors with a total amount of 1,446,444,979 (one billion, four hundred forty-six million, four hundred forty-four thousand, nine hundred seventy-nine) votes, which is **87.81%** of the total number of votes of trustee creditors present at the meeting.

**"AGAINST" the candidacy of Leonid Vasilyevich Demskii:**
1 (one) trustee creditor with a total amount of **170,249** (one hundred seventy thousand, two hundred forty-nine) votes, which is **0.01%** of the total number of votes of trustee creditors present at the meeting.

**"REFRAINED" on the issue of signing the amicable settlement:**
3 (three) trustee creditors with a total amount of **4,787,526** (four million, seven hundred eighty-seven thousand, five hundred twenty-six) votes, which is **0.29%** of the total number of votes of trustee creditors present at the meeting having the right to vote.

Therefore, the meeting passed the following decision: **To authorize Leonid Vasilyevich Demskii to sign the amicable settlement on behalf of the trustee creditors of OAO Vanadii Mining and Milling Complex of Kachkanar.**

O. S. Kozyrev: Are there any comments or proposals on the course of the meeting? If not, the meeting can be considered closed.

| | | |
|---|---|---|
| External Manager of OAO Vanadii Mining and Milling Complex of Kachkanar | *[Signature]* (Signature) | O. S. Kozyrev |
| Secretary of the Meeting | *[Signature]* (Signature) | E. I. Lialina |