# ПРОТОКОЛ

**собрания кредиторов ОАО Качканарский горно-обогатительный комбинат «Ванадий»**

г. Качканар                                        11 марта 2001г.

*Оглашается протокол Регистрационной комиссии собрания кредиторов ОАО Качканарский горно-обогатительный комбинат «Ванадий»:*

В ходе проведения процедуры банкротства – внешнее управление, в отношении ОАО Качканарский ГОК «Ванадий» на 11 марта 2001г. установлено и внесено в реестр требований кредиторов *141 (сто сорок один) конкурсный кредитор.* Сумма требований их к должнику составляет *1 681 931 385* (один миллиард шестьсот восемьдесят один миллион девятьсот тридцать одна тысяча триста восемьдесят пять) рублей. Все конкурсные кредиторы о настоящем собрании и предполагаемой повестке дня были надлежащим образом уведомлены.

На настоящее собрание, созванное с целью решения вопросов, связанных с заключением мирового соглашения с ОАО Качканарский ГОК «Ванадий», прибыло *89* (восемьдесят девять) *конкурсных кредиторов,* сумма требований которых к должнику составляет *1 647 329 461* (один миллиард шестьсот сорок семь миллионов триста двадцать девять тысяч четыреста шестьдесят один) рубль.

Таким образом, сумма требований кредиторов, представленных на настоящем собрании, составляет *97,94 %* от общей суммы требований конкурсных кредиторов должника, установленных на момент проведения настоящего собрания и включенных в реестр требований кредиторов ОАО Качканарский ГОК «Ванадий».

*(Протокол Регистрационной комиссии собрания кредиторов ОАО КГОК «Ванадий»).*

Приступаем к ведению собрания:

Внешний управляющий оглашает повестку дня.

## Повестка дня:

1.   Принятие решения о заключении мирового соглашения.

2.   Избрание лица, уполномоченного подписать мировое соглашение от имени конкурсных кредиторов.

<u>Козырев О.С.:</u>   Для проведения собрания предлагается установить регламент проведения собрания:

- Доклад внешнего управляющего - до 10 минут
- Выступления - до 3-х минут
- Все заявления подаются в письменном виде.

**Голосование по повестке дня и регламенту проведения собрания (мандатами):**

«ЗА» - 86

«ПРОТИВ» - нет

«ВОЗДЕРЖАЛСЯ» - нет

<u>Козырев О.С.:</u> Таким образом, настоящая повестка дня и регламент проведения собрания приняты большинством голосов.

Предлагаю ознакомиться с проектом мирового соглашения.

*( Внешним управляющим зачитывается проект мирового соглашения):*

### ПРОЕКТ МИРОВОГО СОГЛАШЕНИЯ

Кредиторы открытого акционерного общества «Качканарский горно-обогатительный комбинат «Ванадий» в лице _____, уполномоченного собранием кредиторов. действующего на основании п. 2 ст. 121 Федерального закона «О несостоятельности (банкротстве)» и решения собрания кредиторов от «____»_____ 2001 года, с одной стороны, и открытое акционерное общество «Качканарский горно-обогатительный комбинат «Ванадий», именуемое в дальнейшем «Должник», в лице внешнего управляющего Козырева Олега Станиславовича,

действующего на основании п. 2 ст. 121 Федерального закона «О несостоятельности (банкротстве)» и определения Арбитражного суда Свердловской области от 22 августа 2000 года; с другой стороны, именуемые в дальнейшем совместно «Стороны», заключили настоящее мировое соглашение о нижеследующем:

## 1. Вопросы, регулируемые настоящим мировым соглашением

1.1. Настоящее мировое соглашение заключено в период внешнего управления на стадии судебного разбирательства дела о признании Должника банкротом (№ А60-4517/00-С1), находящегося в производстве Арбитражного суда Свердловской области.

1.2. Решение о заключении настоящего мирового соглашения принято на собрании кредиторов Должника, состоявшемся «_____»_____ 2001 года (протокол собрания кредиторов от «_____»_____ 2001 года).

1.3. Положения настоящего мирового соглашения распространяются на конкурсных кредиторов ОАО «Качканарский горно-обогатительный комбинат «Ванадий», требования которых признаны установленными в соответствии с Федеральным законом «О несостоятельности (банкротстве)» (именуемые в дальнейшем Кредиторы), в том числе на Кредиторов, не принимавших участие в голосовании по вопросу о заключении мирового соглашения, а также голосовавших против его заключения.

1.4. Настоящее мировое соглашение определяет размер, сроки и способы исполнения денежных обязательств Должника перед Кредиторами.

1.5. Настоящее мировое соглашение заключено в соответствии с положениями главы 7 Федерального закона «О несостоятельности (банкротстве)».

1.6. Настоящее мировое соглашение вступает в силу с момента его утверждения Арбитражным судом Свердловской области.

## 2. Размер, порядок и сроки исполнения обязательств Должника и прекращение обязательств Должника

2.1. Задолженность Должника определяется в соответствии с данными реестра требований кредиторов, составленным внешним управляющим. Реестр требований кредиторов является неотъемлемой частью настоящего мирового соглашения (Приложение).

2.1.1. Задолженность перед кредиторами первой очереди – отсутствует.

2.1.2. Задолженность перед кредиторами второй очереди – отсутствует.

2.1.3. Задолженность перед кредиторами третьей очереди - отсутствует.

2.1.4. Задолженность перед кредиторами четвертой очереди –_____.

2.1.5. Задолженность перед кредиторами пятой очереди –_____.

2.1.6. В случае рассмотрения в Арбитражном суде Свердловской области возражений Кредитора на отказ внешнего управляющего от внесения записи в реестр требований кредиторов после даты проведения собрания Кредиторов, на котором принято решение о заключении настоящего мирового соглашения, и установления обоснованности требований Кредитора, размер задолженности, указанной в пункте 2.1.5. настоящего мирового соглашения, увеличивается на сумму, указанную в определении Арбитражного суда Свердловской области, устанавливающем размер требований данного Кредитора.

Все положения настоящего мирового соглашения распространяются на Кредитора, указанного в настоящем пункте, в полном объеме.

2.2. Все судебные расходы, включая расходы по государственной пошлине, а также расходы, связанные с выплатой вознаграждения временному управляющему и внешнему управляющему, оплачиваются Должником вне очереди в полном объеме в течение 10 (Десять) дней с момента утверждения Арбитражным судом Свердловской области настоящего мирового соглашения.

2.3. Порядок и сроки погашения задолженности перед кредиторами четвертой очереди, а также задолженности по уплате сумм штрафов (пени) и иных финансовых (экономических) санкций по обязательным платежам в бюджет и во внебюджетные фонды определяются в соответствии с законодательством Российской Федерации о налогах и сборах.

2.4. Исполнение обязательств Должника перед Кредиторами пятой очереди производится Должником денежными средствами в рассрочку с момента утверждения настоящего мирового соглашения равными долями согласно нижеприведенному графику:

| Год | Срок платежа | Размер платежа | Примечание |
|-----|--------------|----------------|------------|
| 1. 2001г. | --- | 0% от общей суммы обязательств Должника перед каждым кредитором, определенной по данным реестра требований кредиторов Должника, | --- |

| | | составленного внешним управляющим. | |
|---|---|---|---|
| 2. 2002г. | --- | 0% от общей суммы обязательств Должника перед каждым кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | --- |
| 3. 2003 г. | Не позднее 31 декабря 2003 года | 5 (Пять) % от общей суммы обязательств Должника перед каждым кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим | Денежные средства |
| 4. 2004г. | Не позднее 31 декабря 2004 года | 5 (Пять) % от общей суммы обязательств Должника перед каждым кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим | Денежные средства |
| 5. 2005г. | Не позднее 31 декабря 2005 года | 10 (Десять) % от общей суммы обязательств Должника перед каждым кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 6. 2006 год | Не позднее 31 декабря 2006 года | 10 (Десять) % от общей суммы обязательств Должника перед каждым кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 7. 2007 год | Не позднее 31 декабря 2007 года | 10 (Десять) % от общей суммы обязательств Должника перед каждым кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 8. 2008 год | Не позднее 31 декабря 2008 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 9. 2009 год | Не позднее 31 декабря 2009 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 10. 2010 год | Не позднее 31 декабря 2010 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим | Денежные средства |
| 11. 2011 год | Не позднее 31 декабря 2011 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим | Денежные средства |

2.5. В случае изменения платежных реквизитов Кредитора для перечисления средств в счет исполнения Должником обязательств по настоящему мировому соглашению Кредиторы вправе направить Должнику письменное уведомление в течение всего срока действия настоящего мирового соглашения.

