To:    Court of Initial Appeals
       of Arbitrazh Court
       of Sverdlovskaya Oblast
Re:    case number A 60-45127/2000-C1

From:  Business creditor-
Nexis Products, LLC, 47 West 200 South,
Suite 104, Salt Lake City, Utah, 84101,
USA
Address of representative in Russia: 620014,
Yekaterinburg, Sheinkman St. 30

## APPEAL

Order of Arbitrazh Court of Sverdlovskaya Oblast dated April 19,2001 approved Settlement Agreement, made on March 11, 2001 by and between OJSC "Kachkanarsky GOK 'Vanadiy'" and business creditors.

Court approval of the Settlement Agreement violated the norms of substantive law, because the Settlement Agreement violates legal requirements, was made in violation of the accepted procedures, violates law, violates rights and interests of the creditors, therefore it cannot be approved by the court.

1. More than 400 business creditors, identified by the arbitrazh manager during the observation and external management procedure, were not notified that Creditors' Meeting was to take place and did not participate in the meeting.

According to the available information, debts of OJSC "Kachkanarsky GOK 'Vanadiy'" were 1,366,689,765.40 rubles and were held by 394 creditors as of March 23, 2000. (List of creditors according to the Debtor's information).

As follows from the report of the provisional manager, prepared at the first creditors' meeting, as of the date of the first meeting, he identified 552 creditors with claims in the total amount of 2,320,200,564.01 rubles. (Financial analysis data reveals that debts of the debtor were 2,994,208,000 at the end of 1st Quarter of 2000.)

All identified creditors were notified about initiation of the bankruptcy procedure against the GOK and about the time and place of the creditors' meeting. All the above creditors were notified by the court about the court hearings dates.

In February of 2001, within the course of external management , before the creditors' meeting to discuss the Settlement Agreement was held, the number of business creditors had came down to 139 with claims in the amount of 1,681,701,083 rubles.

On March 11, 2001, at the creditors' meeting, 141 creditors were included in the list of creditors with claims in the amount of 1,681,931,385 rubles.

*External manager included in the list of creditors exclusively creditors, who presented their claims in the course of external management and observation and excluded all other creditors.*

Pursuant to Art. 30 of the Federal Law "On Insolvency (Bankruptcy)", persons who participate in the bankruptcy proceedings are business creditors. The above standard

means that such creditors have rights and responsibilities given to then by Arbitration Procedural Code of the Russian Federation (APC) as well as the Bankruptcy Law.

Neither the above standard nor Art. 2 of the Bankruptcy Law says that creditor cannot become a participant in the bankruptcy proceedings before the claim is presented.

The fact that the creditors are notified about the initiation of the bankruptcy proceedings means that the creditors are included as participants in the proceeding. From the receipt of the notification, creditors take part in the bankruptcy procedure, since they are given all rights of a participant: the right to review the materials of the case, the right to participate in the court hearings, the right to file petitions and objections with the court, etc. (Art. 33 of APC).

It is true that a number of rights, afforded to a creditor by the Federal Law "On Insolvency", can be claimed by business creditors only after they present their claims to the debtor.

Pursuant to Article 63 of the Federal Law "On Insolvency (Bankruptcy)", creditors acquire a right to participate in the first meeting and vote, only after they present their claims pursuant to the terms prescribed by the law. If a creditor fails to present a claim, he does not have a right to petition the court that the claims be established. It means that only from the time the claims are presented, can a creditor participate in the process of establishing the amount of the claim itself.

According to external manager, if creditors have not presented their claims in order to participate in the first meeting and later, they do not become participants of the bankruptcy procedure at all.

The court of initial appeals of the arbitrazh court of Sverdlovskaya Oblast is of similar opinion. Citing Art. 63 of the Federal Law "On Insolvency (Bankruptcy)" in its Order of January 15, 2001, the court stated that a creditor gets a status of business creditor and becomes a participant of the arbitrazh procedure only after the creditor presents its claims.

However, Art. 64, which further defines Art. 63 of the Federal Law "On Insolvency (Bankruptcy)", contains a clause, under which an arbitrazh manager has to notify all the identified creditors about the meeting. Therefore, if we are to be guided by the principles stated in Art. 63 & 64 of the Bankruptcy Law with regard to the status of a business creditor as a participant in the bankruptcy procedure, then, a necessary pre-requisite for the legitimacy of the meeting to approve a settlement agreement is notification of all identified creditors, so that they have an opportunity to participate in the meeting by presenting claims in the course of observation.

The procedure of the meeting to approve the settlement agreement was violated precisely because not all creditors were notified about the meeting.

The fact that notifications about the meeting to approve the settlement agreement was sent only to a limited number of creditors and that other creditors were not allowed to participate in the meeting even after they presented their claims, puts those creditors who presented their claims and participated in the signing of the Settlement Agreement in the less favorable position compared to those creditors who did not participate in the signing of the Settlement Agreement.

Business creditors who participated in the meeting on March 11, 2001 will get the full return on their claims only by the year 2014, while all other creditors can obtain the return of their claims right after the approval of the Settlement Agreement by the court.

The freeze with regard to the payment of the debts is lifted and the Debtor will be required to pay the debt, which was not included in the Settlement agreement immediately upon the creditor's request.

Accordingly, the deferral of the payment on the debts concerns only a limited number of creditors and a limited amount of debts compared to the total amount of debts owed by the Debtor as of time of the initiation of the bankruptcy procedure. Thus, the rights of the creditors who presented their claims are unquestionably restricted in comparison to the rights of the creditors who did not present their claims.

According to the above, Arbitrazh court has to decline to approve the Settlement Agreement, since it will lead to violation of creditors' interests and procedure of the signing of the Settlement Agreement. (Art. 125(2) of the Federal Law "On Insolvency").

2. The Settlement Agreement is illegal and is, therefore, void.

Company Nexis Production, LLC was included in the list of creditors. The company gave the Debtor loan in the amount of US $ 7,000,000. The above transaction is regulated by the Law of the Russian Federation "On Currency Control and Regulation".

Pursuant to the principles of the above law, loan in hard currency is a current currency transaction, which does not require a license, if the terms of the return of the loan do not exceed 180 days (Sec. 9, Art.1). The credit transactions for the term of more than 180 days is a currency transaction, which is related to cash flow transaction (Sec. 10, Art. 1) and requires licensing.

Under the terms of the agreement, the debt was to be repaid in 180 days. The approval of the Settlement Agreement, which extended the repayment terms is nothing else but the change in the terms of the debt repayment.

The term of the debt repayment provided in the Settlement Agreement is 14 years. OJSC "Kachkanarsky GOK 'Vanadiy'" does not have a license to conduct currency transactions related to cash flow.

Therefore, the Settlement Agreement, which contains terms of the debt repayment in excess of 180 days violates the Law of the Russian Federation "On Currency Control and Regulation", is a void transaction under Art. 168 of the Civil Code of the Russian Federation and will lead to applying significant financial sanctions to the Debtor.

Pursuant to the language of the Settlement Agreement, the currency debt was calculated in rubles according to the exchange rate as of the date of the claim and in its equivalent of 195,650,000 rubles was included into the total amount of debt.

Inclusion of the ruble equivalent of the currency loan in the Settlement Agreement, without an opportunity to re-evaluate the loan to reflect the fluctuations in the ruble value, does not secure observance of creditor's rights, who will not be able to collect the full value of the debt. It is hard to assume that in 14 years the exchange rate of the ruble will remain unchanged against the dollar.

Thus, the Settlement Agreement is more favorable to the creditors whose claims are in rubles than to the creditors whose claims are in hard currency and violates interests and lawful rights of the currency creditor.

When the terms of the Settlement Agreement violate federal law and other legal acts of the Russian Federation and do not provide for equal treatment of the creditors, the Settlement Agreement has to be declared null and void. (Sec. 2 Art. 125 of the Law).

### 3. The procedure of the signing of the Settlement Agreement was Violated.

Unlike in Bankruptcy Law, where it is generally accepted that voting is done by a number of votes that is determined for each creditor by the amount of his claims, the Settlement Agreement on behalf of the business creditors is approved by the majority of votes of the total number of the competing creditors, identified as of the time when the creditors' meeting is conducted, regardless of whether the creditors are present at the meeting, i.e. each creditor gets one vote. (Art. 120).

