FROM : "AKINP"                    PHONE NO. : 250 44 34            DEC. 21 2001 03:12PM P1

# АРБИТРЖАНЫЙ СУД  РЕСПУБЛИКИ КАЛМЫКИЯ

## ПОСТАНОВЛЕНИЕ

апелляционной инстанции по проверке законности и обоснованности
решений арбитражных судов, не вступивших в законную силу

г. Элиста                                    Дело № А22-1222/2000/6-109
«09» ноября 2001 года

Арбитражный суд Республики Калмыкия в составе:
Председательствующего: Чурюмовой Р.Д.,
судей Алжеевой Л.А., Токаревой В.И.,
при участии:
            от истца: представитель ОАО «Качканарский ГОК «Ванадий» -
Знаменский Е.Н. (по доверенности № 73 от 14 мая 2001 года),
            от ответчиков: представитель ООО «Полипром» - Вольнов В.В. (по
доверенности), представитель ООО «Торговый дом ОАО «Ванадий» -
Дворовенко И.Е. (по доверенности от 09.04.2001 года),
            третьи лица: представитель компании «Холд Экс Эл.Эл.Си.»-Вольнов
В.В.( по доверенности от 23.03.2001 г.)
            ЗАО «Ведение реестров компаний» - не явились,
            рассмотрев в судебном заседании апелляционную жалобу ООО
«Полипром» на решение от 05 июля 2001 года по делу  № А22-1222/2000/6-
109 Арбитражного суда Республики Калмыкия  (судья Джамбинова Л.Б.)

### Установил:

            ОАО «Качканарский ГОК «Ванадий» обратился в суд с иском к ООО
«Торговый дом ОАО «Ванадий», ООО «Полипром» о признании
недействительным договора купли-продажи ценных бумаг № 3 от 18.01.1999
г., о признании недействительными передаточных распоряжений на
основании которых во исполнение оспариваемого договора с лицевого счета
продавца были списаны именные обыкновенные акции ОАО «Качканарский
ГОК «Ванадий», а  также о восстановлении в реестре владельцев именных
ценных бумаг ОАО «Качканарский ГОК «Ванадий» записи о наличии на
лицевом счете ООО «Торговый дом ОАО «Ванадий» именных
обыкновенных акций, переданных по оспариваемому договору купли-
продажи.

            В качестве третьего лица, не заявляющего самостоятельных требований
на предмет спора, привлечено АОЗТ «Ведение реестров компаний» .
Определением Арбитражного суда Республики Калмыкия от 10.09.2001 года
в качестве третьего лица, не заявляющего самостоятельных требований на

ОТ:Х    ЮМЕР ТЕЛЕФОНА:    К. 21 2001 17:10 СТР4

FROM : "AK1NP"    PHONE NO. : 250 44 34    DEC. 21 2001 03:16PM P1

предмет спора была привлечена компания «Холд Экс Эл.Эл.Си.» по ходатайству ООО «Полипром».

Решением Арбитражного суда Республики Калмыкии от 22.11.2000 г. исковые требования ОАО «Качканарский ГОК «Ванадий» полностью удовлетворены на том основании, что оспариваемый договор заключен неуполномоченным лицом в отсутствии последующего одобрения сделки. Кроме того, суд указал, что договор купли-продажи от 18.01.1999 года является крупной сделкой, однако в нарушении норм ст.46 Федерального закона «Об обществах с ограниченной ответственностью» решение о совершении оспариваемого договора не принималось.

Постановлением Федерального Арбитражного суда Северо-Кавказского округа от 17 апреля 2001 года решение Арбитражного суда Республики Калмыкии от 22.11.2000 г. отменено и передано на новое рассмотрение в суд первой инстанции с указанием на то, что при новом рассмотрении дела суду необходимо истребовать у сторон подлинный договор купли-продажи акций, баланс ООО «Торговый дом ОАО «Полипром» с отметкой о представлении его в налоговые органы, сведения о том, когда Червинский Н.И. был отстранен от должности исполняющего обязанности генерального директора ООО «Торговый дом ОАО «Ванадий», привлечь к участию всех заинтересованных и с учетом этого разрешить спор по существу.

Решением Арбитражного суда Республики Калмыкия суда от 05.07.2001 года по делу № А22-1222/2000/6-109 исковые требования ОАО «Качканарский ГОК «Ванадий» были удовлетворены.

Удовлетворяя исковые требования, суд пришел к выводу о том, что оспариваемый договор купли-продажи ценных бумаг № 3 от 18.01.1999 года, заключенный между ответчиками, не соответствует требованиям закона и является недействительным.

Ответчик ООО «Полипром», не согласившись с принятым решением, подал апелляционную жалобу, в которой просил суд отменить решение полностью и прекратить производство по делу, ссылаясь на неполное выяснение обстоятельств, имеющих значение для дела и нарушение норм процессуального права.

В судебном заседании представитель ООО «Полипром» доводы апелляционной жалобы поддержал и просил суд решение суда первой инстанции отменить.

Представитель ОАО «Качканарский ГОК «Ванадий» и представитель ООО «Торговый дом ОАО «Ванадий» предложили апелляционной инстанции решение суда первой инстанции оставить без изменения, а апелляционную жалобу без удовлетворения.

Суд апелляционной инстанции, выслушав мнение сторон, проверив материалы дела, установил, что между ООО «Полипром» и ООО «Торговый дом ОАО «Ванадий» 18 января 1999 года был заключен договор купли-продажи ценных бумаг № 3, на основании которого ООО «Полипром» были преданы именные обыкновенные акции ОАО «Качканарский ГОК «Ванадий»:

202

3

- акции выпуска № 62-1П-290 от 12 июля 1993 года в количестве 9759 штук по цене 23504 руб. 80 коп.
- акции выпуска № 62-1-1396 от 12 июня 1996 года в количестве 2298225 штук по цене 5535342 руб. 20 копеек.

Запись о переходе права собственности на вышеуказанные акции ОАО «Качканарский ГОК «Ванадий» от ООО «Торговый дом ОАО «Ванадий» к ООО «Полипром» внесена в реестр акционеров на основании двух передаточных распоряжений от 21.01.2000 года.

Договор купли-продажи ценных бумаг № 3 от 18.01.1999 г. и передаточные распоряжения со стороны ООО «Торговый дом «Ванадий» были подписаны Червинским Н.И., который не являлся генеральным директором ООО «Торговый дом ОАО «Ванадий» и не был наделен полномочиями для совершения каких-либо сделок, что подтверждается документами о назначении на должность и снятии с нее, представленными ООО Торговый дом ОАО «Ванадий», а также самим ответчиком ООО «Полипром» в отзыве на исковое заявление.

Согласно уставу, балансу ООО «Торговый дом ОАО «Ванадий» с отметкой из налогового органа и Федерального закона «Об обществах с ограниченной ответственностью» указанная сделка для ООО «Торговый дом ОАО «Ванадий» являлась крупной сделкой. Согласно ст. 46 ФЗ «Об акционерных обществах» для заключения крупной сделки должно быть принято решение общего собрания участников общества. Однако этого сделано не было.

При изложенных обстоятельствах суд первой инстанции правомерно и обоснованно удовлетворил требования истца о признании договора купли-продажи ценных бумаг № 3 от 18.01.1999 г. недействительным.

В апелляционной жалобе заявитель ссылается на то, что он не был надлежащим образом извещен о месте и времени судебного заседания, чем было нарушено его право на судебную защиту и он был лишен возможности представить суду доказательства по делу.

В материалах дела имеется уведомление ООО «Полипром» о надлежащем извещении о времени и месте рассмотрения дела, поэтому ссылка заявителя на отсутствие надлежащего извещения не может быть принята апелляционной инстанцией.

В судебном заседании представитель ООО «Полипром» показал, что списание спорного пакета акций с лицевого счета ООО «Торговый дом ОАО «Ванадий» произведено на основании договора купли-продажи ценных бумаг № 3 от 18.01.2000 г. и в доказательство этого представил подлинник договора, пояснив что у истца отсутствует подлинник договора купли-продажи ценных бумаг. Из этого представитель ООО «Полипром» делает вывод о том, что договор № 3 от 18.01.1999 года был сфальсифицирован истцом. В подтверждение своего довода представитель ООО «Полипром» представил Постановление Государственной регистрационной палаты Республики Калмыкия № 00355 от 22 июня 1999 года, согласно которому ООО «Полипром» было зарегистрировано 22 июня 1999 года.



