# DECISION

On February 19, 2001, the Solntsevo Inter-municipal (district) Court of the Western District of Moscow, present:

| | |
|---|---|
| Chief Judge | A. D. Proniaken |
| Secretary | A. N. Starodubova |

Has examined in the course of the hearing the motion of Foston Management Limited to restore the proceedings with the missing docket in the civil action # 2-2747/2000, where there was a court hearing and where Solntsevo inter-municipal court of the city of Moscow issued a decision dated September 29, 2000:

Determined:

On September 29, 2000, Solntsevo inter-municipal (district) court of the city of Moscow, federal judge N. V. Illyin presiding, held a hearing on the civil action in replevin # 2-2747/2000 upon the complaint of OOO Inrosmet, OJSC Nizhnetagilsk Metallurgical Plant, CJSC Standard Trust against Evgenii Nikolayevich Ivanov, Amber Trust LLC, Nexis Products LLC, Davis International, CJSC Registering Company Panorama, Omni-Trusthouse Limited, Holdex, LLC, Foston Management Limited. In the course of the hearing, the court issued a decision dated September 29, 2000, which required to return 1,245,677 personal shares of Kachkanarskii GOK of the second issue (state registration number of the emission 62-I-1396) from the accounts of OJSC Foston Management Limited to the accounts of OOO Inrostmet; 103,626 shares of the second issuance (state registration number of the emission 62-III-290) and 18,747,610 shares of the second issuance (state registration number of the emission 62-I-1396) to the account of OJSC Nizhnetagilsky Metallurgical Plant; 17,618,254 shares of the second issue (state registration number 62-I-1396) to the account of CJSC Standard Trust.

Foston Management Limited, which was one of the defendants in the above action, on January 26, 2001 filed a motion with the Solntsevo inter-municipal district court of Moscow to restore the missing docket # 2-2747/2000.

The representative of Foston Management Limited, G. V. Polianevich, supported the motion of the company and requested that the court restore the missing docket # 2-2747/2000.

The representative of OJSC Nizhnetagilsky Metallurgical Plant N. S. Brusova presented to the court a copy of the decision of the district court dated September 29, 2000 in the civil action # 2-2747/2000, was against the restoration of the missing docket # 2-2747/2000 and argued that the court's decision in that case entered into force and has been carried out, therefore, if the missing docket is restored, the rights and legal interests of OJSC Nizhnetagilsky Metallurgical Plant will be infringed. Additionally, per N. S. Brusova, copies of all of the main documents in the docket have not been collected.

Having reviewed the motion to restore the missing docket # 2-2747/2000, the court holds that the motion should be granted for the following reasons.

In the course of the consideration of the motion, it has been determined that, according to the copy of the docket sheet for the docket # 2-2747/2000, the case was

registered at the Solntsevo inter-municipal district court of the Western Administrative District of the City of Moscow upon complaint dated July 31, 2000, and assigned to Judge N. V. Illyin. According to the letter from the district court dated November 28, 2000 (ref. no. 1157), signed by the deputy chairman of the court, federal judge N. V. Illyin, it was delivered by courier N. I. Kurkin, ID # 305, to the Supreme Court of the Russian Federation. At the same time, as seen from the letter dated January 24, 2001 (OPG # Gr.01.276 for # 8 dated January 15, 2001), the Supreme Court of the Russian Federation never sent a request to produce the civil case # 2-2747/2000 for review in the course of supervision, and the case # 2-2747/2000 was not delivered from the Solntsevo inter-municipal district court of Moscow to the Supreme Court of the Russian Federation. Under these circumstances, it is necessary to state that the docket in the civil case # 2-2747/2000 in the Solntsevo inter-municipal district court of the Western Administrative District of Moscow was lost in the end of November, 2000. Meanwhile, said civil case upon complaint filed July 7, 2000, was reviewed in an open hearing on September 29, 2000, and a court decision was issued. The decision in this case, dated October 18, 2000, was received at the Federal Securities Commission which, based on the decision of the district court, wrote off the shares from the account of Foston Management Limited and recorded those shares on the accounts of OOO Inrosmet, OJSC Standard-Trust, OJSC Nizhnetagilsky Metallurgical Plant.

The above circumstances have been determined on the basis of the following evidence.

Witness I. A. Pravelieva testified that on September 29, 2000, the case # 2-2747/2000 was reviewed in the court hearing, and she, as the secretary, took the minutes of the proceedings. The court hearing was attended by the representatives of the parties, one for plaintiff and one for defendant, Pravelina could not recall the names. On October 12, 2000, Pravelina, per instructions of Judge N. V. Illyin, drafted the decision in the case, and indicated that it entered into force. Copies of the decision were not mailed to plaintiffs and defendants, but were handed out to them personally. Pravelina further explained that she did not know where the docket in the case # 2-2747/2000 could be sent since she was not working on transferring the docket.

The representative of Nizhnetagilsky Metallurgical Plant N. S. Brusova explained that the legal department of the plant had a copy of the decision of the Moscow district court dated September 29, 2000, which was delivered by the Solntsevo Inter-municipal District Court of the City of Moscow with the participation of Grigorieva, a representative of Nizhnetagilsky Metallurgical Plant, the latter one being ready to present to the Court a copy of the complaint in that case.

Witness Kalinin testified that he, upon instructions of the Solntsevo district court of Moscow, on February 14, 2001 delivered to the legal department of Nizhnetagilsky Metallurgical Plant the request # 170 dated February 9, 2001, demanding to present to the district court a copy of the complaint and other documents through Kalinin, which request was denied.

Witness Znamensky testified in court that on February 16, 2001 he, as the representative of OJSC Kachkanarskii GOK Vanadii, upon his own initiative, gave a ride in his car to Grigorieva to the Solntsevo district court of Moscow. Znamensky learned from Grigorieva that she was to deliver some documents to the court, but did not do so

because she left those documents at CJSC Standard-Trust (36 Malysheva, office 701, Ekaterinburg).

Thus, having examined the presented evidence in its entirety, the Court concluded that Solntsevo district court of Moscow held proceedings in the civil action # 2-2747/2000, in which it issued a decision on September 29, 2000. In the end of November, 2000, the docket in the above case was lost.

Copies of court decisions in the civil action # 2-2747/2000 dated September 29, 2000, which were submitted to the court by the representatives of OJSC Nizhnetagilsky Metallurgical Plant and Foston Management Limited are determined to be authentic, since the texts of these decisions correspond both by the form and by the contents, therefore, can be restored. Under these circumstances, the motion filed by the representative of OJSC Nizhnetagilsky Metallurgical Plant N. S. Brusilova to not restore the missing docket in the case # 2-2747/2000 is denied.

Deciding to restore the missing docket in the civil action # 2-2747/2000, the Court believes that the foundation of the restored docket are the copies of the court decisions issued by the Solntsevo Inter-municipal Court of the City of Moscow dated September 29, 2000, which the Court declared to be authentic.

Pursuant to sections 223-224 of the Civil Procedure Code of the Russian Soviet Socialist Federal Republic and Appendix 2 to the Civil Procedure Code of the Russian Soviet Socialist Federal Republic, the Court

DETERMINED:

To partially restore the missing docket in the case # 2-2747/2000, to recognize as the foundation of the restored docket a copy of the decision in the above case dated September 29, 2000, which ordered:
-       to return 1,245,677 personal shares of Kachkanarskii GOK of the second issue (state registration number of the emission 62-I-1396) from the accounts of OJSC Foston Management Limited to the accounts of OOO Inrostmet; 103,626 shares of the second issuance (state registration number of the emission 62-III-290) and 18,747,610 shares of the second issuance (state registration number of the emission 62-I-1396) to the account of OJSC Nizhnetagilsky Metallurgical Plant; 17,618,254 shares of the second issue (state registration number 62-I-1396) to the account of CJSC Standard Trust.
-       to order CJSC Registering Company Panorama, the holder of the register of shares of OJSC Kachkanarskii GOK Vanadii, and Vedenie Reestrov Kompanii, to make corresponding changes in the register of shareholders.

To include in the docket the copies of documents indicated in the decision of the court, as well as copies of the decision of the Solntsevo inter-municipal district court of Moscow dated September 29, 2000.

The copy is authentic.

Chief judge: signature

Chief Judge
Secretary
Seal

О П Р Е Д Е Л Е Н И Е

19 февраля 2001 года Солнцевский межмуниципальный (районный) суд ЗАО г.Москвы, в составе:

председательствующего судьи  Провиниа А.Д.
при секретаре  Стародубовой А.Н.

