**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

```
-----------------------------------------------------------x
DAVIS INTERNATIONAL, LLC, HOLDEX,        :
LLC, FOSTON MANAGEMENT, LTD, and         :
OMNI TRUSTHOUSE, LTD,                     :
                                          :
                           Plaintiffs,    :
              v.                          :      Case No. 04-1482-GMS
                                          :
NEW START GROUP CORP.,                    :
VENITOM CORP., MDM BANK,                  :
URAL-GORNO METALLURGICAL                  :
COMPANY, EVRAZ HOLDING,                   :
MIKHAIL CHERNOI, OLEG DERIPASKA,          :
ARNOLD KISLIN, MIKHAIL NEKRICH,           :
and ISKANDER MAKMUDOV,                    :
                                          :
                           Defendants.    :
-----------------------------------------------------------x
```

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE COMPLAINT PURSUANT TO THE DOCTRINE OF DIRECT ESTOPPEL
AND TO ENJOIN PLAINTIFFS FROM REFILING THIS ACTION**

Attorneys for Defendant Arnold Kislin:

Charles M. Oberly, III (DSBA No. 743)       Lisa C. Cohen
Karen V. Sullivan (DSBA No. 3872)           Schindler Cohen & Hochman LLP
Oberly, Jennings & Rhodunda, P.A.           100 Wall Street
800 Delaware Avenue, Suite 901              15th Floor
PO Box 2054                                 New York, NY  10005
Wilmington, DE 19899                        (212) 277-6300

                                            Lawrence S. Goldman
                                            Elizabeth Johnson
                                            The Law Offices of Lawrence S. Goldman
                                            500 Fifth Ave., 29th Floor
                                            New York, NY 10110-2900
                                            (212) 997-7499

Attorneys for Defendants New Start
Group Corp. and Venitom Group:

Charles M. Oberly, III (DSBA No. 743)     Richard J. Schaeffer
Karen V. Sullivan (DSBA No. 3872)          Peter J. Venaglia
Oberly, Jennings & Rhodunda, P.A.          Laura D. Sullivan
800 Delaware Avenue, Suite 901             Dornbush, Schaeffer, Strongin &
PO Box 2054                                Weinstein, LLP
Wilmington, DE 19899                       747 Third Avenue, 11th Floor
(302) 576-2000                             New York, NY 10017
                                           (212) 759-3300


Attorneys for Defendant Oleg Deripaska:

Collins J. Seitz, Jr. (DSBA No. 2237)      Rodney F. Page
Kevin F. Brady (DSBA No. 2248)             Michael G. Biggers
Connolly Bove Lodge & Hutz LLP             Bryan Cave LLP
1007 North Orange Street                   700 13th Street, N.W.
P.O. Box 2207                              Washington, D.C. 20005-3960
Wilmington, DE 19899                       (202) 508-6002
(302) 658-9141


Attorneys for Defendant Evraz Holding:

William M. Lafferty (DSBA No. 2755)        David H. Herrington
Morris, Nichols, Arsht & Tunnell           Vitali Rosenfeld
Chase Manhattan Centre, 18th Floor         Cleary Gottlieb Steen & Hamilton LLP
1201 North Market Street                   One Liberty Plaza
P.O. Box 1347                              New York, NY 10006
Wilmington, DE 19899-1347                  (212) 225-2266
(302) 575-7341


Attorneys for Defendant MDM Bank:

Richard I.G. Jones, Jr. (DSBA No. 3301)    Joel B. Kleinman
Ashby & Geddes                             Steven J. Roman
222 Delaware Avenue, 17th Floor            David H. Greenberg
P.O. Box 1150                              Dickstein Shapiro Morin & Oshinsky LLP
Wilmington, DE 19899                       2101 L Street NW
(302) 654-1888                             Washington, DC 20037-1526
                                           (202) 785-9700

Attorneys for Defendant Ural-Gorno
Metallurgical Company:

Charles M. Oberly, III (DSBA No. 743)    William H. Devaney
Karen V. Sullivan (DSBA No. 3872)    Heard & O'Toole LLP
Oberly, Jennings & Rhodunda, P.A.    405 Lexington Ave, Floor 62
800 Delaware Avenue, Suite 901    New York, NY 10174
PO Box 2054    (212) 307-5500
Wilmington, DE 19899
(302) 576-2000


Attorneys for Defendant Iskander
Makmudov:

Charles M. Oberly, III (DSBA No. 743)    William H. Devaney
Karen V. Sullivan (DSBA No. 3872)    Heard & O'Toole LLP
Oberly, Jennings & Rhodunda, P.A.    405 Lexington Ave, Floor 62
800 Delaware Avenue, Suite 901    New York, NY 10174
PO Box 2054    (212) 307-5500
Wilmington, DE 19899
(302) 576-2000


Attorneys for Defendant Mikhail Chernoi:

Charles M. Oberly, III (DSBA No. 743)    Brian Maas
Karen V. Sullivan (DSBA No. 3872)    Cameron A. Myler
Oberly, Jennings & Rhodunda, P.A.    Frankfurt Kurnit Klein & Selz PC
800 Delaware Avenue, Suite 901    488 Madison Avenue, 9th Floor
PO Box 2054    New York, NY 10022
Wilmington, DE 19899    (212) 980-0120
(302) 576-2000


Attorneys for Defendant Mikhail Nekrich:

Charles M. Oberly, III (DSBA No. 743)    Paul R. Grand
Karen V. Sullivan (DSBA No. 3872)    Edward M. Spiro
Oberly, Jennings & Rhodunda, P.A.    Morvillo, Abramowitz, Grand, Iason &
800 Delaware Avenue, Suite 901    Silberberg, P.C.
PO Box 2054    565 Fifth Avenue
Wilmington, DE 19899    New York, NY 10017
(302) 576-2000    (212) 880-9510

Dated: June 27, 2005

**TABLE OF CONTENTS**

Table of Authorities...................................................................................................... ii-v

Preliminary Statement ..................................................................................................... 1

ARGUMENT...................................................................................................................... 3

    I.   There Are No Material Differences Between The Claim
        Plaintiffs Assert Here And The Claims They Asserted
        In *Base Metal Trading* ................................................................................. 3

        A.  Plaintiffs' Admission that Their Claim Here Is A "Subset"
            Of All The Claims In *Base Metal Trading* Ends The Inquiry Here ....................................... 3

        B.  In Analyzing A *Forum Non Conveniens* Motion,
            This Court Would Apply The Same Legal Criteria
            And Use The Same Material Facts As The Southern District Of New York......................... 6

            1.  Federal Courts Use The Same Objective Legal Criteria
                In Analyzing A *Forum Non Conveniens* Motion ........................................... 6

            2.  Plaintiffs Raise No New Material Fact That Warrants A
                New Analysis Of The *Forum Non Conveniens* Dismissal ............................... 6

                a.  Plaintiffs Allege No New Material Fact That Requires
                    Re-Analysis Of The Lack of Deference Due To
                    Plaintiffs' Choice Of Forum.................................................................. 7

                b.  No New Material Fact Requires Re-Analysis Of The
                    Private Interest Factors Relevant To The Prior Dismissal..................................... 11

                  c.  No New Material Fact Requires Re-Analysis Of The
                    Public Interest Factors Relevant To The Prior Dismissal...................................... 12

                  d.  No New Material Fact Requires Re-Analysis Of The
                    Adequacy Of The Moscow Arbitrazh Court ....................................................... 13

    II.  No Equitable Doctrine Bars Defendants From
         Seeking Dismissal.................................................................................................. 15

    III.  Plaintiffs Should Be Enjoined From Conducting Additional
          Litigation Based On The Facts Alleged In The First
           Amended Complaint................................................................................................ 17

         A.  Plaintiffs Can and Should Be Enjoined
            From Filing Any New Actions ................................................................................ 17

         B.  Plaintiffs Can And Should Be Enjoined From Litigating In Delaware................................. 18

    CONCLUSION.................................................................................................................. 23

# TABLE OF AUTHORITIES

## Cases

*Archdiocese of Milwaukee v. Underwriters at Lloyds, London*,
955 F. Supp. 1066 (E.D. Wis. 1997) ................................................ 16

*Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engin.*,
398 U.S. 281 (1970) ................................................................ 21

*Bamdad Mechanic Co., Ltd. v. United Technologies Corp.*,
109 F.R.D. 128 (D. Del. 1985) ...................................................... 17

*Barancik v. Investors Funding Corp. of N.Y.*,
489 F.2d 933 (7th Cir. 1973) ................................................... 20-21

*Base Metal Trading SA v. Russian Alum.*,
253 F. Supp. 2d 681 (S.D.N.Y. 2003),
*aff'd sub nom.*, *Base Metal Trading Ltd. v. Russian Alum.*,
98 Fed. Appx. 47, 2004 WL 928165 (2d Cir. 2004) ...............................passim

*Baumgart v. Fairchild Aircraft Corp.*,
981 F.2d 824 (5th Cir. 1993) ...................................................... 15

*Bradford v. Olympic Courier Systems, Inc.*,
1997 WL 570720 (E.D.N.Y. Sept. 2, 1997) .......................................... 18

*Brice v. C.R. England, Inc.*,
278 F. Supp. 2d 487 (E.D. Pa. 2003) ............................................... 15

