```
 1                IN THE UNITED STATES DISTRICT COURT
                  IN AND FOR THE DISTRICT OF DELAWARE
 2
                                - - -
 3

     DAVIS INTERNATIONAL, LLC, HOLDEX, LLC,:  Civil Action
 4   FOSTON MANAGEMENT, LTD., and          :
     OMNI TRUSTHOUSE, LTD.                 :
 5             Plaintiffs,                 :
                                           :
 6        V.                               :
                                           :
 7   NEW START GROUP CORP., VENITOM CORP.  :
     PAN-AMERICAN CORP., MDM BANK          :
 8   URAL-GORNO METALURAGICAL COMPANY      :
     EVRAZ HOLDING, MIKHAIL CHERNOI,       :
 9   OLEG DERIPASKA, ARNOLD KISLIN         :
     MIKHAIL NEKRICH, and ISKANDER         :
10   MAKMUDOV,                             :
               Defendants.                 :  No. 04-1482-GMS
11
                                - - -
12
     DAVIS INTERNATIONAL, LLC,             :  Civil Action
13   HOLDEX, LLC, FOSTON                   :
     MANAGEMENT, LTD., and                 :
14   OMNI TRUSTHOUSE, LTD.                 :
               Plaintiffs,                 :
15                                         :
          V.                               :
16                                         :
     NEW START GROUP CORP.,                :
17   VENITOM CORP.,, PAN-AMERICAN          :
     CORP., MDM BANK, URAL-GORNO           :
18   METALURAGICAL COMPANY,                :
     EVRAZ HOLDING, MIKHAIL CHERNOI        :
19   OLEG DERIPASKA, ARNOLD KISLIN         :
     MIKHAIL NEKRICH, and ISKANDER         :
20   MAKMUDOV,                             :
               Defendants.                 :  No. 04-1483-GMS
21
                                - - -
22
                      Wilmington, Delaware
23                 Wednesday, April 13, 2005
                           2:00 p.m.
24                     Telephone Conference

25   BEFORE: HONORABLE GREGORY M. SLEET, U.S.D.C.J.
```

```
 1    APPEARANCES:

 2              KURT M. HEYMAN, ESQ.
      The Bayard Firm
 3              -and-
      BRUCE S. MARKS, ESQ., and
 4    GENE BURD, ESQ.
      Marks & Sokolov, LLC
 5    (New York, New York)

 6                   Counsel for Plaintiffs

 7    KAREN V. SULLIVAN, ESQ.
      Oberly, Jennings & Rhodunda, P.A.
 8              -and-
      LISA C. COHEN, ESQ., and
 9    JONATHAN L. HOCHMAN, ESQ.
      Schindler, Cohen & Hochman, LLP
10    (New York, New York)
                -and-
11    LAWRENCE S. GOLDMAN, ESQ.
      Law Offices of Lawrence S. Goldman]
12    (New York, New York)

13                   Counsel for Defendant Kislin

14    RICHARD JONES, ESQ.
      Ashby & Geddes
15              -and-
      JOEL B. KLEINMAN, ESQ., and
16    DAVID H. GREENBERG, ESQ.,
      Dickstein Shapiro Morin & Oshinsky LLP
17    (Washington, D.C.)

18                   Counsel for Moscovsky Delovoy
                     Mir Bank
19
      DAVID HERRINGTON, ESQ., and
20    VITALI ROSENFELD, ESQ.
      Cleary Gottlieb Steen & Hamilton
21    (New York, New York)

22                   Counsel for Evraz Holding

23

24

25
```

```
 1  APPEARANCES CONTINUED:

 2          KAREN V. SULLIVAN, ESQ.
            Oberly, Jennings & Rhodunda, P.A.
 3                  -and-
            WILLIAM DEVANEY, ESQ.
 4          Heard & O'Toole, LLP
            (New York, New York)
 5
                    Counsel for Ural-Gorno Metalurgical
 6                  Company and Iskander Madmudov

 7          KAREN V. SULLIVAN, ESQ.
            Oberly, Jennings & Rhodunda, P.A.
 8                  -and-
            BRIAN MAAS, ESQ., and
