JUN 26 2002 13:15 FR HERRICK FEINSTEIN LLP3 274 2500 TO #2359,1212294470 P.02/17

# HERRICK, FEINSTEIN LLP
A NEW YORK LIMITED LIABILITY PARTNERSHIP INCLUDING NEW YORK PROFESSIONAL CORPORATIONS

2 PARK AVENUE
NEW YORK, N.Y. 10016-9301

104 CARNEGIE CENTER
PRINCETON, N.J. 08540-6232

III WASHINGTON AVENUE
ALBANY, N.Y. 12210-2210

2 PENN PLAZA
NEWARK, N.J. 07105-2245

TELEPHONE: (973) 274-2000
FACSIMILE: (973) 274-2500
WEB: www.herrick.com

DAVID M. MEISELS
PARTNER
(973) 274-2015
EMAIL: dmeis@herrick.com

June 26, 2002

BY HAND

Honorable John G. Koeltl
United States District Judge
United States District Court - S.D.N.Y.
500 Pearl Street - Room 1030
New York, New York 10007

Re:  Base Metal Trading, S.A. et al. v. Russian Aluminum et al.
     Docket No. 00 Civ. 9627 (JGK)

Dear Judge Koeltl:

      Though we are not eager to involve the Court in another exchange of letters concerning a discovery issue, this issue is discrete and important, and only came to our attention at this date because discovery is stayed and our ability to obtain documents created by defendants is effected only through informal sources, which involves difficulty and delay. We write to request limited relief from the current stay of discovery to obtain discovery concerning a discrete and narrow issue. Prior to making this application, we requested that defendants consent to this relief, and produce the relevant documents, but they refused to do so.

      Briefly, one of defendants' parent companies, in a publicly filed document issued in connection with a securities offering, disclosed that Russian courts are corrupt and that foreign litigants cannot be assured that they will be able to obtain a just resolution of their claims in Russia -- an admission directly relevant to opposing their forum non conveniens motion. We have reason to believe that defendants (or related parties) may have issued similar disclosures in connection with other securities offerings or credit transactions, and are therefore applying to the Court to obtain discovery concerning this matter. Needless to say, the absence of discovery has impeded our ability to challenge positions taken by defendants -- positions contradicted by their very statements.

      Defendants' pending motions to dismiss raise the issue of whether the Russian courts provide an adequate alternative forum for resolving plaintiffs' claims. Magistrate Judge Maas, in resolving the prior discovery matter Your Honor referred to him, agreed with plaintiffs

HFNWK1: #32906 v.1 #06141-0001

JUN 26 2002 13:15 FR HERRICK FEINSTEIN LLP3 274 2500 TO #2359,1212294470 P.03/17

HERRICK, FEINSTEIN LLP

Honorable John G. Koeltl
June 26, 2002
Page 2

that evidence of general corruption in the Russian judiciary is relevant to resolving the pending forum non and comity motions, and thus granted plaintiffs the right to depose defendants' expert witnesses.[1]

Consistent with that ruling, plaintiffs seek documents generated by defendants, or related entities, concerning corruption in the Russian judiciary. More specifically, in the course of our investigation, we obtained a publicly filed disclosure statement issued by a Russian company called Sibneft, or OAO Siberian Oil Company. Sibneft owns 50% of defendant Russian Aluminum. The disclosure statement was filed in connection with Sibneft's offering of certain loan participation notes. In this disclosure statement, under the heading "Investment Considerations Relating to Russia," Sibneft made statements that directly contradict defendants' position that the Russian courts provide a fair and adequate alternative forum for resolving plaintiffs' claims. Under the sub-heading "Legal and Regulatory Risks," Sibneft admits that Russian courts face a corruption problem, and that there can be no guarantee that foreign investors will be able to obtain "effective redress" in the Russian courts:

