[signed by witness]

Which language do you prefer to give evidence in? [unanswered, signed by investigator]

Answered the following to the given questions:

I live with my family at the above shown address. On 5 November 2004 I was at home. [illegible] it was around 5 o'clock. When I went out, I saw a group of police officers. I asked them if everything was okay, what had happened. They told me there was a road transport accident, and that a woman was hit by a car. They told me who that woman was; I knew her. This woman was [illegible, starts with "mental", then illegible]. I knew that this woman was a painter [illegible] from her attitude and some behavior [illegible]. [Last two sentences illegible.]
The explanatory letter written correctly, familiarized
[signature]
Questioned [signature of M.A.Aliyev]

# Гувоҳни сўроқ қилиш баённомаси
## Протокол допроса свидетеля

"30" декабр                             город Тошкент         шаҳри

Тошкент ш. ИИББ ТБ 2й ТЧИИ терговчиси
(терговчининг лавозими, унвони, фамилияси/должность, звание, фамилия следователя)

Катта терговчи М.А. Амир.

Ўзбекистон Республикаси ЖПКнинг 96—103,
120 моддаларига риоя қилиб гувоҳ тариқасида сўроқ қилдим.
допросил с соблюдением ст. ст. 96—103,
120 УПК Республики Узбекистан, в качестве свидетеля.

Сўроқ бошланди      10  соат  20  дақиқа
Допрос начат             час      минут

Сўроқ тамомланди   10  соат  50  дақиқа
Допрос окончен          час      минут

Фамилияси, исм—шарифи: Карамов Озод Нуритдинович
Фамилия, имя, отчество

Туғилган санаси: 1978 йил           3. Туғилган жойи: Тошкент ш.
Год рождения                                  Место рождения

Миллати: ўзбек                           5. Фуқаролиги: Ў.Рес
Национальность                            Гражданство

Маълумоти ва мутахассислиги: олий
Образование и специальность
(қандай ўқув юртини битирган, қаерда, қачон?— какое учебное заведение окончил, где и когда?)

Иш жойи, касби ёки мансаби: ИС
Место работы, род занятий или должность

Турар жойи: Юнусобод р-н ўс-ц-илич-37 уй
Местожительство (аниқ турар жойи, телефон №— точный адрес, № телефона).

Оилавий аҳволи: уйланган 5 та фарзанди бор
Семейное положение

Паспорти: паспорти олинмаган
Паспорт (серияси, номери, қачон ва ким томонидан берилган—
                    серия, номер, когда и кем выдан)

Судланганлиги: судланмаган
Судимость (қачон, қайси суд томонидан, ЖКнинг қайси моддаси билан)
(когда, каким судом, по какой статье УК, мера наказания
жазо чораси ва уни ўтаганлиги)
Отбыл ли его)

Айбланувчига (гумондорга) алоқаси: йўқ
Отношение к обвиняемому (подозреваемому)

Жабрланувчига алоқаси: йўқ
Отношение к потерпевшему

Қонун гувоҳлик бериш, ҳамда жиноят процесси юритиш қатнашчиларининг ўз зиммасига
ответственности по ст. 238, 240 УК Республики Узбекистан за лжесвидетельство, уклонение
олинган бажаришдан бўйин товлаш учун, Ўзбекистон Республикаси ЖКнинг 238, 240-моддалари
участников уголовного процесса от исполнения возложенных обязанностей предупрежден.

га асосан жавобгарликка тортилиши ҳақида огоҳлантирилди.

(гувоҳнинг имзоси/подпись свидетеля)

Қайси тилда кўрсатма беришни хоҳлайсиз?

На каком языке желаете давать показания?

Берилган саволларга шундай жавоб қайтарди:

На заданные вопросы показал:

Мен юқорида кўрсатилган [illegible]

[illegible]

Ёзилганлар тўғри [illegible]

Сўроқ қилдим [illegible]

(гувоҳнинг имзоси/подпись свидетеля)

Automobile Analysis

Report No. 44/13

January 7, 2005

On January 6, 1905 [*sic*], pursuant to an order by Militia Captain Aliyev, the investigator, dated January 5, 2005, the Sulaimanova Regional Forensic Analysis Center of the Ministry of Justice of the Republic of Uzbekistan received materials related to criminal case No. 23/04-1869 from the Investigative Service of the Central Administration of Internal Affairs for the City of Tashkent for the purpose of performing a forensic automobile analysis.

