

--- F.3d ----                                                                                                  Page 1

--- F.3d ----, 2006 WL 278876 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States Court of Appeals, Third Circuit.
**MALAYSIA** INTERNATIONAL SHIPPING CORPORATION Appellant
v.
SINOCHEM INTERNATIONAL CO. LTD.
**No. 04-1815.**

Argued June 7, 2005.
Opinion Filed Feb. 7, 2006.
As Amended Feb. 8, 2006.

**Background:** Malaysian shipping company brought action against Chinese manufacturer, alleging fraudulent misrepresentation in connection with shipment of steel coils. The United States District Court for the Eastern District of Pennsylvania, Franklin S. Van Antwerpen, J., dismissed action. Shipping company appealed.

**Holdings:** The Court of Appeals, Ambro, Circuit Judge, held that:

1(1) admiralty jurisdiction existed, but

6(2) district court should have ascertained all aspects of its jurisdiction before engaging in forum non conveniens analysis.

Vacated and remanded.

Stapleton, Circuit Judge, filed dissenting opinion.

[1] **Admiralty 16** 🗝**17.1**

16 Admiralty
   16I Jurisdiction
      16k17 Torts
         16k17.1 k. In General. Most Cited Cases
District court had subject matter jurisdiction over action brought by Malaysian shipping company against Chinese manufacturer, alleging fraudulent misrepresentation in connection with shipment of steel coils, pursuant to admiralty statute, where seizure of vessel at port in China occurred on navigable waters, and incident had sufficient connection to maritime activity. 28 U.S.C.A. § 1333(1).

[2] **Admiralty 16** 🗝**17.1**

16 Admiralty
   16I Jurisdiction
      16k17 Torts
         16k17.1 k. In General. Most Cited Cases
Party seeking to invoke federal admiralty jurisdiction over tort claim must satisfy conditions both of location and of connection with maritime activity. 28 U.S.C.A. § 1333(1).

[3] **Admiralty 16** 🗝**17.1**

16 Admiralty
   16I Jurisdiction
      16k17 Torts
         16k17.1 k. In General. Most Cited Cases

**Admiralty 16** 🗝**22**

16 Admiralty
   16I Jurisdiction
      16k17 Torts
         16k22 k. Torts Partly Committed or Causing Damage on Land or Nonnavigable Waters. Most Cited Cases
Court applying "location" test for federal admiralty jurisdiction over tort claim must determine whether alleged tort occurred on navigable water or whether injury suffered on land was caused by vessel on navigable water. 28 U.S.C.A. § 1333(1).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                              Page 2

--- F.3d ----, 2006 WL 278876 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

[4] **Admiralty 16** 🗝17.1

16 Admiralty
    16I Jurisdiction
        16k17 Torts
            16k17.1 k. In General. Most Cited Cases

Court applying "connection with maritime activity" test for federal admiralty jurisdiction over tort claim must determine whether: (1) incident involved was of sort with potential to disrupt maritime commerce, and (2) there is substantial relationship to traditional maritime activity, i.e., whether tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that reasons for applying admiralty rules would apply in suit at hand. 28 U.S.C.A. § 1333(1).

[5] **Federal Courts 170B** 🗝45

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(B) Right to Decline Jurisdiction; Abstention Doctrine
            170Bk45 k. Forum Non Conveniens. Most Cited Cases

Although district court must immerse itself to certain degree in facts of case when resolving forum non conveniens motion, it must do no more than delineate likely contours of case by ascertaining, inter alia, nature of plaintiff's action, existence of any potential defenses, and essential sources of proof.

[6] **Federal Courts 170B** 🗝45

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(B) Right to Decline Jurisdiction; Abstention Doctrine
            170Bk45 k. Forum Non Conveniens. Most Cited Cases

In action brought by Malaysian shipping company against Chinese manufacturer, alleging fraudulent misrepresentation in connection with shipment of steel coils, district court should have ascertained its admiralty jurisdiction before dismissing action on forum non conveniens grounds; since nature and definition of forum non conveniens presumed that court deciding issue had valid jurisdiction and venue, forum non conveniens dismissal would have been invalid if district court had not had subject matter jurisdiction under admiralty statute. 28 U.S.C.A. § 1333(1).

[7] **Federal Civil Procedure 170A** 🗝1742(2)

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)2 Grounds in General
                170Ak1742 Want of Jurisdiction
                    170Ak1742(2) k. Particular Cases and Grounds. Most Cited Cases

"Conditional dismissal" is one in which district court dismisses case only if defendant waives jurisdiction and limitations defenses, and only if it turns out that another court ultimately exercises jurisdiction over case.

[8] **Federal Courts 170B** 🗝96

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk96 k. Affidavits and Other Evidence. Most Cited Cases

When defendant raises possible lack of personal jurisdiction, plaintiff bears burden of demonstrating that it exists and presenting prima facie case for exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between defendant and forum state.

[9] **Federal Courts 170B** 🗝45

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(B) Right to Decline Jurisdiction; Abstention Doctrine
            170Bk45 k. Forum Non Conveniens. Most Cited Cases

Doctrine of forum non conveniens can never apply if there is absence of jurisdiction.

Ann-Michele G. Higgins, (Argued), Diane B. Carvell, Rawle & Henderson LLP, Philadelphia,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                    Page 3

--- F.3d ----, 2006 WL 278876 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

PA, for Appellant.
Stephen M. Hudspeth, (Argued), Susan L. Stevens, Coudert Brothers LLP, New York, NY, for Appellee.

Before AMBRO, STAPLETON and ALARCÓN, [FN*] Circuit Judges.

AMBRO, Circuit Judge.
**\*1** Appellant Malaysia International Shipping Corporation ("MISC") appeals the District Court's dismissal, on *forum non conveniens* grounds, of its fraudulent misrepresentation action against Appellee Sinochem International Company Limited ("Sinochem"). We agree with the District Court that admiralty jurisdiction exists over this case. But because we believe the District Court should have determined whether it had personal jurisdiction before ruling on Sinochem's *forum non conveniens* motion, we vacate and remand.

### I. Factual Background & Procedural History

In 2003, Sinochem, a Chinese company, contracted with Triorient Trading Inc. ("Triorient"), an American company that is not a party to this action, for the purchase of a large quantity of steel coils. The coils were required to be loaded for shipment to China by April 30, 2003. Pursuant to the contract, Sinochem opened a letter of credit with its bank in China to provide security to Triorient for the purchase price of the coils. To trigger payment under the letter of credit, Triorient was required to submit a valid bill of lading stating that the coils had been loaded on or before April 30, 2003. Sinochem's contract with Triorient specified that any dispute arising under it would be arbitrated under Chinese law.

Triorient sub-chartered a vessel (the M/V HANDY ROSELAND; hereafter the "Vessel") owned by MISC, a Malaysian company, to transport the steel coils to China. [FN1] Triorient then hired Novolog Bucks County, Inc. ("Novolog"), an American company also not a party to this action, to load the coils onto the Vessel at the Port of Philadelphia. A bill of lading dated April 30, 2003, was issued, acknowledging that the steel coils had been loaded, and the Vessel sailed for China. [FN2]

The bill of lading listed Triorient as the shipper, Sinochem as the receiver, and Pan Ocean as the carrier. On the back of the bill of lading were " Conditions of Carriage" specifying that the Hague Rules applied to it. This document also incorporated by reference a charter party-a contract between MISC and Pan Ocean regarding the Vessel. [FN3] The charter party here is not part of the record because Pan Ocean would not disclose its terms. A letter from Pan Ocean's counsel indicated that the charter party chose "New York law with U.S. arbitration" to apply to disputes under it. An opinion of the Chinese court in the related proceeding, [FN4] however, stated that English law governed disputes under the charter party.

On May 15, 2003, Sinochem filed an action in the Eastern District of Pennsylvania, in which it sought discovery, pursuant to 28 U.S.C. § 1782, [FN5] regarding various aspects of the Vessel's loading, the charter party, and the bill of lading for use in an "imminent foreign proceeding." The District Court granted this limited discovery.

On June 8, 2003, Sinochem petitioned the Guangzhou Admiralty Court in China (the "Chinese Admiralty Court") for preservation of a maritime claim against MISC and for the arrest of the Vessel when it arrived in China, claiming that MISC had fraudulently backdated the bill of lading to April 30, 2003. The Chinese Admiralty Court ordered the ship arrested that same day. The arrest of the Vessel was then carried out at the Huangpu Port in China. MISC posted security ($9,000,000), and the Vessel was released.

