IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DAVIS INTERNATIONAL, LLC,            )
HOLDEX LLS, FOSTON                   )
MANAGEMENT, LTD, and OMNI            )
TRUSTHOUSE, LTD,                     )
                                     )
            Plaintiffs               )
                                     )    CONSOLIDATED
     v.                              )    Civil Action No.  04-1482 GMS
                                     )
NEW START GROUP CORPORATION,         )
VENITOM CORPORATION, PAN-            )
AMERICAN CORPORATION, MDM            )
BANK, URAL-GORNO METALURGICAL )
COMPANY, EVRAZ HOLDING,              )
MIKHAIL CHERNOI, OLEG DERIPASKA,)
ARNOLD KISLIN, MIKHAIL NEKRICH,      )
and ISKANDER MAKMUDOV,               )
                                     )
            Defendants.              )

## MEMORANDUM

## I.     INTRODUCTION

On November 4, 2004, Davis International, LLC ("Davis"), Holdex LLS ("Holdex"), Foston

Management Ltd. ("Foston") and Omni Trusthouse, Ltd. ("Omni") (collectively, the "plaintiffs")

filed this action for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"),

18 U.S.C. § 1961 *et seq.*, and common law conversion against New Start Group Corporation ("New

Start"), Venitom Corporation ("Venitom"), Pan-American Corporation ("Pan-American"), MDM

Bank ("MDM"), Ural-Gorno Metalurgical Company ("UGMC"), EVRAZ Holding ("EVRAZ"),

Mikhail Chernoi ("Chernoi"), Oleg Deripaska ("Deripaska"), Arnold Kislin ("Kislin"), Mikhail

Nekrich ("Nekrich"), and Iskander Makmudov ("Makmudov")[1] (collectively, the "defendants").

Presently before the court is the defendants' motion to dismiss pursuant to direct estoppel, and to enjoin the plaintiffs from re-filing this action.  For the following reasons, the court will grant the defendants' motion to dismiss this action, but deny the defendants' motion to enjoin the plaintiffs from re-filing the action elsewhere.

## II.      BACKGROUND

This lawsuit is factually similar to a lawsuit that the plaintiffs filed against eight of the eleven defendants named here in the Southern District of New York in 2000.  *See Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681 (S.D.N.Y. 2001), *aff'd sub nom.*, *Base Metal Trading SA v. Russian Aluminum*, 98 Fed. Appx. 47 (2d Cir. 2004).  Because the court will discuss the *Base Metal* case in detail during its analysis, as well as the facts of the present case that differ from *Base Metal*, it will provide only the procedural facts of the case in this section.

On November 4, 2004, the plaintiffs filed their complaint in the Delaware Court of Chancery (the "Chancery Court"), alleging federal RICO and common law conversion claims.  The defendants subsequently removed the action to this court on November 30, 2004.  On March 31, 2005, the defendants filed motions to dismiss based on the following grounds: (1) lack of subject matter jurisdiction; (2) failure to state a claim; (3) direct estoppel; (4) *forum non conveniens*; and (5) international comity.  (D.I. 47.)

On April 13, 2005, the court held a teleconference with the parties to discuss discovery disputes and the various motions to dismiss filed by the defendants.  During the teleconference, the

---

[1] Consistent with the amended complaint, the court also will refer to Chernoi, Deripaska, Kislin, Nekrich, and Makmudov as the "Conspirators."

parties agreed to suspend briefing on the subject matter jurisdiction, failure to state a claim, *forum non conveniens*, and international comity motions, so that the court could address the direct estoppel motion. (Transcript of Telephone Conference, dated April 13, 2005, at 28:19-30:7.) Following the teleconference, on April 26, 2005, the court issued an Order (D.I. 75) setting forth an expedited briefing schedule for the direct estoppel motion. The parties completed briefing on the motion on June 27, 2005.

On April 26, 2005, the plaintiffs also filed an amended complaint, which deleted their state law conversion claims. (See D.I. 77.) Simultaneously, the plaintiffs re-filed their conversion claims in the Chancery Court, as well as adding new claims for aiding and abetting, conversion, and civil conspiracy to their state court complaint. On October 27, 2005, the Chancery Court stayed the plaintiff's case pending resolution of the motion to dismiss that is presently before the court. (See D.I. 98, Ex. 1.)

## III.   DISCUSSION

The defendants have filed a motion to dismiss the amended complaint on direct estoppel grounds, contending that Judge Koeltl's decision in *Base Metal* mandates dismissal. In the alternative, the defendants contend that even if the plaintiffs could demonstrate new facts affecting the *forum non conveniens* analysis, the court should not permit them to forum shop by circumventing Federal Rule of Civil Procedure 60(b). Finally, the defendants contend that the court should enjoin the plaintiffs from re-filing the same claims in another United States court.

On February 25, 2006, while this motion was under review by the court, the plaintiffs filed a letter asking the court to stay this action so that the Chancery Court action may proceed. The plaintiffs' letter brief asserts that the recent decision by the Third Circuit in *Malaysia Int'l Shipping*

3

*Corp. v. Sinochem Int'l Co. Ltd.*, — F.3d —, 2006 WL 278876 (3d Cir. Feb. 7, 2006) precludes this court from ruling on the defendants' direct estoppel motion until after it determines jurisdictional issues. The court will discuss each of the parties' contentions in turn, beginning with the plaintiffs' recent letter request.

### A.       The Impact of the Third Circuit's Decision in *Malaysia*

As previously mentioned, the plaintiffs contend that the Third Circuit's decision in *Malaysia Int'l Shipping Corp. v. Sinochem Int'l Co. Ltd.*, — F.3d —, 2006 WL 278876 (3d Cir. Feb. 7, 2006) precludes this court from ruling on the defendants' direct estoppel motion until after it determines jurisdictional issues. For the following reasons, the court disagrees.

