<u>PRECEDENTIAL</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 06-2294 and 06-2408
_____

DAVIS INTERNATIONAL, LLC;
HOLDEX, LLC;
FOSTON MANAGEMENT, LTD;
OMNI TRUSTHOUSE, LTD

v.

NEW START GROUP CORP.; VENITOM CORP.;
PAN-AMERICAN CORP.; MDM BANK;
URAL-GORNO METALLURGICAL COMPANY;
EVRAZ HOLDING; MIKHAIL CHERNOI;
OLEG DERIPASKA; ARNOLD KISLIN;
MIKHAIL NEKRICH; ISKANDER MAKMUDOV

Davis International, LLC, Holdex, LLC,
Foston Management, LTD, Omni Trusthouse, LTD,

<u>Appellants in 06-2294</u>

New Start Group Corp; Venitom Corp.;
MDM Bank; Ural-Gorno Metaluragical Company;
Evraz Holding; Mikhail Chernoi;
Oleg Deripaska; Arnold Kislin;
Mikhail Nekrich; Iskander Makmudov,

<u>Appellants in 06-2408</u>
_____

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 04-cv-01482)
District Judge: Honorable Gregory M. Sleet
_____

Submitted Under Third Circuit LAR 34.1(a)
January 30, 2007

Before BARRY AND ROTH, <u>Circuit Judges,</u>
and DEBEVOISE[*], <u>District Judge</u>

(Opinion filed: May 23, 2007)

Bruce S. Marks, Esq.
Marks & Sokolov, LLC
1835Market Street, Suite 625
Philadelphia, PA 19103
     Attorneys for Appellants/Cross-Appellees
     Davis International LLC, Holdex LLC,
     Foston Management, Ltd, Omni Trusthouse, Ltd

Karen V. Sullivan, Esq.
Charles M. Oberly III, Esq.
Oberly, Jennings, Rhodunda
1220 Market Street
Suite 710, P.O. Box 2054
Wilmington, DE 19899
     Attorneys for Appellees/Cross-Appellants
     Iskander Makmudov, Mikhail Nekrich,
     Arnold Kislin, Mikhail Chernoi
     Ural-Gorno Metaluragical Company,
     Venitom Corp., New Start Group Corp.

William H. Devaney, Esq.
Venable LLP
405 Lexington Avenue
56th Floor
New York, NY 10174
     Attorney for Appellees/Cross-Appellants
     Ural-Gorno Metaluragical Company,
     Iskander Makmudov

---

[*] Honorable Dickinson R. Debevoise, Senior District Court
Judge for the District of New Jersey, sitting by designation.

2

Peter J. Venaglia, Esq.
Dornbush, Schaeffer, Strongin & Venaglia
747 Third Avenue
11th Floor
New York, NY 10017
     Attorney for Appellees/Cross-Appellants
     Venitom Corp., New Start Group Corp.

Lawrence S. Goldman, Esq.
Elizabeth M. Johnson, Esq.
Law Offices of Lawrence S. Goldman
500 Fifth Avenue
29th Floor
New York, NY 10110

Lisa C. Cohen, Esq.
Schindler Cohen & Hochman LLP
100 Wall Street, 15th Floor
New York, New York 10005
     Attorneys for Appellee/Cross-Appellant
     Arnold Kislin

Jay Moffitt, Esq.
William M. Lafferty, Esq.
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

David H. Herrington, Esq.
Cleary, Gottlieb, Steen & Hamilton
One Liberty Plaza
New York, NY 10006
     Attorneys for Appellee/Cross-Appellant
     Evraz Holding

Joel Kleinman, Esq.
David H. Greenberg, Esq.
Dickstein, Shapiro, Morin & Oshinsky
2101 L Street, N.W.
Washington, DC 20037

Andrew D. Cordo, Esq.
Richard I.G. Jones, Jr., Esq.
Ashby & Gaddes
222 Delaware Avenue
P.O. Box 1150, 17th Floor
Wilmington, DE 19899
      Attorneys for Appellee/Cross-Appellant
      MDM Bank

Brian E. Maas, Esq.
Frankfurt, Kurnit, Klein & Selz
488 Madison Avenue
New York, NY 10022
      Attorney for Appellee/Cross-Appellant
      Mikhail Chernoi

Kevin F. Brady, Esq.
Collins J. Seitz Jr., Esq.
Connolly, Bove, Lodge & Hutz
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
      Attorneys for Appellee/Cross-Appellant
      Oleg Deripaska

