**Order in an urgent matter in the case between DAVIS INTERNATIONAL and EVRAZ GROUP of 01 July 2005**

---

**Mr Alex SCHMITT**, barrister (copy containing thirty pages *[in the original]*)

---

*[coat of arms of the
Grand Duchy
of Luxembourg]*

# GRAND DUCHY OF LUXEMBOURG

# DISTRICT COURT OF AND AT LUXEMBOURG

# EXECUTION COPY

WE HENRI

*Grand Duke of Luxembourg,
Duke of Nassau,
etc, etc, etc,*

Make known that



**No. on the list of cases: 95721**
**Ref. no.: 499/2005**
**on 01 July 2005**
**at 10.00 a.m.**

Extraordinary public hearing in urgent matters on Friday, 01 July 2005, held by Us, Odette PAULY, Assistant Presiding Judge of the District Court of and at Luxembourg, sitting as judge in urgent matters, in place of the Presiding Judge of the District Court of and at Luxembourg, assisted by the Clerk of the Court, Christiane BRITZ.

## IN THE CASE

### BETWEEN

1) the company under the law of the State of West Virginia (United States of America) DAVIS INTERNATIONAL LLC, a limited liability company which is established and has its registered office at 1205 Wilkie Drive, 25314-1726 Charleston, and is represented by its directors currently in office;

2) the company under Cypriot law FOSTON MANAGEMENT Limited, a public limited company which is established and has its registered office at 1 Naousis Street, 6018 Larnaca, and is represented by its directors currently in office;



3) the company under the law of the State of Texas (United States of America) HOLDEX LLC, a limited liability company which is established and has its registered office at 707 West 7th Street, Austin, is represented by its directors currently in office, and is listed in the register of commerce under number 32001862799 (Tax Payer Number);

4) the company under English law OMNI TRUSTHOUSE Limited, a private limited company which is established and has its registered office at Blackwell House (Third Floor), Guildhall Yard, London EC2V 5AE, is represented by its directors currently in office, and is listed in the register of commerce under number 03488263 (register of commerce for London);

having as address for service the chambers of Mr Pierre REUTER, lawyer, of Luxembourg;

**applicant parties,** *represented by Mr Pierre REUTER, lawyer, of Luxembourg;*

### AND

the public limited company under Luxembourg law EVRAZ GROUP S.A., a public limited company ("*société anonyme*" – S.A.) which is established and has its registered office at 1 Allée Scheffer, L-2520 Luxembourg, is represented by its board of directors currently in office, and is listed in the register of commerce for Luxembourg under the number 105615,

**defendant parties,** *represented by Mr Guy ARENDT, lawyer, in place of Mr Alex SCHMITT, lawyer, both of Luxembourg.*

### THE FACTS OF THE CASE:

[*rubber stamp:* "ORIGINAL"]

Guy Engel
Process-server
282 Rue de Rollingergrund
L-2441 Luxembourg
PO Box 2781 – Tel. (+352) 449328

ct

## SUMMONS IN AN EXTRAORDINARY URGENT MATTER

*In the year two thousand and five, on the seventeenth of June.*
By virtue of an order delivered upon application by Mr Pierre GEHLEN, Presiding
Judge of the District Court of and at Luxembourg, on 17 June 2005, enforceable on
the basis of the original and before registration, authorising a summons in an
extraordinary urgent matter at the time, date and place indicated below, in response
to an application addressed to the Court on 13 June 2005, certified true copies of
which application and order are appended hereto,

and at the request of:

[1]  the company under the law of the State of West Virginia (United States of
America) **DAVIS INTERNATIONAL LLC**, a limited liability company which is
established and has its registered office at 1205 Wilkie Drive,
25314-1726 Charleston, and is represented by its directors currently in office;



[2]  the company under Cypriot law **FOSTON MANAGEMENT Limited**, a public
limited company which is established and has its registered office at 1 Naousis
Street, 6018 LARNACA, and is represented by its directors currently in office;

[3]  the company under the law of the State of Texas (United States of America)
**HOLDEX LLC**, a limited liability company which is established and has its registered
office at 707 West 7th Street, AUSTIN, is represented by its directors currently in
office, and is listed in the register of commerce under number 32001862799 (Tax
Payer Number);

[4]  the company under English law **OMNI TRUSTHOUSE LIMITED**, a private limited
company which is established and has its registered office at Blackwell House (Third
Floor), Guildhall Yard, LONDON EC2V 5AE, is represented by its directors currently
in office, and is listed in the register of commerce under number 03488263 (register
of commerce for London);

having as address for service the chambers of Mr Pierre REUTER, barrister, at
13 Breedewee (Rue Large), L-2010 Luxembourg (PO Box 55),

I the undersigned Guy ENGEL, process-server, of 282 Rue de Rollingergrund,
L-2441 Luxembourg,

have **summoned**:

the public limited company under Luxembourg law **EVRAZ GROUP S.A.**, a public
limited company ("*société anonyme*" – S.A.) which is established and has its
registered office at 1 Allée Scheffer, L-2520 LUXEMBOURG, is represented by its

board of directors currently in office, and is listed in the register of commerce for Luxembourg under the number 105615,

to appear on **Monday, 20 June 2005 at 9.00 a.m.** before the Presiding Judge of the District Court of and at Luxembourg, sitting as judge in urgent matters, at the hearing of urgent matters in Luxembourg (ordinary urgent matter), in Room 25 (Law Courts ("*Palais de Justice*") in Luxembourg, in the Rue du Palais de Justice),

Declaring to that party that by virtue of Article 79 and 80 of the New Code of Civil Procedure, where notification is effected by personal service and the defendant fails to appear, the ensuing judgment is deemed made in the presence of the parties and no application may be made to have it set aside.

*The purpose of the summons is as follows:*

Whereas in the application to obtain a shortening of the normal periods for serving a summons that forms an integral part of the present summons, DAVIS INTERNATIONAL, FOSTON MANAGEMENT, HOLDEX LLC and OMNI TRUSTHOUSE Limited made the following statement:



The four applicant parties are the legitimate owners of a total of 72.2% of the capital of the company under Russian law Kachkanarsky GOK (Kachkanarsky iron ore group, referred to hereinafter as "KGOK").

These shares are currently in the possession of:

the aforementioned company EVRAZ GROUP S.A.

The applicant parties have been dispossessed of their share in the capital of this company by such unlawful procedures including, for example, threats proffered against the persons representing the applicant companies, corruption, extortion, fraudulent judgment in Russia, etc.

This dispossession has been orchestrated by a Russian criminal organisation operating on an international scale, the organisation being directed, through the intermediary of dummy companies and front men, by Mikhail CHERNOI, Oleg DERIPASKA, Iskander MAKMUDOV and Mikhail NEKRICH.

