```
                                                          1
 1            IN THE UNITED STATES DISTRICT COURT
              IN AND FOR THE DISTRICT OF DELAWARE
 2
                          - - -
 3
    DAVIS INTERNATIONAL, LLC, HOLDEX, LLC,: Civil Action
 4  FOSTON MANAGEMENT, LTD., and          :
    OMNI TRUSTHOUSE, LTD.                 :
 5           Plaintiffs,                  :
                                          :
 6       v.                               :
                                          :
 7  NEW START GROUP CORP., VENITOM CORP.  :
    PAN-AMERICAN CORP., MDM BANK          :
 8  URAL-GORNO METALURAGICAL COMPANY      :
    EVRAZ HOLDING, MIKHAIL CHERNOI,       :
 9  OLEG DERIPASKA, ARNOLD KISLIN         :
    MIKHAIL NEKRICH, and ISKANDER         :
10  MAKMUDOV,                             :
             Defendants.                  : No. 04-1482-GMS
11
                          - - -
12
    DAVIS INTERNATIONAL, LLC,             : Civil Action
13  HOLDEX, LLC, FOSTON                   :
    MANAGEMENT, LTD., and                 :
14  OMNI TRUSTHOUSE, LTD.                 :
             Plaintiffs,                  :
15                                        :
         v.                               :
16                                        :
    NEW START GROUP CORP.,                :
17  VENITOM CORP., PAN-AMERICAN           :
    CORP., MDM BANK, URAL-GORNO           :
18  METALURAGICAL COMPANY,                :
    EVRAZ HOLDING, MIKHAIL CHERNOI        :
19  OLEG DERIPASKA, ARNOLD KISLIN         :
    MIKHAIL NEKRICH, and ISKANDER         :
20  MAKMUDOV,                             :
             Defendants.                  : No. 04-1483-GMS
21
                          - - -
22
                     Wilmington, Delaware
23                 Wednesday, April 13, 2005
                          2:00 p.m.
24                   Telephone Conference

25  BEFORE: HONORABLE GREGORY M. SLEET, U.S.D.C.J.
```

```
                                                          2
 1  APPEARANCES:

 2      KURT M. HEYMAN, ESQ.
        The Bayard Firm
 3          -and-
        BRUCE S. MARKS, ESQ., and
 4      GENE BURD, ESQ.
        Marks & Sokolov, LLC
 5      (New York, New York)

 6              Counsel for Plaintiffs

 7      KAREN V. SULLIVAN, ESQ.
        Oberly, Jennings & Rhodunda, P.A.
 8          -and-
        LISA C. COHEN, ESQ., and
 9      JONATHAN L. HOCHMAN, ESQ.
        Schindler, Cohen & Hochman, LLP
10      (New York, New York)
            -and-
11      LAWRENCE S. GOLDMAN, ESQ.
        Law Offices of Lawrence S. Goldman]
12      (New York, New York)

13              Counsel for Defendant Kislin

14      RICHARD JONES, ESQ.
        Ashby & Geddes
15          -and-
        JOEL B. KLEINMAN, ESQ., and
16      DAVID H. GREENBERG, ESQ.,
        Dickstein Shapiro Morin & Oshinsky LLP
17      (Washington, D.C.)

18              Counsel for Moscovsky Delovoy
                         Mir Bank
19
        DAVID HERRINGTON, ESQ., and
20      VITALI ROSENFELD, ESQ.
        Cleary Gottlieb Steen & Hamilton
21      (New York, New York)

22              Counsel for Evraz Holding

23

24

25
```

```
                                                          3
 1  APPEARANCES CONTINUED:

 2      KAREN V. SULLIVAN, ESQ.
        Oberly, Jennings & Rhodunda, P.A.
 3          -and-
        WILLIAM DEVANEY, ESQ.
 4      Heard & O'Toole, LLP
        (New York, New York)
 5
            Counsel for Ural-Gorno Metalurgical
 6          Company and Iskander Madmudov

 7      KAREN V. SULLIVAN, ESQ.
        Oberly, Jennings & Rhodunda, P.A.
 8          -and-
        BRIAN MAAS, ESQ., and
 9      CAMERON MYLER, ESQ.
        Frankfurt Kurnit Klein & Selz PC
10      (New York, New York)

11              Counsel for Mikhail Chernoi

12      KAREN V. SULLIVAN, ESQ.
        Oberly, Jennings & Rhodunda, P.A.
13          -and-
        RICHARD J. SCHAEFFER, ESQ., and
14      PETER J. VENAGLIA, ESQ.
        Dornbush, Schaeffer, Strongin & Weinstein, LLP
15      (New York, New York)

16              Counsel for New Start Group
                         and Venitom Group
17
        COLLINS J. SEITZ, JR., ESQ., and
18      KEVIN F. BRADY, ESQ.
        Connolly Bove Lodge & Hutz LLP
19
                Counsel for Oleg Deripaska
20
        KAREN V. SULLIVAN, ESQ.
21      Oberly, Jennings & Rhodunda
            -and-
22      EDWARD SPIRO, ESQ.
        McRuillo, Abramowitz, Grand, Iason & Silberberg
23      (New York, New York)

24              Counsel for Nekrich

25
```

```
                                                          4
 1          THE COURT: Good afternoon, counsel. Who is on

 2  the line for the plaintiff today?

 3          MR. MARKS: Bruce Marks. I believe Peter

 4  Venaglia is on. And Gene Burd from our office in

 5  Philadelphia.

 6          MR. HEYMAN: And Kurt Heyman from The Bayard

 7  Firm.

 8          THE COURT: For defendants.

 9          MS. SULLIVAN: Your Honor, Karen Sullivan, I

10  represent six defendants, Kislin, Chernoi, Makmudov,

11  Ural-Gorno, New Start and Venitom. And the out-of-state

12  counsel is on the line as well.

13          THE COURT: Okay.

14          MR. JONES: Good afternoon, Your Honor. Richie

15  Jones at Ashby & Geddes for MDM Bank. Also on the line for

16  the same defendant is Joel Kleinman and David Greenberg from

17  Dickstein Shapiro in Washington.

18          THE COURT: Okay.

19          MR. DEVANEY: Good afternoon, Your Honor.

20  William Devaney from Heard & O'Toole in New York. I

21  represent Iskander Madmudov and Ural-Gorno.

22          THE COURT: Okay.

23          MR. MASS: Brian Mass from Frankfurt Kurnit

24  Klein & Selz in New York. I am with my colleague Cameron

25  Cameron Myler, we represent Mikhail Chernoi.
```

