# FINGER & SLANINA, LLC
## ATTORNEYS AT LAW

David L. Finger, Resident, Wilmington Office:
One Commerce Center, 1201 Orange St., Suite 725
Wilmington, Delaware 19801-1155
Ph: (302) 884-6766 | Fax: (302) 984-1294
E-mail: dfinger@delawgroup.com
www.delawgroup.com

July 7, 2008

**Via E-Filing**
The Honorable Gregory M. Sleet
United States District Court
District of Delaware
844 King Street
Wilmington, DE 19801

Re:   **Davis International LLC, et al. v. New Start Group Corp., et al.**
      C.A. Nos. 04-1482 & 04-1483 (GMS)

Dear Judge Sleet:

I respectfully write on behalf of the plaintiffs (the "Davis Plaintiffs") (1) to transmit a new and relevant English court decision in *Cherney v. Deripaska,* Queens' Bench Division, Commercial Court, Case No. 2006 Folio 1218 (July 3, 2008) ("*Cherney*"), attached hereto, and (2) to request stay of the Court's decision on the pending anti-suit motion until the Davis Plaintiffs have had time to study the decision and formulate their position on impact of this decision on the pending litigation.

As explained below, the *Cherney* decision demonstrates fraud on this Court, as well as on the U.S. District Court for the Southern District of New York (the "New York District Court"), which heard the case of *Base Metal Ltd v. Russian Aluminum.* In both this action and the *Base Metal* action, the defendants sought dismissal on the ground of *forum non conveniens*, and claimed that Russia could provide a fair and adequate venue for the litigation. However, in *Cherney*, it is revealed that at least one defendant in the present action knew all along that Russia could *not* and *cannot* provide a venue for a safe and fair action against these defendants, and provided detailed evidence of such fact, evidence which convinced the English courts of the corruption in the Russian courts and the very real dangers of attempting to litigate in Russia.

The *Cherney* case was filed in 2006 by Mikhail Cherney (who is a defendant in the present action, albeit with his last name spelled "Chernoi") against Oleg Deripaska (another defendant in the present action). Because court filings are not accessible to the public in England, the Davis Plaintiffs were not aware of the filings made in the case until *Cherney* was reported in the media on July 4, 2008 and the ruling became available on the Internet. As described below, in England, Cherney has <u>successfully</u> taken the exact <u>opposite</u> position on the adequacy of the Russian courts which he took in *Base Metal Ltd v. Russian Aluminum* and before this Court, now asserting that in cases involving Deripaska,

The Hon. Gregory M. Sleet
July 7, 2008
2

the Russian courts are too corrupt to render a fair judgment, and, further, Deripaska would attempt to murder him or have false criminal proceedings brought against him if he returned to Russia.

Based on this ruling, and on evidence submitted in England which defendants Cherney and Deripaska should be required to produce, the Davis Plaintiffs anticipate seeking various relief, which may include: (1) immediate denial of the anti-suit motion which is of particular importance to the Davis Plaintiffs because the Court of Chancery has stayed it proceedings on the non-RICO claims until this motion is decided; (2) modification of this Court's decision granting the *forum non conveniens* motion based on collateral estoppel in light of the discovery of new evidence referenced in *Cherney*; (3) lifting the stay of discovery on issues raised by *Cherney* and the merits; and (4) sanctions for a fraud perpetrated on this Court by at least Cherney. It is an affront to our judicial system that Cherney has maintained the anti-suit motion, which <u>requires</u> that Russia be an adequate forum, before this Court while <u>simultaneously</u> taking the <u>exact opposite</u> position in sworn statements and expert reports in England.

### A.     The *Cherney* Decision

Cherney filed claims against Deripaska based on a contract concerning their joint holdings in the aluminum and other businesses (which the Davis Plaintiffs believe included the vanadium plant at issue in the case before this Court). Cherney alleges that he had an agreement with Deripaska by which Deripaska paid him $250 million for part of his interest in Russian Aluminum ("Rusal") and Deripaska held 20% of its shares in trust for him, which would be worth over $1 billion today. *Cherney,* ¶¶ 5-8.