В случае не поступления указанного в данном пункте уведомления применяются правила об исполнении обязательств, установленные гражданским законодательством Российской Федерации.

2.6. При исполнении обязательств Должника перед Кредиторами не допускается перечисление денежных средств в соответствии с условиями настоящего мирового соглашения на счета третьих лиц, за исключением случаев документально подтвержденного Кредитором факта перемены лица в обязательстве.

5. Заключительные положения

3.1. Настоящее мировое соглашение составлено в четырех экземплярах: первый экземпляр находится в Арбитражном суде Свердловской области, второй – у Должника, третий – у лица, уполномоченного собранием кредиторов Должника от «___» _____ 2001 года на подписание настоящего Мирового Соглашения, четвертый – у внешнего управляющего Должника. При необходимости Кредитор вправе потребовать от Должника копию экземпляра настоящего мирового соглашения, заверенную печатью Должника и подписью руководителя Должника.

3.2. Споры, возникающие в ходе исполнения настоящего мирового соглашения, разрешаются в соответствии с законодательством Российской Федерации.

### 4. Подписи Сторон

**КРЕДИТОРЫ:**
лицо, уполномоченное
собранием кредиторов ОАО «Качканарский
горно-обогатительный комбинат «Ванадий»
на заключение Мирового Соглашения

**ДОЛЖНИК:**
Внешний управляющий
ОАО «Качканарский горно-обогатительный комбинат «Ванадий»

_____ /_____/                    _____ / Козырев О.С./

**Козырев О.С.:** Уважаемые кредиторы, довожу до Вашего сведения, что настоящий проект направлялся в ФСФО России, и был получен ответ, что представленный проект мирового соглашения соответствует требованиям Федерального Закона и может быть рекомендован на рассмотрение собранием кредиторов ОАО Качканарский ГОК «Ванадий».

Проект мирового соглашения также рассматривался на заседании Комитета кредиторов.

Какие есть вопросы у присутствующих, замечания, предложения?

**Аверенков В.М.** *(представитель администрации г.Качканара):* Я предлагаю внести изменения в текст мирового соглашения. Главная цель, чтобы ГОК нормально работал, давая деньги в бюджет. Он должен мобилизовать производство и увеличить число работающих.

Предлагаю заключить мировое соглашение на условиях, отличающихся от условий мирового соглашения, предложенного Комитетом кредиторов ОАО «Качканарский горно-обогатительный комбинат «Ванадий», а именно:

Изложить пункт 2.4. Мирового соглашения в следующей редакции:

«2.4. Исполнение обязательств Должника перед Кредиторами пятой очереди производится Должником денежными средствами в рассрочку с момента утверждения настоящего мирового соглашения равными долями согласно нижеприведенному графику:

| Год | Срок платежа | Размер платежа | Примечание |
|---|---|---|---|
| 1. 2001 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | --- |
| 2. 2002 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | --- |
| 3. 2003 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | --- |
| 4. 2004 г. | --- | 0% от общей суммы обязательств Должника | --- |

| | | перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | |
|---|---|---|---|
| 5. 2005 г. | — | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | — |
| 6. 2006 г. | Не позднее 31 декабря 2006 года | 5 (Пять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 7. 2007 г. | Не позднее 31 декабря 2007 года | 7 (Семь) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 8. 2008 г. | Не позднее 31 декабря 2008 года | 9 (Девять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 9. 2009 г. | Не позднее 31 декабря 2009 года | 9 (Девять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 10. 2010 г. | Не позднее 31 декабря 2010 года | 10 (Десять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 11. 2011 г. | Не позднее 31 декабря 2011 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 12. 2012 г. | Не позднее 31 декабря 2012 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 13. 2013 г. | Не позднее 31 декабря 2013 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 14. 2014 г. | Не позднее 31 декабря 2014 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |

В остальной части текст Мирового соглашения оставить без изменений.

Я еще раз обращаюсь ко всем и прошу прислушаться к призыву, что Качканарский ГОК должен нормально и продуктивно работать.

**Мустафина О.Н.** *(представитель Магнитогорского металлургического комбината)*:
У меня есть возражения:

ОАО «Магнитогорский металлургический комбинат» против заключения мирового соглашения по следующим причинам:

п.2.4 Мирового соглашения противоречит ст.122 ФЗ «О несостоятельности (банкротстве)», т.к. предусматривает, как отсрочку платежа на пять лет, так и рассрочку на девять лет.

Кроме того, приведенный график исполнения обязательств Должника перед Кредиторами предусматривает размер платежа в процентном отношении от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов, а не равными долями.

«Памятка участнику собрания кредиторов» противоречит ст. 120 ФЗ «О несостоятельности (банкротстве)». Прошу голосование по заключению мирового соглашения провести в соответствии с ФЗ, т.е. большинством конкурсных кредиторов, вне зависимости от суммы задолженности.

**Козырев О.С.:** Прошу Ваше возражение представить в письменном виде. Погашение задолженности равными долями, здесь имеется в виду, что задолженность погашается каждому кредитору от его задолженности, если 5%, то в равных долях от задолженности кредитора.

Относительно голосования, мы проголосуем бюллетенями, проголосуем голосами.
Есть еще вопросы, замечания?
Вопросов нет. Замечаний нет.

Тогда предлагаю сделать перерыв для подготовки бюллетеней по голосованию изменений в тексте мирового соглашения, в соответствии с предложением представителя Администрации г. Качканара.

*(Перерыв 30 минут)*

**Козырев О.С.:** Прошу получить дополнительные бюллетени.

Продолжаем собрание. Прошу обратить внимание на бюллетень. В том тексте, который был дан в секретариат, была совершена техническая ошибка: в столбце «Размер платежа» в предлоге «от», вместо буквы «т» ошибочно проставлена буква «б». Предлагаю проголосовать по данному вопросу (Бюллетень № 3) с учетом исправленной опечатки. Возражений не поступило.

**Голосование** по вопросу о внесении изменений в текст п.2.4 мирового соглашения:
Установлено и внесено в реестр требований кредиторов:
141 конкурсный кредитор.

Общее количество голосов конкурсных кредиторов составляет:
1 681 931 385 *(один миллиард шестьсот восемьдесят один миллион девятьсот тридцать одна тысяча триста восемьдесят пять)* голосов

Для проведения голосования было роздано 89 (восемьдесят девять) бюллетеней на общее количество 1 647 329 461 *(один миллиард шестьсот сорок семь триста двадцать девять тысяч четыреста шестьдесят один)* голос, что составляет 97,94% от общего числа голосов конкурсных кредиторов

**В бюллетень для голосования внесено:**
*Изложить пункт 2.4 Мирового соглашения в следующей редакции:*

«2.4. Исполнение обязательств Должника перед Кредиторами пятой очереди производится Должником денежными средствами в рассрочку с момента утверждения настоящего мирового соглашения равными долями согласно нижеприведенному графику:

| Год | Срок платежа | Размер платежа | Примечание |
|---|---|---|---|
| 1. 2001 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним | --- |

| | | управляющим. | |
|---|---|---|---|
| 2. 2002 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | --- |
| 3. 2003 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | --- |
| 4. 2004 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | --- |
| 5. 2005 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | --- |
| 6. 2006 г. | Не позднее 31 декабря 2006 года | 5 (Пять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 7. 2007 г. | Не позднее 31 декабря 2007 года | 7 (Семь) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 8. 2008 г. | Не позднее 31 декабря 2008 года | 9 (Девять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 9. 2009 г. | Не позднее 31 декабря 2009 года | 9 (Девять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 10. 2010 г. | Не позднее 31 декабря 2010 года | 10 (Десять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 11. 2011 г. | Не позднее 31 декабря 2011 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 12. 2012 г. | Не позднее 31 декабря 2012 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 13. 2013 г. | Не позднее 31 декабря 2013 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |

| | | | |
|---|---|---|---|
| | декабря 2014 года | (пятнадцать) % от общей суммы обязательства Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |

В остальной части текст Мирового соглашения оставить без изменений.