When one looks at the Minutes of the meeting, one can see that the voting on the approval of the Settlement Agreement was done by allocating votes in proportion to the amount of claims. Such vote violates the requirements of Art.120 and cannot be viewed as lawful.

The Settlement Agreement was signed in violation of the established procedure and cannot be approved by the court.

### 4. Settlement Agreement is considered made when it is voted for by all creditors whose claims are secured by a pledge of the debtor's property.

External manager states that none of the Debtor's creditors is a creditor with secured claims.

However, as shown in the register of the creditors, who were sent notifications of initiating the bankruptcy proceedings against the Debtor (Register No. 388) and as shown in notification about the first meeting of the creditors (No. 105 of the Register), Sberbank of the Russian Federation is included in the list of the creditors.

The Debtor owes to Sberbank of the Russian Federation on the contract No. P/U-501 dated 12/16/99, secured by the agreement on goods in storage as collateral No. z/u – 354 dated 12/16/1999 for the amount of 109,050,000 rubles.

Sberbank of the Russian Federation was not notified about the meeting of the creditors on approval of the Settlement Agreement and did not participate in the voting process. As such, the above Settlement Agreement is in violation of Sec. 2 Art. 120 of the Bankruptcy Law, since its denied the secured creditor the opportunity for participation in the approval process.

### 5. Pursuant to Art. 123 of the Federal Law of the Russian Federation "On Insolvency", the necessary condition for the approval of the Settlement Agreement is discharge of the debts under the claims of first- and second-priority creditors, which includes employees salary payment claims.

Moreover, under Sec. 1 Art.123 of the Law, the Debtor must have discharged all the debts under the claims of the first- and second-priority debtors prior to the creditors' meeting to approve the Settlement Agreement is held.

After the analysis of the payroll records of the Debtor, arbitrazh manager ignored GOK's payroll obligations to its employees, either fired or ones who continued working after the change of management of the company of 01/28/2000.

First, General Director D.A. Khaidarov was fired from the company, and he was not paid for the time he had worked. The petition to reinstate and pay salary, including the time of absence from work due to leave, will be reviewed by the Moscow Municipal Court on May 4, 2001, which is confirmed by the letter from the Gagarin Municipal Court of the city of Moscow.

Similar situation happened to employees of GOK, Chervinsky, N.I. and Yeremina, N.E.

A petition from Chervinsky, N.I. was submitted to the Gagarin Municipal Court of the city of Moscow on April 16, 2001 claiming wages for 15 months in the amount of 120,000 rubles under the employment contract dated April 22, 1999.

Eremina, N.E. was hired by GOK to the position of a secretary by the employment contract dated 07/13/1999 to work in Moscow. On 11/14/2000 she received a notification to submit documents to prove her absence at GOK office in Kachkanar. After she responded that she was hired to work in Moscow and asked to be paid according to the terms of the contract, she did not receive any notifications with regard to whether she is fired nor did she receive any wages. As of today, GOK owes her more than 63,000 rubles in wages.

Accordingly, information submitted by the arbitrazh manager stating that there are no debts owed by Debtor to first- and second-priority creditors is not true.

Since review of the wage claims is not within the jurisdiction of the arbitrazh court, the wage claims by the above employees were not submitted to arbitrazh court. The employees filed their petitions with the courts of general jurisdiction.

Since debts owed to second-priority creditors are not completely satisfied, the Settlement Agreement cannot be approved pursuant to Sec. 1 Art. 125 of the Federal Law "On Insolvency".

Therefore, by approving the Settlement Agreement that was in violation of the law, the court violated Art. 125 and 127 of the Federal Law "On Insolvency".

Based on the above, pursuant to Art. 157 of APC,

I HEREBY REQUEST:

To reverse the Order of the Arbitrazh Court of Sverdlovskaya Oblast dated April 19,2001. To return the case to the stage of external observation.

Attachment – state fee payment receipt,
Register of service of the appeal to the parties,
Copy of the Power of Attorney.

Authorized representative
of the business creditor
acting by Power of Attorney

M.M. Ashikhmina (signature)

1

В   Апелляционную   инстанцию
Арбитражного суда
Свердловской области

по делу № А 60- 4517/2000-С1

От конкурсного кредитора -

« Нэкеиз Продактс Эл.Эл.Си.» 47 Вест
200 Саус, Сьют 104, Солт Лейк Сити,
Юта 84101 США,
Адрес   поверенного   компании   в
России: 620014 г. Екатеринбург,
ул. Шейнкмана дом. 30

## АПЕЛЛЯЦИОННАЯ ЖАЛОБА

Определением Арбитражного суда Свердловской области от
19.04.2001 г. утверждено мировое соглашение, заключенное
11.03.2001 г. между ОАО «Качканарский ГОК «Ванадий» и
конкурсными кредиторами.

При утверждении мирового соглашения судом нарушены
нормы материального права, поскольку мировое соглашение не
соответствует требованиям законодательства, принято с
нарушением установленного порядка, не соответствует требованиям
закона, нарушает права и интересы кредиторов, а потому не может
быть утверждено судом.

1. О созыве собрании кредиторов по вопросу утверждения
мирового соглашения не извещалось и на самом собрании не
принимало участие более 400 конкурсных кредиторов, выявленных
Арбитражным управляющим в ходе наблюдения и внешнего
управления.

По данным ОАО «Качканарский ГОК «Ванадий» по
состоянию на 23.03.2000 г. Комбинат имел 394 кредитора с
размером требований 1 366 689 765,40 рублей. ( Перечень
кредиторов по данным Должника).

Как следует из отчета временного управляющего, сделанного
на первом собрании кредиторов, на дату проведения первого
собрания им выявлено 552 кредитора с требованиями на общую
сумму 2 320 200 564,01 рубля. ( По данным Финансового анализа

27/05 2002 18:56 FAX 9334614          MARKS&SOKOLOV                    ☒004
  FROM : EKATERINBURG              PHONE NO. : 7 3432 53 19 76                  P0

2

дебиторская задолженность Должника по итогам 1 квартала 2000 г. составляла 2 994 208 000 рублей.

Всем выявленным кредиторам направлялись уведомления о возбуждении в отношении Комбината дела о банкротстве, уведомления о проведении собрания. Все эти лица извещались судом о назначении судебных заседаний.

В феврале 2001 г. в ходе внешнего управления, перед проведением собрания кредиторов по вопросу утверждения мирового соглашения, число конкурсных кредиторов сократилось до 139 лиц с размером требований 1 681 701 083 рубля.

На собрании кредиторов 11.03.2001 г. в реестр кредиторов внесен 141 конкурсный кредитор с размером требований - 1 681 931 385 рублей.

*Внешний управляющий включил в реестр конкурсных кредиторов исключительно лиц, заявивших свои требования в ходе наблюдения и внешнего управления, и исключил всех остальных кредиторов.*

В соответствии со ст. 30 ФЗ РФ « О несостоятельности (банкротстве)» лицами, участвующими в деле о банкротстве являются конкурсные кредиторы. Данная норма означает, что такие кредиторы пользуются правами и имеют обязанности, установленные как АПК РФ, так и Законом о несостоятельности.

Указанная норма, как и ст. 2 Закона не содержит никаких указаний на то, что конкурсные кредиторы приобретают статус участника дела о банкротстве только с момента направления требования.

Уведомление кредиторам о возбуждении дела о банкротстве означает привлечение этих кредиторов к участию в деле. С момента получения уведомления кредиторы становятся участниками процесса о банкротстве, поскольку наделяются всеми правами участника : правом знакомиться с материалами дела, правом участвовать в судебных заседаниях, правом обращаться в суд с различными возражениями и ходатайствами и т.д.( ст. 33 АПК РФ).

Действительно ряд прав, предусмотренных ФЗ « О несостоятельности», конкурсные кредиторы приобретают только после того, как заявили свои требования.