FROM : "AKINP"                    PHONE NO. : 250 44 34                    DEC. 21 2001 03:17PM P3

4

Представитель ООО «Торговый дом ОАО «Ванадий» и представитель ОАО «Качканарский ГОК «Ванадий», возражая против данного довода ООО «Полипром», представили оригинал договора купли-продажи ценных бумаг № 3 от 18.01.1999 г. и пояснили, что списание спорных ценных бумаг было совершено на основании договора купли-продажи № 3 от 18.01.1999 года. Представитель истца также сослался на справку, выданную ЗАО «Компания-регистратор «Панорама», согласно которой запись о списании ценных бумаг с лицевого счета ООО «Торговый дом ОАО «Ванадий» была внесена на основании договора купли-продажи № 3 от 18.01.1999 года.

Представитель истца в судебном заседании пояснил, что ООО «Полипром» было зарегистрировано в качестве юридического лица после заключения спорного договора №3 от 18.01.1999 г., и данное обстоятельство является одним из оснований для признания данного договора недействительным.

Апелляционная инстанция, оценив в совокупности изложенные доказательства, установила, что между ответчиками фактически был заключен договор купли-продажи ценных бумаг 18.01.1999 г. № 3. Данное обстоятельство подтверждается выписками из реестра, представленными самим же представителем ООО «Полипром», в соответствии с которыми, запись о списании с лицевого счета ООО «Торговый дом ОАО «Ванадий» вышеуказанных акций были произведены на основании договора купли-продажи ценных бумаг 18.01.1999 года №3, а также справкой, представленной ЗАО «Компания-регистратор «Панорама», которое являлось на момент заключения спорного договора держателем реестра владельцев ценных бумаг ОАО «Качканарский ГОК «Ванадий». Кроме того, суд считает обоснованным довод истца о том, что факт регистрации ООО «Полипром» после заключения спорного договора № 3 от 18.01.1999 года является одним из оснований для признания данного договора недействительным.

На основании изложенного и руководствуясь ст. ст. 91, 95, 153, 155, 157, 158, п.1, п.п. 2, 3 ст. 159 АПК РФ, арбитражный суд,

**Постановил:**

Решение Арбитражного суда Республики Калмыкии от 05 июля 2001 года по делу № А22-1222/2000/6-109 оставить без изменения, а апелляционную жалобу без удовлетворения.

Настоящее постановление вступает в законную силу с момента его принятия и может быть обжаловано в кассационном порядке в Федеральный Арбитражный суд Северо-Кавказского округа в месячный срок со дня его принятия.

Председательствующий                                    Чурюмова Р.Д.

Судьи                                                        Алжеева Л.А.,
                                                            Токарева В.И.

204

# FEDERAL ARBITRAZH COURT FOR THE NORTH CAUCASUS DISTRICT

## DECISION

Of the Cassation Instance reviewing the legitimacy and substantiation of the decisions (orders) of Arbitrazh courts that entered into force

| | | |
|---|---|---|
| City of Krasnodar | # F08-4572/2001 | January 21, 2002 |
| | Docket # A 22/1222-00/6-109/Ar-46 | |

The Federal Arbitrazh Court for the North Caucasus District, present: Chief Judge Y. V. Romants, Judges S. A. Vetrov, L. I. Savenko (reporting), in the absence of representatives of the Open Joint Stock Company Kachkanarskii Ore Mining Combine Vanadii ("OAO Kachkanarskii GOK Vanadii"), Limited Liability Company Polyprom (OOO Polyprom), Limited Liability Company Trading House OAO Vanadii ("OOO Trading House OAO Vanadii"), Closed Joint Stock Company "Vedenie Reestrov Kompanii" (AOZT Vedenie Reestrov Kompanii), Company Holdex LLC, which have been duly notified about the time and location of the hearing, having reviewed the cassation appeal of OOO Polyprom on the decision of the Arbitrazh Court of the Republic of Kalmykia dated July 5, 2000 (Judge L. B. Jambinova), and the order of the appellate instance dated November 9, 2000 (Judges R. D. Churumova, L. A. Alzheeva, V. I. Tokareva) in the case # A 22/1222-00/6-109/Ar46, has determined the following.

OAO Kachkanarsky GOK Vanadii filed a complaint at the Arbitrazh court against OOO Trading House OAO Vanadii and OOO Polyprom seeking to declare invalid the contract # 3 for the sale of shares dated January 18, 1999, transfer orders based on which personal common shares of OAO Kachnanarskii GOK Vanadii were transferred from the personal account of the seller, in performance of the contract in question, and to restore in the register of the owners of personal common shares of OAO Kachkanarskii GOK Vanadii the recording of the ownership of OOO Trading House OAO Vanadii of the personal common shares conveyed under the contested sale agreement.

AOZT Vedenie Reestrov Kompanii is joined as a third party without independent claims.

By the decision of the Arbitrazh Court of the Republic of Kalmykia dated November 22, 2000, the relief sought was granted in full, on the basis that the contested contract was signed by an unauthorized person without subsequent ratification. Additionally, the court indicated that the sale contract dated January 18, 1999 was a large-scale transaction and, in violation of the norms of article 46 of the Federal Law "On Limited Liability Companies," no decision to conclude the contested agreement was adopted by the general meeting of shareholders.

The case was not reviewed in the appellate proceedings.

The decision of the cassation appeal dated April 17, 2001 reversed the decision dated November 22, 2000 and remanded the case for a new trial. It further indicated that the

plaintiff's demand to restore the recording of the shares in question on the personal account of OOO Trading House OAO Vanadii in the case of the purchase of the shares in question under the contested contract by OOO Polyprom gives the proceedings the nature of the replevin action seeking to return property. In connection with that, it was suggested that the court check the data in the register of shares of OAO Kachkanarskii GOK Vanadii and determine the owners of the shares in question and join them in the proceedings. The court was also suggested to require the parties to present the original of the contract for the sale of shares, the accounting books of OOO Trading House OAO Vanadii with the mark of their submission to the tax authorities, and information on when was N. I. Chervinsky removed from the position of the acting general director of OOO Trading House OAO Vanadii.

At the new hearing, company Holdex LLC was joined as a third party without independent claims regarding the dispute.

By decision dated July 5, 2001, which was affirmed by the decision of the appellate instance dated November 9, 2001, the relief sought in the complaint of OAO Kachkanarskii GOK Vanadii was granted on the basis that the contested contract was signed by an unauthorized person, N. I. Chervinsky, without subsequent ratification of the transaction. Additionally, the court indicated that the sale contract dated January 18, 1999 was a large scale transaction but, in violation of the norms of Article 46 of the Federal Law "On Limited Liability Companies," the decision to enter into the contested contract was not adopted by the general meeting of the shareholders of the company.

OOO Polyprom in its cassation appeal seeks to reverse the decision dated February 28, 2000 and the decision of the appellate instance dated April 25, 2000 and to have a new decision issued. The appellant argues that Contract # 3 dated January 18, 1999 was not signed between OOO Polyprom and OOO Trading House OAO Vanadii since the document that was submitted to the court was a fake one, and, in reality, the contract for the sale of shares in question was concluded on January 18, 2000. Promissory notes were transferred as payment under the January 18, 2000 contract, and recorded by the acceptance act dated January 19, 2000, and transfer instructions were issued on January 21, 2000 and the transfer was conducted, which is confirmed by the issued notification. The shares in question were sold by OOO Polyprom to a third party, which is the good faith purchaser.

In its reply to the cassation appeal, OAO Kachkanarsky GOK Vanadii asks to affirm the decision dated February 28, 2000, and the decision of the appellate instance dated April 25, 2000, and to dismiss the cassation appeal. OAO Kachkanarsky GOK Vanadii argues that the note of the special registrator of shares that the recording of the alienation of the shares was made on the basis of the contract for the sale of shares # 3 dated January 18, 1999 is sufficient proof if the existence of the contract, and the interested party, company Holdex LLC, was joined in the case.

Having studied the materials of the case, the Federal Arbitrazh Court for the North Caucasus District holds that the decisions of the court and of the appellate instance must

be reversed and the case remanded for new hearing to the first instance, for the following reasons.

The materials of the case indicate that plaintiff and defendant presented to the court two contracts for the sale of shares which are different with respect to their dates and contents. At the same time, the claims of OAO Kachkanarskii GOK Vanadii are based on the absence of authority of the general director of OOO Trading House OAO Vanadii at the time of concluding the contract. The cassation instance, reversing the decision of the Arbitrazh court dated November 22, 2000 and remanding the case for further proceedings, indicated the necessity of determining and evaluating the authentic contract for the sale of shares, determining the time of removing N. I. Chervinsky from the position of the acting general director of OOO Trading House Vanadii, the owner of shares at the time of filing the complaint, and resolving the dispute with due account to the factual justification of the claims. In violation of Article 178 of the APC of RF, the orders of the cassation instance were not followed by the court at the new hearing.