рассмотрел в открытом судебном заседании ходатайство компании "Ростон Менеджмент Лимитед" о восстановлении утраченного судебного производства по гражданскому делу № 2-2747/2000, которое было рассмотрено в суде и по нему было вынесено судебное решение Солнцевским межмуниципальным районным судом г.Москвы 29 сентября 2000 года:

У С Т А Н О В И Л :

29 сентября 2000 года Солнцевским межмуниципальным (районным) судом г.Москвы под председательством федерального судьи Шишкина Н.В. было рассмотрено гражданское дело № 2-2747/2000 по иску ООО "Инрослет", ОАО "Нижнетагильский металлургический комбинат", ЗАО "Стандарт Траст" к Иванову Евгению Николаевичу, компании "Либер Стар Эл.Эл.Эл.", "Норекс Продекс Эл.Эл.Эл.", "Девис Интернешнл", ОАО "Компания-регистратор "Панорама", "ОМ.-Трастхауз Лимитед", "Колдвес Эл.Эл.Си", "Ростон Менеджмент Лимитед" об истребовании имущества из чужого незаконного владения, и, в результате рассмотрения этого дела было вынесено решение от 29 сентября 2000 года, согласно которому истребованы именные обыкновенные акции ОАО "Качканарский горно-обогатительный комбинат "Ванадий" с лицевых счетов компании "Ростон Менеджмент Лимитед" с зачислением этих акций на лицевой счет ООО "Инрослет" 1 245 577 акций II выпуска (№ гос.регистрации выпуска 62-1-1396), на лицевой счет ОАО "Нижнетагильский металлургический комбинат" 103 625 акций II выпуска (№ гос.регистрации выпуска 62-1н-250) и 18747610 акций II выпуска (№ гос.регистрации выпуска 62-1-1396); на лицевой счет ЗАО "Стандарт Траст" 17 618 254 акций II выпуска (№ гос.регистрации 62-1-1396).

В Солнцевский межмуниципальный районный суд г.Москвы 26.01.2001 года поступило ходатайство из компании "Ростон Менеджмент Лимитед", которая являлась одним из ответчиков по названному гражданскому делу, из содержания которого усматривается просьба о восстановлении утраченного производства по гражданскому делу № 2-2747/2000.

Представитель компании "Ростон Менеджмент Лимитед" Поляничев Г.В. поддержал ходатайство компании и просил суд восстановить утраченное производство по гражданскому делу № 2-2747/2000г.

Представитель ОАО "Нижнетагильский металлургический комбинат" Внукова Н.С., представив в суде копии решения районного суда от 29.09.2000 г. по гражданскому делу № 2-2747/2000, возражала против восстановления утраченного судебного производства по делу № 2-2747/2000, обосновав свои возражения тем, что судебное решение по названному делу вступило в законную силу и уже исполнено, а поэтому в случае восстановления утраченного производства существенным образом будут нарушены права и законные интересы ОАО "Нижнетагильского металлургического комбината". Кроме того, по мнению Внуковой Н.С. по утраченному производству не собраны копии всех основных документов.

Рассмотрев ходатайство о восстановлении утраченного производства по гражданскому делу № 2-2747/2000, суд пришел к выводу, что ходатайство подлежит удовлетворению в силу следующих обстоятельств.

- 2 -

При рассмотрении ходатайства установлено, что согласно копии учетно-статистической карточки по гражданскому делу № 2-2747/2000 г., такое дело было зарегистрировано в Солнцевском межмуниципальном районном суде ЗАО г.Москвы на основании заявления от 31.07.2000 г. и передано на рассмотрение судье Ильину Н.В. Согласно письма на подписи заместителя председателя суда — федерального судьи Ильина Н.В. было передано через народного Хуркина И.И., в Верховный Суд РФ. В тоже время, как это видно из письма от 24 января 2001 года (ОНГ № Гр.01-276 на № 9 от 15.01.2001 г.) из Верховного Суда Российской Федерации каких-либо запросов об истребовании из районного суда гражданского дела № 2-2747/2000 для проверки названного дела в порядке надзора не направлялось и из Солнцевского межмуниципального районного суда ЗАО г.Москвы дело за № 2-2747/2000 в Верховный Суд РФ не поступало. При таких данных следует утверждать, что производство по гражданскому делу № 2-2747/2000 в Солнцевском районном суде г.Москвы в конце ноября 2000 года утрачено. Между тем указанное гражданское дело по исковому заявлению от 31.07.2000 г. было рассмотрено в открытом судебном заседании 29 сентября 2000 года и по нему было постановлено судебное решение. Решение по этому делу 18 октября 2000 года поступило в Федеральную комиссию по рынку ценных бумаг, а названное федеральное ведомство на основании решения районного суда списало с лицевого счета компании "Востон Менеджмент Лимитед" акции и зачислило акции компании на лицевые счета ООО "Евросмет", ЗАО "Стандарт-Траст", ОАО "Нижнетагильский металлургический комбинат".

Приведенные обстоятельства в суде установлены следующими доказательствами.

Свидетель Правельева И.А. показала, что 29 сентября 2000 года дело № 2-2747/2000 в судебном заседании рассматривалось и по этому делу она, как секретарь оформила протокол. В судебном заседании присутствовали представители сторон, по одному от истцов и ответчиков, кто конкретно она, Правельева, не помнит. 12 октября 2000 года она, Правельева, по указанию судьи Ильина Н.В. оформила судебное решение по делу, указав при этом, что оно вступило в законную силу. Копии решения по делу истцам и ответчикам по почте не рассылались, а были выданы сторонам на руки. Далее Правельева пояснила, что она не знает куда могло быть направлено гражданское дело № 2-2747/2000, так как отправлением этого дела не занималась.

Представитель "Нижнетагильского металлургического комбината" Бругова Н.С. пояснила, что в юридической службе комбината имелось решение районного суда г.Москвы от 29 сентября 2000 года, которое было постановлено Солнцевским межмуниципальным районным судом г.Москвы с участием представителя "Нижнетагильского металлургического комбината" Григорьевой, последняя готова представить в суд копию искового заявления по данному делу.

Свидетель Калинин показал, что он по поручению Солнцевского районного суда г.Москвы 14 февраля 2001 года передал в юридическую службу "Нижнетагильского металлургического комбината" запрос № 179 от 9.02.2001 г. о представлении в районный суд копии искового заявления и других документов, через его, Калинина, но ему в этом было отказано.

Свидетель Знаменский в суде показал, что 16 февраля 2001 года он, как представитель ОАО "Качканарский ГОК "Ванадий" по собственной инициативе на личном автомобиле доставлял Григорьеву в Солнцевский районный суд г.Москвы. Со слов Григорьевой ему, Знаменскому, стало известно, что Григорьева должна была передать в суд какие-то документы, но их не передала из-за того, что документы ей, Григорьевой, оставлены по месту нахождения ЗАО "Стандарт-Траст" (г.Нижне-

- 3 -

ренбург, ул. Молнтева д.36 офис 701).

Таким образом, оценивая приведенные доказательства в их совокупности, суд приходит к выводу, что в производстве Солнцевского районного суда г.Москвы находилось гражданское дело № 2-2747/2000, по которому 29 сентября 2000 года было постановлено судебное решение, во в конце ноября 2000 года судебное производство по указанному гражданскому делу было утрачено.

Копии судебных решений по гражданскому делу № 2-2747/2000 от 29 сентября 2000 года, которые были представлены в суд представителями как ОАО "Нижнетагильским металлургическим комбинатом", так и представителем "Фостон Менеджмент Лимитед", следует признать достоверными, поскольку тексты этих копий как по форме, так и по содержанию совпадают друг с другом, а поэтому могут быть восстановлены. При таких обстоятельствах, просьба представителя ОАО "Нижнетагильского металлургического комбината" Брусовой Н.С. за восстановить утраченное судебное производство по делу № 2-2747/2000 оставлена без удовлетворения.

Принимая решение о восстановлении утраченного судебного производства по гражданскому делу № 2-2747/2000, суд считает, что основой восстановленного судебного производства по указанному делу служат копии судебных решений, постановленных Солнцевским межмуниципальным судом г.Москвы 29 сентября 2000 года, которые признаны судом достоверными.