*Brown v. Seaboard Coast Line RR. Co.*,
309 F. Supp. 48 (N.D. Ga. 1969) .................................................. 19

*Camejo v. Ocean Drilling and Exploration*,
838 F.2d 1374 (5th Cir. 1988) .................................................... 15

*Chick Kam Choo v. Exxon Corp.*,
486 U.S. 140 (1988) ............................................................... 21

*China Tire Holdings Ltd v. Goodyear Tire & Rubber Co.*,
91 F. Supp. 2d 1106 (N.D. Ohio 2000) ............................................... 8

*Daniel Boone Area School Dist. v. Lehman Bros., Inc.*,
187 F. Supp. 2d 414 (W.D. Pa. 2002) ........................................... 19-20

*Denny's, Inc. v. Cake*,
364 F.3d 521 (4th Cir. 2004) ...................................................... 20

*Fischman v. Fischman*,
470 F. Supp. 980 (E.D. Pa. 1979) .................................................. 20

*Frith v. Blazon-Flexible Flyer, Inc.,*
512 F.2d 899 (5th Cir. 1975) ............................................................................................ 21-22

*Gschwind v. Cessna Aircraft Co.,*
232 F.3d 1342 (10th Cir. 2000) .......................................................................................... 15

*Gulf Oil v. Gilbert,*
330 U.S. 501 (1947) ............................................................................................................ 16

*Gwynedd Properties, Inc., v. Lower Gwynedd Township,*
970 F.2d 1195 (3d Cir. 1992) ............................................................................................. 22

*Hyde Park Partners, L.P. v. Connolly,*
839 F.2d 837 (1st Cir. 1988) .............................................................................................. 20

*In re Arbitration between Monegasque De Reassurances S.A.M.*
*v. NAK Naftogaz of Ukraine,*
311 F.3d 488 (2d Cir. 2002) ............................................................................................... 17

*In re Hartford Textile Corp.,*
681 F.2d 895 (2d Cir. 1982) ............................................................................................... 18

*In re Packer Ave. Assoc.,*
884 F.2d 745 (3d Cir. 1989) ............................................................................................... 17

*In Re Union Carbide Corp. Gas Plant Disaster,*
1992 WL 36135 (S.D.N.Y. 1992),
*aff'd,* 984 F.2d 582 (2d Cir. 1993) ..................................................................................... 15

*Kansas Public Employees Retirement Sys.*
*v. Reimer & Koger Assocs., Inc.,*
77 F.3d 1063 (8th Cir. 1996) ............................................................................................. 19

*Kennecott Corp. v. Smith,*
637 F.2d 181 (3d Cir. 1980) ............................................................................................ 20-21

*Leon v. Million Air, Inc.,*
251 F.3d 1305 (11th Cir. 2001) .......................................................................................... 14

*Lou v. Belzberg,*
834 F.2d 730 (9th Cir. 1987) .............................................................................................. 22

*Marks v. Stinson,*
19 F.3d 873 (3d Cir. 1994) ................................................................................................. 22

*Mitchum v. Foster,*
407 U.S. 225 (1972) ...................................................................................................... 18, 21

*Mizokami Bros. of Ariz. v. Mobay Chem. Corp.,*
660 F.2d 712 (8th Cir. 1981) ............................................................................................... 6

*Morris & Co. v. Skandinavia Ins. Co.*,
279 U.S. 405 (1924) ............................................................................................... 16

*Myers v. Hertz Penske Truck Leasing, Inc.*,
572 F. Supp. 500 (N.D. Ga. 1983) ........................................................................ 19

*National City Lines, Inc. v. LLC Corp.*,
687 F.2d 1122 (8thCir. 1982) ............................................................................... 20

*Northwest Airlines, Inc. v. American Airlines, Inc.*,
989 F.2d 1002 (8th Cir. 1993) .............................................................................. 18

*Ortho Pharmaceutical Corp. v. Amgen, Inc.*,
882 F.2d 806 (3d Cir. 1989) ................................................................................. 17

*Pastewka v. Texaco, Inc.*,
565 F.2d 851 (3d Cir. 1977) ..........................................................................passim

*Pavlov v. Bank of New York Co., Inc.*,
135 F. Supp. 2d 426 (S.D.N.Y. 2001),
*vacated on other grounds and remanded,*
2002 WL 63576 (2d Cir. Jan. 14, 2002),
*dismissed by,* 2002 WL 31324097 (S.D.N.Y. October 16, 2002) ......................... 14

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) ..........................................................................................2, 15

*PT United Can Company Ltd. v. Crown Cork & Seal Company, Inc.*,
138 F.3d 65 (2d Cir. 1998) ................................................................................... 16

*Quackenbush v. Allstate Ins. Co.*,
121 F.3d 1372 (9th Cir. 1997) .............................................................................. 19

*Reyno v. Piper Aircraft Co.*,
630 F.2d 149 (3d Cir. 1980), *rev'd*, 454 U.S. 235 (1982) ................................... 15

*Roth v. Bank of the Commonwealth*,
583 F.2d 527 (6th Cir. 1978) ............................................................................... 21

*Royal Ins. Co. v. Quinn-L Capital Corp.*,
3 F.3d 877 (5th Cir. 1993) ............................................................................... 20-21

*Ruhrgas AG v.Marathon Oil Co.*,
526 U.S. 574 (1999) .............................................................................................. 16

*Russell Corp. v. American Home Assur. Co.*,
264 F.3d 1040 (11th Cir. 2001) ........................................................................... 16

*Safir v. U.S. Lines, Inc.*,
792 F.2d 19, 24 (2d Cir. 1986) ............................................................................. 17

iv

*Sempra Energy Trading Corp. v. Algoma Steel*,
300 F.3d 242 (2d Cir. 2002) ............................................................................ 15

*Standard Microsystems Corp. v. Texas Instruments Inc.*,
916 F.2d 58 (2d Cir. 1990) ............................................................................ 21

*Thomas v. Connecticut General Life Ins.*,
2003 WL 22953189 (D. Del. 2003)................................................................. 17

*Torreblanca de Aguilar v. Boeing Co.*,
806 F. Supp. 139 (E.D. Tex. 1992) ............................................................... 6-7

*United States Steel Corp. Plan for
 Employee Ins. Benefits v. Musisko*,
885 F.2d 1170 (3d Cir. 1989) ........................................................................ 21

*Varnelo v. Eastwind Transport, Ltd.*,
2003 WL 230741 (S.D.N.Y. Feb. 3, 2003) ..................................................... 14

*Vendo Co. v. Lektro Vend Corp.*,
433 U.S. 623, 635 n.6 (1977) .................................................................... 17-18

## <u>Other Authorities</u>

17 C. Wright, A. Miller & E. Cooper,
*Federal Practice and Procedure: Civil* § 4224 (2d ed. 1988) ........................... 19

28 U.S.C. § 1404 ............................................................................................. 15

28 U.S.C. § 1446 .......................................................................................18, 21

28 U.S.C. § 2283 ............................................................................................. 18

## <u>Rules</u>

Fed. R. Civ. P. 60(b)....................................................................................... 16

**Preliminary Statement**

Plaintiffs admit that their claim here is a "subset" of the claims that they litigated and lost

on *forum non conveniens* grounds in the Southern District of New York. *Base Metal Trading SA*

*v. Russian Alum.*, 253 F. Supp. 2d 681 (S.D.N.Y. 2003), *aff'd sub nom.*, *Base Metal Trading Ltd.*

*v. Russian Alum.*, 98 Fed. Appx. 47, 2004 WL 928165 (2d Cir. 2004). (Pls. Br. 18.)[1]  This

admission alone requires the dismissal of Plaintiffs' claim because, as the Third Circuit has

recognized, "permitting relitigation of the same issues in another court is intolerable." *Pastewka*

*v. Texaco, Inc.*, 565 F.2d 851, 854 (3d Cir. 1977).

Turning geometry on its head, Plaintiffs argue that the decision dismissing the whole

*Base Metal Trading* complaint does not apply to the "subset" they assert here.  Under their logic,

Plaintiffs may re-litigate the *Base Metal Trading* complaint piece by piece, plaintiff by plaintiff,

defendant by defendant and allegation by allegation.  Simply put, direct estoppel bars Plaintiffs'

strategy because:  (1) all of the Plaintiffs appeared in *Base Metal Trading*; (2) Plaintiffs' claim

here was asserted in *Base Metal Trading*; (3) Plaintiffs' underlying factual allegations are

substantively the same as those they asserted in *Base Metal Trading* – and, indeed, the vast

majority are identical; and (4) Plaintiffs litigated their case extensively in *Base Metal Trading* and

lost both before the New York District Court and – in a decision that Plaintiffs **entirely fail to**

**mention** – before the Second Circuit Court of Appeals.

Plaintiffs' arguments to avoid dismissal are belied by the very cases on which they rely.

Plaintiffs claim that under *Pastewka* they may "proffer different objective criteria" for *forum non*

*conveniens* than those used by the Southern District of New York.  (Pls. Br. 16-29.)  But, in

estopping Plaintiffs from re-litigating claims that the Southern District of New York had

dismissed on *forum non conveniens* grounds in favor of a foreign forum (just as happened here),

---

[1]      As used in this brief, "Pls. Br." refers to Plaintiffs' Brief in Opposition to Defendants' Motion
seeking dismissal on direct estoppel grounds and an injunction; "Defs. Br." refers to Defendants'
Opening Brief supporting their Motion; "Cohen Dec." refers to the Declaration of Lisa C. Cohen dated
June 24, 2005; and "A" refers to the Appendix to Defendants' Motion, filed on March 30, 2005.