 9          CAMERON MYLER, ESQ.
            Frankfurt Kurnit Klein & Selz PC
10          (New York, New York)

11                  Counsel for Mikhail Chernoi

12          KAREN V. SULLIVAN, ESQ.
            Oberly, Jennings & Rhodunda, P.A.
13                  -and-
            RICHARD J. SCHAEFFER, ESQ., and
14          PETER J. VENAGLIA, ESQ.
            Dornbush, Schaeffer, Strongin & Weinstein, LLP
15          (New York, New York)

16                  Counsel for New Start Group
                    and Venitom Group
17
            COLLINS J. SEITZ, JR., ESQ., and
18          KEVIN F. BRADY, ESQ.
            Connolly Bove Lodge & Hutz LLP
19
                    Counsel for Oleg Deripaska
20
            KAREN V. SULLIVAN, ESQ.
21          Oberly, Jennings & Rhodunda
                    -and-
22          EDWARD SPIRO, ESQ.
            McRuillo, Abramowitz, Grand, Iason & Silberberg
23          (New York, New York)

24                  Counsel for Nekrich

25
```

```
 1              THE COURT:  Good afternoon, counsel.  Who is on
 2   the line for the plaintiff today?
 3              MR. MARKS:  Bruce Marks.  I believe Peter
 4   Venaglia is on.  And Gene Burd from our office in
 5   Philadelphia.
 6              MR. HEYMAN:  And Kurt Heyman from The Bayard
 7   Firm.
 8              THE COURT:  For defendants.
 9              MS. SULLIVAN:  Your Honor, Karen Sullivan, I
10   represent six defendants, Kislin, Chernoi, Makmudov,
11   Ural-Gorno, New Start and Venitom.  And the out-of-state
12   counsel is on the line as well.
13              THE COURT:  Okay.
14              MR. JONES:  Good afternoon, Your Honor.  Richie
15   Jones at Ashby & Geddes for MDM Bank.  Also on the line for
16   the same defendant is Joel Kleinman and David Greenberg from
17   Dickstein Shapiro in Washington.
18              THE COURT:  Okay.
19              MR. DEVANEY:  Good afternoon, Your Honor.
20   William Devaney from Heard & O'Toole in New York.  I
21   represent Iskander Madmudov and Ural-Gorno.
22              THE COURT:  Okay.
23              MR. MASS:  Brian Mass from Frankfurt Kurnit
24   Klein & Selz in New York.  I am with my colleague Cameron
25   Cameron Myler, we represent Mikhail Chernoi.
```

```
 1              MS. COHEN: Lisa Cohen. I am with the firm
 2   Schindler, Cohen & Hochman in New York. I represent Arnold
 3   Kislin. With me is Lawrence Goldman of the offices of
 4   Lawrence S. Goldman also in New York, also representing Mr.
 5   Kisler, and also Jonathan Hochman.
 6              MR. SCHAEFFER: Good afternoon, Your Honor.
 7   Richard Schaeffer, Dornbush, Schaeffer, Strongin & Weinstein
 8   in New York.
 9              THE COURT: Good afternoon.
10              MR. SCHAEFFER: I am on the telephone with my
11   partner, Peter Venaglia. We together with Ms. Sullivan's
12   firm represent New Start and Venitom.
13              MR. SPIRO: Good afternoon. This is Ed Spiro
14   from McRuillo, Abramowitz, Grand, Iason & Silberberg in New
15   York. We represent Mr. Nekrich.
16              MR. HERRINGTON: Your Honor, David Herrington,
17   Cleary Gottlieb, here with Vitali Rosenfeld, my colleague.
18   We represent Evraz Holding.
19              MR. SEITZ: Your Honor, C.J. Seitz. With me is
20   Kevin Brady. We represent Oleg Deripaska. We have no
21   co-counsel today. We are going it alone.
22              THE COURT: Okay. Is that it?
23              MS. SULLIVAN: Your Honor, Karen Sullivan. One
24   correction for the record. I also am local counsel for
25   Nekrich. Also, Mr. Oberly asked me to apologize to Your
```