> The following aspects of Russia's legal system create uncertainty with respect to many of the legal and business decisions that Sibneft's management make:
>
> ...
>
> - <u>Russia has a judiciary</u> with limited experience in interpreting and applying market-oriented legislation and <u>which is vulnerable to economic and political influence</u>; and
>
> - Russia has weak enforcement procedures for court judgments and <u>there is no guarantee that a foreign investor will obtain effective redress in a Russian court</u>.[2]

The statement that Russia's judiciary is "vulnerable to economic and political influence" is a sanitized way of saying that the Russian judiciary is capable of being influenced by corruption, which is precisely plaintiffs' position. The statement concerning the absence of a "guarantee" that foreign investors will be able to obtain "effective redress in a Russian court"

---

[1] Plaintiffs have filed an Objection to Magistrate Judge Maas' decision insofar as it denied plaintiffs the right to take certain fact discovery. Plaintiffs do not object, however, to that portion of the Magistrate Judge's decision which held that evidence of general corruption is relevant and which granted plaintiffs the right to depose defendants' expert witnesses.

[2] Copies of the relevant pages from Sibneft's disclosure statement are annexed hereto as Ex. A.

HFNWK1: #32806 v.1 #06141-0001

HERRICK, FEINSTEIN LLP

Honorable John G. Koeltl
June 26, 2002
Page 3

directly supports plaintiffs' position that foreign litigants in Russian courts cannot obtain a fair and just resolution of their claims. The significance of these statements, and the extent of the problem facing the Russian courts, cannot be overemphasized. Disclosure statements generally only contain risk disclosures that are material, and the decision, therefore, by defendant Russian Aluminum's parent company to make these specific disclosures gives some sense of the magnitude of the problem with the Russian courts. Moreover, risk disclosures are only made after underwriters and their counsel have conducted due diligence, and the materials they reviewed in order to craft these disclosures will also provide direct evidence of the corruption facing foreign litigants in Russian courts.

Although we have been able to obtain this disclosure statement, we believe that others have been issued by the defendants, including some for private placements. See Ex. B. More specifically, we understand that defendant Sibirsky Aluminum issued American Depository Receipts (ADRs) in a private placement, and that Sibneft, in addition to this note offering, issued ADRs in a private placement. Disclosure statements issued in connection with private placements are not widely available, and though we have contacted various entities in an effort to obtain these documents, we have been unable to do so. In addition, the various corporate defendants, Russian Aluminum, Sibersky Aluminum, MDB Bank and their parents and subsidiaries may have made similar disclosures in debt or other credit transactions.

The requested discovery is also consistent with Judge Maas' decision granting plaintiffs the right to take certain limited discovery. Judge Maas held that plaintiffs could depose defendants' experts on issues relating to "the fundamental fairness of the Russian courts." See Memorandum Decision, dated May 13, 2002, at 10-11. This documentary evidence concerns the exact same issue, and is even more probative than a deposition of defendants' experts because it reflects defendants' prior statements and admissions. Finally, although Judge Maas previously denied plaintiffs' request for document discovery -- an issue we have appealed to Your Honor -- this document request focuses on an extremely narrow category of highly probative and directly relevant documents, and is not "merits related" in the same manner as the prior requests Judge Maas denied. This request is intended solely to discover defendants' prior statements on the fairness of the Russian judiciary.

Accordingly, we respectfully request that this Court lift the current stay of discovery and allow plaintiffs to serve a document demand and identification interrogatories, the relevant portions of which are annexed hereto as Ex. B and C, respectively, upon defendants concerning these matters. Although we do not seek it at this time, pending review of the documents defendants produce, plaintiffs may seek further leave of the Court to depose individuals involved in the preparation of these documents and to serve subpoenas upon the third-parties identified by defendants as involved in these transactions.

HFNWK1: #32806 v.1 #06141-0001

HERRICK, FEINSTEIN LLP

Honorable John G. Koeltl
June 26, 2002
Page 4

       We thank the Court for its consideration of this matter, and are available to address these points further after the Court has had an opportunity to consider defendants' response.