The following issues were submitted for resolution by the analysis:

1. Did Mr. Qodirov, the driver of the Nexia automobile, license plate 30 D 1101, have the technical ability to avoid the collision with the pedestrian when the pedestrian entered the road 2.4 meters away at a speed of 4.1 km/hour?
2. How should Mr. Qodirov, the driver of the Nexia automobile, have acted in this situation pursuant to the traffic rules?

NOTE: The questions were edited based on the special knowledge of the expert.
The analysis was assigned to Rovshan B. Pulatov, a junior researcher in the department of automobile analysis at the Sulaimanova Regional Forensic Analysis Center. Mr. Pulatov has a higher technical education and specializes in investigating the circumstances of traffic accidents. He has worked as an expert in this area since 2004.
The expert was informed of the criminal penalties for refusal to file a report and for intentionally filing a false report under articles 238 and 240 of the Criminal Code of the Republic of Uzbekistan.

[signature]

Initial data:
* The accident occurred while braking and involved the front of the Nexia automobile;
* The Nexia automobile was in proper working order;
* The Nexia automobile was not carrying any load;
* Road grade: Horizontal;
* Driver's view: Unobstructed;
* Direction of movement of the pedestrian relative to the direction of movement of the Nexia automobile: left to right;
* Type of road surface: Asphalt-concrete
* Condition of road surface: Uniformly wet;
* $V_a$ – Speed of the Nexia automobile: 60.000 km/hour;
* $S_p$ – Distance to pedestrian before collision: 2.400 meters;
* $V_p$ – Speed of the pedestrian: 4.100 km/hour;

    = Jn – Established rate of deceleration of a Nexia automobile in proper working order while braking on a horizontal surface: 5.000 m/s*s);
    = T1 – Reaction time of the driver of the Nexia automobile: 0.600 sec.;
    = T2 – Time of delay in operation of braking mechanism: 0.100 sec.;
    = T3 – Time before deceleration of the Nexia automobile begins: 0.250 sec.

The initial data marked with an asterisk (*) are taken from the order to perform the analysis. The following materials from the criminal case and the standard reference literature were used to determine the remaining initial data:

-- The order to perform the analysis;
-- The report on the examination of the location of the accident;
-- The map attached to the report on the examination of the location of the accident;
-- The report on the examination and check of the technical condition of the vehicle;
-- The accident report;
-- Forensic Automobile Analysis, part 2, V. A. Ilarionov, ed., National Scientific Research Institute of Forensic Analysis, Moscow, 1980;
-- The Use of Experimentally Derived Automobile Braking Parameters in Analysis, National Scientific Research Institute of Forensic Analysis, Moscow, 1995;
-- The Use of Differentiated Values of Driver Reaction Time in Analysis, National Scientific Research Institute of Forensic Analysis, Moscow, 1987;
-- Traffic Rules, Tashkent, 2001.

========== RESEARCH ==========

The analysis was conducted using a computer running the NAST program, developed by the automation department of the Kazakh National Scientific Research Institute of Forensic Analysis (1991).

---------- Issue No. 1 ----------

The technical ability to avoid the collision with a pedestrian is determined by comparing the distance (Sa) of the Nexia automobile, license plate 30 D 1101, from the place of the collision at the time the pedestrian entered the road, as specified in the initial data, and the stopping ability of the automobile (So) in the conditions at the location of the accident.

$$Tp = \frac{3.6 * Sp}{Vp} \ ;$$

$$Sa = \frac{Va * Tp}{3.6} \ ;$$

$$J = J_n \text{ (on a horizontal surface)};$$

$$S_o = (T_1 + T_2 + 0.5 * T_3) * \frac{V_a}{3.6} + \frac{V_a^2}{25.92 * J} \; ;$$

In the conditions of this accident, Sa and So equal 35.1 and 41.5 meters, respectively. Sa is less than So, therefore the driver of the Nexia automobile did not have the technical ability to avoid the collision with the pedestrian by emergency braking to stop the automobile before reaching the path of the pedestrian.

---------- Issue No. 2 ----------

In this traffic situation, Mr. Qodirov, the driver of the Nexia automobile, license plate 30 D 1101, was required to act in accordance with section 12.1 of the traffic rules, according to which a driver is required to reduce speed or stop when an obstacle or danger appears that the driver is able to observe; however, as the above calculations show, even if the driver complied with the requirements of section 12.1 of the traffic rules, he lacked the technical ability to avoid the collision.

========== CONCLUSION ==========

The results of the research lead to the following conclusions:

---------- Issue No. 1 ----------

In the conditions of this accident, the driver of the Nexia automobile, license plate 30 D 1101, did not have the technical ability to avoid the collision with the pedestrian by emergency braking to stop the automobile before reaching the path of the pedestrian.