**\*2** MISC filed the suit before us in the Eastern District of Pennsylvania on June 23, 2003, alleging that, when Sinochem petitioned the Chinese Admiralty Court for the Vessel's arrest, it negligently misrepresented "the [V]essel's fitness and suitability to load its cargo." MISC further alleged that: (1) "[w]ith a minimal amount of investigation, Sinochem knew or otherwise should have known whether its cargo of steel had been loaded aboard the [V]essel on or by April 30, 2003" ; (2) "Sinochem knew or should have known that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                                            Page 4

--- F.3d ----, 2006 WL 278876 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

other cargo interests and charterers would reasonably and justifiably rely on Sinochem's representation(s) that the vessel had not loaded the cargo as required"; and (3) MISC had sustained damages "[d]ue to the fraudulent representations made by Sinochem and the resulting delay to the [Vessel] in the People's Republic of China caused by said representations...."

On July 2, 2003, Sinochem filed a complaint with the Chinese Admiralty Court alleging that it had suffered damage due to MISC's alleged backdating of the bill of lading (which had triggered payment by Sinochem to Triorient under the letter of credit's terms). Specifically, Sinochem alleged that May 1, 2003, should have been the loading date on the bill of lading. It asserted that the April 30, 2003 loading date allowed Triorient to negotiate successfully its payment and made it "de facto impossible for [it] to stop payment and refuse acceptance of the goods."

MISC moved to dismiss the Chinese Admiralty Court action on jurisdictional grounds. That Court denied MISC's motion, and the Guangdong Higher People's Court (the "Chinese High Court") affirmed, [FN6] concluding that the Chinese Admiralty Court had jurisdiction.

The Chinese High Court rejected MISC's argument that the choice-of-law provisions of the bill of lading and the charter party controlled the case and that jurisdiction therefore properly rested with the London Maritime Arbitration Commission. [FN7] In rejecting MISC's contention that the Chinese Admiralty Court should not have exercised jurisdiction because MISC filed its U.S. action before Sinochem filed its Chinese action, the Chinese High Court determined as follows: "Given that the People's Republic of China and the U.S. are different sovereignties with different jurisdictions, whether [MISC] has taken actions at any U.S. court in respect of this case will have no effect on the exercise by a Chinese court of its competent jurisdiction over said case."

While these events were occurring in the Chinese courts, proceedings continued in MISC's action in the Eastern District of Pennsylvania. Sinochem filed a motion to dismiss MISC's complaint for lack of subject matter and personal jurisdiction, for *forum non conveniens,* and "for failure to observe the rules of [international] comity." The District Court granted Sinochem's motion to dismiss and later denied MISC's motion for reconsideration.

The District Court determined that it had subject matter jurisdiction over MISC's action pursuant to 28 U.S.C. § 1333 (admiralty and maritime jurisdiction) because the alleged tort-which the District Court identified as the seizure of the Vessel at a port in China-occurred on navigable waters and because the incident had a sufficient connection to maritime activity.

**\*3** As to personal jurisdiction, the Court concluded that it did not have specific personal jurisdiction over Sinochem under the Pennsylvania long-arm statute. But it did state that, "provided limited discovery, [MISC] might be able to identify sufficient national contacts to establish personal jurisdiction over [Sinochem] through the federal long-arm statute." The Court declined to order such discovery or rule on this issue because it concluded that dismissal was appropriate on the basis of *forum non conveniens.* [FN8]

In dismissing on *forum non conveniens* grounds, the District Court noted, in the absence of any argument to the contrary by MISC, that an adequate alternative forum for deciding MISC's negligent misrepresentation claim existed in the Chinese Admiralty Court. The District Court then reasoned that the "private interest" factors relevant to its *forum non conveniens* determination (which include, *inter alia,* ease of access to sources of proof and availability of compulsory process to obtain the attendance of unwilling witnesses) weighed in favor of dismissal because the main witnesses were located in China, and the American witnesses would have to travel to China for Sinochem's action regardless whether MISC's action continued in the United States. It reasoned further that the relevant "public interest" factor-the avoidance of unnecessary conflict-of-laws problems-also weighed in favor of dismissal because Chinese law would apply to MISC's negligent misrepresentation claim. [FN9] In this context and because no American interests were

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----    Page 5

--- F.3d ----, 2006 WL 278876 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

implicated, the Court held that dismissal for *forum non conveniens* was appropriate despite the deference that must be paid to the plaintiff's (in this case MISC's) choice of forum.

The District Court also issued an opinion denying MISC's motion for reconsideration of the dismissal for *forum non conveniens.* In doing so, the Court declined to consider MISC's assertion that there were additional important witnesses-the people who were retained as surveyors to observe the loading of the Vessel-located in the United States because MISC had failed to establish the connection of those witnesses to this country in responding to the motion to dismiss even though the information was available to MISC at that time. Even if these witnesses were in the United States, the Court pointed out that China had "adequate means" of compelling their testimony. The Court also noted that the Chinese High Court's decision (which was issued after the decision dismissing MISC's action had been filed) affirming Chinese jurisdiction over Sinochem's claim reinforced the District Court's prior conclusion that it could not justify forcing the parties to litigate this case twice. Finally, the District Court reiterated its choice-of-law analysis.

MISC timely appealed the District Court's dismissal of its action, and the propriety of that dismissal is now before us.

## II. Jurisdiction

### A. *Subject Matter Jurisdiction*

**\*4** Sinochem argues that subject matter jurisdiction does not exist here. Our review of whether the District Court properly exercised subject matter jurisdiction is plenary. *See, e.g., Levine v. United Healthcare Corp.,* 402 F.3d 156, 161 (3d Cir.2005) ; *Bracken v. Matgouranis,* 296 F.3d 160, 162 (3d Cir.2002).

[1] [2] As stated earlier, the District Court determined that it had admiralty jurisdiction over this action under 28 U.S.C. § 1333(1). That statute provides, in pertinent part, that "[t]he district courts shall have original jurisdiction ... of[ ][a]ny civil case of admiralty or maritime jurisdiction...." *Id.* " [A] party seeking to invoke federal admiralty jurisdiction pursuant to ... § 1333(1) over a tort [FN10] claim must satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995); *see also Neely v. Club Med Mgmt. Servs., Inc.,* 63 F.3d 166, 179 (3d Cir.1995) (*en banc* ) (same). We address the location and connection tests in turn.

#### 1. *The Location Test*

[3] "A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Grubart,* 513 U.S. at 534, 115 S.Ct. 1043. The tortious act at issue is Sinochem's alleged misrepresentations to the Chinese Admiralty Court that MISC backdated the bill of lading. Sinochem contends that because (1) these alleged misrepresentations occurred on land and (2) no injury was suffered on land caused by a vessel on navigable water, the location test is not met. We agree with Sinochem as to its second argument, but the resolution of whether the tort here occurred on land or on navigable water is not so clear cut. [FN11] In determining whether the tort occurred on navigable water, we consider the meaning of "tort" as used in the locality test. [FN12] In other words, is the tort only the alleged tortious act itself (here, the making of the alleged misrepresentations), or is it the alleged tortious act *as well as* the resulting injury? The Supreme Court has indicated the latter. In *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), the Court noted that " [u]nder the locality test, the tort 'occurs' where the alleged negligence took effect...." *Id.* at 266, 93 S.Ct. 493 (describing problems with the traditional location test-which did not require that a connection with maritime activity must exist before admiralty jurisdiction is found). That statement was based on the Court's prior holding that "the whole, or at least the substantial cause of action, arising out of the wrong, *must be complete* within the locality on

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                        Page 6

--- F.3d ----, 2006 WL 278876 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

which the [admiralty] jurisdiction depends-on the high seas or navigable waters." *The Plymouth,* 70 U.S. (3 Wall.) 20, 36, 18 L.Ed. 125 (1866) (emphasis added). [FN13]

Our Court has never addressed this issue, but our sister Courts of Appeals that have considered it have adopted what the Fifth Circuit has termed an " impact analysis," *Kuehne & Nagel (AG & Co.) v. Geosource, Inc.,* 874 F.2d 283, 288 (5th Cir.1989), for determining where a tort occurred under the location test. Under that analysis, the place where a tort occurs is the place where the injury occurs. *See id.* (collecting cases) (holding that admiralty jurisdiction did not exist in a case alleging fraudulent inducement to enter a shipping contract because both the fraudulent inducement *and* the resulting injury occurred on land); [FN14] *see also Taghadomi v. United States,* 401 F.3d 1080, 1084 (9th Cir.2005) (rejecting argument that the location test was not satisfied where the Coast Guard's alleged failure to act occurred entirely on land, but the resulting injury occurred on navigable waters, because it "ignore[d] the clear law of [that] circuit that the situs of a tort for the purpose of determining admiralty jurisdiction is the place where the injury occurs"); *Florio v. Olson,* 129 F.3d 678, 680 (1st Cir.1997) ("In order to satisfy the 'location' or ' situs' requirement, a party must show either that the *injury occurred on navigable water* or that the injury was caused by a *vessel* on navigable water." (first emphasis added)).