First, the narrow issue in *Malaysia*, as framed by the Third Circuit, was "whether courts must decide jurisdictional issues . . . before ruling on *forum non conveniens*," not the broader issue of whether courts must decide jurisdictional issues before ruling on all non-merits based procedural issues. 2006 WL 278876, at *6. In determining that courts must decide jurisdiction before *forum non conveniens*, the Third Circuit rejected the principle of hypothetical jurisdiction adopted by some circuit courts, and relied heavily on the "very nature and definition of *forum non conveniens*," which "presumes that the court deciding th[e] issue has valid jurisdiction (both subject matter and personal jurisdiction) and venue." *Id.* at *10. In reaching its decision, the court noted "[w]e go a more certain way [than those courts who rely on the principle of hypothetical jurisdiction.] District courts either have jurisdiction to decide *forum non conveniens* motions or they do not." *Id.* at *12. The court then held that courts "must have jurisdiction before they can rule on which forum, otherwise available, is more convenient to decide the merits." *Id.* Finally, the court recognized that the result it reached "may not seem to comport with the general interest of judicial economy and may . . .

4

ultimately result in a waste of resources," but noted that "precedent, logic, and the very terms of the

*forum non conveniens* doctrine dictate this result." *Id.*

Unlike the situation presented to the court in *Malaysia*, the motion presently before the court

does not ask it to determine which forum is most convenient to hear this case.  Instead, the motion

asks the court to dismiss this action, based on direct estoppel, because another federal court has

rendered a judgment in a virtually identical action.  Thus, the nature of direct estoppel and *forum*

*non conveniens* are markedly different.  Moreover, given the Third Circuit's framing of the issue in

*Malaysia*, as well as the total absence of discussion regarding any non-merits based procedural issue

other than *forum non conveniens*, this court cannot conclude that the rationale expressed in *Malaysia*

should be extended to direct estoppel.  Accordingly, the court finds that a stay is not appropriate

because it may decide the issues *sub judice*.

### B.        Direct Estoppel

As a preliminary matter, the plaintiffs assert that the court should preclude the defendants

from complaining that the forum which they chose is inconvenient based on the basic principles of

unclean hands, waiver, and estoppel.  (D.I. 83, at 3, 12.)  The plaintiffs maintain that the defendants

are forum shopping and argue that, by removing the case to federal court, the defendants have

invoked the court's jurisdiction and cannot be heard to object to its exercise of that jurisdiction.

(D.I. 83, at 12.)

This issue is not properly before the court, however, and the court will not discuss it at this

time because the plaintiffs address their arguments to the defendants assertion of *forum non*

*conveniens*, an issue on which the court has suspended briefing and reserved ruling.[2]  The issue that is properly before the court at this time is whether the doctrine of direct estoppel bars the plaintiffs from litigating claims that the defendants contend were already litigated in *Base Metal*.  If the court determines that the plaintiffs claims are barred by the *Base Metal* decision, then it will not have to address arguments concerning the defendants' assertion of *forum non conveniens* as a grounds for dismissal.  On the other hand, if the court determines that plaintiffs claims should proceed, the defendants will have an opportunity to assert *forum non conveniens*, at which time the court will have to consider whether any equitable doctrines preclude that assertion.  Thus, the plaintiffs' arguments relating to *forum non conveniens* are premature at this juncture and, in the interest of judicial economy, the court will not address them.  Having disposed of this preliminary matter, the court will address the parties' direct estoppel arguments.

      1.      The Parties' Arguments and Standard of Review

The defendants contend that dismissal of this case on direct estoppel grounds is appropriate because the Third Circuit's decision in *Pastewka v. Texaco, Inc.*, 565 F.2d 851 (3d Cir 1977), bars the plaintiffs from having their dispute relitigated in Delaware.  Specifically, the defendants argue that because the plaintiffs' claims have already been dismissed on *forum non conveniens* grounds in *Base Metal*, and because there are no material differences between the amended complaint in the present case and the amended complaint in *Base Metal*, *Pastewka* applies to estop the plaintiffs from relitigating their claims.  (D.I. 70, at 4, 15.)

Conversely, the plaintiffs assert that, under *Pastewka*, the court should conduct its own *forum*

_____

[2] See D.I. 75, at 1 (April 26, 2005 Order suspending briefing regarding the defendants' assertion of *forum non conveniens* in its motion to dismiss and expediting briefing on the direct estoppel issue).

*non conveniens* analysis because this case is vastly different from *Base Metal*, and because they proffer different objective criteria and material facts than were proffered in *Base Metal*.  (Id. at 3.) Therefore, the plaintiffs assert that dismissal of this case is inappropriate.

The issue that the court must determine is whether, under the facts presented in the plaintiffs' amended complaint, the *forum non conveniens* decision of the Southern District of New York, subsequently affirmed by the Second Circuit, is binding upon the court.  *See Pastewka v. Texaco, Inc.*, 420 F. Supp. 641, 644 (D. Del. 1976) (deciding estoppel issue).  As conceded by the parties, the Third Circuit squarely addressed this issue in *Pastewka*.  In *Pastewka*, the plaintiffs initiated lawsuits in England and New York arising out of a collision between a boat and a tanker in the English Channel.  *See Pastewka*, 565 F.2d at 852.  Some of the same plaintiffs then filed actions in the District of Delaware arising out of the same incident.  *See id.*  While the Delaware cases were pending, the Southern District of New York consolidated and dismissed the plaintiffs' cases on *forum non conveniens* grounds, finding that England, not New York, was the logical forum.  *Id.* Shortly thereafter, some of the plaintiffs who had their consolidated case dismissed by the Southern District of New York filed a new complaint in Delaware, "identical in all material respects to that previously dismissed in New York."  *Id.*  The defendants moved to dismiss all of the Delaware complaints based on the prior New York judgment.  *See id.* at 852-53.  The Delaware district court granted the defendants motion.  *See Pastewka v. Texaco, Inc.*, 420 F. Supp. 641 (D. Del. 1976).