Edward M. Spiro, Esq.
Morvillo, Abramowitz, Grand, Iason & Silberberg
565 Fifth Avenue
New York, NY 10017
      Attorney for Appellee/Cross-Appellant
      Mikhail Nekrich

————————————

## OPINION

————————————

**Debevoise, Senior District Judge**

    The Appellants and Cross-Appellees on this appeal are

4

Davis International, LLC ("Davis"), Holdex, LLC, ("Holdex"), Foston Management, Ltd. ("Foston") and Omni Trusthouse, Ltd. ("Omni") (collectively referred to as "Appellants"). The Appellees and Cross-Appellants are New Start Group Corp. ("New Start"), Venitom Corp. ("Venitom"), Pan-American Corp. ("Pan-American"), MDM Bank ("MDM"), Ural-Gorno Metallurgical Company ("Ural-Gorno"), Evraz Holding ("Evraz"), Mikhail Chernoi ("Chernoi"), Oleg Deripaska ("Deripaska"), Arnold Kislin ("Kislin"), Mikhail Nekrich ("Nekrich"), and Iskander Makmudov ("Makmudov") (collectively referred to as "Appellees").

In November 2004, Appellants filed a complaint in the Delaware Court of Chancery (the "Chancery Court"), alleging federal RICO and common-law conversion claims. Appellees removed the action to the District Court, after which Appellants filed an amended complaint that deleted their state law claims. Simultaneously Appellants re-filed their conversion claims in the Chancery Court, adding two new state law claims.

Appellees moved to dismiss the amended complaint on multiple grounds.[1] The District Court heard first Appellees' motion based on direct estoppel, in which they contended that a 2000 forum non conveniens decision in the Southern District of New York mandated dismissal. Base Metal Trading SA v. Russian Aluminum, 253 F. Supp. 2d 681 (S.D.N.Y. 2003), aff'd sub nom., Base Metal Trading Ltd. v. Russian Aluminum, 98 Fed. Appx. 47 (2d Cir. 2004) ("Base Metal"). Appellees also moved for an order enjoining Appellants from refiling the same claims in another United States court.

The District Court granted Appellees' motion to dismiss, holding that the forum non conveniens issue had already been

---

[1] After removal Appellees filed motions to dismiss based on: i) lack of subject matter jurisdiction, ii) failure to state a claim, iii) direct estoppel, iv) forum non conveniens, and v) international comity. The parties and the Court agreed that initially the Court would address only the direct estoppel ground, which the parties then briefed and argued.

5

litigated in <u>Base Metal</u> and that the doctrine of direct estoppel barred Appellants from relitigating the decision against them. Noting Appellees' challenge to its subject matter jurisdiction, the District Court held that it was without authority to issue an injunction and denied Appellees' motion for injunctive relief. We will affirm the District Court's dismissal of the complaint on direct estoppel grounds and reverse the District Court's order denying Appellees' motion for an anti-suit injunction, remanding the case to the District Court to determine whether injunctive relief is appropriate.

## I.  <u>Background</u>

A.  <u>First Amended Complaint</u>: The First Amended Complaint (the "Complaint") alleges that a conspiracy, that extended from the 1990s to the present, was perpetrated by members of an international organized group of Russian and American racketeers and was carried out in the United States and Russia.  The conspirators were Chernoi, Deripaska, Makmudov, Nekrich and Kislin (the "Conspirators").  By means of check-kiting, threats, physical seizure of property, bribery, a sham bankruptcy, and corrupt judicial proceedings, the Conspirators, it is alleged, acquired control of Kachkanarsky GOK ("GOK"), of which Appellants were the majority shareholders.  GOK is a Russian company that maintains Russia's largest vanadium ore plant in the Town of Kachkanar in the Sverdlovsk Oblast in the Ural Mountains.

The Complaint alleges in detail the multitude of actions the Conspirators, and persons and entities associated with them, took to further their scheme to seize GOK and to prevent Appellants from obtaining redress in the Russian courts.  For the purposes of this opinion it is necessary to describe only the general nature of these actions.

The Conspirators were a part of the Izmailovo Mafia, one of the most powerful Russian-American organized crime groups.