The details of these dispossessions to the disadvantage of each of the four applicant parties are as follows:

## 1)  Attempted dispossession by proffering death threats

The economic beneficiaries of the four applicant parties are Jospeh TRAUM, an Israeli national resident in TEL AVIV (Israel), and Jalol KHAIDAROV, a Russian national, also resident in Israel.

Until December 1998, Jalol Khaidarov worked for the organisation directed by CHERNOI, DERIPASKA, MAKMUDOV and NEKRICH (referred to hereinafter as "the organisation") in the capacity of financial consultant.

When he realised the criminal activities being perpetrated by the organisation, he decided to leave it in order to regain his independence.

From April 1999, without prejudice as to the exact date, he worked as the managing director of KGOK.

Shortly after commencing this activity and still in April 1999, Jalol Khaidarov was threatened by Mikhail CHERNOI in the latter's flat in Paris, with a view to forcing him to convince KGOK's majority shareholders to transfer their shares to one or more companies controlled by the organisation.

Faced with these threats, but without wanting to give in to them entirely, and hoping to calm the situation down, the applicant parties agreed to conclude a contract preliminary to the sale to a company controlled by the organisation of 20% of their shares in KGOK, at the price of USD 5 000 000.



Several months later, Jalol Khaidarov was however approached by CHERNOI and MAKMUDOV with a view to him ensuring that KGOK's majority shareholders would transfer 51% of the shares in KGOK to the organisation, all under threats proffered against him and his family.

In view of these circumstances, the applicant parties decided that it was impossible to reach any reasonable agreement with the organisation, and returned the initial payment of USD 5 000 000 already received.

Subsequently Jalol Khaidarov was again threatened with a view to encouraging him to convince the applicant parties to sell 51% of the shares in KGOK.

Faced with the refusal of Jalol Khaidarov and the existing shareholders to sell their shares, the organisation decided to physically take over control of KGOK.

## 2) Assumption of control of KGOK's factories

On 28 January 2000, without prejudice as to the exact date, the organisation sent a number of armed persons to the KGOK factory and they physically took control of the site.

The members of the board of directors were threatened and four of the seven members of the board of directors voted to discharge Jalol Khaidarov of his duties as managing director and replace him by Andrey KOZITSIN, one of the organisation's agents, despite the fact that, under the company's memorandum and articles of association, the votes of five members of the board were needed to replace Jalol Khaidarov.

This decision by the board of directors was validated by a court of first instance in Russia, but the judgment was reversed by a judge at the Russian Supreme Court, who ordered the matter to be sent back to the judge in the initial proceedings; this judge has, however, refused for more than two years to set a date for the hearing.

### 3) Creation of artificial debts in respect of KGOK and artificial bankruptcy proceedings

KGOK's new managing director, Andrey KOZITSIN, one of the organisation's agents, committed the company to a certain number of dummy contracts, thereby creating artificial debts.

In addition, KGOK's new director, Andrey KOZITSIN, refused to pay KGOK's creditors, even when liquid funds substantially greater than the claims being brought against KGOK were available.

Subsequently, one of KGOK's creditors had KGOK summoned for bankruptcy, and this was pronounced by the Arbitration Tribunal of Sverdlovsk on 30 March 2000. In the same decision, the Tribunal appointed Oleg KOZYREV, another of the organisation's agents, as the company's administrator.



On 11 August 2000 the committee of creditors, 94% of which comprised one of the organisation's agents, holding dummy debts, appointed Oleg KOZYREV as "external director".

Under Russian law, an external director holds all powers of management in respect of a company.

The appointment of KOZYREV was approved by the Tribunal in the course of proceedings during which the applicant parties were not heard and were not even allowed an opportunity to set out the arguments in their defence.

Once KOZYREV had been appointed as external director, the organisation, together with KOZYREV, made arrangements to have the applicant parties removed – completely for some and in part for the others – from the register of KGOK's shareholders by illegal means.

### 4) The dispossession of DAVIS INTERNATIONAL

On 30 September 2000, without prejudice as to the exact date, Oleg KOZYREV transferred the holding of the register of KGOK's shareholders to the Russian company VRK, controlled by the organisation through its shareholder UGMC (URAL-GORNO METALLURGICAL COMPANY).

On 18 October 2000, without prejudice as to the exact date, VRK recorded the transfer of 35 106 022 shares in KGOK, ie 18.39% of KGOK's capital, representing all the shares having belonged to Davis, from Davis to a company under the law of the State of Delaware (USA), NEW START GROUP CORP.

In an attempt to give an appearance of regularity to this transfer, the organisation used the signature of a former DAVIS employee, Mr Eugen Ashenbrenner, who presented to VRK a false power of attorney containing authorisation to effect the disputed share transfer.

However, the only power of attorney held by Mr Ashenbrenner from DAVIS had been revoked on 28 September 2000, ie three weeks before the disputed transfer.

## 5) The dispossession of OMNI TRUSTHOUSE

In 2000, OMNI was the owner of 34 031 114 shares in KGOK, representing 17.83% of its capital. These shares had been acquired from a number of vendor parties in the context of a sale by order of the courts organised in September 1998.

During the spring of 2000, without prejudice as to a more precise date, the company under Russian law NPRO URALS instigated court proceedings with a view to having part of the said sales organised by the courts invalidated.



On 01 August 2000 the arbitration tribunal in Chlyabinsk upheld this application, a decision that was confirmed first by the appeal court on 15 November 2000 and subsequently by the federal court for the Urals district on 04 January 2001.

A number of the original vendors and co-contracting parties with OMNI applied to the supreme arbitration court of the Russian Federation; in 2001 two of the judges of this court, ARIFULIN and YUKOV, upheld all the decisions that had been delivered.

It has however been accepted by an American judge in another case on 16 April 2003 (Judge TRAGER of the East District of New York) that a decision delivered by Judge ARIFULIN had only been obtained by means of corruption.

It is important to note that, in all these proceedings referred to above, OMNI was not a party to the proceedings, was never called or heard and has not been allowed an opportunity to put forward the arguments in its defence.

This manner of proceeding is contrary to all the rules of procedure that exist in Russian law.

On completion of these manoeuvres, OMNI remained the owner of 23 448 051 shares in KGOK.

## 6) The dispossession of FOSTON MANAGEMENT

Until September 2000, FOSTON was the owner of 37 799 600 shares in KGOK, representing 19.80% of that company's capital.

In the course of 2000, without prejudice as to a more precise date, three companies controlled by the organisation instigated court proceedings before a court in Moscow in order to obtain the invalidation of the sales of shares to FOSTON.

FOSTON has never been called to a hearing, has never been heard and has never been allowed an opportunity to put forward the arguments in its defence.  FOSTON has only been represented by an impostor holding a false power of attorney who did not put up the slightest resistance to the claims brought against FOSTON.

On 29 September 2000 the court in question ordered the transfer of 37 715 081 shares, ie 19.75% of KGOK's capital, to companies controlled by the organisation.

The transfer was recorded in the register of shareholders held by VRK on 18 October 2000.