5

1  MS. COHEN: Lisa Cohen. I am with the firm
2  Schindler, Cohen & Hochman in New York. I represent Arnold
3  Kislin. With me is Lawrence Goldman of the offices of
4  Lawrence S. Goldman also in New York, also representing Mr.
5  Kisler, and also Jonathan Hochman.
6      MR. SCHAEFFER: Good afternoon, Your Honor.
7  Richard Schaeffer, Dornbush, Schaeffer, Strongin & Weinstein
8  in New York.
9      THE COURT: Good afternoon.
10     MR. SCHAEFFER: I am on the telephone with my
11 partner, Peter Venaglia. We together with Ms. Sullivan's
12 firm represent New Start and Venitom.
13     MR. SPIRO: Good afternoon. This is Ed Spiro
14 from McRullio, Abramowitz, Grand, Iason & Silberberg in New
15 York. We represent Mr. Nekrich.
16     MR. HERRINGTON: Your Honor, David Herrington,
17 Cleary Gottlieb, here with Vitali Rosenfeld, my colleague.
18 We represent Evraz Holding.
19     MR. SEITZ: Your Honor, C.J. Seitz. With me is
20 Kevin Brady. We represent Oleg Deripaska. We have no
21 co-counsel today. We are going it alone.
22     THE COURT: Okay. Is that it?
23     MS. SULLIVAN: Your Honor, Karen Sullivan. One
24 correction for the record. I also am local counsel for
25 Nekrich. Also, Mr. Oberly asked me to apologize to Your

6

1  Honor that he is not available.
2      THE COURT: I know where he is. He is on trial.
3  Okay. All right, then.
4      This is a jointly submitted letter. Is that
5  correct?
6      UNIDENTIFIED SPEAKER: Yes, Your Honor.
7      THE COURT: The issue presented, according to
8  the letter, is whether discovery should be stayed in this
9  matter pending the Court's taking the opportunity to
10 consider and rule on the defendants', I guess it's a
11 collective motion to dismiss. Is that right?
12     UNIDENTIFIED SPEAKER: Yes, Your Honor.
13     THE COURT: Or, in the alternative, to limit
14 discovery to expert depositions directed to the issues
15 raised in the motion to dismiss.
16     Plaintiff resists that proposition and wants to
17 go forward with full merits discovery. Is that correct?
18     MR. MARKS: No. Your Honor, the discovery, Your
19 Honor, that we seek, the limited discovery that we served is
20 directed at opposing defendants' forum non conveniens motion
21 and defendants' comity motion.
22     We are only looking at discovery at this point
23 to oppose the motion to dismiss. The letter doesn't
24 describe what we sought. But however Your Honor would like
25 us to proceed, I would be happy to describe it.

7

1      THE COURT: Sure. Why don't you go ahead. I am
2  trying to understand if there is a disagreement.
3      MR. MARKS: Sure, if I may.
4      THE COURT: Please.
5      THE COURT: Who is this?
6      MR. MARKS: This is Mr. Marks, Your Honor. We
7  have done two things. The first thing we did is we did our
8  Rule 26(a) and (b) disclosures. That is our witnesses and
9  our sources of evidence. And we have disclosed who we
10 thought would be the witnesses that we would call in our
11 case. And we make demand on defendants to make their
12 disclosures. And their position is that they should not
13 have to do that.
14     We believe, Your Honor, this is relevant because
15 if Your Honor applies the federal forum non conveniens test
16 that is set out in Gulf Oil and the progeny, one of the
17 issues is the private interest factor, and the defendants
18 would need to prove that litigating this case in the United
19 States would be oppressive and vexatious out of all
20 proportion to the plaintiffs' convenience.
21     THE COURT: Could I interrupt for a second. I
22 will let you continue. But wasn't that issue teed up and
23 presented in the Southern District? How does the -- is it
24 Koeltl?
25     MR. MARKS: Koeltl.