In contrast, Deripaska alleges that he paid the $250 million because he was extorted by Cherney and Anton Malevsky and does not hold shares in Rusal in trust for Cherney. *Cherney,* ¶9, 95. According to Deripaska, Cherney and Malevsky were associated with the Ismailovo mafia, which threatened to murder him. *Cherney,* ¶59-60. Cherney and/or Deripaska produced documents evidencing Cherney, Deripaska, Malevsky (using his brother as a nominee), and Iskander Makmudov, a defendant instantly, held common ownership in metals assets. *Cherney,* ¶64-65.

The Davis Plaintiffs alleged that Cherney, Malevsky, and Makmudov were associated with the Ismailovo mafia and threatened to murder their principals, Joseph Traum and Jalol Khaidarov, if they returned to Russia. Complaint, ¶¶50, 54-57, 69-70, 74, 118-120, 121-126. This was one of the reasons utilized to oppose Cherney's *forum non* motion in the U.S. proceedings.

The Hon. Gregory M. Sleet
July 7, 2008
3

        **B.**      **Deripaska's Evidence on Cherney**

According to Deripaska's evidence, Cherney is associated with Malevsky and other members of Russian organized crime groups. *Cherney*, ¶146, 148, 150. According to Deripaska, these Russian criminal organizations extorted the above $250 million payment to Cherney from him. *Cherney*, ¶95.

        **C.**      **Cherney's Evidence of Deripaska**

According to Cherney's evidence, Deripaska is associated with Malevsky and other members of Russian organized crime groups. *Cherney*, ¶151, 152. Cherney alleges that Deripaska has strong and unique ties with the Russian government that permit him to influence criminal prosecutions and court case. *Chernoi*, ¶243-246. Cherney appears to have alleged in his witness statements that if he litigated a case against Deripaska in Russia, Deripaska would attempt to (1) murder him; (2) have false criminal charges brought against him; and (3) improperly influence the Russian courts. *Cherney*, ¶ 199-202.

        **D.**      **Discussion of *Base Metals* and *Davis***

Deripaska moved to dismiss for *forum non conveniens* to Russia, arguing that Cherney was estopped from arguing the Russian courts are inadequate based on the decisions in *Base Metals* granting his *forum non conveniens* motion and this Court granting the *forum non conveniens* motion based on collateral estoppel. <u>The English court concluded that Cherney supported the *forum non conveniens* motions not because he believed Russia was an adequate forum, but because the Base Metal and Davis Plaintiffs could not get a fair trial in Russia if Deripaska and Rusal were defendants:</u>

> 190 ... Mr Cherney refers to the New York proceedings and states that the application to dismiss was led by Mr Deripaska, that he played no active role in the litigation and had no substantive discussions with his lawyers and was "*not approached by anyone about these issues*". Mr Deripaska was responsible for dealing with claims by third parties and "*I would have followed any direction he made in this regard*". He says that he assumes that Mr Deripaska and others assumed that if the claim was dismissed on jurisdictional grounds there was little prospect that the plaintiffs would pursue any claim in Russia, because they would have felt that they would not get a fair trial there with Mr Deripaska as a defendant; and that he never expected there to be any Russian proceedings.

The Hon. Gregory M. Sleet
July 7, 2008
4

> 191. That neither of Mr Cherney's very experienced legal counsel communicated with him, either directly or indirectly, before giving, under penalty of perjury, consent to Russian jurisdiction on his behalf is not credible ...
>
> 192. I find it perfectly credible that both Mr Cherney and Mr Deripaska calculated that if the actions were stayed the claims would never go ahead in Russia.
>
> 193. [Deripaska] submits that in circumstances where Mr Cherney has persuaded the US Courts to stay an action against him on the footing that he is amenable to Russian jurisdiction, he can scarcely be heard to say that Russia is not an appropriate forum for his dispute with Mr Deripaska. There is undoubted force in this submission. It is, however, material to note that, in the *Base Metal* proceedings, in which Rusal is the first defendant, Mr Cherney was on the same side as Mr Deripaska. They were alleged to have been parties, together with Mr Makhmoudov, to a massive racketeering scheme, involving criminal acts including fraud, bribery of the local governor to the tune of $ 850,000, violence, murder, attempted murder, and threats to murder, in order to take over and monopolise the Russian aluminium industry ...
>
> 195 ... I have little doubt that he and Mr Deripaska reckoned (correctly) that the US plaintiffs would never go to trial in Russia. Mr Cherney's own evidence is that he assumed that that is what Mr Deripaska thought and that the claimants would not want a trial in Russia because they would have felt that they would not get a fair trial there.
>
> 196. If he and Mr Deripaska obtained a forum conveniens dismissal, and resisted the contention that the Russian forum was unsuitable on the grounds, inter alia, of corruption, when they knew that the Plaintiffs would not get a fair trial, the forum conveniens motion was a cynical ploy and quite possibly an abuse of the process of the District Court.