После голосования поступило 89 (восемьдесят девять) бюллетеней на общее количество:
1 647 329 461 *(один миллиард шестьсот сорок семь миллионов триста двадцать девять тысяч четыреста шестьдесят один)* голос, что составляет 97,94% от общего числа голосов конкурсных кредиторов

ИЗ НИХ: *действительных* 89 (восемьдесят девять) бюллетеней; *недействительных:* нет

"ЗА" внесение изменений в текст мирового соглашения:
83 (восемьдесят три) конкурсных кредитора
на общее количество 1 446 444 979 (один миллиард четыреста сорок шесть миллионов четыреста сорок четыре тысячи девятьсот семьдесят девять) голосов, что составляет 86,00% от общего числа голосов конкурсных кредиторов

"ПРОТИВ" внесения изменений в текст мирового соглашения
5 (пять) конкурсных кредиторов на общее количество 196 235 467 *(сто девяносто шесть миллионов двести тридцать пять тысяч четыреста шестьдесят семь)* голосов, что составляет 11,67% от общего числа голосов конкурсных кредиторов

"ВОЗДЕРЖАЛСЯ" по данному вопросу
1 (один) конкурсный кредитор
на общее количество 4 649 015 (четыре миллиона шестьсот сорок девять тысяч пятнадцать) голосов, что составляет 0,28% от общего числа голосов конкурсных кредиторов.

ИТОГИ ГОЛОСОВАНИЯ: собранием принято решение: Внести предложенные изменения в текст мирового соглашения (Протокол № 1 Счетной комиссии)

**Козырев О. С.:** Предлагаю кредиторам получить дополнительные бюллетени.
При регистрации, всем были розданы Заявки на выдвижение кандидата, уполномоченного собранием подписать мировое соглашение. На основании заявок были подготовлены бюллетени. В заявки была внесена одна кандидатура Демского Леонида Васильевича. В случае если у кого-либо есть другие кандидатуры, прошу самостоятельно вписать их в бюллетени.

*(Выдача бюллетеней).*
Так как первым вопросом был поставлен вопрос о внесении изменений в текст мирового соглашения, то необходим технический перерыв для подготовки окончательного варианта мирового соглашения для последующего голосования.

*(Перерыв 20 минут)*
**Козырев О.С.:** Уважаемые кредиторы, на повестку дня ставится вопрос о заключении мирового соглашения в следующей редакции:

## МИРОВОЕ СОГЛАШЕНИЕ

Кредиторы открытого акционерного общества «Качканарский горно-обогатительный комбинат «Ванадий» в лице _____, уполномоченного собранием кредиторов, действующего на основании п. 2 ст. 121 Федерального закона «О несостоятельности (банкротстве)» и решения собрания кредиторов от «_____»_____ 2001 года, с одной стороны, и открытое акционерное общество «Качканарский горно-обогатительный комбинат «Ванадий», именуемое в дальнейшем «Должник», в лице внешнего управляющего Козырева Олега Станиславовича, действующего на основании п. 2 ст. 121 Федерального закона «О несостоятельности (банкротстве)» и определения Арбитражного суда Свердловской области от 22 августа 2000 года, с другой стороны,

именуемые в дальнейшем совместно «Стороны», заключили настоящее мировое соглашение о нижеследующем:

## 1.Вопросы, регулируемые настоящим мировым соглашением

1.7. Настоящее мировое соглашение заключено в период внешнего управления на стадии судебного разбирательства дела о признании Должника банкротом (№ А60-4517/00-С1), находящегося в производстве Арбитражного суда Свердловской области.

1.8. Решение о заключении настоящего мирового соглашения принято на собрании кредиторов Должника, состоявшемся «____»_____2001 года (протокол собрания кредиторов от «____»_____ 2001 года).

1.9. Положения настоящего мирового соглашения распространяются на конкурсных кредиторов ОАО «Качканарский горно-обогатительный комбинат «Ванадий», требования которых признаны установленными в соответствии с Федеральным законом «О несостоятельности (банкротстве)» (именуемые в дальнейшем Кредиторы), в том числе на Кредиторов, не принимавших участие в голосовании по вопросу о заключении мирового соглашения, а также голосовавших против его заключения.

1.10.    Настоящее мировое соглашение определяет размер, сроки и способы исполнения денежных обязательств Должника перед Кредиторами.

1.11.    Настоящее мировое соглашение заключено в соответствии с положениями главы 7 Федерального закона «О несостоятельности (банкротстве)».

1.12.    Настоящее мировое соглашение вступает в силу с момента его утверждения Арбитражным судом Свердловской области.

## 2. Размер, порядок и сроки исполнения обязательств Должника и прекращение обязательств Должника

2.1. Задолженность Должника определяется в соответствии с данными реестра требований кредиторов, составленным внешним управляющим. Реестр требований кредиторов является неотъемлемой частью настоящего мирового соглашения (Приложение).

2.1.1. Задолженность перед кредиторами первой очереди – отсутствует.

2.1.2. Задолженность перед кредиторами второй очереди - отсутствует.

2.1.3. Задолженность перед кредиторами третьей очереди - отсутствует.

2.1.4. Задолженность перед кредиторами четвертой очереди – 356 614 294,48 рублей *(триста пятьдесят шесть миллионов шестьсот четырнадцать тысяч двести девяносто четыре рубля 48 копеек).*

2.1.5. Задолженность перед кредиторами пятой очереди - 1 681 931 385,19 рублей *(один миллиард шестьсот восемьдесят один миллион девятьсот тридцать одна тысяча триста восемьдесят пять рублей 19 копеек).*

2.1.6. В случае рассмотрения в Арбитражном суде Свердловской области возражений Кредитора на отказ внешнего управляющего от внесения записи в реестр требований кредиторов после даты проведения собрания Кредиторов, на котором принято решение о заключении настоящего мирового соглашения, и установления обоснованности требований Кредитора, размер задолженности, указанной в пункте 2.1.5. настоящего мирового соглашения, увеличивается на сумму, указанную в определении Арбитражного суда Свердловской области, устанавливающем размер требований данного Кредитора.

Все положения настоящего мирового соглашения распространяются на Кредитора, указанного в настоящем пункте, в полном объеме.

2.2. Все судебные расходы, включая расходы по государственной пошлине, а также расходы, связанные с выплатой вознаграждения временному управляющему и внешнему управляющему, оплачиваются Должником вне очереди в полном объеме в течение 10 (Десять) дней с момента утверждения Арбитражным судом Свердловской области настоящего мирового соглашения.

2.3. Порядок и сроки погашения задолженности перед кредиторами четвертой очереди, а также задолженности по уплате сумм штрафов (пени) и иных финансовых (экономических) санкций по обязательным платежам в бюджет и во внебюджетные фонды определяются в соответствии с законодательством Российской Федерации о налогах и сборах.

2.4. Исполнение обязательств Должника перед Кредиторами пятой очереди производится Должником денежными средствами в рассрочку с момента утверждения настоящего мирового соглашения равными долями согласно нижеприведенному графику:

| Год | Срок платежа | Размер платежа | Примечание |
|---|---|---|---|
| 1. 2001 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | --- |
| 2. 2002 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | --- |
| 3. 2003 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | |
| 4. 2004 г. | --- | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | |
| 5. 2005 г. | — | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | |
| 6. 2006 г. | Не позднее 31 декабря 2006 года | 5 (Пять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 7. 2007 г. | Не позднее 31 декабря 2007 года | 7 (Семь) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 8. 2008 г. | Не позднее 31 декабря 2008 года | 9 (Девять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 9. 2009 г. | Не позднее 31 декабря 2009 года | 9 (Девять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 10. 2010 г. | Не позднее 31 декабря 2010 года | 10 (Десять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 11. 2011 г. | Не позднее 31 декабря 2011 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 12. 2012 г. | Не позднее 31 декабря 2012 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |

| 13. 2013 г. | Не позднее 31 декабря 2013 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
|---|---|---|---|
| 14. 2014 г. | Не позднее 31 декабря 2014 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |

2.5. В случае изменения платежных реквизитов Кредитора для перечисления средств в счет исполнения Должником обязательств по настоящему мировому соглашению Кредиторы вправе направить Должнику письменное уведомление в течение всего срока действия настоящего мирового соглашения.

В случае не поступления указанного в данном пункте уведомления применяются правила об исполнении обязательств, установленные гражданским законодательством Российской Федерации.

2.6. При исполнении обязательств Должника перед Кредиторами не допускается перечисление денежных средств в соответствии с условиями настоящего мирового соглашения на счета третьих лиц, за исключением случаев документально подтвержденного Кредитором факта перемены лица в обязательстве.