В соответствии со ст. 63 ФЗ РФ « О несостоятельности (банкротстве)» только после заявления требований в установленный законом срок, кредиторы получают право участия в первом собрании с правом голоса. Если требование кредитором не заявлено, он не вправе требовать их установления через суд. То есть

27/05 2002 18:56 FAX 9334614        MARKS&SOKOLOV        ☑005
FROM : EKATERINBURG                PHONE NO. : 7 3432 53 19 76        P0

3

именно с момента заявления требований Кредитор участвует в самом процессе установления размера требований.

По мнению Внешнего управляющего, если кредиторы не заявили свои требования для целей участия в первом собрании и в последующем, то они не приобретают статус участника процесса о банкротстве вообще.

Аналогичной позиции придерживается апелляционная инстанция Арбитражного суда Свердловской области, которая ссылаясь на ст. 63 ФЗ РФ « О несостоятельности» в своем определении от 15.01.2001 г. указала, что только после предъявления требований кредитор получает статус конкурсного и становится участником арбитражного процесса.

Однако, ст. 64, развивающая положения ст. 63 Закона, содержит обязательное условие, по которому Арбитражный управляющий обязан уведомить о созыве собрания всех выявленных кредиторов. Таким образом, если при определении статуса конкурсного кредитора, как участника процесса о банкротстве, руководствоваться принципами, заложенными в ст.ст. 63, 64 Закона, то обязательным условием законности собрания об утверждении мирового соглашения должно стать уведомление об этом всех выявленных кредиторов, чтобы дать им возможность принять участие в собрании путем заявления требований в стадии наблюдения.

Нарушение порядка проведения собрания выразилось именно в том, что не все кредиторы были уведомлены о созыве собрания по вопросу утверждения мирового соглашения.

Направление извещений о созыве собрания по вопросу мирового соглашения ограниченному кругу кредиторов, лишение возможности принять участие в этом собрании, после предъявления требований, других кредиторов, ставит тех конкурсных кредиторов, которые заявили свои требования и принимали участие в заключении мирового соглашения, в невыгодное положение по сравнению с теми кредиторами, которые участие в заключении мирового соглашения не принимали.

Конкурсные кредиторы, которые участвовали в собрании 11.03.2001 г., получат полное возмещение своих долгов только к 2014 году, в то время как все остальные кредиторы могут получить возмещение своих долгов сразу после утверждения мирового соглашения судом. Мораторий на удовлетворение долгов после утверждения мирового соглашения судом прекращается и Должник обязан будет погасить задолженность, которая не вошла в мировое соглашение, по первому требованию кредитора.

27/05 2002 18:57 FAX 9334614                    MARKS&SOKOLOV                              ☑006

Таким образом, отсрочка в погашении долга коснулась лишь ограниченного круга кредиторов и ограниченной суммы задолженности, по сравнению с той, какая существует у Должника после возбуждения процедуры банкротства, что несомненно ущемляет права кредиторов, заявивших свои требования, по сравнению с правами кредиторов, которые свои требования не заявили.

При таких условиях Арбитражный суд должен отказать в утверждении мирового соглашения, поскольку имеет место нарушение интересов кредиторов (п. 2 ст. 125 ФЗ « О несостоятельности») и порядка принятия мирового соглашения.

### 2. Мировое соглашение противоречит закону, а следовательно является ничтожной сделкой.

В состав конкурсных кредиторов была включена компания «Нексиз Продактс Эл.Эл.Си.», которая предоставила Должнику валютный заем в размере 7 000 000 долларов США. Данная сделка регулируется Законом РФ « О валютном регулировании и валютном контроле».

В соответствии с нормами указанного закона предоставление валютного займа относится с текущим валютным операциям, не требующим лицензии, если срок возврата займа составляет 180 дней ( п. 9 ст. 1). Предоставление и получение финансовых кредитов на срок более 180 дней является валютной операцией, связанной в движением капитала ( п. 10 ст. 1 ) и требует лицензирования.

По условиям договора срок возврата займа составлял 180 дней. Принятие мирового соглашения с рассрочкой погашения задолженности является не чем иным, как изменением условий договора займа о сроках исполнения обязательств.

Срок возврата кредита по условиям мирового соглашения составляет 14 лет. Лицензия на осуществление валютных операций, связанных с движением капитала, у ОАО «Качканарский ГОК «Ванадий» отсутствует.

Таким образом, мировое соглашение, предусматривающее срок возврата валютного кредита свыше 180 дней, не соответствует требованиям Закона « О валютном регулировании и валютном контроле», является ничтожной сделкой по ст. 168 ГК РФ и влечет применение значительных финансовых санкций к Должнику.

Согласно текста мирового соглашения валютный кредит был переведен в рубли по курсу на день предъявления требований и уже в рублевом эквиваленте включен в общую массу кредиторской задолженности в размере 195 650 000 рублей.

27/05 2002 18:58 FAX 9334614        MARKS&SOKOLOV        ☑007
FROM : EKATERINBURG                 PHONE NO. : 7 3432 53 19 76

5

Включение в мировое соглашение рублевого эквивалента валютного займа, без возможности его переоценки в зависимости от изменения курса рубля, не обеспечивает соблюдение прав кредитора, который может не получить возмещение долга в полном объеме. Трудно предположить, что в течение 14 лет курс рубля по отношению к доллару будет неизменен.

Таким образом, мировое соглашение предусматривает преимущества для кредиторов, имеющих рублевую задолженность, перед кредитором, имеющим валютную задолженность, и ущемляет права и законные интересы валютного кредитора.

Противоречие условий мирового соглашения федеральным законам и иным правом актам РФ, не обеспечение равных прав кредиторов, всегда должно влечь за собой отказ в удовлетворении мирового соглашения ( ст. п. 2 ст. 125 Закона).

### 3. При заключении мирового соглашения нарушен порядок его заключения.

В отличие от общепринятого в Законе о банкротстве голосования количеством голосов, определяемых для каждого кредитора размером его требований, решение о заключении мирового соглашения от имени конкурсных кредиторов принимается собранием кредиторов большинством голосов от общего числа выявленных к моменту проведения собрания конкурсных кредиторов, независимо от их присутствия на собрании, то есть каждый кредитор имеет один голос (ст. 120 Закона).

Из представленного протокола следует, что голосование по вопросу об утверждении мирового соглашения проходило исходя из определения голосов по размеру задолженности. Такое голосование нарушает требования ст. 120 и не может рассматриваться как законное.

Мировое соглашение, принятое с нарушением установленного порядка, не может быть утверждено судом.

### 4. Мировое соглашение считается принятым, если за него проголосовали все кредиторы по обязательствам, обеспеченным залогом.

Внешний управляющий утверждает, что в числе конкурсных кредиторов Должника, кредиторы с обязательствами, обеспеченными залогом отсутствуют.

Однако, как следует из реестра кредиторов, которым направлялись уведомления о возбуждении в отношении Должника дела о банкротстве ( № 388 реестра) и уведомление проведении

6

первого собрания кредиторов ( № 105 реестра) , в состав кредиторов включен Сберегательный банк РФ.

Должник является обязанным перед Сбербанком РФ по договору поручительства № П/У-501 от 16.12.1999 г., обеспеченного договором залога товаров на складе № 3/У-354 от 16.12.1999 г. на сумму 109 050 000 рублей.

АКБ Сбербанк России не был извещен о созыве собрания кредиторов по вопросу об утверждении мирового соглашения, не принимал участие в голосовании по этому вопросу. Таким образом заключенное мировое соглашение противоречит п.2 ст. 120 Закона о несостоятельности, поскольку исключило саму возможность участия в заключении соглашения кредитора по обязательствам, обеспеченным залогом имуществом Должника.

5. Согласно ст. 123 ФЗ РФ « О несостоятельности » обязательным условием заключения мирового соглашения является погашение задолженности по требованиям кредиторов первой и второй очереди, куда относятся требования работников о выплате заработной платы.

Более того, исходя из п. 1 ст. 123 Закона, Должник уже на момент проведения собрания кредиторов, созванного для принятия решения об утверждении мирового соглашения, должен погасить всю задолженность перед кредиторами первой и второй очереди.