In providing the reasoning for its decision, the court referred to the invalidity of the contract for the sale of shares dated January 19, 1999 signed between OOO Trading House OAO Vanadii and OOO Polyprom. However, declaring invalid the January 18, 1999 contract for the sale of shares, the court did not give a reason why it did not consider the contract for the sale of shares dated January 18, 2000. The court did not take any measures to determine which one of the contracts present in the materials of the case is the authentic one, did not eliminate the contradictions present in submitted evidence. Thus, in justification of the authenticity of the sale contract dated January 18, 1999, the court of the appellate instance referred to the extract from the register of ZAO Registering Company Panorama according to which the recording of the shares were transferred from the account of OOO Trading House Vanadii was made on the basis of the above contract. At the same time, the court did not analyze that the notice of the operation with the shares on the account, dated January 21, 2000, the holder of the register, referring to the contract dated January 18, 1999, simultaneously indicates that the new owner of the shares, OOO Polyprom, was registered at the State Registering Chamber of the Republic of Kalmykia on June 22, 1999. The court did not find out whether the contract dated January 18, 1999 could have the information about the taxpayer identification number of OOO Polyprom, when such number was assigned to the buyer of the shares. The court did not investigate and evaluate the act of the transfer and acceptance of shares dated January 19, 2000 which is part of the docket, which refers to the contract for the sale of the shares in question dated January 18, 2000.

According to Article 29 of the Federal Law "On Securities Market," the recording in the register of shareholders attaches the right of ownership for the respective quantity of shares.

The docket contains the contract for the sale of shares # KGOK-001/A dated January 20, 2000 concluded between OOO Polyprom and Holdex, LLC the subject of which is the shares in question. The cassation appeal of OOO Polyprom refers to the sale of shares to a third party which it believes to be a good faith purchaser.

The court did not give its evaluation to the contract for the sale of shares # KGOK-001/A, nor to the argument of OOO Polyprom about the sale of share to Holdex, LLC. At the same time, depending on the analysis of said circumstances and determining the third party ownership of the shares, the demand of the plaintiff to restore the recording of the presence of the shares in question at the account of OOO Trading House Vanadii, in essence, means a claim in replevin, which may not be heard without joining the actual owner of shares as a second defendant.

Taking into account that the circumstances that have immense significance for the case have not been considered by the courts, the appealed decisions must be reversed and the case remanded for a new hearing. At the new hearing, it is necessary to eliminate the contradictions which are present in the materials of the case, determine which of the contracts for the sale of shares presented by the parties is authentic, determine the actual owner of the shares in question and its being a good faith purchaser, and, depending on the determined circumstances, suggest to the plaintiff to clarify the claims stated in the complaint.

The court fees of the new hearing should be allocated between the parties, according to the rules of Article 95 of the Arbitrazh Procedure Code of the Russian Federation.

Proceeding from the above, and guided by Articles 171, 174, 175, 176, 177 of the Arbitrazh Procedure Code of the Russian Federation, the Federal Arbitrazh Court of the North Caucasus District

RESOLVED:

To reverse the decision of the Arbitrazh Court of the Kalmykia dated July 5, 2001 and the decision of the appellate instance dated November 9, 2001 in the case # A 22/1222-00/6-109/Ar46. To remand the case for a new hearing to the first instance of the Arbitrazh Court of the Republic of Kalmykia.

The issues of the allocation of the court fees must be decided at the new hearing.

This decision enters into force at the time of its adoption and is not subject to appeal.

| Chief Justice | Y. V. Romanets |
| Justices | S. A. Vetrov |
| | L. I. Savenko |



ФЕДЕРАЛЬНЫЙ АРБИТРАЖНЫЙ СУД СЕВЕРО-КАВКАЗСКОГО ОКРУГА

## ПОСТАНОВЛЕНИЕ

кассационной инстанции по проверке законности
и обоснованности решений (постановлений)
арбитражных судов, вступивших в законную силу

г. Краснодар           Вх. Ф08 – 4572/2001           21 января 2002 года
                       Дело № А 22/1222-00/6-109/Ар46

Федеральный арбитражный суд Северо-Кавказского округа в составе председательствующего Романца Ю.В., судей Ветрова С.А. и Савенко Л.И. (докладчик), в отсутствие представителей открытого акционерного общества "Качканарский горно-обогатительный комбинат "Ванадий" (ОАО "Качканарский ГОК "Ванадий"), общества с ограниченной ответственностью "Полипром" (ООО "Полипром"), общества с ограниченной ответственностью "Торговый дом ОАО "Ванадий" (ООО "Торговый дом ОАО "Ванадий"), акционерного общества закрытого типа "Ведение реестров компаний" (АОЗТ "Ведение реестров компаний"), компании "Холд Экс Эл. Эл. Си", извещенных в установленном порядке о времени и месте судебного заседания, рассмотрев кассационную жалобу ООО "Полипром" на решение Арбитражного суда Республики Калмыкия от 5.07.2000 (судья Джамбинова Л.Б.) и постановление апелляционной инстанции от 9.11.2000 (судьи Чурюмова Р.Д., Алжеева Л.А., Токарева В.И.) по делу № А 22/1222-00/6-109/Ар46, установил следующее.

ОАО "Качканарский ГОК "Ванадий" обратилось в арбитражный суд с иском к ООО "Торговый дом ОАО "Ванадий" и ООО "Полипром" о признании недействительными договора купли-продажи акций № 3 от 18.01.99, передаточных распоряжений, на основании которых во исполнение оспариваемого договора с лицевого счета продавца были списаны именные обыкновенные акции ОАО "Качканарский ГОК "Ванадий", а также о восстановлении в реестре владельцев именных ценных бумаг ОАО "Качканарский ГОК "Ванадий" записи о наличии на лицевом счете ООО "Торговый дом ОАО "Ванадий" именных обыкновенных акций, переданных по оспариваемому договору купли-продажи.

В качестве третьего лица, не заявляющего самостоятельных требований на предмет спора, привлечено АОЗТ "Ведение реестров компаний".

Решением от 22.11.2000 Арбитражного суда Республики Калмыкия исковые требования полностью удовлетворены на том основании, что оспариваемый договор заключен неуполномоченным лицом в отсутствие последующего одобрения сделки. Кроме того, суд указал, что договор купли-продажи от 18.01.99 является крупной сделкой, однако в

2

нарушение норм статьи 46 Федерального закона "Об обществах с ограниченной ответственностью" решение о совершении оспариваемого договора общим собранием акционеров общества не принималось.

В апелляционном порядке дело не пересматривалось.

. Постановлением кассационной инстанции от 17.04.2001 решение от 22.11.2000 отменено с направлением дела на новое рассмотрение. При этом было указано, что требование истца о восстановлении записи о наличии на лицевом счете ООО «Торговый дом ОАО «Ванадий» оспариваемых акций в случае приобретения указанных акций третьими лицами по договору с ООО «Полипром» фактически означает требование о виндикации имущества. В связи с этим при новом рассмотрении дела суду предложено проверить данные реестра акционеров ОАО «Качканарский ГОК «Ванадий», установить владельцев спорных акций и привлечь их к участию в деле. Суду предложено также истребовать у сторон подлинный договор купли-продажи акций, баланс ООО "Торговый дом ОАО "Ванадий" с отметкой о представлении его в налоговые органы, сведения о том, когда Червинский Н.И. был отстранен от должности исполняющего обязанности генерального директора ООО "Торговый дом ОАО «Ванадий».

При новом рассмотрении дела в качестве третьего лица, не заявляющего самостоятельных требований на предмет спора, к участию в деле привлечена компания "Холд Экс Эл. Эл. Си".

Решением от 5.07.2001, оставленным без изменения постановлением апелляционной инстанции от 9.11.2001, исковые требования ОАО "Качканарский ГОК "Ванадий" удовлетворены на том основании, что оспариваемый договор заключен неуполномоченным лицом Червинским Н.И. в отсутствие последующего одобрения сделки. Кроме того, суд указал, что договор купли-продажи от 18.01.99 является крупной сделкой, однако в нарушение норм статьи 46 Федерального закона "Об обществах с ограниченной ответственностью" решение о совершении оспариваемого договора общим собранием акционеров общества не принималось.