Руководствуясь ст.ст. 223-224 ГПК РСФСР и приложением № 2 к ГПК РСФСР, суд

О П Р Е Д Е Л И Л :

Частично восстановить утраченное судебное производство по гражданскому делу № 2-2747/2000, основой которого признать копии части которого указано:

— истребовать именные обыкновенные акции ОАО "Качканарский горно-обогатительного комбината "Ванадий" с лицевых счетов компании "Фостон Менеджмент Лимитед", с зачислением на лицевой счет ООО "Инвросмет", 1.245 677 акций I выпуска (№ гос.регистрации выпуска 62-1-1396); на лицевой счет ОАО "Нижнетагильский металлургический комбинат" 103.628 акций II выпуска (№ гос.регистрации выпуска 62-III-250) и 18 747 615 акций I выпуска (№ гос.регистрации выпуска 62-I-1396); на лицевой счет ЗАО "Стандарт Траст" 17 618 254 акций II выпуска (№ гос.регистрации 62-I-1396).

— Обязать регистродержателя ОАО "Качканарский горно-обогатительный комбинат "Ванадий", ЗАО "Компания-регистратор "Панорама" и ЛОСТ "Ведение реестров компаний" произвести соответствующее изменения в реестре владельцев ценных бумаг.

К делу приобщить копии документов указанных в определении суда, а также копии судебного решения Солнцевского межмуниципального районного суда г.Москвы от 29 сентября 2000 года.

Копия верна.

Председательствующий: подпись

Председатель:

Секретарь:

## CHELYABINSK REGION ARBITRATION COURT

## RULING IN THE NAME OF THE RUSSIAN FEDERATION

August 1, 2000                                        City of Chelyabinsk
                                                      Case No. A76-4037/2000-5-105

     At its open session the Chelyabinsk Region Arbitration Court comprising L. I. Zubkova, Presiding Judge, and V. I. Zaitseva and V. V. Khudyakova, Judges, has considered a suit filed by LLC NPRO "Ural." Ozyorsk, against the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation, CJSC "Finansovaya kompaniya "Vadis." Chelyabinsk, CJSC FC "Profit-House." Moscow, CJSC "Kompaniya-registrator "Panorama." Moscow, and CJSC "Mikchel-Invest." Chelyabinsk, for taking appropriate action based on the finding of invalidity of a void contract, for recognizing the Plaintiff's right of ownership in the contested shares, and for ordering the restoration of the original data in the inscribed security holders' register with participation of the Plaintiff's representatives—A. M. Shakhmatov (permanent proxy No. 19 of October 4, 1999), V. A. Plotnikov (permanent proxy of June 26, 2000) and O. A. Bayanikova (permanent proxy No. 18 of May 29, 2000)—and the Respondents' representatives—A. V. Studennikov (permanent proxy No. 10/23 of January 6, 2000), D. Ye. Zaugarov (proxy No. 195/ю of May 29, 2000) (p. 36, vol. 2) and Ye. N. Bazuyeva (proxy No. 195/ю of May 29, 2000) (p. 36, vol. 2), representatives of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation, and K. O. Nitsiyevskiy (permanent proxy No. 11 of June 26, 2000) and A. V. Yemelyanova (permanent proxy No. 14 of July 26, 2000), representatives of CJSC "Mikchel-Invest."

     LLC NPRO "Ural" filed a suit against the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation, CJSC "Finansovaya kompaniya "Vadis." CJSC "Finansovaya kompaniya "Profit-House" and CJSC "Kompaniya-registrator "Panorama" for taking appropriate action based on the finding of invalidity of a void contract, for recognizing the Plaintiff's right of ownership in the contested shares, and for ordering the restoration of the original data in the register keeping system.

     In its May 10, 2000 ruling (p. 91, vol. 1) the Arbitration Court named CJSC "Mikchel-Invest" as a Respondent in the case.

     At the court session held on May 30, 2000 (p. 97, vol. 1) the Plaintiff amended its claims, requesting the Arbitration Court to void the results of the auction of the nondocumentary shares issued by OJSC "Kachkanarskiy GOK "Vanadium." invalidate contract No. 21 of September 18, 1998, invalidate the contract for sale of the nondocumentary shares issued by OJSC "Ashinskiy metallurgicheskiy zavod" and owned by the Plaintiff, invalidate transfer orders with inc. Nos. 648 and 649 and transfer order No. 135, recognize the Plaintiff's right of ownership in the above shares and order the

restoration of the entry on the Plaintiff's ownership in the above shares in its personal account existing in the system for keeping the securities holders' register.

In its June 27, 2000 ruling the Arbitration Court named Amber Star LLC , CJSC "Yuzhno-uralskaya registratsionnaya palata" and LLC "Gidromashservis" as Respondents in the case.

Although CJSC "Finansovaya kompaniya "Vadis." CJSC FC "Profit-House." CJSC "Kompaniya-registrator "Panorama" and CJSC "Yuzhno-uralskaya registratsionnaya palata" were duly notified of the date and the venue of proceedings their representatives did not appear (pp. 11, 13, 14 and 16, vol. 3).

Representatives of Amber Star LLC and LLC "Gidromashservis" did not appear either, but there is no evidence that these companies were duly notified of the time and the venue of proceedings.

At the court session held on July 31, 2000 the Plaintiff amended its claims, requesting the Arbitration Court to invalidate transfer orders with inc. Nos. 648 and 649 and transfer order No. 135 and, consequently, order the restoration of the entry on its ownership in the shares issued by OJSC "Kachkanarskiy GOK "Vanadium" and OJSC "Ashinskiy metallurgicheskiy zavod" in its personal account, as well_as to void the results of the auction of the nondocumentary shares issued by OJSC "Kachkanarskiy GOK "Vanadium."

In light of the Plaintiff's claims and in virtue of Article 34.3 of the Code of Arbitration Procedure of the Russian Federation, Amber Star LLC and LLC "Gidromashservis" are not Respondents in the case in point; besides, the extracts from the personal accounts of these legal entities show that at present they do not hold any of the contested shares.

Under the circumstances, the Arbitration Court deems it possible to consider the case in the absence of representatives of Amber Star LLC and LLC "Gidromashservis."

The Plaintiff has fully supported its claims. In its opinion, its nondocumentary shares issued by OJSC "Kachkanarskiy GOK "Vanadium" and its nondocumentary shares issued by OJSC "Ashinskiy metallurgicheskiy zavod" were seized, arrested and sold by the Ozyorsk Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation without proper legal grounds since the decisions of the Ozyorsk Department of the State Tax Inspectorate, based on which the orders of recovery against property were issued and the above shares were seized, arrested and sold, were invalidated by the March 3, 2000 ruling which was issued by the Chelyabinsk Region Arbitration Court in case No. A76-2946/98-45-32/286/27 and became effective; invalidated were also the orders of recovery against property and the order of arrest (by the December 12, 1998 ruling which was issued by the Chelyabinsk Region Arbitration Court in case No. A76-6467/98-40y-235 and became effective). Besides, the Plaintiff believes that the transfer orders which served as the grounds for making entries in the system for keeping the register of holders of nondocumentary shares were signed by individuals who were not duly authorized to sign such orders and, therefore, should not have been executed by CJSC "Kompaniya-registrator "Panorama." In the Plaintiff's view, the results of the auction of the shares issued by OJSC "Kachkanarskiy GOK "Vanadium" are void since in reality only one entity—CJSC "Finansovaya kompaniya "Profit-House"—took part in the auction; therefore, the contract of sale of the above

shares, which was concluded by CJSC "Mikchel-Invest" and CJSC "Finansovaya kompaniya "Profit-House" on the basis of the auction results, is void, too. The Plaintiff believes that its right of ownership, which was infringed by the wrongful acts consisting in the alienation of the Plaintiff's shares should be protected by restoring the entries on the Plaintiff's ownership in the above shares in the system for keeping the register of holders of nondocumentary securities.

The Respondents have not acknowledged the claims.

The Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation has contested the claims, stating that the shares owned by the Plaintiff were lawfully arrested, which was confirmed by the December 7, 1998 ruling which was issued by the Chelyabinsk Region Arbitration court in case No. A76-6467/98-40y-235 – the suit filed by LLC NPRO "Ural" for invalidating the April 16, 1998 order No. 4 and the August 7, 1998 order No. 19 of the Ozyorsk Department of the State Tax Inspectorate and invalidating the April 20, 1998 order No. 20 and the August 10, 1998 order of the Manager of the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service—and which became effective. The above ruling invalidated those items of the August 7, 1998 order No. 19 of the Ozyorsk Department of the State Tax Inspectorate and the August 10, 1998 order of the Manager of the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service, that prescribed recovery against, and arrest of, the Plaintiff's property worth 6,855,762 rbl.; the other claims put forward by the Plaintiff were dismissed. In the Respondent's opinion, transfer orders with inc. Nos. 649 and 648 and transfer order No. 135 were signed by the Deputy Manager of the Chelyabinsk Region Department of the Federal Tax Police Service within the authority conferred on the tax police bodies by Article 132.1 of the Russian Federation Law "On Federal Tax Police Bodies." The Respondent believes that the Plaintiff's claims should not be satisfied for the reason that the Plaintiff was paid the proceeds of sale of the arrested shares in accordance with the order of the Ozyorsk Department of the State Tax Inspectorate and the order of the Manager of the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation, which were invalidated by the Chelyabinsk Region Arbitration Court.

CJSC "Mikchel-Invest" contested the claims, stating that its acts consisting in organizing and conducting the auction of the shares issued by OJSC "Kachkanarskiy GOK "Vanadium." concluding the contract of sale of the above shares with CJSC "Finansovaya kompaniya "Profit-House." and concluding the contract of sale of the shares issued by OJSC "Ashinskiy metallurgicheskiy zavod" with CJSC "Finansovaya kompaniya "Vadis" were lawful. Besides, in the Respondent's opinion, under the current laws only the auctioning of real state is mandatory.

CJSC "FK "Profit-House" (Response to the Statement of Claims, pp. 119 and 120, vol. 1) and CJSC "FK "Vadis" (Response to the Statement of Claims, pp. 1 and 2, vol. 2) contested the claims, indicating that they were bona fide acquirers of the shares which, in the Respondents' opinion, could be reclaimed by the Plaintiff only by way of vindication.

CJSC "Kompaniya-registrator "Panorama" (Response to the Statement of Claims, pp. 83 and 84, vol. 2) contested the claims, indicating that its acts consisting in registering the transfer of the rights of ownership in the contested shares were performed

in accordance with the Rules approved by October 2, 1997 Resolution No. 27 of the Federal Securities Market Commission and on the basis of the duly drawn-up transfer orders.

Upon hearing the Parties' arguments and examining the case materials, the present Court has established the following:

LLC NPRO "Ural" owned 30,831 first-issue nondocumentary ordinary shares of OJSC "Kachkanarskiy GOK "Vanadium" (state registration code 62-1п-290), 10,552,232 second –issue nondocumentary ordinary shares of OJSC "Kachkanarskiy GOK "Vanadium" (state registration code 62-1-1396) (p. 57, vol. 1) and 1,675,551 ordinary nondocumentary shares of OJSC "Ashinskiy metallurgicheskiy zavod" (state registration code 69-1-609) (pp. 11 and 12).

The registrar keeping the register of the inscribed securities issued by OJSC "Kachkanarskiy GOK "Vanadium" was CJSC "Kompaniya-registrator "Panorama."

The registrar keeping the register of the inscribed securities issued by OJSC "Ashinskiy metallurgicheskiy zavod" was CJSC "Yuzhno-uralskaya registratsionnaya palata" (p. 11, vol. 2); at present, the register of such securities is kept by CJSC "Kompaniya-registrator "Panorama."

On June 24, 1998 the registrar acting in accordance with the transfer order with inc. No. 175 (2/3/782), which was signed by the Deputy Manager of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation (p. 51, vol. 1) made an entry on the transfer of the rights of ownership in the 1,675,551 nondocumentary ordinary shares of OJSC "Ashinskiy metallurgicheskiy zavod" from LLC NPRO "Ural" to CJSC "Finansovaya kompaniya "Vadis" (p. 11, vol. 2).

Indicated as the grounds for making this entry were the May 5, 1998 contract of sale No. 0505-01-010 concluded by CJSC "Mikchel-Invest" (the Seller) and CJSC "FK "Vadis" (the Buyer), February 14, 1996 Decree No. 199 of the President of the Russian Federation, Taxpayer's Property Seizure and Administrative Arrest Report of March 27, 1998, and April 3, 1998 Agreement No. 77.

On March 7, 1998 the 1,675,551 shares issued by OJSC "Ashinskiy metallurgicheskiy zavod" were seized and arrested by the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation (pp. 44 and 45, vol. 1) in accordance with the March 18, 1998 order No. 4 of the Ozyorsk Department of the State Tax Inspectorate and the March 25, 1998 order of the Manager of the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation (p. 43, vol. 1). The shares were frozen by the registrar on March 26, 1998.

On April 17, 1998 the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation reported that due to the fact that the Ozyorsk Department of the State Tax Inspectorate recalled its March 18, 1998 order No. 4 the March 25, 1998 arrest order was revoked and the property arrested on March 27, 1998 was released from arrest (p. 47, vol. 1). The shares were unfrozen by the registrar on April 23, 1998.

On April 28, 1998 the 3,760,880 shares issued by OJSC "Ashinskiy metallurgicheskiy zavod" were seized and arrested by the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian

Federation (pp. 49 and 50, vol. 1) in accordance with April 16, 1998 order No. 4 of the Ozyorsk Department of the State Tax Inspectorate (p. 39, vol. 2) and April 20, 1998 order No. 20 of the Manager of the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation (p. 48, vol. 1). The shares were frozen by the registrar on April 23, 1998.

On May 13, 1998 the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation and CJSC "Mikchel-Invest" concluded agreement No. 105 (pp. 101-105, vol. 1), under which CJSC "Mikchel-Invest" undertook to sell the arrested shares on commission.

On May 5, 1998 CJSC "Mikchel-Invest" and CJSC "Finansovaya kompaniya "Vadis" concluded contract No. 0505-01-010 for sale of securities (pp. 114-116, vol. 2).

At present, CJSC "Finansovaya kompaniya "Vadis" is neither the actual holder nor the nominee holder of the above shares.

When the June 24, 1998 transfer order No. 135 was submitted the shares covered by this order were released from arrest effected on March 27, 1998 (June 26, 1998 order with inc. No. 176, vol. 1) and actually discontinued on April 17, 1998, and the entry on the transfer of rights of ownership in the above shares to their new holder was actually made in respect to the shares that were under arrest effected on April 28, 1998. The entry on the unfreezing of the shares frozen on April 23, 1998 was made by the registrar on June 26, 1998 upon receipt of the June 26, 1998 order with inc. No. 176 without legal grounds since the order prescribes the release of the shares from arrest effected on March 27, 1998. Thus, with the register containing an entry on the freezing of the above shares the entry on the transfer of rights of ownership in these shares to their new holder was made by the registrar in violation of item 7.3 of the "Rules for Keeping Register of Inscribed Securities." Also, in violation of item 7.5 of the above Rules providing that the freezing and unfreezing operations must be effected on the basis of the documents issued by the authorized bodies the registrar made the entry on the unfreezing of the LLC NPRO "Ural" personal account in the absence of the necessary documents.

Based on transfer orders with inc. No. 649 (p. 59, vol. 1) and inc. No. 648 (p. 60, vol. 1) signed by V. Yu. Usinin, an official of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation, and a representative of CJSC "Mikchel-Invest." on September 24, 1998, the registrar made entries in the register on the transfer of rights of ownership in the 10,552,232 first-issue shares and the 30,831 second-issue shares of OJSC "Kachkanarskiy GOK "Vanadium" from LLC NPRO "Ural" to the nominee holder—CJSC "Depozitarno-kliringovaya kompaniya" (p. 63, vol. 1).

Indicated as documents confirming the powers of the above representative who signed the transfer orders are the February 14, 1996 Decree of the President of the Russian Federation, September 13, 1998 Taxpayer's Property Seizure and Arrest Report and September 9, 1998 Agreement No. 1. Actually, one of the grounds for issuing the transfer orders was the August 13, 1998 Taxpayer's Property Seizure and Arrest Report.

The LLC NPRO "Ural" property was seized and arrested by the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation on August 13, 1998 (pp. 55 and 56, vol. 2) in accordance with August 7, 1998 order No. 19 of the Ozyorsk Department of the State Tax Inspectorate (p. 40, vol. 2) and the August 10, 1998 order of the Manager of the

Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation (p. 54, vol. 1).