*Pastewka* implicitly ruled that this Court and the New York District Court apply the same legal criteria.

     *Pastewka* is not the only case Plaintiffs misconstrue. They rely on *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981), to contend that, because Defendants removed this case from state court, equitable doctrines preclude dismissal (Pls. Br. 11-16). However, *Piper* itself had been removed from state court to federal district court and then transferred to another federal district court, and the Supreme Court never even hinted that equitable doctrines might preclude a *forum non conveniens* dismissal.

     Plaintiffs' claim that new material facts warrant a re-analysis of the prior dismissal is merely an excuse to re-argue the *forum non conveniens* motion since every "fact" either was already rejected in *Base Metal Trading* or is not material to a *forum non conveniens* analysis.

     At bottom, Plaintiffs cannot avoid the fact that they previously litigated and lost their claims in federal court (and in multiple Russian venues). Yet Plaintiffs are intent on harassing Defendants through vexatious litigation. Shortly after the April 13, 2005 telephone conference with this Court – in which the Court determined to consider the issues raised here before requiring responsive briefing on the other issues raised by Defendant – Plaintiffs amended the complaint to omit their two state law claims (conversion and equitable relief) and then, in a blatant effort to subvert the removal of this case, asserted these two and two new ancillary state law claims (aiding and abetting conversion and conspiracy to convert) in a new action against Defendants in Delaware Chancery Court.[2] Plaintiffs then refused to agree to stay the new state court action pending this Court's decision on this motion. (Cohen Dec. ¶ 5.) To prevent Plaintiffs' end-run around the removal statute, and to prevent further vexatious litigation, Plaintiffs should be enjoined.

---

[2]    Plaintiffs' Amended Complaint and new Chancery Court Complaint are attached to the Cohen Declaration as Exhibits A and B, respectively. A chart demonstrating the nearly identical factual allegations in the original pleading here, the Amended Complaint, and the new action is attached to the Cohen Declaration as Exhibit C.

## ARGUMENT

### I.    There Are No Material Differences Between The Claim Plaintiffs Assert Here And The Claims They Asserted In *Base Metal Trading*

#### A.    Plaintiffs' Admission That Their Claim Here Is A "Subset" Of All The Claims In *Base Metal Trading* Ends The Inquiry Here

Plaintiffs' admission that their claim here is a "subset" of their fully litigated claims in *Base Metal Trading* (Pls. Br. 18) ends the only inquiry relevant to this motion – that is, were Plaintiffs afforded the opportunity for full and final litigation of their issues with Defendants. *Pastewka*, 565 F.2d at 853.  Direct estoppel thus mandates dismissal.  *Id.*

Plaintiffs contend that, because only "*some* of the parties and *some* of the claims are the same" as in *Base Metal Trading*, their claim here is "substantially different" from those claims made in *Base Metal Trading*.  (Pls. Br. 16-17.)  However, the fact that other plaintiffs in *Base Metal Trading* chose not to join these Plaintiffs in re-filing their claims makes no difference to the issue of whether **Plaintiffs'** claim was fully and finally litigated.

Similarly, Plaintiffs argue that, because their claim here is a "small subset" of the larger and more complex *Base Metal Trading* claims, this Court must disregard the entire *Base Metal Trading* dismissal.  (Pls. Br. 18.)  Plaintiffs entirely ignore the fact that, in the *Base Metal Trading* dismissal, Judge Koeltl made clear findings that the "subset" of the claims asserted in *Base Metal Trading* by **these Plaintiffs** – that is, Davis, Holdex, Foston and Omni – had no connection to the United States and belonged in Russia:

- of **these Plaintiffs**, Davis and Holdex are "nothing more than mere shell corporations whose choice of forum deserves little deference" and Foston and Omni are foreign (*Base Metal Trading*, 253 F. Supp. 2d at 696);

- **these Plaintiffs**, along with the GOK creditors, "are also complaining about activities that arise from the conduct of business in Russia" (*id*. at 696);

- **these Plaintiffs**, along with the other *Base Metal Trading* plaintiffs, "pursued relief in the Russian courts until the results were not to their liking" (*id*. at 707);

- **these Plaintiffs** "made little, if any, attempt to articulate substantive allegations of corruption against [four] decisions which are clearly at the core of the plaintiffs'

case" (*id*. at 709), including "the September 5, 2001 decision of the Federal Arbitrazh Court for the Moscow Circuit upholding two lower court decisions rejecting claims by **Davis, Holdex, Omni and Foston** against GOK's change in registrar" (*id*., emphasis added);

- **these Plaintiffs'** allegations present an "extensive list of non-party witnesses in Russia from whom evidence would be critical," including "Sverdlovsk Oblast Governor Roussel; former GOK general director Khaidarov who was allegedly ordered to convince GOK's shareholders to transfer their shares to the Conspirators; the unnamed GOK shareholders; the 'armed thugs' who took over GOK and their supporters in the regional authorities; employees of Leybout, which allegedly held a false $39 million promissary [sic.] note from GOK; Oleg Kozyrev, who became Provisional and External Manager of GOK after its bankruptcy; employees of VRK Company; and the judges who presided over the allegedly corrupt bankruptcy proceedings as well as the cases allegedly illegally transferring **the[se] . . . Plaintiffs'** shares" (*id*. at 710, emphasis added);

- "the striking number of Russian parties and witnesses involved in the case demonstrates the **extreme inconvenience** of bringing this case to trial in the United States" (*id*. at 711, emphasis added);

- "[t]he bulk of the important documentary evidence in this case is also located in Russia" (*id*.); and

- "there would likely be extensive application of Russian law in this case" (*id*. at 712).

Plaintiffs also assert that their claim here is narrower than the *Base Metal Trading* claims because the allegations regarding the GOK bankruptcy are merely "background" and "not critical to proof of the instant Plaintiffs' claims" (Pls. Br. 20). However, as Plaintiffs admitted at oral argument in New York, these "background" facts are necessary to their RICO claim (A 142-43):

> THE COURT: [W]ould you agree that in order to find eventually for the plaintiffs in this case, . . . the Court would have to find, or the jury would have to find, that the two bankruptcy proceedings in Russia were corrupt?
>
> MR. BERNARD: Yes, Your Honor. I think that . . . in connection with a RICO claim, part of the element is an enterprise. Part of the predicate acts are mail and wire fraud in furtherance of a scheme to defraud. And therefore, as part of that proof, we would need to show a fraud.
>
> THE COURT: All right. And the – the two central frauds in this case are the – alleged to be the NKAZ bankruptcy and the GOK bankruptcy, right?
>
> MR. BERNARD: Correct.

- 4 -

This admission also disproves Plaintiffs' current contention that this case does not implicate the 120 Russian legal decisions referred to in the *Base Metal Trading* decision. (Pls. Br. 27.) In fact, Plaintiffs' core allegation is that Defendants took over GOK and then "stole" Plaintiffs' GOK shares through illegal means (including a fraudulent bankruptcy, an illegal board of directors' meeting, and "tainted" court proceedings). Each of these alleged activities, including the GOK bankruptcy itself, as Plaintiffs admitted in the transcript quoted above, have been the subject of extensive Russian court proceedings in multiple levels of Russia's judicial system. Indeed, Defendants have submitted 87 Russian court decisions – most of which were also before Judge Koeltl – that address these same issues. (*See*, *e.g.*, A 625-52; A1075-111; A1266-75; A 1306-10; A1318-22; A 1357-66; A 1445-51; A1583-85; A 1591-619; A 1628-727; A 1737- 831; A 1839-89; A 1884-994; A 2020-32; A 2053-293; A 2344-54.) Plaintiffs' claim implicates each of these 87 Russian decisions.[3] *See also Base Metal Trading*, 253 F. Supp. 2d at 709 (referencing four decisions that "are clearly at the core" of the *Base Metal Trading* plaintiffs' claims, the last two of which directly involve claims made by these Plaintiffs here).

Finally, contrary to Plaintiffs' argument, their claims were not "'lost in the mix' of the more complicated allegations" in the entire *Base Metal Trading* case. (Pls. Br. 20.) That the District Court's *Base Metal Trading* decision did not discuss five of Plaintiffs' declarations does not change the fact that Judge Koeltl fully considered whether the GOK claims should be litigated in this country. Precisely this same argument was made to the Second Circuit (*e.g.,* Cohen Dec. Ex. D at 14, 22, & 38), which also rejected Plaintiffs' contention that the District Court needed to discuss specifically each of the more than 50 declarations and 700 exhibits submitted by the *Base Metal Trading* plaintiffs.

---

[3]    These Russian decisions demonstrate that each of these four Plaintiffs has been involved in extensive litigation in Russia on these very issues. As Judge Koeltl found, Plaintiffs came to New York (and now to Delaware) because they are dissatisfied with the various outcomes in Russia. *See Base Metal Trading*, 251 F. Supp. 2d at 698.