1  Honor that he is not available.

2  THE COURT: I know where he is. He is on trial.
3  Okay. All right, then.

4  This is a jointly submitted letter. Is that
5  correct?

6  UNIDENTIFIED SPEAKER: Yes, Your Honor.

7  THE COURT: The issue presented, according to
8  the letter, is whether discovery should be stayed in this
9  matter pending the Court's taking the opportunity to
10 consider and rule on the defendants', I guess it's a
11 collective motion to dismiss. Is that right?

12 UNIDENTIFIED SPEAKER: Yes, Your Honor.

13 THE COURT: Or, in the alternative, to limit
14 discovery to expert depositions directed to the issues
15 raised in the motion to dismiss.

16 Plaintiff resists that proposition and wants to
17 go forward with full merits discovery. Is that correct?

18 MR. MARKS: No. Your Honor, the discovery, Your
19 Honor, that we seek, the limited discovery that we served is
20 directed at opposing defendants' forum non conveniens motion
21 and defendants' comity motion.

22 We are only looking at discovery at this point
23 to oppose the motion to dismiss. The letter doesn't
24 describe what we sought. But however Your Honor would like
25 us to proceed, I would be happy to describe it.

```
 1              THE COURT:  Sure.  Why don't you go ahead.  I am
 2   trying to understand if there is a disagreement.
 3              MR. MARKS:  Sure, if I may.
 4              THE COURT:  Please.
 5              THE COURT:  Who is this?
 6              MR. MARKS:  This is Mr. Marks, Your Honor.  We
 7   have done two things.  The first thing we did is we did our
 8   Rule 26(a) and (b) disclosures.  That is our witnesses and
 9   our sources of evidence.  And we have disclosed who we
10   thought would be the witnesses that we would call in our
11   case.  And we make demand on defendants to make their
12   disclosures.  And their position is that they should not
13   have to do that.
14              We believe, Your Honor, this is relevant because
15   if Your Honor applies the federal forum non conveniens test
16   that is set out in Gulf Oil and the progeny, one of the
17   issues is the private interest factor, and the defendants
18   would need to prove that litigating this case in the United
19   States would be oppressive and vexatious out of all
20   proportion to the plaintiffs' convenience.
21              THE COURT:  Could I interrupt for a second.  I
22   will let you continue.  But wasn't that issue teed up and
23   presented in the Southern District?  How does the -- is it
24   Koeltl?
25              MR. MARKS:  Koeltl.
```

```
 1                THE COURT:  Go ahead and respond to my question,
 2   please.
 3                MR. MARKS:  Judge Koeltl never required -- Judge
 4   Koeltl stayed discovery within his discretion, and never
 5   required the defendants in that case to disclose who their
 6   witnesses are.  Other judges, in cases that I have been in,
 7   where defendants said that they wanted to file a forum non
 8   motion, have said, listen, you have got to disclose who your
 9   witnesses are so there is a record as to whether this is
10   oppressive or vexatious or not.  So there has never been
11   anything of record as to who the defendants' witnesses would
12   be.
13                This case, Your Honor, is very different than
14   the case in New York because it's a much narrower case.  In
15   New York, you had two different sets of plaintiffs.  You had
16   aluminum plaintiffs who were contesting the corruption of
17   the bankruptcy of an aluminum plant in Russia.  You had
18   creditors who were contesting the bankruptcy of the
19   Kachkanarsky plant, which is the same plant in this case.
20                Neither set of those plaintiffs, none of the
21   aluminum plaintiffs and none of the GOK creditors'
22   plaintiffs are parties to this case.  This case only
23   concerns the shareholders of GOK, who have much, much
24   narrower claims that have to do with their shares which were
25   taken in what we allege to be influenced court proceedings
```