Respectfully submitted,

David M. Meisels

Attachments

cc:   Jamie Bernard, Esq. (via fax)
      Michael D. Burrows, Esq. (via fax)
      John Redmon, Esq. (via fax)
      Paul R. Grand, Esq. (via fax)
      Victor Roger Rubin, Esq. (via fax)
      Peter D. Venagle, Esq. (via fax)
      Robert E. Hauberg, Jr., Esq. (via fax)
      Brian S. Cousin, Esq. (via fax)
      Raymond L. Vanderberg, Esq. (via fax)
      Lisa C. Cohen, Esq. (via fax)
      Elizabeth M. Johnson, Esq. (via fax)

HFNW/K1: #32806 v.1 #06141-0001

N 26 2002 13:16 FR HERRICK FEINSTEIN LLP3 274 2500 TO #2359,1212294470 P.06/17

HERRICK, FEINSTEIN LLP

### Exhibit B – Document Demands

1. Documents distributed, or which were intended for distribution but not actually distributed, to investors, or potential investors, concerning any offering by the defendants, or their agents, parent companies, subsidiaries or affiliates, of equity or debt instruments, including, but not limited to, notes, bonds or American Depository Receipts, whether for a public or private placement or otherwise.

2. Drafts of any documents responsive to Document Demand number 1.

3. Documents concerning any documents responsive to Document Demand numbers 1 and 2, or concerning the transactions identified in response to Interrogatory number 1, including, but not limited to, correspondence with investment or agent banks, internal memoranda or e-mails.

4. Documents provided to or reviewed by any entities identified in response to Interrogatory number 2.

HFNWK1: #32806 v.1 #06141-0001

JUN 26 2002 13:16 FR HERRICK FEINSTEIN LLP3 274 2500 TO #2359,1212294470 P.07/17

HERRICK, FEINSTEIN LLP

## Exhibit C - Interrogatories

1. Identify each transaction in which defendants, or their agents, parent companies, subsidiaries or affiliates, distributed to investors, or potential investors, any offering of equity or debt instruments, including, but not limited to, notes, bonds or American Depository Receipts, whether for a public or private placement or otherwise.

2. For each transaction identified in response to Interrogatory number 1, identify any persons or companies, including, but not limited to, current or former employees, agents or independent contractors, involved in the planning, development and execution of the transaction.

3. For each document produced in response to the foregoing document demands, to the extent not discernible from the face of the document, identify the author of the document.

HFNWK1: #32806 v.1 #06141-0001

JUN 26 2002 13:16 FR HERRICK FEINSTEIN LLP3 274 2500 TO #2359,1212294470 P.08/17

# Exhibit A

JUN 26 2002 13:16 FR HERRICK FEINSTEIN LLP3 274 2500 TO #2359,1212294470 P.09/17



# sibneft

## OAO Siberian Oil Company
### U.S.$250,000,000
### 11.5 per cent.
### Loan Participation Notes due 2007

*issued by, but without recourse to, Salomon Brothers AG
for the purpose of financing a loan to*

## OAO Siberian Oil Company
### Issue Price: 100 per cent.

Salomon Brothers AG (the "Bank") is issuing an aggregate principal amount of U.S.$250,000,000 Loan Participation Notes due 2007 (the "Notes") for the sole purpose of financing a 5-year loan (the "Loan") to OAO Siberian Oil Company (the "Borrower" or "Sibneft") guaranteed by OAO Sibneft-Noyabrskneftegaz ("Noyabrsk" or the "Loan Guarantor") pursuant to a loan agreement dated 13 February 2002 (the "Loan Agreement") among the Bank, the Borrower and the Loan Guarantor. The Bank will charge, by way of first fixed charge as security for its payment obligations in respect of the Notes, its rights and interests as lender under the Loan Agreement to The Bank of New York as trustee (the "Trustee") for the benefit of the holders of the Notes (the "Noteholders") and will assign its administrative rights under the Loan Agreement to the Trustee (the "Loan Administration Assignment").