---------- Issue No. 2 ----------

In this traffic situation, Mr. Qodirov, the driver of the Nexia automobile, license plate 30 D 1101, was required to act in accordance with section 12.1 of the traffic rules, according to which a driver is required to reduce speed or stop when an obstacle or danger appears that the driver is able to observe; however, as the above calculations show, even if the driver complied with the requirements of section 12.1 of the traffic rules, he lacked the technical ability to avoid the collision.

[signature]
R. B. Pulatov
Expert

[seal: illegible]

Заключение N 44/13

автотехнической экспертизы.

"07" января 2005 года

"06" января 1905 года в РЦСЭ им.Х Сулаймановой МЮ РУз из СУ ГУВД г.Ташкента при постановлении от "05" января 2005 года следователя капитана милиции Алиева для производства судебной автотехнической экспертизы поступили материалы уголовного дела N 23/04-1869.

На разрешение экспертизы поставлены вопросы:

1. Располагал ли водитель автомобиля НЕКСИЯ гос. номер 30 D 1101 Кадиров технической возможностью предотвратить наезд на пешехода с момента начала его движения на пути 2.4 м со скоростью 4.1 км/ч ?
2. Как должен был действовать водитель автомобиля НЕКСИЯ Кадиров в данной дорожной обстановке согласно требованиям правил дорожного движения ?

ПРИМЕЧАНИЕ: редакция вопросов изменена в соответствии со специальными познаниями эксперта.

Производство экспертизы поручено мл.научному сотруднику отдела автотехнических экспертиз РЦСЭ им.Х Сулаймановой Пулатову Ровшану Бегмаджановичу, имеющему высшее техническое образование и экспертную специальность по исследованию обстоятельств дорожно-транспортных происшествий со стажем экспертной работы с 2004 г.

Об уголовной ответственности за отказ от дачи заключения и за дачу заведомо ложного заключения по ст.ст. 238 и 240 УК Республики Узбекистан эксперт предупрежден

Исходные данные:

*ДТП совершено: в начале торможения, передней частью автомобиля НЕКСИЯ;
*Техническое состояние автомобиля НЕКСИЯ: исправный;
*Сведения о нагрузке автомобиля НЕКСИЯ: без нагрузки;
*Профиль участка дороги: горизонтальный участок;
*Обзорность водителю: неограничена;
*Направление движения пешехода относительно направления движения автомобиля НЕКСИЯ: слева направо;
*Тип дорожного покрытия: асфальтобетон;
*Состояние дорожного покрытия: мокрое, однородное;
*Va - скорость движения автомобиля НЕКСИЯ, км/ч: 60.000;
*Sп - путь пешехода до момента наезда, м: 2.400;
*Vп - скорость движения пешехода, км/ч: 4.100;
=Jн - установившееся замедление технически исправного автомобиля НЕКСИЯ при торможении на горизонтальном участке дороги, м/(с*с): 5.000;
=T1 - время реакции водителя автомобиля НЕКСИЯ, с: 0.600;
=T2 - время запаздывания срабатывания тормозного привода автомобиля НЕКСИЯ, с: 0.100;
=T3 - время нарастания замедления автомобиля НЕКСИЯ, с: 0.250;

Исходные данные, помеченные звездочкой (*), приняты по постановлению (определению) о назначении экспертизы. При определении остальных исходных данных использованы следующие материалы уголовного дела и справочно-нормативная литература:

- Постановление (определение) о назначении экспертизы.
- Протокол осмотра места дорожно-транспортного происшествия.
- Схема к протоколу осмотра места дорожно-транспортного происшествия.
- Протокол осмотра и проверки технического состояния транспорта.
- Справка по дорожно-транспортному происшествию.
- Судебная автотехническая экспертиза, ч.2 под ред. В.А.Иларионова, ВНИИСЭ, М., 1980.
- Использование в экспертной практике экспериментально-расчётных значений параметров торможения автотранспортных средств. ВНИИСЭ, 1995.
- Применение дифференцированных значений времени реакции водителя в экспертной практике. ВНИИСЭ, М., 1987.
- Правила дорожного движения. Т., 2001.

============= ИССЛЕДОВАНИЕ =============

Экспертиза проведена с применением ЭВМ по программе "НАСТ", разработанной в отделе автоматизации Казахского НИИСЭ (1991 г).