**\*5** This comports with *Executive Jet Aviation* and *The Plymouth* and also with our view of the meaning of "tort" in the context of our case. A tort claim is not complete until both a tortious act and an injury have occurred. Put another way, " negligence, of itself, furnishes no cause of action, it is *damnum absque injuria* [damage without injury]." *The Plymouth,* 70 U.S. (3 Wall.) at 36. Accordingly, we too adopt the rule that, for purposes of the location test, a tort occurs where the alleged tortious act takes effect.

Applying that rule here, we conclude easily that the test is met. The injury resulting from Sinochem's alleged misrepresentations to the Chinese Admiralty Court was the seizure of the Vessel at a port in China. That the seizure occurred on navigable waters is undisputed. Thus, the District Court's determination that, "[a]s the seizure occurred on navigable water, at a port in China, [MISC]'s complaint satisfies the locality prong" is correct. We therefore turn to whether the alleged tort bears a sufficient connection to maritime activity to warrant the exercise of admiralty jurisdiction.

2. *Connection with Maritime Activity Test*

[4] The second prong of the admiralty jurisdiction test for tort claims has two components: (1) " whether the incident involved was of a sort with the potential to disrupt maritime commerce"; and (2) whether there is a substantial relationship to traditional maritime activity, *i.e.,* "whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying admiralty rules would apply in the suit at hand." *Grubart,* 513 U.S. at 538-40, 115 S.Ct. 1043.

a. *Potential Disruptive Effect on Maritime Commerce*

The District Court concluded that, regardless whether the incident here was characterized as "the improper loading of cargo on a vessel docked at a port on navigable waters or the arrest of a vessel docked in navigable waters," it had a "potentially disruptive impact on maritime commerce." We believe that the incident before us is better characterized as Sinochem's alleged misrepresentations to the Chinese Admiralty Court that led to the arrest of the Vessel at port. Yet, we agree that, no matter how we define the incident, it had the potential to disrupt maritime commerce-and in fact did so, as the alleged misrepresentations resulted in the Vessel's seizure. (And we note that making misrepresentations about another party's conduct with respect to the shipment of goods and a bill of lading is generally likely to disrupt maritime commerce as between those two parties.) Thus, the first component of the connection with maritime activity inquiry is met.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----  
Page 7

--- F.3d ----, 2006 WL 278876 (C.A.3 (Pa.))  
**(Cite as: --- F.3d ----)**

b. *Substantial Relationship to Traditional Maritime Activity*

"[W]hether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity" is not a concept cabined narrowly or rigidly. *Neely,* 63 F.3d at 179 (internal quotation marks omitted); *see also Sisson v. Ruby,* 497 U.S. 358, 364, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990) ("Our cases have made clear that the relevant 'activity' is defined not by the particular circumstances of the incident, but by the general conduct from which the incident arose."). The Supreme Court has held that a "broad perspective" should be used in determining whether the activity underlying a claim has the requisite relationship to maritime activity, and has declined to hold that navigation is the only activity that could satisfy the substantial relationship test. *Sisson,* 497 U.S. at 367, 110 S.Ct. 2892. [FN15]

**\*6** The District Court held that, under *Sisson,* the activity in this case met the substantial relationship test because,

if activities undertaken by vessels have a substantial relationship to maritime activity, it logically follows that activities carried out *to or against* vessels would also have a substantial relationship to maritime activity. As such, the very serious act of arresting a vessel at a port sufficiently relates to maritime activity to establish subject matter jurisdiction.

*Malaysia,* mem. op. at 8 (emphasis in original).

Per *Sisson* and *Neely,* our focus in this inquiry must also include the activity *giving rise* to the seizure of the Vessel. *See Sisson,* 497 U.S. at 364, 110 S.Ct. 2892; *Neely,* 63 F.3d at 179.

As stated earlier, Sinochem's alleged misrepresentations gave rise to the seizure of the Vessel. Looked at narrowly, it may seem that the act of making representations (or misrepresentations, as the case may be) to a court has no connection with maritime activity. But looking at Sinochem's alleged conduct broadly, as we must, it was clearly undertaken with the purpose of having the Vessel seized. [FN16] Asking a court to have a vessel arrested, as Sinochem did here, is a well-established method of granting an admiralty court power to exercise authority over a ship, *see Reed v. S.S. Yaka,* 307 F.2d 203, 204 (3d Cir.1962), *rev'd on other grounds,* 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), and thus has a substantial relationship to traditional maritime activity. [FN17]

Because both prongs of the test for determining whether admiralty jurisdiction over a tort claim exists are met here, we now turn to another jurisdiction-related inquiry in this case-the propriety of the District Court's decision to dismiss on *forum non conveniens* grounds without first ascertaining that it had personal jurisdiction over the parties. [FN18]

**B. *Personal Jurisdiction***

As discussed above, the District Court held that it did not have personal jurisdiction over Sinochem under Pennsylvania's long-arm statute but that, with limited jurisdictional discovery, MISC might be able to establish personal jurisdiction over Sinochem based on the federal long-arm statute. MISC contends that the District Court erred by not allowing it this additional discovery, and thus not determining whether personal jurisdiction existed, before dismissing its complaint on the basis of *forum non conveniens.* This issue-whether courts must decide jurisdictional issues, here personal jurisdiction, before ruling on *forum non conveniens* -is one of first impression in our Circuit. [FN19]

Courts of Appeals have split on the issue. *Compare In re Arbitration Between Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine,* 311 F.3d 488, 497-98 (2d Cir.2002) (holding that courts may pass over jurisdictional questions and decide a *forum non conveniens* issue), *and In re Papandreou,* 139 F.3d 247, 255-56 (D.C.Cir.1998) (same), *superseded by statute on other grounds, with Dominguez-Cota v. Cooper Tire & Rubber Co.,* 396 F.3d 650, 654 (5th Cir.2005) (*per curiam* ) (holding that they may not). These are the three cases most often referred to, but the Seventh and the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                                    Page 8

--- F.3d ----, 2006 WL 278876 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

Ninth Circuits have also reached the same result as the Fifth Circuit's *Dominguez-Cota* opinion. *See Patrickson v. Dole Food Co., Inc.,* 251 F.3d 795 (9th Cir.2001), *aff'd in part, cert. dismissed in part,* 538 U.S. 468, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003); *Kamel v. Hill-Rom Co., Inc.,* 108 F.3d 799 (7th Cir.1997).

**\*7** We tackle our analysis in two parts. First, we decide whether *forum non conveniens* is a non-merits grounds for dismissal. Second, we decide whether a district court must establish both subject matter jurisdiction and personal jurisdiction before ruling on a *forum non conveniens* issue.

1. *Is Forum Non Conveniens Merits Related?*

The Supreme Court has held that courts may not assume "hypothetical jurisdiction" to resolve a case on the merits. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101-02, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). In other words, an actual determination must be made whether subject matter jurisdiction exists before a court may turn to the merits of a case. The Court later concluded that this principle applied equally to personal jurisdiction because "[p]ersonal jurisdiction, too, is an essential element of the jurisdiction of a district ... court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 584, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (ellipsis in original) (internal quotation marks omitted). The Court held, however, that the existence of subject matter jurisdiction need not be decided before personal jurisdiction, stating that "[i]t is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits." *Id.* at 585, 119 S.Ct. 1563. While *Steel Co.* required rulings on subject matter jurisdiction before rulings on the merits, the *Ruhrgas* Court held that it did not "dictate a sequencing of jurisdictional issues." *Id.* at 584, 119 S.Ct. 1563. In other words, a dismissal on " ' non-merits grounds such as ... personal jurisdiction, before finding subject-matter jurisdiction, makes no assumption of law-declaring power that violates the separation of powers principles underlying [*Steel Co.*]' " *Id.* at 584-85, 119 S.Ct. 1563 (quoting *In re Papandreou,* 139 F.3d at 255) (omission in original).

In the wake of *Steel Co.* and *Ruhrgas,* one commentator posits that there are three categories of issues, only two of which have set decisional priorities. *See* Scott C. Idleman, *The Demise of Hypothetical Jurisdiction in the Federal Courts,* 52 Vand. L.Rev. 235, 321 (1999). The first category includes jurisdictional issues that "cannot be bypassed" because Article III of our Constitution requires that they be addressed; the second deals with merits-related issues, which "cannot be reached without first verifying jurisdiction." *Id.* The third category fits somewhere between these first two. It comprises two subgroups of issues: (1) jurisdictional issues that do not have to be reached before the merits and (2) "issues that are neither jurisdictional nor merits-related." *Id.* at 322, 321-22. This first subgroup includes non-Article III jurisdictional issues like statutory standing. *Id.* at 322 n. 361; *see also id.* at 297-99. The second subgroup includes "procedural, remedial, or evidentiary" issues. *Id.* at 322 n. 364.