In agreeing with the Delaware district court, the Third Circuit noted that "[t]he appellants point to no objective fact establishing that, unlike New York, Delaware would be a more convenient forum than England or that Delaware would be even as convenient as New York.  Indeed, it appears that the only reason Delaware was resorted to was that under 28 U.S.C. § 1332(c) Texaco, Inc., a

Delaware corporation, may be sued there." *Pastewka*, 565 F.2d at 853.  The court also determined that "[o]nce a judicial system has afforded the opportunity for full and final litigation of issues between parties, . . . permitting relitigation of the same issues in another court is intolerable." *Id.* at 854.  Affirming the district court, the Third Circuit stated that "[i]f [the] appellants expected the district judge in Delaware to exercise a more discreet discretion than his judicial brother in the Southern District of New York, then they should have begun their litigation in Delaware.  Having now finally lost in New York, they cannot relitigate the same factual and legal issues in Delaware." *Id.*

Under *Pastewka*, therefore, the court must look to the facts of the plaintiffs' amended complaint and determine whether they are "identical in all material respects" to the facts previously dismissed in *Base Metal*. *Id.* at 853-54.  After having compared the amended complaint in the present case with the amended complaint in *Base Metal*, the court concludes that the facts alleged in the amended complaint in the present case are identical in all *material* respects to those either alleged in the *Base Metal* amended complaint or discussed in Judge Koeltl's opinion.[3]

The defendants have submitted the declaration of Lisa Cohen, Esq., which sets forth their position that 61 of the substantive factual paragraphs in the amended complaint are identical or substantially similar to the allegations in *Base Metal*.  The plaintiffs do not challenge this representation.  Rather, they attempt to point out the claims that were present in the *Base Metal* complaint, but omitted from the present amended complaint.  That is, the plaintiffs assert that the

---

[3] The court looks to Judge Koeltl's opinion in addition to the amended complaint in *Base Metal*, because the opinion discusses facts considered by Judge Koeltl but not alleged in the amended complaint. *See, e.g.*, *Base Metal*, 253 F. Supp. 2d at 692 ("While not discussed in the Amended Complaint, the settlement of the GOK bankruptcy was approved by the Arbitrazh Court for the Sverdlosk Oblast. . . .").

8

complaint in this matter is "substantially different than" the complaint in *Base Metal* because the present case "represents only a small subset of the claims in *Base Metal*[,] and is far from being identical 'in all material respects' to *Base Metal*. . . . *Base Metal* involved very different and complex claims not included therein." (D.I. 83, at 18.)  The plaintiffs discuss several plaintiffs and claims from *Base Metal* that were omitted from the present case, including the following: (1) the plaintiffs and claims relating to an allegedly illegal takeover of the Russian aluminum industry, and (2) the claims of GOK creditors, Nexis Products, LLC and Polyprom, Ltd, relating to the takeover of GOK through physical force and corrupted bankruptcy proceedings resulting in cancellation of their trading contracts and credit agreements.  According to the plaintiffs, the aluminum takeover claims, unlike the claims in the present case, "dominate[] the *Base Metal* complaint." (Id. at 18.) Additionally, because the GOK creditor claims are not raised in the present case, the plaintiffs assert that allegations regarding the GOK bankruptcy are background only and, therefore, not critical to their proof of the present claims.  (Id. at 20.)  The plaintiffs further assert that their claims regarding the theft of their shares were somehow "lost in the mix" of what they characterize as the more complicated allegations regarding the aluminum industry takeover and GOK creditors.   (Id.) Finally, the plaintiffs assert that while their claims were included as a "small part of the *Base Metal* complaint, they do not appear to have played a significant role in its *forum non* dismissal." (Id. at 22.)

The court is not convinced.  At the outset, it is difficult for the court to understand how claims alleged in *Base Metal* but omitted from this case would have any impact on whether the plaintiffs' claims in this case were fully and finally litigated in *Base Metal*.  Indeed, the plaintiffs do not explain the importance of this factor in an analysis addressing whether the present claims are

"identical in all material respects" to claims previously dismissed in *Base Metal*. Nonetheless, in

order to determine whether the plaintiffs claims were fully and finally litigated in *Base Metal*, the

court has undertaken its own side-by-side examination of both amended complaints, with the

following results: (1) a total 96 paragraphs in the *Base Metal* amended complaint are devoted to

"The Takeover of GOK";[4] and (2) 57 of the 86 paragraphs that comprise the substantive factual

allegations of the amended complaint in this case, *i.e.* paragraphs 49–134, as well as the headings,

are either identical or significantly similar to the allegations set forth in *Base Metal*.[5] Based on its

examination, the court concludes that the plaintiffs' characterization of their claims as a "small part

of the *Base Metal* complaint" is disingenuous at best.

>    2.    The *Base Metal* Opinion

Turning to the *Base Metal* opinion, the court must determine whether Judge Koeltl addressed

the allegations of the amended complaint in this case that are identical or substantially similar to

those in the *Base Metal* amended complaint. The court concludes that Judge Koeltl not only

considered the plaintiffs' allegations in his *Base Metal* decision, but made specific findings with

---

[4] See D.I. 71, Ex. 3 at A226- 39. The court cannot fathom how 96 paragraphs of allegations would constitute only a "small part" of the *Base Metal* complaint.

[5] The following paragraphs contain either identical or substantially similar allegations to those made in *Base Metal*, ¶¶ 49-64, 65-79, 83-86, 88-92, 94-96, 98, 102, 105-107, 110, 112-120. The headings that are identical or similar to those used in the *Base Metal* amended complaint are: "The Initial Extortion," "The Malevsky Extortion," "The Bribery of Governor Roussel," "The Physical Takeover of GOK," "Makmudov's Next Threat," "The Initial Efforts to Fight the Illegal Takeover," "Malevsky's Final Threat," "The Creation of the False Debt of GOK," "GOK's Sham Bankruptcy," "The Fraudulent Transfers of Plaintiffs' Shares in GOK," "The Davis Shares," "Omni's Shares," "Foston's Shares," "Holdex's Shares," "The Bankruptcy Settlement Agreement," and "The False Criminal Charges Against Khaidarov." Only the allegations falling within the headings "The Illegal Detention of Traum" and "The Final Step to Consolidate the Conspirators' Control Over GOK" do not appear in the *Base Metal* amended complaint.

respect to why those claims should be litigated in Russia.  First, Judge Koeltl described, in detail, the allegations of the plaintiffs' amended complaint regarding the alleged conspiracy to take over GOK.  *See Base Metal*, 253 F. Supp. 2d at 689-92.  The court then carried out the *forum non conveniens* analysis, which required it to consider: (1) the degree of deference it should afford to the plaintiffs' choice of forum; (2) whether an adequate alternative forum exists; and (3) the private and public factors enumerated by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). *Id.* at 693.