(¶¶ 38-44).[2]  As such they engaged in the check-kiting fraud on the Russian central bank that procured the funds in the United States that became the seed money for their criminal ventures, including the seizure of GOK.  (¶¶ 45-48).  In 1999 the Conspirators and members of the Russian mafia threatened GOK's general director, Jalol Khaidarov, with death unless he sought to persuade GOK's shareholders to turn over first 20% and later 51% of their shares to the Conspirators.  (¶¶ 49-53).

Khaidarov transmitted the demands to the GOK shareholders, but the shareholders did not comply.  Next, Makmudov asked Khaidarov to meet with him in Moscow.  The two were joined by Malevsky, a leader in the Russian Mafia; Conspirators Deripaska, Kislin, and Nekrich; and five armed thugs.  Makmudov demanded that Khaidarov arrange for the GOK controlling shareholders to transfer 51% of GOK's shares to Chernoi without payment.  Khaidarov said he thought Makmudov was crazy, but that he would transmit the message. He was told, "This is the last time you will leave here alive."  (¶¶ 54-57).

In 1999, Eduard Roussel ("Roussel") was the Governor of Sverdlovsk Oblast, where GOK was located.  The Conspirators bribed him for his support of their efforts to do business in Sverdlovsk Oblast.  (¶¶ 58-62).

In January 2000, the Conspirators sent armed persons to take physical control of the GOK plant.  By threats of physical harm the Conspirators caused four of the seven members of GOK's board of directors to remove Khaidarov as general director and to replace him with Andrey Kozitsin ("Kozitsin"), an agent of the Conspirators.  In response to a legal challenge to the takeover, a member of Russia's Supreme Court issued a directive that invalidated the ruling of a lower court approving the action of the rump board of directors and remanded the case to the lower court for reconsideration.  The lower court has taken

---

[2] The "¶" numbers refer to the paragraphs of the Complaint, which is set forth in the Joint Appendix at pp. 275-302.

no action.  (¶¶ 63-65).

Three of the remaining board members filed criminal complaints challenging the illegal takeover.  Malevsky's people threatened these directors and their families with death if they continued to resist the takeover, and the cooperation of two other directors was secured with bribes.  (¶¶ 65-68).

The Complaint sets forth in considerable detail the steps the Conspirators took to place GOK out of the reach of its shareholders should the shareholders prevail in their legal proceedings.  The Conspirators arranged for the new general director, Kozitsin, to enter a number of sham transactions, as a result of which a shell company, Lebaut, accumulated a total of 53 GOK promissory notes with a face value of approximately $39 million.  The Conspirators, through collusive means, then arranged for GOK to be placed into bankruptcy.  The Sverdlovsk Arbitrazh Court appointed Oleg Kozyrev ("Kozyrev"), an agent of the Conspirators, as provisional manager of GOK.  (¶¶ 75 - 83).

At an August 2000 first meeting of creditors, Lebaut's fraudulent claim amounted to 94% of creditor votes, giving it the power to elect Kozyrev external manager of GOK, a position that gave him management authority over the company. Thereupon the Conspirators arranged for Appellants to be removed from the registry of GOK shareholders and for their shares to be transferred secretly to Delaware shell companies New Start, Venitom and other companies controlled by the Conspirators.  (¶¶ 84-88).  The Complaint sets forth in detail the multiple transactions that the Conspirators were alleged to have orchestrated in order to transfer the Davis, Omni, Foston and Holdex shares to Venitom and other companies that the Conspirators controlled.  (¶¶ 89-114).

Having achieved their objective of transferring all the GOK shares, the Conspirators no longer needed the bankruptcy proceedings.  Accordingly, in March 2001 Kozyrev held a second meeting of creditors at which, based on Lebaut's huge claim, the creditors approved a sham settlement agreement which had the effect of making the claims of legitimate creditors

worthless and transferring control of GOK to its new shareholders. Under Russian bankruptcy law, shareholders had no standing to challenge this agreement. (¶¶ 115-117).

In retaliation for their opposition, the Conspirators arranged for false criminal charges to be brought against Khaidarov and Joseph Traum, a managing director of Appellant Davis. These charges and threats of violence forced Khaidarov and Traum to flee to Israel. (¶¶ 118-126).

This summarizes the allegations that form the factual basis of the Complaint.

B. The Base Metal Action: On December 19, 2000, Base Metal Trading, SA and two other corporations filed a complaint in the United States District Court for the Southern District of New York, charging that the named defendants, using tactics similar to those alleged in the Complaint in the instant case, sought to take control of NKAZ, an aluminum corporation, as part of their effort to monopolize the Russian aluminum industry.