It was only in October 2000 that FOSTON learned by chance that its shares had been transferred.

On 30 October 2003 the Russian court definitively overturned the first decision obtained fraudulently and ordered that the shares be returned to FOSTON.



The applicant parties in these proceedings have never implemented this decision, more particularly since the shares had, in the meanwhile, been transferred to other companies controlled by the organisation, and more specifically to companies registered in the State of Delaware in the United States.

## 7) The dispossession of HOLDEX

On 25 September 2000, Holdex was the owner of 30 947 386 shares in KGOK, representing 16.21% of that company's capital.

These shares had been acquired from the company under Russian law POLYPROM.

Towards the end of 2000, without prejudice as to a more precise date, but at a time when KGOK was already being controlled by the organisation through the external director, Oleg KOZYREV, KGOK instigated court proceedings against POLYPROM before the arbitration tribunal of Kalmykia in order to obtain the invalidation of the sale of POLYPROM's shares in KGOK to HOLDEX.

On 22 November 2000 the tribunal allocated part of the HOLDEX shares to a Russian company controlled by the organisation.

The entry recording the transfer in the register of shareholders was made on 22 December 2000.

In flagrant contradiction with the procedures of Russian law, neither POLYPROM nor HOLDEX were called to a hearing of the tribunal in question and were not allowed any opportunity to put forward the arguments in their defence.

On completion of these manoeuvres, Holdex remained the owner of 28 639 402 shares in KGOK.

## 8) Consolidation of the organisation's control of KGOK

In the course of 2003, without prejudice as to the exact date, KGOK, under the organisation's control, issued new shares. The number of these shares was equal to the number of shares that already existed in the company.

At this time the applicant parties were still the owners of a total of approximately 27% of the shares which, under Russian law, constitutes a blocking minority since certain decisions must be made by a majority of 75% of the votes plus one.

The purpose of issuing the new shares was therefore clearly to dilute the proportion of shares held by the applicant parties in the company's capital in order to take away their blocking minority.

In the course of 2004, without prejudice as to a more precise date, the organisation contacted the applicant parties HOLDEX and OMNI through intermediaries, proposing the purchase of their remaining shares in KGOK.



Under a contract concluded on 28 September 2004, HOLDEX finally sold 28 639 402 shares in KGOK for USD 15 230 433.98 to a company called Morant Trade & Finance S.A.

Under a contract concluded on 28 September 2004, OMNI finally sold 23 448 051 shares in KGOK for USD 12 469 673.52 to a company called Morant Trade & Finance S.A.

## 9) Instigation of proceedings before courts in the United States

Since the applicant parties' shares had been acquired by American companies, constituted for the purpose by the organisation, the applicant parties had themselves joined to court proceedings instigated in the Southern District of New York by other applicant parties.

The court in question declared itself not competent to deal with the matter in March 2003; this decision was upheld on appeal in March 2004.

At the present time court proceedings for the restitution of shares and for damages are pending before the Court of Chancery of the State of Delaware (New Castle County).

As the applicant parties have, however, recently learned that the current holder of their shares is the defendant company under Luxembourg law EVRAZ, there is a risk of the proceedings instigated in the United States being unsuccessful.

The applicant parties therefore decided to bring the current proceedings against the defendant party EVRAZ before the courts of the Grand Duchy of Luxembourg.

The applicant parties also intend to bring action for recovery of property and in the alternative action to obtain damages from the company EVRAZ in the Grand Duchy of Luxembourg.

## 10) Request for the nomination of a custodian by means of proceedings in an extraordinary urgent matter

The applicant parties have recently learned that all their holdings in KGOK were now held by the defendant party, the company EVRAZ *Group* S.A.

It transpires from newspaper articles and from a prospectus issued by EVRAZ with a view to offering to sell 9 700 000 EVRAZ shares that EVRAZ currently holds 80.68% of KGOK's capital.

According to these same documents and on the basis of information obtained from the register of commerce and companies for Luxembourg, the shareholders in EVRAZ are the company CROSLAND GLOBAL Ltd and TMF Corporate Services S.A., which latter company, however, only holds one share.



The economic beneficiaries of EVRAZ are, according to EVRAZ itself, Messrs Alexander ABRAMOV (65.26%), Alexander FROLOV (31.11%) and Valery KHOROSHKOVSKY (2.08%).

However, these persons are in fact merely frontmen for the organisation comprising Mikhail CHERNOI, Oleg DERIPASKA, Iskander MAKMUDOV and Mikhail NEKRICH.

In consequence, EVRAZ should be regarded as holding KGOK shares in bad faith, as there can be no doubt that its managers are aware of the unlawful dispossessions of the applicant parties that have been taking place since 2000.

Even if EVRAZ should not be regarded as holding the shares in bad faith, quod non, the applicant parties claim ownership of part of the holding at present in the hands of the EVRAZ GROUP.

Experience has in fact shown that the applicant parties' adversaries are well versed in the movement of holdings around the globe in order that such holdings should elude the control of their true owners.

It is to be feared that the party EVRAZ may dispose of the disputed holdings to the detriment of the applicant parties before the latter have obtained a decision on the merits of the case in respect of the true ownership of these shares.

Article 1961 of the [Luxembourg] Civil Code allows a judge to order the custodianship "... 2) of an item of real property or a moveable item where the ownership or possession of the item is disputed by two or more persons ...".

In the present case the ownership of the shares in KGOK is claimed by the applicant parties.

These shares are currently in the hands of the party the EVRAZ GROUP.

It is urgently necessary to order these shares to be placed in the care of a custodian, who should be instructed to carry out every necessary step with a view to obtaining the handing over of these shares or obtaining control of the same in any way whatsoever; the custodian should also be given the voting rights attached to the shares to be put under his custodianship and entitled to collect any dividends paid thereon.

The company EVRAZ GROUP should also be prohibited from disposing of these shares in favour of any third party whatsoever other than the custodian pending a decision, either by mutual agreement inter partes or by the courts, in respect of the ownership of these shares.

The applicant parties request the Court to note that, as necessary, the present summons is founded in the principal on Article 350 of the New Code of Civil Procedure, since there are no proceedings pending inter partes, and in the alternative on Articles 932 and 933 of the same Code, as the matter is urgent, and on Article 934 of the New Code of Civil Procedure.



The present application is based on the following documents:

- extracts from the register of shareholders in KGOK;
- contracts documenting the purchase of the disputed shares by the applicant parties;
- memorandum and articles of association of EVRAZ GROUP S.A.;
- extracts from a prospectus issued by EVRAZ GROUP S.A.;
- application lodged with a court in the State of Delaware (USA);
- press cuttings.

The applicant parties reserve all other rights, dues, means and actions, and reserve the right to refer to other documents in the course of the proceedings.