8

1      THE COURT: Go ahead and respond to my question,
2  please.
3      MR. MARKS: Judge Koeltl never required -- Judge
4  Koeltl stayed discovery within his discretion, and never
5  required the defendants in that case to disclose who their
6  witnesses are. Other judges, in cases that I have been in,
7  where defendants said that they wanted to file a forum non
8  motion, have said, listen, you have got to disclose who your
9  witnesses are so there is a record as to whether this is
10 oppressive or vexatious or not. So there has never been
11 anything of record as to who the defendants' witnesses would
12 be.
13     This case, Your Honor, is very different than
14 the case in New York because it's a much narrower case. In
15 New York, you had two different sets of plaintiffs. You had
16 aluminum plaintiffs who were contesting the corruption of
17 the bankruptcy of an aluminum plant in Russia. You had
18 creditors who were contesting the bankruptcy of the
19 Kachkanarsky plant, which is the same plant in this case.
20     Neither set of those plaintiffs, none of the
21 aluminum plaintiffs and none of the GOK creditors'
22 plaintiffs are parties to this case. This case only
23 concerns the shareholders of GOK, who have much, much
24 narrower claims that have to do with their shares which were
25 taken in what we allege to be influenced court proceedings

9

1  in which they were never served and they never participated.
2  And we believe that the disclosure of witnesses
3  on both sides would be helpful to Your Honor to deciding
4  whether the defendants meet their burden on vexatious. That
5  was the first discovery we did, Your Honor. We also served
6  interrogatories and requests for production of documents,
7  which went essentially to two main issues.
8  THE COURT: Why wasn't this case brought back in
9  the Southern District? Let's assume for a moment you have a
10 different set of plaintiffs and more discrete issues. Why
11 wasn't this brought back in the forum that was familiar with
12 the facts and the issues?
13 MR. MARKS: Your Honor, it is a good question.
14 The answer is simple. This case was filed in the Chancery
15 Court in Delaware because Delaware has a much different
16 forum non conveniens standard than the federal courts.
17 Delaware does not apply the balance in the Gulf Oil test.
18 Delaware requires the plaintiffs to meet an overwhelming --
19 to prove that the litigation in Delaware would possess an
20 overwhelming hardship on them and would require them to
21 prove that with particularity.
22 It wasn't our choice. And it's really sort of
23 one of the odd and ironic things that has happened, that the
24 defendants in our view have removed this case to Federal
25 Court not because they want to be in Federal Court but

10

1  because they now want to have it dismissed again for forum
2  non. And one of the arguments that we will be raising is
3  they should be estopped from asserting that this Federal
4  Court is an inconvenient forum because they are the ones who
5  chose it in the first place.
6  There is a Supreme Court case, Your Honor, it's
7  referenced in one of the letters that we sent you. I am
8  going to butcher the name of it. I could find it on my
9  computer. It is a Chinese name, like Chick Woo or
10 something, where the Supreme Court of the United States held
11 that if a case is dismissed in Federal Court for forum non,
12 the plaintiffs have the right to bring it in state court and
13 it's up to the state court, based on its forum non standard,
14 if it has one, to decide whether it wants to hear it.
15 That is the reason we brought this in the
16 Delaware Chancery Court, which is where we had intended to
17 litigate it.
18 THE COURT: Okay. Go ahead and continue with
19 your discussion about discovery.
20 MR. MARKS: Sure. We served very limited
21 interrogatories and requests for production of documents,
22 Your Honor, which were designed to do two main things. One
23 was to help us identify again witnesses and sources of
24 evidence. Several of the defendants are Delaware
25 corporations. We wanted to find out who the officers and

11

1  directors and the beneficial owners of those corporations
2  are. Maybe they don't have them, because one of our
3  arguments is that they may be just using these as shell
4  companies. But we would like to find out who those people
5  are because those people we believe would be witnesses that
6  we would call.
7  We have also alleged in the complaint, Your
8  Honor, that Delaware was the forum of choice for the
9  defendants to form their corporations that were used in
10 their money laundering activities. And we identified by
11 name 19 corporations which were formed in Delaware which we
12 allege to be involved in the international money laundering
13 that is set forth in the complaint.
14 In our discovery, we have also sought to
15 identify the officers and the directors of those companies,
16 because those people would be relevant witnesses. And along
17 with that we sought the Court for documentation that would
18 identify who these people are.
19 The second type of discovery, Your Honor, that
20 we sought to take is discovery targeted at whether the
21 defendants have paid bribes or otherwise corrupted
22 government officials in Russia. One of the issues that Your
23 Honor, we believe, would need to find under forum non under
24 the federal test is whether Russia is an adequate forum.
25 THE COURT: We are going to put the Russian