In other words, Cherney – and most likely Deripaska and Makmudov, committed a fraud on the New York District Court and this Court by moving for *forum non conveniens* dismissal to Russia not because they believed that Russia was an adequate forum, but because of the <u>exact opposite</u>: they knew the plaintiffs, including the Davis Plaintiffs, could not get a fair trial there if Deripaska was a defendant.

The Hon. Gregory M. Sleet
July 7, 2008
5

### E.  The *Forum Non Conveniens* Decision

The English court accepted Cherney's evidence and position opposing *forum non* dismissal, finding:

- Assassination: "The risk of a successful assassination seems to me likely to be greater in the place where the person or persons who might wish to have him killed reside and where the requisite personnel and materiel are likely to be more readily available. This is particularly so if Mr Cherney is engaged in a public trial ... I do, however, consider that Mr Cherney has a well founded fear for his safety and that he will be more at risk in Russia than England." *Cherney*, ¶199.

- False Arrest: "It seems to me that there is a significant likelihood of Mr Cherney being prosecuted if he returns and a real possibility that Mr Deripaska might use his influence, or his ability to orchestrate feeling against Mr Cherney, to encourage the authorities to take that course. I refer below to the evidence of Professor Bowring (see paragraphs 213-4 below) which appears to me to lend substantial support to that conclusion. There is reason to suppose that Mr Deripaska or his advisers have already conceived a plan to denigrate Mr Cherney in this country (see paragraph 249 below) and in Israel (see paragraph 153 above); and there appears to be far more scope for such a plan and for a prosecution in Russia. Further there is a distinct possibility that any charges would be trumped up." *Cherney*, ¶201.

- No Fair Trial: Cherney submitted the legal expert witness statement of Professor William Bowring and apparently his own witness statements that he could not obtain a fair trial in Russia because of corruption and undue influence on the courts by Deripaska. The court found based on Cherney's submissions:

    o "The available evidence indicates that Mr Cherney will not obtain a just and expeditious hearing in the Russian arbitrazh courts and that there is a strong likelihood that he will be arrested on false allegations." *Cherney*, ¶204.

    o There is "a significant risk of improper government interference if Mr Cherney were to bring the present claims in Russia, where they would be very high profile proceedings indeed, such that substantial justice may not be done to him if he is required to proceed there. I am not satisfied that, if he is so required, justice will be done." *Cherney*, ¶248, 264.

The Hon. Gregory M. Sleet
July 7, 2008
6

Thus, not only did Cherney submit expert evidence that Russian courts are too corrupt to render a fair decision when Deripaska is a party, and apparently his own witness statement, he disavowed the opinion of the same expert whom he relied upon in *Base Metal*, *i.e.* Professor Paul A. Stephan, III. Cherney's criticisms of his previous expert may be highly interesting to the New York District Court and this Court.

### F.   The Present Action

It is undisputable that at least Cherney and perhaps Deripaska and Makmudov perpetrated a fraud upon the New York District Court and this Court when they alleged that Russia would provide an adequate alternative forum in a case involving Deripaska when they knew this to be completely untrue. Plaintiffs would like the benefit of reviewing the materials filed in *Cherney* and then intend to seek relief, such as described in the beginning of this letter.

By copy of this letter, we request counsel for Cherney and Deripaska to inform us by Friday, July 11 whether they will voluntarily produce the filings in *Cherney* by July 31. If they do not agree to produce the filings, we will request a conference with the Court to discuss how to proceed.

As always, I am available at the convenience of the Court to answer any questions Your Honor may have.

Respectfully,

David L. Finger
(DE Bar ID #2556)

cc: Clerk of the Court (via CM/ECF)
    Kevin F. Brady, Esq. (via CM/ECF)
    Richard I.G. Jones, Esq. (via CM/ECF)
    William M. Lafferty, Esq. (via CM/ECF)
    Charles M. Oberly, III, Esq. (via CM/ECF)