### 3. Заключительные положения

3.1. Настоящее мировое соглашение составлено в четырех экземплярах: первый экземпляр находится в Арбитражном суде Свердловской области, второй – у Должника, третий – у лица, уполномоченного собранием кредиторов Должника от «____» _____ 2001 года на подписание настоящего Мирового Соглашения, четвертый – у внешнего управляющего Должника. При необходимости Кредитор вправе потребовать от Должника копию экземпляра настоящего мирового соглашения, заверенную печатью Должника и подписью руководителя Должника.

3.2. Споры, возникающие в ходе исполнения настоящего мирового соглашения, разрешаются в соответствии с законодательством Российской Федерации.

### 4. Подписи Сторон

**КРЕДИТОРЫ:**
лицо, уполномоченное
собранием кредиторов ОАО «Качканарский
горно-обогатительный комбинат «Ванадий»
на заключение Мирового Соглашения

**ДОЛЖНИК:**
Внешний управляющий
ОАО «Качканарский горно-обогатительный комбинат «Ванадий»

_____ / _____ /                    _____ / Козырев О.С./

Настоящее мировое соглашение выдано присутствующим представителям кредиторов, о чем свидетельствуют их расписки о получении.

Прошу проголосовать Бюллетенем № 1.

**Голосование по вопросу о заключении мирового соглашения.**

Установлено и внесено в реестр требований кредиторов: 141 конкурсный кредитор. Общее количество голосов конкурсных кредиторов составляет: 1 681 931 385 (один миллиард шестьсот восемьдесят один миллион девятьсот тридцать одна тысяча триста восемьдесят пять) голосов.

Для проведения голосования было роздано 89 (восемьдесят девять) бюллетеней на общее количество: 1 647 329 461 (один миллиард шестьсот сорок семь миллионов триста двадцать девять тысяч четыреста шестьдесят один) голос, что составляет: 97,94% от общего числа голосов конкурсных кредиторов.

В соответствии со ст. 120 и п.1 ст.123 Федерального закона "О несостоятельности (банкротстве)" решение о заключении мирового соглашения принимается большинством голосов от общего числа конкурсных кредиторов, при условии, если за него проголосовали все кредиторы по обязательствам, обеспеченным залогом имущества должника.

*По состоянию на 11 марта 2001г. в реестре требований кредиторов отсутствуют требования кредиторов по обязательствам, обеспеченным залогом имущества должника*

В бюллетень для голосования внесено:

*Заключить мировое соглашение с ОАО Качканарский горно-обогатительный комбинат "Ванадий".*

После голосования поступило: 89 (восемьдесят девять) бюллетеней, на общее количество: 1 647 329 461 (один миллиард шестьсот сорок семь миллионов триста двадцать девять тысяч четыреста шестьдесят один) голос, что составляет 97,94% от общего числа голосов конкурсных кредиторов

**ИЗ НИХ** *действительных* 89 (восемьдесят девять) бюллетеней *недействительных:* нет

**"ЗА"** заключение мирового соглашения:

84 (восемьдесят четыре) конкурсных кредитора, на общее количество 1 446 445 275 (один миллиард четыреста сорок шесть миллионов четыреста сорок пять тысяч двести семьдесят пять) голосов,

что составляет **86,00%** от общего числа голосов конкурсных кредиторов

**"ПРОТИВ"** заключения мирового соглашения

3 (три) конкурсных кредитора, на общее количество 196 096 956 (сто девяносто шесть миллионов девяносто шесть тысяч девятьсот пятьдесят шесть) голосов, что составляет 11,66% от общего числа голосов конкурсных кредиторов

**"ВОЗДЕРЖАЛСЯ"** по вопросу о заключении мирового соглашения

2 (два) конкурсных кредитора, на общее количество 4 787 231 (четыре миллиона семьсот восемьдесят семь тысяч двести тридцать один) голос, что составляет **0,28%** от общего числа голосов конкурсных кредиторов

Таким образом, собранием принято решение: *Заключить мировое соглашение с ОАО Качканарский горно-обогатительный комбинат "Ванадий".*

**Козырев О.С.:** Согласно повестке дня, остался один вопрос о кандидатуре лица, уполномоченного собранием кредиторов на подписание мирового соглашения от имени кредиторов. Кроме кандидатуры Демского Л.В., других предложений не поступало. Таким образом, на голосование ставится вопрос о кандидатуре Демского Леонида Васильевича, уполномоченного подписать мировое соглашение от имени кредиторов ОАО Качканарский ГОК «Ванадий». Прошу голосовать (Бюллетень № 2).

<u>Голосование по вопросу о кандидатуре:</u>

Для проведения голосования по кандидатуре лица, уполномоченного подписать мировое соглашение от имени конкурсных кредиторов, было роздано 89 (восемьдесят девять) бюллетеней

на общее количество: 1 647 329 461 (один миллиард шестьсот сорок семь миллионов триста двадцать девять тысяч четыреста шестьдесят один) голос

*В соответствии со ст.14 ФЗ "О несостоятельности (банкротстве)" избранным считается кандидат, набравший наибольшее число голосов, от числа голосов конкурсных кредиторов, присутствующих на собрании.*

**В бюллетень для голосования внесено:**

*Уполномочить подписать мировое соглашение от имени конкурсных кредиторов ОАО Качканарский ГОК "Ванадий" одного из следующих кандидатов:*

*Демский Леонид Васильевич*

**После голосования поступило:**

87 (восемьдесят семь) бюллетеней, на общее количество 1 451 402 754 (один миллиард четыреста пятьдесят один миллион четыреста две тысячи семьсот пятьдесят четыре) голоса, что составляет **88,11%** от числа голосов конкурсных кредиторов, присутствующих на собрании.

ИЗ НИХ:

*действительных:* 87 (восемьдесят семь) бюллетеней

*недействительных:* нет

Проголосовало:

"ЗА" кандидатуру    Демского Леонида Васильевича

83 (восемьдесят три) Конкурсных кредитора, на общее количество 1 446 444 979 (один миллиард четыреста сорок шесть миллионов четыреста сорок четыре тысячи девятьсот семьдесят девять) голосов, что составляет: 87,81% от числа голосов конкурсных кредиторов, присутствующих на собрании.

**"ПРОТИВ" поставленной на голосование кандидатуры**

1 (один) конкурсный кредитор, на общее количество 170 249 (сто семьдесят тысяч двести сорок девять) голосов, что составляет: 0,01% от числа голосов конкурсных кредиторов, присутствующих на собрании.

**"ВОЗДЕРЖАЛИСЬ"**

3 (три) Конкурсных кредитора, на общее количество 4 787 526 (четыре миллиона семьсот восемьдесят семь тысяч пятьсот двадцать шесть) голосов, что составляет: 0,29% от присутствующих на собрании кредиторов с правом голоса

Таким образом, собранием принято решение: Уполномочить подписать мировое соглашение от имени конкурсных кредиторов ОАО Качканарский ГОК "Ванадий **Демского Леонида Васильевича.**

<u>Козырев О. С.:</u> Есть ли замечания, предложения по ведению собрания? Если нет, то собрание считаю оконченным.

Внешний управляющий
ОАО Качканарский ГОК «Ванадий»                                     О. С. Козырев
*(подпись)*

Секретарь собрания                                                          Е. И. Лялина
*(подпись)*

( ( 

**ARBITRAZH COURT**
**for SVERDLOVSK OBLAST**
**DETERMINATION**

City of Ekaterinburg
April 19, 2001

Case No. A60–4517/2000–C1

Arbitrazh Court for Sverdlovsk oblast in the composition of the judges : Platonova E.A., Mikushina N.V., presided by Kazantseva N.V. tried in a court session the statement of Kozyrev O.S., the trustee in bankruptcy of OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar"

On approval of compromise settled between the Debtor – OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" , and the creditors in bankruptcy.

with the participation in the session of : trustee in bankruptcy Kozyrev O. S.,

 representatives of the Debor–Dzhuraev A.X., Zaharisheva E.N., Grigoryeva E.L., Kolesnikov M.N.
the representative FSFR – Elistratov D.S
the representative of the administration of the city of Kachkanar – Averilkov V.N.
the representative of OAO "Zapsibgazprom" – Novozhenov O.A.
the representative of OOO "Bolivar" – Galeev K.V.
the representative of OOO "Syrius" – Brusova N.S.
the representative of Alapaevsk Ferroalloy company –Kondratyev A.V.
the representative of "N.Tagilskoe montazhnoe upravlenie"Vostokmetallurgmontazh" – Kalinina N.A.
the representative of OAO "Sverdlovenergo" – Gubin N.V.
the representative of "Uralskaya Liteynaya Companiya " and OOO "Trodos –A" – Ivanov A.V
the representative of OOO "PKF ELTEX " – Gulin S.A.
the representative of OAO "Krasnouralskmezhraygaz", OOO "Investment Association "Progress", OOO "Industrial Construction Company GIP" – Stepchenko T.N.
the representative of OOO "Uralmed'zoloto" – Kulik A.I.
the representative of OOO " Trading House OAO "Vanadyi", OAO "Metallist", OAO "Svyatogor"– Shelkanov I.V.
the representative of ZAO "Kamennyi Poyas", OAO PO "Sibenergouglesnab', ZAO "Uralskaya Teploenergeticheskaya Companiya  " – Kalugin U.A.
the representative of " Nexis Prodacts L.L.C." – Ashikhmina M.M.
the representative of the employees of OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" – Piankov A.A.