При анализе документов по оплате труда работников Должника Арбитражный управляющий проигнорировал данные о расчетах между Комбинатом и работниками, уволенными или продолжающими исполнять трудовые обязанности после смены руководства Общества 28.01.2000 г.

Так, из Общества были уволен Генеральный директор Хайдаров Д.А., с которым расчет за проработанное время не произведен. Исковое заявление о восстановлении на работе и взыскании заработной платы, в том числе за время вынужденного прогула, будет рассматриваться в Московском городском суде 04.05.2001 г., что подтверждается справкой из Гагаринского межмуниципального суда г. Москвы.

Аналогичная ситуация имеет место с работниками Комбината Червинским Н.И. и Еремшой Н.Е.

В Гагаринский межмуниципальный районный суд г. Москвы 16.04.2001 г. поступило исковое заявление Червинского Н.И. о взыскании заработной платы за 15 месяцев в размере 120 000 рублей согласно трудового контракта от 22.04.1999 г..

7

Еремина Н.Е. была принята па работу на Комбинат в качестве секретаря по контракту от 13.07.1999 г. в местом работы в г. Москве. 14.11.2000 г. получила уведомление о необходимости представления документов, подтверждающих ее отсутствие на Комбинате в г. Качканаре. После ее ответа о том, что согласно контракта ее рабочее место определено в г. Москве и просьбой произвести с ней расчет согласно трудового контракта, никаких уведомлений об увольнении и расчете не получала. На сегодняшний день задолженность перед ней у Комбината составляет более 63 000 рублей.

Таким образом, сведения Арбитражного управляющего об отсутствии задолженности Должника перед кредиторами второй очереди, не соответствуют действительности.

Поскольку рассмотрение трудовых споров не подведомственно арбитражному суду, требования о выплате указанными работниками в арбитражный суд не направлялись. Работники подали исковые заявления в суд общей юрисдикции.

Поскольку задолженность перед кредиторами второй очереди не погашена в полном объеме, мировое соглашение не может быть утверждено в соответствии с п. 1 ст. 125 ФЗ РФ « О несостоятельности».

Таким образом, суд в нарушение ст.ст. 125, 127 ФЗ РФ « О несостоятельности» утвердил мировое соглашение, которое не соответствует требованиям закона.

На основании изложенного, руководствуясь ст. 157 АПК РФ,

ПРОШУ:

Определение Арбитражного суда Свердловской области от 19.04.2001 г. отменить. Возвратить дело на стадию внешнего наблюдения.

Приложение - квитанция об оплате государственной пошлины, реестр направления копии жалобы сторонам по делу, копия доверенности представителя.

Полномочный представитель
Конкурсного кредитора                              Ашихмина М.М.
по доверенности

# ARBITRAZH COURT for SVERDLOVSK OBLAST
## FO THE OF RUSSIAN FEDERATON
## DETERMINATION

City of Ekaterinburg
June 27, 2001

Case No. A60-4517/2000-C1

Appellate Instance of the Arbitrazh Court for Sverdlovsk Oblast n the composition of:
Presiding Judge : Kokova V.S.
Judges: Zorina N.L., Tsvetkova S.A.

With the participation in the session of:
Creditor –petitioner –Ashikhmina M.M.
Debtor – Kozyrev O.S. –the trustee in bankruptcy, Starshinov E.A., - power of attorney of May 14, 2001, Kolesnikov M.N., - power of attorney of May 14, 2001.
. FSFO – Elistratov D.S - power of attorney No.10 ,of January 4, 2001.
Creditors: OOO "Invest. Assots. "Progress"- Stepchenko T.N. - power of attorney of February 22, 2001
OOO "Prom –str.comp TIP" - Stepchenko T.N. - power of attorney No.49 of August 4, 2000
OOO " Krasnouralskmezhraygaz" - Stepchenko T.N. – power of attorney No.783 of July 31, 2000
OAO "Zapsibgazprom" – Novozhenov O.A. – power of attorney No. 314 of December 8, 2000.
OAO "Sverdlovenergo" – Gubin M.V. – power of attorney No. 119-015 of December 29, 2000.

Considered in a court session the appeal complaint of (objection) "Nexis Prodacts L.L.C. on he determination dated April 19, 2001, in the case No. A60-4517/2000-C1 on the petition of OOO "Krasnouralskmezhraygaz" on recognition  OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" as bankrupt (insolvent) .

OOO "Krasnouralskmezhraygaz"  fled to the Arbitrazh Court  with a petition to recognize OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" as bankrupt (insolvent).

Under the Determination dated April 19, 20001 ( Judges Kazantseva N.V., Platonova E.A., Mikushina N.V.) a compromise was settled  on March 11, 2001 between OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" as bankrupt (insolvent) and creditors in bankruptcy, the proceedings in the case closed.

The eligibility of the rendered Determination was checked  in the order of the Articles 146, 153, 160 of the Arbitrazh  Procedural Code of RF on the Appeal Complaint of "Nexis prodacts L.L.C. ", which insisting on the administration in bankruptcy , made a reference to the fact, that a compromise could not be approved in the court, since a considerable number of Creditors in bankruptcy were not notified of the meeting and failed to participate in approving of the compromise, the compromise being contrary to the Law; at the time when it was settled,  due order was violated; AKB Sberbank  of Russia, being a pledge creditor,  failed to participate; the information on absence of the Creditors of the first and second priority  is not true.

The debtor filed a petition to leave the appeal complaint without consideration due to the fact , that the complaint was signed by the person with improper authorities.

The representative of "Nexis prodacts L.L.C. " made a reference to  issuing of a General power of attorney  of November 15, 2000 in accordance with the Laws of the USA.

Having considered the documents of the case, having heard the representatives of the Parties, the court established:

In accordance with Ch.1 of Article 148  of the Arbitrazh  Procedural Code of RF , the appeal complaint should be signed by the person, fling the petition, or the representative thereof, whose authorities to challenge  the court decisions  are confirmed by the power of attorney, attached to the appeal complaint.

The Appeal Complaint on the Determination dated  April 19, 2001 on behalf of  the "Nexis prodacts L.L.C. " (Salt Lake city , state of Uta, the USA) was signed by the representative, acting upon the general  power of attorney of the company, of November 15, 2000, authorizing to conduct business of the company within the territory of Russian Federation.

In accordance with Article 3 of the Hague Convention, which revokes the requirement  of legalizing  foreign official documents of October 5, 1961, the only formality , which can be required to legalize the authentication of the signature, the status  of the person when signing the document, and in due case, the authentication of the   seal and stamp, affixed to  document, is provision of apostille, stipulated in  Article 4, by the competent body of the State where the document was executed.

Under Article 4 of the named Convention, the apostille is provided on the document itself or on a separate paper, affixed to the document, it must correspond to the sample, attached to the Convention.

In this case the representative of  "Nexis prodacts L.L.C. " submitted  the general power of attorney of November 15, 2000,  a statement made under oath (affidavit) dated September 28, 2000, affixed by apostille, executed on a separate paper on November 28, 2000. The above-mentioned documents may not be taken  by the court into consideration. With respect to the  general power of attorney  of  November 15, 2000,   apostille, provided in  Article 3 of the Convention  was not executed.

A statement under oath was made on September 28, 2000, and consequently may not refer to the general power of attorney, issued  on a later date – November 15, 2000. Apostille of  November 28, 2000 was executed with respect to the statement under oath of September  28, 2000 and affixed, in accordance with the rules of the Hague Convention, just with this document, rather than with general power of attorney  of  November 15, 2000, consequently , may not authenticate  the signatures and the status of the persons who signed the general power of attorney.

The fact, that  all 3 above-mentioned documents and their notary authenticated translations were  affixed and laced up  by the notary, does not affect the merits of the case, since the general power of attorney  and apostille were not affixed by a competent body of the USA.

Thus,  the requirements  of Article 148 of the Arbitrazh Procedural Code of RF and Articles 3, 4 of the Hague  Convention of October 5, 1961, in the part on legalization of the powers of the representative to make complaints on  court decisions were not observed in this case, due thereof the` Appeal Complaint of "Nexis prodacts L.L.C. " may not be considered, applicable to  p.3 of Article 87 of the Arbitrazh Procedural Code of RF.