В кассационной жалобе ООО "Полипром" просит решение от 28.02.2000 и постановление апелляционной инстанции от 25.04.2000 отменить и принять новое решение. В обоснование доводов кассационной жалобы заявитель ссылается на то, что между ООО "Полипром" и ООО "Торговый дом ОАО "Ванадий" не был заключен договор № 3 от 18.01.99, поскольку представленный суду документ является сфальсифицированным, а фактически договор купли-продажи спорных ценных бумаг заключен 18.01.2000. В счет оплаты по договору от 18.01.2000 были переданы векселя и оформлены актом приема-передачи от 19.01.2000 в связи с чем 20.01.2000 были выписаны передаточные распоряжения и 21.01.2000 операция по зачислению спорных акций была проведена. что подтверждается

3

выданным уведомлением. Спорные акции были отчуждены ООО "Полипром" третьему лицу, который является добросовестным приобретателем.

В отзыве на кассационную жалобу ОАО "Качканарский ГОК "Ванадий" просит решение от 28.02.2000 и постановление апелляционной инстанции от 25.04.2000 оставить без изменения, а кассационную жалобу без удовлетворения. В обоснование доводов отзыва ОАО "Качканарский ГОК "Ванадий" ссылается на то, что представленная истцом справка специализированного регистратора о том, что запись о списании ценных бумаг была внесена на основании договора купли-продажи акций № 3 от 18.01.99, является достаточным доказательством существования договора, заинтересованное лицо - компания "Холд Экс Эл. Эл. Си" привлечено к участию в деле.

Исследовав материалы дела, Федеральный арбитражный суд Северо-Кавказского округа считает, что решение и постановление апелляционной инстанции следует отменить, а дело передать на новое рассмотрение в суд первой инстанции по следующим основаниям.

Из материалов дела следует, что истец и ответчик представили в судебное заседание два различных по содержанию и датам заключения договора купли-продажи акций. При этом исковые требования ОАО «Качканарский горно-обогатительный комбинат «Ванадий» обоснованы отсутствием в момент заключения договора полномочий у генерального директора ООО «Торговый дом ОАО «Ванадий». Кассационная инстанция, отменяя решение арбитражного суда от 22.11.2000 и направляя дело на новое рассмотрение, указала на необходимость установления и оценки подлинного договора купли-продажи акций, выяснения времени отстранения Червинского Н.И. от должности исполняющего обязанности генерального директора ООО «Торговый дом «Ванадий», владельца акций на момент предъявления иска и разрешения спора с учетом фактического основания исковых требований. В нарушение статьи 178 АПК РФ при новом рассмотрении дела указания кассационной инстанции судом не выполнены.

В обоснование решения по делу суд сослался на недействительность договора купли-продажи акций от 18.01.1999, заключенного между ООО «Торговый дом ОАО «Ванадий» и ООО «Полипром». Однако, признавая недействительным договор купли-продажи от 18.01.1999, суд не обосновал, причины, по которым он не принимает во внимание договор купли-продажи от 18.01.2000. Суд не принял мер к выяснению вопроса о том, какой из имеющихся в деле текстов договора является подлинным, не устранил противоречий, имеющихся в представленных доказательствах. Так, в обоснование действительности договора купли-продажи от 18.01.99 суд апелляционной инстанции сослался на выписки из реестра ЗАО «Компания-регистратор «Панорама», в соответствии с которыми запись о списании с лицевого счета ООО «Торговый дом «Ванадий» спорных акций произведена на основании вышеуказанного договора. Вместе с тем, суд не дал оценку тому, что в

уведомлении от 21.01.2000 об операции, проведенной по счету с акциями, держатель реестра, ссылаясь на договор купли-продажи от 18.01.99, одновременно указывает, что новый владелец акций – ООО «Полипром» - зарегистрирован в Государственной регистрационной палате Республики Калмыкия 22.06.99. Суд не выяснил, могли ли в договоре купли-продажи от 18.01.99 содержаться данные идентификационного номера налогоплательщика ООО «Полипром»; когда такие данные были присвоены покупателю акций. Судами не исследовался и не оценивался имеющийся в материалах дела акт приемки-передачи векселей от 19.01.2000, содержащий ссылку на договор купли-продажи спорных акций от 18.01.2000.

Согласно статье 29 Федерального закона "О рынке ценных бумаг" запись в реестре акционеров фиксирует право собственности лица на соответствующее количество акций.

В материалах дела имеется договор купли-продажи ценных бумаг № KGOK-001/A от 20.01.2000, заключенный между ООО "Полипром" и компанией "Холд Экс Эл. Эл. Си", предметом которого указываются спорные акции. В кассационной жалобе ООО "Полипром" ссылается на отчуждение акций третьему лицу, которое, по его мнению, является добросовестным приобретателем.

Суд не дал оценки ни договору купли-продажи ценных бумаг № KGOK-001/A, ни доводам ООО «Полипром» об отчуждении акций компании «Холд Экс Эл. Эл.Си». Между тем, в зависимости от исследования указанных обстоятельств и установления принадлежности акций третьему лицу, требование истца о восстановлении записи о наличии на лицевом счете ООО «Торговый дом «Ванадий» спорных акций по существу означает требование о возврате имущества, которое не может быть рассмотрено без привлечения фактического владельца акций к участию в деле в качестве второго ответчика.

Принимая во внимание, что обстоятельства, имеющие существенное значение для дела, не были предметом рассмотрения судебных инстанций, обжалуемые акты подлежат отмене с направлением дела на новое рассмотрение. При новом рассмотрении дела следует устранить противоречия, имеющиеся в материалах дела, установить, какой из предъявленных сторонами договоров купли-продажи акций является подлинным, фактического владельца спорных акций и его добросовестность и в зависимости от установленных обстоятельств предложить истцу уточнить заявленные исковые требования.

Судебные расходы следует распределить между сторонами при новом рассмотрении дела по правилам статьи 95 Арбитражного процессуального кодекса Российской Федерации.

Учитывая изложенное и руководствуясь статьями 171, 174, 175, 176, 177 Арбитражного процессуального кодекса Российской Федерации, Федеральный арбитражный суд Северо-Кавказского округа

П О С Т А Н О В И Л :

решение Арбитражного суда Республики Калмыкия от 5.07.2001 и постановление апелляционной инстанции от 9.11.2001 по делу № А 22/1222-00/6-109/Ар46 отменить. Передать дело на новое рассмотрение в первую инстанцию Арбитражного суда Республики Калмыкия.

Вопросы распределения госпошлины разрешить при новом рассмотрении дела.

Постановление вступает в законную силу с момента его принятия и обжалованию не подлежит.

Председательствующий

Судьи

Ю.В. Романец

С.А. Ветров

Л.И. Савенко

IN THE NAME OF THE RUSSIAN FEDERATION

DECISION

City of Elista
March 12, 2002                                    Docket No. A22-1222/00/6-109/Ar46

Judge V. E. Bimbeev of the Kalmykia Arbitrazh Court, having reviewed in the course of the hearing the case upon the complaint of OJSC Kachkanarskii [GOK] Vanadii ["GOK'] against OOO GOK Trading House ("GOK Trading House") and OOO Polyprom,

third parties: Holdex, LLC ["Holdex"] and ZAO "Vedenie Reestrov Kompanii" ["VR"], seeking to declare invalid the contract # 3 dated January 18, 1999 for the sale of shares, and to declare invalid the instructions to re-register 2,307,984 shares of GOK for the amount of 5,548,847 Russian roubles, from GOK Trading House to Holdex and to restore in the register the title record and ownership of GOK Trading House of the shares in question,

present:
For Plaintiff GOK: E. N. Znamensky (power of attorney in volume 4 page 13);
For Defendant Trading House: I. E. Dvorovenko (power of attorney in volume 4 page 14);
For Defendant Polyprom: did not appear, sent a telegram consenting to the conducting of the hearing in his absence (volume 4 page 10);
For third party (Holdex): did not appear, sent a telegram consenting to the conducting of the hearing in his absence (volume 4, page 11);
For third party (VR): did not appear, sent a telegram consenting to the conducting of the hearing in his absence (volume 4, page 12),

has determined as follows:

OJSC Kachkanarsky GOK Vanadii filed a complaint with the Arbitrazh Court against GOK Trading House and Polyprom seeking to declare invalid the contract # 3 dated January 18, 1999 for the sale of shares, and the instructions under the contract in question according to which the personal shares of GOK have been written off from the account of the seller, and to restore in the register of the owners of personal shares the recording of the Trading House's ownership of these shares.