On September 9, 1998 the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation and CJSC "Mikchel-Invest" concluded contract No. 183 (pp. 132-135, vol. 2), under which CJSC "Mikchel-Invest" undertook to sell the arrested property on commission.

On September 11, 1998 the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation informed CJSC "Mikchel-Invest" that the decision was made to have the arrested shares sold by tender which was actually an auction not open to the general public since the invitations were sent only to definite organizations and the highest bidder was to be recognized as the winner, the minimum stated price of a block of shares being 16,932,900 rbl. (p. 138, vol. 2).

Recognized as the winner was CJSC "Finansovaya kompaniya "Profit-House" which in reality was the only auction participant since the bids made by the other bidders did not meet the announced terms of the auction because the bids were lower than the minimal starting price (on September 16, 1998 the US dollar – ruble exchange rate was 1: 9.6117); besides, the bids made in dollars were found invalid (September 16, 1998 minutes No. 1-T (p. 139, vol. 2).

Based on the results of the above auction, on September 18, 1998 CJSC "Mikchel-Invest" and CJSC "Finansovaya kompaniya "Profit-House" concluded contract No. 21 (pp. 143-145). CJSC "Finansovaya kompaniya "Profit-House" was and is neither the actual holder nor the nominee holder of the above shares since it bought these shares under the June 18, 1998 commission services contract No. KO-0097-98 concluded with Amber Star LLC (pp. 63-66, vol. 2).

On October 6, 1998 the Manager of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation issued order No. 20A (p. 62, vol. 1) revoking the August 10, 1998 order and releasing the shares from the administrative arrest effected on August 13, 1998.

The present Court has come to the conclusion that the Plaintiff's claims are legitimate and that the Respondents' arguments should be rejected for the following reasons:

The orders for recovery of taxes, fines and tax penalties against the taxpayer's property were issued by the Ozyorsk Department of the State Tax Inspectorate in accordance with the decisions made on the basis of the LLC NPRO "Ural" tax audit report of February 10, 1998 (pp. 10-17, vol. 1). The decisions made on the basis of the audit results were revoked and amended by the Ozyorsk Department of the State Tax Inspectorate [Translator's note. In the Russian original the preceding part of this sentence is mistakenly followed by the end of the previous sentence "in accordance with the decisions made on the basis of the LLC NPRO "Ural" tax audit report of February 10, 1998 (pp. 10-17, vol. 1).]" The decisions made on the basis of the audit results were revoked and amended by the Ozyorsk Department of the State Tax Inspectorate (pp. 19-21, vol. 1), and amendments and additions were made to the audit report, too (pp. 13, 14-17 and 22-24, vol. 1). The final decisions made on the basis of the above audit report – June 1, 1998 decision No. 11 (285) (p. 25, vol. 1) and June 1, 1998 decision No. 12 (286) (p. 26, vol. 1) as amended by July 31, 1998 decision No. 27 (p. 29, vol. 1) - were invalidated by the March 3, 2000 ruling of the Chelyabinsk Region Arbitration Court in

case No. A76-2946/98-45-32/33-286/27 (pp. 40 and 41) in respect of the recovery of 5,579,911 rbl. (taking into account the April 17, 2000 ruling of the Board of Appeals).

The December 7, 1998 ruling which was issued in case No. A76-6467/98-40y-235 by the Chelyabinsk Region Arbitration Court and which became effective invalidated those items of the August 7, 1998 order No. 19 of the Ozyorsk Department of the State Tax Inspectorate and the August 10, 1998 order of the Manager of the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation which concerned recovery against the taxpayer's property worth 6,855,762 rbl. (pp. 64-67).

Thus, the Plaintiff's property was seized and arrested by the Ozyorsk Interdistrict Division of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation in the absence of legal grounds for recovery against the taxpayer's property.

Under the above circumstances, the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation did not have the right of disposal of the Plaintiff's property.

In the absence of legal grounds for recovery against the taxpayer's property it should not have been sold either on commission or by any other method and all the transactions in the above shares are invalid (void).

Article 11.12 of the Federal Law "On Federal Tax Police Bodies" authorizes the tax police bodies to effect an administrative arrest with the subsequent sale of the arrested property in accordance with the prescribed procedure.

The circulation of securities is regulated by the Federal Law "On Securities Market." Articles 42.4 and 42.5 of which authorize the Federal Securities Market Commission (FSMC) to set mandatory requirements for transactions in securities and for keeping security registers.

Acting within its legal authority, on October 2, 1997 FSMC passed Resolution No. 27 approving the "Rules for Keeping Register of Holders of Inscribed Securities"; item 7.3 of these Rules requires that entries on the transfer of rights of ownership in securities be made by the registrar on the basis of a transfer order specifically submitted by a registered transferee or by its authorized representative. Item 10.2 of the above Rules requires that such orders be signed by a registered transferee or by the person acting on the transferee's behalf on the basis of a proxy drawn up in accordance with the current laws.

The concept "authorized representatives" is defined in item 2 stating that authorized representatives are government officials having the right to request a registrar to perform certain operations in the register.

The operations to be performed by a registrar are listed in section 7 which provides that authorized representatives of government bodies have the right to request a registrar to make entries on the freezing and the unfreezing of a personal account (item 7.5) in the register and to provide information contained in the register (item 7.9).

The Rules do not allow authorized government officials to sign transfer orders on behalf of registered persons.

Thus, transfer order No. 135 (2/3/782) and transfer orders Nos. 648 and 649 signed by the representatives of the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation and CJSC "Mikchel-Invest" do not meet the

requirements of the above Rules and were accepted by the registrar in violation of item 5 of these Rules.

By its legal nature a transfer order is a unilateral contract (Article 154.2 of the Civil Code of the Russian Federation); therefore, under authority of Article 156 of the Civil Code of the Russian Federation it is covered by the contract invalidity provisions stipulating that a void contract does not have any legal consequences other than that associated with its invalidity, i. e. other than the restoration of the initial positions of the parties (Articles 167.1 and 167.2 of the Civil Code of the Russian Federation).

The wrongful acts of one of the Respondents - the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation - infringed the Plaintiff's right of ownership in its shares; therefore, under Article 12 of the Civil Code of the Russian Federation the Plaintiff has the right to apply for the protection of its civil rights by the restoration of the position that existed before the infringement of its right of ownership.

Nondocumentary shares may not be reclaimed in accordance with Article 301 of the Civil Code of the Russian Federation since only nonfungible property may be the object of a recovery action; nondocumentary shares are fungible things characterized by the issuer's name, code of the state registration of the given issue, and the face value.

The decision does not violate the rights and the lawful interests of the persons that hold the contested shares at present since the entries on their rights of ownership in these shares were made in the register on the basis of void contracts. The above persons have the right to lodge individual claims for damages caused to them.

The argument of one of the Respondents - the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation – that the Plaintiff's claims should be dismissed for the reason that the cost of the sold shares was partially returned to the Plaintiff (pp. 123-126, vol. 2) cannot be accepted by the Court since the wrongful acts consisting in the arrest of the shares and their sale infringed the Plaintiff's right of ownership in its shares and the Plaintiff did not advance a claim for damages.

The state duty is to be charged to one of the Respondents - the Chelyabinsk Region Department of the Federal Tax Police Service of the Russian Federation – (Translator's note. The name of this body is typed in the Russian original twice.) which is exempt from payment of this duty by Articles 5.6 and 5.3 of the Federal Law "On State Duty" as a government body funded from the federal budget.

In view of Articles 95.1 and 124-127 of the Code of Arbitration Procedure of the Russian Federation the Arbitration Court rules:

To satisfy the Plaintiff's claims.
To invalidate the transfer orders:
- No. 135 (No. 2/3/782) of June 24, 1998;
- inc. No. 649 (unnumbered) of September 24, 1998;
- inc. No. 648 of September 24, 1998 (unnumbered);
To void the results of auctioning the 10,583,063 shares of OJSC "Kachkanarskiy GOK "Vanadium" on September 17, 1998.
To obligate the registrar – CJSC "Kompaniya-registrator "Panorama" to restore the data that existed as of September 24, 1998 in personal account No. 1569 of LLC

NPRO "Ural" in the register of the holders of the inscribed securities issued by OJSC "Kachkanarskiy GOK "Vanadium."