**B.     In Analyzing A *Forum Non Conveniens* Motion,
        This Court Would Apply The Same Legal Criteria And
        Use The Same Material Facts as the Southern District of New York**

    **1.     Federal Courts Use The Same Objective Legal Criteria
        in Analyzing a *Forum Non Conveniens* Motion**

Plaintiffs misread *Pastewka* to assert that this Court would apply different objective criteria in analyzing a *forum non conveniens* motion than did the New York District Court.  (Pls. Br. 17 & 21-31.)  *Pastewka* held the opposite:  in affirming a direct estoppel dismissal of a case previously dismissed on *forum non conveniens* grounds, the Third Circuit affirmed this Court's finding that the objective criteria applied to a *forum non conveniens* motion are the same in this Court as in the Southern District of New York.  *Pastewka*, 565 F.2d 851.  *Pastewka* is thus consistent with numerous cases cited by Defendants in their Opening Brief, and not addressed by Plaintiffs, holding that federal courts must apply federal standards to a *forum non conveniens* motion, regardless of whether the case was removed from state court.  (Defs. Br. 24-25.)[4]

    **2.     Plaintiffs Raise No New Material Fact That Warrants A New
        Analysis of the *Forum Non Conveniens* Dismissal**

Claiming that "new material facts" require this Court "to take a 'second look' at the *forum non* picture," Plaintiffs devote ten pages to asserting alleged facts that they contend warrant a new *forum non conveniens* analysis here.  (Pls. Br. 21-31.)  However, as discussed below, these "facts" were either previously argued in *Base Metal Trading* or are not material to a *forum non conveniens* analysis.  As such, Plaintiffs do no more than ask this Court to re-balance the *forum non conveniens* determination previously made by the Southern District of New York and affirmed by the Second Circuit.  Plaintiffs' tactic should be rejected.  *See Torreblanca de Aguilar*

---

[4]     Plaintiffs' reliance on *Mizokami Bros. of Ariz. v. Mobay Chem. Corp.*, 660 F.2d 712 (8th Cir. 1981), is misplaced.  There, the Court stated that the second federal Court "must apply the same objective criteria" as the first federal Court that dismissed the case on *forum non conveniens* grounds, *id.* at 716, but it undertook a new factual analysis because the first Court had analyzed only whether Arizona was inconvenient.  In contrast, no new factual analysis is warranted here because Plaintiffs in *Base Metal Trading* argued and the New York District Court considered contacts between the dispute and the entire United States before holding that the case belonged in Russia.  *See, e.g.*, *Base Metal Trading*, 253 F. Supp. 2d at 710, 711, & 712-13.

*v. Boeing Co.*, 806 F. Supp. 139, 141-42 (E.D. Tex. 1992) ("[t]o avoid the preclusive effect of a prior *forum non conveniens* determination, 'the plaintiff in the new forum must do more than ask for a rebalancing of *forum non conveniens* considerations underlying the previous consideration'"), *citing Villar v. Crowley Maritime Corp.*, 780 F. Supp. 1467 (S.D. Tex. 1992), *aff'd*, 990 F.2d 1489 (5th Cir. 1994).

### a.   Plaintiffs Allege No New Material Fact That Requires Re-Analysis of the Lack of Deference Due to Plaintiffs' Choice of Forum

Plaintiffs acknowledge that the New York District Court held that "little deference should be given to the plaintiffs' choice of forum." (Pls. Br. 21). This conclusion, affirmed on appeal, is fully supported by the District Court's factual findings, including the fact that two of the allegedly U.S. companies that are Plaintiffs here, Davis and Holdex, are "nothing more than shell corporations whose choice of forum deserves little deference." 253 F. Supp. 2d at 696.

Plaintiffs seek to re-litigate this finding because two of the Defendants are incorporated in Delaware and because the complaint includes vague allegations about predicate acts of "money laundering" purportedly committed by fourteen additional Delaware-incorporated entities that are not defendants here. (Pls. Br. 22 & 26.) These are not new facts: these same Defendants were parties in *Base Metal Trading*, and the alleged conduct by the so-called "Delaware Real Estate Entities" is not only vague and extremely attenuated to the alleged scheme, but it dates from the "early 1990's." (Am. Compl. ¶¶ 45-48.) Nor is the argument new: Plaintiffs argued unsuccessfully in *Base Metal Trading* that the corporate defendants had New York offices and alleged to no avail that those defendants – which include seven of the Defendants here – "launder funds through banks in the US which are . . . 'cleansed' by investing in New York real estate." (A 319-20.)

Moreover, as Defendants' Opening Brief demonstrates (at 25-26), these alleged "facts" are insufficient to overcome the already-adjudicated conclusion that this case belongs in Russia. Indeed, Plaintiffs' "facts" are indistinguishable from *Pastewka*, where the Third Circuit found no

connection to the forum despite the fact that one defendant was a Delaware corporation. *Pastewka*, 565 F.2d at 853; *see also China Tire Holdings Ltd v. Goodyear Tire & Rubber Co.*, 91 F. Supp. 2d 1106, 1111 (N.D. Ohio 2000). And, as in *Pastewka*, Plaintiffs identify no evidence or witness to this case located in Delaware.

Significantly, Plaintiffs fail to tell this Court that, in *Base Metal Trading*, they opposed a *forum non conveniens* dismissal both before the trial court and on appeal based on the dispute's contacts **across the United States**, including Delaware. (*See* A 415; *see also* Cohen Dec. Ex. D at 12; A 145 (arguing contacts based on U.S. companies that Defendants purportedly set up to receive Plaintiffs' GOK shares).) The *Base Metal Trading* Court rejected this contention and held that Plaintiffs' claims have "virtually no connection **with the United States** or this district" (253 F. Supp. 2d at 712, emphasis added). The Second Circuit affirmed, finding that "this action has little or no connection **to the United States**, and thus little or no claim to the time and attention of **an American jury or court**" (98 Fed. Appx. at 51, emphasis added).

Plaintiffs assert that their choice of Delaware as a forum should be re-analyzed because two non-party witnesses, Joseph Traum and Jalol Khaidarov, are unwilling to travel to Russia due to alleged threats made by Defendants. Although Plaintiffs claim that the New York District Court "did not address this highly relevant factor" (Pls. Br. 22), the decision clearly **did** fully consider this factor (253 F. Supp. 2d at 711, emphasis in original):

> Joseph Traum claims that he is unwilling to return to Russia for fear of . . . threats to his life. . . . Traum's fear of returning to Russia does not rise to the level of gravity at which courts within this Circuit have spared *parties*, not merely witnesses, from returning to a threatened forum.

On appeal, Plaintiffs made the same argument citing the same cases. (*Compare* Pls. Br. 23 *with* A 408-09.) Quoting the District Court's language, the Second Circuit affirmed (98 Fed. Appx. at 50): "Plaintiffs offer no persuasive basis to conclude that the court abused its discretion in reaching these conclusions; our review of the record and relevant case law reveals none."

Plaintiffs' baseless claim that Jalol Khaidarov's mother was killed in Uzbekistan by an automobile accident arranged by Ivankov operating from jail 1700 miles away in another country (Russia), in conjunction with Defendant Makmudov, does not alter this analysis. First, as Khaidarov admits in his declaration (but which Plaintiffs' brief does not mention), the police investigated this death and found no criminal conduct.[5] (Pls. Br., Ex. A at ¶ 37.) Plaintiffs also fail to explain why this death in Uzbekistan renders **Delaware** a proper forum, particularly since both Khaidarov and Traum live in Israel (Am. Compl. ¶¶ 120 & 126), or why this death establishes that Russia (which is a different country from Uzbekistan) must be rejected as a forum. Indeed, as Plaintiffs concede, treaties are in place that will allow testimony of these witnesses to be taken outside Russia and then presented in Russia. (Pls. Br. 25, n.11.)

Moreover, Plaintiffs' claim that Khaidarov and Traum are the "main witnesses to the narrower allegations of this case" (Pls. Br. 25) is easily proven false by Plaintiffs' own submissions. As to Khaidarov, the pleadings allege that he served as GOK's general director from late 1998 until January 2000, long before Plaintiffs' shares were allegedly taken, so the pleadings indicate that he has no knowledge concerning the "narrower allegations." (Pls. Br. Ex. A at ¶¶ 11-12; Am. Compl. ¶¶ 89–114.) And Traum, who does not submit any sworn statement on this motion, is also not alleged to have played any role in the events underlying the "narrower allegations." Rather, he is identified as Davis's managing director "authorized" to represent the interests of Holdex and Omni (although, since no allegation states when that representation started or ended, it is unclear whether he was so authorized at any relevant time). (Am. Compl. ¶ 121.) At most, Plaintiffs' allegations make Traum and Khaidarov witnesses to the background

---

[5]    Although Khaidarov contends that the Uzbeki police investigation was not "proper" (Pls. Br. Ex. A at ¶ 37), Defendants understand that the investigation was thorough, including an interrogation of the driver by a technical expert, and that it concluded that there was no criminal conduct involved. Further, while Plaintiffs characterize this death as a "hit-and-run" (Pls. Br. 9), Defendants understand that the police report indicates no such conduct was involved in this accident. Given this report, which Defendants intend to file with the Court when it is properly translated, perhaps Plaintiffs' counsel was wisely constrained by Rule 11 in deciding not to include allegations about this death – which occurred in November of 2004 – in either the Amended Complaint or the new Delaware Chancery Court proceeding filed in April.

facts, but hardly the main witnesses to Plaintiffs' "narrower allegations." Instead, those main witnesses are overwhelmingly in Russia, including the numerous Russian judges involved in the allegedly corrupt decisions transferring Plaintiffs' shares.