1  in which they were never served and they never participated.
2          And we believe that the disclosure of witnesses
3  on both sides would be helpful to Your Honor to deciding
4  whether the defendants meet their burden on vexatious.  That
5  was the first discovery we did, Your Honor.  We also served
6  interrogatories and requests for production of documents,
7  which went essentially to two main issues.
8          THE COURT:  Why wasn't this case brought back in
9  the Southern District?  Let's assume for a moment you have a
10 different set of plaintiffs and more discrete issues.  Why
11 wasn't this brought back in the forum that was familiar with
12 the facts and the issues?
13         MR. MARKS:  Your Honor, it is a good question.
14 The answer is simple.  This case was filed in the Chancery
15 Court in Delaware because Delaware has a much different
16 forum non conveniens standard than the federal courts.
17 Delaware does not apply the balance in the Gulf Oil test.
18 Delaware requires the plaintiffs to meet an overwhelming --
19 to prove that the litigation in Delaware would possess an
20 overwhelming hardship on them and would require them to
21 prove that with particularity.
22         It wasn't our choice.  And it's really sort of
23 one of the odd and ironic things that has happened, that the
24 defendants in our view have removed this case to Federal
25 Court not because they want to be in Federal Court but

```
 1   because they now want to have it dismissed again for forum
 2   non.  And one of the arguments that we will be raising is
 3   they should be estopped from asserting that this Federal
 4   Court is an inconvenient forum because they are the ones who
 5   chose it in the first place.
 6              There is a Supreme Court case, Your Honor, it's
 7   referenced in one of the letters that we sent you.  I am
 8   going to butcher the name of it.  I could find it on my
 9   computer.  It is a Chinese name, like Chick Woo or
10   something, where the Supreme Court of the United States held
11   that if a case is dismissed in Federal Court for forum non,
12   the plaintiffs have the right to bring it in state court and
13   it's up to the state court, based on its forum non standard,
14   if it has one, to decide whether it wants to hear it.
15              That is the reason we brought this in the
16   Delaware Chancery Court, which is where we had intended to
17   litigate it.
18              THE COURT:  Okay.  Go ahead and continue with
19   your discussion about discovery.
20              MR. MARKS:  Sure.  We served very limited
21   interrogatories and requests for production of documents,
22   Your Honor, which were designed to do two main things.  One
23   was to help us identify again witnesses and sources of
24   evidence.  Several of the defendants are Delaware
25   corporations.  We wanted to find out who the officers and
```

```
 1   directors and the beneficial owners of those corporations
 2   are.  Maybe they don't have them, because one of our
 3   arguments is that they may be just using these as shell
 4   companies.  But we would like to find out who those people
 5   are because those people we believe would be witnesses that
 6   we would call.
 7              We have also alleged in the complaint, Your
 8   Honor, that Delaware was the forum of choice for the
 9   defendants to form their corporations that were used in
10   their money laundering activities.  And we identified by
11   name 19 corporations which were formed in Delaware which we
12   allege to be involved in the international money laundering
13   that is set forth in the complaint.
14              In our discovery, we have also sought to
15   identify the officers and the directors of those companies,
16   because those people would be relevant witnesses.  And along
17   with that we sought the Court for documentation that would
18   identify who these people are.
19              The second type of discovery, Your Honor, that
20   we sought to take is discovery targeted at whether the
21   defendants have paid bribes or otherwise corrupted
22   government officials in Russia.  One of the issues that Your
23   Honor, we believe, would need to find under forum non under
24   the federal test is whether Russia is an adequate forum.
25              THE COURT:  We are going to put the Russian
```

1  judicial system on trial here?

2              MR. MARKS:  I don't believe that the Russian

3  judicial system as a whole would be on trial.

4              THE COURT:  I was being a little facetious

5  obviously, counsel.  Wasn't this issue also litigated before

6  Judge Koeltl?

7              MR. MARKS:  There would be two responses to

8  that, Your Honor.

9              Judge Koeltl addressed the issue of the

10 corruption of the bankruptcies and discussed that -- of the

11 aluminum plant, discussed that in his opinion.  He also

12 discussed the issue of the corruption of the Kachkanarsky,

13 GOK, bankruptcy.  Judge Koeltl in his opinion never

14 discussed, in fact, never even referenced the expert report

15 that was submitted on behalf of the GOK shareholders, that

16 their shares had been taken in proceedings that had been

17 corrupted.