In each case where amounts of principal, interest and additional amounts (if any) are stated to be payable in respect of the Notes, the obligation of the Bank to make any such payment shall constitute an obligation only to account to the Noteholders, on each date upon which such amounts of principal, interest and additional amounts (if any) are due in respect of the Notes, for an amount equivalent to all principal, interest and additional amounts (if any) actually received by or for the account of the Bank pursuant to the Loan Agreement. The Bank will have no other financial obligation under the Notes. Noteholders will be deemed to have accepted and agreed that they will be relying solely and exclusively on the credit and financial standing of the Borrower and the Loan Guarantor in respect of the financial servicing of the Notes.

Interest on the Notes will be payable semi-annually in arrear on 13 February and 13 August in each year commencing on 13 August 2002 as described under "Terms and Conditions of the Notes — Interest". The Notes will bear interest of 11.5 per cent. per annum.

Except as set forth herein (see "Taxation"), payments in respect of the Notes will be made without any deduction or withholding for or on account of taxes of the Russian Federation or the Federal Republic of Germany. The Loan may be prepaid at its principal amount, together with accrued interest, at the option of the Borrower upon the Borrower or the Bank being required to deduct or withhold any such Russian or German taxes from payments to be made by them in respect of the Notes or pursuant to the Loan Agreement, or following enforcement of the security created in the Trust Deed, upon the Trustee being required to deduct or withhold any taxes of the Russian Federation or the jurisdiction in which the Trustee is then resident. The Loan may also be prepaid if it becomes unlawful for the Loan or the Notes to remain outstanding, as set out in the Loan Agreement and thereupon (subject to the receipt of the relevant funds from the Borrower) the principal amount of all outstanding Notes will be prepaid by the Bank, together with accrued interest.

**AN INVESTMENT IN THE NOTES INVOLVES A HIGH DEGREE OF RISK. SEE "INVESTMENT CONSIDERATIONS".**

Application has been made to list the Notes on the Luxembourg Stock Exchange.

THE NOTES HAVE NOT BEEN NOR WILL BE REGISTERED UNDER THE U.S. SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR WITH ANY SECURITIES REGULATORY AUTHORITY OF ANY STATE OR OTHER JURISDICTION OF THE UNITED STATES AND ACCORDINGLY MAY NOT BE OFFERED OR SOLD WITHIN THE UNITED STATES OR TO, OR FOR THE ACCOUNT OR BENEFIT OF, U.S. PERSONS EXCEPT IN CERTAIN TRANSACTIONS EXEMPT FROM OR NOT SUBJECT TO THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT.

The Notes will be represented by a global Note (the "Global Note"), without interest coupons, which will be registered in the name of the Bank of New York Depositary (Nominees) Limited and deposited with a common depositary for Euroclear Bank S.A./N.V., as operator of the Euroclear System ("Euroclear") and Clearstream Banking, société anonyme ("Clearstream, Luxembourg"), on or about 13 February 2002 (the "Closing Date"). Ownership interests in the Global Note will be shown on, and transfers thereof will be effected only through, records maintained by Euroclear and Clearstream Luxembourg and their respective participants. Notes in definitive form will be issued only in limited circumstances.