------------ Вопрос N 1 ------------

Техническая возможность предотвратить наезд на пешехода устанавливается сравнением расстояния (Sa), на котором автомобиль НЕКСИЯ номер 30 D 1101 находился от места наезда в момент начала движения пешехода на пути, указанном в исходных данных, и остановочного пути автомобиля (So) в условиях места происшествия.

$$Tп = 3.6 * \frac{Sп}{Vп};$$

$$Sa = \frac{Va * Tп}{3.6};$$

$$J = Jн \quad (\text{на горизонтальном участке});$$

$$So = (T1 + T2 + 0.5 * T3) * \frac{Va}{3.6} + \frac{Va^2}{25.92 * J};$$

В условиях данного происшествия Sa и So определяются равными, ответственно, 35.1 и 41.5 м. Поскольку Sa меньше So, следовательно водитель автомобиля НЕКСИЯ не располагал технической возможностью предотвратить наезд на пешехода экстренным торможением с остановкой автомобиля до линии движения пешехода.

------------ Вопрос N 2 ------------

В данной дорожной обстановке водителю автомобиля НЕКСИЯ гос. номер 30 D 1101 Кадирову необходимо было действовать в соответствии требованиями п.12.1 правил дорожного движения, согласно которым возникновении препятствия или опасности для движения, которые водитель в состоянии обнаружить, он должен принять меры к снижению скорости вплоть до остановки автомобиля НЕКСИЯ; однако, как видно из вышеприведенных расчетов, даже при выполнении водителем требований п.12.1

- 3 -

вил дорожного движения, у него отсутствовала техническая возможность предотвратить наезд;

============= ВЫВОД =============

По результатам проведенного исследования необходимо сделать следующие выводы:

------------ Вопрос N 1 -----------

В условиях данного происшествия водитель автомобиля НЕКСИЯ гос. номер 30 D 1101 не располагал технической возможностью предотвратить наезд на пешехода экстренным торможением с остановкой автомобиля до линии движения пешехода.

------------ Вопрос N 2 -----------

В данной дорожной обстановке водителю автомобиля НЕКСИЯ гос. номер 30 D 1101 Кадирову необходимо было действовать в соответствии с требованиями п.12.1 правил дорожного движения, согласно которым при возникновении препятствия или опасности для движения, которые водитель в состоянии обнаружить, он должен принять меры к снижению скорости вплоть до остановки автомобиля НЕКСИЯ; однако, как видно из вышеприведенных расчетов, даже при выполнении водителем требований п.12.1 правил дорожного движения, у него отсутствовала техническая возможность предотвратить наезд;

Эксперт  Пулатов Р.Е.

Automobile Analysis
Report No. 1059/13

March 4, 2005

On March 3, 2005, pursuant to an order by Militia Captain Aliyev, the investigator, dated March 1, 2005, the Sulaimanova Regional Forensic Analysis Center of the Ministry of Justice of the Republic of Uzbekistan received materials related to criminal case No. 23/04-1869 from the Investigative Service of the Central Administration of Internal Affairs for the City of Tashkent for the purpose of performing a forensic automobile analysis.

The following issues were submitted for resolution by the analysis:

1. Did Mr. Qodirov, the driver of the Nexia automobile, license plate 30 D 1101, have the technical ability to avoid the collision with the pedestrian within 1.8 seconds when the pedestrian entered the road 2.4 meters away?
2. How should Mr. Qodirov, the driver of the Nexia automobile, have acted in this situation pursuant to the traffic rules?

NOTE: The questions were edited based on the special knowledge of the expert.
The analysis was assigned to Rovshan B. Pulatov, a junior researcher in the department of automobile analysis at the Sulaimanova Regional Forensic Analysis Center. Mr. Pulatov has a higher technical education and specializes in investigating the circumstances of traffic accidents. He has worked as an expert in this area since 2004.
The expert was informed of the criminal penalties for refusal to file a report and for intentionally filing a false report under articles 238 and 240 of the Criminal Code of the Republic of Uzbekistan.

[signature]

Initial data:
* The accident occurred while braking and involved the front of the Nexia automobile;
* The Nexia automobile was in proper working order;
* The Nexia automobile was not carrying any load;
* Road grade: Horizontal;
* Driver's view: Unobstructed;
* Direction of movement of the pedestrian relative to the direction of movement of the Nexia automobile: left to right;
* Type of road surface: Asphalt-concrete
* Condition of road surface: Uniformly wet;
* $V_a$ – Speed of the Nexia automobile: 60.000 km/hour;
* $T_p$ – Time of movement of the pedestrian: 1.800 seconds;
= $J_n$ – Established rate of deceleration of a Nexia automobile in proper working order while braking on a horizontal surface: 5.000 m/s*s);