**\*8** Within this framework, *forum non conveniens* is not a constitutional Article III jurisdictional issue, so we address whether it fits within the second or the third category. The D.C. Circuit-in a pre-*Ruhrgas* case-reasoned that what *Steel Co.* put " beyond the power of courts lacking jurisdiction [was] adjudication on the merits, the act of deciding the case," so that courts could still dismiss cases on "other non-merits grounds such as forum non conveniens and personal jurisdiction." *In re Papandreou,* 139 F.3d at 255. Accordingly, it held that *forum non conveniens* was "as merits-free as a finding of no jurisdiction." *Id.*

But the Fifth Circuit reached the opposite conclusion. It held that it could not "characterize forum non conveniens as a 'non-merits' issue akin to personal jurisdiction." *Dominguez-Cota,* 396 F.3d at 654. We disagree, as we believe that *forum non conveniens* is a non-merits ground for dismissal.

The Fifth Circuit based its holding on two cases, a Supreme Court case-*Van Cauwenberghe v. Biard,* 486 U.S. 517, 108 S.Ct. 1945, 100 L.Ed.2d 517

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                                    Page 9

--- F.3d ----, 2006 WL 278876 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

(1988)-and a 1986 Fifth Circuit case-*Partrederiet Treasure Saga v. Joy Manufacturing Co.,* 804 F.2d 308 (5th Cir.1986). *See Dominguez-Cota,* 396 F.3d at 653 (citing *Biard* and *Partrederiet* ). These two cases concern on their face whether *forum non conveniens* falls within the collateral-order doctrine (which allows otherwise non-final orders to be " immediately appealable under § 1291," *Biard,* 486 U.S. at 527, 108 S.Ct. 1945). One of the elements of the collateral-order doctrine is a requirement that the order be "completely separate from the merits." *Id.* The Supreme Court (and the Fifth Circuit) both determined that, "in assessing a *forum non conveniens* motion, the district court generally becomes entangled in the merits of the underlying dispute." *Id.* at 528, 108 S.Ct. 1945; *see also Partrederiet,* 804 F.2d at 310 (same).

These cases are telling, to be sure, but not dispositive, for four reasons. First, in a context other than the collateral-order doctrine, both the Supreme Court and the Fifth Circuit have held *forum non conveniens* dismissals not to be rulings on the merits. In a case decided less than a month before *Biard,* the Supreme Court discussed the Anti-Injunction Act in *Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988). It held that the "District Court did not resolve the merits of [petitioner's] claim.... Rather, the only issue decided by the District Court was that petitioner's claims should be dismissed under the federal *forum non conveniens* doctrine." *Id.* at 148, 108 S.Ct. 1684. In a 2003 opinion citing *Chick Kam Choo* and discussing the Anti-Injunction Act and claim preclusion, the Fifth Circuit held that an " f.n.c. [*forum non conveniens* ] dismissal ... does not resolve the substantive merits." *Vasquez v. Bridgestone/Firestone, Inc.,* 325 F.3d 665, 677 (5th Cir.2003). Instead, "[t]he principle of f.n.c .... contemplates resolving the merits in another forum." *Id.* at 679. The *Vasquez* Court also held that a dismissal under *forum non conveniens* could be construed as a Federal Rule of Civil Procedure 41(b) dismissal for lack of jurisdiction or improper venue-*i.e.,* not a dismissal on the merits. *Id.* at 678.

**\*9** [5] Second, we have before discussed *Biard* and, in that context, minimized the entanglement it mentions between the merits and *forum non conveniens.* Although a "district court must immerse itself to a certain degree in the facts of the case ...., [it] must do no more than delineate the likely contours of the case by ascertaining, among other things, the nature of the plaintiff's action, the existence of any potential defenses, and the essential sources of proof." *Lacey v. Cessna Aircraft Co.,* 932 F.2d 170, 181 (3d Cir.1991). We further noted that "[n]othing in [*Biard* ] ... directs a court to assess the relative strength of the parties' arguments and to select one paramount issue." *Id.* at 182. Thus, an entanglement in the facts does not suffice to make *forum non conveniens* grounds a merits-related issue.

Third, also following from the first reason, language in the Supreme Court's 1994 *American Dredging* opinion suggests that *forum non conveniens* is not a merits-based issue, but simply a procedural one. *Am. Dredging Co. v. Miller,* 510 U.S. 443, 453, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994) (noting that "the doctrine is one of procedure rather than substance" ); *see also id.* at 454 n. 4, 114 S.Ct. 981 (stating that "*forum non conveniens* is not a substantive right of the parties, but a procedural rule of the forum"). In doing so, it equated *forum non conveniens* with venue: "At bottom, the doctrine of *forum non conveniens* is nothing more or less than a supervening venue provision.... But venue is a matter that goes to process rather than substantive rights-determining which among various competent courts will decide the case." *Id.* at 453, 114 S.Ct. 981. The Court further distinguished *forum non conveniens* from other issues. "Unlike burden of proof ... and affirmative defenses such as contributory negligence ..., *forum non conveniens* does not bear upon the substantive right to recover... ." *Id.* at 454, 114 S.Ct. 981.

Fourth, that *forum non conveniens* is not merits based has the most support at the federal appellate level. The First Circuit also agrees with this notion. Mentioning *Papandreou,* it discussed the defendants' "non-merits-based defenses ... (including insufficiency of process, forum non conveniens, and lack of in personam jurisdiction)." *Ungar v. Palestine Liberation Org.,* 402 F.3d 274, 294 (1st Cir.2005). We therefore join three (First Circuit, Second Circuit, *see Monegasque,* 311 F.3d

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                              Page 10
--- F.3d ----, 2006 WL 278876 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

at 498, and D.C. Circuit, *see Papandreou,* 139 F.3d at 255) of the four Circuits to have weighed in on the issue, and part with the Fifth Circuit.

This background demonstrates that *forum non conveniens* is squarely in the third category of issues discussed above. Neither a constitutional Article III jurisdictional issue nor a substantive, merits-related issue, *forum non conveniens* is a non-jurisdictional, non-merits procedural issue. We next decide whether jurisdiction must be determined before *forum non conveniens.*

### 2. *Can a Court Decide Forum Non Conveniens Before Establishing Jurisdiction?*

**\*10** [6] Should the District Court have determined whether jurisdiction existed before dismissing on *forum non conveniens* grounds? We hold yes for two reasons.

First, the very nature and definition of *forum non conveniens* presumes that the court deciding this issue has valid jurisdiction (both subject matter and personal jurisdiction) and venue. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 504, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) ("[T]he doctrine of *forum non conveniens* can never apply if there is absence of jurisdiction [FN20] or mistake of venue."), *superseded by statute on other grounds.* Through *forum non conveniens,* a district court "may decline to exercise its jurisdiction, *even though the court has jurisdiction and venue,* when it appears that the convenience of the parties and the court and the interests of justice indicate that the action should be tried in another forum." *Baumgart v. Fairchild Aircraft Corp.,* 981 F.2d 824, 828 (5th Cir.1993) (emphasis added); *see also Am. Dredging,* 510 U.S. at 447-48, 114 S.Ct. 981 (same); *Altmann v. Republic of Austria,* 317 F.3d 954, 972 (9th Cir.2002) (same); *Rustal Trading US, Inc. v. Makki,* 17 Fed.Appx. 331, 335 (6th Cir.2001) (unpublished) (same); *Howe v. Goldcorp Invs., Ltd.,* 946 F.2d 944, 947 (1st Cir.1991) (Breyer, C.J.) (same). Stated differently, but with the same requirement of jurisdiction, we have held that the ultimate inquiry of *forum non conveniens* "is whether the retention of jurisdiction by the district court would best serve the convenience of the parties and the ends of justice." *Mobil Tankers Co., S.A. v. Mene Grande Oil Co.,* 363 F.2d 611, 613 (3d Cir.1966); *see also Hoffman v. Goberman,* 420 F.2d 423, 426 (3d Cir.1970) (same).