Regarding the plaintiffs' choice of forum, the court concluded that it should afford little deference to the plaintiffs' choice to litigate in the United States because their connections to the United States were tenuous at best.  Indeed, the court pointed out that "[t]he record before [it] points to nothing but forum shopping by the plaintiffs," because the activities about which the plaintiffs complain "arise from the conduct of business in Russia."  *Id.* at 696.  Further, the court noted that "[t]his type of forum shopping is the antithesis of the bona fide connection to the plaintiffs' chosen forum that would cause the Court to defer to the plaintiffs' desires," as "[t]here is no indication that the parties anticipated litigating in the United States or that the choice of this forum is based on true motives of convenience."  *Id.* at 698.  With respect to the corporations that are also plaintiffs in this case, Judge Koeltl specifically found that Davis and Holdex "are nothing more than shell corporations whose choice of forum deserves little deference," while Foston and Omni are foreign corporations.  *Id.* at 696.  Moreover, the court found that the GOK plaintiffs, including Davis, Holdex, Foston, and Omni, "are also complaining about activities that arise from the conduct of business in Russia."  *Id.*  Additionally, "[t]he plaintiffs in this case have similarly pursued relief in the Russian courts until the results were not to their liking."  *Id.* at 707.  Lastly, concerning the

plaintiffs' choice of forum, the court pointed out "[s]hould the plaintiffs prevail on the motion to dismiss and the case proceed to trial in this Court, the Court would be forced to consider approximately 120 Russian legal decisions related to the NKAZ [aluminum industry] and *GOK bankruptcies and the GOK change of control*." *Id.* at 708 (emphasis added).

The *Base Metal* court next determined the availability of an adequate alternative forum, considering whether Russia provides the plaintiffs with adequate judicial remedies. The plaintiffs argued that there is no available cause of action for fraud in Russia, prior decisions of Russian courts will prevent the availability for relief, the bankruptcy proceedings in Russia were corrupt, and the Russian courts are generally corrupt. *Id.* at 701-02. After a detailed analysis, which included "extensive submissions from purported experts in Russian law[,]" the court concluded that: (1) "the plaintiffs could bring a cause of action for fraud that would provide an adequate alternative remedy" to a claim for RICO violations, *id.* at 701; (2) it "would also owe deference to decisions of foreign courts[,]" and "[t]here are ample means in the Russian judicial system to overturn decisions that were obtained as a result of corruption," *id.* at 702; (3) the plaintiffs' claim that the Russian bankruptcy proceedings were corrupt "fails on several levels," specifically because the court "could not conclude [on the present record] that there has been a sufficient showing of corruption in the underlying [bankruptcy] proceedings,"[6] *id.* at 704; and (4) the plaintiffs "breathtaking challenge to all of the Russian courts [as corrupt]" also failed, because "[t]he 'alternative forum is too corrupt to be adequate' argument does not enjoy a particularly impressive track record," *id.* at 706 (citations

---

[6] With respect to the alleged corrupt GOK bankruptcy proceedings, the court found the plaintiffs' allegations "insufficient to counter the defendants' showing that Russia is an adequate alternative forum." *Id.* at 705.

omitted).[7]  The court also concluded, with respect to the plaintiffs in the present case, that they "have

made little, if any, attempt to articulate substantive allegations of corruption against [four Russian

court] decisions which are clearly at the *core* of the plaintiffs' case[,]" including "the September 5,

2001 decision of the Federal Arbitrazh Court for the Moscow Circuit upholding two lower court

decisions rejecting claims by Davis, Holdex, Omni and Foston against GOK's change in Registrar."

*Id.* at 709.  Thus, the court held that Russia is an adequate alternative forum for the plaintiffs'

claims.

After having considered the plaintiffs' choice of forum and the availability of an adequate

alternative, the *Base Metal* court turned its attention to weighing the remaining private and public

factors, including: the relative ease of access to sources of proof; the convenience of willing

witnesses; the availability of compulsory process for attaining the attendance of unwilling witnesses;

and the other practical problems that make trial easy, expeditious, and inexpensive. *Id.* at 710 (citing

*Gulf Oil Corp v. Gilbert*, 330 U.S. 501, 508 (1947)).  In applying the *Gilbert* factors to the GOK

plaintiffs, the court first determined that "[t]he GOK allegations present a[n] . . . extensive list of

non-party witnesses in Russia from whom evidence would be critical[,]" including:

> Sverdlovsk Oblast Governor Roussel; former GOK general director Khaidarov who
> was allegedly ordered to convince GOK's shareholders to transfer their shares to the
> Conspirators; the unnamed GOK shareholders; the 'armed thugs' who took over
> GOK and their supporters in the regional authorities; employees of Leybout, which
> allegedly held a false $39 million promissary note from GOK; Oleg Kozyrev, who

---

[7] In making this finding, the court noted that "the public testimonials about problems
facing the Russian judicial system cited by the plaintiffs [including those to United States
Department of State reports were not ] sufficient," because "their conclusory statements [did] not
demonstrate that the plaintiffs [could not] obtain relief within the Russian courts."  *Id.* at 708.
Moreover, the court concluded that "to agree with [the plaintiffs'] assertion [that no Russian
court could provide a fair uncorrupted forum for the parties' dispute] would be to accept a mass
indictment of the Russian judicial system that is not supported by the record."  *Id.* at 709.

> became Provisional and External Manager of GOK after its bankruptcy; employees of VRK company; and the judges who presided over the allegedly corrupt bankruptcy proceedings as well as the cases allegedly illegally transferring the Davis Plaintiffs' shares.