Of particular significance in the instant case is the amended complaint that the plaintiffs filed on August 3, 2001. The amended complaint advanced claims based on the alleged illegal takeover of GOK through physical force, bribery and extortion. The plaintiffs in Base Metal included the four Appellants in the instant case. The defendants in Base Metal included seven of the eleven Appellees in the instant case. The allegations concerning the seizure of GOK, as they appeared in Base Metal, parallel the allegations of the Complaint in this case, including initial threats of violence, bribing the local Governor of the Sverdlovsk Oblast, physical seizure of GOK, removal of Khaidarov and his replacement by Kozitsin, the creation of massive false debts and the institution of a fraudulent Russian bankruptcy proceeding, the fraudulent transfer of the plaintiffs' shares in GOK to shell companies owned and controlled by the Conspirators, and the sham settlement of the Russian bankruptcy proceeding.

The Base Metal defendants moved to dismiss the

amended complaint on <u>forum</u> <u>non</u> <u>conveniens</u> grounds.  The Court granted the motion, finding that as to the private interest factors: i) little deference should be given to the plaintiffs' choice of forum, as the only plaintiffs who were United States citizens were shell holding corporations and as substantially all of the critical alleged actions took place in Russia; ii) Russia was both an available alternative forum and provided plaintiffs with adequate judicial remedies; and iii) the public and private interest factors all weighed in favor of granting the motion, namely, the relative ease of access to sources of proof, the convenience of willing witnesses, the availability of compulsory process for attaining the attendance of unwilling witnesses, and the other practical problems that make trial easy, expeditious and inexpensive.

The Court also found that all the public interest factors weighed in favor of dismissal: i) court congestion; ii) avoiding difficult problems in conflict of laws and application of foreign law; iii) the unfairness of imposing jury duty on a community with no relation to the case; and iv) the interest of communities in having local disputes decided at home.

The District Court in the instant case held that by virtue of the doctrine of estoppel, the decision in <u>Base Metal</u> precluded Appellants from relitigating the <u>forum</u> <u>non</u> <u>conveniens</u> issue.

## II.  <u>Discussion</u>

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331.  We have jurisdiction under 28 U.S.C. § 1291.

The principal ground of Appellants' appeal is that the District Court erred in dismissing the case by reason of the estoppel effect of another court's <u>forum</u> <u>non</u> <u>conveniens</u> decision, without first deciding Appellants' subject matter and personal jurisdiction motions.  Before addressing that issue we will consider Appellants' argument that the District Court erred by failing to consider Appellants' contention that because Appellees chose the forum by removing this action from the Chancery Court, they were barred by the doctrines of unclean hands and estoppel from moving to dismiss on <u>forum</u> <u>non</u>

conveniens grounds.

The District Court did not consider Appellants' unclean hands and estoppel arguments, because those contentions related to a forum non conveniens motion, consideration of which had been deferred. The parties and the Court had agreed that only the motion raising the estoppel effect of Base Metal would be argued, and Appellants' unclean hands and estoppel arguments were not applicable to that issue. Nevertheless, because Base Metal ruled on the forum non conveniens issue, and forum non conveniens was the subject of the estoppel ruling, we will address Appellants' unclean hands and estoppel arguments.

The nub of Appellants' argument is that Appellees did not invoke the jurisdiction of the federal court for the legitimate purpose of adjudicating federal issues; rather their purpose was to deprive Appellants of the ability to have any American court, federal or state, examine the RICO claims. Appellants cite a law review article in support of their position: "[A] federal court that grants forum non conveniens dismissals in removed cases where the state court would have retained jurisdiction creates an incentive for defendants to use the removal jurisdiction not for its apparent purpose of providing a federal forum for certain claims, but for the purpose of depriving plaintiffs of any American forum for the claims . . . . In sum, forum non conveniens should never be made available in removed cases." Peter G. McAllen, Deference to the Plaintiff in Forum Non Conveniens, 13 S. Ill. U.L.J. 191, 270-271 (1989).