### FOR THESE REASONS,

the parties in the principal should be referred to the appropriate court, but as of now and by way of provision, and in view of the urgency of the matter;

the application should be declared admissible in its form;

it should be declared founded and justified;

the Court should appoint a custodian, and

should order custodianship of the shares in the company under Russian law Kachkanarsky GOK, up to the number of shares representing 72.2% of all the shares in the company under Russian law Kachkanarsky GOK, held by the public limited

company under Luxembourg law EVRAZ GROUP S.A., which is established and has its registered office at 1 Allée Scheffer, L-2520 LUXEMBOURG, is represented by its board of directors currently in office, and is listed in the register of commerce for Luxembourg under the number 105615;

[...] whatsoever, and the shares should be conserved pending the definitive decision on their ownership; the custodian should be entitled to exercise the voting rights attached to the shares and to collect any dividends paid thereon;

the Court should prohibit the company EVRAZ GROUP S.A. from disposing of these shares in favour of any third party whatsoever other than the custodian pending a decision, either by mutual agreement inter partes, or by the courts in respect of the ownership of these shares;

the Court should order the EVRAZ GROUP to pay all costs and expenses of the proceedings;

the Court should order all lawful duties in respect of the custodianship;



the Court should order the EVRAZ GROUP to pay to the applicant party procedural compensation of EUR 10 000.00 to cover the expenses that it would be unfair to leave that party to pay, in accordance with Article 240 of the New Code of Civil Procedure, including lawyer's fees;

the Court should order the EVRAZ GROUP to pay all the costs and expenses of the proceedings;

the Court should order the provisional enforcement of the ensuing order, all means of redress notwithstanding, on the basis of the original and before registration;

the Court should reserve all other rights, dues, means and actions for the applicant parties.

Which I have done, with all reservations.

*[signature]*

### IMPORTANT INFORMATION ABOUT YOUR ENTITLEMENT TO DUE PROCESS

In accordance with the present summons, you have been summoned to appear before a judge.

You must abide by this document.  Should you fail to be represented, a judgment would be delivered on the basis solely of the documents and information supplied by the applicant party/parties.  Under Article 79 of the New Code of Civil Procedure, if notification is effected by personal service and the defendant party fails to appear, the ensuing judgment is deemed made in the presence of the parties and no application may be made to have it set aside.

You may attend in person and provide your own defence at the hearing, or you may be represented.  You may be represented before the judge by (a) a lawyer, or (b) your spouse, or (c) a relative by blood or marriage in direct line, or (d) a relative by blood or marriage in the collateral line, up to and including the third degree, or (e) a person exclusively attached to your personal service or to that of your company, or (f) your partner within the meaning of the Act of 09 July 2004 concerning the legal effects of certain partnerships.  Unless the person representing you is a lawyer, that person must bear a document in which you empower that person to represent you.

This document contains a list of the documents that Mr Pierre REUTER will be handing to the judge.  If you have not had knowledge of any of these documents, you may request a copy by writing to Mr Pierre REUTER.  If you

wish to hand documents to the judge, you must first send a copy to the applicant party's lawyer, Mr Pierre REUTER.

YOUR RIGHTS REGARDING DATA PROTECTION

You are informed that the personal data contained in the present document has been stored on a computer medium at the chambers of Mr Pierre REUTER. The data has been [...]

[...] concerning the same, including enforcement procedure and interim measures that may be ordered by the courts. The categories of data stored are your surname(s), first name(s), address, telephone number(s), fax number, e-mail address, place and date of birth, occupation and, possibly, the identity of your employer. This data may be transmitted to the other parties involved in the proceedings, to the lawyers representing those parties, to courts and administrations in the Grand Duchy of Luxembourg or elsewhere, to the prosecuting authorities, to process-servers, and possibly to third parties with a view to having garnishment effected in their hands. The data will be retained for an indefinite period of time. If you wish to consult or rectify this data, you should contact Mr Pierre REUTER at the address indicated in the present document.

Cost [in EUR]

```
Duty:        50.00
Addresses:    5.00
Travel:       6.00
Copies:      12.50
VAT:          8.82
Postage:      1.00

Total:       83.32
```

CERTIFIED TRUE TRANSLATION

CLAUDINE ADAMS
SWORN TRANSLATOR ACCORDING TO
MINISTERIAL DECREE OF 15 DECEMBER 1998
LUXEMBOURG, 25.07.2005

[*rubber stamp:* "ORIGINAL"]

THEWES & REUTER
**BARRISTERS**

[*rubber stamp:*
"Lodged with the Office of
the Clerk of the District Court
of and at Luxembourg
on *13 June 2005*
The Senior Clerk of the Court, by delegation
*[signature]*"

## APPLICATION TO OBTAIN A SHORTENING OF THE NORMAL PERIODS FOR SERVING A SUMMONS, ADDRESSED TO THE HONORARY COUNSELLOR AND PRESIDING JUDGE OF THE DISTRICT COURT OF AND AT LUXEMBOURG

The following parties:

[1]  the company under the law of the State of West Virginia (United States of America) **DAVIS INTERNATIONAL LLC**, a limited liability company which is established and has its registered office at 1205 Wilkie Drive, 25314-1726 Charleston, and is represented by its directors currently in office,

[2]  the company under Cypriot law **FOSTON MANAGEMENT Limited**, a public limited company which is established and has its registered office at 1 Naousis Street, 6018 LARNACA, and is represented by its directors currently in office,

[3]  the company under the law of the State of Texas (United States of America) **HOLDEX LLC**, a limited liability company which is established and has its registered office at 707 West 7th Street, AUSTIN, is represented by its directors currently in office, and is listed in the register of commerce under the number 32001862799 (Tax Payer Number),



[4]  the company under English law **OMNI TRUSTHOUSE Limited**, a private limited company which is established and has its registered office at Blackwell House (Third Floor), Guildhall Yard, LONDON EC2V 5AE, is represented by its directors currently in office, and is listed in the register of commerce under number 03488263 (register of commerce for London),

most respectfully beg to submit to Your Honour, through Mr Pierre REUTER, barrister, whose chambers are at 13 Breedewee (Rue Large), L-2010 Luxembourg (PO Box 55), who is appointed counsel as necessary and whose chambers are the address for service, that the applicant parties are opposed to:

the public limited company under Luxembourg law **EVRAZ GROUP S.A.**, a public limited company ("*société anonyme*" – S.A.) which is established and has its registered office at 1 Allée Scheffer, L-2520 LUXEMBOURG, is represented by its board of directors currently in office, and is listed in the register of commerce for Luxembourg under the number 105615,

in a dispute concerning shares in the company under Russian law Kachkanarsky GOK (Kachkanarsky iron ore group, referred to hereinafter as "KGOK").

The four applicant parties are the legitimate owners of a total of 72.2% of the capital of the company under Russian law Kachkanarsky GOK (Kachkanarsky iron ore group, referred to hereinafter as "KGOK").

These shares are currently in the possession of:

the aforementioned company EVRAZ GROUP S.A.