12

1  judicial system on trial here?
2  MR. MARKS: I don't believe that the Russian
3  judicial system as a whole would be on trial.
4  THE COURT: I was being a little facetious
5  obviously, counsel. Wasn't this issue also litigated before
6  Judge Koeltl?
7  MR. MARKS: There would be two responses to
8  that, Your Honor.
9  Judge Koeltl addressed the issue of the
10 corruption of the bankruptcies and discussed that -- of the
11 aluminum plant, discussed that in his opinion. He also
12 discussed the issue of the corruption of the Kachkanarsky,
13 GOK, bankruptcy. Judge Koeltl in his opinion never
14 discussed, in fact, never even referenced the expert report
15 that was submitted on behalf of the GOK shareholders, that
16 their shares had been taken in proceedings that had been
17 corrupted.
18 I think the overwhelming problems that Judge
19 Koeltl saw in terms of unwinding the bankruptcies was, at
20 least as reflected by his opinion, was a substantial factor
21 in his decision to grant the motion. But Judge Koeltl never
22 addressed the issues as to whether the proceedings for where
23 the shareholders lost their shares were influenced.
24 THE COURT: Was that because the issue wasn't
25 presented to him?

13

1   MR. MARKS: It was presented, Your Honor. We
2   submitted the expert report of Anitoli Klemonov (phonetic),
3   who said -- and I believe, also, he is a Russian attorney.
4   I also believe it was discussed in Judge Seitz (phonetic),
5   he is a former Russian Judge, he also submitted an expert
6   opinion and then some supplemental filings. In all of those
7   filings, they opined that the only explanation for these
8   court decisions were ordered to be taken from the possession
9   of the GOK shareholder plaintiffs and given to other people
10  when they were not notified or were not parties would be
11  influenced. Defendants submitted no expert report testing
12  that.
13          THE COURT: Judge Koeltl did not discuss this in
14  his opinion?
15          MR. MARKS: That's correct, Your Honor.
16          THE COURT: Did you complain about that to the
17  Second Circuit?
18          MR. MARKS: We did, Your Honor.
19          THE COURT: What did the circuit have to say?
20          MR. MARKS: It didn't address it, Your Honor.
21  It was also a non-published and non-precedential opinion.
22          THE COURT: But this issue was raised in the
23  Second Circuit?
24          MR. MARKS: In our briefing, Your Honor, I
25  certainly -- I believe it was raised. I am certain that it

14

1   was raised. But I am even more certain it wasn't discussed
2   in the Second Circuit opinion.
3           THE COURT: You will forgive me, it seems like
4   you are asking, at least on this particular point, the
5   corruption of governmental officials in Russia, you are
6   asking a judge of concurrent jurisdiction to review the
7   decision of another District Judge. No?
8           MR. MARKS: I don't think so, Your Honor,
9   because there has also been new developments in the
10  litigation in Russia -- to be honest with Your Honor, we
11  didn't want to ask a federal judge to do anything. That's
12  why we filed this case in Delaware.
13          THE COURT: I understand that. But, now,
14  assuming for a moment, let's assume that you don't prevail
15  on your estoppel argument, just for purposes of argument.
16  You are before a federal forum that is going to apply the
17  same rules that the previous federal judge was obliged to
18  apply, and apparently, at least in the view of the -- I
19  gather his decision was affirmed in the Second Circuit.
20  Right?
21          MR. MARKS: It was affirmed, Your Honor.
22          THE COURT: So we have now a District Judge, and
23  now at least an appellate panel, circuit panel, who have
24  said that the District Judge was right.
25          MR. MARKS: Your Honor, believe me, I understand

15

1   that. But I think the other point that we would be raising
2   is that subsequent to that decision, there have been
3   substantial events that have taken place in Russia, in
4   particular, in the Moskow arbitrage courts, where this case
5   would have been -- we would have to file this case if it
6   were re-brought in Russia. I am talking about the Hugos
7   (phonetic) matter, where, I mean, the U.S. Government, at
8   high levels, and frankly the opinion of most of the world is
9   that those courts are influenced and it would those precise
10  courts and judges who were influenced in the Hugos matter
11  within the year. And we are prepared, you know, to identify
12  judge by judge, and that would be where we would be being
13  sent to.
14          There is a recent opinion of the High Court in
15  London denying extradition from England to Russia for some
16  of the Hugos people because of the finding that those courts
17  can be influenced.
18          So we would certainly be putting to Your
19  Honor -- again, Your Honor, our burden is not for the Court
20  to find that those courts are influenced. All we seek to do
21  is to convince Your Honor that defendants do not meet their
22  burden of showing that those courts would be adequate.
23          THE COURT: Did you file a motion to remand this
24  matter back to the Chancery Court here in Delaware?
25          MR. MARKS: We have not.