        OAO "Krasnouralskmezhraygaz" filed a petition to the Arbitrazh Court to recognize OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" as insolvent (bankrupt) on the ground , that the Debtor is in arrears to the former, in the amount of 22 719 033 roubles 40 copecks to pay for the consumed natural gas, under the contract 4/p of January 24, 1997 for the period of 1997 – 1998.

The petition of OAO "Krasnouralskmezhraygaz" was accepted for proceedings by the Arbitrazh Court and supervising was enforced at the Debtor's enterprise.

Kozyrev O.S., the Deputy Head of the Agency for Sverdlovsk oblast of the Urals– Sibirian Interregional Body of Federal Service of Russian Federation on Insolvency and Financial Rehabilitation, was appointed interim trustee.

Kozyrev was nominated by the Agency for Sverdlovsk Oblast and approved by the executives of FSFR of Russia taking into account social importance of the Debtor's enterprise.

Supervising was conducted since March 24, 2000 until August 22, 2000.

The interim trustee investigated into economic activity of the enterprise, identified all the creditors and on August 11, 2000 the first meeting of creditors was held where a decision was adopted to enforce administration in bankruptcy at OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" for the period of 12 months.

The Determination of the Arbirazh Court dated August 22, 2000 enforced administration in bankruptcy at OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar". Kozyrev O.S. was appointed trustee in bankruptcy.

The court was addressed with a statement of the trustee in bankruptcy on approval of a compromise, signed by the creditors in bankruptcy and the trustee in bankruptcy at the meeting, of creditors on March 11, 2001.

In accordance with the documents submitted to the court, it was found that in course of the first meeting of creditors, most of the creditors in bankruptcy voted for settling a compromise with the Debtor. The message of the compromise is debt rescheduling by means of paying the debt by installments.

Subject to the above–mentioned fact, as well as to the fact that the notice of the date of considering the statement on approval of a compromise was given to all interested persons, including all the creditors,  included by the trustee in bankruptcy into the Register of claims, in general, the issues discussed at the meeting dealt with the approval of a compromise.

Having considered the conditions of a compromise, on hearing the representatives of the Debtor, creditors in bankruptcy, TO FSFO RF for Sverdlovsk Oblast, the trustee in bankruptcy the court approved a compromise.

Herewith the court takes into account the following:

A compromise, as a bankruptcy procedure, is a priority against other procedures, stipulated in the Federal Laws, since it expressly shows the will of most of the creditors in bankruptcy with respect to the order and method of redemption of arrears. Subject to compliance with the rules of law by the Debtor and the creditors in bankruptcy, when settling a compromise, approval thereof is the duty of the court .

The contents of the submitted compromise in general and the order of its settlement comply with the rules of law, in particular with Articles 120, 121, 122, 123 of Bankruptcy (Insolvency) Law, is

not prejudicial to the rights of the interested and third persons, makes it favorable for the Debtor to restore its creditworthiness and to satisfy the claims of the creditors:

First, the decision of settling a compromise on behalf of the creditors in bankruptcy was taken at the meeting of creditors, held on March 11, 2001, being voted for by the majority of creditors, identified by the trustee in bankruptcy;

Second, a compromise was settled in writing, signed on behalf of the creditors by the person authorized by the meeting.

Third, a compromise contains provisions on the amount, order and term of discharging obligations by the Debtor, in a method the most probable for the case (the Debtor has a few hundred creditors in bankruptcy);

Fourth, for the time when the compromise was settled , according to the information provided by the trustee in bankruptcy, the claims of the creditors of the first and second priority were discharged in full.

Moreover, approving the compromise, the court takes into account other facts, in particular:

The Debtor having legal status of a big corporation, the activity thereof is of great importance for economic and social welfare of the city of Kachkanar and Sverdlovsk oblast as a whole;

The opinion of the employees out of a few thousand staff of the Integrated Plant, expressly supporting settlement of a compromise;

The opinion of TO FSFO of Russia for Sverdlovsk oblast and of Kozyrev, the trustee in bankruptcy, supporting settlement and approval of a compromise;

Evident positive trends in the Debtor's activity, in particular, discharging of indebtedness in the salary and current obligations (payables), stabilizing of moral climate at the enterprise, normalizing of production etc. within the period of administration in bankruptcy.

Approving the compromise, the court, with due regard to the opinion of part of the creditors, protecting private interests and having stated their objections to the contents and the order of settlement of a compromise, as well as to those against the compromise, nevertheless proceeds from the fact, that in trying such a case it is impossible to disregard public aspects of the procedure in bankruptcy of such a Debtor as OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" as well as that overall satisfaction of all the creditors, including those who have minor debts due, as compared to so called "big" creditors, cannot be accomplished in practice.

Therewith, the court draws the attention of the Debtor and creditors in bankruptcy, failed to vote on the issue of settling a compromise, as well as those voted against the compromise, to the fact, that in accordance with p.3 of Article 122 of Bankruptcy Law, the conditions of a compromise cannot

be less favorable for them than for the creditors in bankruptcy, having voted for the compromise. This fact provides for discharging of indebtedness to all the creditors, with no exception for performance of obligations on paying penalties, interests and damages under the valid judgments.

The scrutiny of the challenges of the creditors in bankruptcy announced in course of the court session, makes it possible for the court to disregard thereof, for the following reasons:

The major challenges of OAO "MMK" and "Nexis Prodacts L.L.C." sum up in that the creditors in bankruptcy did not vote at the meeting along the principle: one vote –one creditor, but by the amount of arrears available, that the order and the term of discharging of indebtedness under a compromise provides not only a delay, but installments in discharging thereof, that when settling a compromise the contracts of guarantee and of pledge were disregarded., and that discharging of indebtedness in the salary was not full. In particular, the indebtedness in the salary to Khaidarov D.A., the former Director General , and Chervinsky N.I. and Eremina.E., the employees of the Integrated Plant, was not fully discharged.

Having considered the above–mentioned challenges, the court fails to find grounds to be qualified as the ones impeding settlement of a compromise.

The scrutiny of p.2 of Article 120 of Bankruptcy Law in the context of general provisions of the Law on the procedure of counting votes of the creditors in bankruptcy at the meetings of creditors (Articles 12 – 14) provides no grounds for stating , that when settling a compromise, voting should be on the principle: one creditor – one vote. Moreover, under the documents of the meeting submitted, the voting was actually both on the principle: one creditor – one vote , and on the amount of indebtedness.

As for concurrent use of delay and installments to discharge the debt, this method does not violate the rules of Bankruptcy Law.

With respect to the absence in the Register of creditors in salary of the named employees, of the Integrated Plant, the court fails to find any violation, since those employees did not assert their claims of discharging indebtedness in salary to the trustee in bankruptcy, in proper order, were not included into the Register of creditors, were not identified as creditors in the accounting books of the enterprise, and filed claims to the courts of general jurisdiction on indebtedness in salary only in April 2001.For the time when the meeting of creditors was held, there were no judgments on the above– mentioned employees.

In the above–mentioned circumstances, a compromise, settled between the creditors and OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar", in the person of the trustee in bankruptcy , Kozyrev O.S., is approved by the court, the proceedings in the case is closed.