Being guided by p.3 of Article 87 of the Arbitrazh procedural Code of Russian Federation, the court:

## HAS DETERMINED

To have the Appeal Complaint of the company "Nexis prodacts L.L.C " without consideration.

Presiding                                                          Kokova V.S.

Judges                                                             Zorina N.L.
                                                                   Tsvetkova S.A.



# Арбитражный суд Свердловской области
## Именем Российской Федерации
# Определение

*г. Екатеринбург*
*«27.06.» 2001 г.*                          Дело № А60-4517/2000-С1

Апелляционная инстанция Арбитражного суда Свердловской области в составе:
**председательствующего Коковой В.С.**
**судей: Зориной Н.Л., Цветковой С.А.**

при участии в заседании:
Кредитора-заявителя - Ашихмина М.М. - дов. от 15.11.2000
Должника - Козырев О.С. - внешний упр-й, Старшинова Е.А. - дов. от 14.05.01, Колесников М.Н. - дов. от 14.05.01
ФСФО - Елистратов Д.С. - дов. № 10 от 04.01.01
Кредиторы: ООО "Инвест ассоц. "Прогресс" - Степченко Т.Н. - дов. от 22.02.01
ООО "Пром.-стр.комп. ТИП" - Степченко Т.Н. - дов. № 49 от 04.08.2000
ОАО "Красноуральскмежрайгаз" - Степченко Т.Н. - дов. № 783 от 31.07.2000
ОАО "Запсибгазпром" - Новоженова О.А. - дов. № 314 от 08.12.2000
ОАО "Свердловэнерго" - Губин М.В. - дов. № 119-015 от 29.12.2000

Рассмотрела в судебном заседании апелляционную жалобу (протест) "Нэксиз Продактс Эл.Эл.Си" на определение от 19.04.01 по делу № А60-4517/2000-С1 по заявлению ОАО "Красноуральскмежрайгаз" о признании несостоятельным (банкротом) ОАО "Качканарского ГОКа "Ванадий"

ОАО "Красноуральскмежрайгаз" обратилось в арбитражный суд с заявлением о признании ОАО Качканарского ГОКа "Ванадий" несостоятельным (банкротом).
Определением от 19.04.01 (судьи Казанцева Н.В., Платонова Е.А., Микушина Н.В.) утверждено мировое соглашение от 11.03.01 между ОАО Качканарским ГОКом "Ванадий" и конкурсными кредиторами, производство по делу прекращено.
Правильность принятого определения проверена в порядке ст.ст.146, 153, 160 Арбитражного процессуального кодекса РФ по апелляционной жалобе "Нэксиз Продактс Эл.Эл.Си", которое, настаивая на продолжении процедуры внешнего управления, сослалось на то, что

мировое соглашение не могло быть утверждено судом, поскольку значительное число конкурсных кредиторов не извещалось о собрании и не принимало участия в утверждении мирового соглашения, мировое соглашение противоречит закону; при его заключении нарушен установленный порядок; в собрании не принимал участия АКБ Сбербанк России, являющийся залоговым кредитором; сведения об отсутствии кредиторов 1 и 2 очереди не соответствуют действительности.

Должником заявлено ходатайство об оставлении апелляционной жалобы без рассмотрения в связи с тем, что жалоба подписана лицом, не имеющим надлежащих полномочий.

Представитель "Нэксиз Продактс Эл.Эл.Си" сослался на выдачу генеральной доверенности от 15.11.2000 в соответствии с законодательством США.

Рассмотрев материалы дела, выслушав представителей сторон, суд установил:

В соответствии с ч.1 ст.148 Арбитражного процессуального кодекса РФ апелляционная жалоба подписывается лицом, подающим жалобу, или его представителем, чьи полномочия на обжалование судебных актов подтверждаются доверенностью, прилагаемой к апелляционной жалобе.

Апелляционная жалоба на определение от 19.04.01 от имени "Нэксиз Продактс Эл.Эл.Си" (Солт Лейк Сити, штат Юта. США) подписана представителем, действующим по генеральной доверенности компании от 15.11.2000, предоставляющей право вести дела компании на территории Российской Федерации.

Согласно ст.3 Гаагской Конвенции, отменяющей требование легализации иностранных официальных документов от 05.10.61, единственной формальностью, которая может быть потребована для удостоверения подлинности подписи, качества, в котором выступало лицо, подписавшее документ, и, в надлежащем случае, подлинности печати или штампа, которыми скреплен этот документ, является проставление предусмотренного ст.4 апостиля компетентным органом государства, в котором этот документ был совершен.

В соответствии со ст.4 названной Конвенции апостиль проставляется на самом документе или на отдельном листе, скрепляемом с документом, он должен соответствовать образцу, приложенному к Конвенции.

В настоящем случае, представителем "Нэксиз Продактс Эл.Эл.Си" представлены генеральная доверенность от 15.11.2000, заявление под присягой (аффидавит) от 28.09.2000, скрепленное с апостилем, исполненным на отдельном листе 28.11.2000. Указанные документы не могут быть приняты судом во внимание. В отношении генеральной доверенности от 15.11.2000 апостиль, предусмотренный ст.3 Конвенции не совершен.

Заявление под присягой сделано 28.09.2000 и, следовательно, не может относится к генеральной доверенности, выданной позднее - 15.11.2000. Постиль от 28.11.2000 совершен в отношении заявления под присягой от 28.09.2000 и скреплен по правилам ст.4 Конвенции именно с

3

этим документом, а не с генеральной доверенностью от 15.11.2000, следовательно, не может служить удостоверением подлинности подписей и качества, в котором выступали лица, подписавшие генеральную доверенность.

То обстоятельство, что все 3 названных документа и их нотариально заверенные переводы скреплены и прошнурованы нотариусом, не меняет существа дела, поскольку генеральная доверенность и апостиль не скреплены компетентным органом США.

Таким образом, требования ст.148 Арбитражного процессуального кодекса РФ и ст.ст.3, 4 Гаагской Конвенции от 05.10.61 в части удостоверения полномочий представителя на обжалование судебных актов в данном случае не соблюдены, в связи с чем апелляционная жалоба "Нэксиз Продактс Эл.Эл.Си" рассмотрению не подлежит применительно к п.3 ст.87 Арбитражного процессуального кодекса РФ.

Руководствуясь п.3 ст.87 Арбитражного процессуального кодекса Российской Федерации, суд

## ОПРЕДЕЛИЛ:

Апелляционную жалобу Компании "Нэксиз Продактс Эл.Эл.Си" оставить без рассмотрения.

Председательствующий                    В.С.Кокова

Судьи                                   Н.Л.Зорина

                                        С.А.Цветкова

03.07.01 оа

# FEDERAL ARBITRAZH COURT FOR THE URALS CIRCUIT
## DETERMINATION
### On returning of the Cassational Complaint

City of Ekaterinbug
August 21, 2001

Case No. A60 –4517/00-C1

The Judge Balachkov S.V. considered the Cassational Complaint of the company "Nexis prodacts L.L.C " on the Determination of the Appellate Instance of the Arbitrazh Court for Sverdlovsk Oblast, dated June 26, 2001, in the case No. Case No. A60 –4517/2000 –C1 on the petition of OOO "Krasnouralskmezhraygaz" on recognition OAO "Vanadiy" Mining & Concentration Integrated Plant in the city of Kachkanar" as bankrupt (insolvent) ,

Has established:

Federal Arbitrazh court for the Urals Circuit was addressed with a cassational complaint of the Company "Nexis prodacts L.L.C " on the Determination of he Appellate Instance of the Arbitrazh Court for Sverdlovsk Oblast , dated June 27, 2001, signed he representative Ashikhmina M.M. and Volnov V.V. The Xerox copy of the power of attorney to the representative Ashimikhina M.M.., in violation of Article 60 of APC RF was not authenticated in a due way, and the powers of attorney to the representative Volnov V.V., has not been attached to the complaint.

Since no evidence confirming the authorities of the representatives to file complaints on the court decisions by the petitioner has been submitted, the cassational complaint is to be returned.