The plaintiff's complaint alleges that, on January 18, 1999, GOK Trading House and Polyprom signed a contract according to which Polyprom received the following shares of GOK:

- shares of the issue # 62-1P-290 of July 12, 1993, 9,759 shares total, for the amount of 23,504.80 Russian roubles;

- shares of the issue # 62-1-1396 of June 12, 1996, 2,298,225 shares total, for the amount of 5,535,342.20 Russian roubles.

The record of the transfer of title to the above shares of GOK from GOK Trading House to Polyprom was made in the register of shares on the basis of two transfer instructions dated January 21, 2000. The contract # 3 for the sale of shares, dated January 18, 1999, and the transfer instructions were signed on the part of GOK Trading House by N. I. Chervinsky who was not the general director of GOK Trading House, and did not have the authority to perform any transactions, which is proved by the documents regarding the taking and resigning from that position, submitted by GOK Trading House. Additionally, according to the by-laws, the accounting books of the Trading House, the notation of the tax authorities, and the Federal Law "On Limited Liability Companies," said transaction was a large scale transaction.

According to article 46 of the FL "On Joint Stock Companies," a large scale transaction requires an approval by the decision of the general meeting of shareholders. This was not done.

Closed Joint Stock Company VR was joined as a third party without independent claims.

Upon Polyprom's motion, the Arbitrazh Court of the Republic of Kalmykia by its decision dated September 10, 2001, joined Holdex as a third party without independent claims.

The plaintiff's representative in the course of the hearing fully supported the claims in the complaint, and prayed the court to grant the relief sought, because even the defendants themselves in their replies to the complaint acknowledged that the contract # 3 dated January 18, 1999 was signed by an unauthorized person. In order to prove the authenticity of the contract for the sale of shares # 3 dated January 18, 1999, the representative of the plaintiff presented to the court the original of that document, which was visually compared with the photocopy that was in the materials of the case (volume 1, page 8), and whose authenticity was determined.

The representative of GOK Trading House fully accepted the plaintiff's claims, and explained that, at the time of the conclusion of the contract # 3 for the sale of shares, dated January 18, 1999, the director of GOK Trading House was E. A. Mashkovtsev, and, at the time of the issuance of the transfer instructions, S. A. Halmirzaev. Therefore, Chervinsky, not having such powers, did not have the right to conclude a large scale transaction for the sale of shares, which lead to significant damages to GOK Trading House. Taking into account the opinions of the parties present, the Court made a decision to hear the case on the merits in the absence of the interested parties to the case.

Having heard the representatives of the parties who appeared at the hearing, and having studied the materials of the case, the Court determined that GOK Trading House and Polyprom signed a contract # 3 dated January 18, 1999 for the sale of shares, pursuant to which Polyprom received the following personal shares of GOK

- shares of the issue # 62-1P-290 of July 12, 1993, 9,759 shares total, for the amount of 23,504.80 Russian roubles;
- shares of the issue # 62-1-1396 of June 12, 1996, 2,298,225 shares total, for the amount of 5,535,342.20 Russian roubles.

The recording of the change of ownership of the above shares of GOK from GOK

Trading House to Polyprom was made in the register of shareholders on the basis of two transfer instructions ## 12 and 13, dated January 21, 2000, the copies of which constitute part of the docket (volume 1, pages 9 and 10). They indicate the basis for the transfer the contract # 3 for the sale of shares dated January 18, 1999.

On the reverse side of the transfer instructions there is an indication that the party to which the title is transferred is Polyprom, registration certificate # 8305, dated June 22, 1999. N. I. Chervinsky signed them for the transferor.

The Court in the course of the hearing visually compared the signatures made by N. I. Chervinsky on the transfer instructions with the signature on the witness statement (volume 3, pages 10-13). As a result of this comparison, as well as the comparison with other documents in the record (volume 2, p. 20; volume 3, p. 68-69) the Court determined that the signatures were identical.

The docket contains a photocopy of Polyprom's registration certificate, which indicates that the date of registration was June 22, 1999, registration number 141, certificate number 8305 (volume 3, page 52). Accordingly, at the time of the signature of the contract # 3 for the sale of shares dated January 18, 1999, Polyprom did not exist as a legal entity.

The docket contains a written note of OOO Panorama Registering Company dated June 28, 2001 which indicates that the basis for the change in the register of GOK shareholders under the transfer instructions was the contract # 3 for the sale of shares dated January 18, 1999, according to which GOK Trading House transferred to Polyprom 2,298,225 personal shares of GOK, registration number of the issue 62-1-1396, the amount of the transaction 5,535,342.20 roubles, incoming number Ts-0135-200100-002 dated January 20, 2000, and 9,759 personal shares of GOK, registration number of the issue 62-1P-290, amount of the transaction 23,504.80 roubles, incoming number Ts-01350200100-001, dated January 20, 2000. There are no other transfer instructions with regard to the alienation of GOK the shares in the quantity of 2,298,225 or 9,759 from GOK Trading House to Polyprom (volume 12, page 19).

According to the bylaws and the accounting balance of GOK Trading House with the notation of the tax authorities, and according to the Federal Law "On Limited Liability Companies," the transaction entered into on January 18, 1999 for the sale of shares was a large scale transaction. According to the Federal Law "On Joint Stock Companies," a large scale transaction requires a decision of the general meeting of shareholders. GOK, as the founder of GOK Trading House, did not give its consent to the transaction in question. This fact was determined at the hearing. The docket contains a photocopy of the contract for the sale of shares # KCOK-001/A dated January 20, 2000, according to which Polyprom sold to Holdex 2,307,984 shares of GOK for the amount of 5,580,000 roubles (volume 3, page 18). That agreement was signed on the part of Holdex by I. V. Ievleva, whose signature was not verified by anyone. The power of attorney dated October 11, 1999 was not presented to the court.

However, the docket contains a photocopy of the general power of attorney dated November 15, 2000, which names Marina Ashihmina as the representative of Holdex (volume 3, page 28). This fact leads to questioning the authenticity of the transaction for the sale of shares to Holdex under the contract dated January 20, 2000, since Marina Ashihmina was the authorized representative of the company, and she was not given a right to transfer this right by another power of attorney to a different person. The court

finds that the assertions of the representative of Polyprom contained in the reply and in the cassation appeal that the shares were written off from the account of GOK Trading House based on contract # 3 for the sale of shares dated January 18, 2000 are unfounded. The court has reviewed in the course of a hearing the original of the contract # 3 dated January 18, 2000, and the shares were written off under that contract (dated January 18, 2000). This is also confirmed by the note issued by CJSC Registering Company Panorama (volume 2, page 19).

Having evaluated in their entirety the proofs analyzed in the course of the hearing, having examined the assertions of the parties, the court has determined that the contract was concluded on January 18, 1999, according to which the shares were written off, CJSC Registering Company Panorama being the holder of the register of shares at the time of the concluding of the contract. Therefore, the claims of GOK are well founded and should be granted.

Proceeding from the above, and pursuant to sections 95, 124-128, 145 of the Arbitrazh Procedure Code of the Russian Federation,

Decided:

To grant the relief sought by OJSC Kachkanarsky GOK Vanadii.

1. To declare invalid the contract # 3 dated January 18, 2000 between GOK Trading House and Polyprom.

2. To declare invalid the transfer instructions dated January 20, 2000 regarding the writing off of 9,759 personal shares of GOK, registration number of the issue 62-1P-290 of July 12, 1993, and 2,298,225 personal shares of GOK, registration number of the issue 62-1-1396 of June 12, 1996.

3. The holder of the register of shares of GOK, CJSC VR, to restore in the register of shares of GOK the recording of the ownership of GOK Trading House of 9,759 personal shares of GOK, registration number of the issue 62-1P-290 of July 12, 1993, and 2,298,225 personal shares of GOK, registration number of the issue 62-1-1396 of June 12, 1996.

4. To assess the state fees payable by Polyprom to GOK and GOK Trading House in the amount of 834.90 roubles.

To issue the writs of execution upon the entry into force of this decision.

This decision may be appealed to the Arbitrazh Court of the Russian Federation within one month.