To obligate the registrar - CJSC "Kompaniya-registrator "Panorama"—to restore the data that existed as of June 26, 1996 in personal account No. 8642 of LLC NPRO "Ural" in the register of the holders of the inscribed securities issued by OJSC "Ashinskiy metallurgicheskiy zavod."

| | | |
|---|---|---|
| Presiding Judge: | *Signature* | L. I. Zubkova |
| Judges: | *Signature* | V. I. Zaitseva |
| | *Signature* | V. V. Khudyakova |



# Арбитражный суд Челябинской области
# Именем Российской Федерации
# Р Е Ш Е Н И Е

01 августа 2000г                                    г.Челябинск
                                    Дело № А76-4037/2000-5-105

Арбитражный суд Челябинской области в составе:
председательствующего судьи Л.И.Зубковой,
судей: В.И.Зайцевой, В.В.Худяковой,
рассмотрел в открытом судебном заседании дело по иску
ООО НПРО "Урал", г.Озерск,
к УФСНП РФ по Челябинской области, г.Челябинск, ЗАО "Финансовая компания
"Вадис", г.Челябинск, ЗАО "Финансовая компания "Профит-Хауз", г.Москва, ЗАО
"Компания-регистратор "Панорама", г.Москва, ЗАО "Микчел-Инвест",
г.Челябинск
при участии в заседании: представителей истца: А.М.Шахматова (постоянная
доверенность от 04.10.99г № 19), В.А.Плютникова (постоянная доверенность от
26.06.2000г), Ваниниковой О.А. (постоянная доверенность от 29.05.2000г № 18);
представителей ответчиков: УФСНП по Челябинской области: А.В.Студенникова
(постоянная доверенность от 06.01.2000г № 10/23), Д.Е.Заугарова (доверенность от
29.05.2000г № 195/ю (л.д. 36, т.2), Е.Н.Батуевой (доверенность от 29.05.2000г №
195/ю (л.д. 36, т.2); ЗАО "Микчел-Инвест": К.О.Нациевского (постоянная
доверенность от 26.06.2000г № 11), А.В.Емельяновой (постоянная доверенность от
26.07.2000г № 14).
о применении последствий недействительности ничтожных сделок, признании
права собственности на акции и восстановлении записей в реестре владельцев
именных ценных бумаг.

ООО "НПРО "Урал" обратилось с иском УФСНП РФ по Челябинской области,
ЗАО "Финансовая компания "Вадис", ЗАО "Финансовая компания "Профит-Хауз",
ЗАО "Компания-регистратор "Панорама", о применении последствий
недействительности ничтожных сделок, признании права собственности на акции
и восстановлении регистрации в системе ведения реестра.
Определением от 10.05.2000г (л.д. 97, т.1) к участию в деле в качестве
ответчика привлечено ЗАО "Микчел-Инвест".
В судебном заседании 30.05.2000г истцом заявлено об изменении исковых
требований: просит признать недействительными торги по продаже
принадлежавших истцу бездокументарных акций ОАО "Качканарский ГОК",
признать недействительным договор от 18.09.98г № 21, признать
недействительной сделку по продаже принадлежавших истцу бездокументарных
акций ОАО "Ашинский металлургический завод", признать недействительными
передаточные распоряжения №№ : вх 648, вх 649, 135, признать право
собственности на указанные акции и восстановить в системе ведения реестра
владельцев ценных бумаг записи о наличии на лицевом счете истца указанных
акций.

Определением от 27.06.2000г к участию в деле в качестве ответчиков привлечены: Компания "Амбер Стар ЭЛЭЛСИ", Южно-Уральская регистрационная палата" и ООО "Гидромашсервис".

ЗАО "Финансовая компания Вадис", ЗАО "Финансовая компания "Профит-Хауз", ЗАО "Компания-регистратор "Панорама" и ЗАО "Южно-Уральская регистрационная компания" в судебное заседание не явились, извещены о времени и месте разбирательства дела надлежащим образом (л.д. 11,13,14,16, т.3).

Компания "Амбер Стар ЭЛЭЛСИ." и ООО "Гидромашсервис" в судебное заседание не явились, доказательства надлежащего извещения их о времени и месте разбирательства дела отсутствуют.

В судебном заседании 31.07.2000г истцом заявлено об изменении исковых требований: просит признать недействительными передаточные распоряжения: № 648, № 649 и № 135, применить последствия их недействительности в виде восстановления на его лицевом счете записей о принадлежности ему на праве собственности акций ОАО "Качканарский ГОК "Ванадий" и ОАО "Ашинский металлургический завод", признать недействительными торги по продаже акций "ОАО "Качканарский ГОК "Ванадий".

В свете сформулированных истцом требований и в силу п. 3 ст.34 АПК РФ Компания "Амбер Стар ЭЛЭЛСИ." и ООО "Гидромашсервис" ответчиками по рассматриваемому делу не являются; кроме того, как следует из выписок из лицевых счетов указанных юридических лиц, они в настоящее время не являются собственниками акций, фигурирующих в рассматриваемом деле.

При указанных обстоятельствах суд считает возможным рассмотреть дело в отсутствие Компании "Амбер Стар ЭЛЭЛСИ." и ООО "Гидромашсервис".

Истец поддержал требования в полном объеме. По мнению истца, опись и арест принадлежащих ему бездокументарных акций ОАО "Качканарский ГОК "Ванадий" и бездокументарных акций ОАО "Ашинский металлургический завод" произведены Озерским УФСНП РФ по Челябинской области без надлежащих правовых оснований, поскольку решения ГНИ по г.Озерску, на основании которых приняты постановления об обращении взыскания на имущество, произведены опись, арест и реализация указанных акций, признаны недействительными решением Арбитражного суда Челябинской области от 03.03.2000г по делу № А76-2946/98-45-32/33-286/27, вступившим в законную силу; также недействительными в части признаны постановление об обращении взыскания на имущество и распоряжение о наложении ареста (решение АС Челябинской области от 07.12.98г по делу № А76-6467/98-40у-235, вступившее в законную силу). Кроме того, истец полагает, что передаточные распоряжения, на основании которых производилось внесение записей в систему ведения реестра владельцев бездокументарных акций, подписаны лицами, не имевшими надлежащих полномочий на их подписание, в связи с чем, не должны были приниматься ЗАО "Компания-регистратор "Панорама" к исполнению. Торги по продаже акций ОАО "Качканарский ГОК "Ванадий", по мнению истца, являются недействительными, поскольку в них фактически принимал участие один участник - ЗАО "Финансовая компания "Профит-Хауз", следовательно, договор купли-продажи указанных акций, заключенный по итогам торгов между ЗАО "Микчел-Инвест" и ЗАО "Финансовая компания "Профит-Хауз" также является недействительным. Истец полагает, что его право собственности, нарушенное неправомерными действиями по

отчуждению принадлежавших ему акций, подлежит защите путем восстановления записей о том, что он является владельцем указанных акций в системе ведения реестра владельцев бездокументарных ценных бумаг.

Ответчики иск отклонили:

УФСНП РФ по Челябинской области - ссылаясь на правомерность действий по описи и аресту акций, принадлежащих истцу, подтвержденную решением Арбитражного суда Челябинской области от 07.12.98г по делу № А76-6467/98-40у-235, вступившим в законную силу, по иску ООО "НПРО "Урал" о признании недействительными постановлений ГНИ по г.Озерску: от 16.04.98г № 4 и от 07.08.98г № 19 и распоряжений начальника Озерского МРО УФСНП от 20.04.98г № 20 и 10.08.98г. Указанным решением признаны недействительными постановление ГНИ по г.Озерску от 07.08.98г № 19 и распоряжение начальника Озерского МРО УФСНП по Челябинской области от 10.08.98г в части обращения взыскания и наложения ареста на имущество истца на сумму 6855762 руб, в остальной части иска отказано. По мнению ответчика, передаточные распоряжения № 649, № 648 и № 135 подписаны зам.начальника УФСНП по Челябинской области в соответствии с полномочиями, предоставленными органам налоговой полиции п.12 ст.11 Закона РФ "О федеральных органах налоговой полиции". По мнению ответчика, требования истца не подлежат удовлетворению, поскольку истцу были возвращены денежные средства, вырученные от продажи акций, в части, соответствующей признанным недействительными постановления ГНИ по г.Озерску и распоряжения Озерского МРО УФСНП РФ по Челябинской области решением Арбитражного суда Челябинской области.