Significantly, despite Plaintiffs' pleas in the *Base Metal Trading* case that their witnesses were afraid of appearing in Russia, Plaintiffs were actually litigating various claims relating to this case in Russia, and, specifically, in Moscow, while the *Base Metal Trading* case was pending and even after the dismissal of that case. (*See, e.g.*, A 2170 (October 30, 2003 regarding Foston); A 2283 (August 13, 2003 decision regarding Foston); A 2205 (July 2, 2004 decision of the Moscow City Court regarding Foston); A 2269 (September 10, 2002 decision regarding Holdex); A 2143 (February 4, 2003 decision regarding Holdex); A 2150 (May 20, 2003 decision regarding Holdex); A 2197 (April 27, 2004 decision regarding Holdex).) In fact, Plaintiffs continued to litigate in Russia and in Moscow even after **this** action was commenced. (*See, e.g.*, Declaration of Paul B. Stephan, executed March 23, 2005 and submitted to this Court in support of Defendants' Motion on March 31, 2005, ¶ 56, referring to A 2221 (decision dated December 7, 2004, in which the Chair of Moscow City Court affirmed a decision rejecting the exercise of supervisory jurisdiction over a 2003 decision concerning all of the Plaintiffs here and others).)

Plaintiffs have failed to rebut the inescapable conclusion that this case is merely another attempt at impermissible forum shopping. (Pls. Br. 23). Judge Koeltl's findings in *Base Metal Trading* (253 F. Supp. 2d at 698), explicitly affirmed by the Second Circuit (98 Fed. Appx. at 49), are equally applicable here.

> There is no indication that the parties anticipated litigating in the United States or that the choice of this forum is based on true motives of convenience. Instead, having pursued various remedies in the Russian court system with unsatisfactory results, the plaintiffs now seek to take their case to the United States. Such a tactical maneuver is not protected by the deference generally owed to the plaintiffs' choice of forum.

### b.   No New Material Fact Requires Re-Analysis of the Private Interest Factors Relevant to the Prior Dismissal

Plaintiffs assert that the convenience of party and non-party witnesses must be re-analyzed in a new *forum non conveniens* motion in this case because their claims here, without the NKAZ and the GOK creditor claims, are allegedly "narrower than the claims in *Base Metal*." (Pls. Br. 24 & 25.)  However, the propriety of litigating these claims with these witnesses in this country was fully considered by Judge Koeltl.  In fact, the New York District Court reviewed the "extensive list of non-party witnesses in Russia from whom evidence would be critical" concerning the GOK allegations (253 F. Supp. 2d at 710):

> This includes Sverdlovsk Oblast Governor Roussel; former GOK general director Khaidarov who was allegedly ordered to convince GOK's shareholders to transfer their shares to the Conspirators; the unnamed GOK shareholders; the "armed thugs" who took over GOK and their supporters in the regional authorities; employees of Leybout, which allegedly held a false $39 million promissary [sic.] note from GOK; Oleg Kozyrev, who became Provisional and External Manager of GOK after its bankruptcy; employees of VRK Company; and the judges who presided over the allegedly corrupt bankruptcy proceedings as well as the cases allegedly illegally transferring the Davis Plaintiffs' shares.

Although Plaintiffs claim they can prove their case with Defendants' witnesses and with "willing witnesses" (Pls. Br. 5-8), these non-party witnesses remain critical to Plaintiffs' allegations and they, as well as Defendants' witnesses, are located in Russia.  Plaintiffs present no reason to disregard the *Base Metal Trading* finding, affirmed on appeal (98 Fed. Appx. at 51), that "the striking number of Russian parties and witnesses involved in the case demonstrates the extreme inconvenience of bringing this case to trial in the United States" (253 F. Supp. 2d at 711).

Plaintiffs assert that, by suing here, they will be able "to compel the defendant Delaware corporations, as well as the Delaware Real Estate Entities, to produce documents and witnesses for deposition" (Pls. Br. 22).  This same assertion was rejected in New York (253 F. Supp. 2d at 711):

> The plaintiffs contend that such a list [of Russian-based witnesses] overlooks the fact that the plaintiffs allege predicate acts for their RICO claims that occurred in United States. These acts primarily include the laundering and transfer of funds through American banks. However, the relevant allegations that may involve witnesses located in the United States pale in comparison to those involving persons and companies located in Russia.

The fact that this case is the same as that pleaded in *Base Metal Trading*, and the New York District Court's findings as to the private interest factors are equally applicable here – "[t]he bulk of the important documentary evidence in this case is also located in Russia;" "[t]he need for extensive document translation supports a finding that this forum is inconvenient;" "[t]he substantial degree to which it appears that Russia and the Russian language outweigh the United States and English in the location and format of many of documents demonstrates the high burden of putting such evidence to use in this Court;" and "[a]ccess to sources of proof thus tips heavily in favor of Russia." *Id.* at 711-12.

### c. No New Material Fact Requires Re-Analysis of the Public Interest Factors Relevant to the Prior Dismissal

Plaintiffs seek a re-analysis of the public interest factors relevant to the prior *forum non conveniens* dismissal based on the sensationalist claim that Delaware "has a strong interest in preventing Russian criminal elements from infiltrating Delaware to use it as the corporate basis for their schemes." (Pls. Br. 26-27.) This is no different than the assertion – made clearly in a brief heading – that was rejected in *Base Metal Trading* that "**The US** Has a Strong Interest in Protecting Its Citizens From Criminal Conduct and **Preventing America** from Being Used as a Base For Criminal Conduct." (A 415; s*ee also* Cohen Dec. Ex. D at 12 (similar argument made on appeal).)

Plaintiffs next assert that this case differs from *Base Metal Trading* because in *Base Metal Trading* they sought "relief under RICO and non-U.S. law" but they now assert only a RICO claim and hence, they claim, only American law applies. (Pls. Br. 26.) However, because the RICO claim here is identical to the RICO claim previously asserted, the dependence on

Russian law to adjudicate that RICO claim is unchanged. (*See supra* at 4 (admission by Plaintiffs that Russian bankruptcy decisions are critical to their RICO claim).) Moreover, as discussed above, 87 Russian decisions are implicated in the Amended Complaint. (*See, e.g.,* Am. Compl. ¶¶ 83, 86, 96, 99-100, 105-06, 108, 110-11, 113 & 117.) Thus, as the New York District Court held, this factor "weighs heavily in favor of dismissing this case in favor of a Russian forum." *Base Metal Trading*, 253 F. Supp. 2d at 712.

Finally, Plaintiffs selectively quote the *Base Metal Trading* decision to suggest that the New York District Court focused only on whether it would be unfair to require a New York jury to sit on this case. (Pls. Br. 27.) In fact, the New York District Court fully considered the interest of the entire United States in dismissing Plaintiffs' claim (253 F. Supp. 2d at 712-13):

> The third and fourth factors weigh strongly in favor of dismissal. Russia's interest in adjudicating this action is far greater than any interest the United States has in adjudicating this dispute. It would be unfair to require a New York jury to sit on this case. The plaintiffs' claims involve the bankruptcies of two major Russian companies. These bankruptcies were allegedly part of a larger scheme to take over the Russian aluminum and vanadium industries. The plaintiffs contend that the illegal scheme involved high level Russian politicians, as well as numerous members of the Russian judiciary. The controversy presents issues that are of clear import to Russian citizens that should be resolved by the Russian courts. By contrast, the case has virtually no connection with the United States or this district.

### d. No New Material Fact Requires Re-Analysis of the Adequacy of the Moscow Arbitrazh Court

Plaintiffs attempt to resuscitate their argument – flatly rejected in *Base Metal Trading* – that the Moscow Arbitrazh Court is corrupt and therefore cannot be an adequate forum. *Base Metal Trading*, 251 F. Supp. 2d at 705-06. Plaintiffs' allegations of corruption remain purely conclusory and, given that Plaintiffs failed to assert their claims in the Moscow Arbitrazh Court following the *Base Metal Trading* dismissal, Plaintiffs clearly cannot meet the requirement of showing that any decision in the Moscow Court was tainted by corruption "with respect to them." *Base Metal Trading*, 98 Fed. Appx. at 50. *See also Base Metal Trading*, 253 F. Supp. 2d at 704 & 708 (requiring a showing of corruption "in the underlying proceeding" and finding that public

testimonials about problems facing the Russian judicial system "do not demonstrate that **the plaintiffs** cannot obtain relief within the Russian courts") (emphasis added).  Further, the New York District Court has already found that Plaintiffs failed to show corruption in other decisions involving them from the Moscow Arbitrazh Court, including "decisions which are clearly at the core of the plaintiffs' case."  *Id*. at 709.  (*See also* Defs. Br. 10 n.8 (referencing two "core" decisions relating to GOK claims, one of which is from a Moscow court).)[6]  Moreover, because Defendants have consented "to any venue in Russia that may be selected by Plaintiffs" should this case be dismissed on *forum non conveniens* grounds, Plaintiffs' claim that Moscow courts are corrupt is irrelevant.  (*See* Oberly Affidavit submitted with Opening Briefs, ¶ 7, and Exs. 5-13.)