18             I think the overwhelming problems that Judge

19 Koeltl saw in terms of unwinding the bankruptcies was, at

20 least as reflected by his opinion, was a substantial factor

21 in his decision to grant the motion.  But Judge Koeltl never

22 addressed the issues as to whether the proceedings for where

23 the shareholders lost their shares were influenced.

24             THE COURT:  Was that because the issue wasn't

25 presented to him?

```
 1              MR. MARKS:  It was presented, Your Honor.  We
 2   submitted the expert report of Anitoli Klemonov (phonetic),
 3   who said -- and I believe, also, he is a Russian attorney.
 4   I also believe it was discussed in Judge Seitz (phonetic),
 5   he is a former Russian Judge, he also submitted an expert
 6   opinion and then some supplemental filings.  In all of those
 7   filings, they opined that the only explanation for these
 8   court decisions were ordered to be taken from the possession
 9   of the GOK shareholder plaintiffs and given to other people
10   when they were not notified or were not parties would be
11   influenced.  Defendants submitted no expert report testing
12   that.
13              THE COURT:  Judge Koeltl did not discuss this in
14   his opinion?
15              MR. MARKS:  That's correct, Your Honor.
16              THE COURT:  Did you complain about that to the
17   Second Circuit?
18              MR. MARKS:  We did, Your Honor.
19              THE COURT:  What did the circuit have to say?
20              MR. MARKS:  It didn't address it, Your Honor.
21   It was also a non-published and non-precedential opinion.
22              THE COURT:  But this issue was raised in the
23   Second Circuit?
24              MR. MARKS:  In our briefing, Your Honor, I
25   certainly -- I believe it was raised.  I am certain that it
```

1  was raised.  But I am even more certain it wasn't discussed
2  in the Second Circuit opinion.
3            THE COURT:  You will forgive me, it seems like
4  you are asking, at least on this particular point, the
5  corruption of governmental officials in Russia, you are
6  asking a judge of concurrent jurisdiction to review the
7  decision of another District Judge.  No?
8            MR. MARKS:  I don't think so, Your Honor,
9  because there has also been new developments in the
10 litigation in Russia -- to be honest with Your Honor, we
11 didn't want to ask a federal judge to do anything.  That's
12 why we filed this case in Delaware.
13           THE COURT:  I understand that.  But, now,
14 assuming for a moment, let's assume that you don't prevail
15 on your estoppel argument, just for purposes of argument.
16 You are before a federal forum that is going to apply the
17 same rules that the previous federal judge was obliged to
18 apply, and apparently, at least in the view of the -- I
19 gather his decision was affirmed in the Second Circuit.
20 Right?
21           MR. MARKS:  It was affirmed, Your Honor.
22           THE COURT:  So we have now a District Judge, and
23 now at least an appellate panel, circuit panel, who have
24 said that the District Judge was right.
25           MR. MARKS:  Your Honor, believe me, I understand

1   that.  But I think the other point that we would be raising
2   is that subsequent to that decision, there have been
3   substantial events that have taken place in Russia, in
4   particular, in the Moskow arbitrage courts, where this case
5   would have been -- we would have to file this case if it
6   were re-brought in Russia.  I am talking about the Hugos
7   (phonetic) matter, where, I mean, the U.S. Government, at
8   high levels, and frankly the opinion of most of the world is
9   that those courts are influenced and it would those precise
10  courts and judges who were influenced in the Hugos matter
11  within the year.  And we are prepared, you know, to identify
12  judge by judge, and that would be where we would be being
13  sent to.
14            There is a recent opinion of the High Court in
15  London denying extradition from England to Russia for some
16  of the Hugos people because of the finding that those courts
17  can be influenced.
18            So we would certainly be putting to Your
19  Honor -- again, Your Honor, our burden is not for the Court
20  to find that those courts are influenced.  All we seek to do
21  is to convince Your Honor that defendants do not meet their
22  burden of showing that those courts would be adequate.
23            THE COURT:  Did you file a motion to remand this
24  matter back to the Chancery Court here in Delaware?
25            MR. MARKS:  We have not.