### Lead Manager
### Schroder Salomon Smith Barney

#### Co-Lead Managers

| | |
|---|---|
| Commerzbank Securities | OJSC Trust and Investment Bank |

Raiffeisen Zentralbank Österreich Aktiengesellschaft

#### Co-Managers

| | |
|---|---|
| Alpha Bank A.E. | Bayerische Hypo- und Vereinsbank AG |
| Credit Suisse First Boston | Dresdner Kleinwort Wasserstein |
| ING Barings | Moscow Narodny Bank Limited |
| Standard Bank | Westdeutsche Landesbank Girozentrale |

The date of this Offering Circular is 1 March 2002

### Licences

The licensing regime in Russia for the exploration, development and production of oil and gas is governed primarily by the Subsoil Law and regulations thereunder. The Group currently conducts its operations under 38 exploration and production licences, 8 of which are held directly by Sibneft, and 27 of which are held by Noyabrsk and the remaining 3 are held through joint ventures in which Sibneft participates. Most of the licences provide that they may be terminated if the holder fails to comply with licence requirements, if the holder does not make timely payments of levies and taxes for the use of the subsoil, if the holder systematically fails to provide information or if the holder goes bankrupt or if the holder fails to fulfill any capital expenditure and/or production obligations.

### Transportation Constraints and Quality Impairment

Sibneft is dependent on the state controlled network of crude oil trunk pipelines in Russia operated by AK Transneft ("Transneft") for the transportation of the majority of its crude oil. Pipeline tariffs may be increased with little or no notice and without taking into account producer concerns. By using multiple parallel pipelines, however, Transneft has generally avoided any serious disruptions in the transport of crude oil, and to date Sibneft has suffered no significant losses arising from the failure of the pipeline system. Contractually Transneft must compensate any oil company for failure to deliver oil or oil products to the export terminals. In the past Transneft has re-imbursed oil companies for such losses. Although no assurance can be given that they will do so in the future.

Access to Transneft's pipeline network is regulated by the Government with capacity generally allocated in proportion to the quarterly production and supply schedules of all network users. The limited capacity of the pipeline system acts as a constraint on crude oil production in Russia and especially affects the ability of producers to export crude oil. Constraints on Sibneft's ability to export can, depending on the market conditions, have a significant impact on its cash flows and profitability. The Transneft system only has a limited ability to transport crude oil in batches, with the result that 80 per cent. of Sibneft's production is mixed with oil of lower quality in transmission, leading to a small loss in revenue. (See "OAO Siberian Oil Company – Transportation of Crude Oil").

### Environmental Risks

An important source of risk inherent in the oil industry is the environmental impact of the various operations. Pollution risks and relevant clean-up charges are impossible to assess unless environmental audits are performed systematically, and environmental laws enforced strictly. Although the measures taken by Sibneft to comply with environmental regulations have not had a material adverse effect on Sibneft's financial condition or results of operations to date, no assurance can be given that the costs of such measures in the future and liabilities due to environmental damage caused by Sibneft will not be material.

### Insurance Risks

The insurance industry is not yet well developed in Russia and many forms of insurance protection used in economically developed countries are unavailable on the terms common in such countries, including coverage for business interruption. Accordingly, Sibneft maintains only minimal levels of insurance on its existing asset base and as a result would suffer significant losses in the event of the loss or destruction of its principal operating assets. Sibneft complies with all its legal obligations to maintain insurance against third party liabilities. Sibneft is currently in the process of evaluating its future insurance needs and expects to increase its protection on the basis of this evaluation.

### Investment Considerations Relating to Russia

### Political Risks

Since 1991, Russia has been evolving from a communist state with a centrally planned economy to a pluralist democracy with a market economy. The process of political and economic reform has not been uninterrupted nor is it yet complete, and no assurance can be given that it will continue. The Russian political system remains vulnerable to social and ethnic unrest and any significant political instability could adversely affect the value of foreign investments in Russia and Sibneft's ability to produce and/or export oil. The

8

Government has until recently been characterised by frequent change, having experienced five changes in prime minister since March 1998. The value of investments in Russia, including investments in Sibneft, could be reduced if such frequent change resumes or if the current President or Government chooses to curtail political liberties or move away from market-oriented reforms.

Significant Russian legislation has been enacted since 1991 to protect private property against expropriation and re-nationalisation by the Government, but there can be no assurance that such protections would be enforced in the event of an attempted expropriation or re-nationalisation or that privatisation (including Sibneft's privatisation) will not be reversed.