*Forum non conveniens* allows a court (with jurisdiction and proper venue) to decline the exercise of its jurisdiction in favor of letting another court (also with jurisdiction and venue) hear the case. In this way, jurisdiction-both subject matter and personal jurisdiction-is a *sine qua non* for *forum non conveniens. See, e.g., Gulf Oil,* 330 U.S. at 506-07, 67 S.Ct. 839 ("In all cases in which the doctrine of *forum non conveniens* comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them."); *In re Bridgestone/Firestone, Inc.,* 420 F.3d 702, 704 (7th Cir.2005) (discussing the need for an alternative forum with jurisdiction and stating "it is tough to argue that the present forum [*i.e.,* the one deciding the *forum non conveniens* motion]-which by definition has both subject matter jurisdiction and personal jurisdiction over all parties-is 'out of all proportion to plaintiff's convenience,' when the plaintiff has no other options"); *Black's Law Dictionary* 680 (Bryan A. Garner ed., 8th ed.2004) (defining *forum non conveniens* as the "doctrine that an appropriate forum-even though competent under the law-may divest itself of jurisdiction if ... it appears that the action should proceed in another forum in which the action might also have been properly brought in the first place"); Jack H. Friedenthal *et al., Civil Procedure* § 2.17, at 91-92 (4th ed.2005) (noting that *forum non conveniens* " permits a court having jurisdiction over an action to refuse to exercise its jurisdiction when the litigation could be brought more appropriately in another forum," and stating that "[i]t must appear that jurisdiction over all parties can be secured and that complete relief can be obtained in the supposedly more convenient court"); 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3828, at 287 (2d ed. 1986) ("The doctrine of forum non conveniens does not come into play unless the court in which the action was brought has both subject matter and personal jurisdiction and is a proper venue. If the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                              Page 11

--- F.3d ----, 2006 WL 278876 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

case is wanting in any of these respects, the action should be dismissed on that ground without reaching questions of forum non conveniens." (footnote omitted)). The need for jurisdiction in both forums (the forum deciding the *forum non conveniens* issue and the alternative forum) is so important that the Seventh Circuit recently vacated a *forum non conveniens* dismissal because the intended alternative forum did not have personal jurisdiction over the defendants. *In re Bridgestone/Firestone,* 420 F.3d at 705.

**\*11** Second, at least two other Circuit Courts, and the Supreme Court (inferentially), have determined that *forum non conveniens* dismissals are invalid if the district court does not have subject matter jurisdiction. The Seventh Circuit in *Kamel* affirmed the District Court's *forum non conveniens* dismissal. *Kamel,* 108 F.3d at 806. But one of the parties, Chedid, was an American expatriate with a Saudi Arabian domicile; his expatriate status destroyed complete diversity under 28 U.S.C. § 1332(a). *Id.* at 805. Therefore, the Seventh Circuit held, the District Court "lacked jurisdiction to rule on [the defendant's] *forum non conveniens* motion because Chedid was a party to this action." *Id.* Because appellate courts have the power to dismiss dispensable parties to salvage diversity jurisdiction, the Court dismissed Chedid "to attain subject matter jurisdiction to affirm [the] *forum non conveniens* dismissal." *Id.* at 806. By so doing, it made clear that *forum non conveniens* dismissals are of no effect unless the district courts have jurisdiction. Only by dismissing Chedid and restoring jurisdiction by fiat could the Circuit Court there deal with the *forum non conveniens* dismissal.

Likewise, in 2001 the Ninth Circuit reversed a *forum non conveniens* dismissal because the District Court lacked subject matter jurisdiction. *See Patrickson,* 251 F.3d at 800 n. 3 ("As the district court recognized, such claims may raise serious questions of forum non conveniens under federal and state law. Of course, the federal courts may decide that issue only if we have jurisdiction over the case."). The District Court had dismissed some class action cases for *forum non conveniens, id.* at 798, but the Ninth Circuit held that the District Court had no federal subject matter jurisdiction, *id.* at 808. Accordingly, the Court reversed the District Court's judgment and remanded the case with instructions to remand it to a state court. *Id.* at 808-09. The Supreme Court agreed that there was no subject matter jurisdiction and affirmed the Ninth Circuit's reversal of the *forum non conveniens* dismissal. *Dole Food Co. v. Patrickson,* 538 U.S. 468, 480, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003).

At least one District Court within our Circuit has also followed this approach in the context of personal jurisdiction. *Henkel Corp. v. Degremont, S.A.,* 136 F.R.D. 88 (E.D.Pa.1991), held, in a case where discovery on issues of personal jurisdiction was ongoing, that the defendants' *forum non conveniens* motion could not be decided because the Court had "not determined whether [it had] jurisdiction over the parties." *Id.* at 98.

What of the cases holding otherwise? The Second Circuit's *Monegasque* opinion ignores the nature of *forum non conveniens* and the cases cited above by clinging to the principle of hypothetical jurisdiction. *See Monegasque,* 311 F.3d at 497. First, in the face of the Supreme Court's disapproval of this principle in *Steel Co.,* it claims to retain hypothetical jurisdiction unless the "potential lack of jurisdiction is a constitutional question." *Id.* (internal quotation marks omitted). It then avoids further analysis by quoting liberally from the D.C. Circuit's *Papandreou* opinion. *See id.* at 498.

**\*12** [7] *Papandreou* states that *forum non conveniens* "does not raise a jurisdictional bar but instead involves a deliberate abstention from the exercise of jurisdiction." *In re Papandreou,* 139 F.3d at 255. As a court can only abstain from jurisdiction it already has, if it has no jurisdiction *ipso facto* it cannot abstain from the exercise of it. The *Papandreou* Court appears to concede as much when it mentions that "abstention may appear logically to rest on an assumption of jurisdiction...." *Id.* And again it exposes the weakness of its position in a footnote, where it admits that "[a]ny such forum non conveniens dismissal [*i.e.,* one decided without first establishing jurisdiction] could not, however, be subject to conditions, [FN21] e.g., a condition that defendants promise to submit to the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----   Page 12

--- F.3d ----, 2006 WL 278876 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

jurisdiction of another court, for exaction of such a condition would appear inescapably to constitute an exercise of jurisdiction." *Id.* at 256 n. 6.

We go a more certain way. District courts either have jurisdiction to decide *forum non conveniens* motions or they do not. As such, we hold that they must have jurisdiction before they can rule on which forum, otherwise available, is more convenient to decide the merits.

We do not reach this holding without some regret, as we would like to leave district courts with another arrow in their dismissal quivers. Also, we recognize that this result may not seem to comport with the general interests of judicial economy and may, in this case, ultimately result in a waste of resources if the case is again dismissed before the substance of MISC's claim is decided. But precedent, logic, and the very terms of the *forum non conveniens* doctrine dictate this result. If the Supreme Court wishes otherwise, we leave that determination to it. For now, it tells us, "[h]ypothetical jurisdiction produces nothing more than a hypothetical judgment-which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning." *Steel Co.,* 523 U.S. at 101, 118 S.Ct. 1003. Without jurisdiction over subject matter and parties, we are pundits, hardly an optimal calling for appellate courts.

Here we have already decided subject matter jurisdiction, but we must take our inquiry one step further. We must decide whether the District Court has adequately addressed personal jurisdiction.

### 3. *Did the District Court Adequately Address Personal Jurisdiction?*

[8] Sinochem urges that, regardless of the discussion above, we should nonetheless conclude that the District Court adequately addressed personal jurisdiction before moving to its *forum non conveniens* analysis, contending that the District Court determined that MISC had made a *prima facie* showing of personal jurisdiction. When a defendant raises the possible lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that it exists and "present[ing] a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992) (internal quotation marks omitted). Here, with regard to the potential existence of personal jurisdiction over Sinochem under the federal long-arm statute, the District Court stated only that MISC's "allegations with respect to [Sinochem] enterprises in this country, as well as undisputed facts averred with respect to how the contract was carried out, render [MISC]'s claim far from frivolous."

**\*13** This general statement does not indicate that MISC met its burden of establishing sufficient contacts with "reasonable particularity." Rather, it points out only the possibility that MISC *might* be able to do so and that there were some facts that supported MISC's claim. Consequently, we hold that the District Court's general statement as to the possibility that personal jurisdiction might exist did not determine whether MISC has made a *prima facie* case for personal jurisdiction, let alone constitute an ultimate conclusion that it did exist. [FN22] *See Mellon Bank,* 960 F.2d at 1226 (citing *Carteret Sav. Bank, FA v. Shushan,* 954 F.2d 141, 150 (3d Cir.1992)). We therefore remand this case for a decision on personal jurisdiction (and, of course, whatever jurisdictional discovery may be necessary for such a decision). [FN23]

### III. Response to the Dissent

Our colleague has filed a thoughtful dissent with several plausible arguments. To stem any confusion, we respond to those arguments.