*Id.* at 710.   Further, the court found that  "the striking number of Russian parties and witnesses involved in the case demonstrates the extreme inconvenience of bringing this case to trial in the United States."  *Id.* at 711.  The court then determined that "the bulk of the important documentary evidence in this case is also located in Russia," and "all of the principle events in this case transpired in Russia."  *Id.* at 712.   That determination led the court to conclude that "there would likely be extensive application of Russian law in this case[,]" including its application "to the allegation that, in the event that triggered the GOK bankruptcy, '[t]he gas company's receivables were not overdue under the terms of a prior settlement agreement with GOK, and thus under Russian law, they could not be used as a basis for the bankruptcy petition.'"  *Id.*

The plaintiffs urged the court to consider the fact that certain of its witnesses, including Joseph Traum ("Traum"), were either "unable" or "unwilling" to go to Russia.  Specifically, as the *Base Metal* opinion pertains to this case, the court considered Traum's "unwillingness to return to Russia for fear of prosecution on false drug charges and threats to his life,"[8] concluding that it "cannot determine whether Traum faces legitimate prosecution in Russia."  *Id.* at 711.  In addition, the court noted that "Traum is not a witness to the main allegations in the Amended Complaint," and finally determined that "Traum's fear of returning to Russia does not rise to the level of gravity at which courts within this Circuit have spared *parties*, not merely witnesses, from returning to a threatening forum."  *Id.* (emphasis in original).  Thus, the court held that "Russia is clearly the more

---

[8] The plaintiffs make similar allegations in the amended complaint filed in the present case.

convenient forum," based on its evaluation of the *Gilbert* factors.  Because this court concludes that

the *Base Metal* court made specific findings regarding the plaintiffs' allegations that are either

identical or substantially similar to those raised in the amended complaint in the present case, the

court need only address whether the plaintiffs here have presented different objective criteria and

material facts than those considered by the *Base Metal* court to complete its direct estoppel analysis.

> 3.    Whether the Plaintiffs Have Pointed to Objective Criteria and Material Facts that are
>        Different than Those Considered and Addressed in *Base Metal*

The plaintiffs assert that there are at least four groups of different criteria and material facts

in the present case, which should require the court to examine for itself whether the requirements

for the *forum non conveniens* doctrine are present.  (D.I. 83, at 21.)  According to the plaintiffs, they

proffer different objective criteria and new material facts regarding: (a) the deference due to their

choice of forum; (b) the private interest factors; (c) the public interest factors; and (d) the adequacy

of the Moscow Arbitrazh Court.  The court will address each of these assertions in turn.

> a.    The deference due to the plaintiffs' choice of forum

The plaintiffs acknowledge that the *Base Metal* opinion held that "little deference should be

given to [their] choice of forum," based, in part, on the fact that Davis and Holdex "are nothing more

than shell corporations whose choice of forum deserves little deference."[9]  *Base Metal*, 253 F. Supp.

---

[9] In a footnote the plaintiffs note that the *Base Metal* court "observed that 'having pursued various remedies in the Russian court system with unsatisfactory results, the plaintiffs now seek to take their case to the United States.  Such a tactical maneuver is not protected by the deference generally owed to plaintiffs' choice of forum.'" (D.I. 83, at 22 n.9).  The plaintiffs then argue that the court's observation does not apply to them because they did not initiate any litigation in Russia in regard to the ownership of their shares.  (*Id.*)  This argument is misleading, however, in light of the fact that the *Base Metal* court identified one of the Russian court decisions that was "integral" to the plaintiffs' case as the September 5, 2001 decision of the Federal Arbitrazh Court for the Moscow Circuit upholding two lower court decisions rejecting claims by Davis, Holdex, Omni, and Foston against GOK's change in registrar.  *Base Metal*, 253

2d at 696.  However, the plaintiffs assert that the court should take a "second look" at the deference that should be afforded to their choice of forum for two reasons.  The plaintiffs first assert that they chose Delaware because two of the defendant corporations that received the allegedly stolen GOK shares are incorporated in Delaware, and "Delaware is where [the] defendants organize their criminal activity, creating no less than 17 Delaware corporations named in the [amended] complaint which were used in their criminal schemes."  (D.I. 83, at 22.)[10]  The plaintiffs also assert that they chose Delaware because their principals and key witnesses, including Traum and Jalol Khaidarov ("Khaidarov"), are unwilling to go to Russia because of threats on their lives.  (Id.)  In support of their assertion, the plaintiffs maintain that Khaidarov's mother "was murdered in Tashkent[, Uzbekistan] in retaliation for filing the original complaint."  (Id. at 23.)

After having examined the amended complaint filed in *Base Metal*, as well as the appendices that both parties submitted with their briefs in the present case, the court is not persuaded by the plaintiffs' assertions, particularly because they do not relate to new facts or arguments.  The fact that two of the eleven defendants in this case are incorporated in Delaware is of no moment, as it establishes a connection to Delaware that is tenuous, at best.  *See Pastewka*, 565 F.2d at 853 (finding no connection between the dispute and Delaware despite the fact that one of the defendants was incorporated in Delaware).  Additionally, the court in *Base Metal* considered the same argument – that some of the defendants were either New York corporations or based in New York.  (See D.I. 53, at A319-20.)  That fact, however, did not outweigh the plaintiffs' lack of bona fide connections

---

F. Supp. 2d at 709.

[10] According to the plaintiffs, New York "lacked this strong connection to the litigation." (D.I. 83, at 22.)

to the United States.  *See Base Metal*, 253 F. Supp. 2d at 693-98.  Nor does it require this court to take a second look at the deference that should be afforded to the plaintiffs' choice of forum, as the plaintiffs contend.

The additional allegation that the Conspirators "regularly utilized Delaware entities in their various illegal schemes involving fraud, bribery, and money laundering," *see* Am. Compl.¶ 36, is also strikingly similar to what the plaintiffs argued, and the court rejected, in *Base Metal*: that the defendants "launder funds through banks in the U.S. which are used for bribe payments and which are also cleansed by investing in New York real estate."  (D.I. 71, Ex. 3 ¶¶ 484, 505; D.I. 53, at A319-20.)  Here, unlike in the amended complaint in *Base Metal*, the plaintiffs have named fourteen Delaware real estate entities that were allegedly involved in the Conspirators' illegal scheme.  (Am. Compl. ¶ 36.)  However, the plaintiffs allegations with respect to those entities mirror the allegations of the *Base Metal* amended complaint.[11]  In other words, the only difference between the "real estate entity" facts of the present case and those alleged and argued in *Base Metal* is that here the plaintiffs have named the real estate entities that they allege were involved in the Conspirators' schemes.  The court concludes, though, that merely naming the Delaware real estate entities, either alone, or in combination with the fact that two defendants are incorporated in Delaware, does not warrant a

---

[11] Indeed, allegations relating to the Delaware real estate entities are general and vague. For example, the plaintiffs allege that fraudulent funds the Conspirators received from the Russian central bank in the early 1990's, as a result of a check-kiting scheme, "would ultimately be wired through bank accounts in the United States.  The funds were used to purchase tens of millions of dollars of real estate in the U.S. in the name of entities registered in the state of Delaware.  Fourteen of these Delaware entities are named above as the Delaware Real Estate Entities; ultimately, this real estate was sold and the proceeds were used as 'seed money' for the Conspirators' other criminal ventures, including the takeover of GOK."  (Am. Compl. ¶¶ 47-48.)