Appellants have cited no cases that support their contention that either the doctrine of unclean hands or the doctrine of estoppel precludes defendants in a removed case from moving for dismissal on forum non conveniens grounds. In fact, the law is to the contrary, e.g., P.T. United Can Co. Ltd. v. Crown Cork & Seal Co., Inc., 138 F.3d 65, 73 (2d Cir. 1998) (affirming forum non conveniens dismissal after removal); Prack v. Weissinger, 276 F.2d 446, 450 (4th Cir. 1960) ("[I]n view of the [Supreme Court's] Gulf Oil Corp. v. Gilbert [, 330 U.S. 501 (1947)] decision, we are of the opinion that a removed action to which a Federal District Court applies the doctrine of forum non conveniens need not be remanded, but may be dismissed.").

11

Thus even if the District Court had addressed Appellants' motion to dismiss on <u>forum</u> <u>non</u> <u>conveniens</u> grounds, the doctrines of unclean hands and estoppel would not have prevented it from proceeding.

We turn to Appellants' principal ground, that the District Court erred by applying direct estoppel without first determining that it had jurisdiction. Appellants relied on <u>Malaysia Int'l Shipping Corp. v. Sinochem Int'l Co., Ltd.</u>, 436 F.3d 349 (3d Cir. 2006), which held that a district court must establish its own jurisdiction before dismissing a suit on the ground of <u>forum</u> <u>non</u> <u>conveniens</u>. In the present case the District Court distinguished <u>Malaysia Int'l Shipping</u> and held that it need not establish its jurisdiction before dismissing the action on estoppel grounds.

The Supreme Court's recent reversal of that case, <u>Sinochem, Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.</u>, 127 S. Ct. 1184 (2007), resolves the issue:

> We hold that a district court has discretion to respond at once to a defendant's <u>forum non conveniens</u> plea, and need not take up first any other threshold objection. In particular, a court need not resolve whether it has authority to adjudicate the cause (subject-matter jurisdiction) or personal jurisdiction over the defendant if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case.

<u>Id.</u> at 1188.

In light of this opinion, the District Court's decision to proceed with the estoppel motion was unquestionably correct. We apply <u>de</u> <u>novo</u> review to a district court's dismissal of claims on estoppel grounds and to a district court's determination of jurisdiction to issue an injunction.

In the District Court, Appellees, citing <u>Pastewka v. Texaco, Inc.</u>, 565 F.2d 851 (3d Cir. 1977), argued that because the Appellants' claims had already been dismissed on <u>forum</u> <u>non</u>

12

conveniens grounds in Base Metal, and because there were no material differences between the Complaint in the present case and the amended complaint in Base Metal, Appellants were estopped from relitigating their claims.  Appellants, on the other hand, urged that the District Court should conduct its own forum non conveniens analysis because the present case was vastly different from Base Metal, and because they proffered different objective criteria and material facts than were proffered in Base Metal.

In accordance with Pastewka, the District Court looked to the facts alleged in the Appellants' Complaint and compared them with the Base Metal amended complaint to determine whether they were "identical in all material respects."  The Court stated:

> . . . the court has undertaken its own side-by-side examination of both amended complaints, with the following results: (1) a total 96 paragraphs in the Base Metal amended complaint are devoted to "The Takeover of GOK"; and (2) 57 of the 86 paragraphs that comprise the substantive factual allegations of the amended complaint in this case, i.e. paragraphs 49-134, as well as the headings, are either identical or significantly similar to the allegations set forth in Base Metal.  Based on its examination, the court concludes that the plaintiffs' characterization of their claims as a "small part of the Base Metal complaint" is disingenuous at best.

(A013) (footnotes omitted).

We have also compared the facts alleged in the Complaint with the facts alleged in the Base Metal amended complaint and agree with the District Court that the two complaints, insofar as the GOK claims are concerned, are identical in all material respects.

On this appeal the Appellants do not challenge the Pastewka analysis and argue simply that the District Court erred

in deciding the estoppel issue before it determined its jurisdiction. Because this argument has been disposed of in the Supreme Court's decision reversing <u>Malaysia Int'l Shipping,</u> nothing remains of Appellants' challenge to the District Court's dismissal of the Complaint on estoppel grounds. The judgment of dismissal of the Complaint will be affirmed.

There remains Appellants' cross-appeal of the District Court's denial of their motion for an order enjoining Appellees from bringing future actions in the United States based on the underlying facts asserted in the present case.

On April 13, 2005, the District Court decided to proceed with the motions to dismiss based on direct estoppel and to enjoin Appellants. On April 26, 2005, Appellants filed their amended complaint in which they eliminated all non-federal law claims. At the same time they filed another lawsuit against Appellees in the Chancery Court based on non-federal claims. The Chancery Court stayed that action, observing that "the plaintiffs are engaging in piecemeal litigation and are trying to subvert the removal statute by improperly splitting their claims." Davis Int'l, LLC v. New Start Group, Corp., No. Civ. A. 1297-N, 2005 WL 2899683, at *3 (Del. Ch. Oct. 27, 2005).