The applicant parties have been dispossessed of their share in the capital of this company by such unlawful procedures including, for example, threats proffered against the persons representing the applicant companies, corruption, extortion, fraudulent judgment in Russia, etc.

This dispossession has been orchestrated by a Russian criminal organisation operating on an international scale, the organisation being directed, through the intermediary of dummy companies and front men, by Mikhail CHERNOI, Oleg DERIPASKA, Iskander MAKMUDOV and Mikhail NEKRICH.

The details of these dispossessions to the disadvantage of each of the four applicant parties are as follows:

## 1) Attempted dispossession by proffering death threats

The economic beneficiaries of the four applicant parties are Jospeh TRAUM, an Israeli national resident in Tel Aviv (Israel), and Jalol Khaidarov, a Russian national, also resident in Israel.

Until December 1998, Jalol Khaidarov worked for the organisation directed by CHERNOI, DERIPASKA, MAKMUDOV and NEKRICH (referred to hereinafter as "the organisation") in the capacity of financial consultant.



When he realised the criminal activities being perpetrated by the organisation, he decided to leave it in order to regain his independence.

From April 1999, without prejudice as to the exact date, he worked as the managing director of KGOK.

Shortly after commencing this activity and still in April 1999, Jalol Khaidarov was threatened by Mikhail CHERNOI in the latter's flat in Paris, with a view to forcing him to convince KGOK's majority shareholders to transfer their shares to one or more companies controlled by the organisation.

Faced with these threats, but without wanting to give in to them entirely, and hoping to calm the situation down, the applicant parties agreed to conclude a contract preliminary to the sale to a company controlled by the organisation of 20% of their shares in KGOK, at the price of USD 5 000 000.

Several months later, Jalol Khaidarov was however approached by CHERNOI and MAKMUDOV with a view to him ensuring that KGOK's majority shareholders would transfer 51% of the shares in KGOK to the organisation, all under threats proffered against him and his family.

In view of these circumstances, the applicant parties decided that it was impossible to reach any reasonable agreement with the organisation, and returned the initial payment of USD 5 000 000 already received.

Subsequently Jalol Khaidarov was again threatened with a view to encouraging him to convince the applicant parties to sell 51% of the shares in KGOK.

Faced with the refusal of Jalol Khaidarov and the existing shareholders to sell their shares, the organisation decided to physically take over control of KGOK.

## 2) Assumption of control of KGOK's factories

On 28 January 2000, without prejudice as to the exact date, the organisation sent a number of armed persons to the KGOK factory and they physically took control of the site.

The members of the board of directors were threatened and four of the seven members of the board of directors voted to discharge Jalol Khaidarov of his duties as managing director and replace him by Andrey KOZITSIN, one of the organisation's agents, despite the fact that, under the company's memorandum and articles of association, the votes of five members of the board were needed to replace Jalol Khaidarov.



This decision by the board of directors was validated by a court of first instance in Russia, but the judgment was reversed by a judge at the Russian Supreme Court, who ordered the matter to be sent back to the judge in the initial proceedings; this judge has, however, refused for more than two years to set a date for the hearing.

## 3) Creation of artificial debts in respect of KGOK and artificial bankruptcy proceedings

KGOK's new managing director, Andrey KOZITSIN, one of the organisation's agents, committed the company to a certain number of dummy contracts, thereby creating artificial debts.

In addition, KGOK's new director, Andrey KOZITSIN, refused to pay KGOK's creditors, even when liquid funds substantially greater than the claims being brought against KGOK were available.

Subsequently, one of KGOK's creditors had KGOK summoned for bankruptcy, and this was pronounced by the Arbitration Tribunal of Sverdlovsk on 30 March 2000.  In the same decision, the Tribunal appointed Oleg KOZYREV, another of the organisation's agents, as the company's administrator.

On 11 August 2000 the committee of creditors, 94% of which comprised one of the organisation's agents, holding dummy debts, appointed Oleg KOZYREV as "external director".

Under Russian law, an external director holds all powers of management in respect of a company.

The appointment of KOZYREV was approved by the Tribunal in the course of proceedings during which the applicant parties were not heard and were not even allowed an opportunity to set out the arguments in their defence.

Once KOZYREV had been appointed as external director, the organisation, together with KOZYREV, made arrangements to have the applicant parties removed – completely for some and in part for the others – from the register of KGOK's shareholders by illegal means.

## 4)  The dispossession of DAVIS INTERNATIONAL

On 30 September 2000, without prejudice as to the exact date, Oleg KOZYREV transferred the holding of the register of KGOK's shareholders to the Russian company VRK, controlled by the organisation through its shareholder UGMC (URAL-GORNO METALLURGICAL COMPANY).

On 18 October 2000, without prejudice as to the exact date, VRK recorded the transfer of 35 106 022 shares in KGOK, ie 18.39% of KGOK's capital, representing all the shares having belonged to Davis, from Davis to a company under the law of the State of Delaware (USA), NEW START GROUP CORP.



In an attempt to give an appearance of regularity to this transfer, the organisation used the signature of a former DAVIS employee, Mr Eugen Ashenbrenner, who presented to VRK a false power of attorney containing authorisation to effect the disputed share transfer.

However, the only power of attorney held by Mr Ashenbrenner from DAVIS had been revoked on 28 September 2000, ie three weeks before the disputed transfer.

## 5)  The dispossession of OMNI TRUSTHOUSE

In 2000, OMNI was the owner of 34 031 114 shares in KGOK, representing 17.83% of its capital.  These shares had been acquired from a number of vendor parties in the context of a sale by order of the courts organised in September 1998.

In 2000, OMNI was the owner of 34 031 114 shares in KGOK, representing 17.83% of its capital.  These shares had been acquired from a number of vendor parties in the context of a sale by order of the courts organised in September 1998.

During the spring of 2000, without prejudice as to a more precise date, the company under Russian law NPRO URALS instigated court proceedings with a view to having part of the said sales organised by the courts invalidated.

On 01 August 2000 the arbitration tribunal in Chlyabinsk upheld this application, a decision that was confirmed first by the appeal court on 15 November 2000 and subsequently by the federal court for the Urals district on 04 January 2001.

A number of the original vendors and co-contracting parties with OMNI applied to the supreme arbitration court of the Russian Federation; in 2001 two of the judges of this court, ARIFULIN and YUKOV, upheld all the decisions that had been delivered.

It has however been accepted by an American judge in another case on 16 April 2003 (Judge TRAGER of the East District of New York) that a decision delivered by Judge ARIFULIN had only been obtained by means of corruption.

It is important to note that, in all these proceedings referred to above, OMNI was not a party to the proceedings, was never called or heard and has not been allowed an opportunity to put forward the arguments in its defence.

This manner of proceeding is contrary to all the rules of procedure that exist in Russian law.

On completion of these manoeuvres, OMNI remained the owner of 23 448 051 shares in KGOK.