16

1           THE COURT: I am curious as to why not. Perhaps
2   you have conceded that the defendants' removal is
3   bulletproof, is not capable of being successfully attacked?
4   I am not trying to tell you how to practice law. I am
5   trying to understand what I am looking at here, because,
6   quite frankly, I am not certain, and I don't want to make
7   any unfair comments that might sound like aspersions or
8   accusations, it seems like there is a fair amount of forum
9   shopping going on here that I am not sure is appropriate.
10          I am sure there is some people on the other side
11  of this call who might be snickering right now and saying,
12  "Well, duh," as my daughter would say. But I got to tell
13  you, Mr. Marks, it is sounding that way. It is looking that
14  way.
15          MR. MARKS: Forum shopping in what sense?
16          THE COURT: You didn't like the result you got
17  in the Southern District, you didn't like the result you got
18  in the Second Circuit.
19          MR. MARKS: Let me say this, Your Honor: If --
20  the forum shopping is really by defendants because they
21  chose to remove this to the Federal Court. I suspect that
22  perhaps a motion to remand could be filed by us because --
23          THE COURT: That begs the question as to why
24  you filed in Delaware -- I guess your answer would be, we
25  filed in Delaware because there is a different standard in

**17**

1  Delaware law that we wanted to have applied to this case.
2  MR. MARKS: That's correct, and the Supreme
3  Court says we can do that.
4  THE COURT: That is forum shopping. I don't
5  care what my brethren colleagues say on the Supreme Court.
6  I guess they have said it is appropriate.
7  MR. MARKS: Your Honor, the very definition of
8  where a plaintiff chooses its forum is forum shopping.
9  THE COURT: I guess so, okay.
10 MR. MARKS: That is something that a plaintiff
11 is entitled to do.
12 THE COURT: Fair enough.
13 I have interrupted. Go ahead. We were talking
14 about the second batch of discovery that's being sought
15 after here.
16 MR. MARKS: The second batch of discovery, we
17 have had limited interrogatories that were directed to
18 identifying whether the plaintiffs have, you know, paid
19 money to Russian government officials, et cetera, because we
20 believe that they have. If they answer the interrogatories,
21 it would be subject to, obviously, the duty to tell the
22 truth and so forth. If they admit to having done that, we
23 think it would be unfair to send us back to a forum where we
24 would run that continued risk.
25 THE COURT: Okay.

**18**

1  MR. MARKS: Of course, they are the depositions
2  of their experts, although it doesn't really appear that
3  that is in dispute,
4  THE COURT: All right. Who is going to speak on
5  behalf of the numerous defendants who are on this call?
6  MS. COHEN: Your Honor, Lisa Cohen.
7  The one thing that Mr. Marks did not address,
8  and I was listening carefully, is the fact that many of the
9  requests that he has propounded to us are exactly the same
10 requests that he made, that he and his co-plaintiffs made in
11 the Southern District of New York, word for word. Those
12 requests were denied first by the Magistrate Judge, the
13 Honorable Magistrate Judge Maas. Then plaintiffs objected
14 to Judge Koeltl. Judge Koeltl denied them again. They
15 renewed their request to Judge Koeltl. Judge Koeltl denied
16 them again. And they raised on appeal to the Second Circuit
17 after they lost on the forum non conveniens ground that they
18 had been denied discovery in the trial courts and that had
19 they only received that discovery, they would have won their
20 forum non. Of course, the Second Circuit rejected that
21 argument as well.
22 This is their fifth bite at the apple on these
23 very same discovery requests, the documents that Mr. Marks
24 is asking about concerning the owners, the beneficial
25 owners. The documents he was asking about concerning the

**19**

1  ownership of shares, that's all been requested before. They
2  should not be permitted to have a fifth bite at this apple.
3  THE COURT: Okay.
4  MS. COHEN: Now, Your Honor's questions have
5  gone over most of what I had to say today. The only other
6  thing that I need to add, I believe, is that removal at this
7  point is bulletproof. It is time-barred to seek to remand.
8  That is absolutely clear.
9  THE COURT: So your point, Ms. Cohen, is that
10 this issue has been decided.
11 MS. COHEN: Not only has this issue been
12 decided, the entire case ought to be dismissed. Regardless
13 of whether it was initially brought in state court,
14 defendants have a right to remove. We have exercised that
15 right. It's in Federal Court now and subject to federal
16 procedural rules. Federal procedural rules includes forum
17 non conveniens.
18 This case ought to be dismissed. There is
19 estoppel. And, in addition, these very requests have been
20 denied four times in the past.
21 Now, if Your Honor wants to go further than that
22 and review this de novo, Supreme Court precedent is that
23 where a defendant has made a forum non conveniens motion
24 such as the one that defendants have made, permitting
25 discovery or even investigation into the very facts would