Being guided by p.7 of Article 85, Article 140 of APC RF, Articles 120, 123, 124 of Bankruptcy Law of RF, the Arbitrazh Court

## HAS DETERMINED:

- to approve the compromise, settled on March 11, 2001 between OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar"and creditors in bankruptcy in the following draft:

The creditors of OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" in the person of Demsky Leonid Vasilievich , authorized by the meeting of creditors, acting upon p.2 of Article 121 of Bankruptcy (Insolvency) Law of RF and the decision of the meeting of creditors, dated March 11, 2001, on one part, and OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" , hereinafter referred to as "Debtor", in the person of the trustee in bankruptcy Kozyrev Oleg Stanislavovich, , acting upon p.2 of Article 121 of Bankruptcy (Insolvency) Law of RF and the determination of the arbitrazh court for Sverdlovsk oblast , dated August 22, 2000, on the other part, hereinafter concurrently referred to as "Parties", have settled the present compromise on the following:

1. **The aspects governed by the present compromise.**

1.1. The present compromise is settled within the period of administration in bankruptcy at the stage of the court trial of the case on recognition the Debtor as bankrupt (No. A60–4517/ 00 –C 1), being in the proceedings of the Arbitrazh Court for Sverdlovsk Oblast.

1.2. The decision on settling the present compromise was taken at the meeting of the Debtor's creditors, held on March 11, 2001.

1.3. The provisions of the present compromise extend to the creditors in bankruptcy of OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar", the claims thereof have been held established, in accordance with Bankruptcy (Insolvency) Law of RF, (hereinafter referred as Creditors), including the Creditors, who failed to participate in voting on the issue of settling a compromise, as well as those voting against thereof.

1.4. The present compromise specifies the amount, timeframe, and methods of performing pecuniary obligations of the Debtor to the Creditor.

1.5. The present compromise was settled in accordance with the provisions of Article 7 of Bankruptcy (Insolvency) Law of RF.

1.6. The present compromise comes into force since its approval by the Arbitrazh court for Sverdlovsk oblast.

2. **The amount, order and timeframe of performing obligations of the Debtor and discharging of the Debtor's obligations.**

2.1. The arrears of the Debtor are specified in accordance with the Register of the Creditors' claims, compiled by the trustee in bankruptcy. The register of the Creditors' claims is an inherent part of the present compromise (Appendix).

2.1.1. The arrears to the Creditors of the first priority is absent .

2.1.2. The arrears to the Creditors of the second priority is absent .

2.1.3. The arrears to the Creditors of the third priority is absent .

2.1.4.   The arrears to the Creditors of the fourth priority –356 614 294, 48 (three hundred fifty six million six hundred fourteen thousand two hundred ninety four roubles 48 copecks.

2.1.5.   The arrears to the Creditors of the fifth priority – 1 681 931 385, 19 ( one billion six hundred eighty one million nine hundred thirty one thousand three hundred eighty five roubles 19 copecks)

2.1.6.   In case of trial in the Arbitrazh court for Sverdlovsk oblast of the Creditor's challenges against the refusal of the trustee in bankruptcy to include a note into the Register of the Creditors' claims after the date of the meeting of Creditors, whereat the decision of the present compromise was taken, and in case of establishing grounds of the Creditor's claim, the amount of the arrears , specified in the Clause 2.1.5. of the present compromise, is to be increased by the amount, specified in the Determination of the Arbitrazh Court for Sverdlovsk oblast, establishing the amount of the claims of the this Creditor. All the provisions of the present compromise extend to the Creditor, specified in the present Clause, in its entirety.

2.2.   All the court expenses, including the expenses on a State due, as well as expenses on compensation to the interim trustee and trustee in bankruptcy, are paid by the Debtor without priority, in full amount, within ten (10) days since the Arbitrazh Court for Sverdlovsk oblast approves the present compromise.

2.3.   The order and timeframe of discharging the arrears to the Creditors of the fourth priority , as well as the arrears on the amounts of the penalties (fine) and other fiscal (economic) sanctions on the mandatory payments to the budget and off–budget funds are specified in accordance with the Laws of Russian federation on Taxes and Dues.

2.4.   Discharging of the Debtor's obligations to the Creditors of the fifth priority is conducted by the Debtor by pecuniary means by installments since the approval of the present compromise in equal shares , in accordance with the following schedule:

| Year | Term of payment | Amount of payment | Notes |
|---|---|---|---|
| 1.2001 | – | 0% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | – |
| 2.2002 | – | 0% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | – |

| 3.2003 | – | 0% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | – |
|---|---|---|---|
| 4.2004 | – | 0% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | – |
| 5.2005 | No later than December 31, 2006 | 0% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | money |
| 6.2006 | No later than December 31, 2006 | 5% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | Money |
| 7.2007 | No later than December 31, 2006 | 7% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | Money |
| 8.2008 | No later than December 31, 2006– | 9% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | Money |
| 9.2009 | No later than December 31, 2006 | 9% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | Money |

| 10.2010 |  | 10% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | Money |
|---|---|---|---|
| 11.2011 | No later than December 31, 2006 | 15% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | Money |
| 12.2012 | No later than December 31, 2006 | 15% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | Money |
| 13.2013 | No later than December 31, 20001 | 15% of the total amount of the Debtor's arrears to each Creditor, calculated on the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | Money |
| 14.2014 | No later than December 31, 2006 | 15% of the total amount of the Debtor's arrears to each Creditor, calculated on 2006 the data from the Register of claims of the Debtor's Creditors, compiled by the trustee in bankruptcy. | Money |

2.5.    In case of changing payment requisites of the Creditor for money transfer, in order to discharge the Debtor's obligation under the present compromise , the Creditors are entitled to notify the Debtor in writing within the entire period of validity of the present compromise.

In case of failure to provide notice, specified in this clause, the rules on enforcement of obligations, stipulated in Civil Laws of Russian Federations should apply.

2.5.    In course of discharging of the Debtor's obligations to the Creditors it is not allowed to transfer money on the accounts of the third persons, in accordance with the provisions of the present compromise, except for the cases the documents of the creditor confirm the fact of replacing the person in obligation.

**3.    Final Conclusions.**

3.1.    The present compromise is made in four copies; the first copy is at Arbitrazh Court for sverdlovsk oblast, the second one – with the debtor, the third one – with the person, authorized by the meeting of the Debtor's Creditors, dated March 11, 2001, to sign the present Compromise, the fourth – with the trustee in bankruptcy of the debtor. If necessary, the creditor is entitled require from the Debtor a copy of the present compromise, authenticated by the seal of the Debtor and the signature oft the Debtor's Director.

3.2.    Disputes, arising out of executing the present compromise, should be settled in accordance with the Laws of Russian Federation.

- the proceeding in the case of insolvency (bankruptcy)of OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" to be closed.
- to terminate the powers of the trustee in bankruptcy, Kozyrev O.S.
- pending the election of the Director of OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar", in accordance with the Articles of Association of the enterprise, Kozyrev O.S. performs his duty on administering the Integrated Plant.


Presiding Judge                                         Kazantseva N.V.

Judges                                                  Platonova E.A
                                                        Mikushina N,V.



# АРБИТРАЖНЫЙ СУД
## *СВЕРДЛОВСКОЙ ОБЛАСТИ*
# Определение

*г. Екатеринбург*

*«19» апреля  2001 г.*                              Дело № А60-4517/2000-С1

Арбитражный суд Свердловской области  в составе судей Платоновой Е.А., Микушиной Н.В. под председательством Казанцевой Н.В. рассмотрел в судебном заседании заявление внешнего управляющего ОАО «Качканарский горно-обогатительный комбинат «Ванадий» Козырева О.С.

Об утверждении мирового соглашения, заключенного между должником – ОАО «Качканарский горно-обогатительный комбинат «Ванадий» и конкурсными кредиторами.

при участии в заседании: внешнего управляющего Козырева О.С.

представителей должника – Джураева А.Х., Захарищевой Е.Н., Григорьевой Е.Л., Колесникова М.Н.
представителя ФСФО - Елистратова Д.С.
представителя администрации г.Качканара - Аверилкова В.Н.
представителя ОАО «Запсибгазпром» - Новоженова О.А.
представителя ООО «Боливар» - Галеева К.В.
представителя ООО «Сириус» - Брусовой Н.С.
представителя Алапаевской ферросплавной компании – Кондратьева А.В.
представителя ОАО «Н.Тагильской монтажное управление «Востокметаллургмонтаж» - Калининой Н.А.
представителя ОАО «Свердловэнерго» - Губина Н.В.
представителя ООО «Уральская литейная компания» и ООО «Тродос-А» - Иванова А.В.
представителя ООО «ПКФ ЭЛТЕХ» - Гулина С.А.
представителя ОАО «Красноуральскмежрайгаз», ООО «Инвестиционная ассоциация «Прогресс», ООО «Промышленно-строительная компания ГИП» - Степченко Т.Н.