Being guided by clause 1 of Chapter 1 of Article 168 of the Arbitrazh Procedural Code of Russian federation,

### Has Determined

1. the cassational complaint to be returned to the petitioner.
2. a state due in the amount of 500 roubles, paid on the receipt of July 26, 2001 to be recouped to the petitioner from the budget.
3. a complaint on the Determination may be filed to the cassational instance of the Federal Arbitrazh Court of the Urals Circuit.

Judge

Balachkov S.V.



## ФЕДЕРАЛЬНЫЙ АРБИТРАЖНЫЙ СУД УРАЛЬСКОГО ОКРУГ

# ОПРЕДЕЛЕНИЕ
### о возвращении кассационной жалобы

г. Екатеринбург
«21» августа 2001 г.

№ А60-4517/00-С1

Судья Балачков С.В., рассмотрев кассационную жалобу Компании «Нэксиз Продактс Эл. Эл. Си.» на определение апелляционной инстанции от 27.06.2001 г. Арбитражного суда Свердловской области по делу № А60-4517/2000-С1 по заявлению ОАО «Красноуральскмежрайгаз» о признании несостоятельным (банкротом) ОАО «Качканарский ГОК «Ванадий»
установил:

В Федеральный арбитражный суд Уральского округа поступила кассационная жалоба Компании «Нэксиз Продактс Эл. Эл. Си.» на определение апелляционной инстанции от 27.06.2001 г. Арбитражного суда Свердловской области, подписанная представителем Ашихминой М.М., и Вольновым В.В. При этом светокопия доверенности на представителя Ашихмину М.М. в нарушение требований ст.60 АПК РФ не заверена надлежащим образом, а доверенности на представителя Вольнова В.В. к жалобе не приложено.

Поскольку доказательств, подтверждающих полномочия представителей на обжалование судебных актов заявителем не представлено, кассационная жалоба подлежит возвращению.

Руководствуясь пунктом 1 части 1 статьи 168 Арбитражного процессуального кодекса Российской Федерации,

ОПРЕДЕЛИЛ:

1. Кассационную жалобу возвратить заявителю.
2. Возвратить заявителю из федерального бюджета государственную пошлину в сумме 500 руб., уплаченную по квитанции от 26.07.01 г.
3. Определение может быть обжаловано в кассационном порядке в Федеральный арбитражный суд Уральского округа.

Судья

С.В. Балачков

**FEDERAL ARBITRAZH COURT OF THE URAL DISTRICT**

**ORDER**

Of Cassation instance on examination of lawfulness and soundness of decisions (orders) of
arbitrazh courts, which became effective;
returning a cassation appeal

City of Ekaterinburg
October 29, 2001                                    # A60-4517/00-C1

      Judge Kondratieva L.I. having reviewed the Nexis Products LLC's cassation appeal of
the Federal Arbitrazh Court of the Ural District Order dated August 21, 2001 returning cassation
appeal in case # A60-4517/001-C1 initiated upon the petition of OAO
"Krasnouralskmezhraigaz" to declare OAO "Kachkanarsky GOK "Vanadiy" insolvent
(bankrupt).

HAS DETERMINED:

      A Cassation Appeal of Nexis Products LLC was filed on October 9, 2001, i.e. after
expiration of the term set forth by Article 164 of the Arbitrazh Procedural Code of the Russian
Federation.  The petitioner requests the term to be reinstated due to the fact that the applicant
received the Court Order dated August 21, 2001 on September 9, 2001, and that M.M.
Ashikhmina, a petitioner's representative, was only able to review the order on October 4, 2001.
      The court has reviewed the motion to reinstate the term for filing a cassation appeal and
decided to deny it.
      Pursuant to Article 99 of the Arbitrazh Procedural Code of the Russian Federation, an
arbitrazh court may reinstate the term for filing a cassation appeal of it finds that reasons for
failure to comply with the term are sound.
      The Court believes that reasons for failure to comply with the term for filing a cassation
appeal are  not valid because the company received the Order of August 21, 2000 on September
9, 2001, and had enough time for filing the cassation appeal within the provided term.  The fact
that M.M. Ashikhmina was only able to review the Order after expiration of the term shall not be
deemed as a ground for restoration the above term.
      In violation of Article 165(1) of the Arbitrazh Procedural Code of the Russian Federation,
the cassation appeal of Nexis Products LLC, without date and a number, was signed by a person,
who was not authorized to sign it.
      A representative M.M. Ashikhmina signed the cassation appeal on behalf of Nexis
Products LLC.  The appeal did not contain reference to a date and a number of a power of
attorney authorizing her to appeal judicial decisions on behalf of the company.  Not collated and
not attested photo copies of the following documents were attached to the cassation appeal as
confirmation of M.M. Ashikhmina's authorities to appeal judicial decisions: documents in
English language consisting of an apostle dated November 28, 2000, an affidavit dated
September 28, 2000 and a general power of attorney dated November 15, 2000 (2 pages); not
organized documents in Russian language consisting of not attested photo copies of an apostle
dated November 28, 2000, an affidavit dated September 28, 2000, the first page of the General
Power of Attorney dated November 15, 2000, certificate of a notary V. Yu. Boitsov certifying
authenticity of translation and registration in the register under # 1K-3245, and a list with copies
of seals and a mark indicating that 9 pages were sealed and numbered.
      Pursuant to Article 165 of the Arbitrazh Procedural Code of the Russian Federation, an
appeal signed by a representative shall contain power of attorney confirming representative's

authority to appeal judicial decisions, if such power of attorney was not presented in the pending case prior.

The record of the case does not contain a properly apostiled power of attorney issued to Ashikhmina M.M. confirming her authority to appeal judicial decisions on behalf of Nexis Products LLC.

Pursuant to Articles 49(1) and 50 of the Arbitrazh Procedural Code of the Russian Federation, powers of a representative shall be indicated in a power of attorney issued in accordance with the legislation.

The law does not provide that a copy of the power of attorney confirms the authority.

Article 3 of the Hague Convention of 1961 does not provide that a photo copy of an apostil attests validity of a signature, position of the person who signed the document and the stamp sealing the document.

Pursuant to Article 11 of the Hague Convention Of 1961 Abolishing The Requirement Of Legalization For Foreign Public Documents, official documents that were executed on the territory of one state – participant to the treaty and are to be presented on the territory of another state – participant to the treaty, shall be apostled.

Therefore, only power of attorney apostiled pursuant to requirements of the Hague Convention of 1961 can serve as proper evidence that Ashikhmina M.M. is authorized to appeal judicial decisions on behalf of Nexis Products LLC.

Because the cassation appeal signed by Ashikhmina does not contain a properly apostiled power of attorney and there is no such properly apostiled power of attorney in the record of the case, there is no evidence that Ashikhmina M.M. is authorized to sign a cassation appeal on behalf of Nexis Products LLC.

In violation of Articles 165(2) and 166 of the Arbitrazh Procedural Code of the Russian Federation, documents evidencing that a copy of the cassation appeal was sent to all persons participating in the case were not attached to the appeal.

Pursuant to Article 30 of the Law on Bankruptcy, an arbitrazh manager is a person participating in the case.

There are no documents evidencing that copy of the cassation appeal was sent to the external manager Kozyrev O.S., and the company's register of registered mail sent on October 8, 2001, consisting of 173 items does not indicate sending of correspondence to the external manager, Kozyrev O.S.

Taking the above into consideration, the cassation appeal shall be returned to the petitioner.

Guided by paragraphs 1,3, and 5 of Article 168(1) of the Arbitrazh Procedural Code of the Russian Federation, the court

ORDERED:

1. To deny the petition to reinstate the term for filing of a cassation appeal on the order of August 21, 2001 issued by the Federal Arbitrazh Court of the Ural District in the case # A60-4517/00-C1.

2. To return the cassation appeal to the petitioner.

3. To return from the federal budget court fees in the amount of 500 rubles paid by the petitioner upon to receipt of October 9, 2001.

4. The order can be appealed with the Federal Arbitrazh Court of the Ural District.

Judge                                                                        Kondratieva L.I.