Judge                                          V. E. Bembeev

[stamp – Arbitrazh Court of the Republic of Kalmykia – copy authentic]



## ИМЕНЕНМ РОССИЙСКОЙ ФЕДЕРАЦИИ

## Р Е Ш Е Н И Е

г. Элиста

12 марта 2002г.                                         Дело № А22-1222/00/6-109/Ар46

Судья Арбитражного суда Республики Калмыкия Бембеев В.Э., рассмотрев в судебном заседании дело по иску ОАО «Качканарский горнообогатительный комбинат «Ванадий» к ООО «Торговый дом ОАО «Ванадий» (далее «Торговый дом») и к ООО «Полипром» (далее «ООО»)

третьи лица: компания «Холд Экс Эл.Эл.Си (далее «Компания») и ЗАО «Ведение реестров Компаний» (далее «ЗАО»)

о признании договора купли-продажи ценных бумаг №3 от 18 января 1999г. недействительным, а также о признании недействительными передаточных распоряжений о перерегистрации акций ОАО "КГОК "«Ванадий" в количестве 2307984 шт. на сумму 5558847 руб. с «Торгового дома» на «ООО» и восстановлении записи на лицевом счете «Торгового дома» о владении спорными акциями на праве собственности.

При участии в судебном заседании:

От истца («Комбината») –представитель Знаменский Е.Н. (доверенность л.д.13,том 4);

От ответчика («Торговый Дом»)-представитель Дворовенко И.Е. (доверенность л.д.14,том 4);

От ответчика («ООО»)- не явился, направил телеграмму о рассмотрении дела в его отсутствии (л.д.10,том 4);

От третьего лица («Компании «Холд)- не явился, направил телеграмму о рассмотрении дела в его отсутствии (л.д.11, том 4);

От третьего лица («ЗАО»).– не явился, направил телеграмму о рассмотрении дела в его отсутствии (л.д.12, том 4),

### установил:

ОАО «Качканарский горно-обогатительный комбинат «Ванадий»(далее «комбинат») обратилось в арбитражный суд с иском к ООО «Торговый дом» ОАО «Ванадий» и ООО «Полипром» о признании недействительными договора купли-продажи акций №3 от 18 января 1999г., передаточных распоряжений, на основании которых во исполнение оспариваемого договора с лицевого счета продавца были списаны именные обыкновенные акции «Комбината», а также о восстановлении в реестр владельцев именных ценных бумаг «Комбината»записи о наличии на лицевом счете «Торгового дома» именных обыкновенных акций, переданных по оспариваемому договору купли-продажи ценных бумаг.

Истец в исковом заявлении мотивировал свои требования в том, что между «ООО» и «Торговым домом» 18 января 1999г. был заключен договор купли-продажи ценных бумаг №3, на основании которого «ООО» были переданы именные обыкновенные акции «Комбината»:

2

-акции выпуска №62-1П-290  от 12 июля 1993г. в количестве 9759 штук по цене 23504 руб.80 коп.;

-акции выпуска №62-1=1396 от 12 июня 1996г. в количестве 2298225 шт. по цене 5535342 руб.20 коп. Запись о переходе права собственности на вышеуказанные акции ОАО «Качканарский ГОК «Ванадий» от «Торгового дома» к «ООО» внесена в реестр акционеров на основании двух передаточных распоряжений от 21 января 2000г. Договор купли-продажи ценных бумаг №3 от 18 января 1999г. и передаточные распоряжения со стороны «Торгового дома» были подписаны Червинским Н.И., который не являлся генеральным директором «Торговый дом» и не был наделен полномочиями для совершения каких-либо сделок, что подтверждается документами о назначении на должность и снятии с нее, представленными «Торговым домом». Кроме того, согласно Уставу, бухгалтерского баланса «Торгового дома», с отметкой из налогового органа и федерального закона «Об обществах с ограниченной ответственностью» указанная сделка для «Торгового дома» являлась крупной.

Согласно ст.46 ФЗ «Об АО» для заключения крупной сделки должно быть принято решение общего собрания участников общества. Этого же не было сделано.

В качестве третьего лица, не заявляющего самостоятельных требований на предмет спора, привлечено АОЗТ «Ведение реестров компаний» (ныне «ЗАО»).

Определением Арбитражного суда РК от 10 сентября 2001г. в качестве третьего лица, не заявляющего самостоятельных требований на предмет спора была привлечена компания «Холд Экс Эл.Эл.Си» по ходатайству «ООО».

Представитель истца в судебном заседании полностью поддержал исковые требования и просил их удовлетворить, поскольку самими ответчиками подтверждается о том, что подписанный договор купли-продажи ценных бумаг №3 от 18 января 1999г. произведен неуполномоченным лицом в представленных отзывах на иск и кассационных жалобах. Для подтверждения достоверности договора купли-продажи ценных бумаг №3 от 18 января 1999г. (представитель истца представил суду оригинал договора, который был обозрен в судебном заседании и визуально сверен с ксерокопией находящегося в деле (л.д.8, том 1) и удостоверился в их идентичности.

Представитель «Торгового дома» в судебном заседании исковые требования истца признал полностью и пояснил, что на момент заключения договора купли-продажи ценных бумаг №3 от 18 января 1999г. директором «Торгового дома» был Машковцев Е.А., а на момент направления передаточных распоряжений был Халмирзаев С.А.. Поэтому, Червинский Н.И. будучи не наделенным указанными полномочиями, не имел право заключать сделку о купли-продажи в крупном размере, причинившую значительные убытки «Торговому дому». С учетом мнения присутствующих в судебном заседании сторон суд принял определение о рассмотрении дела по существу в отсутствии не явившихся заинтересованных лиц по делу.

Выслушав представителей сторон, явившихся в судебное заседание и исследовав материалы дела суд установил, что между «Торговым домом» и «ООО» был заключен договор купли-продажи ценных бумаг №3 от 18 января 1999г., на основании которого «ООО» были переданы именные обыкновенные акции «Комбината»:

-акции выпуска №62-1П-290 от 12 июля 1993г. в количестве 9759 шт. по цене 23504 руб. 80 коп.;

-акции выпуска №62-1-1396 от 12 июня 1996г. в количестве 2298225 шт. по цене 5535342 руб.20 коп.

Запись о переходе права собственности на вышеуказанные акции «Комбината» с «Торгового дома» к «ООО» внесена в реестр акционеров на основании двух передаточных распоряжений от 21 января 2000г. №№ 12и13, ксерокопии имеются в деле (л.д. 9 и 10, то 1). Основанием для внесения записи в реестр указывается в них договор №3 купли-продажи ценных бумаг от 18 января 1999г.

На обороте указанных распоряжений указывается, что лицо, на счет которого должны быть зачислены ценные бумаги является ООО «Полипром», свидетельство гос

3

гистрации №8305 от 22 июня 1999г. За передающего ценные бумаги подписался Червинский Н.И. (л.д. 9-10).

В судебном заседании были сверены (визуально) подписи учиненные Червинским Н.И. в передаточных распоряжениях и учиненные в показаниях свидетеля (л.д.10÷13, том 3). По результатам сверки суд удостоверился о идентичности учиненных подписей, а также в других документах имеющихся в деле (л.д. 20, том 2; л.д. 68-69, том 3).

В деле имеется ксерокопия свидетельства о государственной регистрации ООО «Полипром», в котором указывается, что дата регистрации 22 июня 1999г., регистрационный номер 141 (свидетельство №8305) (л.д.52,том 3). Следовательно в период заключения договора купли-продажи ценных бумаг №3 от 18 января 1999г. ООО «Полипром» не являлось юридическим лицом.

В деле имеется письменное сообщение ООО «Компании-регистратор «Панорама» от 28 июня 2001г., в котором указывается, что основанием для внесения записи в реестр «Комбината» по передаточным распоряжениям послужил договор купли-продажи ценных бумаг №3 от 18 января 1999г., по которому «ООО» передал «ООО» 2298225 обыкновенных именных акций «Комбината»; госрегистрационный номер выпуска 62-1-1396, цена сделки 5535342,2 руб., входящий № Ц-0135-200100-002 от 20 января 2000г. – 9759 обыкновенных именных акций «Комбината», госрегистрационный номер выпуска 62-1П-290, цена сделки 23504,8 руб., входящий № Ц-01350200100-001 от 20 января 2000г. Каких-либо других передаточных распоряжений, связанных с отчуждением акций в количестве 2298225 шт. и 9759 шт., принадлежащих «Торговому дому» в адрес ЗАО не поступали (л.д.19, том 2).