ЗАО "Микчел-Инвест"- ссылаясь на правомерность своих действий по организации и проведению торгов по продаже акций ОАО "Качканарский ГОК "Ванадий"и заключению договора купли-продажи указанных акций с ЗАО "Финансовая компания "Профит-Хауз", а также по заключению договора купли-продажи акций ОАО "Ашинский металлургический завод" с ЗАО "Финансовая компания "Вадис". Кроме того, по мнению ответчика, обязательным в соответствии с требованиями действующего законодательства является только проведение торгов по продаже недвижимости.

ЗАО "ФК "Профит-Хауз" (отзыв на исковое заявление (л.д. 119,120, т.1), и ЗАО "ФК "Вадис" (отзыв на исковое заявление (л.д. 1,2, т.2) ссылаясь на то, что они являлись добросовестными приобретателями акций, которые, по мнению ответчиков. могут быть истребованы истцом только в порядке виндикации.

ЗАО "Компания-регистратор "Панорама" (отзыв на исковое заявление  (л.д. 83, 84, т.2), ссылаясь на правомерность действий по проведению операций по регистрации перехода прав собственности на акции, совершенных в соответствии с Положением, утвержденным постановлением ФКЦБ от 02.10.97г № 27, на основании надлежаще оформленных передаточных распоряжений.

Заслушав пояснения сторон, исследовав материалы дела,
суд установил:

ООО НПРО "Урал" являлось собственником 30831 обыкновенной бездокументарной акции ОАО "Качканарский ГОК "Ванадий" первого выпуска (код государственной регистрации 62-1п-290), 10552232 обыкновенных бездокументарных акций ОАО "Качканарский ГОК "Ванадий" второго выпуска (код государственной регистрации 62-1-1396) (л.д. 57,т.1) и 1675551 обыкновенной

бездокументарной акции ОАО "Ашинский металлургический завод" (код государственной регистрации 69-1-689) (л.д. 11, т2).

Регистратором, осуществляющим деятельность по ведению реестра именных ценных бумаг эмитента - ОАО "Качканарский ГОК "Ванадий" являлось ЗАО "Компания - регистратор "Панорама".

Регистратором, осуществляющим деятельность по ведению реестра именных ценных бумаг эмитента - ОАО "Ашинский металлургический завод" являлось ЗАО "Южно-Уральская регистрационная палата" (л.д. 11, т.2), в настоящее время - ЗАО "Компания-регистратор "Панорама".

24.06.98г на основании передаточного распоряжения № 135 (№ 2/3/782), подписанного заместителем начальника УФСНП РФ по Челябинской области (л.д. 51, т.1), регистратором внесена запись о переходе прав собственности ООО НПРО "Урал" на 1675551 обыкновенную бездокументарную акцию ОАО "Ашинский металлургический завод" к ЗАО "Финансовая компания "Вадис" (л.д. 11, т.2).

В качестве основания внесения записи указан договор купли-продажи от 05.05.98г № 0505-01-010, заключенный между ЗАО "Микчел-Инвест"- "Продавец" и ЗАО "ФК "Вадис" - "Покупатель", указ Президента РФ от 14.02.96г № 199, акт описи и административного ареста имущества налогоплательщика от 27.03.98г, соглашение от 03.04.98г № 77.

Опись и арест 1675551 акции ОАО "Ашинский металлургический завод" произведены Озерским МРО УФСНП РФ по Челябинской области 27.03.98г (л.д. 44,45, т.1) на основании постановления ГНИ по г.Озерску от 18.03.98г № 4 и распоряжения начальника Озерского МРО УФСНП РФ по Челябинской области от 25.03.98г (л.д. 43, т.1). Операция по блокированию акций проведена регистратором 26.03.98г.

17.04.98г Озерский МРО УФСНП РФ по Челябинской области сообщил, что в связи с отзывом ГНИ по г.Озерску постановления от 18.03.98г № 4 и распоряжение о наложении ареста от 25.03.98г отменено, арест, произведенный 27.03.98г, снят (л.д. 47, т.1). Операция по прекращению блокирования акций проведена регистратором 23.04.98г.

28.04.98г Озерским МРО УФСНП РФ по Челябинской области произведены опись и арест 3760880 акций ОАО "Ашинский металлургический завод" (л.д. 49,50,т.1) на основании постановления ГНИ по г.Озерску от 16.04.98г № 4 (л.д. 39, т.2) и распоряжения начальника Озерского МРО УФСНП РФ по Челябинской области от 20.04.98г № 20 (л.д. 48, т.1). Операция по блокированию акций проведена регистратором 23.04.98г.

13.05.98г между УФСНП РФ по Челябинской области и ЗАО "Микчел-Инвест" заключен договор № 105 (л.д. 101-105, т.1), согласно которому ЗАО "Микчел-Инвест" обязалось реализовать арестованные акции на договорно-комиссионных началах.

05.05.98г между ЗАО "Микчел-Инвест" и ЗАО "Финансовая компания "Вадис" заключен договор купли-продажи ценных бумаг № 0505-01-010 (л.д. 114-116, т.2).

В настоящее время ЗАО "Финансовая компания "Вадис" не является ни владельцем, ни номинальным держателем указанных акций.

При представлении передаточного распоряжения от 24.06.98г № 135 с акций, в отношении которых оно представлено, снят арест, наложенный 27.03.98г (распоряжение от 26.06.98г № 176 (л.д. 52, т.1), фактически уже снятый 17.04.98г, а запись о переходе прав на указанные акции новому владельцу сделана фактически

в отношении акций, находящихся под арестом, произведенным 28.04.98г. Запись регистратора о прекращении блокирования акций, заблокированных 23.04.98г, совершенная 26.06.98г на основании распоряжения от 26.06.98г № 176, сделана необоснованно, поскольку в распоряжении говорится о снятии ареста, произведенного 27.03.98г. Таким образом, запись о передаче прав на акции новому владельцу совершена регистратором в нарушение п.7.3 "Положения о порядке ведения реестра именных ценных бумаг" при наличии записи в реестре о блокировании операций с указанными акциями. Также в нарушение п.7.5 указанного Положения, согласно которому блокирование и прекращение блокирования производятся, в частности, на основании документов, выданных уполномоченными органами, регистратором внесена в реестр запись о прекращении блокирования операций по лицевому счету ООО НПРО "Урал" в отсутствие необходимых документов.

24.09.98г на основании передаточных распоряжений вх 649 (л.д. 59, т.1) и вх 648 (л.д. 60, т.1), подписанных сотрудником УФСНП РФ по Челябинской области В.Ю. Усыниным и представителем ЗАО "Микчел-Инвест", регистратором внесены в реестр записи о переходе прав собственности ООО НПРО "Урал" на 10552232 акции первого выпуска и 30831 акцию второго выпуска ОАО "Качканарский ГОК "Ванадий" к номинальному держателю - ЗАО "Депозитарно-клиринговая компания" (л.д. 63, т.1).

В качестве документов, подтверждающих полномочия представителя, подписавшего передаточные распоряжения указаны: Указ Президента РФ от 14.02.96г, акт описи и ареста имущества налогоплательщика от 13.09.98г. *(так в тексте)* соглашение от 09.09.98г № 1. Фактически одним из оснований выдачи передаточных распоряжений явился акт описи и ареста имущества налогоплательщика от 13.08.98г.

Опись и арест имущества ООО НПРО "Урал" произведены Озерским МРО УФСНП РФ по Челябинской области 13.08.98г (л.д. 55-56, т.2) на основании постановления ГНИ по г.Озерску от 07.08.98г № 19 (л.д. 40, т.2) и распоряжения начальника Озерского МРО УФСНП РФ по Челябинской области от 10.08.98г (л.д. 54, т.1).

09.09.98г между УФСНП РФ по Челябинской области и ЗАО "Микчел-Инвест" заключен договор № 183 (л.д. 132-135, т.2), согласно которому ЗАО "Микчел-Инвест" обязалось реализовать арестованное имущество на договорно-комиссионных началах.

11.09.98г УФСНП РФ по Челябинской области сообщило ЗАО "Микчел-Инвест" о принятии решения реализовать арестованные акции путем проведения тендера, фактически - закрытого аукциона, поскольку предложения направлялись определенным организациям, а победителем должен был быть признан участник, предложивший наибольшую цену, причем объявленная минимальная цена пакета акций составила 16932900 руб (л.д. 138, т.2).