Plaintiffs rely on an Eleventh Circuit decision, *Leon v. Million Air, Inc*., 251 F.3d 1305 (11th Cir. 2001) – which they miscite as *Leon v. Miller* – to claim that Defendants bear the burden of  "proving that Russia offers an adequate forum in the Moscow Arbitrazh court."  (Pls. Br. 29.)  The New York District Court found that *Leon* did not apply, but that, even if it did, "the defendants have satisfied their ultimate burden of showing that Russia is an adequate alternative forum."  *Base Metal Trading*, 253 F. Supp. 2d at 699, n.13.  This finding applies equally here.

---

[6]     Failing to make any allegation of specific corruption, Plaintiffs instead argue that all Moscow courts are generally corrupt by offering unsubstantiated allegations about the fairness of criminal litigation involving principals of Russia's Yukos Oil Company.  The Yukos case is immaterial to the issue of whether Russia is an adequate forum for Plaintiffs' claims, and Plaintiffs' allegations about this unrelated case fail to meet any standard of proof that would justify rejecting all Moscow courts as inadequate.  *See, e.g*., *Base Metal Trading*, 253 F. Supp. 2d at 704-09 (Russian courts adequate); *Varnelo v. Eastwind Transport, Ltd*., 2003 WL 230741 (S.D.N.Y. Feb. 3, 2003); *Pavlov v. Bank of New York Co., Inc.*, 135 F. Supp. 2d 426 (S.D.N.Y. 2001), *vacated on other grounds and remanded,* 2002 WL 63576 (2d Cir. Jan. 14, 2002), *dismissed by,* 2002 WL 31324097 (S.D.N.Y. October 16, 2002).

Likewise, the reference to the prospectus published by Evraz Group, S.A., as an "admission" should be disregarded.  The statement does not "admit" that all Moscow courts are incapable of providing justice, as Plaintiffs argue, but merely cautions potential investors that the Russian judicial system may be subject to political and nationalistic influences.  And it is merely one of 40 possible risks to investors set forth in the entire "Risk Factors" section of the prospectus, which Plaintiffs fail to submit.  (Cohen Dec. Ex. F.)  The District Court in *Base Metal Trading* rejected nearly identical arguments based on similar evidence finding that consideration of such risk disclosures made in offering materials to potential investors would be "unnecessary to the disposition of the current motion."  (*See* Cohen Dec. Exs. G & H (rejecting plaintiffs' plea for discovery concerning an alleged "admission" that "Russian courts are corrupt" made in a securities offering document issued by the parent of one of the corporate defendants in that case).)

**II.    No Equitable Doctrine Bars Defendants From Seeking Dismissal**

Unable to identify any material difference between their claim here and those they asserted in *Base Metal Trading*, Plaintiffs argue instead that, because Defendants removed this case to federal court, various equitable doctrines – waiver, unclean hands and estoppel – preclude Defendants from seeking dismissal.  (Pls. Br. 12-16.)  Not a single case even remotely supports Plaintiffs' position.[7]  Indeed, *Piper Aircraft Co.*, the case on which Plaintiffs principally rely (Pls. Br. 13), is a Supreme Court affirmance of a trial court's *forum non conveniens* dismissal of a **removed** case.  *Piper Aircraft Co.*, 454 U.S. 235 (1981).[8]

Moreover, after conceding in a footnote that courts "implicitly permit removed cases to be dismissed for *forum non*" (Pls. Br. 12 n.6), Plaintiffs ignore the one case on point, which specifically rejects their position:  in *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 835 (5th Cir. 1993), the Fifth Circuit expressly held that removal did not estop a defendant from bringing a *forum non conveniens* motion.  *See also Sempra Energy Trading Corp. v. Algoma Steel*, 300 F.3d 242 (2d Cir. 2002) (*forum non conveniens* dismissal after removal); *Gschwind v. Cessna Aircraft Co.*, 232 F.3d 1342 (10th Cir. 2000) (same); *Camejo v. Ocean Drilling and Exploration*, 838 F.2d 1374 (5th Cir. 1988) (affirming *forum non conveniens* dismissal of removed state claims following dismissal of federal claims); *Brice v. C.R. England, Inc.*, 278 F. Supp. 2d 487 (E.D. Pa. 2003); *In Re Union Carbide Corp. Gas Plant Disaster*, 1992 WL 36135 (S.D.N.Y. 1992) (*forum non conveniens* dismissal after removal and transfer), *aff'd*, 984 F.2d 582 (2d Cir. 1993).

---

[7]    The Third Circuit suggested in *Reyno v. Piper Aircraft Co.*, 630 F.2d 149 (3d Cir. 1980), *rev'd*, 454 U.S. 235 (1982), that a litigant might be estopped from arguing *forum non conveniens* based on a motion to transfer under 28 U.S.C. § 1404, since such a motion was based on a claim that the transferee court was convenient.  It did not suggest any such finding based on the defendants' mere removal of the case.

[8]    The only other citation offered by Plaintiffs is to a single law review article that proposes a new standard for *forum non* decisions – one that no federal court has ever adopted.  There is no basis for this Court to do so here.

Plaintiffs' contention that defendants "waived" a *forum non conveniens* dismissal by removal is also specious.  (Pls. Br. 14.)  As noted *supra*, courts repeatedly have dismissed removed cases based on *forum non conveniens* grounds.  Courts have also held that *forum non conveniens* cannot be waived because of the public interest factors involved.  *See Russell Corp. v. American Home Assur. Co*., 264 F.3d 1040 (11th Cir. 2001); *Archdiocese of Milwaukee v. Underwriters at Lloyds, London*, 955 F. Supp. 1066 (E.D. Wis. 1997).

Plaintiffs base their waiver argument on 19th century cases that are plainly inapposite because they address the issue of the Court's jurisdiction.[9]  (Pls. Br. at 12-14.)  However, a *forum non conveniens* dismissal is not a dismissal for lack of jurisdiction; *forum non conveniens* applies where jurisdiction is proper but the court exercises its inherent power to control its own docket.  *Gulf Oil v. Gilbert*, 330 U.S. 501, 504 & 507 (1947) ("[t]he principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute").  Further, the law is clear that removal does not waive objections to jurisdiction or to venue.  *See Morris & Co. v. Skandinavia Ins. Co*., 279 U.S. 405, 409 (1924) (jurisdiction); *PT United Can Company Ltd. v. Crown Cork & Seal Company, Inc*., 138 F. 3d 65, 73 (2d Cir. 1998) (venue). This is entirely logical, since, by removing, Defendants merely exercised a statutory right that existed because Plaintiffs insisted upon re-asserting federal RICO claims.[10]

In summary, no equitable doctrine precludes Defendants from seeking this dismissal.

---

[9]    To the extent these cases suggest that a removal petition waives objections to personal jurisdiction, they have been overruled by *Morris & Co*., 279 U.S. 405. *See also Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574 (1999) (objections to subject matter jurisdiction unwaivable).

[10]    Likewise, Plaintiffs' assertion that they should be excused for failing to file a motion pursuant to Fed. R. Civ. P. 60(b) (Pls. Br. 30-31) is baseless.  Because Plaintiffs re-filed a case with a federal claim that was properly removed pursuant to federal rules, Plaintiffs cannot now seek to avoid application of those rules.

III.    **Plaintiffs Should Be Enjoined From Conducting Additional Litigation**
        **Based On The Facts Alleged In The First Amended Complaint**

    A.    **Plaintiffs Can And Should Be Enjoined From Filing Any New Actions**

       Plaintiffs have demonstrated that they will continue to file actions against Defendants notwithstanding the determination that this dispute belongs in Russia.  An injunction is thus necessary to prevent further abuse of the judiciary.  *E.g.*, *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986); *see also Thomas v. Connecticut General Life Ins.*, 2003 WL 22953189 at *3 (D. Del. 2003).  This Court is empowered to prevent abusive litigation where, as here, a plaintiff files repetitive and duplicative claims against a defendant.  *See In re Packer Ave. Assoc.*, 884 F.2d 745, 747 (3d Cir. 1989); *Bamdad Mechanic Co., Ltd. v. United Technologies Corp.*, 109 F.R.D. 128, 134 (D. Del. 1985).  Moreover, because the Anti-Injunction Act only prohibits injunctions against pending state proceedings, it does not apply to bar an injunction against future state actions. (Defs. Br. at 30.)  *See Vendo Co. v. Lektro Vend Corp.*, 433 U.S. 623, 635 n.6 (1977) (Rehnquist, Ch. J.)(plurality).

       Citing *Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 882 F.2d 806 (3d Cir. 1989) (Pls. Br. 32), Plaintiffs contend that there is a "fundamental principle" that a court cannot grant an injunction until jurisdictional challenges are resolved.  *Ortho* says no such thing.  Rather, *Ortho* addressed only whether the Federal Arbitration Act deprived a court of subject matter jurisdiction to grant injunctive relief.[11]  Moreover, the one Circuit Court that has considered this issue has expressly permitted the analysis of a *forum non conveniens* motion without first addressing jurisdictional issues, thereby rejecting Plaintiffs' assertion that a fundamental principle exists to do otherwise.  *In re Arbitration between Monegasque De Reassurances S.A.M. v. NAK Naftogaz of Ukraine*, 311 F.3d 488, 497 (2d Cir. 2002) ("The district court in the case at bar failed to address the jurisdictional issue raised by Ukraine's motion, proceeding instead to the forum non

---

[11]     By quoting only part of a sentence from *Ortho*, Plaintiffs omit key language that shows that the issue involved "a dispute that the parties agree is arbitrable."  *Ortho Pharmaceutical Corp.*, 882 F.2d at 811.

conveniens issue raised in that same motion.  We think that it was acceptable for the district court to do so."); *see also Base Metal Trading*, 253 F. Supp. 2d at 692 n.6.