In addition, as Russia is a federation of republics and regions, conflicts between central and regional authorities and other conflicts could negatively affect the value of investments in Russia and could create an uncertain operating environment that may hinder Sibneft's long-term planning ability in particular.

Ethnic and religious differences in Russia have given rise to tensions, and in some cases, military conflict. Such events could have a material adverse effect on the value of investments in Russia in particular, and could have a material adverse effect on the financial condition of a company such as Sibneft.

### Economic Risks

Russia's economy has undergone a rapid transformation marked by periods of significant instability since the end of the Soviet era. In particular, the Government's decision in August 1998 to temporarily stop supporting the Rouble and its servicing of certain domestic and foreign debts caused the currency to collapse and led to an overall financial crisis. It is possible that Russia may default on its domestic and foreign debt in the future or take actions that could adversely affect its financial stability. Other economic risks that could negatively impact the financial condition of Sibneft include:

- failure by the Government to access funding from the International Monetary Fund or restore access to international capital markets if required or to improve and maintain the requisite level of tax collection;

- failure by the Government to address systemic problems within Russia's economy such as sustained periods of relatively high inflation, a weak banking system, high government debt relative to gross domestic product, continued tax evasion, levels of organised criminal activity and corruption and substantial levels of unemployment and underemployment affect the environment in which Sibneft operates and could adversely affect Sibneft's business as a result; and

- fluctuations in the global economy (including, in particular, fluctuations in world oil prices); which may adversely affect Russia's economy and Sibneft's business.

### Legal and Regulatory Risks

The following aspects of Russia's legal system create uncertainty with respect to many of the legal and business decisions that Sibneft's management make:

- there may be inconsistencies between laws, Presidential decrees, Government resolutions and ministerial orders, and between local, regional and federal legislation and regulations;

- decrees, resolutions and regulations may be adopted by governmental authorities and agencies without clear constitutional or legislative basis and with a high degree of discretion;

- substantial gaps in the regulatory structure may be created by the delay or absence of regulations implementing certain legislation;

- there is a lack of judicial and administrative guidance on interpreting applicable rules and limited precedential value of judicial decisions;

- Russia has a judiciary with limited experience in interpreting and applying market-oriented legislation and which is vulnerable to economic and political influence; and

- Russia has weak enforcement procedures for court judgments and there is no guarantee that a foreign investor will obtain effective redress in a Russian court.

9

Because of the developing nature of Russia's legal and regulatory framework regarding property ownership and securities, there exists a significant risk that Sibneft's ability to attract future investment from international capital markets may be limited. Some of the issues that cause this risk include:

- Russia's securities registration system is less developed than in other countries;

- Russia's regulatory environment is uncertain, which could expose Sibneft to increased costs and hinder its ability to operate its business;

- Russia's tax system gives rise to significant uncertainties and risk that may complicate Sibneft's tax planning and business decisions; and

- Russia has restrictive currency regulations which have in the recent past and may in the future interfere with Sibneft's ability to conduct routine business transactions and attract investment.

**Exchange Rates, Exchange Controls and Repatriation Restrictions**

In recent years, the Rouble has experienced a significant depreciation relative to the dollar and there has been significant instability in the Rouble exchange rate. See "Exchange Rates and Exchange Controls".

The Rouble is generally not convertible outside of Russia. A market exists within Russia for the conversion of Roubles into other currencies, but it is limited in size and is subject to rules limiting such conversion. There can be no assurance that such a market will continue indefinitely. Current Russian law permits Sibneft to convert its Roubles into foreign currency to make payments to meet its financial obligations but there can be no guarantee that such conversion will be permitted in the future. Moreover, the banking system in Russia is not yet fully developed and considerable delays may occur in the transfer of funds within, and the remittance of funds out of, Russia.