1. The dissent argues that our holding "subverts a primary purpose of the doctrine of *forum non conveniens,*" defining (without citation) that primary purpose as "protect[ing] a defendant from being compelled to litigate in a forum where it will have to shoulder the burden of substantial and unnecessary effort and expense." This overdramatizes the doctrine, as most litigation involves unwanted effort and expense for the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----   Page 13

--- F.3d ----, 2006 WL 278876 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

defendant. The doctrine's purpose has elsewhere been described as a district court-with jurisdiction and venue-declining to exercise that jurisdiction " when it appears that the convenience of the parties and the court and the interests of justice indicate that the action should be tried in another forum." 17 James Wm. Moore, *Moore's Federal Practice* § 111.70, at 111-208 (3d ed.2005) (internal quotation marks omitted); *see also* Friedenthal *et al., supra,* § 2.17, at 91 (noting that "a correct, but inconvenient, tribunal" may refuse to exercise its jurisdiction when "the forum may have little to no connection with the significant events forming the basis of the lawsuit" or when "the litigation could be brought more appropriately in another forum"). Our holding coincides with this purpose; it ensures that both forums are proper and allows for choice between them.

2. The dissent quotes *Ruhrgas* for the proposition that the rejection of hypothetical jurisdiction is not pertinent here:
"[A] court that dismisses on ... non-merits grounds ... before finding subject-matter jurisdiction, [however] makes no assumption of law-declaring power that violates the separation of powers principles underlying ... *Steel Company.*"

(Alterations and omissions in original).

This quotation suggests that a district court's dismissal on non-merits grounds of any type does not violate the prohibition against hypothetical jurisdiction. But while the first omission in the quotation was as it appeared in *Ruhrgas,* the second one obscures the fact that the Supreme Court restricted its statement to "non-merits grounds such as ... personal jurisdiction," *Ruhrgas,* 526 U.S. at 584, 119 S.Ct. 1563 (omission in original). We held in section II.B.1 above that *forum non conveniens* was a non-merits issue, but of a different type from personal jurisdiction-a holding the dissent does not dispute. Thus, we do not agree that *Ruhrgas* makes the principle of hypothetical jurisdiction inapplicable in this context.

**\*14** 3. We are faulted for recognizing that our holding may not always result in the most streamlined procedure. But the dissent does not comment on our concerns in footnote 21, above, that the opposite holding could also result in a waste of resources. We are not willing to sacrifice the correct result for an occasional gain in judicial economy.

4. The dissent ignores our citations to the Supreme Court, the Seventh Circuit, and two treatises by claiming that our "only rationale" is based on *Black's Law Dictionary.* We cite *Black's,* but our reasoning is also based on-among other sources-*Gulf Oil'* s statement that *forum non conveniens* in all cases "presupposes at least two forums in which the defendant is amenable to process," 330 U.S. at 507, 67 S.Ct. 839, and the Seventh Circuit's statement that *forum non conveniens* "by definition" contemplates that the forum deciding the motion " has both subject matter jurisdiction and personal jurisdiction over all parties," *In re Bridgestone/Firestone,* 420 F.3d at 704.

5. Our colleague acknowledges that the Seventh Circuit's *Kamel* case supports our result, but cannot distinguish it away. The dissent's only quibble with the case is apparently *Kamel'* s lack of citation or explanation, but that does not prevent us from joining the Seventh Circuit on this issue. The dissent also ignores the Seventh Circuit's reiteration of *Kamel'* s principles in its 2005 *In re Bridgestone/Firestone* case quoted above.

6. The dissent restricts *Gulf Oil* to holding "only that where the 'principle of *forum non conveniens* [applies] a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute.' " (quoting *Gulf Oil,* 330 U.S. at 507, 67 S.Ct. 839) (alteration in original). This ignores the immediately preceding sentence in the *Gulf Oil* opinion, the one quoted above that *forum non conveniens* "presupposes at least two forums in which the defendant is amenable to process," *Gulf Oil,* 330 U.S. at 507, 67 S.Ct. 839; *see also id.* at 504, 67 S.Ct. 839 (noting that "the doctrine of *forum non conveniens* can never apply if there is absence of jurisdiction or mistake of venue" ).

7. Our citation to the Ninth Circuit's *Patrickson* case is criticized as "inapposite." We agree that the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                    Page 14

--- F.3d ----, 2006 WL 278876 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

Supreme Court did not explicitly discuss its affirmance of the Ninth Circuit's reversal of the *forum non conveniens* dismissal for a lack of subject matter jurisdiction. But as Nixon's attorney general John Mitchell said, in his oft-misquoted phrase, "You'd be better informed if instead of listening to what we say, you watch what we do." *The Oxford Dictionary of American Legal Quotations* 254 (Fred R. Shapiro ed., 1993). What the Court did speaks louder than its lack of discussion about it.

8. The dissent concedes that the Supreme Court stated that *forum non conveniens* " 'can never apply' " without jurisdiction, but then claims that courts may abstain from exercising their jurisdiction without first checking to see if they have it. In other words, our colleague believes that a court can rule on *forum non conveniens*-which requires jurisdiction-just so long as it pretends that it has jurisdiction. But if a court suspects that it does not have personal jurisdiction over the parties, can it still dismiss for *forum non conveniens?* What if that court knows for certain that it does not have personal jurisdiction? We cannot tell how far the dissent's principle of willing blindness goes, but we decline to allow courts to exercise this legal fiction when ruling on a doctrine that depends by definition on the courts' having jurisdiction.

*\*15* 9. Last, the dissent claims that, while "it is important to determine whether the allegedly more convenient forum has jurisdiction to entertain the suit, there is no utility in, and no doctrinal necessity for, insisting that the present forum determine its own jurisdiction before dismissing." But this is certainly incorrect. The D.C. Circuit admitted as much in *Papandreou. Cf.* 139 F.3d at 256 n. 6. It recognized that district courts without jurisdiction may not grant conditional dismissals on *forum non conveniens* grounds. Therefore, while district courts can "determine" whether the alternative forum has jurisdiction, they cannot make their decision stick under the dissent's reasoning. The usefulness of and necessity for our holding are that it grants district courts plenary power to deal with the consequences of their *forum non conveniens* dismissals. Not only can courts dismiss cases once their jurisdiction is established, but they can also enforce those dismissals and protect the non-moving parties in those cases.

In sum, we appreciate the dissent's arguments, but we remain unpersuaded and unchanged in our conviction that *forum non conveniens,* by its very terms, requires courts beforehand to ascertain and have subject matter jurisdiction and personal jurisdiction. [FN24]

There is a difference between the typical "hypothetical jurisdiction" scenario contemplated in *Ruhrgas* and the situation we face. In *Ruhrgas,* the choice was basically between (a) dismissing based on personal jurisdiction and (b) reaching (and possibly finding) subject matter jurisdiction and then dismissing based on personal jurisdiction. *See Ruhrgas,* 526 U.S. at 588, 119 S.Ct. 1563. Here, the choice is between (a) dismissing for *forum non conveniens* or (b) reaching personal jurisdiction and either (i) dismissing based on the lack of it or (ii) finding personal jurisdiction and dismissing for *forum non conveniens.*

Two characteristics make the two situations different. First, subject matter jurisdiction and personal jurisdiction are two of the prerequisites for litigation to proceed, but they are separate inquiries. Thus, it is no surprise that *Ruhrgas* leaves it up to the court to decide first whichever one it wants-there is no necessary order of decision. But *forum non conveniens* by definition requires two otherwise proper forums with both subject matter jurisdiction and personal jurisdiction. In this light, subject matter jurisdiction and personal jurisdiction are simply two of the horses to which the litigation cart is harnessed. Deciding *forum non conveniens* before jurisdiction puts the cart before the horses.

Second, a court following *Ruhrgas* can dismiss with the certainty that the case is not properly before it. Whether the case is deficient on subject matter jurisdiction or personal jurisdiction, the court cannot decide the merits. A case dismissed for *forum non conveniens,* on the other hand, is not faulty-by definition. It is a case properly before the court to determine the merits, although it is simply

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                         Page 15

--- F.3d ----, 2006 WL 278876 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

more convenient to do so elsewhere. But if a court were to dismiss a case for *forum non conveniens* without ascertaining jurisdiction (whether subject matter or personal), it could not enforce sending the case to the alternative forum. *Papandreou,* 139 F.3d at 256 n. 6.

### IV. Conclusion

**\*16** The District Court correctly determined that subject matter (here admiralty) jurisdiction exists because the injury resulting from Sinochem's alleged misrepresentations occurred on navigable waters and because the activity giving rise to MISC's claim had the requisite connection with maritime activity. But the Court should have ascertained all aspects of its jurisdiction-including personal jurisdiction-before engaging in a *forum non conveniens* analysis. We therefore vacate and remand this case to the District Court for a determination of whether personal jurisdiction exists.