"second look" at the deference it should afford to the choice of Delaware as a forum.[12]

Likewise, the court rejects the plaintiffs' assertion that it should re-analyze their choice of forum based on Traum's and Khaidarov's unwillingness to go to Russia, as this allegedly "material fact" was addressed by the *Base Metal* court, despite the plaintiffs representations to the contrary. The plaintiffs argue that the *Base Metal* court did not address Traum's and Khaidarov's "highly relevant" claims that they are unwilling to go to Russia because of threats on their lives. (D.I. 83, at 22.) The court disagrees. While the *Base Metal* court did not consider Traum's and Khaidarov's unwillingness to go to Russia in its deference analysis, it squarely addressed this "highly relevant factor" when analyzing the private interest factors. Indeed, as previously discussed, the court explicitly stated that "Traum's fear of returning to Russia does not rise to the level of gravity at which courts within this Circuit have spared *parties*, not merely witnesses, from returning to a threatening forum."[13]  *Base Metal*, 253 F. Supp. 2d at 711 (emphasis in original).

Moreover, while the plaintiffs assert that Vyacheslav Ivankov ("Ivankov"), or "Yaponchik," a leader of the Russian-American Mafia, has returned to Russia to make good on his "recent threat" to kill Khaidarov and Traum, they provide no reliable support for this assertion. The plaintiffs' support consists of mere allegations that Khaidarov's mother was murdered in Tashkent, Uzbekistan, by a "hit and run" accident that Ivankov arranged. According to the plaintiffs, Khaidarov's mother

---

[12] Further supporting the court's conclusion is the fact that the Delaware Real Estate Entities are not alleged to be the main actors in the events that led to this litigation. In fact, the Delaware Real Estate Entities are mentioned in just 6 paragraphs of the 135 paragraphs that make up those sections of the complaint other than the RICO counts and prayer for relief.

[13] While Judge Koeltl did not discuss in detail Khaidarov's fears, the plaintiffs' claims regarding the allegedly "false criminal charges against Khaidarov" and his subsequent fleeing from Russia are part of the amended complaint filed in *Base Metal*. (See D.I. 52, Ex. 2 at A238-39.)

was murdered to retaliate against them for filing the original complaint.  (D.I. 83, at 23.)  The defendants, however, have provided the court with a certified translation of police file pages regarding Khaidarov's mother's death.   The police file states that Qodirov Nuriddin Mukhiddinovich, a twenty year old resident of Uzbekistan struck Khaidarov's mother, who later died at the hospital from her injuries.  (D.I. 95, Ex. 1 at 1.)  The file also states that the accident was under investigation.  (Id.)  The police interviewed the driver of the vehicle that struck Khaidarov's mother, performed a forensic analysis of the accident, and concluded that the driver complied with the traffic laws, but "lacked the technical ability to avoid the collision."  (Id. Ex. 2, at 6.)  Given this evidence, the court is not convinced that Ivankov or any of the defendants arranged for Khaidarov's mother to be murdered.  Thus, contrary to their argument, none of the purported "new material facts" raised by the plaintiffs require the court to grant a different level of deference to their motivation for filing in Delaware than that granted by the *Base Metal* court.

b.  The private interest factors

The plaintiffs next contend that they proffer different objective criteria and new material facts regarding the private interest factors.  The court disagrees.  The plaintiffs continue to argue that the claims in the present case are "far narrower" than the claims in *Base Metal* because they do not include the aluminum industry takeover and GOK creditor claims.  The court has already concluded, however, that the claims in the present case relating to the GOK takeover are almost identical to the GOK takeover claims in *Base Metal*.   Moreover, as previously discussed, Judge Koeltl fully considered the propriety of litigating the GOK takeover claims in the United States, finding an "extensive list of non-party witnesses in Russia from whom evidence would be critical."  *Base Metal*, 253 F. Supp. 2d at 710.  The plaintiffs have not persuaded this court that there is any reason

to disregard Judge Koeltl's finding, which was affirmed on appeal. *Base Metal Trading SA v. Russian Aluminum*, 98 Fed. Appx. 47, 51 (2d Cir. 2004). Additionally, even assuming that the plaintiffs' "core claims" are the "narrow" issues of proving: "(a) Davis did not authorize the 'contract' by which its shares were 'sold'; (b) Foston was represented by an imposter in the Moscow litigation by which its shares were transferred; and (c) Omni and Holdex were not named or served in litigation by which their shares were transferred" (D.I. 83, at 24-25), these claims revolve around conduct which occurred in Russia.

The plaintiffs also argue, again, that Khaidarov's and Traum's unwillingness to return to Russia, as well as the murder of Khaidarov's mother rise to the level of gravity sufficient to prevent the plaintiffs from litigating in Russia. As discussed above, however, the court has concluded that the plaintiffs' arguments lack factual support and are, thus, merely conclusory statements. Accordingly, the court finds that these facts are neither new nor material.