Addressing the injunction motion, the District Court held that "the 'application of the Anti-Injunction and All-Writs Acts should . . . be[] <u>preceded</u> by the satisfaction of jurisdictional prerequisites[,]' including subject matter jurisdiction. <u>Carlough v. Amchem Prods., Inc.,</u> 10 F. 3d 189, 198 (3d Cir. 1993) (emphasis in original)." (A029). Because the Appellees challenged the Court's subject matter jurisdiction, the District Court stated that it was "without authority to issue the requested injunction." (<u>Id</u>.).

It is evident that the District Court had both subject matter jurisdiction and in personam jurisdiction over at least some of the Appellees and all of the Appellants, the entities which were to be subject to the proposed injunction. Appellants asserted their claims under RICO, a federal statute. The Appellees, who might ultimately contest in personam jurisdiction, sought relief from the Court when pursuing their motion to dismiss on

14

estoppel grounds. This was sufficient to give the District Court jurisdiction to decide whether, in the circumstances of the case, the All Writs Act, 28 U.S.C. § 1651, authorized or required it to issue the requested injunction and whether the Anti-Injunction Act, 28 U.S.C. § 2283, precluded such an injunction.

The District Court, like the Chancery Court, was "convinced . . . that the plaintiffs are attempting to subvert the removal statute by splitting their claims." Courts considering the question have unanimously held that a plaintiff's fraudulent attempt to subvert the removal statute implicates the "expressly authorized" exception to the Anti-Injunction Act and may warrant the granting of an anti-suit injunction. See *Quackenbush v. Allstate Ins. Co*., 121 F.3d 1372, 1378 (9th Cir. 1997) (recognizing a district court's authority to enjoin a state suit fraudulently filed in an attempt to subvert the removal statute); *Kan. Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., Inc*., 77 F.3d 1063, 1070-71 (8th Cir. 1996) (affirming district court's injunction of parallel state court action filed for the purpose of subverting a removal statute); *Frith v. Blazon-Flexible Flyer, Inc*., 512 F.2d 899, 901 (5th Cir. 1975). ("[W]here a district court finds that a second suit filed in state court is an attempt to subvert the purposes of the removal statute, it is justified and authorized by § 1446(e) in enjoining the proceedings in the state court."); *cf.* 1975 *Salaried Retirement Plan for Eligible Employees of Crucible, Inc. v. Nobers*, 968 F.2d 401, 407 & n.5 (3d Cir. 1992) (opining that a federal injunction of ongoing state proceedings in a removed case satisfies the "necessary in aid of its jurisdiction" exception under the Anti-Injunction Act, and "may also fall under the 'expressly authorized' exception, because 28 U.S.C. § 1446(e) (1988) provides that upon removal the 'State court shall proceed no further unless and until the case is remanded'").

Carlough v. Amchem Prods., Inc., 10 F.3d 189 (3d Cir. 1993), does not require a contrary conclusion. In Carlough a federal district court, in which an asbestos class action had been filed but not yet certified, enjoined the prosecution of a class action filed in a West Virginia state court consisting of plaintiffs whose exposure occurred in West Virginia and the defendants named in the federal action. Subsequently the federal district

court approved notice to the class and set a deadline to opt out of the class.  The Court of Appeals questioned the jurisdiction of the district court to enjoin the West Virginia plaintiffs prior to the issuance of the opt out notice but held that "once the district court approved the dissemination of notice and commenced the opt out period . . . the jurisdictional problem was resolved."  Id. at 201.  In the present case there never was a time when the District Court did not have jurisdiction over Appellants, the parties to be enjoined, and the Court was in the same posture as the post-opt out Carlough court.

The parties' briefs devoted considerable space to the merits of the injunction questions, but they are questions that should be resolved by the District Court in the first instance.

…

For the reasons set forth above, we affirm the order of the District Court dismissing Appellants' Complaint pursuant to the doctrine of direct estoppel and reverse the order of the District Court denying Appellees' motion to enjoin Appellants from refiling this action, remanding the action to the District Court for consideration of Appellees' motion to enjoin refiling of this action on the merits.