### 6) The dispossession of FOSTON MANAGEMENT

Until September 2000, FOSTON was the owner of 37 799 600 shares in KGOK, representing 19.80% of that company's capital.



In the course of 2000, without prejudice as to a more precise date, three companies controlled by the organisation instigated court proceedings before a court in Moscow in order to obtain the invalidation of the sales of shares to FOSTON.

FOSTON has never been called to a hearing, has never been heard and has never been allowed an opportunity to put forward the arguments in its defence.  FOSTON has [...]

[...] 37 715 081 shares, ie 19.75% of KGOK's capital, to companies controlled by the organisation.

The transfer was recorded in the register of shareholders held by VRK on 18 October 2000.

It was only in October 2000 that FOSTON learned by chance that its shares had been transferred.

On 30 October 2003 the Russian court definitively overturned the first decision obtained fraudulently and ordered that the shares be returned to FOSTON.

The applicant parties in these proceedings have never implemented this decision, more particularly since the shares had, in the meanwhile, been transferred to other companies controlled by the organisation, and more specifically to companies registered in the State of Delaware in the United States.

## 7) The dispossession of HOLDEX

On 25 September 2000, HOLDEX was the owner of 30 947 386 shares in KGOK, representing 16.21% of that company's capital.

These shares had been acquired from the company under Russian law POLYPROM.

Towards the end of 2000, without prejudice as to a more precise date, but at a time when KGOK was already being controlled by the organisation through the external director, Oleg KOZYREV, KGOK instigated court proceedings against POLYPROM before the arbitration tribunal of Kalmykia in order to obtain the invalidation of the sale of POLYPROM's shares in KGOK to HOLDEX.

On 22 November 2000 the tribunal allocated part of the HOLDEX shares to a Russian company controlled by the organisation.

The entry recording the transfer in the register of shareholders was made on 22 December 2000.

In flagrant contradiction with the procedures of Russian law, neither POLYPROM nor HOLDEX were called to a hearing of the tribunal in question and were not allowed any opportunity to put forward the arguments in their defence.



On completion of these manoeuvres, Holdex remained the owner of 28 639 402 shares in KGOK.

## 8) Consolidation of the organisation's control of KGOK

In the course of 2003, without prejudice as to the exact date, KGOK, under the organisation's control, issued new shares. The number of these shares was equal to the number of shares that already existed in the company.

At this time the applicant parties were still the owners of a total of approximately 27% of the shares which, under Russian law, constitutes a blocking minority since certain decisions must be made by a majority of 75% of the votes plus one.

The purpose of issuing the new shares was therefore clearly to dilute the proportion of shares held by the applicant parties in the company's capital in order to take away their blocking minority.

In the course of 2004, without prejudice as to a more precise date, the organisation contacted the applicant parties HOLDEX and OMNI through intermediaries, proposing the purchase of their remaining shares in KGOK.

Under a contract concluded on 28 September 2004, HOLDEX finally sold 28 639 402 shares in KGOK for USD 15 230 433.98 to a company called Morant Trade & Finance S.A.

Under a contract concluded on 28 September 2004, OMNI finally sold 23 448 051 shares in KGOK for USD 12 469 673.52 to a company called Morant Trade & Finance S.A.

## 9) Instigation of proceedings before courts in the United States

Since the applicant parties' shares had been acquired by American companies, constituted for the purpose by the organisation, the applicant parties had themselves joined to court proceedings instigated in the Southern District of New York by other applicant parties.

The court in question declared itself not competent to deal with the matter in March 2003; this decision was upheld on appeal in March 2004.

At the present time court proceedings for the restitution of shares and for damages are pending before the Court of Chancery of the State of Delaware (New Castle County).

As the applicant parties have, however, recently learned that the current holder of their shares is the defendant company under Luxembourg law EVRAZ, there is a risk of the proceedings instigated in the United States being unsuccessful.



The applicant parties therefore decided to bring the current proceedings against the defendant party EVRAZ before the courts of the Grand Duchy of Luxembourg.

The applicant parties also intend to bring action for recovery of property and in the alternative action to obtain damages from the company EVRAZ in the Grand Duchy of Luxembourg.

## 10) Request for the nomination of a custodian by means of proceedings in an extraordinary urgent matter

The applicant parties have recently learned that all their holdings in KGOK were now held by the defendant party, the company EVRAZ S.A.

It transpires from newspaper articles and from a prospectus issued by EVRAZ with a view to offering to sell 9 700 000 EVRAZ shares that EVRAZ currently holds 80.68% of KGOK's capital.

According to these same documents and on the basis of information obtained from the register of commerce and companies for Luxembourg, the shareholders in EVRAZ are the company CROSLAND GLOBAL Ltd and TMF Corporate Services S.A., which latter company, however, only holds one share.

The economic beneficiaries of EVRAZ are, according to EVRAZ itself, Messrs Alexander ABRAMOV (65.26%), Alexander FROLOV (31.11%) and Valery KHOROSHKOVSKY (2.08%).

However, these persons are in fact merely frontmen for the organisation comprising Mikhail CHERNOI, Oleg DERIPASKA, Iskander MAKMUDOV and Mikhail NEKRICH.

In consequence, EVRAZ should be regarded as holding KGOK shares in bad faith, as there can be no doubt that its managers are aware of the unlawful dispossessions of the applicant parties that have been taking place since 2000.

Even if EVRAZ should not be regarded as holding the shares in bad faith, quod non, the applicant parties claim ownership of part of the holding at present in the hands of the EVRAZ GROUP.

Experience has in fact shown that the applicant parties' adversaries are well versed in the movement of holdings around the globe in order that such holdings should elude the control of their true owners.

It is to be feared that the party EVRAZ may dispose of the disputed holdings to the detriment of the applicant parties before the latter have obtained a decision on the merits of the case in respect of the true ownership of these shares.

Article 1961 of the [Luxembourg] Civil Code allows a judge to order the custodianship *"... 2) of an item of real property or a moveable item where the ownership or possession of the item is disputed by two or more persons ...".*



In the present case the ownership of the shares in KGOK is claimed by the applicant parties.

These shares are currently in the hands of the party EVRAZ GROUP.

It is urgently necessary to summon the defendant party EVRAZ GROUP S.A. in extraordinary urgent matters so as to order these shares to be placed in the care of a custodian, who should be instructed to carry out every necessary step with a view to obtaining the handing over of these shares or obtaining control of the same in any way whatsoever.

The company EVRAZ GROUP should also be prohibited from disposing of these shares in favour of any third party whatsoever other than the custodian pending a decision, either by mutual agreement inter partes or by the courts, in respect of the ownership of these shares.

The applicant parties request the Court to note that, as necessary, the present summons is founded in the principal on Article 350 of the New Code of Civil Procedure, since there are no proceedings pending inter partes, and in the alternative on Articles 932 and 933 of the same Code, as the matter is urgent, and on Article 934 of the New Code of Civil Procedure.