**20**

1  defeat the purposes of a forum non conveniens motion. And
2  for that reason every decision that we have found has stated
3  that such motions are generally decided on affidavits only.
4  For that, there are two Supreme Court decisions directly on
5  point. And if Your Honor is interested, I could give you
6  the cites.
7  THE COURT: Actually, I want to give other
8  defense counsel an opportunity to speak. But I might be
9  interested in having briefing done on this discrete issue,
10 the issue of these requests for discovery. But go ahead,
11 Ms. Cohen.
12 MS. COHEN: There is also a Third Circuit
13 decision directly on point.
14 Numerous decisions have agreed that discovery is
15 entirely unnecessary to decide a forum non conveniens
16 motion. In fact, our research has found that in the past
17 five years, no decision has granted anything more than
18 expert depositions. Not a single discovery request has been
19 permitted, and certainly not the broad discovery that
20 plaintiffs are now seeking.
21 By the way, we disagree with Mr. Marks on his
22 characterization of his discovery requests. They are not
23 forum non related. They are certainly intertwined with the
24 merits. And in fact, I should also point out that in
25 another case that Mr. Marks recently lost on forum non

21

1  conveniens grounds, where Mr. Marks served almost the
2  identical discovery requests to the ones he is making now,
3  the Court had this to say in denying the discovery that Mr.
4  Marks sought.
5      Norex, which was the plaintiff there, is seeking
6  to do indirectly what it cannot do directly, obtain
7  discovery germane to the merits of the underlying action.
8      Now, I am aware of three decisions granting
9  forum non conveniens motions in favor of Russia without any
10 discovery whatsoever. If Your Honor is interested, I can
11 give you the cites to those. They are all decisions that
12 have come down within the last five years. And that, of
13 course, makes sense, because the complaint itself, the
14 motions, even Mr. Marks' own Rule 26 disclosures show that
15 the connection to the United States is so tangential that no
16 discovery that plaintiffs seek will change that. The
17 overwhelming (inaudible) of this case is in Russia.
18     Moreover, there are nearly a hundred Russian
19 court decisions, probably more since we filed our motion,
20 involving the same issues that plaintiffs would raise here.
21     THE COURT: Okay. Other counsel that would like
22 to be heard?
23     MS. COHEN: Your Honor, one more point I would
24 like to make, which is that it is true that in the Base
25 Metal Trading case and in the Norex Petroleum case, expert

22

1  depositions on foreign law issues were permitted. There the
2  plaintiffs had submitted their own expert reports that
3  offered opposing views to the expert reports submitted by
4  defendants.
5      And it is true that in support of our forum non
6  conveniens motions defendants have submitted two expert
7  declarations, one by Professor Stevan (phonetic), who is a
8  professor at the University of Virginia Law School, and one
9  by Professor Levidov (phonetic), who is a professor of law
10 and the former head of the private international and civil
11 law department at the Moskow Institute for International
12 Relations.
13     Now, defendants have not submitted any expert
14 report challenging our declarations. And they have not
15 asked for depositions of our experts. But even if they did,
16 their request ought to be denied because the opinions
17 offered by these two experts are largely the same opinions
18 that defendants submitted in the Base Metal Trading case.
19 In fact, Professor Stevan was one of the defendants'
20 experts. Plaintiffs have already deposed him.
21     The only significant difference between his
22 opinion now and his opinion in the Base Metal case is that
23 he now discusses decisions that have been rendered in Russia
24 on the relevant issues since his prior opinion. And
25 Professor Levidov states that he has read the prior opinion

23

1  of defendants' experts and his opinion does not differ in
2  substance.
3      So plaintiffs have taken those expert
4  depositions already. They don't even need that before Your
5  Honor decides this motion, and the Supreme Court law says no
6  expert depositions are required, let alone a single
7  discovery request like the discovery requests that
8  plaintiffs seek here.
9      THE COURT: What is defendants' view, Ms. Cohen?
10 Is this the same case that was brought in the Southern
11 District?
12     MS. COHEN: Absolutely.
13     THE COURT: Are there different parties before
14 this Court?
15     MS. COHEN: Plaintiff, Mr. Marks responded to
16 Your Honor by saying that this is a subset of the
17 plaintiffs. That doesn't matter. That doesn't change any
18 collateral estoppel, direct estoppel or res judicata effect.
19     There are, of the defendants, I might add, eight
20 of them were present in New York. The fact that there were
21 three new defendants also does not change the direct
22 estoppel effect.
23     MR. HERRINGTON: I think all four of the
24 plaintiffs here were plaintiffs in the Southern District and
25 are asserting the same claims here as they asserted in the

24

1  Southern District.
2      THE COURT: How can it be, then, that this
3  matter should take up the time of counsel for both parties
4  and a whole other set of federal courts?
5      UNIDENTIFIED SPEAKER: Your Honor, that has been
6  caused by defendants removing.
7      THE COURT: Well, Ms. Cohen, do you want to
8  react to that?
9      MS. COHEN: Yes, Your Honor. I think I said it
10 before. We have a right to remove.
11     THE COURT: That's what I thought you said. Mr.
12 Marks, do you disagree?
13     MR. MARKS: I question that, Your Honor. I
14 don't think they are removing for a bona fide purpose. They
15 are removing simply to have it dismissed from the Federal
16 Courts.
17     THE COURT: Is that the standard that they have
18 to remove for a bona fide purpose to remove? I don't think
19 that is the standard for removal, is it?
20     MR. HERRINGTON: Your Honor, these are federal
21 RICO claims that belong in Federal Court.
22     THE COURT: That is for sure. Doesn't anybody
23 out there understand it has to be for a bona fide purpose,
24 that is the standard?
25     MS. COHEN: No, Your Honor.