представителя ООО «Уралмедзолото» - Кулика А.И.
представителя ООО «Торговый дом ОАО «Ванадий», ОАО «Металлист», ОАО «Святогор» - Щелканова И.В.
представителя ЗАО «Каменный пояс», ОАО ПО «Сибэнергоуглеснаб», ЗАО «Уральская теплоэнергетическая компания» - Калугина Ю.А.
представителя «НЭКСИС ПРОДАКС Эл. Эл. СИ» - Алшихминой М.М.
представителя трудового коллектива ОАО «Качканарский ГОК «Ванадий» Пьянкова А.А.

ОАО «Красноуральскмежрайгаз» обратилось в арбитражный суд с заявлением о признании ОАО «Качканарский горно-обогатительный комбинат «Ванадий» несостоятельным (банкротом) на том основании, что должник имеет перед ним задолженность в сумме 22 719 033 р. 40 к. по оплате потребленного природного газа согласно договору 4/п от 24.01.97 г. за период 1997-1998 г.г.

Заявление ОАО «Красноуральскмежрайгаз» было принято арбитражным судом к производству и на предприятии должника введена процедура наблюдения.

Временным управляющим судом назначен Козырев О.С., являющийся заместителем начальника агентства по Свердловской области Урало-Сибирского межрегионального территориального органа Федеральной службы России по делам о несостоятельности и финансовому оздоровлению.

Кандидатура Козырева была предложена агентством по Свердловской области и согласована с руководством ФСФО России, учитывая социальную значимость предприятия должника.

Процедура наблюдения проводилась с 24.03.2000 г. по 22.08.2000 г.

Временным управляющим был проведен анализ хозяйственной деятельности предприятия, выявлены все кредиторы и 11.08.2000 г. проведено первое собрание кредиторов, которое приняло решение о введении на ОАО «Качканарский горно-обогатительный комбинат «Ванадий» внешнего управления сроком на 12 месяцев.

Определением арбитражного суда от 22.08.2000 г. на ОАО «Качканарский горно-обогатительный комбинат «Ванадий» введено внешнее управление. Внешним управляющим назначен Козырев О.С.

В адрес суда поступило заявление внешнего управляющего об утверждении мирового соглашения, подписанного конкурсными кредиторами и арбитражным управляющим на собрании кредиторов 11.03.2001 г.

Согласно представленным суду документов установлено, что в ходе проведения собрания кредиторов, большинство конкурсных кредиторов проголосовало за заключение мирового соглашения с должником. Основным

содержанием мирового соглашения является реструктуризация задолженности путем предоставления должнику рассрочки выплаты долга.

С учетом названного обстоятельства, а также того, что о дате рассмотрения заявления об утверждении мирового соглашения были извещены все заинтересованные лица, в том числе все кредиторы, включенные внешним управляющим в реестр требований, на собрании в основном рассматривались вопросы, связанные с утверждением мирового соглашения.

Рассмотрев условия мирового соглашения, выслушав представителей должника, конкурсных кредиторов, ТО ФСФО РФ по Свердловской области, внешнего управляющего суд утверждает мировое соглашение.

При этом суд принимает во внимание следующие обстоятельства:

Мировое соглашение как процедура банкротства является приоритетной по отношению к другим процедурам, установленным федеральным законодательством, так как непосредственно выражает волю большинства конкурсных кредиторов в отношении порядка и способа погашения должником имеющейся задолженности. При условии соблюдения должником и конкурсными кредиторами, при заключении мирового соглашения требований закона, его утверждение является обязанностью суда.

Содержание представленного мирового соглашения в целом и порядок его заключения соответствуют требованиям закона, в частности статьям 120, 121, 122, 123 ФЗ «О несостоятельности (банкротстве)», не нарушает прав заинтересованных и третьих лиц, создают условия для восстановления платежеспособности должника и удовлетворения требований конкурсных кредиторов:

Во-первых, решение о заключении мирового соглашения от имени конкурсных кредиторов принято собранием кредиторов, состоявшимся 11.03.2001 г., за данное решение проголосовало большинство установленных внешним управляющим кредиторов;

Во-вторых, мировое соглашение заключено в письменной форме, подписано со стороны кредиторов лицом, уполномоченным собранием кредиторов;

В-третьих, мировое соглашение содержит положения о размерах, порядке и сроках исполнения обязательств должника в форме, максимально возможной для данного случая (наличие у должника нескольких сотен конкурсных кредиторов);

В-четвертых, на момент заключения мирового соглашения по данным, представленным внешним управляющим, требования кредиторов первой и второй очередей погашены в полном объеме.

Кроме того, утверждая мировое соглашение, суд учитывает и другие обстоятельства, в частности:

наличие у должника статуса крупной организации, деятельность которой имеет большую значимость для экономики и социального благополучия города Качканара и Свердловской области в целом;

мнение работников многотысячного коллектива комбината, однозначно поддерживающих заключение мирового соглашения;

мнение ТО ФСФО России по Свердловской области и внешнего управляющего Козырева О.С., выступающих в поддержку заключения и утверждения мирового соглашения;

очевидные положительные тенденции в деятельности должника, в частности ликвидация задолженности по заработной плате и текущим обязательным платежам, стабилизация моральной обстановки на предприятии, нормализация производственного процесса и т.д. в период внешнего управления.

Утверждая мировое соглашение, суд, относясь с уважением к мнению части кредиторов, защищающих частные интересы и высказавших свои претензии к содержанию и порядку заключения мирового соглашения, а также выступивших против заключения мирового соглашения, тем не менее, исходит из того факта, что при рассмотрении данного дела нельзя не учитывать публично-правовой аспект отношений, связанных с процедурой банкротства такого должника как ОАО «Качканарский горно-обогатительный комбинат «Ванадий», а также того, что полный учет интересов абсолютно всех кредиторов, в том числе, имеющих незначительную задолженность по сравнению с так называемыми «крупными» кредиторами, в принципе недостижим.

При этом суд обращает внимание должника и конкурсных кредиторов, не голосовавших по вопросу заключения мирового соглашения, а также голосовавших против соглашения на то, что в соответствии с п.3 ст.122 Закона о банкротстве, условия мирового соглашения для них не могут быть хуже, чем

4

для конкурсных кредиторов, голосовавших за заключение мирового соглашения. Данное обстоятельство предполагает погашение задолженности перед всеми кредиторами, не исключая и исполнение обязанностей по уплате неустоек, процентов и убытков на основании вступивших в законную силу решений судов.

Анализ возражений конкурсных кредиторов, высказанных в ходе судебного заседания, позволяет суду не принимать их во внимание по следующим причинам:

Основные возражения ОАО «ММК» и «Нэксис Продакс Эл. Эл. Си.» сводятся к тому, что конкурсные кредиторы на собрании голосовали не по принципу: один голос - один кредитор, а суммой имеющейся задолженности, что порядок и сроки погашения задолженности по мировому соглашению предусматривает не только отсрочку, но и рассрочку погашения задолженности, что при заключении соглашения не были учтены договоры поручительства и залога и что не в полном объеме погашен долг по заработной плате. В частности, не погашена задолженность по заработной плате бывшему генеральному директору Д.А.Хайдарову и работникам комбината Червинскому Н.И. и Ереминой Н.Е.

Рассмотрев данные возражения, суд не находит оснований для учета их в качестве обстоятельств, препятствующих утверждению мирового соглашения.

Анализ п.2 ст.120 Закона о банкротстве в контексте общих положений закона о порядке учета голосов конкурсных кредиторов на собраниях кредиторов (ст.ст.12-14), не дает оснований утверждать, что при заключении мирового соглашения голосование должно проводиться по принципу: один кредитор — один голос. Кроме того, исходя из представленных документов собрания, фактически голосование проводилось как по принципу: один кредитор — один голос, так и по сумме задолженности.

Что касается применения одновременно отсрочки и рассрочки погашения долга, то этот метод не нарушает требований Закона о банкротстве.

В отношении отсутствия в реестре кредиторов по заработной плате указанных работников комбината, суд не усматривает нарушений, поскольку данные работники не обращались к внешнему управляющему в установленном порядке с требованием о выплате долга по заработной плате, они не включены в реестр кредиторов, не значатся кредиторами по бухгалтерской документации предприятия и заявления в суды общей юрисдикции по поводу долга по зарплате поданы ими только в апреле 2001 г. На момент проведения собрания кредитов, решения судов по указанным работникам отсутствовали.