[Kirpichnikova T.A.
October 10, 2001][1]

---

[1] In handwriting, - translator's note.

**ФЕДЕРАЛЬНЫЙ АРБИТРАЖНЫЙ СУД УРАЛЬСКОГО ОКРУГА**

# ОПРЕДЕЛЕНИЕ
### кассационной инстанции по проверке законности и обоснованности решений (постановлений) арбитражных судов, вступивших в законную силу, о возвращении кассационной жалобы

**г. Екатеринбург**
**29 октября 2001 г.**                                    **№ А60-4517/00-С1**

Судья Кондратьева Л.И., рассмотрев материалы кассационной жалобы компании «Нэксиз Продактс Эл.Эл.Си.» на определение от 21.08.2001 Федерального арбитражного суда Уральского округа о возвращении кассационной жалобы по делу № А60-4517/001-С1 по заявлению ОАО «Красноуральскмежрайгаз» о признании несостоятельным (банкротом) ОАО «Качканарский ГОК «Ванадий»

**УСТАНОВИЛ:**

Кассационная жалоба компании «Нэксиз Продактс Эл.Эл.Си.» подана 09.10.2001, то есть по истечении срока, установленного ст.164 АПК РФ. Ходатайствуя о восстановлении срока ее подачи, заявитель ссылается на то, что обжалуемое определение от 21.08.2001 получено компанией 09.09.2001, а представитель компании Ашихмина М.М. смогла ознакомиться с определением лишь 04.10.2001.

Ходатайство о восстановлении срока подачи кассационной жалобы рассмотрено и отклоняется.

Согласно ст.99 АПК РФ арбитражный суд может восстановить срок подачи кассационной жалобы, если признает уважительными причины его пропуска.

Суд считает неуважительными причины пропуска срока подачи кассационной жалобы, на которые ссылается заявитель, поскольку определение от 21.08.2001 получено компанией 09.09.2001, у компании имелось достаточно времени для подачи кассационной жалобы в установленный срок. То обстоятельство, что представитель Ашихмина М.М. смогла ознакомиться с определением по истечении срока на обжалование не является основанием для восстановления срока подачи кассационной жалобы.

Кассационная жалоба компании «Нэксиз Продактс Эл.Эл.Си.» без даты и без номера, в нарушение ч.1 ст.165 АПК РФ, подписана лицом, не имеющим права ее подписывать.

От имени компании «Нэксиз Продактс Эл.Эл.Си.» кассационная жалоба подписана представителем Ашихминой М.М., без ссылки на дату и номер доверенности на право обжалования судебных актов от имени компании. В подтверждение полномочий Ашихминой М.М. на право обжалования судебных актов к кассационной жалобе приложены на разрозненных листах в ни кем не

MARKS&SOKOLOV

заверенных ксерокопиях: на английском языке  -  апостиль  от  28.11.2000, аффидавит от 28.09.2000 и генеральная доверенность от 15.11.2000 на 2х листах; на разрозненных листах на русском языке в никем не заверенных ксерокопиях - апостиль от 28.11.2000, заявление под присягой от 28.09.2000, первая страница генеральной доверенности  от  15.11.2000, свидетельство нотариуса Бойцовой В.Ю. верности перевода и регистрации в реестре за № 1К-3245, лист с ксерокопиями печати и отметкой о скреплении и нумерации 9 листов.

Согласно ст. 165 АПК РФ к жалобе, подписанной представителем, прилагается доверенность, подтверждающая его  полномочия на обжалование судебных актов, если она ранее не была представлена по данному делу.

В материалах дела отсутствует доверенность на Ашихмину М.М. с проставленным апостилем  в установленном порядке в подтверждение ее полномочий  на обжалование судебных актов от имени компании «Нэксиз Продактс Эл.Эл.Си.».

Согласно ч.1 ст.49, ст.50 АПК РФ полномочия представителя должны быть выражены в доверенности, выданной и оформленной в соответствии с законом.

Действующим  законодательством  не  предусмотрено,  что  копия доверенностей удостоверяют полномочие.

Ст. 3 Гаагской конвенции (1961) не предусмотрено, что ксерокопия апостиля удостоверяет подлинность подписи, качества, в котором выступает лицо, подписавшее документ и подлинность печати и штампа, которым скреплен документ.

В  соответствии  со  ст.11  Гаагской  конвенции  (1961),  отменяющей требование  о  легализации  иностранных  официальных  документов,  на официальных документах, которые были совершены на территории одного из договаривающихся государств и должны быть представлены на территории другого договаривающегося государства, проставляется апостиль.

Таким  образом,  только  доверенность  с  апостилем,  проставленным  в соответствии  с  требованиями  Гаагской  конвенции  (1961)  может  служить надлежащим доказательством наличия у представителя Ашихминой М.М. полномочий на обжалование судебных актов от имени компании «Нэксиз Продактс Эл.Эл.Си.».

Поскольку  кассационная  жалоба  подписана  Ашихминой  М.М.  без приложения надлежащей доверенности с апостилем и такой  доверенности с апостилем в материалах дела не имеется,    отсутствуют доказательства полномочий Ашихминой М.М.  на подписание кассационной жалобы от имени компании «Нэксиз Продактс Эл.Эл.Си.».

В нарушение ч.2 ст. 165, ст.166 АПК РФ к кассационной жалобе не приложено доказательство направления копии кассационной жалобы всем лицам, участвующим в деле.

В силу ст.30 ФЗ «О несостоятельности (банкротстве)» лицом, участвующим в деле, является арбитражный управляющий.

Доказательства  направления  копии  кассационной  жалобы  внешнему управляющему Козыреву О.С. отсутствуют, и в реестре компании об отправке

заказных писем 08.10.2001, состоящем из 173 пунктов, отправка корреспонденции внешнему управляющему Козыреву О.С. не значится.

Учитывая изложенное, кассационная жалоба подлежит возврату заявителю.

Руководствуясь п.п.1, 3, 5 ч.1 ст. 168 Арбитражного процессуального кодекса Российской Федерации, суд

**О П Р Е Д Е Л И Л :**

**1.** В удовлетворении ходатайства о восстановлении срока подачи кассационной жалобы на определение от 21.08.2001 Федерального арбитражного суда Уральского округа по делу № А60-4517/00-С1 отказать.

**2.** Кассационную жалобу возвратить заявителю.

**3.** Возвратить заявителю из федерального бюджета государственную пошлину в сумме 500 руб., уплаченную по квитанции от 09.10.2001.

**4.** Определение может быть обжаловано в Федеральный арбитражный суд Уральского округа.

Судья                                                                                    Кондратьева Л.И.

**Arbitrazh Court**
**For the Sverdlovsk Region**

**DECISION**

City of Yekaterinburg
29 May 2002                                        Case No. A60-21775/2001-C2

The Arbitrazh Court for the Sverdlovsk Region, consisting of
M.L. Skuratovsky, Chair; B.A. Rogozhkina and N.I. Khramtsova, Judges,

Having reviewed in an open court the matter of
OAO Nizhnetagilsky Metallurgical Combine, OOO Inrosmet, ZAO Standard Trust
v.
OOO Ural-Start Ltd, OOO Legat, OOOO Akonit, Jackonet Limited, OOO Uralpromopt,
OOO City Trade Company, OOOMarex TK, ZAO Fargos, ZAO Mezant, Amber Star
LLC, OOO Jankon, Nimegan Trading Limited, Nexis Products LLC, Foston
Management Limited

With the third parties on the side of the defendants, who are not filing separate claims:
ZAO Company-Registrar Panorama, ZAO Vedenie Reestrov Kompaniy, Association of
Legal Entities "Deposit and Clearing Union", ZAO Deposit and Clearing Company,
OAO Kachkanarsky Ore Mining Plant "Vanadiy"

Concerning the issue of certain illegal transactions

With the participation of:

On behalf of the Plaintiffs: N.S. Brusova, a representative of OAO Nizhnetagilsky
Metallurgical Combine according to the power of attorney No. 140-11/98 of 17.01.2002;
E.L. Grigorieva, a representative of OAO Nizhnetagilsky Metallurgical Combine
according to the power of attorney No. 140-11/97 of 17.01.2002; E.L. Grigorieva, a
representative of OOO Inrosmet according to the power of attorney of 08.01.2002; E.L.
Grigorieva, a representative of ZAO Standard Trust according to the power of attorney of
08.01.2002.