Согласно Уставу и балансу «Торгового дома» с отметкой из налогового органа и федерального закона «Об ООО» сделка совершенная 18 января 1999г. о купле-продаже ценных бумаг являлась крупной сделкой. Согласно ст.46 ФЗ «Об акционерных обществах» для заключения крупной сделки должно быть принято решение общего собрания участников общества. «Комбинат» как учредитель «Торгового дома» не давал согласия на совершение спорной сделки. Это обстоятельство установлено в судебном заседании. В деле имеется ксерокопия договора купли-продажи ценных бумаг №КСОК-001/А от 20 января 2000г., по которому «ООО» продал Компании «Холдэкс» акции «Комбината» в количестве всего 2307984 шт., на сумму 5580000 руб. (л.д.18, том 3). При заключении указанного договора представителем компании «Холдэкс» была Иевлева И.В., подпись которой никем не заверена. Доверенность от 11 октября 1999г. суду не была представлена.

Однако в деле имеется ксерокопия генеральной доверенности от 15 ноября 2000г., в которой представителем компании «Холдэкс» является Ашмина Марина (л.д.28, том 3). Это обстоятельство ставит под сомнение достоверность сделки по продаже ценных бумаг по договору от 20 января 2000г. компании «Холдэкс», поскольку законным и полномочным представителем компании являлась Ашмина Марина и из текста генеральной доверенности, последней не дано право предоставлять переполномочий по доверенности другому лицу. Доводы представителя ООО «Полипром» указанные в отзывах, кассационных жалобах о том, что списание спорного пакета акций с лицевого счета «Торгового дома» произведено на основании договора купли-продажи ценных бумаг №3 от 18 января 2000г. суд считает их несостоятельными, поскольку в судебном заседании обозревался подлинник договора №3 от 18 января 2000г., а списание спорных ценных бумаг было совершено именно по этому договору (от 18 января 2000г.) Это обстоятельство подтверждается справкой, выданной ЗАО «Компании-регистратор» «Панорама» (л.д.19, том 2).

Оценив в совокупности исследованные в судебном заседании доказательства, изучив доводы сторон суд установил, что фактически был заключен договор купли-продажи №3 от 18 января 1999г., по которому производилось списание ценных бумаг и ЗАО «Компания-регистратор «Панарама» являлось держателем реестра на момент заключения договора. Следовательно исковые требования «Комбината» являются обоснованными и подлежат удовлетворению.

На основании изложенного, руководствуясь ст. ст.95,124-128,145 АПК РФ, суд

4

**Р е ш и л :**

Исковые требования ОАО «Качканарский горно-обогатительный комбинат» «Ванадий» – удовлетворить.

1. Договор купли-продажи №3 от 18 января 2000г., заключенный между ООО»Торговый Дом ОАО»Ванадий» и ООО»Полипром» признать недействительным.

2. Признать недействительными передаточные распоряжения от 20 января 2000г. о списании с лицевого счета ООО «Торговый дом» ОАО»Ванадий» во исполнении договора купли-продажи №3 от 18 января 1999г. именных обыкновенных акций ОАО «Качканарский горно-обогатительный комбинат «Ванадий» выпуска №62-1П-290 от 12 июля 1993г. в количестве 9759 шт. и №62-1-1396 от 12 июня 1996г. в количестве 2298225 шт.

3. Держателю реестра акционеров ОАО «Качканарский горно-обогатительный комбинат «Ванадий» ЗАО «Ведение реестров компаний» восстановить в системе ведения реестра владельцев именных ценных бумаг ОАО «Качканарский горно-обогатительный комбинат «Ванадий» записи о наличии на лицевом счете ООО «Торговый дом ОАО»Ванадий» именных обыкновенных акций ОАО «Качканарский горно-обогатительный комбинат «Ванадий» выпуска №62-1П-290 от 12 июля 1993г. в количестве 9759 шт. и №62-1-1396 от 12 июня 1996г. в количестве 2298225 шт.

4. Взыскать расходы по госпошлине в пользу ОАО «Качканарский горно-обогатительный комбинат «Ванадий» с ООО «Торговый дом ОАО»Ванадий» в сумме 834 руб.90 коп. и с ООО «Полипром» в сумме 834 руб.90 коп.

После вступления решения в законную силу выдать исполнительные листы.

На решение может быть подана апелляционная жалоба в арбитражный суд РК в течение месяца со дня его принятия.

Судья                                          Бембеев В.Э.

FEDERAL ARBITRAZH COURT
OF NORTH-CAUCASUS DISTRICT

ORDER
returning the cassation appeal

Krasnodar                          Case # A22-1222/2000/6-109/Ap-46
April 23, 2002                           F08 – 1602/02

      The judge of the Federal Arbitrazh Court of North-Caucasus District Trifonova
L.A. having reviewed a cassation appeal of LLC Poliprom contesting the decision of the
Arbitrazh Court of the Republic of Kalmykia of March 12, 2002 in the case # A22-
1222/2000/6-109/Ap-46 has determined:
      The cassation appeal was not send through the arbitrazh court that issued the
judicial decision.
      Pursuant to Article 168(1)§2 of the Arbitrazh Procedural Code of the Russian
Federation [the court]

ORDERED:

1. To return the cassation appeal to the appellant.
2. IIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIII
3. The order can be appealed in cassation order with the Federal Arbitrazh Court
   of North-Caucasus District.

**Enclosure:** 1. The cassation appeal with the attached documents on 9 pages.

Judge       [signed]       L.A. Trifonova

000364

3/05 2002 20:31 FAX 9334614          MARKS&SOKOLOV          ☒015

*1*



# ФЕДЕРАЛЬНЫЙ АРБИТРАЖНЫЙ СУД
## СЕВЕРО-КАВКАЗСКОГО ОКРУГА

## ОПРЕДЕЛЕНИЕ
### о возвращении кассационной жалобы

г. Краснодар                                А22-I222/2000/6-I09/Ар46
                                            Дело №

« 23 » __апреля__  __2002__ г.             Ф08-I602/02

Судья Федерального арбитражного  суда Северо-Кавказского округа

__Л.А. Трифонова__ _____ _____ , рассмотрев кассационную

жалобу __ООО "Полипром"__ _____
                          (лицо, подавшее жалобу)

на __решение Арбитражного уда Республики Калмыкия__
       (наименование  судебного  акта  и  арбитражного  суда)

от « I2 » ____03____  ____2002____ г. по делу № А22-I222/200076-I097Ар46 ,

установил:

Кассационная жалоба направлена минуя арбитражный суд,
принявший судебный акт.

Руководствуясь пунктом ___2___ части I статьи 168 Арбитражного
процессуального кодекса Российской Федерации,

### ОПРЕДЕЛИЛ:

1. Кассационную жалобу возвратить заявителю.

2. ~~Возвратить заявителю~~ из федерального бюджета государственной пошлины
~~_____~~ , перечисленную по
~~_____~~

3. Определение может быть обжаловано в кассационном порядке в Феде-
ральный арбитражный суд  Северо-Кавказского округа.

Приложение: 1. Кассационная жалоба и приложенные документы

на ____9____ л., ~~_____~~

2. ~~_____~~

Судья                        Л.А. Трифонова

000364

ARBITRATION PROCEDURAL CODE
OF THE RUSSIAN FEDERATION
NO. 70-FZ OF MAY 5, 1995

Adopted by the State Duma April 5, 1995

Article 22. Jurisdiction of the Cases Jurisdiction

1. The arbitration court's jurisdiction shall include cases on economic disputes arising from the civil, administrative, and the other kinds of legal relations:

1) between the legal entities (hereinafter to be referred to as the organizations), citizens engaged in business activities without creating a legal entity and having the status of an individual businessman, obtained in conformity with the law-stipulated order (hereinafter to be referred to as the citizens);

2) between the Russian Federation and the subjects of the Russian Federation and between the subjects of the Russian Federation.

2. Economic disputes shall be resolved by the arbitration court and in particular shall be referred the following kinds of disputes:

- on the differences of opinion about the contract, the conclusion of which is envisaged by the law, or by which the parties agreed that the differences of opinion shall be passed for resolution to the arbitration court;

- on changing the terms of, or on the cancellation of the contracts;

- on the non-discharge or an improper discharge of the obligations;

- on recognizing the right of ownership;

- on the exaction by the owner or by the other lawful possessor of the property from an alien illegal ownership;

- on violating the rights of the owner or of the other lawful possessor, not involved in the deprivation of the ownership;

- on recompensing the losses;

- on recognizing as invalid (wholly or in part) the non-normative acts of the state bodies, of the local self-government bodies or of the other bodies, which are not in conformity with the laws and with the other legal normative acts and violate the rights and the lawful interests of the organizations and of the citizens;

- on the protection of the honour, dignity and business reputation;

- on recognizing as not liable to execution the writ of execution or the other document, by which the exaction shall be effected in the undisputable (non-acceptance) order;

- on appealing against the refusal of the state registration, or against avoiding the state registration within the fixed term by the organization or by the citizen, and also in the other cases, when such registration is stipulated by the law;

- on the exaction from the organizations and from the citizens of the fines by the state bodies, by the local self-government bodies and by the other bodies, discharging the controlling functions, unless the Federal Law stipulates an undisputable (non-acceptance) order of their exaction;

- on returning from the budget the monetary means, written off by the bodies, which discharge the controlling functions, in the undisputable (non-acceptance) order with the violation of the demands of the law or of the other legal normative act.