Победителем тендера было признано ЗАО "Финансовая компания "Профит-Хауз", фактически единственный участник тендера, поскольку заявки остальных участников не соответствовали объявленным условиям, т.к. указанные в них суммы были меньше минимальной начальной цены (курс доллара США на 16.09.98г составлял 9,5127 руб), кроме того, заявки, поданные в долларах, были признаны недействительными (протокол от 16.09.98г № 1-Т (л.д. 139,т.2).

По итогам состоявшихся торгов между ЗАО "Микчел-Инвест" и ЗАО "Финансовая компания "Профит-Хауз" заключен договор от 18.09.98г № 21 (л.д. 143-145). ЗАО "Финансовая компания "Профит-Хауз" не являлось и не является ни собственником, ни номинальным держателем указанных акций, поскольку при покупке акций действовало на основании договора комиссии от 18.06.98г № КО-0097-98 с Компанией "Амбер Стар Эл.Эл.Сп." (л.д. 63-66, т.2).

06.10.98г распоряжением начальника Озерского МРО УФСНП РФ по Челябинской области № 20А (л.д. 62, т.1) распоряжение от 10.08.98г отменено, административный арест, наложенный 13.08.98г, снят.

Суд приходит к выводу о правомерности требований истца и отклонению доводов ответчиков по следующим основаниям:

Постановления об обращении взыскания недоимок по налогам, пени и налоговых санкций на имущество налогоплательщика приняты ГНИ по г.Озерску на основании решений по акту документальной проверки соблюдения налогового законодательства ООО НПРО "Урал" от 10.02.98г (л.д. 10-17, т.1). Решения, принятые по результатам проверки, отменялись и изменялись ГНИ по г.Озерску (л.д. 19-21, т.1), в акт также вносились изменения и дополнения (л.д. 13, 14-17, 22-24, т.1). Итоговые решения по указанному акту проверки: от 01.06.98г № 11(285) (л.д. 25, т.1) и от 01.06.98г № 12 (286) (л.д. 26,т.1) с учетом изменений, внесенных решением от 31.07.98г № 27 (л.д. 29, т.1) признаны недействительными решением Арбитражного суда Челябинской области от 03.03.2000г по делу № А76-2946/98-45-32/33-286/27 (л.д. 40,41) в части взыскания 5579911 руб (с учетом постановления апелляционной инстанции от 17.04.2000г).

Решением Арбитражного суда Челябинской области от 07.12.98г по делу А76-6467/98-40у-235, вступившим в законную силу, признаны недействительным в части обращения взыскания на имущество налогоплательщика на сумму 6855762 руб постановление ГНИ по г.Озерску от 07.08.98г № 19 и распоряжение начальника Озерского МРО УФСНП по Челябинской области от 10.08.98г (л.д. 64-67).

Таким образом, опись и арест имущества истца произведены Озерским МРО УФСНП РФ по Челябинской области при отсутствии правовых оснований для обращения взыскания на имущество налогоплательщика.

При указанных обстоятельствах у УФСНП РФ по Челябинской области отсутствовало право распоряжения имуществом истца.

При отсутствии правовых оснований для обращения взыскания на имущество налогоплательщика оно не могло быть продано ни на комиссионных началах, ни каким-либо другим способом, а все сделки, заключенные с указанными акциями, являются недействительными (ничтожными).

П.12 ст.11 ФЗ "О федеральных органах налоговой полиции" федеральным органам налоговой полиции предоставлено право производить административный арест с последующей реализацией арестованного имущества в установленном порядке.

Порядок обращения ценных бумаг регулируется ФЗ "О рынке ценных бумаг", в соответствии с п.п. 4 и 5 ст. 42 которого, Федеральной комиссии по рынку ценных бумаг (ФКЦБ) предоставлено право устанавливать обязательные требования к операциям с ценными бумагами и к порядку ведения реестра.

В рамках предоставленных законом полномочий постановлением ФКЦБ от 02.10.97г № 27 утверждено "Положение о ведении реестра владельцев именных

ненных бумаг", согласно п.7.3 которого внесение в реестр записей о переходе прав собственности на ценные бумаги производится регистратором на основании передаточного распоряжения, представленного, в частности, зарегистрированным лицом, передающим ценные бумаги или его уполномоченным представителем. В соответствии с п.10.2 распоряжения должны быть подписаны зарегистрированным лицом либо лицом, действующим от его имени по доверенности, оформленной в соответствии с действующим законодательством.

Понятие "уполномоченные представители" раскрыто в п.2., где указано, что уполномоченные представители - должностные лица государственных органов вправе требовать от регистратора исполнения определенных операций в реестре.

Перечень операций, совершаемых регистратором, установлен разделом 7, согласно которому уполномоченные представители государственных органов вправе требовать от регистратора внесения в реестр записей о блокировании и прекращении блокирования операций по лицевому счету (п. 7.5), а также предоставления информации из реестра (п.7.9).

Право подписывать передаточные распоряжения от имени зарегистрированного лица должностным лицам уполномоченных государственных органов Положением не предоставлено.

Таким образом, передаточные распоряжения № 135 (2/3/782), вх 648, вх 649, подписанные представителями: УФСНП РФ по Челябинской области и ЗАО "Микчел-Инвест", не соответствуют требованиям, установленным Положением, и приняты регистратором в нарушение п.5 Положения.

Передаточное распоряжение по своей правовой природе является односторонней сделкой (п.2 ст.154 ГК РФ), следовательно, к нему в силу ст.156 ГК РФ применимы положения о недействительности сделок, согласно которым недействительная сделка не влечет правовых последствий за исключением тех, которые связаны с ее недействительностью, т.е. возвращения сторон в первоначальное положение (ст.п.п.1,2 ст.167 ГК РФ).

Неправомерными действиями ответчика - УФСНП РФ по Челябинской области было нарушено право собственности истца на принадлежащие ему акции, в связи с чем истец вправе требовать защиты гражданских прав путем восстановления положения, существовавшего до нарушения права, в соответствии со ст.12 ГК РФ.

Бездокументарные акции не могут быть истребованы в порядке ст.301 ГК РФ, поскольку предметом виндикационного иска может быть только индивидуально-определенное имущество, бездокументарные акции являются вещами, определенными родовыми признаками: наименование эмитента, код государственной регистрации выпуска, номинальная стоимость.

Принятым решением не нарушаются права и законные интересы лиц, у которых находятся акции, фигурировавшие в рассматриваемом деле, в настоящее время, поскольку записи об их правах на акции внесены реестр на основании ничтожных сделок. Указанные лица вправе предъявить требования о возмещении причиненных им убытков в самостоятельном исковом порядке.

Довод ответчика - УФСНП РФ по Челябинской области об отказе в удовлетворении требований истца в связи с возвращением ему части стоимости реализованных акций (л.д. 123-126, т.2) не может быть принят судом, поскольку неправомерными действиями - арестом и реализацией акций, нарушено право

собственности истца на принадлежащие ему акции, требование о возмещении убытков истцом не произведено.

Государственная пошлина относится на ответчика – УФСНП РФ по Челябинской области, которое в соответствии с п.п.6 п.3 ст.5 ФЗ "О государственной пошлине" подлежит освобождению от ее уплаты как государственное учреждение, финансируемое из федерального бюджета.

Руководствуясь п.1 ст.95, ст.124-127 АПК РФ, арбитражный суд решил:

Иск удовлетворить.

Признать недействительными передаточные распоряжения:
от 24.06.98г. № 135 (от 24.06.98г. № 2/3/782);
от 24.09.98г. вх.649 (без номера);
от 24.09.98г. вх.648 (без номера).

Признать недействительными торги по продаже акций ОАО "Качканарский ГОК "Ванадий" в количестве 10585063 штук, проведенные 17.09.98г.

Обязать регистратора – ЗАО "Компания-регистратор "Панорама" привести данные реестра владельцев именных ценных бумаг эмитента – ОАО "Качканарский ГОК "Ванадий" по лицевому счету владельца – ООО "НПРО "Урал" № 15697 в положение, существовавшее на 24.09.98г.

Обязать регистратора – ЗАО "Компания-регистратор "Панорама" привести данные реестра владельцев именных ценных бумаг эмитента – ОАО "Качканарский металлургический завод" по лицевому счету владельца – ООО "НПРО "Урал" № 8642 в положение, существовавшее на 26.06.98г.

Председательствующий                        Л.Н.Зубкова

Судьи                                        В.Н.Зайцева

                                             В.В.Худякова