Plaintiffs also erroneously argue that Defendants must meet the traditional four-part test for preliminary injunctive relief to stop this vexatious litigation.  (Pls. Br. 39-40.)  Defendants are not requesting preliminary relief, and such standards do not apply to requests to enjoin duplicative litigation.  *See Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1004-05 (8th Cir. 1993); *In re Hartford Textile Corp.*, 681 F.2d 895 (2d Cir. 1982).

**B.     Plaintiffs Can And Should Be Enjoined From Litigating in Delaware**

In a blatant evasion of Congress's mandate in the removal statute, 28 U.S.C. § 1446, Plaintiffs filed a new action in Chancery Court asserting the same factual allegations and the same two state law claims that they dismissed from this action, as well as two new ancillary claims.  (*See* Cohen Dec. Ex. C.)  Plaintiffs also refused to stay the Chancery Court action pending a decision on this motion, thereby forcing Defendants to file new motions to dismiss despite the fact that this Court may enjoin Plaintiffs from proceeding there.  (Cohen Dec. ¶ 5.) This duplicative litigation is not only harassing, but it is a waste of judicial assets should this Court grant Defendants the relief they request.  Courts have awarded costs, expenses, and attorney's fees for this type of bad faith manipulation.  *See, e.g., Bradford v. Olympic Courier Systems, Inc.*, 1997 WL 570720 (E.D.N.Y. Sept. 2, 1997).

This Court can and should enjoin Plaintiffs from proceeding with the Delaware Chancery Court action.  Such an injunction does not run afoul of the Anti-Injunction Act because the Act permits an injunction against state court proceedings when "expressly authorized by Act of Congress."  28 U.S.C. § 2283.  The removal statute is such an express authorization.  *See Mitchum v. Foster*, 407 U.S. 225, 234 (1972) ("legislation providing for the removal of litigation from state to federal courts" provided such an express authorization); *Vendo Co.*, 433 U.S. at 640 (removal statute, while not directly referring to the Anti-Injunction Act, nonetheless explicitly authorized injunctive relief against state court proceedings) (Rehnquist, Ch. J.)(plurality).

Indeed, plaintiffs who subvert removal, like these Plaintiffs, can and should be enjoined because the federal court is empowered to prevent frustration of the specific and unique federal right of removal. *See Kansas Public Employees Retirement Sys. v. Reimer & Koger Assocs., Inc*., 77 F.3d 1063, 1070 (8th Cir. 1996) (injunction affirmed where subsequent state court action filed "to subvert the removal of the earlier case" and plaintiff had "merely tried to 'carve up what was one case into separate cases with separate claims'"); *Brown v. Seaboard Coast Line RR. Co.*, 309 F. Supp. 48, 50 (N.D. Ga. 1969) (enjoining second wrongful death action adding a new defendant after the initial action because "the causes of action are the same" and the "filing of the subsequent suit by the plaintiff found to be an attempt to evade federal jurisdiction, and to frustrate totally the whole purpose of the removal statute"); 17 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Civil* § 4224, at 520-21 (2d ed. 1988).[12]  *See also Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1378-79 (9th Cir. 1997) (removal statute provides an exception to the Anti-Injunction Act where the second filed state court case "was filed for the purpose of subverting the removal of a prior case" but injunction denied where there was "no . . . evidence of deliberate attempt to subvert the rulings and jurisdiction of the district court").

In *Daniel Boone Area School Dist. v. Lehman Bros., Inc.*, 187 F. Supp. 2d 414, 418 (W.D. Pa. 2002), a District Court in this Circuit articulated the compelling rationale for enjoining a second state action filed for the purpose of evading the removal statute:

> [I]f a federal court could not enjoin a duplicative state action designed to subvert removal jurisdiction, a plaintiff with sufficient ingenuity could always file a second suit in state court that was specifically crafted to be non-removable and then dismiss his federal action, thereby evading removal.  While artful pleading designed to keep a case in state court is initially the prerogative of the plaintiff, it can subvert the proper jurisdiction of the federal court when it is done following removal.

---

[12]  *Brown* called the second action a "sham" because that action improperly "sought exactly the same damages for exactly the same injuries as the first case and its filing could only be explained as an attempt to defeat removal."  *See also Myers v. Hertz Penske Truck Leasing, Inc.*, 572 F. Supp. 500, 502 (N.D. Ga. 1983) (granting injunction).  The identical situation is present here:   Plaintiffs' Delaware complaint is based on the same events as this case.

Duplicative filings designed to evade removal amount to inappropriate forum-shopping which can lead to injustice and confusion.

Although the facts in *Daniel Boone* prevented the Court from entering the requested injunction, this case is not even a close call. Plaintiffs have done almost exactly what the judge in *Daniel Boone* feared; the only difference is that, rather than dismissing the initial action in this Court, Plaintiffs amended the complaint pending here to delete the particular causes of action that they then reasserted in a state court filing using the identical factual allegations as in the removed case.

In *Fischman v. Fischman*, 470 F. Supp. 980, 984 (E.D. Pa. 1979), another Court in this Circuit reiterated the point: a "plaintiff may not … attempt to avoid the effect of the removal statutes." And, while the Court declined to grant an injunction because plaintiff's actions showed that she had misunderstood the effect of removal and because plaintiff made clear that she would not pursue the state court action, the Court nonetheless declared null and void plaintiff's reinstitution of the removed action in state court. In contrast, Plaintiffs here have not misunderstood the effect of removal; they have deliberately sought to evade that effect.

In fact, no case cited by Plaintiffs (and no case found by Defendants) declines to issue an injunction where, as here, a plaintiff filed a second state action for the purpose of subverting removal. Similarly, all of the cases cited by Plaintiffs are readily distinguishable because they do not involve an effort to evade Congress's mandate in the removal statute and hence do not prohibit this Court from granting an injunction under the circumstances present here.[13] For

---

[13]     Plaintiffs concede that in *Barancik v. Investors Funding Corp. of N.Y.*, 489 F.2d 933 (7th Cir. 1973), the Seventh Circuit, in an opinion written by Judge (now Justice) Stevens, held that the Anti-Injunction Act does not apply where a state proceeding is commenced after an injunction is sought in an earlier filed federal action. In fact, in addition to the Seventh Circuit, two other Circuits have adopted *Barancik's* reasoning, and three Circuits have rejected it, creating a split in the Circuit Courts that the Supreme Court has not addressed. *See Hyde Park Partners, L.P. v. Connolly*, 839 F.2d 837, 842 n.6 (1st Cir. 1988) (Anti-Injunction Act does not apply to cases commenced after injunction was requested); *National City Lines, Inc. v. LLC Corp.*, 687 F.2d 1122, 1127 (8th Cir. 1982) (same); *Roth v. Bank of the Commonwealth*, 583 F.2d 527 (6th Cir. 1978) (Act should be applied regardless of the order in which the actions were filed ); *Royal Ins. Co. v. Quinn-L Capital Corp.*, 3 F.3d 877, 884-86 (5th Cir. 1993) (same, noting Circuit split); *Denny's, Inc. v. Cake*, 364 F.3d 521, 529-31 (4th Cir. 2004) (same). The Third Circuit has recognized the Circuit split but has not ruled on the issue. *Kennecott Corp. v. Smith*, 637 F.2d 181, 187 n.5 (3d Cir. 1980).

- 20 -

example, Plaintiffs cite *Roth v. Bank of the Commonwealth*, 583 F.2d 527 (6th Cir. 1978) (Pls. Br. 33), but that case explicitly limits its holding to cases "where the actions were never removed from state court." *Id.* at 536 n.5.  Likewise, Plaintiffs can find no support in *Standard Microsystems Corp. v. Texas Instruments Inc.*, 916 F.2d 58 (2d Cir. 1990), or *Kennecott Corp. v. Smith*, 637 F.2d 181 (3d Cir. 1980) (Pls. Br. 33-34).  Neither case involved an attempt to subvert removal or an injunction motion that was pending at the time that plaintiff filed the second state case.  *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engin.*, 398 U.S. 281 (1970) (Pl. Br. 32), also did not involve a removal, much less a plaintiff's evasion of the removal statute, and the Supreme Court did not discuss the removal statute's authorization of injunctions against state proceedings or any other aspect of the "expressly authorized" exception to the Anti-Injunction Act.  *Id.* at 283.  And not only was there no removal in *United States Steel Corp. Plan for Employee Ins. Benefits v. Musisko*, 885 F.2d 1170 (3d Cir. 1989) (Pls. Br. 32 n.15), but Plaintiffs fail to tell this Court that the Third Circuit quoted *Mitchum* in listing six instances "of permissible federal injunctions against state proceedings:  (1) removal from state to federal court . . . ."  *Id.* at 1176 n.3.