**Investment Consideration Relating to the German Insolvency Code**

The Trust Deed provides for an English law charge in favour of the Trustee for the benefit of Noteholders over certain amounts as well as certain claims and other rights of the Bank under the Loan. Section 166(2) of the German Insolvency Code which came into force on 1 January 1999 provides that receivables assigned under German law for security purposes may not, after opening of insolvency proceedings involving the assignor, be enforced by the assignee but by the insolvency administrator, which will be entitled to deduct from the enforcement proceeds up to 9 per cent. as fees plus value added tax thereon. This Section 166(2) may affect the security given pursuant to the Trust Deed, since it cannot be excluded that a German court will not hold that an English law charge should be subject to such Section 166(2).

10

JUN 26 2002 13:18 FR HERRICK FEINSTEIN LLP3 274 2500 TO #2359,1212294470 P.13/17

# Exhibit B

Backpage                                                  DG16 Equity **DES**
SBYMF US        Price Not Available
                          **DESCRIPTION**                    Page 1/2
SBYMF US        SIBIRSKY ALYUMINIUM       12) CN All News/Research
Metal-Aluminum

Sibirsky Alyuminiyum produces aluminum in Russia. The Company also owns a controlling interest in busmaker Pavlovsky Avtobus, and a partial interest in carmaker Gorkobsky Avtomobilny Zavod.

```
     STOCK DATA      Round Lot  100.00  | 8)DVD    DIVIDENDS - None
     Price                USD           |       Indicated Gross Yld
     52Wk High            USD           |       Dividend Growth
     52Wk Low             USD           |         Ex-Date      Type       Amt
     YTD Chng             USD           |
2)TRA  1 Yr Total Return               |               EARNINGS
                                        | 5)ERN
     Market Cap                         |       Est EPS                  n.a.
                                        |       P/E
```

Australia 61 2 9777 8600    Brazil 5511 3048 4500    Europe 44 20 7330 7500    Germany 49 69 920410
Hong Kong 852 2977 6000  Japan 81 3 3201 8900  Singapore 65 212 1000  U.S. 1 212 318 2000  Copyright 2002 Bloomberg L.P.
                                                                                  G549-992-0 31-May-02 14:59:37

**Bloomberg**
PROFESSIONAL

JUN 26 2002 13:18 FR HERRICK FEINSTEIN LLP3 274 2500 TO #2359,1212294470 P.15/17

```
Page                                                    DG16 Equity DES
Hit 1 <GO> for a more detailed company management profile (MGMT).
SBYMF   US          SIBIRSKY ALYUMINIUM                      Page 2/2
                        T:                        F:
Russia
                              TR AG

OLEG DERIPASKA                      CHAIRMAN
VIKTOR BELYAEV                      VP
ALEXANDER NAUMOV                    EXECUTIVE DIRECTOR


Type    Common Stock              MEMBER       TICKER    WEIGHT
PRIMARY EXCHANGE    OTC  US        None
COUNTRY             Russia
FISCAL YEAR END

WPK Number 693615



                                  Auditor   N.A.
Australia 61 2 9777 8600     Brazil 5511 3048 4500     Europe 44 20 7330 7500    Germany 49 69 920410
Hong Kong 852 2977 6000  Japan 81 3 3201 8900  Singapore 65 212 1000  U.S. 1 212 318 2000  Copyright 2002 Bloomberg L.P.
                                                                                G549-592-0 31-May-02 14:59:39
```