STAPLETON, J., Dissenting.
In essence, this matter involves a claim that Sinochem committed fraud on the Chinese court in the course of securing an arrest of the vessel, and the District Court did not abuse its discretion in determining that a balancing of the relevant private and public factors counseled abstention in favor of that court. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Accordingly, I would affirm the order of the District Court.

Our Court today mandates that the District Court subject Sinochem to discovery and other proceedings in a forum which the District Court rightly regards as inappropriate. That mandate subverts a primary purpose of the doctrine of *forum non conveniens.* That doctrine is intended to protect a defendant from being compelled to litigate in a forum where it will have to shoulder the burden of substantial and unnecessary effort and expense. A doctrine having this objective should not be applied in a manner that imposes a substantial and unnecessary litigation burden on the defendant,

absent some important countervailing consideration. The only countervailing consideration identified by Malaysia is the doctrine that courts without subject matter jurisdiction and personal jurisdiction over the defendant are powerless to adjudicate a case or controversy. While this is a valid and fundamental proposition, it does not dictate that the District Court conduct discovery and rule upon its personal jurisdiction over Sinochem before abstaining in favor of a far more appropriate forum.

A court may not assume that it has jurisdiction and then proceed to adjudicate the claim before it. The Supreme Court rejected such a "hypothetical jurisdiction" approach in *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), "because it carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers." The Supreme Court has made clear, however, that this principle is inapposite here:

"[A] court that dismisses on ... non-merits grounds ... before finding subject-matter jurisdiction, [however] makes no assumption of law-declaring power that violates the separation of powers principles underlying ... *Steel Company.*" *In re Papandreou,* 139 F.3d 247, 255 (C.A.D.C.1998). It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits. Thus, as the Court observed in *Steel Co.,* district courts do not overstep Article III limits when they decline jurisdiction of state-law claims on discretionary grounds without determining whether those claims fall within their pendent jurisdiction, see *Moor v. County of Alameda,* 411 U.S. 693, 715-716, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), or abstain under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), without deciding whether the parties present a case or controversy, see *Ellis v. Dyson,* 421 U.S. 426, 433-434, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975).

**\*17** *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 584-85, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999).

My colleagues candidly acknowledge that the *forum non conveniens* doctrine presents "non merits issues

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                    Page 16

--- F.3d ----, 2006 WL 278876 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

" for the purpose of applying *Steel Co.* and *Ruhrgas.* They also concede that the result they reach "may not seem to comport with the general interests of judicial economy and may, in this case, ultimately result in a waste of resources." Op. at 35. Moreover, they are able to cite only one case-*Kamel v. Hill-Rom Co.,* 108 F.3d 799 (7th Cir.1997) FN25 -that arguably requires the result the Court here reaches. FN26

The only rationale tendered for the Court's result is its assertion, based on Black's Law Dictionary, that "*forum non conveniens* is the voluntary transfer of a case from one legally competent court to another for reasons of convenience." From this generalization, the Court concludes that a "court cannot give away something it has no right to have in the first place." I am unpersuaded.

[9] A court with jurisdiction normally has an obligation to exercise it. The *forum non conveniens* doctrine is an exception to this rule. That doctrine authorizes a court to decide not to exercise jurisdiction which it possesses, authority that by definition is unnecessary in the absence of jurisdiction. In this limited sense, it is true that "the doctrine of *forum non conveniens* can never apply if there is absence of jurisdiction." *Gulf Oil,* 330 U.S. at 504, 67 S.Ct. 839. It does not follow, however, that a court may not decide to abstain from exercising any jurisdiction it may have without affirmatively determining the boundaries of its jurisdiction. FN27 While, for obvious reasons, it is important to determine whether the allegedly more convenient forum has jurisdiction to entertain the suit, there is no utility in, and no doctrinal necessity for, insisting that the present forum determine its own jurisdiction before dismissing.

In short, a court "makes no assumption of law declaring power" when it decides not to exercise whatever jurisdiction it may have. *Ruhrgas,* 526 U.S. at 584, 119 S.Ct. 1563 (quoting *In re Papandreou,* 139 F.3d at 255). This means that a district court may dismiss on *forum non conveniens* grounds without first determining its own jurisdiction. *In re Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.,* 311 F.3d 488 (2d Cir.2002); *In re Papandreou,* 139 F.3d 247 (D.C.Cir.1998). I would affirm.

FN* Honorable Arthur L. Alarcón, Senior United States Circuit Judge for the Ninth Circuit Court of Appeals, sitting by designation.

FN1. The Vessel was chartered from MISC to Progress Bulk Carriers, which then sub-chartered it to Pan Ocean Shipping Co., Ltd. ("Pan Ocean"), which in turn sub-chartered it to Triorient.

FN2. According to MISC's amended complaint, the Vessel docked at the Port of Philadelphia on April 25, 2003, and the loading of the coils began that same day. MISC asserts that the loading of the coils was complete on April 30, 2003, that loading of coils for a different shipper continued on May 1, 2003, and that the Vessel set sail on May 2, 2003.

FN3. *Black's* provides a fuller definition. A charter party is "[a] contract by which a ship, or a principal part of it, is leased by the owner, esp. to a merchant for the conveyance of goods on a predetermined voyage to one or more places or for a specified period of time; a special contract between the shipowner and the charterer, esp. for the carriage of goods at sea." *Black's Law Dictionary* 251 (Bryan A. Garner ed., 8th ed.2004).

FN4. The related Chinese proceeding, brought by Sinochem in the Guangzhou Admiralty Court, is discussed below.

FN5. The statute provides, in pertinent part, that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal...." 28

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----    Page 17

--- F.3d ----, 2006 WL 278876 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

U.S.C. § 1782(a).

FN6. The record suggests that the decision of the Chinese High Court cannot be appealed.

FN7. As noted above, there is some confusion in the record whether the charter party called for the application of American or English law to disputes that arose under it.

FN8. The District Court stated that
[MISC]'s allegations with respect to other [Sinochem] enterprises in the country, as well as the undisputed facts averred with respect to ... how the contract was carried out, render [MISC]'s claim [that the Court had personal jurisdiction over Sinochem] far from frivolous. Thus, we would refrain from ruling on whether the federal long-arm statute, Rule 4(k)(2), permits personal jurisdiction over [Sinochem] until after the parties had taken limited jurisdictional discovery. However, as the ensuing analysis shows, this discovery will not be necessary because we will dismiss this matter for forum non conveniens.
*Malaysia Int'l Shipping Corp. Berhad v. Sinochem Int'l Co. Ltd.*, 2004 WL 503541 (E.D.Pa. Feb. 27, 2004).

FN9. The District Court rejected MISC's argument that the choice-of-law provisions of the charter party and the bill of lading required the application of American law. The Court noted that the letter from Pan Ocean stating that American law applied to disputes under the charter party did not indicate "whether the charter party call[ed] for U.S. law to apply specifically to this type of negligence matter" and also seemed to be directed specifically at the question of which law would apply to the arrest of the Vessel. The Court determined as well that the bill of lading's choice-of-law provision was not implicated because MISC's negligent misrepresentation claim had nothing to do with the conditions of carriage of the cargo. As the dispute in this case (and the parallel Chinese proceeding) centered on the alleged backdating of the bill of lading that triggered Sinochem's payment to Triorient for the steel coils, the Court concluded that "the choice of law clause more applicable to this matter is that of the purchase contract of the steel coils, which calls for the use of Chinese law."

FN10. As an initial matter, MISC contends that we should apply the test for admiralty jurisdiction over contract claims-rather than tort claims-because "[t]he substantive dispute in this case centers around a bill of lading." MISC Ltr. Br. at 3. Although the bill of lading is involved here, MISC did not allege that any of its terms were breached. Rather, MISC alleged that Sinochem *negligently misrepresented* actions MISC took with respect to the bill of lading. That claim is one of tort and has little to do with the provisions of the bill of lading itself. Thus, we analyze whether admiralty jurisdiction exists with reference only to the test for tort claims.

FN11. We note that a tort need not have occurred in waters under the jurisdiction of the United States for us to exercise admiralty jurisdiction. *See, e.g., Neely,* 63 F.3d at 170, 179 (finding admiralty jurisdiction over a claim arising out of an accident that occurred in coastal waters off St. Lucia, an independent country).

FN12. "Locality," as well as "situs," are used interchangeably with "location" in referring to the test or requirement.

FN13. The application of that rule in *The Plymouth* led to the Court's holding that-when a vessel anchored beside a wharf on the Chicago River caught fire (due to the negligence of those in charge of it) and the flames then spread to the wharf, destroying all the goods stored in the packing-houses there-there was no

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                           Page 18

--- F.3d ----, 2006 WL 278876 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

admiralty jurisdiction because, although the negligence occurred on navigable water, the injury occurred on land. 70 U.S. (3 Wall.) at 36.