Finally, the plaintiffs argue that the defendants can "preserve the testimony of allegedly unwilling witnesses under the Hague Convention or letters rogatory," as Russia is a party to that convention (Id. at 25.) This argument is of no moment, however, because the plaintiffs also can preserve the testimony of any witnesses unwilling to travel to Russia through the use of deposition testimony, videotaped depositions, or letters rogatory. Moreover, the plaintiffs ignore that fact that the *Base Metal* court's findings regarding the private interest factors apply to the present case, which is almost identical. Thus, here, as in *Base Metal*, "[t]he bulk of the important documentary evidence in this case is . . . located in Russia;" "[t]he need for extensive document translation supports a finding that this forum is inconvenient;" and "[a]ccess to sources of proof . . . tips heavily in favor of Russia." Accordingly, because the court has concluded that the *Base Metal* court already

20

considered the purportedly "new" and "material" evidence that the plaintiffs proffer, it will not reconsider whether the defendants have established that "trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience'" (D.I. 83, at 25), as *Base Metal* already decided this issue in the affirmative.

c. The public interest factors

The plaintiffs argue that re-analysis of the public interest factors is necessary because they proffer different objective criteria and new material facts relevant to those factors. First, the plaintiffs assert that here, unlike *Base Metal* where only two of the defendants were New York residents, two of the defendants are incorporated in Delaware and fifteen named Delaware entities were involved in the Defendants' alleged criminal schemes. (D.I. 83, at 26.) The plaintiffs conclude that these connections to Delaware demonstrate that the Conspirators center their activities in Delaware. (Id.) As a result, the plaintiffs contend that Delaware has a strong interest in preventing Russian criminals from using it as the corporate base for their schemes. (Id.) The court is not persuaded that the plaintiffs' argument is "new," as it was the same argument rejected by both the district court and Second Circuit in the *Base Metal* case, when they considered the interest of the United States, as a whole, in protecting its citizens. The *Base Metal* plaintiffs argued that "[t]he US has an obvious interest in seeing that its companies are not victims of organized criminal activity, and that corporations established under US law are not utilized to perpetrate frauds against other US companies." (D.I. 53, Ex. 3 at A415-16.) Despite the plaintiffs' assertions, the *Base Metal* court found that the public interest factors weighed "heavily" in favor of dismissal. *Base Metal*, 253 F. Supp. 2d at 712. Further, a panel of the Second Circuit upheld the district court's decision, notwithstanding the plaintiffs' argument that the defendants had "substantial ties to the U.S." (D.I.

92, Ex. D, at 1-2.)  The only new information that the plaintiffs provide here is that fourteen or

fifteen named Delaware entities, who are not parties to the case, were involved in the defendants'

criminal schemes.  (D.I. 83, at 26.)  This information, however, does not change the fact that "[a]ll

of the principle events in this case transpired in Russia."  *Base Metal*, 253 F. Supp. 2d at 712.

Additionally, the vague allegations that the plaintiffs have made with respect to the fifteen Delaware

entities demonstrates to the court that the connection to Delaware is "too attenuated to justify asking

the citizens of this district to resolve the parties' dispute."  *Id.* (citation omitted).

The plaintiffs next argue that this case sets forth only RICO claims, while *Base Metal* sought

relief under RICO and non-U.S. law.  (D.I. 83, at 26.)  In other words, the plaintiffs contend that

only American law applies and, therefore, the public interest factors almost always favor an

American forum.  (Id.)  The court disagrees.  It is true that the plaintiffs in *Base Metal* filed RICO

and non-U.S. law claims.  However, at oral argument in *Base Metal*, the plaintiffs conceded that

their allegations regarding the GOK bankruptcy were necessary to their RICO claim:

> THE COURT: [W]ould you agree that in order to find eventually for the plaintiffs
> in this case . . . the Court would have to find, or the jury would have to find, that the
> two bankruptcy proceedings in Russia were corrupt?
>
> MR. BERNARD: Yes, Your Honor.  I think that – that in connection with a RICO
> claim, part of the element in an enterprise.  Part of the predicate acts are mail and
> wire fraud in furtherance of a scheme to defraud.  And therefore, as part of that
> proof, we would need to show a fraud.
>
> THE COURT: All right.  And the – the two central frauds in this case are the –
> alleged to be the NKAZ [aluminum industry takeover] bankruptcy and the GOK
> bankruptcy, right?
>
> MR. BERNARD: Correct.

(D.I. 51, Ex. 3 at A142-43.)  Furthermore, like *Base Metal*, this case challenges the validity of

Russian court decisions surrounding the GOK bankruptcy.[14]  Thus, the court concludes that the plaintiffs have not presented a new material fact by eliminating their non-U.S. law claims.

Last, the plaintiffs argue that *Base Metal* determined only that it would be "'unfair to require a New York jury to sit on this case,'" and that Delaware policy is more favorable to them, in that it imposes a very narrow *forum non conveniens* standard.  (D.I. 83, at 27.)  The court is not persuaded by this argument because, contrary to the plaintiffs' assertion, the *Base Metal* court considered the interest of the United States and concluded that "the case has virtually no connection wit the United States."  *Base Metal*, 253 F. Supp. 2d at 713.  Accordingly, the plaintiffs have not raised different objective factors and new material facts that would require the court take a second look at the public interest factors.  Moreover, given the foregoing analysis, the court concludes that there is no need to conduct its own balancing test of the *Gilbert* factors because the plaintiffs have not raised different objective factors or new material facts regarding any of those factors.

e.  Adequacy of the Moscow Arbitrazh Court

Finally, the plaintiffs assert that new material facts exist as to the adequacy of the Moscow Arbitrazh Court.  Specifically, the plaintiffs assert that the Moscow Arbitrazh Court is not free from corruption based on the "recent dismantling of Yukos [an oil conglomerate], which has received world-wide condemnation as being orchestrated by powerful Russian interests."  (D.I. 83, at 29.)

---

[14] The plaintiffs state that the court "will not have to undo a *single* Russian court decision in a case where [they] were named, served, and participated on the merits."  (D.I. 83, at 27.)  In doing so, the plaintiffs continue to play games with this court, in that they fail to mention that most of the Russian proceedings about which they complain are in cases where they were not named or served, and did not participate on the merits.  For example, the plaintiffs complain that Omni "was never notified of or participated in" the proceedings by which its GOK shares were allegedly fraudulently transferred.  (Am. Compl. ¶¶ 95-103.)  The plaintiffs make the same allegations with respect to Holdex's shares.  (Id. ¶¶ 109-14.)

The plaintiffs further assert that they are not asking the court "to find that every court in Russia is corrupted," but to conduct its own determination as to whether Russia offers an adequate forum in the Moscow Arbitrazh Court.  (Id.)  As support for their position, the plaintiffs rely on *Leon v. Million Air, Inc.*, 251 F.3d 1305 (11th Cir. 2001), a case in which the Eleventh Circuit determined "where the plaintiff produces significant evidence documenting the partiality or delay (in years) typically associated with the adjudication of similar claims, and these conditions are so severe as to call the adequacy of the forum into doubt, then the defendant has the burden to persuade the District Court that the facts are otherwise." 251 F.3d at 1312-13.  The court finds, however, that *Leon* offers no support to these plaintiffs.