The present application is based on the following documents:

- extracts from the register of shareholders in KGOK;
- contracts documenting the purchase of the disputed shares by the applicant parties;
- memorandum and articles of association of EVRAZ GROUP S.A.;

- extracts from a prospectus issued by EVRAZ GROUP S.A.;
- application lodged with a court in the State of Delaware (USA);
- press cuttings.

The applicant parties reserve all other rights, dues, means and actions, and reserve the right to refer to other documents in the course of the proceedings.

## FOR THESE REASONS,

the applicant parties submit that it may please Your Honour as Presiding Judge, to:

authorise the summons of EVRAZ GROUP S.A. to attend an extraordinary hearing in an urgent matter, to be held at a time and place that Your Honour may be pleased to set, for the following:

the parties in the principal should be referred to the appropriate court, but as of now and by way of provision, and in view of the urgency of the matter;

the Court should appoint a custodian, and



should order custodianship of the shares in the company under Russian law Kachkanarsky GOK, up to the number of shares representing 72.2% of all the shares in the company under Russian law Kachkanarsky GOK, held by the public limited company under Luxembourg law EVRAZ GROUP S.A., which is established and has its registered office at 1 Allée Scheffer, L-2520 LUXEMBOURG, is represented by its board of directors currently in office, and is listed in the register of commerce for Luxembourg under the number 105615;

the Court should instruct the custodian to take possession of the shares at issue, to undertake all the steps necessary with a view to achieving either the handing over of these shares or control of the same, using any means whatsoever, and to conserve the shares pending the definitive decision on their ownership;

the Court should prohibit the company EVRAZ GROUP S.A. from disposing of these shares in favour of any third party whatsoever other than the custodian pending a decision, either by mutual agreement inter partes or by the courts, in respect of the ownership of these shares;

the Court should order the EVRAZ GROUP to pay all costs and expenses of the proceedings;

the Court should order all lawful duties in respect of the custodianship;

the Court should order the provisional enforcement of the ensuing order in an urgent matter, appeal and opposition notwithstanding, on the basis of the original and before registration;

the Court should reserve all other rights, dues and actions for the applicant parties.

Submitted to the Law Courts in LUXEMBOURG on 13 June 2005.

> Most respectfully,
> *[signature]*
> Pierre REUTER, barrister

---

## ORDER

---

We, *Pierre Gehlen, Presiding Judge of the District Court,*

having regard to the preceding application, the grounds therefor and the supporting documents, and also to Article 934 of the New Code of Civil Procedure,

authorise



[1] the company under the law of the State of West Virginia (United States of America) **DAVIS INTERNATIONAL LLC**, a limited liability company which is established and has its registered office at 1205 Wilkie Drive, 25314-1726 Charleston, and is represented by its directors currently in office;

[2] the company under Cypriot law **FOSTON MANAGEMENT Limited**, a public limited company which is established and has its registered office at 1 Naousis Street, 6018 Larnaca, and is represented by its directors currently in office;

[3] the company under the law of the State of Texas (United States of America) **HOLDEX LLC**, a limited liability company which is established and has its registered office at 707 West 7th Street, Austin, is represented by its directors currently in office, and is listed in the register of commerce under number 32001862799 (Tax Payer Number);

[4] the company under English law **OMNI TRUSTHOUSE Limited**, a private limited company which is established and has its registered office at Blackwell House (Third Floor), Guildhall Yard, London EC2V 5AE, is represented by its directors currently in office, and is listed in the register of companies under number 03488263 (register of commerce for London);

to have the following party:

the public limited company under Luxembourg law **EVRAZ GROUP S.A.**, a public limited company ("*société anonyme*" – S.A.) which is established and has its registered office at 1 Allée Scheffer, L-2520 Luxembourg, is represented by its board of directors currently in office, and is listed in the register of commerce for Luxembourg under the number 105615,

summoned to appear at an extraordinary hearing in urgent matters;

We set the date and time of this hearing for *Monday, 20 June 2005, at 9.00 a.m., in Room 25,*

at the Law Courts ("*Palais de Justice*") in Luxembourg.

We order provisional enforcement of the present order, appeal or redress notwithstanding, on the basis of the original and before registration.

*Luxembourg, 17 June 2005.*

[signature]

[*rubber stamp:*
"Presiding Judge of the
District Court of
Luxembourg "]

CERTIFIED TRUE TRANSLATION
CLAUDINE ADAMS
SWORN TRANSLATOR ACCORDING TO
MINISTERIAL DECREE OF 15 DECEMBER 1998
LUXEMBOURG, 25.04.2005

[signature]

Guy ENGEL
Process-server
PO Box 2781
L-1027 Luxembourg

**REPORT OF SERVICE OF A WRIT**

Date of service: in the year two thousand *and five, on the seventeenth of June.*

This document has been served by the undersigned
process-server in accordance with the conditions indicated
in the section marked with a cross and according to the
statements received, for the addressee at the addressee's:
○ domicile  ○ place of residence  ⊗ registered office
○ address for service at ......
○ ......
as stated below.

| Addressee of the writ: |
|---|
| **EVRAZ GROUP S.A.**<br>*1 Allée Scheffer*<br>*L-2520 Luxembourg* |

The accuracy of the address has been checked with:
○ the Population Bureau     ○ the Register of Commerce     ○ the central legislation department     ○ ......

**A) PERSONAL SERVICE**

| ○ natural person<br>to the addressee in person | ⊗ legal entity<br>to surname / first name(s): *Kotoula, Xenia*<br>*[illegible], employee of the domiciliation agent*<br>who declared he/she was authorised to receive<br>the document | ○ at the address for<br>service, to the authorised<br>agent in person |
|---|---|---|
| thus declared, which person took the writ | | |

Signed: Guy ENGEL



When the case was called at the ordinary public hearing of urgent matters on the morning of Monday, 20 June 2005, Mr Pierre REUTER, barrister, read out the summons transcribed above;

Mr Guy ARENDT, barrister, replied;

the judge sitting in urgent matters withdrew to deliberate on the matter and, at the extraordinary public hearing of urgent matters on this day, delivered the following:

## **ORDER**

By means of a writ served by the process-server Guy Engel of Luxembourg on 17 June 2005, the company under the law of the State of West Virginia (United States of America) DAVIS INTERNATIONAL LLC, the company under Cypriot law FOSTON MANAGEMENT Limited, the company under the law of the State of Texas (United States of America) HOLDEX LLC, and the company under English law OMNI TRUSTHOUSE had the public limited company under Luxembourg law EVRAZ GROUP summoned to appear before the Presiding Judge of the District Court of and at Luxembourg, sitting as judge in urgent matters, for the Court to appoint a custodian and order the custodianship of the shares in the company under Russian law Kachkanarsky GOK up to a number of shares representing 72.2% of all the shares in Kachkanarsky GOK held by the public limited company EVRAZ GROUP, the custodian to be instructed to take possession of these shares, to carry out all the necessary steps with a view to obtaining these shares or obtaining control thereof in any way whatsoever, to conserve them pending the definitive decision on the ownership of the shares at issue, to exercise the voting rights attached thereto and to collect any dividends, and for the Court to prohibit the public limited company EVRAZ GROUP disposing of these shares to any other third party other than the custodian, pending a decision, either by mutual agreement inter partes or by the courts, in respect of the ownership of the shares.