25

1  THE COURT: It is just stated by counsel -- who
2  was that that was just speaking, pointing out we feel a
3  federal question?
4  MR. HERRINGTON: David Herrington.
5  THE COURT: Just for the record, so we keep
6  everybody straight, if you would announce yourself.
7  How about that, Mr. Marks. This is a federal
8  question.
9  MR. MARKS: Your Honor, it's a federal question.
10 If they want to have a federal question resolved in Federal
11 Court, then they shouldn't be seeking to have it removed for
12 forum non. I think --
13 THE COURT: Why not? They have had it resolved
14 in Federal Court, in their view.
15 MR. MARKS: They had it resolved on forum non.
16 But the Supreme Court says -- it was a Jones Act case, so it
17 involved a federal claim. The Supreme Court says, if you
18 file a claim in Federal Court and it's dismissed for forum
19 non, you have a right to file it, refile it in state court
20 and have the state court decide whether it wants to hear it.
21 And that's what we want them to do. I don't think that they
22 have a right to frustrate our right to have the claim heard
23 a Court in the United States. I think they are trying to
24 circumvent that right.
25 We have no problem if this case gets remanded

26

1  back to Chancery Court where we brought it and where it
2  should have been -- where we believe it should have been in
3  the first place. But if plaintiffs really have a bona fide
4  interest in having the RICO claim a Federal Court, they
5  shouldn't be removing it simply to then say to Your Honor
6  that your Court is not convenient. It is either convenient
7  for them to litigate and we will litigate the case on the
8  merits here, or if they don't think the Federal Court is
9  convenient, we should be back in state court.
10 THE COURT: That's what they have already said,
11 that we don't think -- and they will speak for themselves in
12 a moment -- but haven't they said, Mr. Marks, in the
13 Southern District of New York, that we think the federal
14 forum, this matter should be decided under the rules of a
15 federal forum and the federal forum, our position before
16 that forum is that it's not convenient, among other things,
17 and that federal forum has said, Eureka, you are right.
18 Now here they are, confronted by plaintiffs
19 again in another jurisdiction entirely, you didn't refile in
20 the state courts of New York. You came to Delaware.
21 MR. MARKS: That may be true, Your Honor. Once
22 it was dismissed from Federal Court we had the right to file
23 it in whatever state had jurisdiction and we have --
24 THE COURT: You have the right to file wherever
25 you can afford to pay a filing fee. But the issue is

27

1  whether you have the right to stay in front of that forum.
2  And they, following the rules, the defendants, said, no,
3  this is not where this matter should be litigated, it should
4  be litigated a federal forum. After all, there is a federal
5  question. You did not file that motion to remand this
6  matter to the Court of Chancery here in Delaware.
7  MR. MARKS: Because our position is if they have
8  chosen this Court, they shouldn't be able to say it is
9  inconvenient. They chose it. We didn't.
10 THE COURT: No. They may have chosen this forum
11 because they wanted the opportunity to do just what they are
12 doing and say, Judge, this has already been decided in
13 Federal Court, you need to throw it out.
14 MR. MARKS: What's the point of that, Your
15 Honor? We file in state court again.
16 THE COURT: You could stay on that
17 merry-go-round forever, I guess.
18 MR. MARKS: I think the import of the Supreme
19 Court case is that you can't have this merry-go-round. If
20 defendants decide they don't want to be in Federal Court, so
21 be it. Then we have a right to litigate it in state court.
22 THE COURT: Ms. Cohen, what do you say to that?
23 The plaintiff is arguing that you are defeating your own
24 interests, essentially, by continuing to remove.
25 MS. COHEN: Your Honor, two things. I think Mr.

28

1  Marks is misreading the Supreme Court cases that he is
2  referring to. In those cases, which were Jones -- there
3  were two of them, which were Jones Act cases, there is no
4  right to remove once the case is filed in state court. So,
5  therefore, the defendants had no right to remove to Federal
6  Court. Here we have a right. RICO is not the same as the
7  Jones Act. We had a right to remove. We exercised that
8  right.
9  Let me say two other things. It's exactly to
10 end the merry-go-round that we respectfully requested an
11 injunction in our motion. We think enough is enough. They
12 have had their day in court and I think Your Honor is
13 correct that this is a waste of the Court's time, it's a
14 waste of the litigants' time. It is very expensive to have
15 all of these parties, all of these attorneys fighting the
16 same battle over and over again.
17 THE COURT: Just on this call alone.
18 MS. COHEN: We think that's not fair.
19 Finally, if Your Honor agrees, might we suggest
20 a procedure to simplify this?
21 THE COURT: Sure.
22 MS. COHEN: To have the defendants brief just
23 the direct estoppel issue on an expedited basis? That way
24 Your Honor can decide just that, because it's clear, and I
25 think plaintiffs have admitted, that no discovery is