При изложенных обстоятельствах мировое соглашение, заключенное между кредиторами и ОАО «Качканарский горно-обогатительный комбинат «Ванадий» в лице внешнего управляющего Козырева О.С. утверждается судом, производство по делу прекращается.

Руководствуясь п.7 ст.85, ст.140 АПК РФ, ст.ст.120, 123, 124 ФЗ «О несостоятельности (банкротстве)» арбитражный суд

О П Р Е Д Е Л И Л :

- утвердить мировое соглашение, заключенное 11.03.2001 г. между ОАО «Качканарский горно-обогатительный комбинат «Ванадий» и конкурсными кредиторами в следующей редакции:

Кредиторы открытого акционерного общества «Качканарский горно-обогатительный комбинат «Ванадий» в лице Демского Леонида Васильевича, уполномоченного собранием кредиторов, действующего на основании п. 2 ст. 121 Федерального закона «О несостоятельности (банкротстве)» и решения собрания кредиторов от « 11-» марта 2001 года, с одной стороны, и открытое акционерное общество «Качканарский горно-обогатительный комбинат «Ванадий», именуемое в дальнейшем «Должник», в лице внешнего управляющего Козырева Олега Станиславовича, действующего на основании п. 2 ст. 121 Федерального закона «О несостоятельности (банкротстве)» и определения Арбитражного суда Свердловской области от 22 августа 2000 года, с другой стороны, именуемые в дальнейшем совместно «Стороны», заключили настоящее мировое соглашение о нижеследующем:

1. Вопросы, регулируемые настоящим мировым соглашением

1.1. Настоящее мировое соглашение заключено в период внешнего управления на стадии судебного разбирательства дела о признании Должника банкротом (№ А60-4517/00-С1), находящегося в производстве Арбитражного суда Свердловской области.

1.2. Решение о заключении настоящего мирового соглашения принято на собрании кредиторов Должника, состоявшемся « 11 » марта 2001 года (протокол собрания кредиторов от « 11 » марта 2001 года).

1.3. Положения настоящего мирового соглашения распространяются на конкурсных кредиторов ОАО «Качканарский горно-обогатительный комбинат «Ванадий», требования которых признаны установленными в соответствии с Федеральным законом «О несостоятельности (банкротстве)» (именуемые в дальнейшем Кредиторы), в том числе на Кредиторов, не принимавших участие

в голосовании по вопросу о заключении мирового соглашения, а также голосовавших против его заключения.

1.4. Настоящее мировое соглашение определяет размер, сроки и способы исполнения денежных обязательств Должника перед Кредиторами.

1.5. Настоящее мировое соглашение заключено в соответствии с положениями главы 7 Федерального закона «О несостоятельности (банкротстве)».

1.6. Настоящее мировое соглашение вступает в силу с момента его утверждения Арбитражным судом Свердловской области.

**2. Размер, порядок и сроки исполнения обязательств Должника и прекращение обязательств Должника**

2.1. Задолженность Должника определяется в соответствии с данными реестра требований кредиторов, составленным внешним управляющим. Реестр требований кредиторов является неотъемлемой частью настоящего мирового соглашения (Приложение).

2.1.1. Задолженность перед кредиторами первой очереди – отсутствует.

2.1.2. Задолженность перед кредиторами второй очереди - отсутствует.

2.1.3. Задолженность перед кредиторами третьей очереди - отсутствует.

2.1.4. Задолженность перед кредиторами четвертой очереди – 356 614 294,48 рублей *(триста пятьдесят шесть миллионов шестьсот четырнадцать тысяч двести девяносто четыре рубля 48 копеек).*

2.1.5. Задолженность перед кредиторами пятой очереди - 1 681 931 385,19 рублей *(один миллиард шестьсот восемьдесят один миллион девятьсот тридцать одна тысяча триста восемьдесят пять рублей 19 копеек).*

2.1.6. В случае рассмотрения в Арбитражном суде Свердловской области возражений Кредитора на отказ внешнего управляющего от внесения записи в реестр требований кредиторов после даты проведения собрания Кредиторов, на котором принято решение о заключении настоящего мирового соглашения, и установления обоснованности требований Кредитора, размер задолженности, указанной в пункте 2.1.5. настоящего мирового соглашения, увеличивается на сумму, указанную в определении Арбитражного суда Свердловской области, устанавливающем размер требований данного Кредитора.

Все положения настоящего мирового соглашения распространяются на Кредитора, указанного в настоящем пункте, в полном объеме.

2.2. Все судебные расходы, включая расходы по государственной пошлине, а также расходы, связанные с выплатой вознаграждения временному управляющему и внешнему управляющему, оплачиваются Должником вне очереди в полном объеме в течение 10 (Десять) дней с момента утверждения Арбитражным судом Свердловской области настоящего мирового соглашения.

2.3. Порядок и сроки погашения задолженности перед кредиторами четвертой очереди, а также задолженности по уплате сумм штрафов (пени) и иных

финансовых (экономических) санкций по обязательным платежам в бюджет и во внебюджетные фонды определяются в соответствии с законодательством Российской Федерации о налогах и сборах.

2.4. Исполнение обязательств Должника перед Кредиторами пятой очереди производится Должником денежными средствами в рассрочку с момента утверждения настоящего мирового соглашения равными долями согласно нижеприведенному графику:

| Год | Срок платежа | Размер платежа | Примечание |
|---|---|---|---|
| 1. 2001 г. | — | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | — |
| 2. 2002 г. | — | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | — |
| 3. 2003 г. | — | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | — |
| 4. 2004 г. | — | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | — |
| 5. 2005 г. | — | 0% от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | — |
| 6. 2006 г. | Не позднее 31 декабря 2006 года | 5 (Пять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 7. 2007 г. | Не позднее 31 декабря 2007 года | 7 (Семь) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |

8

| 8. 2008 г. | Не позднее 31 декабря 2008 года | 9 (Девять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
|---|---|---|---|
| 9. 2009 г. | Не позднее 31 декабря 2009 года | 9 (Девять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 10. 2010 г. | Не позднее 31 декабря 2010 года | 10 (Десять) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 11. 2011 г. | Не позднее 31 декабря 2011 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 12. 2012 г. | Не позднее 31 декабря 2012 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 13. 2013 г. | Не позднее 31 декабря 2013 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |
| 14. 2014 г. | Не позднее 31 декабря 2014 года | 15 (Пятнадцать) % от общей суммы обязательств Должника перед каждым Кредитором, определенной по данным реестра требований кредиторов Должника, составленного внешним управляющим. | Денежные средства |

2.5. В случае изменения платежных реквизитов Кредитора для перечисления средств в счет исполнения Должником обязательств по настоящему мировому соглашению Кредиторы вправе направить Должнику письменное уведомление в течение всего срока действия настоящего мирового соглашения.

В случае не поступления указанного в данном пункте уведомления применяются правила об исполнении обязательств, установленные гражданским законодательством Российской Федерации.

2.6. При исполнении обязательств Должника перед Кредиторами не допускается перечисление денежных средств в соответствии с условиями настоящего мирового соглашения на счета третьих лиц, за исключением случаев документально подтвержденного Кредитором факта перемены лица в обязательстве.

### 3. Заключительные положения

3.1. Настоящее мировое соглашение составлено в четырех экземплярах: первый экземпляр находится в Арбитражном суде Свердловской области, второй — у Должника, третий — у лица, уполномоченного собранием кредиторов Должника от « 11 » марта 2001 года на подписание настоящего Мирового Соглашения, четвертый — у внешнего управляющего Должника. При необходимости Кредитор вправе потребовать от Должника копию экземпляра настоящего мирового соглашения, заверенную печатью Должника и подписью руководителя Должника.

3.2. Споры, возникающие в ходе исполнения настоящего мирового соглашения, разрешаются в соответствии с законодательством Российской Федерации.

- производство по делу о несостоятельности (банкротстве) ОАО «Качканарский горно-обогатительный комбинат «Ванадий» прекратить.

- прекратить полномочия внешнего управляющего Козырева О.С.

- впредь, до момента избрания руководителя ОАО «Качканарский горно-обогатительный комбинат «Ванадий» в соответствии с Уставом предприятия Козырев О.С. исполняет обязанности руководителя комбината.

Председательствующий судья

Судьи

Казанцева Н.В.

Платонова Е.А.

Микушина Н.В.

Копия верна:
Специалист _Полюхова_ Т.А.
ф.и.о.
8. 05. 01 г.