On behalf of the Defendants: M. M. Ashihmina, a representative of Nexis Products LLC
according to the power of attorney of 05.09.2001; V.V. Volnov, a representative of
Amber Star LLC, according to the power of attorney of 01.03.2000.

On behalf of the Third Parties on the side of the Defendants: O.A. Pushkareva, a
representative of ZAO Vedenie Reestrov Kompaniy, according to power of attorney No.
99/2000 of 27.12.2000.

The Plaintiffs have requested to render void us unlawful the following
transactions performed by the Defendants with the shares of OAO Kachkanarsky Ore

Mining Plant Vanadiy: Share Sale-Purchase Agreement No. 03/GOK-a of 30.07.1998; Share Sale-Purchase Agreement No.14 of 22.09.1998; Share Sale-Purchase Agreement No.15 of 25.09.98; Share Sale-Purchase Agreement No.GOK 1 of 22.09.1998; Share Sale-Purchase Agreement No.9 of 15.11.1998; Share Sale-Purchase Agreement No.34 of 25.11.1998; Share Sale-Purchase Agreement No.KGOR-RP-12/98 of 25.12.1998; Share Sale-Purchase Agreement of 20.01.1999; Share Sale-Purchase Agreement of 11.02.1999; Share Sale-Purchase Agreement No.143 of 05.04.1999; Share Sale-Purchase Agreement No.15 of 11.-2.1999; Share Sale-Purchase Agreement No.21 of 07.04.1999; Share Sale-Purchase Agreement No.KGOK-2.2/99 of 17.12.1999; Share Sale-Purchase Agreement of 09.02.2000; Share Sale-Purchase Agreement of 16.08.2000.

During the court session, the Defendants submitted to this Court a number of petitions: Amber Star, LLC, and Nexis Products LLC – a motion to adjourn the current proceedings; Amber Star LLC - a motion to dismiss the current proceedings; Nexis Products LLC – a motion to terminate the current proceedings. All of the above-mentioned motions will not be reviewed at this hearing. Additionally, Defendant Amber Star LLC submitted a motion to include ZAO Uralelektromash as a third party not filing a separate claim in the current proceedings. Said motion is hereby denied pursuant to Article 39 of the APC of the RF, since the final decision in this matter would not affect the rights and responsibilities of ZAO Uralelektromash in relation to one of the parties to this suit.

The Plainitff submitted a motion to adjourn this hearing to a later date for lack of proof of an adequate notification of Jackonet Limited, one of the defendants located outside of the Russian Federation.

Considering the above, pursuant to Articles 35, 54, 120, 140 of the APC of the RF, this Court has made the following

## DECISION:

To adjourn the present hearing until October 3, 2002 at 10:00 a.m.



# АРБИТРАЖНЫЙ СУД
## *СВЕРДЛОВСКОЙ ОБЛАСТИ*
# Определение

*г. Екатеринбург*
*«29» мая 2002г.*                           Дело № А60-21775/2001-С2


Арбитражный суд Свердловской области в составе: председательствующего: **Скуратовского М.Л.**, судей: В.А. Рогожкиной, Н.И. Храмцовой

рассмотрен в судебном заседании дело по иску ОАО «Нижнетагильский металлургический комбинат», ООО «Инросмет», ЗАО «Стандарт Траст»

к ООО «Урал-Старт ЛТД», ООО «Легат», ООО «Аконит», Компании «Джеконет Лимитед», ООО «Уралпромопт», ООО «Компания «Сити Трейд», ООО «Марэкс ТК», ЗАО «Фаргос», ЗАО «Мэзант», Компании «Амбер Стар Эл.Эл.Си», ООО «Дженкон», Компании «Нимеган Трейдинг Лимитед», Компании «Нэксиз Продакс Эл.Эл. Си», Компании «Фостоп Менеджемент Лимитед».

третьи лица, не заявляющие самостоятельных требований на стороне ответчика: ЗАО «Компания-регистратор «Панорама», ЗАО «Ведение реестров компаний», Объединение юридических лиц «Депозитарно-расчетный союз», ЗАО «депозитарно-клиринговая компания», ОАО «Качканарский горно-обогатительный комбинат «Ванадий»

о признании сделок недействительными


при участии в заседании:

от истцов: ОАО «Нижнетагильский металлургический комбинат»-Брусова Н.С.- представитель по доверенности №140-11/98 от 17.01.2002 года, ОАО «Нижнетагильский металлургический комбинат»-Григорьева Е.Л.-представитель по доверенности 140-11/97 от 17.01.2002 года, ООО «Инросмет»- Григорьева Е.Л.- представитель по доверенности от 08.01.2002 года, ЗАО «Стандарт Траст»- Григорьева Е.Л.- представитель по доверенности от 08.01.2002 года.

От Ответчиков: Компания «Нэксиз Продакс Эл.Эл.Си» -Ашихмина М.М.-представитель по доверенности от 05.09.2001 года; Компания «Амбер Стар Эл. Эл. Си.» - Вольнов В.В.- представитель по доверенности от 01.03.2000 года.

2

3-и лица на стороне ответчика: ЗАО «Ведение реестров компаний»-Пушкарева О.А.- представитель по доверенности №99/2000 от 27.12.2000 г.

Истцы просят признать недействительными сделки: договор купли – продажи акций №03/ГОК-а от 30.07.1998 г., Договор купли-продажи акций № 14 от 22.09.1998 г., Договор купли-продажи акций № 15 от 25.09.1998 г., Договор купли-продажи акций №ГОК 1 от 22.09.1998 г., Договор купли-продажи акций 9 от 25.11.1998 г., Договор купли-продажи акций №34 от 25.11.1998 г., Договор купли-продажи акций №KGOR- РП-12/98 от 25.12.1998 г., Договор купли-продажи акций от 20.01.1999 г., Договор купли-продажи акций от 11.02.1999 г., Договор купли-продажи акций №143 от 05.04.1999 г., Договор купли-продажи акций №15 от 11.-2.1999 г., Договор купли-продажи акций №21 от 07.04.1999 г., Договор купли-продажи акций №21 от 07.04.1999 г., Договор купли-продажи акций № KGOK 22/11/1999 г., Договор купли-продажи акций № KGOK-2.2/99 от 17.12.1999 г., Договор купли-продажи акций от 09.02.2000 г., Договор купли-продажи акций от 16.08.2000 г., совершенные ответчиками с акциями ОАО «Качканарский горно-обогатительный комбинат «Ванадий» как противоречащие закону.

В ходе судебного заседания ответчики заявили ряд ходатайств: Компания «Амбер Стар Эл.Эл.Си», Компания «Нэксиз Продактс Эл.Эл.Си.» - ходатайство о приостановлении производства по настоящему делу, Компания «Амбер Стар Эл.Эл.Си»- ходатайство об оставлении иска без рассмотрения ,ответчик –Компания «Нэксиз Продактс Эл.Эл.Си.» о прекращении производства по настоящему делу. Указанные ходатайства ответчиков в настоящем судебном заседании не рассматриваются. Кроме того, ответчик - Компания «Амбер Стар Эл.Эл.Си» заявило ходатайство о привлечении в качестве третьего лица не заявляющего самостоятельные требования на предмет спора ЗАО «Уралэлектромаш». Указанное ходатайство судом отклоняется в силу ст. 39 АПК РФ, поскольку принятие решения по настоящего дела не может повлиять на права и обязанности ЗАО «Уралэлектромаш» по отношению к одной из сторон.

Истец заявил ходатайство об отложение дела в связи с тем, что отсутствуют доказательства надлежащего уведомления ответчика, находящегося за пределами Российской Федерации, в частности Компании «Джеконет Лимитед».

Учитывая данное обстоятельство, руководствуясь ст. 35, 54, 120, 140 АПК РФ, суд

## ОПРЕДЕЛИЛ:

Отложить рассмотрение дела на 03.10.2002 года на 10 часов 00 минут.