3. The arbitration court shall also consider the other kind of cases, including those:

- on establishing the facts essential to the inception, change or discontinuation of the rights of the organizations and of the citizens in the sphere of business and of the other kinds of the economic activity (hereinafter to be referred to as those on establishing the facts of legal importance);

- on the insolvency (bankruptcy) of the organizations and the citizens.

4. If so laid down by the present Code and by the other federal laws placed under the jurisdiction of the arbitration court shall be the cases on economic disputes and the other kind of cases with the participation of the entities, which are not the legal persons (hereinafter to be referred to as the organizations), and also of the citizens, who do not have the status of the individual businessman.

5. The Federal Law may also place under the jurisdiction of the arbitration court other kinds of cases.

6. The arbitration court shall consider cases referred to its jurisdiction with the participation of organizations and citizens of the Russian Federation, foreign organizations, organizations with foreign investments, international organizations, foreign citizens and persons without citizenship engaged in the business activity, unless otherwise stipulated by the international agreement of the Russian Federation.

### Арбитражный процессуальный кодекс Российской Федерации
### от 5 мая 1995 г. N 70-ФЗ

### Принят Государственной Думой 5 апреля 1995 года

#### Статья 22. Подведомственность дел

1. Арбитражному суду подведомственны дела по экономическим спорам, возникающим из гражданских, административных и иных правоотношений:

1) между юридическими лицами (далее - организации), гражданами, осуществляющими предпринимательскую деятельность без образования юридического лица и имеющими статус индивидуального предпринимателя, приобретенный в установленном законом порядке (далее - граждане);

2) между Российской Федерацией и субъектами Российской Федерации, между субъектами Российской Федерации.

2. К экономическим спорам, разрешаемым арбитражным судом, в частности, относятся споры:

о разногласиях по договору, заключение которого предусмотрено законом или передача разногласий по которому на разрешение арбитражного суда согласована сторонами;

об изменении условий или о расторжении договоров;

о неисполнении или ненадлежащем исполнении обязательств;

о признании права собственности;

об истребовании собственником или иным законным владельцем имущества из чужого незаконного владения;

о нарушении прав собственника или иного законного владельца, не связанном с лишением владения;

о возмещении убытков;

о признании недействительными (полностью или частично) ненормативных актов государственных органов, органов местного самоуправления и иных органов, не соответствующих законам и иным нормативным правовым актам и нарушающих права и законные интересы организаций и граждан;

о защите чести, достоинства и деловой репутации;

о признании не подлежащим исполнению исполнительного или иного документа, по которому взыскание производится в бесспорном (безакцептном) порядке;

об обжаловании отказа в государственной регистрации либо уклонения от государственной регистрации в установленный срок организации или гражданина и в других случаях, когда такая регистрация предусмотрена законом;

о взыскании с организаций и граждан штрафов государственными органами, органами местного самоуправления и иными органами, осуществляющими контрольные функции, если федеральным законом не предусмотрен бесспорный (безакцептный) порядок их взыскания;

о возврате из бюджета денежных средств, списанных органами, осуществляющими контрольные функции, в бесспорном (безакцептном) порядке с нарушением требований закона или иного нормативного правового акта.

3. Арбитражный суд рассматривает иные дела, в том числе:

об установлении фактов, имеющих значение для возникновения, изменения или прекращения прав организаций и граждан в сфере предпринимательской и иной экономической деятельности (далее - об установлении фактов, имеющих юридическое значение);

о несостоятельности (банкротстве) организаций и граждан.

4. В случаях, установленных настоящим Кодексом и другими федеральными законами, арбитражному суду подведомственны дела по экономическим спорам и иные дела с участием образований, не являющихся юридическими лицами (далее - организации), и граждан, не имеющих статуса индивидуального предпринимателя.

5. Федеральным законом могут быть отнесены к подведомственности арбитражного суда и другие дела.

6. Арбитражный суд рассматривает подведомственные ему дела с участием организаций и граждан Российской Федерации, а также иностранных организаций, организаций с иностранными инвестициями, международных организаций, иностранных граждан, лиц без гражданства, осуществляющих предпринимательскую деятельность, если иное не предусмотрено международным договором Российской Федерации.

**Federal Constitutional Law of April 28, 1995,  #1-ФКЗ**
**"On arbitrazh courts in the Russian Federation"**

**Adopted by the State Duma April 5, 1995**
**Approved by the Federation Council on April 12, 1995**

**Article 6.** Major principles of activity of arbitrazh courts in the Russian Federation

Activity of arbitrazh courts in the Russian Federation based on principles of lawfulness, independence of judges, equality of organizations and individuals before the law and court, equal adversarialness and equality of rights of the parties, openness of consideration of a case.

**Федеральный конституционный закон от 28 апреля 1995 г. N 1-ФКЗ**
**"Об арбитражных судах в Российской Федерации"**

**Принят Государственной Думой 5 апреля 1995 года**
**Одобрен Советом Федерации 12 апреля 1995 года**

**Статья 6.** Основные принципы деятельности арбитражных судов в Российской Федерации

Деятельность арбитражных судов в Российской Федерации строится на основе принципов законности, независимости судей, равенства организаций и граждан перед законом и судом, состязательности и равноправия сторон, гласности разбирательства дел

ARBITRATION PROCEDURAL CODE
OF THE RUSSIAN FEDERATION
NO. 70-FZ OF MAY 5, 1995

Adopted by the State Duma April 5, 1995

Article 11. The Normative Legal Acts, Applied in Resolving the Disputes

1. The arbitration court shall resolve the disputes on the basis of the <u>Constitution</u> of the Russian Federation, of the Federal Laws, of the normative Decrees of the President of the Russian Federation and of the Decisions of the Government of the Russian Federation, of the legal normative acts of the federal executive power bodies, of the legal normative acts of the subjects of the Russian Federation and of the international agreements of the Russian Federation.

2. If the arbitration court establishes, while examining the case, that the act of the state body, of the local self-government body or of the other body does not correspond to the law, including that it was issued with exceeding the scope of jurisdiction, it shall adopt the decision in conformity with the law.

3. If an international agreement of the Russian Federation lays down the rules, differing from those stipulated by the law, the rules of the international agreement shall be applied.

4. In the absence of the legal norms regulating the disputable relationship, the arbitration court shall apply the legal norms, regulating similar relationships, and in the absence of such legal norms as well, it shall resolve the dispute, proceeding from the general principles and from the meaning of the laws.

5. The arbitration court shall apply the legal norms of the other states in conformity with the law or with the international agreement of the Russian Federation.

**Арбитражный процессуальный кодекс Российской Федерации
от 5 мая 1995 г. N 70-ФЗ**

**Принят Государственной Думой 5 апреля 1995 года**

**Статья 11.** Нормативные правовые акты, применяемые при разрешении споров

1. Арбитражный суд разрешает споры на основании Конституции Российской Федерации, федеральных законов, нормативных указов Президента Российской Федерации и постановлений Правительства Российской Федерации, нормативных правовых актов федеральных органов исполнительной власти, нормативных правовых актов субъектов Российской Федерации и международных договоров Российской Федерации.

2. Арбитражный суд, установив при рассмотрении дела несоответствие акта государственного органа, органа местного самоуправления, иного органа закону, в том числе издание его с превышением полномочий, принимает решение в соответствии с законом.

3. Если международным договором Российской Федерации установлены иные правила, чем предусмотренные законом, то применяются правила международного договора.

4. В случае отсутствия норм права, регулирующих спорное отношение, арбитражный суд применяет нормы права, регулирующие сходные отношения, а при отсутствии таких норм разрешает спор, исходя из общих начал и смысла законов.

5. Арбитражный суд в соответствии с законом или международным договором Российской Федерации применяет нормы права других государств.