   *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140 (1988), on which Plaintiffs heavily rely (Pls. Br. 3 & 38), is inapplicable.  In that case, there was no removal, and therefore no evasion of removal.  *Id.* at 148-49.  Unlike *Chick Kam Choo*, Defendants seek to enjoin Plaintiffs from proceeding in the Delaware action not because of the prior *forum non conveniens* dismissal, but because Plaintiffs subverted removal by bringing a baseless and harassing lawsuit.

---

   Although Plaintiffs urge this Court to make a determination rejecting Justice Stevens' reasoning based on an irrational argument (Pls. Br. 33-34), this Court need not reach this issue:  as demonstrated above, this Court can and should issue an injunction based on Plaintiffs' conduct in subverting removal and filing vexatious and harassing pleadings.  Indeed, although the Fifth Circuit in *Royal Ins. Co.* rejected *Barancik*'s holding, that Court also expressly held in *Frith v. Blazon-Flexible Flyer, Inc.*, 512 F.2d 899, 901 (5th Cir. 1975), that "where a district court finds that a second suit filed in state court is an attempt to subvert the purposes of the removal statute, it is justified and authorized by § 1446(e) in enjoining the proceedings in the state court."

Plaintiffs also distort the holding in *Frith v. Blazon-Flexible Flyer, Inc.*, 512 F.2d 899, 901 (5th Cir. 1975) (Pls. Br. 35) by suggesting that *Frith* holds that the absence of fraudulent joinder precludes an injunction. In fact, Plaintiffs delete the word "[n]ormally" from the phrase they quote and ignore the court's preceding statement that, given the circumstances, "[i]mplicit in this finding is the fact that the second suit **was not brought in an attempt to subvert the purposes of the removal statute and was not aimed at defeating federal jurisdiction**." 512 F.2d at 901 (emphasis added).

Plaintiffs likewise misrepresent the applicability of *Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987), which determined that "a federal court may enter an injunction" where a second state court suit is filed "in an attempt to subvert removal of a prior case." *Id.* at 740. Indeed, although Plaintiffs assert that the circumstances here are "similar" to those in *Lou*, that case shows a clear distinction between second suits that were filed legitimately and second suits that were, like here, filed as an attempt to subvert removal and evade federal jurisdiction. In *Lou*, the plaintiffs did not dismiss their state law claims and then re-file them in state court; instead, the state court action that the court refused to enjoin involved "different plaintiffs," "additional counsel" and "additional defendants." *Id.* at 741. In contrast, the Plaintiffs here re-filed the **same** claims that they dismissed here with the **same** Plaintiffs, the **same** counsel, and the **same** Defendants.[14]

In fact, Plaintiffs' conduct since Defendants requested an injunction dramatically confirms the necessity of injunctive relief. At the telephone conference with the Court on April

---

[14]    Plaintiffs' remaining arguments are hardly worthy of comment. Plaintiffs cite two cases for the proposition that litigants may pursue simultaneous state and federal actions based on the same facts (*Marks v. Stinson*, 19 F.3d 873, 885 (3d Cir. 1994); *Gwynedd Properties, Inc., v. Lower Gwynedd Township*, 970 F.2d 1195, 1203 (3d Cir. 1992); Pls. Br. 35). But, as Plaintiffs' counsel should know since he was the plaintiff in one of those cases, this proposition applies to the wholly inapposite situation of a federal court deciding whether to abstain or suspend its own proceedings in deference to a legitimate state case. Neither case involves an injunction against a state proceeding, much less an injunction against a state case filed in an attempt to subvert a prior removal. Likewise, Plaintiffs' discussion of the "re-litigation" exception to the Anti-Injunction Act (Pls. Br. 37-39) is irrelevant because Defendants do not rely on that exception.

13, 2005, Plaintiffs admitted to this Court that they will not stop trying to refile this case even if it

is dismissed with prejudice.

> THE COURT:  No.  They may have chosen this forum because they
> wanted the opportunity to do just what they are doing and say, Judge,
> this has already been decided in Federal Court, you need to throw it out.
>
> MR. MARKS:  What's the point of that, Your Honor?  We file in state
> court again.

(Cohen Dec., Ex. E, 27:10-27:15).  It is therefore clear that dismissals and judicial instructions as

to the proper forum will not deter Plaintiffs from subjecting Defendants to repeated improper

lawsuits.  Rather, it will clearly take an injunction.  We ask the Court to enter one at this time.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court dismiss

Plaintiffs' Amended Complaint with prejudice and enjoin Plaintiffs from suing Defendants

elsewhere.

Respectfully submitted,

Attorneys for Defendants Arnold Kislin:

/s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)     Lisa C. Cohen
Karen V. Sullivan (DSBA No. 3872)          Schindler Cohen & Hochman LLP
Oberly, Jennings & Rhodunda, P.A.          100 Wall Street
800 Delaware Avenue, Suite 901             15th Floor
PO Box 2054                                New York, NY  10005
Wilmington, DE 19899                       (212) 277-6300
(302) 576-2000

                                           Lawrence S. Goldman
                                           Elizabeth Johnson
                                           The Law Offices of Lawrence S. Goldman
                                           500 Fifth Ave., 29th Floor
                                           New York, NY 10110-2900
                                           (212) 997-7499

- 23 -

Attorneys for Defendants New Start
Group Corp. and Venitom Group:

/s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)      Richard J. Schaeffer
Karen V. Sullivan (DSBA No. 3872)          Peter J. Venaglia
Oberly, Jennings & Rhodunda, P.A.          Laura D. Sullivan
800 Delaware Avenue, Suite 901             Dornbush, Schaeffer, Strongin &
PO Box 2054                                Weinstein, LLP
Wilmington, DE 19899                       747 Third Avenue, 11th Floor
(302) 576-2000                             New York, NY 10017
                                           (212) 759-3300


Attorneys for Defendant Oleg Deripaska:

/s/ Collins J. Seitz, Jr.
Collins J. Seitz, Jr. (DSBA No. 2237)      Rodney F. Page
Kevin F. Brady (DSBA No. 2248)             Michael G. Biggers
Connolly Bove Lodge & Hutz LLP             Bryan Cave LLP
1007 North Orange Street                   700 13th Street, N.W.
P.O. Box 2207                              Washington, D.C. 20005-3960
Wilmington, DE 19899                       (202) 508-6002
(302) 658-9141


Attorneys for Defendant Evraz Holding:

/s/ William M. Lafferty
William M. Lafferty (DSBA No. 2755)        David H. Herrington
Morris, Nichols, Arsht & Tunnell           Vitali Rosenfeld
Chase Manhattan Centre, 18th Floor         Cleary Gottlieb Steen & Hamilton LLP
1201 North Market Street                   One Liberty Plaza
P.O. Box 1347                              New York, NY 10006
Wilmington, DE 19899-1347                  (212) 225-2266
(302) 575-7341

Attorneys for Defendant MDM Bank:

 /s/ Richard I.G. Jones, Jr.
Richard I.G. Jones, Jr. (DSBA No. 3301)     Joel B. Kleinman
Ashby & Geddes                              Steven J. Roman
222 Delaware Avenue, 17th Floor             David H. Greenberg
P.O. Box 1150                               Dickstein Shapiro Morin & Oshinsky LLP
Wilmington, DE 19899                        2101 L Street NW
(302) 654-1888                              Washington, DC 20037-1526
                                            (202) 785-9700


Attorneys for Defendant Ural-Gorno
Metallurgical Company:

 /s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)       William H. Devaney
Karen V. Sullivan (DSBA No. 3872)           Heard & O'Toole LLP
Oberly, Jennings & Rhodunda, P.A.           405 Lexington Ave, Floor 62
800 Delaware Avenue, Suite 901              New York, NY 10174
PO Box 2054                                 (212) 307-5500
Wilmington, DE 19899
(302) 576-2000


Attorneys for Defendant Iskander
Makmudov:

/s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)       William H. Devaney
Karen V. Sullivan (DSBA No. 3872)           Heard & O'Toole LLP
Oberly, Jennings & Rhodunda, P.A.           405 Lexington Ave, Floor 62
800 Delaware Avenue, Suite 901              New York, NY 10174
PO Box 2054                                 (212) 307-5500
Wilmington, DE 19899
(302) 576-2000

Attorneys for Defendant Mikhail Chernoi:

/s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)          Brian Maas
Karen V. Sullivan (DSBA No. 3872)              Cameron A. Myler
Oberly, Jennings & Rhodunda, P.A.              Frankfurt Kurnit Klein & Selz PC
800 Delaware Avenue, Suite 901                 488 Madison Avenue, 9th Floor
PO Box 2054                                    New York, NY 10022
Wilmington, DE 19899                           (212) 980-0120
(302) 576-2000


Attorneys for Defendant Mikhail Nekrich:

/s/ Charles M. Oberly, III
Charles M. Oberly, III (DSBA No. 743)          Paul R. Grand
Karen V. Sullivan (DSBA No. 3872)              Edward M. Spiro
Oberly, Jennings & Rhodunda, P.A.              Morvillo, Abramowitz, Grand, Iason &
800 Delaware Avenue, Suite 901                 Silberberg, P.C.
PO Box 2054                                    565 Fifth Avenue
Wilmington, DE 19899                           New York, NY 10017
(302) 576-2000                                 (212) 880-9510

Dated:  June 27, 2005