**Bloomberg** PROFESSIONAL

JUN 26 2002 13:19 FR HERRICK FEINSTEIN LLP3 274 2500 TO #2359,1212294470 P.16/17

Page 1 of 2



**OTC Bulletin Board**

May 31, 2002

### Other-OTC System Changes - 05/10/2001

**Related Items**
OTCBB Daily List
Other-OTC / Portal Daily List

**SECURITY ADDITIONS**

| Updated | Symbol | Company Name | Effective Date/Comments |
|---|---|---|---|
| 13:34 | PNPGF | Pan Pelagic ASA (Norway) | 05/11/2001 |
| 13:34 | PSBCP | PS Business Parks Inc California Series D Pfd 9.50% | 05/11/2001 |
| 13:34 | SBYMF | Sibirsky Aluminum (Russia) | 05/11/2001 |
| 13:34 | SCGIF | Sa Cegid ACT (France) | 05/11/2001 |
| 13:34 | SUDKF | Studsvik AB (Sweden) | 05/11/2001 |

**SECURITY DELETIONS**

| Updated | Symbol | Company Name | Effective Date/Comments |
|---|---|---|---|
| 13:34 | BFROF | Banco Frances Rio Plata | 05/11/2001 Dupe BPFPF |
| 13:34 | CCIOL | Citicorp Money Market Pfd 5E | 05/11/2001 Called for redemption 1/8/1991 |
| 13:34 | CCIOM | Citicorp Dep Sh Rep Vto Ser 13 | 05/11/2001 Called for redemption 2/20/1996 |
| 13:34 | CCION | Citicorp Money Market Pfd 5G | 05/11/2001 Called for redemption 11/30/2000 |
| 13:34 | CCIOO | Citicorp Money Market Pfd 6B | 05/11/2001 Called for redemption 12/12/1990 |
| 13:34 | CCIOP | Citicorp Money Market Pfd 6A | 05/11/2001 Called for redemption 11/30/2000 |
| 13:34 | CCIPL | Citicorp Conv Pfd Ser 13 | 05/11/2001 Called for redemption 11/30/2000 |
| 13:34 | CCIPM | Citicorp Money Market Pfd 5D | 05/11/2001 Called for redemption 11/30/2000 |
| 13:34 | CCIPN | Citicorp Money Market Pfd 5C | 05/11/2001 Called for redemption 11/30/2000 |
| 13:34 | CCIPO | Citicorp Money Market Pfd 5B | 05/11/2001 Called for redemption 12/13/1990 |
| 13:34 | CCIPP | Citicorp Money Market Pfd 5A | 05/11/2001 Called for redemption 12/10/1990 |
| 13:34 | CCTTO | Citicorp Adj Pfd Ser 19 | 05/11/2001 Called for redemption 11/30/2000 |
| 13:34 | CTIYO | Citicorp Grad Rate Pfd Ser 8A | 05/11/2001 Called for redemption 8/15/1998 |
| 13:34 | CTIYP | Citicorp Money Market Pfd 5F | 05/11/2001 Called for redemption 12/24/1990 |
| 13:34 | SRDPF | Schroders Plc | 05/11/2001 Duplicate of SHNWF |
| 13:34 | WLSGW | Wheel Sports Group Wts 2002 | 05/11/2001 Reorganization (See RACNW |

**SYMBOL CHANGES**

| Updated | Date | Old Symbol | New Symbol | Name |
|---|---|---|---|---|
| 13:34 | 05/11/2001 | PTDLF | PTDTF | PT Dynaplast Tbk |

**NAME/SYMBOL CHANGES**

//www.otcbb.com/otherdailylist/history/2001/dl_05102001.stm

5/31/02

JUN 26 2002 13:19 FR HERRICK FEINSTEIN LLP3 274 2500 TO #2359,1212294470 P.17/17



Bulletin Board

May 31, 2002

### Other-OTC Issues

| Symbol | Issue Name | Issue Type |
|---|---|---|
| SBYMF | SIBIRSKY ALUMINUM | FOREIGN |

Copyright © 2002, The Nasdaq Stock Market, Inc. Please read our Disclaimer and Privacy Statement.

BBX

Company Insights

www.otcbb.com/asp/symbol.asp?issues=AllOther&searchby=name&searchfor=sibirsky&searchwith=s... 5/31/02

** TOTAL PAGE.17 **