The effect of this result was later negated by the Extension of Admiralty Jurisdiction Act, which created the second part of the location test by providing that "the admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." Extension of Admiralty Jurisdiction Act, ch. 526, 62 Stat. 496, 496 (1948). Thus, for a particular class of cases-those with facts similar to *The Plymouth*-Congress has shifted the focus of the location test from where the injury occurred to where the injury was caused.

FN14. In *Kuehne & Nagel*, the Fifth Circuit provided several examples of when the location test is met under the "impact analysis," stating:
This court has applied the "impact" analysis in several situations. We found situs present where a gun was fired from land, but the bullet struck and injured a poacher on a vessel. Situs was also satisfied where the components of a ship's navigational system, negligently manufactured on land, caused a collision on the high seas. And we found the situs element established where workers who contracted asbestosis were exposed to asbestos both on land and on vessels lying in navigable waters.
874 F.2d at 288 (citations omitted).

FN15. In *Sisson,* the Court emphasized that [t]he fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce, and we have said that that interest cannot be fully vindicated unless *all* operators of vessels on navigable waters are subject to uniform rules of conduct. The need for uniform rules of maritime conduct and liability is not limited to navigation, *but extends at least to any other activities traditionally undertaken by vessels, commercial or noncommercial.*
497 U.S. at 367, 110 S.Ct. 2892 (first emphasis in original) (citations and internal quotation marks omitted).

FN16. With this statement we do not mean to imply that Sinochem's purpose was not legitimate. That issue, of course, goes to the underlying merits of MISC's fraudulent misrepresentation claim, and the resolution of that claim is not before us.

FN17. Finally, we note that the activity here is much closer to the types of activity the Supreme Court has found satisfy the substantial relationship test than to those it has found to be too attenuated, as those were not even aimed at vessels. *Cf. Grubart,* 513 U.S. at 540, 115 S.Ct. 1043 ( "Navigation of boats in navigable waters clearly falls within the substantial relationship, [and] storing them at a marina on navigable waters is close enough, whereas in flying an airplane over the water, as in swimming, the relationship is too attenuated." (citations omitted)).

FN18. As we have determined that admiralty jurisdiction exists, we need not address MISC's contention that federal question and diversity jurisdiction are present here as well. We note that MISC's counsel decided not to press diversity jurisdiction at oral argument-a wise decision, as these alternative arguments rested (at best) on shaky ground.

FN19. We note that *forum non conveniens* is a limited doctrine, typically applying when the alternative forum is in a foreign country or a state court. 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3828, at 278-80 (2d ed.1986). This is because 28 U.S.C. § 1404(a) covers

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                          Page 19

--- F.3d ----, 2006 WL 278876 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

inconvenient forum issues within the federal court system. *Id.*

FN20. We admit that it is not facially apparent that the *Gulf Oil* Court was referring to both subject matter and personal jurisdiction when it said "jurisdiction." The Court has before noted that "[j]urisdiction ... is a word of many, too many, meanings." *Steel Co.,* 523 U.S. at 90, 118 S.Ct. 1003 (internal quotation marks omitted). But three paragraphs before the line quoted above from *Gulf Oil,* the Court discussed the alternative forum desired by the defendant and noted that the state and federal courts there were "able to obtain jurisdiction of the defendant." *Gulf Oil,* 330 U.S. at 503, 67 S.Ct. 839. This almost certainly alludes to personal jurisdiction. The Supreme Court also noted that *forum non conveniens* "presupposes" that the court deciding the issue is one in which the "defendant is amenable to process." *Id.* at 507, 67 S.Ct. 839. This also refers to personal jurisdiction.

FN21. A conditional dismissal is one in which "the district court dismisses the case only if the defendant waives jurisdiction and limitations defenses, and only if it turns out that another court ultimately exercises jurisdiction over the case." *Ford v. Brown,* 319 F.3d 1302, 1310 (11th Cir.2003). This allows the district court to "reassert jurisdiction in the event that the foreign court refuses to entertain the suit." *Id.* Conditional dismissals provide protection to plaintiffs by ensuring that an adequate alternative forum will exist. *See, e.g., Bank of Credit & Commerce Int'l (OVERSEAS) Ltd. v. State Bank of Pak.,* 273 F.3d 241, 248 (2d Cir.2001); *Mercier v. Sheraton Int'l, Inc.,* 981 F.2d 1345, 1352 (1st Cir.1992); *Pain v. United Techs. Corp.,* 637 F.2d 775, 794 (D.C.Cir.1980), *overruled on other grounds by Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *cf.* Alexander Reus, *Judicial Discretion: A Comparative View of the Doctrine of* Forum Non Conveniens *in the United States, the United Kingdom, and Germany,* 16 Loy. L.A. Int'l & Comp. L.J. 455, 473-74 (1994) (discussing the use of conditional dismissals to prevent injustice to the non-movant but noting that dismissals are still practically outcome determinative). If a court is not able to grant a conditional dismissal, the plaintiff could find itself without any guaranteed forum. Moreover, if that plaintiff comes back to the transferring forum to refile, and the transferring forum subsequently finds that it has no jurisdiction over the suit, the judicial economy claimed by proponents of the *"forum non conveniens* without jurisdiction" dismissal ceases to exist.

FN22. There was no waiver of personal jurisdiction in this case, but such a waiver could substitute for the Court's determination on personal jurisdiction. *See Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).

FN23. Given this conclusion, we express no opinion regarding MISC's argument that the District Court abused its discretion in dismissing its complaint on the basis of *forum non conveniens.*

FN24. Proper venue, while not dealt with directly in this case, is of course also required, though, like personal jurisdiction, it too can be waived. 15 Wright, Miller & Cooper, *supra,* § 3828, at 287, § 3829, at 309.

FN25. In *Kamel,* the District Court dismissed on grounds of *forum non conveniens* and the Court of Appeals agreed with that determination and affirmed. The Court of Appeals also found, however, that, while the complaint alleged complete diversity, there was a non-diverse party, and that the District Court,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                          Page 20

--- F.3d ----, 2006 WL 278876 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

accordingly, had "lacked [subject matter] jurisdiction to rule on [the] *forum non conveniens* motion." 108 F.3d at 805. The Court held that it was authorized by Fed. R. Civ. Proc. 2, as construed in *Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989), to dismiss the non-diverse dispensable party. It did not cite precedent for or explain either (a) its finding that the District Court was not authorized to rule on the *forum non conveniens* motion, or (b) its apparent conclusion that dismissal of the non-diverse party was a prerequisite to an affirmance.

FN26. The other Supreme Court and Court of Appeals precedents relied upon by the Court are inapposite. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), holds only that where the "principle of *forum non conveniens* [applies] a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Patrickson v. Dole Food Co.,* 251 F.3d 795 (9th Cir.2001), *aff'd* 538 U.S. 468, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003), was a case removed from state court in which the District Court determined that it had removal jurisdiction and thereafter dismissed on grounds of *forum non conveniens.* The Court of Appeals concluded that the District Court did not have removal jurisdiction and remanded with instructions that the case be sent back to state court. The Supreme Court agreed that the District Court was without jurisdiction, making no comment regarding the relief afforded by the Circuit Court judgment. No issue here relevant was argued before the Court of Appeals. While not discussed by the Court of Appeals, the issue presented by the case was whether in an improperly removed case the District Court or the state court should resolve a *forum non conveniens* issue. Given the comity considerations, it clearly should be the latter, a result that is, in any event, dictated by 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). As my colleagues concede, *Dominguez-Cota v. Cooper Tire & Rubber Co.,* 396 F.3d 650 (5th Cir.2005) , is based on the faulty premise that *forum non conveniens* presents merits issues.

FN27. As the Court of Appeals for the District of Columbia explained in *In re Papandreou,* 139 F.3d 247, 255-56 (D.C.Cir.1998) (citations and footnote omitted):

Forum non conveniens does not raise a jurisdictional bar but instead involves a deliberate abstention from the exercise of jurisdiction. While such abstention may appear logically to rest on an assumption of jurisdiction, it is as merits-free as a finding of no jurisdiction. By the same principle on which the Court has approved a discretionary declination to exercise a pendent jurisdiction that may not have existed, it would be proper to dismiss on such grounds (if meritorious) without reaching the FSIA [jurisdictional] issue. Similarly, dismissal for want of personal jurisdiction is independent of the merits and does not require subject matter jurisdiction.

C.A.3 (Pa.),2006.
Malaysia Intern. Shipping Corp. v. Sinochem Intern. Co. Ltd.
--- F.3d ----, 2006 WL 278876 (C.A.3 (Pa.))

Briefs and Other Related Documents (Back to top)

• 04-1816 (Docket) (Mar. 30, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.