The plaintiffs' evidence regarding the partiality consists of statements of U.S. government officials, a U.S. Senate resolution, an English court decision, and media articles.  The statements of United States government officials included in the plaintiffs' citations to United States Department of State reports were made prior to the final verdict and sentencing in the Yukos cases and, at most, offer minimal information regarding possible corruption in the Russian judiciary.  (See D.I. 84, Exs. C and D.)  The Senate Resolution that the plaintiffs cite states only that the law enforcement and judicial authorities of Russia should "ensure" that those involved in the Yukos cases be "accorded the full measure of [their] rights under the Russian Constitution to defend . . . against all charges . . . in a fair and transparent process, so that individual justice may be done."  (D.I. 84, Ex. E at 2.) This does not provide any insight into the Yukos corruption alleged by the plaintiffs.  Neither do the *Financial Times* article and English court decision cited by the plaintiffs, as the article was published and the decision rendered prior to the jury's decision in the Yukos cases.  Contrary to the plaintiffs' assertions, the court finds, as did the *Base Metal* court, that the evidence proffered by the plaintiffs

is not "significant evidence" of partiality, as *Leon* requires under its burden shifting analysis.  *See Base Metal*, 253 F. Supp. 2d at 699 n.13.

Furthermore, the plaintiffs' evidence relates to testimonials regarding the corruption of the Russian legal system as a whole, which is not sufficient under *Leon* or *Base Metal*.  The *Leon* court, for example, required the plaintiff to produce "significant evidence documenting the partiality . . . typically associated with the adjudication of *similar* claims.  251 F.3d at 1312 (emphasis added).  Similarly, the *Base Metal* court required a "sufficient showing of corruption in the underlying proceedings," and concluded that the record did not establish that showing.  253 F. Supp. 2d at 704.  Here, the plaintiffs have not even attempted to demonstrate corruption in their underlying proceedings.  Rather, they suggest to the court that "Yukos provides new and persuasive evidence that Russian courts can be influenced."  (D.I. 83, at 29.)  For all of the aforementioned reasons, the court disagrees.  The plaintiffs, therefore, have not raised new material facts regarding the adequacy of the Moscow Arbitrazh court.  Thus, the court need not take a "second look" at the *forum non conveniens* issue.  Accordingly, the court concludes that dismissal of this action is mandated by the *Base Metal* opinion.[15]

### C.    Whether the Court Should Enjoin the Plaintiffs From Refiling this Action

The defendants contend that the court, pursuant to the All Writs Act, 28 U.S.C. § 1651, should enjoin the plaintiffs from bringing future actions in the United States based on the underlying facts asserted in the present case.  (D.I. 70, at 30.)  The defendants further maintain that the court may enjoin the plaintiffs from proceeding in the Chancery Court, without running afoul of the Anti-

---

[15] Because the court has determined that the doctrine of direct estoppel mandates dismissal of this case, it need not consider the defendants' alternative argument for dismissal pursuant to Federal Rule of Civil Procedure 60(b).

Injunction Act, 28 U.S.C. § 2283, because the plaintiffs have subverted the removal statute, 28 U.S.C. § 1446, by amending their complaint here and refiling their state law claims in state court. (D.I. 91, at 18-19.)  Conversely, the plaintiffs contend that the court should not grant injunctive relief until it determines its own jurisdiction.  (D.I. 83, at 32.)  The court agrees.

Under Third Circuit precedent, the "application of the Anti-Injunction and All-Writs Acts should . . . be[] *preceded* by the satisfaction of jurisdictional prerequisites[,]" including subject matter jurisdiction.  *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 198 (3d Cir. 1993) (emphasis in original).  Indeed, the *Carlough* court specifically noted that "neither the Anti-Injunction Act, 28 U.S.C. § 2283 (1970) nor the All-Writs Act, 28 U.S.C. § 1651 (1988) dispels the federal court's jurisdictional requisite . . ., but rather the judicial authority extended by the Acts is wholly derivative in nature."  *Id.*  Here, the defendants have challenged the court's subject matter jurisdiction.  As such, the court is without authority to issue the requested injunction.[16]

Dated: March 29, 2006                                  /s/ Gregory M. Sleet
                                                       UNITED STATES DISTRICT JUDGE

---

[16] The court reaches its decision with some regret because it is convinced, as is the Chancery Court, that the plaintiffs are attempting to subvert the removal statute by splitting their claims.  (See D.I. 98, Ex. 1 at 8-9.)  The court is also convinced that, absent an injunction, the plaintiffs will continue to file this action and take up the time and resources of another court. (Transcript of Telephone Conference, dated April 13, 2005, at 27:10-15.)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DAVIS INTERNATIONAL, LLC, | ) | |
| HOLDEX LLS, FOSTON | ) | |
| MANAGEMENT, LTD, and OMNI | ) | |
| TRUSTHOUSE, LTD, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | CONSOLIDATED |
| v. | ) | Civil Action No.  04-1482 GMS |
| | ) | |
| NEW START GROUP CORPORATION, | ) | |
| VENITOM CORPORATION, PAN- | ) | |
| AMERICAN CORPORATION, MDM | ) | |
| BANK, URAL-GORNO METALURGICAL | ) | |
| COMPANY, EVRAZ HOLDING, | ) | |
| MIKHAIL CHERNOI, OLEG DERIPASKA, | ) | |
| ARNOLD KISLIN, MIKHAIL NEKRICH, | ) | |
| and ISKANDER MAKMUDOV, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>ORDER</u>**

For the reasons stated in this court's Memorandum of this same date, IT IS HEREBY

ORDERED that:

1.      The defendants' Motion to Dismiss the Complaint Pursuant to the Doctrine of Direct

Estoppel (D.I. 47) is GRANTED, and the defendants' Motion to Enjoin Plaintiffs

from Refiling this Action (D.I. 47) DENIED.

Dated: March 29, 2006                                    /s/ Gregory M. Sleet
                                                         UNITED STATES DISTRICT JUDGE