The companies DAVIS INTERNATIONAL LLC, FOSTON MANAGEMENT Limited, HOLDEX LLC and OMNI TRUSTHOUSE base their application in the principal on Article 350 of the New Code of Civil Procedure, and in the alternative on Articles 932 and 933 of the same code, and on Article 934 of the New Code of Civil Procedure.

The defendant party claims that the court to which application has been made has no territorial jurisdiction to deal with the matter on the grounds that the shares for which custodianship is requested are registered shares in a company under Russian law, the Open Joint Stock Company KACHKANARSKY ORE MINING AND PROCESSING ENTERPRISE VANADY, and that the shares are listed in the register of the company's shareholders. The public limited company EVRAZ GROUP also claims that the application is inadmissible in that its capacity is stated defectively, as it is not a shareholder in the Open Joint Stock Company KACHKANARSKY ORE MINING AND PROCESSING ENTERPRISE VANADY.

It is established in the matter that an application inter partes is pending in the United States of America, such that the application brought by the companies DAVIS INTERNATIONAL LLC, FOSTON MANAGEMENT Limited, HOLDEX LLC and OMNI TRUSTHOUSE may not be dealt with on the basis of Article 350 of the New Code of Civil Procedure.

The companies DAVIS INTERNATIONAL LLC, FOSTON MANAGEMENT Limited, HOLDEX LLC and OMNI TRUSTHOUSE claim that the Luxembourg courts dealing with urgent matters are competent to order the measures requested since the defendant party, which is a company under Luxembourg law, is the only company able to decide on the fate of the shares in the Open Joint Stock Company KACHKANARSKY ORE MINING AND PROCESSING ENTERPRISE VANADY, whether it is the owner thereof either directly or through the intermediary of subsidiaries.

This argument should be disregarded since the companies DAVIS INTERNATIONAL LLC, FOSTON MANAGEMENT Limited, HOLDEX LLC and OMNI TRUSTHOUSE are not in fact asking the public limited company EVRAZ GROUP to decide on the fate of the shares in the Open Joint Stock Company KACHKANARSKY ORE MINING AND PROCESSING ENTERPRISE VANADY; the applicant parties are applying to the judge sitting in urgent matters whose territorial competence is contested to have the shares placed in custodianship.



Although under Article 807, paragraph 1, of the Code of Civil Procedure (Article 933, paragraph 1, of the New Code of Civil Procedure), it is for the judge sitting in urgent matters to prescribe any protective or reparative measures that may be necessary in order to either prevent the occurrence of damage that is imminent or put a stop to a manifestly unlawful nuisance, this does not apply unless both in the case of imminent damage to be prevented, which may consist of blatantly unlawful conduct, and in the case of nuisance to be stopped, involving blatantly unlawful conduct, the acts are to be carried out or have been carried out in the Grand Duchy of Luxembourg, as the territorial scope of the provisions contained in Article 807, paragraph 1, of the Code of Civil Procedure (Article 933, paragraph 1, of the New Code of Civil Procedure) are limited to the territory of the Grand Duchy of Luxembourg; the provisions of Article 806, paragraph 1, of the Code of Civil Procedure (Article 932, paragraph 1, of the New Code of Civil Procedure) are also only applicable within the Grand Duchy of Luxembourg, such that a judge sitting in urgent matters in a Luxembourg court has no power to order the urgent measures referred to in this Article except in relation to a de facto or de jure situation in existence in the Grand Duchy of Luxembourg (Court of Appeal, 24 February 1988, case number 10047).

In principle, registered shares are represented by a listing in the share account and in the register of transfers kept by the issuing company, such that the requested custodianship and the ancillary provisions accompanying this measure have to be taken at the place of the registered office of the company whose shares are at issue.

In the present case it transpires from the explanations given by the defendant party that under Russian law a company is required to use the services of an approved register holder if it has more than 50 shareholders, that the Open Joint Stock Company KACHKANARSKY ORE MINING AND PROCESSING ENTERPRISE VANADY has more than 1 700 shareholders such that is legally required to have an approved register holder, and that the company under Russian law LOCO holds the register of the Open Joint Stock Company KACHKANARSKY ORE MINING AND PROCESSING ENTERPRISE VANADY and has issued the extracts submitted to the Court.

In consideration of the foregoing, it has to be said that the court to which application has been made is not competent ratione loci to deal with the application for custodianship of the registered shares issued by the company under Russian law Open Joint Stock Company

KACHKANARSKY ORE MINING AND PROCESSING ENTERPRISE VANADY, for which the company under Russian law LOCO is the approved register holder.

The public limited company EVRAZ GROUP claims the award of € 10 000 as procedural compensation.

In the absence of justification by the EVRAZ GROUP of how it would be unfair to leave it liable to pay the amounts it has incurred that are not included in costs, its application based on Article 240 of the New Code of Civil Procedure should be dismissed.

As a party losing a case may not obtain procedural compensation, the corresponding application by the companies DAVIS INTERNATIONAL LLC, FOSTON MANAGEMENT Limited, HOLDEX LLC and OMNI TRUSTHOUSE should be dismissed.

### FOR THESE REASONS,

We, Odette PAULY, Assistant Presiding Judge of the District Court of and at Luxembourg, sitting as judge in urgent matters, in place of the Presiding Judge of the District Court of and at Luxembourg, deliberating in the presence of the parties,



admit the application in its form;

state that the Court is not competent ratione loci to deal with the matter;

reject the applications for the award of procedural compensation;

leave the cost of the application payable by the applicant parties.

*[signatures]*

*Signed: PAULY, BRITZ.*

*We order all process-servers required to do so to enforce the present order;*

*Our Attorney General and Public Prosecutor attached to the District Courts to uphold it;*

*And all police commanders and officers to provide assistance whenever legally required to do so.*

*In witness whereof the present order has been signed and sealed with the seal of the Court.*

*First enforcement copy of the order, issued at the request of Mr Alex SCHMITT, barrister, acting on behalf of the party EVRAZ GROUP.*

*Luxembourg, 15 July 2005.*

*The Senior Clerk of the Court, by delegation:*
*[signature]*

> *[rubber stamp:*
> *"District Court of*
> *Luxembourg"]*

CERTIFIED TRUE TRANSLATION

CLAUDINE ADAMS
SWORN TRANSLATOR ACCORDING TO
MINISTERIAL DECREE OF 15 DECEMBER 1998
LUXEMBOURG, 25.07.2005

[signature]