29

1  warranted at all on that issue. And we can put aside the
2  question of whether discovery is warranted on the forum non
3  conveniens, which of course we think is not, Mr. Marks is
4  saying it is. But we can put that issue entirely aside. So
5  that we can decide whether this case should be dismissed on
6  the pure and simple grounds that it has been decided
7  already.
8       THE COURT: Are other colleagues of yours, Ms.
9  Cohen, in accord with that view, that process that you are
10 recommending?
11      MS. COHEN: I don't think I have polled them.
12      THE COURT: Let me ask it this way. Presuming
13 every tone has heard the proposal that has just been made --
14 and I will give Mr. Marks an opportunity to respond -- is
15 there anyone who objects to that?
16      Silence in the land.
17      Mr. Marks, what is your reaction to the proposal
18 made by Ms. Cohen?
19      MR. MARKS: Your Honor, I would like to think
20 about it and take instruction from my clients.
21      THE COURT: You have got 30 seconds to think
22 about it, Mr. Marks. If you want to fashion an objection to
23 it, I am willing to listen. But I think it makes a lot of
24 sense.
25      MR. MARKS: I understand, Your Honor.

30

1       THE COURT: If it's, in fact, the case, as has
2  been represented, that you do not feel you need discovery,
3  additional discovery to deal with that issue, I would just
4  as soon have it briefed.
5       MR. MARKS: We wouldn't need discovery to reply
6  to the estoppel issue.
7       THE COURT: Then that's what we will do.
8       Ms. Cohen, did you have a briefing schedule in
9  mind?
10      MS. COHEN: Whatever is convenient for the Court
11 is fine with us, Your Honor.
12      THE COURT: Why don't we make it 30, 30 and 15.
13      MR. MARKS: They have already briefed it.
14      MS. COHEN: It is already part of the brief that
15 is before Your Honor.
16      THE COURT: Is it part of the 13 volumes?
17      MS. COHEN: It is the first point in the opening
18 briefs.
19      THE COURT: The first point in the opening
20 briefs, okay.
21      MS. COHEN: After the introduction.
22      THE COURT: Now, I note in the letter that the
23 plaintiffs' deadline, I guess we are talking about the same
24 thing, for answering, is June 30. How is it that the
25 plaintiffs' deadline is June 30?

31

1       MR. MARKS: Your Honor, the defendants, I don't
2  know, had four or five months to prepare their motions, and
3  we envisioned that in order to oppose the forum non motion,
4  and indirectly the comity motion, that we would need some
5  discovery, including expert discovery. So that's why we
6  came up with 90 days, as was discussed in our last
7  conference.
8       THE COURT: Did we discuss this?
9       MR. MARKS: Yes.
10      MS. COHEN: The original schedule was 90 days.
11      THE COURT: That is fine. I didn't remember.
12 Now you are only going to need to respond to Part 1, that is
13 the discrete issue of direct estoppel, Mr. Marks. So how
14 long do you need?
15      MR. MARKS: Let me check the calendar, Your
16 Honor, if you don't mind.
17      THE COURT: No. Go ahead.
18      MR. MARKS: I have some travel.
19      THE COURT: I understand. I am going to put
20 aside the motion -- I will call it the motion to dismiss
21 that's been previously filed, other than the directed
22 estoppel portion of that motion. Is that what we are in
23 agreement with, Ms. Cohen?
24      MS. COHEN: Yes, Your Honor. Is it more
25 convenient for us to file it as a separate brief?

32

1       THE COURT: It probably would be. As long as
2  you leave the appendices out of here. Number one, it is a
3  motion --
4       MS. COHEN: I will go back and double-check. I
5  don't think that the appendices are even required. I think
6  there is a single exhibit.
7       THE COURT: Sort of makes me wonder whether I
8  should be handling it as a motion for summary judgment. It
9  would probably be, just in terms of handling the paperwork,
10 a little more convenient to do as you suggest.
11      MS. COHEN: We will refile it.
12      THE COURT: Mr. Marks.
13      MR. MARKS: Today is the 13th. Your Honor, I
14 have got some travel. I would ask if we could have until
15 May 27th.
16      THE COURT: Anybody have any problem with that?
17 The Court does not. Okay. May 27th it is.
18      And then your reply, Ms. Cohen, how many days
19 would you like to make your reply?
20      MS. COHEN: Thirty days.
21      THE COURT: We will give you 30 days. We will
22 send out a briefing schedule.
23      MR. MARKS: Then our need to reply to the other
24 aspects would be suspended.
25      THE COURT: Yes. The motion otherwise is

```
 1  suspended in all respects. We will take up the issue of
 2  direct estoppel first.
 3          Anybody have anything else?
 4          Counsel, have a good day.
 5          (Counsel respond "Thank you.)
 6          (Conference concluded at 2:45 p.m.)
 7  Reporter: Kevin Maurer
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```